# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT MARYLAND**

| | |
|---|---|
| **DAVID JOHN BOSHEA** )<br>4839 Clearwater Lane )<br>Naperville Illinois 60564, )<br> )<br>    **Plaintiff,** )<br> )<br>**v.** )<br> )<br>**COMPASS MARKETING, INC.,** )<br>222 Severn Avenue<br>Annapolis, Maryland  21403<br>        **Defendant,** | **Case No.** |

**COMPLAINT FOR BREACH OF CONTRACT**

David John Boshea ("Boshea") by Gregory J. Jordan and Mark R. Zito, his counsel, for his

Complaint for Breach of Contract against Compass Marketing, Inc., states as follows:

### GENERAL ALLEGATIONS

1. Boshea has initiated this diversity action to recover unpaid sums owing to him under an
   agreement titled "Compass Marketing, Inc. Agreement Relating to Employment and Post-
   Employment Compensation" (the "Agreement").  A true and correct copy of the Agreement is
   attached as Exhibit A.

2. The parties to the Agreement are Compass Marketing, Inc. (the "Defendant") and Boshea.

### JURISDICTION AND VENUE

3. Boshea is a resident of the state of Illinois.

4. The Defendant is a Virginia corporation headquartered in the state of Maryland.

1

5. This Court has subject matter jurisdiction over this dispute under 28 U.S.C. §1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and because the dispute is between citizens of different states.

6. Venue is proper in Maryland under 28 U.S.C. §1391 as to the Defendant because the Defendant is subject to personal jurisdiction in Maryland. Venue is proper in this judicial district as the facts and events giving rise to Boshea's claims occurred in this judicial district. Further, under the terms of the Agreement, the Defendant required that Boshea submit to this Court's jurisdiction or a Maryland state court's jurisdiction.

7. The Agreement in pertinent part provides, "For purposes of any action or proceeding, Employee irrevocably submits to the non-exclusive jurisdiction of the courts of Maryland and the courts of the United States of America located in Maryland for the purpose of any judicial proceeding arising out of or relating to this Agreement and acknowledges that the designated forum has a reasonable relation to the Agreement and to the parties' relationship with one another." Agreement at Article 8, Section F.

8. In addition to the forum selection clauses outlined in paragraphs 6 and 10 above, this Court has personal jurisdiction over the Defendant in this diversity action because a Maryland state court would have such jurisdiction under Maryland law, which is made applicable to a Maryland federal district court sitting in a diversity case under Federal Rule 4(k)(1)(A).

9. The Agreement was made and delivered in Maryland and expressly acknowledges that "The terms of this Agreement shall be governed by the laws of the State of Maryland, without regard to conflicts of laws principles thereof." Agreement at Article 8, Section F.

10. On or about May 16, 2007, the Defendant extended a written offer of employment to Boshea. *See* Offer of Employment attached as Exhibit B.

11. In May 2007, Boshea and the Defendant signed the Agreement.

12. The Defendant employed Boshea under the Agreement from May 2007 to March 2020.

13. The Defendant's normal payroll cycle involved twice monthly payments of salary or wages.

14. The Agreement provides:

> ARTICLE 6. SEVERANCE:
>
> A. If Employee's employment is terminated by COMPASS for any reason other than Cause, Employee shall receive severance payments totaling $180,000 (one hundred and eighty thousand U.S. dollars) which will be divided up into twenty-four payments and will commence with the Employee's effective date of termination and shall be made in accordance with COMPASS's normal payroll cycle. The period during which Employee receives severance payments shall be referred to as the "Severance Pay Period" Severance will increase one month for every month employed to a maximum severance of $540,000.
>
> B There are no other post-employment benefits. Employee, however, shall have certain rights to continue the Medical Plan under COBRA.
>
> C Termination for "Cause shall be defined as termination of employment due to: (i) conviction of or entry of a plea of guilty or nolo contendere to any criminal charge ( or any similar crime for purposes of laws outside the United States), (ii) fraud or dishonesty, (iii) failure to perform assigned duties, (iv) working against the best interests of COMPASS, or (v) the violation of any of the covenants set forth in Articles 1, 2, 3 and 4 above.
>
> Agreement at Article 6.

15. The Defendant terminated Boshea's employment without cause on March 3, 2020. *See* Termination Letter attached as Exhibit C.

16. The termination of Boshea's employment was involuntary.

<u>**Count I – Breach of Contract**</u>

17.     Boshea restates and realleges each of the allegations in ¶¶1 through 16 as if set forth in this paragraph.

18. Because the Defendant employed Boshea for at least 155 months, Boshea is entitled to receive the maximum severance of $540,000 under the Agreement.

19. Boshea performed all obligations required of him under the Agreement and is not otherwise in default.

20. Notwithstanding the Agreement's terms, the Defendant has not paid any of the severance pay owed to Boshea.

21. Despite repeated demands made by Boshea upon the Defendant to pay the amount due under the Agreement, the Defendant has failed to pay the outstanding balance owing to Boshea.

22. The Defendant breached the Agreement's provisions, and as a result, Boshea has sustained substantial pecuniary damage.

23. As a result of the Defendant's breach of the Agreement, $495,000 remains owing to Boshea as of February 1, 2021.

24. By February 26, 2021, an additional $45,000 will come due and will be owing by the Defendant under the Agreement, which the Defendant is required to pay.

25. Boshea is entitled to receive an award of prejudgment interest from the date payment was due because the obligation to pay him and the amount due are certain, definite, and liquidated by a specific date before judgment.

WHEREFORE, the plaintiff, David John Boshea, prays for judgment in his favor and against the defendant, Compass Marketing, Inc., for the sums owing under the Compass Marketing, Inc. Agreement Relating to Employment and Post-Employment Compensation along with prejudgment interest, his costs, and for such other relief as the Court deems proper.

## COUNT II – VIOLATION OF MARYLAND WAGE PAYMENT AND COLLECTION ACT

26. Boshea restates and realleges each of the allegations in ¶¶1 through 22 as if set forth in this paragraph.

4

27. The Defendant is an employer as that term is defined in and interpreted under the Maryland Wage Payment and Collection Law, Labor and Employment §§3-501 et. seq.

28. Boshea was an employee of the Defendant as that term is defined and interpreted under the Maryland Wage Payment and Collection Law, Labor and Employment §§3-501 et. seq.

29. Under the Agreement, the Defendant made an outright and unconditional promise to pay the severance payments owing as of the date of this complaint as remuneration for Boshea's labor. *See* Maryland Wage Payment and Collection Law, Labor and Employment §§3-501(c)(2)(iii-iv).

30. Under the Agreement, the Defendant made an outright and unconditional promise to pay the severance payments to be paid through the end of February 2021 as remuneration for Boshea's labor. *See* Maryland Wage Payment and Collection Law, Labor and Employment §§3-501(c)(2)(iii-iv).

31. With regard to the payments owing through January 11, 2021, the Defendant has failed to pay Boshea in accordance with § 3-502 or § 3-505 of the Maryland Wage Payment and Collection Law, Labor and Employment, since after two weeks had elapsed from the date on which the Defendant failed to pay the wages owing as of that date.

32. There is no bona fide dispute that the Defendant owes Boshea the severance payments owing as of the date of this complaint and will owe the severance payments to be paid through the end of February 2021.

33. As of January 15, 2021, the Defendant owed $472,500 to Boshea under the Agreement.

34. As a result of the Defendant's failure to timely pay the sums owing as of January 15, 2021, Boshea is entitled to receive an award of an amount not exceeding three times the wages owing

to him as of January 15, 2021, which wages equal $472,500, along with reasonable counsel fees and other costs.

35. The Defendant is obligated to pay $22,500 under the Agreement on January 29, 2021, February 12, 2021, and February 26, 2021

36. Should the Defendant fail to pay the amounts owing under the Agreement by March 12, 2021, Boshea will be entitled to receive an award of an amount not exceeding three times the wages owing, which, provided the Defendant makes no payment of wages, will equal $540,000, along with reasonable counsel fees and other costs less any portion of the amount paid before that date.

37. Under the Agreement, the Defendant was obligated to pay wages of $22,500 on January 29, 2021, which it failed to pay.

38. Should the Defendant fail to pay the amounts owing as set forth in ¶ 37 by February 12, 2021, Boshea will be entitled to receive an additional award of not exceeding three times such wages owing along with reasonable counsel fees and other costs.

39. Under the Agreement, the Defendant is obligated to pay wages of $22,500 on February 12, 2021.

40. Should the Defendant fail to pay the amounts owing as set forth in ¶ 39 by February 26, 2021 March 12, 2021, Boshea will be entitled to receive an additional award of not exceeding three times such wages owing along with reasonable counsel fees and other costs.

41. Under the Agreement, the Defendant is obligated to pay wages of $22,500 on February 26, 2021.

42. Should the Defendant fail to pay the amounts owing as set forth in ¶ 41 by March 12, 2021, Boshea will be entitled to receive an additional award of not exceeding three times such wages owing along with reasonable counsel fees and other costs.

WHEREFORE, the plaintiff, David John Boshea, prays for judgment in his favor and against the defendant, Compass Marketing, Inc., an award of an amount not exceeding three times the wages owing, reasonable counsel fees, his costs, and for such other relief as the Court deems proper.

Respectively submitted,

/s/Thomas J. Gagliardo
Thomas J. Gagliardo, Bar No. 08499
Of counsel
Gilbert Employment Law, PC
1100 Wayne Avenue, Suite 900
Silver Spring, Maryland 20910
301 608 0880  FAX 301 608 0881
Tgagliardo-efile@gelawyer.com

/s/ Gregory J. Jordan*
Gregory J. Jordan (ARDC# 6205510)
Mark Zito (ARDC# 6276231)
Jordan & Zito LLC
55 West Monroe St., Suite 3600
Chicago IL 60603
(312) 854-7181 (Telephone)
gjordan@jz-llc.com
mzito@jz-llc.com
*Admission Pro Hac Vice pending

Counsel for Plaintiff David Boshea

JS 44 (Rev. 08/16)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| **(b)**   County of Residence of First Listed Plaintiff<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:     IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |
| **(c)**   Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |

### II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1   U.S. Government
       Plaintiff
- ❏ 2   U.S. Government
       Defendant
- ❏ 3   Federal Question
       *(U.S. Government Not a Party)*
- ❏ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

### III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place<br>of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a<br>Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

### IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance<br>❏ 120 Marine<br>❏ 130 Miller Act<br>❏ 140 Negotiable Instrument<br>❏ 150 Recovery of Overpayment<br>  & Enforcement of Judgment<br>❏ 151 Medicare Act<br>❏ 152 Recovery of Defaulted<br>  Student Loans<br>  (Excludes Veterans)<br>❏ 153 Recovery of Overpayment<br>  of Veteran's Benefits<br>❏ 160 Stockholders' Suits<br>❏ 190 Other Contract<br>❏ 195 Contract Product Liability<br>❏ 196 Franchise | **PERSONAL INJURY**<br>❏ 310 Airplane<br>❏ 315 Airplane Product<br>  Liability<br>❏ 320 Assault, Libel &<br>  Slander<br>❏ 330 Federal Employers'<br>  Liability<br>❏ 340 Marine<br>❏ 345 Marine Product<br>  Liability<br>❏ 350 Motor Vehicle<br>❏ 355 Motor Vehicle<br>  Product Liability<br>❏ 360 Other Personal<br>  Injury<br>❏ 362 Personal Injury -<br>  Medical Malpractice | **PERSONAL INJURY**<br>❏ 365 Personal Injury -<br>  Product Liability<br>❏ 367 Health Care/<br>  Pharmaceutical<br>  Personal Injury<br>  Product Liability<br>❏ 368 Asbestos Personal<br>  Injury Product<br>  Liability<br>**PERSONAL PROPERTY**<br>❏ 370 Other Fraud<br>❏ 371 Truth in Lending<br>❏ 380 Other Personal<br>  Property Damage<br>❏ 385 Property Damage<br>  Product Liability | ❏ 625 Drug Related Seizure<br>  of Property 21 USC 881<br>❏ 690 Other | ❏ 422 Appeal 28 USC 158<br>❏ 423 Withdrawal<br>  28 USC 157<br><br>**PROPERTY RIGHTS**<br>❏ 820 Copyrights<br>❏ 830 Patent<br>❏ 840 Trademark<br><br>**SOCIAL SECURITY**<br>❏ 861 HIA (1395ff)<br>❏ 862 Black Lung (923)<br>❏ 863 DIWC/DIWW (405(g))<br>❏ 864 SSID Title XVI<br>❏ 865 RSI (405(g)) | ❏ 375 False Claims Act<br>❏ 376 Qui Tam (31 USC<br>  3729(a))<br>❏ 400 State Reapportionment<br>❏ 410 Antitrust<br>❏ 430 Banks and Banking<br>❏ 450 Commerce<br>❏ 460 Deportation<br>❏ 470 Racketeer Influenced and<br>  Corrupt Organizations<br>❏ 480 Consumer Credit<br>❏ 490 Cable/Sat TV<br>❏ 850 Securities/Commodities/<br>  Exchange<br>❏ 890 Other Statutory Actions<br>❏ 891 Agricultural Acts<br>❏ 893 Environmental Matters<br>❏ 895 Freedom of Information<br>  Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **FEDERAL TAX SUITS** | ❏ 896 Arbitration |
| ❏ 210 Land Condemnation<br>❏ 220 Foreclosure<br>❏ 230 Rent Lease & Ejectment<br>❏ 240 Torts to Land<br>❏ 245 Tort Product Liability<br>❏ 290 All Other Real Property | ❏ 440 Other Civil Rights<br>❏ 441 Voting<br>❏ 442 Employment<br>❏ 443 Housing/<br>  Accommodations<br>❏ 445 Amer. w/Disabilities -<br>  Employment<br>❏ 446 Amer. w/Disabilities -<br>  Other<br>❏ 448 Education | **Habeas Corpus:**<br>❏ 463 Alien Detainee<br>❏ 510 Motions to Vacate<br>  Sentence<br>❏ 530 General<br>❏ 535 Death Penalty<br>**Other:**<br>❏ 540 Mandamus & Other<br>❏ 550 Civil Rights<br>❏ 555 Prison Condition<br>❏ 560 Civil Detainee -<br>  Conditions of<br>  Confinement | ❏ 710 Fair Labor Standards<br>  Act<br>❏ 720 Labor/Management<br>  Relations<br>❏ 740 Railway Labor Act<br>❏ 751 Family and Medical<br>  Leave Act<br>❏ 790 Other Labor Litigation<br>❏ 791 Employee Retirement<br>  Income Security Act<br><br>**IMMIGRATION**<br>❏ 462 Naturalization Application<br>❏ 465 Other Immigration<br>  Actions | ❏ 870 Taxes (U.S. Plaintiff<br>  or Defendant)<br>❏ 871 IRS—Third Party<br>  26 USC 7609 | ❏ 899 Administrative Procedure<br>  Act/Review or Appeal of<br>  Agency Decision<br>❏ 950 Constitutionality of<br>  State Statutes |

### V.  ORIGIN *(Place an "X" in One Box Only)*

- ❏ 1   Original
       Proceeding
- ❏ 2   Removed from
       State Court
- ❏ 3   Remanded from
       Appellate Court
- ❏ 4   Reinstated or
       Reopened
- ❏ 5   Transferred from
       Another District
       *(specify)*
- ❏ 6   Multidistrict
       Litigation -
       Transfer
- ❏ 8   Multidistrict
       Litigation -
       Direct File

### VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

### VII.  REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   ❏ Yes   ❏ No

### VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE                          DOCKET NUMBER

DATE                          SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

 **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

 **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    Nature of Suit. Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Plaintiff(s)* | ) | Civil Action No. |
| v. | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Defendant(s)* | ) |  |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*
                                                                                              .


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# COMPASS MARKETING, INC

## AGREEMENT RELATING TO EMPLOYMENT AND

## POST-EMPLOYMENT COMPETITION

This Agreement is between the David John Boshea, residing at 4839 Clearwater LN. Naperville, IL. 60564 ("Employee") and COMPASS MARKETING, INC ("COMPASS"), having a place of business at 612 Third Street, Annapolis

### RECITALS

WHEREAS, COMPASS is a leading provider of consumer products and more specifically, the marketing, distribution and sales services to retailers and non-traditional or alternative distributors in the following categories: food, health-beauty care, over the counter medicine, consumer products, and pet care.

WHEREAS, COMPASS has a proprietary interest in its business and financial plans and systems, methods of operation and other secret and confidential information, knowledge and data ("Proprietary Information") which includes, but is not limited to, all confidential, proprietary or non-public information, ideas and concepts, client names and contact information, annual and strategic business plans; financial plans, reports and systems including, profit and loss statements, sales, accounting forms and procedures and other information regarding costs, pricing and the financial condition of COMPASS and its business segments and groups; management development reviews, including information regarding the capabilities and experience of COMPASS employees; intellectual property including research and development, reports, protocols, computer software and databases; information regarding COMPASS's relationships with its clients, customers, and suppliers and prospective clients, partners, customers and suppliers, policy and procedure manuals, information regarding materials and documents in any form or medium (including oral, written, tangible. intangible, or electronic) concerning any of the above, or any past, current or future business activities of COMPASS that is not publicly available; compensation, recruiting and training, and human resource policies and procedures; and data compilations, research, reports, structures, compounds, techniques, methods, processes, and know-how.

WHEREAS, all such Proprietary Information is developed at great expense to COMPASS and is considered by COMPASS to be confidential trade secrets;

WHEREAS, Employee, as a senior executive, will have access to COMPASS's Proprietary Information, directly in the course of Employee's employment, and indirectly through interaction with and presentations by other COMPASS senior executives;

WHEREAS, COMPASS will introduce Employee to COMPASS clients, customers, suppliers and others, and will encourage, and provide resources for, Employee to develop personal relationships with COMPASS's clients, customers, suppliers and others;

WHEREAS, COMPASS will provide specialized training and skills to Employee in connection with the performance of Employee's duties at COMPASS which training involves the disclosure by COMPASS to Employee of Proprietary Information;

WHEREAS, COMPASS will be vulnerable to unfair post-employment competition by Employee because Employee will have access to and knowledge of COMPASS's Proprietary Information, will have a personal relationship with COMPASS's clients, customers, suppliers and others, and will generate good will which Employee acknowledges belongs to COMPASS;

NOW, THEREFORE, in consideration of Employee's employment with COMPASS, the severance benefit and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Employee agrees to enter into this Agreement with COMPASS as a condition of employment pursuant to which COMPASS will limit Employee's rights, including, but not limited to, the right to compete against COMPASS, during and following termination of employment on the terms set forth in this Agreement. Intending to be legally bound, the parties agree as follows:

## ARTICLE 1. NON-DISCLOSURE AND NON-DISPARAGEMENT:

Initial

Employee shall not, during or after termination of employment, directly or indirectly, in any manner utilize or disclose to any person, firm, corporation, association or other entity, except where required by law, any Proprietary Information which is not generally known to the public, or has not otherwise been disclosed or recognized as standard practice in the industries in which COMPASS is engaged. Employee shall, during and after termination of employment, refrain from making any statements or comments of a defamatory or disparaging nature to any third party regarding COMPASS, or any of COMPASS's officers, directors, personnel, policies or products, other than to comply with law.

## ARTICLE 2. NON-COMPETITION:

A.      Subject to Article 2.B. below, Employee, during Employee's period of employment with COMPASS, and for a period of three years following the voluntary or involuntary termination of employment, shall not, without COMPASS's written permission, which shall be granted or denied in COMPASS's sole discretion, directly or indirectly, associate with (including, but not limited to, association as a sole proprietor, owner, employer, partner, principal, investor, joint venturer, shareholder, associate, employee, member, consultant, contractor or otherwise), or acquire or maintain ownership interest in, any Business which is competitive with that conducted by or developed for later implementation by COMPASS at any time during the term of Employee's employment, provided, however, if Employee's employment is involuntarily terminated by COMPASS for any reason other than Cause (as defined herein) then the term of the non-competition provision set forth herein will be modified to be one year following such termination of employment. For purposes of this Agreement, "Business" shall be defined as a person, corporation, firm, LLC, partnership, joint venture or other entity. Nothing in the foregoing shall prevent Employee from investing in a Business that is or becomes publicly traded, if Employee's ownership is as a passive investor of less than 1 % of the outstanding publicly traded stock of the Business.

B.      The provision set forth in Article 2.A above, shall apply to (i) all fifty states, and (ii) each foreign country, possession or territory in which COMPASS may be engaged in, or have plans to engage in, business (x) during Employee's period of employment, or (y) in the case of a termination of employment, as of the effective date of such termination or at any time during the twenty-four month period prior thereto.

C.      Employee acknowledges that these restrictions are reasonable and necessary to protect the business interests of COMPASS, and that enforcement of the provisions set forth in this Article 2 will not unnecessarily or unreasonably impair Employee's ability to obtain other employment following the termination (voluntary or involuntary) of Employee's employment with COMPASS. Further, Employee acknowledges that the provisions set forth in this Article 2 shall apply if Employee's employment is involuntarily terminated by COMPASS for Cause; as a result of the elimination of employee's position for performance-related issues; or for any other reason or no reason at all.

D.

## ARTICLE 3. NON-SOLICITATION:

A. During the period of Employee's employment with COMPASS and for a period of three years following the termination of Employee's employment, regardless of the reason for termination, Employee shall not, directly or indirectly: (i) induce or encourage any employee of COMPASS to leave the employ of COMPASS, (ii) hire any individual who is or was an employee of COMPASS, or (iii) induce or encourage any customer, client, potential client, supplier or other business relation of COMPASS to cease or reduce doing business with COMPASS or in any way interfere with the relationship between any such customer, client, supplier or other business relation and COMPASS.

B.      A "customer of COMPASS" shall be defined to mean the entities or businesses to whom COMPASS sells the product lines of its clients.

C.      A "client of COMPASS" shall be defined to mean the supplier of product lines to COMPASS, which product lines are sold by COMPASS to its customers.

D.      A "potential client of COMPASS" shall be defined to mean the supplier of product lines to COMPASS that COMPASS is actively negotiating with to represent as a future COMPASS client, during the period of Employee's employment.

## ARTICLE 4. DISCOVERIES' AND WORKS:

Initial

Employee hereby irrevocably assigns, transfers, and conveys to COMPASS to the maximum extent permitted by applicable law Employee's right, title and interest now or hereinafter acquired, in and to all Discoveries and Works (as defined below) created, invented, designed, developed, improved or contributed to by Employee, either alone or jointly with others, while employed by COMPASS and within the scope of Employee's employment and/or with the use of COMPASS's resources. The terms "Discoveries and Works" include all works of authorship, inventions, intellectual property, materials, documents. or other work product (including, without limitation, Proprietary Information, patents and patent applications, patentable inventions, research, reports, software, code, databases, systems, applications, presentations, textual works, graphics and audiovisual materials). Employee shall have the burden of proving that any materials or works created, invented, designed, developed, contributed to or improved by Employee that are implicated by or relevant to employment by COMPASS are not implicated by this provision. Employee agrees to (i) keep accurate records and promptly notify, make full disclosure to, and execute and deliver any documents and to take any further actions requested by COMPASS to assist it in validating, effectuating, maintaining, protecting, enforcing, perfecting, recording, patenting or registering any of its rights hereunder, and (ii) renounce any and all claims, including, without limitation, claims of ownership and royalty, with respect to all Discoveries and Works and all other property owned or licensed by COMPASS. Any Discoveries and Works that, within six months after the termination of Employee's employment with COMPASS, are made, disclosed, reduced to a tangible or written form or description, or are reduced to practice by Employee and which pertain to the business carried on or products or services being sold or developed by COMPASS at the time of such termination shall, as between Employee and COMPASS, be presumed to have been made during such employment with COMPASS. Employee acknowledges that, to the fullest extent permitted by law, all Discoveries and Works shall be deemed "works made for hire" under the Copyright Act of 1976, as amended, 17 U.S.C. Section 101. Employee hereby grants COMPASS a perpetual, nonexclusive, royalty-free, worldwide, assignable, sublicensable license under all rights and intellectual property rights (including patent, industrial property, copyright, trademark, trade secret, unfair competition and related laws) in any Works and Discoveries, for all purposes in connection with COMPASS's current and future business, that Employee has created, invented, designed, developed, improved or contributed to prior to Employee's employment with COMPASS that are relevant to or implicated by such employment ("Prior Works"). Any Prior Works are disclosed by Employee in Schedule 1.

## ARTICLE 5. REMEDIES:

Employee acknowledges that in the event of any violation by Employee of the provisions set forth in Articles 1, 2, 3 or 4 above, COMPASS will sustain serious, irreparable and substantial harm to its business, the extent of which will be difficult to determine and impossible to fully remedy by an action at law for money damages. Accordingly, Employee agrees that, in the event of such violation or threatened violation by Employee, COMPASS shall be entitled to an injunction before trial before any court of competent jurisdiction as a matter of course upon the posting of not more than a nominal bond, in addition to all such other legal and equitable remedies as may be available to COMPASS. If COMPASS is required to enforce the provisions set forth in Articles 2 and 3 above by seeking an injunction, Employee agrees that the relevant time periods set forth in Articles 2 and 3 shall commence with the entry of the injunction. Employee further agrees that, in the event any of the provisions of this Agreement are determined by a court at competent jurisdiction to be invalid, illegal, or for any reason unenforceable as written, such court shall substitute a valid provision which most closely approximates the intent and purpose of the invalid provision and which would be enforceable to the maximum extent permitted by law.

## ARTICLE 6. SEVERANCE:



A.	If Employee's employment is terminated by COMPASS for any reason other than Cause, Employee shall receive severance payments totaling $180,000 (one hundred and eighty thousand U.S. dollars) which will be divided up into twenty-four payments and will commence with the Employee's effective date of termination and shall be made in accordance with COMPASS's normal payroll cycle. The period during which Employee receives severance payments shall be referred to as the "Severance Pay Period." Severance will increase one month for every month employed to a maximum severance of $540,000.

B	There are no other post-employment benefits. Employee, however, shall have certain rights to continue the Medical Plan under COBRA.

C	Termination for "Cause shall he defined as termination of employment due to: (i) conviction of or entry of a plea of guilty or nolo contendere to any criminal charge (or any similar crime for purposes of laws outside the United States), (ii) fraud or dishonesty, (iii) failure to perform assigned duties, (iv) working against the best interests of COMPASS, or (v) the violation of any of the covenants set forth in Articles 1, 2, 3 and 4 above.

Initial

D.      If Employee is terminated by COMPASS for reasons other than Cause, Employee will receive the severance payments during the Severance Pay Period even if Employee commences other employment during such period provided such employment does not violate the terms of Article 1, 2, 3 and 4 of this Agreement.

E.      In addition to the remedies set forth in Article 5, COMPASS reserves the right to terminate all severance payments if Employee violates any covenants set forth in Articles 1, 2, 3 or 4 of this Agreement.

F.      Employee's receipt of severance under this Agreement is contingent on Employee's execution of a release in a form reasonably acceptable to COMPASS, except that such release shall not include any claims by Employee to enforce Employee's rights under, or with respect to, this Agreement or any COMPASS benefit plan pursuant to its terms, and that the employee not revoking the release prior to the expiration of the applicable Age Discrimination in Employment Act revocation period.

## ARTICLE 7. TERM OF EMPLOYMENT:

Employee acknowledges that COMPASS has the right to terminate Employee's employment at any time for any reason whatsoever, provided, however, that any termination by COMPASS for reasons other than Cause shall result in the severance described in Article 6 above, to become due in accordance with the terms of this Agreement subject to the conditions set forth in this Agreement. Employee further acknowledges that the severance payments provided by COMPASS are in full satisfaction of any obligations COMPASS may have resulting from COMPASS's exercise of its right to terminate Employee's employment, except for those obligations which are intended to survive termination such as the payments to be made pursuant to retirement plans, deferred compensation plans and conversion of insurance.

## ARTICLE 8. MISCELLANEOUS:

A.      As used throughout this Agreement, COMPASS includes COMPASS MARKETING, Inc. and its subsidiaries and affiliates or any corporation, joint venture, or other entity in which COMPASS MARKETING, Inc. or its subsidiaries or affiliates has an equity interest in excess of ten percent (10%).

B.      This Agreement shall supersede and substitute for any previous employment, post-employment or severance agreement between Employee and COMPASS.

C.      If Employee's employment with COMPASS terminates solely by reason of a transfer of stock or assets of, or a merger or other disposition of, a subsidiary of COMPASS (whether direct or indirect), such termination shall not be deemed a termination of employment by COMPASS for purposes of this Agreement, provided that COMPASS requires the subsequent employer, by agreement, to expressly assume and agree to perform this Agreement in the same manner and to the same extent that COMPASS would be required to perform it if no such transaction had taken place.

D.      Employee shall not be required to mitigate damages or the amount of any payment provided for under this Agreement by seeking other employment or otherwise.

E.      In the event any one or more of the provisions of this Agreement shall be or become invalid, illegal or unenforceable in any respect, the validity legality and enforceability of the remaining provisions of this Agreement shall not be affected thereby.

F.      The terms of this Agreement shall be governed by the laws of the State of Maryland, without regard to conflicts of laws principles thereof. For purposes of any action or proceeding, Employee irrevocably submits to the non-exclusive jurisdiction of the courts of Maryland and the courts of the United States of America located in Maryland for the purpose of any judicial proceeding arising out of or relating to this Agreement, and acknowledges that the designated forum has a reasonable relation to the Agreement and to the parties' relationship with one another. Notwithstanding the provisions of this Article 8.F COMPASS may, in its discretion, bring an action or special proceeding in any court of competent jurisdiction for the purpose of seeking temporary or preliminary relief pending resolution of a dispute.

G.      Employee expressly consents to the application of Article 8.F to any judicial action or proceeding arising out of or relating to this Agreement. COMPASS shall have the right to serve legal process upon Employee in any manner permitted by law. In addition, Employee irrevocably appoints the General Counsel of COMPASS MARKETING, Inc. (or any successor) as Employee's agent for service of legal process in connection with any such action or proceeding and Employee agrees that service of legal process upon such agent, who shall promptly advise Employee of any such service of legal process at the address of

Employee then in the records of COMPASS, shall be deemed in every respect effective service of legal process upon Employee in any such action or proceeding.

H.     Employee hereby waives, to the fullest extent permitted by applicable law, any objection that Employee now or hereafter may have to personal jurisdiction or to the laying of venue of any action or proceeding brought in any court referenced in Article 8.F and hereby agrees not to plead or claim the same.

I.     Notwithstanding any other provision of this Agreement, COMPASS may, to the extent required by law, withhold applicable federal, state and local income and other taxes from any payments due to Employee hereunder.

J.     At any time during the validity of this Agreement, Employee agrees that COMPASS may notify third parties about Employee's rights and obligations under this Agreement.

K.     Employee affirms that Employee has read this Agreement and has asked questions needed to understand the terms, consequences and binding effect of this Agreement and fully understands them.

L.     Employee affirms that Employee has sought the advice of an attorney of his/her choice before signing this Agreement.

**IN WITNESS WHEREOF**, and intending to he legally bound, the parties hereto have caused this Agreement to be signed.

by COMPASS MARKETING, INC.                    by EMPLOYEE

Date:                                                          Date:

/s/                                                            /s/ _David. Boshea_

John D. White, CEO                                David John Boshea

Initial

**Schedule 1**

**Prior Works***

---

\*          if no Prior Works are listed, Employee certifies that there are none.

Initial



David Boshea
2007
4839 Clearwater LN.
Naperville, IL. 60564

May 16,

Dear Dave,

This letter will confirm our preliminary offer for you to consider
employment at Compass Marketing. To assume the position of Sr.
Account Executive, we will offer you a salary of $180,000 per
year. Additionally, an undefined bonus based on corporate and
personal performance will be possible each year. Additionally, we
will include health insurance, a $500 car allowance, 401k, home
office expense, lap top, copy machine, and reimbursement of all
business related travel. You will be granted two weeks vacation in
2007, and three weeks in 2008.

In exchange for your execution of our company non-compete and
non-disclosures we will offer an "involuntary exit package" of 3
times your salary (1 year will be immediately vested, with the
additional 2 years accrued over the next three years). This will
cover any involuntary termination from the company, other then for
cause.

Additionally, 100 percent of your business related membership fees
at White Eagle Golf Course will be reimbursed for a total of
$32,000 over three years ($12,000 up front, and $10,000 each
December. Proper expense documentation will of course be required
for each reimbursement.

Upon acceptance of this letter of intent, I will send you a full
employment agreement for your consideration. Call me with any
questions.

Best Regards

612 3rd Street, Suite 200, Annapolis, MD 21403; (410) 268-0030; Fax 301-542-0196
jwhite@compassmarketinginc.com
**Exhibit B**



John White
Chairman/CEO
Compass Marketing Inc.

 using **ART** + **SCIENCE** to amplify brands™

March 3, 2020

David Boshea
4839 Clearwater Lane
Naperville, IL 60564

Dear Dave,

Regrettably, your position was one of the positions selected to be eliminated due to a necessary reduction in force. This letter confirms our discussion today that your employment with Compass Marketing Inc will terminate on March 3, 2020.

We appreciate your service to the company, and it is with regret that we must terminate your employment. We want to assist as much as possible during this transition, as we do appreciate your tenure with Compass Marketing.

Below is a breakdown of information that is important for you.

• You will be paid through your last date of employment.

• You will be paid your unused, accrued vacation pay, if any, together with your last paycheck.

• Your benefits will remain in effect until March 31, 2020. Cobra information will be mailed to you for your review to make the appropriate decision.

• We are offering you a Severance Agreement, which is attached for your review and consideration. You have a period of 45 days to consider it.

• As your termination is based on a generalized Reduction in Force you may qualify for unemployment benefits.

Please review the information above and the attached Severance Agreement and do not hesitate to reach out to Erin Songer with any questions. We thank you so much and wish you great success on your future endeavors.

Sincerely,




John White
CEO
Compass Marketing, Inc.



enclosure

**Exhibit C**

## SEVERANCE AGREEMENT

Compass Marketing Inc. and David Boshea have reached the following Severance Agreement ("Agreement"). In this Agreement, "Employee" refers to David Boshea and "Company" refers to Compass Marketing Inc., together with any parent or subsidiaries, related and affiliated entities, companies, and the employees, officers, trustees, directors, agents, shareholders, successors, assigns, servants, third party administrators and insurers and any of them.

1. Employee's employment with Company is terminated effective March 3, 2020. In consideration for the execution by Employee of this Agreement and for the covenants and promises described below, the Company will pay Employee 80 hours of Severance Pay. Such salary continuation shall be contingent upon the execution and non-revocation of this Agreement, and shall be effective and Employee paid for such continuation within 30 days following the seven (7) day revocation period referred to in paragraph 9 of the Agreement, provided that this Agreement is not revoked. Employee agrees that this payment is more than the Company is required to pay under its policies and procedures.

2. Employee states that he has not previously filed or joined in any complaints or charges or lawsuits against Company with any governmental agency or court of law. Employee agrees to and does release the Company from all claims or demands Employee may have based on Employee's employment with the Company or the termination of that employment. This includes a release of any rights or claims Employee may have under the Age Discrimination in Employment Act and the Older Workers Benefit Protection Act, which prohibit age discrimination in employment; 42 U.S.C. § 1981, 1983 and 1985; Title VII of the Civil Rights Act of 1964 as amended, which prohibits discrimination in employment based on race, color, national origin, religion or sex; the Equal Pay Act, which prohibits paying men and women unequal pay for equal work; the Americans with Disabilities Act, which prohibits discrimination against qualified individuals with a disability; the Fair Labor Standards Act, including the Wage and Hour Laws relating to payment of wages; the Family and Medical Leave Act, which provides certain leave of absence benefits to employees; Employment Retirement Income Security Act, which protects certain employee benefits; 85 O.S. §§ 5, 6 and 7 (1991 and 1992 Supp.), preventing discharge in retaliation for exercising rights under Oklahoma's Workers' Compensation Act; or any other federal, state or local laws or regulations prohibiting employment discrimination, including qui tam actions. This also includes a release by Employee of any claims for breach of contract, impairment of economic opportunities, intentional infliction of emotional distress, invasion of privacy, wrongful discharge, discharge in violation of public policy, or that the Company has dealt with Employee unfairly or in bad faith or any other common law contract or tort claim. This release covers both claims that Employee knows about and those he may not know about. Employee also represents that he has not given or sold any portion of any claim discussed in this Agreement to anyone else.

3. Employee promises never to file a lawsuit asserting any claims that are released in paragraph 2.

4. If Employee breaks his promise in paragraph 3 of this Agreement and files a lawsuit based on legal claims that Employee has released, Employee will pay for all costs incurred by the Company, any related companies or the directors or employees of any of them, including reasonable attorneys' fees, in defending against Employee's claim.

5. Company makes this Agreement to avoid the cost of defending against any possible legal action. By making this Agreement, Company does not admit that it has done anything wrong.

6. This Agreement does not waive any rights or claims that Employee may have which arise after the date the Employee signs this Agreement.

1

**Exhibit C**

7. Employee acknowledges that he received an electronic copy of this Agreement and was offered a period of at least forty-five (45) days to consider it.

8. Employee is advised to consult with an attorney of his choice before signing this Agreement. Employee agrees, that Company shall not be required to pay any of his attorneys' fees in this or any related matter or lawsuit, now or later, and that the settlement monies received in paragraph 1 are in full and complete settlement of all matters between Employee and Company, including but not limited to, attorney's fees and costs.

9. Employee may revoke this Agreement within seven (7) days of his signing it. Revocation can be made by delivering a written notice of revocation to Erin Songer, at 222 Severen Ave, Suite 200, Annapolis MD 21403. For such revocation to be effective, notice must be received no later than 5:00 p.m. on the seventh (7th) calendar day after Employee signs this Agreement. If Employee revokes this Agreement it shall not be effective or enforceable and Employee will not receive the benefits described in paragraph 1.

10. Employee acknowledges that as a result of his employment with Company, certain trade secrets and other confidential information of the Company have been disclosed to him. Employee agrees that as partial consideration for this Agreement, that Employee shall not disclose or utilize for his personal benefit, or for the direct or indirect benefit of any other person or entity, or for any other reason, any information, ideas, concepts, improvements, discoveries or other information, whether patentable or not, which have been disclosed to Employee during the time Employee was employed with the Company. In addition, all documents, notes, files, data, records, correspondence, manuals, specifications, computer programs, e-mail, voice mail, electronic data bases, maps and other writings or materials of any type which have been provided to Employee as a result of Employee's employment with or through the Company, are and shall be the sole and exclusive property of the Company. Employee shall promptly deliver all such property, including copies, and the personal property listed on Exhibit "A" attached hereto, to the Company within five (5) business days of the date of this Agreement.



11. For a period of two (2) years after the date of this Agreement, Employee shall not solicit, induce or attempt to induce any current customer or employee of the Company or its affiliates to cease doing business in whole or in part with or through the Company or its affiliates or otherwise disrupt any previously established relationship existing between such customer or employee and the Company or its affiliates.

12. This is the whole Agreement between Employee and Company. No promises oral or written statement upon which Employee has been told to rely have been made to him other than those in this Agreement. If any portion of this Agreement is found to be unenforceable, then both Employee and the Company desire that all other portions that can be separated from it or appropriately limited in scope shall remain fully valid and enforceable. Each party also agrees that, without receiving further consideration, it will sign and deliver such documents and do anything else that is necessary in the future to make the provisions of this Agreement effective.

13. As an express condition of this Agreement, Employee agrees not to take any action that is adverse to Company, or any of its parents, subsidiaries or affiliates, either individually or in concert with others.

14. Employee agrees to keep the terms, amount and facts of this Agreement completely confidential, and that he will not disclose any information concerning this agreement to anyone other than immediate family and lawyer(s), who will be informed of and bound by this confidentiality clause.

15. This Agreement shall be governed and interpreted in accordance with the laws of the State of Maryland. In the event litigation is instituted between the parties in connection with any controversy or dispute arising from, under or related to this Agreement, the judgment herein should include a reasonable sum to be paid to the prevailing party on account of attorneys' fees incurred in such litigation.

16. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall together constitute one and the same instrument.

17. Company and Employee desire that any dispute concerning this Agreement be handled out of court. Accordingly, they agree that any such dispute shall, as the parties' sole and exclusive remedy, be submitted to arbitration in Maryland, before an experienced employment arbitrator licensed to practice law in Maryland and selected in accordance with the standard rules of the American Arbitration Association (AAA). (Employee understands that he may obtain a copy of such rules by calling the AAA, located in Washington, D.C., directly if Company or Employee's lawyer do not have copies available.) The laws of the State of Maryland shall govern interpretation of this Agreement. Should Employee or Company start any legal action or administrative proceeding against the other with respect to any claim waived by this Agreement, or pursue any method of resolution of a dispute other than mutual agreement of the parties or arbitration, then all damages, costs, expenses and attorneys' fees incurred by the other party as a result shall be the responsibility of the one bringing the suit or starting the procedure.

EMPLOYEE ACKNOWLEDGES THAT HE HAS READ THIS AGREEMENT, UNDERSTANDS IT AND IS VOLUNTARILY ENTERING INTO IT.

PLEASE READ THIS AGREEMENT CAREFULLY. IT CONTAINS A RELEASE BY EMPLOYEE OF ALL KNOWN AND UNKNOWN CLAIMS.

| Date | _____ | Employee Signature | _____ |
| Date | _____ | Witness | _____ |
| Date | _____ | Company Representative | _____ |
| | | Title: | _____ |

EMPLOYEE ACKNOWLEDGES RECEIPT OF THE BENEFITS STATED IN PARAGRAPH NUMBER 1 AND ACKNOWLEDGES THAT THIS AGREEMENT IS IN FULL FORCE AND EFFECT.

Date _____ Employee Signature _____

3

**Exhibit C**

## NON-SOLICITATION AGREEMENT

THIS NON-SOLICITATION AGREEMENT (the "Non-Solicitation Agreement") is entered into by and between Compass Marketing, Inc. (together with its subsidiaries and affiliates, "Compass"), a Virginia corporation, and the undersigned employee of Compass to protect the valuable competitive information and business relationships of Compass.

1. **Acknowledgements.** I acknowledge and agree that:

   a. in the course and scope of my employment with Compass, I have developed or will develop unique relationships with Compass employees, customers and suppliers;

   b. Compass has provided or will provide me with unique knowledge and training about its Confidential Information. Confidential Information, as used in this Non-Solicitation Agreement, includes, but is not limited to, any information possessed or owned by Compass which is not generally known to the public, especially if such information gives Compass Marketing a competitive advantage or its disclosure would harm Compass Marketing. It includes, but is not limited to, trade secrets, proprietary information and all other information documents or materials, owned, developed or possessed by Compass or any employee of Compass, whether tangible or intangible, relating in any way to Compass' research and development, customers, prospective customers, business plans, business relationships, products or processes, costs or profit information or data from which that information could be derived, human resources (including internal evaluations of the performance, capability and potential of any Compass employee), business methods, databases and computer programs; and,

   c. I am entering into this Non-Solicitation Agreement in conjunction with my Compass and that this provides adequate and significant consideration for my willingness to enter into this Non-Solicitation Agreement.

2. **Non-Solicitation of Compass Employees.** During the term of my employment at Compass and for twenty-four (24) months following the termination of my employment for any reason (the "Employee Non-Solicitation Period"), I agree that I will not, either on my own behalf or on behalf of any other person or entity, directly or indirectly, hire, solicit, retain, or encourage to leave the employ of Compass (or assist any other person or entity in hiring, soliciting, retaining or encouraging) any person who is then or was within six (6) months of the date of such hiring, an employee of Compass.

3. **Non-Solicitation of Compass Customers.** During the term of my employment at Compass and for twenty-four (24) months following the termination of my employment for any reason (the "Customer Non-Solicitation Period"), in order to protect Compass' Confidential Information, I agree that I will not, either on my own behalf or on behalf of any other person or entity, directly or indirectly, solicit, sell or assist anyone in the sale of or provide service relating to any of Compass' services or services similar to those sold by Compass to any person, company, firm, or corporation who is or was a customer of Compass within one (1) year prior to the termination of my employment and with whom I, or those employees reporting to me, had Material Contact during the last year of my employment. For the purpose of this Non-Solicitation Agreement, Material Contact shall be defined as personal contact or the supervision of the efforts of those who have direct personal contact with a customer or potential customer. I agree not to solicit, sell or assist in the sale or provide service to any such customers on behalf of myself or any other person, firm, company, or corporation.

4. **Confidentiality.** I agree that at all times, both during and after my employment with Compass, I shall not directly or indirectly use or disclose any Confidential Information to any third person or entity outside Compass, except (i) as may be necessary in the good faith performance of my duties for Compass or (ii) as I may be required to disclose under any applicable laws, regulations or directives of a governmental entity having jurisdiction in the matter or under subpoena or other process of law, provided that I shall promptly notify the Company in writing of any such requests for disclosure.

5. **Common Law Duties.** I acknowledge and agree that I owe fiduciary and common law duties to Compass, in addition to the covenants set forth above, prohibiting the misuse or disclosure of trade secrets or confidential information and the unlawful interference with Compass' business and customer relationships.

1

**Exhibit C**

**6. Duty to Show Non-Solicitation Agreement to Prospective Employers.** During my employment with Compass and for twenty-four (24) months thereafter, I shall, prior to accepting other employment, provide a copy of this Non-Solicitation Agreement to any recruiter who assists me in locating employment other than Compass and to any prospective employer with which I discuss potential employment.

**7. At-Will Employment.** I acknowledge and agree that my employment with Compass is at-will and that both the Company and I retain the right to terminate the employment relationship at any time and for any reason, with or without prior notice. Nothing in this Non-Solicitation Agreement shall be construed to be a guarantee or promise of future employment of any duration.

**8. Termination of Non-Solicitation Agreement.** This Non-Solicitation Agreement shall terminate only upon the mutual written agreement of the parties.

**9. Survival.** The obligations contained in Paragraphs 2, 3 and 4 shall survive the termination of this Non-Solicitation Agreement. In addition, the termination of this Non-Solicitation Agreement shall not affect any of the rights or obligations of either party arising prior to or at the time of termination of this Non-Solicitation Agreement, or which may arise by any event causing the termination of this Non-Solicitation Agreement.

**10. Waiver of Rights.** If on one or more instances either party fails to insist that the other party perform any of the terms of this Non-Solicitation Agreement, such failure shall not be construed as a waiver by such party of any past, present, or future right granted under this Non-Solicitation Agreement; and the obligations of both parties under this Non-Solicitation Agreement shall continue in full force and effect. Compass' waiver, for whatever reason, of the terms of a non-solicitation agreement between Compass and any other employee shall not operate as a waiver or release of my obligations under the Non-Solicitation Agreement and may not be used as evidence of Compass' intent to waive any of the terms of this Non-Solicitation Agreement.

**11. Modification.** This Non-Solicitation Agreement or any provision of it cannot be modified, abrogated or waived except in a written document signed by the President of Compass or, in the event of the absence of this executive or the vacancy of this position, such other officer of Compass as its Chief Executive Officer shall designate in writing.

**12. Remedies.** I acknowledge and agree that compliance with Paragraphs 2, 3 and 4 of this Non-Solicitation Agreement is necessary to protect the business and goodwill of Compass; and that a breach of Paragraphs 2, 3 or 4 will irreparably and continually damage Compass, for which money damages may not be adequate.

    a.    I agree that, in the event that I breach or threaten to breach any of these covenants, Compass shall be entitled to (i) a preliminary or permanent injunction in order to prevent the continuation of such harm; (ii) money damages insofar as they can be determined; and (iii) any other damages permitted by applicable law. Nothing in this Non-Solicitation Agreement, however, shall be construed to prohibit Compass from also pursuing any other remedy, the parties having agreed that all remedies shall be cumulative.

    b.    In addition to any money damages for the period of time during which I violate these covenants, Compass shall be entitled also to recover the amount of any fees, compensation, or other remuneration earned by me as a result of any such breach, as well as recovery of the consideration provided to me for entering into this Non-Solicitation Agreement.

**13. Tolling Period of Restriction.** I acknowledge and agree that in addition to the remedies Compass may seek and obtain pursuant to Paragraph 12, the Employee Non-Solicitation Period and/or Customer Non-Solicitation Period will be

extended by any and all periods in which I am found to have been in violation of the applicable covenant contained in Paragraphs 2 or 3 of this Non-Solicitation Agreement.

**14. Attorneys' Fees.** In the event of any dispute or controversy arising under this Non-Solicitation Agreement, the prevailing party in any litigation or arbitration shall be entitled to recover from the other party the costs and expenses, including attorney's fees, incurred by the prevailing party related solely to the dispute or controversy.

**15. No Defense.** A claim by me against Compass shall not constitute a defense to Compass' enforcement of the restrictive covenants of this Non-Solicitation Agreement.

2

**Exhibit C**

**16. Severability.** I acknowledge and agree that the parties have attempted to limit my right to solicit only to the extent necessary to protect the legitimate interests of Compass. If any provision or clause of this Non-Solicitation Agreement, or portion thereof, shall be held by any court of competent jurisdiction to be illegal, void or unenforceable in such jurisdiction, the remainder of such provisions shall not thereby be affected and shall be given full effect, without regard to the invalid portion. It is the intention of the parties and I agree, that if any court construes any provision or clause of this Non-Solicitation Agreement, or any portion thereof, to be illegal, void or unenforceable because of the duration of such provision or the area or matter covered thereby, such court shall reduce the duration, area or matter of such provision and, in its reduced form, such provision shall then be enforceable and shall be enforced.

**17. Governing Law/Jurisdiction.** This Non-Solicitation Agreement shall be subject to and governed by the laws of the State of Maryland, without regard to its laws or regulations relating to conflict of laws. I hereby consent to the jurisdiction of, and agree that any claim arising out of or relating to this Non-Solicitation Agreement may be brought in any federal court or any state court of Maryland that has jurisdiction over such matters.

**18. Assignment.** This Non-Solicitation Agreement and any rights thereunder may be assigned by Compass and if so assigned shall operate to protect the Confidential Information and relationships of Compass as well as such information and relationships of the assignee.

**19. Applicability.** This Non-Solicitation Agreement shall be binding upon and shall inure to the benefit of the parties and their successors, assigns, executors, administrators and personal representatives.

**20. Notice.** Any notice to be given to me shall be sent by registered mail, certified mail or any other method by which receipt can be confirmed to me at my last known residence address. Any notice to be given to Compass shall be sent by registered mail, certified mail or any other method by which receipt can be confirmed to Compass at its offices at:

> If to Compass:
>> Compass Marketing, Inc.
>> 222 Severn Avenue, Building 14, Suite 200
>> Attn: Chief Administrative Officer

> If to Employee: the address shown at the end of this Non-Solicitation Agreement.

Either party may change the address to which notices are to be sent by so notifying the other party in writing as set forth in this Non-Solicitation Agreement. If mailed as provided in this Non-Solicitation Agreement, notice shall have been deemed to be given as of the date of mailing.

**21. Headings.** The headings have been inserted for convenience only and are not to be considered when construing the provisions of this Non-Solicitation Agreement.

**22. Opportunity to Review.** I acknowledge and agree that Compass is advising me that I may consult with an independent attorney before signing this Non-Solicitation Agreement.

**23. Complete Understanding.** This Non-Solicitation Agreement constitutes the complete understanding between the parties regarding this subject. This Non-Solicitation Agreement cancels and supercedes any previous agreement on this subject signed by me and Compass prior to the date of this agreement. I acknowledge and agree that notwithstanding the foregoing, this Non-Solicitation Agreement does not cancel or supercede any representations or agreements made by me in any Employee Agreement Concerning Inventions, Intellectual Property, Confidential Information and Conflict of Interest with Compass, and/or Assignment of Inventions and of Letters Patent agreement(s) with Compass.

(Signature page follows.)

3

**Exhibit C**

IN WITNESS WHEREOF, the parties have caused this Non-Solicitation Agreement to be executed and delivered, effective as of the date signed below by a duly authorized officer of Compass.

Dated: _____

_____
Employee

_____
Typed Name

_____
Address

Compass Marketing, Inc.

By: _____
      Name: Erin Songer
      Title:  Chief Administrative Officer

By: _____
      Name: Jerry Cain
      Title:  President

**Exhibit C**