IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| **DAVID J. BOSHEA** | * | |
| | * | |
| Plaintiff, | * | |
| | * | Case No. 1:21-CV-00309-ELH |
| v. | * | |
| | * | |
| **COMPASS MARKETING, INC.** | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANT COMPASS MARKETING, INC.'S RESPONSE TO NONPARTY DANIEL WHITE'S OBJECTION TO SUBPOENA DUCES TECUM AND OPPOSITION TO NONPARTY DANIEL WHITE'S <u>MOTION TO QUASH SUBPOENAS AND FOR PROTECTIVE ORDER</u>**

Defendant Compass Marketing, Inc. ("Compass Marketing"), by and through its undersigned counsel, hereby files this Response to Nonparty Daniel White's Objection to Compass Marketing, Inc's Subpoena Duces Tecum and Opposition to Nonparty Daniel White's Motion to Quash Subpoenas and for Protective Order (the "Objections and Motion to Quash").

As set forth below, Daniel White's meritless Objections and Motion to Quash fall woefully short of any of the permissible bases upon which a subpoena may be quashed. It is abundantly clear from Compass Marketing's defenses (and now Counterclaim and Third-Party Complaint), as well as the answers to interrogatories served by Plaintiff David Boshea ("Plaintiff" or "Boshea"), that Daniel White is a relevant witness to factual matters at issue in this case. Rather than applying any legal standards, Daniel White, an attorney appearing *pro se*,[1] seeks to obfuscate and confuse the Court with false representations that should be an affront to this Court, and do not provide any basis to sustain the Objections and Motion to Quash. Rather than address any legal issues or

---

[1] Daniel White is a prosecutor in St. Mary's County.

standards, Daniel White shamelessly attempts to defame undersigned counsel and continue his campaign to destroy anyone associated with Compass Marketing, whose majority owner and CEO is John White, Daniel White's brother who terminated Daniel White's employment and voted him off the Board of Directors.[2]  Therefore, the Objections and Motion to Quash should be denied and Daniel White should be compelled to provide responsive documents and answer questions under oath at his deposition.

## ARGUMENT

I. **DANIEL WHITE FAILS TO SATISFY THE STANDARDS APPLICABLE TO HIS OBJECTIONS AND MOTION TO QUASH**

The Federal Rules of Civil Procedure set forth four specific instances when a subpoena must be quashed; if it: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or another protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.  *See* FED. R. CIV. P. 45(d)(3)(A).  The Federal Rules also permit a subpoena to be quashed within the discretion of the court if the subpoena requires: (i) disclosing a trade secret or other confidential research, development, or commercial information; or (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences that are in dispute and results from the expert's study that was not requested by a party.  *See* FED. R. CIV. P. 45(d)(3)(B).  None of these bases are put credibly at issue in Daniel White's Objections and Motion to Quash.

The Federal Rules also allow "any person from whom discovery is sought" to move for a protective order to protect the person "from annoyance, embarrassment, oppression, or undue

---

[2] John White suspected (and later confirmed) that Daniel White was engaging in various breaches of his fiduciary duties to Compass Marketing (including misappropriation of Compass Marketing funds).

burden or expense." *See* FED. R. CIV. P. 26(c)(1). *Before requesting a protective order, however*, the movant is *required* to confer with the counsel in an attempt to resolve the dispute without court action. *Id.* (stating that "any person . . . mov[ing] for a protective order . . . *must* include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action") (emphasis added). Daniel White did not comply with the requirements of Rule 26(c)(1), as no certificate of good faith attempts to resolve the dispute was attached to the Objections and Motion to Quash (indeed, none can be attached because Compass Marketing first learned of Daniel White's objections to the subpoena when it received his Objections and Motion to Quash that were filed with the Court). On this basis alone, Daniel White's Objections and Motion to Quash should be denied.

When a party moves to quash a subpoena, it bears a heavy burden. *See, e.g., Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 125 (D. Md. 2009); *see also HDSherer LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013) ("[T]he burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted."). In fact, motions seeking to "prevent the taking of a deposition [are] regarded unfavorably by the courts" and it is "difficult to persuade a court" to grant such a motion. *Minter*, 258 F.R.D. at 125; *see also SEC v. SBM Investments Certificates, Inc.*, Civil Action No. DKC 2006-0866, 2007 U.S. Dist. LEXIS 12685, at *76 (D. Md. Feb. 23, 2007) (recognizing courts generally disfavor completely prohibiting depositions). Daniel White's Objections and Motion to Quash fall woefully short of satisfying these burdens.

Moreover, when filing a motion, the movant must explain the basis for attaching any exhibits. Indeed, this Court does not consider exhibits attached to a motion if the motion does not include any citations or explanations for the significance of the exhibit(s) because it is not the job

of the Court to assume the relevance or significance of any exhibit.  *See, e.g.*, *EDI Precast, LLC v. Carnahan*, 982 F. Supp. 2d 616, 622 fn. 6 (D. Md. 2013) (disregarding exhibits attached to motion without context or explanation because they cannot be considered as proof of any fact); *see also Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534 (D. Md. 2007) (explaining that "it is important for a party offering an exhibit into evidence to clearly explain each purpose for which it is offered, and address any . . . issues associated with each purpose for which it is offered").  While Daniel White attached certain exhibits to and made many (false) allegations in his Objections and Motion to Quash, his Objections and Motion to Quash failed to cite to any exhibit, explain the significance of any exhibit, or support any of his (false) factual assertions, and, on that basis, the Court should not consider any of Daniel White's exhibits.[3]

## II.   DANIEL WHITE IS RELEVANT TO THIS LAWSUIT

### A.   Both the Plaintiff and Defendant Agree that Daniel White Has Information Relevant to this Lawsuit

The standard for discovery is permissive.  Under Rule 26 "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  *See* FED. R. CIV. P. 26(b)(1); *see also, e.g.*, *Ralston Purina Co. v. McFarland*, 550 F.2d. 967, 973 (4th Cir. 1977) (discussing the low threshold for relevant discovery and asking only whether the discovery was "germane" to the subject matter of the pending action).

In this case, there can be no dispute that Daniel White has information that is relevant to the claims/defenses asserted by the parties.  One of Compass Marketing's defenses – in fact, its primary defense – is that the agreement upon which Boshea relies is a forgery and the agreement was never entered into.  *See* Answer [Dkt. No. 27] at 8.  Boshea's Answers to Interrogatories put

---

[3] Rather than repeating this legal standard throughout this Opposition, Compass Marketing will raise it once at the outset of this Opposition.

Daniel White front and center as a critical witness who has information about the supposed agreement and whether it was allegedly entered into. For example, Boshea contends that he "had several conversations with . . . Dan White through which David Boshea and Compass Marketing agreed to the severance agreement." *See* Exhibit 1 (Boshea Answers to Interrogatories at No. 1); *see also id.* at No. 6 (stating that "Daniel White . . . flew to Chicago to meet David Boshea and sell him on Compass Marketing" and "David Boshea and Daniel White had multiple telephone conversations regarding David Boshea's prospective employment including the severance agreement"). Boshea further contends that, after his employment was terminated by Compass Marketing, Daniel White supposedly "reminded that [*sic*] David Boshea has the severance agreement and noted Compass Marketing's obligations." *Id.* at No. 5. These assertions by Boshea alone warrant Compass Marketing's subpoena of Daniel White and necessitate obtaining testimony and any relevant documents he may have regarding such matters.

The fact that Daniel White denies Boshea's assertions further illustrates the significance of obtaining discovery (both documents and testimony) from Daniel White. In this regard, in his Objections and Motion to Quash, Daniel White specifically disputes a number of the factual matters upon which Boshea relies in claiming the agreement was entered into. Daniel White specifically asserts that he "had no prior knowledge of, and did not participate in either the development, execution or ratification of the Boshea employment agreement." *See* Objections and Motion to Quash at ¶ 2D. Compass Marketing has a right to confirm such statements under oath in a deposition.

Daniel White clearly is a relevant witness in this case and the obvious contradiction in factual assertions requires discovery from Daniel White.[4] Accordingly, it should be abundantly clear that the subpoena is warranted and the Objections and Motion to Quash should be denied.

### B. The Documents Requested in the Subpoena Are Narrowly Tailored to Issues Relevant to this Litigation

A simple review of the subpoena shows that it seeks any documents related to Boshea's employment, compensation, and termination of employment. *See* Exhibit 2 (Subpoena). There is nothing unreasonable or oppressive about that, particularly in a case where a central issue is the entering (or not entering) into an employment agreement, the termination of that employment, and the compensation owed (or not owed) to Boshea. Thus, the document requests in this regard are relevant and tailored to the very issues at the center of this litigation.

The subpoena also seeks documents Daniel White sent to or received from Business Filings International, Inc. ("BizFilings") (and, to the extent that Daniel White contends that BizFilings was not Compass Marketing's Registered Agent, from Compass Marketing's Registered Agent) since November 1, 2018. *Id.* These documents are relevant because Compass Marketing needs to understand why a supposed owner of Compass Marketing would receive (as the point of contact for Compass Marketing's Registered Agent) service of a complaint against the company and not notify the company of the complaint to defend itself. *See* Dkt. No. 10. This odd turn of events goes even further when the supposed owner received notice of a motion for default judgment against the company and again failed to provide notice to the company to defend itself. *Id.* These facts warrant discovery in this case where Compass Marketing contends that the alleged

---

[4] Compass Marketing does not suggest or want the Court to infer that the contradictions between Daniel White's assertions and Boshea's answers to interrogatories are the only relevant matters to be addressed in discovery, as there are several other relevant matters that Daniel White can shed light on, but, in an effort to keep this Opposition as brief as possible, Compass Marketing will not address each and every issue upon which Daniel White has relevant information.

6

employment agreement relied on by Boshea is a forgery and that Boshea is conspiring with individuals to do harm to Compass Marketing. *See generally* Counterclaim and Third-Party Complaint. Thus, seeking discovery of these documents is appropriate and warranted based on the assertions made by the parties so far in this case.

      C.      **<u>Daniel White's Alleged Defects with the Subpoena Have No Merit</u>**

           1.      **<u>Documents Potentially Available from Other Sources Does Not Justify Granting the Objections and Motion to Quash</u>**

One of Daniel White's objections is that the information requested can be "more readily" "be obtained" from the Plaintiff. *See* Objections and Motion to Quash at ¶ 2A. As an initial matter, Daniel White provides no substantiation whatsoever other than his self-serving, conclusory assertion, which alone is not sufficient to substantiate and justify a motion to quash. *See, e.g., Metro. Prop. & Cas. Ins. Co. v. McKaughan*, Civil Action WMN-10-00690, 2010 U.S. Dist. LEXIS 155291, at *5 (D. Md. Sept. 14, 2010) (denying motion to quash subpoena, finding movant's "conclusory statements" in support of its motion to quash are "wholly unsupported"); *Minter*, 258 F.R.D. at *124 (noting that conclusory statements cannot establish good cause and satisfy the high standard for issuing a protective order). Moreover, the fact that information may be available from other sources does not justify quashing a subpoena. *See, e.g., City Consumer Services v. Horne*, 100 F.R.D. 740, 747 (D. Utah 1983) (stating that it is "not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record.") (citing *Petruska v. Johns-Manville*, 83 F.R.D. 32, 35 (E.D. Pa. 1979)); *Associated Wholesale Grocers, Inc. v. U.S.*, 1989 U.S. Dist. LEXIS 14047, 1989 WL 110300, *8 (D. Kan. June 7, 1989) (stating that defendant's argument of equal accessibility is not sufficient to resist discovery) (citing *City Consumer Services*).

### 2. The Objection Based on Lack of Temporal Limitations Is Simply Not True and, Even if It Were, It Does Not Support Quashing the Subpoena

Daniel White falsely contends that there are no temporal limitations in the subpoena. *See* Objections and Motion to Quash at ¶ 2B. First, on the face of the subpoena there are express temporal limitations in document requests 9, 10, and 11, which limit the scope of documents to those dating back to November 1, 2018. *See* Exhibit 2. Second, with respect to document requests 2, 3, and 5, which are focused on Boshea's employment with and compensation from Compass Marketing and any agreements with Compass Marketing, they are necessarily limited to 2007 through 2020 (when Boshea's employment was terminated).[5] *See* Exhibit 2; *see also* First Am. Compl. at ¶ 11 (alleging when Boshea's employment began). Third, document request 4 is limited to documents related to Boshea's termination from employment, which are necessarily limited to documents since March 2020. *See* Exhibit 2; *see also* First Am. Compl. at ¶ 11. Fourth, document requests 6 and 8 are limited to matters that refer, reflect, or relate to this litigation, and those requests necessarily are limited to documents since February 2021, when this lawsuit was first filed. *See* Exhibit 2; *see also* Dkt. No. 1. Lastly, with respect to document requests 1 and 7, which seek any document related to Boshea, those requests likewise are limited to documents since 2007 when Boshea commenced employment with Compass Marketing.[6]

---

[5] Daniel White potentially could claim to have entered into an agreement with Boshea after Boshea's employment terminated in March 2020, as Daniel White has falsely represented to various individuals and entities that he is an authorized officer/agent of Compass Marketing since his employment was terminated in November 2018. *See* Exhibit 3 (Email from J. White to D. White dated November 23, 2018); *see also, e.g.*, Exhibit 4 (filing with the Virginia State Corporation Commission by Daniel White dated Feb. 14, 2021). Also, during his employment with Compass Marketing, Daniel White opened a bank account with his brother, Michael White, in Compass Marketing's name without John White's knowledge or consent, using Michael White's home address as the alleged address for Compass Marketing, as a way to siphon funds from Compass Marketing without John White's knowledge. *See* Exhibit 5 (Signature Cards for Community First Bank Accounts).

[6] To the extent any relationship between Daniel White and Boshea pre-existed Boshea's employment relationship with Compass Marketing, Compass Marketing would be willing to limit those document requests to documents since January 1, 2007.

Clearly, on the face of the subpoena, the document requests are not overbroad with respect to temporal proximity (or on any other grounds). Even if the requested documents somehow created a burden on Daniel White, which they do not, he has not provided any basis to support his self-serving conclusory assertion, which falls woefully short of satisfying the burden he bears in opposing the subpoena. *See, e.g., Innovative Therapies, Inc. v. Meents*, 302 F.R.D. 364, 377 (D. Md. 2014) (stating, "[t]he burden is on the movant to establish good cause under Rule 26(c); the movant must set forth specific and particular facts, rather than broad conclusory statements as to why a protective order should issue" and "to obtain a protective order, the moving party must demonstrate 'that the discovery sought lacks relevance to the extent that the likelihood and severity of the harm or injury caused . . . outweighs any need for the information'"). Indeed, "when relevance and need have been demonstrated, 'the fact that the materials requested cover an extended period of time and are voluminous will not render the subpoenas invalid.'" *United States v. International Business Machines Corp.*, 83 F.R.D. 97, 107 (S.D.N.Y. 1979) (citing *Democratic National Committee v. McCord*, 356 F. Supp. 1394, 1396 (D.D.C. 1973)).

### 3. Daniel White Was Properly Served

There is a strong presumption that service is proper and the burden is on the party contesting service to demonstrate it was improper. *See Republic Productions, Inc. v. American Fed. of Musicians*, 173 F. Supp. 330, 333 (S.D.N.Y. 1959). Here, Daniel White includes nothing but another self-serving, conclusory statement without any factual support (or even factual allegations) whatsoever. *See* Objections and Motion to Quash at ¶ 2H. For this reason alone, this objection fails. Nevertheless, Daniel White was properly served, as he obviously received the subpoena, and it was served on him by an officer of the Sheriff's Department. *See* Exhibit 6 (Affidavit of Service by Lt. Clayton O. Safford of the St. Mary's County Sheriff's Office).

**D.     Information Requested in the Subpoena Does Not Implicate the Attorney-Client Privilege**

Like Daniel White's other assertions, his assertion that the subpoena seeks documents that would invade the attorney-client privilege is an empty, self-serving, conclusory statement with no factual or legal support whatsoever. *See* Objections and Motion to Quash at ¶ 2I. Indeed, the party asserting the attorney-client privilege bears the burden of demonstrating the privilege applies. *See United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (noting that the burden is on the proponent to demonstrate the applicability of the attorney-client privilege). The absence of support for Daniel White's baseless assertion alone defeats this objection.

Even if Daniel White somehow provided anything other than his empty, self-serving, conclusory statements, he falls well short of establishing the applicability of the attorney-client privilege to any information sought by the subpoena. For example, Daniel White fails to identify the alleged client, the alleged attorney, and the alleged communications that would be subject to the attorney-client privilege, and he fails to follow any of the procedural requirements to preserve any potentially applicable privilege.[7] *See Jones*, 696 F.2d at 1072 (setting forth standard that the "proponent must establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived"); *see also* D. Md. Local Rules, Discovery Guideline 10 (setting forth requirements related to the assertion of the attorney-client privilege, including the creation of the privilege log, the duty to meet and confer prior, and the requirement of providing an affidavit to support the claim of privilege, and noting

---

[7] Furthermore, Instruction K in Schedule A attached to the subpoena (*see* Exhibit 2) clearly spells out a procedure for the deponent to assert privilege and to withhold privileged information, but Daniel White failed to include any such information prior to filing or in his baseless Objections and Motion to Quash.

10

that the failure to comply with these requirements may result in a waiver of any potentially applicable privilege).

Even if Daniel White somehow established these basic elements of the attorney-client privilege, which he does not, the documents and information requested do not implicate any privileged communications. For example, the subpoena seeks agreements with Boshea, documents sent to/received from BizFilings (Compass Marketing's Registered Agent), and communications with Boshea – all of whom are third parties, which necessarily defeats any claim of privilege. *See E.I. Dupont de Nemours & Co. v. Forma-Pack, Inc.*, 351 Md. 396, 416, 718 A.2d 1129 (1998) ("[G]enerally the presence of a third party will destroy the attorney-client privilege.") The other requests concern matters related to Boshea's compensation, employment with Compass Marketing, and termination of employment – none of which implicate the privilege and, even if there could theoretically be any privileged communications at issue, it certainly would not reach every such communication. *See Jones*, 696 F.2d at 1072 (explaining that the proponent must establish that the attorney-client relationship existed and that the *particular communications at issue are privileged* and that the privilege was not waived). Therefore, even if there was any merit to this baseless objection, it would not preclude production/testimony of non-privileged communications on such matters. *See* FED. R. CIV. P. 26(b) (allowing discovery "regarding any nonprivileged matter"); *Khoshmukhamedov v. Potomac Elec. Power Co.*, Civil Action No .AW-11-449, 2012 U.S. Dist. LEXIS 53726, at *17 (D. Md. Apr. 17, 2012) (requiring plaintiffs to redact and log privileged portions and produce non-privileged portions of responsive documents). However, in this instance, there is no privilege between Daniel White and Boshea, as Daniel White has not represented Boshea, and, to the extent that any privilege applies to communications involving Compass Marketing, Compass Marketing is the holder of that privilege and it would be

up to Compass Marketing to determine whether the materials at issue invoke the attorney-client privilege and whether it can/should be waived.[8]

For these reasons, Daniel White's hollow reliance on the attorney-client privilege does not justify quashing the subpoena or even limiting in any way whatsoever his responses to the subpoena.

### III. Daniel White's Defamatory Statements About Undersigned Counsel Are a Desperate Attempt to Distract from the Issues Relevant to the Court's Analysis and Continue His Campaign to Destroy Compass Marketing and Anyone Associated with His Brother John White and Compass Marketing

#### A. Daniel White Seeks the Dissolution of Compass Marketing

The issue before the Court is whether the subpoena Compass Marketing served on Daniel White seeks information relevant to this litigation and whether it should be enforced. Daniel White's Objections and Motion to Quash, however, constitute a pathetic smear campaign that makes a series of empty, unsupported, defamatory assertions directed at undersigned counsel with no relevance to the issues before the Court.

Daniel White, along with his brother Michael White, are determined to try to destroy the company they own with their brother, John White. They even filed a baseless lawsuit in Virginia that sought the judicial dissolution of Compass Marketing. *See* Exhibit 7 (First Amended Complaint in Virginia Litigation). When they were compelled by court order, however, to produce documents in support of their baseless allegations, sit for depositions, and produce documents and other information that would reveal the various schemes aimed at destroying Compass Marketing (including the theft of funds), they promptly filed a nonsuit. *See* Exhibit 8 (Notice of Nonsuit); *see also* Exhibit 9 (Transcript of Hearing on Motion to Compel).

---

[8] To the extent that Daniel White is trying to assert that he has the right to control the privilege on behalf of Compass Marketing, that baseless assertion is resoundingly proven to be untrue in Section III.A below.

The alleged (false) premise of Daniel White's and Michael White's lawsuit, and presumably Daniel White's baseless assertion of the attorney-client privilege in his effort to quash the instant subpoena, is that Daniel White and Michael White each own 150 shares of Compass Marketing, which amounts to 25% of Compass Marketing (and, together, 50%), while John White owns only 300 shares of Compass Marketing (constituting the other 50% of the company). *See* Objections and Motion to Quash, Exhibit 2 at ¶ 4; *see also* Exhibit 7 at ¶¶ 3-5. This assertion (under oath no less) is demonstrably false and warrants appropriate discipline by the Court, particularly with Daniel White's status as an officer of the Court.

As Daniel White (and Michael White) alleged in the Virginia litigation, John White was issued 300 shares of Compass Marketing when the company was formed in 1998. *See* Exhibit 7 at ¶ 21. Later, in June 2001, Daniel White sold half his shares to his brother Michael, with each of them having 150 shares after the sale. *Id.* at ¶ 23. The details of that transaction were set forth in Minutes of a Special Meeting of the Shareholders of Compass Marketing on June 11, 2001.[9] *See* Exhibit 10 (Shareholder Minutes). In that same meeting, John White exercised his option to purchase an additional 300 shares of Compass Marketing. *Id.* The issuance of these additional 300 shares to John White were reflected in Stock Certificate #4, which was signed by Daniel White. *See* Exhibit 11 (Stock Certificate #4). And the issuance of the 150 shares each to Daniel and Michael White were reflected in Stock Certificate #s 5 and 6, each of which were also signed by Daniel White. *See* Exhibit 12 (Stock Certificate #5); Exhibit 13 (Stock Certificate #6). Thus, at the conclusion of that June 11, 2001 meeting, John White owned 600 shares (approximately 66.67%) of Compass Marketing, and Daniel and Michael White each owned 150 shares (approximately 16.67%) of Compass Marketing. There have been no share transactions since the

---

[9] Notably, those meeting minutes were signed by Daniel White.

June 1, 2001 meeting to alter the ownership interests of Compass Marketing. Indeed, years later, in 2015, when Daniel and Michael White tried to falsely claim they each owned 25% of the company, they again acknowledged John White's majority ownership in a Resolution of the Board they each signed. *See* Exhibit 14 (Resolution of the Board dated July 20, 2015). Thus, Daniel White's assertions about share ownership are patently false.

> **B. Daniel White Provides No Basis to Support His False Assertions About Undersigned Counsel, Which Are Irrelevant to the Issue Before the Court**

Daniel White claims that the subpoena was issued to harass him. *See* Objections and Motion to Quash at ¶ 2C. Again, as with all other assertions made by Daniel White, he provides not factual or legal support.

As an initial matter, as demonstrated above in Section II.A, Daniel White clearly possesses information relevant to this litigation, as asserted by *both* the Plaintiff and Defendant. The facts of this lawsuit – as proffered by both the Plaintiff and Defendant – clearly refute the empty assertion by Daniel White that the subpoena was served to harass him.

Daniel White proceeds to claim that undersigned counsel is a "business partner" of his brother John White and that undersigned counsel owns an entity known as Smart Retail, Inc. *See* Objections and Motion to Quash at ¶¶ 2D, 2E, and 2G. This is an ongoing false assertion repeated by Daniel White over and over, with no truth whatsoever, in an attempt to fabricate some ethical violation by undersigned counsel. Undersigned counsel does not own and has never owned an entity known as Smart Retail, Inc. Even if there were any truth to the allegation, which there is not, it would have no bearing whatsoever on the outcome of the Objections and Motion to Quash (and would not give rise to any ethical violation by undersigned counsel).[10]

---

[10] Daniel White (and Michael White) also attempted to smear undersigned counsel with allegations of unethical conduct in the Virginia litigation – the same litigation they abandoned when they were compelled to substantiate their various (false) claims.

14

Daniel White also asserts that the subpoena is somehow intended to "discourage his participation in [unidentified] ongoing federal and state investigations into the actions of the management of Compass and its attorney." *See* Objections and Motion to Quash at ¶ 2C. It is not clear how the subpoena at issue in this litigation would somehow discourage Daniel White's participation in any (unidentified) federal or state investigation(s), and of course Daniel White has provided no details to clarify this contention.

Daniel White also raises some bizarre issue about a company known as Tagnetics, Inc. ("Tagnetics"), that is incomprehensible and unclear how it relates to this case. *See* Objections and Motion to Quash at ¶ 2F. Daniel White, however, does make another patently false statement that undersigned counsel has "an undisclosed financial interest" in Tagnetics. *Id.* It also is unclear how undersigned counsel's testimony in an unrelated proceeding on a motion to enforce a settlement agreement has any bearing on this proceeding or raises any so-called ethical issues.[11]

Lastly, Daniel White's assertion that the subpoena was not properly issued is simply false and not supported by the facts or applicable law. *See* Objections and Motion to Quash at ¶ 2E. The Federal Rules of Civil Procedure specifically authorize any attorney who is authorized to practice in the issuing court to issue and sign a subpoena. *See* FED. R. CIV. P. 45(a)(3). Undersigned counsel is authorized to practice before this Court and issued the subpoena on behalf of a corporate client, where the CEO and majority owner of that corporate client retained undersigned counsel on behalf of the corporation.[12] Moreover, the subpoena was not actually

---

[11] To demonstrate these facts would require the submission of a transcript and a number of briefs and court orders. It seems unnecessary to burden the Court with such a large volume of paper, particularly when the assertion has no bearing on this litigation and it is Daniel White's burden to prove. If the Court were to request it, however, it can be provided, as the filings that would demonstrate these facts are a matter of public record in the Tagnetics litigation.

[12] Even Daniel White and Michael White were to somehow prove that John White is not the majority owner of Compass Marketing, which they cannot, it is undisputed that John White is and has been the CEO for many years, long pre-dating undersigned counsel's representation of the company and, as the CEO, John White has the apparent authority to retain counsel on behalf of Compass Marketing.

15

issued by undersigned counsel; rather, when an attorney issues a subpoena, the attorney acts on behalf of the court and it should be treated as an order of the issuing court. *See Higginbotham v. KCS Int'l, Inc.*, 202 F.R.D. 444, 456 (D. Md. 2001).

## **CONCLUSION**

As demonstrated above, Daniel White's Objections and Motion to Quash is an attempt to smear undersigned counsel in a desperate attempt to avoid having to testify under oath and produce documents that are (presumably) damaging to Daniel White (and Boshea's lawsuit against Compass Marketing). Daniel White has knowledge of facts pertinent to both the prosecution and defense of this case, and the documents requested of him are relevant and tailored to the necessary issues. Even more incredulous is the fact that Daniel White is an attorney who has been licensed to practice law in the State of Maryland since 2002; yet, he fails at every turn to apply any legal standards to his arguments or substantiate his false and empty assertions aimed at denigrating undersigned counsel. For these reasons, Daniel White's Objections and Motion to Quash should be denied in its entirety, Daniel White should be compelled to produce the requested documents and appear for deposition, and the Court should grant such other relief as it deems appropriate.

Dated:  August 30, 2021                     Respectfully submitted,

*/s/ Stephen B. Stern*
Stephen B. Stern, Bar No.: 25335
Heather K. Yeung, Bar No.: 20050
KAGAN STERN MARINELLO & BEARD, LLC
238 West Street
Annapolis, Maryland 21401
(Phone): (410) 216-7900
(Fax):  (410) 705-0836
Email:  stern@kaganstern.com
Email:  yeung@kaganstern.com

*Counsel for Defendant*
*Compass Marketing, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of August, 2021, the foregoing Defendant Compass Marketing, Inc.'s Response to Nonparty Daniel White's Objection to Subpoena Duces Tecum and Opposition to Daniel White's Motion to Quash Subpoenas and for Protective Order was served via the CM/ECF system on the following counsel of record:

| | |
|---|---|
| Thomas J. Gagliardo<br>Gilbert Employment Law, PC<br>1100 Wayne Avenue, Suite 900<br>Silver Spring, MD 20910<br>Email: tgagliardo@gelawyer.com | Gregory J. Jordan<br>Mark Zito<br>Jordan & Zito, LLC<br>350 N. LaSalle Drive, Suite 1100<br>Chicago, Illinois 60654<br>Email: gjordan@jz-llc.com |

*Attorneys for Plaintiff David Boshea*

and via electronic mail to:

Daniel White
P.O. Box 1760
Leonardtown, MD 20650
danieljwhite@msn.com

*pro se movant*

                                                           */s/ Stephen B. Stern*
                                                           Stephen B. Stern