# EXHIBIT 7

VIRGINIA:

## IN THE CIRCUIT COURT FOR ARLINGTON COUNTY

| | | |
|---|---|---|
| DANIEL J. WHITE | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MICHAEL R. WHITE | ) | |
| | ) | |
| on behalf of themselves and, derivatively, | ) | Case No.: CL19003628-00 |
| on behalf of COMPASS MARKETING, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMPASS MARKETING, INC., | ) | |
| | ) | |
| And | ) | |
| | ) | |
| JOHN D. WHITE | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

For their First Amended Complaint against Defendants Compass Marketing, Inc., ("Compass"), and John D. White ("John White") (collectively, the "Defendants"), Plaintiffs Daniel J. White ("Daniel White") and Michael R. White ("Michael White"), on behalf of themselves and, derivatively, on behalf of Compass, (collectively, the "Plaintiffs") state and allege as follows:

## INTRODUCTION

1.     This matter arises from a series of fraudulent actions and transactions directed and perpetuated by Defendant John White. Compass was once a once thriving family business owned by brothers Daniel White, Michael White, and John White.  Unfortunately, management of Compass is now completely and hopelessly deadlocked because of Defendant John White's

illegal, fraudulent, disloyal, and oppressive conduct.   Not only has Defendant John White
wrongfully seized control of the company by physically locking his brothers out of the business
and taking all decision-making away from his brothers, who are the only other directors, but he is
using Compass as a vehicle to engage in fraudulent and deceptive practices in the sale of
securities in other businesses.   The affairs of the company can no longer be conducted to the
advantage of all the shareholders, and it is imperative to appoint a receiver and dissolve the
company before John White's unlawful conduct creates further harm and damage to the
company, the Plaintiffs, and others.

      2.      On behalf of themselves and, derivatively, on behalf of Compass, Plaintiffs
Daniel White and Michael White seek temporary and permanent injunctions, appointment of a
custodian and/or receiver pursuant to § Va. Code 13.1-748, a full accounting, a declaratory
judgment, judicial dissolution of Compass pursuant to Va. Code Ann. § 13.1-747, and damages
exceeding $25,000.

### PARTIES

      3.      Plaintiff Daniel White is an adult resident of the State of Maryland.   Daniel White
is and has at all relevant times been the twenty-five percent (25%) owner of the outstanding
Compass corporate stock and is a director of Compass.

      4.      Plaintiff Michael White is an adult resident of the State of Maryland.   Michael
White is and has at all relevant times been the twenty-five percent (25%) owner of the
outstanding Compass corporate stock and is a director of Compass.

      5.      Defendant John White is an adult resident of the State of Maryland.   John White
is and has at all relevant times been the owner of the remaining fifty percent (50%) of the
outstanding corporate stock of Compass and is a director of Compass.

2

6.      Plaintiffs Daniel White and Michael White fairly and adequately represent the corporation in enforcing its rights.

7.      Compass is a corporation duly organized under the laws of the Commonwealth of Virginia in 1998 with its initial principal office at 6851 North Washington Blvd., Arlington, Virginia.

8.      Compass maintains a registered agent in the Commonwealth of Virginia.

9.      Compass' current principal place of business is located at 222 Severn Avenue, Building 14, Suite 200, Annapolis, Maryland.

## JURISDICTION AND VENUE

10.     This Court has personal jurisdiction over Compass, as a corporation organized under the laws of Virginia, pursuant to Va. Code Ann. §§ 13.1-603 and 13.1-747.

11.     Venue is proper in this Court pursuant to Va. Code Ann. §§ 8.01-262 and 13.1-747.

12.     This Court has personal jurisdiction over Defendant John White, an Officer and Director of a Virginia Corporation with significant ties to the state as outlined below, pursuant to Va. Code Ann. §§ 8.01-328.1.

13.     Conducting business in the Commonwealth Virginia, and fostering relationships with Virginia entities, was an essential part of Defendant John White's conduct as the controlling and dominating shareholder of Compass, both in carrying on its business and in taking the improper and illegal actions and breach of his fiduciary duties.

14.     Defendant John White has engaged in a persistent course of conduct in the Commonwealth of Virginia that gives rise to this action and which contribute to the basis of the

3

claims against him and the that the claim for judicial dissolution of Compass and the appointment of a custodian and/or receiver.

15.     Among other things, Defendant John White attended meetings with Compass' largest client, Mars, Inc. at its McLean, Virginia headquarters, during the relevant time periods. Compass' business with Mars exceeds $5 million.

16.     Through December 2016, Tagnetics had an office in the Commonwealth of Virginia, located at 1537 Mill Race Drive, Salem VA 24153.

17.     Defendant John White also coordinated and attended several meetings in Virginia for the purpose of developing his scheme to fraudulently sell stock in the company known as Tagnetics, Inc. ("Tagnetics"), in which he acted under the name of Compass and used Compass' reputation and market presence to endorse and provide credibility for the otherwise illegitimate Tagnetics' scheme.

18.     Upon information and belief, on or about October 2, 2017, Defendant John White attended a meeting of Tagnetics investors at The Ritz-Carlton Tysons Corner, 1700 Tysons Boulevard, McLean, VA 22102 in furtherance of his fraudulent scheme Tagnetics.

19.     Upon information and belief, on or about September 26, 2018, Defendant John White attended the 2018 SmartLabel Summit held in Arlington, Virginia in furtherance of his fraudulent scheme in Tagnetics.

## FACTUAL BACKGROUND

### A. Plaintiff Daniel White and Defendant John White Co-Found Compass

20.     Plaintiff Daniel White caused Compass to be incorporated in the Commonwealth of Virginia on or about February 4, 1998. Compass was created as a Stock Corporation with authority to issue 1,500 shares of common stock and with one initial director, Plaintiff Daniel

4

White. Compass is a manufacturers' representative that partners with various brands of consumer goods used to obtain a brand presence in retail and specialty marketplaces.

21.     On or about March 1, 1998, Compass adopted its by-laws and issued 900 shares of Common Stock, 300 each to Robert Morgan, Plaintiff Daniel White, and Defendant John White, respectively. Each shareholder paid $1,000 consideration for his respective 300 shares.

22.     On or about March 1, 1998, Compass named the following officers and directors: Plaintiff Daniel White, President, CEO, and Treasurer; Robert Morgan, Chairman of the Board and Executive Vice President; and Defendant John White, Secretary.

23.     On or about June 11, 2001, Daniel White sold half of his ownership, or 150 shares of Compass Common Stock, to Michael White for $1,500.00. Michael White was subsequently made an officer and director of the company.

24.     On or about March 11, 2004 Robert Morgan resigned from Compass and surrendered his Common Stock back to Compass. Such shares were never reissued.

25.     No other shares of Compass Common Stock were ever validly issued or transferred. Thus, Daniel White, Michael White, and John White are the owners of 150 shares (or 25%), 150 shares (or 25%) and 300 shares (or 50%), respectively.

26.     At its pinnacle approximately six years ago, Compass managed nearly $200 million in sales of manufacturers' products to non-traditional retail channels, received commission-based revenues of nearly $18,000,000, and had approximately 70 employees.

27.     One of the largest sources of revenue to Compass's through 2014 was commissions from the sale of the sweetener Splenda. By 2015, Compass's largest client, Johnson, and Johnson, had sold Splenda.   As a result, commissions to Compass drastically declined.  The new owners of Splenda ultimately terminated the contract with Compass.

5

**B. Defendant John White's Fraudulent Scheme Concerning Tagnetics**

28.    Tagnetics is a Delaware corporation, currently insolvent, and the defendant in an involuntary bankruptcy petition in the United States Bankruptcy Court for the Southern District of Ohio.

29.    Defendant John White is also the co-CEO of Tagnetics and owns tens of thousands of shares of stock in Tagnetics. John White has drawn an unreasonable salary and other compensation from Tagnetics, mostly at Compass' expense.

30.    On or about September 12, 2011, Defendant John White caused Compass to enter into a Consulting Agreement with Tagnetics ("Consulting Agreement") whereby Compass would leverage its expertise in developing relationships and building business with major retail outlets. In exchange, Tagnetics was to pay Compass a consulting fee.

31.    The Consulting Agreement named Defendant John White as the project manager for Compass and the primary contact for all matters relating to the project.

32.    The initial term of the Consulting Agreement was five (5) years, with an automatic renewal in one-year increments thereafter.

33.    The Consulting Agreement expressly states that Compass is an independent contractor and that no employment relationship was created thereby. The Consulting Agreement further expressly forbids Compass from acting or holding itself out as an employee or joint venture of, or with, Tagnetics.

34.    In addition to the consulting fee, the Consulting Agreement provided that Tagnetics would reimburse Compass for all reasonable expenses incurred by Compass in performing the services thereunder.

35.     Accounts receivables for payment of these Tagnetics expenses were recorded as invoices to Tagnetics on Compass's books and records.

36.     Defendant John White became increasingly involved and focused on Tagnetics. Instead of focusing on increasing or maintaining Compass profitability, Defendant John White began to misappropriate Compass assets for Tagnetics.

37.     Defendant John White began using Compass Funds to support Tagnetics and to cover the operating costs of Tagnetics' failing business, including its exorbitant sales and entertainment expenses related to acquiring new Tagnetics investors and generally funding his fraudulent scheme.

38.     Defendant John White caused the Compass accounts receivable to be converted into Tagnetics stock, which he knew to be either worthless or significantly overvalued. Tagnetics was, at all relevant times, a failing company with little or no profits.

39.     Since 2011, Defendant John White has caused the conversion of over one and a half million dollars of Compass invoices to Tagnetics into stock shares in Tagnetics.

40.     Amounts of invoices or loans and purported conversions now known to Plaintiffs are as follows:

| Compass Loan Date | Amount | Date Issued Purportedly Converted | Tagnetics Shares Purportedly Issued to Compass |
|---|---|---|---|
| (unknown) | $375,000 | 12/29/2011 | 10,971.33 Shares (total investment $375,000; 13.72 units at $27,334 each) |
| (unknown) | $65,000 | 1/18/2012 | 2,377 Shares at $27.334 (total "investment" $65,000) |
| (unknown) | $65,000 | 1/18/2012 | 1,901.70 Shares (total "investment" $65,000; 2.337 units |

| | | | at \$27,344 each) |
|---|---|---|---|
| 2/22/2012 | \$40,000 | 5/3/2012 | 7,314.22 Shares (total "investment" |
| 3/16/2012 | \$25,000 | | \$250,000; 9.143 units at \$27,344 each) |
| 4/4/2012 | \$100,000 | | |
| 4/17/2012 | \$35,000 | | |
| 4/26/2012 | \$25,000 | | |
| 5/3/2012 | \$25,000 | | |
| 5/8/2012 | \$25,000 | 5/24/2012; 6/4/2012 (subscription agreement; stock certificate) | 2,194.27 shares (total "investment" \$75,000; 2.743 units at \$27,334) |
| 5/24/2012 | \$50,000 | | |
| 6/7/2012 | \$25,000 | 6/11/2012; 6/4/2012; (subscription agreement; stock certificate) | 2,194.27 Shares (total "investment" \$75,000; 2.743 units at \$27,334) |
| 6/11/2012 | \$50,000 | | |
| (various dates/open invoices) | \$700,690 | 8/29/2016 | 20,500 shares (total "investment \$700,690) |

41.     Upon information and belief, the above only represents a portion of the purported conversions. Plaintiffs are unable to ascertain the full extent of Defendant John White's conversion of Compass assets to Tagnetics stock.

42.     In or around 2015, Defendant John White began selling off the worthless, or significantly overvalued, Compass-owned Tagnetics stock to unwitting investors.

43.     Upon information and belief, Defendant John White has resold millions of dollars of worthless Tagnetics stock and thousands of stock options. Plaintiffs are unable to discern the

8

full extent of such conversions and resale as a direct result of Defendant John White's deceptive actions and subsequent lock-out of Plaintiffs from Compass.

44.     Resale of purported Compass-owned Tagnetics stock now known to Plaintiffs is as follows:

| Date | Investor | Shares Sold | Purchase Price |
|---|---|---|---|
| 9/5/2015 | Jerry Cain | 3,000 | $102,520.00 |
| 9/5/2015 | Jerry Cain | Option to buy 3,000 | $30.00 |
| 10/13/2015 | Deerwood Associates, L.P. | 29,257 | $1,000,000.00 |
| 1/26/2016 | Raymond Bracy | 3,000 | $102,540.00 |
| 2/22/2016 | Raymond Bracy | 3,000 | $102,540.00 |
| 2/9/2016 | Larry McWilliams | 3,000 | $100,000.00 |
| 9/1/2016 | Jeffrey Moorad | 5,581 | $200,000.00 |

45.     Upon information and belief, the above only represents a portion of the purported resales. Plaintiffs are unable to ascertain the full extent of Defendant John White's resales of purported Compass-owned Tagnetics stock.

46.     Defendant John White Forged Plaintiff Daniel White's signature on the Stock Purchase Agreements for both Mr. Cain and Deerwood Associates.

47.     Defendant John White also sold purported Compass-owned Tagnetics stock more than what Compass purportedly held. Then, with the assistance and participation of his associates at Tagnetics, directed that additional Compass invoices be converted to Tagnetics stocks retroactively to cover the fraudulent sales.

48.     For example, in or about January 2016, Plaintiff Michael White rejected a check presented by Defendant John White from Raymond Bracy for purported Compass-owned stock, which Compass did not own. In mid-2019 Plaintiffs learned for the first time that Defendant John White had misappropriated such funds, by depositing them into a separate unauthorized bank account.

49.     Defendant John White also approved the sale of Compass-owned Tagnetics stock to Todd Mitchell ("Mitchell") for $0.01. This was effectively giving the stock to Mitchell.

50.     Defendant John White misappropriated the proceeds of the sale of Tagnetics stock for Defendant John White's personal and non-Compass use. Plaintiffs are unable to discern the full extent of such misappropriation, a direct result of Defendant John White's deceptive actions and his subsequent lock-out of Plaintiffs from Compass.

51.     Defendant John White leveraged Compass' reputation and legitimate business, fraudulently asserting that Compass was the parent company of Tagnetics, to mislead potential Tagnetics investors and business partners as to the status of Tagnetics.

52.     Defendant John White used more than fifty percent (50%) of alleged Compass payroll to pay employees performing work for other, non-affiliated entities, such as Tagnetics. The work done by these employees does not benefit Compass and is in furtherance of unlawful purposes and fraudulent investment schemes.

53.     Defendant John White has also placed people on the Compass payroll to influence them to not disclose information about the scheme involving Tagnetics. For example, Defendant John White hired an individual named Luis Fernandez, a former Tagnetics bookkeeper, and placed Mr. Fernandez on the Compass payroll when Mr. Fernandez was subpoenaed by the plaintiffs in the Tagnetics bankruptcy case. Mr. Fernandez does not work for Compass. Rather, works on Defendant John White's personal taxes and manipulating the financial data of Tagnetics.

54.     In June 2019, John White hired a friend on Compass' payroll whose job description included working for "IOT Smart Retail," another sham entity created by John

10

White. The employee performs no work for Compass. Instead, she travels with John White on the Company's expense account as a companion for business unrelated to Compass.

55.     In October 2019, Defendant John White hired the president of Tagnetics, Jerry Cain, to also be the president of Compass at a salary of $400,000 plus benefits. Upon information and belief, Jerry Cain does not perform work on behalf of Compass.

56.     Defendant John White has used Compass funds to make many payments (totaling, upon information and belief, more than $2 million) for the benefit of Tagnetics, including payments to its disgruntled investors, creditors, employees, business development costs, and attorneys' fees—none of which have any connection to the business needs or affairs of Compass.

57.     Stephen Stern, Esq. ("Mr. Stern") assisted Defendant John White's breaches of fiduciary duties and misappropriation of Compass Funds, including assisting in the transfer of Compass funds through the attorney trust account for his firm's, Kagan Stern Marinello & Beard, LLC's ("Kagan Stern"), to make payments in Tagnetics' bankruptcy case.

58.     In addition to paying payroll and business expenses, Defendant John White used Compass money to fund exuberant and outrageous investor and marketing events for Tagnetics. In the most exceptional example, Defendant John White spent approximately $500,000.00 of Compass funds for such prospects to attend a Super Bowl, charter a cruise ship to the Bahamas, and return via flight. Defendant John White also traveled to Cuba on a private jet at Compass' expense to induce partnerships with, and investments in, Tagnetics.

## C. Additional Misappropriation and Corporate Waste

59.     In or around May 2019, Defendant John White, without authorization, increased his salary to the unreasonable and exorbitant amount of $600,000 per year.

11

60. In or around May 2019, Defendant John White also spent unnecessary, unreasonable, and exorbitant amounts of Compass money for his personal security. Upon information and belief, the personal security guards are receiving unreasonable and exorbitant compensation totaling more than $500,000.00 annually. Similarly, John White directed Compass to install security cameras in and around the company's facilities at a cost of approximately $50,000.00. Compass never had, and currently does not need, extensive physical security for its premises or personal security for John White.

61. In May 2019, Defendant John White also increased the salaries of certain Compass employees to unreasonable and exorbitant amounts, including then Compass President Mitchell, whose compensation was increased to $600,000 per year and an additional unauthorized bonus of $50,000.00.

62. Defendant John White also caused Compass to issue a note payable to PTM Capital, LLC (an entity owned or controlled by Mitchell) for $291,361.15. Upon information and belief, the note payable issued PTM Capital was not supported by valid consideration.

63. Defendant John White has offered ownership interest in Compass to employees, without authorization and consent by or consultation with, or any notice to, the other directors or shareholders.

64. Beginning in May 2019, Defendant John White began diverting money that had been withheld from employee paychecks for deposit into Compass' 401(k) Plan at Principal Financial, to fund their own newly increased salaries, and to continue funneling Funds to Tagnetics.

65. Plaintiffs Daniel White and Michael White are the designated sole trustees of the Compass 401(k) Plan. Defendant John White is not a trustee and has no authority over

12

contributions to the Plan or the Plan assets. Nonetheless, Defendant John White has blocked Plaintiffs Daniel White's and Michael White's access to the Plan and all Plan information.

66.     During 2019, Defendant John White used more than $100,000.00 in Compass funds on personal attorneys' fees and settlement payments related to a sexual harassment and discrimination claim brought against him by an individual he allegedly hired as Compass employee. In fact, however, Defendant John White actively deceived the other directors and defrauded Compass by hiring this employee to work for a fictitious company called Compass Premium Services, placing her on the Compass payroll (and paid an exorbitant and unreasonable amount of more than $500,000 total), and providing her with a vehicle, but he did not require this employee to come to work or perform duties for the corporation.

67.     In addition to his exorbitant spending of non-Compass expenses, Defendant John White has failed to use Compass funds toward necessary and appropriate ends, such as paying rent on its warehouse. The company's landlord has twice obtained judgments against Compass for failure to pay rent.

68.     Defendant John White has wrongfully used funds from Compass to make unauthorized payments against his personal tax liens. Further, such liens have negatively impacted the operations of Compass by impeding its ability to obtain financing.

69.     As a result of Defendant John White's inappropriate use of Compass assets, Plaintiffs Daniel White and Michael White have incurred extensive taxes and penalties.

70.     Upon information and belief, Defendant John White has entered into unauthorized exorbitant employment and severance agreements binding Compass to pay extensive salaries and severances to employees he is now terminating.

**D. John White Locks Daniel White and Michael White Out of Compass**

13

71.     On or about May 1, 2019, Defendant John White directed employees to stop making required distributions to Plaintiffs Daniel White and Michael White and stopped paying them.

72.     Defendant John White directed that the locks on the Compass office be changed and falsely notified employees that Plaintiffs Daniel White and Michael White had been "terminated." Since then, Plaintiffs Daniel White and Michael White have been completely locked out of Compass' operations and affairs, without control or any ability to intervene in the destructive, unlawful, and improper actions described herein.

73.     Defendant John White has caused M&T Bank to stop providing access to the other directors of the company by making false or materially misleading representations to the bank.

74.     Upon information and belief, Defendant John White has opened new and separate bank accounts for Compass without the knowledge or approval of the other Directors to further his fraudulent schemes.

75.     Defendant John White's conduct, as described herein, is illegal, oppressive, and fraudulent.

76.     Defendant John White, as described below, continues to use Compass funds for his personal use and benefit, and (by virtue of his domination of the company and the deadlock among the shareholders) is likely to continue doing so unless a custodian and/or receiver is appointed to preserve all assets during the pendency of this proceeding, and subsequently to wind down its operations and liquidate assets, pursuant to Virginia Code Ann. § 13.1-749.1.

77.     Since Defendant John White locked out Plaintiffs Daniel White and Michael White from Compass' operations and management, the company has lost approximately fifty to

seventy five percent (50-75%) of its contracts, representing a disastrous decline that is likely to continue or even accelerate.

78.     Plaintiffs Daniel White and Michael White collectively also own fifty percent (50%) of the outstanding Compass stock, which leaves them unable to remove Defendant John White as a director, to dissolve the corporation through a vote, or to otherwise break the present deadlock that has developed, to manage the affairs of the corporation.  The deadlock materially and adversely affects the ability of the board to perform its duties to direct the management of the corporation's business and affairs.

79.     The herein described actions constitute improper and unauthorized use and waste of Compass assets, which the Plaintiffs are powerless to stop, or curb, given the distribution of ownership interest in Compass that allows John White to dominate the operations and governance.

## E.  **Defendant John White's Defamatory Statements Regarding Plaintiffs Daniel White and Michael White**

80.     Defendant John White has made false police reports and reports to the FBI, Maryland State Police, and Prince George County Police regarding Plaintiffs Daniel White and Michael White, and their other family members, accusing them of embezzling Compass funds in an effort to discredit Plaintiffs Daniel White and Michael White and further alienate them from Compass so he can continue his fraudulent schemes. The State Police and Anne Arundel County Office of the State's Attorney determined these claims were without basis and declined to prosecute. Defendant John White has also made the same defamatory statements to numerous other third parties.

81. Similarly, Defendant John White has intentionally made false and defamatory accusations to Mr. Stern that Daniel White and Michael White have stolen millions from Compass.

**F. John White's False Claim of Majority Control of Compass**

82. Defendant John White falsely claims to own 66% of Compass.

83. Defendant John White has also falsely claimed to be the only owner or majority owner of Compass.

84. Defendant John White has used his false claims of majority ownership to induce Compass and its agents to take unauthorized actions.

85. Defendant John White has fraudulently reported to banking and other service providers that he is the sole owner of Compass, thereby having Plaintiffs Daniel White and Michael White removed as administrators.

86. Because the Compass shareholders are in fundamental disagreement, the Court's supervision of the dissolution and winding down process through the appointment of a receiver and/or custodian is necessary to effect these processes in a proper and expeditious manner.

87. Compass should be judicially dissolved, as all of the independent grounds for such relief provided in Va. Code Ann. § 13.1-747 are present: the directors are deadlocked in the management of corporate affairs; the shareholders are unable to break the deadlock; irreparable injury to the corporation is threatened or being suffered; corporate assets have been and continue to be misapplied and wasted by John White; and because John White and his agents have acted, are acting, or will act in a manner that is illegal, oppressive, and fraudulent.

**G. John White Creates Another Sham Entity: Smart Retail, Inc.**

16

88.      On or about August 8, 2019, Defendant John White and Mr. Stern incorporated a company named Smart Retail, Inc. ("Smart Retail") in the State of Wyoming. Upon information and belief, Defendant John White and Mr. Stern are owners of Smart Retail.

89.      Upon information and belief, Defendant John White formed Smart Retail to continue the fraudulent investment scheme for which he had been using Tagnetics stock. Like with Tagnetics, Compass assets were used to establish and continue to be used to further an unlawful enterprise and fraudulent investment scheme.

90.      Compass funds were used to pay for travel for Defendant John White and other Smart Retail co-investors to California, Paris, Saudi Arabia, and other locations for purposes related to Smart Retail, not Compass.

91.      Compass funds were used to pay the legal fees associated with the creation of Smart Retail, paid to Mr. Stern's firm Kagan Stern.

## H. Statute of Limitations

92.      Despite Plaintiff's due diligence, they were not able to uncover the truth of Defendant's John White's actions and fraudulent misrepresentations until no sooner than October 2018.

93.      Defendant John White's acts of deception prevented Plaintiffs from learning the truth. Defendant John White went to great lengths to conceal his illegal and fraudulent activities.

94.      It was not until October 2018 -- when Defendant John White changed Tagnetics home office address to Compass's address -- did Plaintiffs learn of Defendant John White's fraudulent and illegal actions.

95.      In or around October 2018, Plaintiffs Daniel White and Michael White discovered that Defendant John White was claiming that Compass and Tagnetics were one-in-the-same.

17

96.     As the project manager and primary contact person with Tagnetics, Defendant John White concealed his activities from Plaintiffs.

97.     On or about October 2018, Plaintiffs Daniel White and Michael White first became aware of others claiming to be owners of Compass shares.

98.     After their discoveries, when Plaintiffs Daniel White and Michael White attempted to inquire further to ascertain the extent Defendant John White's illegal actions, he responded by fraudulently taking control of and wrongfully locking them out of the Compass. Defendant John White then immediately began defaming Plaintiffs Daniel White and Michael White and even filed false police reports against them and their family members.

99.     Defendant John White's illegal and fraudulent activities are continuous and ongoing despite Plaintiff Daniel White's and Michael White's discovery and objections.

**I.  Derivative and Demand Excused Allegations**

100.    Plaintiffs Daniel White and Michael White bring certain claims in this action derivatively, in the right and for the benefit of Compass, because of breaches of fiduciary duties and other wrongful conduct of Defendants.

101.    Plaintiffs have made numerous requests to Defendant John White to cease his conduct. Any formal demand would be futile because Defendant John White has taken control of Compass and has intentionally locked Plaintiffs Daniel White and Michael White out of the company to further his fraudulent schemes.

102.    As a result of the control exerted by Defendant John White over Compass, Plaintiff has standing to bring this claim against Defendant John White derivatively on behalf of Compass.

**COUNT I**
**SET ASIDE AND RECOVERY OF FRAUDULENT CONVEYANCES**

**(Against All Defendants)**

103.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

104.    Compass has, at the direction of Defendant John White, transferred assets of Compass to Defendant John White, Tagnetics, Smart Retail, and others in the form of cash or direct payment of expenses, debts, or employees' salaries, bonuses, or severances.

105.    Compass is a creditor of Defendant John White. Defendant John White has secreted, and continues to secret, Compass assets to other projects he owns or has an interest in.

106.    Accordingly, Plaintiffs request that this Court enter an order (1) setting aside the fraudulent conveyances and (2) requiring that such assets be placed in trust for Compass.

## COUNT II
## TEMPORARY AND PERMANENT INJUNCTION
### (Against All Defendants)

107.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

108.    Unless an injunction is granted, Defendant John White and, through his direction and control, Compass will continue to engage in fraudulent conduct, including the use of Compass' assets to further Defendant John White's fraudulent schemes in Tagnetics and Smart Retail and conveyances in the form of further exorbitant salaries to himself and other illegitimate "employees" of Compass.

109.    These actions will continue to reduce the legitimate assets of Compass and further intertwine Compass with Defendant John White's fraudulent schemes.

110.    Accordingly, Plaintiff petitions this Court to enter a temporary and permanent injunction: (1) enjoining Defendants from proceeding with providing funding to or making

19

payments on behalf of Tagnetics, Smart Retail, or any other entity that is not Compass; (2) enjoining Defendant John White from continued personal use of Compass assets; (3) enjoining Defendants from further misappropriation of Compass employee 401k payroll deductions; and (4) enjoining Defendants from locking out Plaintiffs from Compass.

## COUNT III
## APPOINTMENT OF CUSTODIAN OR RECIEVER
### (Against Compass)

111.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

112.    Defendants have engaged in, and continue to engage in, actions which are *ultra vires*, fraudulent, and otherwise illegal.

113.    Unless a custodian or receiver is appointed, Defendants will continue to engage in the *ultra vires*, fraudulent, and otherwise illegal acts complained of herein, to pose an imminent danger to the assets of Compass.

114.    Unless a custodian or receiver is appointed, Compass will continue to engage in fraudulent conveyances in the form of further exorbitant payments to Defendant John White and other illegitimate employees to the detriment of the Plaintiffs and Compass itself.

115.    Accordingly, Plaintiffs petition this Court to appoint a receiver for Compass to take charge of the company's assets and operate the business of the corporation, as necessary and proper to preserve them, and to take such actions as are necessary to remedy and/or prevent the fraudulent conveyances complained of herein, pending further determination and action of this Court.

## COUNT IV
## ACCOUNTING
### (Against Compass)

20

116.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

117.    Based on Defendants' conduct, Plaintiff is equitably entitled to a full accounting of all compensation Defendant John White has received from any entity as a result of his unlawful conduct, as well as an accounting of all fees paid by Compass to carry out Defendants' misconduct.

118.    Based on Defendants' conduct, Plaintiff is equitably entitled to a full accounting of all monies paid to, or on behalf of, Defendants because of their unlawful conduct.

### COUNT V
### DECLARATORY JUDGMENT
### (Against All Defendants)

119.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

120.    Defendant John White falsely claims to be the 66% percent owner of outstanding Compass common stock and that Plaintiffs Daniel White and Michael White together own the remaining 33%.

121.    Defendant John White falsely claims to be the majority owner of the outstanding Compass common stock.

122.    In truth, Plaintiff's Daniel White and Michael White collectively own 50% of the outstanding common stock of Compass, 25% each, and Defendant John White owns the remaining 50%.

123.    Accordingly, there is a dispute as to the ownership percentages of each of the Compass shareholders and Plaintiffs are entitled to a declaratory judgment on the issue.

21

124.    In addition, Defendant John White is claiming that Plaintiffs Daniel White and Michael White are not directors of Compass.

125.    Plaintiffs contend that the only legitimate directors of Compass are Daniel White, Michael White, and John White.

126.    Accordingly, there is a dispute as to the directors of Compass and Plaintiffs are entitled to a declaratory judgement on the issue.

127.    Defendant John White claims that Compass is the parent or affiliate of Tagnetics, or that Tagnetics is a subsidiary of Compass.

128.    Plaintiffs contend that Compass is not a parent or affiliate of Tagnetics and that Compass has no subsidiaries.

129.    Accordingly, there is a dispute as to the relationship of Compass and Tagnetics and Plaintiffs are entitled to a declaratory judgment on the issue.

130.    Plaintiffs request this Court issue a declaratory judgment that: (a) Daniel White, Michael White, and John White are the owners of 150 shares (or 25%), 150 shares (or 25%) and 300 shares (or 50%), respectively; (b) Daniel White, Michael White, and John White are the sole directors of Compass; and (c) Tagnetics is not an affiliate or subsidiary of Compass.

## COUNT VI
## PETITION FOR DISSOLUTION OF CORPORATION
### (Against Compass)

131.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

132.    Plaintiffs Daniel White and Michael White are stockholders of Compass.

133.    The directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock, and irreparable injury to the corporation is

threatened or being suffered, or the business affairs of the corporation can no longer be conducted to the advantage of the shareholders generally, because of the deadlock.

134. Defendant John White, Director and 50% stockholder, has engaged in illegal, oppressive, and fraudulent acts, as alleged hereinabove.

135. Compass assets are being misapplied or wasted.

136. Plaintiffs hereby petition this Court that Compass be dissolved and for the appointment of a temporary receiver to take charge of Compass' assets and operate the business of the Corporation, as necessary and proper to preserve them, pending a final determination as to dissolution.

## COUNT VII
## BREACH OF FIDUCIARY DUTY
### (Against John White)

137. Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

138. Defendant John White, as an Officer and Director of Compass, stands in a fiduciary relationship with his corporation, Compass.

139. Defendant John White, as an Officer and Director of Compass, is obligated not to engage in self-dealing to the detriment of Compass and its creditors and stockholders.

140. Defendant John White, as an Officer and Director of Compass, is obligated to perform his duties utmost good faith and loyalty.

141. Defendant John White, as an Officer and Director of Compass, is obligated to perform his duties in a manner reasonably believed to be in the best interest of the Corporation.

142.    Defendant John White, as an Officer and Director of Compass, is obligated to perform his duties with the care that an ordinarily prudent person in a like position would use under similar circumstances.

143.    Defendant John White breached his duties by using the legitimate assets of Compass to for his own use and to further perpetuate his ongoing fraudulent schemes, including in a company called Tagnetics, Inc, and more recently Smart Retail, Inc.

144.    Defendant John White breached his duties by causing Compass to make numerous payments to himself and others for his personal benefit and/or in furtherance in his fraudulent schemes in Tagnetics and Smart Retail.

145.    In committing the breaches set out above, Defendant John White has failed to consider the interests of Compass and Compass' creditors, and instead was motivated by his own self-interest.

146.    In committing the breaches set out above, Defendant John White failed to exercise any business judgment whatsoever.

147.    In committing the breaches set out above, Defendant John White acted carelessly, recklessly, and/or was grossly negligent in the performance of his duties.

148.    As a direct and proximate result of the foregoing, Plaintiffs have suffered substantial damages and Compass' assets were impaired.

149.    The damages from the foregoing breaches of duty are in an amount not yet fully ascertained, and to be proven at trial, but are estimated to be no more than $50,000,000.00.

150.    As a result of Defendant John White's egregious and intentional disregard of his fiduciary duties, Plaintiffs seek to recover punitive damages in the amount maximum amount permitted by law.

24

## COUNT VIII
## FRAUD
### (Against Defendant John White)

151.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

152.    Defendant John White intentionally made fraudulent misrepresentations to, and omitted material facts from, derivative Plaintiff Compass and its agents to induce Compass to act on his behalf and to the detriment of Compass.

153.    Compass and its agents acted in reasonable reliance on Defendant John White's fraudulent statements and had no reason to believe he had omitted material facts and Compass suffered damages as a result.

154.    The damages from the foregoing frauds are in an amount not yet fully ascertained, and to be proven at trial, but are estimated to be no more than $50,000,000.00.

155.    As a result of Defendant John White's egregious and intentional frauds committed on Compass, Plaintiffs seek to recover punitive damages in the maximum amount permitted by law.

## COUNT IX
## UNJUST ENRICHMENT
### (Against Defendant John White)

156.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

157.    By their wrongful acts and/or their breaches of their duties under the Virginia law, Defendant John White was unjustly enriched at the expense and to the detriment of Plaintiffs. Defendant John White was unjustly enriched and obtained a benefit by stealing Compass funds in furtherance of his fraudulent schemes.  Defendant John White appreciated and knew of this

25

benefit, and it would be inequitable for Defendant John White to accept and retain this benefit without payment of fair value or return of the funds to Compass.

158.    As a result of the misconduct of Defendant John White, Plaintiffs seek restitution from Defendant John White and seek disgorgement of all benefits obtained by Defendant John White because of its wrongful conduct.

159.    The damages are in an amount not yet fully ascertained, and to be proven at trial, but are estimated to be no more than $50,000,000.00.

160.    As a result of Defendant John White's egregious and intentional acts committed on Compass, Plaintiffs seek to recover punitive damages in the maximum amount permitted by law.

## COUNT X
## DEFAMATION
### (Against Defendant John White)

161.    Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

162.    Defendant John White made numerous false and defamatory statements regarding Plaintiffs Daniel White and Michael White.

163.    Defendant John White intentionally made such statements to harm Plaintiffs Daniel White and Michael White in an effort to discredit them and prevent them from taking legitimate action against Defendant John White to prevent the continuation of Defendant John White's fraudulent schemes.

164.    Plaintiffs Daniel White and Michael White were harmed because of Defendant John White's false and defamatory statements.

26

165.    Plaintiffs seek non-economic damages not to exceed $10,000,000.00.

166.    As a result of Defendant John White's egregious and intentional defamatory statements regarding Plaintiffs Daniel White and Michael White, Plaintiffs seek to recover punitive damages in the maximum amount permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court enter judgment, jointly and severally, against Defendants as follows:

    (1)    For preliminary and permanent injunctions:

        a.  Enjoining defendants from proceeding with providing funding to, or making payments on behalf of, Tagnetics or Smart Retail;

        b.  enjoining John White from continued personal use of Compass assets;

        c.  enjoining Defendants from further misappropriation of employee 401k payroll deductions; and

        d.  enjoining Defendants from locking out Plaintiffs from Compass.

    (2)    An order appointing a custodian or receiver to Compass;

    (3)    For a full and complete accounting;

    (4)    For a declaration that John White hold all improper payments complained of hereinabove in constructive trust for Compass;

    (5)    For a declaratory judgment determining the rightful ownership amounts of Compass Common Stock of John White, Daniel White, and Michael White of 50% or 300 shares, 25% or 150 shares, and 25% or 150 shares, respectively;

    (6)    For a declaratory judgement determining the rightful directors of Compass to be Daniel White, Michael White, and John White;

27

(7)     For a declaratory judgement determining that Compass and Tagnetics are not affiliated and that Tagnetics is not a subsidiary of Compass.

(8)     An order requiring the disgorgement of any compensation received by Defendants resulting from their unlawful acts;

(9)     An order awarding rescissory damages;

(10)    For damages to Compass;

(11)    For damages to Daniel White and Michael White;

(12)    An order awarding punitive damages;

(13)    For the dissolution of Compass;

(14)    An award of Plaintiff's costs, disbursements, prejudgment interest and attorney and expert witness fees incurred herein; and

(15)    Award such other just and equitable relief as the Court finds appropriate.

Respectfully submitted,

By: _____

Richard M. Reed, Esq., VSB No. 65860
9200 Church St., Suite 200
Manassas, VA 20110
Phone: (703) 530-8810
Facsimile: (702) 530-8815
Email: rreed@reedlawva.com

Gregory T. Lawrence, Esq., *pro hac vice* pending
323 W. Camden St, Suite 700
Baltimore, MD 21201
Telephone: (410) 837-6995
Email: greg@lawrencelawllc.com

*Counsel for Plaintiffs*

Dated:  June 29, 2020

28