**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| DAVID J. BOSHEA | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| COMPASS MARKETING, INC. | * |
| | * |
| Defendant. | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Case No. 1:21-CV-00309-ELH

**DEFENDANT COMPASS MARKETING, INC.'S**
**RESPONSE AND OPPOSITION TO NONPARTY MICHAEL WHITE'S OBJECTIONS**
**TO SUBPOENA DUCES TECUM AND SUBPOENA TO TESTIFY AND**
**MOTION TO QUASH SUBPOENA DUCES TECUM**

Defendant Compass Marketing, Inc. ("Compass Marketing"), by and through its undersigned counsel, hereby files this Response and Opposition to Nonparty Michael White's Objections to Subpoena Duces Tecum and Subpoena to Testify and Motion to Quash Subpoena Duces (the "Objections and Motion to Quash").[1]

Michael White's Objections and Motion to Quash consists of thirteen lengthy paragraphs. The first paragraph sets forth the reasons why he believes the subpoena should be quashed. The remaining twelve paragraphs consist of rantings about the "illegitimacy" of undersigned counsel's representation of Compass Marketing.[2] The two issues (the subpoena and counsel's qualifications) are not alleged to be related to one another; indeed, via his Objections and Motion to Quash,

---

[1] In his filing, Michael White incorrectly labeled it ". . . Motions to Quash Subpoenas Duces Tecum" (making subpoenas plural), but there was only one subpoena duces tecum served on Michael White.

[2] This Opposition uses the phrase "undersigned counsel" to refer to Stephen Stern, the attorney whose "legitimacy" is being challenged by Michael White. The actual signature on the filing, however, is that of co-counsel due to the filing date falling on a religious holiday.

Michael White concurrently seeks to quash the subpoena duces tecum only, not the portion of the subpoena that seeks his testimony (but does not request a hearing on it) and requests a hearing on his complaints about Compass Marketing's counsel (but makes no corresponding motion to disqualify).

As set forth below, Michael White's meritless Objections and Motion to Quash fall woefully short of any of the permissible bases upon which a subpoena may be quashed.  Rather than address any legal issues or standards, Michael White shamelessly attempts to defame undersigned counsel and continues his campaign to destroy anyone associated with Compass Marketing (of which the majority owner and CEO is John White, Michael White's brother who terminated Michael White's employment in November 2018 and voted him off the Board of Directors in February 2019).[3]  Rather than applying any legal standards, Michael White, a non-attorney Orphans' Court judge in St. Mary's County appearing *pro se*, seeks to obfuscate and confuse the Court with false representations that should be an affront to this Court and do not provide any basis to sustain the Objections and Motion to Quash.  It is abundantly clear from Compass Marketing's defenses (and now Counterclaim and Third-Party Complaint), as well as the answers to interrogatories served by Plaintiff David Boshea ("Plaintiff" or "Boshea"), that Michael White is a relevant witness to factual matters at issue in this case.  Therefore, the Objections and Motion to Quash should be denied and Michael White should be compelled to provide responsive documents and answer questions under oath at his deposition.

As additionally set forth below, Michael White's accusations against undersigned counsel are completely separate from (and irrelevant to) the subpoena – and they are false and unsupported

---

[3] John White suspected (and later confirmed) that Michael White was engaging in various breaches of his fiduciary duties to Compass Marketing (including misappropriation of Compass Marketing funds).

by any evidence whatsoever – and they should be disregarded and his request for a hearing should not be granted.

## ARGUMENT

### I.    MICHAEL WHITE FAILS TO SATISFY THE STANDARDS APPLICABLE TO HIS OBJECTIONS AND MOTION TO QUASH

The Federal Rules of Civil Procedure set forth four specific instances when a subpoena must be quashed; if it: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or another protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.  *See* FED. R. CIV. P. 45(d)(3)(A).  The Federal Rules also permit a subpoena to be quashed within the discretion of the court if the subpoena requires: (i) disclosing a trade secret or other confidential research, development, or commercial information; or (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences that are in dispute and results from the expert's study that was not requested by a party.  *See* FED. R. CIV. P. 45(d)(3)(B).  None of these bases are put credibly at issue in Michael White's Objections and Motion to Quash.

The Federal Rules also allow "any person from whom discovery is sought" to move for a protective order to protect the person "from annoyance, embarrassment, oppression, or undue burden or expense."  *See* FED. R. CIV. P. 26(c)(1).  Although Michael White alleges that the subpoena is oppressive and intended to harass him,[4] he does not request the entry of a protective order.  Nevertheless, assuming *arguendo* that Michael White did request a protective order, *before requesting a protective order,* the movant is *required* to confer with the counsel in an attempt to resolve the dispute without court action.  *Id.* (stating that "any person . . . mov[ing] for a protective

---

[4] *See* Objections and Motion to Quash at ¶ 1.

order . . . *must* include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action") (emphasis added). Michael White did not comply with the requirements of Rule 26(c)(1), as no certificate of good faith attempts to resolve the dispute was attached to the Objections and Motion to Quash (indeed, Michael White could not have attached a certificate because Compass Marketing first learned of Michael White's objections to the subpoena when it received his Objections and Motion to Quash via CM/ECF *after* the scheduled deposition date/time).[5] On this basis alone, Michael White's Objections and Motion to Quash should be denied.

When a party moves to quash a subpoena, it bears a heavy burden. *See, e.g., Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 125 (D. Md. 2009). In fact, motions seeking to "prevent the taking of a deposition [are] regarded unfavorably by the courts" and it is "difficult to persuade a court" to grant such a motion. *Id.* Michael White's Objections and Motion to Quash fall woefully short of satisfying these burdens.

Moreover, when filing a motion, the movant must explain the basis for attaching any exhibits. Indeed, this Court does not consider exhibits attached to a motion if the motion does not include any citations or explanations for the significance of the exhibit(s) because it is not the job of the Court to assume the relevance or significance of any exhibit. *See, e.g., EDI Precast, LLC v. Carnahan*, 982 F. Supp. 2d 616, 622 n.6 (D. Md. 2013) (disregarding exhibits attached to motion without context or explanation because they cannot be considered as proof of any fact); *see also Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534 (D. Md. 2007) (explaining that "it is important for a party offering an exhibit into evidence to clearly explain each purpose for which it is offered, and address any . . . issues associated with each purpose for which it is offered"). While Michael

---

[5] *See* Exhibit 1 (Transcript of Michael White Deposition).

White attached certain exhibits to and made many (false) allegations in his Objections and Motion to Quash, his Objections and Motion to Quash failed to cite any exhibit, explain the significance of any exhibit, or support any of his (false) factual assertions, and, on that basis, the Court should not consider any of Michael White's exhibits.[6]

## II.   MICHAEL WHITE HAS NOT MET HIS BURDEN TO ESTABLISH THAT THE SUBPOENA SHOULD BE QUASHED

### A.   The Subpoena is Not Overly Broad, Unreasonable, or Oppressive

The standard for discovery is permissive.  Under Rule 26 "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  *See* FED. R. CIV. P. 26(b)(1); *see also, e.g.*, *Ralston Purina Co. v. McFarland*, 550 F.2d 967, 973 (4th Cir. 1977) (discussing the low threshold for relevant discovery and asking only whether the discovery was "germane" to the subject matter of the pending action).

In this case, there can be no dispute that Michael White has information that is relevant to the claims/defenses asserted by the parties.  One of Compass Marketing's defenses – in fact, its primary defense – is that the agreement upon which Boshea relies is a forgery and the agreement was never entered into.  *See* Answer [Dkt. No. 27] at 8.  Boshea's Answers to Interrogatories put Michael White front and center as a critical witness who has information about the supposed agreement and whether it was allegedly entered into.  For example, Boshea contends that he "had conversations with Michael White concerning [his] prospective employment and the company's need to hire Mr. Boshea to turn the company around."  *See* Exhibit 2 (Boshea Answers to Interrogatories) at No. 6; *see also id.* at No. 9 (stating that "Michael White recalled that David Boshea and Compass entered into the severance agreement attached to the complaint and that

---

[6] Rather than repeating this legal standard throughout this Opposition, Compass Marketing will raise it once at the outset of this Opposition.

Michael White anticipated that John White would continue to cause Compass Marketing to avoid paying the amounts owing to David Boshea"). These assertions by Boshea alone warrant Compass Marketing's subpoena of Michael White and necessitate obtaining testimony and any relevant documents he may have regarding such matters.[7]

Michael White clearly is a relevant witness in this case, and it should be abundantly clear that the subpoena is warranted and the Objections and Motion to Quash should be denied.

### B.   The Documents Requested in the Subpoena Are Narrowly Tailored to Issues Relevant to this Litigation

A simple review of the subpoena shows that it seeks any documents related to Boshea's employment, compensation, and termination of employment. *See* Exhibit 3 (Subpoena). There is nothing unreasonable or oppressive about that, particularly in a case where a central issue is the entering (or not entering) into an employment agreement, the termination of that employment, and the compensation owed (or not owed) to Boshea. Thus, the document requests in this regard are relevant and tailored to the very issues at the center of this litigation.

Thus, seeking discovery of these documents is appropriate and warranted based on the assertions made by the parties so far in this case.

### C.   The Subpoena is Not Intended to Harass Michael White

Michael White alleges a pattern of harassment against him but provides no factual basis to support this specious allegation. *See* Objections and Motion to Quash at ¶ 1. It is unclear who he believes is harassing him, why, and how. In the absence of any evidence to support Michael

---

[7] In addition, by way of example only, Compass Marketing asserts that Boshea received certain "off payroll payments" totaling $51,800. *See* Counterclaim [Dkt. No. 38] at ¶¶ 21, 40-43. Michael White was Compass Marketing's payroll administrator and, thus, he would have relevant information about that aspect of the case as well, among other issues.

White's empty assertion and in light of Boshea's clear reliance on Michael White as a witness,[8] Michael White's Objections and Motion to Quash should be denied.

   **D.**  **The Subpoena Was Properly Served**

   There is a strong presumption that service is proper, and the burden is on the party contesting service to demonstrate it was improper. *See Republic Productions, Inc. v. American Fed. of Musicians*, 173 F. Supp. 330, 333 (S.D.N.Y. 1959). Here, Michael White includes nothing but another self-serving, conclusory statement without any factual support (or even factual allegations) whatsoever. *See* Objections and Motion to Quash at ¶ 1. For this reason alone, this objection fails. Nevertheless, Michael White was properly served, as he obviously received the subpoena, and it was served on him by an officer of the Sheriff's Department. *See* Exhibit 4 (Affidavit of Service by Lt. Clayton O. Safford of the St. Mary's County Sheriff's Office).

**III.** **MICHAEL WHITE SHOULD BE COMPELLED TO COMPLY WITH THE SUBPOENA AND PAY THE EXPENSES FOR THE DEPOSITION AT WHICH HE DID NOT APPEAR**

   Not only should Michael White's Objections and Motion to Quash be denied, he also should be compelled to comply with the subpoena and pay the costs of the deposition he failed to attend. Michael White was served with the subpoena on August 10, 2021. *Id.* The deposition was scheduled to take place fourteen days later on August 24, 2021 at 2:00 p.m. Michael White hand-filed his Objections and Motion to Quash with the Court at 2:14 p.m. on August 23, 2021 – the day before the deposition. *See* Dkt. No. 33. Despite the name, address, phone number, and email address of the issuing attorney appearing on the face of the subpoena, Michael White did not notify anyone that he would not be appearing for the deposition. As a result, a court reporter, videographer, undersigned counsel, and Boshea's counsel all appeared at the designated time and

---

[8] Compass Marketing also believes that Michael White possesses information relevant to the claims and defenses in this case.

place, unaware that Michael White had no intention of not appearing.  *See* Exhibit 1.  In a transparent effort to cause a waste of time and resources, Michael White sent a copy of his Objections and Motion to Quash via first-class mail on August 23, knowing that it would not arrive prior to his deposition.  In light of his obvious intention to waste Compass Marketing's and Boshea's time and resources, Michael White should be sanctioned in the form of paying the costs related to the missed deposition.[9]  For this, and the reasons stated herein, he should also be compelled to sit for a deposition and produce the requested documents.

## IV. MICHAEL WHITE'S ALLEGATIONS AGAINST UNDERSIGNED COUNSEL ARE FALSE, IMPROPERLY BROUGHT, AND SHOULD BE DISREGARDED

### A. Michael White Seeks the Dissolution of Compass Marketing

The issue before the Court is whether the subpoena Compass Marketing properly served on Michael White seeks information relevant to this litigation and whether it should be enforced. Michael White's Objections and Motion to Quash, however, constitute a pathetic smear campaign that makes a series of empty, unsupported, defamatory assertions directed at undersigned counsel with no relevance to the issues before the Court.

Michael White, along with his brother Daniel White, are determined to try to destroy the company they own with their brother, John White.  Michael White was terminated from employment on November 23, 2018,[10] and he was later formally removed from the Board of Directors on February 14, 2019.[11]  Michael White, along with his brother Daniel, later filed a baseless lawsuit in Virginia that sought the judicial dissolution of Compass Marketing.  *See* Exhibit

---

[9] Compass Marketing should be given the opportunity to submit a separate petition for its fees and costs, assuming this request is granted.

[10] *See* Exhibit 5 (Email from J. White to M. White dated November 23, 2018).

[11] *See* Exhibit 6 (Minutes of Special Meeting of Compass Marketing Shareholders).

7 (First Amended Complaint in Virginia Litigation).  When they were compelled by court order, however, to produce documents in support of their baseless allegations, sit for depositions, and produce documents and other information that would reveal the various schemes aimed at destroying Compass Marketing (including the theft of funds), they promptly filed a nonsuit.  *See* Exhibit 8 (Notice of Nonsuit); *see also* Exhibit 9 (Transcript of Hearing on Motion to Compel).

The alleged (false) premise of Michael White's and Daniel White's lawsuit is that Daniel White and Michael White each own 150 shares of Compass Marketing, which amounts to 25% of Compass Marketing (and, together, 50%), while John White owns only 300 shares of Compass Marketing (constituting the other 50% of the company).  *See* Objections and Motion to Quash at ¶ 2; *see also id.*, Exhibit 3 at ¶¶ 4-5; *see also* Exhibit 7 at ¶¶ 3-5.  This assertion (under oath no less) is demonstrably false and warrants appropriate discipline by the Court, particularly with Michael White's status as an officer of the Court as an Orphans' Court Judge.

As Michael White (and Daniel White) acknowledged in the Virginia litigation, John White was issued 300 shares of Compass Marketing when the company was formed in 1998.  *See* Exhibit 7 at ¶ 21.  Later, in June 2001, Daniel White sold half his shares to his brother Michael, with each of them having 150 shares after the sale.  *Id.* at ¶ 23.  The details of that transaction were set forth in Minutes of a Special Meeting of the Shareholders of Compass Marketing on June 11, 2001.  *See* Exhibit 6.  In that same meeting, John White exercised his option to purchase an additional 300 shares of Compass Marketing.  *Id.*  The issuance of these additional 300 shares to John White were reflected in Stock Certificate #4, which was signed by Daniel White.  *See* Exhibit 10 (Stock Certificate #4).  And the issuance of the 150 shares each to Daniel and Michael White were reflected in Stock Certificate #s 5 and 6, each of which were also signed by Daniel White.  *See* Exhibit 11 (Stock Certificate #5); Exhibit 12 (Stock Certificate #6).  Thus, at the conclusion of that

June 11, 2001 meeting, John White owned 600 shares of Compass Marketing, and Daniel and Michael White each owned 150 shares of Compass Marketing. There have been no share transactions involving Michael White, Daniel White, or John White since the June 1, 2001 meeting to alter the ownership – a fact that even Michael White and Daniel White concede. *See* Exhibit 7 at ¶ 24 (asserting that "[n]o other shares of Compass Common Stock were ever validly issued or transferred").[12]

Evidence of Michael White's (and Daniel White's) deception is further evidenced by Michael White's (and Daniel White's) own filing with this Court. As noted above, in the Virginia litigation, Michael White (and Daniel White) acknowledged that John White was issued 300 shares at the inception of Compass Marketing in 1998. *See* Exhibit 7 at ¶ 21 (acknowledging that on or about March 1, 1998, Compass Marketing issued 900 shares of common stock, "300 each to Robert Morgan, . . . Daniel White, and . . . John White"). But, in his Objections and Motion to Quash, Michael White now contends that John White has only 300 shares and relies solely on the issuance of Stock Certificate #4. *See* Objections and Motion to Quash, Exhibit 3 at ¶¶ 4-5, and Exhibit 4 (relying on Stock Certificate #s 4, 5, and 6). Moreover, in 2015, when Daniel and Michael White tried to falsely claim they each owned 25% of the company, they again acknowledged John White's majority ownership in a Resolution of the Board they each signed, and they expressly acknowledged that (1) John White owned 600 shares, (2) John White owned approximately 66.66% of the outstanding shares, (3) Michael White owned 150 shares, (4) Michael White owned approximately 16.67% of the outstanding shares, (5) Daniel White owned 150 shares, and (6)

---

[12] The only other transaction involving Compass Marketing shares after June 11, 2001 was when Robert Morgan surrendered his shares of Compass Marketing on or about March 11, 2004. *Id.* at ¶ 24. But that transaction did not alter the number of shares issued to Michael White, Daniel White, or John White and, after Mr. Morgan surrendered his shares, the respective percentage ownership interests were John White at approximately 66.67% (600 shares), Michael White at approximately 16.67% (150 shares), and Daniel White at approximately 16.67% (150 shares). Those share numbers and percentages have remained in effect since then.

Daniel White owned approximately 16.67% of the outstanding shares.  *See* Exhibit 13 (Resolution

of the Board dated July 20, 2015).  This acknowledgment, with their earlier acknowledgement that

there have been no share transactions to alter the respective ownership interests since March 11,

2004, necessarily means that Michael White (and Daniel White) have made false representations

to this Court.[13]

**B.      Michael White Provides No Basis to Support His False Assertions About Undersigned Counsel, Which Are Irrelevant to the Issue Before the Court**

The bulk of Michael White's Objections and Motion to Quash does not address the

subpoena; instead, it seeks to defame undersigned counsel with false and unsupported allegations.

Not only has Michael White been discredited, undersigned counsel's alleged conflicts of interest

and alleged improper actions are false and have nothing to do with whether the subpoena served

on Michael White should be enforced.  The Federal Rules of Civil Procedure specifically authorize

any attorney who is authorized to practice in the issuing court to issue and sign a subpoena.  *See*

FED. R. CIV. P. 45(a)(3).  Undersigned counsel is authorized to practice in this Court and was

retained by Compass Marketing's CEO and Executive Chairman (and majority owner), John

White.  Furthermore, the subpoena was not actually issued by undersigned counsel; rather, when

an attorney issues a subpoena, the attorney acts on behalf of the court and it should be treated as

---

[13] Michael White has shown a willingness to make representations in various contexts irrespective of truth.  Another example is where Michael White signed a PPP loan application (obtained from a third-party during discovery in the Virginia litigation) – *while litigating his claim in Virginia regarding his alleged ownership interest in Compass Marketing* – where certified that he did not own any interest in any company, other than a company known as Woodville Pines, LLC.  *See* Exhibit 14 (PPP Loan Application, Signed April 25, 2020).  Michael White signed this PPP loan application understanding that making a false representation was "punishable under the law" "by imprisonment" and/or "a fine of not more than $1,000,000."  *Id.*  In addition, Michael White has boldly attached to his Objections and Motion to Quash a privileged communication from undersigned counsel and other communications between undersigned counsel and his client, which indicates Michael White likely violated the Electronic Communications Privacy Act ("ECPA"), Stored Communications Act, Maryland Wiretap Act, and/or Maryland Stored Communications Act.  *See, e.g.*, Objections and Motion to Quash, Exhibits 1, 5, and 9.

an order of the issuing court.  *See Higginbotham v. KCS Int'l, Inc.*, 202 F.R.D. 444, 456 (D. Md. 2001).

Accompanying each of his wild accusations against undersigned counsel, Michael White requests a hearing "to determine if Stephan (*sic*) Stern is disqualified from serving as counsel for Compass Marketing."  As an initial matter, Michael White's Objections and Motion to Quash is styled as a motion to quash and a request for a hearing; it is not styled as a motion to disqualify. Even if Michael White's Objections and Motion to Quash can somehow be construed as a motion to disqualify counsel, Michael White does not have standing to bring such a motion.  The first step in evaluating a disqualification motion is to "determine whether an attorney-client relationship existed between the challenged law firm and the objecting client."  *See Gross v. SES Americom, Inc.*, 307 F. Supp. 2d 719, 723 (D. Md. 2004).  Michael White is not, nor has he alleged himself to be, an objecting client (indeed, he has never been a client of undersigned counsel or his law firm) and, even if he was, he is not a party to this litigation.  To the extent that Michael White believes himself to be moving for disqualification on behalf of Compass Marketing, Tagnetics, Inc., or Smart Retail, Inc. (the other entities referenced in the Objections and Motion to Quash), he has not demonstrated that he is acting in such a manner (and Tagnetics and Smart Retail are not even parties in this litigation), as standing would belong to each of those entities.

The next step in evaluating a motion to disqualify is to "resolve whether the matter at issue in the challenged representation is the same or substantially related to the matter involved in the prior representation."  *See Gross*, 307 F. Supp. 2d at 723.  In this case, undersigned counsel is representing Compass Marketing in a suit brought by a former employee who claims (incorrectly) that he is owed unpaid wages.  That former employee is wholly unrelated to Tagnetics, Inc., or Smart Retail, Inc.  In fact, the alleged (i) laundering of Compass Marketing's funds (Objections

12

and Motion to Quash at ¶ 3), (ii) undisclosed financial interest in Tagnetics (*Id.* at ¶ 3), (iii) misrepresentation about the relationship between Compass Marketing and Tagnetics (*Id.* at ¶ 3), (iv) diversion of funds from the 401(k) plans of Compass Marketing employees (*Id.* at ¶ 4), (v) negotiation with potential investors in Tagnetics (*Id.* at ¶ 5), (vi) operation of a Ponzi scheme (*Id.* at ¶ 5), (vii) investment in Smart Retail (*Id.* at ¶ 6), (viii) theft of assets and intellectual property (*Id.* at ¶ 6), (ix) personal threats (*Id.* at ¶ 7), (x) personal use of Compass Marketing funds (*Id.* at ¶ 8), (xi) fabrication of stockholder meetings (*Id.* at ¶ 9), (xii) harassment of Daniel White (*Id.* at ¶ 10), (xiii) fraud on the court (*Id.* at ¶ 11), (xiv) violation of federal statutes and the Maryland Rules (*Id.* at ¶ 12), (xv) incorrect corporate disclosure filing (*Id.* at ¶ 13), and (xvi) improper participation in Tagnetics' bankruptcy proceedings (*Id.* at ¶ 14), have nothing to do with the instant lawsuit.[14]

Michael White has not actually moved to disqualify undersigned counsel (he simply asked for a hearing to discuss his allegations), he does not have standing to challenge the qualifications of undersigned counsel, and, even if he did, none of the allegations against undersigned counsel are related to the instant lawsuit in any way.  For the foregoing reasons, Michael White's request to hold a hearing regarding the qualifications of undersigned counsel should be denied.

## CONCLUSION

As demonstrated above, Michael White's Objections and Motion to Quash is an attempt to smear undersigned counsel in a desperate attempt to avoid having to testify under oath and (presumably) produce documents that are damaging to Michael White (and certainly Boshea's lawsuit against Compass Marketing).  Michael White has knowledge of facts pertinent to both the prosecution and defense of this case, and the documents requested of him are relevant and tailored

---

[14] Not only do these wild accusations have nothing to do with this lawsuit, there also is no merit to them.  Because these specious allegations have nothing to do with this lawsuit, Compass Marketing does not want to burden the Court with extraneous materials.  If the Court, however, wants to review information related to these false allegations, Compass Marketing is prepared to provide information that refutes these allegations.

to the necessary issues.  Even more incredulous is the fact that Michael White is the Chief Judge of the Orphans' Court of St. Mary's County, Maryland, and has sat on that bench since 2014; yet, he fails at every turn to apply any legal standards to his arguments and he also fails at every turn to substantiate his false and empty assertions aimed at denigrating undersigned counsel.  For these reasons, Michael White's Objections and Motion to Quash should be denied in its entirety.  As such, Michael White should be compelled to produce the requested documents, appear for deposition, and the Court should grant such other relief as the Court deems appropriate (including, but not limited to, an order compelling Michael White to pay the attorneys' fees and costs associated with the deposition where the attorneys and court reporter and videographer appeared, but he did not).

Dated:  September 7, 2021                 Respectfully submitted,

                                          */s/ Heather K. Yeung*
                                          Heather K. Yeung, Bar No.: 20050
                                          Stephen B. Stern, Bar No.: 25335
                                          KAGAN STERN MARINELLO & BEARD, LLC
                                          238 West Street
                                          Annapolis, Maryland 21401
                                          (Phone): (410) 216-7900
                                          (Fax):  (410) 705-0836
                                          Email:  stern@kaganstern.com
                                          Email:  yeung@kaganstern.com

                                          *Counsel for Defendant*
                                          *Compass Marketing, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of September, 2021, the foregoing Defendant Compass Marketing, Inc.'s Response and Opposition to Nonparty Michael White's Objections to Subpoena Duces Tecum and Subpoena to Testify and Motion to Quash Subpoenas Duces Tecum was served via the CM/ECF system on the following counsel of record:

Thomas J. Gagliardo
Gilbert Employment Law, PC
1100 Wayne Avenue, Suite 900
Silver Spring, MD 20910
Email:  tgagliardo@gelawyer.com

Gregory J. Jordan
Mark Zito
Jordan & Zito, LLC
350 N. LaSalle Drive, Suite 1100
Chicago, Illinois 60654
Email:  gjordan@jz-llc.com

*Attorneys for Plaintiff David Boshea*

and via first-class mail, postage prepaid to:

Michael White
39650 Hiawatha Circle
Mechanicsville, MD 20659

*pro se movant*

*/s/ Heather K. Yeung*
Heather K. Yeung

15