# EXHIBIT 9



# Transcript of Hearing

**Date:** March 11, 2021
**Case:** White -v- Compass Marketing Inc.

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

---

**Page 1**

VIRGINIA:

    IN THE CIRCUIT COURT OF ARLINGTON COUNTY

- - - - - - - - - - - - -x

DANIEL J. WHITE and   :

MICHAEL R. WHITE, on   :

behalf of themselves   : Case No.

and, derivatively, on   : CL19003628-00

behalf of COMPASS

MARKETING, INC.,   :

    Plaintiffs,   :

  v.   :

COMPASS MARKETING, INC.,  :

and JOHN D. WHITE,   :

    Defendants.   :

- - - - - - - - - - - - -x

Hearing before The Honorable LOUISE M. DiMATTEO

Conducted Virtually

Thursday, March 11, 2021

10:04 a.m. EST

Job No.: 359487

Pages: 1 - 104

Reported By: Paul P. Smakula

---

**Page 2**

HEARING before The Honorable LOUISE M. DiMATTEO, conducted virtually:

Pursuant to notice, before Paul P. Smakula, Notary Public in and for the State of Maryland.

---

**Page 3**

A P P E A R A N C E S

ON BEHALF OF PLAINTIFFS:

    PATRICK J. McDONALD, ESQUIRE

    CAMERON/McEVOY, PLLC

    4100 Monument Corner Drive

    Suite 420

    Fairfax, Virginia 22030

    (703) 273-8898

    GREGORY T. LAWRENCE, ESQUIRE

    LAWRENCE LAW, LLC

    800 Third Avenue

    28th Floor

    New York, New York 10022

    (410) 837-6995

---

**Page 4**

A P P E A R A N C Eb S   C O N T I N U E D

ON BEHALF OF DEFENDANT COMPASS MARKETING, INC.:

    STEPHEN B. STERN, ESQUIRE

    KAGAN STERN MARINELLO & BEARD, LLC

    238 West Street

    Annapolis, Maryland 21401

    (410) 793-1610

ON BEHALF OF DEFENDANT JOHN D. WHITE:

    STACEY ROSE HARRIS, ESQUIRE

    DiMURO GINSBURG, PC

    1101 King Street

    Suite 610

    Alexandria, Virginia 22314

    (703) 684-4333

5

P R O C E E D I N G S

THE COURT: So by the agreed order that was entered by the Court previously, there are eight motions scheduled for today. I don't know if there was any discussion on the order of things. It seems to me a lot of issues tend to overlap with each other, at least of the concerns raised and some of the issues discussed seem to overlap a little bit, if not a lot. So I don't need to have repetitive arguments if they apply, as we discussed previously or however that works.

I think what's easiest for me is doing one motion at a time in favor of, opposed to, and that sort of thing, keep them sequestered, if you will, compartmentalized, and then we'll go to the next one. So if you'd like, we can go in order of what you all put in the agreed order if there's no other suggestion.

MR. McDONALD: Your Honor, good morning, this is Patrick McDonald, I'm local counsel for the plaintiffs in this matter. I think from an introductory perspective, I think the issues kind

6

of fall into three categories. There's a scheduling set of issues, there's a set of discovery issues, and within the discovery issues there are kind of sub issues of when things are going to be done, but also separate from that there's an issue of entry of a protective order, which sort of is I think the kickoff for a lot of what happens on the discovery side.

So I'm prepared -- as local counsel I normally wouldn't be the one arguing, but I'm prepared for the plaintiffs to argue the scheduling side of things and -- and why certain things should be scheduled when. Mr. Lawrence, whose camera and microphone appears to be off right now, I'll look into that, but he's going to be arguing the substantive discovery issues on that.

And on to the extent the Court wants to hear introductory remarks from anybody, I'm prepared to start in that regard. But whatever order you think is appropriate, I think we'll go with that.

7

THE COURT: All right. Let me hear from -- who's going to be arguing on behalf of Compass?

MR. STERN: Your Honor, this is Stephen Stern, I'll be arguing on behalf of Compass. Just to be clear, Ms. Harris represents another defendant in this case.

THE COURT: I recognize that.

MR. STERN: I did obviously want to give deference to how the Court wants to handle this, but as you noted, so many of the issues do overlap, and it seems that in certain respects a lot of the arguments will be repetitive in certain ways, but some arguments are separate and distinct. I do have some notes prepared by motion, but at the same time, some of the motions necessarily overlap so it's hard to keep them all separate and distinct.

You know, I was trying to think of a way that would be the best way to approach this, and what would be the most efficient way of doing it, and I'm not sure there is necessarily a clear path here, but I do think maybe if there is each of the

8

parties can be stating what they're, you know, significance of the factual background and then going each of the different motions and asking for the different forms of relief that exists. That might make it a little more streamlined and perhaps shorten the hearing, but I can't be sure of that.

THE COURT: Okay. It seems to me Ms. Harris has a unique circumstance in as much as she's appearing specially to have a matter of personal jurisdiction adjudicated by the court on Mr. White's case, the defendant. And it strikes me that that might be the one we handle first. Only because there's a lot of discovery flowing and maybe that's the way we treat it as we -- that appears to me -- so my reaction to some of these motions was -- especially with regard to expedited hearings or setting hearings, what struck me initially was that certainly Ms. Harris's motion regarding personal jurisdiction ought to be attended to early.

And then also there is several other

**9**

1 motions, defense motions, that are potentially
2 dispositive that ought to be managed as well
3 because if those are -- if those motions are
4 granted, the case is ended.  So those kinds of --
5 but then again, I have to ask you, Mr. Stern,
6 whether you're seeking a jury with the plea in bar
7 and that kind of thing, which may change the
8 scheduling of it.
9      But initially my reaction to it is I think
10 we have to get some of these defense motions
11 heard.  And especially Ms. Harris's motion, it
12 seems to me.  Maybe we can start if you all don't
13 mind.  Because I know that there was some kind of
14 an agreement in here that Ms. Harris's motion
15 should be set on January 29th, and it wasn't set
16 on January 29th, it was kicked over to this date
17 bundled with everything else.
18      And it strikes me that's hanging out there
19 by itself and can be resolved by setting a date
20 today.  So unless there's a reason I shouldn't
21 hear that first, I kind of like to get to that
22 first.

**10**

1      MR. STERN:  From Compass's perspective
2 that makes perfect sense, but I'll leave it to
3 Ms. Harris to speak.
4      THE COURT:  Ms. Harris, are you okay with
5 that?
6      MS. HARRIS:  Yes, thank you.  I was going
7 to suggest that, Your Honor, because I do believe
8 it's a discrete issue that sits apart from
9 everything else.
10      THE COURT:  Mr. McDonald?
11      MR. McDONALD:  I don't think it's truly
12 discrete.  I understand the Court's point.  I
13 think you've read in the papers probably, our
14 position is really that we've been trying to get
15 the hearings set on a number of these motions.
16 All the motions that Judge Fiore ordered to be
17 heard back in September for about six and a half
18 months and get dates, we just haven't gotten any
19 traction on any of them.
20      THE COURT:  We're all in agreement.  Let's
21 pick some dates.  How long is your motion to be on
22 this motion to dismiss for lack of personal

**11**

1 jurisdiction?
2      MS. HARRIS:  I expect needing three hours
3 for an evidentiary hearing, Your Honor.
4      THE COURT:  Okay.  So it's evidentiary.
5 And, Mr. McDonald, how -- do you think three hours
6 is an accurate time estimate?
7      MR. McDONALD:  I do.  I don't think we
8 need more than three hours.
9      THE COURT:  All right.  A bench trial,
10 three hours, and I'm going to start look at my
11 calendar.  Okay?  And we're going to get this
12 docketed right now.
13      MS. HARRIS:  Thank you, Your Honor.  We've
14 just been trying to do that for a number of
15 months.
16      THE COURT:  Sure.  I heard that, and we're
17 going to take care of that today.  What month were
18 you thinking of, folks?
19      MS. HARRIS:  What is the Court's earliest
20 available date for a three-hour hearing?
21      THE COURT:  Let me look for you.
22 April 5th.

**12**

1      MS. HARRIS:  For a briefing schedule, Your
2 Honor, to work backwards from there, let's see, we
3 would like to be able to have a reply brief.
4      THE COURT:  Before we get there,
5 Mr. McDonald, are you available?
6      MR. McDONALD:  I -- let's see, April 5th,
7 I -- I have my calendar up.  I'm available, I have
8 to defer to Mr. Lawrence on his availability for
9 that day.
10      MR. LAWRENCE:  Yes.  I'm actually out of
11 town on the 5th.  I apologize.
12      THE COURT:  Is it anything you can adjust
13 or no?
14      MR. LAWRENCE:  I don't believe so, Your
15 Honor.  It's a pre-scheduled family trip.
16      THE COURT:  Okay.  Are you out that entire
17 week?
18      MR. LAWRENCE:  No, Your Honor.  Actually,
19 I could come back that evening early so I could be
20 back --
21      MS. HARRIS:  Your Honor, I don't need make
22 Mr. Lawrence return early from his vacation.  I'd

13

1 be happy to do the week of April 12th. That would
2 be fine with me.
3     THE COURT: Let me see if I can find
4 something for you all. It's going to be a
5 squeeze, but we can shoot for April 12th. And
6 then Ms. Harris, you mentioned a briefing
7 schedule?
8     MS. HARRIS: Yeah. Your Honor, looking at
9 it, if we did April 12th and had a reply brief on
10 the 5th, their opposition on the 29th, that means
11 our brief is due next -- on the 22nd. So
12 actually, that's fine.
13     THE COURT: Okay. You asked for the
14 earliest date, and that's the earliest date,
15 apparently. So you want to have your brief filed
16 on 3/22/21 close of business, right, and then the
17 opposition brief is due when?
18     MS. HARRIS: With the opposition due on
19 the 29th and reply on the 5th.
20     THE COURT: Okay. 4/5. Is everyone in
21 agreement with that briefing schedule?
22     MR. LAWRENCE: Your Honor, this is an

14

1 evidentiary motion with respect to the discovery
2 you granted, so I would suggest more than a week
3 would be appropriate between the motion being
4 filed and the opposition just given the amount of
5 work.
6     THE COURT: The brief is going to be on
7 legal matters, it's not going to be evidentiary.
8 The Court is going to make factual findings of its
9 own; right?
10     MR. LAWRENCE: Your Honor, you granted
11 discovery as to personal jurisdiction. It will be
12 factual in terms of -- I assume they're going to
13 use the discovery we put forth.
14     THE COURT: I know, but what is the point
15 you're trying to making about the one week
16 response?
17     MR. LAWRENCE: Just that it would be -- to
18 have five days is -- I would just suggest to Your
19 Honor that the opposition -- I'm sorry, the motion
20 be filed maybe ten days before instead of on the
21 22nd, move it back?
22     THE COURT: Today is the 11th; right? And

15

1 you want them to file it in a week?
2     MR. LAWRENCE: It's actually --
3     THE COURT: Is that what you're saying,
4 the 18th?
5     MR. LAWRENCE: Yes, Your Honor.
6     THE COURT: Ms. Harris, can you do it by
7 the 18th?
8     MS. HARRIS: How about the 19th? And that
9 gives them the weekend with it.
10     MR. LAWRENCE: That's fine.
11     THE COURT: Okay. 19th, 29th, 5th; right?
12     MS. HARRIS: Yes. Your Honor, as far as
13 pages, could we have 25 pages for opening and 5
14 for reply?
15     THE COURT: What are you all putting in
16 these briefs? Factual stuff?
17     MS. HARRIS: Ours is primarily legal
18 argument, as Your Honor --
19     THE COURT: I don't need 25 pages.
20     MS. HARRIS: Well, legal arguments to
21 flesh out the facts of the case and why even under
22 their allegations there's no personal

16

1 jurisdiction. But if Your Honor does not want me
2 to do so many pages --
3     THE COURT: The judge can decide
4 afterwards that post hearing briefs are
5 beneficial, but you have to put the evidence on
6 first before the Court can consider combining
7 those factual documents or testimony I guess it
8 would be. This is anticipatory. I'd say keep it
9 within the briefing limitations we have, and if
10 afterwards there's supplemental briefing that the
11 Court wants to hear and you feel you need to
12 provide it and the Court agrees, then that's fine.
13 But I don't want to take that up -- I think this
14 case by -- let me just show you, double-sided.
15 Ya'll don't need more pages, okay?
16     MS. HARRIS: All right, Your Honor.
17     THE COURT: Let's try to keep it tidy.
18 Three hours hearing with the judge, bench trial,
19 on April 12th with the briefing schedule as
20 discussed. And, Ms. Harris, I'm going to task you
21 with writing an order just simply stating that.
22 And that's motion number five in my book, so

17

1 that's resolved, okay?
2      MS. HARRIS: Thank you. And is that at
3 10:00 a.m., Your Honor?
4      THE COURT: Yes, ma'am.
5      MS. HARRIS: Okay.
6      THE COURT: Okay. So we'll have a
7 separate order just for that one if we can. So
8 let me look at the list of motions here and decide
9 which one I think I'll do next.
10      I would like to hear the eighth motion in
11 this list of motions, which is plaintiff's motion
12 to quash or modify defendant Compass Marketing's
13 attorney issued subpoena duces tecum or for entry
14 of a protective order, okay? So this comes on
15 plaintiff's motion, Mr. McDonald.
16      MR. McDONALD: Your Honor, yes.
17 Mr. Lawrence will be arguing that.
18      THE COURT: All right. Mr. Lawrence.
19      MR. LAWRENCE: Thank you. The reason we
20 filed the motion to quash and subpoena, they're
21 seeking personal banking information regarding
22 plaintiffs Michael and Daniel White (inaudible.)

18

1      THE COURT: I'm sorry, Mr. Lawrence,
2 you're breaking up.
3      MR. LAWRENCE: I apologize for the
4 technical difficulties. I tried to game this
5 beforehand to make sure the technology works.
6 I'll try to speak loudly. Just let me know if you
7 can't hear me or anybody else on the phone can't.
8      We filed this motion to quash because the
9 defendant -- the defendant Compass is seeking
10 personal financial information and banking
11 information concerning the plaintiffs, which have
12 no bearing on the allegations in the complaint, no
13 bearing on the pending motions that Your Honor
14 limited discovery to. That's pure and simple the
15 argument.
16      The response back to us is that there
17 somehow may be relevant information and it may be
18 relevant to some allegations that are being made
19 in the discovery disputes. The issue with that,
20 though, is that Compass has not filed any
21 counterclaims against my client, so these are not
22 live issues. And so it's a pure and simple

19

1 fishing expedition meant to annoy, harass, and
2 impede the progress of this case.
3      THE COURT: All right. Mr. Stern.
4      MR. STERN: Your Honor, there's a couple
5 of arguments as to why this motion is without
6 merit. First, it's untimely. They are required
7 to file the motion promptly. The subpoena was
8 served on them on January 12th. The subpoena
9 required response by January 27th. There was a
10 preliminary response and M&T Bank did ask for an
11 extension of time to respond to this other
12 information, of course wanting to give them
13 professional courtesies, we gave that courtesy.
14      And then on February 3rd is when the
15 motion to quash was filed. If we had held M&T
16 Bank to a strict compliance date, this motion
17 would never even been filed. So plaintiff should
18 not get the benefit of that. Beyond that, the
19 merits of the argument are pretty clear. They're
20 saying this is some fishing expedition and we
21 haven't filed counterclaims yet. Of course we
22 haven't filed counterclaims yet because we're not

20

1 subject to the jurisdiction of this Court, we
2 don't want to waive that argument. But part of
3 the defenses to the claims that are being made,
4 and part of defenses to the motions that are at
5 issue, which is Court ordered discovery on the
6 pending motions, one of which is a motion to
7 appoint a custodian.
8      Well, plaintiff are claiming that this
9 company is being mismanaged. Part of the
10 relevance to that defense is the money that
11 they've stolen. We've put evidence before this
12 Court of the bank accounts they've opened in
13 Compass Marketing's name. We've put before this
14 evidence that there's a secret account at
15 Community First Bank where it is essentially in
16 Compass Marketing, but the address that was used
17 on that account, as we've shown on the document,
18 bank card, the signature card that was submitted
19 to the Court was actually Michael White's home
20 address.
21      And to even get those documents, we
22 couldn't get them. We had to subpoena those

21

1  records. How is that's a proper Compass Marketing
2  account if we had to subpoena those records? That
3  shows they're taking money and hiding them. We
4  also showed the checks that they were writing to
5  themselves from that account going into their
6  personal bank accounts.
7      Furthermore, amongst other things, we've
8  added -- there's this $65,000 check signed by
9  Michael White, payable to Daniel White with the
10 notation on it, final payments to James DePaul and
11 former employees. Why is that not coming from the
12 operating account of Compass Marketing? Two
13 months earlier there was a $10,000 check made to
14 Chick DePaula again drawn on Dan White's account,
15 not from a Compass Marketing account.
16     You have to ask yourself, why would that
17 be the case? If these are legitimate, they should
18 be all coming to Compass Marketing's operating
19 account. At a minimum, at the very at least it
20 suggests that Daniel White was keeping some of
21 that money even if it was a legitimate business,
22 which it's not. And most of the money from that

22

1  secret account was being deposited to Michael
2  White's personal account.
3      We've put forth plenty of evidence on
4  that, plus we've also shown the wives taking money
5  from this company even though they've never worked
6  there. There's also these loans, supposed loans,
7  and you can see the notations on some of the
8  checks, some of them, but not all of them, some of
9  the checks, I think it was an LTC loan from
10 Compass, what they wrote on it.
11     Well, if it was a legitimate loan, which
12 Compass contents it's not, we should be seeing a
13 flow of money that's -- if it's a legitimate loan
14 from their personal accounts into Compass
15 Marketing's account. They don't exist. And
16 where's the money going? We have to be able to
17 see where the money is going.
18     These plaintiffs are asking this Court to
19 dissolve this company, and Compass Marketing has
20 said that they're stealing one from the company.
21 We are entitled to get discovery to know where the
22 money is going and what they've taken from it to

23

1  show this claim is without merit.
2      THE COURT: Okay. Anything in rebuttal,
3  Mr. Lawrence? And then I will make a decision.
4      MR. LAWRENCE: Yes, Your Honor.
5  Everything about -- are allegations relating to
6  the historical facts. They're all out of context.
7  And we would dispute them, Your Honor, but they
8  have nothing to do with the pending motions, which
9  is whether a custodian pendente lite should be
10 appointed for ongoing considerations.
11     Mr. Stern is pointing to no information
12 showing that my clients are in control of this
13 company or in control of bank accounts or that
14 there's some risk of ongoing harm to the company,
15 which is the entire issue noted in the pendente
16 lite. Instead what he's doing is he's trying to
17 bring a counterclaim through discovery, and it's
18 not appropriate, Your Honor.
19     And it shows where this case is spiraling
20 out of control, and it's a consistent theme as we
21 go through the discovery where it's really just
22 sabotage type discovery and it's not actually

24

1  getting to the heart of the matters to move this
2  case forward. The M&T subpoena is specifically
3  designed just to get personal information
4  regarding our clients that have nothing to do with
5  the live allegations in this complaint, nothing to
6  do with the pending motion, and again,
7  particularly nothing to do with the custodian
8  pendente lite, which is what he's trying to point
9  to.
10     MR. STERN: Your Honor --
11     THE COURT: As we all know, these matters
12 can become very intertwined, and whether somebody
13 is trying to assert a defense or explain their
14 position and they end up in a counterclaim or not,
15 it's still relevant to the question of what's
16 actually happening.
17     Seeking a custodian for the business is a
18 finding essentially that the business is not
19 thriving or not doing -- operating quickly. Those
20 are strong allegations. I read the complaint.
21 These are strong allegations. They have a very,
22 very different view of that. So at this point the

25

1 only thing I would say is that if they're having
2 to get materials that from their point of view are
3 legitimate Compass Marketing business and they
4 have to get it through this method, it strikes me
5 that, again, this goes back to the other issues
6 you all are arguing about, there's not been a free
7 flow of information in discovery.  So that needs
8 to be done.
9       And my view on discovery -- and I think
10 you'll be hearing this probably throughout -- the
11 more you share, even with appropriate protections
12 so it's not disseminated widely and
13 inappropriately, is the best way for everyone to
14 see what the other side is saying and then draw
15 whatever conclusions you think you need to from
16 those disclosures.  And this is another one of
17 those.
18       I don't think this is a mere fishing
19 expedition.  I've heard enough from Mr. Stern to
20 conclude that it is related, sufficiently related
21 to allow them to view it and to use it as they
22 wish in this case.  The allegations are coming,

26

1 and they're very powerful allegations.  So they're
2 entitled to defend against that.  And if these
3 materials bear on that, which I think they
4 potentially could -- because remember, discovery
5 is not necessarily only admissible information,
6 discovery is allowed for relevant materials and
7 that might lead to admissible information.  And so
8 that's -- you know, it's further removed from
9 straight admissibility in court.
10      And so my ruling today is that the motion
11 to quash would be denied, and that -- and then I'm
12 going to put a pin in the protective order because
13 I think we're going to come to some discussion
14 about protecting certain information that may
15 touch upon this.  So I'm going to hold that
16 holding in advance.  And I think I'd like to wrap
17 it all into one ruling on the protective order.
18      But at this point the motion to quash is
19 denied.  So Mr. Stern can draft an order denying
20 the motion to quash with obviously Mr. Lawrence's
21 exception noted.  And then once I rule on the
22 protective order piece on that, then we can

27

1 include that.
2       I think I'd like to have you all discuss
3 with me motions for expedited hearings, okay?
4 Really this is more of a scheduling motion than
5 merely whether it's expedited.  And there are a
6 number of motions -- and I just want to make sure
7 I have this straight.  This is my motion three.
8 The request here is to speedily docket the
9 plaintiff's motion to -- custodian pendente lite,
10 the plaintiff's motion to disqualify counsel,
11 defendant Compass's motion to dismiss, and
12 defendant Compass's plea in bar; right?  Those are
13 the four motions that are in plaintiff's motion;
14 right?
15      MR. McDONALD:  Your Honor, Patrick
16 McDonald here for plaintiffs.  I think the motions
17 we were seeking to expedite are the plaintiffs
18 motions, and I think this goes back to the
19 procedural history of the case going all the way
20 back to Judge Fiore's order from
21 September 29th, 2020.
22      At that time we were before the Court, I

28

1 think Mr. McEvoy was present for that hearing, and
2 there was an argument over which motions should go
3 first, and Judge Fiore's order says basically,
4 well, you guys pick dates, and the presiding judge
5 will hear -- tell you what order those motions are
6 going to go in on those dates; right?  Kind of
7 pick two days or three days together, and then the
8 presiding judge will decide the order.  So that's
9 kind of how it went.
10      And meanwhile, that was in September.
11 Meanwhile we're trying -- discovery starts, it's
12 related to these pending motions, and discovery
13 totally bogs down.  And what ends up happening,
14 all the while this pendente lite relief and this
15 motion to disqualify, which are important
16 preliminarily issues to protect the company and to
17 ensure this matter is being heard in the proper
18 fashion are just lingering and lingering.
19      Meanwhile, and we've been -- I believe
20 there's an email attached to our motion which says
21 in December we're saying, hey, let's get dates for
22 all this.  And in response we get no dates from

Transcript of Hearing
Conducted on March 11, 2021

29

1  anyone, in particularly Compass's counsel.  What
2  we get is conversation about anything else other
3  than setting --
4       THE COURT:  Hang on a minute.  I read all
5  that.  We're here to pick dates; right?
6       MR. McDONALD:  I agree, and we're here to
7  pick dates.
8       THE COURT:  That's what we're here to do.
9  So I understand you've had your difficulties, all
10 right, but -- and I'm not entirely clear how
11 things were expressed in that hearing in
12 September, but I will make it clear to you that
13 we're going to schedule things that need to be
14 scheduled, and we'll do it today, just like we
15 took care of Ms. Harris's motion, we'll take care
16 of this.  Okay?
17      But I see these dispositive motions to be
18 important to handle as well, because obviously the
19 more we can -- normally what happens in these
20 cases, okay, is you get a demurrer, the demurrer
21 and plea in bar and we knock those out, and then
22 we can move on or not.  The case maybe ended;

30

1  right?  So it's important to get some of these
2  preliminary matters squared away.
3       Asking the Court to schedule -- I
4  understand, you know, this case was filed
5  originally in 2019, certain motions were granted
6  necessitating an amendment, right?  The amendment
7  was filed, and then there was service after that,
8  a period of time after that, and the responsive
9  pleadings came in.  Pleas in bar, motions to
10 dismiss, personal jurisdiction complaints.
11      So yes, we do need to have discovery
12 moving forward, it can be on parallel tracks.  I
13 realize this has caused a lot of drama for you
14 all, I get it, but it seems like we have to get
15 these dispositive motions clarified now and get
16 those them worked out.
17      So what I need to understand at least
18 preliminarily before we jump into what's being
19 scheduled when, is there going to be a jury demand
20 for the plea in bar?  Because I didn't read the
21 plea in bar, I had plenty of other things to read,
22 so I don't know what the issue is, and so I want

31

1  to know from you all whether there's a jury
2  demand, because that will make a difference.  And
3  of course I need to know on each of these motions
4  what you all think the duration of each of these
5  is going to be.
6       So having said, the plea in bar is my
7  first question, because I think that does matter
8  whether we can schedule it sooner or later with a
9  jury or not.
10      MR. STERN:  Your Honor, can I first
11 address the motion to dismiss?  Because I think
12 that would need to come before the plea in bar.
13      THE COURT:  Maybe, but I also want an
14 answer to the question about the plea in bar.
15      MR. STERN:  We're happy to go with a bench
16 trial.  It's a statute of limitations defense is
17 what that is.
18      THE COURT:  Okay.  But as I read the
19 complaint, what was alleged was that there was so
20 much fraudulent conduct that it was basically
21 obfuscated and screened discovery of the behavior
22 so far down the road, and it was specifically

32

1  addressed in the complaint.  So there's going to
2  be a lot of evidence on that issue, obviously,
3  what did you know?  When did you know it?  And so
4  on.  So there's going to be a factual
5  determination, presumably.  So Mr. McDonald or
6  Mr. Lawrence, is there a demand for a jury on the
7  plaintiff's side?
8       MR. LAWRENCE:  Your Honor, plaintiffs have
9  not filed a demand for a jury now.  Procedurally
10 they have that option up to the point of the
11 hearing is my understanding, Your Honor.  I have
12 to speak to Mr. McDonald regarding --
13      THE COURT:  Well, there's no demand now,
14 so how do I schedule it?
15      MR. LAWRENCE:  Understood, Your Honor.
16 I'm just saying that I haven't forced my clients
17 to make that decision now because of the knowledge
18 of the procedure.  My inclination is we go ahead
19 and schedule it nonetheless as if it was not a
20 jury trial, and we would inform the Court as soon
21 as possible if that's not the case.
22      THE COURT:  Okay.  And the motion to

33

1  dismiss, what's the duration of that, do you
2  think?
3       MR. STERN:  Evidentiary hearing.  It's a
4  straight legal argument.  It's based on a lack of
5  jurisdiction, failure to name a necessary party
6  and forum non conveniens.  And so that -- our
7  position all along is that should be heard shortly
8  after John White's motion is -- on personal
9  jurisdiction is heard.  I think the most
10 appropriate thing would be for that to be
11 scheduled approximately a week, somewhere shortly
12 thereafter so that that can be heard.  That might
13 be dispositive of the entirety of the case, which
14 we --
15      THE COURT:  And so how much time do you
16 think that would require?  An hour?
17      MR. STERN:  Probably an hour would
18 probably be sufficient to make.
19      THE COURT:  As long as there's no
20 testimony.
21      MR. McDONALD:  Judge, I think we disagree
22 that that's not an evidentiary hearing, because

34

1  forum non conveniens is essentially, it's a
2  factual venue jurisdictional type of argument.
3  And I don't think we agree that there's going to
4  be no evidence in that case.  I don't think it's
5  pure legal argument.
6       And I would go back to Judge Fiore's order
7  of basically we're going to hear all these things
8  at once.  You know, and the presiding judge will
9  set the order of when that's going to be.  I hear
10 you say you want to schedule -- you kind of agree
11 with that in a way, which is you want to put these
12 other ones there.  And so what I would say, Your
13 Honor, is I think this is going to be an
14 evidentiary matter the same as the others.  So I
15 don't know that there's a reason to prioritize
16 it --
17      MR. STERN:  Your Honor --
18      MR. McDONALD:  -- that's pure legal
19 argument.
20      THE COURT:  We can schedule it.  I'm going
21 to decide which ones go in what order now because
22 ya'll can't seem to do it.  I mean, I don't know

35

1  how in the world you can't get something on the
2  docket to have -- I just don't understand it, but
3  okay.  It seems like there's been a lot of
4  hurdles.  So we're going to do it.  So that needs
5  to be heard.  And how long is the motion for a
6  custodian pendente lite going to take?
7       MR. STERN:  Your Honor, we have to go
8  through all the discovery to be able to get
9  something like that -- we've gotten zero.  It's
10 been four months -- more than four months.
11      THE COURT:  Okay.  So it's an evidentiary
12 issue.  Discovery needs to be -- you have to have
13 a discovery cutoff, because there needs to be --
14 so you need a trial date for that hearing so you
15 have discovery cutoff dates.  I mean, at this
16 point, you know, we're working -- normally
17 scheduling orders work off of actual trial dates.
18 You're doing interim discovery with interim
19 discovery cutoffs, essentially, because of
20 preliminarily substantive motions.  I hope I'm
21 fairly characterizing this for you all so you all
22 know -- and I don't have an end date from which to

36

1  calculate back discovery cutoffs.  So you need a
2  discovery cutoff.
3       MR. McDONALD:  That's a correct
4  characterization.  The problem is we're four and a
5  half months in since our discovery requests have
6  been served and we've gotten zero.
7       THE COURT:  Right.  I understand,
8  Mr. Stern, because --
9       MR. McDONALD:  Your Honor, if I could --
10      THE COURT:  Stop.  Stop.  I asked one
11 question.  How long will the trial on the
12 custodian pendente lite take to try?  That was my
13 question.
14      MR. McDONALD:  Your Honor, I think we
15 probably need about a day for that.
16      THE COURT:  One day.  Mr. Stern, you're
17 saying I don't know, probably, because you haven't
18 gotten all the discovery?
19      MR. STERN:  We have no idea how many
20 witnesses -- that's the thing, if you saw in the
21 emails we submitted, I even tried to talk to --
22      THE COURT:  Okay.  Mr. Stern, contain

37

1  yourself, please.  I think it's two days.  Because
2  this is the heart of the case, isn't it?
3       MR. STERN:  It is.
4       MR. McDONALD:  It is.
5       THE COURT:  It's basically saying they
6  have so badly handled this we need a custodian or
7  a receiver to fix it, to manage it.  So that goes
8  to the heart of it.  So that's not going to be our
9  first motion, because it's basically got to happen
10 after further discovery, which we will figure out
11 in a few minutes.  Then the fourth motion is the
12 other plaintiff's motion to disqualify counsel.
13 And -- and please refresh my memory on this, what
14 counsel needs to be disqualified?
15      MR. McDONALD:  Your Honor, we're moving to
16 disqualify Mr. Stern.  And we don't do that
17 lightly, but he is a material witnesses, he and
18 his firm are material witnesses that are
19 intimately involved with Compass.  And that --
20 that motion sort of -- it informs I think a lot of
21 other motions and whether Mr. Stern should be
22 making any of these arguments.

38

1       THE COURT:  Okay.  So how long will that
2  -- that's going to be obviously an evidentiary
3  hearing?
4       MR. McDONALD:  Yes, Your Honor.  I think
5  that one will be no more than three hours.
6       THE COURT:  You've got two and a half
7  hours for non-evidentiary motions today, you
8  realize that, so I'd be certain of that estimate,
9  but I would say a day.
10      MR. McDONALD:  I hear what you're saying,
11 Your Honor.
12      THE COURT:  I think it's a day.  You're
13 looking at presenting testimony from a number of
14 people who are going to say, you know, whatever it
15 is you think they're going to say, and then
16 Mr. Stern and his firm and Compass will obviously
17 have a different opinion, otherwise we wouldn't be
18 arguing over this.  So my view of this is that the
19 motion to dismiss and the disqualification are the
20 first two motions in order.  I'm not telling you
21 when -- you know, how much time in between these
22 things or if they will be on separate days even or

39

1  if we're going to combine these into one three or
2  four-day event and hear them in the order I'm
3  suggesting, okay?
4       But I think that at least the dismissal,
5  the disqualification, and the plea in bar should
6  be heard sooner than the custodian.  And I say
7  that because, again, as I already said having --
8  if these dismissals or if these dispositive
9  motions, excuse me, are granted, again, the whole
10 predicate of the pendente lite custodian rests on
11 the case being allot, so hence pendente lite.
12      So we have to know whether or not this
13 case is going forward, so the dispositive motions
14 need to be heard.  So that's my view of it.  And
15 because we're talking about two, maybe all three
16 being evidentiary, and I imagine there being
17 overlapping information, it seems to me we should
18 combine this in a multiday hearing and hear it in
19 the order I suggested.  It may be that all the
20 matters are simply -- you dump all your evidence
21 in and have the Court make whatever decisions it's
22 going to make on those three motions, but it needs

40

1  to be set out so you have time to get your
2  witnesses, then the custodian pendente lite should
3  be scheduled, I suggest, shortly thereafter.  And
4  then you can all can work backwards from those
5  dates and get your discovery cutoffs, we can do an
6  interim scheduling order for you which picks dates
7  for you to pick back from.
8       MR. STERN:  Your Honor --
9       THE COURT:  I don't know how else to say
10 it, but that seems to be the logical way to do it.
11      MR. STERN:  Your Honor, if I may, I think
12 the motion to dismiss should be heard earlier
13 because it's a legal argument.  The only potential
14 evidentiary situation, which I don't think is an
15 evidentiary one, but if they want to make it one I
16 understand that is identifying where the witnesses
17 are.  That's not going to take discovery -- people
18 know -- we don't know which witnesses are going to
19 be called in for the evidentiary hearings, but
20 where all the evidence is in this case is part of
21 the forum non conveniens.  That's all -- those are
22 the two arguments, necessary party, forum non

41

1  conveniens.
2       And if that motion is granted, that gets
3  you rid of the need for all these other motions
4  all this over discovery, that should heard first.
5  I would agree with and I'm fine with if the Court
6  wants to order that the plea in bar and motion to
7  disqualify are heard together, that's fine, I
8  didn't know there's going to be different
9  evidentiary issues, but I'm trying to find a path
10 where there's some -- some semblance of organized
11 structure and the parties not spending a lot of
12 money that they don't need to spend.
13      MR. McDONALD:  Judge, I don't see how we
14 can have a hearing on the motion to dismiss
15 without at least at the same time deciding if
16 Mr. Stern should even be making these arguments,
17 because it is conflicting.
18      MR. STERN:  Your Honor, I'm just -- I'm
19 getting tired of this dirt being thrown.  That
20 motion is so weak they couldn't get discovery from
21 a court in Maryland because they couldn't even
22 make out the bare minimum that's required to get

42

1  discovery.  That's how much -- it's all part of
2  their part and parcel, their strategy to distract
3  from the other my conduct and throw dirt on the
4  law.
5       THE COURT:  Let's do this.  All right.  So
6  maybe this will help with the other things that
7  we've been talking -- what I'm having difficulty
8  with -- let me stop there.  What I'm having
9  difficulty with on these discovery motions is that
10 all discovery -- discovery has been propounded and
11 there are complaints that no one's getting what
12 they're asking for timely and there's all these
13 impediments and this and that.  Okay.
14      We're going to resolve some of that today
15 and get the ball rolling.  This has been
16 outstanding for months, the discovery.  So it
17 strikes me that we should be able to schedule the
18 dismissal, motion to dismiss, and the
19 disqualification for one day on the same day and
20 you won't need to have much additional discovery
21 after today.  I think everything is going to be
22 cleared out by then.

43

1       And then the plea in bar we'll set a
2  second hearing on a separate day for a day.  And
3  then the custodian pendente lite will be further
4  out set for two days.  And the reason I say
5  further out, meaning third a row, I don't mean
6  seven months from now, but several -- the third
7  one of three hearings that we're going to have for
8  you all so that, A, you'll get all the discovery
9  done; B, you will have the time; and C, because I
10 think this is the proper order of things.
11      So this should work, but -- and we'll have
12 to pick three trial dates for you all on that.  So
13 before I choose those dates or we choose those
14 dates, I want to move on to -- I think now we're
15 into pretty much the discovery matters.  And I
16 think we can probably handle them all -- because
17 they're all sort of versions of the same argument.
18 The motion to compel, the plaintiff's motion to
19 compel for a protective order, which is
20 essentially a motion to adopt the plaintiff's
21 language of a protective order, right, and then
22 defendant's cross-motion for a protective order,

44

1  which is essentially the opposite, please take
2  this view of a protective order.  That's basically
3  one issue.  Plaintiff's motion for a protective
4  order and discovery plan.  Defendants cross-motion
5  to compel discovery, and plaintiff's second motion
6  to enlarge time for discovery responses.
7       So they're all discovery.  And there are
8  multiple concerns about protective orders.  So the
9  protective order seems to be the hurdle, at least
10 one of them.  And I think now it's before the
11 Court.  So let's start with the protective order
12 issue.  So there was a request during this
13 discovery period or insistence, however you want
14 to phrase it, that you all enter into a protective
15 order regarding certain confidential information.
16      The plaintiffs are of the opinion that the
17 language, which involves some liquidated damages
18 provisions, and another enhanced -- enhancement to
19 the protective order, which is somewhat disputed
20 as to whether it's an attorneys' eyes only
21 protective order or an enhancement that comes
22 before the Court, which is kind of the way I read

Transcript of Hearing
Conducted on March 11, 2021

45

1  it, and whether that's necessary; right?
2        So when you think about this, at least
3  from my view of the briefs that I read, both of
4  you are claiming pretty significant problems with
5  the way this company was run or the way certain
6  individuals conducted themselves vis-à-vis Compass
7  Marketing and whether they were using it as their
8  own personal slush fund or they were
9  misappropriating funds and acquiring interest in
10 another company and basically disassembling
11 Compass improperly.  Two very serious views of the
12 same condition of the company.
13       So obviously each of you has concern about
14 where that information is going to go.  And so
15 protective order sometimes obviously is necessary,
16 and neither of you seems to dispute that.  So the
17 question is why is one better than the other and
18 what does one accomplish the other one doesn't,
19 and what is the most safe possible way to protect
20 the information so that the individuals producing
21 it and relying on it has confidence it's not going
22 to misused?  And so that's to me the nut of a

46

1  protective order, is it gets people to have some
2  confidence in what they're disclosing is not going
3  to be misused, and that they can use it if they
4  need to use it.
5        So that's the idea.  I don't want to
6  create a problem, additional hurdles, but at the
7  same time, if you don't have confidence that when
8  you turn things over it won't be misused, you're
9  going to have some trouble getting that
10 information or you're going to be more combative
11 about it.  And so the idea is try and take some of
12 that discomfort away or lack of trust.  And I can
13 tell you there's a clear lack of trust here.  So I
14 want to eliminate that as much as I can, but at
15 the same time let you all get what you need.
16       Because I think, as I said earlier, airing
17 some of these issues out like seeing the documents
18 or seeing the materials and answering the
19 questions is going to help you all get a clearer
20 picture of what your clients are telling you and
21 what you all can do.  So that's how I've always
22 viewed these, and I think as a lawyer how judges

47

1  have explained it to me.  So that's how I see it.
2        Mr. McDonald, this was plaintiff's motion.
3  I'm sorry if it's Mr. Lawrence who's arguing it, I
4  don't know.  I want to understand why your
5  protective order is the best way to go, and if --
6  and how we're going to use that.  Okay?
7        MR. McDONALD:  Mr. Lawrence is prepared to
8  argue that.
9        THE COURT:  Okay.  Thank you.
10       MR. LAWRENCE:  Yes, Your Honor, thank you.
11 The reason for the protective order is the way to
12 go is two provisions that are disputed here.  As
13 Your Honor points out, we agree there needs on to
14 be a confidentiality agreement.  There needs to be
15 some protections afforded.  And so we agree with
16 that, and we think that the version that doesn't
17 include supervision is appropriate.  And that's
18 because the Court will have authority to monitor
19 it should there be some alleged violation of it.
20 And the Court can fashion whatever remedies are
21 appropriate if that should arise.  Now, we're
22 confident it won't arise from our side because

48

1  obviously we take it very seriously.  These are
2  very normal for the type of litigation that we
3  handle.  Our clients, one is a judge, one is a
4  lawyer, they understand the obligations that they
5  have in connection with this litigation as well,
6  Your Honor.
7        So we think that the order is necessary,
8  and we think that the order as is standard is
9  appropriate.  Now, speaking specifically, first
10 off, the liquidated damages provision, which has
11 handcuffed Your Honor and prejudged what remedy
12 would be appropriate if there's an allegation and
13 finding of some breach on either side.  We think
14 that's wholly inappropriate for Your Honor.  We
15 think you have the inherent authority to address
16 it however is necessary.
17       There's a difference between going to a
18 mile over the speed limit versus, you know,
19 murdering someone.  So it doesn't need to be in
20 there.  It's unprecedented.  It's never been done
21 before, Your Honor, in the context -- except
22 potentially there might be one case in all of U.S.

49

1  juris prudence that found -- that entered an order
2  that the parties had agreed to. It's just
3  unprecedented. And $150,000 per violation, it
4  doesn't even relate -- we don't even know what the
5  situation is. So liquidated damages clause shows
6  up out of nowhere, has no precedent, and the Court
7  should reject it.
8      As for the attorneys' eyes only provision,
9  it similarly has no place in a shareholder dispute
10 like this. My clients, at least they've -- we
11 believe they're 50 percent owners of this
12 corporation. They concede on the other side that
13 they're at least one-third owners of this
14 corporation. So they're major shareholders of
15 this corporation, and they alone are going to be
16 the ones that are going to be able to assist or
17 aid in their own prosecution of the claims and
18 potentially defense of any counterclaims.
19     So I can't -- I am just a lawyer, Your
20 Honor, as you know. I'm a fiduciary to them, I'm
21 serving them, I'm not involved in these facts like
22 Mr. Stern is. I don't know the significance of

50

1  documents. I have to rely upon my client to tell
2  me that. I don't have an expert either that's
3  going to tell me, you know, the context of all
4  this.
5      So it would be -- it would be
6  inadministerable for me to be able to just receive
7  documents, evaluate them, and use them in the
8  prosecution and defense of my clients without
9  consulting my clients regarding these documents.
10 So the attorneys' eyes only provision comes up --
11 and I've seen it before and I've had to use myself
12 in the context of trade secrets.
13     Now, my clients are competitors with
14 Compass, they are Compass. They are -- they are
15 the founders along with Mr. White on the other
16 side of this company. And so the trade secrets,
17 if there are any, that would be disclosed to us,
18 the confidential financial information. If there
19 is any, that needs to be disclosed to us, that was
20 information that my clients were involved in at
21 the time. So there's no purpose to have my
22 clients shielded from the discovery in this case.

51

1  And it would just create more mischief, Your
2  Honor, if it's placed in there.
3      Now, if there's something that Mr. Stern
4  or Ms. Harris come up with that they want to
5  approach the Court with and come to you and say,
6  this needs attorneys' eye only protection and you
7  can obviously see what it is, we're not saying --
8  whenever the Court enters an order, there's never
9  a preclusion that you will not go back and revisit
10 the order or try to get something in addition to
11 the order.
12     But we think putting it in the order just
13 creates the opportunity for mischief. This is not
14 a trade secret case, this is not an antitrust case
15 between competitors. And everything they bring up
16 with regard to these supposed proton emails and
17 anonymous complaints, Your Honor, that is the
18 subject of a lawsuit that Mr. Stern filed against
19 three individuals who are not my clients in
20 Montgomery County, Maryland. He did not name any
21 complaints. And so he's coming to you and saying
22 here's evidence of what they're going to do with

52

1  information if they get it, and yet he's filed a
2  lawsuit in the state court in Maryland making
3  those same allegations against three other
4  individuals. So which is it?
5      It's just not needed and it would be
6  unadministerable for you, Your Honor, it would
7  handcuff us as counsel to not be able to satisfy
8  our professional obligations.
9      THE COURT: Okay. Well, just so it's
10 clear, I didn't read what I think was originally
11 paragraph nine in this -- or eight in this
12 proposed protective order to say that the
13 materials in general are attorneys' eyes only. It
14 only suggests that if there's documentation that
15 they view highly confidential information that you
16 would have further discussions to create some sort
17 of protections around that, which might include
18 attorneys' eyes only, because I didn't want to
19 blanket agree that all of it was at the same level
20 of confidentiality or protection.
21     So it was a provision -- and I don't know
22 what the information is, and I'm clearly not going

53

1 to prejudge what it is because it hasn't been
2 disclosed yet. But it strikes me that that's the
3 triggering position or triggering provision where
4 it goes on to say if the parties cannot reach
5 agreement and the producing party continues to
6 withhold, then the producing party -- so in other
7 words, it puts the onus on them to file a
8 particular motion, seeks a resolution with the
9 Court.
10     So yes, it creates a cumbersome area if
11 you all can't agree, but it presupposes you will
12 agree on how to manage it. And it doesn't say
13 that all the materials are going to be for your
14 eyes only and not your clients, because I would
15 have to agree in a case of a closely held company
16 like this and how personally involved they were,
17 they're going to have to see a lot of this
18 information obviously to make sense of it and help
19 you craft your case. So I don't think there's any
20 dispute about that.
21     The question is whether this provision as
22 drafted is over the top. So the question I'd have

54

1 for Mr. Stern then is with regard to that
2 provision, you obviously had some thoughts about
3 the materials that may fall into the category of
4 highly confidential information, and I guess my
5 question is, you know, is that a lot of
6 information? Is it a little bit of information?
7     Because ultimately if it's all viewed from
8 your point of view as the producing party, they're
9 not arguing it from the other side, mind you,
10 they're only arguing it from this side as the
11 receiving party. But as the producing party, do
12 you expect that a large percentage of these
13 documents or answers are going to be, quote,
14 highly confidential information?
15     MR. STERN: I think it's a fair question,
16 and unfortunately I don't have a clear answer on
17 that, Your Honor. We drafted this back at the
18 very beginning of discovery while we were
19 gathering information, and I haven't really, quite
20 frankly, studied it that much since to know what
21 would be fit into that category.
22     THE COURT: When you wrote the document,

55

1 what did you envision would be something that
2 would be of that sort?
3     MR. STERN: I'm more comfortable answering
4 that. To me this is a pretty typical provision
5 that I've included in protective orders before
6 saying, hey, if you come across something that
7 seems like this is beyond the pale and this is
8 something that's super confidential that we've got
9 to limit it to attorneys eyes', it's in there for
10 that possibility.
11     You were spot on with describing the
12 provision. It's not saying that everything is
13 going to be attorneys' eyes. There is a meet and
14 confer obligation on the front end. So it's for
15 the extraordinary circumstances when there's
16 something that's really highly confidential. This
17 is really -- probably in the context of this case,
18 one example would be some prospective business
19 dealings that these plaintiffs have shown an
20 inclination to sabotage the company.
21     The information of investment in
22 Teknetics, for example, they were one of a small

56

1 handful of people that had access to that
2 information. Yet somehow during the bankruptcy
3 proceeding involving Teknetics, somehow the
4 investor was told about misinformation about how
5 that information was being used.
6     They're one of the small handful of people
7 on earth that knew about that deal. How did it
8 end up in the investors hands? So to me that's
9 significant evidence of them trying to not protect
10 this company but tear this down.
11     We haven't had the chance to get full
12 discovery that to confirm it was them, but the
13 inferences are there. Now, Mr. Lawrence is trying
14 again, you know, misdirect. He's talking about
15 that other lawsuit. A couple of other things
16 about that lawsuit. That was filed against three
17 John Does. Since the filing of that lawsuit we've
18 been able to confirm the owner of that P.O. Box
19 was a close personal and former colleague of
20 Michael White's. We've now confirmed that. What
21 are the odds of that?
22     Again, the information that's being

57

1  disseminated in an effort to tear down Compass,
2  these plaintiffs are in a unique position being
3  some of the few people on earth that have the
4  access to the contacts, the information, and so if
5  somebody's going to be prospectively hurting
6  company or something in some other way that is --
7  that they can use weaponize, we have to have that
8  tool available to us to be able to protect the
9  company.
10      This case is all about misdirection, Your
11 Honor.  I know -- they keep trying to throw in
12 some of the merits here, but I have to as well to
13 protect Compass here.  This effort to dissolve the
14 company is to cover up their own misdeeds.  And
15 we've now presented substantial evidence to the
16 Court that not only are they hurting the company
17 by taking from it, they're hurting the company by
18 trying to interfere with relationships, destroying
19 investment opportunities, destroy customer
20 relationships.
21      The question isn't about -- when he talks
22 about proton mail, the question isn't whether or

58

1  not somebody else is going to sue, the question is
2  to Dan White and Michael White, who are on this
3  call today, have they ever used or operated a
4  proton mail account, but they're not telling you
5  that.  Why is that?  Because we are fairly
6  confident the answer is yes and they're the ones
7  that are disseminating this information.  They're
8  not getting on the line to tell you that.  There's
9  a reason --
10      THE COURT:  I wouldn't expect them to.
11 That's not way this operates.  This is all legal
12 stuff.  All right.  So, Mr. Stern, the last
13 question from me then to put this back on you for
14 any comment is Mr. Lawrence's argument that
15 imposing a liquidated damages provision,
16 especially to the tune of six figures, is neither
17 something that's precedent or is appropriate given
18 that, you know, any minor infraction would still
19 involve in the same relatively draconian, if you
20 will, penalty.
21      MR. STERN:  My response to that is quite
22 simple, Your Honor.  If they don't want that

59

1  penalty imposed on them, don't break the
2  confidentiality.  Don't violate it.  It's really
3  simple.  They're in complete control of their
4  compliance.  No one else is.  You have to ask
5  yourself, why would they be so opposed to this?
6  We've not included the monetary figure as the
7  example about that investment.  I will tell you,
8  Your Honor, that monetary loss is multiple times
9  more than the liquidated damages provision that's
10 in dispute.
11      So the amount of harm -- the purpose of
12 liquidated damages is when the measure of damages
13 is difficult to ascertain.  And depending on the
14 nature of the violation, unfortunately the harm
15 that could be brought to Compass can't be greater
16 than the 150,000 liquidated damages provision, and
17 in some instances maybe less, but I come back to
18 the same question as before.  Why are they so
19 opposed to it?  Look at all the quote/unquote
20 anonymous attacks on this company.  There's a
21 high, high degree of concern and confidence that
22 they're the people that are doing this, and

60

1  they're looking for an escape clause to continue
2  to do it and use this court as a lawful mechanism
3  to continue their attacks against Compass.
4      The simple answer is to -- for the
5  plaintiffs in this case, comply with the
6  protective order.  But, in fact, Mr. Lawrence's
7  argument almost implies that they're prone to
8  violate it because, well, what if the violation is
9  not that severe?  Your Honor it's, almost an
10 admission.  You have to look behind the surface of
11 what's being said and look at the question of why
12 and where this is really coming from.
13      It's almost like I'm in the Wizard of Oz.
14 Don't look behind the curtain.  Just look at the
15 smoke screen in front of you.  And that's what's
16 going on.
17      THE COURT:  So, Mr. Lawrence, final word
18 on any of that and I'll wrap up that.
19      MR. LAWRENCE:  Yes, Your Honor.  As you
20 heard, he has no precedent for liquidated damages
21 involved.  He also might be comfortable with, you
22 know -- in some (inaudible) involved the history

61

1 of cutting off hands (inaudible) the loaf of
2 bread. We don't need to set down parameters as to
3 what would happen if someone, not my clients, if
4 someone violates it. Mr. Stern will be able to
5 prove up whatever damages and I will be able to
6 prove up whatever (inaudible.)
7        More telling, Your Honor, you asked the
8 question, what does he have that's attorneys' eyes
9 only? What does he points to? He points to
10 nothing. And he points to an example that's
11 Exhibit 26 of his opposition where an investor
12 said, hey, wait, I just learned that Teknetics
13 isn't solid and is in bankruptcy, so I'm going to
14 go through this deal anymore.
15        First off, the fact that Teknetics was in
16 bankruptcy isn't something that deserves
17 attorneys' eyes only protection. That's the type
18 of stuff he's looking for. These anonymous emails
19 were emails or packages that he lines up that he
20 has litigation concerning in Maryland. All of
21 them are forwarded copies in the complaint, copies
22 of public hearing, copies of maybe the transcript

62

1 of maybe this hearing. This is not stuff that
2 deserves attorneys' eyes only. So he's got
3 nothing that shows you that this should be in
4 here, and if it is in here, I can almost
5 guarantee, Your Honor, he'll be conferring with
6 you.
7        MR. STERN: Your Honor --
8        MR. LAWRENCE: I've never interrupted you,
9 Mr. Stern.
10        THE COURT: Mr. Stern, no.
11        MR. LAWRENCE: And, Your Honor, I can
12 almost assure you there's going to be several
13 conferences, there's going to be more motions,
14 there's going to be more delay. We've had enough
15 of that in this case. Now, if something were to
16 come up, of course I can't -- there's no motion by
17 me to have the Court order that Mr. Stern can't
18 bring up things in the future. And that's the way
19 it should be dealt with, Your Honor, we
20 respectfully request.
21        THE COURT: And I was reviewing this
22 earlier. I think the liquidated damages provision

63

1 is an interesting concept because if you believe
2 in the concept of deterrents, maybe not community
3 wide deterrents, but deterrents in a particular
4 case, knowing that there's a steep price to pay
5 for a violation is well worth understanding. And
6 so extra caution would be taken. But it's also
7 the safeguard for the producing party.
8        I don't want to have trials within trials
9 within trials. And if I'm going to impose a
10 sanction, which is what the motion would be if
11 someone filed breach of the confidentiality
12 agreement, I'd have to have a whole trial and hear
13 a whole thing about damages. I feel like --
14 Mr. Stern's argument is succinct, meaning if you
15 don't want to have liquidated damages, don't
16 breach the agreement, but that's also a really
17 powerful message, right?
18        So I don't think that the liquidated
19 damages provision, maybe there are no cases on it
20 because no one's appealed it, I don't know, but it
21 doesn't seem wrongheaded on the face of it. So
22 that part of it is actually not as disturbing to

64

1 me.
2        What I do find troubling about the
3 additional protection provision that was proposed
4 originally by Compass is I think the point that
5 Mr. Lawrence is making, which is we're bogging
6 ourselves down what if and what if and what if
7 scenario. I think he's right in that I think
8 provision should probably read something to the
9 effect of nothing herein precludes a party from
10 seeking additional protections from the court.
11        And what would that would mean providing
12 the information and telling the Court, look, we
13 really think this should be attorneys' eyes only
14 or whatever the protection is that you're seeking.
15 Because this is a pretty expansive document, this
16 confidentiality agreement is pretty expansive, and
17 it provides a lot of protection for everybody.
18 And I think if you go into it saying we're always
19 going to have to argue about something that's not
20 really a defined term, highly confidential
21 information, it's going to create a lot of
22 problems.

---

65

1       I realize why the provision was put in
2  there, I understand it, in other words I have to
3  be careful, Judge, because there's information
4  we're concerned about.  But I don't think that's
5  going to get you very far in discovery except to
6  create more of these impasses.
7       So knowing that the next level is you have
8  to come to court I think is probably the better
9  approach.  So I don't have heartburn actually
10 about the liquidated damages, I think that gives
11 you that protection that you want.  You want there
12 to be something out there that says, this is so
13 important that we mean business, six figures of
14 damages if you violate it.  And then that's on you
15 if you violate it.
16      But I think that paragraph eight or nine,
17 whichever was the original number on that should
18 probably be amended to say that nothing herein
19 precludes a producing party from seeking
20 additional protection from the court.  And so I'm
21 sort of splitting it, I guess I'm giving you each
22 half a baby there.  Split the baby a little bit.

66

1  So I think that will help you.  Now that you have
2  a protective order, confidentiality agreement,
3  whatever you're going to call it, I think you all
4  should be dumping documents on each other like
5  crazy.  All right?
6       So that's how I would resolve that
7  argument.  And hopefully that will work for you
8  all a little bit better.  I just think you all
9  need closure on that.  So that's your protective
10 orders done.  And that puts us to -- and I guess I
11 need some clarity, and this is going to go to
12 setting dates for these other hearings.
13      There's a request for protective order,
14 this is plaintiff's motion four or the fourth
15 motion.  Motion for protection and discovery plan,
16 I think.  Is that an additional protective order,
17 Mr. Lawrence?
18      MR. LAWRENCE:  Yes, it is Your Honor what
19 it seeks to do is have the court issue an order as
20 to the timing and sequence of discovery.
21      THE COURT:  That's right.  So that's the
22 discovery plan issue.  All right.  What's

67

1  problematic about that to me is I think Mr. Stern
2  is correct in his opposition that he writes that
3  there's really not -- the rule doesn't permit
4  that.  And I don't think putting off things until
5  one person's answered and another person's
6  answered.  You all have already propounded
7  discovery and it has its own internal deadlines,
8  right?
9       If stuff was sent out in October, that had
10 a response date.  And it looks like everybody is
11 overdue but a lot a lot on these responses.  And
12 so I don't think setting up a discovery schedule,
13 I guess, that says Mr. Stern has to respond first
14 before we respond or the other way around, I don't
15 think that is any merit.  You all propounded
16 discovery already and it already has deadlines, so
17 why would we be doing that?  I don't understand
18 it.
19      MR. LAWRENCE:  Because, Your Honor, we
20 believe there needs to be a court order telling
21 the parties you need to respond by a particular
22 day.  You could even do it simultaneously.  What's

68

1  going to happen, what has happened is that there's
2  impediments thrown up at the last minute and
3  Mr. Stern is beating on us to say, bring your
4  discovery, bring your discovery.
5       Now, we had the impediment as well too
6  with regard to the protective order, which Your
7  Honor has now cleared the way for, but the bottom
8  line is there's extreme gamesmanship going on with
9  regard to the discovery -- well, that's the way we
10 view it, Your Honor.
11      THE COURT:  I know.  Both of you view it
12 that way.
13      MR. LAWRENCE:  So, for example --
14      THE COURT:  That's the trust problem I'm
15 talking about; right?
16      MR. LAWRENCE:  Sure.  And, for example,
17 kind of one of the most notable examples is that
18 we were trying to clear the dates in January with
19 regard to setting third party depositions up,
20 which we thought would be the most efficient way
21 for it because at least we'd get something going
22 here, and Ms. Harris suddenly had available dates

69

1 on the 7th and 8th, and I had a list of four
2 witnesses that I was trying to schedule, and
3 Mr. Stern then notes my client's depositions for
4 those dates.
5        Now, that's entirely inappropriate for a
6 lot of reasons.  Number one, I was looking for
7 dates, and then he jumped in with dates.  Number
8 two, Ms. Harris's client isn't even in the case
9 yet.  And so for us to be moving forward with my
10 client's depositions before they've completed any
11 written discovery, substantive written discovery,
12 there's been some tickle, before any of that it
13 was just gamesmanship, Your Honor.
14        THE COURT:  Mr. Lawrence, here's the
15 thing.  I've seen a lot of it on both sides.  And
16 I'm not suggesting any of it is wrong or right.
17 It's strategic.  All of this is strategic.  You
18 all are resisting certain things for whatever
19 reasons, they're resisting certain things for
20 certain reasons and you've come to an impasse.  So
21 I feel like I feel like I'm sort of in my drug
22 court where I'm trying to talk to the participants

70

1 and help them understand the ways of recovery --
2 thankfully I've never been in recovery, but I can
3 talk the talk a little bit.  I have been in your
4 shoes before.  So we all need to get into recovery
5 today on this on how we're managing moving the
6 case forward.
7        So I accept your representations of how
8 you view this case, and I accept Mr. Stern's view
9 of how he views the case.  Okay?  Those are your
10 truths, if you want to call it that.  I'm feeling
11 very woke at the moment.  Anyway.  My point is it
12 doesn't help to sort of sit in that so long.  I
13 think we have -- you're in front of me because
14 you're at an impasse and I commend you for
15 bringing it to me.  So let's get out from under
16 the feelings and get onto really how we're going
17 to move ahead.
18        The Court hears the accusations on both
19 sides and wants you all to get to a place of
20 discovery where you can see whether there's any
21 merit to any of this, okay?  All right.  Thank you
22 for indulging me.

71

1        So with respect to the order of things.
2 As I said originally, you kind of already set out
3 the order of things.  You've propounded discovery.
4 So maybe the answer to the question is where are
5 we on compelling everybody?  Maybe that's the next
6 question, because it feels like that's where
7 Mr. Lawrence is concerned.  That look, Judge, you
8 need to compel everybody to do stuff otherwise
9 we're not going to get off the dime.  And when are
10 you going to compel us to produce; right?  But
11 everybody has a motion to compel today.  Not
12 Ms. Harris, but, you know, Compass and the White
13 brothers have motions to compel.  Okay?
14        So I'm just going to ask you succinctly,
15 Mr. Lawrence, on your motion to compel, when are
16 you looking to have -- assuming I agree to compel
17 it, when are you looking to have Compass produce
18 these materials that you're seeking in the motion?
19        MR. LAWRENCE:  So we proposed in the order
20 that they would provide their written responses
21 within five days of the entry of the above
22 confidentiality order, and we would provide ours

72

1 within 14 days thereafter.  And then we put the
2 parties' depositions at the back end of the
3 discovery as it relates to a scheduling order,
4 Your Honor.  And we think that's the appropriate
5 order because there is a lot to be done in the
6 case and the -- you know, if we just play
7 strategic discovery with each other -- and I'm
8 actually -- I'm willing to consider alternatives
9 that Mr. Stern would propose.  In fact, I asked
10 him for that proposal, and I would give him more
11 time for it if it sets up with schedule fine.
12        THE COURT:  I got your answer.  Let me
13 just say, Mr. Lawrence, I don't agree that they
14 would be required to respond before you respond.
15 I wouldn't agree to that.  I don't agree to that.
16 I think we're going to pick a time, a day, maybe
17 it's just two weeks for everybody to gets their
18 answers across.  You'll have the same deadline.
19 Mr. Stern has 14 days or too much time, you want
20 these response sooner, how would you like to
21 handle it?
22        MR. STERN:  Let me pull up my calendar

73

1 because I do know I've got a little trip coming up
2 in the next period of time here, so...
3      THE COURT:  I would think you want this
4 done before you leave so you can go and have a
5 good time before having it on your conscious.
6      MR. STERN:  I would.  So am I
7 understanding you correctly, Your Honor, that
8 you're looking for a date where both parties
9 produce their documents the same day?
10      THE COURT:  Yeah.
11      MR. STERN:  I would say then by the 19th
12 or -- March 19th?  I think that should be fine.
13      THE COURT:  Sure.  I think that makes
14 sense.  That gives you a little more than a week,
15 you'll just be busy.  And that way both of you do
16 your discovery dumps on each other, I think that's
17 what we call it at this point, there's quite a lot
18 of built up things.  I think what you're going to
19 want to have done, you're going to sign the
20 confidentiality agreement today, you'll have time
21 to do it today, that should be your order of
22 business, to get that confidentiality agreement

74

1 signed, and then that should give you all the
2 confidence that you require to produce that
3 material, okay?
4      MR. STERN:  Your Honor, one other point on
5 that.  I also think it's important, as Your Honor
6 may recall from our requests, we think plaintiffs
7 should waive all their objections because they've
8 not served a single objection, not a single
9 response, and it's not that they don't know what
10 the rules are, the rules clearly require it.  They
11 even have our sample to explain -- as an
12 illustration even if they can claim some
13 indifference.
14      THE COURT:  That brings us to another
15 motion, doesn't it, the plaintiffs's motion to
16 enlarge; is that right?
17      MR. STERN:  That's where they all
18 interrelate.
19      MR. LAWRENCE:  With regards to our request
20 for discovery plan, is it -- is Your Honor certain
21 about the 19th, we would also have answers to
22 interrogatories and requests for admission as

75

1 well?
2      THE COURT:  Everything.  You've had months
3 and months to see this and work on it; right?  So
4 the motion to enlarge, I don't understand the
5 motion to enlarge.
6      MR. LAWRENCE:  Well, I understand, Your
7 Honor.  I think you just mooted it.  But with
8 regards to discovery plan, is there any order with
9 regards to the depositions?
10      THE COURT:  Why?  Why?
11      MR. LAWRENCE:  Because they're not
12 producing discovery.  We've had the impasse with
13 regards to discovery, we've had all these
14 scheduling issues, we don't have Mr. White in the
15 case yet.  He's going to want to have his rights
16 for discovery against our clients as well too.
17      THE COURT:  What you're asking me to do is
18 make a number of rulings that are not before me --
19      MR. LAWRENCE:  But that --
20      THE COURT:  -- because you're presupposing
21 -- hold on.  Let me finish why.  You're
22 presupposing there's going to be an objection to

76

1 your noticing of Ms. Harris's client.  You're
2 presupposing there's going to be an objection to
3 the depositions, which you've had as a scheduling
4 conflict because you're trying to use some January
5 dates and he's trying to use some January dates
6 and the like.
7      If you want to go back and set up -- if
8 you all are in agreement to set up deposition
9 dates prior to the various hearing dates we're
10 going to pick, that's one thing, because you need
11 an interim discovery order if you all agree those
12 depositions need to take place, okay?  But I'm not
13 in the habit of just normally getting involved in
14 micromanaging your discovery.  That's normally
15 handled with one of our form scheduling orders
16 when you have a trial date.  Okay?
17      So I don't want to get into the minutia of
18 it except that I want to get something agreed to
19 from you all at least verbally today that you
20 intend that these depositions need to be taken and
21 before these hearing dates come up.  If the answer
22 is they don't need to be taken, then you should be

77

1  efforting, if you will, to get discovery done that
2  pertains to these motions and will affect your
3  hearing dates and the motions that are going to be
4  heard on those hearings dates.  That's what I feel
5  like where we are right now.
6      MR. LAWRENCE:  Your Honor, I believe the
7  depositions are necessary.  And the reason I say
8  that is because there's exigent circumstances for
9  these motions, particularly the custodian, so
10 we're prepared to proceed forward --
11     THE COURT:  The custodian -- hold it.  I'm
12 not scheduling the pendente lite custodian until
13 after we hear these other motions.  And I don't
14 know when you all are going to be available to do
15 -- we haven't even discussed those dates yet.  So
16 it's really the motion to dismiss, the plea in
17 bar, and the motion to disqualify Mr. Stern that
18 are the first three motions we're going to have
19 heard, okay?
20     So let's -- I don't think it's exigent at
21 all.  I think that's the order in which we have to
22 have this case heard.  So -- and again, I don't

78

1  want to get into some micromanaging of discovery,
2  but it looks like at least insofar as Mr. Lawrence
3  is concerned, his motion sets forth five people
4  plus the parties who need to be deposed.  I don't
5  know who these people are, but some of it appears
6  to relate to Mr. Stern's law firm.
7      MR. STERN:  Your Honor --
8      THE COURT:  Those might have to take
9  place.
10     MR. STERN:  Your Honor, the Maryland court
11 has already quashed that discovery.  They're not
12 entitled to it.  They've lost it.  That's been
13 ruled on dispositively by the Maryland court.
14     THE COURT:  I see.
15     MR. STERN:  So they're not entitled to it,
16 that's not happening.  Other people that are not
17 there I believe on that list, I don't know if you
18 recall seeing our brief, Your Honor, they've now
19 disregarded three separate instructions not to be
20 contacting Compass Marketing employees directly,
21 yet they continue to issue subpoenas.  We'll be
22 having a motion forthcoming on this thing.  All

79

1  we're saying is coordinate with us, but they're
2  not.  They are issuing subpoenas to Compass
3  employees.
4      THE COURT:  Hang on.  First thing's first.
5  Discovery responses -- this would be
6  interrogatories and request for production of
7  documents, those are due in 14 days.  So that puts
8  us to the 25th, close of business.  3/25.  That's
9  mutual.  Okay?
10     MR. STERN:  Can we take it to the
11 following day, the 26th?  Discovery responses on
12 the 25th?
13     THE COURT:  What's the difference?
14     MR. STERN:  I'm out on the 24th and 25th
15 so I'm asking for one more day on the 26th.
16     THE COURT:  26th.  All right.  So that
17 should be -- that's mutual.  And --
18     MR. LAWRENCE:  Your Honor, would that
19 include --
20     THE COURT:  There's not going to be --
21 Mr. Stern raised the point that these are
22 responses, not objections.  Is there any

80

1  disagreement about that?
2      MR. LAWRENCE:  We have not served our
3  objections, Your Honor.  So there are -- there are
4  questions of which we would have objections.
5  Mr. Stern himself has served substantial
6  objections to a lot of this discovery as well.
7      THE COURT:  That's responsive.  When were
8  you served with the discovery?
9      MR. LAWRENCE:  We have the --
10     MR. STERN:  October 30th and November, I
11 think, 8th or 12th.
12     THE COURT:  Why do you think you have more
13 time to object?
14     MR. McDONALD:  If I may, I think there's a
15 timing issue here because what originally happened
16 was there was an extension granted and then there
17 was a motion to enlarge time that would have taken
18 us all the way to January 8th because Mr. Lawrence
19 had an issue in his family.  That motion -- that
20 motion to enlarge time got moved to January 29th
21 because of a docketing issue.  And what then
22 happened because we had too many issues on a

Transcript of Hearing
Conducted on March 11, 2021

81

1 Friday, frankly, the Court -- the week of the 29th
2 the Court called us and said, well, you guys got
3 to make pick a new date. That's how we ended up
4 here in March. There's been no effort to avoid
5 noting objections. It was really -- it was a
6 fluke of the calendar really that this got moved
7 up twice.
8 THE COURT: There's nothing that's
9 happened. There hasn't even been an attempt to
10 file anything. It's one thing.
11 MR. McDONALD: I think, Your Honor, the
12 idea was to have the motion to enlarge time and
13 the discovery plan -- that was kind of put
14 together to have that ruled on and to put everyone
15 on the same a track. And then objections would be
16 noted with our responses when the Court ruled that
17 they were due.
18 THE COURT: Okay. All of this is -- I'm
19 confused about what you want from me, guys. At
20 this point no one's answering anything, everyone's
21 objecting to everything, there's no motion to
22 compel to overrule objections, there's nothing.

82

1 It's just set up a discovery plan and make
2 everybody do things in the order I want you to do
3 them. That's not okay.
4 How can you get discovery requests in
5 October and November, never file any objections,
6 and then move to enlarge to object? That's never
7 happened in my experience. There's no good faith
8 anything going on here.
9 MR. LAWRENCE: We're not intending on
10 putting on objections, Your Honor.
11 THE COURT: Then why are you telling me
12 you want to be object.
13 MR. LAWRENCE: It would just be certain
14 requests that we would interpose objections for.
15 We can assert those in five days, Your Honor.
16 MR. STERN: Your Honor, if I may.
17 THE COURT: Then we don't get answers in
18 14 days or 15 days either. I don't understand any
19 of this.
20 MR. LAWRENCE: We would give -- we would
21 expedite all considerations of all of them. For
22 example -- and I don't have it here in front of

83

1 me -- but there could be something that completely
2 is unrelated to -- or overly broad request, we
3 might interpose an objection.
4 THE COURT: Well, why weren't you prepared
5 to put that in writing originally? I think it's
6 dereliction. I think it's latches or something
7 like that. Here we are in March, no one has made
8 any good faith effort to notify anybody about
9 their objections to scope, anything. I can't
10 grant a motion to enlarge. I can't. First of
11 all, there was no effort to even notify. So no.
12 There's not going to be a motion to enlarge.
13 Everyone has a continuing obligation to
14 supplement, so that has its own enlargement by
15 rule, so no. Ya'll are going to answer these
16 things by Friday, March 26th, close of business.
17 MR. LAWRENCE: If I understand Your Honor
18 correctly, does that mean both parties have waived
19 --
20 THE COURT: Yes.
21 MR. STERN: Your Honor, wait a second.
22 That's a mischaracterization of the record. We

84

1 served our objections. That's what -- there's
2 been obfuscation here. We served our objections
3 specific request by request by request in a
4 time --
5 THE COURT: Then you answered them.
6 MR. STERN: We have. The plaintiffs have
7 not served a single objection.
8 THE COURT: I know.
9 MR. STERN: We have not. They've not
10 brought forth any of our specific objections. And
11 by the way, many of them were premised on their
12 dereliction and their delay.
13 THE COURT: I know.
14 MR. STERN: So I object to the ruling to
15 punish us for their misconduct.
16 THE COURT: I have ruled that your
17 responses, if they're substantive and they've been
18 hung up because of a protective order, are due on
19 the 26th. Motion to enlarge, which would allow
20 you to file objections, is denied because there's
21 no been no showing of good faith on your end to
22 actually tell them what the objections are. You

85

1 could have done that, but you didn't. And so I'm
2 not going to give you an opportunity now to object
3 to everything or anything, because you didn't do
4 it. You didn't follow the words.
5      MR. LAWRENCE: Your Honor, we believed in
6 good faith that we were complying with the Court's
7 requirements with regards to discovery. And I
8 understand Your Honor's point, but the result
9 would be that my clients may be required and
10 compelled to respond to completely overly broad
11 discovery with the threat of contempt being
12 brought against them if this is your order, Your
13 Honor.
14      THE COURT: It is my order.
15      MR. LAWRENCE: What I would say, Your
16 Honor, is that would be a mistake of counsel, and
17 not of my clients.
18      THE COURT: And that argument can be made
19 anytime, I know.
20      MR. LAWRENCE: I understand, Your Honor,
21 but we were hung up on the protective order issue
22 with regards to responding to any discovery. We

86

1 thought we were --
2      THE COURT: Listen, the protective order
3 didn't stop them from filing objections, and it
4 shouldn't have stopped you. I don't know why you
5 didn't. Maybe you had a discussion your clients,
6 I don't know. I don't want to get into that.
7 That's not my area. I don't want to hear your
8 client conversations. But whether it's your
9 mistake or not, production, that's what's
10 happening.
11      You're not getting another opportunity
12 months into this, months after this has been
13 propounded to now object. That's how -- that's
14 why there is -- why we're bogging down. So that
15 is done. I think we got the cross motion for
16 protective order already done, discovery plan --
17      MR. STERN: Your Honor, just one point of
18 clarification to make sure I'm understanding the
19 deadline. On the 26th, that's going to be answers
20 to interrogatories and document request?
21      THE COURT: Yes.
22      MR. STERN: Is that by 5:00 or midnight?

87

1      THE COURT: 5:00 p.m.
2      MR. LAWRENCE: And there's also request
3 for admissions, Your Honor.
4      THE COURT: All discovery. I don't know
5 what's confusing about that. All right. So we've
6 taken care of both motions to compel, it looks
7 likes. And the motion to enlarge, done. So this
8 takes us back then to motion three, which is,
9 again, the motions to schedule these -- excuse me,
10 the request to schedule certain things. All
11 right.
12      So we need to pick dates. So this is
13 where you all I think will come to some
14 understanding of what you need to do before these
15 hearings in terms of depositions if necessary,
16 right, and other discovery that might be
17 outstanding. Although, I'm hopeful that getting
18 these things by the 26th will help you get a lot
19 of this done.
20      So we can pick dates for your three
21 hearing dates okay? And the motion to dismiss and
22 disqualification motions are going to be heard on

88

1 one day, and we need a date for that. We've
2 already got Ms. Harris's motion scheduled, and so
3 this should follow that date. It doesn't have to
4 be very far after, but you need a day.
5      MR. STERN: Your Honor, I didn't hear you
6 say the motion to dismiss and motion for
7 disqualification, one day?
8      THE COURT: Yes. Yes. So it's going to
9 be after April 12th; right? May is starting to
10 look very terrible. We could probably do it on
11 May 12th. Is that possible?
12      MR. McDONALD: Your Honor, I'm in trial in
13 the Eastern District that week.
14      THE COURT: Okay. That would be a no.
15 How about May 20th?
16      MR. McDONALD: That's available for me,
17 Your Honor.
18      MR. STERN: May 20th works for me, Your
19 Honor.
20      THE COURT: Mr. Stern, that was good?
21 That's a yes?
22      MR. STERN: Your Honor, could you do the

89

1  21st instead?  May 20th is a day I hold for
2  personal -- I'd rather not get into it.
3      THE COURT:  I can't do Friday.  The 26th?
4      MR. STERN:  That works for me, Your Honor.
5      MR. LAWRENCE:  That works for us.
6      THE COURT:  May 26th.
7      MR. McDONALD:  That's fine.
8      THE COURT:  That's going to be for a day,
9  at most.  It's going to be a trial, obviously an
10 evidentiary hearing on the disqualification.
11 Mr. McDonald seemed to think you might need
12 testimony on the dismissal.  We'll wrap it all
13 together in one hearing, okay?  So May 26th for
14 one day, bench trial.  And then we're going to set
15 the plea in bar.  Let me see what I can find for
16 you.
17     MS. HARRIS:  Your Honor, are these
18 hearings as well my personal jurisdiction hearing
19 going to be remote?
20     THE COURT:  They can be.  Yeah.  We could
21 probably do the plea in bar -- do you want to try
22 to do the plea in bar the following day, May 27th?

90

1      MR. STERN:  I have a pretrial conference
2  the following day, Your Honor.
3      THE COURT:  Will it be all day?
4      MR. STERN:  No, it's in the morning.
5      THE COURT:  What time?
6      MR. STERN:  8:30, but it's going to last a
7  while because there's a lot that's going to be
8  covered in that.  There's going to be several
9  motions that are going to be argued in all
10 likelihood.
11     THE COURT:  I see.  It's not just a
12 conference?
13     MR. STERN:  No, this is just -- I'm
14 expecting, it's not been decided yet, but there's
15 probably going to be a lot of issues decided.
16     THE COURT:  All right.  How about
17 May 31st?
18     MR. STERN:  That's Memorial Day.
19     MR. McDONALD:  I think that's Memorial
20 Day, Your Honor.
21     THE COURT:  It sure enough is.  How about
22 June 3?

91

1      MR. STERN:  That day works for me, Your
2  Honor.
3      THE COURT:  That's a Thursday.  Anybody
4  have a problem with that?
5      MR. LAWRENCE:  I'm serving, Your Honor, as
6  an expert witness at trial that week, but I'm
7  almost certain I can contact counsel and have any
8  testimony taken out of order.
9      THE COURT:  Okay.  So June 3rd for one day
10 for a plea in bar.  Did we estimate that would be
11 a day?
12     MR. STERN:  Yes, Your Honor.
13     THE COURT:  So then that brings us to
14 custodian pendente lite if it ends up being
15 needed, but we might as well set it in any event.
16 We're not looking at particularly good dates for
17 the next couple weeks at least following that plea
18 in bar, we're very busy, so let me see what I can
19 come up with for you.  The best I can do for you
20 is probably -- is June 30th, and that might be
21 fortuitous, I don't know, but June would be my
22 next available for a couple of days, right?

92

1      MR. LAWRENCE:  That's good for us, Your
2  Honor.
3      THE COURT:  Does that work for everybody?
4      MR. STERN:  June 30th for one day?
5      THE COURT:  Yeah.  All right.  So now that
6  -- now that you have some hard dates that aren't,
7  you know, next week, and if depositions are
8  required for these, then you all need to set a
9  date by which -- and I want you to do that with me
10 present -- a date by which all depositions or
11 other discovery related to these trials, because
12 I'm going to call them that, trials, will be
13 accomplished.
14     So how many days before each of these
15 trial dates do you want things done?  So the
16 motion to dismiss and the motion to disqualify is
17 May 26th; right?  And I don't know if you intend
18 to use anybody's testimony for these things, but
19 you could technically potentially do depositions
20 if you needed before that.  And I would have a
21 cutoff -- you could set a cutoff a couple of weeks
22 before that hearing date for any depositions that

93

1 would be for discovery in those issues.
2       MR. STERN:  Your Honor, if I may ask a
3 point of clarification?
4       THE COURT:  Yeah.
5       MR. STERN:  Because these motions are
6 being sequenced, are you -- if there's a
7 deposition taken let's say it as motion to
8 dismiss, the motion to disqualify, is that
9 deposition going to be limited only to that
10 subject matter and then there will be a subsequent
11 deposition, same witness --
12       THE COURT:  No, I don't think you want to
13 do that.
14       MR. STERN:  I don't think so either.
15       THE COURT:  So here's the thing, and
16 again, I cannot stop everybody from being
17 strategic about what they do, but if you want to
18 know information from a particular person and
19 depose them for that purpose before any one of
20 these trials, I think it behooves you to schedule
21 them in relation to the hearing you think they're
22 relevant for.

94

1       However, I don't know all that, I'm not
2 going to get into the detail of that, which is why
3 I resisted Mr. Lawrence's motion to create some
4 sort of discovery plan for you all.  I'm trying to
5 help you today if you feel like you need to get
6 some dates, hard dates, meaning deadlines, not
7 specific depo dates.  If you all can come to some
8 understanding about when you have a cutoff so you
9 can get these things done and not debate it, then
10 I'm happy to help you.  Otherwise you all need to
11 sort it out yourself.
12       MR. STERN:  Your Honor, I think it's
13 implied in what you said, but I want to be clear
14 about that, I agree to a deadline for depositions.
15 We are not agreeing that the depositions have to
16 wait until the end of that period, because we
17 properly noticed depositions of Dan and Mike
18 White, and they were canceled only because of the
19 scheduling of that hearing without conferring with
20 us.  So I want to make sure -- we're not agreeing
21 -- there's no order from the Court instructing the
22 parties that depositions get to wait until a

95

1 certain period of time?
2       THE COURT:  No.  It's more -- and I'm not
3 ordering this, I'm just trying to help you all
4 come to some understanding of what you think you
5 want to do with depositions.  If you all want to
6 just handle it, handle it.  But if you feel like
7 it would be important to create a deadline by
8 which depositions must be taken, then I can -- I
9 can help you with that or come to some
10 understanding about that.  It doesn't sound like
11 there's a lot of interest in that, so that's fine
12 too.
13       MR. STERN:  I'm thinking out loud, because
14 there will be, I assume, prehearing supplemental
15 briefing from the parties.  I think we need to set
16 some deadlines for that so this way whatever
17 depositions may need to be done, we can measure
18 enough time for that supplemental briefing that
19 needs to be done.
20       THE COURT:  Supplemental briefing on what?
21       MR. STERN:  On each of the motions.
22       THE COURT:  You intend to file additional

96

1 briefs?
2       MR. STERN:  Especially if there's going to
3 be more evidence -- these are all evidentiary
4 hearings, I think there's a possibility for that.
5       THE COURT:  Well, if the evidence has not
6 been adduced at a hearing before a judge, I don't
7 know how you would -- here's the thing, guys, I
8 don't know.  I'm not going to tell you not to file
9 bench briefs, I'm not going to tell you not to
10 file briefs.  If you want a briefing schedule for
11 each of these hearings, let me know.  Tell me that
12 you want that and we can set that because you
13 won't come up with a briefing schedule on your
14 own.
15       MR. LAWRENCE:  I think that's (inaudible)
16 --
17       THE COURT:  Mr. Lawrence, is a yes or a
18 no?
19       MR. LAWRENCE:  That's a yes, Your Honor.
20 Because you did it for Ms. Harris's motion, I
21 think that's helpful.  So for the -- we already
22 have the dates for motion to dismiss, and then the

Case 1:21-cv-00309-ELH   Document 42-9   Filed 09/07/21   Page 27 of 59
Transcript of Hearing
Conducted on March 11, 2021                                        25 (97 to 100)

97

1 motion to dismiss followed by (inaudible.)
2       THE COURT:  I can't hear any of what
3 Mr. Lawrence is saying.  So if you want it on a
4 similar schedule to what we did with Ms. Harris's
5 motion, the reply was due one week before and the
6 opposition was -- what was it?
7       MR. STERN:  There's one week before as
8 well -- we can just do one week, one week,
9 one week, Your Honor, because there's a lot more
10 time here for these.
11      THE COURT:  Okay.
12      MR. STERN:  I'm fine with that.  I can't
13 speak for Greg.
14      THE COURT:  Here's where we are then on
15 that based on the dates you've given me or that
16 we've agreed to.  May 26th is the hearing date for
17 the first set of motions, the dismissal and the
18 disqualification.  So on the 19th of May would be
19 -- I'm just working back one week is the reply,
20 and then one week before that, which is the 12th,
21 is the opposition, and the opening brief would be
22 the 5th.  5/5 for the opening brief, 5/12 for the

98

1 opposition, 5/19 for the reply.  Okay?
2       And then for the plea in bar, it looks
3 like it will be 5/27 for the reply, 5/20 for the
4 opposition, and 5/13 -- you're overlapping a
5 little bit with the other one, but there it is for
6 the opening brief.  And then for your June -- your
7 later June trial, the reply is going to be the
8 23rd of June, 6/16 will be the opposition, and 6/9
9 is your opening brief?
10      Does comport with everyone's calendars?
11 Do you all understand that?
12      MR. LAWRENCE:  Yes, Your Honor.
13      THE COURT:  All right.  So that gives you
14 some briefing schedules.  And is there anything
15 else that we didn't resolve today?
16      MR. LAWRENCE:  With regard to the
17 depositions, Your Honor, I would just point out
18 that I disagree and I think it's incorrect what
19 Mr. Stern is stating regarding depositions or
20 subpoenas to his law firm.  In fact, the Maryland
21 court denied that request for subpoena because of
22 the location, and there was briefing on the issue

99

1 and we would respectfully say that the issue is
2 still open, and we do not keep deposing --
3       THE COURT:  So here's how we're going to
4 leave it with depositions, all right?  I'm not
5 presupposing or prejudging anything.  If you all
6 are noticing deposition and is there is a problem
7 with the deposition, you need to promptly notice
8 it for a Friday notice and bring it to the Court's
9 attention.  This happens.  We've handled it
10 before.  We can do it that way.  It is possible to
11 do it that way.  If that gets noticed and it's
12 scheduled, it will be heard on a Friday.  Okay?
13 You don't have to pile in 20 motions and have a
14 special day, it's not necessary, okay?
15      Now that we've gotten some traction on
16 some of these things, I'm hopeful that it will
17 help move you ahead.  I'm not 100 percent
18 confident it will solve everything, but I think
19 some movement must occur at this point.
20      I think I've heard all the motions,
21 though; is that right?  We've done them all --
22 whether I agreed with you or didn't agree with

100

1 you, I've heard them all, right, and resolved
2 them?
3       MR. STERN:  I believe you've resolved
4 them.
5       MR. LAWRENCE:  Yes, Your Honor.
6       THE COURT:  So in terms of drafting
7 orders, I think I've given you -- I'm going to ask
8 Mr. Stern to draft the protective order that I
9 modified because you each have a template, but I
10 think that since you were the original propounder
11 of the protective order, the confidentiality
12 agreement, you can write in the new language.  I
13 would like that signed off on today.
14      MR. STERN:  Is there an email address we
15 can send directly to your clerk?
16      THE COURT:  Yes, Ms. Lapinksy is my law
17 clerk.  She's the one who sent you the link for
18 this meeting today or this hearing today.
19      MR. STERN:  We didn't get the link
20 directly --
21      MR. McDONALD:  Steve, I can share it with
22 you.

---

101

1    THE COURT:  I want you all to send to each
2  other and sign today that confidentiality
3  agreement with the revisions I've required.
4    MR. STERN:  What is the language that Your
5  Honor wanted to modify the position, I just want
6  to make sure there's no --
7    THE COURT:  My suggestion was, nothing
8  herein precludes a producing party from seeking
9  additional protections from the court.  That's
10 sort of standard kind of boilerplate to me.  So
11 then I think I have Ms. Harris drafting an order
12 setting her hearing.  I will ask Mr. Lawrence or
13 Mr. McDonald to write up the order setting these
14 other motions as we have just set them with the
15 briefing schedules as well, okay?
16    If they can send them around for
17 endorsement.  And once it's signed off on, send it
18 to my law clerk for me to enter.  And I think --
19 and then I'll ask Mr. Stern to draft an order on
20 the -- basically the dates, the two week
21 turnaround on the motion to compel, we'll call
22 them motions to compel, or that could be also

---

102

1  within the protective order order that you're
2  doing, that the discovery responses are due on the
3  26th, okay?
4    And I think that will help you all a
5  little bit in the early going.  And of course if
6  there are disputes that arise that you cannot
7  resolve, docket them as timely as you can.
8  Normally other than motions to compel or
9  dispositive motions, they typically are one-week
10 motions, so it shouldn't be really troublesome for
11 you to get these docketed, okay?  But I'm hopeful
12 that we're not going to do too much more of that.
13    Any other questions or anything that you
14 all have questions about that I need to address
15 before we sign off today?
16    MR. LAWRENCE:  No, Your Honor.
17    MR. McDONALD:  No, Your Honor.
18    THE COURT:  I appreciate everybody being
19 on board today and entertaining my questions and
20 being responsive.  It really helps me a lot.  And
21 I know that you all can work together on this
22 case.  I know it's fraught, but I think you can do

---

103

1  it.  I have confidence.  It's nice to meet or see
2  all of you.  I don't know everyone one of you, but
3  it's a pleasure to see you.  Take care.
4    MR. LAWRENCE:  Thank you, Your Honor.
5    MR. McDONALD:  Thank you Your Honor.
6    (Off the record at 11:52 a.m.)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

---

104

1    CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC
2    I, PAUL P. SMAKULA, the officer before whom
3  the foregoing deposition was taken, do hereby
4  certify that the foregoing transcript is a true
5  and correct record of the testimony given; that
6  said testimony was taken by me stenographically
7  and thereafter reduced to typewriting under my
8  direction; that reading and signing was not
9  requested; and that I am neither counsel for,
10 related to, nor employed by any of the parties to
11 this case and have no interest, financial or
12 otherwise, in its outcome.
13
14 IN WITNESS WHEREOF, I have hereunto set my hand
15 and affixed my notarial seal this 15th day of
16 March, 2021.
17
18 My commission expires:  June 18, 2023.
19
20  *Paul P. Smakula*
21 NOTARY PUBLIC IN AND FOR
22 THE STATE OF MARYLAND

---

Transcript of Hearing
Conducted on March 11, 2021                                    27

**A**

**able**
12:3, 22:16,
35:8, 42:17,
49:16, 50:6,
52:7, 56:18,
57:8, 61:4, 61:5
**about**
10:17, 14:15,
15:8, 23:5,
25:6, 26:14,
29:2, 31:14,
36:15, 39:15,
44:8, 45:2,
45:13, 46:11,
53:20, 54:2,
56:4, 56:7,
56:14, 56:16,
57:10, 57:21,
57:22, 59:7,
63:13, 64:2,
64:19, 65:4,
65:10, 67:1,
68:15, 74:21,
80:1, 81:19,
83:8, 87:5,
88:15, 90:16,
90:21, 93:17,
94:8, 94:14,
95:10, 102:14
**above**
71:21
**accept**
70:7, 70:8
**access**
56:1, 57:4
**accomplish**
45:18
**accomplished**
92:13
**account**
20:14, 20:17,
21:2, 21:5,
21:12, 21:14,
21:15, 21:19,
22:1, 22:2,
22:15, 58:4

**accounts**
20:12, 21:6,
22:14, 23:13
**accurate**
11:6
**accusations**
70:18
**acquiring**
45:9
**across**
55:6, 72:18
**actual**
35:17
**actually**
12:10, 12:18,
13:12, 15:2,
20:19, 23:22,
24:16, 63:22,
65:9, 72:8,
84:22
**added**
21:8
**addition**
51:10
**additional**
42:20, 46:6,
64:3, 64:10,
65:20, 66:16,
95:22, 101:9
**address**
20:16, 20:20,
31:11, 48:15,
100:14, 102:14
**addressed**
32:1
**adduced**
96:6
**adjudicated**
8:11
**adjust**
12:12
**admissibility**
26:9
**admissible**
26:5, 26:7
**admission**
60:10, 74:22
**admissions**
87:3

**adopt**
43:20
**advance**
26:16
**affect**
77:2
**affixed**
104:15
**afforded**
47:15
**after**
30:7, 30:8,
33:8, 37:10,
42:21, 77:13,
86:12, 88:4,
88:9
**afterwards**
16:4, 16:10
**again**
9:5, 21:14,
24:6, 25:5,
39:7, 39:9,
56:14, 56:22,
77:22, 87:9,
93:16
**against**
18:21, 26:2,
51:18, 52:3,
56:16, 60:3,
75:16, 85:12
**agree**
29:6, 34:3,
34:10, 41:5,
47:13, 47:15,
52:19, 53:11,
53:12, 53:15,
71:16, 72:13,
72:15, 76:11,
94:14, 99:22
**agreed**
5:2, 5:17,
49:2, 76:18,
97:16, 99:22
**agreeing**
94:15, 94:20
**agreement**
9:14, 10:20,
13:21, 47:14,

**53:5, 63:12,**
63:16, 64:16,
66:2, 73:20,
73:22, 76:8,
100:12, 101:3
**agrees**
16:12
**ahead**
32:18, 70:17,
99:17
**aid**
49:17
**airing**
46:16
**alexandria**
4:14
**allegation**
48:12
**allegations**
15:22, 18:12,
18:18, 23:5,
24:5, 24:20,
24:21, 25:22,
26:1, 52:3
**alleged**
31:19, 47:19
**allot**
39:11
**allow**
25:21, 84:19
**allowed**
26:6
**almost**
60:7, 60:9,
60:13, 62:4,
62:12, 91:7
**alone**
49:15
**along**
33:7, 50:15
**already**
39:7, 67:6,
67:16, 71:2,
78:11, 86:16,
88:2, 96:21
**also**
6:5, 8:22,
21:4, 22:4,

Transcript of Hearing
Conducted on March 11, 2021                                                    28

22:6, 31:13,
60:21, 63:6,
63:16, 74:5,
74:21, 87:2,
101:22
**alternatives**
72:8
**although**
87:17
**always**
46:21, 64:18
**amended**
65:18
**amendment**
30:6
**amongst**
21:7
**amount**
14:4, 59:11
**annapolis**
4:6
**annoy**
19:1
**anonymous**
51:17, 59:20,
61:18
**another**
7:5, 25:16,
44:18, 45:10,
67:5, 74:14,
86:11
**answer**
31:14, 54:16,
58:6, 60:4,
71:4, 72:12,
76:21, 83:15
**answered**
67:5, 67:6,
84:5
**answering**
46:18, 55:3,
81:20
**answers**
54:13, 72:18,
74:21, 82:17,
86:19
**anticipatory**
16:8

**antitrust**
51:14
**any**
5:5, 10:18,
10:19, 18:20,
37:22, 49:18,
50:17, 50:19,
51:20, 53:19,
58:14, 58:18,
60:18, 67:15,
69:10, 69:12,
69:16, 70:20,
70:21, 75:8,
79:22, 82:5,
82:18, 83:8,
84:10, 85:22,
91:7, 91:15,
92:22, 93:19,
97:2, 102:13,
104:10
**anybody**
6:19, 18:7,
83:8, 91:3
**anybody's**
92:18
**anymore**
61:14
**anyone**
29:1
**anything**
12:12, 23:2,
29:2, 81:10,
81:20, 82:8,
83:9, 85:3,
98:14, 99:5,
102:13
**anytime**
85:19
**anyway**
70:11
**apart**
10:8
**apologize**
12:11, 18:3
**apparently**
13:15
**appealed**
63:20

**appearing**
8:10
**appears**
6:14, 8:16,
78:5
**apply**
5:10
**appoint**
20:7
**appointed**
23:10
**appreciate**
102:18
**approach**
7:19, 51:5,
65:9
**appropriate**
6:21, 14:3,
23:18, 25:11,
33:10, 47:17,
47:21, 48:9,
48:12, 58:17,
72:4
**approximately**
33:11
**april**
11:22, 12:6,
13:1, 13:5,
13:9, 16:19,
88:9
**area**
53:10, 86:7
**aren't**
92:6
**argue**
6:11, 47:8,
64:19
**argued**
90:9
**arguing**
6:10, 6:16,
7:2, 7:4, 17:17,
25:6, 38:18,
47:3, 54:9,
54:10
**argument**
15:18, 18:15,
19:19, 20:2,

28:2, 33:4,
34:2, 34:5,
34:19, 40:13,
43:17, 58:14,
60:7, 63:14,
66:7, 85:18
**arguments**
5:10, 7:12,
7:13, 15:20,
19:5, 37:22,
40:22, 41:16
**arise**
47:21, 47:22,
102:6
**arlington**
1:2
**around**
52:17, 67:14,
101:16
**ascertain**
59:13
**asked**
13:13, 36:10,
61:7, 72:9
**asking**
8:3, 22:18,
30:3, 42:12,
75:17, 79:15
**assert**
24:13, 82:15
**assist**
49:16
**assume**
14:12, 95:14
**assuming**
71:16
**assure**
62:12
**attached**
28:20
**attacks**
59:20, 60:3
**attempt**
81:9
**attended**
8:21
**attention**
99:9

Transcript of Hearing
Conducted on March 11, 2021                                      29

attorney
17:13
attorneys
44:20, 49:8,
50:10, 51:6,
52:13, 52:18,
55:9, 55:13,
61:8, 61:17,
62:2, 64:13
authority
47:18, 48:15
availability
12:8
available
11:20, 12:5,
12:7, 57:8,
68:22, 77:14,
88:16, 91:22
avenue
3:12
avoid
81:4
away
30:2, 46:12

**B**

baby
65:22
back
10:17, 12:19,
12:20, 14:21,
18:16, 25:5,
27:18, 27:20,
34:6, 36:1,
40:7, 51:9,
54:17, 58:13,
59:17, 72:2,
76:7, 87:8,
97:19
background
8:2
backwards
12:2, 40:4
badly
37:6
ball
42:15
bank
19:10, 19:16,

20:12, 20:15,
20:18, 21:6,
23:13
banking
17:21, 18:10
bankruptcy
56:2, 61:13,
61:16
bar
9:6, 27:12,
29:21, 30:9,
30:20, 30:21,
31:6, 31:12,
31:14, 39:5,
41:6, 43:1,
77:17, 89:15,
89:21, 89:22,
91:10, 91:18,
98:2
bare
41:22
based
33:4, 97:15
basically
28:3, 31:20,
34:7, 37:5,
37:9, 44:2,
45:10, 101:20
bear
26:3
beard
4:4
bearing
18:12, 18:13
beating
68:3
because
8:14, 9:3,
9:13, 10:7,
18:8, 19:22,
26:4, 26:12,
29:18, 30:20,
31:2, 31:7,
31:11, 32:17,
33:22, 34:21,
35:13, 35:19,
36:8, 36:17,
37:1, 37:9,

39:7, 39:15,
40:13, 41:17,
41:21, 43:9,
43:16, 46:16,
47:18, 47:22,
52:18, 53:1,
53:14, 54:7,
58:5, 60:8,
63:1, 63:20,
64:15, 65:3,
67:19, 68:21,
70:13, 71:6,
72:5, 73:1,
74:7, 75:11,
75:20, 76:4,
76:10, 77:8,
80:15, 80:18,
80:21, 80:22,
84:18, 84:20,
85:3, 90:7,
92:11, 93:5,
94:16, 94:18,
95:13, 96:12,
96:20, 97:9,
98:21, 100:9
become
24:12
been
10:14, 11:14,
19:17, 25:6,
28:19, 35:3,
35:10, 36:6,
42:7, 42:10,
42:15, 48:20,
53:1, 56:18,
69:12, 70:2,
70:3, 78:12,
81:4, 81:9,
84:2, 84:17,
84:21, 86:12,
90:14, 96:6
before
1:16, 2:1, 2:9,
12:4, 14:20,
16:6, 20:11,
20:13, 27:22,
30:18, 31:12,
43:13, 44:10,

44:22, 48:21,
50:11, 55:5,
59:18, 67:14,
69:10, 69:12,
70:4, 72:14,
73:4, 73:5,
75:18, 76:21,
87:14, 92:14,
92:20, 92:22,
93:19, 96:6,
97:5, 97:7,
97:20, 99:10,
102:15, 104:2
beforehand
18:5
beginning
54:18
behalf
1:6, 1:8, 3:2,
4:2, 4:9, 7:2,
7:4
behavior
31:21
behind
60:10, 60:14
behooves
93:20
being
14:3, 18:18,
20:3, 20:9,
22:1, 28:17,
30:18, 39:11,
39:16, 41:19,
56:5, 56:22,
57:2, 60:11,
85:11, 91:14,
93:6, 93:16,
102:18, 102:20
believe
10:7, 12:14,
28:19, 49:11,
63:1, 67:20,
77:6, 78:17,
100:3
believed
85:5
bench
11:9, 16:18,

31:15, 89:14,
96:9
**beneficial**
16:5
**benefit**
19:18
**best**
7:19, 25:13,
47:5, 91:19
**better**
45:17, 65:8,
66:8
**between**
14:3, 38:21,
48:17, 51:15
**beyond**
19:18, 55:7
**bit**
5:9, 54:6,
65:22, 66:8,
70:3, 98:5,
102:5
**blanket**
52:19
**board**
102:19
**bogging**
64:5, 86:14
**bogs**
28:13
**boilerplate**
101:10
**book**
16:22
**both**
45:3, 68:11,
69:15, 70:18,
73:8, 73:15,
83:18, 87:6
**bottom**
68:7
**box**
56:18
**breach**
48:13, 63:11,
63:16
**bread**
61:2

**break**
59:1
**breaking**
18:2
**brief**
12:3, 13:9,
13:11, 13:15,
13:17, 14:6,
78:18, 97:21,
97:22, 98:6,
98:9
**briefing**
12:1, 13:6,
13:21, 16:9,
16:10, 16:19,
95:15, 95:18,
95:20, 96:10,
96:13, 98:14,
98:22, 101:15
**briefs**
15:16, 16:4,
45:3, 96:1,
96:9, 96:10
**bring**
23:17, 51:15,
62:18, 68:3,
68:4, 99:8
**bringing**
70:15
**brings**
74:14, 91:13
**broad**
83:2, 85:10
**brothers**
71:13
**brought**
59:15, 84:10,
85:12
**built**
73:18
**bundled**
9:17
**business**
13:16, 21:21,
24:17, 24:18,
25:3, 55:18,
65:13, 73:22,
79:8, 83:16

**busy**
73:15, 91:18

**C**

**calculate**
36:1
**calendar**
11:11, 12:7,
72:22, 81:6
**calendars**
98:10
**call**
58:3, 66:3,
70:10, 73:17,
92:12, 101:21
**called**
40:19, 81:2
**came**
30:9
**camera**
6:14
**cameron**
3:4
**can't**
8:6, 18:7,
34:22, 35:1,
49:19, 53:11,
59:15, 62:16,
62:17, 83:9,
83:10, 89:3,
97:2, 97:12
**canceled**
94:18
**cannot**
53:4, 93:16,
102:6
**card**
20:18
**care**
11:17, 29:15,
87:6, 103:3
**careful**
65:3
**case**
1:6, 7:6, 8:12,
9:4, 15:21,
16:14, 19:2,
21:17, 23:19,

24:2, 25:22,
27:19, 29:22,
30:4, 32:21,
33:13, 34:4,
37:2, 39:11,
39:13, 40:20,
48:22, 50:22,
51:14, 53:15,
53:19, 55:17,
57:10, 60:5,
62:15, 63:4,
69:8, 70:6,
70:8, 70:9,
72:6, 75:15,
77:22, 102:22,
104:11
**cases**
29:20, 63:19
**categories**
6:1
**category**
54:3, 54:21
**caused**
30:13
**caution**
63:6
**certain**
6:12, 7:11,
7:12, 26:14,
30:5, 38:8,
44:15, 45:5,
69:18, 69:19,
69:20, 74:20,
82:13, 87:10,
91:7, 95:1
**certainly**
8:19
**certificate**
104:1
**certify**
104:4
**chance**
56:11
**change**
9:7
**characterization**
36:4
**characterizing**
35:21

| | | | |
|---|---|---|---|
| **check**<br>21:8, 21:13<br>**checks**<br>21:4, 22:8,<br>22:9<br>**chick**<br>21:14<br>**choose**<br>43:13<br>**circuit**<br>1:2<br>**circumstance**<br>8:9<br>**circumstances**<br>55:15, 77:8<br>**cl**<br>1:7<br>**claim**<br>23:1, 74:12<br>**claiming**<br>20:8, 45:4<br>**claims**<br>20:3, 49:17<br>**clarification**<br>86:18, 93:3<br>**clarified**<br>30:15<br>**clarity**<br>66:11<br>**clause**<br>49:5, 60:1<br>**clear**<br>7:5, 7:21,<br>19:19, 29:10,<br>29:12, 46:13,<br>52:10, 54:16,<br>68:18, 94:13<br>**cleared**<br>42:22, 68:7<br>**clearer**<br>46:19<br>**clearly**<br>52:22, 74:10<br>**clerk**<br>100:15, 100:17,<br>101:18<br>**client**<br>18:21, 50:1, | 69:8, 76:1, 86:8<br>**client's**<br>69:3, 69:10<br>**clients**<br>23:12, 24:4,<br>32:16, 46:20,<br>48:3, 49:10,<br>50:8, 50:9,<br>50:13, 50:20,<br>50:22, 51:19,<br>53:14, 61:3,<br>75:16, 85:9,<br>85:17, 86:5<br>**close**<br>13:16, 56:19,<br>79:8, 83:16<br>**closely**<br>53:15<br>**closure**<br>66:9<br>**colleague**<br>56:19<br>**combative**<br>46:10<br>**combine**<br>39:1, 39:18<br>**combining**<br>16:6<br>**come**<br>12:19, 26:13,<br>31:12, 51:4,<br>51:5, 55:6,<br>59:17, 62:16,<br>65:8, 69:20,<br>76:21, 87:13,<br>91:19, 94:7,<br>95:4, 95:9,<br>96:13<br>**comes**<br>17:14, 44:21,<br>50:10<br>**comfortable**<br>55:3, 60:21<br>**coming**<br>21:11, 21:18,<br>25:22, 51:21,<br>60:12, 73:1<br>**commend**<br>70:14 | **comment**<br>58:14<br>**commission**<br>104:18<br>**community**<br>20:15, 63:2<br>**company**<br>20:9, 22:5,<br>22:19, 22:20,<br>23:13, 23:14,<br>28:16, 45:5,<br>45:10, 45:12,<br>50:16, 53:15,<br>55:20, 56:10,<br>57:6, 57:9,<br>57:14, 57:16,<br>57:17, 59:20<br>**compartmentalized**<br>5:15<br>**compass**<br>1:8, 1:12, 4:2,<br>7:2, 7:4, 17:12,<br>18:9, 18:20,<br>20:13, 20:16,<br>21:1, 21:12,<br>21:15, 21:18,<br>22:10, 22:12,<br>22:14, 22:19,<br>25:3, 37:19,<br>38:16, 45:6,<br>45:11, 50:14,<br>57:1, 57:13,<br>59:15, 60:3,<br>64:4, 71:12,<br>71:17, 78:20,<br>79:2<br>**compass's**<br>10:1, 27:11,<br>27:12, 29:1<br>**compel**<br>43:18, 43:19,<br>44:5, 71:8,<br>71:10, 71:11,<br>71:13, 71:15,<br>71:16, 81:22,<br>87:6, 101:21,<br>101:22, 102:8<br>**compelled**<br>85:10 | **compelling**<br>71:5<br>**competitors**<br>50:13, 51:15<br>**complaint**<br>18:12, 24:5,<br>24:20, 31:19,<br>32:1, 61:21<br>**complaints**<br>30:10, 42:11,<br>51:17, 51:21<br>**complete**<br>59:3<br>**completed**<br>69:10<br>**completely**<br>83:1, 85:10<br>**compliance**<br>19:16, 59:4<br>**comply**<br>60:5<br>**complying**<br>85:6<br>**comport**<br>98:10<br>**concede**<br>49:12<br>**concept**<br>63:1, 63:2<br>**concern**<br>45:13, 59:21<br>**concerned**<br>65:4, 71:7,<br>78:3<br>**concerning**<br>18:11, 61:20<br>**concerns**<br>5:7, 44:8<br>**conclude**<br>25:20<br>**conclusions**<br>25:15<br>**condition**<br>45:12<br>**conduct**<br>31:20, 42:3<br>**conducted**<br>1:17, 2:2, 45:6 |

Transcript of Hearing
Conducted on March 11, 2021
32

confer
55:14
conference
90:1, 90:12
conferences
62:13
conferring
62:5, 94:19
confidence
45:21, 46:2,
46:7, 59:21,
74:2, 103:1
confident
47:22, 58:6,
99:18
confidential
44:15, 50:18,
52:15, 54:4,
54:14, 55:8,
55:16, 64:20
confidentiality
47:14, 52:20,
59:2, 63:11,
64:16, 66:2,
71:22, 73:20,
73:22, 100:11,
101:2
confirm
56:12, 56:18
confirmed
56:20
conflict
76:4
conflicting
41:17
confused
81:19
confusing
87:5
connection
48:5
conscious
73:5
consider
16:6, 72:8
considerations
23:10, 82:21
consistent
23:20

consulting
50:9
contact
91:7
contacting
78:20
contacts
57:4
contain
36:22
contempt
85:11
contents
22:12
context
23:6, 48:21,
50:3, 50:12,
55:17
continue
60:1, 60:3,
78:21
continues
53:5
continuing
83:13
control
23:12, 23:13,
23:20, 59:3
conveniens
33:6, 34:1,
40:21, 41:1
conversation
29:2
conversations
86:8
coordinate
79:1
copies
61:21, 61:22
corner
3:5
corporation
49:12, 49:14,
49:15
correct
36:3, 67:2,
104:5
correctly
73:7, 83:18

could
12:19, 15:13,
26:4, 36:9,
59:15, 67:22,
83:1, 85:1,
88:10, 88:22,
89:20, 92:19,
92:21, 101:22
couldn't
20:22, 41:20,
41:21
counsel
5:20, 6:9,
27:10, 29:1,
37:12, 37:14,
52:7, 85:16,
91:7, 104:9
counterclaim
23:17, 24:14
counterclaims
18:21, 19:21,
19:22, 49:18
county
1:2, 51:20
couple
19:4, 56:15,
91:17, 91:22,
92:21
course
19:12, 19:21,
31:3, 62:16,
102:5
court's
10:12, 11:19,
85:6, 99:8
courtesies
19:13
courtesy
19:13
cover
57:14
covered
90:8
craft
53:19
crazy
66:5
create
46:6, 51:1,

52:16, 64:21,
65:6, 94:3, 95:7
creates
51:13, 53:10
cross
86:15
cross-motion
43:22, 44:4
cumbersome
53:10
curtain
60:14
custodian
20:7, 23:9,
24:7, 24:17,
27:9, 35:6,
36:12, 37:6,
39:6, 39:10,
40:2, 43:3,
77:9, 77:11,
77:12, 91:14
customer
57:19
cutoff
35:13, 35:15,
36:2, 92:21,
94:8
cutoffs
35:19, 36:1,
40:5
cutting
61:1

---
### D
---
damages
44:17, 48:10,
49:5, 58:15,
59:9, 59:12,
59:16, 60:20,
61:5, 62:22,
63:13, 63:15,
63:19, 65:10,
65:14
dan
21:14, 58:2,
94:17
daniel
1:4, 17:22,

Transcript of Hearing
Conducted on March 11, 2021

33

21:9, 21:20
**date**
9:16, 9:19,
11:20, 13:14,
19:16, 35:14,
35:22, 67:10,
73:8, 76:16,
81:3, 88:1,
88:3, 92:9,
92:10, 92:22,
97:16
**dates**
10:18, 10:21,
28:4, 28:6,
28:21, 28:22,
29:5, 29:7,
35:15, 35:17,
40:5, 40:6,
43:12, 43:13,
43:14, 66:12,
68:18, 68:22,
69:4, 69:7,
76:5, 76:9,
76:21, 77:3,
77:4, 77:15,
87:12, 87:20,
87:21, 91:16,
92:6, 92:15,
94:6, 94:7,
96:22, 97:15,
101:20
**day**
12:9, 36:15,
36:16, 38:9,
38:12, 42:19,
43:2, 67:22,
72:16, 73:9,
79:11, 79:15,
88:1, 88:4,
88:7, 89:1,
89:8, 89:14,
89:22, 90:2,
90:3, 90:18,
90:20, 91:1,
91:9, 91:11,
92:4, 99:14,
104:15
**days**
14:18, 14:20,

28:7, 37:1,
38:22, 43:4,
71:21, 72:1,
72:19, 79:7,
82:15, 82:18,
91:22, 92:14
**deadline**
72:18, 86:19,
94:14, 95:7
**deadlines**
67:7, 67:16,
94:6, 95:16
**deal**
56:7, 61:14
**dealings**
55:19
**dealt**
62:19
**debate**
94:9
**december**
28:21
**decide**
16:3, 17:8,
28:8, 34:21
**decided**
90:14, 90:15
**deciding**
41:15
**decision**
23:3, 32:17
**decisions**
39:21
**defend**
26:2
**defendant**
4:2, 4:9, 7:6,
8:12, 17:12,
18:9, 27:11,
27:12
**defendant's**
43:22
**defendants**
1:14, 44:4
**defense**
9:1, 9:10,
20:10, 24:13,
31:16, 49:18,

50:8
**defenses**
20:3, 20:4
**defer**
12:8
**deference**
7:9
**defined**
64:20
**degree**
59:21
**delay**
62:14, 84:12
**demand**
30:19, 31:2,
32:6, 32:9,
32:13
**demurrer**
29:20
**denied**
26:11, 26:19,
84:20, 98:21
**denying**
26:19
**depaul**
21:10
**depaula**
21:14
**depending**
59:13
**depo**
94:7
**depose**
93:19
**deposed**
78:4
**deposing**
99:2
**deposited**
22:1
**deposition**
76:8, 93:7,
93:9, 93:11,
99:6, 99:7,
104:3
**depositions**
68:19, 69:3,
69:10, 72:2,

75:9, 76:3,
76:12, 76:20,
77:7, 87:15,
92:7, 92:10,
92:19, 92:22,
94:14, 94:15,
94:17, 94:22,
95:5, 95:8,
95:17, 98:17,
98:19, 99:4
**dereliction**
83:6, 84:12
**derivatively**
1:7
**describing**
55:11
**deserves**
61:16, 62:2
**designed**
24:3
**destroy**
57:19
**destroying**
57:18
**detail**
94:2
**determination**
32:5
**deterrents**
63:2, 63:3
**difference**
31:2, 48:17,
79:13
**different**
8:3, 8:4,
24:22, 38:17,
41:8
**difficult**
59:13
**difficulties**
18:4, 29:9
**difficulty**
42:7, 42:9
**dimatteo**
1:16, 2:2
**dime**
71:9
**dimuro**
4:11

direction
104:8
directly
78:20, 100:15,
100:20
dirt
41:19, 42:3
disagree
33:21, 98:18
disagreement
80:1
disassembling
45:10
disclosed
50:17, 50:19,
53:2
disclosing
46:2
disclosures
25:16
discomfort
46:12
discovery
6:3, 6:8, 6:16,
8:14, 14:1,
14:11, 14:13,
18:14, 18:19,
20:5, 22:21,
23:17, 23:21,
23:22, 25:7,
25:9, 26:4,
26:6, 28:11,
28:12, 30:11,
31:21, 35:8,
35:12, 35:13,
35:15, 35:18,
35:19, 36:1,
36:2, 36:5,
36:18, 37:10,
40:5, 40:17,
41:4, 41:20,
42:1, 42:9,
42:10, 42:16,
42:20, 43:8,
43:15, 44:4,
44:5, 44:6,
44:7, 44:13,
50:22, 54:18,

56:12, 65:5,
66:15, 66:20,
66:22, 67:7,
67:12, 67:16,
68:4, 68:9,
69:11, 70:20,
71:3, 72:3,
72:7, 73:16,
74:20, 75:8,
75:12, 75:13,
75:16, 76:11,
76:14, 77:1,
78:1, 78:11,
79:5, 79:11,
80:6, 80:8,
81:13, 82:1,
82:4, 85:7,
85:11, 85:22,
86:16, 87:4,
87:16, 92:11,
93:1, 94:4,
102:2
discrete
10:8, 10:12
discuss
27:2
discussed
5:8, 5:11,
16:20, 77:15
discussion
5:5, 26:13,
86:5
discussions
52:16
dismiss
10:22, 27:11,
30:10, 31:11,
33:1, 38:19,
40:12, 41:14,
42:18, 77:16,
87:21, 88:6,
92:16, 93:8,
96:22, 97:1
dismissal
39:4, 42:18,
89:12, 97:17
dismissals
39:8

dispositive
9:2, 29:17,
30:15, 33:13,
39:8, 39:13,
102:9
dispositively
78:13
dispute
23:7, 45:16,
49:9, 53:20,
59:10
disputed
44:19, 47:12
disputes
18:19, 102:6
disqualification
38:19, 39:5,
42:19, 87:22,
88:7, 89:10,
97:18
disqualified
37:14
disqualify
27:10, 28:15,
37:12, 37:16,
41:7, 77:17,
92:16, 93:8
disregarded
78:19
disseminated
25:12, 57:1
disseminating
58:7
dissolve
22:19, 57:13
distinct
7:14, 7:17
distract
42:2
district
88:13
disturbing
63:22
docket
27:8, 35:2,
102:7
docketed
11:12, 102:11

docketing
80:21
document
20:17, 54:22,
64:15, 86:20
documentation
52:14
documents
16:7, 20:21,
46:17, 50:1,
50:7, 50:9,
54:13, 66:4,
73:9, 79:7
doing
5:12, 7:20,
23:16, 24:19,
35:18, 59:22,
67:17, 102:2
done
6:5, 25:8,
43:9, 48:20,
66:10, 72:5,
73:4, 73:19,
77:1, 85:1,
86:15, 86:16,
87:7, 87:19,
92:15, 94:9,
95:17, 95:19,
99:21
double-sided
16:14
down
28:13, 31:22,
56:10, 57:1,
61:2, 64:6,
86:14
draconian
58:19
draft
26:19, 100:8,
101:19
drafted
53:22, 54:17
drafting
100:6, 101:11
drama
30:13
draw
25:14

Transcript of Hearing
Conducted on March 11, 2021

35

| | | | |
|---|---|---|---|
| drawn | effect | enhancement | 34:1, 35:19, |
| 21:14 | 64:9 | 44:18, 44:21 | 43:20, 44:1 |
| drive | efficient | enlarge | est |
| 3:5 | 7:20, 68:20 | 44:6, 74:16, | 1:19 |
| drug | effort | 75:4, 75:5, | estimate |
| 69:21 | 57:1, 57:13, | 80:17, 80:20, | 11:6, 38:8, |
| duces | 81:4, 83:8, | 81:12, 82:6, | 91:10 |
| 17:13 | 83:11 | 83:10, 83:12, | evaluate |
| due | efforting | 84:19, 87:7 | 50:7 |
| 13:11, 13:17, | 77:1 | enlargement | even |
| 13:18, 79:7, | eight | 83:14 | 15:21, 19:17, |
| 81:17, 84:18, | 5:4, 52:11, | enough | 20:21, 21:21, |
| 97:5, 102:2 | 65:16 | 25:19, 62:14, | 22:5, 25:11, |
| dump | eighth | 90:21, 95:18 | 36:21, 38:22, |
| 39:20 | 17:10 | ensure | 41:16, 41:21, |
| dumping | either | 28:17 | 49:4, 67:22, |
| 66:4 | 48:13, 50:2, | enter | 69:8, 74:11, |
| dumps | 82:18, 93:14 | 44:11, 101:18 | 74:12, 77:15, |
| 73:16 | eliminate | entered | 81:9, 83:11 |
| duration | 46:14 | 5:3, 49:1 | evening |
| 31:4, 33:1 | else | enters | 12:19 |
| during | 9:17, 10:9, | 51:8 | event |
| 44:12, 56:2 | 18:7, 29:2, | entertaining | 39:2, 91:15 |
| **E** | 40:9, 58:1, | 102:19 | ever |
| each | 59:4, 98:15 | entire | 58:3 |
| 5:7, 7:22, 8:3, | email | 12:16, 23:15 | everybody |
| 31:3, 31:4, | 28:20, 100:14 | entirely | 64:17, 67:10, |
| 45:13, 65:21, | emails | 29:10, 69:5 | 71:5, 71:8, |
| 66:4, 72:7, | 36:21, 51:16, | entirety | 71:11, 72:17, |
| 73:16, 92:14, | 61:18, 61:19 | 33:13 | 82:2, 92:3, |
| 95:21, 96:11, | employed | entitled | 93:16, 102:18 |
| 100:9, 101:1 | 104:10 | 22:21, 26:2, | everyone |
| earlier | employees | 78:12, 78:15 | 13:20, 25:13, |
| 21:13, 40:12, | 21:11, 78:20, | entry | 81:14, 83:13, |
| 46:16, 62:22 | 79:3 | 6:6, 17:13, | 103:2 |
| earliest | end | 71:21 | everyone's |
| 11:19, 13:14 | 24:14, 35:22, | envision | 81:20, 98:10 |
| early | 55:14, 56:8, | 55:1 | everything |
| 8:21, 12:19, | 72:2, 84:21, | escape | 9:17, 10:9, |
| 12:22, 102:5 | 94:16 | 60:1 | 23:5, 42:21, |
| earth | ended | especially | 51:15, 55:12, |
| 56:7, 57:3 | 9:4, 29:22, | 8:17, 9:11, | 75:2, 81:21, |
| easiest | 81:3 | 58:16, 96:2 | 85:3, 99:18 |
| 5:12 | endorsement | esquire | evidence |
| eastern | 101:17 | 3:3, 3:10, 4:3, | 16:5, 20:11, |
| 88:13 | ends | 4:10 | 20:14, 22:3, |
| eb | 28:13, 91:14 | essentially | 32:2, 34:4, |
| 4:1 | enhanced | 20:15, 24:18, | 39:20, 40:20, |
| | 44:18 | | |

Transcript of Hearing
Conducted on March 11, 2021

36

51:22, 56:9,
57:15, 96:3,
96:5
**evidentiary**
11:3, 11:4,
14:1, 14:7,
33:3, 33:22,
34:14, 35:11,
38:2, 39:16,
40:14, 40:15,
40:19, 41:9,
89:10, 96:3
**example**
55:18, 55:22,
59:7, 61:10,
68:13, 68:16,
82:22
**examples**
68:17
**except**
48:21, 65:5,
76:18
**exception**
26:21
**excuse**
39:9, 87:9
**exhibit**
61:11
**exigent**
77:8, 77:20
**exist**
22:15
**exists**
8:4
**expansive**
64:15, 64:16
**expect**
11:2, 54:12,
58:10
**expecting**
90:14
**expedite**
27:17, 82:21
**expedited**
8:17, 27:3,
27:5
**expedition**
19:1, 19:20,

25:19
**experience**
82:7
**expert**
50:2, 91:6
**expires**
104:18
**explain**
24:13, 74:11
**explained**
47:1
**expressed**
29:11
**extension**
19:11, 80:16
**extent**
6:18
**extra**
63:6
**extraordinary**
55:15
**extreme**
68:8
**eye**
51:6
**eyes**
44:20, 49:8,
50:10, 52:13,
52:18, 53:14,
55:9, 55:13,
61:8, 61:17,
62:2, 64:13

---
**F**
---
**face**
63:21
**fact**
60:6, 61:15,
72:9, 98:20
**facts**
15:21, 23:6,
49:21
**factual**
8:2, 14:8,
14:12, 15:16,
16:7, 32:4, 34:2
**failure**
33:5

**fair**
54:15
**fairfax**
3:7
**fairly**
35:21, 58:5
**faith**
82:7, 83:8,
84:21, 85:6
**fall**
6:1, 54:3
**family**
12:15, 80:19
**far**
15:12, 31:22,
65:5, 88:4
**fashion**
28:18, 47:20
**favor**
5:13
**february**
19:14
**feel**
16:11, 63:13,
69:21, 77:4,
94:5, 95:6
**feeling**
70:10
**feelings**
70:16
**feels**
71:6
**few**
37:11, 57:3
**fiduciary**
49:20
**figure**
37:10, 59:6
**figures**
58:16, 65:13
**file**
15:1, 19:7,
53:7, 81:10,
82:5, 84:20,
95:22, 96:8,
96:10
**filed**
13:15, 14:4,

14:20, 17:20,
18:8, 18:20,
19:15, 19:17,
19:21, 19:22,
30:4, 30:7,
32:9, 51:18,
52:1, 56:16,
63:11
**filing**
56:17, 86:3
**final**
21:10, 60:17
**financial**
18:10, 50:18,
104:11
**find**
13:3, 41:9,
64:2, 89:15
**finding**
24:18, 48:13
**findings**
14:8
**fine**
13:2, 13:12,
15:10, 16:12,
41:5, 41:7,
72:11, 73:12,
89:7, 95:11,
97:12
**finish**
75:21
**fiore**
10:16
**fiore's**
27:20, 28:3,
34:6
**firm**
37:18, 38:16,
78:6, 98:20
**first**
8:13, 9:21,
9:22, 16:6,
19:6, 20:15,
28:3, 31:7,
31:10, 37:9,
38:20, 41:4,
48:9, 61:15,
67:13, 77:18,

79:4, 83:10,
97:17
**fishing**
19:1, 19:20,
25:18
**fit**
54:21
**five**
14:18, 16:22,
71:21, 78:3,
82:15
**fix**
37:7
**flesh**
15:21
**floor**
3:13
**flow**
22:13, 25:7
**flowing**
8:14
**fluke**
81:6
**folks**
11:18
**follow**
85:4, 88:3
**followed**
97:1
**following**
79:11, 89:22,
90:2, 91:17
**forced**
32:16
**foregoing**
104:3, 104:4
**form**
76:15
**former**
21:11, 56:19
**forms**
8:4
**forth**
14:13, 22:3,
78:3, 84:10
**forthcoming**
78:22
**fortuitous**
91:21

**forum**
33:6, 34:1,
40:21, 40:22
**forward**
24:2, 30:12,
39:13, 69:9,
70:6, 77:10
**forwarded**
61:21
**found**
49:1
**founders**
50:15
**four**
27:13, 35:10,
36:4, 66:14,
69:1
**four-day**
39:2
**fourth**
37:11, 66:14
**frankly**
54:20, 81:1
**fraudulent**
31:20
**fraught**
102:22
**free**
25:6
**friday**
81:1, 83:16,
89:3, 99:8,
99:12
**front**
55:14, 60:15,
70:13, 82:22
**full**
56:11
**fund**
45:8
**funds**
45:9
**further**
26:8, 37:10,
43:3, 43:5,
52:16
**furthermore**
21:7

**future**
62:18

**G**

**game**
18:4
**gamesmanship**
68:8, 69:13
**gathering**
54:19
**gave**
19:13
**general**
52:13
**getting**
24:1, 41:19,
42:11, 46:9,
58:8, 76:13,
86:11, 87:17
**ginsburg**
4:11
**give**
7:8, 19:12,
72:10, 74:1,
82:20, 85:2
**given**
14:4, 58:17,
97:15, 100:7,
104:5
**gives**
15:9, 65:10,
73:14, 98:13
**giving**
65:21
**go**
5:15, 5:16,
6:21, 23:21,
28:2, 28:6,
31:15, 32:18,
34:6, 34:21,
35:7, 45:14,
47:5, 47:12,
51:9, 61:14,
64:18, 66:11,
73:4, 76:7
**goes**
25:5, 27:18,
37:7, 53:4

**good**
5:19, 73:5,
82:7, 83:8,
84:21, 85:6,
88:20, 91:16,
92:1
**gotten**
10:18, 35:9,
36:6, 36:18,
99:15
**grant**
83:10
**granted**
9:4, 14:2,
14:10, 30:5,
39:9, 41:2,
80:16
**greater**
59:15
**greg**
97:13
**gregory**
3:10
**guarantee**
62:5
**guess**
16:7, 54:4,
65:21, 66:10,
67:13
**guys**
28:4, 81:2,
81:19, 96:7

**H**

**habit**
76:13
**half**
10:17, 36:5,
38:6, 65:22
**hand**
104:14
**handcuff**
52:7
**handcuffed**
48:11
**handful**
56:1, 56:6
**handle**
7:9, 8:13,

Transcript of Hearing
Conducted on March 11, 2021

38

29:18, 43:16,
48:3, 72:21,
95:6
**handled**
37:6, 76:15,
99:9
**hands**
56:8, 61:1
**hang**
29:4, 79:4
**hanging**
9:18
**happen**
37:9, 61:3,
68:1
**happened**
68:1, 80:15,
80:22, 81:9,
82:7
**happening**
24:16, 28:13,
78:16, 86:10
**happens**
6:8, 29:19,
99:9
**happy**
13:1, 31:15,
94:10
**harass**
19:1
**hard**
7:16, 92:6,
94:6
**harm**
23:14, 59:11,
59:14
**harris**
4:10, 7:5, 8:9,
10:3, 10:4,
10:6, 11:2,
11:13, 11:19,
12:1, 12:21,
13:6, 13:8,
13:18, 15:6,
15:8, 15:12,
15:17, 15:20,
16:16, 16:20,
17:2, 17:5,

51:4, 68:22,
71:12, 89:17,
101:11
**harris's**
8:19, 9:11,
9:14, 29:15,
69:8, 76:1,
88:2, 96:20,
97:4
**he'll**
62:5
**hear**
6:19, 7:1,
9:21, 16:11,
17:10, 18:7,
28:5, 34:7,
34:9, 38:10,
39:2, 39:18,
63:12, 77:13,
86:7, 88:5, 97:2
**heard**
9:11, 10:17,
11:16, 25:19,
28:17, 33:7,
33:9, 33:12,
35:5, 39:6,
39:14, 40:12,
41:4, 41:7,
60:20, 77:4,
77:19, 77:22,
87:22, 99:12,
99:20, 100:1
**hearing**
1:16, 2:1, 8:6,
11:3, 11:20,
16:4, 16:18,
25:10, 28:1,
29:11, 32:11,
33:3, 33:22,
35:14, 38:3,
39:18, 41:14,
43:2, 61:22,
62:1, 76:9,
76:21, 77:3,
87:21, 89:10,
89:13, 89:18,
92:22, 93:21,
94:19, 96:6,

97:16, 100:18,
101:12
**hearings**
8:18, 10:15,
27:3, 40:19,
43:7, 66:12,
77:4, 87:15,
89:18, 96:4,
96:11
**hears**
70:18
**heart**
24:1, 37:2,
37:8
**heartburn**
65:9
**held**
19:15, 53:15
**help**
42:6, 46:19,
53:18, 66:1,
70:1, 70:12,
87:18, 94:5,
94:10, 95:3,
95:9, 99:17,
102:4
**helpful**
96:21
**helps**
102:20
**hence**
39:11
**here**
7:22, 9:14,
17:8, 27:8,
27:16, 29:5,
29:6, 29:8,
46:13, 47:12,
57:12, 57:13,
62:4, 68:22,
73:2, 80:15,
81:4, 82:8,
82:22, 83:7,
84:2, 97:10
**here's**
51:22, 69:14,
93:15, 96:7,
97:14, 99:3

**hereby**
104:3
**herein**
64:9, 65:18,
101:8
**hereunto**
104:14
**hey**
28:21, 55:6,
61:12
**hiding**
21:3
**high**
59:21
**highly**
52:15, 54:4,
54:14, 55:16,
64:20
**himself**
80:5
**historical**
23:6
**history**
27:19, 60:22
**hold**
26:15, 75:21,
77:11, 89:1
**holding**
26:16
**home**
20:19
**honor's**
85:8
**honorable**
1:16, 2:1
**hope**
35:20
**hopeful**
87:17, 99:16,
102:11
**hopefully**
66:7
**hour**
33:16, 33:17
**hours**
11:2, 11:5,
11:8, 11:10,
16:18, 38:5,

38:7
**however**
5:11, 44:13,
48:16, 94:1
**hung**
84:18, 85:21
**hurdle**
44:9
**hurdles**
35:4, 46:6
**hurting**
57:5, 57:16,
57:17

**I**

**idea**
36:19, 46:5,
46:11, 81:12
**identifying**
40:16
**illustration**
74:12
**imagine**
39:16
**impasse**
69:20, 70:14,
75:12
**impasses**
65:6
**impede**
19:2
**impediment**
68:5
**impediments**
42:13, 68:2
**implied**
94:13
**implies**
60:7
**important**
28:15, 29:18,
30:1, 65:13,
74:5, 95:7
**impose**
63:9
**imposed**
59:1
**imposing**
58:15

**improperly**
45:11
**inadministerable**
50:6
**inappropriate**
48:14, 69:5
**inappropriately**
25:13
**inc**
1:9, 1:12, 4:2
**inclination**
32:18, 55:20
**include**
27:1, 47:17,
52:17, 79:19
**included**
55:5, 59:6
**incorrect**
98:18
**indifference**
74:13
**individuals**
45:6, 45:20,
51:19, 52:4
**indulging**
70:22
**inferences**
56:13
**inform**
32:20
**information**
17:21, 18:10,
18:11, 18:17,
19:12, 23:11,
24:3, 25:7,
26:5, 26:7,
26:14, 39:17,
44:15, 45:14,
45:20, 46:10,
50:18, 50:20,
52:1, 52:15,
52:22, 53:18,
54:4, 54:6,
54:14, 54:19,
55:21, 56:2,
56:5, 56:22,
57:4, 58:7,
64:12, 64:21,

65:3, 93:18
**informs**
37:20
**infraction**
58:18
**inherent**
48:15
**initially**
8:19, 9:9
**insistence**
44:13
**insofar**
78:2
**instances**
59:17
**instead**
14:20, 23:16,
89:1
**instructing**
94:21
**instructions**
78:19
**intend**
76:20, 92:17,
95:22
**intending**
82:9
**interest**
45:9, 95:11,
104:11
**interesting**
63:1
**interfere**
57:18
**interim**
35:18, 40:6,
76:11
**internal**
67:7
**interpose**
82:14, 83:3
**interrelate**
74:18
**interrogatories**
74:22, 79:6,
86:20
**interrupted**
62:8

**intertwined**
24:12
**intimately**
37:19
**introductory**
5:22, 6:19
**investment**
55:21, 57:19,
59:7
**investor**
56:4, 61:11
**investors**
56:8
**involve**
58:19
**involved**
37:19, 49:21,
50:20, 53:16,
60:21, 60:22,
76:13
**involves**
44:17
**involving**
56:3
**issue**
6:6, 10:8,
18:19, 20:5,
23:15, 30:22,
32:2, 35:12,
44:3, 44:12,
66:19, 66:22,
78:21, 80:15,
80:19, 80:21,
85:21, 98:22,
99:1
**issued**
17:13
**issues**
5:6, 5:8, 5:22,
6:2, 6:3, 6:4,
6:16, 7:10,
18:22, 25:5,
28:16, 41:9,
46:17, 75:14,
80:22, 90:15,
93:1
**issuing**
79:2

Transcript of Hearing
Conducted on March 11, 2021

40

| | | | |
|---|---|---|---|
| **itself** | 31:1, 31:9, | 50:3, 52:21, | 6:13, 12:8, |
| 9:19 | 32:6, 32:9, | 54:5, 54:20, | 12:10, 12:14, |
| **J** | 32:20 | 56:14, 57:11, | 12:18, 12:22, |
| **james** | **K** | 58:18, 60:22, | 13:22, 14:10, |
| 21:10 | **kagan** | 63:20, 68:11, | 14:17, 15:2, |
| **january** | 4:4 | 71:12, 72:6, | 15:5, 15:10, |
| 9:15, 9:16, | **keep** | 73:1, 74:9, | 17:17, 17:18, |
| 19:8, 19:9, | 5:14, 7:16, | 77:14, 78:5, | 17:19, 18:1, |
| 68:18, 76:4, | 16:8, 16:17, | 78:17, 84:8, | 18:3, 23:3, |
| 76:5, 80:18, | 57:11, 99:2 | 84:13, 85:19, | 23:4, 32:6, |
| 80:20 | **keeping** | 86:4, 86:6, | 32:8, 32:15, |
| **job** | 21:20 | 87:4, 91:21, | 47:3, 47:7, |
| 1:20 | **kicked** | 92:7, 92:17, | 47:10, 56:13, |
| **john** | 9:16 | 93:18, 94:1, | 60:17, 60:19, |
| 1:13, 4:9, | **kickoff** | 96:7, 96:8, | 62:8, 62:11, |
| 33:8, 56:17 | 6:7 | 96:11, 102:21, | 64:5, 66:17, |
| **judge** | **kind** | 102:22, 103:2 | 66:18, 67:19, |
| 10:16, 16:3, | 5:22, 6:4, 9:7, | **knowing** | 68:13, 68:16, |
| 16:18, 27:20, | 9:13, 9:21, | 63:4, 65:7 | 69:14, 71:7, |
| 28:3, 28:4, | 28:6, 28:9, | **knowledge** | 71:15, 71:19, |
| 28:8, 33:21, | 34:10, 44:22, | 32:17 | 72:13, 74:19, |
| 34:6, 34:8, | 68:17, 71:2, | **L** | 75:6, 75:11, |
| 41:13, 48:3, | 81:13, 101:10 | **lack** | 75:19, 77:6, |
| 65:3, 71:7, 96:6 | **kinds** | 10:22, 33:4, | 78:2, 79:18, |
| **judges** | 9:4 | 46:12, 46:13 | 80:2, 80:9, |
| 46:22 | **king** | **language** | 80:18, 82:9, |
| **jump** | 4:12 | 43:21, 44:17, | 82:13, 82:20, |
| 30:18 | **knew** | 100:12, 101:4 | 83:17, 85:5, |
| **jumped** | 56:7 | **lapinksy** | 85:15, 85:20, |
| 69:7 | **knock** | 100:16 | 87:2, 89:5, |
| **june** | 29:21 | **large** | 91:5, 92:1, |
| 90:22, 91:9, | **know** | 54:12 | 96:15, 96:17, |
| 91:20, 91:21, | 5:4, 7:18, 8:1, | **last** | 96:19, 97:3, |
| 92:4, 98:6, | 9:13, 14:14, | 58:12, 68:2, | 98:12, 98:16, |
| 98:7, 98:8, | 18:6, 22:21, | 90:6 | 100:5, 101:12, |
| 104:18 | 24:11, 26:8, | **latches** | 102:16, 103:4 |
| **juris** | 30:4, 30:22, | 83:6 | **lawrence's** |
| 49:1 | 31:1, 31:3, | **later** | 26:20, 58:14, |
| **jurisdiction** | 32:3, 34:8, | 31:8, 98:7 | 60:6, 94:3 |
| 8:11, 8:20, | 34:15, 34:22, | **law** | **lawsuit** |
| 11:1, 14:11, | 35:16, 35:22, | 3:11, 42:4, | 51:18, 52:2, |
| 16:1, 20:1, | 36:17, 38:14, | 78:6, 98:20, | 56:15, 56:16, |
| 30:10, 33:5, | 38:21, 39:12, | 100:16, 101:18 | 56:17 |
| 33:9, 89:18 | 40:9, 40:18, | **lawful** | **lawyer** |
| **jurisdictional** | 41:8, 47:4, | 60:2 | 46:22, 48:4, |
| 34:2 | 48:18, 49:4, | **lawrence** | 49:19 |
| **jury** | 49:20, 49:22, | 3:10, 3:11, | **lead** |
| 9:6, 30:19, | | | 26:7 |

| learned | lingering | logical | M |
|---|---|---|---|

**learned**
61:12
**least**
5:7, 21:19,
30:17, 39:4,
41:15, 44:9,
45:2, 49:10,
49:13, 68:21,
76:19, 78:2,
91:17
**leave**
10:2, 73:4,
99:4
**legal**
14:7, 15:17,
15:20, 33:4,
34:5, 34:18,
40:13, 58:11
**legitimate**
21:17, 21:21,
22:11, 22:13,
25:3
**less**
59:17
**let's**
10:20, 12:2,
12:6, 16:17,
28:21, 42:5,
44:11, 70:15,
77:20, 93:7
**level**
52:19, 65:7
**lightly**
37:17
**likelihood**
90:10
**likes**
87:7
**limit**
48:18, 55:9
**limitations**
16:9, 31:16
**limited**
18:14, 93:9
**line**
58:8, 68:8
**lines**
61:19

**lingering**
28:18
**link**
100:17, 100:19
**liquidated**
44:17, 48:10,
49:5, 58:15,
59:9, 59:12,
59:16, 60:20,
62:22, 63:15,
63:18, 65:10
**list**
17:8, 17:11,
69:1, 78:17
**listen**
86:2
**lite**
23:9, 23:16,
24:8, 27:9,
28:14, 35:6,
36:12, 39:10,
39:11, 40:2,
43:3, 77:12,
91:14
**litigation**
48:2, 48:5,
61:20
**little**
5:9, 8:5, 54:6,
65:22, 66:8,
70:3, 73:1,
73:14, 98:5,
102:5
**live**
18:22, 24:5
**llc**
3:11, 4:4
**loaf**
61:1
**loan**
22:9, 22:11,
22:13
**loans**
22:6
**local**
5:20, 6:9
**location**
98:22

**logical**
40:10
**long**
10:21, 33:19,
35:5, 36:11,
38:1, 70:12
**look**
6:15, 11:10,
11:21, 17:8,
59:19, 60:10,
60:11, 60:14,
64:12, 71:7,
88:10
**looking**
13:8, 38:13,
60:1, 61:18,
69:6, 71:16,
71:17, 73:8,
91:16
**looks**
67:10, 78:2,
87:6, 98:2
**loss**
59:8
**lost**
78:12
**lot**
5:6, 5:9, 6:7,
7:12, 8:14,
30:13, 32:2,
35:3, 37:20,
41:11, 53:17,
54:5, 64:17,
64:21, 67:11,
69:6, 69:15,
72:5, 73:17,
80:6, 87:18,
90:7, 90:15,
95:11, 97:9,
102:20
**loud**
95:13
**loudly**
18:6
**louise**
1:16, 2:1
**ltc**
22:9

**m&t**
19:10, 19:15,
24:2
**ma'am**
17:4
**made**
18:18, 20:3,
21:13, 83:7,
85:18
**mail**
57:22, 58:4
**major**
49:14
**make**
8:5, 12:21,
14:8, 18:5,
23:3, 27:6,
29:12, 31:2,
32:17, 33:18,
39:21, 39:22,
40:15, 41:22,
53:18, 75:18,
81:3, 82:1,
86:18, 94:20,
101:6
**makes**
10:2, 73:13
**making**
14:15, 37:22,
41:16, 52:2,
64:5
**manage**
37:7, 53:12
**managed**
9:2
**managing**
70:5
**many**
7:10, 16:2,
36:19, 80:22,
84:11, 92:14
**march**
1:18, 73:12,
81:4, 83:7,
83:16, 104:16
**marinello**
4:4

Transcript of Hearing
Conducted on March 11, 2021                                    42

marketing
1:9, 1:12, 4:2,
20:16, 21:1,
21:12, 21:15,
22:19, 25:3,
45:7, 78:20
marketing's
17:12, 20:13,
21:18, 22:15
maryland
2:10, 4:6,
41:21, 51:20,
52:2, 61:20,
78:10, 78:13,
98:20, 104:22
material
37:17, 37:18,
74:3
materials
25:2, 26:3,
26:6, 46:18,
52:13, 53:13,
54:3, 71:18
matter
5:21, 8:10,
28:17, 31:7,
34:14, 93:10
matters
14:7, 24:1,
24:11, 30:2,
39:20, 43:15
maybe
7:22, 8:15,
9:12, 14:20,
14:21, 29:22,
31:13, 39:15,
42:6, 59:17,
61:22, 62:1,
63:2, 63:19,
71:4, 71:5,
72:16, 86:5
mcdonald
3:3, 5:19,
5:20, 10:10,
10:11, 11:5,
11:7, 12:5,
12:6, 17:15,
17:16, 27:15,

27:16, 29:6,
32:5, 32:12,
33:21, 34:18,
36:3, 36:9,
36:14, 37:4,
37:15, 38:4,
38:10, 41:13,
47:2, 47:7,
80:14, 81:11,
88:12, 88:16,
89:7, 89:11,
90:19, 100:21,
101:13, 102:17,
103:5
mcevoy
3:4, 28:1
mean
34:22, 35:15,
43:5, 64:11,
65:13, 83:18
meaning
43:5, 63:14,
94:6
means
13:10
meant
19:1
meanwhile
28:10, 28:11,
28:19
measure
59:12, 95:17
mechanism
60:2
meet
55:13, 103:1
meeting
100:18
memorial
90:18, 90:19
memory
37:13
mentioned
13:6
mere
25:18
merely
27:5

merit
19:6, 23:1,
67:15, 70:21
merits
19:19, 57:12
message
63:17
method
25:4
michael
1:5, 17:22,
20:19, 21:9,
22:1, 56:20,
58:2
micromanaging
76:14, 78:1
microphone
6:14
midnight
86:22
might
8:5, 8:13,
26:7, 33:12,
48:22, 52:17,
60:21, 78:8,
83:3, 87:16,
89:11, 91:15,
91:20
mike
94:17
mile
48:18
mind
9:13, 54:9
minimum
21:19, 41:22
minor
58:18
minute
29:4, 68:2
minutes
37:11
minutia
76:17
misappropriating
45:9
mischaracterizat-
ion
83:22

mischief
51:1, 51:13
misconduct
84:15
misdeeds
57:14
misdirect
56:14
misdirection
57:10
misinformation
56:4
mismanaged
20:9
mistake
85:16, 86:9
misused
45:22, 46:3,
46:8
modified
100:9
modify
17:12, 101:5
moment
70:11
monetary
59:6, 59:8
money
20:10, 21:3,
21:21, 21:22,
22:4, 22:13,
22:16, 22:17,
22:22, 41:12
monitor
47:18
montgomery
51:20
month
11:17
months
10:18, 11:15,
21:13, 35:10,
36:5, 42:16,
43:6, 75:2,
75:3, 86:12
monument
3:5
mooted
75:7

Transcript of Hearing
Conducted on March 11, 2021

43

more
8:5, 11:8,
14:2, 16:15,
25:11, 27:4,
29:19, 35:10,
38:5, 46:10,
51:1, 55:3,
59:9, 61:7,
62:13, 62:14,
65:6, 72:10,
73:14, 79:15,
80:12, 95:2,
96:3, 97:9,
102:12
morning
5:19, 90:4
most
7:20, 21:22,
33:9, 45:19,
68:17, 68:20,
89:9
motion
5:13, 7:15,
8:19, 9:11,
9:14, 10:21,
10:22, 14:1,
14:3, 14:19,
16:22, 17:10,
17:11, 17:15,
17:20, 18:8,
19:5, 19:7,
19:15, 19:16,
20:6, 24:6,
26:10, 26:18,
26:20, 27:4,
27:7, 27:9,
27:10, 27:11,
27:13, 28:15,
28:20, 29:15,
31:11, 32:22,
33:8, 35:5,
37:9, 37:11,
37:12, 37:20,
38:19, 40:12,
41:2, 41:6,
41:14, 41:20,
42:18, 43:18,
43:20, 44:3,

44:5, 47:2,
53:8, 62:16,
63:10, 66:14,
66:15, 71:11,
71:15, 71:18,
74:15, 75:4,
75:5, 77:16,
77:17, 78:3,
78:22, 80:17,
80:19, 80:20,
81:12, 81:21,
83:10, 83:12,
84:19, 86:15,
87:7, 87:8,
87:21, 88:2,
88:6, 92:16,
93:7, 93:8,
94:3, 96:20,
96:22, 97:1,
97:5, 101:21
motions
5:4, 7:15, 8:3,
8:17, 9:1, 9:3,
9:10, 10:15,
10:16, 17:8,
17:11, 18:13,
20:4, 20:6,
23:8, 27:3,
27:6, 27:13,
27:16, 27:18,
28:2, 28:5,
28:12, 29:17,
30:5, 30:9,
30:15, 31:3,
35:20, 37:21,
38:7, 38:20,
39:9, 39:13,
39:22, 41:3,
42:9, 62:13,
71:13, 77:2,
77:3, 77:9,
77:13, 77:18,
87:6, 87:9,
87:22, 90:9,
93:5, 95:21,
97:17, 99:13,
99:20, 101:14,
101:22, 102:8,

102:9, 102:10
move
14:21, 24:1,
29:22, 43:14,
70:17, 82:6,
99:17
moved
80:20, 81:6
movement
99:19
moving
30:12, 37:15,
69:9, 70:5
much
8:9, 31:20,
33:15, 38:21,
42:1, 42:20,
43:15, 46:14,
54:20, 72:19,
102:12
multiday
39:18
multiple
44:8, 59:8
murdering
48:19
must
95:8, 99:19
mutual
79:9, 79:17
myself
50:11

N

name
20:13, 33:5,
51:20
nature
59:14
nd
13:11, 14:21
necessarily
7:16, 7:21,
26:5
necessary
33:5, 40:22,
45:1, 45:15,
48:7, 48:16,

77:7, 87:15,
99:14
necessitating
30:6
need
5:10, 11:8,
12:21, 15:19,
16:11, 16:15,
25:15, 29:13,
30:11, 30:17,
31:3, 31:12,
35:14, 36:1,
36:15, 37:6,
39:14, 41:3,
41:12, 42:20,
46:4, 46:15,
48:19, 61:2,
66:9, 66:11,
67:21, 70:4,
71:8, 76:10,
76:12, 76:20,
76:22, 78:4,
87:12, 87:14,
88:1, 88:4,
89:11, 92:8,
94:5, 94:10,
95:15, 95:17,
99:7, 102:14
needed
52:5, 91:15,
92:20
needing
11:2
needs
25:7, 35:4,
35:12, 35:13,
37:14, 39:22,
47:13, 47:14,
50:19, 51:6,
67:20, 95:19
neither
45:16, 58:16,
104:9
never
19:17, 22:5,
48:20, 51:8,
62:8, 70:2,
82:5, 82:6

Transcript of Hearing
Conducted on March 11, 2021                                    44

new
3:14, 81:3,
100:12
next
5:15, 13:11,
17:9, 65:7,
71:5, 73:2,
91:17, 91:22,
92:7
nice
103:1
nine
52:11, 65:16
non
33:6, 34:1,
40:21, 40:22
non-evidentiary
38:7
nonetheless
32:19
normal
48:2
normally
6:10, 29:19,
35:16, 76:13,
76:14, 102:8
notable
68:17
notarial
104:15
notary
2:10, 104:21
notation
21:10
notations
22:7
noted
7:10, 23:15,
26:21, 81:16
notes
7:14, 69:3
nothing
23:8, 24:4,
24:5, 24:7,
61:10, 62:3,
64:9, 65:18,
81:8, 81:22,
101:7

notice
2:9, 99:7, 99:8
noticed
94:17, 99:11
noticing
76:1, 99:6
notify
83:8, 83:11
noting
81:5
november
80:10, 82:5
nowhere
49:6
number
10:15, 11:14,
16:22, 27:6,
38:13, 65:17,
69:6, 69:7,
75:18
nut
45:22

O

obfuscated
31:21
obfuscation
84:2
object
80:13, 82:6,
82:12, 84:14,
85:2, 86:13
objecting
81:21
objection
74:8, 75:22,
76:2, 83:3, 84:7
objections
74:7, 79:22,
80:3, 80:4,
80:6, 81:5,
81:15, 81:22,
82:5, 82:10,
82:14, 83:9,
84:1, 84:2,
84:10, 84:20,
84:22, 86:3
obligation
55:14, 83:13

obligations
48:4, 52:8
obviously
7:8, 26:20,
29:18, 32:2,
38:2, 38:16,
45:13, 45:15,
48:1, 51:7,
53:18, 54:2,
89:9
occur
99:19
october
67:9, 80:10,
82:5
odds
56:21
officer
104:2
okay
8:8, 10:4,
11:4, 11:11,
12:16, 13:13,
13:20, 15:11,
16:15, 17:1,
17:5, 17:6,
17:14, 23:2,
27:3, 29:16,
29:20, 31:18,
32:22, 35:3,
35:11, 36:22,
38:1, 39:3,
42:13, 47:6,
47:9, 52:9,
70:9, 70:21,
71:13, 74:3,
76:12, 76:16,
77:19, 79:9,
81:18, 82:3,
87:21, 88:14,
89:13, 91:9,
97:11, 98:1,
99:12, 99:14,
101:15, 102:3,
102:11
once
26:21, 34:8,
101:17

one
5:12, 5:16,
6:10, 8:13,
14:15, 17:7,
17:9, 20:6,
22:20, 25:16,
26:17, 36:10,
36:16, 38:5,
39:1, 40:15,
42:19, 43:7,
44:3, 44:10,
45:17, 45:18,
48:3, 48:22,
55:18, 55:22,
56:6, 59:4,
67:5, 68:17,
69:6, 74:4,
76:10, 76:15,
79:15, 81:10,
83:7, 86:17,
88:1, 88:7,
89:13, 89:14,
91:9, 92:4,
93:19, 97:5,
97:7, 97:8,
97:9, 97:19,
97:20, 98:5,
100:17, 103:2
one's
42:11, 63:20,
81:20
one-third
49:13
one-week
102:9
ones
34:12, 34:21,
49:16, 58:6
ongoing
23:10, 23:14
only
8:14, 25:1,
26:5, 40:13,
44:20, 49:8,
50:10, 51:6,
52:13, 52:14,
52:18, 53:14,
54:10, 57:16,

Transcript of Hearing
Conducted on March 11, 2021

45

61:9, 61:17,
62:2, 64:13,
93:9, 94:18
**onus**
53:7
**open**
99:2
**opened**
20:12
**opening**
15:13, 97:21,
97:22, 98:6,
98:9
**operated**
58:3
**operates**
58:11
**operating**
21:12, 21:18,
24:19
**opinion**
38:17, 44:16
**opportunities**
57:19
**opportunity**
51:13, 85:2,
86:11
**opposed**
5:13, 59:5,
59:19
**opposite**
44:1
**opposition**
13:10, 13:17,
13:18, 14:4,
14:19, 61:11,
67:2, 97:6,
97:21, 98:1,
98:4, 98:8
**option**
32:10
**order**
5:2, 5:5, 5:16,
5:17, 6:6, 6:21,
16:21, 17:7,
17:14, 26:12,
26:17, 26:19,
26:22, 27:20,

28:3, 28:5,
28:8, 34:6,
34:9, 34:21,
38:20, 39:2,
39:19, 40:6,
41:6, 43:10,
43:19, 43:21,
43:22, 44:2,
44:4, 44:9,
44:11, 44:15,
44:19, 44:21,
45:15, 46:1,
47:5, 47:11,
48:7, 48:8,
49:1, 51:8,
51:10, 51:11,
51:12, 52:12,
60:6, 62:17,
66:2, 66:13,
66:16, 66:19,
67:20, 68:6,
71:1, 71:3,
71:19, 71:22,
72:3, 72:5,
73:21, 75:8,
76:11, 77:21,
82:2, 84:18,
85:12, 85:14,
85:21, 86:2,
86:16, 91:8,
94:21, 100:8,
100:11, 101:11,
101:13, 101:19,
102:1
**ordered**
10:16, 20:5
**ordering**
95:3
**orders**
35:17, 44:8,
55:5, 66:10,
76:15, 100:7
**organized**
41:10
**original**
65:17, 100:10
**originally**
30:5, 52:10,

64:4, 71:2,
80:15, 83:5
**other**
5:7, 5:18,
8:22, 19:11,
21:7, 25:5,
25:14, 29:2,
30:21, 34:12,
37:12, 37:21,
41:3, 42:3,
42:6, 45:17,
45:18, 49:12,
50:15, 52:3,
53:6, 54:9,
56:15, 57:6,
65:2, 66:4,
66:12, 67:14,
72:7, 73:16,
74:4, 77:13,
78:16, 87:16,
92:11, 98:5,
101:2, 101:14,
102:8, 102:13
**others**
34:14
**otherwise**
38:17, 71:8,
94:10, 104:12
**ought**
8:20, 9:2
**ourselves**
64:6
**out**
9:18, 12:10,
12:16, 15:21,
23:6, 23:20,
29:21, 30:16,
37:10, 40:1,
41:22, 42:22,
43:4, 43:5,
46:17, 47:13,
49:6, 65:12,
67:9, 70:15,
71:2, 79:14,
91:8, 94:11,
95:13, 98:17
**outcome**
104:12

**outstanding**
42:16, 87:17
**over**
9:16, 28:2,
38:18, 41:4,
46:8, 48:18,
53:22
**overdue**
67:11
**overlap**
5:7, 5:9, 7:11,
7:16
**overlapping**
39:17, 98:4
**overly**
83:2, 85:10
**overrule**
81:22
**own**
14:9, 45:8,
49:17, 57:14,
67:7, 83:14,
96:14
**owner**
56:18
**owners**
49:11, 49:13
**oz**
60:13

**P**

**packages**
61:19
**pages**
1:21, 15:13,
15:19, 16:2,
16:15
**pale**
55:7
**papers**
10:13
**paragraph**
52:11, 65:16
**parallel**
30:12
**parameters**
61:2
**parcel**
42:2

Transcript of Hearing
Conducted on March 11, 2021                                          46

part
20:2, 20:4,
20:9, 40:20,
42:1, 42:2,
63:22
participants
69:22
particular
53:8, 63:3,
67:21, 93:18
particularly
24:7, 29:1,
77:9, 91:16
parties
8:1, 41:11,
49:2, 53:4,
67:21, 72:2,
73:8, 78:4,
83:18, 94:22,
95:15, 104:10
party
33:5, 40:22,
53:5, 53:6,
54:8, 54:11,
63:7, 64:9,
65:19, 68:19,
101:8
path
7:21, 41:9
patrick
3:3, 5:20,
27:15
paul
1:22, 2:9,
104:2
pay
63:4
payable
21:9
payments
21:10
pc
4:11
penalty
58:20, 59:1
pendente
23:9, 23:15,
24:8, 27:9,

28:14, 35:6,
36:12, 39:10,
39:11, 40:2,
43:3, 77:12,
91:14
pending
18:13, 20:6,
23:8, 24:6,
28:12
people
38:14, 40:17,
46:1, 56:1,
56:6, 57:3,
59:22, 78:3,
78:5, 78:16
percent
49:11, 99:17
percentage
54:12
perfect
10:2
perhaps
8:6
period
30:8, 44:13,
73:2, 94:16,
95:1
permit
67:3
person
93:18
person's
67:5
personal
8:11, 8:20,
10:22, 14:11,
15:22, 17:21,
18:10, 21:6,
22:2, 22:14,
24:3, 30:10,
33:8, 45:8,
56:19, 89:2,
89:18
personally
53:16
perspective
5:22, 10:1
pertains
77:2

phone
18:7
phrase
44:14
pick
10:21, 28:4,
28:7, 29:5,
29:7, 40:7,
43:12, 72:16,
76:10, 81:3,
87:12, 87:20
picks
40:6
picture
46:20
piece
26:22
pile
99:13
pin
26:12
place
49:9, 70:19,
76:12, 78:9
placed
51:2
plaintiff
19:17, 20:8
plaintiff's
17:11, 17:15,
27:9, 27:10,
27:13, 32:7,
37:12, 43:18,
43:20, 44:3,
44:5, 47:2,
66:14
plaintiffs
1:10, 3:2,
5:21, 6:11,
17:22, 18:11,
22:18, 27:16,
27:17, 32:8,
44:16, 55:19,
57:2, 60:5,
74:6, 84:6
plaintiffs's
74:15
plan
44:4, 66:15,

66:22, 74:20,
75:8, 81:13,
82:1, 86:16,
94:4
play
72:6
plea
9:6, 27:12,
29:21, 30:20,
30:21, 31:6,
31:12, 31:14,
39:5, 41:6,
43:1, 77:16,
89:15, 89:21,
89:22, 91:10,
91:17, 98:2
pleadings
30:9
pleas
30:9
please
37:1, 37:13,
44:1
pleasure
103:3
plenty
22:3, 30:21
pllc
3:4
plus
22:4, 78:4
point
10:12, 14:14,
24:8, 24:22,
25:2, 26:18,
32:10, 35:16,
54:8, 64:4,
70:11, 73:17,
74:4, 79:21,
81:20, 85:8,
86:17, 93:3,
98:17, 99:19
pointing
23:11
points
47:13, 61:9,
61:10
position
10:14, 24:14,

Transcript of Hearing
Conducted on March 11, 2021                                    47

**33:7, 53:3,**
57:2, 101:5
**possibility**
55:10, 96:4
**possible**
32:21, 45:19,
88:11, 99:10
**post**
16:4
**potential**
40:13
**potentially**
9:1, 26:4,
48:22, 49:18,
92:19
**powerful**
26:1, 63:17
**pre-scheduled**
12:15
**precedent**
49:6, 58:17,
60:20
**precludes**
64:9, 65:19,
101:8
**preclusion**
51:9
**predicate**
39:10
**prehearing**
95:14
**prejudge**
53:1
**prejudged**
48:11
**prejudging**
99:5
**preliminarily**
28:16, 30:18,
35:20
**preliminary**
19:10, 30:2
**premised**
84:11
**prepared**
6:9, 6:11,
6:20, 7:14,
47:7, 77:10,

**83:4**
**present**
28:1, 92:10
**presented**
57:15
**presenting**
38:13
**presiding**
28:4, 28:8,
34:8
**presumably**
32:5
**presupposes**
53:11
**presupposing**
75:20, 75:22,
76:2, 99:5
**pretrial**
90:1
**pretty**
19:19, 43:15,
45:4, 55:4,
64:15, 64:16
**previously**
5:3, 5:11
**price**
63:4
**primarily**
15:17
**prior**
76:9
**prioritize**
34:15
**probably**
10:13, 25:10,
33:17, 33:18,
36:15, 36:17,
43:16, 55:17,
64:8, 65:8,
65:18, 88:10,
89:21, 90:15,
91:20
**problem**
36:4, 46:6,
68:14, 91:4,
99:6
**problematic**
67:1

**problems**
45:4, 64:22
**procedural**
27:19
**procedurally**
32:9
**procedure**
32:18
**proceed**
77:10
**proceeding**
56:3
**produce**
71:10, 71:17,
73:9, 74:2
**producing**
45:20, 53:5,
53:6, 54:8,
54:11, 63:7,
65:19, 75:12,
101:8
**production**
79:6, 86:9
**professional**
19:13, 52:8
**progress**
19:2
**promptly**
19:7, 99:7
**prone**
60:7
**proper**
21:1, 28:17,
43:10
**properly**
94:17
**proposal**
72:10
**propose**
72:9
**proposed**
52:12, 64:3,
71:19
**propounded**
42:10, 67:6,
67:15, 71:3,
86:13
**propounder**
100:10

**prosecution**
49:17, 50:8
**prospective**
55:18
**prospectively**
57:5
**protect**
28:16, 45:19,
56:9, 57:8,
57:13
**protecting**
26:14
**protection**
51:6, 52:20,
61:17, 64:3,
64:14, 64:17,
65:11, 65:20,
66:15
**protections**
25:11, 47:15,
52:17, 64:10,
101:9
**protective**
6:6, 17:14,
26:12, 26:17,
26:22, 43:19,
43:21, 43:22,
44:2, 44:3,
44:8, 44:9,
44:11, 44:14,
44:19, 44:21,
45:15, 46:1,
47:5, 47:11,
52:12, 55:5,
60:6, 66:2,
66:9, 66:13,
66:16, 68:6,
84:18, 85:21,
86:2, 86:16,
100:8, 100:11,
102:1
**proton**
51:16, 57:22,
58:4
**prove**
61:5, 61:6
**provide**
16:12, 71:20,

Transcript of Hearing
Conducted on March 11, 2021

48

71:22
**provides**
64:17
**providing**
64:11
**provision**
48:10, 49:8,
50:10, 52:21,
53:3, 53:21,
54:2, 55:4,
55:12, 58:15,
59:9, 59:16,
62:22, 63:19,
64:3, 64:8, 65:1
**provisions**
44:18, 47:12
**prudence**
49:1
**public**
2:10, 61:22,
104:1, 104:21
**pull**
72:22
**punish**
84:15
**pure**
18:14, 18:22,
34:5, 34:18
**purpose**
50:21, 59:11,
93:19
**pursuant**
2:9
**put**
5:17, 14:13,
16:5, 20:11,
20:13, 22:3,
26:12, 34:11,
58:13, 65:1,
72:1, 81:13,
81:14, 83:5
**puts**
53:7, 66:10,
79:7
**putting**
15:15, 51:12,
67:4, 82:10

**Q**

**quash**
17:12, 17:20,

18:8, 19:15,
26:11, 26:18,
26:20
**quashed**
78:11
**question**
24:15, 31:7,
31:14, 36:11,
36:13, 45:17,
53:21, 53:22,
54:5, 54:15,
57:21, 57:22,
58:1, 58:13,
59:18, 60:11,
61:8, 71:4, 71:6
**questions**
46:19, 80:4,
102:13, 102:14,
102:19
**quickly**
24:19
**quite**
54:19, 58:21,
73:17
**quote**
54:13, 59:19

**R**

**raised**
5:8, 79:21
**rather**
89:2
**rd**
98:8
**reach**
53:4
**reaction**
8:16, 9:9
**read**
10:13, 24:20,
29:4, 30:20,
30:21, 31:18,
44:22, 45:3,
52:10, 64:8
**reading**
104:8
**realize**
30:13, 38:8,

65:1
**really**
10:14, 23:21,
27:4, 54:19,
55:16, 55:17,
59:2, 60:12,
63:16, 64:13,
64:20, 67:3,
70:16, 77:16,
81:5, 81:6,
102:10, 102:20
**reason**
9:20, 17:19,
34:15, 43:4,
47:11, 58:9,
77:7
**reasons**
69:6, 69:19,
69:20
**rebuttal**
23:2
**recall**
74:6, 78:18
**receive**
50:6
**receiver**
37:7
**receiving**
54:11
**recognize**
7:7
**record**
83:22, 103:6,
104:5
**records**
21:1, 21:2
**recovery**
70:1, 70:2,
70:4
**reduced**
104:7
**refresh**
37:13
**regard**
6:20, 8:17,
51:16, 54:1,
68:6, 68:9,
68:19, 98:16

**regarding**
8:20, 17:21,
24:4, 32:12,
44:15, 50:9,
98:19
**regards**
74:19, 75:8,
75:9, 75:13,
85:7, 85:22
**reject**
49:7
**relate**
49:4, 78:6
**related**
25:20, 28:12,
92:11, 104:10
**relates**
72:3
**relating**
23:5
**relation**
93:21
**relationships**
57:18, 57:20
**relatively**
58:19
**relevance**
20:10
**relevant**
18:17, 18:18,
24:15, 26:6,
93:22
**relief**
8:4, 28:14
**rely**
50:1
**relying**
45:21
**remarks**
6:19
**remedies**
47:20
**remedy**
48:11
**remember**
26:4
**remote**
89:19

Transcript of Hearing
Conducted on March 11, 2021

49

removed
26:8
repetitive
5:10, 7:12
reply
12:3, 13:9,
13:19, 15:14,
97:5, 97:19,
98:1, 98:3, 98:7
reported
1:22
reporter-notary
104:1
representations
70:7
represents
7:5
request
27:8, 44:12,
62:20, 66:13,
74:19, 79:6,
83:2, 84:3,
86:20, 87:2,
87:10, 98:21
requested
104:9
requests
36:5, 74:6,
74:22, 82:4,
82:14
require
33:16, 74:2,
74:10
required
19:6, 19:9,
41:22, 72:14,
85:9, 92:8,
101:3
requirements
85:7
resisted
94:3
resisting
69:18, 69:19
resolution
53:8
resolve
42:14, 66:6,

98:15, 102:7
resolved
9:19, 17:1,
100:1, 100:3
respect
14:1, 71:1
respectfully
62:20, 99:1
respects
7:11
respond
19:11, 67:13,
67:14, 67:21,
72:14, 85:10
responding
85:22
response
14:16, 18:16,
19:9, 19:10,
28:22, 58:21,
67:10, 72:20,
74:9
responses
44:6, 67:11,
71:20, 79:5,
79:11, 79:22,
81:16, 84:17,
102:2
responsive
30:8, 80:7,
102:20
rests
39:10
result
85:8
return
12:22
reviewing
62:21
revisions
101:3
revisit
51:9
rid
41:3
right
6:15, 7:1,
11:9, 11:12,

13:16, 14:9,
14:22, 15:11,
16:16, 17:18,
19:3, 27:12,
27:14, 28:6,
29:5, 29:10,
30:1, 30:6,
36:7, 42:5,
43:21, 45:1,
58:12, 63:17,
64:7, 66:5,
66:21, 66:22,
67:8, 68:15,
69:16, 70:21,
71:10, 74:16,
75:3, 77:5,
79:16, 87:5,
87:11, 87:16,
88:9, 90:16,
91:22, 92:5,
92:17, 98:13,
99:4, 99:21,
100:1
rights
75:15
risk
23:14
road
31:22
rolling
42:15
rose
4:10
row
43:5
rule
26:21, 67:3,
83:15
ruled
78:13, 81:14,
81:16, 84:16
rules
74:10
ruling
26:10, 26:17,
84:14
rulings
75:18

run
45:5

**S**

sabotage
23:22, 55:20
safe
45:19
safeguard
63:7
said
22:20, 31:6,
39:7, 46:16,
60:11, 61:12,
71:2, 81:2,
94:13, 104:6
same
7:15, 34:14,
41:15, 42:19,
43:17, 45:12,
46:7, 46:15,
52:3, 52:19,
58:19, 59:18,
72:18, 73:9,
81:15, 93:11
sample
74:11
sanction
63:10
satisfy
52:7
saw
36:20
say
16:8, 25:1,
34:10, 34:12,
38:9, 38:14,
38:15, 39:6,
40:9, 43:4,
51:5, 52:12,
53:4, 53:12,
65:18, 68:3,
72:13, 73:11,
77:7, 85:15,
88:6, 93:7, 99:1
saying
15:3, 19:20,
25:14, 28:21,

32:16, 36:17,
37:5, 38:10,
51:7, 51:21,
55:6, 55:12,
64:18, 79:1,
97:3
**says**
28:3, 28:20,
65:12, 67:13
**scenario**
64:7
**schedule**
12:1, 13:7,
13:21, 16:19,
29:13, 30:3,
31:8, 32:14,
32:19, 34:10,
34:20, 42:17,
67:12, 69:2,
72:11, 87:9,
87:10, 93:20,
96:10, 96:13,
97:4
**scheduled**
5:4, 6:13,
29:14, 30:19,
33:11, 40:3,
88:2, 99:12
**schedules**
98:14, 101:15
**scheduling**
6:2, 6:12, 9:8,
27:4, 35:17,
40:6, 72:3,
75:14, 76:3,
76:15, 77:12,
94:19
**scope**
83:9
**screen**
60:15
**screened**
31:21
**seal**
104:15
**second**
43:2, 44:5,
83:21

**secret**
20:14, 22:1,
51:14
**secrets**
50:12, 50:16
**see**
12:2, 12:6,
13:3, 22:7,
22:17, 25:14,
29:17, 41:13,
47:1, 51:7,
53:17, 70:20,
75:3, 78:14,
89:15, 90:11,
91:18, 103:1,
103:3
**seeing**
22:12, 46:17,
46:18, 78:18
**seeking**
9:6, 17:21,
18:9, 24:17,
27:17, 64:10,
64:14, 65:19,
71:18, 101:8
**seeks**
53:8, 66:19
**seem**
5:8, 34:22,
63:21
**seemed**
89:11
**seems**
5:6, 7:11, 8:8,
9:12, 30:14,
35:3, 39:17,
40:10, 44:9,
45:16, 55:7
**seen**
50:11, 69:15
**semblance**
41:10
**send**
100:15, 101:1,
101:16, 101:17
**sense**
10:2, 53:18,
73:14

**sent**
67:9, 100:17
**separate**
6:5, 7:13,
7:17, 17:7,
38:22, 43:2,
78:19
**september**
10:17, 27:21,
28:10, 29:12
**sequence**
66:20
**sequenced**
93:6
**sequestered**
5:14
**serious**
45:11
**seriously**
48:1
**served**
19:8, 36:6,
74:8, 80:2,
80:5, 80:8,
84:1, 84:2, 84:7
**service**
30:7
**serving**
49:21, 91:5
**set**
6:2, 9:15,
10:15, 34:9,
40:1, 43:1,
43:4, 61:2,
71:2, 76:7,
76:8, 82:1,
89:14, 91:15,
92:8, 92:21,
95:15, 96:12,
97:17, 101:14,
104:14
**sets**
72:11, 78:3
**setting**
8:18, 9:19,
29:3, 66:12,
67:12, 68:19,
101:12, 101:13

**seven**
43:6
**several**
8:22, 43:6,
62:12, 90:8
**severe**
60:9
**share**
25:11, 100:21
**shareholder**
49:9
**shareholders**
49:14
**shielded**
50:22
**shoes**
70:4
**shoot**
13:5
**shorten**
8:6
**shorthand**
104:1
**shortly**
33:7, 33:11,
40:3
**should**
6:13, 9:15,
19:17, 21:17,
22:12, 23:9,
28:2, 33:7,
37:21, 39:5,
39:17, 40:2,
40:12, 41:4,
41:16, 42:17,
43:11, 47:19,
47:21, 49:7,
62:3, 62:19,
64:8, 64:13,
65:17, 66:4,
73:12, 73:21,
74:1, 74:7,
76:22, 79:17,
88:3
**shouldn't**
9:20, 86:4,
102:10
**show**
16:14, 23:1

Transcript of Hearing
Conducted on March 11, 2021

51

showed
21:4
showing
23:12, 84:21
shown
20:17, 22:4,
55:19
shows
21:3, 23:19,
49:5, 62:3
side
6:8, 6:12,
25:14, 32:7,
47:22, 48:13,
49:12, 50:16,
54:9, 54:10
sides
69:15, 70:19
sign
73:19, 101:2,
102:15
signature
20:18
signature-mig2k
104:19
signed
21:8, 74:1,
100:13, 101:17
significance
8:2, 49:22
significant
45:4, 56:9
signing
104:8
similar
97:4
similarly
49:9
simple
18:14, 18:22,
58:22, 59:3,
60:4
simply
16:21, 39:20
simultaneously
67:22
since
36:5, 54:20,

56:17, 100:10
single
74:8, 84:7
sit
70:12
sits
10:8
situation
40:14, 49:5
six
10:17, 58:16,
65:13
slush
45:8
smakula
1:22, 2:9,
104:2
small
55:22, 56:6
smoke
60:15
solid
61:13
solve
99:18
some
5:8, 7:13,
7:14, 7:15,
8:16, 9:10,
9:13, 10:21,
18:18, 19:20,
21:20, 22:7,
22:8, 23:14,
26:13, 30:1,
41:10, 42:14,
44:17, 46:1,
46:9, 46:11,
46:17, 47:15,
47:19, 48:13,
52:16, 54:2,
55:18, 57:3,
57:6, 57:12,
59:17, 60:22,
66:11, 69:12,
74:12, 76:4,
76:5, 78:1,
78:5, 87:13,
92:6, 94:3,

94:6, 94:7,
95:4, 95:9,
95:16, 98:14,
99:15, 99:16,
99:19
somebody
24:12, 58:1
somebody's
57:5
somehow
18:17, 56:2,
56:3
someone
48:19, 61:3,
61:4, 63:11
something
13:4, 35:1,
35:9, 51:3,
51:10, 55:1,
55:6, 55:8,
55:16, 57:6,
58:17, 61:16,
62:15, 64:8,
64:19, 65:12,
68:21, 76:18,
83:1, 83:6
sometimes
45:15
somewhat
44:19
somewhere
33:11
soon
32:20
sooner
31:8, 39:6,
72:20
sorry
14:19, 18:1,
47:3
sort
5:14, 6:7,
37:20, 43:17,
52:16, 55:2,
65:21, 69:21,
70:12, 94:4,
94:11, 101:10
sound
95:10

speak
10:3, 18:6,
32:12, 97:13
speaking
48:9
special
99:14
specially
8:10
specific
84:3, 84:10,
94:7
specifically
24:2, 31:22,
48:9
speed
48:18
speedily
27:8
spend
41:12
spending
41:11
spiraling
23:19
split
65:22
splitting
65:21
spot
55:11
squared
30:2
squeeze
13:5
st
89:1, 90:17
stacey
4:10
standard
48:8, 101:10
start
6:20, 9:12,
11:10, 44:11
starting
88:9
starts
28:11

Transcript of Hearing
Conducted on March 11, 2021

52

**state**
2:10, 52:2,
104:22
**stating**
8:1, 16:21,
98:19
**statute**
31:16
**stealing**
22:20
**steep**
63:4
**stenographically**
104:6
**stephen**
4:3, 7:3
**stern**
4:3, 4:4, 7:3,
7:4, 7:8, 9:5,
10:1, 19:3,
19:4, 23:11,
24:10, 25:19,
26:19, 31:10,
31:15, 33:3,
33:17, 34:17,
35:7, 36:8,
36:16, 36:19,
36:22, 37:3,
37:16, 37:21,
38:16, 40:8,
40:11, 41:16,
41:18, 49:22,
51:3, 51:18,
54:1, 54:15,
55:3, 58:12,
58:21, 61:4,
62:7, 62:9,
62:10, 62:17,
67:1, 67:13,
68:3, 69:3,
72:9, 72:19,
72:22, 73:6,
73:11, 74:4,
74:17, 77:17,
78:7, 78:10,
78:15, 79:10,
79:14, 79:21,
80:5, 80:10,

82:16, 83:21,
84:6, 84:9,
84:14, 86:17,
86:22, 88:5,
88:18, 88:20,
88:22, 89:4,
90:1, 90:4,
90:6, 90:13,
90:18, 91:1,
91:12, 92:4,
93:2, 93:5,
93:14, 94:12,
95:13, 95:21,
96:2, 97:7,
97:12, 98:19,
100:3, 100:8,
100:14, 100:19,
101:4, 101:19
**stern's**
63:14, 70:8,
78:6
**steve**
100:21
**still**
24:15, 58:18,
99:2
**stolen**
20:11
**stop**
36:10, 42:8,
86:3, 93:16
**stopped**
86:4
**straight**
26:9, 27:7,
33:4
**strategic**
69:17, 72:7,
93:17
**strategy**
42:2
**streamlined**
8:5
**street**
4:5, 4:12
**strict**
19:16
**strikes**
8:12, 9:18,

25:4, 42:17,
53:2
**strong**
24:20, 24:21
**struck**
8:18
**structure**
41:11
**studied**
54:20
**stuff**
15:16, 58:12,
61:18, 62:1,
67:9, 71:8
**sub**
6:4
**subject**
20:1, 51:18,
93:10
**submitted**
20:18, 36:21
**subpoena**
17:13, 17:20,
19:7, 19:8,
20:22, 21:2,
24:2, 98:21
**subpoenas**
78:21, 79:2,
98:20
**subsequent**
93:10
**substantial**
57:15, 80:5
**substantive**
6:16, 35:20,
69:11, 84:17
**succinct**
63:14
**succinctly**
71:14
**suddenly**
68:22
**sue**
58:1
**sufficient**
33:18
**sufficiently**
25:20

**suggest**
10:7, 14:2,
14:18, 40:3
**suggested**
39:19
**suggesting**
39:3, 69:16
**suggestion**
5:18, 101:7
**suggests**
21:20, 52:14
**suite**
3:6, 4:13
**super**
55:8
**supervision**
47:17
**supplement**
83:14
**supplemental**
16:10, 95:14,
95:18, 95:20
**supposed**
22:6, 51:16
**sure**
7:21, 8:6,
11:16, 18:5,
27:6, 68:16,
73:13, 86:18,
90:21, 94:20,
101:6
**surface**
60:10

---
**T**
---

**take**
11:17, 16:13,
29:15, 35:6,
36:12, 40:17,
44:1, 46:11,
48:1, 76:12,
78:8, 79:10,
103:3
**taken**
22:22, 63:6,
76:20, 76:22,
80:17, 87:6,
91:8, 93:7,

Transcript of Hearing
Conducted on March 11, 2021

53

95:8, 104:3,
104:6
**takes**
87:8
**taking**
21:3, 22:4,
57:17
**talk**
36:21, 69:22,
70:3
**talking**
39:15, 42:7,
56:14, 68:15
**talks**
57:21
**task**
16:20
**tear**
56:10, 57:1
**technical**
18:4
**technically**
92:19
**technology**
18:5
**tecum**
17:13
**teknetics**
55:22, 56:3,
61:12, 61:15
**tell**
28:5, 46:13,
50:1, 50:3,
58:8, 59:7,
84:22, 96:8,
96:9, 96:11
**telling**
38:20, 46:20,
58:4, 61:7,
64:12, 67:20,
82:11
**template**
100:9
**ten**
14:20
**tend**
5:6
**term**
64:20

**terms**
14:12, 87:15,
100:6
**terrible**
88:10
**testimony**
16:7, 33:20,
38:13, 89:12,
91:8, 92:18,
104:5, 104:6
**th**
3:13, 9:15,
9:16, 13:1,
13:5, 13:9,
13:10, 13:19,
14:22, 15:4,
15:7, 15:8,
15:11, 16:19,
19:8, 19:9,
27:21, 73:11,
73:12, 74:21,
79:8, 79:11,
79:12, 79:14,
79:15, 79:16,
80:10, 80:11,
80:20, 81:1,
83:16, 84:19,
86:19, 87:18,
88:9, 88:11,
88:15, 88:18,
89:1, 89:3,
89:6, 89:13,
89:22, 91:20,
92:4, 92:17,
97:16, 97:18,
97:20, 102:3,
104:15
**thank**
10:6, 11:13,
17:2, 17:19,
47:9, 47:10,
70:21, 103:4,
103:5
**thankfully**
70:2
**theme**
23:20
**themselves**
1:6, 21:5, 45:6

**thereafter**
33:12, 40:3,
72:1, 104:7
**thing**
5:14, 9:7,
25:1, 33:10,
36:20, 63:13,
69:15, 76:10,
78:22, 81:10,
93:15, 96:7
**thing's**
79:4
**things**
5:6, 6:4, 6:12,
6:13, 21:7,
29:11, 29:13,
30:21, 34:7,
38:22, 42:6,
43:10, 46:8,
56:15, 62:18,
67:4, 69:18,
69:19, 71:1,
71:3, 73:18,
82:2, 83:16,
87:10, 87:18,
92:15, 92:18,
94:9, 99:16
**thinking**
11:18, 95:13
**third**
3:12, 43:5,
43:6, 68:19
**thought**
68:20, 86:1
**thoughts**
54:2
**threat**
85:11
**three**
6:1, 11:2,
11:5, 11:8,
11:10, 16:18,
27:7, 28:7,
38:5, 39:1,
39:15, 39:22,
43:7, 43:12,
51:19, 52:3,
56:16, 77:18,

**thereafter**
78:19, 87:8,
87:20
**three-hour**
11:20
**thriving**
24:19
**through**
23:17, 23:21,
25:4, 35:8,
61:14
**throughout**
25:10
**throw**
42:3, 57:11
**thrown**
41:19, 68:2
**thursday**
1:18, 91:3
**tickle**
69:12
**tidy**
16:17
**time**
5:13, 7:15,
11:6, 19:11,
27:22, 30:8,
33:15, 38:21,
40:1, 41:15,
43:9, 44:6,
46:7, 46:15,
50:21, 72:11,
72:16, 72:19,
73:2, 73:5,
73:20, 80:13,
80:17, 80:20,
81:12, 84:4,
90:5, 95:1,
95:18, 97:10
**timely**
42:12, 102:7
**times**
59:8
**timing**
66:20, 80:15
**tired**
41:19
**today**
5:4, 9:20,

Transcript of Hearing
Conducted on March 11, 2021

54

11:17, 14:22,
26:10, 29:14,
38:7, 42:14,
42:21, 58:3,
70:5, 71:11,
73:20, 73:21,
76:19, 94:5,
98:15, 100:13,
100:18, 101:2,
102:15, 102:19
**together**
28:7, 41:7,
81:14, 89:13,
102:21
**told**
56:4
**took**
29:15
**tool**
57:8
**top**
53:22
**totally**
28:13
**touch**
26:15
**town**
12:11
**track**
81:15
**tracks**
30:12
**traction**
10:19, 99:15
**trade**
50:12, 50:16,
51:14
**transcript**
61:22, 104:4
**treat**
8:15
**trial**
11:9, 16:18,
31:16, 32:20,
35:14, 35:17,
36:11, 43:12,
63:12, 76:16,
88:12, 89:9,

89:14, 91:6,
92:15, 98:7
**trials**
63:8, 63:9,
92:11, 92:12,
93:20
**tried**
18:4, 36:21
**triggering**
53:3
**trip**
12:15, 73:1
**trouble**
46:9
**troublesome**
102:10
**troubling**
64:2
**true**
104:4
**truly**
10:11
**trust**
46:12, 46:13,
68:14
**truths**
70:10
**try**
16:17, 18:6,
36:12, 46:11,
51:10, 89:21
**trying**
7:18, 10:14,
11:14, 14:15,
23:16, 24:8,
24:13, 28:11,
41:9, 56:9,
56:13, 57:11,
57:18, 68:18,
69:2, 69:22,
76:4, 76:5,
94:4, 95:3
**tune**
58:16
**turn**
46:8
**turnaround**
101:21

**twice**
81:7
**two**
21:12, 28:7,
37:1, 38:6,
38:20, 39:15,
40:22, 43:4,
45:11, 47:12,
69:8, 72:17,
101:20
**type**
23:22, 34:2,
48:2, 61:17
**typewriting**
104:7
**typical**
55:4
**typically**
102:9

| U |
|---|

**ultimately**
54:7
**unadministerable**
52:6
**under**
15:21, 70:15,
104:7
**understand**
10:12, 29:9,
30:4, 30:17,
35:2, 36:7,
40:16, 47:4,
48:4, 65:2,
67:17, 70:1,
75:4, 75:6,
82:18, 83:17,
85:8, 85:20,
98:11
**understanding**
32:11, 63:5,
73:7, 86:18,
87:14, 94:8,
95:4, 95:10
**understood**
32:15
**unfortunately**
54:16, 59:14

**unique**
8:9, 57:2
**unless**
9:20
**unprecedented**
48:20, 49:3
**unquote**
59:19
**unrelated**
83:2
**until**
67:4, 77:12,
94:16, 94:22
**untimely**
19:6
**use**
14:13, 25:21,
46:3, 46:4,
47:6, 50:7,
50:11, 57:7,
60:2, 76:4,
76:5, 92:18
**using**
45:7

| V |
|---|

**vacation**
12:22
**various**
76:9
**venue**
34:2
**verbally**
76:19
**version**
47:16
**versions**
43:17
**versus**
48:18
**view**
24:22, 25:2,
25:9, 25:21,
38:18, 39:14,
44:2, 45:3,
52:15, 54:8,
68:10, 68:11,
70:8

Transcript of Hearing
Conducted on March 11, 2021

55

**viewed**
46:22, 54:7
**views**
45:11, 70:9
**violate**
59:2, 60:8,
65:14, 65:15
**violates**
61:4
**violation**
47:19, 49:3,
59:14, 60:8,
63:5
**virginia**
1:1, 3:7, 4:14
**virtually**
1:17, 2:2
**vis-à-vis**
45:6

**W**

**wait**
61:12, 83:21,
94:16, 94:22
**waive**
20:2, 74:7
**waived**
83:18
**want**
7:8, 13:15,
15:1, 16:1,
16:13, 20:2,
27:6, 30:22,
31:13, 34:10,
34:11, 40:15,
43:14, 44:13,
46:5, 46:14,
47:4, 51:4,
52:18, 58:22,
63:8, 63:15,
65:11, 70:10,
72:19, 73:3,
73:19, 75:15,
76:7, 76:17,
76:18, 78:1,
81:19, 82:2,
82:12, 86:6,
86:7, 89:21,

92:9, 92:15,
93:12, 93:17,
94:13, 94:20,
95:5, 96:10,
96:12, 97:3,
101:1, 101:5
**wanted**
101:5
**wanting**
19:12
**wants**
6:18, 7:9,
16:11, 41:6,
70:19
**way**
7:18, 7:19,
7:20, 8:15,
25:13, 27:19,
34:11, 40:10,
44:22, 45:5,
45:19, 47:5,
47:11, 57:6,
58:11, 62:18,
67:14, 68:7,
68:9, 68:12,
68:20, 73:15,
80:18, 84:11,
95:16, 99:10,
99:11
**ways**
7:13, 70:1
**we'll**
5:15, 6:21,
17:6, 29:14,
29:15, 43:1,
43:11, 78:21,
89:12, 101:21
**we're**
10:20, 11:11,
11:16, 19:22,
26:13, 28:11,
28:21, 29:5,
29:6, 29:8,
29:13, 31:15,
34:7, 35:4,
35:16, 36:4,
37:15, 39:1,
39:15, 42:14,

43:7, 43:14,
47:6, 47:21,
51:7, 64:5,
64:18, 65:4,
70:5, 70:16,
71:9, 72:16,
76:9, 77:10,
77:18, 79:1,
82:9, 86:14,
89:14, 91:16,
91:18, 94:20,
99:3, 102:12
**we've**
10:14, 11:13,
20:11, 20:13,
20:17, 21:7,
22:3, 22:4,
28:19, 35:9,
36:6, 42:7,
55:8, 56:17,
56:20, 57:15,
59:6, 62:14,
75:12, 75:13,
87:5, 88:1,
97:16, 99:9,
99:15, 99:21
**weak**
41:20
**weaponize**
57:7
**week**
12:17, 13:1,
14:2, 14:15,
15:1, 33:11,
73:14, 81:1,
88:13, 91:6,
92:7, 97:5,
97:7, 97:8,
97:9, 97:19,
97:20, 101:20
**weekend**
15:9
**weeks**
72:17, 91:17,
92:21
**went**
28:9
**weren't**
83:4

**west**
4:5
**whatever**
6:20, 25:15,
38:14, 39:21,
47:20, 61:5,
61:6, 64:14,
66:3, 69:18,
95:16
**whenever**
51:8
**whereof**
104:14
**whether**
9:6, 23:9,
24:12, 27:5,
31:1, 31:8,
37:21, 39:12,
44:20, 45:1,
45:7, 53:21,
57:22, 70:20,
86:8, 99:22
**whichever**
65:17
**white**
1:4, 1:5, 1:13,
4:9, 17:22,
21:9, 21:20,
50:15, 58:2,
71:12, 75:14,
94:18
**white's**
8:12, 20:19,
21:14, 22:2,
33:8, 56:20
**whole**
39:9, 63:12,
63:13
**wholly**
48:14
**wide**
63:3
**widely**
25:12
**willing**
72:8
**wish**
25:22

Transcript of Hearing
Conducted on March 11, 2021

56

**withhold**
53:6
**within**
6:3, 16:9,
63:8, 63:9,
71:21, 72:1,
102:1
**without**
19:5, 23:1,
41:15, 50:8,
94:19
**witness**
91:6, 93:11,
104:14
**witnesses**
36:20, 37:17,
37:18, 40:2,
40:16, 40:18,
69:2
**wives**
22:4
**wizard**
60:13
**woke**
70:11
**word**
60:17
**words**
53:7, 65:2,
85:4
**work**
12:2, 14:5,
35:17, 40:4,
43:11, 66:7,
75:3, 92:3,
102:21
**worked**
22:5, 30:16
**working**
35:16, 97:19
**works**
5:11, 18:5,
88:18, 89:4,
89:5, 91:1
**world**
35:1
**worth**
63:5

**wouldn't**
6:10, 38:17,
58:10, 72:15
**wrap**
26:16, 60:18,
89:12
**write**
100:12, 101:13
**writes**
67:2
**writing**
16:21, 21:4,
83:5
**written**
69:11, 71:20
**wrong**
69:16
**wrongheaded**
63:21
**wrote**
22:10, 54:22

**X**

**x**
1:15

**Y**

**ya'll**
16:15, 34:22,
83:15
**yeah**
13:8, 73:10,
89:20, 92:5,
93:4
**york**
3:14
**yourself**
21:16, 37:1,
59:5, 94:11

**Z**

**zero**
35:9, 36:6

**$**

**$10,000**
21:13
**$150,000**
49:3

**$65,000**
21:8

**0**

**00**
1:7, 17:3,
86:22, 87:1
**04**
1:19

**1**

**10**
1:19, 17:3
**100**
99:17
**10022**
3:14
**104**
1:21
**11**
1:18, 14:22,
103:6
**1101**
4:12
**12**
13:1, 13:5,
13:9, 16:19,
19:8, 80:11,
88:9, 88:11,
97:20, 97:22
**13**
98:4
**14**
72:1, 72:19,
79:7, 82:18
**15**
82:18, 104:15
**150,000**
59:16
**16**
98:8
**1610**
4:7
**18**
15:4, 15:7,
104:18
**19**
15:8, 15:11,

73:11, 73:12,
74:21, 97:18,
98:1
**19003628**
1:7

**2**

**20**
88:15, 88:18,
89:1, 98:3,
99:13
**2019**
30:5
**2020**
27:21
**2021**
1:18, 104:16
**2023**
104:18
**21**
13:16, 89:1
**21401**
4:6
**22**
13:11, 13:16,
14:21
**22030**
3:7
**22314**
4:14
**23**
98:8
**238**
4:5
**24**
79:14
**25**
15:13, 15:19,
79:8, 79:12,
79:14
**26**
61:11, 79:11,
79:15, 79:16,
83:16, 84:19,
86:19, 87:18,
89:3, 89:6,
89:13, 92:17,
97:16, 102:3

Transcript of Hearing
Conducted on March 11, 2021

57

**27**
19:9, 89:22,
98:3
**273**
3:8
**28**
3:13
**29**
9:15, 9:16,
13:10, 13:19,
15:11, 27:21,
80:20, 81:1

**3**

**30**
80:10, 90:6,
91:20, 92:4
**31**
90:17
**359487**
1:20
**3rd**
19:14, 91:9

**4**

**410**
3:15, 4:7
**4100**
3:5
**420**
3:6
**4333**
4:15

**5**

**5**
86:22, 87:1
**50**
49:11
**52**
103:6
**5th**
11:22, 12:6,
12:11, 13:10,
13:19, 15:11,
97:22

**6**

**610**
4:13

**684**
4:15
**6995**
3:15

**7**

**703**
3:8, 4:15
**793**
4:7
**7th**
69:1

**8**

**8**
90:6
**800**
3:12
**837**
3:15
**8898**
3:8
**8th**
69:1, 80:11,
80:18