# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| DAVID J. BOSHEA | * |
| Plaintiff, | * |
| | * Case No. 1:21-CV-00309-ELH |
| v. | * |
| COMPASS MARKETING, INC. | * |
| Defendant. | * |

* * * * * * * * * * * * *

**DEFENDANT COMPASS MARKETING, INC.'S RESPONSE AND OPPOSITION TO NONPARTY JAMES DIPAULA'S MOTION TO QUASH SUBPOENA DUCES TECUM, OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER**

Defendant Compass Marketing, Inc. ("Compass Marketing"), by and through its undersigned counsel, hereby files this Response and Opposition to Nonparty James DiPaula's Motion to Quash Subpoena Duces Tecum, or in the Alternative, Motion for Protective Order (the "Motion to Quash").

As set forth in greater detail below, the entire premise of the Motion to Quash filed by James DiPaula ("Mr. DiPaula") is that nothing Mr. DiPaula can say or produce is relevant because his term of employment at Compass Marketing did not coincide with that of Plaintiff David Boshea ("Mr. Boshea"). Not only is that premise factually incorrect – Mr. DiPaula and Mr. Boshea worked together at Compass Marketing for several years – but it completely ignores the claims and defenses at issue here. One of Compass Marketing's principal defenses is that the basis for Mr. Boshea's claim, namely an alleged employment agreement that calls for Compass Marketing to make a huge severance payment, is a forgery. In support of this defense, Compass Marketing proffers other employment agreements actually executed by the company, including with

individuals senior to Mr. Boshea, such as Mr. DiPaula, had similar terms in their employment agreements, *but none of whom had a severance provision even remotely similar to that forged by Mr. Boshea*. Thus, Mr. DiPaula's production of responsive documents and testimony regarding the narrow topics of his employment agreement and any severance paid to him are, in fact, relevant to this litigation.

Accordingly, the Motion to Quash should be denied and Mr. DiPaula should be compelled to produce responsive documents and answer questions under oath at his deposition.

## ARGUMENT

### I. MR. DIPAULA HAS A HEAVY BURDEN TO QUASH THE SUBPOENA

Compass Marketing and Mr. DiPaula are in general agreement regarding the law applicable to his Motion to Quash: the principal inquiry before the Court is whether the information sought from Mr. DiPaula is "relevant to any party's claim or defense." *See* Motion to Quash at 4 (quoting *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019)). Compass Marketing and Mr. DiPaula also appear to agree that establishing relevance is not "a high bar" (*see id.*), though it is higher for a nonparty than for a party. Here, Mr. DiPaula has a heavy burden as the moving party. *See, e.g.*, *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 125 (D. Md. 2009) (describing the heavy burden for party moving to quash subpoena). In fact, motions seeking to "prevent the taking of a deposition [are] regarded unfavorably by the courts" and it is "difficult to persuade a court" to grant such a motion. *Id.* This heavy burden on the moving party and relatively low bar to obtain discovery apply even when dealing with nonparty motions to quash. *See, e.g.*, *Fleet Business Credit, LLC v. Solarcom, LLC*, No. CIV. AMD 05-901, 2005 WL 1025799, at *1 (D. Md. May 2, 2005). As set forth below, Mr. DiPaula's Motion to Quash falls short of satisfying his heavy burden.

## II. MR. DIPAULA IS RELEVANT TO THIS LAWSUIT

### A. Mr. DiPaula Has Information Relevant to this Lawsuit

The standard for discovery is permissive. Under Rule 26 "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *See* FED. R. CIV. P. 26(b)(1); *see also, e.g.*, *Ralston Purina Co. v. McFarland*, 550 F.2d 967, 973 (4th Cir. 1977) (discussing the low threshold for relevant discovery and asking only whether the discovery was "germane" to the subject matter of the pending action).

Here, Mr. DiPaula has information that is relevant to one of the primary defenses asserted by Compass Marketing – that the employment agreement upon which Mr. Boshea relies is a forgery in that Compass Marketing never executed an agreement with Mr. Boshea containing the amount of severance sought by Mr. Boshea here. *See* Answer to Am. Compl. [Dkt. No. 37] at 8. Compass Marketing's Answers to Interrogatories also identify Mr. DiPaula as a former senior executive who "has knowledge of the terms of various employment agreements of Compass employees" (including, obviously, of his own). *See* Exhibit 1 (Compass Marketing Answers to Interrogatories) at 6. Indeed, Mr. DiPaula's employment agreement (which contains the same title and otherwise looks very similar to the one allegedly entered into between Compass Marketing and Mr. Boshea), contains no such severance clause, even though Mr. DiPaula was a senior executive at Compass Marketing and senior to Mr. Boshea. *Compare* Am. Compl., Ex. A [Dkt. No. 1-3], *with* Exhibit 2 (Agreement Relating to Employment and Post Employment between Compass Marketing and Mr. DiPaula dated February 24, 2010). To the extent that Mr. DiPaula received any severance outside of his employment agreement, such information is highly relevant to Compass Marketing's defense that it did not contractually agree to severance amounts anywhere

3

close to the amount alleged by Mr. Boshea in this case.[1] *See, e.g.*, *Mitchell v. Nat'l R.R. Passenger Corp.*, 208 F.R.D. 455, 461 (D.D.C. 2002) (allowing plaintiff's discovery of other severance agreements "upon the theory that the terms of her severance agreement are not characteristic of other severance agreements"). These assertions certainly justify Compass Marketing's subpoena to Mr. DiPaula and justify obtaining testimony and any relevant documents he may have regarding such matters.

Even if it is true that Mr. DiPaula cannot testify as to the specifics of Mr. Boshea's employment agreement with Compass Marketing,[2] Mr. DiPaula's suggestion that discovery for both the claims and defenses is limited only to the specific details of Mr. Boshea's terms of employment and, therefore, his (Mr. DiPaula's) potential relevance is limited solely to whether he was aware of those specific terms misunderstands the nature of litigation and the standard for relevance. By way of example only, Mr. DiPaula's own employment agreement and any severance he received – matters on which Mr. DiPaula most certainly has knowledge – are relevant as to whether Compass Marketing entered into employment agreements with employees that guaranteed severance in significant amounts (up to hundreds of thousands of dollars), as alleged by Mr. Boshea. Part of Compass Marketing's defense in this regard is that it is illogical to believe that Mr. Boshea would be the anomalous case to receive such an outsized severance payment, particularly in relation to individuals who were senior to Mr. Boshea in the corporate hierarchy at

---

[1] As part of this defense, Compass Marketing has produced to Mr. Boshea many employment agreements, all showing the payment of $1,000 as consideration for certain restrictions during and after employment, with no severance included in them. Yet, Mr. Boshea contends that his employment agreement was unlike any other and he is entitled to a severance payment 540,000 times greater than what all or nearly all other employees received.

[2] Mr. DiPaula denies that he was Mr. Boshea's supervisor. *See* Motion to Quash at 2. Compass Marketing stands by its assertion and, in any event, the status of Mr. DiPaula as Mr. Boshea's supervisor is not a prerequisite to the relevance of the information Mr. DiPaula can provide, including any awareness he may have of Mr. Boshea's employment terms, including whether Mr. Boshea was guaranteed a severance payment of more than $500,000. Compass Marketing has a right to explore this topic and these related topics under oath in a deposition.

Compass Marketing (e.g., Mr. DiPaula). Furthermore, in light of the very differing accounts of the alleged employment agreement that is at the heart of this litigation, credibility is going to play a key role in this litigation. Part of that credibility battle calls upon Compass Marketing to show that Mr. Boshea's story stands in stark contrast to that of numerous other Compass Marketing employees. Thus, Mr. DiPaula is a relevant witness in this case, the subpoena is warranted, and the Motion to Quash should be denied.

**B.** **The Documents Requested in the Subpoena Are Narrowly Tailored to Issues Relevant to this Litigation**

As the Motion to Quash makes clear, the Subpoena issued by Compass Marketing has sought a narrow set of documents – documents related to Mr. DiPaula's employment agreement, and any severance or post-employment payments to Mr. DiPaula. *See* Motion to Quash, Ex. 2 (Subpoena). These requests are neither unreasonable nor oppressive (and Mr. DiPaula, who bears the burden on this Motion to Quash, has not proffered any explanation or evidence to suggest how or why they are unreasonable or oppressive). In addition to these topics, to the extent that Mr. DiPaula has any knowledge regarding Mr. Boshea's employment agreement and/or the alleged guaranteed severance, such information is proper for a deposition. As explained above, the information sought from Mr. DiPaula is relevant and tailored to one of the central issues in this litigation.

**C.** **Mr. DiPaula's Two Alleged Defects with the Subpoena Have No Merit**

**1.** **Information That Mr. DiPaula Claims Is "Protected" Does Not Preclude Discovery**

Mr. DiPaula argues that "his private personal financial information concerning his employment, salary and severance payments" are "protected matter." *See* Motion to Quash at 5. As a threshold matter, presuming that Mr. DiPaula is arguing that the information sought regarding

5

his employment agreement and severance are confidential,[3] this does not establish a privilege that precludes discovery. *See, e.g.*, *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 682 (D. Kan. 2004) ("[I]nformation and documents are not shielded from discovery merely because they are confidential.") (citation omitted). Moreover, Mr. DiPaula cannot claim confidentiality as a basis to preclude disclosure of information to Compass Marketing where Compass Marketing is the other party to the transaction(s) at issue.[4]

Even if confidentiality equaled privilege (which it does not), it is the employer, not the employee, that has the interest in maintaining the confidentiality of employment/severance agreements. In this regard, businesses generally treat information about employees' salaries as confidential because businesses have an interest in preventing these figures from being publicly known. *See, e.g.*, *Healthcare Affiliated Serv., Inc. v. Lippany*, 701 F. Supp. 1142, 1156 (W.D. Pa. 1988) (enjoining defendant from using former employer's confidential information, including "employee salaries and benefits"); *RLM Comm., Inc. v. Tuschen*, No. 5:14-CV-250-FL, 2014 WL 1921087, at *6 (E.D.N.C. May 14, 2014) (same).[5] Here, Compass Marketing is not asserting

---

[3] It is not confidential for the reasons discussed *infra*.

[4] To the extent that Mr. DiPaula contends that Compass Marketing should access its own records for the information at issue, that information is not available to Compass Marketing. As the Court is aware, Daniel White and Michael White – two witnesses who have been subpoenaed in this lawsuit and who have filed their own motions to quash – have been adverse to Compass Marketing in a variety of contexts since their employment with the company was terminated. One of the many issues involving Daniel White and Michael White has been their refusal to provide Compass Marketing access to historical records, including records requested of Mr. DiPaula. The refusal to turn over access to these records was at issue in the Virginia litigation referenced in Compass Marketing's Oppositions, but it was never decided by the court before Daniel White and Michael White filed their nonsuit. If the Court requires a factual examination of this issue, Compass Marketing can provide evidence. By way of example, an examination of the Objections and Motion to Quash filed by Michael White reveals that Michael White has access to Compass Marketing emails from 2019 and earlier (on the compassmarketinginc.com email), but, because he and Daniel White refused to turn over access/control of the compassmarketinginc.com email account, in or about late July or early August 2019, Compass Marketing established a new url and email account – compassmarketinginc.net.

[5] Yet, it is unlawful under the National Labor Relations Act ("NLRA") for employers to preclude employees from discussing salary/compensation information because it would interfere with their Section 7 rights. *See, e.g.*, *Banner Health Sys. v. NLRB*, 851 F.3d 35, 42-43 (D.C. Cir. 2017).

confidentiality over Mr. DiPaula's employment/severance agreement(s) and, therefore, it should not be treated as confidential and there is no harm to Mr. DiPaula if it is disclosed.

### 2. Documents Potentially Available from Other Sources Does Not Warrant Granting the Motion to Quash

Second, Mr. DiPaula asserts that the request for documents seeks to unduly burden him because Compass Marketing should have copies of the documents sought. *See* Motion to Quash at 5-6. First, as previously noted, the Subpoena seeks a very small set of documents, and Mr. DiPaula has offered nothing to substantiate or even allege that it would be a burden for him to produce those limited materials. Rather, he claims that the burden is undue because Compass Marketing should have access to the same documents. However, the fact that information may be available from other sources does not justify quashing an otherwise valid subpoena. *See, e.g.*, *City Consumer Services v. Horne*, 100 F.R.D. 740, 747 (D. Utah 1983) (stating that it is "not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record") (citing *Petruska v. Johns-Manville*, 83 F.R.D. 32, 35 (E.D. Pa. 1979)); *Associated Wholesale Grocers, Inc. v. U.S.*, No. CIV 86-2261-0, 1989 WL 110300, at *3 (D. Kan. June 7, 1989) (stating that defendant's argument of equal accessibility is not sufficient to resist discovery) (citing *City Consumer Services*).

For these reasons, none of the arguments raised by Mr. DiPaula warrant quashing the Subpoena.

## III. JAMES DIPAULA HAS NOT ESTABLISHED THE NEED FOR A PROTECTIVE ORDER

Perhaps acknowledging the uphill battle in establishing that the Subpoena ought to be quashed, Mr. DiPaula argues in the alternative that any discovery related to his employment with Compass Marketing should be prevented under a protective order. *See* Motion to Quash at 6-7. As

Mr. DiPaula notes, the standard for obtaining a protective order imposes the same heavy burden on him – Mr. DiPaula has to establish that "the discovery sought lacks relevance" and that the likelihood of harm outweighs the need for the information. In other words, Mr. DiPaula's alternative argument for a protective order is premised on the same argument he made in support of his motion to quash – that any information from him is not relevant to this lawsuit. *Id.*

As set forth above, however, the limited information sought from Mr. DiPaula is highly relevant to one of Compass Marketing's primary defenses in this case, and Mr. DiPaula has not offered any evidence of a burden on him to produce or discuss his employment agreement and any severance paid to him by Compass Marketing. Thus, Mr. DiPaula has failed to meet the burden for a protective order and his request for a protective order should be denied.

## **CONCLUSION**

For the reasons discussed above, James DiPaula's Motion to Quash Subpoena Duces Tecum, or in the Alternative, Motion for Protective Order, should be denied in its entirety, Mr. DiPaula should be compelled to produce the requested documents and appear for deposition, and the Court should grant such other relief as it deems appropriate.

Dated: September 9, 2021

Respectfully submitted,

*/s/ Stephen B. Stern*
Stephen B. Stern, Bar No.: 25335
Heather K. Yeung, Bar No.: 20050
KAGAN STERN MARINELLO & BEARD, LLC
238 West Street
Annapolis, Maryland 21401
(Phone): (410) 216-7900
(Fax): (410) 705-0836
Email: stern@kaganstern.com
Email: yeung@kaganstern.com

*Counsel for Defendant*
*Compass Marketing, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of September, 2021, the foregoing Defendant Compass Marketing, Inc.'s Response and Opposition to Nonparty James DiPaula's Motion to Quash Subpoena Duces Tecum, or in the Alternative, Motion for Protective Order was served via the CM/ECF system on the following counsel of record:

Thomas J. Gagliardo
Gilbert Employment Law, PC
1100 Wayne Avenue, Suite 900
Silver Spring, MD 20910
Email: tgagliardo@gelawyer.com

Gregory J. Jordan
Mark Zito
Jordan & Zito, LLC
350 N. LaSalle Drive, Suite 1100
Chicago, Illinois 60654
Email: gjordan@jz-llc.com

*Attorneys for Plaintiff David Boshea*

and via email to:

David B. Hamilton
Sarah E. Meyer
Womble Bond Dickinson (US) LLP
100 Light Street, 26th Floor
Baltimore, MD 21202
David.Hamilton@wbd-us.com
Sarah.Meyer@wbd-us.com

*Attorneys for Non-Party James C. DiPaula*

> */s/ Stephen B. Stern*
> Stephen B. Stern