UNITED STATES DISTRICT COURT
for the
District of Maryland

\_\_\_ FILED  \_\_\_ ENTERED
\_\_\_ LOGGED  \_\_\_ RECEIVED

SEP 07 2021

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

**DAVID J. BOSHEA,**
**Plaintiff**

v.

Civil Action No.
1-21-CV-00309-ELH

**COMPASS MARKETING, INC.,**
**Defendant**

---

### NONPARTY DANIEL WHITE'S REPLY
### TO COMPASS MARKETING, INC.'S RESPONSE TO DANIEL WHITE'S MOTION TO QUASH SUBPOENAS AND IN THE ALTERNATIVE FOR A PROTECTIVE ORDER

---

Nonparty, Daniel J. White ("White"), *in Proper Person*,[1] files this Reply to Defendant Compass Marketing, Inc.'s Response to Daniel White's Motion seeking from this Court the entry of: (1) an order quashing Defendant Compass Marketing, Inc.'s ("Compass") subpoenas; and (2) a protective order. In support thereof, White states:

1. It is Daniel White's position that there are two significant questions this Court is being asked to address in his Motion:

---

[1] Attorney Stephen Stern makes numerous derisive references to the fact that this writer appears *pro se*. I assure this Court that I do not appear *pro se* out of hubris, or with any disrespect for this Court. The simple fact is that on May 1, 2019, in retaliation for my report to the United States Securities and Exchange Commission about the unlawful conduct of the management of Tagnetics, Inc., John White and Stephen Stern locked me out of the company that I helped build for over 20 years, stole all of my life savings there, and have from then to now waged a scorched-earth campaign to attempt to discredit, bankrupt and intimidate my family and me. Ironically, Stephen Stern's own exorbitant legal fees and those of his firm to represent Compass Marketing, Tagnetics, and his own company Smart Retail, have all come from my savings formerly retained by Compass Marketing - along with 2.5 million dollars in corrupt PPP/SBA loans.

1

a. The first question: is <u>nonparty</u> Daniel White a reasonable person upon whom to issue a subpoena, much less the very first subpoena duces tecum in this litigation, which involves a claim to recover wages and other damages by reason of a breach of an employment contract between David J. Boshea ("Boshea") and Compass, or is the subpoena actually just intended to continue a long pattern of harassment and slander against White by Stephen Stern ("Stern") and to discourage Daniel White's participation in ongoing federal and state investigations into the actions of the management of Tagnetics and Compass and Stern? Mr. Stern has dissembled a run-on sentence contained within Mr. Boshea's answers to interrogatories to make it seem as if Daniel White is a key witness in this litigation. For reasons outlined below, and as clarified in Daniel White's affidavit attached to his original Motion to Quash, that is demonstrably incorrect.

b. Second, assuming arguendo that nonparty Daniel White is a reasonable witness upon whom to issue a subpoena duces tecum, should he be subject to a subpoena *issued by Stern*, who has a long history in numerous forums of threatening Daniel White and his family – that harassment increasing since 2019 when Stern was noticed in writing that he was under investigation? Moreover, should Stern be prohibited from issuing subpoenas ostensibly on behalf of Compass when he so clearly has a conflict of interest by virtue of his financial interest in Smart Retail, Inc., ("Smart Retail"), a business furtively established by John White and Stern in Wyoming, whose interests are directly and materially adverse to Compass' – and Daniel White - and which was formed to continue the financial securities scams of Tagnetics? For the reasons outlined below, Daniel White asks this Court to

find that the personal financial interests of Stern along with his personal conduct related to Tagnetics and Smart Retail have established a pattern of harassment and further that they prohibit him from representing Compass Marketing in this action, or any other for that matter.

    c. The second question necessarily requires a preliminary inquiry that would rarely arise in federal civil litigation, and which Daniel White suggests should be answered "NO" – do John White and Stern actually represent Compass Marketing just because they say they do? Or, as Daniel White contends and as will be shown herein, do they repeatedly appear as the representatives of Compass (and Tagnetics and Smart Retail") simply by virtue of locking the rightful owners and directors out of Compass, and making the business so corrupt that others would not want to be associated with it (or them), and by surrounding themselves with notoriously violent armed "bodyguards"?

2. Tagnetics. *aka Powershelf, Solarshelf, Smartshelf, Toughshelf, Smart Retail Label, Smart Retail, One-Penny RFID.* In the Defendant's Response, Stern dismisses Tagnetics, Inc. ("Tagnetics") as a "bizarre issue" with no relevance to this case[2]. See Compass Response at page 15. Actually, to understand this Motion, or this instant litigation, or

---

[2] The docket sheets for the instant case indicate that the Court issued a deficiency notice to Compass because they had not disclosed affiliated parties, as required by Local Rule 103.3 - which might seem like an oversight, but for the balancing act that John White and Stern are playing with regard to Compass, Tagnetics, and Smart Retail. In response, Compass and Stern filed a disclosure indicating that Tagnetics is an affiliate of Compass "under the laws of certain states" and "owns at least 10% of the shares *and options* of Tagnetics, Inc." (emphasis added). That is a strange and likely untrue statement, especially considering the fact that Tagnetics has not had a shareholder meeting in nearly ten years. Moreover, the disclosure fails to mention at all Smart Retail, Inc., the company furtively established in Wyoming by John White and Stern in 2019 from the assets of Compass and Tagnetics.

3

anything about Compass, it is critical to first have a basic understanding of Tagnetics:

    a. Compass Marketing is a sales and marketing services company, formed in 1998 and owned by Daniel White, Michael White, and John White. Tagnetics, on the other hand, is a technology company formed in 2003 in Ohio, with which John White became involved in 2010, making himself the "Chairman and co-CEO" of Tagnetics soon afterwards.

    b. Tagnetics was formed to manufacture and sell electronic shelf labels (ESLs) but by 2010 they were basically insolvent. They only had a very small base of business with some retailers but on the other hand they still had a magnificent and revolutionary and intoxicating idea – convert millions of paper price tags in retail stores around the country to electronic shelf labels.

    c. When John White first became involved with Tagnetics, and when he involved Compass funds, the idea was to make incremental improvements in the design of the Tagnetics ESL and marginal increases in the base of retailers installing them.

    d. Very quickly however, in an effort to raise investor funds, John White and the Tagnetics "bankers" and lawyers and other assorted hucksters that he surrounded himself with began employing a warped version of a strategy once ascribed to John White's hero, Steve Jobs: fake it until you make it. They started using the moniker Powershelf, with John White advertising himself as the "Chairman and co-CEO" of Powershelf, which was not a real company but merely another alias for Tagnetics.

e. John White and his associates began drumming up interest from major retailers by pretending that their (non-existent) electronic labels would not only convey an item's price, but would "revolutionize" retail (**Exhibit 1**), including a claim by Larry McWilliams, former executive at Campbell Soup Company, that Powershelf was the "Holy Grail of retail" (**Exhibit 2**). What the press release by Tagnetics/Powershelf/McWilliams failed to mention was that McWilliams was also presenting himself elsewhere as the "co-CEO" of Tagnetics and the "co-CEO" of Powershelf and the "co-CEO" of Compass, and was also a major shareholder of Tagnetics and on the payroll of both Tagnetics and Compass.

f. Tagnetics/PowerShelf/Smart Retail Label, according to the hucksters, could advertise a sale, enable "dynamic" pricing, contact consumers' mobile devices by Bluetooth or Near-Field Communication (NFC) (**Exhibit 3**), tell the temperature inside the refrigerators, and even report when a shelf was empty (**Exhibit 3**), and track inventory with magic "augmented reality" sunglasses (**Exhibit 4**).

g. By 2015, Tagnetics had established a dozen trademarks, or aliases, but was primarily using "Powershelf" and "Smart Retail Label" (**Exhibit 5**). They were constantly finding creative ways to pretend to be associated with brand names, like Samsung, Dell, Microsoft, SAP, Hitachi Consulting and GE Digital, among others. Sometimes it would be as simple as claiming that Powershelf was "powered by Microsoft Azure" (**Exhibit 6**). This Reply is written with HP and powered by Microsoft Word, but that does not make them financial partners.

h. By 2016, the Powershelf/Smart Retail Label had developed a slick looking private

5

investor "Confidential Information Presentation" that included unauthorized logos of major CPC companies and the largest retailers in the world, and appeared to value the company in excess of $1,000,000,000 (**Exhibit 7**).

i. The problem was that all of it was a sham. In fact, it was nonsense. After 20 million dollars in investments (at least) spent mostly on outrageous salaries and "prototypes", there was no production facility, and there were no electronic tags, no retailers, and no committed customers. See the "final report" of the Tagnetics Chief Technology Officer at **Exhibit 8**. Tagentics/Powershelf/Smart Retail was, and is, ominously reminiscent of Theranos, right down to the $600,000 per year spent for armed security guards to "protect" CEO John White.

j. Marty Monserez, former Procter & Gamble executive, long-time friend of John White, and the President of Sales for Compass and Powershelf and Tagnetics - and on the payroll of both Tagnetics and Compass - accidentally left on the main company voicemail account a recording of a conversation he was having with Jack Buller, also of Compass and Tagnetics, where Monserez admits that he has been paid $500,000 per year to pretend like Tagentics/Powershelf/Smart Retail works, when he knows that it does not:

  i. "I am hardly [working] and he's [John White] paying me $400,000 and … another $100,000 on account. … He's [John White] so full of shit. He [John White] was sitting in Walgreen's yesterday with the Beacon people, the digital people and John's saying something that just isn't freakin' true. He said, and you know Walgreens tested it, the SRLs and we're going to

>> market.  He's fuckin' nuts!" (**Exhibit 9**).
>
>> ii. "It would be real easy if it weren't for Scotty and Nick's money [Marty's children].  But it's still kind of easy." (**Exhibit 9**).
>
> k. During 2018, the Smart Retail Label hucksters came up with a new scam – a "one penny Gen 2 RFID breakthrough".  These magic labels would include an RFID chip that would only cost a penny but could nevertheless not only "virtually eliminate out-of-stocks on store shelves" but also "build a global network to track assets in real time". (**Exhibit 10**).  The Tagnetics/Powershelf/Smart Retail network, claimed John White, included Qualcomm, Microsoft, SAP and GE. (**Exhibit 10**).  On top of everything else, these parlor-trick one penny RFID chips would even help reduce climate change (**Exhibit 11**).  There was, apparently, no end to the fairy-tale.

3. <u>Smart Retail Label</u>.  John White is an incredibly engaging salesman with a deep knowledge of the psychology of selling.  For many years, John White poured <u>everything</u> into Compass and then Tagnetics.  He built a very successfully business almost out of sheer will, and could not let it slip away, no matter what it took to keep the story going.  During 2018 John White used his magic one penny Gen 2 RFID Smart Retail Label network to bamboozle what would turn out to be an incredibly valuable "investor" – Stephen P. Stern.

> a. John White offered Stern the opportunity to become a minority shareholder in a

"new"[3] company named Smart Retail Label, Inc. (later renamed Smart Retail, Inc.), to be formed by John White to use RFID technology in retail establishments by using a label that includes an RFID chip.

b. The initial stake would be 1% of the company, and as for the cost of this 1% "there was no number" – a classic John White sales ploy. For that opportunity, Stern apparently left a successful partnership and joined a firm where the "managing partner" would allow him to be both attorney to a number of related entities and an investor in one of them.

c. More important to John White, he would have his own David Boies – a skilled and aggressive attorney whom he could count on to threaten and intimidate anyone who might try to expose his securities scams.

d. **<u>A Lie Is Not In The Words, It Is In The Deceit</u>.** Stern repeats in the Defendant's Response a clever but nevertheless deceitful statement: "undersigned counsel does not own and has never owned an entity known as Smart Retail, Inc." (**Defendant's Response at p. 14**). That statement is intentionally misleading, and will hopefully be addressed by this Court. John White and Stern were discovered to have created Smart Retail in Wyoming during August 2019 in the midst of paying Tagnetics creditors and investors with Compass funds. These funds were laundered through Stern's IOLTA account to keep that sham going while they transitioned to what Stern thought would be a new business - his own

---

[3] In reality, John White in 2018 had caused Tagnetics to Trademark the names SRL, and Smart Retail Label, and IoT Smart Retail, with Compass funds of course. John White and his Tagnetics partners have

Smart Retail. So, John White and Stern abandoned Smart Retail before any shares were issued. (**Exhibit 12**). The incorporation documents clearly indicate that John White is the incorporator, and the address of the corporation is the same as Compass and Tagnetics, and the attorney of record is Stern's law partner at Kagan Stern, Ryan Beard – due of course to Stern's conflict of interest.

    e. Unfortunately for John White and Stern, they left a long record of establishing Smart Retail together, and of Stern's <u>financial interest</u> in Smart Retail. For many years, John White also left a long record of "Smart Retail" and the magic one-penny RFID tags being the parlor-trick paid for by Tagnetics investors, including Compass – and Daniel White.

    f. Further, John White and Stern left a record of <u>Compass</u> employees John White, Kevin Nemetz, Chris Feiss, Christine Rex, Jerry Cain[4], and Lou Fernandez - with Compass funds - traveling to Saudi Arabia *as Smart Retail* in September 2019 to sell the magic Smart Retail one-penny RFID tags to a customer there, with the support and assistance of Stern.

4. <u>Tagnetics bankruptcy</u>. When a group of six disgruntled Tagnetics employees, debtors, and investors filed to force Tagnetics into bankruptcy in Ohio in March of 2019, *United*

---

been using the magic "Smart Retail" RFID label for a long time.

[4] Jerry Cain (Cain") is a good example of the relevance of the relationship between Tagnetics, Powershelf, Compass and Smart Retail to an analysis of Daniel White's motion. Cain was an investor in Tagnetics, and the president of that company. In 2019 Cain also became the president of Compass and his employment contract with Compass called for an outrageous salary and the transfer of Compass-owned Tagnetics stock as part of his compensation. Cain is also one of the investors alongside Stern in Smart Retail.

*States Bankruptcy Court, S.D. Ohio, 3:19-bk-30822 Tagnetics Inc.*, John White and Stern knew the time was running out on keeping that particular entity alive and began their transition to Smart Retail.  The efforts they used to keep it going until they could transition the magic RFID label and new investors to Smart Retail were remarkable in several ways, and absolutely unheard of in one particular instance.

a. In July 2019, faced with the immediate deadline to send financial reports of the Tagnetics scam to the petitioning creditors, most critically the shareholder ledgers, John White and Stern decided instead to use Compass funds to pay these totally meritless claims in full – along with attorney's fees – <u>and to pay them with Compass funds</u>.  Moreover, due to the importance of keeping the financial condition of Tagnetics secret, Stern washed the Compass funds through the IOLTA account of Kagan Stern on the same afternoon that they were wired from the Compass bank account. (**Exhibit 14**)

b. Further, John White and Stern caused <u>Compass</u> to pay hundreds of thousands of dollars in attorneys' fees to Stern and other law firms to keep the Tagentics financial position secret until they could travel to Saudi Arabia and get a new investor on the hook with their new business, Smart Retail.

c. Most extraordinarily, in October 2019 Stern appeared in the United States Bankruptcy Court for the Southern District of Ohio as both lead counsel for Tagnetics and as the sole fact witness for Tagnetics.  Stern did not even bring to court John White, or any other representative of Tagnetics or Compass.  Of course, by then he had a "1% ownership interest" in the new Smart Retail

company.

d. The transcripts of Stern's testimony are attached as **Exhibit 15**. Although Stern was concerned about the volume of the transcript – no others apparently, just that one – I have included it here because it is important to see how far Stern and John White will go to protect their own personal interests, even to the detriment of their fellow stakeholders. I also include it because I would think that few if any readers have seen anything like it.

   i. "The Court: *Okay. Mr. Stern, do you have any witnesses you wish to call?* Mr. Stern: *Yes, Your Honor, I'll be the testifying witness ...*" (**Exhibit 15 at p. 17**)

   ii. "The Court: *Do you practice in the area of bankruptcy at all?* Mr. Stern: *I do not.* The Court: *So this is your first foray into that?* Mr. Stern: *It is.*"

e. Stern took on his first bankruptcy case ever and then he testified himself as the only Tagnetics witness at the hearing because he had to balance/hide the fact that Tagnetics was literally insolvent and the board had voted in July 2019 to contingently declare voluntary bankruptcy, while at the same time indicate to the investor audience that Tagnetics/Powershelf/Smart Retail was a viable company on the cusp of the next great new partnership to propel the billion-dollar sale of Smart Retail labels.

f. More important than anything else, because he and John White had used so much Compass money to fund the Tagnetics scam (and his legal bills) and most

11

    importantly to settle with the Tagnetics creditors with Compass funds *through his firm's escrow account*, Stern had to use his testimony to establish that Compass and Tagnetics were "affiliated". Even a cursory reading of the transcript shows how important that was to Stern. In fact, when the Bankruptcy Court declined to consider the companies together and specially include Compass in the settlement, Stern appealed to the United States District Court, *3:19-cv-00363 Tagnetics, Inc. v. Kenneth Kayser, et al*, and the 6th Circuit Court of Appeals for the Sixth Circuit, *20-3556 In re: Tagnetics, Inc. v. Kenneth Kayser, et al*, to argue that Compass should be specifically included in the settlement, but both Courts of course declined.

    g. Stern must now continue to pretend that "Tagnetics, Inc. is an affiliate of Compass Marketing, Inc., under the laws of certain states [and that] Compass Marketing owns at least 10% of the shares and options of Tagnetics, Inc." (See **Exhibit 13** - *Compass Disclosure of Corporate Affiliations and Financial Interests*).

5. The subpoena duces tecum issued to Daniel White by Stern represents harassment against a nonparty, which should not be permitted by the court until it is shown that discovery has been exhausted against parties to the litigation and until it has been demonstrated that the discovery is not intended to oppress White and to discourage him from continuing to participate in federal and state investigations into fraud committed by the Defendant, and by Stern.

6. This Motion should be granted and Stern's subpoena should be quashed because Stern is

so clearly conflicted by his conduct and his financial and pecuniary interest in Compass Marketing, Tagentics, and Smart Retail. John White and Stern's sole and consuming interest is to keep their conduct related to Tagnetics and Smart Retail from being exposed, and they will continue to go to any length to that end.

For these reasons, Nonparty, Daniel White, respectfully requests, for the reasons set forth herein, that this Court enter an order, pursuant to Rule 45 of the Federal Rules of Civil Procedure: (1) quashing the subpoena duces tecum; and (2) entering a protective order prohibiting Stern from issuing further subpoenas to Daniel White without leave of the Court.

Tuesday, September 7, 2021

Daniel J. White, *Pro Se*
Post Office Box 1760
Leonardtown, MD 20650
Tel: (240) 298-8156
danieljwhite@msn.com

## Certificate of Service

I Hereby certify that on this 7th day o September, 2021 the foregoing Nonparty Daniel White's Reply to Defendant's Response to Daniel White's Objection and Motion to Quash and for Protective Order was served via First Class Mail to counsel of record:

Gregory J. Jordan
Jordan & Zito, LLC
350 N. LaSalle Drive, Suite 1100
Chicago, IL 60654

Thomas J. Gagliardo
Gilbert Employment Law, PC
1100 Wayne Avenue, Suite 900
Silver Spring, MD 20910
    *Attorneys for Plaintiff, David Boshea*


Stephen P. Stern
Kagan, Stern, Marinello & Beard, LLC
238 West Street
Annapolis, MD 21401
    *Counsel for Compass Marketing, Inc*


_____
Daniel J. White