1   I have negotiated many contracts in my life.
2   I've always been chairman of the board of companies or
3   an executive of companies, and I'm used to doing
4   negotiated settlements, and this did not follow the
5   normal course, in which if you had a disagreement, you
6   discuss it.
7   Because of that, when we were approaching the
8   date where for a ruling on the motion to enforce
9   settlement, I had my business attorney in Roanoke,
10  Virginia do a redline version of the draft agreement,
11  and I gave him two documents, the money -- the money
12  timetable and the original July 20th letter, and I
13  asked him to redline this agreement, based on those two
14  documents, without giving him any further guidelines on
15  what to do.  And that's the redline version I presented
16  to you.
17  That document reflects our -- what we thought
18  we agreed to on Friday, when we agreed to postpone the
19  trial.  There's also a clean version that was
20  presented.  And as of this date, even though part of
21  our verbal agreement was that it would be done quickly,
22  and it's now been three months, we will still go along
23  with what we agreed to as expressed by those documents.
24  I do not believe that there has been any real
25  interest in settling this, and that this has simply

**TAGNETICS (19-30822) 10-18-19**

100

1   been an effective way to further delay the trial.  And

2   I look forward to the Court setting a trial date, so it

3   has a chance to review the evidence as to the

4   insolvency of Tagnetics.

5         THE COURT:  Okay, hold on, Mr. Kayser.  Are

6   there exhibits which haven't already been introduced,

7   which you wish to introduce in your case?

8         DR. KAYSER:  I'm sorry, Your Honor.  I

9   couldn't understand.  Are there exhibits?

10        THE COURT:  Are there exhibits which haven't

11   already been introduced?

12        DR. KAYSER:  All the exhibits I'm quoting

13   have already been -- already come into evidence.

14        THE COURT:  Okay, okay.  All right.  Okay,

15   now, stay up there because they have the right to

16   cross-examine you.  I assume you're done with your

17   direct examination.

18        MR. EARLEY:  Your Honor, I guess to follow up

19   on that question, the exhibits that he mentioned were

20   ones that were submitted to the Court, but do they need

21   to be introduced right now?

22        THE COURT:  Yes, they need to be introduced.

23        MR. EARLEY:  So 4 -- did you take them up

24   there with you?

25        DR. KAYSER:  Yes.

**TAGNETICS (19-30822) 10-18-19**

1    MR. EARLEY:  Exhibit 3 and Exhibit 4.

2    DR. KAYSER:  Thank you.

3    THE COURT:  Now, this is kind of the awkward

4  part.  I think we're in Mr. Kayser's case.

5    MR. EARLEY:  Okay.

6    THE COURT:  So if he wants those admitted,

7  he's going to have to --

8    DR. KAYSER:  Your Honor, all of these -- the

9  two documents have been previously sent to the Court in

10  the response, but we would like to enter them into

11  evidence.

12    THE COURT:  Can you provide them to Mr.

13  Kayser so he can identify them for the Court, while

14  he's on the witness stand?

15    DR. KAYSER:  Yes, this is Exhibit 1.  This is

16  --

17    THE COURT:  Hold on.  Slow down.  Slow down.

18  What is Exhibit 1?  Can you tell me --

19    DR. KAYSER:  Exhibit 1 is my original email

20  from July 20th responding to the request for a

21  settlement offer.

22    THE COURT:  Okay, now that I think has been

23  admitted as part of Exhibit A.  Is that right?

24    MR. STERN:  Yes, Exhibit A, yes.

25    THE COURT:  So everybody good with just

**TAGNETICS (19-30822) 10-18-19**

102

1  having it admitted as part of Exhibit A?

2          MR. KRACHT:  Yes.

3          THE COURT:  Exhibit 2 is the modified payment

4  schedule, and that was part of an exhibit that has been

5  already submitted.  I don't recall the exhibit number.

6          THE COURT:  Is that part of Exhibit A or --

7          MR. KRACHT:  I think that was I.

8          THE COURT:  I?

9          MR. EARLEY:  Yes, Exhibit I has that payment

10  schedule in it.

11          THE COURT:  All right.

12          MR. STERN:  Is Exhibit 2, if I'm

13  understanding correctly, it's labeled -- I've got

14  Exhibit 3.  I'm sorry, the email.  I'm getting

15  confused.  Exhibit 2 is the email from Mr. Hager to me

16  on July 26th on his email -- his proposal, with total

17  settlement at 4:35.  I think it was 4:36, on Exhibit I

18  for us.

19          MR. EARLEY:  It is Exhibit I, yes.

20          MR. STERN:  So that one is already admitted,

21  as well.

22          THE COURT:  All right.  We're in agreement

23  that that exhibit has been admitted as Tagnetics'

24  Exhibit I; is that right?

25          MR. EARLEY:  So the next one --

**TAGNETICS (19-30822) 10-18-19**

1    DR. KAYSER:  The next two exhibits haven't

2 been entered.  That's Exhibit 3 and Exhibit 4, and

3 these -- Exhibit 3 is the redline of the draft

4 agreement that was sent to us by Mr. Stern, and Exhibit

5 4 is a clean version of that same contract.

6    THE COURT:  Okay.  And are you seeking

7 admission of those two documents?

8    MR. EARLEY:  Yes.

9    THE COURT:  Mr. Kayser?

10    DR. KAYSER:  Say it again.  I'm sorry, Your

11 Honor.  I'm very hard of hearing.

12    THE COURT:  Are you seeking admission --

13    DR. KAYSER:  Yes.

14    THE COURT:  -- of those two documents?

15    DR. KAYSER:  Please.

16    MR. STERN:  There's no email attached to

17 them, Your Honor, but we're willing to submit to the

18 admission of those exhibits, provided that there's an

19 acknowledgment that those were sent after July 26th.

20 If that's what the understanding is, then we will not

21 object to being admitted.

22    THE COURT:  Are you in agreement those were

23 sent after July 26th?

24    DR. KAYSER:  Oh, absolutely.  These documents

25 were not done until a week before the hearing on the

104

1    motion.

2            THE COURT:  Okay, all right.  Then there's no

3    objections to admission -- those are labeled Exhibits 3

4    and 4?

5            DR. KAYSER:  Correct.

6            THE COURT:  To the admission of the

7    Petitioning Creditors' Exhibits 3 and 4?

8            MR. STERN:  That's fine, as long as they

9    acknowledge when it was sent, we're fine with that,

10   Your Honor.

11           THE COURT:  Okay.  Then Exhibits -- the

12   Petitioning Creditors' Exhibits 3 and 4 are admitted.

13           (Petitioning Creditors' Exhibits 3 and 4

14   received into evidence.)

15           THE COURT:  Is that it in terms of exhibits

16   that you wish to introduce, Mr. Kayser?

17           DR. KAYSER:  Yes.

18           THE COURT:  Okay.  Now, I assume you're done

19   with your direct testimony?

20           DR. KAYSER:  Correct.

21           THE COURT:  All right.  Do you wish to cross-

22   examine Mr. Kayser, Mr. Stern or Mr. Kracht?

23           MR. STERN:  Yes, Your Honor.

24           THE COURT:  You may do so.

25           MR. STERN:  Thank you.

1          CROSS-EXAMINATION OF KENNETH KAYSER

2    BY MR. STERN:

3    Q     Putting up what is referred to as July 20th

4    email, that's Exhibit A.  It's been admitted into

5    evidence.  This is the email you're referring to, Mr.

6    Kayser?

7    A     Yes, and I need you to speak into the

8    microphone.

9    Q     Sure, I'm sorry.  Am I more audible now?

10   A     Yeah, I'm just hard of hearing and I should have

11   gotten a hearing aid before I came to this court.

12   Q     Now, this July 20th email is in a string of

13   emails, correct?

14   A     Is in a what?

15   Q     It's in a string of emails to and from you, Mr.

16   Earley, and Mr. Hager, between me and the three of you?

17   A     There wasn't much of -- you know, I don't recall

18   whether we exchanged by email.  I thought we mostly

19   discussed these terms, and I did send them -- send this

20   letter to them prior to sending it to you, to make sure

21   they agreed with the terms.

22   Q     Now, in my email to the three of you on July

23   23rd, 2019, at 10:46 a.m., do you see in the second to

24   last paragraph, do you agree that I encouraged the

25   three of you to seek your own legal counsel?  Is that

106

1  what it says right where I'm pointing to?

2  A    Sure.

3  Q    Okay.  Then later on --

4  A    I would encourage anyone to seek their own legal

5  counsel.

6  Q    In that same email string, on an email from me

7  to the three of you, on July 24th at 5:56 p.m., which

8  is on Page 3 onto Page 4, I again -- I'm pointing to

9  where it says, "I encourage each of you to seek your

10  own legal advice."  Did I do that again in that email

11  string?

12  A    Absolutely.  I can read when it's on the screen

13  that big.

14  Q    Then again, on July 26th, early that day, the

15  day that we ultimately thought we reached an agreement,

16  I again suggested that you seek legal counsel; is that

17  correct?

18  A    Yes, I do.

19  Q    At any point did you authorize any legal counsel

20  to speak with me to negotiate a settlement?

21  A    Did I at any date what?

22  Q    Authorize any legal counsel to negotiate with me

23  to negotiate a settlement?

24  A    No, I did not.

25  Q    Now, earlier, if I understand your testimony

107

1   correctly, you said the terms of the July 20th, 2019

2   email were required to be included in any settlement

3   agreement that was reached with Tagnetics; is that

4   correct?

5   A       That's correct.

6   Q       Can you show me where that was communicated to

7   me at any point during the settlement negotiations?

8   A       I cannot and I also cannot show you any email

9   where they were discussed, and we were always

10  negotiating from that document, the original document.

11  Q       Can you explain where in the email string or

12  show me, I'm sorry, where in that email string that was

13  explained to me, that those terms of the July 20th

14  email were non-negotiable?

15  A       If you look back at the July 20th one, look at

16  the wording above there, the agreement -- the

17  settlement agreement must include.  We never rescinded

18  that declarative statement.

19  Q       So can you show me where it says that -- this is

20  also your final offer, it says in there too, correct?

21  Is that what it says?

22  A       The only thing Ron Earley was negotiating with

23  you was a payment schedule, because that's the only

24  thing you asked him to negotiate.

25  Q       Can you show me where I asked to negotiate only

108

1 payment terms?

2 A    That's reflected by your letter, where you have

3 several hundred words discussing the payment schedule

4 and the dire straits, which Tagnetics is in, so they

5 can't come up with paying their contracts, and there's

6 virtually -- I can't read it.  Would you focus that

7 document if you want me to tell you what it says?

8 Q    Oh, sorry.

9          THE CLERK:  I'm not sure that it can focus

10 any more.

11          MR. STERN:  Your Honor, if I may, to move

12 this along, could I refer to the exhibit binder, hand

13 that to the witness?

14          THE COURT:  That's fine, yeah.  That's fine.

15          MR. STERN:  May I approach the witness, Your

16 Honor?

17          DR. KAYSER:  I've got it.

18          THE COURT:  Yes, you may.

19          DR. KAYSER:  Which exhibit are you asking me

20 to --

21 BY MR. STERN:

22 Q    So now, referring to Exhibit A, and if you could

23 refer to Page 5 of that exhibit, in the second

24 paragraph, am I referring to any non-monetary terms,

25 such as a default judgment?

109

1   A      One again, you'll have to speak more clearly for
2   me to understand.
3   Q      In the second paragraph of that email on July
4   23rd, on Page 5, am I referring to a non-monetary term,
5   referred to as a default judgment?
6   A      Do I have a comment on that?
7   Q      Is there a non-monetary term referenced in
8   there, referred to as a default judgment?
9   A      I'll read it.  "We can also include a default
10  judgment provision if provision is intended to
11  demonstrate in part that Tagnetics is serious about a
12  resolution and is not trying to jerk you around as
13  incorrectly you suspect it is."
14  Q      Okay.  So --
15  A      That hardly sounds like clear language to me.
16  Q      Okay.
17  A      And you'll forget -- don't forget, I've been on
18  the Board of this company for years, and they have
19  failed to live up to the terms of the agreement, of our
20  employment agreement.
21          MR. STERN:  Object, Your Honor, to the non-
22  responsive and strike his testimony.
23          THE COURT:  Stop.  If there's an objection,
24  you need to stop.
25          DR. KAYSER:  I'm sorry.

**TAGNETICS (19-30822) 10-18-19**

110

1    THE COURT:  I think Mr. Stern is objecting,

2  because that's not responsive to his question.  So Mr.

3  Stern, if you want to ask your question again.

4    MR. STERN:  Sure.

5  BY MR. STERN:

6  Q    My question was whether or not there's any

7  reference in that paragraph to non-monetary term

8  referred to as a default judgment; is that yes or no?

9  A    Not that I'm aware of.

10  Q    Are you familiar with the term default judgment?

11  A    I am not.  I'm not an attorney.

12  Q    Is there a phrase in Paragraph 2 on that July

13  23rd, 2019 email that says "default judgment?"

14  A    Am I familiar with what that term -- you'll have

15  to ask the question in a clearer way for me.

16  Q    Is there a phrase in Paragraph 2 on that email

17  referring to a default judgment?

18  A    It says, "You can also include a default

19  judgment."

20  Q    Now, in terms of non-monetary terms, the

21  ultimate agreement that was reflected in an email or a

22  purported agreement, since you're contesting it, on

23  July 26, 2019, there are non-monetary terms in that

24  email, aren't there?  That's on Page 1 of the exhibit.

25  A    You'll have to restate the question again.

**TAGNETICS (19-30822) 10-18-19**

111

1　Which paragraph do you want me to look at?

2　Q　I'm looking at the email from me to you, Mr.

3　Earley and Mr. Hager, on July 26, 2019, at 3:27 p.m.,

4　which is on the first page of Exhibit A.  Do you see

5　that?

6　A　At 3:17 p.m.?

7　Q　3:27 p.m.

8　A　Which page is that?

9　Q　Page 1.  Actually, I'll come back to that in a

10　moment.  Why don't we turn to the email from Mr. Earley

11　to me on July 24, 2019, at 7:43 p.m.  It's on Page 3 of

12　Exhibit A.  See Mr. Earley's email, "Stephen, no

13　chance, look forward to meeting you on Monday."  Do you

14　see that?

15　A　Yes.

16　Q　And then my response to that, the email above

17　that, where it says, "It seems silly and, quite frankly

18　odd, to simply cut off negotiations."  Is my

19　characterization that Mr. Earley had cut off

20　negotiations an accurate description of where we were

21　at that point in time in our discussions?

22　A　You made an insulting offer to settle a $500,000

23　claim for $5,000, didn't seem appropriate to us.

24　Q　Is it an accurate description of the status of

25　the negotiations at that point in time that settlement

112

1  negotiations had been cut off?

2  A     Yes.

3  Q     Thank you.  So then negotiations picked up again

4  in earnest on the 26th, and ultimately there's an email

5  from me to you, Mr. Earley, Mr. Hager, on July 26th at

6  3:27 p.m., that includes monetary and non-monetary

7  terms, doesn't it?

8  A     It uses the word that's meant to be deceptive

9  and misleading, of carve-out.

10 Q     We'll get to that in a moment.

11 A     We were under the impression --

12 Q     I asked -- my question was, Mr. Kayser --

13 A     Okay.  My answer is --

14 Q     -- does that include monetary and non-monetary

15 terms?

16 A     The only non-monetary thing I see in there is a

17 full mutual release, no carve-outs.  And I thought that

18 was a very poor legal description of what we were

19 trying to agree on, and I believe it to this day.  And

20 if you would prefer I have a lawyer say that's a lousy

21 way to describe something you're attempting to clarify,

22 great.

23 Q     Are you familiar with the concept of what a full

24 mutual release is?

25 A     The terms we had agreed to --

113

1   Q     Are you familiar with the concept of what a full

2   mutual release is?

3   A     Did we agree to a full mutual release?  We

4   agreed to a release as defined by the terms of July

5   20th.

6   Q     Are you familiar with the term full mutual

7   release means?

8   A     It doesn't release you from fraud.  It doesn't

9   release you from many things.  And, no, I don't know

10  exactly what a full mutual release is, and we do not

11  agree with that language.

12  Q     So then when Mr. Earley responded to that email

13  on July 26 at 3:56 p.m., it says, "Mr. Earley is

14  discussing this --" I'm sorry, Mr. Hager.  "Mr. Earley

15  is discussing this with the Court at the moment.  I'm

16  responding for Kayser, Earley and Hager, saying we

17  agree to the terms put forth as documented above."  Was

18  Mr. Hager not speaking for you at that point in time?

19  A     He did and, frankly, I was a little critical of

20  his response, but --

21  Q     Did you reply to that email?

22  A     No, I did not.

23  Q     Advising me that he was not authorized to speak

24  for you?

25  A     Mr. Stern, I never saw this email until 5:30

114

1    that evening.

2    Q    Did you --

3    A    When I saw it.

4    Q    -- respond to me at 5:30 that evening saying

5    that Mr. Hager was not authorized to speak on your

6    behalf in response to the terms that I put out?

7    A    I discussed this with Mr. Hager and I discussed

8    it with Mr. Earley.  And Mr. Hager assured me that his

9    understanding was he had not agreed to taking the

10   provisions that outlined of the July 20th out.  And I -

11   - we sat down and we had a discussion.  And, frankly, I

12   viewed it as quite misleading and very poor language.

13   I expect the lawyers in this situation to clarify

14   things, not confuse them, and not attempt -- because we

15   weren't lawyers --

16           MR. STERN:  Your Honor, this is again, not

17   responsive.  I asked if this was communicated to me.

18           DR. KAYSER:  Excuse me, Your Honor.

19           THE COURT:  Sustained.  Ask your question

20   again.

21   BY MR. STERN:

22   Q    Did you communicate to me at any point on July

23   26th that Mr. Hager was not authorized to speak on your

24   behalf with respect to the terms of the July 26th email

25   at 3:27 p.m.?

**TAGNETICS (19-30822) 10-18-19**

115

1  A      I did not.  Mr. Hager was --

2  Q      Did Mr. Hager at any point communicate to me on

3  July 26th, 2019, after my 3:27 p.m. email, that that

4  email did not accurately reflect the terms of the

5  agreement?

6  A      Repeat your question.

7  Q      Did Mr. Hager communicate to me --

8  A      I wouldn't know.  You'll have to ask Mr. Hager.

9  Q      In the emails that you saw, did Mr. Hager

10  communicate to me that the email that I wrote at 3:27

11  p.m. did not accurately reflect the terms of our

12  agreement?

13  A      There was no email after -- until Tuesday, when

14  we hadn't heard from you.

15  Q      All right.  Now, going back to your

16  understanding of what the term "full mutual releases"

17  means.  Do you understand, based on the terms of the

18  agreement you thought we had reached --

19  A      Full mutual releases -- if you're asking me a

20  question --

21  Q      I haven't finished asking the question yet.  Did

22  you understand the term full "mutual releases, no

23  carve-outs," to mean that you could sue a Tagnetics

24  parent company?

25  A      We assumed -- Tagnetics has no parent company.

116

1   Q    Did you -- you, yourself, mentioned earlier,

2  that you had resigned from the Board.  You don't know

3  all the current financial status of Tagnetics,

4  according to your own statements.  So did you

5  understand that you had the right to sue a parent

6  company of Tagnetics, based on the agreement, "full

7  mutual releases, no carve-outs?"

8  A    If you'll repeat your question again, please.

9  Q    Did you have the understanding when you saw the

10  email "full mutual releases, no carve-outs," that you

11  could sue a parent company of Tagnetics?

12  A    I never considered the topic, because as of the

13  date when we filed the petition, there was no parent

14  company.

15  Q    Did you have the understanding --

16  A    And you have not provided any evidence to the

17  contrary.

18  Q    Did you have the understanding that you could

19  sue a subsidiary of Tagnetics based on the provision

20  "full mutual releases, no carve-outs?"

21  A    I would assume that a mutual release would

22  include whatever was negotiated during -- obviously

23  when you're in the middle of a negotiation process,

24  you're not negotiating those minute terms.  Normally,

25  you --

117

1   Q      Did you have an understanding --

2   A      -- negotiate the key terms.

3   Q      -- of what the full mutual releases, no carve-

4   outs means to include a release or the opportunity to

5   sue a subsidiary of Tagnetics?

6   A      I wouldn't -- wouldn't have an opinion without

7   consulting an attorney.

8   Q      Did you have the understanding that the term

9   "full mutual releases, no carve-outs" allowed you the

10  opportunity to sue an affiliate of Tagnetics?

11  A      The same answer applies.

12  Q      Did you have the understanding that the term

13  "full mutual releases with no carve-outs" gave you the

14  opportunity to sue an officer of Tagnetics?

15  A      You continue to ask me questions, which I

16  wouldn't answer without consulting an attorney.  We

17  were not negotiating legal terms.  We are negotiating

18  the overall structure of a settlement.

19  Q      Mr. Kayser --

20  A      It's Dr. Kayser, if you don't mind.

21  Q      Did Mr. Hager at 3:58 p.m. on July 26th copy my

22  email and include you on the email, that included the

23  phrase "full mutual releases, no carve-outs?"

24  A      He did copy me on that email and his explanation

25  to me, he was just -- you'll have to ask him.  He had

118

1    an explanation.  I expected a document to be

2    transmitted to us, while -- I wasn't involved in this

3    negotiation with you.  I expected a document to be

4    transmitted to us, which was clear and concise.

5    Q     When you say a document that was clear and

6    concise, are you referring to the settlement agreement

7    that's Exhibit B?

8    A     You're not speaking clearly enough for me to

9    comprehend.

10   Q     Are you -- when you're saying a clear and

11   concise document, are you referring to Exhibit B?

12   A     Exhibit B?  You did promise us a rough draft of

13   this agreement by Monday.  Am I expecting that?  No, I

14   was expecting --

15         MR. STERN:  Objection, Your Honor, as non-

16   responsive.  I asked if the document he was referring

17   to was a clear and concise agreement, if that's Exhibit

18   B.  Nothing about timing is at issue here.

19         DR. KAYSER:  Are you speaking to me or is it

20   the Judge?  I don't understand.

21         MR. STERN:  I made an objection.

22         THE COURT:  I don't ask questions unless I

23   specifically ask a question.

24         DR. KAYSER:  He's looking at you.

25         THE COURT:  Mr. Stern is asking you a

119

1   question and, Mr. Stern, you can correct me if I

2   paraphrased you incorrectly.  I believe Mr. Stern is

3   trying to ask you is do you believe that Exhibit B is a

4   clear and concise document.  Is that correct, Mr.

5   Stern?

6           MR. STERN:  Thank you, Your Honor.

7           DR. KAYSER:  Is that a clear and concise

8   document?  Yes.

9   BY MR. STERN:

10  Q    Thank you.  Now, did you have an understanding

11  at the time on July 26, 2019, that Compass Marketing,

12  Inc. owned at least some shares of Tagnetics, Inc.?

13  A    I don't have -- don't have access anymore, and I

14  didn't look --

15  Q    That's not my question, sir.  Did you have an

16  understanding as of July 26th --

17  A    That Compass Marketing -- very few, at most,

18  yes.

19  Q    You didn't know how many shares, but you knew

20  that Compass Marketing owned some shares of Tagnetics,

21  Inc., correct?

22  A    Did I know that?  No, I did not.

23  Q    So you assumed it?

24  A    It was never discussed in a Board meeting.

25  Q    I'll ask my question again, sir.  As of July 26,

**TAGNETICS (19-30822) 10-18-19**

120

1  2019, was it your understanding that Compass Marketing,

2  Inc. owned at least some shares of Tagnetics, Inc.?

3  A     I answered that.

4  Q     Yes or no?

5  A     No.  It was not my understanding that Compass

6  Marketing had shares of stock.

7  Q     Okay.  Can you turn to Exhibit H?  The last

8  page.  Is that your signature under Kayser Ventures,

9  Inc., or I'm sorry, Kayser Ventures, LTD?

10 A     Yes, of course.

11 Q     And that agreement you signed, that's the

12 earlier settlement agreement in this case involving the

13 entity that you owned, which is Kayser Ventures, LTD,

14 correct?

15 A     That settlement --

16 Q     Is that correct?

17 A     I can't be sure unless I can understand you

18 clearly, so please try to enunciate.

19 Q     Is this the settlement agreement that you

20 signed, while it's redacted, is that your signature to

21 show the settlement agreement you signed on behalf of

22 Kayser Ventures, LTD, with Tagnetics, Inc.?

23 A     I don't understand the nuance of what you're

24 asking me.  Yes, I signed the settlement agreement.

25 Q     Is that your signature on the last page of

121

1    Exhibit H?

2    A      Yes.  I already testified to that.

3    Q      Okay.  Now, in that settlement agreement there

4    is a release by Kayser Ventures, LTD, correct?  It's on

5    Section 5.

6    A      I relied on the advice of my counsel, yes.

7    Q      And at that time that release included a release

8    of all Tagnetics' parent companies, corporate and

9    operating affiliates, subsidiaries and related

10   entities, including specifically Compass Marketing,

11   Inc., correct?

12   A      Yes.  However --

13   Q      Yes?

14   A      Can I respond?

15   Q      My question was does it include the release of

16   Compass Marketing, Inc., with that language that I just

17   read back?

18   A      Including, yes.  I see where it says, "including

19   specifically Compass Marketing."

20   Q      And you signed that agreement?

21   A      I did.

22   Q      Thank you.  You didn't object to the settlement

23   that released Compass Marketing, Inc., as a corporate

24   or operating affiliate or subsidiary --

25   A      My lawyer told me it was not a significant

1    issue.

2    Q       Okay.

3    A       And I had no -- Kayser Ventures had no dealings

4    with Kayser Ventures and Kayser Ventures was making no

5    claims against --

6    Q       Did you have the understanding that you could

7    sue -- on July 26, that you wanted the opportunity to

8    sue one of Tagnetics' officers or directors, if you

9    needed to?  That's a bad question.  I'll withdraw it.

10   Let me rephrase.

11           On July 26, 2019, when you saw the phrase "full

12   mutual releases, no carve-outs," was it your

13   understanding that you could sue an officer or director

14   of Tagnetics, Inc.?

15   A       On Kayser Ventures' behalf?

16   Q       No, on July 26, going back to the agreement in

17   your individual capacity?

18   A       Which agreement?  Which exhibit?

19   Q       Exhibit A.

20   A       Now repeat your question.

21   Q       Was it your understanding when you saw the

22   phrase "full mutual releases, no carve-outs," that you

23   had the right to still sue an officer or director of

24   Tagnetics, Inc.?

25   A       If we did a settlement, you're talking about?

123

1    Q     Yes.

2    A     No.

3    Q     Okay. Now, earlier you testified that you were

4    the founder of the predecessor company of Tagnetics.

5    Is that DET?

6    A     It's what the name became. We had some other

7    name prior to that, before Hobart bought it, but it was

8    DET while it was at Hobart.

9    Q     And then you testified that it was reorganized,

10   meaning it was put into bankruptcy?

11   A     What was put into bankruptcy?

12   Q     Did you put the predecessor company into

13   bankruptcy? You said the phrase "reorganized" during

14   your testimony earlier.

15   A     It was not necessary.

16   Q     Did you put it into bankruptcy?

17   A     No.

18   Q     What did you mean when you used the phrase

19   "reorganized" during your testimony?

20   A     It was -- you'll have to ask Ron Earley to

21   testify about that. I don't really know the

22   particulars of that, and I don't know exactly how it

23   was done.

24   Q     Prior to this proceeding today, did you

25   communicate with shareholders of Tagnetics, Inc. about

1   this proceeding?

2   A     Have I communicated with shareholders?

3   Q     Yes.

4   A     Not outside of people involved in the company,

5   or in this hearing, I mean.

6   Q     Outside of Mr. Hager and Mr. Earley, did you

7   communicate with any other shareholders of Tagnetics?

8   A     Ms. Goldsmith may be a shareholder. I don't

9   know.

10   Q     Okay. Did you communicate with Dan White at any

11   point about this proceeding?

12   A     No.

13   Q     No, you did not?

14   A     Since when?

15   Q     Prior to the filing of the petition for

16   bankruptcy?

17   A     Oh, I did, and -- because Dan White sent me an

18   email out of the blue. I didn't even have his email

19   address until he sent me an email.

20   Q     And that email from Dan White out of the blue

21   was in early 2019. January sound correct?

22   A     I don't have it in front of me, but it could

23   have been in January certainly.

24   Q     If I were to show you something to refresh your

25   recollection, would that help, such as the email that

**TAGNETICS (19-30822) 10-18-19**

125

1   you produced in discovery in this case?

2            MR. STERN:  Your Honor, may I approach?

3            THE COURT:  Yes, you may.

4   BY MR. STERN:

5   Q    Does this email that I showed you refresh --

6   A    This was in February, not January.

7   Q    I'm looking at an email dated Saturday, January

8   26, 2019, at 11:33 p.m., from Daniel White.  It says,

9   "Ken, I hope this email finds you doing well, as well

10  as you can."

11  A    Okay.

12  Q    Is that the email you're referring to that came

13  out of the blue?

14  A    I don't see any email here on January 19th.

15  Q    I said January 26, 2019.

16  A    January 26th?  Yes.

17  Q    Is that the email you're referring to?

18  A    Excuse me a second.  Would you hand me my

19  reading glasses?  Oh, I've got them in my pocket,

20  excuse me.  Yeah.

21  Q    Is that correct?

22  A    It's an email, says it's on January 19th.  Or

23  no, 26th.

24  Q    Is this the email you're referring to that you

25  got out of the blue from Mr. Daniel White?

**TAGNETICS (19-30822) 10-18-19**

126

1  A     Repeat your question.

2  Q     Is this the email you were referring to that you

3  got out of the blue from Mr. Daniel White?

4  A     Yes, there's an email from Daniel White, January

5  26.

6  Q     And then the email above that on February 19th,

7  does he encourage you to communicate with him in his

8  personal email account at danieljwhite@msn.com?

9  A     I'm sorry, Mr. Stern, I'm having trouble

10 understanding you.  I don't mean to be --

11 Q     At the top of the email --

12 A     Yes.

13 Q     -- there's an email from Mr. White to you, dated

14 February 19th, 2019, at 3:03 p.m.  Do you see that in

15 the upper right-hand corner?

16 A     February 19th, yes.

17 Q     And the first line of the email, at the very far

18 right, Mr. White says to you, Dr. Kayser, in his

19 opening sentence, and at the end of that first line

20 says, "Please use danieljwhite@msn.com; is that

21 correct?

22 A     Yes.

23 Q     Did you communicate with Mr. White on more than

24 one occasion after that email in January?

25 A     I wouldn't be certain without looking at my

127

1   records.  We made a couple of attempts to get together.

2   Dan White had been a long time acquaintance of mine,

3   but we never did get together.

4   Q      Did Mr. Daniel White encourage you to file this

5   bankruptcy proceeding against Tagnetics?

6   A      My only recollection -- did he encourage me to

7   do this?  No, absolutely not.

8   Q      Did he say that it was something that he thought

9   needed to be done?

10  A      He did not.  He sent me one email saying you did

11  the right thing, but I don't remember the exact date on

12  which that was.

13          MR. STERN:  Your Honor, may I approach?

14          THE COURT:  Yes, you may.

15  BY MR. STERN:

16  Q      Do you recognize this email string that I just

17  handed to you?  The top one is from you to Mr. White,

18  on March 22nd, 2019, at 5:18 p.m.  And it says, "Hi,

19  Dan, let me know when.  I would like to get together.

20  Ken."  Underneath that there's an email from Mr. White

21  at his msn.com email account, to you.  "Good afternoon,

22  Dr. Kayser."  It's dated March 22nd, 2019, at 1:25 p.m.

23  It says, "I noticed your bankruptcy filing online and

24  did share it with my brother, Mike."  FWIW, I think.

25  It says, "It is certainly understandable from my

128

1   perspective and a necessary action."

2   A      Yes.

3   Q      Did you discuss the bankruptcy filing with

4   Daniel White prior to you filing?

5   A      No.

6   Q      Why did -- do you know why he knew to look it up

7   to see if it was filed?

8   A      He's an attorney and he is breaking off with his

9   brother and there's all sorts of legal action being

10  taken, and he probably follows all of it.  I don't

11  know.  You'll have to ask him.

12  Q      Okay.

13          MR. STERN:  Your Honor, if I may have one

14  second?

15          THE COURT:  Yes, you may.

16          MR. STERN:  Your Honor, I have no further

17  questions.

18          THE COURT:  Thank you, Mr. Stern.

19          DR. KAYSER:  Am I done, Your Honor?

20          THE COURT:  Do you wish to present any

21  redirect examination of yourself, based upon Mr.

22  Stern's cross-examination?

23          DR. KAYSER:  Not particularly, no.

24          THE COURT:  All right.  Then you may be

25  excused from the witness box.

129

1          THE CLERK:  Dr. Kayser, you can hang on to

2   those when you're over here, if it helps you hear.

3          DR. KAYSER:  All right, thank you.

4          THE COURT:  Mr. Kayser, do you wish to call

5   any other witnesses in your case?

6          DR. KAYSER:  One moment, Your Honor.  Yeah,

7   I'd like to call Ron Earley, please, Your Honor.

8          THE COURT:  You may do so.

9          THE CLERK:  I just want to remind you, you're

10  still under oath, sir.

11         MR. EARLEY:  I acknowledge that.

12         DIRECT EXAMINATION OF RONALD EARLEY

13  BY DR. KAYSER:

14  Q    Mr. Earley --

15  A    Can you ask me questions?  I'm not sure you can

16  ask me questions.

17         THE COURT:  Yeah, he can ask you questions in

18  his case.

19         MR. EARLEY:  Okay.

20  BY DR. KAYSER:

21  Q    Were you a participant in the drafting of the

22  original agreement sent by me on July 20th?

23  A    Yes, I was.

24  Q    Were you approached by Mr. Stern with an offer

25  of settlement, or negotiating settlement?  After July

1  20th -- let me restate the question.

2  A    All right.

3  Q    After July 20th were you negotiating terms for

4  restructuring of the timetable for the payments?

5  A    Yes, I was.

6  Q    Did you discuss what the boundaries of what you

7  were negotiating with both Jon Hager and I?

8  A    Yes, I did.

9  Q    Did those boundaries include any renegotiation

10  of the terms described in the July 20th letter, other

11  than the financial part of it?

12  A    No.  We were addressing what seemed to be the

13  concerns of Tagnetics, as they initially told us that

14  our -- that your letter that you sent on the 20th was

15  out of bounds, and they could not even get close to the

16  cash for that.  Then they sort of -- we were encouraged

17  to come back with a counteroffer, and obviously we were

18  focused on the cash, because that's the area that they

19  were also most focused on.

20  Q    Did you at any time believe that the terms and

21  conditions from the July 20th letter, other than the

22  financial, were ever being discussed?

23  A    No.

24        DR. KAYSER:  Your Honor, I have no other

25  questions.

131

1    THE COURT:  Thank you, Mr. Kayser.  Any
2  cross-examination for Mr. Earley?
3    MR. STERN:  Your Honor, if I may, just to
4  streamline this, maybe just wait until -- I assume Mr.
5  Earley is going to testify himself.  If there's going
6  to be more testimony later on, rather than do his
7  piecemeal, do it all at once.
8    THE COURT:  That's fine.  Mr. Earley, do you
9  intend on testifying in your own case?
10    MR. EARLEY:  I absolutely do.
11    THE COURT:  All right.
12    MR. STERN:  Then I'll just reserve until
13  then.
14    THE COURT:  He will reserve all his questions
15  for you at that time.
16    MR. EARLEY:  Perfect.
17    THE COURT:  The Court accepts that and
18  agrees.  Mr. Kayser, do you wish to call any other
19  witnesses in your case?
20    DR. KAYSER:  I don't think that's necessary,
21  Your Honor.
22    THE COURT:  Okay.  Thank you.  Any other
23  evidence then, Mr. Kayser, that you wish to introduce
24  in your case?
25    DR. KAYSER:  No.

1     THE COURT:  We've admitted Exhibits 3 and 4,
2  I believe it was.
3     DR. KAYSER:  Yes.
4     THE COURT:  Okay.  All right.  Then Mr.
5  Kayser, you rest your case?
6     DR. KAYSER:  I do.
7     THE COURT:  Okay, thank you.  Mr. Earley or
8  Mr. Hager, one of you want to proceed with your case?
9     MR. EARLEY:  Yes.
10     DIRECT TESTIMONY OF RONALD EARLEY
11     MR. EARLEY:  So now that you've met Mr.
12  Kayser, you can understand that he has a low
13  frustration rate.  So once we got through the letter of
14  the 20th, and this is all in Exhibit A, we got through
15  the letter from Mr. Kayser to Mr. Stern on the 20th,
16  and then Mr. Stern's response to Mr. Kayser on the
17  23rd.  Mr. Hager and Mr. Kayser and I had several phone
18  conversations and discussions, and we decided that I
19  would make an attempt to put together a payment
20  structure that Tagnetics might be able to agree to.
21     So on July 23rd at 1:33 I sent Mr. Stern an
22  email outlining a payment structure that would spread
23  out the payments.  It would not change the final
24  amount, but would spread out the payments over a two-
25  year period and, in fact, put some of the total payment

133

1  into an undetermined category, to be paid if and when
2  there was a liquidity event.

3      So we felt like this was a significant move
4  towards their trying to reach a settlement, because we
5  had gone from demanding, as you know, $186,000 for me,
6  151,000 for Mr. Kayser, 148,000 for Mr. Hager. We went
7  to a settlement agreement would pay each of us $50,000
8  in the initial payment. There would be two sub-
9  payments of $25,000, spread across six months, and then
10  there would be a -- the remainder would be paid out, if
11  and when the company had a liquidity event.

12      Mr. Stern -- and at this point I'm focused on
13  the cash, because he has told us, both in his emails
14  and in phone conversations we've had, that the company
15  just can't afford this. He was sort of making our case
16  for us, as we look back to the bankruptcy filing.

17      And so we were trying to figure out a way,
18  because Jon and I actually preferred the settlement.
19  Mr. Kayser, on the other hand, we had to drag him to
20  that situation. Mr. Stern came back to me in the
21  afternoon, later in the afternoon, and he thanked me
22  for putting together a structure that was closer in
23  line with what the company could pay, but basically
24  said there's no way we can make the initial payments.
25  And he suggested in his email of July 24th at 5:57 in

**TAGNETICS (19-30822) 10-18-19**

134

1   the -- it says, and I'm reading, "Initial payment of
2   $5,000, not $50,000, to each of you, within five
3   calendar days of you dismissing your claim."  And, of
4   course, when I saw that and after I had a moment -- not
5   very -- a while to discuss that with Jon and Ken, you
6   know, we said, you know, this is crazy.  They just paid
7   $90,000 to settle the claim with the other defendants,
8   and here they're asking us to take $5,000, and there's
9   no guarantee that we're going to get any additional
10  money.

11          And so that's what prompted me to write back
12  and say no chance.  Now, no chance to me means no
13  chance we'll accept your offer, or your counteroffer.
14  No chance doesn't mean that we're terminating the
15  negotiations.  It's just that you're so far down that
16  we can't really -- we're not even going to consider
17  that.

18          And then he came back to me, and as the week
19  goes along seems like he's more willing to talk to us.
20  He says he thinks it's silly that we've cut off
21  negotiations.  Well, we haven't cut off negotiations.
22  We were just responding to his weak offer, and we were
23  saying look, this doesn't seem like you're really
24  serious about settling this with us.
25          So after we received that email, I went back

135

1  and had conversations with Mr. Kayser and Mr. Hager,

2  and we talked about what would be best for us, and what

3  we would be willing to do, and we proposed a second

4  payment schedule.  And that payment schedule was,

5  instead of $50,000 up front, we said well, you paid

6  KBL, you paid Bob Strain, and you paid S-Tek a total of

7  $90,000.  Seems like it's reasonable that if you'll pay

8  us $90,000, as the initial payment, 30,000 apiece, then

9  we're willing to reduce our payments or spread out our

10  payments, and I proposed that to Mr. Stern.

11        We had a phone conversation after I proposed

12  that, and he said I'm willing to take this back to

13  management of Tagnetics, but is there any way you can

14  give me something?  I mean, that was pretty much we're

15  negotiating.  He said give me something.  So I said,

16  look, I think, you know, we would be willing to push

17  out the second and third payments an extra six months.

18        So instead of paying the second payment in

19  six months and the third payment in 12 months, I'll go

20  back and sell the idea that we'll give you one year to

21  make the second payment, and we'll give you -- and the

22  third payment will be an additional six months, to 18

23  months, and oh, by the way, we still will allow the

24  balances of what we would like paid to be put in a

25  bucket and we'll only get that money if the company is

136

1  liquidated or has a liquidity event.

2  　　　　And at that point it seemed like we were
3  really close. And, of course, as you know, it was
4  Friday and the closer we got to Friday afternoon and
5  the Court closing, and facing the fact that we were all
6  going to have to be in here on Monday morning, Mr.
7  Stern -- we all three had a conference call. We talked
8  about this -- we talked about -- why does that do that
9  to me? Come on, Ron.

10  　　　　The timing was right, the money was right,
11  and we talked about notifying the Court, but also --

12  　　　　MR. HAGER: Mutual release.

13  　　　　MR. EARLEY: Mutual release, right, and there
14  was discussion about that. And so -- oh, and Mr. Stern
15  -- we asked for a full mutual release. Mr. Stern
16  advised us that he didn't think his client would do
17  that and, in fact, he said to us very clearly, I would
18  advise against that. I wouldn't even advise them to
19  give you a clear full release. And we said well, you
20  know, we're right down to the wire here. We want that
21  release, and let us know what they say.

22  　　　　So he took it back to them. He called -- he
23  called -- must have been me back, and let me know that
24  they would accept that, and then I got ahold of Jon.
25  At the same time I was on my way here to the court to

1  file what we believed was going to be a settlement

2  agreement.  And so he couldn't -- I wasn't in front of

3  my computer.  There were some things going on.  I

4  wasn't able to stay completely in touch with him.  My

5  wife won't let me drive and text at the same time.  I

6  don't know why she won't let me do that.  But so I was

7  restricted in what I was able to do, but I was here.

8  Jon was on his computer.  Ken was out -- out of pocket.

9  And we notified the Court we had a settlement.

10         At that moment, I believed that what we had

11  reached was an agreement that included the preliminary

12  information we put in, the July 20th, as well as the

13  cash settlement, which we had worked so hard to

14  negotiate, and I expected that we would be able to wrap

15  that up within a week or two.  And I felt like that --

16  that we had -- we had all agreed that we wouldn't -- we

17  wouldn't allow the trial to be canceled, unless we all

18  three felt like we had a settlement we could live with.

19  And we all agreed we had a settlement we could live

20  with, and we were disappointed when we got the

21  settlement agreement, because to us it seemed like it

22  was -- there were -- that we lived in two worlds.

23         So that's all I have.

24         THE COURT:  Okay.  Are there any exhibits,

25  Mr. Earley, which you wish to introduce, other than

138

1   what's already been introduced and admitted?

2           MR. EARLEY:  No, sir.  Everything I talked

3   about has been admitted.

4           THE COURT:  Okay, thank you.  Mr. Stern, it

5   appears you may want to cross-examine Mr. Earley?

6           MR. STERN:  Yes, a few questions, Your Honor.

7           CROSS-EXAMINATION OF RONALD EARLEY

8   BY MR. STERN:

9   Q    Mr. Earley —

10          MR. STERN:  By the way, before I forget, Mr.

11  Kayser, where is the binder that I handed to you?  Is

12  that still up on the witness stand?

13          DR. KAYSER:  Where did I find what?

14  BY MR. STERN:

15  Q    Mr. Earley, do you have the exhibits in front of

16  you?

17  A    No, I don't.

18  Q    How about I just hand you this?

19  A    That would be perfect, yeah.

20          THE COURT:  You may do so.

21          MR. EARLEY:  Absolutely, that would be

22  wonderful.

23  BY MR. STERN:

24  Q    All right.  Mr. Earley, can you turn to Exhibit

25  A on Page 3?  You're describing the email at one point

139

1   during your testimony on -- you were describing the
2   email on July 24th at one point during your testimony,
3   where you said, "No chance," and --
4   A     Yes, sir.
5   Q     And if I remember, if I describe your testimony
6   correctly, you said, in your mind, you were not cutting
7   off negotiations at that point.  That's an inaccurate -
8   - so my email above, where I said, "to simply cut off
9   negotiations," you're saying is an inaccurate response?
10  I misinterpreted your email; is that correct?
11  A     Yes.
12  Q     All right.  But when you said "No chance," the
13  very next line in your email, July 24th, said, "Look
14  forward to meeting you on Monday."
15  A     Yes.
16  Q     Meaning see you in court?
17  A     Yes, because I didn't believe there was enough
18  time for us to get to a settlement.
19  Q     So you thought settlement negotiations were done
20  at that point in time, correct?
21  A     No, not particularly cut off, just didn't think
22  the timing was right.
23  Q     So you thought there was no way we could get a
24  deal done --
25  A     Right.

140

1    Q      -- before the trial?

2    A      I didn't think so.

3    Q      Okay.

4    A      But that doesn't mean that we weren't willing to

5    try and we weren't trying to keep the ball moving

6    forward.

7    Q      Did you offer a counter proposal in your email

8    of July 24th to me, where you said, "No chance, see you

9    on Monday?"

10   A      Absolutely.

11   Q      Where is the counteroffer on your July 24th

12   email?

13   A      No, on the July 24th email, I offered no counter

14   proposal.

15   Q      Okay.

16   A      But we were -- but we responded to your 25th

17   email quickly with a counter proposal, focused fully on

18   how much cash Tagnetics could afford to hand us.

19   Q      You're referring to your email to me on July

20   25th, 2019 at 1:25 p.m.?

21   A      Absolutely.  There's nothing here that indicates

22   that something is brand new.  This is a continuation of

23   what we were doing.

24   Q      In your email on July 25th, 2019 at 1:25 p.m. --

25   A      Mm-hmm.

141

1   Q     -- does your email -- does that email refer to
2   the email of July 20th, 2019, that Mr. Kayser had sent?
3   A     No, sir.  No.
4   Q     Okay.  Did you -- does that email of July 25th,
5   2019, at 1:25 p.m., from you to me, does that reference
6   any of the prior terms that were discussed in Mr.
7   Kayser's July 20th email?
8   A     No, sir.
9   Q     Does it reference any non-monetary terms in that
10  email at that point in time?
11  A     No, sir, and the reason is is because that was
12  our focus.
13  Q     Okay.
14  A     I was given --
15  Q     I was just asking whether or not you mentioned
16  that.  Now, earlier you testified that you and I were
17  discussing the concept of full mutual releases,
18  correct?
19  A     Yes.
20  Q     And you had said that it was something important
21  to you, that you asked for the full mutual releases,
22  correct?
23  A     So we -- so surrounding our employment
24  agreements, which this whole case is about, we were --
25  we were -- it was important to us that there be a

142

1  release from our -- from anything inside that contract

2  that bound us.

3  Q    If I remember correctly, during your testimony

4  you had said you had brought up the concept during our

5  discussions on July 26th about full mutual releases.

6  A    Well, I had brought up the concept of a release.

7  I'm not sure full mutual releases is what I did, but I

8  may have said that.

9  Q    That's --

10  A    But I'm not sure.  So if I did, it might have

11  been the first or second time I've ever used that term

12  in my life, so --

13  Q    Okay.

14  A    -- for me to have told you, we're really

15  concerned about full mutual release would have been

16  completely out of my engineering, what I do for a

17  living.

18  Q    But that is something that we discussed?

19  A    We did discuss the release, there's no question.

20  Q    And you agree that mutual releases are non-

21  monetary terms, correct?

22  A    Mutual release is a non-monetary term.

23  Q    And during that discussion that you and I had on

24  the phone, where we were discussing the full mutual

25  releases, did you bring up any of the other non-

143

1 monetary terms that Mr. Kayser mentioned in his July

2 20th email?

3 A    No, but there's a good reason.

4 Q    Yes or no, did you bring them up?

5 A    No, I didn't.

6 Q    Did you -- during those conversations did you

7 bring up any other payments than what we were

8 discussing in what ultimately became that chart that

9 you included in your July 25th email?  Did we discuss

10 any other monetary terms, other than what's reflected

11 on that chart?

12 A    The answer is no.

13 Q    Okay.

14 A    It was the only hurdle that we were working on.

15 Q    Then on July 26th, 2019, at 3:27 p.m., my email

16 to you -- Page 1 of Exhibit A, my email to you, Mr.

17 Kayser and Mr. Hager, set forth the key terms, and do

18 you agree that this set forth the key terms that we

19 discussed?

20 A    I agree these set forth the key terms that we

21 had been negotiating and hadn't agreed to, to this

22 point.

23 Q    And then is it an accurate statement in the

24 email from Mr. Hager to me on Page 1 of Exhibit A, on

25 July 26, 2019, at what appears to be 3:56 p.m., where

**TAGNETICS (19-30822) 10-18-19**

144

1    Mr. Hager says, "I am responding for Kayser, Earley and

2    Hager, saying we agree to the terms put forth as

3    documented above." Really meaning below. Is that an

4    accurate statement, that he was authorized to speak for

5    you at that point in time?

6    A     Yes, he was.

7              MR. STERN:  No further questions, Your Honor.

8              THE COURT:  Thank you, Mr. Stern.

9              MR. STERN:  I'm sorry.  Can I approach, Your

10   Honor, to get the binder back?

11             THE COURT:  Yes, you may.

12             MR. STERN:  Thank you.

13             THE COURT:  Mr. Earley, do you wish to

14   provide any redirect examination of yourself in

15   response to Mr. Stern's cross-examination?

16             REDIRECT TESTIMONY OF RONALD EARLEY

17             MR. EARLEY:  So my only -- my redirect is

18   that obviously if you follow this email train from the

19   20th through the 26th, when we agreed to it, it's clear

20   that there was a very limited focus to what we -- what

21   we and Tagnetics had not agreed to, and it was about

22   the cash.  Their initial push-back was we can't afford

23   that, we don't have the cash.  And the cash, cash,

24   cash.  So we became focused on getting the cash and

25   making the assumption on what that means, that the

**TAGNETICS (19-30822) 10-18-19**

145

1   terms that Mr. Kayser had put forth on the 20th,

2   because they were not specifically rejected, were still

3   in play.

4           That's all I have.

5           THE COURT:  Thank you, Mr. Earley.  Stay

6   there.  Stay there.

7           MR. EARLEY:  I'm sorry.  Thank you.

8           THE COURT:  Stay there.  Any recross-

9   examination?

10          MR. STERN:  No, Your Honor.

11          THE COURT:  Okay, now still stay there.

12          MR. EARLEY:  I am.

13          THE COURT:  Okay.  I've got the same two

14  questions for you that I asked Mr. Stern, when he was

15  on the stand.

16          MR. EARLEY:  Yes, sir.

17          THE COURT:  The first was -- and I think this

18  is particular relevant for you, since I think you're

19  the one who came up with this payment chart.  What does

20  liquidity event mean in your payment chart?

21          MR. EARLEY:  So liquidity to me means that if

22  there was a cash transaction or a transaction that --

23  where ownership of the company, 50 percent or 50.1

24  percent of the company changed from its current

25  ownership to a new ownership, then that's a liquidity

1   event, and we would expect to be paid out of that

2   transfer.  Because in general what happens during those

3   transfers is someone is putting a bunch of money in to

4   get the 51 percent that they need to control the

5   company.  So that to us is a liquidity event, whether

6   it happens through a stock swap, whether it happens by

7   someone buying up a bunch of options.  It really

8   doesn't matter how it happens.  It's when there's a

9   major cash event, where cash becomes available, to pay

10  previous creditors and along that line, and it

11  anticipates that that could still happen.

12          THE COURT:  Okay.  My second area was the

13  stock.

14          MR. EARLEY:  Mm-hmm.

15          THE COURT:  What was your understanding as to

16  the effect of a settlement -- if a settlement was

17  reached on July 26th, as to any stock or equity

18  interest, which you held in the company?

19          MR. EARLEY:  So my -- my -- well, clearly I

20  don't believe that Tagnetics has the capability to wipe

21  out my stock ownership.  I paid cash for it.  I own it.

22  It's in my name.  I've got the certificates.  I possess

23  them.  It's hard for me to believe that they can wipe

24  that out on the settlement.  It's also probably not a

25  legal thing they could do.

147

1        Number two, all the other equity I have in

2   the business I realize is at stake, and so the only way

3   that I would expect to get the other payments is if the

4   company were successful, or if someone came in and

5   decided to throw a lot of cash at it to try to make it

6   move forward.  But from a stock standpoint, what we

7   were asking for was nothing more than just acknowledge

8   that we have it, acknowledge that it's there.

9        But I don't believe they can touch -- there's

10  -- yeah, I believe there are laws that would keep them

11  from stripping us from our stock, just because we

12  settled an employment contract.  They are completely

13  two different things.

14        THE COURT:  Okay.  Thank you, Mr. Earley.

15  Any questions based upon the Court's questions, Mr.

16  Stern or Mr. Kracht?

17        MR. STERN:  No, Your Honor.

18        THE COURT:  Okay, thank you.  Mr. Kayser, any

19  questions for Mr. Earley, based upon my questions of

20  Mr. Earley?

21        DR. KAYSER:  No, sir.

22        THE COURT:  Mr. Hager?

23        MR. HAGER:  No, sir.

24        THE COURT:  Okay.  Thank you, Mr. Earley.

25  Now you may leave the witness box.

148

1       MR. EARLEY:  Thank you, Your Honor.

2       THE COURT:  Appreciate your participation.

3 Is there any other evidence, Mr. Earley, which you wish

4 to present in your case?

5       MR. EARLEY:  I'm going to turn it over to Mr.

6 Hager.

7       THE COURT:  Okay.  Thank you, Mr. Earley.  I

8 guess the floor is yours, Mr. Hager.

9       MR. HAGER:  Thank you, Your Honor.  I'll do

10 my best to keep it brief.

11       THE CLERK:  I just want to remind you, as

12 well, you're still under oath.

13       MR. HAGER:  Yes, understood.

14       DIRECT TESTIMONY OF JONATHAN HAGER

15       MR. HAGER:  I guess without regurgitating the

16 same story, I suppose, it was my understanding on July

17 26th that that was the culmination of the negotiation

18 for a portion of the proposal from July 20th, from Dr.

19 Kayser.  It was the portion that was raised

20 specifically at issue by Mr. Stern, to say that the

21 company was short on cash, they could not afford those

22 type of cash payments at this time.  Specifically, he

23 said at this time.

24       So as Mr. Kayser said, we talked with Mr.

25 Earley and he agreed that he would be the point person

149

1   to negotiate that cash settlement.  We agreed to kind

2   of meet Tagnetics part way to say we could go ahead and

3   come up with a schedule.  We continued down that path

4   of, I won't say giving in, but kind of compromising on

5   a number of things, to try to meet the goals that

6   Tagnetics was looking for, saying that they were short

7   on cash and needed something more reasonable.

8        I do believe we came up with something very

9   reasonable.  Nowhere in the initial response from the

10  July 20th proposal was there a specific call-out to say

11  these other terms that were required by Mr. Kayser's

12  proposal, that those were off the table.  That was

13  never mentioned.  It was never mentioned in any of the

14  other following discussions.  I understand Mr. Stern

15  says we did not re-mention it.  He never brought -- was

16  -- brought any disagreement to it, so we didn't feel

17  that was a topic that needed to be fine-tuned,

18  especially at the 11th hour, when we were trying to be

19  cognizant of when the court was going to close, which

20  would obviate the need for us to come here for court.

21       The only other point I guess I wanted to

22  include in here was that when -- we understood we would

23  see a draft agreement over the weekend, or by Monday,

24  and we didn't.  So on Tuesday I went ahead and

25  restated, summarized what we believed the agreement

150

1　should include, and I sent it to Mr. Stern.　Previous

2　testimony, he said he doesn't recall receiving that or

3　doesn't recall reading that.　And then there was no

4　response to that email.

5　　　　　We then got the draft agreement and in that

6　response to the draft agreement, I pointed out the same

7　issues.　I said, these are the things that are missing

8　in this draft agreement, which we believe we had

9　already agreed to.

10　　　　　At that point, and in testimony the statement

11　was these were new claims, these were new requirements,

12　these were things that were out of scope from the

13　agreement.　And I guess my point is that the email of

14　that Tuesday, I believe it was July 30th, demonstrated

15　that we were under the understanding of what we had

16　agreed to on Friday, conclusive of the July 20th email

17　and the modifications going into July 26, and we again

18　stated that again, after receiving the draft agreement.

19　　　　　There is one other point I wanted to make

20　about the draft agreement.　A draft, as my

21　understanding, means it's something that is welcome to

22　be modified or discussed.　And in my response, after

23　receiving the draft agreement, I even pointed out a

24　small fact, that the address that was listed for me in

25　that agreement was incorrect, and I had filed that

151

1  address change with the court many, many weeks before.

2  In fact, months before.  And all the correspondence

3  that I was receiving at home was going to the correct

4  address.

5        And I see in the evidence or exhibits

6  supplied to the court, that address still hasn't even

7  been changed.  So in other words, the draft agreement

8  has never been modified from the first day it was sent

9  to us, even after we had raised issues with it, and

10  wanted to discuss changes to it.

11        So I guess my concerns about this are that we

12  put forth a very good effort, I believe, to negotiate a

13  settlement in the hopes that Tagnetics could not only

14  have an option to succeed, but also pay their debts to

15  us, and that in response there really wasn't any

16  concerted effort to refine that agreement into

17  something that was acceptable.

18        THE COURT:  Okay.  Thank you, Mr. Hager.  Are

19  there any exhibits which you wish to introduce, which

20  have not already been introduced and admitted?

21        MR. HAGER:  If Exhibit 5 was already

22  introduced, I know we discussed it earlier.

23        MR. EARLEY:  Yes.

24        THE COURT:  So Exhibit 5 was admitted?

25        MR. HAGER:  It was the one that we had to get

152

1  a new copy of.

2  THE COURT:  I know 3 and 4 were admitted.  3

3  and 4 was admitted.  I do not believe 5 was admitted.

4  MR. HAGER:  Well, I'd like to admit 5,

5  because that has that email exchange on the -- on July

6  30th and past that.  The one that was recopied by the

7  Court.

8  THE COURT:  Is there an objection, Mr. Stern,

9  to --

10  MR. STERN:  I just want to make sure I'm

11  understanding.  Are you referring to the July 30th

12  email, if I remember correctly?

13  MR. HAGER:  Right.  We discussed the July

14  30th email, when you were on the stand.  And that's

15  what we had to re-photocopy.

16  MR. STERN:  If they want to admit that, I

17  have no objection to it being entered.  I just wanted

18  to be clear.

19  THE COURT:  Yeah, I want to be clear too.

20  Are we just talking -- was the July 30th email part of

21  a series of emails?

22  MR. HAGER:  Yes.

23  THE COURT:  So are you just seeking admission

24  of the July 30th email or the whole group?

25  MR. HAGER:  I mean, I guess the whole group

153

1   of Exhibit 5, but most of Exhibit 5 is in your Exhibit

2   A, I believe.

3           MR. STERN:  I think what happened, Your

4   Honor, if I may, and obviously if I'm wrong, please --

5   looks like the printout here cuts off some of the

6   earlier string, but it seems to allude to an earlier

7   part of the string, that goes back to either my August

8   14th -- no, it couldn't be the August 14th email.  I'm

9   not really sure what it goes back to, but it looks like

10  there's a reference to some earlier emails that just

11  are not part of or printed out as the exhibit.  And so

12  that's why I'm a little unclear as to what we're really

13  looking at.  Nevertheless, he's testified he sent me

14  that email.  I personally don't see it being relevant

15  to whether or not there was an agreement in place, but

16  I'm not going to really object to what -- to its

17  admission, if they want to get it admitted into

18  evidence.  If he's testifying that he sent it to me,

19  I'm not in a position to refute that.  I don't think

20  it's relevant to whether or not we had an agreement on

21  July 26th.  So if he wants that admitted, I'm going to

22  say as long as it's the email on July 30th or after,

23  I'll agree to its admission.  Does that make sense?

24          THE COURT:  Does it include emails prior to

25  July 30th?

154

1        MR. HAGER: Yes. Exhibit 5 included from the

2 beginning, July 20th, all the way through to, I

3 believe, August 3rd or 5th or, no, past that, all the

4 way through to the draft agreement and so on, and their

5 Exhibit A didn't include that portion, past July 26th.

6        MR. STERN: Your Honor, as I'm looking at it

7 a little bit more closely, I don't want to be

8 difficult, but the way this is printing out, it's got

9 an August 1 email after July 30th email, so I'm not

10 really sure how this string is working and what's

11 really being included, so I -- my colleague and I are

12 trying to -- Mr. Kracht and I are trying to look at

13 this and try to understand it. It's an odd printout,

14 not the way emails normally go, in reverse

15 chronological order, and we're really having trouble

16 making sense out of this. And honestly, I don't

17 remember a lot of this stuff, and so I'm at a little

18 bit of a disadvantage.

19        MR. HAGER: That's your correct address in

20 that statement.

21        MR. STERN: It does. I mean -- it does have

22 my email address there and that is my email,

23 stern@kaganstern.com. That is correct. You know,

24 that's why I say -- let me confer with Mr. Kracht for a

25 minute.

1      THE COURT:  Yeah, that's fine.

2      MR. STERN:  So as I've talked with Mr.

3  Kracht, we're not going to object to the admission, as

4  long as it's limited to the -- what we're seeing is

5  only emails from July 30th afterwards.  I'm not seeing

6  anything prior to that.  We're not seeing --

7      THE COURT:  It appears to me the first one is

8  July 19th, at least at the top of my Exhibit 5.

9      MR. HAGER:  Yeah, the emails prior to the

10  30th would be the 26th.

11      MR. STERN:  Does this continue through with

12  the 26th, and then more after that?

13      MR. HAGER:  Correct.

14      MR. STERN:  If that's the case, then we're

15  not going to object, Your Honor.

16      THE COURT:  Okay.  Then the Court will admit

17  Petitioning Creditors' Exhibit 5, which, from what I'm

18  reviewing, starts with a July 19th, 2019 email at 4:14

19  from, I believe, Mr. Stern, yeah, to Ken, and then it

20  goes to emails through -- let's see here -- appears to

21  be Friday, August 2nd, I believe.  Sunday, August 4th.

22  Yeah, Sunday August 4th, I think is the last --

23      MR. STERN:  That sounds correct, Your Honor,

24  is the last one in the string.

25      THE COURT:  Okay.  Then the Petitioning

156

1   Creditors' Exhibit 5 is admitted.

2              (Petitioning Creditors' Exhibit 5 received

3   into evidence.)

4              THE COURT:  Anything else you wish to -- any

5   other exhibits you wish to admit?

6              MR. HAGER:  No.  No, Your Honor.

7              THE COURT:  Okay.  Is there any cross-

8   examination, Mr. Stern or Mr. Kracht?

9              MR. STERN:  Just really briefly.

10             CROSS-EXAMINATION OF JONATHAN HAGER

11  BY MR. STERN:

12  Q    I think, Mr. Hager, you, I think, acknowledged

13  the point on your testimony, I just want to be clear.

14  None of the emails on July 26th from you to me did you

15  make any specific reference to any of the contents of

16  the July 20th email from Mr. Kayser, correct?

17  A    I did not.

18             MR. STERN:  No further questions, Your Honor.

19             THE COURT:  Okay, thank you, Mr. Stern.  Any

20  redirect examination of yourself, Mr. Hager, based upon

21  that question?

22             MR. HAGER:  No, Your Honor.

23             THE COURT:  I just have the same questions.

24  Is there any other different testimony you would

25  provide or information you'd provide with respect to

157

1    the definition of liquidity event?

2           MR. HAGER:  No, consistent with what I saw in

3    the draft agreement, I believe was what I also included

4    in that email on July 30th, as out of our employment

5    contracts.  I think the wording is similar or the same.

6           THE COURT:  And what about the stock

7    ownership issue, what is your -- do you have any --

8    what's your belief that any impact of a July 26

9    settlement, if there was a July 26 settlement, would

10   have on your stock or equity interest in Tagnetics?

11          MR. HAGER:  My understanding, correspondence

12   or agreement on July 26th would not affect any stock

13   ownership.  Unfortunately, my stock ownership was

14   diluted quite far and the stock options, which I

15   understood would no longer be valid, but --

16          THE COURT:  Okay, thank you, Mr. Hager.  Any

17   additional questions based upon the Court's questions?

18          MR. STERN:  No, Your Honor.

19          MR. EARLEY:  No, Your Honor.

20          THE COURT:  Either Mr. Kayser or Mr. Earley?

21   No.

22          MR. EARLEY:  No.

23          THE COURT:  Thank you, Mr. Hager.  Appreciate

24   your participation.  Any other evidence you wish to

25   present, Mr. Hager?

158

1      MR. HAGER:  No, thank you.

2      THE COURT:  Thank you.  I believe that

3  concludes everybody's cases; is that correct?

4      MR. EARLEY:  Yes, sir.

5      THE COURT:  Now, let's see.  It is -- what

6  time is it?  I'm trying to wake up my computer here.

7      THE CLERK:  2:38, Your Honor.

8      THE COURT:  2:38.  Now, do you wish to make

9  brief closing arguments or do you wish to waive closing

10  arguments?  Do you wish to file any post-trial brief or

11  memorandum in lieu of oral -- of arguments today?  I'll

12  leave it all up to you.  You're the ones who have to

13  travel.  So --

14      MR. STERN:  Your Honor, we'd be fine with

15  just brief closing arguments.  We want to just confirm

16  the exhibits that have been admitted.  It's our

17  understanding that our Exhibits A through I have been

18  admitted, except for Exhibit E.

19      THE COURT:  That's correct.

20      MR. STERN:  And then for the Petitioning

21  Creditors, they've had 3, 4 and part of 5 admitted.

22      THE COURT:  3, 4 and all of 5.

23      MR. STERN:  All of 5.

24      THE COURT:  3, 4 and 5, yes.

25      MR. STERN:  Just wanted to make sure that

**TAGNETICS (19-30822) 10-18-19**

159

1    we're in agreement as to what the exhibits were.

2                 THE COURT:  Yeah.

3                 MR. STERN:  If I may then, Your Honor?

4                 THE COURT:  Yes, you may.

5                 MR. STERN:  Thank you.  Your Honor,

6    notwithstanding the protestations to the contrary by

7    the Petitioning Creditors, the email string is clear

8    that they never included any reference or any notice

9    that those terms of that July 20th email that they're

10   referring to carry through in any respect.

11              To say that "See you in court on Monday"

12   means anything other than negotiations are terminated,

13   again, seems to defy logic.  And they had multiple

14   opportunities to reference those other terms that they

15   are now seeking to include.

16              And it further defies logic, when you see the

17   term "full mutual releases, no carve-outs," or as you

18   saw in the email where it says "Total settlement

19   payment," they're referring to other loan payments.

20   That's either some other payment beyond the total

21   payment that's in there, or it's a carve-out or

22   exception to the full mutual releases.  No matter how

23   you slice it, there's an inconsistency there with both

24   those terms.  That cannot be.

25              And yet they repeated it not once, not twice,

160

1    but three times in those emails from Mr. Hager to me,

2    on July 26th.  It's really clear that those terms are

3    reflected on the July 26th email.  The settlement

4    agreement that I drafted is consistent with that email.

5    Even Mr. Earley's description of what a liquidity event

6    was is consistent with the terms that were written in

7    there.  Not even objecting to that.

8            But they're seeking additional payments that

9    are beyond the total, capitalized total, that's

10   reflected in Exhibit A.  I'm sorry, Exhibit I.

11           And they are also seeking additional payments

12   beyond what's reflected there, which would be some sort

13   of carve-out.  You cannot have a full mutual release,

14   no carve-outs, and then say but, later on, well,

15   there's this other payment, this other loan, this

16   licensing agreement.  That's inconsistent on its face.

17   They cannot claim ignorance of what that term means and

18   expect to be -- to negotiate and then say well, we

19   didn't understand that, later on.

20           I repeated not once, not twice, but three

21   times in those email strings that we -- to seek legal

22   counsel for guidance.  And apparently they were having

23   the assistance of legal counsel behind the scenes, from

24   what they've testified to.

25           To sit here in court today and rewrite the

161

1  plain meaning of what those terms are is just not

2  right.  We have an agreement.  It's reflected in

3  Exhibit B.  The terms that I wrote are consistent with

4  what that email string says, and we believe the

5  agreement should be enforced as it is written.

6         Thank you, Your Honor.

7         THE COURT:  Thank you, Mr. Stern.  Mr.

8  Kayser, do you wish to present any closing argument?

9         DR. KAYSER:  Yes, Your Honor.  I think one

10  thing that's clear, regardless of all the testimony or

11  how you view it, is that we don't agree on an

12  agreement.  And we didn't realize it on Friday, when we

13  agreed to cancel the trial that we didn't agree, but I

14  think that was either intentionally misleading us or

15  planning on falling back on the fact that we are pro

16  se.

17         In every negotiation, usually the lawyers do

18  the language of the agreement.  They don't get involved

19  in the actual negotiation of the terms of the

20  agreement, and they certainly don't use legal terms to

21  disguise what they really mean.  The word carve-out has

22  a different meaning in a hundred different contexts,

23  and we thought the context it was being discussed in

24  was based on our July 20th, and when he said no carve-

25  out, he meant no changes to those conditions.  And we

**TAGNETICS (19-30822) 10-18-19**

162

```
1   don't have an agreement.  I request the Court go ahead
2   with the trial.
3           THE COURT:  Okay.  Thank you, Mr. Kayser.
4   Mr. Earley, do you wish to make a closing argument?
5           MR. EARLEY:  No, sir.
6           THE COURT:  Okay, thank you.  Mr. Hager, do
7   you wish to make a closing argument?
8           MR. HAGER:  I guess just one brief one.  So
9   there's been a lot of discussion about the use of this
10  word "full mutual release" and stating that we should
11  understand fully what that is.  And again, I just want
12  to point out the context where that was raised was on a
13  phone call between the four of us, where Tagnetics
14  wanted to reserve the right to, I guess, sue or
15  litigate against us, and not provide a release from our
16  employment and from their time on the Board.  And it
17  was slightly heated discussion, I must say.  And so at
18  the end of that discussion and the following conclusion
19  of that was that, fine, you'll get a full mutual
20  release if my client agrees to it.
21          So our understanding was it was focused on
22  one party's ability to sue the other party over our
23  employment or our involvement, in their case, on the
24  Board.  It has now been stretched to say a full mutual
25  release means any other agreements that were ever done
```

1  between Tagnetics and any of the three pro se parties
2  would be wiped out, and that was never an
3  understanding.  It was never clearly stated and that's
4  the point that we've all been trying to make, that when
5  that was introduced as part of the draft agreement,
6  that took us by surprise, and that's when we said we
7  don't feel we have an agreement on what those terms
8  are.  That's all I wanted to --

9        THE COURT:  Thank you, Mr. Hager.  The Court
10  anticipates issuing an oral decision.  We do that quite
11  a bit.  I can assure you we put as much time really
12  into our oral decisions as we do in our written
13  decisions, only we do save a little bit of time and are
14  able to get them up, our oral decisions done, quicker
15  than a formal written decision, simply because we're
16  not crossing all the T's and dotting the I's, in terms
17  of the way it appears on a piece of paper, and the oral
18  decisions I read.

19        I'm not going to do that today.  We're going
20  to digest all this and I will render an oral decision.
21  I'm thinking like in a week or so, but I'm going to
22  leave that to -- and I'll do it by telephone.  You
23  don't need to come back here or anything.  I'll leave
24  it to Ms. Behnken and the rest of you to come up with a
25  date and time for me to render that oral decision.  I'm

164

1   thinking like next Friday, if that works for people, or

2   somewhere in that time frame.  We will need a few days

3   to digest this, and get the oral decision put together

4   in writing, so that I can be in a position to read it.

5          I also wanted to throw out the caveat, is I

6   am now pretty much the only bankruptcy judge in Dayton,

7   and we've got a lot of different things up in the air,

8   and so I may need to have a little flexibility in

9   exactly when we end up having that oral decision.  But

10  if you need to get on the road, just touch base with

11  Ms. Behnken on Monday, or she'll touch base with you

12  and we'll get at least a tentative date and time set up

13  for me to render the oral decision on this.

14          Any questions on that or anything else at

15  this point?

16          MR. STERN:  No, Your Honor, that makes sense.

17  And Ms. Behnken, I guess we'll communicate next week

18  via email between the parties?

19          THE CLERK:  I will contact everybody by

20  email.

21          MR. STERN:  Thank you.

22          THE COURT:  Anything from the Petitioning

23  Creditors?

24          DR. KAYSER:  No.

25          THE COURT:  I want to thank you, everybody.

165

1  You all were very professional, and for being -- I have

2  to say, if you're not the best pro se parties I've ever

3  had in my courtroom, you're at the top of the list, so

4  I congratulate you on it and commend you on that,

5  commend Mr. Stern and Mr. Kracht for your professional

6  presentations.  It's been very helpful to the Court.

7  And, otherwise, we will talk to you when we're ready to

8  render the oral decision.  Thank you.

9          THE CLERK:  All rise.  Court is adjourned.

10          (End of proceedings at 2:48 p.m.)

166

State of Ohio        )

Cuyahoga County      )


CERTIFICATE


I, Marc Eppler, a Notary Public, within and for the State of Ohio, do hereby certify that the above transcript is a true and accurate record of the hearing held before the HONORABLE GUY R. HUMPHREY.  This record was prepared from an audio recording provided by the Court.

IN WITNESS WHEREOF, I have hereunto set my hand and seal of office in Cleveland, Ohio on this 7th day of February, A.D., 2020.

-----------------------------
                MARC EPPLER
        Notary Public - State of Ohio
        My Commission expires 9-14-2023

TAGNETICS, INC.

October 18, 2019

**$**

**$186,000 (1)**
133:5
**$25,000 (1)**
133:9
**$30,000 (3)**
33:13;50:9;51:8
**$486,700 (1)**
23:14
**$5,000 (3)**
111:23;134:2,8
**$50,000 (3)**
133:7;134:2;135:5
**$500,000 (1)**
111:22
**$90,000 (6)**
28:24,25;33:13;
134:7;135:7,8

**A**

**ability (3)**
29:5;57:13;162:22
**able (20)**
6:15;7:12;9:4;
22:10,13;24:20;28:2;
41:21;69:16;70:15;
71:12;75:5;82:22;
92:1;96:19;132:20;
137:4,7,14;163:14
**above (10)**
24:17;34:10,10;
86:14;107:16;111:16;
113:17;126:6;139:8;
144:3
**Absolutely (12)**
4:18;17:22;46:3;
57:23;82:1;103:24;
106:12;127:7;131:10;
138:21;140:10,21
**acceleration (1)**
51:3
**accept (3)**
16:18;134:13;
136:24
**acceptable (3)**
26:9;43:19;151:17
**accepting (1)**
33:16
**accepts (1)**
131:17
**access (2)**
22:10;119:13
**accommodate (1)**
24:11
**accordance (1)**
6:13
**according (1)**
116:4
**accordingly (1)**
92:3

**account (3)**
21:5;126:8;127:21
**accountants (1)**
39:21
**accruing (1)**
50:10
**accurate (7)**
55:10;66:8;88:1;
111:20,24;143:23;
144:4
**accurately (7)**
15:22;36:6;37:2;
88:13,23;115:4,11
**acknowledge (5)**
23:23;104:9;
129:11;147:7,8
**acknowledged (1)**
156:12
**acknowledgment (1)**
103:19
**acquaintance (1)**
127:2
**across (1)**
133:9
**Acting (1)**
54:22
**action (5)**
29:18;56:18;94:4;
128:1,9
**actual (1)**
161:19
**actually (7)**
10:14;55:9;62:17;
69:5;81:16;111:9;
133:18
**adamant (1)**
31:24
**added (7)**
15:1,4;50:9;76:25;
77:3;85:6,12
**adding (1)**
64:15
**addition (2)**
45:12;49:2
**additional (15)**
15:10,18;16:22;
28:8;49:3;50:23;68:1,
9,13;87:8;134:9;
135:22;157:17;160:8,
11
**address (12)**
4:12;21:23;23:22;
34:19;73:25;124:19;
150:24;151:1,4,6;
154:19,22
**addressed (3)**
21:1;44:1;63:14
**addresses (2)**
55:2,3
**addressing (1)**
130:12
**adjourned (1)**
165:9

**adjournment (2)**
3:4;92:25
**adjust (1)**
20:17
**administrative (1)**
9:21
**admission (25)**
8:20;46:7;53:21;
54:7;55:21,25;56:6,
10,25;57:4;58:11,20,
24;59:18,21,25;103:7,
12,18;104:3,6;
152:23;153:17,23;
155:3
**admit (12)**
46:8;53:22;56:4;
57:9,14;60:6,8,9;
152:4,16;155:16;
156:5
**admitted (35)**
10:4,5,6,8,16,17;
18:18,20,21;57:11;
58:13;60:10;90:20;
101:6,23;102:1,20,23;
103:21;104:12;105:4;
132:1;138:1,3;
151:20,24;152:2,3,3;
153:17,21;156:1;
158:16,18,21
**Admittedly (2)**
36:20;84:9
**adopt (1)**
17:5
**adopting (1)**
16:25
**adopts (1)**
87:22
**advice (3)**
29:25;106:10;121:6
**advise (4)**
15:15;33:7;136:18,
18
**advised (1)**
136:16
**Advising (1)**
113:23
**Aeronautics (1)**
93:17
**affect (3)**
45:14,14;157:12
**affidavit (7)**
56:10,12;57:12;
58:16
**affiliate (8)**
43:4;51:16,21;55:6,
12,17;117:10;121:24
**affiliates (13)**
39:13,17;41:18;
42:3,5,7;43:1,10,20;
44:15,20;51:15;121:9
**afford (4)**
133:15;140:18;
144:22;148:21

**afternoon (6)**
25:25;30:13;
127:21;133:21,21;
136:4
**afterwards (2)**
84:14;155:5
**again (49)**
7:1;12:15;15:11;
25:13;27:25;28:23;
31:16;35:8,18;38:12;
42:17;43:21;44:18;
46:8;47:15;48:21;
49:9,13;51:12,13;
53:9;58:7;65:5;71:5;
72:3;74:4;75:25;
76:12;82:13;85:20;
92:22;95:10;103:10;
106:8,10,14,16;109:1;
110:3,25;112:3;
114:16,20;116:8;
119:25;150:17,18;
159:13;162:11
**against (9)**
29:4;31:20;41:22;
66:17;94:4;122:5;
127:5;136:18;162:15
**agents (2)**
29:21;42:8
**ago (4)**
35:1;72:24;90:14;
93:19
**agree (26)**
34:9,23;41:23;46:2,
9;47:4;62:5;69:24;
71:1,4;90:14;95:11;
98:7;105:24;112:19;
113:3,11,17;132:20;
142:20;143:18,20;
144:2;153:23;161:11,
13
**agreed (50)**
31:8;32:19,21;
34:13;36:1,6,10;
48:20;49:6,18;52:3;
53:10;63:25;72:8;
84:6,13;85:2;94:11,
13,19,24;95:6,11,13;
96:7,8,11,14;97:19,
23;98:2,3,7;99:18,18,
23;105:21;112:25;
113:4;114:9;137:16,
19;143:21;144:19,21;
148:25;149:1;150:9,
16;161:13
**agreement (152)**
13:24;14:4,8,9,12;
15:20,23;16:8,14,16;
31:7;33:4,6,9,11,12,
14;35:4,16,19,24;
36:19,20;37:1,10,20;
38:15,21;40:2;41:4;
42:11,14,22;43:3,14,
22;45:20;48:11,14,

49:20;50:6,24;51:4,
19;52:25;54:19;55:1;
61:22;62:8;64:1,24;
65:15,22,25;67:10;
69:18;73:4,5,6,9,11,
17,18,20;75:13;78:7;
84:8,11,14;85:1,6,9,
16;87:14,15;88:10;
89:6,9;95:23;96:1;
97:15,16;98:4,5,6,8,
16,17,23;99:10,13,21;
102:22;103:4,22;
106:15;107:3,16,17;
109:19,20;110:21,22;
115:5,12,18;116:6;
118:6,13,17;120:11,
12,19,21,24;121:3,20;
122:16,18;129:22;
133:7;137:2,11,21;
149:23,25;150:5,6,8,
13,18,20,23,25;151:7,
16;153:15,20;154:4;
157:3,12;159:1;
160:4,16;161:2,5,12,
18,20;162:1;163:5,7
**agreements (13)**
31:23;40:14;43:11,
20;65:13;66:1;69:14;
71:23;73:14;87:21,
23;141:24;162:25
**agrees (3)**
61:20;131:18;
162:20
**ahead (6)**
11:1;77:1;96:11;
149:2,24;162:1
**ahold (1)**
136:24
**aid (1)**
105:11
**air (1)**
164:7
**alleged (17)**
13:23;14:6,13;
15:10,15;20:7,20,21;
22:22;28:7,12;31:13;
37:4;39:2;43:17;
87:19;88:16
**allow (4)**
47:14;95:12;
135:23;137:17
**allowed (1)**
117:9
**allude (2)**
73:3;153:6
**alluded (1)**
71:20
**along (8)**
19:2;32:9;94:24;
96:7;99:22;108:12;
134:19;146:10
**always (3)**
77:5;99:2;107:9

**LEGAL ELECTRONIC RECORDING, INC.**
216-881-8000 www.lerinc.com

**TAGNETICS, INC.**

October 18, 2019

**ambiguity (1)**
51:19
**among (3)**
35:16;38:16;94:5
**amount (7)**
19:1;35:24;62:16;
63:5;94:18;95:19;
132:24
**amounts (3)**
23:12;29:19;66:4
**anew (1)**
86:21
**answered (1)**
120:3
**anticipated (1)**
36:22
**anticipates (2)**
146:11;163:10
**anymore (1)**
119:13
**apiece (1)**
135:8
**apologies (3)**
15:7;18:4;23:9
**apologize (2)**
78:19;80:20
**Apparently (3)**
48:22;50:19;160:22
**appear (3)**
17:18;21:21;79:24
**appearances (1)**
3:9
**appears (8)**
20:22;39:23;82:3;
138:5;143:25;155:7,
20;163:17
**Applied (1)**
93:16
**applies (1)**
117:11
**apply (3)**
7:8;8:25;41:15
**appreciate (6)**
23:25;28:24;58:1;
62:23;148:2;157:23
**approach (5)**
81:24;108:15;
125:2;127:13;144:9
**approached (1)**
129:24
**approaching (1)**
99:7
**appropriate (3)**
40:6,7;111:23
**approximately (2)**
18:22;94:20
**arbitration (1)**
29:3
**area (4)**
19:4;89:2;130:18;
146:12
**arguably (1)**
51:11

**argue (1)**
9:6
**argument (9)**
11:22;40:23,25;
41:25;63:6;65:18;
161:8;162:4,7
**arguments (5)**
9:5;158:9,10,11,15
**around (6)**
28:24;30:14;49:16;
71:8;95:24;109:12
**articulately (2)**
57:2,10
**articulating (1)**
66:16
**aspects (2)**
38:5,7
**assigns (1)**
39:12
**assistance (1)**
160:23
**assistant (1)**
93:15
**assume (5)**
69:7;100:16;
104:18;116:21;131:4
**assumed (2)**
115:25;119:23
**assumes (1)**
24:17
**assuming (3)**
50:13;85:14;88:5
**assumption (1)**
144:25
**assurances (1)**
96:12
**assure (1)**
163:11
**assured (1)**
114:8
**Astronautics (1)**
93:17
**attached (5)**
14:25;15:3;17:18;
83:16;103:16
**attaching (1)**
36:19
**attachment (3)**
83:16,21;84:1
**attempt (2)**
114:14;132:19
**attempting (1)**
112:21
**attempts (1)**
127:1
**attention (15)**
21:19;22:15;24:21;
31:4;32:10;36:12;
37:5;50:2,17;54:15;
84:9,19,25;85:1;86:6
**attorney (7)**
38:2;90:14;99:9;
110:11;117:7,16;

128:8
**attorneys (3)**
17:7;22:23;39:22
**attorneys' (1)**
29:13
**audible (1)**
105:9
**August (19)**
16:8;48:1,6,12,15;
50:20,22;52:23;53:6,
8;64:25;73:21;153:7,
8;154:3,9;155:21,21,
22
**authenticity (2)**
56:3;59:20
**authorize (3)**
95:14;106:19,22
**authorized (5)**
31:7;113:23;114:5,
23;144:4
**available (3)**
22:9,11;146:9
**avoid (2)**
5:17;29:7
**aware (3)**
32:23;92:2;110:9
**away (2)**
22:7;54:5
**awful (1)**
41:11
**awkward (3)**
6:3,4;101:3

**B**

**back (50)**
5:18;17:6;21:3;
29:21,22;30:19;
32:17;35:8;39:2;
48:23;49:9,14;52:20;
54:25;58:2;65:24;
69:23;70:15;71:12,
22;72:5,6;73:23;84:8,
10;91:21;92:16;
95:18;96:24,25;
107:15;111:9;115:15;
121:17;122:16;
130:17;133:16,20;
134:11,18,25;135:12,
20;136:22,23;144:10;
153:7,9;161:15;
163:23
**background (1)**
18:16
**bad (2)**
73:21;122:9
**balances (1)**
135:24
**ball (1)**
140:5
**Bankruptcy (17)**
3:2;19:4;24:18;
25:5;27:12;29:25;

56:19;123:10,11,13,
16;124:16;127:5,23;
128:3;133:16;164:6
**bar (1)**
7:18
**base (2)**
164:10,11
**based (25)**
5:14;41:3;44:24;
50:24;55:11,15;57:8;
58:13;68:25;69:7;
80:16;85:13;87:8;
89:22;90:2;99:13;
115:17;116:6,19;
128:21;147:15,19;
156:20;157:17;
161:24
**Basically (4)**
77:17;84:1;97:3;
133:23
**basis (6)**
9:2;57:2;60:21;
61:7,10;83:14
**became (5)**
30:15;93:14;123:6;
143:8;144:24
**become (1)**
93:23
**becomes (1)**
146:9
**beforehand (1)**
85:10
**beg (1)**
74:18
**begin (1)**
3:1
**beginning (4)**
3:9;93:12;94:2;
154:2
**behalf (15)**
3:12;13:22;23:3,4,
6;37:17;39:11,12;
42:22;44:13,13;
114:6,24;120:21;
122:15
**behaved (1)**
91:9
**behind (1)**
160:23
**Behnken (6)**
11:15;17:23;92:17;
163:24;164:11,17
**Behnken's (1)**
80:22
**belief (1)**
157:8
**below (9)**
28:5;33:4,15;34:11,
24;48:19;74:8,8;
144:3
**beside (1)**
77:7
**best (11)**

4:21,22;8:22;63:19;
78:20;88:18;91:4;
92:9;135:2;148:10;
165:2
**better (3)**
9:21;11:5;91:9
**beyond (7)**
14:14;15:11;36:11;
77:19;159:20;160:9,
12
**big (1)**
106:13
**binder (5)**
17:15,24;108:12;
138:11;144:10
**bit (12)**
9:18;24:10;30:14;
33:25;34:1;36:21;
49:8;83:22;154:7,18;
163:11,13
**blah (12)**
41:18,19,19;42:3,3,
4,7,8,8,8,8,9
**blank (1)**
23:7
**blow (2)**
48:24,24
**blue (5)**
124:18,20;125:13,
25;126:3
**Board (8)**
56:16;71:24;99:2;
109:18;116:2;119:24;
162:16,24
**Bob (2)**
29:9;135:6
**bones (1)**
88:23
**booked (1)**
91:18
**booklet (1)**
17:19
**both (12)**
9:10,10;21:21;29:7;
72:15;96:1,9,13;97:9;
130:7;133:13;159:23
**bottom (5)**
27:24;28:16;36:7;
49:12;86:9
**bought (1)**
123:7
**bound (2)**
31:3;142:2
**boundaries (2)**
130:6,9
**bounds (1)**
130:15
**box (6)**
6:6;7:2;8:12;11:11;
128:25;147:25
**boy (2)**
36:14,15
**brand (1)**

LEGAL ELECTRONIC RECORDING, INC.
216-881-8000 www.lerinc.com

TAGNETICS, INC.                                                                    October 18, 2019

140:22
breach (2)
  66:24;67:1
break (7)
  11:17;91:3,5,10,14,
  15;92:21
breaking (1)
  128:8
brief (15)
  4:14;14:20,22,22,
  25;15:7;54:25;92:9,
  13;93:13;148:10;
  158:9,10,15;162:8
briefly (1)
  156:9
bring (7)
  31:3;45:19;66:17;
  69:22;142:25;143:4,7
brother (2)
  127:24;128:9
brought (7)
  68:24;69:8;96:3;
  142:4,6;149:15,16
bucket (1)
  135:25
bunch (3)
  30:11;146:3,7
business (3)
  19:1;99:9;147:2
buyer's (2)
  52:11;77:23
buying (2)
  41:10;146:7

**C**

calendar (1)
  134:3
call (30)
  5:8,9,13,24;7:7,24,
  25;8:1,3;12:20,24;
  17:10;28:4;32:18;
  33:7;48:25;68:21,22;
  70:16;72:17;90:17;
  95:11;97:17;98:9,14;
  129:4,7;131:18;
  136:7;162:13
called (6)
  34:1;52:6;96:4,6;
  136:22,23
calling (4)
  30:18;32:19;35:15;
  72:25
call-out (1)
  149:10
calls (4)
  22:10;30:11,15;
  32:14
came (12)
  30:21;32:15;38:22;
  53:7;91:6;105:11;
  125:12;133:20;
  134:18;145:19;147:4;

149:8
camera (1)
  80:13
can (111)
  5:24;6:13,23,25;
  7:24,25;8:1,2,2,11,11,
  16,19;10:6;11:6,13,
  17;12:11,21,21,22,23,
  25;13:8,9,19;18:16;
  19:23;20:14,17,17;
  21:2,20,23;22:25;
  23:11;25:2;33:11;
  35:7;36:15;41:2;
  47:22,24;49:5;50:4;
  52:14,19;54:6,17;
  55:24;56:8;57:21,24;
  59:2,10,21;60:24;
  62:11;63:15;67:11,
  24;70:3,11;74:4;77:6,
  10;78:10,23,25;79:1,
  6;81:24;83:15,21,23;
  84:1;85:23;92:3,16,
  17,18,18;101:12,13,
  18;106:12;107:6,11,
  19,25;108:9;109:9;
  110:18;119:1;120:7,
  17;121:14;125:10;
  129:1,15,15,17;
  132:12;133:24;
  135:13;138:24;144:9;
  146:23;147:9;163:11;
  164:4
cancel (3)
  61:24;96:11;161:13
canceled (1)
  137:17
capability (1)
  146:20
capacity (1)
  122:17
capitalized (1)
  160:9
capitals (2)
  77:4,6
caps (2)
  15:8;36:9
capture (1)
  88:18,24;89:13
captured (1)
  88:2;89:9,16
captures (1)
  33:24
car (1)
  91:24
career (5)
  18:24;42:22;43:3;
  64:9;87:21
careful (2)
  51:25;52:4
carefully (1)
  84:25
carries (1)
  28:18

carry (1)
  159:10
carve- (9)
  41:1,22;63:15;
  64:15,22;68:20;69:5;
  117:3;161:24
carve-out (28)
  38:23;40:12,24;
  41:12,14,17,23;42:15;
  44:1,4,7,22;45:22,22;
  63:23;64:4,6,10,19;
  70:14;96:23;97:1,2,4;
  112:9;159:21;160:13;
  161:21
carve-outs (36)
  14:16,18;15:12;
  31:10,15;32:5;33:21;
  45:23;49:4,7,10,24;
  51:14;52:10;63:21;
  64:13;69:9,25;71:6,
  17,20;89:17;96:22;
  97:10;112:17;115:23;
  116:7,10,20;117:9,13,
  23;122:12,22;159:17;
  160:14
Case (52)
  3:7;5:7,20,20,23;
  6:5;7:10;12:19,21;
  13:3,3,7,11;18:14;
  19:16;22:21,24;37:9,
  11;42:25;43:4,11;
  44:2;46:15;47:2;
  55:15;64:1;65:15;
  68:2,8;72:3;85:2,4;
  90:17;92:25;93:4;
  100:7;101:4;120:12;
  125:1;129:5,18;
  131:9,19,24;132:5,8;
  133:15;141:24;148:4;
  155:14;162:23
cases (12)
  5:22,25,25;6:24,25;
  7:1,3;8:5;12:19;
  19:10;93:2;158:3
cash (24)
  16:13;62:16;63:5;
  74:9;130:16,18;
  133:13;137:13;
  140:18;144:22,23,23,
  23,24,24;145:22;
  146:9,9,21;147:5;
  148:21,22;149:1,7
cash-strapped (1)
  26:4
catch (2)
  91:14,23
category (1)
  133:1
caveat (2)
  68:8;164:5
CC (1)
  22:21
CCs (1)

25:13
Center (1)
  93:16
CEO (2)
  31:6;37:16
certain (5)
  23:11;31:1,22;
  88:17;126:25
certainly (7)
  30:16;52:2;78:15;
  89:16;124:23;127:25;
  161:20
certificates (3)
  89:11,19;146:22
CFO (2)
  54:20,22
chairman (3)
  47:1;93:24;99:2
chance (12)
  26:19;85:19;96:16;
  100:3;111:13;134:12,
  12,13,14;139:3,12;
  140:8
change (6)
  23:14;52:12;56:21;
  94:17;132:23;151:1
changed (2)
  145:24;151:7
changes (4)
  96:14;97:10;
  151:10;161:25
changing (1)
  51:5
characterization (1)
  111:19
characterize (1)
  65:23
chart (13)
  14:23;25:18,22;
  28:4,11,17;33:18;
  35:25;65:4;143:8,11;
  145:19,20
charts (2)
  61:13;76:23
chosen (1)
  30:1
chronological (1)
  154:15
Cincinnati (3)
  91:19,22;92:6
claim (6)
  29:19;30:2;111:23;
  134:3,7;160:17
claims (15)
  29:9;31:19;33:22;
  41:21;44:24;45:1,5,5,
  7;66:15,16;67:13;
  77:23;122:5;150:11
clarification (3)
  7:24;39:1;74:19
clarify (6)
  12:17;13:11;34:23;
  70:3;112:21;114:13

clarity (1)
  96:25
clause (1)
  51:3
clean (2)
  99:19;103:5
clear (21)
  24:13;31:21;64:5;
  65:20;97:18;98:4;
  109:15;118:4,5,10,17;
  119:4,7;136:19;
  144:19;152:18,19;
  156:13;159:7;160:2;
  161:10
clearer (1)
  110:15
clearly (15)
  13:25;14:3,13;33:3;
  48:19,25;49:3,17;
  52:3;109:1;118:8;
  120:18;136:17;
  146:19;163:3
CLERK (26)
  3:2,19;12:4,7,9,12,
  15;18:2,6,10;58:4,7;
  82:2,10,13;91:1;
  92:20,22;93:8;108:9;
  129:1,9;148:11;
  158:7;164:19;165:9
Clerk's (2)
  82:5,8
Cleveland (1)
  3:15
client (9)
  31:5;32:7,7;61:20;
  69:21;71:4,4;136:16;
  162:20
client's (1)
  31:3
close (6)
  84:9,19,25;130:15;
  136:3;149:19
closed (1)
  30:23
closely (1)
  154:7
closer (2)
  133:22;136:4
closing (1)
  9:4;136:5;158:9,9,
  15;161:8;162:4,7
co- (1)
  22:22
co-counsel (3)
  22:24;54:1,11
cognizant (1)
  149:19
collaboration (1)
  50:16
colleague (1)
  154:11
colleagues (1)
  66:17

**TAGNETICS, INC.**

October 18, 2019

collectively (1)
39:22
combination (2)
23:15;84:16
commend (2)
165:4,5
comment (1)
109:6
commercial (3)
19:1;91:6,7
committed (2)
36:23;97:14
common (1)
73:14
communicate (12)
22:9,13;114:22;
115:2,7,10;123:25;
124:7,10;126:7,23;
164:17
communicated (5)
14:9;52:5;107:6;
114:17;124:2
communicating (3)
20:3,23;22:13
communication (4)
21:6;23:2;25:10;
97:20
communications (3)
22:3;51:23;52:1
companies (5)
39:16;44:14;99:2,3;
121:8
company (41)
26:4;27:6,13;29:5,
12,19;31:1,6,12,19,
23;42:23;47:1;55:14;
56:15,17;93:21,24,25;
94:1,4;95:1;109:18;
115:24,25;116:6,11,
14;123:4,12;124:4;
133:11,14,23;135:25;
145:23,24;146:5,18;
147:4;148:21
company's (3)
29:1,21;32:1
comparison (1)
84:4
Compass (32)
38:15,24;39:3,18;
40:22,23;41:1,12,15,
17,19,22;42:3;43:4,6,
12,13;44:21;51:13,
15;55:3,15;56:16;
119:11,17,20;120:1,5;
121:10,16,19,23
complete (3)
5:19;66:22;69:18
completed (1)
61:23
completely (5)
26:16;30:25;137:4;
142:16;147:12
completes (1)

5:20
comply (1)
84:12
composite (1)
10:12
comprehend (1)
118:9
compromising (1)
149:4
computer (3)
137:3,8;158:6
concept (8)
32:4;75:8;88:19;
112:23;113:1;141:17;
142:4,6
concepts (1)
87:23
concern (3)
52:24;69:19;70:20
concerned (3)
56:9;85:3;142:15
concerning (4)
59:1;94:5;95:19;
98:23
concerns (12)
14:13;30:25;31:18;
50:8,24;51:1;72:4,5;
85:5;87:18;130:13;
151:11
concerted (1)
151:16
concession (1)
72:8
concise (6)
118:4,6,11,17;
119:4,7
concludes (1)
158:3
conclusion (1)
162:18
conclusive (1)
150:16
conditions (10)
28:12;53:10;63:5,7;
88:15;95:21;96:15;
98:22;130:21;161:25
conduct (4)
5:8,11,13,15
conducted (2)
55:8,8
confer (1)
154:24
conference (7)
36:24;94:11;95:11;
97:17;98:9,14;136:7
conferring (2)
54:10;58:19
confirm (4)
33:24;35:16;82:22;
158:15
confirmation (1)
34:12,20;76:13
confirmed (3)

14:7;34:14;96:2
confirming (8)
32:18,20;33:5;
35:18,23;49:20;52:7,
8
confuse (1)
114:14
confused (1)
102:15
confusion (4)
14:20;15:5;35:23;
76:17
congratulate (1)
165:4
connection (1)
19:21
conscious (1)
7:13
consequently (1)
98:9
consider (4)
27:5;47:10;61:19;
134:16
consideration (4)
27:6;39:10;44:12;
56:23
considered (3)
74:10,11;116:12
considering (1)
76:20
consistent (5)
87:24;157:2;160:4,
6;161:3
constitute (2)
6:22;88:21
constitutes (1)
51:21
consulting (2)
117:7,16
contact (2)
56:20;164:19
contains (1)
15:4
contents (1)
156:15
contesting (1)
110:22
context (10)
64:5,15,16,18;
71:19,20;72:1;97:5;
161:23;162:12
contexts (1)
161:22
contingencies (1)
26:11
contingent (1)
26:10
continuation (1)
140:22
continue (3)
26:12;117:15;
155:11
continued (1)

149:3
Continuing (1)
27:7
contract (6)
66:14,24;67:2;
103:5;142:1;147:12
contracts (6)
29:4;40:8;94:5;
99:1;108:5;157:5
contractually (1)
94:21
contraption (1)
20:13
contrary (3)
30:1;116:17;159:6
contrast (1)
42:13
contrasting (1)
42:12
control (1)
146:4
controlling (1)
39:14
conversation (10)
22:2;50:25;70:2,4,
6,8;72:7;95:21;98:24;
135:11
conversations (7)
21:12,15;95:18;
132:18;133:14;135:1;
143:6
convincing (1)
41:11
copied (5)
14:23;22:3;34:21,
22;81:7
copies (3)
8:14;9:14;79:13
copy (12)
35:6,21;48:1,5;
52:23;53:7;79:6,10;
80:14;117:21,24;
152:1
copying (1)
81:2
Core (2)
66:5;75:12
corner (1)
126:15
corporate (7)
39:13,17;44:14,19;
55:13;121:8,23
correcting (1)
76:23
correctly (7)
53:5;76:9;102:13;
107:1;139:6;142:3;
152:12
correspondence (2)
151:2;157:11
costs (1)
29:13
counsel (20)

3:9,15;8:14;15:15;
18:24;22:23;24:24;
25:3;29:10,25;37:25;
45:15;105:25;106:5,
16,19,22;121:6;
160:22,23
counter (12)
26:20;28:3,13;76:2,
5,8,9;85:20,21;140:7,
13,17
counteroffer (5)
27:4;86:20;130:17;
134:13;140:11
counteroffers (1)
20:9
counterproductive (1)
30:1
couple (3)
87:6;94:15;127:1
coupled (1)
47:15
course (7)
4:23;29:17;64:9;
99:5;120:10;134:4;
136:3
Court (302)
3:3,8,13,17,22,24;
4:1,12,16,18;5:1,5;
6:22;7:9,16;8:1,11,
23;9:10,11;10:15,21,
23;11:3,9;12:6,10,12,
15,17;13:6,14,17,22;
14:9;15:6;16:1,5,18,
25;17:3,6,13,16,22;
18:1;22:25;24:5;
27:12;29:2,4;32:18,
20;33:7,9;34:7;35:9,
15;36:25;40:9,19;
41:7,10,24;42:2,11,
17;45:16,21,25;
46:21;47:3,5,7,20;
52:6;53:17,20,24;
54:3,13;55:11,20,23;
56:11,24;57:6,8,17,
23;58:2,4,7,9,23;59:2,
10,14,24;60:4,6,6,8,
13;67:6,9,14,17,20,
23;68:12,15,18;70:5,
11;77:16;78:8,12;
79:6,10,13,18,21;
80:5,12,17,18;81:3,4,
6,14,17,21,22;82:1,6,
7,10,13,15,20;83:1,6,
8;85:20;86:2,24;87:2,
4,6;88:4;89:1,20,21,
24;90:1,2,5,7,9,13,19,
24;91:2,5,25;92:2,4,
10,15,17,22,24;93:7;
96:9;100:2,5,10,14,
20,22;101:3,6,9,12,
13,17,22,25;102:3,6,
8,11,22;103:6,9,12,
14,22;104:2,6,11,15,

LEGAL ELECTRONIC RECORDING, INC.
216-881-8000 www.lerinc.com

**TAGNETICS, INC.**

October 18, 2019

18,21,24;105:11;
108:14,18;109:23;
110:1;113:15;114:19;
118:22,25;125:3;
127:14;128:15,18,20,
24;129:4,8,17;131:1,
8,11,14,17,17,22;
132:1,4,7;136:5,11,
25;137:9,24;138:4,
20;139:16;144:8,11,
13;145:5,8,11,13,17;
146:12,15;147:14,18,
22,24;148:2,7;149:19,
20;151:1,6,18,24;
152:2,7,8,19,23;
153:24;155:1,7,16,16,
25;156:4,7,19,23;
157:6,16,20,23;158:2,
5,8,19,22,24;159:2,4,
11;160:25;161:7;
162:1,3,6;163:9,9;
164:22,25;165:6,9
**courtroom (3)**
6:2;11:21;165:3
**courts (1)**
19:2
**Court's (5)**
9:16,22;84:12;
147:15;157:17
**cover (7)**
17:8,9;36:17;53:24;
58:15;78:10;85:24
**covered (1)**
89:19
**craziness (1)**
95:18
**crazy (1)**
134:6
**creates (1)**
6:3
**Creditors (52)**
4:5;5:1,10,21;
10:24;11:16,18;12:8;
14:6,17;15:10,15;
16:7,10,12;19:22;
20:7,20;21:13;22:22;
25:9;26:15;27:20;
28:7,12;30:4;31:13,
19;32:5;37:4,7,11,12,
14,19;38:22;39:3;
40:16;43:17;51:24;
54:5;55:23;58:18;
70:16;87:19;88:16;
89:2;94:6;146:10;
158:21;159:7;164:23
**Creditors' (11)**
12:19;20:21;82:18,
19;93:2;104:7,12,13;
155:17;156:1,2
**critical (1)**
113:19
**cross (2)**
59:8,10

**cross- (4)**
57:13;59:18;
104:21;156:7
**cross-examination (11)**
5:11,16;60:14,18;
78:16;105:1;128:22;
131:2;138:7;144:15;
156:10
**cross-examine (7)**
59:11,16;60:15;
68:9;82:16;100:16;
138:5
**crossing (1)**
163:16
**culmination (1)**
148:17
**current (6)**
39:16,19;44:13,16;
116:3;145:24
**cut (12)**
27:4;85:18,19;
86:11,17;111:18,19;
112:1;134:20,21;
139:8,21
**cuts (1)**
153:5
**cutting (1)**
139:6

## D

**Dan (5)**
124:10,17,20;
127:2,19
**Daniel (6)**
125:8,25;126:3,4;
127:4;128:4
**danieljwhite@msncom (2)**
126:8,20
**date (17)**
19:23;21:16;36:23;
47:8,15;71:13;77:25;
89:16;97:24;99:8,20;
100:2;106:21;116:13;
127:11;163:25;
164:12
**dated (6)**
8:17;28:16;86:10;
125:7;126:13;127:22
**dates (2)**
47:9;73:21
**day (22)**
3:4;4:24;20:12;
21:16,25;22:1,8;
25:24;27:2,21;29:15;
30:9,10;33:22;50:12;
68:5;77:5;78:5;
106:14,15;112:19;
151:8
**days (5)**
33:14;94:15;95:17;
134:3;164:2
**Dayton (2)**

91:20;164:6
**deadline (2)**
72:18;98:15
**deal (6)**
24:11,14;30:23;
38:5;45:3;139:24
**dealings (1)**
122:3
**deals (1)**
38:7
**Debtor (1)**
13:23
**debts (1)**
151:14
**December (1)**
18:20
**deceptive (1)**
112:8
**decided (3)**
51:18;132:18;147:5
**decision (8)**
163:10,15,20,25;
164:3,9,13;165:8
**decisions (5)**
7:14;163:12,13,14,
18
**declaration (1)**
54:19
**declarative (1)**
107:18
**deemed (1)**
55:16
**default (13)**
49:12,17;63:9;75:8;
108:25;109:5,8,9;
110:8,10,13,17,18
**defendants (1)**
134:7
**deferred (1)**
66:6
**defies (1)**
159:16
**defined (3)**
55:13;64:16;113:4
**definitely (1)**
19:12
**definition (10)**
63:23;87:17,20,20;
88:6,12;97:2,4,5;
157:1
**defy (1)**
159:13
**delay (3)**
33:25;34:1;100:1
**deliberate (2)**
30:22;32:25
**demand (8)**
23:24;26:2;62:20,
24;74:12,17,21;75:19
**demanding (1)**
133:5
**demands (6)**
20:7;21:3;23:10,16,

16;77:25
**demonstrate (2)**
55:5;109:11
**demonstrated (1)**
150:14
**Department (1)**
93:17
**describe (8)**
8:13;22:25;52:14;
61:6;63:24;88:24;
112:21;139:5
**described (5)**
34:13,25;39:11;
44:12;130:10
**describes (1)**
88:13
**describing (2)**
138:25;139:1
**description (6)**
78:3;88:2;111:20,
24;112:18;160:5
**despite (1)**
31:13
**DET (2)**
123:5,8
**detail (1)**
49:9
**details (3)**
87:13;88:19,20
**determine (1)**
95:7
**determined (1)**
58:13
**dictated (1)**
32:5
**dictionary (1)**
64:20
**difference (2)**
16:15;36:2
**differences (2)**
36:2;98:25
**different (14)**
9:14;16:20;28:5;
40:1;53:9;81:23;
90:13,15;92:18;
147:13;156:24;
161:22,22;164:7
**difficult (2)**
11:21;154:8
**difficulties (1)**
22:12
**digest (2)**
163:20;164:3
**diluted (1)**
157:14
**dire (1)**
108:4
**direct (11)**
5:10;18:11;58:10;
77:19;78:16;93:11;
100:17;104:19;
129:12;132:10;
148:14

16;77:25
**Directing (5)**
21:19;22:15;24:21;
32:10;36:12;37:5;
50:2,17;54:15;86:6
**directive (1)**
84:12
**directly (1)**
87:22
**director (6)**
56:15;93:15,25;
94:3;122:13,23
**directors (5)**
39:20;41:18;44:16;
56:16;122:8
**disadvantage (2)**
7:13;154:18
**disagree (1)**
74:19
**disagreed (2)**
71:13;74:20
**disagreement (4)**
69:4;71:21;99:5;
149:16
**disappointed (1)**
137:20
**discharges (1)**
39:15
**discovery (1)**
125:1
**discuss (12)**
51:8;57:24;69:21;
71:3;98:15;99:6;
128:3;130:6;134:5;
142:19;143:9;151:10
**discussed (29)**
21:22;33:24;51:2,5,
12;63:4;72:13,13;
75:7,8,9;85:12,15;
87:13;88:20;96:14;
105:19;107:9;114:7,
7;119:24;130:22;
141:6;142:18;143:19;
150:22;151:22;
152:13;161:23
**discussing (10)**
34:7;69:4;71:21;
75:11;108:3;113:14,
15;141:17;142:24;
143:8
**discussion (20)**
24:4;31:17;49:16,
21;54:4;63:2,9;65:13;
69:10;71:10,19;
72:14;80:24;89:12;
114:11;136:14;
142:23;162:9,17,18
**discussions (24)**
11:9;15:13;19:20,
25;20:4,6,10;22:4;
31:6,16;48:17;49:11;
50:14;63:11;69:1;
85:8,19;86:12,12,19;
111:21;132:18;142:5;

LEGAL ELECTRONIC RECORDING, INC.
216-881-8000 www.lerinc.com

(171) courtroom - discussions

TAGNETICS, INC.

October 18, 2019

149:14
disguise (1)
  161:21
dishonest (1)
  45:4
dismissal (1)
  51:5
Dismissal/withdrawal (1)
  33:21
dismissed (1)
  65:2
dismissing (1)
  134:3
dispute (1)
  56:3
disputed (1)
  95:4
disputing (1)
  94:18
distinction (1)
  42:14
distinctly (1)
  30:8
distributions (1)
  66:23
District (1)
  3:3
dividends (2)
  66:21;89:15
docket (1)
  3:7
document (24)
  8:18;10:3;47:24;
  62:10;66:7;79:25;
  80:6,13,18;81:8,14;
  82:8;97:8;99:17;
  107:10,10;108:7;
  118:1,3,5,11,16;
  119:4,8
documented (5)
  33:10;34:9;73:18;
  113:17;144:3
documents (8)
  59:6;99:11,14,23;
  101:9;103:7,14,24
dollar (1)
  66:4
done (19)
  7:19;8:19;9:3;43:3,
  22;67:5;86:18;97:15;
  99:21;100:16;103:25;
  104:18;123:23;127:9;
  128:19;139:19,24;
  162:25;163:14
donnas (1)
  91:7
door (1)
  20:2
dotting (1)
  163:16
down (10)
  27:7;63:9;89:25;
  94:11;101:17,17;

114:11;134:15;
136:20;149:3
DR (80)
  3:21;5:3;6:21;7:6,
  15,22;8:9,22;13:5,13;
  16:23;17:2;40:4;
  45:10,18;46:22,25;
  56:9,13;57:21;58:1;
  59:4;60:16,19,25;
  61:4;67:3,5,16,19;
  87:1;90:4;92:5,9,13;
  93:5,10,12;100:8,12,
  25;101:2,8,15,19;
  103:1,10,13,15,24;
  104:5,17,20;108:17,
  19;109:25;114:18;
  117:20;118:19,24;
  119:7;126:18;127:22;
  128:19,23;129:1,3,6,
  13,20;130:24;131:20,
  25;132:3,6;138:13;
  147:21;148:18;161:9;
  164:24
draft (30)
  36:19;38:15;43:14;
  50:6,65:13;67:10;
  73:8;78:7;85:6,9;
  87:14;88:9;97:14;
  98:6,23;99:10;103:3;
  118:12;149:23;150:5,
  6,8,18,20,20,23;
  151:7;154:4;157:3;
  163:5
drafted (7)
  37:1;40:14;42:22;
  54:19,22;65:25;160:4
drafting (1)
  129:21
drag (1)
  133:19
drawing (1)
  23:7
drive (1)
  137:5
driving (2)
  30:10;32:7
due (2)
  94:21;97:5
duplicate (1)
  9:18
duplicative (2)
  9:13;10:2
during (16)
  4:23;6:10;21:12;
  95:18;98:15;107:7;
  116:22;123:13,19;
  139:1,2;142:3,4,23;
  143:6;146:2
duty (1)
  31:3
duty-bound (1)
  69:20

E

Earley (146)
  3:23,23,24;4:5;5:4;
  12:20,22,24;13:7,8;
  16:3,6,19,21;20:1;
  21:18;23:6,12,21;
  25:12;26:17,22;
  27:23;28:14,16;
  30:16,17,18;32:15;
  34:2,5,7;35:22;36:18;
  47:3,4;48:1,6;50:7,19,
  25;52:23;53:8;57:3,5,
  18;60:1,3;61:11,12;
  65:1;67:20,22;68:9,
  11,22;69:11,13;
  70:21;75:13,21;76:1;
  78:18;86:10;87:2,3;
  90:5,6;93:23;95:12,
  14;96:1,8,13;97:9;
  100:18,23;101:1,5;
  102:9,19,25;103:8;
  105:16;107:22;111:3,
  10,19;112:5;113:12,
  13,14,16;114:8;
  123:20;124:6;129:7,
  11,12,14,19;131:2,5,
  8,10,16;132:7,9,10,
  11;136:13;137:25;
  138:2,5,7,9,15,21,24;
  144:1,13,16,17;145:5,
  7,12,16,21;146:14,19;
  147:14,19,20,24;
  148:1,3,5,7,25;
  151:23;157:19,20,22;
  158:4;162:4,5
Earley's (9)
  13:3;17:1;27:1;
  65:1,5,66:2,10;
  111:12;160:5
earlier (23)
  21:8,20,25;35:3;
  36:1;37:9;42:13;48:4;
  49:14;52:4;53:3;
  58:23;77:22;106:25;
  116:1;120:12;123:3,
  14;141:16;151:22;
  153:6,6,10
early (6)
  18:23;30:13;34:8;
  39:8;106:14;124:21
earnest (2)
  20:11;112:4
ease (1)
  9:21
easier (3)
  9:12,18;11:23
edit (1)
  98:23
effect (6)
  5:23;6:6,16;12:2,
  19;146:16

effective (1)
  100:1
effort (2)
  151:12,16
either (10)
  17:19;19:13;21:25;
  43:14;61:11;66:8;
  153:7;157:20;159:20;
  161:14
elaborated (1)
  73:19
electronically (1)
  80:10
elements (1)
  38:13
elicit (2)
  8:6;68:2
elicited (2)
  9:7;68:7
else (4)
  42:6;75:18;156:4;
  164:14
else's (2)
  13:11;68:8
email (244)
  8:17;9:11,24,25;
  14:1,5,21,23;15:5,8;
  20:2,19,25,25;22:2,3,
  5,10,16;23:1,11,19,
  21,23;25:1,7,12,12,
  16,17,19,21,24;26:13,
  14,16,18,22;27:2,20,
  23;28:13,16,21,23;
  30:4,6,6,7;31:9,11;
  32:16,20;33:3,3,19;
  34:5,11,13,16,21,22,
  24;35:2,14,17,19;
  36:16,18;37:3;41:5;
  42:5;47:25;48:2,4,8,
  15,20;49:1,15;50:7,
  20;52:21,22;53:2,6;
  60:20;61:8,11,12,15,
  16,17;63:4,8,13;
  64:11;65:5,6;73:13,
  15;75:11,22,24,25;
  76:7,8,16;77:8;78:22;
  80:23;82:17,21;83:6,
  11,17;84:20;85:13,
  17;86:9,14,15;94:13,
  15;96:16,20;97:13;
  101:19;102:14,15,16;
  103:16;105:4,5,12,18,
  22;106:6,6,10;107:2,
  8,11,12,14;109:3;
  110:13,16,21,24;
  111:2,10,12,16;112:4;
  113:12,21,25;114:24;
  115:3,4,10,13;116:10;
  117:22,22,24;124:18,
  18,19,20,25;125:5,7,
  9,12,14,17,22,24;
  126:2,4,6,8,11,13,17,
  24;127:10,16,20,21;

132:22;133:25;
134:25;138:25;139:2,
8,10,13;140:7,12,13,
17,19,24;141:1,1,2,4,
7,10;143:2,9,15,16,
24;144:18;150:4,13,
16;152:5,12,14,20,24;
153:8,14,22;154:9,9,
22,22;155:18;156:16;
157:4;159:7,9,18;
160:3,4,21;161:4;
164:18,20
emailed (1)
  83:2
emails (40)
  9:19;10:13;14:1;
  15:14;20:19,21,22;
  21:2,8,20;41:3;42:2;
  48:23;49:14,19;
  50:14;52:7;72:17,18,
  19;73:1;76:13,15,21;
  79:17;84:8,15;
  105:13,15;115:9;
  133:13;152:21;
  153:10,24;154:14;
  155:5,9,20;156:14;
  160:1
emphasizing (1)
  36:9
employees (2)
  39:21;95:1
employment (9)
  18:24;69:18;71:23;
  109:20;141:23;
  147:12;157:4;162:16,
  23
encourage (5)
  106:4,9;126:7;
  127:4,6
encouraged (4)
  15:14;24:24;
  105:24;130:16
end (11)
  25:2;44:8,23;45:8,
  24;52:5;81:12;
  126:19;162:18;164:9;
  165:10
enforce (7)
  4:3;8:24;13:24;
  19:16;54:18;55:1;
  99:8
enforced (1)
  161:5
engineering (1)
  142:16
enough (2)
  118:8;139:17
enrichment (1)
  67:2
enter (1)
  101:10
entered (4)
  46:13;73:15;103:2;

LEGAL ELECTRONIC RECORDING, INC.
216-881-8000 www.lerinc.com

152:17

**entertain (1)**
53:18

**entertained (1)**
49:14

**entire (5)**
22:13;43:3;61:22;
65:17;66:12

**entirely (1)**
97:4

**entirety (5)**
65:7;74:16,20;
78:25;83:23

**entities (5)**
39:14,18;44:15,20;
121:10

**entitled (2)**
5:15;7:20

**entity (5)**
42:25;46:25;51:18;
55:13;120:13

**enunciate (1)**
120:18

**enunciating (1)**
65:17

**equipment (1)**
67:1

**equity (7)**
39:21;44:17;89:3,7;
146:17;147:1;157:10

**errands (1)**
96:19

**especially (1)**
149:18

**essence (1)**
89:17

**essentially (4)**
27:7;29:18;53:12;
70:14

**Even (20)**
20:20;24:3;27:15,
21;46:14;47:14;
50:11;84:5;85:13;
96:18;99:20;124:18;
130:15;134:16;
136:18;150:23;151:6,
9;160:5,7

**evening (5)**
26:17;96:4,5;114:1,
4

**event (22)**
15:5;22:9;24:2;
28:10;87:10,11,17;
88:1,7,8,17,21,24;
133:2,11;136:1;
145:20;146:1,5,9;
157:1;160:5

**events (2)**
50:15;88:13

**eventually (3)**
35:12;71:14,16

**everybody (6)**
4:19,21;87:7;

101:25;164:19,25

**everybody's (1)**
158:3

**everyone (1)**
22:2

**evidence (20)**
15:24;16:15;60:11;
68:3,7;90:19,22;
94:17;100:3,13;
101:11;104:14;105:5;
116:16;131:23;148:3;
151:5;153:18;156:3;
157:24

**evidenced (1)**
43:5

**evidentiary (3)**
4:2;6:8;9:3

**exact (4)**
19:23;36:1;96:5;
127:11

**exactly (7)**
34:3;72:12;86:15;
96:10;113:10;123:22;
164:9

**exam (1)**
7:19

**examination (17)**
5:9,10,13;18:11;
58:10;64:17;77:19;
85:25;86:3,4;100:17;
128:21;129:12;
144:14;145:9;156:8,
20

**examine (10)**
6:24;12:21,24;13:7;
17:12;56:7;57:14;
58:25;59:19;104:22

**examining (1)**
83:3

**example (3)**
70:24,24;73:10

**examples (1)**
66:13

**except (6)**
15:3;36:2;60:7;
90:20;95:4;158:18

**excepting (1)**
41:19

**exception (6)**
19:12;49:3;51:13;
58:15;63:24;159:22

**exceptions (6)**
15:12,17;49:6;
52:11;63:21;64:14

**exchange (7)**
32:20;39:10;44:11;
48:20;49:1;85:9;
152:5

**exchanged (4)**
14:2,11;50:13;
105:18

**exchanges (1)**
37:3

**excluded (2)**
10:19;66:6

**exclusively (3)**
21:17;30:16,17

**Excuse (5)**
92:5;98:10;114:18;
125:18,20

**excused (2)**
90:10;128:25

**executed (1)**
33:14

**executive (1)**
99:3

**exhibit (158)**
9:11,15;10:1,7,12,
20;14:25;15:3,21,21,
22;17:17,24,24;20:14,
18;21:7,19;23:20;
26:25;27:17,24;
32:11;34:15;35:6,7,
20;36:13,25;37:6,9,
17;38:20;39:1,5;40:3;
43:17,25;44:10;46:2,
6,7,10,12,18;47:8,9,
16,22;48:7,12,16;
49:15;50:2,18;52:17,
17;53:4,24;54:12,15;
56:11,25;57:2,9,15,
16;58:12;60:1,8,24,
25;61:1,2,17,17;
62:12,12,13;64:12;
65:5,11;66:11;76:17;
77:10;78:13;79:8,9,
16,20,24;80:4,6,11,
12;82:18;86:6;87:16;
101:1,1,15,18,19,23,
24;102:1,3,4,5,6,9,12,
14,15,17,19,23,24;
103:2,2,3,4;105:4;
108:12,19,22,23;
110:24;111:4,12;
118:7,11,12,17;119:3;
120:7;121:1;122:18,
19;132:14;138:24;
143:16,24;151:21,24;
153:1,1,1,11;154:1,5;
155:8,17;156:1,2;
158:18;160:10,10;
161:3

**exhibits (73)**
8:10,12,15,20,21;
9:8,9,13,17;10:2,12;
14:25;15:1,2,2,22;
17:15;19:24;45:17;
47:14;53:23;54:7;
55:21,25;56:2,6,7;
57:17,20;58:11,11,18,
20,24;59:1,5,18,21,
22,25;60:7,9,10;
79:14,25;80:6,16;
81:22;82:20,21;
90:20;100:6,9,10,12,
19;103:1,18;104:3,7,

11,12,13,15;132:1;
137:24;138:15;151:5,
19;156:5;158:16,17;
159:1

**expect (5)**
95:15;114:13;
146:1;147:3;160:18

**expected (5)**
96:6,24;118:1,3;
137:14

**expecting (3)**
78:6;118:13,14

**experience (4)**
19:17;65:12;72:23;
90:15

**explain (8)**
6:6;24:3;26:5;
48:17;49:8;53:9;
70:17;107:11

**explained (2)**
24:9;107:13

**explaining (2)**
26:11,12

**explanation (2)**
117:24;118:1

**explode (1)**
42:4

**express (3)**
67:2;72:3;94:3

**expressed (4)**
69:19;70:19;94:13;
99:23

**expresses (1)**
50:8

**extensively (1)**
4:6

**extent (6)**
5:17;9:16,17;42:13;
46:4;78:17

**extra (1)**
135:17

## F

**face (1)**
160:16

**facing (1)**
136:5

**fact (20)**
14:11;15:1,19;17:6;
32:22;43:5;47:1,16;
49:25;57:23;73:3;
75:21;76:16;86:14;
132:25;136:5,17;
150:24;151:2;161:15

**facts (2)**
8:4;9:6

**factual (1)**
6:8

**faded (1)**
81:9

**failed (1)**
109:19

**fair (4)**
78:3;88:1,20;89:8

**fairly (4)**
52:14;74:14;88:12,
23

**fall (1)**
48:19

**falling (1)**
161:15

**familiar (5)**
110:10,14;112:23;
113:1,6

**far (6)**
73:9;85:2;95:3;
126:17;134:15;
157:14

**fast (1)**
30:15

**favor (2)**
78:25;94:22

**favorable (1)**
47:11

**feasible (2)**
24:10;26:3

**February (4)**
125:6;126:6,14,16

**fed (1)**
81:20

**feel (3)**
7:12;149:16;163:7

**fees (1)**
29:13

**felt (3)**
133:3;137:15,18

**Fernandez (3)**
54:20;56:13,20

**Fernandez's (1)**
56:11

**few (8)**
50:9;54:12,24;
60:16;95:24;119:17;
138:6;164:2

**figure (3)**
15:11;54:6;133:17

**file (5)**
81:3,22;127:4;
137:1;158:10

**filed (14)**
4:3;5:6;7:10;33:22;
56:19;80:6,9,17;81:5,
5;94:7;116:13;128:7;
150:25

**files (1)**
80:5

**filing (9)**
47:8,9,15;80:18;
124:15;127:23;128:3,
4;133:16

**final (9)**
23:5;52:17;61:19;
62:2,3;63:13;72:17;
107:20;132:23

**finally (3)**

**TAGNETICS, INC.**

October 18, 2019

30:21;32:14;96:16
**financial (3)**
116:3;130:11,22
**find (3)**
28:2;62:10;138:13
**finds (2)**
9:12;125:9
**fine (18)**
10:15,17,21;12:6;
17:16;31:12;32:8;
53:20;54:13;68:18;
104:8,9;108:14,14;
131:8;155:1;158:14;
162:19
**fine-tuned (1)**
149:17
**finish (2)**
40:21;92:2
**finished (2)**
58:9;115:21
**firm's (1)**
55:11
**first (33)**
5:8;6:1;18:21;19:7;
20:3;21:15,24;23:11;
24:23;28:1;35:11;
36:16,17;38:17;48:8,
16;52:21,22;61:14,
18;64:8;76:24;79:1;
80:1;93:4;95:9;111:4;
126:17,19;142:11;
145:17;151:8;155:7
**five (3)**
66:24;96:5;134:2
**five- (1)**
11:16
**five-minute (3)**
12:10;57:24;58:2
**flat (2)**
20:8,9
**flat-out (2)**
26:16;57:9
**flexibility (1)**
164:8
**flight (3)**
91:18,23;92:6
**flights (1)**
91:13
**flipping (1)**
48:22
**floor (1)**
148:8
**flurry (1)**
72:17
**fly (2)**
74:5;91:19
**focus (6)**
84:12;85:3;108:6,9;
141:12;144:20
**focused (7)**
16:13;130:18,19;
133:12;140:17;
144:24;162:21

**follow (6)**
9:19;40:25;45:12;
99:4;100:18;144:18
**Following (6)**
22:1,8;25:24;35:23;
149:14;162:18
**follows (3)**
64:11;80:2;128:10
**follow-up (1)**
79:5
**foray (1)**
19:7
**forget (4)**
18:19;109:17,17;
138:10
**forgive (1)**
35:10
**forgot (2)**
19:23;20:1
**form (2)**
8:3;60:21
**formal (1)**
163:15
**former (4)**
39:16,20;44:14,16
**forms (2)**
61:6,10
**forth (30)**
13:25;14:15;15:23;
16:9;21:3;23:15;
24:19;25:15;30:19;
32:16;33:4;34:9,23;
35:8;41:4;48:9,23;
49:1;61:13;75:19;
84:9;91:13;95:19;
113:17;143:17,18,20;
144:2;145:1;151:12
**forthright (2)**
46:8,11
**Fortunately (2)**
6:1;22:12
**forward (12)**
24:2;26:19;27:6,13;
62:24;74:13;93:22;
100:2;111:13;139:14;
140:6;147:6
**forwarded (2)**
16:9;50:21
**found (1)**
11:19
**founder (2)**
93:18;123:4
**four (3)**
34:25;66:23;162:13
**fourth (2)**
25:1,6
**frame (2)**
34:18;164:2
**frank (1)**
15:16
**frankly (7)**
27:3;41:9;86:16;
98:19;111:17;113:19;

114:11
**fraud (1)**
113:8
**freedom (1)**
69:18
**frequently (1)**
30:18
**Friday (12)**
21:1;95:24;96:17;
97:13;98:1;99:18;
136:4,4;150:16;
155:21;161:12;164:1
**front (7)**
24:8;45:11,17;
124:22;135:5;137:2;
138:15
**frustration (1)**
132:13
**full (58)**
3:20;14:16;15:12;
18:6;30:25;31:10,13,
14;32:3;33:20;49:4,6,
9;51:14;52:9;63:20;
64:12;69:13,24,25;
70:20;71:17;72:9,10;
79:1;89:17;112:17,
23;113:1,3,6,10;
115:16,19,22;116:6,
10,20;117:3,9,13,23;
122:11,22;136:15,19;
141:17,21;142:5,7,15,
24;159:17,22;160:13;
162:10,19,24
**fully (5)**
32:1,2;33:14;
140:17;162:11
**funds (5)**
61:23;72:24;75:3,4;
95:5
**furious (1)**
30:15
**further (17)**
26:12;53:15;55:19;
63:9;67:15,17,19;
75:2;86:1,23;90:23;
99:14;100:1;128:16;
144:7;156:18;159:16
**furthermore (1)**
75:20
**FWIW (1)**
127:24

**G**

**gaps (2)**
98:18,20
**gave (2)**
99:11;117:13
**general (6)**
51:1;68:25;70:1;
74:14;95:19;146:2
**generally (2)**
11:8;43:9

**gentleman (1)**
37:20
**Gentlemen (3)**
3:19;12:7;23:18
**gets (2)**
10:16,17
**given (5)**
41:16;70:23;94:23;
96:12;141:14
**giving (4)**
31:12;70:20;99:14;
149:4
**glasses (1)**
125:19
**goals (1)**
149:5
**goes (8)**
17:6;21:7;23:14;
49:8;134:19;153:7,9;
155:20
**Goldsmith (1)**
124:8
**Good (17)**
3:11,13,17,22,24;
4:1;13:21;19:1;59:14,
15;63:16;64:3;91:3;
101:25;127:21;143:3;
151:12
**goods (1)**
66:25
**Googled (1)**
97:1
**graduated (1)**
18:19
**granted (2)**
76:18;88:19
**Great (3)**
10:24;13:14;112:22
**ground (3)**
5:18;17:8,9
**groundwork (4)**
4:19,21;10:7;22:7
**group (2)**
152:24,25
**growing (1)**
29:14
**guarantee (1)**
134:9
**guarantees (2)**
27:7;29:18
**guess (22)**
19:24;21:24;48:18;
51:25;59:7;70:9;
72:16;77:21;81:13;
83:25;85:24;95:24;
100:18;148:8,15;
149:21;150:13;
151:11;152:25;162:8,
14;164:17
**guidance (1)**
160:22
**guide (1)**
92:18

**guidelines (1)**
99:14
**Guy (1)**
3:5
**guys (7)**
7:17;32:18;67:16;
71:1;84:16;92:12;
95:7
**GW (1)**
18:19

**H**

**HAGER (145)**
3:25,25;4:1,5;6:16;
12:20,23,23;13:7,9;
14:24;17:4,5;23:8,9,
12,21;34:6,8,16;
35:14,21;36:19;39:8;
47:5,6,25;48:5,9;
50:20;52:22;53:7;
57:6,7,18;59:7,13,23;
60:4,5;65:6;68:13,14,
16,19;70:3,9,12;
77:17,21;78:4,10,19,
21;79:9,12,15;80:1,
13,14,21;81:4,8,11,
24;82:15,25;83:1,5,9,
10;85:23;86:2;87:4,5;
90:7;8:9;96:2,8,13;97:9,
22;98:19;102:15;
105:16;111:3;112:5;
113:14,16,18;114:5,7,
8,23;115:1,2,7,8,9;
117:21;124:6;130:7;
132:8,17;133:6;
135:1;136:12;143:17,
24;144:1,2;147:22,
23;148:6,8,9,13,14,
15;151:18,21,25;
152:4,13,22,25;154:1,
19;155:9,13;156:6,10,
12,20,22;157:2,11,16,
23,25;158:1;160:1;
162:6,8;163:9
**Hager's (4)**
13:3;50:8;66:10;
83:3
**hand (6)**
18:3;108:12;
125:18;133:19;
138:18;140:18
**handed (2)**
127:17;138:11
**hang (1)**
129:1
**happen (1)**
146:11
**happened (7)**
15:13;19:20;20:5;
30:5;41:20;47:1;
153:3
**happens (5)**

LEGAL ELECTRONIC RECORDING, INC.
216-881-8000 www.lerinc.com

TAGNETICS, INC.

October 18, 2019

25:5;146:2,6,6,8
**happy (1)**
  96:23
**hard (6)**
  79:6,10;103:11;
  105:10;137:13;
  146:23
**hardly (1)**
  109:15
**head (1)**
  42:24
**header (1)**
  79:3
**heading (1)**
  30:9
**hear (7)**
  29:20;32:17;35:9;
  95:25;98:2,12;129:2
**heard (3)**
  29:22;98:21;115:14
**hearing (8)**
  4:2,2;91:23;103:11,
  25;105:10,11;124:5
**hearings (1)**
  6:4
**hearsay (8)**
  56:25;57:1,3,10,10,
  11;58:14,15
**heart (1)**
  52:12
**heated (1)**
  162:17
**heirs (1)**
  39:12
**held (1)**
  146:18
**help (1)**
  124:25
**helpful (1)**
  165:6
**helps (1)**
  129:2
**hereby (1)**
  39:15
**herein (2)**
  39:11;44:12
**Here's (1)**
  75:21
**Hi (1)**
  127:18
**high (1)**
  26:4
**himself (2)**
  23:4;131:5
**hire (3)**
  7:14,14,16
**history (2)**
  94:1,23
**Hobart (3)**
  93:21;123:7,8
**Hold (3)**
  90:1;100:5;101:17
**holders (2)**

39:21;44:17
**home (2)**
  30:9;151:3
**honest (4)**
  40:21;41:7;46:8,11
**honestly (1)**
  154:16
**Honor (95)**
  3:11,14;4:13;7:6,
  23;8:9,16;10:11;12:4;
  13:13,16,21;15:25;
  16:6;17:11;40:4,10;
  41:6,14;45:10;46:17;
  47:19;53:16;54:10;
  55:19,22;56:9;57:22;
  59:7;60:12;67:3;
  77:15;79:12;80:8,15;
  81:24;82:4,23;87:14;
  89:23,25;90:18,23;
  91:1,17;93:5;97:25;
  98:10;100:8,18;
  101:8;103:11,17;
  104:10,23;108:11,16;
  109:21;114:16,18;
  118:15;119:6;125:2;
  127:13;128:13,16,19;
  129:6,7;130:24;
  131:3,21;138:6;
  144:7,10;145:10;
  147:17;148:1,9;
  153:4;154:6;155:15,
  23;156:6,18,22;
  157:18,19;158:7,14;
  159:3,5;161:6,9;
  164:16
**Honorable (1)**
  3:5
**hope (1)**
  125:9
**hoped (1)**
  29:1
**hopefully (2)**
  4:23;91:9
**hopes (1)**
  151:13
**hour (3)**
  27:22;92:7;149:18
**hours (1)**
  95:24
**Humphrey (1)**
  3:5
**hundred (2)**
  108:3;161:22
**hurdle (1)**
  143:14

---

**I**

**idea (1)**
  135:20
**identified (5)**
  38:20;48:4;52:24;
  53:3;80:2

**identifies (1)**
  22:2
**identify (11)**
  8:18;20:17;35:7;
  36:15;47:24;50:4;
  51:18;52:19;54:17;
  79:25;101:13
**identifying (2)**
  10:5;50:23
**ignorance (1)**
  160:17
**illegible (1)**
  81:16
**illustrative (2)**
  66:13;67:13
**impact (2)**
  89:6;157:8
**implied (1)**
  67:2
**important (4)**
  56:22;66:22;
  141:20,25
**imposes (1)**
  27:12
**impression (1)**
  112:11
**inaccurate (2)**
  139:7,9
**Inc (22)**
  13:23;37:20;38:16;
  39:4,19;43:5,6;44:21;
  55:4;119:12,12,21;
  120:2,2,9,22;121:11,
  16,23;122:14,24;
  123:25
**incidentally (1)**
  94:19
**include (24)**
  42:4,5,7,25;43:22;
  44:3,22;54:25;63:6;
  65:20;107:17;109:9;
  110:18;112:14;
  116:22;117:4,22;
  121:15;130:9;149:22;
  150:1;153:24;154:5;
  159:15
**included (20)**
  23:17;28:5;31:8;
  40:17;43:6;48:19;
  49:1,22;76:14;87:20;
  95:22;107:2;117:22;
  121:7;137:11;143:9;
  154:1,11;157:3;159:8
**includes (1)**
  112:6
**including (15)**
  22:22;38:15;39:3,
  18;40:23;41:1,12;
  44:21;61:23;66:1,14,
  19;121:10,18,18
**inconsistency (1)**
  159:23
**inconsistent (1)**

160:16
**Incorporated (1)**
  3:8
**incorporation (1)**
  76:6
**incorrect (1)**
  150:25
**incorrectly (2)**
  109:13;119:2
**Inc's (1)**
  55:4
**indicates (1)**
  140:21
**indicating (1)**
  61:21
**individual (7)**
  44:6,24;45:1,5,7;
  55:13;122:17
**individuals (1)**
  40:8
**information (2)**
  137:12;156:25
**initial (12)**
  24:8;26:3,6,9;28:6;
  70:19;133:8,24;
  134:1;135:8;144:22;
  149:9
**initially (1)**
  130:13
**initiate (1)**
  33:7
**ink (2)**
  80:24;81:11
**input (1)**
  95:20
**inside (1)**
  142:1
**insisted (1)**
  30:24
**insisting (1)**
  24:16
**insolvency (1)**
  100:4
**instance (2)**
  9:20;66:4
**instead (5)**
  33:16;36:4;51:6;
  135:5,18
**insulting (1)**
  111:22
**insurers (1)**
  39:22
**intellectual (2)**
  69:17;70:22
**intellectually (1)**
  45:3
**intend (2)**
  16:7;131:9
**intended (3)**
  7:7;88:7;109:10
**intentionally (1)**
  161:14
**interest (14)**

25:17;39:15;50:10;
  51:17;55:4,15;66:19;
  75:23;89:4,7;91:5;
  99:25;146:18;157:10
**interesting (1)**
  90:11
**interpret (2)**
  34:11;75:18
**interpreted (5)**
  23:4,5;50:15;86:13;
  97:10
**interpreting (2)**
  52:13;76:5
**into (31)**
  4:10;5:2;19:7;
  34:22;46:13;60:11;
  63:2;73:15;76:5;77:7;
  78:8;80:10;81:7;
  94:13,17;95:20;
  100:13;101:10;
  104:14;105:4,7;
  123:10,11,12,16;
  133:1;150:17;151:16;
  153:17;156:3;163:12
**introduce (5)**
  8:21;79:14;90:20,
  22;100:7;104:16;
  131:23;137:25;
  151:19
**introduced (14)**
  9:23;10:3;47:14;
  68:4,20;94:16;100:6,
  11,21,22;138:1;
  151:20,22;163:5
**introducing (1)**
  77:24
**introduction (3)**
  38:11;53:18;93:13
**inviolate (1)**
  95:14
**involuntary (1)**
  56:19
**involved (9)**
  22:14,21;29:24;
  71:9;76:1;95:5;118:2;
  124:4;161:18
**involvement (1)**
  162:23
**involving (2)**
  62:21;120:12
**irrelevant (5)**
  45:13;46:10,12,23;
  47:17
**I's (1)**
  163:16
**issue (9)**
  31:17;59:19;68:17;
  82:3,19;118:18;
  122:1;148:20;157:7
**issues (7)**
  38:22;70:22;81:2;
  94:4,5;150:7;151:9
**issuing (1)**

LEGAL ELECTRONIC RECORDING, INC.
216-881-8000 www.lerinc.com

163:10
Item (2)
  51:12;76:24
items (6)
  21:22,23;74:1,1,10;
  75:16

**J**

January (10)
  124:21,23;125:6,7,
  14,15,16,22;126:4,24
jerk (1)
  109:12
Jon (16)
  3:25;22:11;23:22;
  26:1;27:8;29:22;33:3;
  50:8;67:16;96:2;
  97:21;130:7;133:18;
  134:5;136:24;137:8
JONATHAN (2)
  148:14;156:10
Joni (4)
  35:11;80:22;96:4,6
Jon's (2)
  50:11,11
Judge (5)
  35:6;61:21;97:25;
  118:20;164:6
judgment (13)
  49:13,17;63:10;
  75:8;108:25;109:5,8,
  10;110:8,10,13,17,19
July (155)
  8:17;9:11,24,25;
  14:3,22,24;16:10,13,
  13;21:1,16;22:5,16;
  25:6,25;26:22;27:14;
  28:16;33:19;35:2,20;
  37:4;41:2,5;42:2,5;
  48:20;49:1;53:10,13;
  60:20,21;61:11,11,17;
  62:19;63:13;64:10;
  68:22;71:25;72:2,12;
  73:13,23,24;75:17;
  76:1,5,6,7,11,12,13;
  77:8;78:23;80:3;83:4,
  12;84:2,6;86:10;89:4,
  5;94:9,13;95:3,22;
  97:8;99:12;101:20;
  102:16;103:19,23;
  105:3,12,22;106:7,14;
  107:1,13,15;109:3;
  110:12,23;111:3,11;
  112:5;113:4,13;
  114:10,22,24;115:3;
  117:21;119:11,16,25;
  122:7,11,16;129:22,
  25;130:3,10,21;
  132:21;133:25;
  137:12;139:2,13;
  140:8,11,13,19,24;
  141:2,4,7;142:5;

143:1,9,15,25;146:17;
148:16,18;149:10;
150:14,16,17;152:5,
11,13,20,24;153:21,
22,25;154:2,5,9;
155:5,8,18;156:14,16;
157:4,8,9,12;159:9;
160:2,3;161:24

**K**

Kagan (1)
  22:11
Kayser (189)
  3:21,21,22;4:5;5:3;
  6:16,21;7:6,15,22;8:9,
  22;12:20,23,24;13:2,
  5,6,13;16:19,23;17:2;
  20:1;21:1,16,25;
  22:20;23:3,12,21;
  34:3,8;35:22;36:18;
  37:13,17,24;39:7,11,
  14;40:4,6,17,18;43:7,
  12,15;44:6,12,23;
  45:10,13,15,17,18,20;
  46:3,22,24,25;48:1,6;
  50:20;52:23;53:7;
  56:9,13,24;57:10,18,
  21;58:1,22;59:3,4,24;
  60:14,16,19,25;61:4;
  66:4;67:3,5,16,17,19,
  24;68:23;69:12;
  70:21;86:25;87:1;
  90:1,4;92:5,9,13;93:2,
  3,5,10,11,12;100:5,8,
  12,25;101:2,8,13,15,
  19;103:1,9,10,13,15,
  24;104:5,16,17,20,22;
  105:1,6;108:17,19;
  109:25;112:12;
  113:16;114:18;
  117:19,20;118:19,24;
  119:7;120:8,9,13,22;
  121:4;122:3,4,4,15;
  126:18;127:22;
  128:19,23;129:1,3,4,
  6,13,20;130:24;131:1,
  18,20,23,25;132:3,5,
  6,12,15,16,17;133:23,
  19;135:1;138:11,13;
  141:2;143:1,17;
  144:1;145:1;147:18,
  21;148:19,24;156:16;
  157:20;161:8,9;
  162:3;164:24
Kayser's (6)
  39:9;45:7;74:6;
  101:4;141:7;149:11
KB (1)
  41:4
KBL (10)
  27:11;29:10;37:12;
  44:5,7,11;45:5,6;

75:12;135:6
keep (3)
  140:5;147:10;
  148:10
Ken (11)
  23:22;26:1;27:8,10;
  29:9,22;125:9;
  127:20;134:5;137:8;
  155:19
Kenneth (5)
  3:21;39:11,14;
  93:11;105:1
Kevin (1)
  33:3
key (26)
  14:4,7,15;15:23;
  20:12;21:16;30:23;
  31:9;32:16;33:13,24;
  34:24,25;35:3,18;
  42:6;49:20;52:8;73:1,
  3,4,16;117:2;143:17,
  18,20
kind (7)
  4:19;7:9;78:6,8;
  101:3;149:1,4
knew (6)
  44:23;45:1;91:8;
  95:4;119:19;128:6
knowing (1)
  64:5
known (2)
  66:13;91:8
Kracht (70)
  3:14,14,17,18;
  10:11,18,22;17:12;
  18:12;40:9,10;41:6,9,
  13;42:1,10,12,20;
  43:24;46:17,24;
  47:19,21;53:15,17,18,
  22,25;54:10,14;55:19,
  22;58:10;60:12,23;
  77:12,14;78:18;79:8,
  18,20,23;80:4,8,15;
  81:1,10,12,19;82:20,
  22;83:7;86:3,5,23,24;
  89:22,23;90:16,18,23;
  102:2,7;104:22;
  147:16;154:12,24;
  155:3;156:8;165:5

**L**

label (2)
  57:1;72:19
labeled (2)
  102:13;104:3
lack (1)
  75:3
language (16)
  38:8;39:9,23;43:18,
  23;44:9,19,25;46:20;
  51:1;66:9;109:15;
  113:11;114:12;

121:16;161:18
large (2)
  24:7;98:18
largely (2)
  47:12,17
last (15)
  18:25;27:10;28:10;
  29:11;30:9;34:24;
  35:12;37:16;64:24;
  80:2;105:24;120:7,
  25;155:22,24
late (1)
  91:18
later (22)
  25:11;26:17;27:21,
  22;31:11;43:16;
  50:12;51:20;65:18;
  70:4;71:13;77:25;
  78:11;85:25;94:7;
  96:6;98:5;106:3;
  131:6;133:21;160:14,
  19
latest (1)
  91:19
law (15)
  6:23;7:12,18,20,20;
  8:8,24,25,25;13:1;
  18:19;51:16,20;
  55:12,17
laws (1)
  147:10
lawyer (8)
  7:17;8:7;50:25;
  56:20;64:4;96:24;
  112:20;121:25
lawyers (11)
  6:18,19;7:14,14,18;
  13:10;18:13;64:7;
  114:13,15;161:17
lay (2)
  4:19,20
lays (5)
  14:3;25:19;35:25
leading (1)
  20:5
learned (1)
  14:12
least (12)
  16:2;21:4;34:4;
  37:15;64:10;65:12;
  76:11;91:8;119:12;
  120:2;155:8;164:12
leave (5)
  91:11;147:25;
  158:12;163:22,23
leaves (1)
  58:17
leaving (1)
  91:18
Lebit (1)
  3:15
lectern (8)
  6:17;8:6;9:6;11:1,4,

10,23;12:22
led (1)
  69:5
left (2)
  38:9;82:15
legal (19)
  9:7;11:22;40:25;
  63:16;64:3;94:4;
  105:25;106:4,10,16,
  19,22;112:18;117:17;
  128:9;146:25;160:21,
  23;161:20
legible (1)
  82:3
length (1)
  91:15
lengthier (1)
  11:8
less (3)
  27:21;95:2;97:1
letter (10)
  61:21;95:3;99:12;
  105:20;108:2;130:10,
  14,21;132:13,15
license (1)
  66:5
licensing (1)
  160:16
lie (1)
  58:21
lieu (1)
  158:11
life (2)
  99:1;142:12
light (1)
  29:24
likely (1)
  38:5
likewise (1)
  47:6
limited (7)
  29:8;63:12;65:4;
  66:15;75:10;144:20;
  155:4
line (16)
  22:16;24:20;26:2;
  28:10;36:7;40:5;
  48:18;61:14,18;
  98:11,20;126:17,19;
  133:23;139:13;
  146:10
liquidated (1)
  136:1
liquidity (18)
  28:10;87:10,11,17;
  88:1,7,8,13,21;133:2,
  11;136:1;145:20,21,
  25;146:5;157:1;160:5
list (5)
  7:10;65:17;66:13;
  67:12;165:3
listed (3)
  74:1;82:2;150:24

TAGNETICS, INC.

October 18, 2019

lists (2)
28:3;34:25
litigate (1)
162:15
litigation (6)
18:23,25;19:2,10;
29:13;62:21
little (13)
9:18;24:10;25:11;
30:14;36:21;49:8;
83:22;113:19;153:12;
154:7,17;163:13;
164:8
live (3)
109:19;137:18,19
lived (1)
137:22
living (1)
142:17
loan (9)
50:9;51:8;65:1,8,
22;66:2;75:13;
159:19;160:15
loaned (1)
67:1
loans (1)
66:19
logic (4)
28:24;40:13;
159:13,16
long (8)
10:16;31:14;32:8;
91:12;104:8;127:2;
153:22;155:4
longer (3)
36:21;74:10;157:15
long-time (2)
56:14;94:25
look (32)
17:20;25:1;26:19;
27:13;37:16;39:4,5;
43:25;44:8;47:22;
49:14;50:18;52:16;
63:8;65:24;66:9;
81:13,22;86:14;
98:13;100:2;107:15,
15;111:1,13;119:14;
128:6;133:16;134:23;
135:16;139:13;
154:12
looked (3)
52:10;64:19;84:2
looking (18)
8:13,16;14:20;15:6;
26:5;48:23;61:2;
66:11;76:11;81:21;
97:1;111:2;118:24;
125:7;126:25;149:6;
153:13;154:6
looks (9)
22:16;25:25;27:21;
30:7;52:20;80:14;
81:1;153:5,9

lot (7)
18:24;41:11;77:7;
147:5;154:17;162:9;
164:7
lousy (1)
112:20
low (1)
132:12
lower (2)
26:6,7
LTD (7)
37:12,18;44:12;
120:9,13,22;121:4
Luis (3)
54:20;56:13,20
lunch (6)
91:3,5,14,15;92:21,
25

M

major (1)
146:9
majority (1)
19:9
makes (4)
6:3;13:18;33:8;
164:16
making (13)
11:2,5,8;24:13;
49:12;51:12;56:24;
59:17;77:23;122:4;
133:15;144:25;
154:16
management (1)
135:13
many (11)
19:3,3;32:14;48:18;
87:21;95:18;99:1;
113:9;119:19;151:1,1
March (2)
127:18,22
Marketing (20)
38:16;39:4,19;43:5,
6;44:21;51:13,16;
55:3,16;56:16;
119:11,17,20;120:1,6;
121:10,16,19,23
marks (1)
80:18
material (1)
73:7
math (1)
76:9
matter (5)
23:1;29:14;84:5;
146:8;159:22
matters (6)
4:9,11,11,15;5:2;
30:12
may (60)
3:5,8;5:8,14,25;
7:12;12:16;13:7,17,

21;17:20;20:2;21:15;
31:19;34:2;41:21;
54:3;56:18;58:8;
59:19;65:15;66:17;
68:2,15;70:23;72:4;
78:14;82:14;83:8;
84:22,23;85:17;86:3;
89:25;90:9;92:23;
93:7;104:24;108:11,
15,18;124:8;125:2,3;
127:13,14;128:13,15,
24;129:8;131:3;
138:5,20;142:8;
144:11;147:25;153:4;
159:3,4;164:8
maybe (7)
49:16;61:10;65:14;
69:11;70:10,22;131:4
McCarthy (1)
3:15
mean (19)
34:11;40:5;47:13;
48:18;70:5;74:22;
77:4;81:13;115:23;
123:18;124:5;126:10;
134:14;135:14;140:4;
145:20;152:25;
154:21;161:21
meaning (9)
64:13;69:25;71:18;
97:10;123:10;139:16;
144:3;161:1,22
means (12)
51:14;87:12;113:7;
115:17;117:4;134:12;
144:25;145:21;
150:21;159:12;
160:17;162:25
meant (3)
45:14;112:8;161:25
meat (1)
88:23
meet (2)
149:2,5
meeting (4)
26:19;111:13;
119:24;139:14
memorandum (1)
158:11
mention (3)
43:13;59:8;64:25
mentioned (9)
52:4,6;65:21;
100:19;116:1;141:15;
143:1;149:13,13
met (1)
132:11
microphone (3)
54:5;90:12;105:8
middle (1)
116:23
might (7)
7:9;51:11;88:24;

89:14;91:20;132:20;
142:10
Mike (1)
127:24
mind (4)
51:14;84:5;117:20;
139:6
mine (2)
97:7;127:2
minute (4)
11:17;54:1;116:24;
154:25
minutes (2)
92:8,16
mirror (1)
15:2
mirrored (2)
66:9,10
mirroring (1)
43:18
mirrors (1)
39:10
miscalculating (1)
28:25
misinterpreted (1)
139:10
misleading (3)
112:9;114:12;
161:14
mispronounce (1)
35:12
missed (2)
47:15;80:19
missing (2)
15:5;150:7
misunderstandings (1)
33:2
Mm-hmm (4)
42:1;86:8;140:25;
146:14
modifications (2)
54:23;150:17
modified (3)
102:3;150:22;151:8
modifying (1)
62:9
moment (10)
34:8;39:5;57:21;
69:7;111:10;112:10;
113:15;129:6;134:4;
137:10
momentarily (1)
35:15
moments (1)
35:1
Monday (13)
26:19;29:8;33:9;
97:16,21;111:13;
118:13;136:6;139:14;
140:9;149:23;159:11;
164:11
monetary (26)
21:22;23:10,11,16;

24:8,19;25:20,21;
26:6;31:8;38:5,7;
63:10,12;65:4,7,9;
75:9,25;76:3;77:25;
112:6,14;142:21;
143:1,10
money (12)
27:8,9,10;29:11;
75:10,11;99:11,11;
134:10;135:25;
136:10;146:3
monitor (1)
81:23
months (14)
28:8;33:16,17;36:5,
5;94:7;99:22;133:9;
135:17,19,19,22,23;
151:2
more (30)
6:3;9:19;16:23;
26:2;31:18;33:10;
36:10;47:11;49:9;
52:10,10,21;55:14,16;
70:6,11;73:18,19;
95:2;96:25;105:9;
108:10;109:1;126:23;
131:6;134:19;147:7;
149:7;154:7;155:12
morning (13)
3:7,11,13,17,22,24;
4:1;13:21;25:16;
28:22;30:11;75:22;
136:6
Most (10)
19:12;21:7;29:21;
38:1,5;46:12;48:3;
119:17;130:19;153:1
mostly (1)
105:18
motion (11)
4:3;5:6;13:24;14:2;
15:3,22;17:18;54:18;
55:1;99:8;104:1
motions (1)
19:14
move (9)
8:20;29:12;32:3;
46:7;53:21,22;
108:11;133:3;147:6
moving (2)
55:20;140:5
msncom (1)
127:21
much (13)
11:5;25:11;38:3;
46:6;75:1;90:15;91:9;
92:11;105:17;135:14;
140:18;163:11;164:6
muddling (1)
78:19
multiple (1)
159:13
must (7)

LEGAL ELECTRONIC RECORDING, INC.
216-881-8000 www.lerinc.com

TAGNETICS, INC.

48:22;61:22;91:7;
95:22;107:17;136:23;
162:17
**mutual (60)**
14:16;15:12;31:10,
14,15;32:4,8;33:20;
49:4,6,9;51:14;52:9;
63:20;64:12,14;
69:25;70:1,20;71:5,8,
17;72:11;89:17;
112:17,24;113:2,3,6,
10;115:16,19,22;
116:7,10,20,21;117:3,
9,13,23;122:12,22;
136:12,13,15;141:17,
21;142:5,7,15,20,22,
24;159:17,22;160:13;
162:10,19,24
**myself (1)**
68:23

## N

**name (13)**
3:20,21;18:6;27:15;
35:11,12;37:21;
76:24;93:19,22;
123:6,7;146:22
**narrative (4)**
6:6;7:2;8:4;93:6
**nature (2)**
18:16;40:1
**near (1)**
29:6
**necessarily (2)**
40:7;74:25
**necessary (3)**
123:15;128:1;
131:20
**need (25)**
6:11;7:18;10:4,6;
16:20,23;22:12;33:6;
44:5;67:25;68:6;
69:13;70:4;79:13;
91:13;100:20,22;
105:7;109:24;146:4;
149:20;163:23;164:2,
8,10
**needed (6)**
54:24;98:16;122:9;
127:9;149:7,17
**needing (1)**
74:1
**negotiable (3)**
31:24;91:15,16
**negotiate (13)**
29:1;30:19;44:25;
106:20,22,23;107:24,
25;117:2;137:14;
149:1;151:12;160:18
**negotiated (10)**
19:2,18;24:1;37:22,
24;62:23;97:12;99:1,

4;116:22
**negotiating (13)**
45:6,7;97:8;107:10,
22;116:24;117:17,17;
129:25;130:3,7;
135:15;143:21
**negotiation (7)**
95:6;98:18;116:23;
118:3;148:17;161:17,
19
**negotiations (25)**
16:11;19:13,22;
21:4;27:4;32:24;38:1,
2;40:15;60:22;61:7;
86:17;107:7;111:18,
20,25;112:1,3;134:15,
21,21;139:7,9,19;
159:12
**nevertheless (4)**
69:20;71:3;72:6;
153:13
**new (13)**
25:15;51:2;77:23,
24;85:6,12,15;98:15;
140:22;145:25;
150:11,11;152:1
**next (21)**
22:15;23:19;25:24;
27:2;28:18,22;30:6;
52:16;53:2,4;63:1,1;
74:18;75:24;81:15;
95:17;102:25;103:1;
139:13;164:1,17
**non- (4)**
109:21;118:15;
142:20,25
**non-compete (1)**
51:4
**none (3)**
6:19;35:1;156:14
**non-monetary (21)**
21:23;23:15;38:8;
49:21,23;63:14;76:4,
10,14,19;108:24;
109:4;7;110:7,20,23;
112:6,14,16;141:9;
142:22
**non-negotiable (1)**
107:14
**nor (2)**
95:15;96:3
**normal (1)**
99:5
**Normally (2)**
116:24;154:14
**note (2)**
10:11;96:9
**notes (2)**
66:18;74:5
**notice (1)**
159:8
**noticed (1)**
127:23

**notified (1)**
137:9
**notifying (1)**
136:11
**notion (1)**
69:11
**notwithstanding (1)**
159:6
**nourishment (1)**
91:10
**November (1)**
18:20
**Nowhere (1)**
149:9
**nuance (1)**
120:23
**Number (14)**
3:7;11:20;14:17;
21:21;22:21;26:7;
28:25,25;34:12,20;
48:9;102:5;147:1;
149:5
**numbers (2)**
15:9;28:5

## O

**oath (4)**
11:24;93:9;129:10;
148:12
**object (13)**
40:4;45:10;46:22;
47:4,6;57:5,7;103:21;
109:21;121:22;
153:16;155:3,15
**objected (2)**
57:2;87:19
**objecting (2)**
110:1;160:7
**objection (34)**
6:10,12,13,14;11:6,
7;39:3;40:20;42:18;
43:15,16;46:1,4,21;
47:3,18;56:25;57:1,3,
19;58:22;59:5;60:23;
62:15,16;77:12,16;
78:18;83:2;100:23;
118:15,21;152:8,17
**objections (16)**
24:6;38:14;47:8;
48:9,13;52:25;54:6;
55:24;57:8;58:19;
59:25;60:3,5;73:10;
87:18;104:3
**obviate (1)**
149:20
**obviously (6)**
50:13;62:4;116:22;
130:17;144:18;153:4
**occasion (1)**
126:24
**occur (2)**
88:18,25

**occurred (6)**
21:6;31:17;41:20;
56:22;70:2;82:23
**occurrence (1)**
28:9
**o'clock (3)**
30:14;92:17;96:5
**October (3)**
3:4;18:20
**odd (4)**
27:3;86:17;111:18;
154:13
**Off (25)**
12:13;20:5;27:4;
37:2;42:24;58:5;
80:15;81:2;82:11,15;
85:18,19;86:11,17;
111:18,19;112:1;
128:8;134:20,21;
139:7,8,21;149:12;
140:7
**offer (15)**
23:5;24:13;25:15,
16;61:20;62:2,3;
75:21;101:21;107:20;
111:22;129:24;
134:13,22;140:7
**offered (3)**
16:8;26:7;140:13
**office (3)**
55:8;82:5,9
**officer (3)**
117:14;122:13,23
**officers (5)**
39:20;41:18;42:8;
44:17;122:8
**often (3)**
47:13;70:24;95:17
**Ohio (7)**
3:3,15;7:21;51:16,
20;55:12,17
**old (1)**
98:11
**once (11)**
14:6;16:16;21:16;
34:2;49:22;76:12;
95:10;131:7;132:13;
159:25;160:20
**one (93)**
8:5,9;9:12;10:12,
16,19;11:14;12:17;
14:19;15:4,4;16:1;
17:16;18:13;20:21;
21:24;22:18;25:1;
30:14,18,20,22,23,23;
31:18;33:22;34:4,12;
36:1;37:13,14,17;
38:13,22;39:2;42:23;
47:11,12;48:3,4;
49:18,19;50:16;52:7,
17;53:4;61:3,9;63:11;
64:24;65:3;66:18;
69:8;70:17,19,24;

75:7;76:23;83:18;
84:16;85:17;87:9,19,
22;88:15;92:17;93:2,
22;96:22;102:20,25;
107:15;109:1;122:8;
126:24;127:10,17;
128:13;129:6;132:8;
135:20;138:25;139:2;
145:19;150:19;
151:25;152:6;155:7,
24;161:9;162:8,8,22
**ones (3)**
32:6;100:20;158:12
**one-sided (1)**
72:15
**online (1)**
127:23
**only (36)**
9:20;14:11;15:4;
16:13;19:19;20:21;
24:12;27:15;36:2;
38:10;45:6;47:13;
50:22;51:11;62:15;
63:4,10,12;68:17;
75:10,11;89:20;
107:22,23,25;112:16;
127:6;135:25;143:14;
144:17;147:2;149:21;
151:13;155:5;163:13;
164:6
**onto (2)**
28:18;106:8
**opening (23)**
4:14;5:6;10:10,25;
25:11,2,17;12:11;
13:14,18,19;16:4,19;
17:1,1;20:2;32:11;
39:9;48:18;61:24;
62:18,19;126:19
**opens (1)**
22:1
**operate (2)**
4:23;7:5
**operating (10)**
39:13,17;43:2,10;
44:14,19;51:15,16;
121:9,24
**opinion (1)**
117:6
**opportunities (1)**
159:14
**opportunity (12)**
4:14;5:21;9:5;
47:10;56:7;58:25;
59:11,22;117:4,10,14;
122:7
**option (1)**
151:14
**options (3)**
29:6;146:7;157:14
**oral (11)**
158:11;163:10,12,
14,17,20,25;164:3,9,

**TAGNETICS, INC.**

13;165:8

**order (7)**
21:10;84:13;85:2;
98:2,3,8;154:15

**ordered (1)**
97:25

**oriented (1)**
18:23

**original (8)**
40:2;15;71:25;84:2;
99:12;101:19;107:10;
129:22

**originally (3)**
36:21;37:6,8

**other's (2)**
8:5;17:7

**otherwise (3)**
40:14;66:14;165:7

**out (65)**
11:22;14:3,19;20:8,
9;24:19;25:14,19;
33:2;35:25;36:5,23;
37:9;38:9;41:2,23;
54:6;58:23;63:16;
64:16,23;65:16,22;
68:21;72:25;76:22;
77:10;80:24;81:11;
91:19;92:6;96:18;
98:24;114:6,10;
126:3;130:15;132:23,
24;133:10,17;135:9,
17;137:8,8;142:16;
146:1,21,24;150:6,12,
23;153:11;154:8,16;
157:4;161:25;162:12;
163:2;164:5

**outcome (1)**
30:2

**outlined (3)**
24:17;95:22;114:10

**outlining (1)**
132:22

**outs (2)**
69:6;117:4

**outside (9)**
29:2;48:19;52:3;
74:23;77:14,15,18;
124:4,6

**outside-the-contract (1)**
66:3

**over (21)**
4:8;5:18,19;10:7;
15:13;18:25;20:5;
28:18;31:16,16,16;
33:12;50:17;86:18;
95:17;97:15;129:2;
132:24;148:5;149:23;
162:22

**overall (2)**
41:16;117:18

**overlap (1)**
9:9

**overrule (3)**
40:19;42:18;78:17

**oversight (1)**
15:7

**overture (2)**
24:1;62:23

**owed (1)**
29:19

**own (17)**
5:23,25,25;6:5,24,
25;24:24;25:3;39:11;
44:13,24;105:25;
106:4,10;116:4;
131:9;146:21

**owned (5)**
37:13;119:12,20;
120:2,13

**ownership (12)**
50:11;51:17;55:4,
15;56:21;145:23,25,
25;146:21;157:7,13,
13

**owns (2)**
44:6;55:14

**P**

**page (53)**
4:10;13:12;14:22;
23:20;25:18;26:24;
27:16,24,24;28:15,16,
18,18;32:10;34:15;
36:16,17;37:16,18;
38:12;44:9;48:7,16;
61:3;62:12;66:11;
79:1,4;80:1,7,11,12,
14;81:15;83:25;86:7,
9;87:16;95:2;106:8,8;
108:23;109:4;110:24;
111:4,8,9,11;120:8,
25;138:25;143:16,24

**pages (2)**
36:25;81:16

**paid (10)**
29:19;133:1,10;
134:6;135:5,6,6,24;
146:1,21

**paper (1)**
163:17

**Paragraph (19)**
24:9,15;25:6;39:5,
9;45:8;48:25;61:24;
62:18;66:12;75:3;
88:9;105:24;108:24;
109:3;110:7,12,16;
111:1

**paragraphs (1)**
39:24

**paraphrased (1)**
119:2

**parens (2)**
27:9;64:13

**parent (8)**

39:16;44:14;
115:24,25;116:5,11,
13;121:8

**parents (4)**
43:1,10,21;51:15

**part (34)**
15:6;18:24;19:19;
23:11;24:7;35:24;
38:20;40:17;41:16;
45:2;46:12;65:8;
72:14;79:9,16;80:4;
82:16,17;84:6;89:11;
99:20;101:4,23;
102:1,4,6;109:11;
130:11;149:2;152:20;
153:7,11;158:21;
163:5

**participant (1)**
129:21

**participation (3)**
71:24;148:2;157:24

**particular (4)**
44:2;55:2;56:10;
145:18

**particularly (6)**
4:19;10:3;57:11;
94:22;128:23;139:21

**particulars (1)**
123:22

**parties (13)**
4:12,20;6:2;11:20;
29:3;32:23;35:16;
46:14,16;71:9;163:1;
164:18;165:2

**partner (1)**
22:11

**party (5)**
12:25;42:25;46:24;
73:12;162:22

**party's (1)**
162:22

**pass (1)**
7:18

**passenger (1)**
30:11

**past (3)**
152:6;154:3,5

**patents (1)**
93:20

**path (3)**
27:7;29:25;149:3

**Pause (1)**
54:9

**pay (9)**
27:9;29:12;84:9,19;
133:7,23;135:7;
146:9;151:14

**paying (4)**
84:24,25;108:5;
135:18

**payment (49)**
14:14;24:8,8;25:21;
26:3,6,8,9;28:4,6,9;

33:13,23;35:24,25;
36:10;62:6,17;74:9;
75:5;76:18;87:9;
88:17;89:15;95:5;
97:11;102:3,9;
107:23;108:1,3;
132:19,22,25;133:8;
134:1;135:4,4,8,18,
19,21,22;145:19,20;
159:19,20,21;160:15

**payments (33)**
15:10,18;16:13;
23:13;25:20;26:10;
28:7,11;33:15;36:4,7;
48:25;49:2,3,5;51:3;
52:8;62:16;65:10;
130:4;132:23,24;
133:9,24;135:9,10,17;
143:7;147:3;148:22;
159:19;160:8,11

**payout (5)**
94:18;95:8,10,13;
96:1

**people (6)**
22:8,21,23;37:14;
124:4;164:1

**percent (7)**
55:14,16;56:17;
94:20;145:23,24;
146:4

**Perfect (2)**
131:16;138:19

**perfectly (1)**
15:16

**period (3)**
15:13;21:13;132:25

**permissible (2)**
46:18;54:2

**permit (1)**
54:11

**person (4)**
55:12,12;58:16;
148:25

**personal (1)**
126:8

**personally (1)**
153:14

**personnel (1)**
92:18

**perspective (8)**
4:7;9:10,22;31:25;
40:25;97:6,7;128:1

**pertinent (2)**
14:1;31:2

**petition (4)**
56:18;94:7;116:13;
124:15

**petitioners (1)**
94:25

**Petitioning (45)**
4:4,25;5:10,21;
10:24;11:16,18;12:8,
18;16:6,10,12;19:22;

21:13;25:9;26:15;
27:20;30:4;31:18;
32:5;37:7,11,12,14,
19;38:22;40:16;
51:23;54:5;55:23;
58:18;70:15;82:17,
19;89:2;93:1;104:7,
12,13;155:17,25;
156:2;158:20;159:7;
164:22

**P-H (1)**
18:8

**PhD (1)**
93:13

**phone (14)**
21:12;22:10;30:15;
32:14;33:5;68:21,22;
70:16;94:11;132:17;
133:14;135:11;
142:24;162:13

**phrase (20)**
14:15,15;31:15;
33:20;52:11;63:20;
64:7,8,10;67:24;69:8;
72:13;88:22;110:12,
16;117:23;122:11,22;
123:13,18

**phrasing (2)**
77:24;86:16

**picked (2)**
20:10;112:3

**piece (1)**
163:17

**piecemeal (1)**
131:7

**place (10)**
14:10;33:10;56:18;
62:8;69:14;73:17;
84:11,13;85:1;153:15

**places (1)**
92:18

**plain (1)**
161:1

**plan (2)**
92:3,15

**planning (2)**
84:24;161:15

**play (3)**
19:21;88:14;145:3

**please (21)**
3:9;11:4;12:7;
13:22;17:22;18:2,6;
20:15;21:23;27:5;
33:5,24;50:4;54:17;
60:24;103:15;116:8;
120:18;126:20;129:7;
153:4

**plenty (1)**
47:10

**pm (45)**
21:2;25:13,25;
26:23;27:14,23;30:7,
8;33:3;34:6,13,21;

**TAGNETICS, INC.**

October 18, 2019

35:21;48:2,6,21,21;
50:21;64:12;76:2;
82:12;86:15;92:21,
21;106:7;111:3,6,7,
11;112:6;113:13;
114:25;115:3,11;
117:21;125:8;126:14;
127:18,22;140:20,24;
141:5;143:15,25;
165:10
**pocket (2)**
125:19;137:8
**point (53)**
14:19;17:17;27:25;
33:1;36:9;40:11;55:2;
59:16;61:10;64:11;
65:3,14;67:14;69:20;
70:19;71:20;75:4,5;
76:22;77:8,22;78:5;
83:2;85:17;86:19,21;
91:17;106:19;107:7;
111:21,25;113:18;
114:22;115:2;124:11;
133:12;136:2;138:25;
139:2,7,20;141:10;
143:22;144:5;148:25;
149:21;150:10,13,19;
156:13;162:12;163:4;
164:15
**pointed (3)**
58:22;150:6,23
**pointing (2)**
106:1,8
**points (1)**
71:24
**poor (2)**
112:18;114:12
**portion (5)**
47:2;73:4;148:18,
19;154:5
**portions (1)**
38:13
**pose (1)**
10:14
**position (10)**
6:9;9:7;29:23;
40:22,23;42:19;62:1;
89:5;153:19;164:4
**possess (1)**
146:22
**possibility (3)**
20:4;24:13;49:17
**possible (5)**
4:21,22;5:17;82:23;
91:18
**possibly (1)**
24:11
**post- (1)**
51:22
**postpone (1)**
99:18
**postponed (1)**
72:19

**postponement (1)**
16:17
**post-trial (1)**
158:10
**potential (4)**
22:4;23:3;24:12;
26:6
**potentially (1)**
88:14
**practice (10)**
6:23;7:11;8:8;13:1;
18:17,18,21,23;19:4,
10
**practicing (1)**
18:22
**predecessor (3)**
93:19;123:4,12
**prefer (2)**
53:19;112:20
**preference (4)**
9:16,24;11:9;27:11
**preferred (1)**
133:18
**prejudice (2)**
51:6,7
**preliminary (6)**
4:9,11,11,15;5:2;
137:11
**prepared (1)**
93:1
**preparing (1)**
54:18
**present (11)**
5:7,22;8:10;24:5;
78:13;79:7;93:6;
128:20;148:4;157:25;
161:8
**presentations (3)**
9:4;11:8;165:6
**presented (2)**
99:15,20
**president (1)**
93:24
**presiding (1)**
3:5
**presume (1)**
62:1
**pretty (6)**
13:25;27:25;34:4;
73:13;135:14;164:6
**prevail (1)**
29:8
**prevailing (1)**
73:12
**prevails (1)**
29:12
**previous (2)**
146:10;150:1
**previously (6)**
49:6;51:4,9;94:17,
24;101:9
**prima (1)**
91:6

**primarily (3)**
21:17;30:16;59:5
**printed (2)**
80:9;153:11
**printing (1)**
154:8
**printout (4)**
80:23;81:9;153:5;
154:13
**prior (12)**
43:7,25;89:15;
105:20;123:7,24;
124:15;128:4;141:6;
153:24;155:6,9
**privileged (1)**
52:1
**pro (11)**
4:20,25;6:2;9:2;
11:20;12:25;32:23;
38:1;161:15;163:1;
165:2
**probably (11)**
18:25;46:6,7;70:23;
82:4;91:3,13,21,23;
128:10;146:24
**problem (5)**
24:7;80:19;81:18;
82:19;91:21
**procedure (2)**
43:2,9
**proceed (12)**
6:13;13:17;15:24;
23:14;24:17;25:5;
29:16;42:17;83:8;
86:3;93:3;132:8
**proceeding (9)**
24:18;38:1,10;45:2;
51:6;123:24;124:1,
11;127:5
**Proceedings (2)**
3:1;165:10
**process (6)**
10:4;15:16;22:14;
81:6;84:22;116:23
**produced (1)**
125:1
**professional (2)**
165:1,5
**professor (2)**
93:15,16
**Profits (2)**
66:22;89:15
**promise (1)**
118:12
**prompted (1)**
134:11
**proper (1)**
71:21
**property (2)**
69:17;70:22
**proposal (25)**
16:9;24:6;25:23;
26:20;28:3,13;29:20,

22;71:25;72:2;73:24;
74:6;76:2,5;84:2;
85:20;94:10,12;
102:16;140:7,14,17;
148:18;149:10,12
**proposals (2)**
76:9;85:21
**proposed (10)**
16:7;16:26:9;33:15;
58:11;75:16;80:6;
135:3,10,11
**prosecute (2)**
71:12,23
**protestations (1)**
159:6
**provide (5)**
18:16;44:4;45:9;
101:12;144:14;
156:25,25;162:15
**provided (12)**
26:10;39:7;48:11;
50:6;52:25;66:25;
69:25;71:5;73:20;
87:16;103:18;116:16
**provision (6)**
51:2;87:15;97:11;
109:10,10;116:19
**provisions (1)**
114:10
**pull (2)**
77:10;83:22
**Purdue (2)**
93:14,15
**purported (1)**
110:22
**purposes (2)**
9:21;38:10
**pursued (1)**
29:3
**pursuing (1)**
29:17
**push (1)**
135:16
**push-back (1)**
144:22
**pushing (1)**
69:11
**put (29)**
6:16;15:2;16:9;
24:2;25:15;34:9;
62:24;74:13;75:19;
78:25;84:1;87:14;
88:22;98:16;113:17;
114:6;123:10,11,12,
16;132:19,25;135:24;
137:12;144:2;145:1;
151:12;163:11;164:3
**puts (1)**
7:13
**putting (5)**
24:19;25:14;105:3;
133:22;146:3

**Q**

**qualify (1)**
63:3
**quick (3)**
80:25;84:23;87:6
**quicker (1)**
163:14
**quickly (3)**
94:6;99:21;140:17
**quite (8)**
15:17;27:3;41:9;
86:16;111:17;114:12;
157:14;163:10
**quoting (1)**
100:12

**R**

**raise (3)**
5:1;18:2;29:5
**raised (5)**
28:1;71:25;148:19;
151:9;162:12
**raising (1)**
72:24
**ran (2)**
80:23;81:11
**rate (1)**
132:13
**rather (3)**
9:13;96:25;131:6
**reach (4)**
24:1;30:20;62:23;
133:4
**reached (5)**
33:4;53:13;61:21;
84:7;95:25;106:15;
107:3;115:18;137:11;
146:17
**re-acquired (1)**
93:21
**reaction (1)**
52:15
**read (19)**
39:8;42:7;44:9;
46:5;61:14,25;67:11;
74:5;77:7;81:10;
83:16;84:20;96:16;
106:12;108:6;109:9;
121:17;163:18;164:4
**reading (9)**
23:24;45:11,21;
53:5;64:11;84:25;
125:19;134:1;150:3
**ready (5)**
4:7;13:14;15:23;
60:13;165:7
**real (2)**
30:25;99:24
**realistic (5)**
24:2,4;62:25;74:13;

**LEGAL ELECTRONIC RECORDING, INC.**
216-881-8000  www.lerinc.com

TAGNETICS, INC.

October 18, 2019

75:19
**realize (4)**
  50:14;91:22;147:2;
  161:12
**Really (32)**
  17:20;20:10,11;
  22:14;30:5;34:10;
  46:12;61:9,10;63:18;
  84:18,22;87:19;89:9;
  123:21;134:16,23;
  136:3;142:14;144:3;
  146:7;151:15;153:9,
  12,16;154:10,11,15;
  156:9;160:2;161:21;
  163:11
**reason (11)**
  9:20;10:18;11:18;
  39:25;44:22;56:14;
  68:17;80:8,11;
  141:11;143:3
**reasonable (5)**
  29:20;88:23;135:7;
  149:7,9
**reasons (1)**
  31:2
**recall (9)**
  72:2;83:20;85:17;
  96:10,18;102:5;
  105:17;150:2,3
**receipt (2)**
  23:23;62:20
**receive (5)**
  26:14;27:8,19;30:3;
  97:16
**received (14)**
  27:10,22;29:11;
  78:14;83:12;84:16;
  85:5;87:18;94:9;
  96:12;98:5;104:14;
  134:25;156:2
**receiving (6)**
  33:23;97:20;150:2,
  18,23;151:3
**recent (3)**
  21:7;29:21;48:3
**recess (9)**
  12:11,12;57:24;
  58:3,4;82:4,7,8,10
**recognize (1)**
  127:16
**recollection (12)**
  65:25;68:25;69:1;
  70:1,7;83:13,18;
  84:17;85:10;87:17;
  124:25;127:6
**recommend (1)**
  70:25
**recommending (1)**
  31:5
**recopied (1)**
  152:6
**record (6)**
  3:20;12:13;18:7;

54:4;58:5;82:11
**recording (1)**
  11:4
**records (1)**
  127:1
**recross- (1)**
  145:8
**recross-examination (1)**
  86:25
**redacted (12)**
  37:10;38:4;44:5;
  45:9,18,22,23;46:2,5,
  19;47:13;120:20
**redirect (8)**
  5:13;86:3,4;128:21;
  144:14,16,17;156:20
**redline (4)**
  99:10,13,15;103:3
**reduce (1)**
  135:9
**re-elicit (2)**
  68:3,6
**refer (12)**
  9:25;14:1,21;19:23;
  35:5;60:24;73:1;
  75:23;76:10;108:12,
  23;141:1
**reference (12)**
  14:21;70:22;75:12;
  76:7;85:21;110:7;
  141:5,9;153:10;
  156:15;159:8,14
**referenced (7)**
  17:17;25:20;26:22;
  35:2;40:3;65:3;109:7
**references (1)**
  66:1
**referencing (1)**
  64:10
**referred (7)**
  28:9;32:11;73:15;
  105:3;109:5,8;110:8
**referring (30)**
  9:14;33:17,18;
  35:10,25;61:3,16;
  67:10;69:14;72:22;
  73:19;80:17;81:15;
  86:11;105:5;108:22,
  24;109:4;110:17;
  118:6,11,16;125:12,
  17,24;126:2;140:19;
  152:11;159:10,19
**refers (3)**
  50:11;74:16;87:10
**refine (1)**
  151:16
**reflect (6)**
  15:14;21:24;37:1;
  85:16;115:4,11
**reflected (19)**
  20:23;23:10,19;
  25:18;26:21;27:23;
  28:13;31:9,11;33:18;

37:15;63:13;108:2;
  110:21;143:10;160:3,
  10,12;161:2
**reflection (1)**
  21:4
**reflects (9)**
  14:5;15:8;23:2;
  31:11;36:6;37:2,9;
  65:4;99:17
**refresh (2)**
  124:24;125:5
**refused (1)**
  98:5
**refute (1)**
  153:19
**regarding (3)**
  22:3;38:21;66:25
**regardless (2)**
  69:9;161:10
**regurgitating (1)**
  148:15
**reiterated (1)**
  98:21
**reiterating (2)**
  65:8;97:22
**reject (1)**
  74:7
**rejected (7)**
  20:8;10;21:3;57:16;
  74:3;75:16;145:2
**rejecting (2)**
  25:14;61:8
**rejection (2)**
  26:16;75:20
**related (9)**
  11:13;30:12;39:13,
  18;44:15,20;50:10;
  69:17;121:9
**relates (1)**
  78:16
**release (54)**
  32:2,3,4;39:4,24;
  40:24;41:1,12,15,16;
  43:20;44:8;45:4;51:1;
  65:17;66:9,10,11;
  69:10;70:20;71:18;
  72:9,11;89:13;
  112:17,24;113:2,3,4,
  7,8,9,10;116:21;
  117:4;121:4,7,7,15;
  136:12,13,15,19,21;
  142:1,6,15,19,22;
  160:13;162:10,15,20,
  25
**released (4)**
  31:22;32:1;40:16;
  121:23
**releasees (1)**
  39:23
**releases (49)**
  14:16;15:12;30:25;
  31:10,13,15;33:20;
  38:13,16;39:7,15;

40:2;44:6,11,18;49:4,
  7,10;51:14;52:9;
  63:21;64:2,13,14;
  69:13,24;70:1;71:17;
  89:17;115:16,19,22;
  116:7,10,20;117:3,9,
  13,23;122:12,22;
  141:17,21;142:5,7,20,
  25;159:17,22
**relevance (2)**
  40:5;46:15
**relevant (5)**
  10:13;47:2;145:18;
  153:14,20
**relied (1)**
  121:6
**relinquish (2)**
  89:10,12
**relinquishment (1)**
  89:13
**remainder (3)**
  26:8;60:22;133:10
**remaining (4)**
  33:15;37:14;38:21;
  58:17
**remember (30)**
  20:22;21:14;30:8,
  13,21;31:12;32:14,
  15;33:25;34:3;35:11;
  63:11;68:24;69:3,9,
  12;71:7;77:24;84:7,7,
  15,18;85:3,8;88:15;
  127:11;139:5;142:3;
  152:12;154:17
**re-mention (1)**
  149:15
**remind (3)**
  93:8;129:9;148:11
**remorse (2)**
  52:11;77:23
**removed (1)**
  10:19
**render (4)**
  163:20,25;164:13;
  165:8
**rendered (1)**
  66:25
**renegotiate (4)**
  62:5,7;95:9,12
**renegotiated (1)**
  96:3
**renegotiation (2)**
  95:15;130:9
**reorganized (4)**
  93:22;123:9,13,19
**Repeat (4)**
  115:6;116:8;
  122:20;126:1
**repeated (3)**
  49:10;159:25;
  160:20
**repeatedly (2)**
  15:14;98:21

**repeating (1)**
  52:9
**re-photocopy (1)**
  152:15
**rephrase (1)**
  122:10
**reply (2)**
  33:5;113:21
**report (1)**
  69:23
**reported (1)**
  72:6
**represented (2)**
  34:24;37:25
**representing (2)**
  9:1;31:1
**represents (1)**
  35:7
**request (8)**
  47:20;49:12;70:13;
  71:15;94:9;95:9;
  101:20;162:1
**requested (4)**
  40:13;69:24;71:11;
  74:8
**requesting (2)**
  24:3;94:17
**requests (1)**
  49:2
**require (2)**
  29:4,12
**required (2)**
  107:2;149:11
**requirements (1)**
  150:11
**requires (1)**
  64:17
**reread (1)**
  66:12
**rescinded (1)**
  107:17
**research (3)**
  55:7,10,11
**resembles (1)**
  16:9
**reservation (2)**
  71:11,17
**reservations (1)**
  31:14
**reserve (11)**
  56:5;57:19;58:23;
  59:9,17,21;70:13,14;
  131:12,14;162:14
**reserving (1)**
  71:22
**resigned (2)**
  94:2;116:2
**resolution (3)**
  24:1;62:24;109:12
**resolve (1)**
  62:21
**resolved (2)**
  19:13;94:6

**TAGNETICS, INC.**

October 18, 2019

**respect (4)**
9:8;114:24;156:25;
159:10
**respond (7)**
23:18;25:9,23;27:1;
28:21;114:4;121:14
**responded (7)**
25:12;48:13;61:8;
73:24;74:6;113:12;
140:16
**responding (7)**
28:23;34:8;48:2;
101:20;113:16;
134:22;144:1
**response (41)**
4:4;23:19;24:21;
26:14;27:1,13,19,22;
28:15;30:3;32:1;34:6;
40:9;50:5,5;53:2,6;
62:10,11,11,14,19;
67:14;73:23;75:20;
77:16;86:13;94:16;
97:22;101:10;111:16;
113:20;114:6;132:16;
139:9;144:15;149:9;
150:4,6,22;151:15
**responses (1)**
39:2
**responsive (4)**
109:22;110:2;
114:17;118:16
**rest (3)**
67:11;132:5;163:24
**restate (2)**
110:25;130:1
**restated (1)**
149:25
**restatement (1)**
97:18
**rested (1)**
92:25
**restricted (1)**
137:7
**restructuring (1)**
130:4
**result (2)**
31:18;97:20
**retain (1)**
41:21
**re-trade (1)**
53:12
**retrieve (2)**
82:4,8
**return (3)**
29:11;72:10;91:24
**returned (1)**
27:12
**revealing (1)**
52:1
**reverse (2)**
21:10;154:14
**review (1)**
100:3

**reviewed (1)**
4:6
**reviewing (1)**
155:18
**revised (2)**
26:1;46:19
**revisiting (1)**
68:16
**revive (1)**
86:19
**rewrite (1)**
160:25
**right (56)**
5:5,11,12;18:3;
35:5;37:5;41:10;44:2;
46:3;56:1,4;59:16;
62:11;66:20;70:13,
15;71:14,22;74:15,
24;80:21;83:4,7,8;
86:1;100:14,15,21;
101:23;102:11,22,24;
104:2,21;106:1;
115:15;116:5;122:23;
126:18;127:11;
128:24;129:3;130:2;
131:11;132:4;136:10,
10,13,20;138:24;
139:12,22,25;152:13;
161:2;162:14
**right-hand (1)**
126:15
**rights (3)**
69:17;89:12,14
**rise (4)**
12:12;58:4;92:20;
165:9
**risk (2)**
8:25;27:9;29:7
**risks (1)**
29:24
**R-N (1)**
18:9
**road (2)**
91:21;164:10
**Roanoke (1)**
99:9
**Robert (2)**
3:14;37:21
**role (1)**
19:21
**Romanette (7)**
66:18,18,21,23,24;
67:1,4
**Ron (15)**
23:22;26:1;28:23;
33:3;64:25;65:1;66:2;
93:23;95:12,14;96:1;
107:22;123:20;129:7;
136:9
**Ronald (5)**
3:23;129:12;
132:10;138:7;144:16
**Ron's (2)**

27:15;65:22
**rough (1)**
118:12
**royalties (1)**
66:24
**rule (4)**
6:12,12;58:15;68:6
**ruled (2)**
29:4;58:12
**ruling (8)**
6:14;56:5;57:20;
58:24;59:9,17,21;
99:8
**run (1)**
68:5
**running (2)**
80:10;96:19

**S**

**salary (1)**
66:6
**same (38)**
4:9;5:18;9:15;10:2;
12:5,22,23;13:8,9,12;
16:21;17:3,8,9;25:4;
34:18;36:1;44:19;
46:14;60:3;62:12;
67:25;68:12,16,17;
70:10;71:24;95:2;
103:5;106:6;117:11;
136:25;137:5;145:13;
148:16;150:6;156:23;
157:5
**sat (2)**
94:11;114:11
**Saturday (1)**
125:7
**save (1)**
163:13
**saw (15)**
53:9;76:25;77:3;
84:18;98:3,23;
113:25;114:3;115:9;
116:9;122:11,21;
134:4;157:2;159:18
**saying (27)**
24:13;25:4;28:23;
34:6,9;35:14;38:19;
41:13,14,15;63:22;
69:13;70:7;71:7;
73:16;77:17;83:14,
19;85:19;113:16;
134:23;139:9;144:2;
149:6
**scanned (1)**
81:19
**scanning (2)**
82:3,18
**scenes (1)**
160:23
**schedule (24)**

26:8;28:4;33:15,17,
18;35:24;62:6,17;
74:9;76:18,22;87:10;
88:8,17;94:18;96:1;
97:11;102:4,10;
107:23;108:3;135:4,
4;149:3
**scheduled (1)**
16:17
**school (2)**
7:18;18:19
**scope (10)**
14:14;40:1;48:19;
52:3;63:25;77:14,15,
18;78:15;150:12
**screen (1)**
106:12
**se (11)**
4:20,25;6:2;9:2;
11:20;12:25;32:23;
38:1;161:16;163:1;
165:2
**seat (2)**
11:7;30:11
**seated (5)**
3:6;12:16;58:8;
82:14;92:23
**second (16)**
23:24;36:4;62:21;
89:1;98:10;105:23;
108:23;109:3;125:18;
128:14;135:3,17,18,
21;142:11;146:12
**secrets (1)**
70:23
**Section (11)**
39:6,6,6;44:9,23;
65:1;73:11,12;87:15;
88:3;121:5
**sections (1)**
38:4
**secured (1)**
16:16
**seeing (4)**
15:17;155:4,5,6
**seek (13)**
15:15;24:24;25:2;
29:25;30:2;49:3,6;
79:14;105:25;106:4,
9,16;160:21
**seeking (13)**
14:17,18;15:10,11,
18;19:16;49:24;
103:6,12;152:23;
159:15;160:8,11
**seem (3)**
63:16;111:23;
134:23
**seemed (4)**
52:13;130:12;
136:2;137:21
**seems (8)**
27:3;30:1;86:16;

111:17;134:19;135:7;
153:6;159:13
**selected (1)**
97:21
**sell (1)**
135:20
**send (5)**
27:5;32:16;61:21;
105:19,19
**sending (1)**
105:20
**sense (4)**
33:8;153:23;
154:16;164:16
**sensitive (1)**
32:22
**sensitivity (1)**
32:24
**sent (43)**
14:23;22:20;27:2;
28:22;35:17;36:18;
43:17;50:16,19;
54:22,25;60:21;
64:25;65:6;76:24;
77:13;78:22;83:19;
85:9,14;94:15;96:9,
10,17,25;97:23;98:6;
101:9;103:4,19,23;
104:9;124:17,19;
127:10;129:22;
130:14;132:21;141:2;
150:1;151:8;153:13,
18
**sentence (5)**
23:25;62:20,22;
63:1;126:19
**sentences (1)**
62:19
**separate (5)**
9:19;11:21;12:19;
44:25;46:25
**separately (1)**
38:3
**series (5)**
14:1;20:19;21:2;
25:19;152:21
**serious (2)**
109:11;134:24
**serve (2)**
7:17;13:10
**services (1)**
66:25
**serving (2)**
8:7;56:16
**session (5)**
3:4;12:15;58:7;
82:13;92:22
**set (10)**
9:12;13:25;14:15;
34:23;61:13;98:15;
143:17,18,20;164:12
**sets (4)**
15:22;32:16;33:4;

48:9
setting (4)
    22:6;23:15;49:1;
    100:2
settle (6)
    40:6;94:10,19;
    98:22;111:22;134:7
settled (3)
    19:11;37:8;147:12
settlement (124)
    4:3;13:24;14:8,12;
    15:9,11,20;16:8,16;
    19:13,15,18,22;20:4;
    21:4;22:4;23:3,17;
    24:4;27:10;28:2;29:2;
    30:19;33:8,11,12;
    35:4;36:8,10,19,20;
    37:10,20,22,24;38:15,
    21;40:2,7;41:3;42:11,
    14,21;43:2,7,14;44:1,
    25;45:13,19;46:14,
    16;48:11,14;49:2;
    50:6,24;51:23;52:25;
    53:13;54:19;55:1;
    64:24;65:9,21,24;
    67:10;73:8,11,14,18;
    74:2;84:14;88:9;89:5,
    6;94:12,23,24;95:23;
    97:15,16,19;99:9;
    101:21;102:17;
    106:20,23;107:2,7,17;
    111:25;117:18;118:6;
    120:12,15,19,21,24;
    121:3,22;122:25;
    129:25,25;133:4,7,18;
    137:1,9,13,18,19,21;
    139:18,19;146:16,16,
    24;149:1;151:13;
    157:9,9;159:18;160:3
settlements (3)
    19:3;43:9;99:4
settling (3)
    37:19;99:25;134:24
seven (1)
    67:4
several (5)
    21:20;81:16;95:17;
    108:3;132:17
share (1)
    127:24
shared (1)
    55:9
shareholder (2)
    56:17;124:8
shareholders (5)
    39:20;44:17;
    123:25;124:2,7
shares (5)
    119:12,19,20;
    120:2,6
sharing (1)
    38:14
sheet (8)

14:2,16;32:12;
    34:12;37:3;72:12,20,
    22
sheets (1)
    72:23
short (10)
    26:18;27:2,25;
    35:17;61:19;82:6,7;
    91:10;148:21;149:6
shortness (1)
    75:3
show (17)
    16:7,11,15;33:8;
    38:11,12;43:7;55:7;
    78:23;81:25;107:6,8,
    12,19,25;120:21;
    124:24
showed (1)
    125:5
showing (1)
    65:6
shows (6)
    27:15;28:5,11,15;
    46:19;81:14
side (4)
    9:13;65:14;90:12,
    15
sides (1)
    29:7
sign (2)
    98:4,5
signature (4)
    38:12;120:8,20,25
signed (12)
    37:17;43:7,12,15;
    54:21,24;98:7;
    120:11,20,21,24;
    121:20
significance (1)
    96:21
significant (5)
    16:15;29:14;95:20;
    121:25;133:3
significantly (1)
    81:22
silly (4)
    27:3;86:16;111:17;
    134:20
similar (5)
    40:14;50:8;84:2;
    87:20;157:5
simply (6)
    27:3;86:17;99:25;
    111:18;139:8;163:15
single (1)
    42:23
sit (1)
    160:25
sitting (1)
    90:12
situation (5)
    6:3;9:1;29:1;
    114:13;133:20

six (10)
    28:8;33:16;36:4;
    37:7,8;67:1;133:9;
    135:17,19,22
skeptical (2)
    40:22;42:19
skim (1)
    84:23
skip (1)
    50:17
slash (1)
    52:24
slice (1)
    159:23
slightly (1)
    162:17
Slow (2)
    101:17,17
small (2)
    54:24;150:24
Snickers' (2)
    91:6,7
sold (1)
    93:21
sole (1)
    84:11
somebody (2)
    57:12;79:10
someone (3)
    146:3,7;147:4
sometimes (1)
    20:21
somewhere (1)
    164:2
sorry (21)
    7:23;11:14;24:25;
    38:25;59:13;74:4,5;
    78:10;100:8;102:14;
    103:10;105:9;107:12;
    108:8;109:25;113:14;
    120:9;126:9;144:9;
    145:7;160:10
sort (4)
    80:18;130:16;
    133:15;160:12
sorts (2)
    43:19;128:9
sought (1)
    51:2
sound (1)
    124:21
sounds (2)
    109:15;155:23
Southern (1)
    3:3
speak (9)
    35:10,12;105:7;
    106:20;109:1;113:23;
    114:5,23;144:4
speaking (7)
    21:14,17;23:6;34:3;
    113:18;118:8,19
specific (7)

25:14;69:1;71:10;
    83:13;97:4;149:10;
    156:15
specifically (25)
    38:16;39:18;43:6,
    11,13;44:21;51:18;
    55:3;69:3;71:15;
    72:25;73:25,25;74:2,
    7,9;75:2;83:20;85:18;
    118:23;121:10,19;
    145:2;148:20,22
specifics (1)
    84:17
speculation (1)
    68:25
speed (1)
    84:11
spoke (1)
    21:25
spoken (2)
    21:15;34:2
spread (4)
    132:22,24;133:9;
    135:9
spreadsheets (1)
    77:5
stake (1)
    147:2
stamped (1)
    80:16
stand (13)
    3:19;6:17,17;9:6;
    11:6,10;12:7;18:2;
    93:6;101:14;138:12;
    145:15;152:14
standard (2)
    43:2,9
standpoint (1)
    147:6
start (2)
    16:2;93:12
started (4)
    4:8;10:9;20:3;
    92:16
starting (2)
    30:13;86:21
starts (3)
    20:25;80:22;155:18
state (12)
    3:19;6:7;11:24;
    12:2;16:20,21,24;
    18:6;40:20;62:15;
    67:23;73:25
stated (5)
    6:10;16:21;57:10;
    150:18;163:3
statement (20)
    4:14;11:22;13:18;
    16:4,19;17:1,1,5;
    51:7;55:10;62:1;63:1;
    74:15,18;94:3;
    107:18;143:23;144:4;
    150:10;154:20

statements (13)
    5:7;6:7;10:10,25;
    11:1,3,17;12:11;
    13:15,20;57:14;
    77:22;116:4
States (1)
    3:2
stating (3)
    8:4;69:5;162:10
status (5)
    36:24;40:17;73:12;
    111:24;116:3
statute (1)
    66:14
stay (6)
    100:15;137:4;
    145:5,6,8,11
S-T-E- (1)
    18:8
S-Tek (5)
    29:10,10;37:20,25;
    135:6
step (2)
    22:11;89:25
Stephen (15)
    3:12;13:22;18:5,8,
    11;25:15;26:18;28:1;
    34:22;35:15,22;
    60:18;61:18;86:4;
    111:12
STERN (169)
    3:11,12,13;4:13,17;
    8:17;11:1,14;13:16,
    17,18,21,22;16:1;
    17:9,11,14,20,24;
    18:4,5,8,8,11,13;
    40:15;42:21;45:24;
    47:22;56:1;58:10,25;
    59:11,16,19;60:14,15,
    17,18,20;61:2;67:4,7,
    12,15;68:10,20;70:6;
    77:13;78:2,14;82:16;
    83:3;86:4,25;87:7,13;
    88:11;89:8,21,22,25;
    90:2,9,11,16;91:17;
    92:1,7,11,14;94:10,
    16;96:17;97:14,21;
    98:3;101:24;102:12,
    20;103:4,16;104:8,22,
    23,25;105:2;108:11,
    15,21;109:21;110:1,3,
    4,5;113:25;114:16,
    21;118:15,21,25;
    119:1,2,5,6,9;125:2,4;
    126:9;127:13,15;
    128:13,16,18;129:24;
    131:3,12;132:15,21;
    133:12,20;135:10;
    136:7,14,15;138:4,6,
    12;145:10,14;147:16,
    17;148:20;149:14;
    150:1;152:8,10,16;

**TAGNETICS, INC.**

October 18, 2019

153:3;154:6,21;
155:2,11,14,19,23;
156:8,9,11,18,19;
157:18;158:14,20,23,
25;159:3,5;161:7;
164:16,21;165:5
**stern@kaganszerncom (1)**
154:23
**Stern's (4)**
90:21;128:22;
132:16;144:15
**stickers (1)**
79:24
**still (18)**
59:10,11,15;79:16;
80:4;85:14;89:3;93:9;
99:22;122:23;129:10;
135:23;138:12;145:2,
11;146:11;148:12;
151:6
**Stochastics (1)**
93:16
**stock (17)**
50:10;89:3,6,10,18;
120:6;146:6,13,17,21;
147:6,11;157:6,10,12,
13,14
**stop (3)**
6:11;109:23,24
**story (1)**
148:16
**Strain (5)**
37:21;38:1,3;41:4;
135:6
**straits (1)**
108:4
**streamline (1)**
131:4
**stress (1)**
95:20
**stretch (1)**
64:9
**stretched (1)**
162:24
**strictly (1)**
25:21
**strike (1)**
109:22
**string (29)**
14:5;20:19,25;
23:20;25:19;30:6;
35:20;48:3,3,5,8;
52:21,22;53:2,4;79:1;
105:12,15;106:6,11;
107:11,12;127:16;
153:6,7;154:10;
155:24;159:7;161:4
**strings (2)**
85:17;160:21
**stripping (1)**
147:11
**structurally (1)**
24:18

**structure (6)**
24:16;26:2;117:18;
132:20,22;133:22
**structures (1)**
24:11
**struggling (1)**
46:15
**stuff (5)**
17:9;25:4;30:12;
98:13;154:17
**sub- (1)**
133:8
**subject (2)**
23:1;27:11
**submit (1)**
103:17
**submitted (3)**
47:12;100:20;102:5
**subs (3)**
43:10,21;51:15
**subsequent (4)**
28:7;36:25;38:14;
61:7
**subsequently (2)**
50:21;62:5
**subsidiaries (5)**
39:17;43:1;44:15,
20;121:9
**subsidiary (3)**
116:19;117:5;
121:24
**substantial (1)**
29:7
**substantive (2)**
23:2;48:17
**substitute (2)**
46:18;47:11
**succeed (1)**
151:14
**successful (1)**
147:4
**successors (1)**
39:12
**succinct (1)**
26:18
**sue (15)**
69:16;70:15;
115:23;116:5,11,19;
117:5,10,14;122:7,8,
13,23;162:14,22
**suggest (2)**
29:24;59:9
**suggested (2)**
106:16;133:25
**suggests (1)**
62:7
**summarized (1)**
149:25
**Sunday (2)**
155:21,22
**supplied (1)**
151:6
**support (4)**

6:9;7:3;8:5;9:7
**supports (1)**
15:24
**suppose (1)**
148:16
**supposed (3)**
30:10;76:4,19
**sure (46)**
4:9;6:11;8:14;
18:18;19:23;20:19;
21:24;22:8,11;23:2;
24:7;25:3;31:25;
32:17;33:1;34:4;
35:22;49:4;51:25;
52:20;54:18;55:10;
65:16,18;72:14;
76:17;79:21;81:4,5;
91:24;92:16;96:5;
98:19;105:9,20;
106:2;108:9;110:4;
120:17;129:15;142:7,
10;152:10;153:9;
154:10;158:25
**surprise (3)**
43:8;69:23;163:6
**surprised (6)**
15:17;34:1;38:17;
43:18;52:2,2
**surrounding (1)**
141:23
**suspect (1)**
109:13
**sustain (4)**
45:25;46:3;47:7,18
**Sustained (1)**
114:19
**swap (1)**
146:6
**swear (2)**
11:15;12:3
**swearing (1)**
12:5
**sworn (6)**
11:19;12:1,1,3,8;
18:5
**system (2)**
11:4;81:7

**T**

**table (5)**
24:4;79:4;80:2;
95:4;149:12
**Tagnetics (95)**
3:8,10,12,16;4:4;
5:5,6,7,12,20;9:23;
10:2;13:19,23;16:12,
16;18:14;23:25;
24:20;26:3;27:5;
29:11,16;39:15,22;
40:8;41:18;42:3;43:4;
44:18;51:22;52:1;
54:21;55:4;56:22;

62:21,22;66:17;67:1;
69:16,19,22,23;70:13,
25;71:11,22;72:4,6,7,
7,9,11,24;75:4;86:6;
88:14;89:4;92:25;
93:23;100:4;107:3;
108:4;109:11;115:23,
25;116:3,6,11,19;
117:5,10,14;119:12,
20;120:2,22;122:14,
24;123:4,25;124:7;
127:5;130:13;132:20;
135:13;140:18;
144:21;146:20;149:2,
6;151:13;157:10;
162:13;163:1
**Tagnetics' (13)**
8:14;9:17,25;20:14;
29:13;52:15;58:11;
60:7;90:17;93:18;
102:23;121:8;122:8
**talk (4)**
61:9;75:2;134:19;
165:7
**Talked (9)**
24:10;95:17;135:2;
136:7,8,11;138:2;
148:24;155:2
**talking (10)**
11:3;19:15;28:17;
46:1,20;54:1;64:1;
70:18;122:25;152:20
**team (2)**
23:25;62:22
**Technology (2)**
66:5;93:20
**telephone (2)**
21:5;163:22
**ten (3)**
55:14,16;56:17
**tend (1)**
46:9
**tentative (1)**
164:12
**term (32)**
14:2,15;16:14;
24:14;29:6;32:12;
33:21;34:12;37:3;
65:14;72:12,20,22,23;
75:9,20;96:3,22;
109:4,7;110:7,10,14;
113:6;115:16,22;
117:8,12;142:11,22;
159:17;160:17
**terminated (2)**
86:12;159:12
**terminating (1)**
134:14
**terms (152)**
13:25;14:3,4,7,8,
14;15:23;16:7,14;
24:19;25:14,20;26:5;
28:12;29:3;30:21,23;

31:8,11,22;32:15,17;
33:4,6,13,24;34:9,23,
24,25;35:1,2,3,19;
38:8,9;41:3;42:6;
45:3;46:13;48:10,10,
19,24;49:11,18,20,21,
23;50:9;52:5,9;53:10;
61:13,20,03 5,6,10,
12,14,25;65:2,4,7;
73:1,3,4,5,7,8,10,14,
16;74:7,8;75:23,25;
76:3,3,4,7,10,14,19;
85:7,12,15,16,22;
89:18;94:12,14;95:3,
10,12,13,16,21;96:13,
15;97:19,22;98:21;
104:15;105:19,21;
107:1,13;108:1,24;
109:19;110:20,20,23;
112:7,15,25;113:4,17;
114:6,24;115:4,11,17;
116:24;117:2,17;
130:3,10,20;141:6,9;
142:21;143:1,10,17,
18,20;144:2;145:1;
149:11;159:9,14,24;
160:2,6;161:1,3,19,
20;163:7,16
**terrible (2)**
74:22,23
**testified (10)**
77:18,19;78:2;88:6;
121:2;123:3,9;
141:16;153:13;
160:24
**testify (14)**
5:25;6:4,23;7:1;
8:3;56:21;58:16;
64:23;70:7;75:1;
98:19,20;123:21;
131:5
**testifying (7)**
8:15;11:10;17:12;
46:4;57:12;131:9;
153:18
**testimony (37)**
6:11;8:7;11:6,23;
12:1,1,3;16:24;59:14;
66:22;68:1,3,7;78:9,
17;85:11,25;90:21;
93:11;104:19;106:25;
109:22;123:14,19;
131:6;132:10;139:1,
2,5;142:3;144:16;
148:14;150:2,10;
156:13,24;161:10
**thanked (1)**
133:21
**thanks (1)**
5:4
**theft (1)**
70:23
**theme (1)**

**TAGNETICS, INC.**

October 18, 2019

49:10
thick (1)
79:16
thinking (3)
87:25;163:21;164:1
third (7)
15:8;24:15;35:18;
36:4;135:17,19,22
thoroughly (2)
33:10;73:18
though (8)
13:2;20:20;27:15;
46:14;47:14;50:11;
99:20
thought (15)
4:8;7:9;86:17,22;
91:20;94:20;99:17;
105:18;106:15;
112:17;115:18;127:8;
139:19,23;161:23
three (40)
11:16;14:6;16:4;
23:13;25:1;27:14;
28:6,11;29:8;31:13;
33:14;36:3;37:8,11;
46:16;49:19;52:7;
66:21;72:10;73:21;
76:8,13,20;77:1;94:7,
10;95:10;97:6,17,21;
99:22;105:16,22,25;
106:7;136:7;137:18;
160:1,20;163:1
throughout (2)
68:5;93:25
throw (2)
147:5;164:5
times (5)
14:6;48:22;76:13;
160:1,21
timetable (2)
99:12;130:4
timing (4)
50:14;118:18;
136:10;139:22
today (15)
4:24;9:7;13:23;
15:2;19:16;37:15;
47:18;57:13;68:5;
91:18;94:8;123:24;
158:11;160:25;
163:19
together (9)
87:14;98:16,17;
127:1,3,19;132:19;
133:22;164:3
told (7)
31:7;96:7,9;121:25;
130:13;133:13;
142:14
took (6)
36:21;38:9;82:4;
92:24;136:22;163:6
top (14)

25:18;27:16,24;
28:18;34:15;35:19;
42:24;61:14;74:9;
79:25;126:11;127:17;
155:8;165:3
topic (3)
69:3;116:12;149:17
total (21)
10:17;15:9,11;
23:13;28:11;36:8,8,
10;52:8;65:9;77:3,6,
7;94:18;102:16;
132:25;135:6;159:18,
20;160:9,9
totally (1)
47:17
totals (1)
36:7
touch (4)
137:4;147:9;
164:10,11
towards (1)
133:4
track (1)
92:14
trade (1)
70:23
train (1)
144:18
transaction (4)
38:6;61:22;145:22,
22
transfer (2)
61:23;146:2
transfers (1)
146:3
transmitted (4)
38:19;39:1;118:2,4
transpired (1)
86:18
travel (1)
158:13
treat (2)
12:2,18
trial (13)
16:17;19:10,12;
61:24;72:19;96:11;
99:19;100:1,2;
137:17;140:1;161:13;
162:2
tried (2)
88:18,22
trouble (3)
22:9;126:9;154:15
try (16)
4:20;20:13;24:1;
40:11;45:4,4;48:16;
53:12;62:23;63:19;
80:24;120:18;140:5;
147:5;149:5;154:13
trying (23)
11:12;30:19;46:5;
53:9;72:18;74:5;

77:21;78:4;82:16;
84:10;86:18;97:3;
109:12;112:19;119:3;
133:4,17;140:5;
149:18;154:12,12;
158:6;163:4
T's (1)
163:16
Tuesday (6)
78:5,23;97:23;
115:13;149:24;
150:14
turn (5)
20:14;111:10;
120:7;138:24;148:5
tweaks (2)
54:23,24
twice (6)
14:6;21:16;34:2;
76:12;159:25;160:20
two (32)
9:14;10:19;13:9,10;
25:1;28:7;34:21;36:2;
49:19;50:15;52:7;
62:19;66:18;76:8,8;
87:9;94:25;95:7;
96:20;98:1;99:11,13;
101:9;103:1,7,14;
133:8;137:15,22;
145:13;147:1,13
two- (1)
132:24
type (1)
148:22
types (4)
66:16;67:13;73:14;
88:13
typical (3)
38:8;43:11,19
typo (1)
76:23

**U**

ultimate (1)
110:21
ultimately (9)
30:20;31:8;32:7;
35:9;72:8;93:20;
106:15;112:4;143:8
unauthorized (4)
6:23;7:11;8:8;13:1
unclear (1)
153:12
under (16)
11:24;51:16,20;
55:8,11,17;76:24;
82:2;93:9,22;98:22;
112:11;120:8;129:10;
148:12;150:15
Underneath (1)
127:20
understandable (1)

127:25
understands (1)
4:22
Understood (10)
7:15;8:9;42:20;
44:7;80:22;93:10;
97:9;148:13;149:22;
157:15
undetermined (1)
133:1
unfortunate (1)
36:22
unfortunately (5)
6:1;11:20;29:6;
80:23;157:13
unique (2)
19:17,19
United (1)
3:2
University (1)
93:14
unjust (1)
67:2
unknown (1)
66:14
unless (6)
6:18;54:3;80:19;
118:22;120:17;
137:17
Unpaid (5)
66:17,18,19,21,23
un-redacted (2)
44:4;45:9
unusual (1)
65:12
up (48)
8:2;11:7;17:14;
20:6,10;22:1,1;24:8;
28:15;33:9;38:23;
64:19;68:24;69:8,22;
83:22;84:11;91:6,11;
95:7;96:3;100:15,18,
23;105:3;108:5;
109:19;112:3;128:6;
135:5;137:15;138:12;
142:4,6,25;143:4,7;
145:19;146:7;149:3,
8;158:6,12;163:14,
24;164:7,9,12
upon (14)
5:14;28:9;41:3;
57:8;58:13;63:25;
87:8;89:22;90:2;
128:21;147:15,19;
156:20;157:17
upper (1)
126:15
use (9)
9:12,17,25;10:6;
20:13;52:11;63:15,
17;64:5;70:24;88:12;
92:12;126:20;161:20;
162:9

used (9)
64:6,7,8;86:16;
87:23;88:22;99:3;
123:18;142:11
uses (1)
112:8
using (2)
9:14;63:20
usually (1)
161:17

**V**

vacation (5)
19:20,25;22:7;30:9;
84:10
vague (1)
96:22
valid (1)
157:15
various (2)
49:24;66:16
Ventures (17)
37:12,18,25;40:6,
18;44:12;45:15,20;
66:5;120:8,9,13,22;
121:4;122:3,4,4
Ventures' (2)
45:13;122:15
verbal (1)
99:21
versa (1)
13:4
version (10)
37:10;44:4;45:9;
46:19,19;47:13;
99:10,15,19;103:5
versus (1)
11:23
via (1)
164:18
vice (1)
13:4
view (2)
51:22;161:11
viewed (1)
114:12
viewpoint (1)
6:8
Virginia (1)
99:10
virtually (2)
81:16;108:6
vis-a-vis (1)
89:14
voluntary (1)
51:5

**W**

wages (1)
66:18
wait (2)

**TAGNETICS, INC.**

October 18, 2019

| | | | | |
|---|---|---|---|---|
| 54:8;131:4 | 163:2 | 11:4;164:1 | **11:14 (1)** | |
| **waive (1)** | **wiping (1)** | **worlds (1)** | 58:5 | **2** |
| 158:9 | 65:22 | 137:22 | **11:33 (1)** | |
| **waiver (1)** | **wire (1)** | **worried (1)** | 125:8 | **2 (17)** |
| 73:12 | 136:20 | 85:2 | **11:50 (1)** | 15:22;24:9;27:24; |
| **wake (1)** | **wish (32)** | **worry (1)** | 82:11 | 28:15,16;44:9;48:7; |
| 158:6 | 4:12;5:1;13:20; | 11:25 | **11:52 (1)** | 75:3;87:15,16;88:3,9; |
| **wants (2)** | 16:20;17:10;60:15; | **worthless (1)** | 50:7 | 102:3,12,15;110:12, |
| 101:6;153:21 | 68:2,9;90:17,19,22; | 29:9 | **112-5 (2)** | 16 |
| **way (34)** | 91:12;100:7;104:16, | **wrap (1)** | 80:7,7 | **2:19 (1)** |
| 7:10;8:18;11:5,25; | 21;128:20;129:4; | 137:14 | **11th (1)** | 48:6 |
| 16:8;19:2;24:19;26:4; | 131:18,23;137:25; | **wrapped (1)** | 149:18 | **2:30 (1)** |
| 33:2;52:13,14;63:22; | 144:13;148:3;151:19; | 79:3 | **12 (6)** | 91:20 |
| 65:13;67:24;71:8; | 156:4,5;157:24; | **write (3)** | 28:8;33:16,16;36:5, | **2:38 (2)** |
| 83:18;86:22;100:1; | 158:8,9,10;161:8; | 74:12;97:22;134:11 | 5;135:19 | 158:7,8 |
| 110:15;112:21; | 162:4,7 | **writing (3)** | **12:06 (1)** | **2:48 (1)** |
| 133:17,24;135:13,23; | **wishes (1)** | 14:7;21:5;164:4 | 82:11 | 165:10 |
| 136:25;138:10; | 93:3 | **written (13)** | **12:17 (2)** | **20 (2)** |
| 139:23;147:2;149:2; | **withdraw (1)** | 14:12;33:11;36:5,8; | 91:1,2 | 16:13;75:17 |
| 154:2,4,8,14;163:17 | 122:9 | 48:10;73:8,20;83:25; | **12:20 (1)** | **2019 (37)** |
| **weak (1)** | **within (6)** | 87:21;160:6;161:5; | 92:21 | 3:5;8:17;9:11;14:3; |
| 134:22 | 33:13,22;34:18; | 163:12,15 | **12:42 (2)** | 16:10;21:1;26:22; |
| **weather (1)** | 78:15;134:2;137:15 | **wrong (1)** | 27:14;86:15 | 27:14;35:20;48:1,6, |
| 74:22 | **without (11)** | 153:4 | **12:44 (1)** | 21;50:21;53:8; |
| **week (10)** | 25:14;43:15;48:24; | **wrote (5)** | 68:21 | 105:23;107:1;110:13, |
| 19:24,24;20:5; | 49:20;51:6;64:5; | 33:2,12;34:10; | **123 (1)** | 23;111:3,11;115:3; |
| 27:10;29:11;103:25; | 99:14;117:6,16; | 115:10;161:3 | 14:21 | 119:11;120:1;122:11; |
| 134:18;137:15; | 126:25;148:15 | | **148,000 (1)** | 124:21;125:8,15; |
| 163:21;164:17 | **witness (17)** | **Y** | 133:6 | 126:14;127:18,22; |
| **weekend (4)** | 6:6;7:2,10;8:12; | | **14th (7)** | 140:20,24;141:2,5; |
| 33:12;78:6;97:15; | 11:3,11;17:12;18:5; | **year (3)** | 16:8;48:12;50:6; | 143:15,25;155:18 |
| 149:23 | 79:11;85:25;93:6; | 94:2;12:25;135:20 | 53:1;64:25;153:8,8 | **20-some (1)** |
| **weeks (2)** | 101:14;108:13,15; | **years (6)** | **15 (2)** | 93:19 |
| 98:1;151:1 | 128:25;138:12; | 18:22;19:1;72:24; | 18:25;92:8 | **20th (54)** |
| **welcome (1)** | 147:25 | 90:14;93:19;109:18 | **151,000 (1)** | 8:17;9:11,24,25; |
| 150:21 | **witnesses (17)** | | 133:6 | 16:10;22:16;35:2; |
| **weren't (5)** | 5:8,9,12,16,24;7:7, | **Z** | **16 (2)** | 49:15;50:20;53:8; |
| 73:9;82:24;114:15; | 24,25;8:2;13:3;17:10; | | 19:1;80:14 | 60:21;61:17;71:25; |
| 140:4,5 | 56:2,7;59:1;90:17; | **zeros (1)** | **16th (4)** | 72:2;73:23;74:7;76:7, |
| **what's (14)** | 129:5;131:19 | 77:1 | 20:6;48:6;50:7; | 7,11;84:3;94:13;95:3, |
| 11:22;26:21;45:12; | **witness's (1)** | | 52:24 | 22;97:8;99:12; |
| 47:17;63:23;74:23; | 11:6 | **1** | **17 (1)** | 101:20;105:3,12; |
| 81:23;87:11;89:5; | **wonderful (1)** | | 73:12 | 107:1,13,15;113:5; |
| 138:1;143:10;154:10; | 138:22 | **1 (14)** | **17th (1)** | 114:10;129:22;130:1, |
| 157:8;160:12 | **word (13)** | 32:10;34:15;51:12; | 73:21 | 3,10,14,21;132:14,15; |
| **White (15)** | 63:15,17,23;64:3,5, | 60:25;61:17;80:7; | **18 (4)** | 137:12;141:2,7; |
| 124:10,17,20; | 16,17;68:17,20; | 101:15,18,19;110:24; | 33:16;36:5;73:11; | 143:2;144:19;145:1; |
| 125:8,25;126:3,4,13, | 96:23;112:8;161:21; | 111:9;143:16,24; | 135:22 | 148:18;149:10; |
| 18,23;127:2,4,17,20; | 162:10 | 154:9 | **18th (1)** | 150:16;154:2;156:16; |
| 128:4 | **worded (1)** | **1:03 (1)** | 3:4 | 159:9;161:24 |
| **whole (6)** | 30:22 | 92:21 | **19 (2)** | **21st (1)** |
| 10:17;83:24;84:1; | **wording (2)** | **1:25 (7)** | 22:5;48:1 | 50:22 |
| 141:24;152:24,25 | 107:16;157:5 | 27:23;28:17;76:2; | **19-30822 (1)** | **22nd (2)** |
| **wife (3)** | **words (2)** | 127:22;140:20,24; | 3:8 | 127:18,22 |
| 91:3,8;137:5 | 108:3;151:7 | 141:5 | **1973 (1)** | **23 (1)** |
| **willing (13)** | **work (3)** | **1:33 (1)** | 93:14 | 18:22 |
| 24:20;32:9;69:24; | 9:21;33:11;84:13 | 132:21 | **1996 (1)** | **23rd (10)** |
| 71:4;87:7;98:22; | **worked (2)** | **1:34 (1)** | 18:18 | 25:6;49:16;61:11; |
| 103:17;134:19;135:3, | 36:20;137:13 | 25:12 | **19th (11)** | 62:19;73:24;105:23; |
| 9,12,16;140:4 | **working (3)** | **10:46 (3)** | 21:1;48:15;53:6; | 109:4;110:13;132:17, |
| **wipe (2)** | 98:24;143:14; | 23:22;25:7;105:23 | 94:9;125:14,22; | 21 |
| 146:20,23 | 154:10 | **11:02 (1)** | 126:6,14,16;155:8,18 | **24 (3)** |
| **wiped (1)** | **works (2)** | 58:5 | | 26:22;80:7;111:11 |

**LEGAL ELECTRONIC RECORDING, INC.**
216-881-8000 www.lerinc.com

**TAGNETICS, INC.**                                                             **October 18, 2019**

| | | |
|---|---|---|
| **24th (12)**<br>20:11;25:25;26:17;<br>49:16;86:10;106:7;<br>133:25;139:2,13;<br>140:8,11,13<br>**25th (15)**<br>20:11;27:14;28:17;<br>33:19;61:12;65:5;<br>76:1,5,12;86:15;<br>140:16,20,24;141:4;<br>143:9<br>**26 (27)**<br>14:3,22,24;16:13;<br>21:17;35:20;42:5;<br>48:21;49:1;63:13;<br>68:22;89:4;110:23;<br>111:3;113:13;119:11,<br>25;122:7,11,16;125:8,<br>15;126:5;143:25;<br>150:17;157:8,9<br>**26th (44)**<br>20:11,11;37:4;41:2,<br>5;42:2;53:11,13;<br>63:20;64:10;72:12,<br>17;73:13;76:13;84:6,<br>8;85:16;89:5;102:16;<br>103:19,23;106:14;<br>112:4,5;114:23,24;<br>115:3;117:21;119:16;<br>125:16,23;142:5;<br>143:15;144:19;<br>146:17;148:17;<br>153:21;154:5;155:10,<br>12;156:14;157:12;<br>160:2,3<br>**27th (1)**<br>73:16<br>**2nd (1)**<br>155:21<br><br>**3**<br><br>**3 (24)**<br>26:24;27:16,25;<br>28:18;66:11;80:10;<br>86:7;101:1;102:14;<br>103:2,3;104:3,7,12,<br>13;106:8;111:11;<br>132:1;138:25;152:2,<br>2;158:21,22,24<br>**3:00 (2)**<br>91:23;95:25<br>**3:03 (1)**<br>126:14<br>**3:17 (1)**<br>111:6<br>**3:27 (12)**<br>30:7;33:3;34:13,21;<br>64:12;111:3,7;112:6;<br>114:25;115:3,10;<br>143:15<br>**3:30 (3)**<br>95:25;96:17;97:13 | **3:56 (4)**<br>34:6;48:21;113:13;<br>143:25<br>**3:58 (3)**<br>34:18;48:21;117:21<br>**30 (1)**<br>92:16<br>**30,000 (2)**<br>28:6;135:8<br>**300 (1)**<br>76:24<br>**30th (17)**<br>77:8;78:23;80:3;<br>83:4,12;150:14;<br>152:6,11,14,20,24;<br>153:22,25;154:9;<br>155:5,10;157:4<br>**3rd (1)**<br>154:3<br><br>**4**<br><br>**4 (19)**<br>39:6,7;48:25;80:10;<br>100:23;101:1;103:2,<br>5;104:4,7,12,13;<br>106:8;132:1;152:2,3;<br>158:21,22,24<br>**4:09 (1)**<br>35:14<br>**4:14 (2)**<br>21:2;155:18<br>**4:35 (1)**<br>102:17<br>**4:36 (3)**<br>35:20;76:16;102:17<br>**4:42 (1)**<br>14:24<br>**4:54 (1)**<br>22:17<br>**40 (1)**<br>94:20<br>**4th (2)**<br>155:21,22<br><br>**5**<br><br>**5 (33)**<br>23:20;25:18;39:6,8;<br>44:9,23;62:12;77:10;<br>79:9,16,20;80:4,11,<br>12;82:18;108:23;<br>109:4;121:5;151:21,<br>24;152:3,4;153:1,1;<br>154:1;155:8,17;<br>156:1,2;158:21,22,23,<br>24<br>**5:13 (1)**<br>50:21<br>**5:18 (1)**<br>127:18<br>**5:20 (1)**<br>92:7 | **5:30 (4)**<br>96:4,20;113:25;<br>114:4<br>**5:56 (2)**<br>25:25;106:7<br>**5:57 (1)**<br>133:25<br>**50 (1)**<br>145:23<br>**50.1 (1)**<br>145:23<br>**51 (1)**<br>146:4<br>**5th (1)**<br>154:3<br><br>**6**<br><br>**6 (6)**<br>14:22;37:18;39:6,8;<br>61:3;82:2<br><br>**7**<br><br>**7:25 (1)**<br>50:22<br>**7:43 (3)**<br>26:23;86:10;111:11<br>**7:48 (1)**<br>48:2<br><br>**8**<br><br>**8:24 (2)**<br>28:22;30:7<br><br>**9**<br><br>**9:23 (1)**<br>53:8<br>**9:33 (1)**<br>78:23<br>**9:34 (1)**<br>3:1<br>**9:50 (1)**<br>12:13<br>**9:58 (1)**<br>12:13<br>**90 (1)**<br>28:2<br>**90,000 (1)**<br>28:1<br>**90k (2)**<br>28:25;29:6 | |