IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| DAVID J. BOSHEA, <br><br> **Plaintiff,** <br><br> v. <br><br> COMPASS MARKETING, INC. <br><br> **Defendant.** | <br><br><br><br><br><br> Case No. 1:21-CV-00309-ELH |

**REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA DUCES TECUM,
OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER**

Non-party, James C. DiPaula ("Mr. DiPaula"), through his undersigned attorneys and pursuant to Federal Rule 45 and Federal Rule 26(c), hereby submits this Reply in further support of his Motion to Quash the Subpoena Duces Tecum served upon him on or about August 4, 2021 and in the alternative Motion for Protective Order (the "DiPaula Motion to Quash") on the grounds that the information sought by the Subpoena is beyond the scope of discovery and Mr. DiPaula lacks personal knowledge regarding the employment relationship at issue herein. For the reasons set forth herein as well as those set forth in the initial Memorandum in Support, the Motion should be granted and the Subpoena should be quashed.

**ARGUMENT**

The pleadings filed in this action demonstrate that the subject matter of this case is the validity and enforceability of an employment agreement between Plaintiff, David Boshea ("Mr. Boshea") and his former employer, Defendant Compass Marketing, Inc. ("Compass Marketing"). Compass Marketing asserts that the employment agreement attached to the Second Amended Complaint, which forms the basis for Mr. Boshea's claims, is a forged document and that Mr. Boshea is not entitled to the wages he seeks. ECF No. 37. Compass Marketing also recently filed a Counterclaim and Third Party Claim against "John Does" alleging that once Mr. Boshea's initial

complaint was filed, certain business partners ceased doing business with Compass Marketing. ECF No. 38. Importantly, *none* of these claims or defenses assert *any* involvement by Mr. DiPaula nor do they in any way demonstrate how Mr. DiPaula's former employment with Compass Marketing is at all relevant to the employment relationship between Mr. Boshea and Compass Marketing or the relationship between Compass Marketing and its vendors or business partners in 2021.

Nevertheless, Compass Marketing served a Subpoena Duces Tecum compelling Mr. DiPaula's appearance for deposition and the production of following three categories of documents: "(1) All documents that refer, reflect, or relate to any employment agreement(s) between *you and Compass Marketing*; (2) All documents that refer, reflect, or relate to any severance agreement(s) between *you and Compass Marketing*; and (3) All documents that refer, reflect, or relate to any severance payment(s) or other post-employment payments *you received* from or on behalf of Compass Marketing." See DiPaula Subpoena at ECF No. 36-3 (emphasis added). Mr. DiPaula served objections to the DiPaula Subpoena which could not be resolved between the parties. Accordingly, Mr. DiPaula moved to quash the DiPaula Subpoena or in the alternative for a Protective Order. Mr. DiPaula's affidavit established that nothing in his employment agreement or his individual employment relationship with Compass Marketing (which began *after* Mr. Boshea was hired and ended *before* Mr. Boshea was terminated) is at all relevant to the dispute herein.

In response, Compass Marketing asserts that Mr. DiPaula's testimony is necessary as he "may have" an "awareness" of "Mr. Boshea's employment terms, including whether Mr. Boshea was guaranteed a severance payment of more than $500,000." See ECF No. 43, p. 4, n. 2. Compass Marketing also argues that Mr. DiPaula, as an Executive Vice President would otherwise

have knowledge of "of the terms of various employment agreements of Compass employees" and cites to Compass Marketing's own Answers to Interrogatories.  ECF No. 43, p. 3.  Neither of these so-called proffers are sufficient to overcome the issues raised in the DiPaula Motion to Quash nor do they amount to "good reason" to require discovery from Mr. DiPaula, a non-party herein.

I. **Mr. DiPaula Cannot Testify To The Circumstances Surrounding Mr. Boshea's Employment Terms**

In support of his Motion to Quash, Mr. DiPaula submitted an affidavit which stated in relevant part that:

> 2.  I was employed by Compass Marketing Inc. from 2010 until 2014.
>
> ...
>
> 4. While at the time of my resignation I held the title Executive Vice President at Compass Marketing, Inc., my responsibilities were primarily limited to business development, client relationships and strategic initiatives.  Mr. Boshea was employed by Compass before and after my tenure and did not report to me.
>
> 5.  I was not involved in hiring Mr. Boshea in 2007.  I did not prepare, review or see his employment contract.  ...
>
> 6. I was not involved in the negotiation of Mr. Boshea's employment agreement.
>
> 7.  I was not the supervisor for Mr. Boshea at any time between 2007 and 2014....

ECF No. 36-2, the Affidavit of James C. DiPaula.  Mr. DiPaula has already indicated what first-hand knowledge, <u>or lack thereof</u>, he has with respect to Mr. Boshea's hiring, employment agreement, and termination.  There is no basis for Compass Marketing to "explore this topic and these related topics under oath in a deposition" as Compass Marketing suggests.  ECF No. 43, p. 4, n.2; *Maxtena, Inc. v. Marks,* 289 F.R.D. 427, 439-40 (D. Md. 2012) ("Where an executive has submitted an affidavit disclaiming unique personal knowledge, it is often appropriate to defer live depositions of that executive unless and until the examining party can demonstrate otherwise").  Moreover, it is clear from footnote 2 on page 4 of Compass Marketing's Opposition that Compass Marketing seeks a legal opinion from Mr. DiPaula as to the ultimate issue in this case – "whether

Mr. Boshea was guaranteed a severance payment of more than $500,000." *Id.* Such a question is reserved for the trier of fact, not a former employee who had no involvement in Mr. Boshea's hiring or termination.

**II.   Mr. DiPaula's Employment Terms Are Not Relevant**

As stated in Mr. DiPaula's initial Memorandum, the Fourth Circuit has held that "[a]ll civil discovery, whether sought from parties or nonparties, is limited in scope by Rule 26(b)(1) in two fundamental ways. First, the matter sought must be 'relevant to any party's claim or defense.' " *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir.), *cert. denied*, 140 S. Ct. 672, 205 L. Ed. 2d 438 (2019) (quoting Fed. R. Civ. P. 26(b)(1)).  While "[r]elevance is not, on its own, a high bar ... [w]hen discovery is sought from nonparties, however, its scope must be limited even more." *Id.* at 188-189.  Notably, Compass Marketing only focuses on the first phrase of this quote that relevance is not a high bar.  Here, Compass Marketing fails to meet even that low threshold.

Recognizing that Mr. DiPaula has no first-hand knowledge about Mr. Boshea's hiring, employment agreement, termination or severance agreement, Compass Marketing alternatively argues that Mr. DiPaula should be compelled to testify about the terms of his own employment and severance agreements to serve as a comparison to the terms Mr. Boshea alleges.

Compass Marketing suggests Mr. DiPaula's testimony regarding "whether Compass Marketing entered into employment agreements with employees that guarantee severance" is necessary and appropriate to discrediting Mr. Boshea's claims. ECF No. 43, p. 4.  Mr. DiPaula's testimony regarding what individual employment terms were agreed upon at the time of his hire in 2010 are not relevant to terms reached between Mr. Boshea and Compass Marketing three years

4

earlier.  Further, Mr. DiPaula is entitled to privacy with respect to his wages and the terms of his employment and severance in a case where that is not at issue.[1]

### III. Mr. DiPaula Cannot Testify About Other Employment Agreements Entered Into By Compass Marketing

To the extent Compass Marketing asks Mr. DiPaula to testify regarding other employment agreements to demonstrate that Mr. Boshea's employment agreement differs from other Compass Marketing employment agreements, such testimony is also improper for the reasons stated above and because it exceeds the scope of the DiPaula Subpoena as limited by Compass Marketing in its Opposition.  *Id.* at p. 2 ("... Mr. DiPaula's production of responsive documents and testimony regarding the narrow topics of his employment agreement and any severance paid to him ..."). Furthermore, Compass Marketing admits that it has already produced "many employment agreements" in discovery, including Mr. DiPaula's which is attached to the Opposition as an Exhibit.  For this reason alone, Mr. DiPaula should be excused from compliance with the DiPaula Subpoena.[2]

---

[1] Mr. DiPaula has argued in his initial Memorandum that his wages and his severance were matters he wished to keep confidential particularly since they are not relevant herein.  In response, Compass Marketing attached the terms of his employment agreement (albeit without salary information) and prompted Michael White to attach checks reflecting payments made to Mr. DiPaula following his resignation. ECF No. 43-2; ECF No. 49, ¶ E. Compass Marketing further cited cases which discuss whether confidential settlement agreements are discoverable and whether employees' salaries and benefits constituted trade secrets.  These cases are inapposite and do not excuse the filing of irrelevant information about a former employee who has no connection to the issues in the case.

[2] In his Motion to Quash, Mr. DiPaula established that his employment agreement and any payments relating thereto were irrelevant to this matter and thus were not properly discoverable.  Mr. DiPaula stands by that assertion and seeks to quash the Subpoena compelling him to produce those documents and testify to them.  Further, recent filings by Compass Marketing and Michael White have demonstrated that these documents are within the care, custody and control of Compass Marketing as his employment agreement and two checks representing a portion of the unpaid expenses and accrued vacation time owed to Mr. DiPaula were attached to these filings. See ECF No. 43-2; ECF No. 49, ¶ E and 49-2, pp. 9-11.  "[A]ll permissible discovery must be measured against the yardstick of proportionality. This rule requires that the ... extent of discovery be limited if: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive..." *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 434 (D. Md. 2012) (citations and quotation marks omitted).  While the scope of the document schedule attached to the DiPaula Subpoena is not vast, the fact that Compass Marketing (and one of its owners) attached documents responsive to Compass Marketing's request evidences this request does not measure up against the yardstick of proportionality and is merely intended to harass or annoy Mr. DiPaula.  As such, he should not be compelled to duplicate this production. Without waiver of the objections stated herein, Mr. DiPaula further

In its Opposition, Compass Marketing cites to *Mitchell v. Nat'l R. R. Passenger Corp.*, 208 F.R.D. 455 (D.D.C. 2002) to suggest that it should be permitted to seek discovery of other employment and severance agreements to demonstrate the allegedly uncharacteristic terms of Mr. Boshea's employment and severance agreements. Compass Marketing's reliance on *Mitchell* is misplaced. In *Mitchell*, the plaintiff alleges discrimination on the basis of race, gender, age and perceived physical disability, and asserted, in part, that the terms of her severance were different from other employees on the basis of race, gender, age and perceived physical disability. The U.S. District Court therein found that "[a]s with the claims of discrimination, ... it would not be unreasonably nor overly burdensome for [the party-employer] to turn over those severance agreements entered into ... to permit plaintiff to substantiate her claim that her severance agreement was unique." *Id.* 208 F.R.D. 455, 461. Unlike the claims in *Mitchell*, however, this is not a discrimination claim. Instead, Compass Marketing is seeking to avoid an agreement by contending it is a forgery. Testimony by a former employee – who is not alleged to have been involved in human resources, general employment decisions or the hiring of Plaintiff – is beyond the scope of permissible non-party discovery.

The Fourth Circuit reasoned that nonparties are akin to bystanders who "should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Virginia Dep't of Corr.*, 921 F.3d at 189. Compass Marketing has failed to demonstrate how any of the testimony or documents sought from Mr. DiPaula regarding his own employment terms and those of other Compass Marketing employees is relevant. It has further failed to establish *any* "good reason" for why Mr. DiPaula should be

---

states that he has no responsive documents to the request for "All documents that refer, reflect, or relate to any severance agreement(s) between you and Compass Marketing."

compelled to testify about his employment and severance terms or those of any other employee's employment agreement.

IV. **Compass Marketing Is In Possession Of The Documents Requested**

For the same reasons he challenges having to provide testimony with respect to his employment with Compass Marketing (*which ended seven years ago)*, Mr. DiPaula also challenges any request to produce his employment agreement as well as any "severance" payments made to him. These documents are not relevant to the matters at issue herein.

Further, even if this Court deemed them to be relevant, Compass Marketing has demonstrated that it already possesses (or its agents possess) the documents requested. Surprisingly, despite claims in the Opposition that Compass Marketing did not have documents, Mr. DiPaula's employment agreement was attached as Exhibit 2 to Compass Marketing's Opposition.[3] Further, copies of checks characterized as "severance payments" to Mr. DiPaula, which were partial payments of unpaid earned wages, expenses and accrued vacation, were attached to the Reply in Support of the Motion to Quash filed by Nonparty Michael White, and were accompanied by an email between Michael White, Daniel White and John White demonstrating and acknowledging the compromise of payments due and owing to Mr. DiPaula. See ECF No. 49 -2, 9-11. Mr. DiPaula should not be compelled to duplicate this production. See fn. 2 *supra*.

---

[3] Footnote 4 of the Opposition continues to litigate a dispute between Michael White, Daniel White and John White regarding Compass Marketing and their respective ownership of the company. This dispute does not concern Mr. DiPaula nor is it relevant to the arguments Mr. DiPaula has raised in his Motion to Quash. Whether or not the CEO of Compass Marketing has certain documents does not impact whether those documents requested from Mr. DiPaula are (i) relevant herein (*they are not*) and (ii) within the care, custody and control of Compass Marketing Inc. and/or its agents (*they are*).

V.   **Mr. DiPaula Is Entitled To A Protective Order If Any Portion of the Subpoena Survives the Motion To Quash**

To the extent any portion of the Subpoena remains in effect, Mr. DiPaula seeks a protective order to prevent any discovery – documentary or testamentary - relating to his personal employment with Compass Marketing including his resignation and any severance payments which may have been made to him. Mr. DiPaula has demonstrated in his initial Motion and in this Reply the particular and specific facts establishing that the discovery sought lacks any relevance and is intended to unduly burden Mr. DiPaula. *Green Mountain Cap. LLC v. Federal Insurance Co.*, 2020 WL 4575856, at *2 (D. Md. Aug. 7, 2020).

## CONCLUSION

For the foregoing reasons, the DiPaula Subpoena should be quashed and Mr. DiPaula should be relieved of any duty to comply therewith.

/s/ *David B. Hamilton*
David B. Hamilton (Bar No. 04308)
Sarah E. Meyer (Bar No. 29448)
WOMBLE BOND DICKINSON (US) LLP
100 Light Street, 26th Floor
Baltimore, MD 21202
(t) (410) 545-5800
(f) (410) 545-5801
David.Hamilton@wbd-us.com
Sarah.Meyer@wbd-us.com

*Attorneys for Non-Party James C. DiPaula*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of September, 2021, copies of the Reply Memorandum in Support of Motion to Quash Subpoena Duces Tecum, or in the alternative, Motion for Protective Order, were filed and served upon all counsel of record via CM/ECF.

/s/ *David B. Hamilton*
David B. Hamilton (Bar No.04308)