# EXHIBIT 12

# Handwriting Expert, LLC
# Curt Baggett
Expert Document Examiner
533 Park Lane
Richardson, Texas 75081
Phone: 972.644.0285
cbhandwriting@gmail.com
www.ExpertDocumentExaminer.com

**Questioned Document Examiner Letter**

Subject: **John D. White**
Date: September 21, 2021

I have examined eight (8) documents with the known signatures of John D. White. For the purpose of this examination I have labeled these exhibits 'K1' through 'K8'.

Today I have compared the signatures of John D. White on the 'K' documents to the John D. White signature on the questioned document, identified herein as **'Q1'**, to determine if the author of the John D. White signatures on the 'K' documents was the same person who authored the name of John D. White on the questioned document: **Compass Marketing, Inc AGREEMENT Relating to Employment and Post-Employment Competition between David John Boshea (Employee) and Compass Marketing, Inc (Compass) and purportedly signed by John D. White on page 5 of 6 (undated).**

An examination of handwriting includes establishing patterns of writing habits to help identify the author. Handwriting is formed by repeated habits of writing by the author, which are created by neuro-pathways established in the brain. These neuro-pathways control muscular and nerve movement for writing, whether the writing done is by the hand, foot or mouth.

In support of my opinion, I have included an excerpt from *Handwriting Identification, Facts and Fundamentals* by Roy A. Huber and A.M. Headrick (CRC Press LLC, 1999, pp 50-51) wherein the leading forefathers of document examination in the USA agree that one significant difference in the fundamental structure of a writing compared to another is enough to preclude common authorship:

> [Ordway] Hilton stated: "It is basic axiom of identification in document problems that a limited number of basic differences, even in the face of numerous strong similarities, are controlling and accurately establish nonidentity."
>
> [Wilson R.] Harrison made similar comments: "…the fundamental rule which admits of no exception when handwritings are being compared…is simple – whatever features two specimens of handwriting may have in common, they cannot be considered to be of common authorship if they display but a single consistent dissimilarity in any feature

which is fundamental to the structure of the handwriting, and whose presence is not capable of reasonable explanation."

[James V.P.] Conway expressed the same theme when he wrote: "A series of fundamental agreements in identifying individualities is requisite to the conclusion that two writings were authored by the same person, whereas a single fundamental difference in an identifying individuality between two writings precludes the conclusion that they were executed by the same person."

and finally,

[Albert S.] Osborn and others have generally agreed that despite numerous similarities in two sets of writings, a conclusion of identity cannot be made if there is one or more differences in fundamental features of the writings.

The techniques promulgated by the scientific community in the forensic document examination field generate reliable results and are generally accepted.

Based upon thorough analysis of these items, and from an application of accepted forensic document examination tools, principles and techniques, it is my professional expert opinion that **a different person authored the name of John D. White on the questioned document. Someone did indeed forge the signature of John D. White on the questioned document, 'Q1'.**

I am willing to testify to this fact in a court of law and I will provide exhibits to the Court showing that I had sufficient data and that my opinion is correct. My Curriculum Vitae is attached and incorporated herein by reference.

Respectfully submitted,

_____
Curt Baggett

The above Letter of Opinion was sworn and subscribed before me by Curt Baggett this 21ˢᵗ day of ___September___, 2021.

State of Texas          §
                        §
                        §
County of Dallas        §

_____
Notary Public – State of Texas

PATRICIA J. HALE
My Notary ID # 130525886
Expires February 5, 2024

# LEGAL DATA

## UNITED STATES v. JANET L. THORNTON

*Case No. 02-M-9150-01, decided January 24, 2003*

This issue is governed by Fed.R.Evid. 702, which states as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. [This rule was amended in 2000 in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) and *Kumho Tire Co. Ltd. v. Carmichael* (1999).]

In *Daubert*, the court, focusing on the admissibility of scientific expert testimony, held that the trial judge has the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. In *Kumho Tire*, the court held that a trial judge's gatekeeping obligation applies not only to testimony based on scientific knowledge, but also to testimony based on technical and other specialized knowledge.

Among the studies cited by Mr. Hammond is a study by Professor Sargur Srihari on the individuality of handwriting. Using handwriting of 1500 individuals, his conclusions were that, using computer software, they were able to establish with a 98% confidence that the writer can be identified. Taking the results over the entire population, they were able to validate handwriting individuality with a 96% confidence. By considering finer features, Professor Srihari opined that they should be able to validate handwriting individuality with a near 100% confidence. A study by Dr. Moshe Kam indicates that professional document examiners had only a 6.5% error rate compared to an error rate of 38.3% for nonprofessionals. Dr. Kam concluded by stating that professional document examiners possess writer identification skills absent in the general population. Another study by Professor Kam indicated that professionals concluded that forgeries were genuine 0.49% of the time whereas laypersons did so 6.47% of the time. Professionals mistakenly concluded that genuine signatories were forgeries 7.05% of the time; laypersons did so 26.1% of the time. Another study by Jodi Sita, Brian Found and others found that forensic document examiners made errors in 3.4% of their opinions, while 19.1% of the control group gave erroneous opinions.

The above studies provide solid evidence that handwriting individuality can be validated with a very high degree of confidence, and that professional forensic document examiners have developed an expertise and training that allow them to correctly identify a person's handwriting with a much lower error rate than laypersons. On the other hand, the affidavit of Dr. Saks raises legitimate questions concerning the validity of these studies and the accuracy of handwriting identification in general.

However, in *Daubert*, the U.S. Supreme Court made it clear that "it would be unreasonable to conclude that the subject of scientific testimony must be known to a certainty; arguably, there are no certainties in science. . . . Science . . . represents a process for proposing and refining theoretical explanations about the world that are subject to further testing and refinement." It is sufficient if the proposed testimony can be supported by appropriate validation, i.e., good grounds, based on what is known.

Case 1:21-cv-00309-ELH  Document 1-3  Filed 02/05/21  Page 7 of 6 bought/sold
Classify me as key
Player to have on the
Contract.

# COMPASS MARKETING, INC

# AGREEMENT RELATING TO EMPLOYMENT AND POST-EMPLOYMENT COMPETITION

This Agreement is between the David John Boshea, residing at 4839 Clearwater LN. Naperville, IL. 60564 ("Employee") and COMPASS MARKETING, INC ("COMPASS"), having a place of business at 612 Third Street, Annapolis

## RECITALS

WHEREAS, COMPASS is a leading provider of consumer products and more specifically, the marketing, distribution and sales services to retailers and non-traditional or alternative distributors in the following categories: food, health-beauty care, over the counter medicine, consumer products, and pet care.

WHEREAS, COMPASS has a proprietary interest in its business and financial plans and systems, methods of operation and other secret and confidential information, knowledge and data ("Proprietary Information") which includes, but is not limited to, all confidential, proprietary or non-public information, ideas and concepts, client names and contact information, annual and strategic business plans; financial plans, reports and systems including, profit and loss statements, sales, accounting forms and procedures and other information regarding costs, pricing and the financial condition of COMPASS and its business segments and groups; management development reviews, including information regarding the capabilities and experience of COMPASS employees; intellectual property including research and development, reports, protocols, computer software and databases; information regarding COMPASS's relationships with its clients, customers, and suppliers and prospective clients, partners, customers and suppliers, policy and procedure manuals, information regarding materials and documents in any form or medium (including oral, written, tangible, intangible, or electronic) concerning any of the above, or any past, current or future business activities of COMPASS that is not publicly available; compensation, recruiting and training, and human resource policies and procedures; and data compilations, research, reports, structures, compounds, techniques, methods, processes, and know-how.

WHEREAS, all such Proprietary Information is developed at great expense to COMPASS and is considered by COMPASS to be confidential trade secrets;

WHEREAS, Employee, as a senior executive, will have access to COMPASS's Proprietary Information, directly in the course of Employee's employment, and indirectly through interaction with and presentations by other COMPASS senior executives;

WHEREAS, COMPASS will introduce Employee to COMPASS clients, customers, suppliers and others, and will encourage, and provide resources for, Employee to develop personal relationships with COMPASS's clients, customers, suppliers and others;

WHEREAS, COMPASS will provide specialized training and skills to Employee in connection with the performance of Employee's duties at COMPASS which training involves the disclosure by COMPASS to Employee of Proprietary Information;

WHEREAS, COMPASS will be vulnerable to unfair post-employment competition by Employee because Employee will have access to and knowledge of COMPASS's Proprietary Information, will have a personal relationship with COMPASS's clients, customers, suppliers and others, and will generate good will which Employee acknowledges belongs to COMPASS;

NOW, THEREFORE, in consideration of Employee's employment with COMPASS, the severance benefit and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Employee agrees to enter into this Agreement with COMPASS as a condition of employment pursuant to which COMPASS will limit Employee's rights, including, but not limited to, the right to compete against COMPASS, during and following termination of employment on the terms set forth in this Agreement. Intending to be legally bound, the parties agree as follows:

ARTICLE 1. NON-DISCLOSURE AND NON-DISPARAGEMENT:

QDE Exhibit Q1

Employee then in the records of COMPASS, shall be deemed in every respect effective service of legal process upon Employee in any such action or proceeding.

H. Employee hereby waives, to the fullest extent permitted by applicable law, any objection that Employee now or hereafter may have to personal jurisdiction or to the laying of venue of any action or proceeding brought in any court referenced in Article 8.F and hereby agrees not to plead or claim the same.

I. Notwithstanding any other provision of this Agreement, COMPASS may, to the extent required by law, withhold applicable federal, state and local income and other taxes from any payments due to Employee hereunder.

J. At any time during the validity of this Agreement, Employee agrees that COMPASS may notify third parties about Employee's rights and obligations under this Agreement.

K. Employee affirms that Employee has read this Agreement and has asked questions needed to understand the terms, consequences and binding effect of this Agreement and fully understands them.

L. Employee affirms that Employee has sought the advice of an attorney of his/her choice before signing this Agreement.

**IN WITNESS WHEREOF**, and intending to he legally bound, the parties hereto have caused this Agreement to be signed.

by COMPASS MARKETING, INC.

Date:

/s/ [signature]

John D. White, CEO

Q1

by EMPLOYEE

Date:

/s/ David Boshea

David John Boshea

QDE Exhibit Q1

Signature Page for John White

*[five handwritten signatures]*


QDE Exhibit
K1

**ARTICLE 6. MISCELLANEOUS:**

A.  As used throughout this Agreement, COMPASS includes COMPASS MARKETING, Inc. and its subsidiaries and affiliates or any corporation, joint venture, or other entity in which COMPASS MARKETING, Inc. or its subsidiaries or affiliates has an equity interest in excess of ten percent (10%).

B.  This Agreement shall supersede and substitute for any previous employment or post-employment agreements between Employee and COMPASS.

C.  If Employee's employment with COMPASS terminates solely by reason of a transfer of stock or assets of, or a merger or other disposition of, a subsidiary of COMPASS (whether direct or indirect), such termination shall not be deemed a termination of employment by COMPASS for purposes of this Agreement, provided that COMPASS requires the subsequent employer, by agreement, to expressly assume and agree to perform this Agreement in the same manner and to the same extent that COMPASS would be required to perform it if no such transaction had taken place.

D.  Removed.

E.  In the event any one or more of the provisions of this Agreement shall be or become invalid, illegal or unenforceable in any respect, the validity legality and enforceability of the remaining provisions of this Agreement shall not be affected thereby.

F.  The terms of this Agreement shall be governed by the laws of the State of Maryland, without regard to conflicts of laws principles thereof. For purposes of any action or proceeding, Employee irrevocably submits to the non-exclusive jurisdiction of the courts of Maryland and the courts of the United States of America located in Maryland for the purpose of any judicial proceeding arising out of or relating to this Agreement, and acknowledges that the designated forum has a reasonable relation to the Agreement and to the parties' relationship with one another. Notwithstanding the provisions of this Article 8.F COMPASS may, in its discretion, bring an action or special proceeding in any court of competent jurisdiction for the purpose of seeking temporary or preliminary relief pending resolution of a dispute.

G.

I.  Notwithstanding any other provision of this Agreement, COMPASS may, to the extent required by law, withhold applicable federal, state and local income and other taxes from any payments due to Employee hereunder.

J.  At any time during the validity of this Agreement, Employee agrees that COMPASS may notify third parties about Employee's rights and obligations under this Agreement.

K.  Employee affirms that Employee has read this Agreement and has asked questions needed to understand the terms, consequences and binding effect of this Agreement and fully understands them.

L.  Employee affirms that Employee has sought the advice of an attorney of his/her choice before signing this Agreement.

**IN WITNESS WHEREOF**, and intending to he legally bound, the parties hereto have caused this Agreement to be signed:

by COMPASS MARKETING, INC.

Date: 4/15/2019

/s/ _(signature)_

John D. White, CEO

by Drew Rayman

Date: 4/10/19

/s/ _(signature)_

K2

4-15-19
QDE
Exhibit
K2

A. As used throughout this Agreement, COMPASS includes COMPASS MARKETING, Inc. and its subsidiaries and affiliates or any corporation, joint venture, or other entity in which COMPASS MARKETING, Inc. or its subsidiaries or affiliates has an equity interest in excess of ten percent (10%).

B. This Agreement shall supersede and substitute for any previous employment or post-employment agreements between Employee and COMPASS.

C. If Employee's employment with COMPASS terminates solely by reason of a transfer of stock or assets of, or a merger or other disposition of, a subsidiary of COMPASS (whether direct or indirect), such termination shall not be deemed a termination of employment by COMPASS for purposes of this Agreement, provided that COMPASS requires the subsequent employer, by agreement, to expressly assume and agree to perform this Agreement in the same manner and to the same extent that COMPASS would be required to perform it if no such transaction had taken place.

D. Removed.

E. In the event any one or more of the provisions of this Agreement shall be or become invalid, illegal or unenforceable in any respect, the validity legality and enforceability of the remaining provisions of this Agreement shall not be affected thereby.

F. The terms of this Agreement shall be governed by the laws of the State of Maryland, without regard to conflicts of laws principles thereof. For purposes of any action or proceeding, Employee irrevocably submits to the non-exclusive jurisdiction of the courts of Maryland and the courts of the United States of America located in Maryland for the purpose of any judicial proceeding arising out of or relating to this Agreement, and acknowledges that the designated forum has a reasonable relation to the Agreement and to the parties' relationship with one another. Notwithstanding the provisions of this Article 8.F COMPASS may, in its discretion, bring an action or special proceeding in any court of competent jurisdiction for the purpose of seeking temporary or preliminary relief pending resolution of a dispute.

G.

I. Notwithstanding any other provision of this Agreement, COMPASS may, to the extent required by law, withhold applicable federal, state and local income and other taxes from any payments due to Employee hereunder.

J. At any time during the validity of this Agreement, Employee agrees that COMPASS may notify third parties about Employee's rights and obligations under this Agreement.

K. Employee affirms that Employee has read this Agreement and has asked questions needed to understand the terms, consequences and binding effect of this Agreement and fully understands them.

L. Employee affirms that Employee has sought the advice of an attorney of his/her choice before signing this Agreement.

IN WITNESS WHEREOF, and intending to be legally bound, the parties hereto have caused this Agreement to be signed:

by COMPASS MARKETING, INC.      by Kevin Van Deusen

Date: _____  /s/ _____      Date: 9/26/17  /s/ _____

John D. White, CEO

K3 →

9-26-17
QDE Exhibit
K3

Date: _____  Date: 3/6/2017

/s/ [signature]  /s/ *Jamie Nash*

John D. White, CEO  Jamie Nash

K4 ↑

3-6-17
QDE Exhibit
K4

Date: 3/6/2017

Initial: JN

Counsel of COMPASS MARKETING, Inc. (or any successor) as Employee's agent for service of legal process in connection with any such action or proceeding and Employee agrees that service of legal process upon such agent, who shall promptly advise Employee of any such service of legal process at the address of Employee then in the records of COMPASS, shall be deemed in every respect effective service of legal process upon Employee in any such action or proceeding.

H.  Employee hereby waives, to the fullest extent permitted by applicable law, any objection that Employee now or hereafter may have to personal jurisdiction or to the laying of venue of any action or proceeding brought in any court referenced in Article 8.F and hereby agrees not to plead or claim the same.

I.  Notwithstanding any other provision of this Agreement, COMPASS may, to the extent required by law, withhold applicable federal, state and local income and other taxes from any payments due to Employee hereunder.

J.  At any time during the validity of this Agreement, Employee agrees that COMPASS may notify third parties about Employee's rights and obligations under this Agreement.

K.  Employee affirms that Employee has read this Agreement and has asked questions needed to understand the terms, consequences and binding effect of this Agreement and fully understands them.

L.  Employee affirms that Employee has had the opportunity to seek the advice of an attorney of his/her choice before signing this Agreement.

**IN WITNESS WHEREOF**, and intending to he legally bound, the parties hereto have caused this Agreement to be signed:

By **COMPASS MARKETING, INC.**　　　　By **EMPLOYEE**

Date: 6/15/16　　　　　　　　　　　　　　Date: 6/15/16

/s/ [signature]　　　　　　　　　　　　　/s/ [signature]

K5 ↑

6-15-16
QDE Exhibit
K5

Page 5 of 6　　　　　　　　　　　　　　　　Date: 6/15/16
　　　　　　　　　　　　　　　　　　　　　Initial: JGS

**Compass MARKETING** COMPASS MARKETING INC
222 SEVERN AVE, SUITE 200
ANNAPOLIS, MD 21403

MANUFACTURERS & TRADERS TR CO
7-11/520

5253

08/02/2011

PAY TO THE ORDER OF   Michael R White                                $ *119,239.00

One hundred nineteen thousand two hundred thirty-nine and 00/100*************************************** DOLLARS

Michael R White
39650 Hiawatha Circle
Mechanicsville, MD 20659

MEMO   2010 Taxes $83118.00 Fed $36121.00 state

⑆005253⑆ ⑉052000113⑉ 970081243⑊

K6 →

---

COMPASS MARKETING INC          Michael R White                                                5253
08/02/2011
                               2010 Taxes $83118.00 Fed $36121.00 state                       119,239.00

Checking - M&T Bank  2010 Taxes $83118.00 Fed $36121.00 state                                 119,239.00

08/02/2011           Michael R White
COMPASS MARKETING INC
                     2010 Taxes $83118.00 Fed $36121.00 state                                 119,239.00   5253

Checking - M&T Bank  2010 Taxes $83118.00 Fed $36121.00 state          8-2-11                 119,239.00
                                                                       QDE
                                                                       Exhibit
                                                                       K6


605935 (12/10)


007651


Rev 10/10

agreement, to expressly assume and agree to perform this Agreement in the same manner and to the same extent that COMPASS would be required to perform it if no such transaction had taken place.

D. Employee shall not be required to mitigate damages or the amount of any payment provided for under this Agreement by seeking other employment or otherwise.

E. In the event any one or more of the provisions of this Agreement shall be or become invalid, illegal or unenforceable in any respect, the validity legality and enforceability of the remaining provisions of this Agreement shall not be affected thereby.

F. The terms of this Agreement shall be governed by the laws of the State of Maryland, without regard to conflicts of laws principles thereof. For purposes of any action or proceeding, Employee irrevocably submits to the non-exclusive jurisdiction of the courts of Maryland and the courts of the United States of America located in Maryland for the purpose of any judicial proceeding arising out of or relating to this Agreement, and acknowledges that the designated forum has a reasonable relation to the Agreement and to the parties' relationship with one another. Notwithstanding the provisions of this Article 8.F COMPASS may, in its discretion, bring an action or special proceeding in any court of competent jurisdiction for the purpose of seeking temporary or preliminary relief pending resolution of a dispute.

G. Employee expressly consents to the application of Article 8.F to any judicial action or proceeding arising out of or relating to this Agreement. COMPASS shall have the right to serve legal process upon Employee in any manner permitted by law. In addition, Employee irrevocably appoints the General Counsel of COMPASS MARKETING, Inc. (or any successor) as Employee's agent for service of legal process in connection with any such action or proceeding and Employee agrees that service of legal process upon such agent, who shall promptly advise Employee of any such service of legal process at the address of Employee then in the records of COMPASS, shall be deemed in every respect effective service of legal process upon Employee in any such action or proceeding.

H. Employee hereby waives, to the fullest extent permitted by applicable law, any objection that Employee now or hereafter may have to personal jurisdiction or to the laying of venue of any action or proceeding brought in any court referenced in Article 8.F and hereby agrees not to plead or claim the same.

I. Notwithstanding any other provision of this Agreement, COMPASS may, to the extent required by law, withhold applicable federal, state and local income and other taxes from any payments due to Employee hereunder.

J. At any time during the validity of this Agreement, Employee agrees that COMPASS may notify third parties about Employee's rights and obligations under this Agreement.

K. Employee affirms that Employee has read this Agreement and has asked questions needed to understand the terms, consequences and binding effect of this Agreement and fully understands them.

L. Employee affirms that Employee has sought the advice of an attorney of his/her choice before signing this Agreement.

**IN WITNESS WHEREOF,** and intending to he legally bound, the parties hereto have caused this Agreement to be signed.

by COMPASS MARKETING, INC.

Date: Aug 1, 2007

/s/ [signature]

John D. White, CEO

K7

by EMPLOYEE

Date: July 20, 2007

/s/ [signature]

John Mancini

8-1-2007
QDE
Exhibit
K7

# MANUFACTURERS AND TRADERS TRUST COMPANY
# CERTIFIED BANKING RESOLUTIONS OF CORPORATION

ACCOUNT NUMBER: 00015004207852391

DEPOSITOR: COMPASS MARKETING INC

| | |
|---|---|
| Name JOHN D WHITE | Name |
| Title | Title |
| Address | Address |
| Telephone | Telephone |
| SSN | SSN |
| Signature _[signed]_ | Signature |
| Name | Name |
| Title | Title |
| Address | Address |
| Telephone | Telephone |
| SSN | SSN |
| Signature | Signature |

I certify that the resolutions set forth below or provided separately to M&T Bank were duly adopted by the Board of Directors of Depositor, a corporation duly organized and validly existing under the laws of the State of __VA__, (the "Depositor"), by unanimous consent or at a meeting duly called and held on ____; that each of such resolutions is in full force and effect and none has been rescinded, revoked or modified; and that none of such resolutions nor any action pursuant thereto will violate any law, certificate of incorporation, by-law or agreement by which Depositor or any of its assets is bound. RESOLVED: that

1. Manufacturers and Traders Trust Company ("M&T Bank") is hereby designated a depository for the Depositor and the officers or employees named herein or on a Rider hereto are hereby authorized to open a deposit account (the "Account") on behalf of Depositor.

2. M&T Bank may purchase, give credit for, cash, accept, certify and pay from funds on deposit in the Account, without inquiry, all items signed, drawn, accepted or endorsed on behalf of Depositor, whether under a title, the words "Authorized Signature" or otherwise, with the actual or purported facsimile signature of any one of the persons whose names, titles and specimen signatures appear above or on a Rider hereto, or his or her successor in office (each an "Authorized Signer"), regardless of the circumstances under which the signature shall have become affixed so long as the signature is the actual signature of an Authorized Signer or resembles the facsimile signature of an Authorized Signer previously certified to M&T Bank. Depositor shall indemnify M&T Bank against all claims, damages, liabilities, costs and expenses (including, but not limited to, attorneys' fees and disbursements) incurred by M&T Bank in connection with honoring any signature of any Authorized Signer (including any facsimile signature that resembles the facsimile signature of an Authorized Signer previously certified to M&T Bank) or any refusal to honor the signature of any person who is not an Authorized Signer. Depositor acknowledges and agrees that any requirement of Depositor that any item or other instrument for the payment of money signed, drawn, accepted or endorsed on behalf of Depositor bear the signature of more than one Authorized Signer is solely an internal requirement of Depositor and imposes no duty of enforcement on M&T Bank.

3. Any Authorized Signer may, on behalf of Depositor, transact with and through M&T Bank all such business as he or she deems advisable upon such terms as he or she deems proper, including, but not limited to, discounting, selling, assigning, delivering and negotiating items, guaranteeing the obligations of others, applying for and using any ATM or debit card providing access to the Account, contracting for automated clearing house ("ACH") payments and funds transfer services, cash management, trust and investment products and any other services and transactions in any way related to the Account or the funds on deposit from time to time therein, and pledging, assigning or granting security interests or other rights in the Account to M&T Bank or to third parties, and in connection with any such transaction of business, do or perform all such acts or other things as he or she shall deem proper, including, but not limited to, signing, drawing, accepting, endorsing, executing and delivering items, guaranties, assignments, pledges, receipts, waivers, releases, indemnities and other instruments, agreements and documents, accepting, receiving, withdrawing and waiving demands and notices and incurring and paying liabilities, costs and expenses.

4. In the event an Authorized Signer acting on behalf of Depositor shall apply to or contract with M&T Bank for any electronic funds transfer service that M&T Bank may make available to Depositor, including, but not limited to, any service that contemplates M&T Bank's execution of payment orders initiated by Depositor for the wire or ACH transfer of funds to or from an Account of Depositor, such Authorized Signer shall be empowered on behalf of Depositor to designate one or more persons (who may, but need not be, Authorized Signers), each of whom, acting alone, shall be authorized on behalf of Depositor to transmit payment orders to M&T Bank for the transfer of funds to or from Depositor's Account.

5. Each person identified as an Authorized Signer, and each person or persons designated by an Authorized Signer to act on behalf of Depositor (who may, but need not be, Authorized Signers), shall have the power and authority to transact business and bind Depositor through electronic medium (e.g., the Internet) and M&T Bank may rely on any of the following to the same extent as the actual signature and proof of identity of each such person to bind Depositor: any electronic signature or digital signature, under applicable law, of such person; any identifier issued by M&T Bank, its affiliates or any other party (e.g., Personal Identification Number associated with ATM or other card or any access device) to such person; or any other criteria that M&T Bank may reasonably rely on which may serve as an indicator of authentication for such person.

I further certify that each person whose name appears above or on a Rider hereto opposite an office has been duly elected or appointed to and now holds such office of Depositor; that each other person whose name thus appears is acting for Depositor in the capacity opposite such other person's name; and that each signature on this certification or a Rider hereto is a true specimen of the signature of the person whose signature it purports to be.

☐ I further certify that I am the sole owner of all the issued and outstanding stock of Depositor.

_[signed]_
Signature of Corporate Secretary     Date ____

Print Name: John White

Original - Account Services; Copy - Branch
PA046 (12/03)

AN5

QDE Exhibit K8