# EXHIBIT 1

# Stephen Stern

| | |
|---|---|
| **From:** | Stephen Stern |
| **Sent:** | Tuesday, September 28, 2021 6:04 PM |
| **To:** | michaelrwhite@comcast.net |
| **Subject:** | Boshea v. Compass Marketing, Inc. - Response to Subpoena |
| **Attachments:** | Memorandum and Order (00152723xEC90E).PDF |

Michael:

As I am sure you know by now, the court has denied your motion to quash the subpoena that was served on you in the above-referenced matter (except to the extent that the subpoena sought documents related your communications with BizFilings/Compass Marketing's Registered Agent). In the event you did not already know the outcome, I have attached a copy of the court's order for you to review.

Please produce all responsive documents by October 4.

As for scheduling your deposition, please let me know your availability October 19, 20, and 21.

Stephen



**KAGAN STERN**

**Stephen B. Stern, Esq.**
stern@kaganstern.com

**Kagan Stern Marinello & Beard, LLC**
(410) 793-1610 (direct)
(410) 216-7900, ext. 1009
(410) 705-0836 (fax)
238 West Street
Annapolis, Maryland 21401
www.kaganstern.com

1

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| DAVID J. BOSHEA | * | |
| Plaintiff/Counter-Defendant, | * | |
| v. | * | |
| COMPASS MARKETING, INC. | * | |
| Defendant/Counter-Plaintiff. | * | Civil Action No.  ELH-21-309 |
| COMPASS MARKETING, INC. | * | |
| Third-Party Plaintiff, | * | |
| v. | * | |
| JOHN DOE(S) | * | |
| Third-Party Defendant(s). | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM AND ORDER**

### Introduction

On August 16, 2021, Daniel White, a third party and non-party to this litigation, filed a motion to quash Defendant Compass Marketing, Inc.'s ("Defendant") subpoena *duces tecum* and for protective order. ECF No. 31. This matter was referred to me on August 17, 2021 for the discovery dispute regarding the ECF No. 31 motion to quash. ECF No. 32. On August 23, 2021, Michael White, a third party and non-party to this litigation, similarly filed a motion to quash Defendant's subpoena *duces tecum*. ECF No. 33. Finally, on August 25, 2021, James C. DiPaula ("DiPaula"), a third party and non-party of this litigation, filed a motion to quash Defendant's subpoena *duces tecum*, or in the alternative, for protective order. ECF No. 36. On September 24,

1

2021, the two additional motions to quash, ECF Nos. 33 and 36, were also referred to me. ECF No. 51. Defendant responded to Daniel White's motion on August 30, 2021. ECF No. 40. Defendant responded to Michael White's motion on September 7, 2021. ECF No. 42. Finally, Defendant responded to DiPaula's motion on September 9, 2021. ECF No. 43. Each movant filed a respective reply. ECF Nos. 44, 49, 50. The matter is fully briefed, and there is no need for a hearing. Loc.R. 105.6 (D.Md. 2021). For the reasons set forth below, both Daniel White's Motion to Quash Subpoena *Duces Tecum* and for Protective Order (ECF No. 31) and Michael White's Motion to Quash Subpoena *Duces Tecum* (ECF No. 33) are GRANTED IN PART and DENIED IN PART. Both Daniel and Michael White's motions to quash are granted to the extent they seek to quash the requests in paragraphs (9), (10), and (11) in Schedule A attached to the subpoenas, but they are denied to the extent they seek to quash the remaining requests. DiPaula's Motion to Quash the Subpoena *Duces Tecum*, or in the Alternative, for Protective Order (ECF No. 36) is GRANTED.

**Facts**

This matter arises from Plaintiff David Boshea's ("Plaintiff" or "Boshea") employment with and subsequent termination from Defendant. ECF No. 48 ¶ 23. On or about May 16, 2007, Defendant made a written employment offer to Plaintiff. ECF No. 48 ¶ 10. Plaintiff and Defendant signed the Employment Agreement that same month. *Id.* ¶ 11. Plaintiff contends that his Employment Agreement contained a provision on severance:

> If Employee's employment is terminated by [Defendant] for any reason other than Cause, Employee shall receive severance payments totaling [$180,000] which will be divided up into twenty-four payments and will commence with the Employee's effective date of termination . . . . The period during which Employee receives severance payment shall be referred to as the "Severance Pay Period." Severance will increase one month for every month employed to a maximum severance of $540,000.

2

ECF No. 1-3 at 3. Plaintiff was terminated without cause on March 3, 2020. *Id.* ¶ 15. Plaintiff was employed with Defendant for at least 155 months, making his maximum severance, per the Employment Agreement, $540,000. *Id.* ¶ 18. Defendant has failed to pay Plaintiff the owed wages of $540,000. *Id.* ¶ 23.

Plaintiff brought this action alleging: (I) Breach of Contract; (II) Violation of Maryland Wage Payment and Collection Act; and (III) Violation of Illinois Wage Payment and Collection Act (in the alternative to Count II). *Id.* ¶¶ 17–39. Defendant's "primary defense" to Plaintiff's claims is that Plaintiff's Employment Agreement is a forgery and was never entered into by Defendant. ECF No. 40 at 4. Defendant issued subpoenas *duces tecum* to both Daniel and Michael White on July 28, 2021. ECF Nos. 40-2, 42-3. Daniel and Michael White were each served directly with the subpoena by the St. Mary's County Sheriff's Office on August 2, 2021 and August 10, 2021, respectively. ECF No. 40-6 at 3; ECF No. 42-4 at 3. Then, on August 4, 2021, Defendant issued a subpoena *duces tecum* to DiPaula. ECF No. 36-3. In Plaintiff's answers to Defendant's first set of interrogatories, Plaintiff identified multiple conversations with both Daniel and Michael White about his employment (including prospective employment) and the severance agreement. ECF No. 40-1 at 3–5.

Movants now each bring motions to quash their subpoenas, with Daniel White bringing a motion to quash subpoena *duces tecum* and for protective order, with Michael White bringing a motion to quash subpoena *duces tecum*, and with DiPaula bringing a motion to quash subpoena *duces tecum*, or in the alternative, for protective order. ECF Nos. 31, 33, 36.

**Analysis**

The only questions before this Court are whether the subpoenas *duces tecum* served on the third party movants are properly within the scope of discovery in the present matter; and, if not,

whether the responses of Daniel White and DiPaula should be subject to a protective order from this Court. Rule 26(b)(1) provides general provisions regarding the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1). Discovery rules are to be accorded broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The Court is guided by Rule 26(b)(1) and Appendix A, Guideline 1 of the Local Rules, "to facilitate the just, speedy, and inexpensive conduct of discovery," in light of what is "relevant to any party's claim or defense; proportional to what is at issue in a case; and not excessively burdensome or expensive as compared to the likely benefit of obtaining the discovery being sought." Local Rules, Appendix A, Guideline 1 (D.Md. 2021).

"Central to resolving any discovery dispute is determining whether the information sought is within the permissible scope of discovery, as stated in Fed.R.Civ.P. 26(b)(1)." *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 355 (D.Md.2012). Rule 26(b)(2)(C) "cautions that all permissible discovery must be measured against the yardstick of proportionality." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D.Md. 2010). Under that rule, the Court, acting *sua sponte* or at a party's request, "must limit the frequency or extent of discovery" if: (i) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (ii) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (iii)

4

"the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed.R.Civ.P. 26(b)(2)(C)(i)–(iii).

The power of a subpoena is addressed generally in Rule 45. Fed.R.Civ.P. 45. The Court must quash or modify a subpoena that, *inter alia*, "subjects a person to undue burden." Fed.R.Civ.P. 45(d)(3)(A)(iv). "This ground encompasses situations where the subpoena seeks information irrelevant to the case or that would require a non-party to incur excessive expenditure of time or money, factors on which the district court's order expressly relied." *Cook v. Howard*, 484 F.App'x 805, 812 n.7 (4th Cir. 2012) (per curiam). Moreover, the "general rules governing all discovery . . . set forth in Rule 26" provide additional grounds on which the Court may quash a subpoena. *Id.* at 812.

Pursuant to Rule 34, non-parties may be compelled to produce documents, or other tangible things, or to permit inspection. Fed.R.Civ.P. 34(c). However, to determine whether "a subpoena issued against a nonparty" subjects a person to undue burden requires the Court conduct "[a] more demanding variant of the proportionality analysis." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), *cert. denied*, 140 S.Ct. 672 (2019) (quoting Fed.R.Civ.P. 45(d)(3)(A)(iv)). "When discovery is sought from nonparties, however, its scope must be limited even more." *Id.* Such third parties "should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Id.* The United States Court of Appeals for the Fourth Circuit identified important considerations in this analysis:

> On the benefit side of the ledger, courts should consider not just the relevance of information sought, but the requesting party's need for it. The information sought must likely (not just theoretically) have marginal benefit in litigating important issues. . . . Courts should also consider what information is available to the requesting party from other sources. To that end, the requesting party should be able to explain why it cannot obtain the same information, or comparable

5

> information that would also satisfy its needs, from one of the parties to the litigation—or, in appropriate cases, from other third parties that would be more logical targets for the subpoena.
>
> On the burden side, district courts should of course consider the dollars-and-cents costs associated with a large and demanding document production. But there are other cognizable burdens as well. For example, a subpoena may impose a burden by invading privacy or confidentiality interests. Courts may consider the interests of the recipient of the subpoena, as well as others who might be affected.

*Id.* at 189–90 (citations and footnotes omitted). However, the movant seeking to quash the subpoena still "bears the burdens of proof and of persuasion." *Id.* at 189 n.2.

Further, a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including to, *inter alia*, forbid disclosure or discovery, specify terms of disclosure, forbid inquiry into certain matters or limit the scope of the discovery, designate who may be present when discovery is conducted, or require a deposition to be sealed. Fed.R.Civ.P. 26(c)(1). A person seeking a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." *Id.* Protective orders pursuant to Rule 26(c) "should be sparingly used and cautiously granted." *Medlin v. Andrew*, 113 F.R.D. 650, 652 (M.D.N.C. 1987). Normally, the court "will balance the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production." *UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988) (citation omitted).

<u>Motions to Quash by Daniel and Michael White</u>

Daniel White moved this court to quash the subpoena issued by Defendant, alleging that the subpoena was "overly broad, unreasonable, and oppressive." ECF No. 31 at 2. In support, he argues that the requested documents are more readily available to Plaintiff, that the requests have

no temporal limitations, that he was not properly served, that the requested documents are subject to attorney-client privilege, and that this request is part of an ongoing pattern of harassment by Defense Counsel. *Id.* at 2–4. Michael White moved this court to quash the subpoena issued by Defendant, similarly alleging that the subpoena was "overly broad, unreasonable, and oppressive" in that it was part of a continued pattern of harassment. ECF No. 33 at 2. He also asserts that he was not properly served.[1] *Id.* The subpoena for each movant identified eleven identical categories of interest:

(1) All documents that refer, reflect, or relate to communications with David Boshea.

(2) All documents that refer, reflect, or relate to David Boshea's employment with Compass Marketing.

(3) All documents that refer, reflect, or relate to David Boshea's compensation from Compass Marketing.

(4) All documents that refer, reflect, or relate to David Boshea's termination from employment with Compass Marketing.

(5) All documents that refer, reflect, or relate to any agreement between David Boshea and Compass Marketing.

(6) All documents that refer, reflect, or relate to the above-captioned litigation.

(7) All documents sent to or received from any individual or entity that refer, reflect, or relate to David Boshea.

(8) All documents sent to or received from any individual or entity that refer, reflect, or relate to the above-captioned litigation.

(9) All documents sent to or received from Compass Marketing's resident agent since November 1, 2018.

(10) All documents that refer, reflect, or relate to Business Filings International, Inc., since November 1, 2018.

---

[1] To the extent that Michael White seeks action from this Court beyond his motion to quash subpoena *duces tecum*, *see* ECF No. 33, the Court reiterates that he is a nonparty, and the only present matters at issue before this Court are nonparties' motions to quash subpoenas, or in the alternative for Daniel White and DiPaula, for a protective order. *See* ECF Nos. 31, 33, 36.

7

(11) All documents sent to or received from Business Filings International, Inc., since November 1, 2018.

ECF No. 31-1 at 7–8[2]; ECF No. 33-1 at 15–16.

In response to Daniel and Michael White's motions, Defendant has cited to Plaintiff's interrogatory answers that reference repeated conversations about employment and severance with both Daniel and Michael White, including an alleged conversation with Michael White that Defendant would avoid paying Plaintiff the amount owed. ECF No. 40 at 5; ECF No. 42 at 5–6. Daniel and Michael White contend (though disputed) that they are both shareholders and directors of Defendant. ECF No. 31-2 ¶¶ 2, 4; ECF 33-1 at 22, ¶¶ 4, 5. In claiming such a relationship with Defendant, information about this litigation and Plaintiff's employment, termination, and severance, is squarely within the scope of discovery. *See* Fed.R.Civ.P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."). The *Jordan* considerations under the "more demanding" proportionality analysis for nonparties provide further guidance. *See Jordan*, 921 F.3d at 189–90. Conversations between nonparties (as shareholders and directors) and Plaintiff regarding his employment, termination, and a factually disputed severance agreement are important information necessary to Defendant to evaluate Plaintiff's claim. Such information will benefit Defendant in litigating important issues in the case and concerns information possibly not known to Defendant. Moreover, Daniel and Michael White have provided no facts to support that such a request will result in a large and demanding document production, nor that it will infringe on their privacy or confidentiality interests (though they do allege harassment by Defense Counsel). Daniel and Michael White have

---

[2] Due to conflicting page numbers in Daniel White's Exhibit 1 (ECF No. 31-1) accompanying his motion, the Court will use the internal pagination designated by CM/ECF.

8

thus not met their burdens of proof or persuasion that the Court should quash the subpoenas as irrelevant or not proportional.

However, the Court does conclude that limiting the discovery is appropriate, given their status as nonparties. While movants bear the burden of proof and persuasion, the requesting party must still show why its request is relevant and proportional to discovery. *Id.* at 189 n.2. Here, movants claim they are being harassed by overly broad requests from Defendant and cite concerns with Defense Counsel. ECF No. 31 at 2–3; ECF No. 33 at 2. In response, Defendant has failed to show that information related to Business Filings International, Inc., or documents sent and received with Defendant's resident agent, is related to its defense and therefore within the limited scope of discovery. Defendant requests this information not for its defense, but to investigate events that occurred after the commencement of this action. ECF No. 40 at 6. Notably, the Defendant offers no explanation of why such information is requested from Michael White. *See* ECF No. 42. While Defendant may be interested in this information, it is not information related to the allegedly forged Employment Agreement at issue in this action. As such, the Court will modify the request to exclude inquiries related to Business Filings International, Inc. or Defendant's resident agent, specifically paragraphs (9), (10), and (11) in Schedule A attached to the subpoenas of both Daniel and Michael White. ECF No. 31-1 at 7–8; ECF No. 33-1 at 15–16.

Finally, to the extent that Daniel and Michael White contend they were improperly served, the Court is unable to evaluate their claims as neither alleged how they were improperly served. Defendant showed that Daniel and Michael White were each served directly on August 2, 2021 and August 10, 2021, respectively. ECF No. 40-6 at 3; ECF No. 42-4 at 3. Similarly, Daniel White provides no argument or facts to support that the requested information is subject to attorney-client privilege. Because he has failed to meet his burden of proof, the Court rejects his argument to

9

quash the subpoena on privilege grounds. Therefore, the Court grants in part and denies in part Daniel and Michael White's respective motions to quash subpoenas. Both Daniel and Michael White's motions are granted with regard to the requests in paragraphs (9), (10), and (11) in Schedule A attached to the subpoenas, but they are denied with regard to the remaining requests. ECF No. 31-1 at 4–5; ECF No. 33-1 at 15–16.

Daniel White also requests a protective order in addition to his motion to quash. ECF No. 31. However, he has failed to satisfy his burden to show a protective order is warranted on the remaining discovery items, namely documents regarding this litigation and Plaintiff's employment, compensation, termination, or severance. Daniel White has not provided facts to show the court, in good faith, that such disclosure would be an "annoyance, embarrassment, oppression, or undue burden." Fed.R.Civ.P. 26(c)(1). While Daniel White has alleged harassment by Defense Counsel, he has not illustrated how that harassment is effectuated by such requests. Moreover, he has failed to provide information to show he made a good faith effort to resolve the dispute pursuant to Rule 26(c)(1). Therefore, Daniel White has made no argument to warrant a protective order from this Court.

Motion to Quash by DiPaula

DiPaula has moved to quash the subpoena because Defendant's request seeks personal and private employment documents that do not pertain to Plaintiff. In the alternative, DiPaula moves for a protective order to protect against the disclosure of his personal information related to his salary, employment, and any severance payment. Defendant contends that DiPaula's employment agreement, one actually executed by Defendant, is important to their defense that Plaintiff asserts a forged Employment Agreement. The subpoena identifies three categories of interest:

1. All documents that refer, reflect, or relate to any employment agreement(s) between you and Compass Marketing.

10

2. All documents that refer, reflect, or relate to any severance agreement(s) between you and Compass Marketing.

3. All documents that refer, reflect, or relate to any severance payment(s) or other post-employment payments you received from or on behalf of Compass Marketing.

ECF No. 36-3 at 9.[3]

The information Defendant seeks in discovery is beyond the limited scope permissible for nonparties. Defendant's "primary defense" at issue is that Plaintiff provided a forged copy of his Employment Agreement, containing a severance provision. Defendant asserts that DiPaula's employment and financial documents are then necessary to its defense because he, "as a former senior executive . . . has knowledge of the terms of various employment agreements of [Defendant's] employees." ECF No 43 at 3. And further, Defendant contends that DiPaula's own employment agreement and any severance he received are relevant in comparison to the Plaintiff's allegedly forged agreement. *Id.* at 4. However, DiPaula began his employment after Plaintiff was hired, resigned before Plaintiff was terminated, and never supervised Plaintiff. ECF No. 36-2 ¶¶ 2–8. Further, the request concerns personal financial information, which DiPaula contends is of a sensitive nature. The considerations in *Jordan* again provide further guidance: Defendant does not need such information because any documents between Defendant and DiPaula are already available to Defendant. *See* ECF No. 43-2. Defendant should thus have a copy of any applicable agreements, yet Defendant has failed to explain "why it cannot obtain the same information . . . from one of the parties to the litigation," namely, itself. *See Jordan*, 921 F.3d at 189–90. Accordingly, the Court will grant DiPaula's motion to quash subpoena *duces tecum*.

**Conclusion**

---

[3] Due to conflicting page numbers in DiPaula Exhibit 3 (ECF No. 36-3) accompanying his motion, the Court will use the internal pagination designated by CM/ECF.

For the reasons stated above, Daniel White's Motion to Quash Subpoena *Duces Tecum* and for Protective Order (ECF No. 31) and Michael White's Motion to Quash Subpoena *Duces Tecum* (ECF No. 33) are GRANTED IN PART and DENIED IN PART. Their motions are granted to the extent they seek to quash the requests in paragraphs (9), (10), and (11) in Schedule A attached to the subpoenas, but they are denied to the extent they seek to quash the remaining requests. Further, DiPaula's Motion to Quash Subpoena *Duces Tecum*, or in the Alternative, Motion for Protective Order (ECF No. 36) is GRANTED.

Date: 27 September 2021

A. David Copperthite
United States Magistrate Judge