xhIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| DAVID J. BOSHEA | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CASE NO. 1:21-CV-00309-ELH |
| | * | |
| COMPASS MARKETING, INC. | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR A CIVIL CONTEMPT SANCTION ON A NONPARTY

Defendant Compass Marketing, Inc. ("Compass Marketing"), by and through its undersigned counsel and pursuant to Rule 45(g) of the Federal Rules of Civil Procedure, hereby files this Reply to Nonparty Daniel White's Opposition to Defendant's Motion for a Civil Contempt Sanction on a Nonparty.  As explained in greater detail below, Daniel White's Opposition to Compass Marketing's Motion ("Opposition" or "Opp.") [Dkt. No. 70] does not provide any justification for avoiding a civil contempt sanction.  Moreover, Daniel White's and his counsel's conduct during his deposition on November 29, 2021 further evidences that a civil contempt sanction is warranted in this instance.  As such, Daniel White should be held in contempt pursuant to Rule 45(g) of the Federal Rules of Civil Procedure.

## ARGUMENT

### I.      COMPASS MARKETING REPEATEDLY ATTEMPTED TO OBTAIN DANIEL WHITE'S VOLUNTARY COMPLIANCE

Daniel White's Opposition contends that Compass Marketing failed to make a good faith effort to coordinate deposition dates with Daniel White.  *See* Opp. at 3.  This is simply not true.

As Compass Marketing outlined in its Motion for a Civil Contempt Sanction on a Nonparty [Dkt. No. 63], Compass Marketing went to great lengths to work with Daniel White both to schedule a deposition and obtain documents responsive to the subpoena.[1]   As detailed in Compass Marketing's opening brief (the Motion), Daniel White was unresponsive and unwilling to work with Compass Marketing.  Hence, any attempt by Daniel White to try to "spin" Compass Marketing as acting unilaterally is reflective of Daniel White's lack of responsiveness.

It also should be noted that Daniel White's Opposition focuses almost entirely, if not entirely, on scheduling deposition dates, but conspicuously absent from Daniel White's Opposition is any indication he tried to cooperate with the long overdue production of documents.  Indeed, there was no cooperation whatsoever regarding the production of documents – not even a representation as to when they would be produced – and, in fact, none were even produced until after the Motion [Dkt. No. 64] was filed.  *See* Exhibit 1 (Email from S. Patterson to S. Stern dated November 16, 2021).[2]

It should be abundantly clear that if Compass Marketing had not filed its pending Motion for Civil Contempt, it would still be attempting to schedule Daniel White's deposition and obtain documents that it is entitled to receive.

---

[1] In the interest of brevity, Compass Marketing will not repeat the detailed timeline of events it included in its opening brief and refers the Court to that timeline and the exhibits attached thereto.

[2] As explained below, certain documents obviously have not been produced yet (and it remains unclear what other documents have not been produced yet in light of Daniel White's substantial efforts to dissemble in this case).

II.   **DANIEL WHITE EVADED RESPONSES TO MANY RELEVANT QUESTIONS DURING HIS DEPOSITION AND HIS COUNSEL OBSTRUCTED AND THEN TERMINATD THE DEPOSITION, FURTHER EVIDENCING HIS CONTEMPT**

After months of attempts to schedule it, Daniel White's deposition was partially conducted remotely on November 29, 2021.[3]  It became clear from the outset, however, that Daniel White intended to provide evasive and non-responsive answers to questions posed during the deposition, refuse to answer relevant questions (with the assistance of numerous speaking objections from his counsel), and to distract and derail the proceedings by having his counsel engage in substantial speaking objections clearly designed to prolong the deposition and coach the witness.  This conduct, as illustrated below, further demonstrates that a civil contempt sanction is warranted in this case (and that Daniel White should be compelled to answer the many topics he avoided during his deposition and to produce documents).

A.   **Daniel White Gave Evasive Answers to Numerous Questions**

During his deposition, Daniel White was evasive, refusing to answer even basic questions posed by Compass Marketing's counsel.  For example, when questioned as to whether the Motion to Quash *that he drafted and filed himself* was intended to "quash the duces tecum portion and the deposition portion of the subpoena," Daniel White replied, "I don't know."  *See* Exhibit 2 (Deposition Transcript of Daniel White) at 18:17-22.  Also by way of example, Daniel White refused to acknowledge whether an exhibit of a check deposited into his bank account, with his name and signature was even his name or signature.  *Id.* at 173:16-176:16.  When asked, "[i]t has your name on it, correct?" Daniel White replied, "I don't agree with that."  *Id.* at 173:18-19. Another example where Daniel White would not answer a very simple and straight forward

---

[3] Compass Marketing reluctantly agreed to the remote deposition at Judge Gauvey's request, as it had substantial concerns, which were expressed to Judge Gauvey, because remote depositions necessary take longer to conduct and it gives the deponent many opportunities for further delay.

question is when he refused to answer whether he would like to see Plaintiff David Boshea prevail in this litigation. *Id.* at 68:22-72:10. Many, if not most, of Daniel White's answers contained the statements "I don't know," "I don't remember," "I don't recall," "not that I know of," or some variation of the four.[4]

Daniel White even refused to recognize documents that he produced in discovery, constantly feigning ignorance as to the content and purpose of emails between himself and Mr. Boshea's counsel, Gregory Jordan, for example. *See*, *e.g.*, Exhibit 2 at 54:12-60:14. Furthermore, Daniel White's own answers contradicted the documents he produced. When asked whether he "saw a draft of the Complaint that was filed in this lawsuit before it was filed?" (*see* Exhibit 2 at 94:4-5), he replied "I do not remember." *See id.* at 94:4-5. This response, however, clearly contradicts the scores of emails between David Boshea, Greg Jordan, and Daniel White, including emails before the filing of the litigation that appear to request Daniel White's input on a draft of the Complaint. *See* Exhibit 3 (Email from D. Boshea to D. White dated January 7, 2021); Exhibit 4 (Email String, most recent dated February 5, 2021). Compass Marketing, however, could not definitively confirm the email in fact included a draft of the Complaint because the attachments were not provided (further demonstrating Daniel White's contempt).

---

[4] While the following do not reflect every instance where Daniel White feigned ignorance, it is a representative sample of him answering "I don't know." *See* Exhibit 2 at 18:22; 20:19-20, 24:6, 24:11-25:4, 27:17, 28:12, 50:14, 50:19, 54:15, 57:14, 58:12-13, 59:21, 60:14, 64:19-20, 68:4, 70:11-12, 70:20, 79:2-3, 81:17, 82:13, 83:8-9, 88:22-89:1, 90:17, 91:6-7, 92:19-20, 94:19, 95:2, 95:14, 109:19, 112:13, 115:20, 122:17, 144:17, 155:20, 156:13-14, 156:17-18, 157:9, 162:10, 162:14, 163:6, 163:11-12, 163:16, 163:19-20, 164:16-17, 164:20, 173:17, 176:14, 181:3, 181:5, 181:18-19, 192:11, 202:21, 204:4, 204:9, 205:17, 206:8, 206:13. Similarly, the following reflects a representative sample of Daniel White replies of "I do not remember." *See id.* at 19:17, 33:21-22, 34:4-5, 34:17, 35:22, 36:3, 36:8-9, 36:15-16, 36:19, 38:6-7, 40:3, 40:9-10, 44:14-15, 45:11, 50:5, 50:10, 54:21, 55:10, 55:16, 57:3, 58:22, 59:9-10, 64:6, 65:9, 66:21, 67:4, 79:18-20, 86:3, 86:9, 86:13-14, 86:19, 87:19-20, 90:20, 93:3, 93:18, 94:2-3, 94:6, 94:9, 94:13, 98:7, 99:19, 101:11-12, 101:18, 105:15, 107:4-5, 109:9, 109:13, 112:17, 113:1, 115:1, 116:5, 116:9, 118:20, 119:10, 119:14, 120:14, 120:21-22, 121:17, 123:15-16, 127:10, 128:21-22, 131:19-21, 133:1-5, 133:9, 133:14-15, 142:3-5, 157:20, 157:22, 158:3, 158:6-7, 171:7-9, 175:15, 175:21, 176:7, 181:9, 181:13, 192:22, 205:12, 206:18.

This refusal to answer (and the failure to produce all responsive documents) is further evidence of Daniel White's contempt (and he should be compelled to fully comply with the subpoena, including responding to the questions that he evaded).

**B.      Daniel White Did Not Answer Relevant Questions**

**1.      Standard for Relevance During Depositions**

Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding *any* nonprivileged matter that is relevant to any party's claim or defense." *See* FED. R. CIV. P. 26(b)(1) (emphasis added).  To be within the scope of discovery, the information does not even need to be admissible in evidence.  *Id.*  Among the matters that are ripe for discovery in any case are matters bearing on credibility and bias.  *See, e.g.*, *Behler v. Hanlon*, 199 F.R.D. 553, 556-57 (D. Md. 2001) (citing *United States v. Abel*, 469 U.S. 45, 49-52 (1984)) ("Although not directly covered by a specific rule of evidence, a witness may be impeached by showing that he or she is biased, has an interest in the outcome of the litigation, is prejudiced in some relevant way, or has a motive to testify in a particular way."); *see also id.* at 555 n.3 ("Similarly, *information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable*.") (emphasis added).

**2.      Daniel White's Credibility and Bias Is at Issue**

In his Motion to Quash, Daniel White argued that the subpoena served on him should be quashed in part because he "had no prior knowledge of, and did not participate in either the development, execution or ratification of the Boshea employment agreement with Compass."  *See* Dkt. No. 31 at ¶ 2D.  This statement turned out to be false,[5] as Daniel White has been providing substantial "assistance" to Plaintiff David Boshea about the alleged agreement and this lawsuit

---

[5] He even admitted as much during his deposition.  *See* Exhibit 2 at 19:10-20:21.

(both directly to David Boshea and his counsel) – prior to the inception of this lawsuit and throughout the litigation.  *See, e.g.*, Exhibit 5.[6]

Daniel White's substantial assistance to the Plaintiff is curious to say the least, considering he claims to be an owner of Compass Marketing.  *See* Dkt. No. 31-2 at 1.  The fact that an alleged owner is providing substantial assistance to the Plaintiff in a case in which the company he partially owns is the Defendant – and falsely claimed to know nothing about this lawsuit or the alleged agreement in his filing with this Court – raises substantial questions about Daniel White's credibility and bias.  Matters concerning credibility and bias necessarily are discoverable.  *See, e.g.*, *Behler*, 199 F.R.D. at 555-56, 557 (finding that information regarding the credibility of the witness "will fall within the scope of discovery" because, among other things, "a witness always may be impeached by evidence that she or he is biased, prejudiced, has a financial interest in the outcome of the case, or a motive to testify in a particular manner"); *Pete v. Big Picture Loans, LLC*, Civil Action No. 3:17-cv-461, 2020 U.S. Dist. LEXIS 124060, at *14-*15 (E.D. Va. July 14, 2020) (noting that deposition discovery rules "are to be accorded a broad and liberal treatment" and finding that "the scope of discovery is broad and easily encompasses questions regarding [witness'] potential bias and credibility"); Commentary to Rule Changes, Court Rules, 192 F.R.D. 340, 389 (stating "information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable").

### 3.   Daniel White's Alleged Ownership Interest in Compass Marketing

With respect to his ownership interest, Daniel White's credibility can and should be challenged, as it appears he has lied under oath about such matters (and it can provide insight as

---

[6] Exhibit 5 includes at least thirteen (13) email strings (some of which include multiple emails) between Daniel White and Plaintiff David Boshea and/or David Boshea's counsel about this lawsuit, and this collection is just a sample, as there were many more communications between Daniel White and David Boshea and/or his counsel, both in writing and verbal.

to why he would be providing substantial assistance to an adverse party against the company he claims to own, i.e., bias).  To this end, Daniel White has declared under penalty of perjury that he owns 25% of Compass Marketing, based on the 150 shares of Compass Marketing issued to him. *See* Dkt. No. 31-2 at 1.  But his own allegations in the Virginia Litigation and corporate documents demonstrate that Daniel White's assertions under oath about his ownership interests are not true.[7] While Daniel White and his counsel prop up a straw man to argue that questions about Daniel White's ownership interest in Compass Marketing are about "collateral" matters (*see, e.g.*, Exhibit 2 at 25:16-21, 26:20-27:5, 74:11-75:3, 147:21-148:5, 148:10-18), that simply is not true.  Matters concerning Daniel White's ownership interest go directly to the issue of Daniel White's credibility and his bias in this litigation where he is helping a litigant (including by engaging in ex parte communications with that litigant's counsel) against the company he claims to own.  *See, e.g.*, *Behler, supra*; *Big Picture Loans, supra*; Commentary to Rule Changes, *supra*.  As such, Danie White's refusal to answer these questions is further evidence of his contempt (and he should be compelled to answer such questions).

---

[7] In the Virginia Litigation (referenced previously in this litigation), Daniel White and Michael White acknowledged that John White was issued 300 shares of Compass Marketing when the company was first formed in 1998.  *See* Exhibit 6 (First Amended Complaint) at ¶ 21.  Daniel White and Michael White also acknowledged that new stock certificates were issued at a shareholder meeting on June 11, 2001, which resulted in each of them having 150 shares (as Daniel White offered to transfer half his shares to his brother Michael).  *Id.* at ¶ 23.  However, Daniel White and Michael White omitted (intentionally) any reference to the issuance of an additional 300 shares of stock to John White (Stock Certificate #4) at that same meeting, which resulted in John White having 600 shares while Daniel White and Michael White each had only 150 shares (Stock Certificate #s 5 and 6).  *See* Exhibit 7 (Minutes of Shareholder Meeting June 8 (Minutes of Board of Directors Meeting June 11, 2001); Dkt. No. 33-4 (Stock Certificates 4,5, and 6).  After a fourth shareholder surrendered his shares in Compass Marketing in March 2004, Daniel White and Michael White acknowledged that "[n]o other shares of Compass Common Stock were ever validly issued or transferred."  *See* Exhibit 6 at ¶ 25.  Thus, once the shares of the fourth shareholder were surrendered in March 2004, the share ownership of Compass Marketing has remained unchanged (according to Daniel White and Michael White) – with John White owning 600 shares (approximately 66.67%), Daniel White owning 150 shares (approximately 16.67%), and Michael White owning 150 shares (approximately 16.67%) – but Daniel White continues to deny John White's majority ownership interest in the company, which is contrary to the facts and a Board resolution they signed in 2015.  *See* Exhibit 9 (Board Resolution dated July 20, 2015).

Moreover, Daniel White, Michael White and Plaintiff David Boshea were the ones who introduced the issue of Daniel White's and Michael White's ownership interest into this case.  *See* Dkt. No. 31-2 at 1 (asserting his alleged ownership interest); Dkt. No. 33 at 2 (asserting his alleged ownership interest); Dkt. No. 72 at 4 (including allegations about Daniel White's and Michael White's ownership interest in Compass Marketing).  It is nonsensical that Daniel White (and Michael White and Plaintiff David Boshea) could "open the door" on these matters and seek to preclude Compass Marketing's counsel from pursuing them in deposition.

### 4.    Daniel White's Involvement in Other False Severance Arrangements

As outlined in Compass Marketing's Counterclaim and Third-Party Complaint, Compass Marketing contends that this lawsuit is premised on a forged agreement that was never signed or entered into by Compass Marketing (in essence, it is a fraudulent scheme in an attempt to extract money from Compass Marketing).  *See generally* Dkt. No. 38.[8]  Considering the extensive assistance Daniel White (and Michael White) have been providing Plaintiff David Boshea in this case, any severance schemes involving Daniel White and/or Michael White (whether this particular instance or others) would certainly be relevant and appropriate for discovery.  *See* FED. R. CIV. PRO. 26(b).

To this end, Compass Marketing inquired as to whether Daniel White had been involved in any severance arrangements to extract funds from Compass Marketing when those funds were not properly payable, and Daniel White denied any such involvement.  *See* Exhibit 2 at 152:4-6 (asking Daniel White if he has "undertaken any other severance related schemes to extract money

---

[8] To this end, two expert witnesses have opined that the signature purporting to be John White's signature on the contract at issue is a forgery, and Plaintiff's expert witness in this case reached no conclusion on the issue.

from Compass Marketing").[9]   Daniel White, however, claimed to have personally entered Compass Marketing into a severance agreement with former Compass Marketing employees James DiPaula and Patrick Miller "to settle monies that the company owed him for his work at Compass Marketing before he left" (*see* Exhibit 2 at 157:13-18), even though Daniel White never discussed the matter with Patrick Miller (*see id.* at 158:11-159:1) and he "did not remember" any details about the alleged agreement (*see id.* at 157:20-158:7).

To refresh Daniel White's recollection about the details of the alleged agreement, Compass Marketing's counsel presented several documents to Daniel White, including an email dated October 15, 2015 that he sent to John White and Michael White.  *See* Exhibit 10 (Email from D. White to J. White and M. White dated October 15, 2015, with attachment).  The email purported that Compass Marketing had entered into a "severance agreement" with James DiPaula and Patrick Miller (both of whom left the company approximately one year earlier), and stated in part, "[a]s a reminder I/we agreed to 15k each for any/all pay and liability plus 20k to CD for his expenses (10 of which was his AYC initiation fee we agreed to pay a few years ago." *Id.*  Even though the email was sent from Daniel White's Compass Marketing email, Daniel White claimed he "did not know" whether he sent it or the terms of the alleged agreement.  *See* Exhibit 2 at 155:20; 156:13-14, 156:17-18, 159:18-21.

Compass Marketing's counsel then showed Daniel White copies of Daniel White's cashier's checks – not Compass Marketing checks – one dated October 14, 2015 for $10,000.00 and the other dated December 9, 2015 for $25,000.00, both made payable to James DiPaula and authorized by Daniel White.  *See* Dkt 49-2 at 2 (Cashier's Check Dated October 14, 2015); Exhibit 11 (Cashier's Check Dated December 9, 2015).  Daniel White refused to acknowledge that the

---

[9] This line of questioning was met by heavy objections by both Daniel White's counsel and Plaintiff's counsel.  *See, e.g.*, Exhibit 2 at 152:7, 152:8-10, 152:18, 153:4-5, 153:16-17.

exhibits were checks, stating "I don't even know if it's a check.  I don't know anything about that, sir."[10]  *See* Exhibit 2 at 163:19-20, 171:22-172:5.  Undersigned counsel then introduced a third check dated December 1, 2015 paid to the order of Daniel J. White for $65,000.00, purporting to be for the "final payments to James DiPaula and Patrick Miller."  *See* Exhibit 12 (Check Dated December 1, 2015).  Once again, Daniel White feigned ignorance and refused to confirm whether his signature was on the check (even though it clearly was and it was deposited in his account).  *See* Exhibit 2 at 181:2-5.  Assuming that the alleged agreements with Messrs. DiPaula and Miller were legitimate (which is questionable at best considering there is no documentation of these agreements, the checks for those alleged payments did not come from a Compass Marketing account, Compass Marketing is unable to locate any record of any payment(s) to Mr. Miller, and no taxes were deducted from the payments to Mr. DiPaula), *counsel questioned why the check payable to Daniel White (signed by Michael White) was $15,000 greater than the total value of the alleged severance agreements with Messrs. DiPaula and Miller* (the total value according to Daniel White's email being $50,000).[11]  *See* Exhibit 2 at 182:4-21 (questioning Daniel White why the extra $15,000 paid to him and where did that money go).  Daniel White, however, refused to answer these questions, which received numerous objections from his counsel.  *See* Exhibit 2 at 184:1-187:3. These questions are wholly appropriate for credibility, impeachment, and bias purposes.

Questions regarding potential severance schemes become even more compelling considering that Daniel White now contends that he is unable to locate an email dated May 22,

---

[10] Daniel White, however, acknowledged that he paid sums to Mr. DiPaula with checks that were not Compass Marketing checks.

[11] The excess payment to Daniel White certainly appears to be an example of a severance scheme in which he and Michael White participated, but also the lack of an explanation regarding the payment(s) to Mr. DiPaula and associated documents suggests that the whole notion of there being an actual severance agreement with Mr. DiPaula and/or Mr. Miller also is highly questionable.

2007 at 1:24 a.m. that purports to attach a Word version of the purported agreement at issue in this case.  To this end, Daniel White at one point in this litigation apparently informed David Boshea's counsel that he received a bcc copy of an email from John White to David Boshea dated May 22, 2007 at 1:24 a.m. that purported to attach an unsigned copy of the agreement at issue in this lawsuit. *See* Exhibit 13 (Email from G. Jordan to S. Stern dated September 27, 2021).  Compass Marketing issued a subpoena to Daniel White, seeking production of that email (and two other emails in a related string) in native format.  *See* Exhibit 14 (Subpoena to Daniel White dated October 28, 2021).  Notably, Daniel White produced only two of the three emails in native format that were requested in the subpoena and, when questioned about the production of what purports to be the original email in the string (i.e., the email dated May 22, 2007 at 1:24 a.m.), Daniel White could not explain how or why it disappeared from his email files or whether he even received a bcc copy of it.  *See* Exhibit 2 at 127:2-128:22. The "disappearance" of this alleged email seems highly suspicious when considering that Daniel White produced in native format the "subsequent" email in that string (i.e., the email dated May 22, 2007 at 2:08 a.m.), which is only 44 minutes after the alleged original email in that string.  *See* Exhibit 15 at 1.[12]  The mysterious "disappearance" of the May 22, 2007 email at 1:24 a.m. raises further suspicions about the facts in this case reflecting another fraudulent severance scheme involving Daniel White and Michael White and warrants discovery of such matters.[13]

---

[12] "Aside perhaps from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence." *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 258 (Fed. Cl. 2007).

[13] There are numerous other instances where Daniel White (and Michael White) has undertaken efforts to try to harm Compass Marketing, such as the opening of secret bank accounts unbeknownst to the CEO and that used Michael White's home address as the address of the company, and concocting what false loans to extract funds from the company. *See, e.g.*, Exhibit 16 (Bank Signature Card); Exhibit 17 (Bank Signature Card); Exhibit 18 (Email from D. White to M. White dated August 21, 2017) (commenting on Daniel White's "BS loan").  These and other matters concerning Daniel White's bias/credibility warrant discovery.

### 5.    Daniel White's SEC Letter

When asked about a letter that Daniel White claims to have sent to the SEC and forwarded to Plaintiff David Boshea's counsel on January 14, 2021, Daniel White's counsel objected repeatedly and did not allow Daniel White to answer any questions regarding this letter. *See* Exhibit 2 at 213:10-11, 213:13-15, 215:11-12, 216:5-6, 216:9-17, 218:6-9. These objections and refusal to answer questions alone are contemptible considering that Daniel White produced this document and, in his email to Plaintiff David Boshea's counsel, claimed that he sent the letter to counsel "to hopefully give some context, in terms of names and companies and times, to our discussion and your decision-making regarding this matter." *See* Exhibit 19 (Email from D. White to G. Jordan dated January 14, 2021 at 11:08 am, with attachment). The attachment (the letter to the SEC) includes many false allegations about Compass Marketing and a related company, which further raise concerns about Daniel White's credibility and his bias in this litigation where he is blatantly trying to assist the litigant that is suing his company.

### C.    Daniel White's Counsel and David Boshea's Counsel Engaged in Substantial Obstruction of the Deposition with Numerous Speaking Objections

Almost every question that counsel for Compass Marketing posed to Daniel White was met with an objection. While Compass Marketing understands that "[d]uring a deposition, questioning of the deponent proceeds as it would at trial with counsel making objections on the record[,]" *see EEOC v. Freeman*, 288 F.R.D. 92, 97 (D. Md. 2012) (citing FED. R. CIV. P. 30(c)), the objections during Daniel White's deposition were long, drawn out, and repeatedly used as an attempt to thwart Compass Marketing from getting its relevant questions answered. *See* Exhibit 2 (Daniel White Deposition Transcript). These types of speaking objections are improper, and undersigned counsel repeatedly asked Daniel White's and Plaintiff's counsel to stop making them. The Discovery Guideline of the United States District Court for the District of Maryland clearly

state, "[o]bjections should be stated as simply, concisely, and non-argumentatively as possible to avoid coaching or making suggestions to the deponent, and to minimize interruptions in the questioning of the deponent." *See* Local Disc. Guideline 6(b) (D. Md. 2021).

By way of example, when Daniel White was asked whether a statement Plaintiff David Boshea made in his Answers to Interrogatories was true – that Daniel White was the person who reminded Mr. Boshea about his supposed severance agreement – Daniel White's counsel did not even give Daniel White a chance to answer. *See* Exhibit 2 at 31:10-15. Instead, Daniel White's counsel interrupted with a question of his own, asking Compass Marketing's counsel, "[c]an you tell *us* when this event took place so that *we* actually have some context for this statement?" *Id.* at 31:16-18 (emphasis added). Daniel White's counsel then argued with Compass Marketing's counsel about the question for another minute and a half before allowing Daniel White to answer the question. *Id.* at 31:19-33:18. This practice continued throughout the entire deposition, where Daniel White's counsel would pose a lengthy objection or ask clarifying questions in an attempt to coach Daniel White's answers. *See, e.g.*, *id.* at 45:17-18, 45:21-22, 69:11-15, 73:5-10.[14] This practice wholly disrupted the flow of the deposition and prolonged it unnecessarily and improperly.

---

[14] The following is a representative sample of the many speaking objections that were made during the deposition (but it does not reflect the entirety of those objections). *Id.* at 13:11, 18:11-12, 18:20-21, 19:13-14, 21:2, 23:1-2, 23:18-19, 24:4-5, 24:11-25:4, 25:16-21 27:13-14, 33:7-10, 33:18, 34:11-12, 38:12, 40:19, 41:1-2, 41:9-10, 44:12-13, 46:14, 50:13, 51:14, 52:1, 52:6, 52:12, 52:21, 55:15, 56:2-3, 58:8, 58:17, 59:4, 59:14-15, 60:11, 62:5, 63:14, 64:9-10, 65:2-3, 67:2-3, 68:16-17, 69:3, 69:11-15, 69:21, 70:7-8, 70:17, 71:9-11, 71:20-22, 72:18, 73:5-10, 73: 17-20, 78:21-79:1, 80:15-19 81:15-16, 82:5, 82:11-12, 82:19, 83:6, 83:14-15, 85:1, 86:22, 88:1, 88:6, 88:13, 93:8-9, 95:8-9, 96:2, 97:15, 100:7, 100:15-16, 101:9-10, 102:20-21, 103:8, 103:14, 103:20, 104:4, 104:13-107:2-3, 110:3-4, 111:20-21, 118:4-118:12, 118:18, 119:2, 123:19, 124:5, 130:16, 132:17, 135:14-15, 137:1-2, 137:5-7, 137:16, 138:18-19, 139:19, 142:9, 142:14, 142:20, 146:8-11, 151:3, 151:14, 152:1, 152:7, 153:18, 158:17l, 158:20-21, 174:5, 185:5-11, 190:14-16, 195:6-12, 202:18. The numerous speaking objections were not limited to Daniel White's counsel, but also included Plaintiff David Boshea's counsel. *See, e.g.*, *id.* at 57:18-20, 63:15-17, 67:19-21, 200:1-6, 207:17-22, 215:1-5.

Moreover, at the conclusion of the deposition that day (which is supposed to be continued on a mutually agreeable date in late December, per the arrangements made by Judge Gauvey), Daniel White's counsel stated, "we're not going to be coming back." *See* Exhibit 2 at 207:3-11.[15]

## **CONCLUSION**

For these reasons, as well as those set forth in Compass Marketing's Motion for Civil Contempt, Daniel White should be found in civil contempt and appropriate remedies should be implemented to compensate Compass Marketing and ensure compliance with the subpoenas and this Court's Order.

Dated:  December 6, 2021                    Respectfully submitted,

                                            */s/Stephen B. Stern*
                                            Stephen B. Stern, Bar No.: 25335
                                            Heather K. Yeung, Bar No.: 20050
                                            KAGAN STERN MARINELLO & BEARD, LLC
                                            238 West Street
                                            Annapolis, Maryland 21401
                                            (Phone): (410) 216-7900
                                            (Fax):  (410) 705-0836
                                            Email:  stern@kaganstern.com
                                            Email:  yeung@kaganstern.com

                                            *Counsel for Defendant*
                                            *Compass Marketing, Inc.*

---

[15] Daniel White's counsel's subsequent statement that "you'll have an opportunity to do that on another occasion" (*see id.* at 221:4-9) appears to be referencing something other than a willingness to resume the deposition.

14

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 6th day of December, 2021, the foregoing Reply in Support of Motion for Civil Contempt Sanction on a Nonparty was served via the CM/ECF system on the following counsel of record:

Thomas J. Gagliardo                          Gregory J. Jordan
Gilbert Employment Law, PC                   Mark Zito
1100 Wayne Avenue, Suite 900                 Jordan & Zito, LLC
Silver Spring, Maryland 20910                350 N. LaSalle Drive, Suite 1100
Email:  tgagliardo@gelawyer.com              Chicago, Illinois 60654
                                             Email:  gjordan@jz-llc.com

*Attorneys for Plaintiff*
*David Boshea*

and via email to:

    Bruce L. Marcus, Esquire
    MarcusBonsib, LLC
    6411 Ivy Lane, Suite 116
    Greenbelt, Maryland 20770
    bmarcus@marcusbonsib.com

    *Counsel for Non-Party*
    *Daniel White*

                              */s/ Stephen B. Stern*
                              Stephen B. Stern