# EXHIBIT 2



# Transcript of Daniel J. White

**Date:** November 29, 2021
**Case:** Boshea -v- Compass Marketing, Inc.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1        IN THE UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF MARYLAND

3

4  DAVID J. BOSHEA,        *

5      Plaintiff,      *

6   vs.             *  Civil Action No.

7  COMPASS MARKETING, INC.,  *  1:21-cv-00309-ELH

8      Defendant.      *

9

10

11

12         Videotaped Deposition of

13           DANIEL J. WHITE

14       Conducted Virtually Via Zoom

15      Monday, November 29, 2021

16         8:31 a.m. EST

17

18

19  Job No.: 414939

20  Pages: 1 - 223

21  Reported by:  Vicki L. Forman

22

1        Videotaped Deposition of DANIEL J. WHITE,

2   conducted virtually via Zoom.

3

4

5

6

7

8        Pursuant to agreement, before Vicki L.

9   Forman, Court Reporter and Notary Public in and

10  for the State of Maryland.

11

12

13

14

15

16

17

18

19

20

21

22

```
 1              A P P E A R A N C E S

 2

 3    ON BEHALF OF THE PLAINTIFF:

 4        GREGORY J. JORDAN, ESQUIRE

 5        Jordan & Zito

 6        Suite 400

 7        350 North Clark Street

 8        Chicago, Illinois  60654

 9        (312) 489-8174

10

11

12

13    ON BEHALF OF THE DEFENDANT:

14        STEPHEN B. STERN, ESQUIRE

15        HEATHER K. YEUNG, ESQUIRE

16        Kagan, Stern, Marinello & Beard, LLC

17        238 West Street

18        Annapolis, Maryland  21401

19        (410) 216-7900

20

21

22
```

```
1   ON BEHALF OF THE DEPONENT:

2       BRUCE L. MARCUS, ESQUIRE

3       SYDNEY M. PATTERSON, ESQUIRE

4       Marcus Bonsib, LLC

5       6411 Ivy Lane, Suite 116

6       Greenbelt, Maryland  20770

7       (301) 441-3000

8

9

10

11  ALSO PRESENT:  David Boshea

12                 Ron Bateman, Compass Marketing

13                 Sue Pybas, PD Tech

14                 Donald Lane, II, Videographer

15

16

17

18

19

20

21

22
```

1                    C O N T E N T S

2    EXAMINATION OF DANIEL J. WHITE                PAGE

3      By Mr. Stern                                 12

4

5

6

7

8

9                      E X H I B I T S

10              (Attached to the Transcript)

11   D. WHITE DEPOSITION EXHIBIT                    PAGE

12     Exhibit 1     White's Motion to Quash         15

13     Exhibit 2     Answers to Interrogatories      28

14     Exhibit 3     Amended Responses to Interrogs.  43

15     Exhibit 4     1/15/21 E-mail, DJW 000093-94    47

16     Exhibit 5     1/12/21 E-mail, DJW 000292-293   53

17     Exhibit 6     2/5/21 E-mail, DJW 000894-897    60

18     Exhibit 7     1/6/21 E-mail, DJW 000900-907    65

19     Exhibit 8     12/18/20 E-mail, DJW 000922-925  80

20     Exhibit 9     12/27/20 E-mail, DJW 000921      85

21     Exhibit 10    1/7/21 E-mail, DJW 000913        89

22   (Exhibits continued on next page.)

```
1    Exhibit 11   1/20/21 E-mail, DJW 000908-910    91

2    Exhibit 12   8/27/21 E-mail, DJW 000041-42     98

3    Exhibit 13   6/16/21 E-mail, DJW 000875        104

4    Exhibit 14   6/15/21 E-mail, DJW 000876        107

5    Exhibit 15   9/25/21 E-mail, DJW 000543        114

6    Exhibit 16   7/1/21 E-mail, DJW 000831-835     117

7    Exhibit 17   9/13/21 E-mail, DJW 000312-319    121

8    Exhibit 18   9/27/21 E-mail, DJW 00001-00008   124

9    Exhibit 19   10/15/15 E-mail                   154

10   Exhibit 20   12/9/15 Photocopy of Check        166

11   Exhibit 21   12/1/15 Photocopy of Check        176

12   Exhibit 22   6/7/21 E-mail, DJW 000877         202

13   Exhibit 23   1/14/21 E-mail, DJW 000285        212

14

15

16

17

18

19

20

21

22
```

```
1              P R O C E E D I N G S                    08:30:12

2          THE VIDEOGRAPHER:  Here begins the remote    08:30:12

3   video deposition of Daniel White in the matter of   08:30:18

4   David J. Boshea versus Compass Marketing,           08:30:21

5   Incorporated pending in the United States District  08:30:25

6   Court for the District of Maryland.  Case number    08:30:27

7   as it appears, 1:21-cv-00309-ELH.  Today's date is  08:30:29

8   November 29, 2021.  The time on the video monitor   08:30:38

9   is 8:31 a.m.                                         08:30:41

10         The remote videographer today is Donald E.   08:30:42

11  Lane, II representing Planet Depos.  All parties     08:30:45

12  of this video deposition are attending remotely.    08:30:48

13         Would counsel please voice identify          08:30:51

14  themselves and state whom they represent?           08:30:53

15         MR. STERN:  Good morning.  This is Stephen   08:30:55

16  Stern.  I represent the defendant, Compass          08:30:58

17  Marketing, Inc.  Located in my office with me is a  08:31:01

18  representative of the company, Ronald Bateman.  He  08:31:02

19  is not on the video -- he is not on camera but      08:31:06

20  he's in my office with me.                          08:31:10

21         MR. JORDAN:  This is Gregory Jordan.  I      08:31:13

22  represent David Boshea.  David is also on the       08:31:13
```

| | | |
|---|---|---|
| 1 | Zoom.  He is the plaintiff. | 08:31:16 |
| 2 | MS. YEUNG:  Heather Yeung is here.  I'm | 08:31:21 |
| 3 | also -- I'm part of Stephen Stern's firm | 08:31:23 |
| 4 | representing Compass Marketing.  I am largely here | 08:31:27 |
| 5 | for technical support to make sure exhibits are | 08:31:31 |
| 6 | shown. | 08:31:34 |
| 7 | THE VIDEOGRAPHER:  The court reporter | 08:31:35 |
| 8 | today is Vicki Forman representing Planet Depos. | 08:31:36 |
| 9 | Would the reporter please swear in the | 08:31:38 |
| 10 | witness. | 08:31:38 |
| 11 | THE REPORTER:  Mr. White, would you raise | 08:31:38 |
| 12 | your right hand, please? | 08:31:38 |
| 13 | DANIEL J. WHITE | 08:31:38 |
| 14 | having been duly sworn, testified as follows: | 08:31:38 |
| 15 | THE REPORTER:  Thank you.  You may proceed, | 08:31:53 |
| 16 | Mr. Stern. | 08:31:55 |
| 17 | MR. STERN:  Thank you. | 08:31:57 |
| 18 | MR. MARCUS:  Before we begin, if there are | 08:31:57 |
| 19 | others in any of the rooms we would ask that they | 08:31:59 |
| 20 | be identified so that we actually know what's | 08:32:03 |
| 21 | going on elsewhere. | 08:32:07 |
| 22 | Mr. Stern, Mr. Bateman is in what | 08:32:09 |

| | | |
|---|---|---|
| 1 | capacity? | 08:32:13 |
| 2 | MR. STERN:  He's here as the company | 08:32:15 |
| 3 | representative. | 08:32:16 |
| 4 | MR. MARCUS:  And by "company" your | 08:32:19 |
| 5 | representation is that he is there on behalf of | 08:32:20 |
| 6 | Compass Marketing? | 08:32:22 |
| 7 | MR. STERN:  Correct. | 08:32:23 |
| 8 | MR. MARCUS:  Does he hold an office or how | 08:32:29 |
| 9 | did that designation come to be? | 08:32:31 |
| 10 | MR. STERN:  Special Advisor to the | 08:32:38 |
| 11 | Chairman. | 08:32:39 |
| 12 | MR. MARCUS:  Special Advisor to the | 08:32:41 |
| 13 | Chairman. | 08:32:43 |
| 14 | Could we just have an identification of | 08:32:52 |
| 15 | who the chairman is? | 08:32:53 |
| 16 | MR. STERN:  I'm the one that's asking | 08:32:55 |
| 17 | questions today.  He is here as a company | 08:32:57 |
| 18 | employee -- a company representative.  That's all | 08:33:01 |
| 19 | we need to know. | 08:33:03 |
| 20 | MR. MARCUS:  Okay.  And Mr. Boshea, are | 08:33:04 |
| 21 | you by yourself, sir? | 08:33:12 |
| 22 | | |

| | | |
|---|---|---|
| 1 | MR. BOSHEA:  Yes, sir. | 08:33:15 |
| 2 | MR. MARCUS:  Mr. Jordan, I assume you are | 08:33:17 |
| 3 | as well, sir? | 08:33:19 |
| 4 | MR. JORDAN:  That's correct. | 08:33:21 |
| 5 | David, can you turn off your mic, please? | 08:33:23 |
| 6 | Sorry. | 08:33:29 |
| 7 | MR. MARCUS:  Ms. Young, I assume you are | 08:33:30 |
| 8 | also by yourself? | 08:33:33 |
| 9 | MS. YEUNG:  I'm in the same office | 08:33:35 |
| 10 | building as Mr. Stern but I'm in my own office | 08:33:37 |
| 11 | with the door closed. | 08:33:40 |
| 12 | MR. MARCUS:  Just so it's clear, | 08:33:41 |
| 13 | Ms. Patterson who is an attorney in our office is | 08:33:43 |
| 14 | also here in the room.  There's nobody else in the | 08:33:45 |
| 15 | room here and I am assuming that there are no | 08:33:47 |
| 16 | other recordings that are being made other than | 08:33:52 |
| 17 | the official reporting company recording both | 08:33:55 |
| 18 | video and audio, is that a fair statement? | 08:33:58 |
| 19 | MR. STERN:  Thank you, Bruce.  I actually | 08:34:01 |
| 20 | want to take it a step further, not just | 08:34:03 |
| 21 | recording.  I want to make sure that everyone | 08:34:04 |
| 22 | represents that's in an office that there's no one | 08:34:06 |

| | |
|---|---|
| 1 | else listening in by phone or by video on their | 08:34:09 |
| 2 | computer screen or otherwise. | 08:34:13 |
| 3 | MR. JORDAN: I'm not recording. I don't | 08:34:16 |
| 4 | have anybody -- this is Gregory Jordan. I'm not | 08:34:18 |
| 5 | recording, having anybody listen in. I'm here by | 08:34:20 |
| 6 | myself. I'm at home. There are other people in | 08:34:23 |
| 7 | the house but they're not -- they're completely | 08:34:27 |
| 8 | uninterested in this. | 08:34:30 |
| 9 | MR. STERN: Okay. | 08:34:32 |
| 10 | MR. MARCUS: And as for Ms. Patterson, | 08:34:34 |
| 11 | myself and Mr. White there are no recordings and | 08:34:37 |
| 12 | there is no one else in the room. | 08:34:39 |
| 13 | MR. STERN: That's not my question, | 08:34:41 |
| 14 | Mr. Marcus. I asked is there any connection to | 08:34:43 |
| 15 | anyone by phone or video that's otherwise even if | 08:34:46 |
| 16 | it's not being recorded? | 08:34:49 |
| 17 | MR. MARCUS: There are no telephones | 08:34:51 |
| 18 | operated at this point. There are no intentions | 08:34:54 |
| 19 | to have any telephones operated so that's it for | 08:34:58 |
| 20 | us. I assume that that is the case for you -- | 08:35:03 |
| 21 | MR. STERN: Correct. | 08:35:05 |
| 22 | | |

| | | |
|---|---|---|
| 1 | MR. MARCUS: -- and Mr. Bateman? | 08:35:07 |
| 2 | MR. STERN: Correct. | 08:35:10 |
| 3 | MR. MARCUS: Okay. | 08:35:13 |
| 4 | MR. STERN: All right, then let's get | 08:35:14 |
| 5 | started. | 08:35:16 |
| 6 | Was the witness sworn in? | 08:35:17 |
| 7 | THE REPORTER: Yes. | 08:35:19 |
| 8 | EXAMINATION BY COUNSEL FOR THE DEFENDANT | 08:35:20 |
| 9 | BY MR. STERN: | 08:35:20 |
| 10 | Q  Mr. White, is this the first time you and | 08:35:21 |
| 11 | I have met? | 08:35:23 |
| 12 | A  I believe so. | 08:35:24 |
| 13 | Q  And can you just -- can you please state | 08:35:26 |
| 14 | your name for the record? | 08:35:31 |
| 15 | A  My name is Daniel White. | 08:35:32 |
| 16 | Q  And you are an attorney? | 08:35:35 |
| 17 | A  I am. | 08:35:36 |
| 18 | Q  What is your current position? | 08:35:38 |
| 19 | A  I work for the State's Attorney's Office | 08:35:41 |
| 20 | in St. Mary's County. | 08:35:44 |
| 21 | Q  What's your title? | 08:35:47 |
| 22 | A  I'm the Deputy State's Attorney. | 08:35:47 |

| | | |
|---|---|---|
| 1 | Q   How long have you held that position? | 08:35:49 |
| 2 | A   About one year. | 08:35:52 |
| 3 | Q   And were you employed in the State's | 08:35:53 |
| 4 | Attorney's Office prior to that? | 08:35:58 |
| 5 | A   I was. | 08:35:59 |
| 6 | Q   For how long? | 08:36:00 |
| 7 | A   I've been there for 20 years. | 08:36:02 |
| 8 | Q   And have you been working in a full-time | 08:36:05 |
| 9 | capacity for the State's Attorney's Office during | 08:36:08 |
| 10 | that time? | 08:36:11 |
| 11 | MR. MARCUS:  Objection.  Answer please. | 08:36:15 |
| 12 | A   Yes. | 08:36:16 |
| 13 | BY MR. STERN: | 08:36:18 |
| 14 | Q   So as an attorney you're familiar with | 08:36:19 |
| 15 | depositions? | 08:36:21 |
| 16 | A   Generally. | 08:36:25 |
| 17 | Q   Have you ever been deposed before? | 08:36:26 |
| 18 | A   I have not. | 08:36:29 |
| 19 | Q   Well, just in an abundance of caution I'm | 08:36:32 |
| 20 | going to go over a few procedural matters today | 08:36:35 |
| 21 | just to make sure we do the best we can to | 08:36:39 |
| 22 | understand how this process will work. | 08:36:40 |

1       As you know, I represent Compass                 08:36:42

2   Marketing, Inc. in this matter and I'll be asking    08:36:44

3   you a bunch of questions today.  I need you to       08:36:47

4   verbalize your answers.  Even though this is being   08:36:50

5   video recorded, for the transcript we also need      08:36:53

6   verbal answers, do you understand that?              08:36:56

7       A  I do.                                         08:36:59

8       Q  In addition, if there's a question that's     08:36:59

9   unclear I'll ask you to ask me to clarify it,        08:37:04

10  otherwise, I'll assume you understand the            08:37:07

11  questions being asked.                               08:37:09

12      Do you understand that?                          08:37:11

13      A  I understand what you said.                   08:37:13

14      Q  And then while it's inevitable in any         08:37:15

15  conversation, people tend to interrupt one another   08:37:19

16  from time to time.  We need to do our best to let    08:37:22

17  each other finish our respective statements so       08:37:25

18  please wait for me to finish asking my question      08:37:28

19  and I'll do my best to try to wait for you to        08:37:29

20  finish answering the question, understood?           08:37:34

21      A  I understand.                                 08:37:36

22      Q  And before we get started, one other          08:37:37

| | | |
|---|---|---|
| 1 | question is have you consumed anything today that | 08:37:41 |
| 2 | would inhibit you from answering questions | 08:37:44 |
| 3 | truthfully under oath? | 08:37:47 |
| 4 | A  No, sir. | 08:37:49 |
| 5 | Q  I'm sorry, I couldn't hear you. | 08:37:50 |
| 6 | A  No, sir. | 08:37:52 |
| 7 | Q  Now, you're here today pursuant to a | 08:37:54 |
| 8 | subpoena, correct? | 08:37:56 |
| 9 | A  That's correct. | 08:37:57 |
| 10 | Q  And you are accompanied by your counsel? | 08:38:00 |
| 11 | A  That's correct. | 08:38:02 |
| 12 | Q  And you objected to sitting for this | 08:38:08 |
| 13 | deposition by filing a motion to quash this | 08:38:10 |
| 14 | subpoena, correct? | 08:38:13 |
| 15 | A  I did. | 08:38:16 |
| 16 | MR. STERN:  I'd like to show you that | 08:38:18 |
| 17 | motion that you filed.  It's Document Number 31 | 08:38:21 |
| 18 | filed on August 16, 2021 and I'm going to -- can | 08:38:28 |
| 19 | you scroll through it, please, Heather to -- and | 08:38:35 |
| 20 | this will be marked as Exhibit 1. | 08:38:37 |
| 21 | (D. White Deposition Exhibit 1 was marked | 08:38:37 |
| 22 | for identification and attached to the | 08:38:37 |

| 1 | transcript.) | 08:38:37 |
|---|---|---|
| 2 | BY MR. STERN: | 08:38:37 |
| 3 | Q  Is this the document that you filed? | 08:38:41 |
| 4 | MR. MARCUS:  We have to see it first. | 08:38:47 |
| 5 | MS. YEUNG:  Would you like me to send the | 08:38:53 |
| 6 | e-mail now with the entire document? | 08:38:55 |
| 7 | MR. JORDAN:  I would like you to send the | 08:39:03 |
| 8 | e-mail if possible.  That would probably be | 08:39:05 |
| 9 | easier.  This is Gregory Jordan. | 08:39:09 |
| 10 | MS. YEUNG:  Not a problem. | 08:39:13 |
| 11 | MR. STERN:  Heather, perhaps what we'll do | 08:39:14 |
| 12 | is once you put it up on the screen and I can | 08:39:16 |
| 13 | confirm that that's the one I'm looking to have | 08:39:19 |
| 14 | referred to, you can just right after that send | 08:39:21 |
| 15 | the e-mail to whoever needs to have a copy. | 08:39:24 |
| 16 | MS. YEUNG:  Yes, we'll get a flow going. | 08:39:26 |
| 17 | MR. STERN:  All right. | 08:39:30 |
| 18 | BY MR. STERN: | 08:39:31 |
| 19 | Q  Mr. White, is this the motion that you | 08:39:32 |
| 20 | filed? | 08:39:35 |
| 21 | MR. MARCUS:  Hang on one second.  We just | 08:39:41 |
| 22 | received it. | 08:39:44 |

| | |
|---|---|
| 1 | MR. STERN:  It's also up on the screen. | 08:39:44 |
| 2 | MR. MARCUS:  I understand that but there | 08:39:46 |
| 3 | are two lines below the caption so that's all we | 08:39:47 |
| 4 | can see. | 08:39:53 |
| 5 | BY MR. STERN: | 08:40:09 |
| 6 | Q  Have you had a chance to review that, | 08:40:10 |
| 7 | Mr. White? | 08:40:12 |
| 8 | A  I looked at your e-mail.  Thank you. | 08:40:21 |
| 9 | Q  Is that your opposition -- or your motion | 08:40:24 |
| 10 | that you filed I mean? | 08:40:28 |
| 11 | A  It appears to be but I do not know if it's | 08:40:29 |
| 12 | the whole thing or not. | 08:40:33 |
| 13 | Q  I'm not representing that's the exhibits. | 08:40:34 |
| 14 | I'm asking does that constitute the motion that | 08:40:37 |
| 15 | you filed? | 08:40:39 |
| 16 | A  It appears to be but I'm not sure. | 08:40:40 |
| 17 | Q  What is it that doesn't make you sure that | 08:40:42 |
| 18 | that's the motion that you filed? | 08:40:44 |
| 19 | A  Well, it comes from you, sir. | 08:40:47 |
| 20 | MR. MARCUS:  Mr. Stern, not to interject | 08:40:52 |
| 21 | but you made reference to the deposition as being | 08:40:54 |
| 22 | the subject of the motion I believe in your | 08:40:58 |

| | | |
|---|---|---|
| 1 | question.  What you've shown us is a motion to | 08:41:00 |
| 2 | quash subpoenas, okay, and it appears to be for | 08:41:05 |
| 3 | the duces tecum and a protective order so I'm not | 08:41:13 |
| 4 | sure if your question was accurate if this is the | 08:41:16 |
| 5 | exhibit that you intend to rely on. | 08:41:22 |
| 6 | BY MR. STERN: | 08:41:22 |
| 7 | Q  Mr. White, was your motion intended to | 08:41:24 |
| 8 | quash the entirety of the subpoena that was served | 08:41:27 |
| 9 | on you, both the duces tecum portion and the | 08:41:30 |
| 10 | deposition portion? | 08:41:34 |
| 11 | MR. MARCUS:  Objection.  The document | 08:41:36 |
| 12 | speaks for itself. | 08:41:38 |
| 13 | BY MR. STERN: | 08:41:38 |
| 14 | Q  Go ahead and answer the question, | 08:41:39 |
| 15 | Mr. White. | 08:41:40 |
| 16 | A  Would you ask me the question again, sir? | 08:41:40 |
| 17 | Q  Was your motion intended to quash the | 08:41:42 |
| 18 | duces tecum portion and the deposition portion of | 08:41:45 |
| 19 | the subpoena? | 08:41:47 |
| 20 | MR. MARCUS:  Again, objection.  The | 08:41:50 |
| 21 | document speaks for itself.  Go ahead, sir. | 08:41:51 |
| 22 | A  I don't know. | 08:41:54 |

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 08:41:56 |
| 2 | Q  You don't know?  Why don't you know? | 08:41:56 |
| 3 | What is it about the motion that you don't | 08:42:00 |
| 4 | know? | 08:42:02 |
| 5 | A  I wrote it as best as I could. | 08:42:04 |
| 6 | Q  And when you wrote it did you intend to | 08:42:07 |
| 7 | quash both the duces tecum portion of the | 08:42:10 |
| 8 | deposition and the deposition portion of the -- | 08:42:13 |
| 9 | I'm sorry, let me say that again. | 08:42:16 |
| 10 | Did you intend to quash the duces tecum | 08:42:18 |
| 11 | portion of the subpoena and the deposition portion | 08:42:21 |
| 12 | of the subpoena? | 08:42:23 |
| 13 | MR. MARCUS:  Objection.  The document | 08:42:25 |
| 14 | speaks for itself. | 08:42:26 |
| 15 | BY MR. STERN: | 08:42:29 |
| 16 | Q  Go ahead, Mr. White. | 08:42:30 |
| 17 | A  I do not remember. | 08:42:31 |
| 18 | Q  Would it help you if you were to read | 08:42:33 |
| 19 | through that motion? | 08:42:36 |
| 20 | A  I can read the motion for you if you'd | 08:42:40 |
| 21 | like. | 08:42:42 |
| 22 | Q  Did you review your motion prior to | 08:42:47 |

1    preparing for -- prior to the deposition today?        08:42:51

2        A  I did not do it recently.                        08:42:55

3        Q  When was the last time you reviewed your         08:42:58

4    motion?                                                 08:43:00

5        A  Probably two months ago.                         08:43:05

6        Q  I'd like to turn your attention to page          08:43:09

7    two, subsection 2D.  I would like to direct your        08:43:13

8    attention to one, two, three, four lines down.          08:43:24

9            It says "White" -- I assume White there         08:43:28

10   refers to you, Daniel White, correct?                   08:43:31

11       A  That's correct.                                  08:43:34

12       Q  It says "White had no prior knowledge of         08:43:36

13   and did not participate in neither the                  08:43:39

14   development, execution or ratification of the           08:43:41

15   Boshea employment agreement with Compass," do you       08:43:44

16   see that?                                               08:43:47

17       A  I see that.                                      08:43:48

18       Q  Is that a true statement?                        08:43:50

19       A  I do not know and -- I do not know the           08:43:58

20   answer to that.  I didn't think I did when I wrote      08:44:01

21   that statement.                                         08:44:05

22       Q  So now you've had time to reflect on it.         08:44:06

| | | |
|---|---|---|
| 1 | Is that a true statement? | 08:44:10 |
| 2 | MR. MARCUS:  Objection to form. | 08:44:13 |
| 3 | A  I have reflected on that motion and I have | 08:44:20 |
| 4 | found an e-mail that I did not remember having | 08:44:24 |
| 5 | received. | 08:44:29 |
| 6 | BY MR. STERN: | 08:44:34 |
| 7 | Q  We'll talk about that e-mail a little bit | 08:44:34 |
| 8 | later on. | 08:44:37 |
| 9 | A  Okay. | 08:44:39 |
| 10 | Q  I also want to turn your attention for the | 08:44:39 |
| 11 | moment -- we'll turn back to this a few times | 08:44:43 |
| 12 | during the deposition. | 08:44:45 |
| 13 | As I understand it, you also have a time | 08:44:46 |
| 14 | limitation that you've got to end the deposition | 08:44:49 |
| 15 | today by 12:30; is that correct? | 08:44:51 |
| 16 | MR. MARCUS:  The deposition according to | 08:44:53 |
| 17 | the Court will end at 12:30.  It was to start at | 08:44:54 |
| 18 | 8:00 a.m.  We were here at 8:00 a.m. and the Court | 08:44:59 |
| 19 | has indicated that the deposition will end at | 08:45:03 |
| 20 | 12:30. | 08:45:06 |
| 21 | MR. STERN:  This is just this portion of | 08:45:06 |
| 22 | the deposition.  The Court also talked about | 08:45:08 |

| | | |
|---|---|---|
| 1 | continuing it later in December. | 08:45:10 |
| 2 | MR. MARCUS:  The issue about whether it | 08:45:12 |
| 3 | will be continued is to be determined based on the | 08:45:14 |
| 4 | questions that are put to the deponent and whether | 08:45:18 |
| 5 | or not the deposition is being done according to | 08:45:21 |
| 6 | the rules and in an efficient and economical way. | 08:45:26 |
| 7 | MR. STERN:  Well, you can take up that | 08:45:31 |
| 8 | battle if you need to, Mr. Marcus. | 08:45:33 |
| 9 | BY MR. STERN: | 08:45:33 |
| 10 | Q  I'm turning your attention to subsection | 08:45:35 |
| 11 | 2G on page three.  It says "The subpoena duces | 08:45:38 |
| 12 | tecum was not properly issued, as Attorney Stern | 08:45:47 |
| 13 | is disqualified from serving as counsel for | 08:45:49 |
| 14 | Compass Marketing because, among other things, | 08:45:52 |
| 15 | Stern was not properly retained by Compass and was | 08:45:55 |
| 16 | instead engaged by a single shareholder of Compass | 08:45:57 |
| 17 | who shares with Attorney Stern a financial | 08:46:01 |
| 18 | interest in Smart Retail, Inc., whose interests | 08:46:02 |
| 19 | are directly and materially adverse to Compass." | 08:46:06 |
| 20 | What did you mean when you said "Stern was | 08:46:09 |
| 21 | not properly retained and instead engaged by a | 08:46:11 |
| 22 | single shareholder of Compass"? | 08:46:14 |

| | | |
|---|---|---|
| 1 | MR. MARCUS: Objection to the form of the | 08:46:18 |
| 2 | question. Answer if you can, please. | 08:46:19 |
| 3 | A I think I wrote it as carefully as I could | 08:46:21 |
| 4 | and I think I meant what I wrote, sir. | 08:46:24 |
| 5 | BY MR. STERN: | 08:46:26 |
| 6 | Q So why is it that a single shareholder of | 08:46:26 |
| 7 | Compass does not authorize to retain counsel for | 08:46:29 |
| 8 | the company? | 08:46:34 |
| 9 | A I think that answer goes together. I | 08:46:39 |
| 10 | think that sentence belongs together. I think you | 08:46:42 |
| 11 | and John have a business together. I think John | 08:46:46 |
| 12 | owns 50 percent of the company. I think | 08:46:50 |
| 13 | 50 percent of the owners don't think you should be | 08:46:52 |
| 14 | representing Compass Marketing. | 08:46:55 |
| 15 | Q So are you saying that you have veto power | 08:46:56 |
| 16 | over who the company represents -- who the company | 08:47:01 |
| 17 | retains as counsel? | 08:47:02 |
| 18 | MR. MARCUS: Objection, misstates the | 08:47:04 |
| 19 | testimony. Answer please. | 08:47:06 |
| 20 | A I don't believe that John has the | 08:47:07 |
| 21 | authority to hire you to represent Compass. | 08:47:10 |
| 22 | | |

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 08:47:15 |
| 2 | Q  Who has the authority to retain counsel to | 08:47:15 |
| 3 | represent Compass? | 08:47:18 |
| 4 | MR. MARCUS:  Objection, calls for a legal | 08:47:21 |
| 5 | conclusion.  Answer if you can, please. | 08:47:23 |
| 6 | A  I do not know. | 08:47:25 |
| 7 | BY MR. STERN: | 08:47:29 |
| 8 | Q  So you don't know who has the ability to | 08:47:30 |
| 9 | retain counsel but you believe John White does not | 08:47:32 |
| 10 | have authority to retain counsel? | 08:47:35 |
| 11 | MR. MARCUS:  Objection.  Mr. Stern, this | 08:47:37 |
| 12 | deposition is supposed to be taken according to | 08:47:40 |
| 13 | the opinion and order that was issued by Judge | 08:47:44 |
| 14 | Copperthite on matters that are raised in the | 08:47:47 |
| 15 | Complaint.  If it is your position that you're | 08:47:50 |
| 16 | free to go beyond that then we will take up with | 08:47:55 |
| 17 | the Court the fact that there are no constraints | 08:47:58 |
| 18 | and the questions that are being put to the | 08:48:01 |
| 19 | deponent are unrelated to the purpose of the | 08:48:05 |
| 20 | deposition, and to the extent that you think you | 08:48:08 |
| 21 | need more time I would suggest to you, sir, that | 08:48:10 |
| 22 | your time in this deposition should be spent | 08:48:14 |

| | |
|---|---|
| 1 | inquiring about the role of a nonparty witness on | 08:48:17 |
| 2 | the limited topics that were identified by the | 08:48:20 |
| 3 | Judge in the opinion and order that was issued | 08:48:23 |
| 4 | September 27th. | 08:48:26 |
| 5 |      MR. STERN:  Mr. Marcus, please stop with | 08:48:28 |
| 6 | the speaking objections.  This is highly relevant. | 08:48:30 |
| 7 | First of all, your client put it in a motion | 08:48:33 |
| 8 | specifically related to this case.  Secondly, as | 08:48:34 |
| 9 | we will get into many documents that you produced | 08:48:37 |
| 10 | on behalf of your client, he's been communicating | 08:48:39 |
| 11 | extensively with the plaintiff's counsel in this | 08:48:42 |
| 12 | case, therefore, I need to know who does he | 08:48:44 |
| 13 | believe is authorized to retain counsel on behalf | 08:48:46 |
| 14 | of Compass and does he believe he has the ability | 08:48:50 |
| 15 | to speak on behalf of Compass? | 08:48:53 |
| 16 |      MR. MARCUS:  The issue of representative | 08:48:56 |
| 17 | capacity is not a subject for a discovery | 08:48:58 |
| 18 | deposition.  If you insist on using this | 08:49:01 |
| 19 | deposition for collateral matters then obviously | 08:49:05 |
| 20 | we will take that up with the Court.  It's | 08:49:10 |
| 21 | certainly -- | 08:49:13 |
| 22 | | |

| | | |
|---|---|---|
| 1 | MR. STERN:  It's not a collateral -- it's | 08:49:13 |
| 2 | not a collateral matter.  It's something that he | 08:49:13 |
| 3 | put before this Court in his motion and is | 08:49:17 |
| 4 | something that Mr. Jordan put before the Court in | 08:49:19 |
| 5 | a motion that was filed on Wednesday. | 08:49:22 |
| 6 | MR. MARCUS:  The issue of the motions | 08:49:24 |
| 7 | practice that -- | 08:49:26 |
| 8 | MR. STERN:  Please stop the speaking | 08:49:28 |
| 9 | objections.  Are you instructing him not to answer | 08:49:31 |
| 10 | the question? | 08:49:33 |
| 11 | MR. MARCUS:  No, sir.  I am just making | 08:49:33 |
| 12 | sure that the record is clear that my objections | 08:49:34 |
| 13 | pursuant to the rule which are required under Rule | 08:49:36 |
| 14 | 30 -- | 08:49:40 |
| 15 | MR. STERN:  And the rules prohibit you | 08:49:41 |
| 16 | from making speaking objections.  You can make | 08:49:43 |
| 17 | your objection and if you instruct him not to | 08:49:45 |
| 18 | answer then you instruct him not to answer, | 08:49:47 |
| 19 | otherwise, note your objection and we'll continue. | 08:49:49 |
| 20 | MR. MARCUS:  Okay.  I am making my | 08:49:53 |
| 21 | objections to the improper use of this deposition | 08:49:55 |
| 22 | for collateral matters.  If you persist in doing | 08:49:58 |

| | |
|---|---|
| 1 | that at some point in time and don't get to the | 08:50:02 |
| 2 | issue that this deposition is for, we will be | 08:50:05 |
| 3 | compelled to stop the deposition because it does | 08:50:08 |
| 4 | not appear you're interested in the discovery | 08:50:10 |
| 5 | matters that presumably cause us to be here. | 08:50:12 |
| 6 | MR. STERN:  No, this is a precursor to | 08:50:15 |
| 7 | addressing those issues so thank you. | 08:50:18 |
| 8 | BY MR. STERN: | 08:50:20 |
| 9 | Q  Mr. White, who then has the ability to | 08:50:22 |
| 10 | retain counsel on behalf of Compass Marketing? | 08:50:24 |
| 11 | MR. JORDAN:  Objection, asked and | 08:50:28 |
| 12 | answered. | 08:50:30 |
| 13 | MR. MARCUS:  Calls for a legal conclusion. | 08:50:30 |
| 14 | Answer if you're able. | 08:50:31 |
| 15 | A  I think that's a complicated question | 08:50:33 |
| 16 | based on the status of Compass Marketing right now | 08:50:36 |
| 17 | so I do not know the answer. | 08:50:40 |
| 18 | MR. STERN:  We will circle back to that in | 08:50:43 |
| 19 | a moment.  Now, I want to turn to what will be | 08:50:44 |
| 20 | Exhibit 2, Mr. Boshea's Answers to the First Set | 08:50:54 |
| 21 | of Interrogatories.  I think these are the ones | 08:50:58 |
| 22 | that were served on August 19th. | 08:51:03 |

| | | |
|---|---|---|
| 1 | MR. JORDAN:  Is that the amended answers | 08:51:08 |
| 2 | or the original answers? | 08:51:10 |
| 3 | MR. STERN:  These are the original | 08:51:11 |
| 4 | answers. | 08:51:13 |
| 5 | MR. JORDAN:  Okay. | 08:51:14 |
| 6 | (D. White Deposition Exhibit 2 was marked | 08:51:14 |
| 7 | for identification and attached to the | 08:51:14 |
| 8 | transcript.) | 08:51:31 |
| 9 | BY MR. STERN: | 08:51:31 |
| 10 | Q  Mr. White, have you seen these Answers to | 08:51:35 |
| 11 | Interrogatories before? | 08:51:38 |
| 12 | A  I do not know. | 08:51:40 |
| 13 | Q  Okay.  We can address that later on when | 08:51:44 |
| 14 | we get to some of the e-mails you produced. | 08:51:47 |
| 15 | I want to turn your attention to answer to | 08:51:51 |
| 16 | Interrogatory Number 5, specifically the last -- | 08:51:55 |
| 17 | the last line of that answer.  It says "Daniel | 08:52:09 |
| 18 | White reminded" -- | 08:52:12 |
| 19 | MR. JORDAN:  Stephen, if you're going to | 08:52:15 |
| 20 | ask a question about an interrogatory could you at | 08:52:17 |
| 21 | least give us a chance to read it? | 08:52:20 |
| 22 | | |

1        MR. STERN:  Okay, I'm going to an answer                    08:52:22

2   and I'm asking him whether --                                   08:52:24

3        MR. JORDAN:  No, I'm not -- I don't want                    08:52:25

4   to go to the answer.  I want to read the                        08:52:26

5   interrogatory to have context.                                  08:52:28

6        MR. STERN:  You can read it as I'm asking                   08:52:30

7   my question.  Please stop --                                    08:52:32

8        MR. JORDAN:  No, I can't.  I can't.  You                    08:52:33

9   need to slow down.  You can't ask the witness or                08:52:34

10  me to have any context --                                       08:52:37

11       MR. STERN:  You don't know what my                          08:52:40

12  question is.  Stop interfering, please.                         08:52:42

13       MR. JORDAN:  I'm not interfering.                           08:52:42

14       MR. STERN:  You are.                                        08:52:44

15       MR. JORDAN:  I'm just not going to allow                    08:52:45

16  you to just power over and change the way that                  08:52:47

17  depositions are handled.                                        08:52:49

18       MR. STERN:  You don't know what my                          08:52:50

19  question is yet.  Let me ask my question.                       08:52:51

20  BY MR. STERN:                                                   08:52:51

21    Q  There's a statement there at the end that                  08:52:51

22  says "Daniel White reminded that David Boshea has               08:52:54

| | | |
|---|---|---|
| 1 | the severance agreement and noted Compass | 08:52:56 |
| 2 | Marketing's obligations." | 08:52:59 |
| 3 | Mr. White, is that a true statement? | 08:52:59 |
| 4 | MR. JORDAN:  All right, can I read the | 08:53:02 |
| 5 | interrogatory question now? | 08:53:03 |
| 6 | MR. STERN:  You can read it as I'm asking | 08:53:04 |
| 7 | questions. | 08:53:06 |
| 8 | MR. JORDAN:  No, because I don't know | 08:53:07 |
| 9 | whether I can object until I read the | 08:53:08 |
| 10 | interrogatory. | 08:53:12 |
| 11 | MR. STERN:  It's not your basis to object. | 08:53:12 |
| 12 | You're not representing Daniel White. | 08:53:15 |
| 13 | MR. JORDAN:  I am a party's -- I'm the | 08:53:17 |
| 14 | counsel for a party.  It's absolutely my basis to | 08:53:18 |
| 15 | object.  I don't know about you but I've been to | 08:53:21 |
| 16 | depositions before. | 08:53:23 |
| 17 | MR. STERN:  You can't wait for me -- I | 08:53:24 |
| 18 | can't sit here and wait for you to read through | 08:53:28 |
| 19 | these questions to decide whether or not you're | 08:53:31 |
| 20 | going to make an objection. | 08:53:33 |
| 21 | MR. JORDAN:  Well, guess what?  You're | 08:53:34 |
| 22 | going to have to because that's the proper | 08:53:35 |

1    procedure.                                          08:53:37

2           MR. STERN:  If the statement in your         08:53:45

3    answer is correct -- I'm asking Mr. White whether   08:53:45

4    it's true.                                          08:53:45

5           MR. JORDAN:  That's the proper procedure     08:53:45

6    for running a deposition, Stephen.                  08:53:45

7           MR. STERN:  This is my deposition.  I'm      08:53:45

8    asking a simple question.                           08:53:46

9    BY MR. STERN:                                       08:53:46

10      Q  Mr. White, the answer -- the last line in     08:53:47

11   the Answer to Interrogatory says "Daniel White      08:53:52

12   reminded that David Boshea has the severance        08:53:54

13   agreement and noted Compass Marketing's             08:53:56

14   obligations."                                       08:53:59

15          Is that a true statement?                    08:53:59

16          MR. MARCUS:  Can you tell us when this       08:54:01

17   event took place so that we actually have some      08:54:02

18   context for this statement?                         08:54:05

19          MR. STERN:  It's talking about               08:54:06

20   communications between Mr. Boshea and Mr. White.    08:54:07

21          MR. MARCUS:  The question again, sir, is     08:54:11

22   when did this supposedly take place?                08:54:13

| | | |
|---|---|---|
| 1 | MR. STERN:  That's not my question.  I'm | 08:54:15 |
| 2 | asking whether or not -- if he needs a qualifying | 08:54:17 |
| 3 | question then let him do it.  You're not | 08:54:20 |
| 4 | testifying. | 08:54:23 |
| 5 | Do you want me to question you, | 08:54:23 |
| 6 | Mr. Marcus? | 08:54:26 |
| 7 | MR. MARCUS:  The question, sir, has to be | 08:54:26 |
| 8 | a fair question.  There is no context for the | 08:54:28 |
| 9 | time.  There is no indication of when, where or | 08:54:31 |
| 10 | how -- | 08:54:34 |
| 11 | MR. STERN:  Stop with the speaking | 08:54:35 |
| 12 | objections.  Stop with the speaking objections. | 08:54:36 |
| 13 | You know that's not appropriate. | 08:54:38 |
| 14 | MR. JORDAN:  Stephen, that's not a | 08:54:40 |
| 15 | speaking objection. | 08:54:41 |
| 16 | MR. STERN:  It is.  He can note his | 08:54:43 |
| 17 | objection.  It's called form.  Note it and move | 08:54:44 |
| 18 | on. | 08:54:47 |
| 19 | MR. JORDAN:  No, form is not a proper | 08:54:48 |
| 20 | objection.  Reference to the -- reference to the | 08:54:49 |
| 21 | Federal Rules of Evidence is a proper objection. | 08:54:54 |
| 22 | | |

1      MR. STERN:  I see what the plan is here,                08:54:56

2  how each of you are going to talk as much as you           08:54:57

3  can during the deposition to try to run out the            08:54:59

4  hours and that's not going to work.  We will make          08:55:00

5  sure the Court is well aware of that and it's not          08:55:02

6  going to fly.                                              08:55:05

7      MR. MARCUS:  I object to you asking                    08:55:08

8  questions about something that has no time and no          08:55:10

9  context, asking the witness to respond to somebody         08:55:13

10 else's Answers to Interrogatories as --                    08:55:18

11     MR. STERN:  I'm asking whether it's a true             08:55:21

12 statement.  Did he remind David Boshea about the           08:55:22

13 severance agreement?  It's a simple question.              08:55:27

14 This isn't complicated.  The answer is yes or no.          08:55:31

15 Is it true or false?                                       08:55:33

16 BY MR. STERN:                                              08:55:33

17    Q  Mr. White, please answer the question.               08:55:34

18     MR. MARCUS:  Objection.  Answer.                       08:55:36

19    A  Let me read the answer, please.                      08:55:39

20     (Pause in the proceedings.)                            08:55:57

21     I do not remember if I'm the one who                   08:56:05

22 reminded him of that or not.                               08:56:07

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 08:56:09 |
| 2 | Q  So you don't know whether it's true or | 08:56:09 |
| 3 | false? | 08:56:11 |
| 4 | A  That's not what I said.  I said I do not | 08:56:12 |
| 5 | remember if I'm the one who reminded him of that | 08:56:17 |
| 6 | or not. | 08:56:20 |
| 7 | Q  Well, it doesn't say that Daniel White is | 08:56:20 |
| 8 | the one person who reminded David Boshea.  It's | 08:56:23 |
| 9 | asking -- the statement says Daniel White reminded | 08:56:26 |
| 10 | David Boshea. | 08:56:28 |
| 11 | MR. MARCUS:  Asked and answered.  He's | 08:56:31 |
| 12 | answered the question. | 08:56:32 |
| 13 | BY MR. STERN: | 08:56:34 |
| 14 | Q  Did you remind him about the severance | 08:56:34 |
| 15 | agreement, yes or no? | 08:56:38 |
| 16 | MR. MARCUS:  Answer again. | 08:56:39 |
| 17 | A  I do not remember. | 08:56:40 |
| 18 | BY MR. STERN: | 08:56:44 |
| 19 | Q  Scrolling down to Answer to Interrogatory | 08:56:45 |
| 20 | Number 6, Mr. Boshea testified under oath that | 08:56:50 |
| 21 | "Daniel White and John White flew to Chicago to | 08:56:52 |
| 22 | meet David Boshea to sell him on Compass Marketing | 08:56:55 |

1    and the opportunities Compass Marketing                    08:56:59

2    presented."                                                08:57:02

3         Is that a true statement?                             08:57:02

4    A  Let me read the answer, sir.                            08:57:04

5    Q  I just read it for you.                                 08:57:07

6         MR. MARCUS:  Okay, you reading it is not              08:57:09

7    the same as him looking at it.  If you want him to         08:57:11

8    answer questions about it you will give him an             08:57:14

9    opportunity to read it.                                    08:57:17

10        (Pause in the proceedings.)                           08:57:33

11   A  Would you ask me the question again, sir?               08:57:39

12   BY MR. STERN:                                              08:57:41

13   Q  Is that a true statement, that Daniel                   08:57:41

14   White and John White flew to Chicago to meet David         08:57:44

15   Boshea to sell him on Compass Marketing and the            08:57:46

16   opportunities Compass Marketing presented?                 08:57:49

17   A  It was one of the reasons I went to                     08:57:51

18   Chicago with John and met with David.                      08:57:54

19   Q  What happened during those conversations               08:57:57

20   when you and John flew to Chicago to meet with             08:57:59

21   David Boshea?                                              08:58:03

22   A  I don't remember the exact conversations               08:58:04

```
1    but it would make sense that --                          08:58:06

2         MR. MARCUS:  Don't guess.                           08:58:10

3       A   Okay.  I don't remember the conversations.        08:58:11

4    BY MR. STERN:                                            08:58:13

5       Q   Do you remember discussing any of the             08:58:14

6    substance of an employment offer with Mr. Boshea        08:58:15

7    during that meeting?                                     08:58:19

8       A   I don't remember the details of an                08:58:20

9    employment offer.                                        08:58:23

10      Q   What do you remember from that                    08:58:26

11   conversation?                                            08:58:27

12      A   I remember talking to David about how much        08:58:28

13   he could help Compass Marketing.                         08:58:36

14      Q   Anything else?                                     08:58:41

15      A   I don't remember ever speaking about any          08:58:41

16   particular numbers or anything like that.                08:58:46

17      Q   Do you remember speaking about any                08:58:48

18   severance terms?                                         08:58:51

19      A   I do not remember anything like that.             08:58:52

20      Q   Do you remember having telephone                  08:58:55

21   conversations with Mr. Boshea either before or          08:58:59

22   after that meeting about employment with Compass        08:59:02
```

1   Marketing?                                            08:59:10

2        MR. JORDAN:  Objection to the limitation         08:59:10

3   as -- the lack of limitation as to time.             08:59:12

4     A  Mr. Stern, are you asking me if I've had        08:59:20

5   those conversations in my life or before he was      08:59:24

6   hired by Compass?                                     08:59:27

7        MR. STERN:  Before he was hired.                 08:59:28

8     A  I had numerous conversations with David         08:59:31

9   about coming on board with Compass Marketing          08:59:36

10  before he was hired.                                  08:59:37

11  BY MR. STERN:                                         08:59:38

12    Q  And what did you discuss with him during        08:59:38

13  those phone conversations?                            08:59:40

14    A  They weren't all phone conversations.           08:59:41

15    Q  So you flew out to Chicago more than once       08:59:44

16  to meet with him about employment?                    08:59:48

17    A  No, sir.  I've known David for 30 years         08:59:49

18  and we talked about David coming on board with        08:59:53

19  Compass before we even started the company.           08:59:55

20    Q  When you were having these conversations        08:59:59

21  with Mr. Boshea -- and when was Mr. Boshea hired      09:00:02

22  by Compass Marketing?                                 09:00:05

| | | |
|---|---|---|
| 1 | MR. MARCUS:  Would you figure out which | 09:00:07 |
| 2 | question you want him to answer, please? | 09:00:09 |
| 3 | BY MR. STERN: | 09:00:11 |
| 4 | Q  When was Mr. Boshea hired by Compass | 09:00:12 |
| 5 | Marketing? | 09:00:14 |
| 6 | A  I do not remember the date or remember the | 09:00:14 |
| 7 | time frame. | 09:00:18 |
| 8 | Q  In that time frame when you were having | 09:00:18 |
| 9 | those conversations with Mr. Boshea to come on | 09:00:20 |
| 10 | board as an employee of Compass Marketing, what | 09:00:23 |
| 11 | was your role for Compass Marketing? | 09:00:26 |
| 12 | MR. MARCUS:  Objection.  Answer please. | 09:00:30 |
| 13 | A  I was an owner of Compass Marketing.  I | 09:00:31 |
| 14 | was a director of Compass Marketing.  I was an | 09:00:35 |
| 15 | employee of Compass Marketing. | 09:00:38 |
| 16 | BY MR. STERN: | 09:00:40 |
| 17 | Q  What was your title as an employee of | 09:00:40 |
| 18 | Compass Marketing? | 09:00:45 |
| 19 | MR. MARCUS:  At what point in time, sir? | 09:00:47 |
| 20 | MR. STERN:  At the time he's having these | 09:00:49 |
| 21 | discussions with David Boshea to become an | 09:00:52 |
| 22 | employee. | 09:00:55 |

1    A    I probably talked to David a number of                09:00:55

2  times over the ten years before he came on board            09:00:58

3  with Compass Marketing.                                      09:01:03

4  BY MR. STERN:                                                09:01:04

5    Q    Okay.  At the time that you flew to                   09:01:04

6  Chicago with John and met with Mr. Boshea.                   09:01:07

7        MR. MARCUS:  What?                                     09:01:09

8  BY MR. STERN:                                                09:01:10

9    Q    What was your job title?                              09:01:11

10    A    I don't remember the exact dates that I              09:01:12

11  flew to Chicago.  It's probably 20 years ago.  I           09:01:15

12  don't remember (inaudible) --                               09:01:21

13        MR. MARCUS:  Please don't interrupt him.              09:01:21

14  BY MR. STERN:                                                09:01:27

15    Q    I'm sorry, I couldn't hear you.  Go ahead.          09:01:27

16    A    It's probably 20 years ago the trip that            09:01:29

17  I'm remembering that we went to Chicago on behalf           09:01:31

18  of Advil and we met with David and one of the               09:01:34

19  topics that we discussed was him coming on board            09:01:38

20  with Compass.  It was a discussion we had on more           09:01:41

21  than one occasion in the ten years between the              09:01:46

22  time he helped us start Compass and the time that           09:01:48

| | | |
|---|---|---|
| 1 | he came on board with Compass. | 09:01:52 |
| 2 | Q   What was your job title at that time? | 09:01:54 |
| 3 | A   I do not remember having one. | 09:01:58 |
| 4 | Q   How many hours a week approximately did | 09:02:01 |
| 5 | you work for Compass? | 09:02:03 |
| 6 | MR. MARCUS:  At what point in time, sir? | 09:02:06 |
| 7 | MR. STERN:  We're talking about the same | 09:02:08 |
| 8 | time frame.  I haven't changed the time frame. | 09:02:10 |
| 9 | A   I don't remember the exact hours that I | 09:02:13 |
| 10 | worked.  It was a lot. | 09:02:16 |
| 11 | BY MR. STERN: | 09:02:19 |
| 12 | Q   And this was while you were also a | 09:02:19 |
| 13 | full-time employee for the State's Attorney's | 09:02:21 |
| 14 | Office? | 09:02:24 |
| 15 | A   That's correct. | 09:02:24 |
| 16 | Q   So when did you perform your duties for | 09:02:26 |
| 17 | Compass Marketing if you were working full-time | 09:02:30 |
| 18 | for the State's Attorney's Office? | 09:02:32 |
| 19 | MR. MARCUS:  Objection. | 09:02:34 |
| 20 | MR. JORDAN:  Objection to relevance. | 09:02:35 |
| 21 | BY MR. STERN: | 09:02:41 |
| 22 | Q   Mr. White? | 09:02:43 |

| | | |
|---|---|---|
| 1 | MR. MARCUS:  What, if anything, does this | 09:02:44 |
| 2 | have to do with the discovery in this case? | 09:02:45 |
| 3 | BY MR. STERN: | 09:02:48 |
| 4 | Q  Mr. White, please answer the question. | 09:02:49 |
| 5 | A  Would you ask the question again, sir? | 09:02:53 |
| 6 | Q  When did you perform your job duties for | 09:02:56 |
| 7 | Compass Marketing if you were working full-time | 09:02:58 |
| 8 | for the State's Attorney's Office at that time? | 09:03:00 |
| 9 | MR. MARCUS:  Objection.  Again, this has | 09:03:03 |
| 10 | nothing to do with the claims that have been made. | 09:03:07 |
| 11 | Use your time as you wish, sir. | 09:03:11 |
| 12 | Go ahead.  Answer if you can. | 09:03:15 |
| 13 | A  I worked for Compass Marketing for | 09:03:17 |
| 14 | 25 years.  Some of that time I did not work at the | 09:03:21 |
| 15 | State's Attorney's Office.  Some of that time I | 09:03:24 |
| 16 | did.  I worked on Compass when I wasn't working at | 09:03:26 |
| 17 | the State's Attorney's Office. | 09:03:31 |
| 18 | BY MR. STERN: | 09:03:33 |
| 19 | Q  I thought earlier you had said you had | 09:03:33 |
| 20 | been employed by the State's Attorney's Office for | 09:03:35 |
| 21 | 20 years? | 09:03:37 |
| 22 | A  And I've been employed by Compass for 25. | 09:03:38 |

1    Q  So when during the past 20 years were you          09:03:41

2  not employed by the State's Attorney's Office?         09:03:45

3    A  There's been no time in the last 20 years         09:03:47

4  that I've not been employed by the State's            09:03:50

5  Attorney's Office but I believe that my trip to       09:03:54

6  Chicago that you're talking about -- I don't have     09:03:55

7  a perfect recollection but I think that was before    09:03:57

8  I began at the State's Attorney's Office but I'm       09:04:00

9  not sure.                                             09:04:05

10   Q  Well, doing the math you've been at the          09:04:08

11  State's Attorney's Office for 20 years.  That         09:04:10

12  means you started working there in 2001?             09:04:13

13   A  Well, I didn't start -- I started                09:04:17

14  part-time and then I became full-time in 2002.       09:04:20

15   Q  And the meeting that you were having when        09:04:26

16  you flew out to Chicago, you talked about some        09:04:31

17  particular deal.  I think it -- was it Advil?  I      09:04:34

18  couldn't hear the name of the product you were        09:04:37

19  talking about.                                        09:04:39

20   A  I think that --                                  09:04:40

21   MR. JORDAN:  Objection to relevance to              09:04:42

22  this lawsuit.                                         09:04:44

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 09:04:47 |
| 2 |    Q  Go ahead, Mr. White. | 09:04:48 |
| 3 |    A  I think that is one of the products we | 09:04:50 |
| 4 | talked about was Advil.  I think that was the | 09:04:53 |
| 5 | primary client of ours that we were working for | 09:04:55 |
| 6 | that trip.  It probably wasn't the only one. | 09:05:00 |
| 7 |    MR. STERN:  I want to turn to Mr. Boshea's | 09:05:11 |
| 8 | Supplemental Answers to Interrogatories.  This | 09:05:14 |
| 9 | will be Exhibit 3. | 09:05:18 |
| 10 |    (D. White Deposition Exhibit 3 was marked | 09:05:18 |
| 11 | for identification and attached to the | 09:05:18 |
| 12 | transcript.) | 09:05:58 |
| 13 |    MR. MARCUS:  Is the plan to show us this | 09:05:58 |
| 14 | or send it to us? | 09:06:01 |
| 15 |    MR. STERN:  Has it been sent yet? | 09:06:03 |
| 16 |    MS. YEUNG:  Yes, I'm doing the sending as | 09:06:06 |
| 17 | we speak. | 09:06:09 |
| 18 | BY MR. STERN: | 09:06:10 |
| 19 |    Q  I'm going to ask a question before getting | 09:06:10 |
| 20 | into some of the Answers to Interrogatories. | 09:06:15 |
| 21 |    Mr. White, were you present for any | 09:06:16 |
| 22 | meeting where Mr. -- where an employment agreement | 09:06:20 |

1    was signed by Mr. Boshea or your brother, John          09:06:24

2    White?                                                   09:06:30

3        A  I do not think so.                                09:06:30

4        Q  Is it you're not sure?                            09:06:34

5        A  I do not think that I was present for any         09:06:40

6    meeting where people signed an employment contract       09:06:43

7    for David Boshea.                                        09:06:47

8        Q  I'm trying to understand when you say "I          09:06:48

9    do not think."  I mean that sounds like you're           09:06:50

10   uncertain.                                               09:06:52

11       Am I misunderstanding your answer?                   09:06:52

12       MR. MARCUS:  Objection to the form of the            09:06:55

13   question.                                                09:06:56

14       A  I don't know how else to answer that.  I          09:06:59

15   do not remember being present for anything like          09:07:02

16   that.                                                    09:07:04

17   BY MR. STERN:                                            09:07:05

18       Q  Okay.  Do you remember attending a board          09:07:08

19   meeting on July 17, 2015?                                09:07:13

20       MR. JORDAN:  Objection to relevance to               09:07:18

21   this lawsuit.                                            09:07:21

22

| | | |
|---|---|---|
| 1 | MR. STERN:  This is in your Answers to | 09:07:22 |
| 2 | Interrogatories, Mr. Jordan. | 09:07:23 |
| 3 | MR. JORDAN:  That's fine.  I can only | 09:07:25 |
| 4 | respond to your interrogatories.  That doesn't | 09:07:26 |
| 5 | mean they're relevant to the lawsuit. | 09:07:29 |
| 6 | BY MR. STERN: | 09:07:32 |
| 7 | Q  Mr. White? | 09:07:32 |
| 8 | A  Can you ask me the question again, sir? | 09:07:33 |
| 9 | Q  Do you remember attending a Compass | 09:07:37 |
| 10 | Marketing board meeting on July 17, 2015? | 09:07:39 |
| 11 | A  No, sir. | 09:07:42 |
| 12 | Q  I'm sorry? | 09:07:43 |
| 13 | A  No, sir. | 09:07:44 |
| 14 | Q  Do you remember at some point during any | 09:07:53 |
| 15 | board meeting where your brother, John White said | 09:07:57 |
| 16 | to you that he may be doing some jail time? | 09:08:03 |
| 17 | MR. MARCUS:  At any point in time in the | 09:08:11 |
| 18 | history of the world? | 09:08:13 |
| 19 | MR. STERN:  I said during any board | 09:08:14 |
| 20 | meeting for Compass Marketing. | 09:08:16 |
| 21 | MR. MARCUS:  I'm sorry, who made the | 09:08:23 |
| 22 | statement? | 09:08:25 |

| | |
|---|---|
| 1 | MR. STERN:  I'm asking whether or not he | 09:08:25 |
| 2 | recalls his brother making a statement to that | 09:08:27 |
| 3 | effect.  This is in the Answers to | 09:08:30 |
| 4 | Interrogatories, Number 5. | 09:08:33 |
| 5 | A  Can I read the answer? | 09:08:33 |
| 6 | MR. STERN:  I'm sorry, Number 3. | 09:08:36 |
| 7 | MR. MARCUS:  Which one should we be | 09:08:38 |
| 8 | looking at? | 09:08:41 |
| 9 | MR. STERN:  The supplemental one.  It's on | 09:08:42 |
| 10 | page six. | 09:08:47 |
| 11 | MR. MARCUS:  Okay, thank you. | 09:08:49 |
| 12 | MR. JORDAN:  I believe you're -- I object | 09:08:50 |
| 13 | to you misstating the answer to the interrogatory. | 09:08:51 |
| 14 | MR. MARCUS:  And I object too.  According | 09:09:21 |
| 15 | to the answer to interrogatory the statement was | 09:09:26 |
| 16 | made by it looks like you, Mr. Stern, as opposed | 09:09:27 |
| 17 | to John White. | 09:09:29 |
| 18 | MR. STERN:  Fair enough. | 09:09:30 |
| 19 | MR. MARCUS:  Apparently that's not the | 09:09:32 |
| 20 | case. | 09:09:35 |
| 21 | BY MR. STERN: | 09:09:36 |
| 22 | Q  So Mr. White, is it true on July 17, 2015 | 09:09:37 |

| | | |
|---|---|---|
| 1 | that I informed you that John White said he would | 09:09:41 |
| 2 | be doing some jail time for securities violations? | 09:09:44 |
| 3 | A  That you, Mr. Stern advised me that? | 09:09:50 |
| 4 | Q  Yes. | 09:09:53 |
| 5 | A  That would not be true.  I didn't know you | 09:09:53 |
| 6 | in 2015. | 09:09:59 |
| 7 | MR. STERN:  I'm going to show you what I | 09:10:26 |
| 8 | think is Exhibit 4.  It's Bates labeled DJW 000093 | 09:10:29 |
| 9 | through 94. | 09:10:35 |
| 10 | (D. White Deposition Exhibit 4 was marked | 09:10:35 |
| 11 | for identification and attached to the | 09:10:35 |
| 12 | transcript.) | 09:10:55 |
| 13 | BY MR. STERN: | 09:10:55 |
| 14 | Q  Do you recognize this document as one of | 09:10:56 |
| 15 | the documents you produced in the response to the | 09:10:59 |
| 16 | subpoena? | 09:11:01 |
| 17 | MR. MARCUS:  Once we get it we'll probably | 09:11:05 |
| 18 | be able to take a look at it. | 09:11:07 |
| 19 | Thank you.  We've received it. | 09:11:22 |
| 20 | BY MR. STERN: | 09:11:46 |
| 21 | Q  The first e-mail in the string is from you | 09:11:46 |
| 22 | to Mr. Tom Gagliardo dated January 15, 2021 at | 09:11:48 |

| | | |
|---|---|---|
| 1 | 8:44 p.m., do you see that? | 09:11:56 |
| 2 | MR. MARCUS:  When you say "the first" are | 09:11:57 |
| 3 | you talking about the bottom? | 09:11:59 |
| 4 | MR. STERN:  The original e-mail in the | 09:12:01 |
| 5 | string. | 09:12:02 |
| 6 | MR. MARCUS:  Okay.  Well, we were looking | 09:12:03 |
| 7 | at the top one. | 09:12:05 |
| 8 | BY MR. STERN: | 09:12:10 |
| 9 | Q  Did you send that e-mail? | 09:12:11 |
| 10 | MR. MARCUS:  Let us take a look at it, | 09:12:12 |
| 11 | please. | 09:12:14 |
| 12 | (Pause in the proceedings.) | 09:12:15 |
| 13 | A  It looks like an e-mail that I sent. | 09:12:40 |
| 14 | BY MR. STERN: | 09:12:43 |
| 15 | Q  And in that e-mail you're referring | 09:12:44 |
| 16 | Mr. Jordan, Mr. Boshea's attorney to Mr. Gagliardo | 09:12:46 |
| 17 | in connection with this lawsuit to be filed | 09:12:51 |
| 18 | against Compass Marketing, correct? | 09:12:53 |
| 19 | A  Yeah, it would sound correct. | 09:12:56 |
| 20 | Q  And it says you've referred other former | 09:13:01 |
| 21 | employees or current employees -- let me rephrase. | 09:13:05 |
| 22 | You've referred other employees of Compass | 09:13:08 |

| | | |
|---|---|---|
| 1 | Marketing to Mr. Gagliardo's law firm, correct? | 09:13:10 |
| 2 | A   Let me reread that. | 09:13:18 |
| 3 | (Pause in the proceedings.) | 09:13:18 |
| 4 | Would you ask your question again, sir, | 09:13:33 |
| 5 | I'm sorry? | 09:13:35 |
| 6 | Q   You referred other employees of Compass | 09:13:36 |
| 7 | Marketing to Mr. Gagliardo's law firm? | 09:13:42 |
| 8 | A   I do not believe so. | 09:13:44 |
| 9 | Q   Who is Annette that you referred to | 09:13:46 |
| 10 | Mr. Gagliardo's law firm? | 09:13:49 |
| 11 | A   Annette was an employee of St. Mary's | 09:13:51 |
| 12 | County Government. | 09:13:54 |
| 13 | Q   Okay.  And in your e-mail to Mr. Gagliardo | 09:13:58 |
| 14 | that you copied Mr. Jordan says "because I had | 09:14:05 |
| 15 | experience with Gilbert Law when they fairly and | 09:14:07 |
| 16 | vigorously represented employees I know against an | 09:14:12 |
| 17 | Annapolis company." | 09:14:14 |
| 18 | Did you refer those employees to | 09:14:16 |
| 19 | Mr. Gagliardo's law firm? | 09:14:18 |
| 20 | A   I did not.  I don't remember -- | 09:14:21 |
| 21 | Q   Prior to sending this e-mail did you have | 09:14:28 |
| 22 | any conversations with Mr. Jordan about this | 09:14:30 |

| | | |
|---|---|---|
| 1 | lawsuit? | 09:14:33 |
| 2 | MR. MARCUS:  Prior to the e-mail? | 09:14:35 |
| 3 | MR. STERN:  Yes. | 09:14:37 |
| 4 | MR. MARCUS:  Okay. | 09:14:38 |
| 5 | A  I do not remember but it would make sense | 09:14:40 |
| 6 | that I did based on the e-mail. | 09:14:44 |
| 7 | BY MR. STERN: | 09:14:47 |
| 8 | Q  Do you remember how many times you spoke | 09:14:47 |
| 9 | with Mr. Jordan before sending that e-mail? | 09:14:49 |
| 10 | A  I do not remember the exact number of | 09:14:52 |
| 11 | times. | 09:14:55 |
| 12 | Q  Would you say more or less than five? | 09:14:56 |
| 13 | MR. MARCUS:  Objection.  Don't guess. | 09:15:01 |
| 14 | A  I don't know the number of calls that I | 09:15:05 |
| 15 | had with Mr. Jordan. | 09:15:09 |
| 16 | BY MR. STERN: | 09:15:10 |
| 17 | Q  Did you tell David Boshea about filing | 09:15:10 |
| 18 | this lawsuit prior to sending that e-mail? | 09:15:13 |
| 19 | A  I do not remember speaking to him about | 09:15:18 |
| 20 | specifically filing a lawsuit. | 09:15:21 |
| 21 | Q  I want to go up to the first e-mail in | 09:15:24 |
| 22 | that string.  It's dated -- or I guess the most | 09:15:26 |

| | |
|---|---|
| 1 | recent e-mail in that string.  It's dated May 27, | 09:15:32 |
| 2 | 2021 at 5:05 p.m. | 09:15:36 |
| 3 |     A  I would like to read the middle one as | 09:15:39 |
| 4 | well, sir, so I can have a frame of reference. | 09:15:42 |
| 5 |         (Pause in the proceedings.) | 09:15:52 |
| 6 |         I've had a chance to read it, sir. | 09:16:27 |
| 7 |     Q  Now, the e-mail on May 27, 2021 says "I | 09:16:29 |
| 8 | noted in Pacer that" -- it's an e-mail from you to | 09:16:33 |
| 9 | Greg Jordan.  "I noted in Pacer that Compass did | 09:16:37 |
| 10 | not include an LR 103.3 disclosure with their | 09:16:39 |
| 11 | answer." | 09:16:44 |
| 12 |         Are you working collaboratively with | 09:16:45 |
| 13 | Mr. Jordan on prosecuting this lawsuit? | 09:16:47 |
| 14 |     MR. MARCUS:  Objection.  Answer please. | 09:16:51 |
| 15 |     A  I don't know what you mean collaboratively | 09:16:53 |
| 16 | but I don't think so. | 09:16:55 |
| 17 | BY MR. STERN: | 09:16:58 |
| 18 |     Q  Is there a reason why you were monitoring | 09:16:58 |
| 19 | the filings in this lawsuit about a disclosure? | 09:17:01 |
| 20 |     MR. JORDAN:  Objection, vague.  I don't | 09:17:07 |
| 21 | know what you mean about disclosure. | 09:17:11 |
| 22 | | |

| | | |
|---|---|---|
| 1 | MR. MARCUS:  Objection.  Answer please. | 09:17:14 |
| 2 | A  Yes. | 09:17:15 |
| 3 | BY MR. STERN: | 09:17:17 |
| 4 | Q  Why were you monitoring this lawsuit | 09:17:17 |
| 5 | related to the disclosures that were filed? | 09:17:21 |
| 6 | MR. MARCUS:  Objection.  Answer please. | 09:17:26 |
| 7 | A  Because I'm trying to keep track of what's | 09:17:27 |
| 8 | going on with Compass Marketing. | 09:17:30 |
| 9 | BY MR. STERN: | 09:17:32 |
| 10 | Q  Why are you trying to keep track of what's | 09:17:33 |
| 11 | going on with Compass Marketing? | 09:17:35 |
| 12 | MR. MARCUS:  Objection.  Answer please. | 09:17:37 |
| 13 | A  Because I'm an owner of Compass Marketing. | 09:17:39 |
| 14 | BY MR. STERN: | 09:17:43 |
| 15 | Q  And how much of the company do you own? | 09:17:43 |
| 16 | A  I believe that I own 25 percent, | 09:17:46 |
| 17 | Mr. Stern. | 09:17:49 |
| 18 | Q  When you say you believe that sounds to me | 09:17:51 |
| 19 | you're not sure.  Are you not sure of how much you | 09:17:55 |
| 20 | own? | 09:17:58 |
| 21 | MR. MARCUS:  Objection.  Answer please. | 09:17:59 |
| 22 | A  I believe that I own 25 percent of Compass | 09:18:01 |

| | | |
|---|---|---|
| 1 | Marketing. | 09:18:01 |
| 2 | BY MR. STERN: | 09:18:05 |
| 3 |    Q  Why do you believe you own 25 percent of | 09:18:05 |
| 4 | Compass Marketing? | 09:18:09 |
| 5 |    A  Because that's how many shares that I | 09:18:11 |
| 6 | have.  That's been my position for a long time. | 09:18:15 |
| 7 |      MR. STERN:  I'll circle back to that | 09:18:21 |
| 8 | shortly.  I would like to go to the next -- I | 09:18:25 |
| 9 | don't know what exhibit number we're up to but the | 09:18:28 |
| 10 | next one is DJW 000292. | 09:18:31 |
| 11 |      MR. JORDAN:  I think this is Exhibit 5 but | 09:18:35 |
| 12 | Heather can correct me. | 09:18:38 |
| 13 |      MR. STERN:  And it continues on to 293. | 09:18:40 |
| 14 |      (D. White Deposition Exhibit 5 was marked | 09:18:40 |
| 15 | for identification and attached to the | 09:18:40 |
| 16 | transcript.) | 09:18:40 |
| 17 | BY MR. STERN: | 09:18:52 |
| 18 |    Q  It's an e-mail string with the most recent | 09:18:52 |
| 19 | being January 12, 2021 at 2:53 p.m.  The original | 09:18:55 |
| 20 | one is December 19, 12:50 p.m. from Greg Jordan to | 09:18:59 |
| 21 | you. | 09:19:05 |
| 22 | | |

| | | |
|---|---|---|
| 1 | MR. MARCUS:  As soon as we get to look at | 09:19:05 |
| 2 | it we'll have some context as well. | 09:19:07 |
| 3 | MR. STERN:  It's on the screen. | 09:19:10 |
| 4 | MR. MARCUS:  It may be on the screen but | 09:19:11 |
| 5 | it's not the entirety. | 09:19:14 |
| 6 | Which one is it that you would like us to | 09:19:19 |
| 7 | look at, sir? | 09:19:22 |
| 8 | MR. STERN:  Let's start with the original | 09:19:22 |
| 9 | e-mail in the string. | 09:19:24 |
| 10 | MR. MARCUS:  Thank you. | 09:19:27 |
| 11 | BY MR. STERN: | 09:19:30 |
| 12 | Q  Mr. White, what was this e-mail about | 09:19:31 |
| 13 | dated December 19, 2020 at 12:50 p.m. where | 09:19:34 |
| 14 | Mr. Jordan just wrote "Confirm"? | 09:19:38 |
| 15 | A  I do not know. | 09:19:41 |
| 16 | Q  Well, the next e-mail in the string is | 09:19:42 |
| 17 | from you to Mr. Jordan on the same date | 09:19:44 |
| 18 | approximately 45 minutes later and it says "Good | 09:19:52 |
| 19 | afternoon.  Good talking with you." | 09:19:57 |
| 20 | What did you discuss with Mr. Jordan? | 09:19:59 |
| 21 | A  I do not remember. | 09:20:03 |
| 22 | Q  The next line in the e-mail says "I will | 09:20:06 |

| | | |
|---|---|---|
| 1 | send you an e-mail Monday with a few things that | 09:20:08 |
| 2 | may be of use." | 09:20:11 |
| 3 | Did you send that e-mail? | 09:20:13 |
| 4 | A   It looks like an e-mail that I sent. | 09:20:15 |
| 5 | Q   But the e-mail says "I will send you an | 09:20:18 |
| 6 | e-mail on Monday with a few things that may be of | 09:20:21 |
| 7 | use." | 09:20:24 |
| 8 | What did you plan to send Mr. Jordan that | 09:20:24 |
| 9 | would be of use? | 09:20:27 |
| 10 | A   I do not remember. | 09:20:27 |
| 11 | Q   When you're referring to things that would | 09:20:28 |
| 12 | be of use, were you referring to things that would | 09:20:32 |
| 13 | be of use in the litigation against Compass | 09:20:35 |
| 14 | Marketing? | 09:20:39 |
| 15 | MR. MARCUS:  Objection.  Answer please. | 09:20:39 |
| 16 | A   I do not remember. | 09:20:41 |
| 17 | BY MR. STERN: | 09:20:42 |
| 18 | Q   What would you be discussing -- what did | 09:20:43 |
| 19 | you discuss with Mr. -- let me rephrase the | 09:20:44 |
| 20 | question. | 09:20:47 |
| 21 | Did you discuss anything with Mr. Jordan | 09:20:48 |
| 22 | other than the potential lawsuit against Compass | 09:20:50 |

| | | |
|---|---|---|
| 1 | Marketing at that time? | 09:20:54 |
| 2 | MR. MARCUS:  Objection, misstates prior | 09:20:55 |
| 3 | testimony. | 09:20:57 |
| 4 | When is it that we're referring to, sir? | 09:20:57 |
| 5 | MR. STERN:  He's referring to a | 09:21:00 |
| 6 | conversation that he had. | 09:21:01 |
| 7 | BY MR. STERN: | 09:21:01 |
| 8 | Q  So did you discuss anything with | 09:21:03 |
| 9 | Mr. Jordan other than matters related to this | 09:21:06 |
| 10 | lawsuit? | 09:21:08 |
| 11 | MR. MARCUS:  Prior to -- | 09:21:11 |
| 12 | MR. STERN:  Please stop interfering with | 09:21:13 |
| 13 | the question.  You can note your objection if you | 09:21:16 |
| 14 | think it's vague.  No talking objections, please. | 09:21:18 |
| 15 | MR. JORDAN:  Objection.  Time frame? | 09:21:21 |
| 16 | BY MR. STERN: | 09:21:23 |
| 17 | Q  Go ahead, Mr. White. | 09:21:24 |
| 18 | MR. MARCUS:  Answer if you're able. | 09:21:26 |
| 19 | A  Mr. Stern, would you ask the question | 09:21:27 |
| 20 | again, please? | 09:21:31 |
| 21 | BY MR. STERN: | 09:21:31 |
| 22 | Q  Did you discuss anything with Mr. Jordan | 09:21:31 |

1    other than the matters related to this lawsuit          09:21:34

2    prior to its filing?          09:21:36

3        A   I do not remember doing so.          09:21:40

4        Q   Is there anything that would help you          09:21:44

5    remember?          09:21:45

6        A   I do not think so.          09:21:49

7        Q   Let's go to the top e-mail in this string          09:21:51

8    dated January 12, 2021 at 2:53 p.m.  It's from you          09:21:53

9    to Mr. Jordan.  You say "I am happy to help."          09:21:58

10       What are you referring to?          09:22:03

11       A   I assume Mr. Jordan's work.          09:22:08

12       Q   And does that mean help with respect to          09:22:11

13   the lawsuit against Compass Marketing?          09:22:13

14       A   I do not know but makes sense.          09:22:18

15       Q   It's fair to infer that you're referring          09:22:24

16   to helping with the litigation against Compass          09:22:28

17   Marketing, correct?          09:22:32

18       MR. JORDAN:  Objection to what your          09:22:32

19   reference is.  I'm not sure what relevance your          09:22:35

20   reference is.          09:22:36

21   BY MR. STERN:          09:22:37

22       Q   I couldn't hear you, Mr. White.  Please go          09:22:37

1   ahead.                                                    09:22:40

2        A   Would you ask me the question again, sir?        09:22:40

3        Q   It's fair to infer that when you're              09:22:42

4   referring to "I am happy to help" you're referring        09:22:45

5   to helping with the litigation against Compass             09:22:47

6   Marketing; is that correct?                               09:22:51

7            MR. JORDAN:   Same objection.                    09:22:51

8            MR. MARCUS:   Objection.                         09:22:52

9        A   I don't know what's fair to infer.               09:22:53

10  BY MR. STERN:                                             09:22:56

11       Q   Can you repeat the answer?                       09:22:57

12       A   I do not know what's fair for you to             09:22:58

13  infer.                                                    09:23:01

14       Q   Well, when you wrote that e-mail were you        09:23:01

15  referring to helping Mr. Jordan with the                  09:23:04

16  litigation against Compass Marketing?                     09:23:06

17           MR. MARCUS:   Objection.                         09:23:09

18       A   Mr. Stern, I was probably helping               09:23:12

19  Mr. Jordan with what he asked me for help on.            09:23:15

20  BY MR. STERN:                                             09:23:19

21       Q   What did he ask you to help on?                  09:23:19

22       A   I do not remember that specific                  09:23:21

| | | |
|---|---|---|
| 1 | conversation. | 09:23:23 |
| 2 | Q  Was it your intent to help Mr. Jordan with | 09:23:25 |
| 3 | the litigation against Compass Marketing? | 09:23:28 |
| 4 | MR. MARCUS:  Objection. | 09:23:31 |
| 5 | A  My intent to help Mr. Jordan were with the | 09:23:33 |
| 6 | things that he asked me to help. | 09:23:45 |
| 7 | BY MR. STERN: | 09:23:46 |
| 8 | Q  What did he ask you to help with? | 09:23:46 |
| 9 | A  I do not remember the specific things that | 09:23:48 |
| 10 | he asked me to help with. | 09:23:51 |
| 11 | Q  Did he ask you to help with things in | 09:23:53 |
| 12 | connection with the litigation against Compass | 09:23:56 |
| 13 | Marketing? | 09:23:58 |
| 14 | MR. MARCUS:  Objection, asked and | 09:23:58 |
| 15 | answered.  Answer it again. | 09:24:00 |
| 16 | A  He asked me for a number of things and I | 09:24:01 |
| 17 | helped him when I could. | 09:24:04 |
| 18 | BY MR. STERN: | 09:24:06 |
| 19 | Q  So what would help you remember what those | 09:24:06 |
| 20 | things were that he asked you to help with? | 09:24:08 |
| 21 | A  I do not know. | 09:24:13 |
| 22 | Q  So as you're sitting here you have no | 09:24:18 |

| | | |
|---|---|---|
| 1 | recollection as to whether or not Mr. Jordan asked | 09:24:20 |
| 2 | you to help with the litigation against Compass | 09:24:23 |
| 3 | Marketing? | 09:24:23 |
| 4 | MR. JORDAN:  Objection.  That misstates | 09:24:27 |
| 5 | his testimony. | 09:24:28 |
| 6 | A  It does.  For example, he asked me to help | 09:24:30 |
| 7 | him find local counsel so I helped him do that. | 09:24:32 |
| 8 | BY MR. STERN: | 09:24:36 |
| 9 | Q  Did you do anything else to help with the | 09:24:36 |
| 10 | litigation against Compass Marketing? | 09:24:38 |
| 11 | MR. MARCUS:  Objection to form.  Answer | 09:24:41 |
| 12 | please. | 09:24:43 |
| 13 | MR. JORDAN:  Objection, vague. | 09:24:45 |
| 14 | A  Did I do anything else?  I do not know. | 09:24:47 |
| 15 | MR. STERN:  I'm going to go to the next | 09:24:52 |
| 16 | exhibit.  It's Bates labeled DJW 000894 to 000897. | 09:24:54 |
| 17 | It's an e-mail string with the most recent being | 09:25:03 |
| 18 | February 5, 2021 at 12:19 p.m. and the original in | 09:25:07 |
| 19 | the string is dated February 4, 2021 at 3:34 p.m. | 09:25:13 |
| 20 | (D. White Deposition Exhibit 6 was marked | 09:25:13 |
| 21 | for identification and attached to the | 09:25:13 |
| 22 | transcript.) | 09:25:21 |

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 09:25:21 |
| 2 | Q  I want to direct your attention to an | 09:25:21 |
| 3 | e-mail in that string dated February 5, 2021 at | 09:25:23 |
| 4 | 10:51 a.m. | 09:25:28 |
| 5 | MR. MARCUS:  Hang on one second.  As soon | 09:25:29 |
| 6 | as we get it up. | 09:25:31 |
| 7 | Which one would you like him to look at? | 09:25:34 |
| 8 | MR. STERN:  February 5, 2021 at 10:51 a.m. | 09:25:36 |
| 9 | from Greg Jordan to Mr. Dan Binder, Tom Gagliardo | 09:25:42 |
| 10 | with a copy to David Boshea.  I'm sorry, that's -- | 09:25:46 |
| 11 | my apologies.  That is then ultimately forwarded | 09:25:52 |
| 12 | to you, Mr. White, on February 5th at 12:19 p.m., | 09:25:55 |
| 13 | do you see that? | 09:25:59 |
| 14 | MR. MARCUS:  Let's see if we can figure | 09:26:02 |
| 15 | out which one you actually want him to look at, | 09:26:03 |
| 16 | please. | 09:26:06 |
| 17 | BY MR. STERN: | 09:26:07 |
| 18 | Q  Do you see that e-mail that was forwarded | 09:26:07 |
| 19 | to you, Mr. White? | 09:26:10 |
| 20 | A  Which e-mail are you speaking about, | 09:26:12 |
| 21 | Mr. Stern? | 09:26:16 |
| 22 | Q  This e-mail thread.  It was forwarded to | 09:26:16 |

1   you on February 5, 2021 at 12:19 p.m., correct?            09:26:20

2       A  It would appear to be.                              09:26:22

3       Q  Why did Mr. Jordan communicate with you            09:26:24

4   about the registered agent in Maryland?                    09:26:27

5          MR. MARCUS:  Objection.                             09:26:31

6          MR. JORDAN:  Objection, misstates the              09:26:32

7   exhibit.                                                   09:26:34

8   BY MR. STERN:                                              09:26:35

9       Q  The e-mail below says "Dan, See the                09:26:36

10  attached for the registered agent in Maryland" and         09:26:39

11  that was forwarded to you, correct, Mr. White?            09:26:42

12      A  No, sir.                                            09:26:44

13      Q  That wasn't forwarded to you?                       09:26:46

14      A  It was not.                                         09:26:47

15      Q  So then what is this e-mail?                        09:26:48

16      A  I do not know.                                      09:26:51

17         MR. JORDAN:  Objection, vague.  I don't            09:26:53

18  know what you mean, what is this e-mail.                   09:26:54

19  BY MR. STERN:                                              09:26:56

20      Q  So you're denying that Mr. Jordan                   09:26:56

21  forwarded an e-mail -- I'm sorry, Mr. Boshea              09:26:59

22  forwarded an e-mail to you on February 5, 2021?           09:27:03

| | | |
|---|---|---|
| 1 | MR. MARCUS:  It was not your | 09:27:08 |
| 2 | representation at any point, sir, that Mr. Jordan | 09:27:09 |
| 3 | forwarded an e-mail to him I assume. | 09:27:13 |
| 4 | BY MR. STERN: | 09:27:16 |
| 5 | Q  Mr. White, go ahead and answer the | 09:27:16 |
| 6 | question. | 09:27:17 |
| 7 | A  Mr. Stern, would you ask me the question | 09:27:18 |
| 8 | again? | 09:27:20 |
| 9 | Q  Did Mr. Boshea forward this e-mail to you | 09:27:22 |
| 10 | on February 5, 2021 at 12:19 p.m.? | 09:27:24 |
| 11 | A  It would appear that he did. | 09:27:28 |
| 12 | Q  Why was he communicating with you about | 09:27:31 |
| 13 | matters related to Compass Marketing? | 09:27:33 |
| 14 | MR. MARCUS:  Objection. | 09:27:37 |
| 15 | MR. JORDAN:  Objection to asking the | 09:27:37 |
| 16 | witness to speculate regarding what Mr. David | 09:27:39 |
| 17 | Boshea thought. | 09:27:42 |
| 18 | BY MR. STERN: | 09:27:45 |
| 19 | Q  Did you have any communications with | 09:27:45 |
| 20 | Mr. Boshea about the filing of this lawsuit? | 09:27:47 |
| 21 | MR. JORDAN:  Objection, asked and | 09:27:50 |
| 22 | answered. | 09:27:55 |

1      A   I had discussions with Mr. Boshea about          09:27:55

2   this lawsuit.                                           09:27:58

3   BY MR. STERN:                                           09:28:01

4      Q   Did you respond to this e-mail dated             09:28:01

5   February 5, 2021?                                       09:28:03

6      A   I do not remember doing so.                      09:28:06

7      Q   Do you know why he asked you about is            09:28:09

8   Compass a Virginia company?                             09:28:13

9         MR. MARCUS:   Objection as to why                 09:28:15

10  Mr. Boshea did something.                               09:28:17

11  BY MR. STERN:                                           09:28:22

12     Q   Mr. White, go ahead.                             09:28:23

13     A   Are you asking me why David Boshea --            09:28:25

14     Q   Do you know why Mr. Boshea asked you about       09:28:27

15  that?                                                   09:28:31

16        MR. JORDAN:   Objection asking him about          09:28:32

17  Mr. Boshea's thoughts.  Asking the witness to          09:28:34

18  speculate.                                              09:28:37

19     A   I do not know why David sent that specific       09:28:40

20  e-mail to me if he did.                                 09:28:42

21  BY MR. STERN:                                           09:28:44

22     Q   Did you offer to help Mr. Boshea in his          09:28:45

1    lawsuit against Compass Marketing?                09:28:47

2         MR. JORDAN:  Objection, asked and            09:28:50

3    answered.                                         09:28:54

4      A  If David asked me for some help I tried to   09:28:54

5    help him.                                         09:28:57

6    BY MR. STERN:                                     09:29:06

7      Q  Do you remember what he asked you to help    09:29:06

8    with?                                             09:29:09

9      A  I do not.                                     09:29:09

10        MR. STERN:  I want to turn to a new          09:29:12

11   exhibit, DJW 000900 through 907.                  09:29:14

12        (D. White Deposition Exhibit 7 was marked    09:29:14

13   for identification and attached to the            09:29:14

14   transcript.)                                      09:29:39

15   BY MR. STERN:                                     09:29:39

16     Q  Do you recognize this e-mail?  It's an       09:29:40

17   e-mail that you -- the most recent one was dated  09:29:42

18   January 26, 2021 from you to your brother Michael 09:29:44

19   White and you were forwarding to him the e-mail   09:29:48

20   that Mr. Boshea sent to you on January 26, 2021 at 09:29:51

21   5:39 p.m., do you see that?                       09:29:57

22

| | | |
|---|---|---|
| 1 | MR. MARCUS: If you're going to ask us | 09:29:58 |
| 2 | about it you're going to have to let us to take a | 09:29:59 |
| 3 | look at what it is that you're asking questions | 09:30:02 |
| 4 | about. | 09:30:05 |
| 5 | BY MR. STERN: | 09:30:05 |
| 6 | Q Do you see those e-mails there, Mr. White? | 09:30:06 |
| 7 | A I just need a minute, Mr. Stern. | 09:30:09 |
| 8 | (Pause in the proceedings.) | 09:30:20 |
| 9 | Okay, if you'd ask me the question again, | 09:30:35 |
| 10 | please. I've had a chance to read it. | 09:30:38 |
| 11 | Q All right. The original e-mail in this | 09:30:39 |
| 12 | string is from Mr. Boshea to you, correct? | 09:30:41 |
| 13 | A It would appear to be. | 09:30:44 |
| 14 | Q And he's asking you whether or not | 09:30:46 |
| 15 | something looks correct and there's an attachment | 09:30:48 |
| 16 | to it, correct? | 09:30:51 |
| 17 | A That's what it appears. | 09:30:52 |
| 18 | Q Did you offer to help review documents for | 09:30:55 |
| 19 | Mr. Boshea in connection with this litigation | 09:30:58 |
| 20 | against Compass Marketing? | 09:31:01 |
| 21 | A I do not remember doing so. | 09:31:03 |
| 22 | Q Did you discuss offering Mr. Boshea the | 09:31:06 |

1    opportunity to review any documents?                    09:31:10

2         MR. MARCUS:  Objection to the form of the          09:31:14

3    question.                                                09:31:15

4       A  I do not remember doing so.  I remember            09:31:18

5    telling --                                               09:31:18

6    BY MR. STERN:                                            09:31:21

7       Q  Do you know why he asked you to review             09:31:21

8    this document that's attached to this e-mail?            09:31:23

9         MR. MARCUS:  Mr. Stern, we have to let the          09:31:26

10   witness complete his answer before you ask the          09:31:27

11   next question, please.  I recognize this is a           09:31:31

12   little unwieldy.                                          09:31:31

13        Finish your answer, please.                         09:31:32

14      A  I'm sorry, could you say the question              09:31:35

15   again, Mr. Stern?                                         09:31:37

16   BY MR. STERN:                                            09:31:38

17      Q  Do you know why he asked you to review the         09:31:38

18   document that's attached to this e-mail?                 09:31:40

19        MR. JORDAN:  Objection.  Asking the                 09:31:44

20   witness to speculate regarding Mr. Boshea's              09:31:45

21   thoughts.                                                 09:31:49

22        MR. STERN:  It's not speculation.  I asked          09:31:51

1    do you know why.                                    09:31:51

2    BY MR. STERN:                                       09:31:51

3        Q  Do you know why he asked?                    09:31:51

4        A  I do not know why.                           09:31:52

5        MR. JORDAN:  Same objection.  Still asking      09:31:52

6    him to speculate.                                   09:31:54

7    BY MR. STERN:                                       09:31:55

8        Q  Why did you forward the e-mail to your       09:31:56

9    brother Michael?                                    09:31:57

10       A  My brother Michael has some interest in      09:32:01

11   Compass as well.                                    09:32:03

12       Q  So if you have an interest in Compass        09:32:09

13   Marketing and your brother Michael has an interest  09:32:14

14   in Compass Marketing wouldn't it be in your         09:32:15

15   interest to defend the company against litigation?  09:32:17

16       MR. MARCUS:  Objection, form of the             09:32:22

17   question.                                           09:32:22

18       MR. JORDAN:  Objection, relevance.              09:32:22

19       A  It would be in the interest of Compass to    09:32:27

20   treat people fairly.                                09:32:29

21   BY MR. STERN:                                       09:32:32

22       Q  Do you want to see Compass Marketing held    09:32:32

| | |
|---|---|
| 1 | liable to Mr. Boshea for his claims against the | 09:32:36 |
| 2 | company? | 09:32:39 |
| 3 | MR. MARCUS:  Objection. | 09:32:40 |
| 4 | A  I want Compass Marketing to be fair to the | 09:32:42 |
| 5 | people that work for Compass Marketing. | 09:32:44 |
| 6 | BY MR. STERN: | 09:32:46 |
| 7 | Q  That's not my question. | 09:32:46 |
| 8 | Do you want to see Compass Marketing held | 09:32:48 |
| 9 | liable to Mr. Boshea for the claims he's brought | 09:32:49 |
| 10 | against the company? | 09:32:52 |
| 11 | MR. MARCUS:  Objection.  This line of | 09:32:54 |
| 12 | questions has nothing to do with the purpose of | 09:32:58 |
| 13 | this deposition.  If you're asking questions that | 09:33:00 |
| 14 | are completely outside the scope you're doing it | 09:33:04 |
| 15 | at your peril. | 09:33:08 |
| 16 | BY MR. STERN: | 09:33:10 |
| 17 | Q  Mr. White, please answer the question. | 09:33:10 |
| 18 | A  Say the question again please, Mr. Stern. | 09:33:13 |
| 19 | Q  Do you want to see Compass Marketing held | 09:33:15 |
| 20 | liable to Mr. Boshea for the claims he's brought? | 09:33:17 |
| 21 | MR. MARCUS:  Objection. | 09:33:21 |
| 22 | A  I would rather Compass Marketing make a | 09:33:23 |

| | | |
|---|---|---|
| 1 | reasonable agreement with Mr. Boshea. | 09:33:26 |
| 2 | BY MR. STERN: | 09:33:31 |
| 3 |    Q  And if Compass Marketing doesn't reach an | 09:33:33 |
| 4 | agreement with Mr. Boshea, do you want to see | 09:33:36 |
| 5 | Compass Marketing held liable to Mr. Boshea for | 09:33:39 |
| 6 | the claims that he's brought? | 09:33:42 |
| 7 |      MR. MARCUS:  Objection, asked and | 09:33:44 |
| 8 | answered.  Not a factual hypothetical situation. | 09:33:45 |
| 9 | BY MR. STERN: | 09:33:59 |
| 10 |    Q  Mr. White, please answer the question. | 09:34:00 |
| 11 |    A  I don't know the answer to if Compass | 09:34:02 |
| 12 | Marketing does not make a settlement.  I don't | 09:34:06 |
| 13 | know the answer to that. | 09:34:08 |
| 14 |    Q  Well, it's really simple.  If there's no | 09:34:09 |
| 15 | settlement do you want to see Mr. Boshea win this | 09:34:11 |
| 16 | lawsuit? | 09:34:14 |
| 17 |      MR. MARCUS:  Objection. | 09:34:15 |
| 18 |    A  I do not -- | 09:34:18 |
| 19 |      MR. MARCUS:  Speculation. | 09:34:20 |
| 20 |    A  I do not know the answer to that question, | 09:34:21 |
| 21 | Mr. Stern.  It depends on what you win. | 09:34:24 |
| 22 | | |

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 09:34:29 |
| 2 |    Q  It is a pretty simple question. | 09:34:30 |
| 3 |      What is it that you don't understand about | 09:34:33 |
| 4 | the question? | 09:34:34 |
| 5 |    A  I don't know what you mean by "win." | 09:34:34 |
| 6 |    Q  Do you want to see Compass Marketing held | 09:34:36 |
| 7 | liable to Mr. Boshea if there's no settlement | 09:34:38 |
| 8 | agreement reached? | 09:34:42 |
| 9 |      MR. MARCUS:  Objection, asked and | 09:34:43 |
| 10 | answered, hypothetical, speculation, does not call | 09:34:45 |
| 11 | for any facts.  Answer if you can. | 09:34:50 |
| 12 |    A  I want Compass Marketing to be fair to | 09:34:53 |
| 13 | David Boshea.  I don't have an answer for if | 09:34:57 |
| 14 | they're not fair to David Boshea what should | 09:35:01 |
| 15 | happen.  I don't have an answer for that. | 09:35:04 |
| 16 | BY MR. STERN: | 09:35:07 |
| 17 |    Q  Mr. -- that's not an answer.  This is do | 09:35:07 |
| 18 | you want to see Mr. Boshea prevail in this | 09:35:11 |
| 19 | litigation against Compass Marketing, yes or no? | 09:35:14 |
| 20 |      MR. MARCUS:  Objection, asked and | 09:35:18 |
| 21 | answered.  He's answered it three times.  I'm | 09:35:20 |
| 22 | going to ask you to move on. | 09:35:22 |

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 09:35:24 |
| 2 |    Q  Go ahead, Mr. White. | 09:35:25 |
| 3 |     MR. MARCUS:  Answer it again. | 09:35:27 |
| 4 |    A  I want Compass Marketing to be fair to | 09:35:28 |
| 5 | David Boshea.  There would not be a Compass | 09:35:30 |
| 6 | Marketing without David Boshea.  He worked for us | 09:35:33 |
| 7 | for 15 years.  He was our most loyal person and we | 09:35:36 |
| 8 | should be fair to him.  I do not have an answer to | 09:35:39 |
| 9 | the question of what happens if you and John are | 09:35:43 |
| 10 | not fair to him. | 09:35:46 |
| 11 | BY MR. STERN: | 09:35:48 |
| 12 |    Q  Why are you saying me and John?  Do I own | 09:35:48 |
| 13 | part of Compass Marketing? | 09:35:51 |
| 14 |    A  I think you have a financial interest in a | 09:35:54 |
| 15 | business that has -- | 09:35:56 |
| 16 |    Q  On what basis do you believe I've got a | 09:36:00 |
| 17 | financial interest in Compass Marketing? | 09:36:04 |
| 18 |     MR. MARCUS:  Objection.  Answer please. | 09:36:06 |
| 19 |    A  On the fact that you started Smart Retail | 09:36:13 |
| 20 | in Wyoming. | 09:36:19 |
| 21 | BY MR. STERN: | 09:36:20 |
| 22 |    Q  So the fact that I served as counsel to | 09:36:20 |

| | | |
|---|---|---|
| 1 | start a company named Smart Retail leads you to | 09:36:23 |
| 2 | believe I'm a part owner of Smart Retail? | 09:36:27 |
| 3 | MR. JORDAN: Objection, misstates his | 09:36:30 |
| 4 | testimony and assumes a fact not in evidence. | 09:36:32 |
| 5 | MR. MARCUS: And more than that, | 09:36:34 |
| 6 | Mr. Stern, to the extent that these questions are | 09:36:36 |
| 7 | about collateral matters, collateral matters | 09:36:39 |
| 8 | involving you and other witnesses, this has | 09:36:42 |
| 9 | absolutely nothing to do with the litigation | 09:36:46 |
| 10 | involving Mr. Boshea and -- | 09:36:49 |
| 11 | MR. STERN: Mr. Marcus, are you suggesting | 09:36:51 |
| 12 | that your client knowingly filed a document in | 09:36:53 |
| 13 | federal court raising these issues in his brief | 09:36:56 |
| 14 | without any basis for doing so or without any | 09:37:00 |
| 15 | relevance to the litigation? Is that what the | 09:37:02 |
| 16 | position is you're taking? | 09:37:04 |
| 17 | MR. MARCUS: My position is that you are | 09:37:05 |
| 18 | here taking a deposition ostensibly in furtherance | 09:37:07 |
| 19 | of the discovery that's necessary in the case that | 09:37:11 |
| 20 | was filed by Mr. Boshea. | 09:37:13 |
| 21 | MR. STERN: That's right. Mr. White's | 09:37:15 |
| 22 | answer implicated me in this so now I'm going to | 09:37:17 |

| | | |
|---|---|---|
| 1 | ask him some questions about it. | 09:37:20 |
| 2 | MR. JORDAN:  Objection to the relevance of | 09:37:21 |
| 3 | the question of the lawsuit. | 09:37:23 |
| 4 | MR. STERN:  When he answers a question I | 09:37:24 |
| 5 | then follow-up with questions based on the answers | 09:37:29 |
| 6 | he gives.  Now please stop interfering with the | 09:37:30 |
| 7 | deposition. | 09:37:33 |
| 8 | BY MR. STERN: | 09:37:33 |
| 9 | Q  Mr. White, on what basis do you conclude | 09:37:33 |
| 10 | that I have an ownership interest in Smart Retail? | 09:37:37 |
| 11 | MR. MARCUS:  So here is where we are, | 09:37:39 |
| 12 | Mr. Stern, Rule 30 (b)(3)(A).  I'm asking you, | 09:37:43 |
| 13 | sir, to terminate your line of questions that are | 09:37:45 |
| 14 | outside the scope of what the discovery in this | 09:37:48 |
| 15 | case would be.  To the extent that you are now | 09:37:51 |
| 16 | asking him questions about your relationship with | 09:37:54 |
| 17 | other companies and the company of Compass, these | 09:37:57 |
| 18 | questions are completely irrelevant to a breach of | 09:38:02 |
| 19 | contract action that was filed by Mr. Boshea. | 09:38:05 |
| 20 | These questions relate to your personal | 09:38:08 |
| 21 | situation in collateral matters and I would remind | 09:38:11 |
| 22 | you, sir, that under 30 (b)(3)(A) the questions | 09:38:14 |

| | | |
|---|---|---|
| 1 | that you put to him must be in good faith and they | 09:38:19 |
| 2 | must be related to the underlying claim.  It has | 09:38:22 |
| 3 | nothing to do with you and -- | 09:38:26 |
| 4 | MR. STERN:  Mr. Marcus, please stop | 09:38:28 |
| 5 | interfering with my deposition.  Your client was | 09:38:30 |
| 6 | the one that just implicated me in his answer to a | 09:38:32 |
| 7 | question.  I didn't ask anything about me.  He was | 09:38:35 |
| 8 | the one that brought me into the equation so I'm | 09:38:38 |
| 9 | now asking questions about his answers to the | 09:38:41 |
| 10 | questions I asked about his participation in this | 09:38:44 |
| 11 | lawsuit and whether he wants to see Mr. Boshea | 09:38:47 |
| 12 | prevail in this litigation.  I was not the one | 09:38:50 |
| 13 | that brought me up. | 09:38:52 |
| 14 | BY MR. STERN: | 09:38:52 |
| 15 | Q  Now Mr. White, please answer the question. | 09:38:54 |
| 16 | MR. JORDAN:  Objection.  That misstates | 09:38:56 |
| 17 | the witness's answer.  You absolutely brought it | 09:38:57 |
| 18 | up. | 09:39:00 |
| 19 | MR. MARCUS:  You did in fact bring it up, | 09:39:01 |
| 20 | Mr. Stern, and to represent otherwise fortunately | 09:39:03 |
| 21 | there's a record.  You asked him about what | 09:39:06 |
| 22 | interest you supposedly had.  You went down that | 09:39:08 |

1    road.  You were the one who introduced that whole          09:39:11

2    concept in this line of questioning.                       09:39:13

3         MR. STERN:  Because of his answer to a                09:39:14

4    question that I asked.  Thank you.                         09:39:15

5         MR. MARCUS:  So let's pretend -- let's                09:39:16

6    pretend that --                                            09:39:20

7         MR. STERN:  No, he doesn't get to answer a            09:39:20

8    question and then I don't get to follow-up.                09:39:22

9    That's not the way it works, Mr. Marcus, and you           09:39:23

10   know that.                                                 09:39:26

11        MR. MARCUS:  All right, so here is where              09:39:26

12   we are.  I am now asking you to move on.  I'm              09:39:28

13   asking you to limit on the grounds that I've               09:39:31

14   articulated, that I believe these lines -- the             09:39:34

15   line of questions is in bad faith.  I do                   09:39:37

16   believe --                                                 09:39:40

17        MR. STERN:  It isn't in bad faith because             09:39:40

18   he was the one that brought it up and it goes to           09:39:42

19   his credibility.  Credibility is always relevant.          09:39:45

20   Credibility is always relevant and you know that,          09:39:47

21   Mr. Marcus.                                                09:39:50

22

| | | |
|---|---|---|
| 1 | MR. MARCUS:  So here's where we're going. | 09:39:50 |
| 2 | I'm going to ask you to move on.  To the extent | 09:39:53 |
| 3 | that we need to we will file a protective order | 09:39:56 |
| 4 | and have the Court address this issue as well as | 09:39:59 |
| 5 | other issues that have come up during the course | 09:40:02 |
| 6 | of the deposition. | 09:40:04 |
| 7 | MR. STERN:  You got to file a motion you | 09:40:05 |
| 8 | got to file a motion.  You have provided extensive | 09:40:06 |
| 9 | e-mail threads between Mr. White and Mr. Jordan | 09:40:12 |
| 10 | and Mr. Boshea and Mr. White claims to be an owner | 09:40:15 |
| 11 | of the company.  All that is fair game as to why | 09:40:19 |
| 12 | he's helping a litigant against the company.  Why | 09:40:22 |
| 13 | is he communicating with a counsel for a litigant | 09:40:26 |
| 14 | against the company?  All that is relevant and | 09:40:29 |
| 15 | fair game. | 09:40:32 |
| 16 | MR. MARCUS:  That's fine. | 09:40:32 |
| 17 | MR. STERN:  If you want to take it up with | 09:40:35 |
| 18 | the Court have at it.  We'll gladly litigate that | 09:40:38 |
| 19 | with the Court and we'll see where that comes out. | 09:40:40 |
| 20 | MR. JORDAN:  Stephen, whether you own an | 09:40:42 |
| 21 | interest in Smart Retail has nothing to do with | 09:40:45 |
| 22 | what you just said. | 09:40:49 |

| | | |
|---|---|---|
| 1 | MR. STERN:  Mr. White was implicating me | 09:40:53 |
| 2 | as -- he said when you and John.  That suggests | 09:40:55 |
| 3 | that I have some role in ownership or management | 09:40:57 |
| 4 | of Compass Marketing.  I'm outside counsel and you | 09:41:00 |
| 5 | know there's a difference, Greg. | 09:41:05 |
| 6 | MR. JORDAN:  No, I'm just saying whether | 09:41:06 |
| 7 | you do or don't own an interest in Smart Retail | 09:41:08 |
| 8 | has nothing to do with your basis for conducting | 09:41:11 |
| 9 | the deposition. | 09:41:15 |
| 10 | MR. STERN:  That's right, but he was the | 09:41:16 |
| 11 | one that brought up my ownership. | 09:41:17 |
| 12 | MR. JORDAN:  But it's collateral.  You've | 09:41:21 |
| 13 | established that he did it.  I think we can move | 09:41:24 |
| 14 | on.  Whether you do or you don't is not going to | 09:41:25 |
| 15 | be determined here today nor is it of any interest | 09:41:28 |
| 16 | in the litigation on the breach of | 09:41:33 |
| 17 | contract (inaudible) -- | 09:41:35 |
| 18 | BY MR. STERN: | 09:41:35 |
| 19 | Q  Mr. White, why was Mr. Boshea sending you | 09:41:37 |
| 20 | the fee agreements with counsel? | 09:41:37 |
| 21 | MR. MARCUS:  Objection as to why | 09:41:41 |
| 22 | Mr. Boshea did something.  Asked and answered. | 09:41:43 |

| | | |
|---|---|---|
| 1 | Answer it again please, sir. | 09:41:47 |
| 2 | A  I do not know why David sent me that | 09:41:49 |
| 3 | particular e-mail. | 09:41:52 |
| 4 | BY MR. STERN: | 09:41:53 |
| 5 | Q  Did you respond to his request to review | 09:41:53 |
| 6 | it? | 09:41:56 |
| 7 | A  I do not think so. | 09:41:58 |
| 8 | Q  Did you not respond meaning verbally or in | 09:42:03 |
| 9 | writing? | 09:42:05 |
| 10 | A  I do not think I reviewed it.  Whenever he | 09:42:06 |
| 11 | asked me about his counsel I told him he should | 09:42:11 |
| 12 | get good counsel and that I thought Mr. Jordan was | 09:42:14 |
| 13 | good counsel and that I thought the person that I | 09:42:17 |
| 14 | referred him to in Maryland was good counsel and | 09:42:20 |
| 15 | that he should follow their advice. | 09:42:23 |
| 16 | Q  When you forwarded the e-mail to Michael | 09:42:27 |
| 17 | did you discuss the fee agreement with Michael? | 09:42:29 |
| 18 | A  I did not that I recall.  I don't recall | 09:42:31 |
| 19 | reviewing the fee agreement much less discussing | 09:42:36 |
| 20 | it with him. | 09:42:39 |
| 21 | MR. STERN:  I want to turn your attention | 09:42:50 |
| 22 | to a new exhibit, DJW 000922 through 925.  The | 09:42:53 |

1    first e-mail in this thread is dated December 18,          09:43:01

2    2020 at 4:23 p.m. and the most recent which is             09:43:12

3    December 22, 2020 at 1:04 p.m.                             09:43:16

4            (D. White Deposition Exhibit 8 was marked         09:43:16

5    for identification and attached to the                     09:43:16

6    transcript.)                                               09:43:29

7    BY MR. STERN:                                              09:43:29

8        Q  I want to scroll down to a particular              09:43:29

9    e-mail that you sent Mr. Boshea on December 21,            09:43:31

10   2020 at 10:12 p.m.  It says there from you to             09:43:36

11   Mr. Boshea "I think your contract is with Compass,         09:43:42

12   not Tagnetics."                                            09:43:45

13           Why were you advising Mr. Boshea about who        09:43:47

14   his contract was with?                                     09:43:50

15           MR. MARCUS:  So what we're going to do is         09:43:52

16   we're actually going to read what this document            09:43:54

17   says.  The witness is going to have a chance to do         09:43:56

18   it if you're going to question him and then he can         09:43:58

19   respond.                                                   09:44:02

20           (Pause in the proceedings.)                       09:44:28

21   BY MR. STERN:                                              09:44:29

22       Q  Do you see that e-mail, Mr. White?                 09:44:29

1        MR. MARCUS:  You'll let us finish it --          09:44:31

2    looking at it and then we'll be in a position to     09:44:33

3    respond.                                             09:44:35

4        (Pause in the proceedings.)                      09:44:48

5      A   Okay, I've had a chance to review it.          09:44:48

6    Would you ask your question again, sir?              09:44:50

7    BY MR. STERN:                                        09:44:52

8      Q   So why were you advising Mr. Boshea that       09:44:53

9    his contract was with Compass and not Tagnetics?     09:44:56

10     A   Why was I saying that?  Because that's a       09:45:04

11   true fact.  I'm missing your question.  I don't      09:45:07

12   understand your question, Mr. Stern.                 09:45:12

13     Q   Why were you giving him advice about his       09:45:12

14   contract?                                            09:45:16

15       MR. MARCUS:  Objection to the form of the        09:45:16

16   question.                                            09:45:17

17     A   Why was I -- I do not know.                    09:45:22

18   BY MR. STERN:                                        09:45:27

19     Q   Go to the e-mail before that, the one         09:45:27

20   below, December 21, 2020 at 10:46 p.m.  It's from    09:45:30

21   Mr. Boshea to you.  It says "Does this look fair     09:45:35

22   to you and normal?  What should I do?"               09:45:38

| | | |
|---|---|---|
| 1 | A  I see that. | 09:45:42 |
| 2 | Q  Were you serving as an advisor to | 09:45:44 |
| 3 | Mr. Boshea in connection with his litigation | 09:45:49 |
| 4 | against Compass Marketing? | 09:45:51 |
| 5 | MR. MARCUS:  Objection to the form. | 09:45:52 |
| 6 | Answer please. | 09:45:53 |
| 7 | A  I do not believe that I was. | 09:45:53 |
| 8 | BY MR. STERN: | 09:45:55 |
| 9 | Q  Do you know then why he was expecting you | 09:45:55 |
| 10 | to tell him what to do? | 09:45:57 |
| 11 | MR. MARCUS:  Objection as to what his | 09:45:59 |
| 12 | motivation was.  Answer please. | 09:46:02 |
| 13 | A  I do not know. | 09:46:03 |
| 14 | BY MR. STERN: | 09:46:06 |
| 15 | Q  Do you think it was appropriate for you to | 09:46:06 |
| 16 | be advising Mr. Boshea in connection with his | 09:46:08 |
| 17 | litigation against Compass Marketing in any | 09:46:10 |
| 18 | respect? | 09:46:13 |
| 19 | MR. MARCUS:  Objection. | 09:46:13 |
| 20 | A  Say the question again, Mr. Stern.  I | 09:46:17 |
| 21 | don't think I understand it. | 09:46:19 |
| 22 | | |

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 09:46:20 |
| 2 |    Q  Do you think it was appropriate for you as | 09:46:21 |
| 3 | an owner of Compass Marketing to be advising | 09:46:24 |
| 4 | Mr. Boshea about his litigation against the | 09:46:27 |
| 5 | company? | 09:46:30 |
| 6 |      MR. MARCUS:  Objection, form of the | 09:46:30 |
| 7 | question.  Answer please. | 09:46:31 |
| 8 |    A  I do not know the answer to that question. | 09:46:33 |
| 9 | I don't know what you mean by "appropriate." | 09:46:35 |
| 10 | BY MR. STERN: | 09:46:38 |
| 11 |    Q  As a business owner do you think it is a | 09:46:39 |
| 12 | good idea to advise litigants in lawsuits against | 09:46:42 |
| 13 | your company? | 09:46:45 |
| 14 |      MR. MARCUS:  Objection, calls for | 09:46:48 |
| 15 | speculation, hypothetical and his opinions. | 09:46:50 |
| 16 |    A  As a business owner it is a good idea to | 09:46:55 |
| 17 | be fair to your employees. | 09:46:59 |
| 18 | BY MR. STERN: | 09:47:01 |
| 19 |    Q  That's not my question. | 09:47:02 |
| 20 |    A  Would you say your question again then, | 09:47:04 |
| 21 | sir? | 09:47:06 |
| 22 |    Q  As a business owner is it wise for you to | 09:47:06 |

| | |
|---|---|
| 1 | be advising people who are filing lawsuits against | 09:47:10 |
| 2 | your company about those lawsuits? | 09:47:13 |
| 3 | MR. MARCUS:  Objection.  Answer the | 09:47:16 |
| 4 | question again. | 09:47:17 |
| 5 | A  As a business owner it is a good idea to | 09:47:19 |
| 6 | avoid litigation and to settle litigation and to | 09:47:23 |
| 7 | be fair. | 09:47:26 |
| 8 | Is that your question?  Is that an answer | 09:47:26 |
| 9 | to your question? | 09:47:28 |
| 10 | MR. STERN:  No. | 09:47:31 |
| 11 | A  Okay. | 09:47:31 |
| 12 | MR. MARCUS:  Well, he's answered the | 09:47:31 |
| 13 | question. | 09:47:32 |
| 14 | MR. STERN:  No, he hasn't answered the | 09:47:33 |
| 15 | question. | 09:47:34 |
| 16 | MR. MARCUS:  But he has.  You may not like | 09:47:34 |
| 17 | the answer but he has answered the question. | 09:47:36 |
| 18 | BY MR. STERN: | 09:47:38 |
| 19 | Q  And when a lawsuit is filed is it wise to | 09:47:39 |
| 20 | be giving advice to that litigant against your | 09:47:44 |
| 21 | company? | 09:47:46 |
| 22 | | |

1    MR. MARCUS:  Objection.                    09:47:47

2    MR. JORDAN:  Objection to the relevance of    09:47:48

3  this lawsuit, asked and answered.              09:47:51

4   A  I do not know the answer to your question,   09:47:55

5  Mr. Stern.  Depends on the circumstance.       09:47:57

6    MR. STERN:  Okay.  Next exhibit, DJW         09:47:59

7  000921.                                        09:48:06

8    MR. MARCUS:  Is this another exhibit          09:48:08

9  number, sir?                                   09:48:10

10    MR. STERN:  Yes, it's an e-mail from Mr.     09:48:11

11  Boshea to you, Mr. White, dated December 27, 2020  09:48:15

12  at 12:51 a.m.                                  09:48:19

13    MR. MARCUS:  All right.  This should be      09:48:25

14  Number 8; is that right?                       09:48:28

15    MR. JORDAN:  No, it should be Number 9.      09:48:30

16    MR. MARCUS:  Okay.                           09:48:33

17    (D. White Deposition Exhibit 9 was marked   09:48:33

18  for identification and attached to the         09:48:33

19  transcript.)                                   09:48:37

20  BY MR. STERN:                                  09:48:37

21   Q  Now, the e-mail starts with "Hey Dan, I    09:48:37

22  sent you joint e-mail with Greg."              09:48:39

| | | |
|---|---|---|
| 1 | Did you produce that joint e-mail that he | 09:48:42 |
| 2 | sent with Greg? | 09:48:44 |
| 3 | A  I do not remember. | 09:48:49 |
| 4 | Q  "If you can please give him a quick call | 09:48:52 |
| 5 | Sunday regarding some document he is looking for | 09:48:55 |
| 6 | from you." | 09:48:58 |
| 7 | What document did Mr. Jordan look for from | 09:48:58 |
| 8 | you? | 09:49:01 |
| 9 | A  I do not recall. | 09:49:02 |
| 10 | Q  Did you offer to provide any documents to | 09:49:04 |
| 11 | Mr. Jordan in connection with the lawsuit brought | 09:49:06 |
| 12 | by Mr. Boshea against Compass Marketing? | 09:49:09 |
| 13 | A  I do not remember any particular | 09:49:14 |
| 14 | documents.  I don't remember. | 09:49:17 |
| 15 | Q  That's not my question. | 09:49:18 |
| 16 | Did you offer to provide any documents to | 09:49:20 |
| 17 | Mr. Boshea or Mr. Jordan in connection with | 09:49:23 |
| 18 | Mr. Boshea's lawsuit against Compass Marketing? | 09:49:26 |
| 19 | A  I do not remember doing so but -- | 09:49:29 |
| 20 | Q  Do you know why Mr. Boshea would be asking | 09:49:32 |
| 21 | you to send Mr. Jordan a document? | 09:49:35 |
| 22 | MR. MARCUS:  Objection. | 09:49:39 |

| | | |
|---|---|---|
| 1 | MR. JORDAN: Objection to Mr. Boshea's | 09:49:39 |
| 2 | thought process or motivation. You're asking the | 09:49:42 |
| 3 | witness to speculate. | 09:49:47 |
| 4 | BY MR. STERN: | 09:49:50 |
| 5 | Q  Mr. White? | 09:49:51 |
| 6 | A  Would you ask me that question one more | 09:49:53 |
| 7 | time? | 09:49:56 |
| 8 | Q  Do you know why Mr. Boshea would ask you | 09:49:57 |
| 9 | to send documents to Mr. Jordan in connection with | 09:50:00 |
| 10 | Mr. Boshea's lawsuit against the company? | 09:50:03 |
| 11 | MR. JORDAN: Same objections. | 09:50:05 |
| 12 | A  I do not. | 09:50:06 |
| 13 | BY MR. STERN: | 09:50:08 |
| 14 | Q  Next sentence says "Can you please mention | 09:50:08 |
| 15 | we spoke and you feel he has from me everything he | 09:50:10 |
| 16 | needs to get the money." | 09:50:14 |
| 17 | Did you have that conversation with | 09:50:19 |
| 18 | Mr. Jordan? | 09:50:21 |
| 19 | A  I do not remember having any such | 09:50:24 |
| 20 | conversation with Mr. Jordan. | 09:50:27 |
| 21 | Q  Do you know -- what was everything | 09:50:29 |
| 22 | Mr. Boshea needed to get the money? | 09:50:39 |

| | | |
|---|---|---|
| 1 | MR. MARCUS:  Objection. | 09:50:42 |
| 2 | A  I do not know. | 09:50:45 |
| 3 | BY MR. STERN: | 09:50:47 |
| 4 | Q  Do you believe Mr. Boshea had everything | 09:50:48 |
| 5 | he needed to get the money from Compass Marketing? | 09:50:51 |
| 6 | MR. MARCUS:  Objection.  Answer please. | 09:50:54 |
| 7 | A  I do not know. | 09:50:57 |
| 8 | BY MR. STERN: | 09:51:00 |
| 9 | Q  Today -- sitting here today as of this | 09:51:01 |
| 10 | moment in time do you believe Mr. Boshea has | 09:51:05 |
| 11 | everything he needs to get the money from Compass | 09:51:09 |
| 12 | Marketing? | 09:51:13 |
| 13 | MR. MARCUS:  Objection. | 09:51:13 |
| 14 | A  I do not know. | 09:51:16 |
| 15 | BY MR. STERN: | 09:51:17 |
| 16 | Q  As of December 27, 2020 at 12:51 a.m. do | 09:51:18 |
| 17 | you know what Mr. Boshea had in connection with | 09:51:22 |
| 18 | his lawsuit to get the money from Compass | 09:51:25 |
| 19 | Marketing? | 09:51:28 |
| 20 | MR. JORDAN:  Objection, asked and | 09:51:28 |
| 21 | answered. | 09:51:33 |
| 22 | A  I do not know what David Boshea had on | 09:51:33 |

| | | |
|---|---|---|
| 1 | December 27th. | 09:51:37 |
| 2 | BY MR. STERN: | 09:51:40 |
| 3 | Q  Did you help him get any documents or | 09:51:41 |
| 4 | other information related to his lawsuit against | 09:51:43 |
| 5 | Compass Marketing? | 09:51:47 |
| 6 | MR. JORDAN:  Objection, asked and | 09:51:48 |
| 7 | answered. | 09:51:51 |
| 8 | A  I helped him find a local counsel.  I | 09:51:51 |
| 9 | helped him find a handwriting expert and I helped | 09:51:58 |
| 10 | him find an e-mail from John to me from 2007. | 09:52:04 |
| 11 | BY MR. STERN: | 09:52:11 |
| 12 | Q  Anything else? | 09:52:13 |
| 13 | A  That's what I remember as I sit here right | 09:52:13 |
| 14 | now. | 09:52:16 |
| 15 | MR. STERN:  Let's go to a new document | 09:52:17 |
| 16 | Bates labeled DJW 000913. | 09:52:19 |
| 17 | (D. White Deposition Exhibit 10 was marked | 09:52:19 |
| 18 | for identification and attached to the | 09:52:19 |
| 19 | transcript.) | 09:52:19 |
| 20 | BY MR. STERN: | 09:52:19 |
| 21 | Q  It's an e-mail from Mr. Boshea to you on | 09:52:39 |
| 22 | January 7, 2021 at 9:48 a.m.  It says "Hi Dan, | 09:52:44 |

1   Please see attached and give me your thoughts."          09:52:47

2        What was attached to this e-mail?                   09:52:50

3    A  I need to read it, sir.  I do not                    09:52:54

4   remember.                                                09:53:06

5    Q  Do you know why it wasn't produced?                  09:53:06

6        MR. JORDAN:  Objection.  It assumes that            09:53:09

7   something was attached.                                  09:53:11

8   BY MR. STERN:                                            09:53:17

9    Q  The e-mail from Mr. Boshea purports to               09:53:18

10  attach a document, correct?                              09:53:20

11   A  That's what it says, that's correct.                 09:53:24

12   Q  Did you produce that attachment?                     09:53:27

13       MR. JORDAN:  Objection.  Again, assumes              09:53:30

14  that Mr. Boshea attached a document.                     09:53:33

15  BY MR. STERN:                                            09:53:38

16   Q  Mr. White?                                           09:53:39

17   A  I do not know.                                        09:53:40

18   Q  He's asking for your thoughts and input.             09:53:42

19  Did you offer thoughts and input?                        09:53:47

20   A  I do not recall doing so.                            09:53:56

21   Q  Do you know why he asked you for your                09:53:59

22  thoughts and input?                                      09:54:01

| | | |
|---|---|---|
| 1 | MR. JORDAN:  Objection to Mr. Boshea's | 09:54:03 |
| 2 | motivation which asks the witness to speculate. | 09:54:05 |
| 3 | BY MR. STERN: | 09:54:10 |
| 4 | Q  I asked do you know why? | 09:54:10 |
| 5 | MR. JORDAN:  Same objection. | 09:54:11 |
| 6 | A  I do not know why David sent me that | 09:54:13 |
| 7 | e-mail. | 09:54:17 |
| 8 | MR. STERN:  I want to show you a new | 09:54:19 |
| 9 | exhibit Bates labeled DJW 000908 through 910. | 09:54:21 |
| 10 | (D. White Deposition Exhibit 11 was marked | 09:54:21 |
| 11 | for identification and attached to the | 09:54:21 |
| 12 | transcript.) | 09:54:21 |
| 13 | MR. STERN:  The first e-mail in this | 09:54:40 |
| 14 | string is dated January 20, 2021 at 9:47 p.m. and | 09:54:43 |
| 15 | the most recent which is January 22, 2021 at 4:00 | 09:54:49 |
| 16 | p.m. | 09:54:54 |
| 17 | MR. JORDAN:  Stephen, I haven't received | 09:55:01 |
| 18 | the exhibit yet so I only see one document, not | 09:55:03 |
| 19 | multiple pages.  Never mind.  I received it just | 09:55:06 |
| 20 | now. | 09:55:10 |
| 21 | BY MR. STERN: | 09:55:21 |
| 22 | Q  I want to take your attention to the | 09:55:21 |

1    second e-mail in the string from the top meaning          09:55:23

2    the closest to the most recent.  It's an e-mail           09:55:26

3    from Mr. Jordan to Mr. Boshea.  Subject line              09:55:30

4    Tagnetics.  It says "Take a look at the attached"         09:55:34

5    and this e-mail was forwarded from Mr. Boshea to          09:55:36

6    you.                                                      09:55:40

7         MR. MARCUS:  Okay, so we're going to need            09:55:41

8    to take a look at this and figure out what the            09:55:42

9    string is.                                                09:55:46

10        (Pause in the proceedings.)                          09:56:05

11     A  I've read the e-mail.  Would you ask your            09:56:05

12   question again, please?                                   09:56:08

13   BY MR. STERN:                                             09:56:09

14     Q  What was attached to this e-mail?                    09:56:09

15        MR. JORDAN:  Objection, assumes anything             09:56:11

16   was attached to the e-mail.  Foundation.                  09:56:13

17   BY MR. STERN:                                             09:56:21

18     Q  Mr. White?                                           09:56:22

19     A  I do not know what, if anything, was                 09:56:23

20   attached to that e-mail.                                  09:56:25

21     Q  Mr. Boshea again is asking you for your              09:56:29

22   thoughts.                                                 09:56:31

1        Did you share your thoughts with                09:56:33

2   Mr. Boshea about this e-mail?                         09:56:35

3      A  I do not remember doing so.                     09:56:39

4      Q  After it says thoughts it says "I just          09:56:44

5   asked Greg to put Tagnetics in there."                09:56:46

6        What were you discussing with Mr. Boshea         09:56:50

7   about Tagnetics?                                      09:56:52

8        MR. MARCUS:  Objection, misstates the            09:56:55

9   e-mail, assumes facts not in evidence.                09:56:56

10     A  I do not know the answer to your question,      09:57:04

11  Mr. Stern.                                            09:57:06

12  BY MR. STERN:                                         09:57:07

13     Q  The next question -- the next part of that      09:57:07

14  e-mail says "How do you think we can mix Tagnetics    09:57:08

15  in there?"                                            09:57:12

16        Did you have any discussions with               09:57:15

17  Mr. Boshea about Tagnetics?                           09:57:17

18     A  I do not remember -- regarding this             09:57:24

19  e-mail, is that what you're asking me?  Maybe I       09:57:26

20  don't understand your question.                       09:57:29

21     Q  Did you have any discussions with               09:57:30

22  Mr. Boshea about Tagnetics in connection with this    09:57:32

1    lawsuit?                                              09:57:35

2         A  I don't remember any specific ones but I'm    09:57:38

3    sure that it came up.                                 09:57:41

4         Q  Did you see a draft of the Complaint that     09:57:44

5    was filed in this lawsuit before it was filed?        09:57:46

6         A  I do not remember.                            09:57:52

7         Q  Did you offer to review the Complaint         09:57:55

8    before it was filed in this lawsuit?                  09:57:57

9         A  I do not remember.                            09:58:01

10        Q  Did you make any suggestions to Mr. Boshea    09:58:03

11   about the content of the Complaint before it was      09:58:07

12   filed in this lawsuit?                                09:58:10

13        A  I do not remember.                            09:58:12

14        Q  Is there anything that would help you         09:58:14

15   remember?                                             09:58:16

16        A  Not that I know.                              09:58:20

17        Q  Is it your contention that there was no       09:58:24

18   attachment to this e-mail?                            09:58:26

19        A  I do not know.                                09:58:28

20        Q  Is there a way that we can find out?          09:58:31

21        A  I do not know.                                09:58:35

22        Q  Do you still have this e-mail in your         09:58:37

| | | |
|---|---|---|
| 1 | inbox? | 09:58:40 |
| 2 | A  I don't know that I have it in my inbox. | 09:58:45 |
| 3 | Q  Where is this e-mail stored? | 09:58:49 |
| 4 | A  It is in my e-mail account and I would -- | 09:58:53 |
| 5 | Q  And therefore if it's in your e-mail | 09:58:57 |
| 6 | account, presumably if there's an attachment it | 09:58:59 |
| 7 | would still be there, wouldn't it? | 09:59:01 |
| 8 | MR. MARCUS:  Objection, calls for | 09:59:03 |
| 9 | speculation. | 09:59:04 |
| 10 | A  Mr. Stern, ask -- your question is if | 09:59:11 |
| 11 | there was an attachment? | 09:59:14 |
| 12 | BY MR. STERN: | 09:59:18 |
| 13 | Q  It would still be on the e-mail, correct? | 09:59:18 |
| 14 | A  I do not know. | 09:59:21 |
| 15 | Q  You don't know?  Have you altered any | 09:59:21 |
| 16 | e-mails that are in your account? | 09:59:23 |
| 17 | A  Have I altered any e-mails in my account? | 09:59:25 |
| 18 | Regarding this lawsuit, no, not that I recall. | 09:59:29 |
| 19 | Q  Have you altered any e-mails that are in | 09:59:31 |
| 20 | your -- sitting in your inbox, deleted box or sent | 09:59:34 |
| 21 | box? | 09:59:37 |
| 22 | | |

| | | |
|---|---|---|
| 1 | MR. JORDAN:  Objection to relevance. | 09:59:37 |
| 2 | MR. MARCUS:  Objection. | 09:59:42 |
| 3 | A  Could you ask that question again, sir? | 09:59:44 |
| 4 | BY MR. STERN: | 09:59:46 |
| 5 | Q  Have you altered any e-mails that are | 09:59:46 |
| 6 | sitting in your account whether it's related to | 09:59:48 |
| 7 | this lawsuit or not? | 09:59:51 |
| 8 | MR. JORDAN:  Same objection. | 09:59:56 |
| 9 | A  Does that include deleting junk mail and | 09:59:57 |
| 10 | stuff like that? | 10:00:02 |
| 11 | MR. MARCUS:  Yes, it does. | 10:00:02 |
| 12 | MR. STERN:  Altered any e-mails. | 10:00:05 |
| 13 | MR. JORDAN:  Objection to the use of the | 10:00:06 |
| 14 | word "altered."  I'm not sure what it means. | 10:00:08 |
| 15 | A  I'm not sure I understand your question, | 10:00:09 |
| 16 | Mr. Stern. | 10:00:12 |
| 17 | BY MR. STERN: | 10:00:13 |
| 18 | Q  Have you changed any e-mails that are | 10:00:13 |
| 19 | sitting in your account such as attachments? | 10:00:15 |
| 20 | MR. JORDAN:  Objection to how that's even | 10:00:22 |
| 21 | done. | 10:00:24 |
| 22 | | |

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 10:00:36 |
| 2 | Q  Mr. White, have you removed any | 10:00:37 |
| 3 | attachments from any e-mails in your account? | 10:00:39 |
| 4 | A  In my life certainly. | 10:00:42 |
| 5 | Q  Have you removed any e-mails in your | 10:00:44 |
| 6 | account that are between you and Mr. Boshea in any | 10:00:46 |
| 7 | way?  Let me rephrase the question. | 10:00:50 |
| 8 | Have you removed any attachments in your | 10:00:51 |
| 9 | e-mail account that relate to Mr. Boshea in any | 10:00:54 |
| 10 | way? | 10:00:59 |
| 11 | A  Not that I recall. | 10:00:59 |
| 12 | Q  Have you attached any documents to e-mails | 10:01:03 |
| 13 | in your account that relate to Mr. Boshea in any | 10:01:10 |
| 14 | way? | 10:01:18 |
| 15 | MR. MARCUS:  Objection.  Answer if you're | 10:01:18 |
| 16 | able. | 10:01:20 |
| 17 | A  I've sent some attachments if that's what | 10:01:20 |
| 18 | you mean. | 10:01:23 |
| 19 | BY MR. STERN: | 10:01:23 |
| 20 | Q  What attachments did you send to | 10:01:24 |
| 21 | Mr. Boshea? | 10:01:26 |
| 22 | A  I don't recall if I sent any to Mr. Boshea | 10:01:27 |

1  but I sent to Mr. Jordan a copy of an e-mail that          10:01:30

2  I got from John in 2007.                                   10:01:35

3        Is that what you're asking about?                    10:01:39

4     Q  Other than that one e-mail have you                  10:01:40

5  attached any other documents in e-mails to                 10:01:44

6  Mr. Jordan?                                                10:01:49

7     A  I do not remember.                                   10:01:52

8        MR. STERN:  I want to show you a new                 10:02:03

9  exhibit Bates labeled DJW 000041 through 42.  The          10:02:05

10 most recent e-mail in that string is dated August          10:02:23

11 27, 2021 at 12:19 p.m.                                     10:02:26

12       (D. White Deposition Exhibit 12 was marked           10:02:26

13 for identification and attached to the                     10:02:26

14 transcript.)                                               10:02:32

15 BY MR. STERN:                                              10:02:32

16    Q  The subject line of the e-mail says                  10:02:32

17 Activity in Case, the case number, Boshea v.               10:02:34

18 Compass Marketing, Inc. Counterclaim, do you see           10:02:39

19 that?                                                      10:02:42

20    A  Okay.                                                10:02:42

21    Q  The e-mail is from Mr. Jordan to you dated           10:02:46

22 August 26, 2021 at 5:14 p.m., do you see that?             10:02:50

| | | |
|---|---|---|
| 1 | A   From Mr. Jordan to me? | 10:02:56 |
| 2 | Q   Yes. | 10:02:58 |
| 3 | A   I do see that. | 10:02:59 |
| 4 | Q   Do you know why Mr. Jordan sent you notice | 10:03:01 |
| 5 | of filing of the counterclaim that Compass | 10:03:04 |
| 6 | Marketing filed in this case? | 10:03:07 |
| 7 | A   I think it says right on it but I don't | 10:03:12 |
| 8 | know why except to read what Mr. Jordan wrote. | 10:03:15 |
| 9 | Q   Did you have an understanding with | 10:03:19 |
| 10 | Mr. Jordan that he would send you filings in this | 10:03:21 |
| 11 | lawsuit? | 10:03:25 |
| 12 | A   I don't recall making any such agreement | 10:03:26 |
| 13 | with Mr. Jordan.  I think he did that on his own | 10:03:30 |
| 14 | and that's why he did that but I did not have any | 10:03:32 |
| 15 | such agreement that I remember. | 10:03:34 |
| 16 | Q   Did you express an interest in receiving | 10:03:36 |
| 17 | filings from Mr. Jordan related to this lawsuit? | 10:03:38 |
| 18 | A   I don't remember doing so. | 10:03:43 |
| 19 | Q   Did you review the counterclaim filed in | 10:03:48 |
| 20 | this lawsuit? | 10:03:51 |
| 21 | A   I did read it when it came in. | 10:03:53 |
| 22 | Q   And you offered some commentary on it, | 10:03:55 |

| | | |
|---|---|---|
| 1 | didn't you? | 10:03:58 |
| 2 | A  I need to read that part.  That does look | 10:04:00 |
| 3 | like my commentary. | 10:04:06 |
| 4 | Q  Why were you offering commentary to | 10:04:10 |
| 5 | Mr. Jordan in connection with a lawsuit that he | 10:04:13 |
| 6 | was bringing against your company? | 10:04:15 |
| 7 | MR. MARCUS:  Objection.  Answer please. | 10:04:21 |
| 8 | A  I think that Mr. Jordan -- I was trying to | 10:04:26 |
| 9 | help Mr. Jordan understand the context of the | 10:04:31 |
| 10 | counterclaim. | 10:04:34 |
| 11 | BY MR. STERN: | 10:04:35 |
| 12 | Q  So you were trying to help him in | 10:04:35 |
| 13 | connection with the lawsuit that was filed in | 10:04:37 |
| 14 | this -- against your company? | 10:04:42 |
| 15 | MR. MARCUS:  Objection, form of the | 10:04:43 |
| 16 | question.  Answer please. | 10:04:47 |
| 17 | A  I was trying to help Mr. Jordan understand | 10:04:49 |
| 18 | the context of your counterclaim. | 10:04:51 |
| 19 | BY MR. STERN: | 10:04:53 |
| 20 | Q  Did you help Mr. Jordan understand the | 10:04:54 |
| 21 | context or facts related to the claim that | 10:04:56 |
| 22 | Mr. Boshea has filed against the company? | 10:04:59 |

| | | |
|---|---|---|
| 1 | MR. MARCUS: Objection, argumentative. | 10:05:02 |
| 2 | A  I don't understand your question, | 10:05:06 |
| 3 | Mr. Stern. | 10:05:08 |
| 4 | BY MR. STERN: | 10:05:08 |
| 5 | Q  Have you offered Mr. Jordan any thoughts | 10:05:09 |
| 6 | or assistance in connection with his claim against | 10:05:11 |
| 7 | the company other than referring to local counsel | 10:05:14 |
| 8 | and identifying expert witnesses? | 10:05:18 |
| 9 | MR. MARCUS: Objection, asked and | 10:05:23 |
| 10 | answered. Answer it again, please. | 10:05:25 |
| 11 | A  I don't remember specific thoughts that | 10:05:28 |
| 12 | I've offered to Mr. Jordan. | 10:05:30 |
| 13 | BY MR. STERN: | 10:05:33 |
| 14 | Q  Is this e-mail dated August 27, 2021 at | 10:05:33 |
| 15 | 12:19 p.m. the only commentary you offered to | 10:05:37 |
| 16 | Mr. Jordan about the counterclaim filed against | 10:05:40 |
| 17 | Mr. Boshea? | 10:05:44 |
| 18 | A  I do not remember. | 10:05:45 |
| 19 | Q  Is there anything that you did to prepare | 10:05:48 |
| 20 | for this deposition today? | 10:05:49 |
| 21 | A  I met with my lawyers. | 10:05:53 |
| 22 | Q  You have more than one lawyer? | 10:05:55 |

| | | |
|---|---|---|
| 1 | A  Well -- | 10:05:57 |
| 2 | MR. MARCUS:  Ms. Patterson makes two. | 10:06:00 |
| 3 | MR. STERN:  I'm sorry? | 10:06:04 |
| 4 | MR. MARCUS:  Ms. Patterson makes two, | 10:06:04 |
| 5 | Ms. Patterson and me.  There are two of us. | 10:06:07 |
| 6 | BY MR. STERN: | 10:06:09 |
| 7 | Q  Did you review any documents in | 10:06:10 |
| 8 | preparation for this deposition today? | 10:06:11 |
| 9 | A  Not specifically. | 10:06:13 |
| 10 | Q  What does not specifically mean? | 10:06:14 |
| 11 | A  I collected them and I gave them to | 10:06:16 |
| 12 | Ms. Patterson so I reviewed them when I collected | 10:06:19 |
| 13 | them but I did not do so today. | 10:06:24 |
| 14 | Q  And how long ago did you collect those | 10:06:26 |
| 15 | documents? | 10:06:29 |
| 16 | A  Several weeks ago. | 10:06:32 |
| 17 | Q  And when you reviewed them did it help | 10:06:37 |
| 18 | refresh your recollection about the role you | 10:06:39 |
| 19 | played in connection with this lawsuit? | 10:06:41 |
| 20 | MR. MARCUS:  Objection, misstates his | 10:06:44 |
| 21 | prior testimony.  Answer please. | 10:06:46 |
| 22 | A  I don't really consider a role in the | 10:06:51 |

| | | |
|---|---|---|
| 1 | lawsuit but it helped refresh some conversations | 10:06:54 |
| 2 | that I had with Mr. Jordan and Mr. Stern -- excuse | 10:06:59 |
| 3 | me, and Mr. -- well, Mr. Stern, you and Mr. Boshea | 10:07:02 |
| 4 | about the lawsuit. | 10:07:05 |
| 5 | BY MR. STERN: | 10:07:06 |
| 6 | Q  Offering commentary about a counterclaim, | 10:07:06 |
| 7 | is that a role in the lawsuit? | 10:07:08 |
| 8 | MR. MARCUS:  Objection, argumentative. | 10:07:10 |
| 9 | Answer please. | 10:07:13 |
| 10 | A  I don't believe it is. | 10:07:14 |
| 11 | BY MR. STERN: | 10:07:16 |
| 12 | Q  Offering expert witness recommendations, | 10:07:16 |
| 13 | is that a role in the lawsuit? | 10:07:19 |
| 14 | MR. MARCUS:  Objection, argumentative. | 10:07:21 |
| 15 | Answer please. | 10:07:25 |
| 16 | A  I don't believe that it is. | 10:07:26 |
| 17 | BY MR. STERN: | 10:07:28 |
| 18 | Q  Is offering to put -- to review documents | 10:07:28 |
| 19 | play any role in the litigation? | 10:07:33 |
| 20 | MR. MARCUS:  Objection, argumentative. | 10:07:35 |
| 21 | Answer please. | 10:07:37 |
| 22 | A  I don't believe that it is. | 10:07:38 |

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 10:07:43 |
| 2 | Q Is reviewing discovery responses a role in | 10:07:43 |
| 3 | the lawsuit? | 10:07:48 |
| 4 | MR. MARCUS: Objection, argumentative. | 10:07:50 |
| 5 | Answer please. | 10:07:52 |
| 6 | A I don't believe that it is. | 10:07:54 |
| 7 | BY MR. STERN: | 10:07:56 |
| 8 | Q Is reviewing -- providing documents a role | 10:07:56 |
| 9 | in the litigation -- in this lawsuit? Let me | 10:08:03 |
| 10 | rephrase the question. | 10:08:08 |
| 11 | Is providing documents a role in this | 10:08:09 |
| 12 | litigation? | 10:08:11 |
| 13 | MR. MARCUS: Objection. Answer. | 10:08:12 |
| 14 | MR. JORDAN: Objection, vague. | 10:08:15 |
| 15 | A Mr. Stern, I don't know what you mean by | 10:08:17 |
| 16 | role in litigation. I don't believe I have a role | 10:08:20 |
| 17 | in this litigation. | 10:08:22 |
| 18 | MR. STERN: Okay. Let me show you a new | 10:08:27 |
| 19 | document, Exhibit Number -- I guess Bates labeled | 10:08:29 |
| 20 | DJW 000875, an e-mail from Mr. Boshea to you dated | 10:08:33 |
| 21 | June 16, 2021 at 3:28 p.m. | 10:08:42 |
| 22 | (D. White Deposition Exhibit 13 was marked | 10:08:42 |

|  |  |  |
|---|---|---|
| 1 | for identification and attached to the | 10:08:42 |
| 2 | transcript.) | 10:08:53 |
| 3 | BY MR. STERN: | 10:08:53 |
| 4 | Q  Do you see this e-mail? | 10:08:54 |
| 5 | A  I'm waiting for it to download.  I see the | 10:08:56 |
| 6 | e-mail. | 10:09:20 |
| 7 | Q  It's an e-mail from Mr. Boshea to you? | 10:09:21 |
| 8 | A  That's what it appears to be. | 10:09:25 |
| 9 | Q  And it says "Steven."  I don't know why it | 10:09:27 |
| 10 | says Steven but "See the attached discovery | 10:09:32 |
| 11 | requests," do you see that? | 10:09:35 |
| 12 | A  I do see that. | 10:09:37 |
| 13 | Q  Were discovery requests attached to that | 10:09:39 |
| 14 | e-mail? | 10:09:41 |
| 15 | A  I do not remember. | 10:09:42 |
| 16 | Q  And then the next line in the e-mail says | 10:09:44 |
| 17 | "Please note that the Court requested that the | 10:09:46 |
| 18 | parties set a discovery plan and discuss other | 10:09:49 |
| 19 | issues." | 10:09:52 |
| 20 | Did you discuss a discovery plan with | 10:09:52 |
| 21 | Mr. Boshea? | 10:09:55 |
| 22 | A  I do not believe that I did. | 10:09:58 |

| | | |
|---|---|---|
| 1 | Q  Do you know why he sent you an e-mail to | 10:10:00 |
| 2 | discuss a discovery plan? | 10:10:03 |
| 3 | MR. MARCUS:  Objection, misstates the | 10:10:06 |
| 4 | document. | 10:10:08 |
| 5 | A  I do not know the answer to your question. | 10:10:11 |
| 6 | BY MR. STERN: | 10:10:14 |
| 7 | Q  Did you answer this e-mail? | 10:10:14 |
| 8 | A  I don't believe that I did. | 10:10:16 |
| 9 | Q  Did you have a telephone call with | 10:10:17 |
| 10 | Mr. Boshea about this e-mail? | 10:10:20 |
| 11 | A  I don't believe that I did. | 10:10:21 |
| 12 | Q  So he sent you this e-mail out of the blue | 10:10:25 |
| 13 | without any context or expectation for you to | 10:10:28 |
| 14 | respond, is that your understanding? | 10:10:30 |
| 15 | MR. MARCUS:  Objection, form of the | 10:10:33 |
| 16 | question.  Answer please. | 10:10:35 |
| 17 | A  I do not know what his reasons or | 10:10:37 |
| 18 | expectations were. | 10:10:39 |
| 19 | BY MR. STERN: | 10:10:41 |
| 20 | Q  Was it your expectation to discuss | 10:10:41 |
| 21 | discovery in this lawsuit with Mr. Boshea? | 10:10:44 |
| 22 | A  I do not -- | 10:10:48 |

| | | |
|---|---|---|
| 1 | MR. JORDAN:  Objection, relevance. | 10:10:49 |
| 2 | MR. MARCUS:  Objection.  It misstates the | 10:10:51 |
| 3 | document. | 10:10:53 |
| 4 | A  I do not remember discussing the discovery | 10:10:54 |
| 5 | plan with anyone. | 10:10:57 |
| 6 | BY MR. STERN: | 10:10:59 |
| 7 | Q  That's not my question. | 10:10:59 |
| 8 | My question is was it your expectation to | 10:11:00 |
| 9 | discuss discovery in this lawsuit with Mr. Boshea? | 10:11:03 |
| 10 | MR. MARCUS:  Objection, misstates the | 10:11:07 |
| 11 | document.  Answer please. | 10:11:11 |
| 12 | A  I do not believe it was my expectation to | 10:11:14 |
| 13 | discuss discovery with David Boshea. | 10:11:17 |
| 14 | MR. STERN:  The next e-mail Bates number | 10:11:28 |
| 15 | DJW 000876.  It's an e-mail from Mr. Boshea to you | 10:11:31 |
| 16 | dated June 15, 2021 at 5:41 p.m. | 10:11:36 |
| 17 | (D. White Deposition Exhibit 14 was marked | 10:11:36 |
| 18 | for identification and attached to the | 10:11:36 |
| 19 | transcript.) | 10:11:36 |
| 20 | BY MR. STERN: | 10:11:36 |
| 21 | Q  Do you see this e-mail? | 10:11:50 |
| 22 | A  Not yet, sir. | 10:11:53 |

| | |
|---|---|
| 1 | MR. BOSHEA:  Hey Greg, out of respect to | 10:12:06 |
| 2 | Dan White can we take a break? | 10:12:09 |
| 3 | MR. JORDAN:  Honestly, Stephen, I was | 10:12:11 |
| 4 | thinking the same thing.  We've been going for | 10:12:12 |
| 5 | about an hour and 45 minutes. | 10:12:13 |
| 6 | MR. BOSHEA:  This is just ridiculous. | 10:12:20 |
| 7 | MR. JORDAN:  David.  David.  David, | 10:12:20 |
| 8 | please.  I actually think it would probably be a | 10:12:21 |
| 9 | good idea if we've been going an hour and | 10:12:22 |
| 10 | 45 minutes to take a break. | 10:12:25 |
| 11 | MR. STERN:  After we finish with this | 10:12:25 |
| 12 | exhibit. | 10:12:25 |
| 13 | MR. JORDAN:  If you want to have him | 10:12:27 |
| 14 | answer questions with regard to the exhibit and | 10:12:28 |
| 15 | then after that if we can take a break that would | 10:12:30 |
| 16 | be great. | 10:12:33 |
| 17 | MR. STERN:  We'll take a short break, | 10:12:33 |
| 18 | that's fine. | 10:12:34 |
| 19 | BY MR. STERN: | 10:12:35 |
| 20 | Q  Mr. White, do you see this e-mail from | 10:12:36 |
| 21 | Mr. Boshea to you on January -- June 15, 2021 at | 10:12:37 |
| 22 | 5:41 p.m.? | 10:12:43 |

1    A  I see the e-mail that you put up on the          10:12:46

2 screen, yes, sir.                                       10:12:48

3    Q  And it says "I drafted interrogatories and        10:12:49

4 document requests for Compass to answer," do you        10:12:51

5 see that?                                               10:12:55

6    A  I see the e-mail that you forwarded.              10:12:55

7    Q  Did you review the interrogatories and            10:12:59

8 document requests that Mr. Boshea drafted?              10:13:01

9    A  I do not remember doing so.                       10:13:05

10    Q  Did you discuss with Mr. Boshea the              10:13:09

11 interrogatories he drafted or document requests         10:13:13

12 that he drafted?                                        10:13:15

13    A  I do not remember doing so.                      10:13:16

14    Q  Do you know why he sent you the                  10:13:20

15 interrogatories and document requests that he           10:13:23

16 drafted?                                                10:13:25

17    MR. MARCUS:  Objection, assumes facts not           10:13:26

18 in evidence.                                            10:13:28

19    A  I do not know why.  Mr. Jordan certainly         10:13:30

20 does not need my help.                                  10:13:32

21 BY MR. STERN:                                           10:13:40

22    Q  If your help was not needed do you know          10:13:40

| | | |
|---|---|---|
| 1 | why then Mr. Jordan and Mr. Boshea continued to | 10:13:42 |
| 2 | send you many e-mails throughout this case? | 10:13:46 |
| 3 | MR. MARCUS:  Objection, assumes facts not | 10:13:49 |
| 4 | in evidence, calls for speculation.  Answer. | 10:13:51 |
| 5 | A  I do not -- | 10:13:55 |
| 6 | MR. STERN:  Mr. White produced about a | 10:13:55 |
| 7 | thousand pages of material about his | 10:13:58 |
| 8 | communications in this case.  I would like to know | 10:14:00 |
| 9 | if he didn't have -- if they don't need any help | 10:14:03 |
| 10 | why was he communicating so extensively with | 10:14:06 |
| 11 | Mr. Boshea and Mr. Jordan? | 10:14:09 |
| 12 | MR. MARCUS:  I don't think that the | 10:14:10 |
| 13 | deponent is in a position to answer why other | 10:14:12 |
| 14 | people do things. | 10:14:15 |
| 15 | BY MR. STERN: | 10:14:16 |
| 16 | Q  Go ahead, Mr. White. | 10:14:17 |
| 17 | A  I do not know why. | 10:14:18 |
| 18 | Q  So each of the e-mail communications from | 10:14:20 |
| 19 | Mr. Boshea to Mr. Jordan were unsolicited? | 10:14:23 |
| 20 | MR. MARCUS:  Mr. Stern, if you're going to | 10:14:27 |
| 21 | ask him questions and you want him to answer it | 10:14:29 |
| 22 | you got to let him do that. | 10:14:29 |

| | | |
|---|---|---|
| 1 | MR. STERN:  I didn't hear him talking. | 10:14:31 |
| 2 | He's got to speak up then. | 10:14:33 |
| 3 | MR. MARCUS:  Either that or you got to | 10:14:36 |
| 4 | listen before you start speaking. | 10:14:37 |
| 5 | MR. STERN:  He's got to speak up. | 10:14:40 |
| 6 | MR. MARCUS:  Okay.  Well, obviously you | 10:14:42 |
| 7 | want a full record.  If that's not the intention | 10:14:44 |
| 8 | then cut him off. | 10:14:47 |
| 9 | MR. STERN:  Speak up.  I can't hear. | 10:14:48 |
| 10 | BY MR. STERN: | 10:14:48 |
| 11 | Q  Mr. White? | 10:14:50 |
| 12 | MR. JORDAN:  Stephen, can you just restate | 10:14:51 |
| 13 | the question and then we'll just go from there? | 10:14:53 |
| 14 | It will probably save a lot of time. | 10:14:56 |
| 15 | A  Would you say the question again? | 10:15:01 |
| 16 | BY MR. STERN: | 10:15:02 |
| 17 | Q  Is it your position that these | 10:15:03 |
| 18 | communications from Mr. Jordan and Mr. Boshea were | 10:15:04 |
| 19 | unsolicited? | 10:15:09 |
| 20 | MR. MARCUS:  Objection, assumes facts not | 10:15:09 |
| 21 | in evidence.  Answer please. | 10:15:12 |
| 22 | A  This one was.  You would have to ask me | 10:15:13 |

| | | |
|---|---|---|
| 1 | about each specific one. | 10:15:16 |
| 2 | Q  We've gone through several e-mail | 10:15:19 |
| 3 | communications here. | 10:15:21 |
| 4 | Were each of the ones that we've discussed | 10:15:21 |
| 5 | today unsolicited? | 10:15:23 |
| 6 | MR. MARCUS:  Objection, compound question. | 10:15:25 |
| 7 | Answer as best you can, please. | 10:15:30 |
| 8 | A  I can't remember every e-mail that we've | 10:15:31 |
| 9 | looked at, sir. | 10:15:34 |
| 10 | BY MR. STERN: | 10:15:35 |
| 11 | Q  So some e-mails were solicited and some | 10:15:35 |
| 12 | were not solicited? | 10:15:37 |
| 13 | A  I do not know. | 10:15:38 |
| 14 | Q  Did you solicit any e-mail communications | 10:15:40 |
| 15 | from Mr. Jordan? | 10:15:42 |
| 16 | MR. MARCUS:  Objection. | 10:15:44 |
| 17 | A  I do not remember doing so. | 10:15:48 |
| 18 | BY MR. STERN: | 10:15:50 |
| 19 | Q  Did you solicit any e-mail communications | 10:15:50 |
| 20 | from Mr. Boshea? | 10:15:53 |
| 21 | MR. MARCUS:  Objection to form.  Answer | 10:15:57 |
| 22 | please. | 10:15:58 |

| | |
|---|---|
| 1 | A  I do not remember. | 10:15:58 |
| 2 | MR. STERN:  We'll take a short break here. | 10:16:00 |
| 3 | THE VIDEOGRAPHER:  We are now going off | 10:16:04 |
| 4 | the record.  This will end disk one and the time | 10:16:06 |
| 5 | is 10:17 a.m. | 10:16:08 |
| 6 | (A brief recess was taken.) | 10:16:10 |
| 7 | THE VIDEOGRAPHER:  This will begin disk | 10:31:26 |
| 8 | number two.  We are now back on the record.  The | 10:31:33 |
| 9 | time is 10:32 a.m. | 10:31:35 |
| 10 | MR. STERN:  All right, thank you.  We're | 10:31:37 |
| 11 | going to start with another exhibit Bates labeled | 10:31:38 |
| 12 | DJW 000543.  It's an e-mail string with the | 10:31:41 |
| 13 | most -- the original e-mail dated September 20, | 10:31:49 |
| 14 | 2021 at 9:47 p.m. and the most recent being from | 10:31:53 |
| 15 | Mr. Boshea to Mr. White dated September 25, 2021 | 10:31:56 |
| 16 | at 12:49 a.m. | 10:32:01 |
| 17 | MR. MARCUS:  You were not even audible for | 10:32:06 |
| 18 | that entire statement. | 10:32:08 |
| 19 | MR. STERN:  Okay, then I'll say it again. | 10:32:10 |
| 20 | DJW 000543.  The original e-mail in that string is | 10:32:12 |
| 21 | dated September 20, 2021 at 9:47 p.m.  The most | 10:32:17 |
| 22 | recent of which in that string is dated September | 10:32:21 |

| | | |
|---|---|---|
| 1 | 25, 2021 at 12:49 a.m. | 10:32:25 |
| 2 | (D. White Deposition Exhibit 15 was marked | 10:32:25 |
| 3 | for identification and attached to the | 10:32:25 |
| 4 | transcript.) | 10:32:25 |
| 5 | BY MR. STERN: | 10:32:25 |
| 6 | Q  Do you see that e-mail, Mr. White? | 10:32:36 |
| 7 | A  I do see it. | 10:32:38 |
| 8 | Q  The original e-mail in that string is from | 10:32:40 |
| 9 | Mr. Jordan to me and my colleague, Ms. Yeung with | 10:32:42 |
| 10 | a copy to Mr. Gagliardo and attached Mr. Boshea's | 10:32:47 |
| 11 | Amended Answers to Interrogatories, is that what | 10:32:55 |
| 12 | it says? | 10:32:56 |
| 13 | A  It says -- I mean that's a pretty good | 10:32:58 |
| 14 | summary of it. | 10:33:00 |
| 15 | Q  And then it's forwarded to you by | 10:33:00 |
| 16 | Mr. Boshea? | 10:33:02 |
| 17 | A  Appears to be. | 10:33:03 |
| 18 | Q  And in that e-mail from Mr. Boshea it says | 10:33:04 |
| 19 | "Please review as a friend"? | 10:33:07 |
| 20 | A  That's what it says. | 10:33:10 |
| 21 | Q  Did you review the Answers to | 10:33:11 |
| 22 | Interrogatories? | 10:33:16 |

| | | |
|---|---|---|
| 1 | A I don't remember doing that. | 10:33:16 |
| 2 | Q Do you know why Mr. Boshea forwarded you | 10:33:17 |
| 3 | the Answers to Interrogatories? | 10:33:20 |
| 4 | MR. JORDAN: Objection, foundation. | 10:33:23 |
| 5 | MR. MARCUS: Calls for speculation. | 10:33:27 |
| 6 | Answer please. | 10:33:28 |
| 7 | MR. JORDAN: Stephen, I just want to note | 10:33:30 |
| 8 | that I sent -- we sent you David Boshea's original | 10:33:32 |
| 9 | e-mails so -- in native form so -- I think so to | 10:33:37 |
| 10 | the extent that there are attachments you might | 10:33:43 |
| 11 | want to use David Boshea's e-mails. | 10:33:46 |
| 12 | MR. STERN: I'm just asking him -- thank | 10:33:52 |
| 13 | you for the advice. I'll ask the questions the | 10:33:55 |
| 14 | way I want. | 10:33:56 |
| 15 | MR. JORDAN: That's fine. Totally fine. | 10:33:58 |
| 16 | BY MR. STERN: | 10:33:59 |
| 17 | Q Mr. White, do you know why Mr. Boshea | 10:34:00 |
| 18 | forwarded you his Answers to Interrogatories? | 10:34:02 |
| 19 | MR. MARCUS: Objection. Answer. | 10:34:06 |
| 20 | A I do not know why David sent them. | 10:34:08 |
| 21 | BY MR. STERN: | 10:34:13 |
| 22 | Q Did you have an understanding or | 10:34:13 |

| | | |
|---|---|---|
| 1 | expectation with Mr. Boshea that you would review | 10:34:16 |
| 2 | discovery responses in this litigation? | 10:34:19 |
| 3 | MR. MARCUS:  Objection, compound.  Answer | 10:34:21 |
| 4 | please. | 10:34:23 |
| 5 | A  I don't remember doing that. | 10:34:23 |
| 6 | BY MR. STERN: | 10:34:31 |
| 7 | Q  Did you respond to Mr. Boshea's request to | 10:34:31 |
| 8 | review these Answers to Interrogatories? | 10:34:34 |
| 9 | A  I do not remember. | 10:34:38 |
| 10 | Q  Is there something that would help you | 10:34:44 |
| 11 | remember? | 10:34:46 |
| 12 | A  I do not know. | 10:34:50 |
| 13 | MR. STERN:  I'm going to show you a new | 10:34:56 |
| 14 | exhibit.  The court reporting service, I guess you | 10:34:58 |
| 15 | can keep track of all the numbers when you send | 10:35:05 |
| 16 | the transcript. | 10:35:07 |
| 17 | MR. JORDAN:  The next one will be 16, | 10:35:08 |
| 18 | Stephen. | 10:35:10 |
| 19 | MR. STERN:  All right, thank you. | 10:35:11 |
| 20 | DJW 000831 through 835.  It is an e-mail | 10:35:13 |
| 21 | spread, the original being dated July 1, 2021 at | 10:35:25 |
| 22 | 8:44 a.m. with an attachment and the most recent | 10:35:32 |

| | | |
|---|---|---|
| 1 | is July 1, 2021 at 1:04 p.m. | 10:35:37 |
| 2 | (D. White Deposition Exhibit 16 was marked | 10:35:37 |
| 3 | for identification and attached to the | 10:35:37 |
| 4 | transcript.) | 10:35:37 |
| 5 | BY MR. STERN: | 10:35:37 |
| 6 | Q  Do you see this e-mail, Mr. White? | 10:35:49 |
| 7 | MR. MARCUS:  We are now -- we just got it. | 10:35:52 |
| 8 | We'll take a look at it. | 10:35:53 |
| 9 | (Pause in the proceedings.) | 10:36:19 |
| 10 | BY MR. STERN: | 10:36:19 |
| 11 | Q  Have you had the opportunity to review | 10:36:20 |
| 12 | this, Mr. White? | 10:36:21 |
| 13 | MR. MARCUS:  We're doing it. | 10:36:23 |
| 14 | (Pause in the proceedings.) | 10:36:36 |
| 15 | A  Yeah, I've read the e-mail. | 10:36:36 |
| 16 | BY MR. STERN: | 10:36:40 |
| 17 | Q  It's Mr. Boshea forwarding to you an order | 10:36:40 |
| 18 | for a settlement conference in this lawsuit, | 10:36:44 |
| 19 | correct? | 10:36:46 |
| 20 | A  What it appears to be. | 10:36:48 |
| 21 | Q  Do you know why Mr. Boshea forwarded you | 10:36:52 |
| 22 | the order for a settlement conference in this | 10:36:54 |

1    lawsuit?                                              10:36:57

2         MR. JORDAN:  Objection, calls for              10:36:58

3    speculation.                                          10:37:00

4         MR. MARCUS:  Objection.  Answer please.         10:37:00

5      A  I do not know why.                               10:37:01

6    BY MR. STERN:                                         10:37:03

7      Q  Did you have an understanding or                10:37:03

8    expectation with Mr. Boshea that you'd discuss       10:37:04

9    settlement negotiations in this lawsuit with him?    10:37:06

10        MR. JORDAN:  Objection, vague.  I'm not         10:37:11

11   sure whose expectation you're referring to.          10:37:13

12        MR. MARCUS:  Objection.  I think you want       10:37:15

13   to try that question again.                           10:37:19

14   BY MR. STERN:                                         10:37:20

15     Q  Mr. White, did you have an understanding        10:37:21

16   or expectation that you would discuss settlement     10:37:22

17   negotiations with Mr. Boshea in this lawsuit?        10:37:25

18        MR. MARCUS:  Objection.                          10:37:28

19        MR. JORDAN:  Objection, confusing.             10:37:29

20     A  I don't remember any such agreement.            10:37:31

21   BY MR. STERN:                                         10:37:35

22     Q  Did you expect to discuss some                  10:37:36

| | | |
|---|---|---|
| 1 | negotiations in this lawsuit with Mr. Boshea? | 10:37:39 |
| 2 | MR. MARCUS:  Objection.  Answer please. | 10:37:43 |
| 3 | A  I do not think so. | 10:37:45 |
| 4 | BY MR. STERN: | 10:37:48 |
| 5 | Q  Did you ask to see any settlement | 10:37:48 |
| 6 | discussions or writings in this lawsuit from | 10:37:51 |
| 7 | Mr. Boshea? | 10:37:55 |
| 8 | MR. MARCUS:  Objection.  I'm not sure how | 10:37:56 |
| 9 | he could see discussions. | 10:38:01 |
| 10 | A  I do not remember doing that. | 10:38:04 |
| 11 | BY MR. STERN: | 10:38:07 |
| 12 | Q  Did you discuss settlement with Mr. Boshea | 10:38:08 |
| 13 | in this lawsuit? | 10:38:11 |
| 14 | A  I do not remember doing so. | 10:38:15 |
| 15 | Q  Did you have a reaction to seeing this | 10:38:17 |
| 16 | order that's attached to this e-mail thread? | 10:38:20 |
| 17 | MR. JORDAN:  Objection, vague.  I don't | 10:38:26 |
| 18 | know what reaction means. | 10:38:28 |
| 19 | MR. MARCUS:  Counsel, you know I'm sitting | 10:38:31 |
| 20 | here trying to give you as much latitude as | 10:38:34 |
| 21 | possible.  These are July 2021 discussions.  The | 10:38:37 |
| 22 | representation was that there was a contract in | 10:38:41 |

```
 1    2007 and I'm having a hard time figuring out what      10:38:44

 2    the relationship is between the complaint that's       10:38:49

 3    filed and the actions that are pending before the      10:38:51

 4    court and settlement discussions that were taking      10:38:53

 5    place in July and what the relationship of those       10:38:55

 6    two things might be in the legitimate pursuit of       10:38:58

 7    discovery.                                             10:39:02

 8        MR. STERN:  Mr. Marcus, please stop your           10:39:02

 9    speaking objections.                                   10:39:04

10    BY MR. STERN:                                          10:39:06

11       Q  Mr. White, did you have a reaction to            10:39:07

12    seeing the settlement order -- or an order of a        10:39:09

13    settlement conference from Mr. Boshea?                 10:39:12

14        MR. MARCUS:  Objection.                            10:39:16

15       A  I do not remember a specific reaction to         10:39:17

16    this e-mail.                                           10:39:20

17    BY MR. STERN:                                          10:39:22

18       Q  Did you have any discussions with                10:39:22

19    Mr. Jordan about settlement in this lawsuit?           10:39:24

20        MR. MARCUS:  Objection.                            10:39:29

21       A  I do not remember any specific discussions       10:39:31

22    with Mr. Jordan about settlement in this lawsuit.      10:39:33
```

| | | |
|---|---|---|
| 1 | MR. STERN:  I'm going to show you a new | 10:39:38 |
| 2 | e-mail thread, DJW 000312 through 318 -- I'm | 10:39:40 |
| 3 | sorry, 319.  It's an e-mail thread with the most | 10:39:50 |
| 4 | recent being September 13, 2021 at 5:33 p.m. | 10:39:54 |
| 5 | (D. White Deposition Exhibit 17 was marked | 10:39:54 |
| 6 | for identification and attached to the | 10:39:54 |
| 7 | transcript.) | 10:40:15 |
| 8 | BY MR. STERN: | 10:40:15 |
| 9 | Q  Do you see this e-mail from Mr. Jordan to | 10:40:15 |
| 10 | you with a copy to Michael White and David Boshea? | 10:40:18 |
| 11 | MR. MARCUS:  We're just getting it now. | 10:40:21 |
| 12 | A  I see that e-mail. | 10:40:49 |
| 13 | BY MR. STERN: | 10:40:51 |
| 14 | Q  It opens with "When we spoke recently." | 10:40:52 |
| 15 | Do you remember talking with Mr. Boshea -- | 10:40:56 |
| 16 | I mean Mr. Jordan about FBI agents? | 10:40:58 |
| 17 | A  No. | 10:41:05 |
| 18 | Q  Did you discuss FBI agents with | 10:41:07 |
| 19 | Mr. Jordan? | 10:41:12 |
| 20 | A  I do not recall doing so. | 10:41:14 |
| 21 | Q  Do you think Mr. Jordan is making this up | 10:41:16 |
| 22 | in this e-mail to you where he said "When we spoke | 10:41:20 |

| | | |
|---|---|---|
| 1 | recently, you mentioned that you believed you knew | 10:41:25 |
| 2 | one or more former FBI agents"? | 10:41:25 |
| 3 | MR. JORDAN:  Objection to speculating. | 10:41:29 |
| 4 | MR. MARCUS:  And it misstates the | 10:41:31 |
| 5 | document.  The question misstates the document. | 10:41:35 |
| 6 | BY MR. STERN: | 10:41:37 |
| 7 | Q  Mr. White, do you think Mr. Jordan made | 10:41:38 |
| 8 | that up? | 10:41:41 |
| 9 | A  No, I do not but I would not know that.  I | 10:41:42 |
| 10 | do not think he made it up. | 10:41:46 |
| 11 | Q  Did you offer any suggestions about FBI | 10:41:48 |
| 12 | agents to Mr. Boshea or Mr. Jordan regarding | 10:41:52 |
| 13 | experts on signatures? | 10:41:54 |
| 14 | A  No, sir, not that I recall. | 10:41:56 |
| 15 | Q  Do you know why he asked you for those | 10:42:00 |
| 16 | recommendations? | 10:42:04 |
| 17 | A  I do not know.  Let me -- would you | 10:42:06 |
| 18 | clarify your question? | 10:42:12 |
| 19 | MR. STERN:  Can you read the question | 10:42:15 |
| 20 | back, court reporter? | 10:42:16 |
| 21 | (The previous question was read as | 10:42:16 |
| 22 | requested.) | 10:42:26 |

1       A   So we spoke about an expert witness in          10:42:26

2   handwriting.                                            10:42:31

3   BY MR. STERN:                                           10:42:33

4       Q   And do you believe that -- was someone          10:42:33

5   speaking?                                               10:42:42

6       MR. MARCUS:   The deponent was speaking             10:42:42

7   when you started to ask the next question.              10:42:45

8   BY MR. STERN:                                           10:42:47

9       Q   Go ahead, Mr. White.                            10:42:48

10      A   We spoke about how to find a handwriting        10:42:49

11  expert and if I knew any and I think                    10:42:53

12  (inaudible) --                                          10:43:00

13      Q   About how many times have you discussed         10:43:00

14  this lawsuit with Mr. Jordan?                           10:43:02

15      A   I do not remember.  I do not remember the       10:43:03

16  exact number of times.                                  10:43:09

17      Q   Approximately how many times have you           10:43:12

18  spoke with Mr. Jordan about this lawsuit?               10:43:13

19      MR. MARCUS:   Objection.  Answer if you             10:43:16

20  can.                                                    10:43:19

21      A   Approximately ten.                              10:43:19

22

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 10:43:24 |
| 2 | Q  Besides discussing expert witnesses, what | 10:43:24 |
| 3 | other subjects did you discuss with Mr. Jordan | 10:43:28 |
| 4 | about this lawsuit? | 10:43:31 |
| 5 | MR. MARCUS:  Objection to the form of the | 10:43:34 |
| 6 | question.  Answer please. | 10:43:35 |
| 7 | A  I remember discussing an expert witness. | 10:43:38 |
| 8 | I remember discussing local counsel and I don't | 10:43:41 |
| 9 | know if I discussed the e-mail that I sent him or | 10:43:52 |
| 10 | not.  I don't remember the details of our other | 10:43:55 |
| 11 | discussions. | 10:43:59 |
| 12 | MR. STERN:  I want to pivot to that e-mail | 10:44:02 |
| 13 | that you mentioned, DJW 00001 through 8.  It's an | 10:44:06 |
| 14 | e-mail thread, the most recent of which is from | 10:44:21 |
| 15 | you to Greg Jordan dated September 27, 2021 at | 10:44:24 |
| 16 | 4:58 p.m.  The original in this thread purports to | 10:44:30 |
| 17 | be an e-mail dated May 22, 2007 at 1:24.  Appears | 10:44:34 |
| 18 | to be a.m. | 10:44:41 |
| 19 | (D. White Deposition Exhibit 18 was marked | 10:44:41 |
| 20 | for identification and attached to the | 10:44:41 |
| 21 | transcript.) | 10:44:46 |
| 22 | | |

1    BY MR. STERN:                                    10:44:46

2        Q  Do you see that e-mail?                   10:44:47

3        A  I'm looking at it now, sir.               10:44:48

4        Q  Do you see this e-mail thread?            10:45:02

5            MR. MARCUS:  We are looking at it.  It    10:45:05

6    appears to be eight pages long.                  10:45:06

7        A  I've had a chance to review it, sir.      10:45:36

8    BY MR. STERN:                                    10:45:38

9        Q  Is this the e-mail thread you were        10:45:38

10   referring to that you possibly had overlooked when  10:45:40

11   you wrote your motion?                           10:45:46

12       A  Well, the second part -- it's kind of a   10:45:53

13   complicated question but this e-mail I did not    10:45:58

14   remember having received until I searched my     10:46:01

15   e-mail and I found it.                           10:46:04

16           Is that an answer to your question?      10:46:05

17       Q  Why did you search your e-mail to look for  10:46:06

18   this -- for this e-mail thread?                  10:46:09

19       A  Well, because I had a subpoena from you.  10:46:17

20       Q  And when did you look for this e-mail?    10:46:24

21       A  I spent a lot of time looking for e-mails. 10:46:30

22       Q  When did you look for this e-mail?        10:46:33

| | | |
|---|---|---|
| 1 | A  I didn't look for this specific e-mail | 10:46:38 |
| 2 | because I didn't know this specific e-mail existed | 10:46:40 |
| 3 | but I looked for e-mails responsive to your | 10:46:43 |
| 4 | subpoena over a period of time, a couple of | 10:46:47 |
| 5 | months. | 10:46:50 |
| 6 | Q  And you found this e-mail sometime prior | 10:46:51 |
| 7 | to September 27, 2021? | 10:46:55 |
| 8 | A  That's correct.  I found it before I sent | 10:47:00 |
| 9 | it to Mr. Jordan.  Is that what you asked me? | 10:47:03 |
| 10 | Q  Yes. | 10:47:03 |
| 11 | A  Okay.  Yes, I found it before I sent it to | 10:47:08 |
| 12 | Mr. Jordan. | 10:47:10 |
| 13 | Q  And this was found in your personal e-mail | 10:47:11 |
| 14 | account, danieljwhite@msn.com, correct? | 10:47:14 |
| 15 | A  That's correct, sir. | 10:47:22 |
| 16 | Q  And the original e-mail in this thread is | 10:47:23 |
| 17 | dated May 22, 2007, correct? | 10:47:26 |
| 18 | A  That is correct.  It appears to be. | 10:47:33 |
| 19 | Q  Appears to be? | 10:47:39 |
| 20 | A  Yes, that's the date on the e-mail. | 10:47:40 |
| 21 | Q  Now, how did you come to -- were you one | 10:47:43 |
| 22 | of the addressees -- well, let me go back.  Let me | 10:47:47 |

1   ask a different question.                          10:47:51

2        Did you send the e-mail that purports to      10:47:52

3   be dated May 22, 2007 at 1:24?                     10:47:55

4      A  I received it at 1:24 a.m.                    10:48:01

5      Q  You received it?  You're not an addressee    10:48:05

6   on the e-mail.  How did you receive it?            10:48:07

7      A  By blind copy.                                10:48:12

8      Q  So the sender of that e-mail blind copied    10:48:14

9   you, is that what you're saying?                   10:48:18

10     A  I don't remember exactly but that would      10:48:23

11  comport with the e-mail.  That would answer your   10:48:27

12  question.  I don't know what the sender did, who   10:48:31

13  he blind copied.                                   10:48:34

14     Q  Well, how did you receive it?                10:48:35

15     A  I received it from                            10:48:37

16  jwhite@compassmarketinginc.com.                    10:48:39

17     Q  And you received it directly from            10:48:43

18  jwhite@compassmarketinginc.com?                    10:48:45

19     A  I don't remember receiving it but that's     10:48:48

20  what the e-mail would reflect.                      10:48:51

21     Q  So you have no recollection of receiving     10:48:53

22  this e-mail.                                        10:48:55

| | | |
|---|---|---|
| 1 | How does it reflect that you received a | 10:48:56 |
| 2 | BCC copy of it?  I do not see a BCC recipient on | 10:49:00 |
| 3 | here. | 10:49:04 |
| 4 | A  I don't know the answer to your question. | 10:49:04 |
| 5 | I mean I don't know the answer. | 10:49:06 |
| 6 | Q  So you don't know how you received this? | 10:49:10 |
| 7 | You're only guessing you received a BCC copy if | 10:49:12 |
| 8 | I'm understanding you correctly? | 10:49:15 |
| 9 | MR. MARCUS:  Objection, argumentative. | 10:49:17 |
| 10 | A  That's correct. | 10:49:20 |
| 11 | BY MR. STERN: | 10:49:25 |
| 12 | Q  So I want to make sure that I understand | 10:49:25 |
| 13 | when you say "that's correct." | 10:49:27 |
| 14 | You're guessing that you were a BCC | 10:49:29 |
| 15 | recipient; is that correct? | 10:49:31 |
| 16 | A  Well, I don't think guess is a fair word | 10:49:34 |
| 17 | but I'm not positive. | 10:49:37 |
| 18 | Q  You have no specific recollection of | 10:49:39 |
| 19 | receiving a BCC copy of this e-mail; is that | 10:49:41 |
| 20 | correct? | 10:49:47 |
| 21 | A  I have no specific recollection of | 10:49:47 |
| 22 | receiving this e-mail. | 10:49:49 |

1    Q  And why is it that you have not produced          10:49:51

2  that original e-mail that you claim to have            10:49:55

3  received?                                              10:49:59

4        MR. JORDAN:  Objection.  I believe that          10:50:02

5  Mr. Marcus produced it yesterday.                      10:50:04

6        MR. STERN:  He did not.                          10:50:07

7  BY MR. STERN:                                          10:50:07

8    Q  Mr. White?                                        10:50:17

9    A  I'm sorry, could you ask me your question         10:50:17

10  again, Mr. Stern?                                     10:50:19

11    Q  Why did you not produce in native format         10:50:21

12  the e-mail that's dated May 22, 2007 at 1:24?         10:50:25

13    A  In native format is a new part of your           10:50:31

14  question.  That's why I didn't understand.  I         10:50:36

15  produced it as best that I could.                     10:50:38

16    Q  I'm sorry, I can't hear you.                      10:50:39

17    A  I did produce it in the format that I            10:50:42

18  could.                                                10:50:44

19    Q  So you have the original e-mail in your          10:50:44

20  inbox from jwhite@compassmarketinginc.com to          10:50:47

21  golf4me36@aol.com?                                    10:50:57

22    A  No, sir.                                         10:51:02

| | | |
|---|---|---|
| 1 | Q  So you did not produce that e-mail in | 10:51:03 |
| 2 | native format, correct? | 10:51:05 |
| 3 | A  Not correct. | 10:51:06 |
| 4 | Q  Well, I'm contused. | 10:51:07 |
| 5 | Did you produce this e-mail by itself | 10:51:10 |
| 6 | without any other e-mails in the thread? | 10:51:15 |
| 7 | A  That e-mail does not appear -- no, I did | 10:51:20 |
| 8 | not. | 10:51:23 |
| 9 | Q  So you did not produce that e-mail in | 10:51:24 |
| 10 | native format, correct? | 10:51:28 |
| 11 | A  That e-mail does not appear in my inbox by | 10:51:31 |
| 12 | itself.  It appears as part of the thread that I | 10:51:35 |
| 13 | sent to Michael White. | 10:51:39 |
| 14 | Q  Now, why does that e-mail not exist in | 10:51:40 |
| 15 | your account by itself? | 10:51:43 |
| 16 | MR. MARCUS:  Objection.  Answer please. | 10:51:46 |
| 17 | A  I do not have the IT background to answer | 10:51:48 |
| 18 | that question, Mr. Stern. | 10:51:51 |
| 19 | BY MR. STERN: | 10:51:53 |
| 20 | Q  But you were able to find an e-mail in | 10:51:53 |
| 21 | your account 44 minutes later, correct? | 10:51:56 |
| 22 | A  What? | 10:52:05 |

1    Q  The one from you to Michael White on May     10:52:05

2  22, 2007 at 2:08 a.m.     10:52:11

3    A  There's only one e-mail in my account.     10:52:14

4  It's the one I sent to Mike and it has the part     10:52:17

5  from John as part of it.  I only have one file.     10:52:20

6    Q  And that one is 44 minutes after the     10:52:22

7  original e-mail in this thread, correct?     10:52:24

8    A  I would have to calculate it but it sounds     10:52:27

9  right.     10:52:32

10    Q  So you have the one at 2:08 a.m. in your     10:52:32

11  account but not the one at 1:24 a.m. in your     10:52:35

12  account; is that correct?     10:52:38

13    A  In my account it appears as a single     10:52:41

14  conversation, that's correct.     10:52:44

15    Q  And why did you forward that e-mail to     10:52:47

16  Michael at 2:08 a.m.?     10:52:51

17    A  In 2007?     10:52:55

18    Q  In 2007.     10:52:56

19    A  I don't remember doing so.  I don't     10:52:59

20  remember getting it or reading it or forwarding     10:53:06

21  it.  I don't remember that.     10:53:09

22    Q  Were you the general counsel of Compass     10:53:12

1    Marketing at the time of this e-mail?                    10:53:15

2        A   No, sir.                                         10:53:17

3        Q   Do you know why John White would have            10:53:21

4    BCC'd you on the original e-mail in this thread on        10:53:24

5    May 22, 2007?                                            10:53:29

6        A   I do not.                                        10:53:30

7        Q   Was it customary for John White to BCC you       10:53:34

8    on business related e-mails in May 2020 -- 2007?         10:53:38

9        MR. MARCUS:   Objection.                             10:53:47

10       A   It was -- did you say customary?                 10:53:47

11       MR. MARCUS:   Yes.                                   10:53:52

12       A   He often did it in all the 15 or 20 years        10:53:52

13   we worked together.                                      10:53:56

14   BY MR. STERN:                                            10:53:57

15       Q   I'm talking about in May 2007.  Was it           10:53:57

16   customary for him to BCC you on e-mails?                 10:54:01

17       MR. MARCUS:   Objection to form.                     10:54:04

18       A   It was not unusual for John to blind copy        10:54:10

19   me on things.                                            10:54:13

20   BY MR. STERN:                                            10:54:16

21       Q   Were you expecting to receive this e-mail        10:54:17

22   on May 22, 2007?                                         10:54:20

1    A   That was 15 years ago.  I don't remember                    10:54:25

2   getting the e-mail or reading the e-mail or                      10:54:28

3   forwarding the e-mail or expecting the e-mail or                 10:54:30

4   talking about the e-mail or anything about the                   10:54:34

5   e-mail at all.                                                   10:54:36

6    Q   Did you have any discussions with John                      10:54:37

7   White about the employment agreement for                         10:54:40

8   Mr. Boshea in or about May of 2007?                              10:54:44

9    A   I do not remember.                                          10:54:49

10   Q   Were you surprised to see this BCC e-mail                   10:54:53

11  in your inbox that you don't specifically remember               10:54:57

12  receiving a BCC copy of?                                         10:55:02

13      MR. MARCUS:   Objection.                                     10:55:04

14   A   I don't remember getting it so I don't                      10:55:06

15  remember being surprised by it.                                  10:55:08

16  BY MR. STERN:                                                    10:55:14

17   Q   Did you create the attachment that was in                   10:55:14

18  the e-mail from you to Michael White on May 22,                  10:55:20

19  2007?                                                            10:55:27

20   A   No, sir, I do not remember doing that.                      10:55:27

21  Are you asking me if I created it in 2021 or 2007                10:55:33

22  or --                                                            10:55:38

1    Q  Let me -- fair point.  Let me ask multiple          10:55:39

2  questions then.                                          10:55:44

3        Did you create the attachment to the              10:55:46

4  e-mail that you forwarded to Michael White on May        10:55:50

5  22, 2007 at 2:08 a.m.?                                   10:55:54

6    A  I do not believe that I did.                        10:55:59

7    Q  Did you edit the attachment to the e-mail           10:56:01

8  that you forwarded to Michael White on May 22,           10:56:10

9  2007 at 2:08 a.m.?                                       10:56:13

10   A  I do not believe that I did, Mr. Stern.             10:56:16

11   Q  Is the attachment that was -- is the                10:56:19

12 attachment to the e-mail from you to Michael White       10:56:24

13 dated May 22, 2007 at 2:08 a.m. the same                 10:56:27

14 attachment that is in the e-mail that you                10:56:35

15 forwarded to Mr. Jordan on September 27, 2021 at         10:56:36

16 4:48 p.m.?                                               10:56:40

17   A  When I found it I did not make any changes          10:56:43

18 before I sent it to Mr. Jordan.                          10:56:45

19       Does that answer your question?                   10:56:48

20   Q  Did you remove the attachment from the              10:56:51

21 e-mail dated May 22, 2007 at 2:08 a.m. and revise        10:56:55

22 it in any way since then?                                10:57:00

1    A  So when I found it I sent it to            10:57:05

2  Mr. Jordan.  I did not make any alterations or   10:57:09

3  deletions or edits and I have not done so since  10:57:13

4  then.                                            10:57:16

5    Q  So your contention is that the attachment  10:57:17

6  to the e-mail that you forwarded to Mr. Jordan on 10:57:19

7  September 27, 2001 at 4:58 p.m. is the same exact 10:57:23

8  attachment that was in the e-mail that you       10:57:29

9  forwarded to Michael White on May 22, 2007 at    10:57:32

10  2:08 a.m. and that's also the same attachment that 10:57:37

11  was on the e-mail from                          10:57:40

12  jwhite@compassmarketinginc.com to              10:57:43

13  golf4me36@aol.com on May 22, 2007 at 1:24 a.m.? 10:57:50

14    MR. MARCUS:  Objection.  He makes no         10:57:54

15  contentions.  He's answering questions.        10:57:56

16    MR. STERN:  Is that his testimony?           10:57:57

17    MR. MARCUS:  His testimony is what the       10:57:59

18  court reporter has taken down.                  10:58:00

19  BY MR. STERN:                                    10:58:01

20    Q  Mr. White?                                 10:58:01

21    A  Could you ask me that in little smaller   10:58:03

22  pieces?  I'm not trying to be difficult.  I just 10:58:06

1    want to -- I haven't changed that e-mail.                10:58:10

2        Q   Is the attachment that was -- to the             10:58:13

3    e-mail on May 22, 2007 at 1:24 a.m. the same exact       10:58:16

4    attachment to the e-mail that you forwarded to           10:58:24

5    Mr. Jordan on September 27, 2021 at 4:58 p.m.?           10:58:29

6        A   I haven't made any changes to it.                10:58:36

7        Q   Are you familiar with the concept of             10:58:42

8    metadata?                                                10:58:44

9        A   Generally.                                       10:58:45

10       Q   Do you know what it is?                          10:58:47

11       A   Generally.                                       10:58:48

12       Q   What is your understanding of metadata?          10:58:50

13       A   It's the source data for any mail that           10:58:55

14   talks about where it was created and how.                10:58:59

15       Q   And same thing with Word documents,              10:59:02

16   correct?                                                 10:59:06

17       A   As far as I know most electronic files,          10:59:07

18   counsel.                                                 10:59:10

19       Q   And so if we were to be able to examine          10:59:12

20   the metadata attached to that original attachment,       10:59:14

21   we would know when it was created and when it was        10:59:17

22   altered, correct?                                        10:59:20

| | | |
|---|---|---|
| 1 | MR. MARCUS:  Objection.  Are you asking | 10:59:23 |
| 2 | him a technical question? | 10:59:28 |
| 3 | MR. STERN:  I'm asking his understanding | 10:59:30 |
| 4 | of metadata. | 10:59:32 |
| 5 | MR. MARCUS:  Objection.  It's completely | 10:59:34 |
| 6 | irrelevant to what this is about.  Completely. | 10:59:36 |
| 7 | Use your time -- | 10:59:41 |
| 8 | BY MR. STERN: | 10:59:42 |
| 9 | Q  Mr. White? | 10:59:42 |
| 10 | A  Would you ask me that question again, | 10:59:44 |
| 11 | Mr. Stern? | 10:59:47 |
| 12 | Q  So if we were to have the original | 10:59:47 |
| 13 | attachment to the e-mail on May 22, 2007 at 1:24 | 10:59:51 |
| 14 | a.m. we would be able to understand when that | 10:59:57 |
| 15 | attachment was created and who edited it, correct? | 10:59:59 |
| 16 | MR. MARCUS:  Objection, calls for | 11:00:03 |
| 17 | speculation.  He's not an expert. | 11:00:04 |
| 18 | Answer if you can, please. | 11:00:06 |
| 19 | A  I do not know. | 11:00:07 |
| 20 | BY MR. STERN: | 11:00:08 |
| 21 | Q  And likewise, we can look at the metadata | 11:00:09 |
| 22 | of the attachment to the e-mail that you forwarded | 11:00:13 |

| | | |
|---|---|---|
| 1 | to Mr. Jordan on September 27, 2021 at 4:58 p.m., | 11:00:15 |
| 2 | correct? | 11:00:22 |
| 3 | MR. MARCUS:  Objection. | 11:00:23 |
| 4 | A  I do not know. | 11:00:24 |
| 5 | BY MR. STERN: | 11:00:30 |
| 6 | Q  And you don't know why you cannot locate | 11:00:30 |
| 7 | the original e-mail of this thread that was | 11:00:33 |
| 8 | 44 minutes earlier than the e-mail that you | 11:00:37 |
| 9 | purport to have forwarded to Michael on May 22, | 11:00:38 |
| 10 | 2007 at 2:08 a.m.? | 11:00:43 |
| 11 | MR. JORDAN:  Objection.  I think that | 11:00:46 |
| 12 | misstates his testimony. | 11:00:49 |
| 13 | A  In my e-mail it appears as a single | 11:00:50 |
| 14 | conversation. | 11:00:56 |
| 15 | BY MR. STERN: | 11:01:02 |
| 16 | Q  But you do not have the original e-mail in | 11:01:03 |
| 17 | that thread as a standalone e-mail, correct? | 11:01:05 |
| 18 | MR. MARCUS:  Objection.  That's about the | 11:01:08 |
| 19 | fourth or fifth time you've asked that question. | 11:01:09 |
| 20 | Give the same answer, please. | 11:01:13 |
| 21 | A  Mr. Stern, it appears as a single e-mail | 11:01:16 |
| 22 | in my inbox from 15 years ago. | 11:01:21 |

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 11:01:24 |
| 2 | Q  So there's no way you can authenticate | 11:01:24 |
| 3 | that e-mail on May 22, 2007 at 1:24 a.m.? | 11:01:27 |
| 4 | MR. JORDAN:  Objection.  Objection. | 11:01:35 |
| 5 | That's misstating his testimony. | 11:01:36 |
| 6 | MR. MARCUS:  Calls for a legal conclusion. | 11:01:40 |
| 7 | BY MR. STERN: | 11:01:43 |
| 8 | Q  Mr. White, you're a lawyer.  You deal with | 11:01:44 |
| 9 | evidence all the time, don't you? | 11:01:46 |
| 10 | A  There is a way to authenticate it. | 11:01:50 |
| 11 | Q  I'm sorry? | 11:01:50 |
| 12 | A  There is a way to authenticate it.  I'm | 11:01:50 |
| 13 | telling you that's exactly how it came to my | 11:01:50 |
| 14 | inbox.  That's exactly how I found it.  That's | 11:01:56 |
| 15 | exactly how I sent it to Mr. Jordan. | 11:02:00 |
| 16 | Q  So now you have a specific recollection of | 11:02:02 |
| 17 | receiving that e-mail and that's how it came to | 11:02:04 |
| 18 | your inbox? | 11:02:06 |
| 19 | MR. MARCUS:  Objection, argumentative. | 11:02:07 |
| 20 | Misstates the prior testimony. | 11:02:09 |
| 21 | A  I don't have a recollection of it, sir. | 11:02:10 |
| 22 | | |

1  BY MR. STERN:                                    11:02:12

2      Q  So you don't know how that e-mail ended up  11:02:12

3  in your inbox?                                   11:02:14

4          MR. JORDAN:  Objection, misstates his    11:02:16

5  prior testimony.                                 11:02:18

6      A  I assume it ended up like every other     11:02:21

7  e-mail ends up in my inbox, Mr. Stern.           11:02:25

8  BY MR. STERN:                                    11:02:28

9      Q  But you can't locate the standalone e-mail 11:02:29

10 in your inbox?                                    11:02:31

11         MR. MARCUS:  Okay, we're not answering    11:02:33

12 those questions anymore.  This is now the fifth or 11:02:34

13 sixth time you've asked the same question.  We    11:02:37

14 will not answer it again.                         11:02:39

15         MR. STERN:  Well, he's going in circles so 11:02:41

16 I want to try to get a clear answer.              11:02:42

17         MR. JORDAN:  No, he's being consistent and 11:02:45

18 you just don't like the answer.                   11:02:47

19 BY MR. STERN:                                     11:02:52

20     Q  Mr. White?                                 11:02:52

21     A  Mr. Stern, in my inbox it appears as a     11:02:55

22 single conversation.                              11:02:58

| | | |
|---|---|---|
| 1 | Q  So what happened to the original e-mail in | 11:02:59 |
| 2 | that thread that you purport to have forwarded to | 11:03:03 |
| 3 | Michael on May 22, 2007 at 2:08 a.m.? | 11:03:06 |
| 4 | MR. JORDAN:  Objection, foundation. | 11:03:12 |
| 5 | You're assuming anything happened to that.  He's | 11:03:14 |
| 6 | already testified that it's in the string. | 11:03:17 |
| 7 | BY MR. STERN: | 11:03:21 |
| 8 | Q  Mr. White? | 11:03:22 |
| 9 | A  I do not know the answer to your question, | 11:03:22 |
| 10 | Mr. Stern. | 11:03:25 |
| 11 | Q  Is it your testimony that that e-mail was | 11:03:31 |
| 12 | in your inbox at some point in time and it no | 11:03:34 |
| 13 | longer is in your inbox? | 11:03:37 |
| 14 | MR. MARCUS:  Objection.  Answer again, | 11:03:40 |
| 15 | please. | 11:03:42 |
| 16 | MR. JORDAN:  Objection, misstates his | 11:03:42 |
| 17 | testimony. | 11:03:44 |
| 18 | A  Would you ask the question again please, | 11:03:44 |
| 19 | Mr. Stern? | 11:03:46 |
| 20 | BY MR. STERN: | 11:03:47 |
| 21 | Q  Is it your testimony that the e-mail on | 11:03:47 |
| 22 | May 22, 2007 at 1:24 a.m. was originally in your | 11:03:50 |

| | | |
|---|---|---|
| 1 | inbox at some point in time and it no longer is? | 11:03:53 |
| 2 | MR. MARCUS:  Objection. | 11:03:57 |
| 3 | A  Mr. Stern, my testimony is I don't | 11:03:59 |
| 4 | remember getting the e-mail or reading the e-mail | 11:04:01 |
| 5 | or forwarding it to Mike.  I don't remember that. | 11:04:04 |
| 6 | BY MR. STERN: | 11:04:07 |
| 7 | Q  My question is was that e-mail at | 11:04:07 |
| 8 | 1:24 a.m. in your inbox at some point in time? | 11:04:12 |
| 9 | MR. MARCUS:  Objection. | 11:04:19 |
| 10 | A  It would appear that it was. | 11:04:21 |
| 11 | BY MR. STERN: | 11:04:23 |
| 12 | Q  And is it your testimony that it is not in | 11:04:24 |
| 13 | your inbox now? | 11:04:26 |
| 14 | MR. MARCUS:  Objection. | 11:04:28 |
| 15 | A  That's not my testimony. | 11:04:30 |
| 16 | BY MR. STERN: | 11:04:32 |
| 17 | Q  Then why did you not produce that e-mail | 11:04:33 |
| 18 | in native format with the attachment to it by | 11:04:35 |
| 19 | itself? | 11:04:39 |
| 20 | MR. MARCUS:  Objection.  Answer again. | 11:04:40 |
| 21 | A  Because it's in my inbox as part of a | 11:04:42 |
| 22 | single conversation. | 11:04:45 |

1   BY MR. STERN:                                    11:04:46

2      Q  Well, then that single conversation is a   11:04:46

3   different e-mail.  The e-mail that you're        11:04:49

4   referring to is the one dated May 22, 2007 at    11:04:51

5   2:08 a.m.  I'm asking specifically about the     11:04:56

6   e-mail on May 22, 2007 at 1:24 a.m.              11:04:58

7         Where is that e-mail if it's not -- is it  11:05:02

8   in your inbox, yes or no?                        11:05:05

9         MR. MARCUS:  Mr. Stern, this is the fifth  11:05:06

10  or sixth time you have asked the same question.  11:05:08

11  As you know the rules are very clear about this   11:05:11

12  kind of examination.  Now, either you're going to 11:05:14

13  move on to something else or we're going to be in 11:05:18

14  a position to have to take this up.  You are not  11:05:21

15  permitted to do this.  Now, you have a limited    11:05:24

16  amount of time and you're using it unwisely but   11:05:26

17  that's a matter that you'll have to deal with.    11:05:29

18  BY MR. STERN:                                    11:05:32

19     Q  Mr. White?                                 11:05:33

20     A  Mr. Stern --                               11:05:36

21     Q  Is that e-mail as a standalone e-mail in   11:05:37

22  your inbox, yes or no?                           11:05:39

1       A   Mr. Stern, that e-mail is a single                    11:05:42

2   conversation.                                                 11:05:46

3       Q   That's not my question.                               11:05:47

4           The e-mail on May 22, 2007 at 1:24 a.m.,              11:05:51

5   is that e-mail by itself in your inbox?                       11:05:54

6           MR. MARCUS:  Objection, asked and                     11:05:59

7   answered.  Answer it again.                                   11:06:01

8       A   It's not.                                             11:06:04

9   BY MR. STERN:                                                 11:06:06

10      Q   I cannot hear you.                                    11:06:06

11      A   I cannot find it by itself.  It's part of             11:06:07

12  a conversation.                                               11:06:12

13      Q   Do you know what happened to that e-mail              11:06:12

14  and why it's no longer in your inbox?                         11:06:15

15          MR. MARCUS:  Objection, assumes facts not             11:06:19

16  in evidence.  Answer again, please.                          11:06:20

17      A   I do not know.                                        11:06:22

18  BY MR. STERN:                                                 11:06:29

19      Q   You understand that Compass Marketing                 11:06:29

20  contends that the agreement that's attached to                11:06:31

21  this e-mail thread is not a real agreement that               11:06:33

22  was actually entered into?  Do you understand that            11:06:37

| | | |
|---|---|---|
| 1 | to be the case? | 11:06:40 |
| 2 | MR. MARCUS:  Objection, calls for | 11:06:42 |
| 3 | speculation on the part of the witness. | 11:06:47 |
| 4 | MR. STERN:  I asked for his understanding. | 11:06:49 |
| 5 | Thank you for the speaking objection.  Please | 11:06:52 |
| 6 | stop. | 11:06:53 |
| 7 | BY MR. STERN: | 11:06:53 |
| 8 | Q  Is that your understanding, Mr. White? | 11:06:54 |
| 9 | A  Would you finish the question? | 11:06:56 |
| 10 | Q  Is it your understanding that Compass | 11:06:59 |
| 11 | Marketing contends that the attachment to this | 11:07:01 |
| 12 | e-mail thread is not a real document that existed | 11:07:03 |
| 13 | as of May 2007? | 11:07:07 |
| 14 | A  It is my contention that's what you and | 11:07:11 |
| 15 | John say.  It's not -- I do not believe that's | 11:07:13 |
| 16 | what Compass says. | 11:07:16 |
| 17 | Q  Why are you including me in your answer? | 11:07:17 |
| 18 | A  Because you're John's lawyer. | 11:07:20 |
| 19 | Q  So it's your understanding I represent | 11:07:22 |
| 20 | John White? | 11:07:24 |
| 21 | A  Yes, sir. | 11:07:25 |
| 22 | Q  On what basis do you say I represent John | 11:07:26 |

1    White?                                          11:07:31

2       A   Because all of your actions appear to me  11:07:31

3    to be designed to help John White instead of   11:07:36

4    Compass Marketing.                             11:07:40

5       Q   Can you be more specific?  What actions  11:07:41

6    are designed to help John White, not Compass   11:07:43

7    Marketing?                                     11:07:46

8       MR. MARCUS:  Objection.  This deposition     11:07:46

9    is to deal with the Complaint that has been filed.  11:07:49

10   You are now way beyond it again.  I think you  11:07:53

11   are --                                         11:07:57

12      MR. STERN:  Mr. Marcus, your client does     11:07:58

13   not get to give answers and then I'm not allowed  11:08:01

14   to follow-up on them.  That's not the way it    11:08:03

15   works.                                         11:08:04

16      MR. MARCUS:  Well, it does work that way      11:08:04

17   if your questions are irrelevant and outside the  11:08:07

18   scope of permissible discovery in a case that is  11:08:10

19   before the Court.  The fact that you ask questions  11:08:13

20   that are irrelevant and not related to         11:08:15

21   discovery --                                   11:08:18

22

| | | |
|---|---|---|
| 1 | MR. STERN: First of all, Mr. Marcus, you | 11:08:18 |
| 2 | do not have any say as to what's relevant and | 11:08:21 |
| 3 | what's not. You're not a party to this case and | 11:08:24 |
| 4 | neither is your client, all right? | 11:08:26 |
| 5 | MR. MARCUS: And if you read the rules, | 11:08:28 |
| 6 | sir, you'll understand that the rule distinguishes | 11:08:29 |
| 7 | between acts of the deponent and party. They are | 11:08:32 |
| 8 | separate. | 11:08:35 |
| 9 | MR. STERN: Understood. Your client has | 11:08:37 |
| 10 | injected me into this deposition twice. | 11:08:40 |
| 11 | MR. MARCUS: At your behest. | 11:08:42 |
| 12 | MR. STERN: And I'm -- no, I ask an open | 11:08:44 |
| 13 | ended question and he brings it up. | 11:08:46 |
| 14 | BY MR. STERN: | 11:08:46 |
| 15 | Q So now what are you talking about, | 11:08:48 |
| 16 | Mr. White, as to why I represent John White | 11:08:50 |
| 17 | personally? | 11:08:54 |
| 18 | MR. JORDAN: Objection to relevance as to | 11:08:55 |
| 19 | David Boshea's claims against Compass or Compass's | 11:08:58 |
| 20 | claims against David Boshea and the John Does. | 11:09:03 |
| 21 | MR. MARCUS: And Mr. Stern, these issues | 11:09:07 |
| 22 | that you are inquiring about now are related to | 11:09:08 |

| | | |
|---|---|---|
| 1 | collateral proceedings which involve you | 11:09:11 |
| 2 | personally and so to the extent that you are | 11:09:13 |
| 3 | trying to conduct discovery in matters that are | 11:09:16 |
| 4 | related to collateral proceedings, you are out of | 11:09:18 |
| 5 | bounds. | 11:09:22 |
| 6 | MR. STERN:  No, I'm not.  He was the one | 11:09:23 |
| 7 | that brought them up. | 11:09:24 |
| 8 | BY MR. STERN: | 11:09:24 |
| 9 | Q  Now Mr. White, please answer the question. | 11:09:25 |
| 10 | MR. MARCUS:  All right, I'm going to | 11:09:28 |
| 11 | instruct him.  We are taking this up with the | 11:09:29 |
| 12 | judge and we will explain to the judge what the | 11:09:31 |
| 13 | purpose of your questions are and the context in | 11:09:33 |
| 14 | which these questions have arisen and to the | 11:09:35 |
| 15 | extent that they are collateral in nature through | 11:09:39 |
| 16 | other proceedings separate and apart from this | 11:09:41 |
| 17 | lawsuit, the Court will be made aware of your | 11:09:44 |
| 18 | reasons and the purpose for these questions. | 11:09:47 |
| 19 | MR. STERN:  Very good.  Are you | 11:09:49 |
| 20 | instructing him not to answer? | 11:09:50 |
| 21 | MR. MARCUS:  I am telling you we will file | 11:09:52 |
| 22 | a motion -- | 11:09:53 |

| | | |
|---|---|---|
| 1 | MR. STERN:  Are you instructing him not to | 11:09:55 |
| 2 | answer? | 11:09:56 |
| 3 | MR. MARCUS:  We will file a motion for a | 11:09:57 |
| 4 | protective order on this subject. | 11:09:59 |
| 5 | MR. STERN:  Are you instructing him not to | 11:10:00 |
| 6 | answer? | 11:10:02 |
| 7 | MR. MARCUS:  I am instructing him to | 11:10:05 |
| 8 | follow Rule 30(b) -- | 11:10:07 |
| 9 | MR. STERN:  Until I hear you saying that | 11:10:10 |
| 10 | you're instructing him not to answer, please | 11:10:12 |
| 11 | answer the question, Mr. White. | 11:10:14 |
| 12 | A  Would you say the question again, please? | 11:10:15 |
| 13 | BY MR. STERN: | 11:10:17 |
| 14 | Q  On what basis do you contend that I'm John | 11:10:17 |
| 15 | White's personal attorney? | 11:10:21 |
| 16 | MR. JORDAN:  Objection to the relevance as | 11:10:25 |
| 17 | stated previously. | 11:10:27 |
| 18 | A  I didn't mean to say you're his personal | 11:10:28 |
| 19 | attorney. | 11:10:33 |
| 20 | BY MR. STERN: | 11:10:33 |
| 21 | Q  I can't hear you. | 11:10:33 |
| 22 | A  I did not mean to say that you're his | 11:10:34 |

1   personal attorney.                                    11:10:37

2        MR. BOSHEA:  If I may can we take a break?       11:10:40

3        MR. STERN:  No.                                  11:10:43

4        MR. JORDAN:  David, please turn off your         11:10:43

5   microphone.                                           11:10:46

6   BY MR. STERN:                                         11:10:47

7     Q  Now, going back to my original question         11:10:48

8   that I asked about this, is it your understanding     11:10:49

9   that Compass Marketing contends that the              11:10:51

10  attachment to this e-mail thread is not a real        11:10:54

11  document that was in existence in May of 2007?        11:10:58

12       MR. JORDAN:  Objection, calls for him to         11:11:01

13  speculate.  I don't know that to be true.             11:11:05

14    A  I do not know.                                   11:11:07

15  BY MR. STERN:                                         11:11:12

16    Q  Do you understand that Compass Marketing         11:11:13

17  believes that this is a part of a fraudulent          11:11:14

18  scheme that you, Michael and Mr. Boshea put           11:11:17

19  together to try to extract money from Compass         11:11:19

20  Marketing?                                            11:11:23

21       MR. JORDAN:  Objection to that and not           11:11:23

22  only that, I don't know that I got that               11:11:25

1   understanding as to that Compass Marketing              11:11:27

2   believes that so there's no foundation.                 11:11:29

3       MR. MARCUS:  Objection.                             11:11:34

4   BY MR. STERN:                                           11:11:34

5       Q  Mr. White?                                       11:11:34

6       MR. MARCUS:  Go ahead and answer.                   11:11:35

7       A  Would you ask me the question again,             11:11:36

8   please, Mr. Stern?                                      11:11:38

9   BY MR. STERN:                                           11:11:38

10      Q  Do you understand that Compass Marketing         11:11:39

11  believes that this is a scheme that you, Michael        11:11:41

12  White and Mr. Boshea put together to try to             11:11:43

13  extract money from the company?                         11:11:46

14      MR. MARCUS:  Same objection.                        11:11:48

15      A  I don't believe that's true.                     11:11:49

16  BY MR. STERN:                                           11:11:51

17      Q  What don't you believe to be true?               11:11:51

18      A  Your statement.                                  11:11:56

19      Q  That it's Compass Marketing's contention         11:11:57

20  or that this is a scheme that you, Michael and          11:12:00

21  Mr. Boshea put together?                                11:12:02

22

| | | |
|---|---|---|
| 1 | MR. MARCUS:  Objection. | 11:12:05 |
| 2 | A  Either one of those. | 11:12:06 |
| 3 | BY MR. STERN: | 11:12:10 |
| 4 | Q  Have you undertaken any other severance | 11:12:11 |
| 5 | related schemes to extract money from Compass | 11:12:14 |
| 6 | Marketing previously? | 11:12:17 |
| 7 | MR. MARCUS:  Objection. | 11:12:17 |
| 8 | MR. JORDAN:  Objection to the use of the | 11:12:18 |
| 9 | word "scheme" which is argumentative and the | 11:12:23 |
| 10 | relevance of the question. | 11:12:25 |
| 11 | BY MR. STERN: | 11:12:27 |
| 12 | Q  Mr. White? | 11:12:27 |
| 13 | A  Would you ask the question again? | 11:12:32 |
| 14 | Q  Have you undertaken any other scheme that | 11:12:34 |
| 15 | you, Michael White have undertaken to extract | 11:12:37 |
| 16 | money through severance from Compass Marketing for | 11:12:40 |
| 17 | other employees? | 11:12:42 |
| 18 | MR. JORDAN:  Same objection. | 11:12:44 |
| 19 | A  I don't understand the question. | 11:12:48 |
| 20 | BY MR. STERN: | 11:12:52 |
| 21 | Q  Have you ever concocted a severance -- a | 11:12:52 |
| 22 | story about a severance agreement for an employee | 11:12:56 |

1    of Compass Marketing to extract money from the        11:13:00

2    company when there was really no severance            11:13:03

3    agreement?                                            11:13:05

4         MR. JORDAN:  Restate my previous                 11:13:07

5    objection.                                            11:13:09

6       A  I don't understand your question.               11:13:13

7    BY MR. STERN:                                         11:13:17

8       Q  I'll ask it again.                              11:13:17

9         Have you and Michael White engaged in any        11:13:19

10   prior plan to create a severance scheme or -- let     11:13:23

11   me ask the question differently.                      11:13:30

12        Have you and Michael White previously            11:13:33

13   created a false severance plan for an employee of     11:13:35

14   Compass Marketing to extract money from the           11:13:40

15   company?                                              11:13:44

16        MR. JORDAN:  Objection, relevance and            11:13:45

17   argumentative.                                        11:13:47

18        MR. MARCUS:  Objection.  Answer.                 11:13:48

19      A  I have no idea what you're talking about,       11:13:49

20   Mr. Stern.                                            11:13:51

21        MR. STERN:  Okay, I'd like to address your       11:13:53

22   attention to an e-mail that is dated October 15,      11:13:56

| | |
|---|---|
| 1 | 2015 at 10:51 a.m. | 11:14:03 |
| 2 | MS. YEUNG:  What's the Bates number on | 11:14:14 |
| 3 | that? | 11:14:16 |
| 4 | MR. STERN:  There's no Bates number on | 11:14:16 |
| 5 | this one.  This relates to another severance | 11:14:18 |
| 6 | related e-mail. | 11:14:31 |
| 7 | MS. YEUNG:  I'm sorry, was that | 11:14:53 |
| 8 | October 15th at 10:51 a.m.? | 11:14:54 |
| 9 | MR. STERN:  Yes, and there's one | 11:14:57 |
| 10 | attachment to it. | 11:15:00 |
| 11 | MS. YEUNG:  It starts with Forward: CCD? | 11:15:01 |
| 12 | MR. STERN:  Yes. | 11:15:07 |
| 13 | MS. YEUNG:  Okay, thank you. | 11:15:09 |
| 14 | BY MR. STERN: | 11:15:25 |
| 15 | Q  Mr. White, do you see this e-mail on the | 11:15:26 |
| 16 | screen? | 11:15:30 |
| 17 | MR. MARCUS:  Not yet. | 11:15:37 |
| 18 | MS. YEUNG:  Just a moment.  Here we go. | 11:15:42 |
| 19 | (D. White Deposition Exhibit 19 was marked | 11:15:42 |
| 20 | for identification and attached to the | 11:15:42 |
| 21 | transcript.) | 11:16:17 |
| 22 | | |

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 11:16:17 |
| 2 | Q  Do you see this e-mail, Mr. White? | 11:16:18 |
| 3 | MR. MARCUS:  We've just gotten it so we'll | 11:16:21 |
| 4 | take a look at it. | 11:16:24 |
| 5 | (Pause in the proceedings.) | 11:16:59 |
| 6 | A  I see the e-mail. | 11:16:59 |
| 7 | BY MR. STERN: | 11:17:02 |
| 8 | Q  This is an e-mail from you to -- on your | 11:17:03 |
| 9 | compassmarketinginc.com account to John White and | 11:17:07 |
| 10 | Michael White dated October 15, 2015 at | 11:17:10 |
| 11 | 10:51 a.m., do you see that? | 11:17:17 |
| 12 | A  That's what you say it is. | 11:17:18 |
| 13 | Q  Did I mischaracterize the e-mail? | 11:17:19 |
| 14 | A  I don't know what it is. | 11:17:22 |
| 15 | Q  Is that what the e-mail says? | 11:17:23 |
| 16 | A  That's the date on the e-mail, that's | 11:17:27 |
| 17 | correct. | 11:17:29 |
| 18 | Q  Did you send that e-mail to John White and | 11:17:29 |
| 19 | Michael White? | 11:17:33 |
| 20 | A  I do not know. | 11:17:33 |
| 21 | Q  At the very top of the upper right-hand | 11:17:36 |
| 22 | corner do you see it says Michael White -- I'm | 11:17:40 |

| | | |
|---|---|---|
| 1 | sorry, it says Mike White | 11:17:43 |
| 2 | , do you see that? | 11:17:46 |
| 3 | A  I do see that. | 11:17:55 |
| 4 | Q  Do you know why that e-mail address is up | 11:17:55 |
| 5 | there on this printout? | 11:17:57 |
| 6 | A  I do not know. | 11:18:00 |
| 7 | Q  Now, in this e-mail it says "Copy of first | 11:18:02 |
| 8 | payment on the DiPaula/Miller severance attached," | 11:18:06 |
| 9 | do you see that? | 11:18:12 |
| 10 | A  I see that. | 11:18:12 |
| 11 | Q  What severance agreement are you referring | 11:18:13 |
| 12 | to to DiPaula and Miller? | 11:18:16 |
| 13 | A  I do not know I'm referring to anything. | 11:18:19 |
| 14 | I don't know if this is my e-mail or not. | 11:18:22 |
| 15 | Q  You don't know whether or not you sent | 11:18:25 |
| 16 | this e-mail? | 11:18:26 |
| 17 | A  I don't know if this exhibit is an e-mail | 11:18:28 |
| 18 | that I sent or not. | 11:18:31 |
| 19 | Q  Do you know now that you're looking at it? | 11:18:39 |
| 20 | MR. JORDAN:  Stephen, in order to question | 11:18:39 |
| 21 | the witness about an e-mail you're going to need | 11:18:41 |
| 22 | to have him identify his knowledge of the e-mail. | 11:18:43 |

1    BY MR. STERN:                                              11:18:45

2        Q   "As a reminder, I/we agreed to 15K each            11:18:46

3    for any/all pay and liability plus 20K to CD for           11:18:50

4    his expenses," do you see that?                            11:18:56

5            MR. JORDAN:   Objection, foundation.               11:18:58

6        A   I see the e-mail that you've attached.             11:18:59

7    BY MR. STERN:                                              11:19:03

8        Q   Did you write that?                                11:19:03

9        A   I do not know.                                     11:19:05

10       Q   Did you -- looking at this now does this           11:19:07

11   refresh your recollection about some agreement you         11:19:11

12   may have reached with Mr. DiPaula?                         11:19:13

13       A   I do recall an agreement that I reached            11:19:17

14   with Mr. DiPaula.                                          11:19:19

15       Q   What was the agreement you reached with            11:19:20

16   Mr. DiPaula?                                               11:19:22

17       A   To settle monies that the company owed him         11:19:24

18   for his work at Compass Marketing before he left.          11:19:28

19       Q   When did Mr. DiPaula leave the company?            11:19:32

20       A   I do not remember.                                 11:19:35

21       Q   Was it in 2014 or 2015?                            11:19:37

22       A   I do not remember.                                 11:19:41

1    Q  Is there a written agreement that reflects          11:19:44

2  these terms?                                             11:19:47

3    A  I do not remember.                                  11:19:48

4    Q  Do you remember whether there was a verbal          11:19:51

5  agreement?                                               11:19:53

6    A  I do not remember how we made an                    11:19:58

7  agreement, whether it's verbal or written.              11:20:00

8    Q  Do you remember -- at the bottom of the            11:20:03

9  e-mail it says will need 1099s for them at year          11:20:05

10 end.                                                     11:20:09

11       Before I get to that, did you have a               11:20:09

12 similar agreement with Mr. Miller?                       11:20:10

13   A  I only met with Mr. DiPaula.  He made an            11:20:15

14 agreement for both of them.                              11:20:21

15   Q  So he negotiated an agreement with you for          11:20:22

16 both him and Mr. Miller?                                 11:20:25

17       MR. MARCUS:  Objection to form.                    11:20:30

18       MR. JORDAN:  I'm confused.  Who is "he"?           11:20:31

19       MR. STERN:  Mr. DiPaula.                           11:20:34

20       MR. MARCUS:  Objection to the form of the          11:20:37

21 question.                                                11:20:38

22   A  Mr. DiPaula is the only person that I               11:20:42

1   spoke to about an agreement.                          11:20:44

2   BY MR. STERN:                                         11:20:46

3       Q  So you never spoke with Mr. Miller about a    11:20:46

4   severance agreement?                                  11:20:50

5       A  So Mr. DiPaula is the only person that I      11:20:50

6   spoke to about an agreement.                          11:20:53

7       Q  I'm talking about a severance agreement.      11:20:54

8          MR. MARCUS:  Objection, asked and             11:20:58

9   answered.  Answer it again.                           11:21:00

10      A  Mr. DiPaula is the only person I spoke to     11:21:02

11  about an agreement to pay him money for his work      11:21:06

12  at Compass after he left.                             11:21:10

13  BY MR. STERN:                                         11:21:13

14      Q  Did that agreement with Mr. DiPaula exist     11:21:13

15  prior to his resignation?                             11:21:18

16      A  I do not know what existed prior to his       11:21:24

17  resignation.                                          11:21:27

18      Q  Do you recall what the total amount was       11:21:29

19  that you agreed to pay Mr. DiPaula after his          11:21:31

20  employment with Compass Marketing ended?              11:21:34

21      A  I do not.                                      11:21:39

22      Q  Were these discussions with Mr. DiPaula in    11:21:39

1   person or in writing?                              11:21:42

2        MR. JORDAN:  Objection to the relevance of    11:21:45

3   this.                                              11:21:48

4      A  Most of the discussions were in person.  I   11:21:51

5   do not remember if there's any writings.           11:21:54

6        MR. MARCUS:  None of this has anything at      11:21:58

7   all to do with the Complaint that's filed in the   11:21:59

8   case.                                              11:22:02

9        MR. STERN:  But it does and I'm getting to     11:22:03

10  that in a moment.                                  11:22:05

11       MR. MARCUS:  Okay, so I think we got to        11:22:07

12  get there at some point.                           11:22:10

13  BY MR. STERN:                                      11:22:12

14     Q  It says here we will need 1099s for them     11:22:12

15  at year end.                                       11:22:15

16        Do you recall issuing those 1099s?           11:22:16

17     A  I see that it says that on your exhibit.      11:22:20

18  I do not know if this was an e-mail that I sent or  11:22:22

19  not.                                               11:22:25

20     Q  Do you know whether or not taxes -- why      11:22:26

21  taxes would not have been withheld from these      11:22:29

22  payments to Mr. DiPaula and Mr. Miller?            11:22:32

1      MR. MARCUS:  Objection, assumes facts not          11:22:36

2  in evidence.  Answer please.                           11:22:37

3      A  I do not know.                                  11:22:40

4  BY MR. STERN:                                          11:22:41

5      Q  Now, attached to this e-mail is a check         11:22:42

6  that purports to be the first payment on the           11:22:46

7  Miller/DiPaula severance, correct?                     11:22:50

8      MR. JORDAN:  Objection to relevance.  Can          11:22:55

9  you connect this up?                                   11:22:59

10  BY MR. STERN:                                         11:23:00

11     Q  Mr. White?                                      11:23:01

12     A  Would you ask the question again,               11:23:03

13  Mr. Stern?                                            11:23:05

14     Q  Is this an e-mail -- is this check, a copy      11:23:06

15  of the check that purports to be the first            11:23:07

16  severance payment you reference in your e-mail?       11:23:12

17     A  I don't agree that it's my e-mail and I         11:23:14

18  don't know whether that's true or not.                11:23:18

19     Q  So you're saying someone else sent this         11:23:20

20  e-mail in your name?                                  11:23:22

21     MR. MARCUS:  Objection, misstates his              11:23:24

22  testimony.                                            11:23:25

1    BY MR. STERN:                                            11:23:29

2        Q   Mr. White?                                       11:23:30

3            MR. MARCUS:  Answer it again.                    11:23:31

4        A   I didn't say anybody sent this e-mail.  I        11:23:32

5    didn't say any such thing.                               11:23:35

6    BY MR. STERN:                                            11:23:37

7        Q   So you think this e-mail is not real?            11:23:37

8            MR. MARCUS:  Objection, misstates his            11:23:39

9    testimony.                                               11:23:41

10       A   I do not know.                                   11:23:42

11   BY MR. STERN:                                            11:23:45

12       Q   So you don't know whether or not this is         11:23:45

13   an authentic e-mail?                                     11:23:47

14       A   That's correct, I do not know.                   11:23:50

15       Q   Well, let's go to the attachment.  The           11:23:52

16   attachment purports to be a check dated                  11:23:57

17   October 14, 2015 to the order of James C. DiPaula,       11:24:02

18   Jr. for $10,000, do you see that?                        11:24:07

19       A   I see your exhibit, sir.                         11:24:11

20       Q   And the payee or I guess the person              11:24:14

21   authorizing this check says Daniel J. White,             11:24:18

22   Remitter, right?  Do you see that?                       11:24:24

| | | |
|---|---|---|
| 1 | A  I see your exhibit, sir. | 11:24:25 |
| 2 | Q  Now, you recall having an agreement with | 11:24:26 |
| 3 | Mr. DiPaula. | 11:24:31 |
| 4 | Is this the payment for Mr. DiPaula's | 11:24:32 |
| 5 | severance? | 11:24:36 |
| 6 | A  I do not know. | 11:24:36 |
| 7 | Q  Why would you be sending a check to | 11:24:37 |
| 8 | Mr. DiPaula that's not from a Compass Marketing | 11:24:40 |
| 9 | account? | 11:24:42 |
| 10 | MR. JORDAN:  Objection, foundation. | 11:24:44 |
| 11 | A  I don't know if that's the check I gave | 11:24:51 |
| 12 | Mr. DiPaula or not. | 11:24:53 |
| 13 | BY MR. STERN: | 11:24:55 |
| 14 | Q  Well, it is a check that's from M & T | 11:24:56 |
| 15 | Bank, correct? | 11:24:58 |
| 16 | A  That's what you say.  I do not know. | 11:24:59 |
| 17 | Q  Is there anything on there that indicates | 11:25:01 |
| 18 | that this check is from Compass Marketing? | 11:25:03 |
| 19 | A  I don't even know if it's a check.  I | 11:25:07 |
| 20 | don't know anything about that, sir. | 11:25:10 |
| 21 | Q  It says Official Check at the top, doesn't | 11:25:11 |
| 22 | it? | 11:25:14 |

| | | |
|---|---|---|
| 1 | A  I can see the words but I don't know | 11:25:14 |
| 2 | anything about that attachment or that e-mail.  I | 11:25:16 |
| 3 | don't know if that's an e-mail from me and its | 11:25:19 |
| 4 | attachments.  I don't know about that e-mail. | 11:25:23 |
| 5 | Q  You don't know anything about that? | 11:25:25 |
| 6 | You have no idea how this e-mail was | 11:25:27 |
| 7 | created and you have no idea how that check was | 11:25:30 |
| 8 | created? | 11:25:33 |
| 9 | MR. MARCUS:  Answer one more time. | 11:25:34 |
| 10 | MR. JORDAN:  Objection, compound and | 11:25:36 |
| 11 | misstates his prior testimony regarding the | 11:25:41 |
| 12 | e-mail. | 11:25:43 |
| 13 | BY MR. STERN: | 11:25:43 |
| 14 | Q  Let me ask you have no idea how that | 11:25:44 |
| 15 | e-mail came to be; is that correct? | 11:25:45 |
| 16 | A  Sir, I'm not sure if it is an e-mail.  I | 11:25:48 |
| 17 | don't know what it is.  I don't know. | 11:25:51 |
| 18 | Q  You have no idea how that check came to be | 11:25:53 |
| 19 | written; is that correct? | 11:25:56 |
| 20 | A  I don't know if that is a check. | 11:25:57 |
| 21 | Q  It says Official Check. | 11:25:59 |
| 22 | A  I know what it says.  This is your exhibit | 11:26:00 |

| | | |
|---|---|---|
| 1 | that you brought.  I don't know what it is. | 11:26:04 |
| 2 | MR. STERN:  Then let's go to a new | 11:26:08 |
| 3 | exhibit.  I'd like to show you -- | 11:26:18 |
| 4 | MR. JORDAN:  Before we do we've been going | 11:26:21 |
| 5 | for another hour.  Can we take like a five or ten | 11:26:23 |
| 6 | minute break before we start -- | 11:26:28 |
| 7 | MR. STERN:  In a few minutes.  I would | 11:26:28 |
| 8 | like to go through these exhibits first.  It's | 11:26:30 |
| 9 | been less than an hour. | 11:26:33 |
| 10 | MR. JORDAN:  No, it's been more than an | 11:26:35 |
| 11 | hour. | 11:26:36 |
| 12 | MR. STERN:  It's not. | 11:26:36 |
| 13 | MR. JORDAN:  That's okay.  Just go through | 11:26:36 |
| 14 | the -- I'm not going to argue with you.  Just go | 11:26:36 |
| 15 | through the exhibits and we'll take a break. | 11:26:38 |
| 16 | MR. STERN:  The next one is a check dated | 11:26:40 |
| 17 | December 9, 2015. | 11:26:43 |
| 18 | Heather, do you see that check? | 11:26:54 |
| 19 | MS. YEUNG:  The amount of the check? | 11:26:57 |
| 20 | MR. STERN:  M & T Bank check. | 11:27:03 |
| 21 | MS. YEUNG:  Not the one we were just | 11:27:05 |
| 22 | looking at? | 11:27:07 |

| | | |
|---|---|---|
| 1 | MR. STERN:  No, a different one. | 11:27:09 |
| 2 | MS. YEUNG:  Found it, okay.  This is part | 11:27:14 |
| 3 | of the same exhibit we were just looking at. | 11:27:34 |
| 4 | MR. STERN:  It's in the same exhibit? | 11:27:38 |
| 5 | Okay. | 11:27:39 |
| 6 | MS. YEUNG:  This would be page six.  I'm | 11:27:40 |
| 7 | going to double-check the e-mail that went out to | 11:27:44 |
| 8 | everyone.  If I'm mistaken I'll resend. | 11:27:48 |
| 9 | MR. MARCUS:  Why don't you guys get your | 11:27:52 |
| 10 | exhibits together.  We're going to take a break | 11:27:53 |
| 11 | for five minutes and we'll be back. | 11:27:56 |
| 12 | MR. STERN:  All right. | 11:27:57 |
| 13 | THE VIDEOGRAPHER:  We are now going off | 11:27:59 |
| 14 | the record.  The time is 11:29 a.m. | 11:28:00 |
| 15 | (A brief recess was taken.) | 11:36:40 |
| 16 | THE VIDEOGRAPHER:  We are now back on the | 11:36:40 |
| 17 | record.  This begins disk number three.  The time | 11:36:41 |
| 18 | is 11:37 a.m. | 11:36:43 |
| 19 | (D. White Deposition Exhibit 20 was marked | 11:36:43 |
| 20 | for identification and attached to the | 11:36:43 |
| 21 | transcript.) | 11:36:46 |
| 22 | | |

| | | |
|---|---|---|
| 1 | MR. STERN:  Okay, and we were -- there was | 11:36:46 |
| 2 | apparently some misunderstanding or | 11:36:49 |
| 3 | miscommunication about the last exhibit.  The last | 11:36:50 |
| 4 | exhibit -- or I guess there was an introduction of | 11:36:52 |
| 5 | an exhibit for a check dated December 9, 2015 but | 11:36:56 |
| 6 | the previous exhibit before that should have been | 11:37:00 |
| 7 | just a two page document.  One is an e-mail dated | 11:37:02 |
| 8 | October 15, 2015 at 10:51 a.m. is the most recent | 11:37:07 |
| 9 | in the string.  There was another one beneath that | 11:37:11 |
| 10 | and attached to it was a copy of an Official Check | 11:37:14 |
| 11 | from M & T Bank.  Remitter Dan White -- Daniel J. | 11:37:17 |
| 12 | White dated October 14, 2015 for $10,000 paid to | 11:37:21 |
| 13 | the order of James C. DiPaula.  Those two pages is | 11:37:24 |
| 14 | one document and that's one exhibit.  I guess | 11:37:27 |
| 15 | that's 19 and then we're on to 20 if I'm doing the | 11:37:31 |
| 16 | numbering correctly.  20 being an Official Check, | 11:37:33 |
| 17 | M & T Bank.  Remitter Daniel White dated | 11:37:37 |
| 18 | December 9, 2015 paid to the order of James Chip | 11:37:42 |
| 19 | DiPaula for $25,000. | 11:37:45 |
| 20 | MR. JORDAN:  Hold on.  What is that?  I | 11:37:48 |
| 21 | have a corrected Exhibit 19 is the e-mail and the | 11:37:51 |
| 22 | $10,000 check.  That's what Heather just sent to | 11:37:55 |

```
 1   us.                                              11:37:58

 2        MR. STERN:  Yes, and then there should be   11:37:58

 3   a separate exhibit of a check of -- a copy of a  11:38:04

 4   check dated December 9, 2015.  That's the next   11:38:09

 5   exhibit.  That should be exhibit -- is that Number 11:38:12

 6   20, court reporter?                              11:38:16

 7        MS. YEUNG:  Each e-mail has the number of   11:38:27

 8   the exhibit on top.  We just need to switch sheet 11:38:30

 9   19 and only the corrected version was asked about. 11:38:35

10        THE TECH:  Right, I'm just going with what  11:38:42

11   you have on the top of the e-mail.               11:38:45

12        MS. YEUNG:  I've circulated what should be  11:38:47

13   Exhibit 20 which is the check that Mr. Stern began 11:38:49

14   asking about before the break.                   11:38:53

15        MR. STERN:  Now, I want to go back to       11:38:55

16   Exhibit 19.                                      11:38:57

17        Heather, just hold 20 momentarily.  We'll   11:38:58

18   go back to the e-mail with the $10,000 check     11:39:01

19   attached.                                        11:39:04

20   BY MR. STERN:                                    11:39:04

21     Q  Mr. White, on the third line in the second  11:39:08

22   paragraph in that e-mail there's a reference to  11:39:14
```

1    "triple damages the AG would have made us pay."        11:39:21

2         Did you have any discussions with the            11:39:23

3    Attorney General about any claims by Mr. DiPaula       11:39:25

4    or Mr. Miller?                                          11:39:27

5        A   No, sir.                                        11:39:31

6        Q   What were you referring to then in this        11:39:35

7    e-mail about the AG?                                    11:39:37

8         MR. MARCUS:   Objection.                           11:39:42

9        A   I don't agree that I did send this e-mail       11:39:43

10   or that it's mine.                                      11:39:45

11   BY MR. STERN:                                           11:39:48

12       Q   Now, the check attached to it does purport     11:39:48

13   to be a check to Mr. DiPaula, correct?                  11:39:52

14       A   That's what you purport it to be.               11:39:56

15       Q   And it purports to be -- does this purport     11:39:59

16   to be the check according to this e-mail for           11:40:05

17   payment of his severance, correct?                      11:40:09

18       A   That's what you purport it to be, sir.          11:40:12

19       Q   Have you paid any Compass employees other      11:40:16

20   than Mr. DiPaula for checks that don't -- with         11:40:21

21   checks that don't come from a Compass Marketing        11:40:26

22   operating account?                                      11:40:30

| | | |
|---|---|---|
| 1 | MR. JORDAN:  Objection to the relevance of | 11:40:30 |
| 2 | this. | 11:40:32 |
| 3 | A  I'm not agreeing that these are payments | 11:40:35 |
| 4 | that I made to Mr. DiPaula but I will say I do not | 11:40:38 |
| 5 | remember paying people with checks that did not | 11:40:42 |
| 6 | come from Compass except for Mr. DiPaula. | 11:40:45 |
| 7 | BY MR. STERN: | 11:40:50 |
| 8 | Q  So the only time that you recall making | 11:40:50 |
| 9 | any payments to Mr. DiPaula -- I'm sorry, the only | 11:40:52 |
| 10 | time you remember making any payments to a Compass | 11:40:55 |
| 11 | employee for wages or sums due to them for their | 11:40:58 |
| 12 | time with Compass where it didn't come from a | 11:41:02 |
| 13 | Compass Marketing account is the payment or | 11:41:03 |
| 14 | payments to Mr. DiPaula; is that correct? | 11:41:06 |
| 15 | MR. MARCUS:  Objection to the form of the | 11:41:09 |
| 16 | question. | 11:41:10 |
| 17 | MR. STERN:  Fair enough.  I'll rephrase | 11:41:11 |
| 18 | the question. | 11:41:13 |
| 19 | BY MR. STERN: | 11:41:14 |
| 20 | Q  Am I understanding you correctly that the | 11:41:15 |
| 21 | only time you paid a Compass Marketing employee | 11:41:17 |
| 22 | whether current or former sums that they were due | 11:41:21 |

| | | |
|---|---|---|
| 1 | from Compass Marketing from an account that wasn't | 11:41:25 |
| 2 | a Compass Marketing account is this instance with | 11:41:28 |
| 3 | Mr. DiPaula? | 11:41:31 |
| 4 | MR. MARCUS:  Objection to the form. | 11:41:33 |
| 5 | MR. JORDAN:  Objection, misstates his | 11:41:34 |
| 6 | testimony. | 11:41:36 |
| 7 | A  I do not remember paying anyone at Compass | 11:41:39 |
| 8 | Marketing with an account other than a Compass | 11:41:45 |
| 9 | check except for Mr. DiPaula.  I -- | 11:41:48 |
| 10 | BY MR. STERN: | 11:41:51 |
| 11 | Q  Why did you pay -- I'm sorry, I didn't | 11:41:51 |
| 12 | hear you. | 11:41:53 |
| 13 | Did you have more to say?  I couldn't hear | 11:41:54 |
| 14 | you. | 11:41:56 |
| 15 | A  I just want to repeat myself.  I don't | 11:41:57 |
| 16 | remember ever doing that another time. | 11:42:00 |
| 17 | Q  Why did you pay Mr. DiPaula with a check | 11:42:02 |
| 18 | that wasn't from a Compass Marketing account? | 11:42:05 |
| 19 | MR. JORDAN:  Objection, misstates his | 11:42:07 |
| 20 | testimony. | 11:42:09 |
| 21 | MR. MARCUS:  Objection. | 11:42:10 |
| 22 | A  I was -- I wanted to pay Mr. DiPaula with | 11:42:11 |

| | |
|---|---|
| 1 | bank checks because I was concerned that John | 11:42:16 |
| 2 | would either cancel the checks that were written | 11:42:18 |
| 3 | or not make them good or we would bounce them, one | 11:42:21 |
| 4 | of those three.  I didn't generally pay people.  I | 11:42:25 |
| 5 | wanted to make sure those payments were good. | 11:42:28 |
| 6 | BY MR. STERN: | 11:42:31 |
| 7 | Q  And what specifically was the payment for? | 11:42:31 |
| 8 | A  My recollection of the payment was that it | 11:42:36 |
| 9 | was -- that John had agreed to pay Chip some money | 11:42:38 |
| 10 | that he had never paid him and that Chip was | 11:42:44 |
| 11 | getting frustrated with that situation so John | 11:42:47 |
| 12 | asked me to step in and to see if I could work it | 11:42:49 |
| 13 | out with Chip. | 11:42:53 |
| 14 | Q  Why were you concerned that John White was | 11:42:53 |
| 15 | going to cancel the check? | 11:42:56 |
| 16 | A  John had a practice of pretending to send | 11:42:59 |
| 17 | checks that he never sent, sending pictures of | 11:43:03 |
| 18 | checks that he never sent, canceling checks that | 11:43:06 |
| 19 | he'd sent, promising checks but not sending them | 11:43:09 |
| 20 | and because he asked me to make this agreement and | 11:43:13 |
| 21 | because I thought that Chip was close to | 11:43:15 |
| 22 | complaining to the Attorney General like he told | 11:43:19 |

1    John he was close to doing, I thought we should          11:43:21

2    not screw around on this one so I only agreed to         11:43:23

3    intervene on the agreement that we would actually        11:43:26

4    do what we agreed to do.                                 11:43:29

5        Q   So how were you planning on accounting for       11:43:30

6    taxes by having the money go through an account          11:43:32

7    other than Compass Marketing?                            11:43:35

8        A   I wasn't planning on the accounting.             11:43:38

9        Q   I can't hear you.                                11:43:41

10       A   I was not planning on the accounting.  I         11:43:42

11   was planning on making sure we did not lie to Chip       11:43:45

12   DiPaula.                                                 11:43:49

13       Q   Now, the next -- going back to Exhibit 20        11:43:51

14   if I got the numbers correctly, that's the               11:43:55

15   December 9, 2015 check.                                  11:43:58

16           What does this check represent?                  11:44:18

17       A   I do not know.                                   11:44:20

18       Q   It has your name on it, correct?                 11:44:22

19       A   I don't agree with that.                         11:44:24

20       Q   You don't agree that's your name in the         11:44:27

21   upper left corner saying Remitter?                       11:44:29

22       A   That's my signature but I don't remember        11:44:32

| | | |
|---|---|---|
| 1 | seeing this.  I don't know where it came from.  I | 11:44:34 |
| 2 | don't make any representations as to this exhibit. | 11:44:37 |
| 3 | Q  Is this part of the amounts that you claim | 11:44:42 |
| 4 | were due to Mr. DiPaula? | 11:44:46 |
| 5 | MR. MARCUS:  Objection. | 11:44:50 |
| 6 | A  I do not know about your exhibit, sir. | 11:44:52 |
| 7 | BY MR. STERN: | 11:44:57 |
| 8 | Q  You said it's your signature on there. | 11:44:57 |
| 9 | Where is your signature? | 11:44:59 |
| 10 | A  I didn't mean to say that's my signature. | 11:45:01 |
| 11 | I said I do not know about your exhibit.  I will | 11:45:03 |
| 12 | say if it's helpful I did make a series of | 11:45:07 |
| 13 | payments to Chip DiPaula by cashier's check under | 11:45:10 |
| 14 | our agreement.  I do not know the amounts or | 11:45:14 |
| 15 | dates. | 11:45:16 |
| 16 | Q  How many checks total did you pay | 11:45:17 |
| 17 | Mr. DiPaula in these series of checks? | 11:45:20 |
| 18 | MR. JORDAN:  Objection to relevance of | 11:45:23 |
| 19 | this.  It seems to me like this is some sort of | 11:45:25 |
| 20 | dispute between John White, Compass and Dan White. | 11:45:27 |
| 21 | It has nothing to do with David Boshea.  In fact, | 11:45:32 |
| 22 | the Court has already quashed a subpoena to Chip | 11:45:37 |

| | | |
|---|---|---|
| 1 | DiPaula. | 11:45:41 |
| 2 | BY MR. STERN: | 11:45:43 |
| 3 | Q  Mr. White? | 11:45:43 |
| 4 | A  Would you ask -- | 11:45:46 |
| 5 | MR. MARCUS:  So what does this have to do | 11:45:48 |
| 6 | with the employment agreement and the claims that | 11:45:49 |
| 7 | are pending in the Court? | 11:45:53 |
| 8 | MR. STERN:  You'll see in a moment when I | 11:45:54 |
| 9 | get to my next exhibit. | 11:45:56 |
| 10 | BY MR. STERN: | 11:45:57 |
| 11 | Q  Mr. White, how many were the total number | 11:45:58 |
| 12 | of checks that you sent to Mr. DiPaula?  You said | 11:46:00 |
| 13 | there was a series of checks. | 11:46:03 |
| 14 | MR. JORDAN:  Same objection. | 11:46:05 |
| 15 | A  I do not remember. | 11:46:08 |
| 16 | BY MR. STERN: | 11:46:12 |
| 17 | Q  Was it more than these two? | 11:46:12 |
| 18 | A  I'm not saying these two were payments | 11:46:16 |
| 19 | that I made to Mr. DiPaula.  I don't know. | 11:46:19 |
| 20 | They're your exhibits.  I make no representations | 11:46:22 |
| 21 | about them.  I do not remember -- | 11:46:24 |
| 22 | Q  So -- | 11:46:26 |

1        MR. MARCUS:  Just let him finish, please.        11:46:26

2   BY MR. STERN:                                          11:46:28

3      Q  These weren't the checks -- I'm sorry, I         11:46:29

4   didn't realize you were still talking.                 11:46:31

5      A  Okay, go ahead.                                  11:46:33

6        MR. MARCUS:  No, finish your answer.              11:46:34

7      A  I do not remember how many checks there          11:46:35

8   were.                                                  11:46:39

9   BY MR. STERN:                                          11:46:41

10     Q  If these are not the checks where would          11:46:41

11  those checks be?  Were there other cashier's           11:46:43

12  checks that you sent to Mr. DiPaula?                    11:46:48

13       MR. JORDAN:  Same objection as previous.          11:46:52

14     A  I do not know.  The last I saw them they         11:46:55

15  were in the office that they locked me out of on       11:46:58

16  May 1, 2019.                                           11:47:02

17       MR. STERN:  I'd like to go to the next            11:47:12

18  exhibit which is a check dated December 1, 2015.       11:47:13

19       (D. White Deposition Exhibit 21 was marked       11:47:13

20  for identification and attached to the                 11:47:13

21  transcript.)                                           11:47:13

22

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 11:47:13 |
| 2 |    Q  It's a Compass Marketing check dated | 11:47:32 |
| 3 | December 1, 2015 paid to the order of Daniel J. | 11:47:36 |
| 4 | White for $65,000, do you see that? | 11:47:40 |
| 5 |    A  I see your exhibit, sir. | 11:47:42 |
| 6 |    Q  Whose signature is on that check? | 11:47:45 |
| 7 |    A  I do not know. | 11:47:47 |
| 8 |    Q  You don't recognize that signature? | 11:47:49 |
| 9 |    A  I don't know anything about that exhibit, | 11:47:52 |
| 10 | sir.  That's your exhibit.  I make no | 11:47:54 |
| 11 | representations. | 11:47:57 |
| 12 |    Q  I asked do you recognize the signature on | 11:47:58 |
| 13 | that check? | 11:48:00 |
| 14 |    A  I do not know whose signature that is. | 11:48:01 |
| 15 |    Q  Who had authority to sign checks for | 11:48:04 |
| 16 | Compass Marketing in December of 2015? | 11:48:08 |
| 17 |    A  I do not know. | 11:48:10 |
| 18 |    Q  What does the memo on that check say? | 11:48:14 |
| 19 |    MR. JORDAN:  Objection to the relevance of | 11:48:17 |
| 20 | this. | 11:48:19 |
| 21 | BY MR. STERN: | 11:48:21 |
| 22 |    Q  Mr. White? | 11:48:22 |

1          MR. MARCUS:  The document speaks for          11:48:24

2     itself.                                            11:48:25

3     BY MR. STERN:                                      11:48:26

4        Q  Would you please read what the memo says,    11:48:26

5     Mr. White?                                         11:48:28

6        A  The memo says "Final payments to James       11:48:33

7     DiPaula and Patrick Miller."                       11:48:36

8        Q  So why would Compass Marketing issue a       11:48:38

9     check to you with final payments to James DiPaula  11:48:41

10    and Patrick Miller?                                11:48:47

11         MR. JORDAN:  Objection to relevance.          11:48:48

12       A  I don't -- I don't agree to anything about   11:48:52

13    your exhibit.  I don't make any representations    11:48:57

14    about your exhibit.                                11:49:00

15    BY MR. STERN:                                      11:49:03

16       Q  Mr. White, you mentioned a while -- just a   11:49:03

17    few minutes ago that you had an agreement with     11:49:06

18    Mr. DiPaula.                                        11:49:09

19         Do you remember that testimony?              11:49:10

20       A  I made an agreement on behalf of our         11:49:12

21    company with Mr. DiPaula and Mr. Miller, that's    11:49:14

22    correct.                                           11:49:18

| | | |
|---|---|---|
| 1 | Q  And that payment to Mr. -- and that | 11:49:18 |
| 2 | agreement with Mr. DiPaula and Mr. Miller was on | 11:49:21 |
| 3 | behalf of the company? | 11:49:28 |
| 4 | MR. MARCUS:  Objection. | 11:49:30 |
| 5 | MR. JORDAN:  Objection to relevance. | 11:49:32 |
| 6 | MR. MARCUS:  And you told us that you're | 11:49:35 |
| 7 | going to get to why any of these questions is | 11:49:36 |
| 8 | related to this case and we're still not there. | 11:49:38 |
| 9 | You're going to need to tell us what it is that | 11:49:44 |
| 10 | this relates to in this litigation. | 11:49:47 |
| 11 | BY MR. STERN: | 11:49:50 |
| 12 | Q  Mr. White, did you make that agreement | 11:49:50 |
| 13 | with Mr. DiPaula and Mr. Miller on behalf of | 11:49:53 |
| 14 | Compass Marketing? | 11:49:56 |
| 15 | MR. JORDAN:  Objection, asked and | 11:49:58 |
| 16 | answered. | 11:50:03 |
| 17 | A  Yes, I made it on behalf of our company. | 11:50:03 |
| 18 | BY MR. STERN: | 11:50:07 |
| 19 | Q  And that agreement was for payments for | 11:50:08 |
| 20 | what? | 11:50:10 |
| 21 | MR. JORDAN:  Objection, relevance and | 11:50:11 |
| 22 | asked and answered. | 11:50:13 |

1          A   I don't have a perfect recollection,              11:50:19

2     Mr. Stern, but I believe it was for outstanding            11:50:21

3     expense reports and whatever agreement that John           11:50:25

4     had made to pay them.  I don't know all the                11:50:29

5     detail.                                                    11:50:31

6     BY MR. STERN:                                              11:50:32

7          Q   Now, this check is made to you for                11:50:33

8     $65,000, correct?                                          11:50:36

9          A   That's what you say it is.                        11:50:37

10         Q   Is that what the check says?                      11:50:39

11             MR. JORDAN:  Objection.  The document             11:50:42

12     speaks for itself and it's not relevant to this           11:50:43

13     lawsuit.                                                  11:50:45

14     BY MR. STERN:                                             11:50:47

15         Q   Is that what the check says?                      11:50:47

16             MR. JORDAN:  Lack of foundation.  Same as         11:50:49

17     the prior objection.                                      11:50:53

18     BY MR. STERN:                                             11:50:54

19         Q   Mr. White?                                        11:50:55

20         A   I don't have any representations to make          11:50:55

21     about your exhibits, sir.                                 11:50:57

22         Q   Can you scroll down a little bit please to        11:50:59

| | | |
|---|---|---|
| 1 | show the signature on the back of that check? | 11:51:01 |
| 2 | Is that your signature? | 11:51:04 |
| 3 | A  I do not know. | 11:51:06 |
| 4 | Q  You don't know if that's your signature? | 11:51:07 |
| 5 | A  I do not know. | 11:51:09 |
| 6 | Q  Do you recall cashing this check? | 11:51:11 |
| 7 | MR. JORDAN:  Same objections as previous, | 11:51:14 |
| 8 | all three of them. | 11:51:17 |
| 9 | A  I do not recall from 2015. | 11:51:18 |
| 10 | BY MR. STERN: | 11:51:22 |
| 11 | Q  Do you recall how you got the money to | 11:51:23 |
| 12 | issue the cashier's checks to Mr. DiPaula? | 11:51:24 |
| 13 | A  I do not recall. | 11:51:28 |
| 14 | Q  Now, this check is for $65,000, correct? | 11:51:29 |
| 15 | A  That's what you say it is, sir.  I make no | 11:51:33 |
| 16 | representations about your exhibit. | 11:51:35 |
| 17 | Q  Am I mischaracterizing the document? | 11:51:37 |
| 18 | A  I don't know.  I don't know.  It's your | 11:51:41 |
| 19 | exhibit.  I don't know about it. | 11:51:43 |
| 20 | Q  Now, let's go back to that e-mail on | 11:51:46 |
| 21 | Exhibit 19.  It says "I/we agreed to 15K each for | 11:51:52 |
| 22 | any/all pay and liability plus 20K to CD." | 11:52:00 |

| | | |
|---|---|---|
| 1 | CD referring to Chip DiPaula, correct? | 11:52:06 |
| 2 | A  Sir, that's your exhibit.  I don't make | 11:52:09 |
| 3 | any representations about it. | 11:52:11 |
| 4 | Q  You would agree that $15,000 twice each, | 11:52:12 |
| 5 | that's $30,000 plus 20 is $50,000, correct? | 11:52:17 |
| 6 | A  Would I agree that 20 plus 20 plus -- | 11:52:25 |
| 7 | excuse me, say that one more time. | 11:52:30 |
| 8 | Q  15 each meaning for Mr. DiPaula and | 11:52:32 |
| 9 | Mr. Miller adds up to $30,000, correct? | 11:52:35 |
| 10 | MR. JORDAN:  Objection to relevance of | 11:52:39 |
| 11 | this. | 11:52:40 |
| 12 | BY MR. STERN: | 11:52:41 |
| 13 | Q  Plus $20,000 to CD meaning Chip DiPaula. | 11:52:41 |
| 14 | 15 plus 15 plus 20 is $50,000, correct? | 11:52:46 |
| 15 | A  15 plus 15 plus 20 is 50, that's correct. | 11:52:51 |
| 16 | Q  Now, going back to Exhibit 21 why was the | 11:52:54 |
| 17 | check to you payable for $65,000? | 11:53:01 |
| 18 | A  Sir, I don't have any representations | 11:53:06 |
| 19 | about your exhibits. | 11:53:08 |
| 20 | Q  Where did the extra $15,000 go? | 11:53:11 |
| 21 | A  Sir, I don't -- | 11:53:15 |
| 22 | | |

| | | |
|---|---|---|
| 1 | MR. JORDAN:  Objection to the relevance of | 11:53:16 |
| 2 | any of this. | 11:53:19 |
| 3 | MR. MARCUS:  You have told us repeatedly | 11:53:21 |
| 4 | that you're going to get to something that's | 11:53:23 |
| 5 | related to this case. | 11:53:25 |
| 6 | MR. STERN:  I just did.  I said that this | 11:53:27 |
| 7 | is -- this is an example where Mr. White has | 11:53:30 |
| 8 | created a fraudulent scheme before.  According to | 11:53:33 |
| 9 | his e-mails there was $50,000 in severance which | 11:53:36 |
| 10 | there's no agreement that he's shown or that's | 11:53:40 |
| 11 | been produced or that Compass has and yet even on | 11:53:42 |
| 12 | these pieces of documents there's extra money | 11:53:46 |
| 13 | flowing to him under some purported severance | 11:53:49 |
| 14 | payments. | 11:53:49 |
| 15 | MR. JORDAN:  Stephen, it sure sounds like | 11:53:52 |
| 16 | you're trying to set up some sort of claim against | 11:53:52 |
| 17 | Daniel White which is good for you but that | 11:53:56 |
| 18 | doesn't have anything to do -- | 11:53:57 |
| 19 | MR. STERN:  It goes to his credibility. | 11:53:59 |
| 20 | It goes to his credibility and it goes to the | 11:54:00 |
| 21 | credibility of the claim in this case. | 11:54:00 |
| 22 | | |

| | | |
|---|---|---|
| 1 | MR. JORDAN:  No, it has to do with your | 11:54:01 |
| 2 | claim against Daniel White which is outside of the | 11:54:03 |
| 3 | ambit -- | 11:54:07 |
| 4 | MR. STERN:  You can argue that to the | 11:54:08 |
| 5 | Court. | 11:54:08 |
| 6 | MR. JORDAN:  Stephen, can I finish?  It's | 11:54:08 |
| 7 | outside the ambit of the deposition.  Whether or | 11:54:11 |
| 8 | not Daniel White did or didn't do something, to | 11:54:17 |
| 9 | the extent that it goes to bias I think you need | 11:54:19 |
| 10 | to move on because we've been here since 8:30 your | 11:54:22 |
| 11 | time this morning.  It's almost 11:00.  We haven't | 11:54:28 |
| 12 | really gotten to any of the matters relating to | 11:54:31 |
| 13 | David Boshea and I think we should. | 11:54:34 |
| 14 | MR. STERN:  This goes directly to the | 11:54:35 |
| 15 | issue of David Boshea.  You can argue it to the | 11:54:36 |
| 16 | court if you want, definitely. | 11:54:39 |
| 17 | MR. JORDAN:  You know what?  If you have | 11:54:40 |
| 18 | something showing that Daniel White paid David | 11:54:41 |
| 19 | Boshea then maybe there's some sort of relevance | 11:54:45 |
| 20 | to it.  Other than that I don't see it. | 11:54:47 |
| 21 | BY MR. STERN: | 11:54:49 |
| 22 | Q  Mr. White, where did the extra $15,000 go? | 11:54:49 |

| | | |
|---|---|---|
| 1 | MR. JORDAN:  Objection.  Same objections. | 11:54:53 |
| 2 | BY MR. STERN: | 11:54:54 |
| 3 | Q  Was that $15,000 owed to Mr. DiPaula or | 11:54:54 |
| 4 | Mr. Miller? | 11:54:58 |
| 5 | MR. MARCUS:  Objection.  This is now well | 11:55:00 |
| 6 | beyond what you're permitted to do in terms of bad | 11:55:02 |
| 7 | faith requirements for the kind of examination | 11:55:05 |
| 8 | that you are conducting.  It has nothing to do | 11:55:09 |
| 9 | with the claim that's before the court.  Nothing. | 11:55:12 |
| 10 | I've repeatedly asked you about it and you have | 11:55:15 |
| 11 | failed to this point to make it relevant. | 11:55:18 |
| 12 | The Court admonished you in its memorandum | 11:55:21 |
| 13 | about going into matters that are extraneous for | 11:55:24 |
| 14 | which you have no explanation to support this kind | 11:55:30 |
| 15 | of an inquiry and it doesn't appear that you're in | 11:55:32 |
| 16 | any way paying attention to what the Court | 11:55:37 |
| 17 | admonished from a nonparty in the course of | 11:55:39 |
| 18 | discovery.  I have asked you repeatedly.  You have | 11:55:43 |
| 19 | told me that you're going to get to it and you | 11:55:46 |
| 20 | haven't. | 11:55:47 |
| 21 | MR. STERN:  This is.  I've just laid it | 11:55:48 |
| 22 | out for you.  Mr. White claims that there was a | 11:55:50 |

| | | |
|---|---|---|
| 1 | severance agreement with Mr. DiPaula and | 11:55:53 |
| 2 | Mr. Miller totaling $50,000 according to that | 11:55:56 |
| 3 | e-mail even though he disclaims any knowledge of | 11:55:58 |
| 4 | that e-mail.  Yet there's a check going to him for | 11:56:01 |
| 5 | $65,000 for those payments to Mr. Miller and | 11:56:04 |
| 6 | Mr. DiPaula so it goes to credibility and it shows | 11:56:08 |
| 7 | an example where Mr. White has concocted false | 11:56:11 |
| 8 | severance plans with employees just as Compass | 11:56:16 |
| 9 | Marketing contends that this is a false severance | 11:56:20 |
| 10 | plan with Mr. Boshea at the behest or initiative | 11:56:22 |
| 11 | of Mr. White and his brother, Michael White. | 11:56:25 |
| 12 | MR. JORDAN:  Well, the problem with this | 11:56:29 |
| 13 | line is the fact that it all kind of falls apart | 11:56:31 |
| 14 | unless you're going to say that he paid David | 11:56:32 |
| 15 | Boshea. | 11:56:35 |
| 16 | MR. STERN:  No, it goes to his credibility | 11:56:37 |
| 17 | for making up false allegations in this case.  You | 11:56:39 |
| 18 | can argue it to the Court if you want, Greg. | 11:56:42 |
| 19 | MR. MARCUS:  Mr. White is not a party in | 11:56:45 |
| 20 | this case.  He has made no allegations in this | 11:56:47 |
| 21 | case.  He is not a party so to the extent that | 11:56:51 |
| 22 | your whole theory is that somehow or another you | 11:56:55 |

1   can figure out a way to try to go to something          11:56:57

2   that's completely extraneous, that does not permit       11:57:00

3   you to engage in this kind of discovery.                 11:57:03

4         MR. STERN:  Now, you're saying that               11:57:06

5   Mr. White is not a party to this case.                   11:57:07

6   BY MR. STERN:                                            11:57:07

7      Q  Mr. White, did you purport to talk and            11:57:09

8   speak on behalf of Compass Marketing?                    11:57:12

9         MR. MARCUS:  In this case?                        11:57:14

10        MR. JORDAN:  Objection to the relevance.          11:57:16

11  Even if he was purporting to talk for Compass            11:57:19

12  Marketing, he's not being presented as a Compass         11:57:25

13  Marketing witness today.  He's a third-party            11:57:27

14  witness with facts relating to David Boshea and          11:57:31

15  his severance agreement and maybe with regard to         11:57:35

16  that cockamamie claim for the Realtor and the            11:57:39

17  architect but I don't believe that he's being            11:57:43

18  presented as a representative of Compass Marketing       11:57:48

19  today.  Certainly that's not my understanding.           11:57:50

20        MR. STERN:  I'm asking if he understands          11:57:52

21  he speaks on behalf of Compass Marketing.                11:57:52

22

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 11:57:55 |
| 2 | Q  Do you, Mr. White, speak on behalf of | 11:57:55 |
| 3 | Compass Marketing? | 11:57:57 |
| 4 | MR. JORDAN:  Even if he does, this line of | 11:57:58 |
| 5 | questioning doesn't have anything to do the way | 11:58:00 |
| 6 | I'm understanding it with Compass Marketing | 11:58:03 |
| 7 | authorizing anything.  You seem to be taking the | 11:58:06 |
| 8 | exact opposite position. | 11:58:08 |
| 9 | BY MR. STERN: | 11:58:10 |
| 10 | Q  Mr. White, do you contend that you can | 11:58:10 |
| 11 | speak on behalf of Compass Marketing? | 11:58:12 |
| 12 | MR. MARCUS:  Objection.  He makes no | 11:58:15 |
| 13 | contentions.  He is here to answer questions about | 11:58:17 |
| 14 | facts. | 11:58:21 |
| 15 | BY MR. STERN: | 11:58:22 |
| 16 | Q  Mr. White, please answer the question. | 11:58:23 |
| 17 | A  I do not know the answer to your question, | 11:58:24 |
| 18 | Mr. Stern. | 11:58:26 |
| 19 | Q  You don't know whether or not you believe | 11:58:27 |
| 20 | you can speak on behalf of Compass Marketing? | 11:58:29 |
| 21 | MR. MARCUS:  Objection, calls for a legal | 11:58:34 |
| 22 | conclusion. | 11:58:36 |

| | | |
|---|---|---|
| 1 | A  I don't know the answer to that question. | 11:58:37 |
| 2 | BY MR. STERN: | 11:58:40 |
| 3 | Q  Do you consider yourself an owner of | 11:58:40 |
| 4 | Compass Marketing? | 11:58:44 |
| 5 | MR. MARCUS:  Objection to the form of the | 11:58:44 |
| 6 | question. | 11:58:45 |
| 7 | MR. JORDAN:  Objection to the relevance of | 11:58:46 |
| 8 | whether he's an owner or not as to his speaking on | 11:58:47 |
| 9 | behalf of Compass Marketing.  Being a shareholder | 11:58:51 |
| 10 | doesn't give you a right to do that. | 11:58:56 |
| 11 | A  I do believe I'm a shareholder of Compass | 11:58:58 |
| 12 | Marketing, yes, sir. | 11:59:02 |
| 13 | BY MR. STERN: | 11:59:02 |
| 14 | Q  And do you think as a shareholder of | 11:59:02 |
| 15 | Compass Marketing it's appropriate for you to be | 11:59:05 |
| 16 | communicating with an adverse party that's suing | 11:59:08 |
| 17 | Compass Marketing about the lawsuit that adverse | 11:59:12 |
| 18 | party is bringing? | 11:59:15 |
| 19 | MR. JORDAN:  Objection to relevance. | 11:59:15 |
| 20 | Objection to relevance. | 11:59:19 |
| 21 | MR. STERN:  We are now -- | 11:59:17 |
| 22 | | |

| | | |
|---|---|---|
| 1 | MR. JORDAN:  Because even if he considers | 11:59:18 |
| 2 | himself an owner, there's no fiduciary obligation | 11:59:23 |
| 3 | owed by a shareholder to a corporation.  It's | 11:59:27 |
| 4 | irrelevant. | 11:59:30 |
| 5 | BY MR. STERN: | 11:59:31 |
| 6 | Q  Mr. White? | 11:59:32 |
| 7 | A  Say your question again please, Mr. Stern. | 11:59:32 |
| 8 | Q  As an owner of Compass Marketing do you | 11:59:34 |
| 9 | believe it's appropriate for you to be | 11:59:37 |
| 10 | communicating with a party that's suing Compass | 11:59:40 |
| 11 | Marketing when those communications relate to the | 11:59:43 |
| 12 | lawsuit? | 11:59:46 |
| 13 | MR. JORDAN:  Same objection. | 11:59:47 |
| 14 | MR. MARCUS:  Objection, calls for | 11:59:48 |
| 15 | speculation, calls for a legal conclusion and | 11:59:50 |
| 16 | lacks facts to support that question. | 11:59:53 |
| 17 | Under your theory, Mr. Stern, you are here | 11:59:56 |
| 18 | at his request and you have not been hired by him. | 11:59:58 |
| 19 | You have not been hired by his brother Michael and | 12:00:03 |
| 20 | to the extent that you have been engaged by a 50 | 12:00:07 |
| 21 | percent owner in this case, you are not in a | 12:00:10 |
| 22 | position to question whether or not he's got the | 12:00:13 |

| | | |
|---|---|---|
| 1 | authority. Obviously under your theory you have | 12:00:15 |
| 2 | the authority. | 12:00:19 |
| 3 | BY MR. STERN: | 12:00:22 |
| 4 | Q Mr. White, do you believe it's appropriate | 12:00:22 |
| 5 | for you as an owner of Compass Marketing to be in | 12:00:26 |
| 6 | discussions with Mr. Boshea about the lawsuit that | 12:00:31 |
| 7 | Mr. Boshea is bringing against Compass Marketing? | 12:00:33 |
| 8 | MR. JORDAN: Objection to the relevance of | 12:00:40 |
| 9 | the question. | 12:00:41 |
| 10 | MR. MARCUS: Answer again. | 12:00:41 |
| 11 | A I don't know the answer to your question. | 12:00:42 |
| 12 | BY MR. STERN: | 12:00:44 |
| 13 | Q You don't know whether it's appropriate? | 12:00:45 |
| 14 | MR. MARCUS: That's exactly what he said. | 12:00:47 |
| 15 | If you ask him again he's going to give you the | 12:00:50 |
| 16 | same answer. | 12:00:52 |
| 17 | BY MR. STERN: | 12:00:54 |
| 18 | Q Do you think it would be appropriate for | 12:00:55 |
| 19 | Michael White as an owner of Compass Marketing to | 12:00:56 |
| 20 | be discussing litigation with a party that's suing | 12:01:01 |
| 21 | Compass Marketing? | 12:01:06 |
| 22 | | |

| | | |
|---|---|---|
| 1 | MR. JORDAN:  Objection to relevance. | 12:01:06 |
| 2 | MR. MARCUS:  Objection as to his opinion | 12:01:08 |
| 3 | as to what Michael White would do or not do. | 12:01:09 |
| 4 | What does that got to do with this case? | 12:01:12 |
| 5 | BY MR. STERN: | 12:01:15 |
| 6 | Q  Mr. White, please answer. | 12:01:16 |
| 7 | MR. MARCUS:  What does it have to do with | 12:01:20 |
| 8 | this case? | 12:01:22 |
| 9 | BY MR. STERN: | 12:01:23 |
| 10 | Q  Mr. White, please answer. | 12:01:23 |
| 11 | A  I do not know the answer to your question. | 12:01:24 |
| 12 | Q  Has Compass Marketing been involved in | 12:01:30 |
| 13 | other litigation since you've been an -- civil | 12:01:32 |
| 14 | litigation since you've been an owner of the | 12:01:36 |
| 15 | company? | 12:01:38 |
| 16 | MR. JORDAN:  Objection to relevance. | 12:01:40 |
| 17 | A  Yes. | 12:01:47 |
| 18 | BY MR. STERN: | 12:01:50 |
| 19 | Q  Have you communicated with the litigants | 12:01:50 |
| 20 | or those counsel in those lawsuits against Compass | 12:01:52 |
| 21 | Marketing? | 12:02:03 |
| 22 | A  I don't remember. | 12:02:03 |

```
1      Q   How many -- I'm sorry.                        12:02:03

2      A   They were 15 years ago, the oldest ones.     12:02:10

3      Q   The only lawsuit you can think of was 15     12:02:12

4  years ago?                                           12:02:17

5      A   Not the only lawsuit.  Just one of them.     12:02:18

6      Q   Which lawsuit are you referring to?          12:02:22

7      A   Compass Marketing versus Sharing Plow and    12:02:23

8  Whythe I believe.                                    12:02:29

9      Q   In that lawsuit did you speak with the       12:02:29

10 adverse parties and their counsel?                   12:02:33

11     A   I did speak with their counsel.              12:02:35

12     Q   Outside of a deposition?                     12:02:37

13     A   Well, I was represented -- I mean Compass    12:02:40

14 had an attorney and I was present if that's --       12:02:44

15     Q   Did you have direct communications outside   12:02:46

16 the presence of your counsel?                        12:02:49

17     A   No.                                          12:02:50

18         MR. JORDAN:  Objection.  I'm not even sure   12:02:52

19 what you mean, your counsel.  It's confusing.        12:02:54

20     A   I don't recall outside of our counsel or     12:02:56

21 outside of our counsel's presence.                   12:03:00

22
```

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 12:03:04 |
| 2 | Q  What other lawsuits have there been | 12:03:04 |
| 3 | against Compass Marketing by litigants in your | 12:03:05 |
| 4 | time as an owner? | 12:03:06 |
| 5 | MR. JORDAN:  Objection to the relevance of | 12:03:08 |
| 6 | that. | 12:03:11 |
| 7 | A  I don't know them all. | 12:03:12 |
| 8 | BY MR. STERN: | 12:03:15 |
| 9 | Q  How many lawsuits are there? | 12:03:15 |
| 10 | A  I don't know. | 12:03:17 |
| 11 | MR. JORDAN:  Objection.  He just answered | 12:03:23 |
| 12 | that question.  Asked and answered. | 12:03:24 |
| 13 | BY MR. STERN: | 12:03:25 |
| 14 | Q  As a lawyer do you think it is wise to | 12:03:26 |
| 15 | speak directly with a party that's suing your | 12:03:28 |
| 16 | company? | 12:03:30 |
| 17 | MR. JORDAN:  Objection, calls for an | 12:03:32 |
| 18 | opinion.  He's not qualified as an opinion | 12:03:34 |
| 19 | witness. | 12:03:38 |
| 20 | MR. MARCUS:  He's not here to testify as a | 12:03:38 |
| 21 | lawyer.  He's not here to testify on his opinion. | 12:03:40 |
| 22 | Ask another question. | 12:03:43 |

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 12:03:44 |
| 2 | Q  Mr. White, please answer the question. | 12:03:45 |
| 3 | MR. MARCUS:  Ask another question. | 12:03:46 |
| 4 | BY MR. STERN: | 12:03:47 |
| 5 | Q  Mr. White, please answer the question. | 12:03:48 |
| 6 | MR. MARCUS:  Okay, we are certifying now | 12:03:50 |
| 7 | based on your continued abuse of this deposition | 12:03:53 |
| 8 | for matters that are extraneous under Rule | 12:03:57 |
| 9 | 30(b)(3) sub A to suspend the deposition until | 12:04:00 |
| 10 | such time as a Court will admonish you on | 12:04:05 |
| 11 | questions that are well beyond the scope of | 12:04:07 |
| 12 | discovery, okay?  We will -- | 12:04:10 |
| 13 | MR. STERN:  I want to make sure I'm | 12:04:13 |
| 14 | understanding it correctly. | 12:04:15 |
| 15 | You don't think it's appropriate to ask | 12:04:16 |
| 16 | your client questions about his extensive | 12:04:17 |
| 17 | communications with the adverse party in this case | 12:04:20 |
| 18 | and his counsel in connection with its litigation? | 12:04:22 |
| 19 | You don't think -- | 12:04:26 |
| 20 | MR. JORDAN:  Stephen, Stephen, you didn't | 12:04:27 |
| 21 | ask him -- you didn't ask him that question. | 12:04:28 |
| 22 | | |

| | | |
|---|---|---|
| 1 | MR. STERN:  I did.  I asked him | 12:04:30 |
| 2 | (inaudible) -- | 12:04:33 |
| 3 | MR. JORDAN:  You asked him about other | 12:04:33 |
| 4 | cases -- | 12:04:33 |
| 5 | MR. MARCUS:  Of course he didn't ask the | 12:04:33 |
| 6 | question.  Of course he didn't ask the question so | 12:04:35 |
| 7 | here is where we are -- | 12:04:41 |
| 8 | MR. JORDAN:  You know what?  It's 12:30 in | 12:04:43 |
| 9 | any event so I think this is a time -- before we | 12:04:44 |
| 10 | get into any kind of contretemps do you have | 12:04:49 |
| 11 | additional time, Mr. White, to sit today or do you | 12:04:53 |
| 12 | have to leave? | 12:04:55 |
| 13 | MR. MARCUS:  It was not Mr. White's -- it | 12:04:58 |
| 14 | was not Mr. White's schedule.  It was our | 12:05:00 |
| 15 | schedule.  We accommodated them. | 12:05:01 |
| 16 | MR. JORDAN:  I'm sorry. | 12:05:03 |
| 17 | MR. MARCUS:  This was done at our request | 12:05:04 |
| 18 | because we did not have time.  We carved out time | 12:05:06 |
| 19 | in order to do it and the Court incorporated the | 12:05:09 |
| 20 | availability of counsel for this deposition. | 12:05:13 |
| 21 | BY MR. STERN: | 12:05:17 |
| 22 | Q  Mr. White, do you have account access -- | 12:05:18 |

| | | |
|---|---|---|
| 1 | do you have access to Compass Marketing, Inc.'s | 12:05:24 |
| 2 | e-mails? | 12:05:27 |
| 3 | A  I do not think so. | 12:05:34 |
| 4 | Q  What do you mean you don't think so?  It's | 12:05:36 |
| 5 | either yes or no.  Either you can access the | 12:05:39 |
| 6 | e-mails or you can't. | 12:05:43 |
| 7 | A  I do not think so. | 12:05:44 |
| 8 | Q  What does that mean, I don't think so? | 12:05:46 |
| 9 | A  It means I do not think that I have access | 12:05:48 |
| 10 | to Compass Marketing, Inc.'s e-mails. | 12:05:51 |
| 11 | Q  When was the last time you attempted to | 12:05:55 |
| 12 | access Compass Marketing e-mails? | 12:05:57 |
| 13 | MR. JORDAN:  Objection to relevance. | 12:05:59 |
| 14 | MR. MARCUS:  All right, you're going to | 12:06:02 |
| 15 | have to tell us what this has to do with this | 12:06:03 |
| 16 | case, sir. | 12:06:06 |
| 17 | BY MR. STERN: | 12:06:07 |
| 18 | Q  Mr. White? | 12:06:08 |
| 19 | MR. MARCUS:  Mr. Stern, I'm going to ask | 12:06:09 |
| 20 | you again.  What does -- | 12:06:11 |
| 21 | MR. STERN:  Did you look at the documents | 12:06:12 |
| 22 | that you produced, Mr. Berman -- Mr. Marcus, I'm | 12:06:13 |

1    sorry?                                                    12:06:18

2          MR. MARCUS:  I beg your pardon, sir?                12:06:18

3          MR. STERN:  Did you look at the documents           12:06:19

4    you produced?                                             12:06:20

5          MR. MARCUS:  Yes.                                   12:06:21

6          MR. STERN:  All right, thank you.                   12:06:22

7    BY MR. STERN:                                             12:06:24

8       Q  Mr. White, when was the last time you              12:06:24

9    attempted to access e-mails from Compass                 12:06:27

10   Marketing?                                                12:06:30

11         MR. BOSHEA:  Stop badgering.                        12:06:30

12         MR. JORDAN:  David, turn off your                   12:06:32

13   microphone and please be quiet.                           12:06:34

14         MR. MARCUS:  Mr. Stern --                           12:06:34

15         MR. JORDAN:  David, turn off your                   12:06:38

16   microphone.  I don't want to hear your voice              12:06:39

17   again.                                                    12:06:42

18         MR. MARCUS:  Mr. Stern, you have yet to             12:06:43

19   answer my question.  I assume that the reason is          12:06:45

20   that you do not have an answer.                           12:06:48

21         MR. STERN:  I don't have to answer your             12:06:51

22   questions.                                                12:06:53

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 12:06:53 |
| 2 | Q  Mr. White, when was the last time you | 12:06:53 |
| 3 | attempted to access e-mails from Compass | 12:06:56 |
| 4 | Marketing? | 12:06:58 |
| 5 | MR. JORDAN:  Objection to the relevance of | 12:06:58 |
| 6 | the question. | 12:07:01 |
| 7 | MR. MARCUS:  We will include this whole | 12:07:02 |
| 8 | refusal to answer questions about the relevant | 12:07:04 |
| 9 | questions pertaining to the Complaint in our | 12:07:07 |
| 10 | request for a protective order, and we'll also | 12:07:10 |
| 11 | reflect the fact that you have refused to identify | 12:07:14 |
| 12 | any basis for any legitimate pursuit of discovery. | 12:07:18 |
| 13 | MR. STERN:  He produced a thousand pages | 12:07:24 |
| 14 | of e-mails to and from Mr. Boshea and Mr. Jordan. | 12:07:26 |
| 15 | He also produced e-mails that clearly show that | 12:07:32 |
| 16 | he's been accessing or been asked to access | 12:07:35 |
| 17 | Compass Marketing e-mails. | 12:07:38 |
| 18 | BY MR. STERN: | 12:07:38 |
| 19 | Q  So Mr. White, I'm going to ask you again. | 12:07:40 |
| 20 | When was the last time that you attempted to | 12:07:42 |
| 21 | access Compass Marketing e-mails? | 12:07:45 |
| 22 | | |

| | | |
|---|---|---|
| 1 | MR. JORDAN:  I object to that.  I object | 12:07:48 |
| 2 | to the characterization that anyone requested that | 12:07:50 |
| 3 | he access Compass Marketing e-mails or that this | 12:07:53 |
| 4 | is relevant to the issues in the case.  Asking | 12:07:57 |
| 5 | Mr. White for documents in his possession is not | 12:08:02 |
| 6 | asking him to access Compass e-mails. | 12:08:07 |
| 7 | MR. MARCUS:  And more than that it doesn't | 12:08:10 |
| 8 | have anything to do with this Complaint. | 12:08:12 |
| 9 | BY MR. STERN: | 12:08:14 |
| 10 | Q  Mr. White, are you going to answer the | 12:08:15 |
| 11 | question? | 12:08:16 |
| 12 | A  Mr. Stern, I have some of my e-mails | 12:08:27 |
| 13 | copied in my possession. | 12:08:30 |
| 14 | Are you talking about those e-mails, my | 12:08:32 |
| 15 | e-mails? | 12:08:34 |
| 16 | Q  I'm talking about accessing your Compass | 12:08:35 |
| 17 | Marketing, Inc. e-mail address. | 12:08:38 |
| 18 | MR. MARCUS:  All right, we are moving at | 12:08:41 |
| 19 | this point to terminate or limit this deposition. | 12:08:43 |
| 20 | I have been very patient.  I have done everything | 12:08:46 |
| 21 | I know how to do in order to get you to focus on | 12:08:49 |
| 22 | this discovery without success.  You have | 12:08:51 |

1    repeatedly refused to identify anything that is          12:08:54

2    relevant and pertaining to the Complaint in this         12:08:58

3    case so we will include this under our motion,           12:09:01

4    Rule 30 (b)(3)(a) as a request to have this matter       12:09:06

5    taken up before the Court on a request for a             12:09:11

6    protective order.                                        12:09:15

7         MR. STERN:  Are you ending the deposition?          12:09:18

8         MR. MARCUS:  I have asked you to ask                12:09:21

9    questions about the case for the last three --           12:09:23

10   almost three hours and change.  You have decided         12:09:26

11   that you are not interested in the subject matter        12:09:30

12   of the case.  That was your choice.  The fact of         12:09:33

13   the matter is that you have spent three hours in         12:09:37

14   attempting to get into everything other than the         12:09:41

15   claims that have been made by the plaintiff in           12:09:44

16   answer -- in the answer that you filed relevant to       12:09:49

17   this case.                                               12:09:52

18        MR. STERN:  I'd like to go to a new                 12:09:53

19   exhibit, DJW 000877.                                     12:09:55

20        MS. YEUNG:  77?                                     12:09:55

21        MR. STERN:  Yeah, it's an e-mail dated              12:10:12

22   June 7, 2021 at 4:24 p.m. is the most recent one         12:10:13

| | | |
|---|---|---|
| 1 | and the first one in that string is at 3:30 p.m. | 12:10:17 |
| 2 | (D. White Deposition Exhibit 22 was marked | 12:10:22 |
| 3 | for identification and attached to the | 12:10:22 |
| 4 | transcript.) | 12:10:23 |
| 5 | BY MR. STERN: | 12:10:23 |
| 6 | Q  Mr. White, do you see this e-mail? | 12:10:23 |
| 7 | MR. MARCUS:  Hopefully it will show up | 12:10:27 |
| 8 | here soon.  There we go. | 12:10:29 |
| 9 | BY MR. STERN: | 12:10:44 |
| 10 | Q  You see the original e-mail in this thread | 12:10:44 |
| 11 | is from Mr. Boshea to you on June 7, 2021 at | 12:10:46 |
| 12 | 3:30 p.m., do you see that? | 12:10:51 |
| 13 | A  Give me a second. | 12:10:52 |
| 14 | (Pause in the proceedings.) | 12:10:52 |
| 15 | I see that.  I see the e-mail. | 12:11:10 |
| 16 | Q  It starts off "Hi Dan, We need some help." | 12:11:13 |
| 17 | Why was Mr. Boshea asking you for help? | 12:11:16 |
| 18 | MR. MARCUS:  Objection to the form. | 12:11:20 |
| 19 | MR. JORDAN:  Objection, calls for | 12:11:22 |
| 20 | speculation. | 12:11:24 |
| 21 | A  I do not know. | 12:11:24 |
| 22 | | |

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 12:11:25 |
| 2 | Q  Did you agree to offer help to Mr. Boshea? | 12:11:25 |
| 3 | A  When Mr. Jordan asked me for things I | 12:11:36 |
| 4 | tried to help.  Does that answer your question? | 12:11:38 |
| 5 | Q  So what things did you try to help him | 12:11:41 |
| 6 | with besides the expert witness and the local | 12:11:43 |
| 7 | counsel? | 12:11:50 |
| 8 | A  I also sent him the e-mail from 2007 and I | 12:11:51 |
| 9 | don't remember other specific things. | 12:11:54 |
| 10 | Q  This is a request from Mr. Boshea.  It | 12:11:56 |
| 11 | says "Can you supply info on Wyoming and FL" -- | 12:11:59 |
| 12 | I'm assuming that means Florida -- "companies?" | 12:12:03 |
| 13 | MR. JORDAN:  Objection to relevance to the | 12:12:07 |
| 14 | lawsuit. | 12:12:09 |
| 15 | MR. MARCUS:  Well, let him ask the | 12:12:09 |
| 16 | question before you object. | 12:12:11 |
| 17 | MR. JORDAN:  I'm sorry, I thought you were | 12:12:13 |
| 18 | finished. | 12:12:15 |
| 19 | BY MR. STERN: | 12:12:15 |
| 20 | Q  "Date formed, business ID, money balances | 12:12:17 |
| 21 | and transfer info." | 12:12:21 |
| 22 | Why was Mr. Boshea asking about that? | 12:12:22 |

| | | |
|---|---|---|
| 1 | MR. JORDAN:  Same objection. | 12:12:24 |
| 2 | MR. MARCUS:  Objection as to why | 12:12:25 |
| 3 | Mr. Boshea was asking about it. | 12:12:26 |
| 4 | A  I do not know. | 12:12:27 |
| 5 | BY MR. STERN: | 12:12:28 |
| 6 | Q  Did you provide the information he | 12:12:29 |
| 7 | requested? | 12:12:30 |
| 8 | MR. JORDAN:  Objection to relevance. | 12:12:32 |
| 9 | A  I do not remember doing so. | 12:12:34 |
| 10 | BY MR. STERN: | 12:12:37 |
| 11 | Q  Next line.  "Greg is garnishing things and | 12:12:37 |
| 12 | freezing things."  The next paragraph.  "Also, can | 12:12:42 |
| 13 | you provide cases Bernie has paid on and nature of | 12:12:44 |
| 14 | suit like that girl Bernie sent pic to?" | 12:12:49 |
| 15 | Who is Bernie? | 12:12:54 |
| 16 | MR. JORDAN:  Objection to relevance. | 12:12:54 |
| 17 | A  I read that sentence.  Is there a question | 12:12:56 |
| 18 | I missed? | 12:12:58 |
| 19 | BY MR. STERN: | 12:12:58 |
| 20 | Q  Who is Bernie in that sentence? | 12:12:58 |
| 21 | A  I assume he's referring to John. | 12:13:03 |
| 22 | Q  John meaning John White? | 12:13:06 |

| | | |
|---|---|---|
| 1 | A   That's correct. | 12:13:08 |
| 2 | Q   Did you send the information that he | 12:13:10 |
| 3 | requested about this prior case and the nature of | 12:13:11 |
| 4 | the suit about some picture? | 12:13:17 |
| 5 | MR. JORDAN:  Objection, relevance. | 12:13:21 |
| 6 | A   I do not remember doing so. | 12:13:24 |
| 7 | BY MR. STERN: | 12:13:26 |
| 8 | Q   Did you have any discussions with | 12:13:26 |
| 9 | Mr. Boshea about this supposed prior lawsuit? | 12:13:28 |
| 10 | MR. JORDAN:  Same objection. | 12:13:34 |
| 11 | MR. MARCUS:  Objection. | 12:13:35 |
| 12 | A   I do not remember. | 12:13:36 |
| 13 | BY MR. STERN: | 12:13:41 |
| 14 | Q   Next line.  "If George can find those | 12:13:41 |
| 15 | e-mails Bernie sent to me that would be great." | 12:13:44 |
| 16 | Who is George? | 12:13:47 |
| 17 | A   I do not know but I assume that to be | 12:13:50 |
| 18 | George White. | 12:13:52 |
| 19 | Q   Who is George White? | 12:13:53 |
| 20 | A   That's my nephew and Mike's son. | 12:13:55 |
| 21 | Q   Did you tell Mr. Boshea that George White | 12:13:59 |
| 22 | can access Compass Marketing e-mails? | 12:14:02 |

| | | |
|---|---|---|
| 1 | A  No. | 12:14:06 |
| 2 | Q  Do you have any reason to believe -- did | 12:14:07 |
| 3 | you have any understanding as to why Mr. Boshea | 12:14:10 |
| 4 | believed that George White could access e-mails? | 12:14:13 |
| 5 | MR. JORDAN:  Objection.  It calls for a | 12:14:16 |
| 6 | fact not in evidence.  That's pure speculation on | 12:14:17 |
| 7 | your part. | 12:14:20 |
| 8 | A  I do not know. | 12:14:25 |
| 9 | BY MR. STERN: | 12:14:26 |
| 10 | Q  Do you know whether or not George White | 12:14:26 |
| 11 | can access any Compass Marketing e-mails? | 12:14:28 |
| 12 | MR. JORDAN:  Objection, relevance. | 12:14:31 |
| 13 | A  I do not know. | 12:14:34 |
| 14 | BY MR. STERN: | 12:14:36 |
| 15 | Q  Did you authorize George White to access | 12:14:36 |
| 16 | any Compass Marketing e-mails? | 12:14:39 |
| 17 | MR. JORDAN:  Objection to relevance. | 12:14:41 |
| 18 | A  I don't ever remember doing that. | 12:14:45 |
| 19 | BY MR. STERN: | 12:14:50 |
| 20 | Q  Did you offer George White your account | 12:14:50 |
| 21 | access information to get access to e-mails? | 12:14:52 |
| 22 | | |

| | |
|---|---|
| 1 | MR. JORDAN:  Objection to relevance. | 12:14:55 |
| 2 | A  In my life? | 12:14:59 |
| 3 | MR. STERN:  Since the filing of this | 12:15:03 |
| 4 | lawsuit. | 12:15:04 |
| 5 | MR. MARCUS:  Mr. Stern, I just want to | 12:15:05 |
| 6 | remind you that this deposition is almost over and | 12:15:07 |
| 7 | you have failed to identify anything that's | 12:15:10 |
| 8 | relevant to the Complaint.  To the extent that you | 12:15:14 |
| 9 | have wasted the entirety of this deposition on | 12:15:17 |
| 10 | matters that are extraneous, we're not going to be | 12:15:19 |
| 11 | coming back. | 12:15:22 |
| 12 | BY MR. STERN: | 12:15:24 |
| 13 | Q  Mr. White, since the filing of this | 12:15:25 |
| 14 | lawsuit did you offer Mr. White, Mr. George White | 12:15:27 |
| 15 | any account access information to get Compass | 12:15:32 |
| 16 | Marketing e-mails? | 12:15:35 |
| 17 | MR. JORDAN:  Objection to relevance. | 12:15:36 |
| 18 | A  Since this lawsuit I don't remember ever | 12:15:39 |
| 19 | speaking with George White about this lawsuit or | 12:15:43 |
| 20 | talking to him about accessing e-mails or giving | 12:15:46 |
| 21 | him access or anything else.  George White has | 12:15:51 |
| 22 | nothing to do with this lawsuit and you know it. | 12:15:53 |

1   BY MR. STERN:                                      12:15:56

2       Q  Did you have any conversation with          12:15:56

3   Mr. Boshea about George White in connection with   12:15:58

4   this lawsuit?                                      12:16:00

5       A  No, sir.                                    12:16:02

6       Q  Did you have any e-mails with Mr. Boshea    12:16:03

7   about George White in accessing e-mails in         12:16:06

8   connection with this lawsuit?                      12:16:11

9       A  I have one like this that you have up on    12:16:12

10  the screen where he asked me apparently to have    12:16:15

11  George see if he could find them.  He may have     12:16:17

12  sent that request more than once.  He may have     12:16:20

13  text it.  I don't know.  I didn't reply to it.     12:16:24

14  George has nothing to do with this lawsuit and you 12:16:27

15  know it.                                           12:16:30

16      Q  Why did you then forward this e-mail to     12:16:30

17  Michael White?                                     12:16:32

18      A  I don't know.  I generally kept him in the  12:16:33

19  loop I think.  You and your friend there,          12:16:38

20  Mr. Bateman have been trying to get George in      12:16:48

21  trouble for a long time and you know it's wrong.   12:16:51

22      Q  The e-mail ends "Any other info you think   12:16:57

| | | |
|---|---|---|
| 1 | Greg can use to put Stern/Bernie down to settle." | 12:17:00 |
| 2 | Did you offer to help Mr. Boshea to | 12:17:04 |
| 3 | provide information to encourage a settlement with | 12:17:08 |
| 4 | Compass Marketing? | 12:17:11 |
| 5 | MR. MARCUS: Objection. | 12:17:13 |
| 6 | A I think when Mr. Jordan asked me for | 12:17:16 |
| 7 | things I tried to help him. I don't remember | 12:17:18 |
| 8 | specifically getting requests from David and | 12:17:20 |
| 9 | helping David directly. I don't remember that. | 12:17:26 |
| 10 | BY MR. STERN: | 12:17:30 |
| 11 | Q Was he asking for any information here | 12:17:30 |
| 12 | unrelated to his employment agreement? | 12:17:33 |
| 13 | A I'm not sure what he's asking for exactly. | 12:17:38 |
| 14 | Q Does anything with this Wyoming or Florida | 12:17:41 |
| 15 | company relate to his employment agreement as far | 12:17:47 |
| 16 | as you know? | 12:17:49 |
| 17 | A Well, that's kind of a wide open question | 12:17:50 |
| 18 | but I'm not sure exactly. | 12:17:55 |
| 19 | Q Why aren't you sure? | 12:17:57 |
| 20 | A I don't know enough about the lawsuit, | 12:18:04 |
| 21 | what's connected and what's not, sir. | 12:18:07 |
| 22 | Q Haven't you been getting e-mails and | 12:18:09 |

| | | |
|---|---|---|
| 1 | regular updates from Mr. Jordan and Mr. Boshea | 12:18:12 |
| 2 | throughout this lawsuit? | 12:18:15 |
| 3 | MR. MARCUS:  Objection to the form of the | 12:18:16 |
| 4 | question.  Answer please. | 12:18:17 |
| 5 | A  I think you have all of the updates that | 12:18:18 |
| 6 | Mr. Jordan sent me.  I think he was sending me | 12:18:20 |
| 7 | things that got filed because I'm not on the Pacer | 12:18:23 |
| 8 | e-mail list. | 12:18:28 |
| 9 | BY MR. STERN: | 12:18:30 |
| 10 | Q  So you know what's going on in this | 12:18:30 |
| 11 | lawsuit, correct? | 12:18:33 |
| 12 | MR. MARCUS:  Objection. | 12:18:34 |
| 13 | MR. JORDAN:  Objection, vague. | 12:18:35 |
| 14 | A  No, sir, I don't. | 12:18:36 |
| 15 | BY MR. STERN: | 12:18:39 |
| 16 | Q  You have no idea what's going on in this | 12:18:39 |
| 17 | lawsuit or what the legal issues are? | 12:18:42 |
| 18 | MR. MARCUS:  Objection. | 12:18:44 |
| 19 | MR. JORDAN:  Objection, misstates his | 12:18:45 |
| 20 | previous answer. | 12:18:47 |
| 21 | A  There's a difference between knowing | 12:18:48 |
| 22 | what's going on and having no idea.  I don't know | 12:18:50 |

| | | |
|---|---|---|
| 1 | what's going on in the lawsuit, sir.  It doesn't | 12:18:53 |
| 2 | mean I have no idea.  It just means I don't know | 12:18:56 |
| 3 | the things going on.  I'm not -- | 12:18:59 |
| 4 | BY MR. STERN: | 12:18:59 |
| 5 |    Q  What's the difference? | 12:18:59 |
| 6 |     MR. MARCUS:  Objection. | 12:19:01 |
| 7 |     MR. JORDAN:  What's the relevance of this? | 12:19:05 |
| 8 |     MR. MARCUS:  It's just a waste of time. | 12:19:08 |
| 9 |    A  I know the public documents.  I don't know | 12:19:09 |
| 10 | all the discussions with you and Mr. Jordan and | 12:19:12 |
| 11 | the settlement and all of that stuff.  That | 12:19:14 |
| 12 | doesn't concern me. | 12:19:18 |
| 13 | BY MR. STERN: | 12:19:20 |
| 14 |    Q  Well, this is now the second communication | 12:19:20 |
| 15 | that you received from Mr. Boshea about settlement | 12:19:21 |
| 16 | discussions in this case. | 12:19:24 |
| 17 |     Why is that -- why are you being asked | 12:19:26 |
| 18 | about information related to settlement in this | 12:19:29 |
| 19 | lawsuit then? | 12:19:33 |
| 20 |     MR. JORDAN:  Objection.  That misstates | 12:19:34 |
| 21 | the document. | 12:19:36 |
| 22 |    A  I don't know, sir. | 12:19:43 |

| | | |
|---|---|---|
| 1 | MR. STERN:  I'm going to show you an | 12:19:54 |
| 2 | exhibit now, DJW 000285.  It's an e-mail dated | 12:19:55 |
| 3 | January 14, 2021 at 11:08 a.m. | 12:20:09 |
| 4 | (D. White Deposition Exhibit 23 was marked | 12:20:09 |
| 5 | for identification and retained by counsel.) | 12:20:20 |
| 6 | BY MR. STERN: | 12:20:20 |
| 7 | Q  Do you see this e-mail from you to | 12:20:20 |
| 8 | Mr. Jordan? | 12:20:22 |
| 9 | MR. MARCUS:  We're trying to get it.  It | 12:20:24 |
| 10 | will show up here soon.  There we go. | 12:20:26 |
| 11 | BY MR. STERN: | 12:20:43 |
| 12 | Q  Do you remember sending this e-mail to | 12:20:43 |
| 13 | Mr. Jordan? | 12:20:45 |
| 14 | MR. MARCUS:  This is a six page e-mail. | 12:20:47 |
| 15 | We're trying to figure out what it is, sir. | 12:20:49 |
| 16 | MR. STERN:  It's a half a page e-mail. | 12:20:51 |
| 17 | MR. MARCUS:  Well, then maybe you better | 12:20:54 |
| 18 | figure out what half page we're supposed to be | 12:20:55 |
| 19 | looking at because this has got six pages in it. | 12:20:58 |
| 20 | MR. STERN:  The e-mail is about half a | 12:21:02 |
| 21 | page.  There's an attachment to it. | 12:21:05 |
| 22 | MR. MARCUS:  Okay. | 12:21:05 |

| | | |
|---|---|---|
| 1 | BY MR. STERN: | 12:21:05 |
| 2 |    Q  Do you remember sending this e-mail to | 12:21:10 |
| 3 | Mr. Jordan? | 12:21:11 |
| 4 |    A  I'm still reviewing it, sir. | 12:21:13 |
| 5 |       (Pause in the proceedings.) | 12:22:05 |
| 6 |    Q  Are you finished reading the e-mail? | 12:22:06 |
| 7 |    A  Almost.  Okay, I've read the e-mail. | 12:22:08 |
| 8 |    Q  Why did you send this e-mail with the | 12:22:14 |
| 9 | attached letter to the SEC to Mr. Jordan? | 12:22:16 |
| 10 |      MR. MARCUS:  Okay, we're not answering | 12:22:22 |
| 11 | that question. | 12:22:25 |
| 12 |      MR. JORDAN:  Objection to relevance. | 12:22:26 |
| 13 |      MR. MARCUS:  That has nothing to do with | 12:22:27 |
| 14 | this lawsuit.  It has to do with collateral | 12:22:28 |
| 15 | matters. | 12:22:31 |
| 16 |      MR. STERN:  That's fascinating because | 12:22:31 |
| 17 | your client says it's related to this lawsuit in | 12:22:34 |
| 18 | the e-mail. | 12:22:36 |
| 19 |      MR. MARCUS:  Okay. | 12:22:36 |
| 20 |      MR. STERN:  This is an example of the | 12:22:38 |
| 21 | obstruction that you and your client have been | 12:22:39 |
| 22 | undertaking throughout this deposition claiming | 12:22:42 |

| | | |
|---|---|---|
| 1 | things are not relevant and he's communicating | 12:22:44 |
| 2 | extensively with Mr. Jordan about this lawsuit. | 12:22:46 |
| 3 | He specifically says in here in this e-mail, and | 12:22:49 |
| 4 | I'll read it to you, "I send it to hopefully give | 12:22:52 |
| 5 | some context, in terms of names and companies and | 12:22:55 |
| 6 | times, to our discussion and your decision making | 12:22:58 |
| 7 | regarding this matter." | 12:23:00 |
| 8 | This matter presumably is this lawsuit | 12:23:02 |
| 9 | because there's nothing else that he's been | 12:23:05 |
| 10 | discussing with Mr. Jordan. | 12:23:07 |
| 11 | MR. JORDAN:  Stephen, the witness's belief | 12:23:09 |
| 12 | as to what's relevant to the lawsuit doesn't | 12:23:12 |
| 13 | change the pleadings -- | 12:23:15 |
| 14 | MR. STERN:  The letter says "I share this | |
| 15 | with you because I believe that David Boshea was | |
| 16 | terminated because he refused to go along" so he | |
| 17 | brought this in to himself. | |
| 18 | MR. MARCUS:  You keep saying that -- | |
| 19 | BY MR. STERN: | |
| 20 | Q  Mr. White, why did you send this e-mail | 12:23:25 |
| 21 | and letter to Mr. Jordan? | 12:23:28 |
| 22 | | |

1      MR. JORDAN:  Objection to relevance.  It                    12:23:30

2  doesn't relate to any pleading that we have filed             12:23:33

3  in the case other than responses to questions that           12:23:35

4  you had which weren't relevant in your                        12:23:39

5  interrogatories.                                              12:23:41

6  BY MR. STERN:                                                 12:23:41

7      Q  Mr. White?                                             12:23:46

8      A  I sent it for context.  I sent it to give             12:23:47

9  him some context.                                             12:23:49

10     Q  Context for what?                                      12:23:51

11     MR. MARCUS:  The document speaks for                      12:23:54

12  itself.                                                      12:23:55

13     A  About --                                               12:23:56

14  BY MR. STERN:                                                12:23:59

15     Q  How did you think it was going to help                12:23:59

16  Mr. Boshea in his lawsuit representing Mr. -- I'm            12:24:01

17  sorry, how did you think it was going to help                12:24:06

18  Mr. Jordan in connection with his lawsuit                    12:24:09

19  representing Mr. Boshea?                                      12:24:11

20     MR. JORDAN:  Objection to relevance to the               12:24:11

21  witness's belief as to what would help Mr. Boshea.          12:24:13

22

| | | |
|---|---|---|
| 1 | MR. MARCUS:  And what does this have to do | 12:24:18 |
| 2 | with the claim? | 12:24:20 |
| 3 | BY MR. STERN: | 12:24:23 |
| 4 | Q  Mr. White? | 12:24:24 |
| 5 | MR. MARCUS:  You again, Mr. Stern, | 12:24:25 |
| 6 | continue to evade the question. | 12:24:28 |
| 7 | BY MR. STERN: | 12:24:31 |
| 8 | Q  Mr. White? | 12:24:32 |
| 9 | MR. MARCUS:  Okay, add that to our list of | 12:24:34 |
| 10 | issues for the protective order, collateral | 12:24:38 |
| 11 | investigations involving counsel and other | 12:24:41 |
| 12 | parties.  This is not a place for that kind of | 12:24:44 |
| 13 | discovery to take place.  This is not a place for | 12:24:45 |
| 14 | you to engage in preparing defenses to other | 12:24:48 |
| 15 | actions taken by other tribunals having to do with | 12:24:52 |
| 16 | your conduct and that's what you've used this | 12:24:56 |
| 17 | entire deposition to do. | 12:25:00 |
| 18 | BY MR. STERN: | 12:25:02 |
| 19 | Q  Mr. White? | 12:25:04 |
| 20 | A  Yes, sir.  Can you say the question again? | 12:25:05 |
| 21 | Q  Why did you think it was going to be | 12:25:07 |
| 22 | helpful in giving Mr. Jordan context about this | 12:25:09 |

| | | |
|---|---|---|
| 1 | lawsuit? | 12:25:13 |
| 2 | A  Well, you keep calling it litigation and | 12:25:14 |
| | lawsuit but I think it was a wrongful termination | 12:25:18 |
| | and I thought it would help Mr. Jordan understand | 12:25:20 |
| | why Mr. Boshea was terminated in my opinion. | 12:25:23 |
| 6 | Q  Well, when -- so you think it has | 12:25:28 |
| | something to do with his termination.  I'm going | 12:25:30 |
| | to go down then to the last paragraph.  "I share | 12:25:32 |
| | this with you because I believe that David Boshea | 12:25:35 |
| | was terminated because he refused to go along with | 12:25:38 |
| | a new investment scam initiative.  I say that | 12:25:41 |
| | because as soon as he was terminated, a new | 12:25:43 |
| | Tagnetics was created in Wyoming (Smart Retail, | 12:25:46 |
| | LLC)." | 12:25:50 |
| 15 | When was Smart Retail created? | 12:25:51 |
| 16 | MR. JORDAN:  Objection to the relevance to | 12:25:53 |
| | the lawsuit. | 12:25:55 |
| 18 | A  You created it so -- | 12:25:56 |
| 19 | MR. STERN:  It goes to his credibility. | 12:25:57 |
| | Go ahead. | 12:25:59 |
| 21 | MR. MARCUS:  His credibility -- | 12:26:00 |
| 22 | | |

| | | |
|---|---|---|
| 1 | MR. JORDAN:  No, it has no relevance to | 12:26:00 |
| 2 | anything. | 12:26:02 |
| 3 | BY MR. STERN: | 12:26:03 |
| 4 | Q  Mr. White, when was Smart Retail created? | 12:26:04 |
| 5 | MR. JORDAN:  Objection, relevance. | 12:26:08 |
| 6 | MR. MARCUS:  Mr. Stern, you have now | 12:26:09 |
| 7 | revealed the exact reason to attack Mr. White's | 12:26:10 |
| 8 | credibility which has nothing to do with this | 12:26:15 |
| 9 | case.  What you -- | 12:26:18 |
| 10 | MR. STERN:  Credibility is always relevant | 12:26:20 |
| 11 | and this is showing that he's lying here because | 12:26:21 |
| 12 | he knows that Smart Retail was created a year | 12:26:24 |
| 13 | before Mr. Boshea was terminated. | 12:26:27 |
| 14 | MR. JORDAN:  First off, what relevance | 12:26:30 |
| 15 | does that have to the fact that it was created a | 12:26:33 |
| 16 | year before?  I don't follow this line at all. | 12:26:35 |
| 17 | MR. STERN:  (Inaudible) the credibility | 12:26:39 |
| 18 | that this is just a smear campaign by Mr. White as | 12:26:40 |
| 19 | evidenced by the prior e-mail where he's being | 12:26:44 |
| 20 | asked to provide all sorts of information that has | 12:26:46 |
| 21 | nothing to do with this lawsuit.  This is just his | 12:26:49 |
| 22 | attempt -- | 12:26:52 |

1      MR. JORDAN:  You're right, it has nothing          12:26:54

2    to do with the lawsuit.                              12:26:55

3      MR. STERN:  -- to tar and feather Compass          12:26:55

4    Marketing and to distract with irrelevant            12:26:57

5    information and to assist at the same time by         12:27:00

6    providing documents about this lawsuit.              12:27:03

7      MR. MARCUS:  What you have basically done          12:27:10

8    is now confirmed our suspicions that this            12:27:12

9    deposition has nothing to do with anything other     12:27:14

10   than trying to develop a record to defend yourself   12:27:16

11   in other tribunals for investigations that are now   12:27:19

12   being conducted.                                     12:27:22

13     MR. STERN:  I have no idea what you're             12:27:23

14   talking about.                                       12:27:24

15     MR. MARCUS:  I know you don't.                     12:27:25

16     MR. STERN:  This is about documents that           12:27:28

17   your client produced in this lawsuit and it's        12:27:29

18   about a supposed owner of this company               12:27:33

19   communicating extensively with the opposing party   12:27:37

20   and his counsel about the very lawsuit that's        12:27:40

21   being brought against his company.                   12:27:43

22

| | |
|---|---|
| 1 | MR. BOSHEA:  Let's right a wrong. | 12:27:48 |
| 2 | MR. JORDAN:  David, turn off your | 12:27:52 |
| 3 | microphone and be quiet. | 12:27:53 |
| 4 | MR. STERN:  And when he says a false | 12:27:54 |
| 5 | statement I'm allowed to explore it. | 12:27:56 |
| 6 | MR. MARCUS:  Your idea of what false | 12:27:58 |
| 7 | statements are and positions that have been | 12:28:00 |
| 8 | assumed by this company and what is right and what | 12:28:02 |
| 9 | is wrong, you're entitled to that.  What you're | 12:28:05 |
| 10 | not entitled to do is to call somebody who is a | 12:28:08 |
| 11 | nonparty, make these claims and then attempt to | 12:28:10 |
| 12 | smear them and make these allegations that you | 12:28:13 |
| 13 | have made in order for further discovery in a case | 12:28:16 |
| 14 | involving the company and Mr. Boshea.  Mr. White | 12:28:19 |
| 15 | is not, and I repeat, not a party to this | 12:28:27 |
| 16 | litigation. | 12:28:29 |
| 17 | MR. STERN:  But he's certainly helping a | 12:28:29 |
| 18 | party in this litigation and I'm allowed to | 12:28:31 |
| 19 | explore that. | 12:28:35 |
| 20 | MR. MARCUS:  You're going to have to | 12:28:37 |
| 21 | explain that because the only issues that I | 12:28:39 |
| 22 | understand are Mr. Boshea and Compass.  That's it. | 12:28:42 |

| | | |
|---|---|---|
| 1 | You got claims that you think you need to make | 12:28:48 |
| 2 | then I assume that you'll make them.  You have not | 12:28:50 |
| 3 | done so and we are at -- | 12:28:53 |
| 4 | MR. STERN:  Per a piece of this e-mail | 12:28:57 |
| 5 | that your client sent he's purporting that it | 12:28:58 |
| 6 | relates to this lawsuit and I want to try to | 12:29:01 |
| 7 | understand why. | 12:29:04 |
| 8 | MR. MARCUS:  Okay, you'll have an | 12:29:05 |
| 9 | opportunity to do that another occasion. | 12:29:07 |
| 10 | BY MR. STERN: | 12:29:12 |
| 11 | Q  Mr. White? | 12:29:12 |
| 12 | MR. MARCUS:  It's 12:30, sir.  Thank you | 12:29:14 |
| 13 | very much. | 12:29:16 |
| 14 | MR. STERN:  This deposition is not over. | 12:29:17 |
| 15 | We reserve the right to continue it.  We did not | 12:29:19 |
| 16 | get through all the material today that I needed | 12:29:21 |
| 17 | to cover.  There's only a small fraction of the | 12:29:23 |
| 18 | documents that Mr. White produced.  He was | 12:29:26 |
| 19 | evasive.  You spent a lot of time with speaking | 12:29:28 |
| 20 | objections and trying to interfere with this | 12:29:31 |
| 21 | deposition.  We will take it up with the Court. | 12:29:33 |
| 22 | Thank you very much. | 12:29:35 |

| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER:  We are now going off | 12:29:38 |
| 2 | record.  This marks the end of the deposition for | 12:29:39 |
| 3 | today.  The time is 12:30 p.m. | 12:29:41 |
| 4 | (Discussion off the video record.) | 12:29:41 |
| 5 | THE REPORTER:  Can I get your transcript | 12:29:41 |
| 6 | order, please? | 12:29:44 |
| 7 | MR. JORDAN:  We'll order the electronic | 12:31:05 |
| 8 | version only.  We don't need a video. | 12:31:08 |
| 9 | MR. STERN:  We'll have both. | 12:31:15 |
| 10 | MR. MARCUS:  We will let you know.  Can | 12:31:18 |
| 11 | you make sure that we have your information? | 12:31:20 |
| 12 | We're only going to need, if anything, an | 12:31:23 |
| 13 | electronic copy if you please. | 12:31:26 |
| 14 | MR. STERN:  Video and the transcript | 12:31:36 |
| 15 | that's searchable by terms and can be printed in | 12:31:41 |
| 16 | full copy and Minuscript as well. | 12:31:43 |
| 17 | (Off the record at 12:32 p.m.) | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |

```
1            CERTIFICATE OF SHORTHAND REPORTER-

2                    NOTARY PUBLIC

3

4          I, Vicki L. Forman, Court Reporter, the

5     officer before whom the foregoing proceedings were

6     taken, do hereby certify that the foregoing

7     transcript is a true and correct record of the

8     proceedings; that said proceedings were taken by

9     me stenographically and thereafter reduced to

10    typewriting under my supervision; and that I am

11    neither counsel for, related to, nor employed by

12    any of the parties to this case and have no

13    interest, financial or otherwise, in its outcome.

14          IN WITNESS WHEREOF, I have hereunto set my

15    hand and affixed my notarial seal this 3rd day of

16    December, 2021.

17    My Commission Expires:

18    June 24, 2024

19

20    _____

21    NOTARY PUBLIC IN AND FOR

22    THE STATE OF MARYLAND
```

| A | | | |
|---|---|---|---|

**ability**
24:8, 25:14,
27:9
**able**
27:14, 47:18,
56:18, 97:16,
130:20, 136:19,
137:14
**absolutely**
30:14, 73:9,
75:17
**abundance**
13:19
**abuse**
195:7
**access**
196:22, 197:1,
197:5, 197:9,
197:12, 198:9,
199:3, 199:16,
199:21, 200:3,
200:6, 205:22,
206:4, 206:11,
206:15, 206:21,
207:15, 207:21
**accessing**
199:16, 200:16,
207:20, 208:7
**accommodated**
196:15
**accompanied**
15:10
**according**
21:16, 22:5,
24:12, 46:14,
169:16, 183:8,
186:2
**account**
95:4, 95:6,
95:16, 95:17,
96:6, 96:19,
97:3, 97:6,
97:9, 97:13,
126:14, 130:15,
130:21, 131:3,
131:11, 131:12,

131:13, 155:9,
163:9, 169:22,
170:13, 171:1,
171:2, 171:8,
171:18, 173:6,
196:22, 206:20,
207:15
**accounting**
173:5, 173:8,
173:10
**accurate**
18:4
**action**
1:6, 74:19
**actions**
120:3, 146:2,
146:5, 216:15
**activity**
98:17
**acts**
147:7
**actually**
8:20, 10:19,
31:17, 61:15,
80:16, 108:8,
144:22, 173:3
**add**
216:9
**addition**
14:8
**additional**
196:11
**address**
28:13, 77:4,
153:21, 156:4,
200:17
**addressee**
127:5
**addressees**
126:22
**addressing**
27:7
**adds**
182:9
**admonish**
195:10
**admonished**
185:12, 185:17

**adverse**
22:19, 189:16,
189:17, 193:10,
195:17
**advice**
79:15, 81:13,
84:20, 115:13
**advil**
39:18, 42:17,
43:4
**advise**
83:12
**advised**
47:3
**advising**
80:13, 81:8,
82:16, 83:3,
84:1
**advisor**
9:10, 9:12,
82:2
**affixed**
223:15
**after**
16:14, 36:22,
93:4, 108:11,
108:15, 131:6,
159:12, 159:19
**afternoon**
54:19
**ag**
169:1, 169:7
**again**
18:16, 18:20,
19:9, 31:21,
34:16, 35:11,
41:5, 41:9,
45:8, 49:4,
56:20, 58:2,
59:15, 63:8,
66:9, 67:15,
69:18, 72:3,
79:1, 81:6,
82:20, 83:20,
84:4, 90:13,
92:12, 92:21,
96:3, 101:10,
111:15, 113:19,

118:13, 129:10,
137:10, 140:14,
141:14, 141:18,
142:20, 144:7,
144:16, 146:10,
149:12, 151:7,
152:13, 153:8,
159:9, 161:12,
162:3, 190:7,
191:10, 191:15,
197:20, 198:17,
199:19, 216:5,
216:20
**against**
48:18, 49:16,
55:13, 55:22,
57:13, 57:16,
58:5, 58:16,
59:3, 59:12,
60:2, 60:10,
65:1, 66:20,
68:15, 69:1,
69:10, 71:19,
77:12, 77:14,
82:4, 82:17,
83:4, 83:12,
84:1, 84:20,
86:12, 86:18,
87:10, 89:4,
100:6, 100:14,
100:22, 101:6,
101:16, 147:19,
147:20, 183:16,
184:2, 191:7,
192:20, 194:3,
219:21
**agent**
62:4, 62:10
**agents**
121:16, 121:18,
122:2, 122:12
**ago**
20:5, 39:11,
39:16, 102:14,
102:16, 133:1,
138:22, 178:17,
193:2, 193:4
**agree**
161:17, 169:9,

173:19, 173:20,
178:12, 182:4,
182:6, 203:2
**agreed**
157:2, 159:19,
172:9, 173:2,
173:4, 181:21
**agreeing**
170:3
**agreement**
2:8, 20:15,
30:1, 31:13,
33:13, 34:15,
43:22, 70:1,
70:4, 71:8,
79:17, 79:19,
99:12, 99:15,
118:20, 133:7,
144:20, 144:21,
152:22, 153:3,
156:11, 157:11,
157:13, 157:15,
158:1, 158:5,
158:7, 158:12,
158:14, 158:15,
159:1, 159:4,
159:6, 159:7,
159:11, 159:14,
163:2, 172:20,
173:3, 174:14,
175:6, 178:17,
178:20, 179:2,
179:12, 179:19,
180:3, 183:10,
186:1, 187:15,
209:12, 209:15
**agreements**
78:20
**ahead**
18:14, 18:21,
19:16, 39:15,
41:12, 43:2,
56:17, 58:1,
63:5, 64:12,
72:2, 110:16,
123:9, 151:6,
176:5, 217:20
**all**
7:11, 9:18,

12:4, 16:17,
17:3, 25:7,
30:4, 37:14,
66:11, 76:11,
77:11, 77:14,
85:13, 113:10,
116:15, 116:19,
132:12, 133:5,
139:9, 146:2,
147:1, 147:4,
148:10, 157:3,
160:7, 166:12,
180:4, 181:8,
181:22, 186:13,
194:7, 197:14,
198:6, 200:18,
210:5, 211:10,
211:11, 218:16,
218:20, 221:16
**allegations**
186:17, 186:20,
220:12
**allow**
29:15
**allowed**
146:13, 220:5,
220:18
**almost**
184:11, 201:10,
207:6, 213:7
**along**
214:16, 217:10
**already**
141:6, 174:22
**also**
4:11, 7:22,
8:3, 10:8,
10:14, 14:5,
17:1, 21:10,
21:13, 21:22,
40:12, 135:10,
199:10, 199:15,
203:8, 204:12
**alterations**
135:2
**altered**
95:15, 95:17,
95:19, 96:5,

96:12, 96:14,
136:22
**always**
76:19, 76:20,
218:10
**ambit**
184:3, 184:7
**amended**
5:14, 28:1,
114:11
**among**
22:14
**amount**
143:16, 159:18,
165:19
**amounts**
174:3, 174:14
**annapolis**
3:18, 49:17
**annette**
49:9, 49:11
**another**
14:15, 85:8,
113:11, 154:5,
165:5, 167:9,
171:16, 186:22,
194:22, 195:3,
221:9
**answered**
27:12, 34:11,
34:12, 59:15,
63:22, 65:3,
70:8, 71:10,
71:21, 78:22,
84:12, 84:14,
84:17, 85:3,
88:21, 89:7,
101:10, 144:7,
159:9, 179:16,
179:22, 194:11,
194:12
**answering**
14:20, 15:2,
135:15, 140:11,
213:10
**answers**
5:13, 14:4,
14:6, 27:20,

28:1, 28:2,
28:4, 28:10,
33:10, 43:8,
43:20, 45:1,
46:3, 74:4,
74:5, 75:9,
114:11, 114:21,
115:3, 115:18,
116:8, 146:13
**anybody**
11:4, 11:5,
162:4
**anymore**
140:12
**anyone**
11:15, 107:5,
171:7, 200:2
**anything**
15:1, 36:14,
36:16, 36:19,
41:1, 44:15,
55:21, 56:8,
56:22, 57:4,
60:9, 60:14,
75:7, 89:12,
92:15, 92:19,
94:14, 101:19,
133:4, 141:5,
156:13, 160:6,
163:17, 163:20,
164:2, 164:5,
177:9, 178:12,
183:18, 188:5,
188:7, 200:8,
201:1, 207:7,
207:21, 209:14,
218:2, 219:9,
222:12
**apart**
148:16, 186:13
**apologies**
61:11
**apparently**
46:19, 167:2,
208:10
**appear**
27:4, 62:2,
63:11, 66:13,

130:7, 130:11,
142:10, 146:2,
185:15
**appears**
7:7, 17:11,
17:16, 18:2,
66:17, 105:8,
114:17, 117:20,
124:17, 125:6,
126:18, 126:19,
130:12, 131:13,
138:13, 138:21,
140:21
**appropriate**
32:13, 82:15,
83:2, 83:9,
189:15, 190:9,
191:4, 191:13,
191:18, 195:15
**approximately**
40:4, 54:18,
123:17, 123:21
**architect**
187:17
**aren't**
209:19
**argue**
165:14, 184:4,
184:15, 186:18
**argumentative**
101:1, 103:8,
103:14, 103:20,
104:4, 128:9,
139:19, 152:9,
153:17
**arisen**
148:14
**around**
173:2
**articulated**
76:14
**asked**
11:14, 14:11,
27:11, 34:11,
58:19, 59:6,
59:10, 59:14,
59:16, 59:20,
60:1, 60:6,

63:21, 64:7,
64:14, 65:2,
65:4, 65:7,
67:7, 67:17,
67:22, 68:3,
70:7, 71:9,
71:20, 75:10,
75:21, 76:4,
78:22, 79:11,
85:3, 88:20,
89:6, 90:21,
91:4, 93:5,
101:9, 122:15,
126:9, 138:19,
140:13, 143:10,
144:6, 145:4,
150:8, 159:8,
168:9, 172:12,
172:20, 177:12,
179:15, 179:22,
185:10, 185:18,
194:12, 196:1,
196:3, 199:16,
201:8, 203:3,
208:10, 209:6,
211:17, 218:20
**asking**
9:16, 14:2,
14:18, 17:14,
29:2, 29:6,
30:6, 31:3,
31:8, 32:2,
33:7, 33:9,
33:11, 34:9,
37:4, 46:1,
63:15, 64:13,
64:16, 64:17,
66:3, 66:14,
67:19, 68:5,
69:13, 74:12,
74:16, 75:9,
76:12, 76:13,
86:20, 87:2,
90:18, 92:21,
93:19, 98:3,
115:12, 133:21,
137:1, 137:3,
143:5, 168:14,

187:20, 200:4,
200:6, 202:17,
203:22, 204:3,
209:11, 209:13
**asks**
91:2
**assist**
219:5
**assistance**
101:6
**assume**
10:2, 10:7,
11:20, 14:10,
20:9, 57:11,
63:3, 140:6,
198:19, 204:21,
205:17, 221:2
**assumed**
220:8
**assumes**
73:4, 90:6,
90:13, 92:15,
93:9, 109:17,
110:3, 111:20,
144:15, 161:1
**assuming**
10:15, 141:5,
203:12
**attach**
90:10
**attached**
5:10, 15:22,
28:7, 43:11,
47:11, 53:15,
60:21, 62:10,
65:13, 67:8,
67:18, 80:5,
85:18, 89:18,
90:1, 90:2,
90:7, 90:14,
91:11, 92:4,
92:14, 92:16,
92:20, 97:12,
98:5, 98:13,
105:1, 105:10,
105:13, 107:18,
114:3, 114:10,
117:3, 119:16,

121:6, 124:20,
136:20, 144:20,
154:20, 156:8,
157:6, 161:5,
166:20, 167:10,
168:19, 169:12,
176:20, 202:3,
213:9
**attachment**
66:15, 90:12,
94:18, 95:6,
95:11, 116:22,
133:17, 134:3,
134:7, 134:11,
134:12, 134:14,
134:20, 135:5,
135:8, 135:10,
136:2, 136:4,
136:20, 137:13,
137:15, 137:22,
142:18, 145:11,
150:10, 154:10,
162:15, 162:16,
164:2, 212:21
**attachments**
96:19, 97:3,
97:8, 97:17,
97:20, 115:10,
164:4
**attack**
218:7
**attempt**
218:22, 220:11
**attempted**
197:11, 198:9,
199:3, 199:20
**attempting**
201:14
**attending**
7:12, 44:18,
45:9
**attention**
20:6, 20:8,
21:10, 22:10,
28:15, 61:2,
79:21, 91:22,
153:22, 185:16
**attorney**
10:13, 12:16,

12:22, 13:14,
22:12, 22:17,
48:16, 149:15,
149:19, 150:1,
169:3, 172:22,
193:14
**attorney's**
12:19, 13:4,
13:9, 40:13,
40:18, 41:8,
41:15, 41:17,
41:20, 42:2,
42:5, 42:8,
42:11
**audible**
113:17
**audio**
10:18
**august**
15:18, 27:22,
98:10, 98:22,
101:14
**authentic**
162:13
**authenticate**
139:2, 139:10,
139:12
**authority**
23:21, 24:2,
24:10, 177:15,
191:1, 191:2
**authorize**
23:7, 206:15
**authorized**
25:13
**authorizing**
162:21, 188:7
**availability**
196:20
**avoid**
84:6
**aware**
33:5, 148:17

**B**

**b**
149:8
**b) (3**
195:9

**b) (3) (a**
74:12, 74:22,
201:4
**back**
21:11, 27:18,
53:7, 113:8,
122:20, 126:22,
150:7, 166:11,
166:16, 168:15,
168:18, 173:13,
181:1, 181:20,
182:16, 207:11
**background**
130:17
**bad**
76:15, 76:17,
185:6
**badgering**
198:11
**balances**
203:20
**bank**
163:15, 165:20,
167:11, 167:17,
172:1
**based**
22:3, 27:16,
50:6, 74:5,
195:7
**basically**
219:7
**basis**
30:11, 30:14,
72:16, 73:14,
74:9, 78:8,
145:22, 149:14,
199:12
**bateman**
4:12, 7:18,
8:22, 12:1,
208:20
**bates**
47:8, 60:16,
89:16, 91:9,
98:9, 104:19,
107:14, 113:11,
154:2, 154:4
**battle**
22:8

**bcc**
128:2, 128:7,
128:14, 128:19,
132:7, 132:16,
133:10, 133:12
**bcc'd**
132:4
**beard**
3:16
**became**
42:14
**because**
22:14, 27:3,
30:8, 30:22,
49:14, 52:7,
52:13, 53:5,
76:3, 76:17,
81:10, 125:19,
126:2, 142:21,
145:18, 146:2,
172:1, 172:20,
172:21, 184:10,
190:1, 196:18,
210:7, 212:19,
213:16, 214:9,
214:15, 214:16,
217:9, 217:10,
217:12, 218:11,
220:21
**become**
38:21
**been**
8:14, 13:7,
13:8, 13:17,
25:10, 30:15,
41:10, 41:20,
41:22, 42:3,
42:4, 42:10,
43:15, 53:6,
108:4, 108:9,
146:9, 160:21,
165:4, 165:9,
165:10, 167:6,
183:11, 184:10,
190:18, 190:19,
190:20, 192:12,
192:13, 192:14,
194:2, 199:16,

200:20, 201:15,
208:20, 209:22,
213:21, 214:9,
220:7
**before**
2:8, 8:18,
13:17, 14:22,
26:3, 26:4,
28:11, 30:16,
36:21, 37:5,
37:7, 37:10,
37:19, 39:2,
42:7, 43:19,
50:9, 67:10,
81:19, 94:5,
94:8, 94:11,
111:4, 120:3,
126:8, 126:11,
134:18, 146:19,
157:18, 158:11,
165:4, 165:6,
167:6, 168:14,
183:8, 185:9,
196:9, 201:5,
203:16, 218:13,
218:16, 223:5
**beg**
198:2
**began**
42:8, 168:13
**begin**
8:18, 113:7
**begins**
7:2, 166:17
**behalf**
3:3, 3:13, 4:1,
9:5, 25:10,
25:13, 25:15,
27:10, 39:17,
178:20, 179:3,
179:13, 179:17,
187:8, 187:21,
188:2, 188:11,
188:20, 189:9
**behest**
147:11, 186:10
**being**
10:16, 11:16,

14:4, 14:11,
17:21, 22:5,
24:18, 44:15,
53:19, 60:17,
113:14, 116:21,
121:4, 133:15,
140:17, 167:16,
187:12, 187:17,
189:9, 211:17,
218:19, 219:12,
219:21
**belief**
214:11, 215:21
**believe**
12:12, 17:22,
23:20, 24:9,
25:13, 25:14,
42:5, 46:12,
49:8, 52:16,
52:18, 52:22,
53:3, 72:16,
73:2, 76:14,
76:16, 82:7,
88:4, 88:10,
103:10, 103:16,
103:22, 104:6,
104:16, 105:22,
106:8, 106:11,
107:12, 123:4,
129:4, 134:6,
134:10, 145:15,
151:15, 151:17,
180:2, 187:17,
188:19, 189:11,
190:9, 191:4,
193:8, 206:2,
214:15, 217:9
**believed**
122:1, 206:4
**believes**
150:17, 151:2,
151:11
**belongs**
23:10
**below**
17:3, 62:9,
81:20
**beneath**
167:9

**berman**
197:22
**bernie**
204:13, 204:14,
204:15, 204:20,
205:15, 209:1
**besides**
124:2, 203:6
**best**
13:21, 14:16,
14:19, 19:5,
112:7, 129:15
**better**
212:17
**between**
31:20, 39:21,
77:9, 97:6,
120:2, 147:7,
174:20, 210:21
**beyond**
24:16, 146:10,
185:6, 195:11
**bias**
184:9
**binder**
61:9
**bit**
21:7, 180:22
**blind**
127:7, 127:8,
127:13, 132:18
**blue**
106:12
**board**
37:9, 37:18,
38:10, 39:2,
39:19, 40:1,
44:18, 45:10,
45:15, 45:19
**bonsib**
4:4
**boshea's**
27:20, 43:7,
48:16, 64:17,
67:20, 86:18,
87:1, 87:10,
91:1, 114:10,
115:8, 115:11,

116:7, 147:19
**both**
10:17, 18:9,
19:7, 158:14,
158:16, 222:9
**bottom**
48:3, 158:8
**bounce**
172:3
**bounds**
148:5
**box**
95:20, 95:21
**breach**
74:18, 78:16
**break**
108:2, 108:10,
108:15, 108:17,
113:2, 150:2,
165:6, 165:15,
166:10, 168:14
**brief**
73:13, 113:6,
166:15
**bring**
75:19
**bringing**
100:6, 189:18,
191:7
**brings**
147:13
**brother**
44:1, 45:15,
46:2, 65:18,
68:9, 68:10,
68:13, 186:11,
190:19
**brought**
69:9, 69:20,
70:6, 75:8,
75:13, 75:17,
76:18, 78:11,
86:11, 148:7,
165:1, 214:17,
219:21
**bruce**
4:2, 10:19
**building**
10:10

**bunch**
14:3
**business**
23:11, 72:15,
83:11, 83:16,
83:22, 84:5,
132:8, 203:20

### C

**calculate**
131:8
**call**
71:10, 86:4,
106:9, 220:10
**called**
32:17
**calling**
217:2
**calls**
24:4, 27:13,
50:14, 83:14,
95:8, 110:4,
115:5, 118:2,
137:16, 139:6,
145:2, 150:12,
188:21, 190:14,
190:15, 194:17,
202:19, 206:5
**came**
39:2, 40:1,
94:3, 99:21,
139:13, 139:17,
164:15, 164:18,
174:1
**camera**
7:19
**campaign**
218:18
**can't**
29:8, 29:9,
30:17, 30:18,
111:9, 112:8,
129:16, 140:9,
149:21, 173:9,
197:6
**cancel**
172:2, 172:15
**canceling**
172:18

cannot
138:6, 144:10,
144:11
capacity
9:1, 13:9,
25:17
caption
17:3
carefully
23:3
carved
196:18
case
7:6, 11:20,
25:8, 25:12,
41:2, 46:20,
73:19, 74:15,
98:17, 99:6,
110:2, 110:8,
145:1, 146:18,
147:3, 160:8,
179:8, 183:5,
183:21, 186:17,
186:20, 186:21,
187:5, 187:9,
190:21, 192:4,
192:8, 195:17,
197:16, 200:4,
201:3, 201:9,
201:12, 201:17,
205:3, 211:16,
215:3, 218:9,
220:13, 223:12
cases
196:4, 204:13
cashier's
174:13, 176:11,
181:12
cashing
181:6
cause
27:5
caution
13:19
ccd
154:11
cd
157:3, 181:22,

182:1, 182:13
certainly
25:21, 97:4,
109:19, 187:19,
220:17
certificate
223:1
certify
223:6
certifying
195:6
chairman
9:11, 9:13,
9:15
chance
17:6, 28:21,
51:6, 66:10,
80:17, 81:5,
125:7
change
29:16, 201:10,
214:13
changed
40:8, 96:18,
136:1
changes
134:17, 136:6
characterization
200:2
check
6:10, 6:11,
161:5, 161:14,
161:15, 162:16,
162:21, 163:7,
163:11, 163:14,
163:18, 163:19,
163:21, 164:7,
164:18, 164:20,
164:21, 165:16,
165:18, 165:19,
165:20, 167:5,
167:10, 167:16,
167:22, 168:3,
168:4, 168:13,
168:18, 169:12,
169:13, 169:16,
171:9, 171:17,
172:15, 173:15,

173:16, 174:13,
176:18, 177:2,
177:6, 177:13,
177:18, 178:9,
180:7, 180:10,
180:15, 181:1,
181:6, 181:14,
182:17, 186:4
checks
169:20, 169:21,
170:5, 172:1,
172:2, 172:17,
172:18, 172:19,
174:16, 174:17,
175:12, 175:13,
176:3, 176:7,
176:10, 176:11,
176:12, 177:15,
181:12
chicago
3:8, 34:21,
35:14, 35:18,
35:20, 37:15,
39:6, 39:11,
39:17, 42:6,
42:16
chip
167:18, 172:9,
172:10, 172:13,
172:21, 173:11,
174:13, 174:22,
182:1, 182:13
choice
201:12
circle
27:18, 53:7
circles
140:15
circulated
168:12
circumstance
85:5
civil
1:6, 192:13
claim
75:2, 100:21,
101:6, 129:2,
174:3, 183:16,

183:21, 184:2,
185:9, 187:16,
216:2
claiming
213:22
claims
41:10, 69:1,
69:9, 69:20,
70:6, 77:10,
147:19, 147:20,
169:3, 175:6,
185:22, 201:15,
220:11, 221:1
clarify
14:9, 122:18
clark
3:7
clear
10:12, 26:12,
140:16, 143:11
clearly
199:15
client
25:7, 25:10,
43:5, 73:12,
75:5, 146:12,
147:4, 147:9,
195:16, 213:17,
213:21, 219:17,
221:5
close
172:21, 173:1
closed
10:11
closest
92:2
cockamamie
187:16
collaboratively
51:12, 51:15
collateral
25:19, 26:1,
26:2, 26:22,
73:7, 74:21,
78:12, 148:1,
148:4, 148:15,
213:14, 216:10
colleague
114:9

collect
102:14
collected
102:11, 102:12
com
126:14, 127:16,
127:18, 129:20,
129:21, 135:12,
135:13, 155:9,
156:2
come
9:9, 38:9,
77:5, 126:21,
169:21, 170:6,
170:12
comes
17:19, 77:19
coming
37:9, 37:18,
39:19, 207:11
commentary
99:22, 100:3,
100:4, 101:15,
103:6
commission
223:17
communicate
62:3
communicated
192:19
communicating
25:10, 63:12,
77:13, 110:10,
189:16, 190:10,
214:1, 219:19
communication
211:14
communications
31:20, 63:19,
110:8, 110:18,
111:18, 112:3,
112:14, 112:19,
190:11, 193:15,
195:17
companies
74:17, 203:12,
214:5
company
7:18, 9:2, 9:4,

9:17, 9:18,
10:17, 23:8,
23:12, 23:16,
37:19, 49:17,
52:15, 64:8,
68:15, 69:2,
69:10, 73:1,
74:17, 77:11,
77:12, 77:14,
83:5, 83:13,
84:2, 84:21,
87:10, 100:6,
100:14, 100:22,
101:7, 151:13,
153:2, 153:15,
157:17, 157:19,
178:21, 179:3,
179:17, 192:15,
194:16, 209:15,
219:18, 219:21,
220:8, 220:14
compass's
147:19
compassmarketing-
inc
155:9
compelled
27:3
complaining
172:22
complaint
24:15, 94:4,
94:7, 94:11,
120:2, 146:9,
160:7, 199:9,
200:8, 201:2,
207:8
complete
67:10
completely
11:7, 69:14,
74:18, 137:5,
137:6, 187:2
complicated
27:15, 33:14,
125:13
comport
127:11

compound
112:6, 116:3,
164:10
computer
11:2
concept
76:2, 136:7
concern
211:12
concerned
172:1, 172:14
conclude
74:9
conclusion
24:5, 27:13,
139:6, 188:22,
190:15
concocted
152:21, 186:7
conduct
148:3, 216:16
conducted
1:14, 2:2,
219:12
conducting
78:8, 185:8
conference
117:18, 117:22,
120:13
confirm
16:13, 54:14
confirmed
219:8
confused
158:18
confusing
118:19, 193:19
connect
161:9
connected
209:21
connection
11:14, 48:17,
59:12, 66:19,
82:3, 82:16,
86:11, 86:17,
87:9, 88:17,
93:22, 100:5,

100:13, 101:6,
102:19, 195:18,
208:3, 208:8,
215:18
consider
102:22, 189:3
considers
190:1
consistent
140:17
constitute
17:14
constraints
24:17
consumed
15:1
contend
149:14, 188:10
contends
144:20, 145:11,
150:9, 186:9
content
94:11
contention
94:17, 135:5,
145:14, 151:19
contentions
135:15, 188:13
context
29:5, 29:10,
31:18, 32:8,
33:9, 54:2,
100:9, 100:18,
100:21, 106:13,
148:13, 214:5,
215:8, 215:9,
215:10, 216:22
continue
26:19, 216:6,
221:15
continued
5:22, 22:3,
110:1, 195:7
continues
53:13
continuing
22:1
contract
44:6, 74:19,

78:17, 80:11,
80:14, 81:9,
81:14, 119:22
**contretemps**
196:10
**contused**
130:4
**conversation**
14:15, 36:11,
56:6, 59:1,
87:17, 87:20,
131:14, 138:14,
140:22, 142:22,
143:2, 144:2,
144:12, 208:2
**conversations**
35:19, 35:22,
36:3, 36:21,
37:5, 37:8,
37:13, 37:14,
37:20, 38:9,
49:22, 103:1
**copied**
49:14, 127:8,
127:13, 200:13
**copperthite**
24:14
**copy**
16:15, 61:10,
98:1, 114:10,
121:10, 127:7,
128:2, 128:7,
128:19, 132:18,
133:12, 156:7,
161:14, 167:10,
168:3, 222:13,
222:16
**corner**
155:22, 173:21
**corporation**
190:3
**correct**
9:7, 10:4,
11:21, 12:2,
15:8, 15:9,
15:11, 15:14,
20:10, 20:11,
21:15, 31:3,

40:15, 48:18,
48:19, 49:1,
53:12, 57:17,
58:6, 62:1,
62:11, 66:12,
66:15, 66:16,
90:10, 90:11,
95:13, 117:19,
126:8, 126:14,
126:15, 126:17,
126:18, 128:10,
128:13, 128:15,
128:20, 130:2,
130:3, 130:10,
130:21, 131:7,
131:12, 131:14,
136:16, 136:22,
137:15, 138:2,
138:17, 155:17,
161:7, 162:14,
163:15, 164:15,
164:19, 169:13,
169:17, 170:14,
173:18, 178:22,
180:8, 181:14,
182:1, 182:5,
182:9, 182:14,
182:15, 205:1,
210:11, 223:7
**corrected**
167:21, 168:9
**correctly**
128:8, 167:16,
170:20, 173:14,
195:14
**could**
9:14, 19:5,
23:3, 28:20,
36:13, 59:17,
67:14, 96:3,
119:9, 129:9,
129:15, 129:18,
135:21, 172:12,
206:4, 208:11
**couldn't**
15:5, 39:15,
42:18, 57:22,
171:13

**counsel**
7:13, 12:8,
15:10, 22:13,
23:7, 23:17,
24:2, 24:9,
24:10, 25:11,
25:13, 27:10,
30:14, 60:7,
72:22, 77:13,
78:4, 78:20,
79:11, 79:12,
79:13, 79:14,
89:8, 101:7,
119:19, 124:8,
131:22, 136:18,
192:20, 193:10,
193:11, 193:16,
193:19, 193:20,
195:18, 196:20,
203:7, 212:5,
216:11, 219:20,
223:11
**counsel's**
193:21
**counterclaim**
98:18, 99:5,
99:19, 100:10,
100:18, 101:16,
103:6
**county**
12:20, 49:12
**couple**
126:4
**course**
77:5, 185:17,
196:5, 196:6
**court**
1:1, 2:9, 7:6,
8:7, 21:17,
21:18, 21:22,
24:17, 25:20,
26:3, 26:4,
33:5, 73:13,
77:4, 77:18,
77:19, 105:17,
116:14, 120:4,
122:20, 135:18,
146:19, 148:17,

168:6, 174:22,
175:7, 184:5,
184:16, 185:9,
185:12, 185:16,
186:18, 195:10,
196:19, 201:5,
221:21, 223:4
**cover**
221:17
**create**
133:17, 134:3,
153:10
**created**
133:21, 136:14,
136:21, 137:15,
153:13, 164:7,
164:8, 183:8,
217:13, 217:15,
217:18, 218:4,
218:12, 218:15
**credibility**
76:19, 76:20,
183:19, 183:20,
183:21, 186:6,
186:16, 217:19,
217:21, 218:8,
218:10, 218:17
**current**
12:18, 48:21,
170:22
**customary**
132:7, 132:10,
132:16
**cut**
111:8

---
**D**
---
**d**
15:21, 28:6,
43:10, 47:10,
53:14, 60:20,
65:12, 80:4,
85:17, 89:17,
91:10, 98:12,
104:22, 107:17,
114:2, 117:2,
121:5, 124:19,
154:19, 166:19,

176:19, 202:2,
212:4
**damages**
169:1
**dan**
61:9, 62:9,
85:21, 89:22,
108:2, 167:11,
174:20, 202:16
**daniel**
1:13, 2:1, 5:2,
7:3, 8:13,
12:15, 20:10,
28:17, 29:22,
30:12, 31:11,
34:7, 34:9,
34:21, 35:13,
162:21, 167:11,
167:17, 177:3,
183:17, 184:2,
184:8, 184:18
**danieljwhite@msn**
126:14
**data**
136:13
**date**
7:7, 38:6,
54:17, 126:20,
155:16, 203:20
**dated**
47:22, 50:22,
51:1, 54:13,
57:8, 60:19,
61:3, 64:4,
65:17, 80:1,
85:11, 91:14,
98:10, 98:21,
101:14, 104:20,
107:16, 113:13,
113:15, 113:21,
113:22, 116:21,
124:15, 124:17,
126:17, 127:3,
129:12, 134:13,
134:21, 143:4,
153:22, 155:10,
162:16, 165:16,
167:5, 167:7,

167:12, 167:17,
168:4, 176:18,
177:2, 201:21,
212:2
**dates**
39:10, 174:15
**david**
1:4, 4:11, 7:4,
7:22, 10:5,
29:22, 31:12,
33:12, 34:8,
34:10, 34:22,
35:14, 35:18,
35:21, 36:12,
37:8, 37:17,
37:18, 38:21,
39:1, 39:18,
44:7, 50:17,
61:10, 63:16,
64:13, 64:19,
65:4, 71:13,
71:14, 72:5,
72:6, 79:2,
88:22, 91:6,
107:13, 108:7,
115:8, 115:11,
115:20, 121:10,
147:19, 147:20,
150:4, 174:21,
184:13, 184:15,
184:18, 186:14,
187:14, 198:12,
198:15, 209:8,
209:9, 214:15,
217:9, 220:2
**day**
223:15
**deal**
42:17, 139:8,
143:17, 146:9
**december**
22:1, 53:20,
54:13, 80:1,
80:3, 80:9,
81:20, 85:11,
88:16, 89:1,
165:17, 167:5,
167:18, 168:4,

173:15, 176:18,
177:3, 177:16,
223:16
**decide**
30:19
**decided**
201:10
**decision**
214:6
**defend**
68:15, 219:10
**defendant**
1:8, 3:13,
7:16, 12:8
**defenses**
216:14
**definitely**
184:16
**deleted**
95:20
**deleting**
96:9
**deletions**
135:3
**denying**
62:20
**depends**
70:21, 85:5
**deponent**
4:1, 22:4,
24:19, 110:13,
123:6, 147:7
**depos**
7:11, 8:8
**deposed**
13:17
**deposition**
1:12, 2:1,
5:11, 7:3, 7:12,
15:13, 15:21,
17:21, 18:10,
18:18, 19:8,
19:11, 20:1,
21:12, 21:14,
21:16, 21:19,
21:22, 22:5,
24:12, 24:20,
24:22, 25:18,

25:19, 26:21,
27:2, 27:3,
28:6, 31:6,
31:7, 33:3,
43:10, 47:10,
53:14, 60:20,
65:12, 69:13,
73:18, 74:7,
75:5, 77:6,
78:9, 80:4,
85:17, 89:17,
91:10, 98:12,
101:20, 102:8,
104:22, 107:17,
114:2, 117:2,
121:5, 124:19,
146:8, 147:10,
154:19, 166:19,
176:19, 184:7,
193:12, 195:7,
195:9, 196:20,
200:19, 201:7,
202:2, 207:6,
207:9, 212:4,
213:22, 216:17,
219:9, 221:14,
221:21, 222:2
**depositions**
13:15, 29:17,
30:16
**deputy**
12:22
**designation**
9:9
**designed**
146:3, 146:6
**detail**
180:5
**details**
36:8, 124:10
**determined**
22:3, 78:15
**develop**
219:10
**development**
20:14
**difference**
78:5, 210:21,

211:5
**different**
127:1, 143:3,
166:1
**differently**
153:11
**difficult**
135:22
**dipaula**
156:8, 156:12,
157:12, 157:14,
157:16, 157:19,
158:13, 158:19,
158:22, 159:5,
159:10, 159:14,
159:19, 159:22,
160:22, 161:7,
162:17, 163:3,
163:8, 163:12,
167:13, 167:19,
169:3, 169:13,
169:20, 170:4,
170:6, 170:9,
170:14, 171:3,
171:9, 171:17,
171:22, 173:12,
174:4, 174:13,
174:17, 175:1,
175:12, 175:19,
176:12, 178:7,
178:9, 178:18,
178:21, 179:2,
179:13, 181:12,
182:1, 182:8,
182:13, 185:3,
186:1, 186:6
**dipaula's**
163:4
**direct**
20:7, 61:2,
193:15
**directly**
22:19, 127:17,
184:14, 194:15,
209:9
**director**
38:14
**disclaims**
186:3

**disclosure**
51:10, 51:19,
51:21
**disclosures**
52:5
**discovery**
25:17, 27:4,
41:2, 73:19,
74:14, 104:2,
105:10, 105:13,
105:18, 105:20,
106:2, 106:21,
107:4, 107:9,
107:13, 116:2,
120:7, 146:18,
146:21, 148:3,
185:18, 187:3,
195:12, 199:12,
200:22, 216:13,
220:13
**discuss**
37:12, 54:20,
55:19, 55:21,
56:8, 56:22,
66:22, 79:17,
105:18, 105:20,
106:2, 106:20,
107:9, 107:13,
109:10, 118:8,
118:16, 118:22,
119:12, 121:18,
124:3
**discussed**
39:19, 112:4,
123:13, 124:9
**discussing**
36:5, 55:18,
79:19, 93:6,
107:4, 124:2,
124:7, 124:8,
191:20, 214:10
**discussion**
39:20, 214:6,
222:4
**discussions**
38:21, 64:1,
93:16, 93:21,
119:6, 119:9,

119:21, 120:4,
120:18, 120:21,
124:11, 133:6,
159:22, 160:4,
169:2, 191:6,
205:8, 211:10,
211:16
**disk**
113:4, 113:7,
166:17
**dispute**
174:20
**disqualified**
22:13
**distinguishes**
147:6
**distract**
219:4
**district**
1:1, 1:2, 7:5,
7:6
**djw**
5:15, 5:16,
5:17, 5:18,
5:19, 5:20,
5:21, 6:1, 6:2,
6:3, 6:4, 6:5,
6:6, 6:7, 6:8,
6:12, 6:13,
47:8, 53:10,
60:16, 65:11,
79:22, 85:6,
89:16, 91:9,
98:9, 104:20,
107:15, 113:12,
113:20, 116:20,
121:2, 124:13,
201:19, 212:2
**document**
15:17, 16:3,
16:6, 18:11,
18:21, 19:13,
47:14, 67:8,
67:18, 73:12,
80:16, 86:5,
86:7, 86:21,
89:15, 90:10,
90:14, 91:18,

104:19, 106:4,
107:3, 107:11,
109:4, 109:8,
109:11, 109:15,
122:5, 145:12,
150:11, 167:7,
167:14, 178:1,
180:11, 181:17,
211:21, 215:11
**documents**
25:9, 47:15,
66:18, 67:1,
86:10, 86:14,
86:16, 87:9,
89:3, 97:12,
98:5, 102:7,
102:15, 103:18,
104:8, 104:11,
136:15, 183:12,
197:21, 198:3,
200:5, 211:9,
219:6, 219:16,
221:18
**doing**
26:22, 42:10,
43:16, 45:16,
47:2, 57:3,
64:6, 66:21,
67:4, 69:14,
73:14, 86:19,
90:20, 93:3,
99:18, 109:9,
109:13, 112:17,
115:1, 116:5,
117:13, 119:10,
119:14, 121:20,
131:19, 133:20,
167:15, 171:16,
173:1, 204:9,
205:6, 206:18
**donald**
4:14, 7:10
**done**
22:5, 96:21,
135:3, 196:17,
200:20, 219:7,
221:3
**door**
10:11

**double-check**
166:7
**down**
20:8, 29:9,
34:19, 75:22,
80:8, 135:18,
180:22, 209:1,
217:8
**download**
105:5
**draft**
94:4
**drafted**
109:3, 109:8,
109:11, 109:12,
109:16
**duces**
18:3, 18:9,
18:18, 19:7,
19:10, 22:11
**due**
170:11, 170:22,
174:4
**duly**
8:14
**during**
13:9, 21:12,
33:3, 35:19,
36:7, 37:12,
42:1, 45:14,
45:19, 77:5
**duties**
40:16, 41:6

**E**

**e-mails**
28:14, 66:6,
95:16, 95:17,
95:19, 96:5,
96:12, 96:18,
97:3, 97:5,
97:12, 98:5,
110:2, 112:11,
115:9, 115:11,
125:21, 126:3,
130:6, 132:8,
132:16, 183:9,
197:2, 197:6,

197:10, 197:12,
198:9, 199:3,
199:14, 199:15,
199:17, 199:21,
200:3, 200:6,
200:12, 200:14,
200:15, 205:15,
205:22, 206:4,
206:11, 206:16,
206:21, 207:16,
207:20, 208:6,
208:7, 209:22
**each**
14:17, 33:2,
110:18, 112:1,
112:4, 157:2,
168:7, 181:21,
182:4, 182:8
**earlier**
41:19, 138:8
**easier**
16:9
**economical**
22:6
**edit**
134:7
**edited**
137:15
**edits**
135:3
**effect**
46:3
**efficient**
22:6
**eight**
125:6
**either**
36:21, 111:3,
143:12, 152:2,
172:2, 197:5
**electronic**
136:17, 222:7,
222:13
**else**
10:14, 11:1,
11:12, 36:14,
44:14, 60:9,
60:14, 89:12,

143:13, 161:19,
207:21, 214:9
**else's**
33:10
**elsewhere**
8:21
**employed**
13:3, 41:20,
41:22, 42:2,
42:4, 223:11
**employee**
9:18, 38:10,
38:15, 38:17,
38:22, 40:13,
49:11, 152:22,
153:13, 170:11,
170:21
**employees**
48:21, 48:22,
49:6, 49:16,
49:18, 83:17,
152:17, 169:19,
186:8
**employment**
20:15, 36:6,
36:9, 36:22,
37:16, 43:22,
44:6, 133:7,
159:20, 175:6,
209:12, 209:15
**encourage**
209:3
**end**
21:14, 21:17,
21:19, 29:21,
113:4, 158:10,
160:15, 222:2
**ended**
140:2, 140:6,
147:13, 159:20
**ending**
201:7
**ends**
140:7, 208:22
**engage**
187:3, 216:14
**engaged**
22:16, 22:21,

153:9, 190:20
**enough**
46:18, 170:17,
209:20
**entered**
144:22
**entire**
16:6, 113:18,
216:17
**entirety**
18:8, 54:5,
207:9
**entitled**
220:9, 220:10
**equation**
75:8
**esquire**
3:4, 3:14,
3:15, 4:2, 4:3
**est**
1:16
**established**
78:13
**evade**
216:6
**evasive**
221:19
**even**
11:15, 14:4,
37:19, 96:20,
113:17, 163:19,
183:11, 186:3,
187:11, 188:4,
190:1, 193:18
**event**
31:17, 196:9
**ever**
13:17, 36:15,
152:21, 171:16,
206:18, 207:18
**every**
112:8, 140:6
**everyone**
10:21, 166:8
**everything**
87:15, 87:21,
88:4, 88:11,
200:20, 201:14

evidence
32:21, 73:4,
93:9, 109:18,
110:4, 111:21,
139:9, 144:16,
161:2, 206:6
evidenced
218:19
exact
35:22, 39:10,
40:9, 50:10,
123:16, 135:7,
136:3, 188:8,
218:7
exactly
127:10, 139:13,
139:14, 139:15,
191:14, 209:13,
209:18
examination
5:2, 12:8,
143:12, 185:7
examine
136:19
example
60:6, 183:7,
186:7, 213:20
except
99:8, 170:6,
171:9
excuse
103:2, 182:7
execution
20:14
exhibits
5:22, 8:5,
17:13, 165:8,
165:15, 166:10,
175:20, 180:21,
182:19
exist
130:14, 159:14
existed
126:2, 145:12,
159:16
existence
150:11
expect
118:22

expectation
106:13, 106:20,
107:8, 107:12,
116:1, 118:8,
118:11, 118:16
expectations
106:18
expecting
82:9, 132:21,
133:3
expense
180:3
expenses
157:4
experience
49:15
expert
89:9, 101:8,
103:12, 123:1,
123:11, 124:2,
124:7, 137:17,
203:6
experts
122:13
expires
223:17
explain
148:12, 220:21
explanation
185:14
explore
220:5, 220:19
express
99:16
extensive
77:8, 195:16
extensively
25:11, 110:10,
214:2, 219:19
extent
24:20, 73:6,
74:15, 77:2,
115:10, 148:2,
148:15, 184:9,
186:21, 190:20,
207:8
extra
182:20, 183:12,

184:22
extract
150:19, 151:13,
152:5, 152:15,
153:1, 153:14
extraneous
185:13, 187:2,
195:8, 207:10

F
fact
24:17, 72:19,
72:22, 73:4,
75:19, 81:11,
146:19, 174:21,
186:13, 199:11,
201:12, 206:6,
218:15
facts
71:11, 93:9,
100:21, 109:17,
110:3, 111:20,
144:15, 161:1,
187:14, 188:14,
190:16
factual
70:8
failed
185:11, 207:7
fair
10:18, 32:8,
46:18, 57:15,
58:3, 58:9,
58:12, 69:4,
71:12, 71:14,
72:4, 72:8,
72:10, 77:11,
77:15, 81:21,
83:17, 84:7,
128:16, 134:1,
170:17
fairly
49:15, 68:20
faith
75:1, 76:15,
76:17, 185:7
falls
186:13

false
33:15, 34:3,
153:13, 186:7,
186:9, 186:17,
220:4, 220:6
familiar
13:14, 136:7
far
136:17, 209:15
fascinating
213:16
fbi
121:16, 121:18,
122:2, 122:11
feather
219:3
february
60:18, 60:19,
61:3, 61:8,
61:12, 62:1,
62:22, 63:10,
64:5
federal
32:21, 73:13
fee
78:20, 79:17,
79:19
feel
87:15
few
13:20, 21:11,
55:1, 55:6,
165:7, 178:17
fiduciary
190:2
fifth
138:19, 140:12,
143:9
figure
38:1, 61:14,
92:8, 187:1,
212:15, 212:18
figuring
120:1
file
77:3, 77:7,
77:8, 131:5,
148:21, 149:3

**filed**
15:17, 15:18,
16:3, 16:20,
17:10, 17:15,
17:18, 26:5,
48:17, 52:5,
73:12, 73:20,
74:19, 84:19,
94:5, 94:8,
94:12, 99:6,
99:19, 100:13,
100:22, 101:16,
120:3, 146:9,
160:7, 201:16,
210:7, 215:2
**files**
136:17
**filing**
15:13, 50:17,
50:20, 57:2,
63:20, 84:1,
99:5, 207:3,
207:13
**filings**
51:19, 99:10,
99:17
**final**
178:6, 178:9
**financial**
22:17, 72:14,
72:17, 223:13
**find**
60:7, 89:8,
89:9, 89:10,
94:20, 123:10,
130:20, 144:11,
205:14, 208:11
**fine**
45:3, 77:16,
108:18, 115:15
**finish**
14:17, 14:18,
14:20, 67:13,
81:1, 108:11,
145:9, 176:1,
176:6, 184:6
**finished**
203:18, 213:6

**firm**
8:3, 49:1,
49:7, 49:10,
49:19
**first**
12:10, 16:4,
25:7, 27:20,
47:21, 48:2,
50:21, 80:1,
91:13, 147:1,
156:7, 161:6,
161:15, 165:8,
202:1, 218:14
**five**
50:12, 165:5,
166:11
**fl**
203:11
**flew**
34:21, 35:14,
35:20, 37:15,
39:5, 39:11,
42:16
**florida**
203:12, 209:14
**flow**
16:16
**flowing**
183:13
**fly**
33:6
**focus**
200:21
**follow**
79:15, 149:8,
218:16
**follow-up**
74:5, 76:8,
146:14
**follows**
8:14
**foregoing**
223:5, 223:6
**form**
21:2, 23:1,
32:17, 32:19,
44:12, 60:11,
67:2, 68:16,

81:15, 82:5,
83:6, 100:15,
106:15, 112:21,
115:9, 124:5,
132:17, 158:17,
158:20, 170:15,
171:4, 189:5,
202:18, 210:3
**forman**
1:21, 2:9, 8:8,
223:4
**format**
129:11, 129:13,
129:17, 130:2,
130:10, 142:18
**formed**
203:20
**former**
48:20, 122:2,
170:22
**fortunately**
75:20
**forward**
63:9, 68:8,
131:15, 154:11,
208:16
**forwarded**
61:11, 61:18,
61:22, 62:11,
62:13, 62:21,
62:22, 63:3,
79:16, 92:5,
109:6, 114:15,
115:2, 115:18,
117:21, 134:4,
134:8, 134:15,
135:6, 135:9,
136:4, 137:22,
138:9, 141:2
**forwarding**
65:19, 117:17,
131:20, 133:3,
142:5
**found**
21:4, 125:15,
126:6, 126:8,
126:11, 126:13,
134:17, 135:1,

139:14, 166:2
**foundation**
92:16, 115:4,
141:4, 151:2,
157:5, 163:10,
180:16
**four**
20:8
**fourth**
138:19
**fraction**
221:17
**frame**
38:7, 38:8,
40:8, 51:4,
56:15
**fraudulent**
150:17, 183:8
**free**
24:16
**freezing**
204:12
**friend**
114:19, 208:19
**frustrated**
172:11
**full**
111:7, 222:16
**full-time**
13:8, 40:13,
40:17, 41:7,
42:14
**further**
10:20, 220:13
**furtherance**
73:18

___G___

**gagliardo**
47:22, 48:16,
49:13, 61:9,
114:10
**gagliardo's**
49:1, 49:7,
49:10, 49:19
**game**
77:11, 77:15
**garnishing**
204:11

gave
102:11, 163:11
general
131:22, 169:3,
172:22
generally
13:16, 136:9,
136:11, 172:4,
208:18
george
205:14, 205:16,
205:18, 205:19,
205:21, 206:4,
206:10, 206:15,
206:20, 207:14,
207:19, 207:21,
208:3, 208:7,
208:11, 208:14,
208:20
getting
43:19, 121:11,
131:20, 133:2,
133:14, 142:4,
160:9, 172:11,
209:8, 209:22
gilbert
49:15
girl
204:14
give
28:21, 35:8,
86:4, 90:1,
119:20, 138:20,
146:13, 189:10,
191:15, 202:13,
214:4, 215:8
gives
74:6
giving
81:13, 84:20,
207:20, 216:22
gladly
77:18
go
13:20, 18:14,
18:21, 19:16,
24:16, 29:4,
39:15, 41:12,

43:2, 50:21,
53:8, 56:17,
57:7, 57:22,
60:15, 63:5,
64:12, 72:2,
81:19, 89:15,
110:16, 111:13,
123:9, 126:22,
151:6, 154:18,
162:15, 165:2,
165:8, 165:13,
165:14, 168:15,
168:18, 173:6,
176:5, 176:17,
181:20, 182:20,
184:22, 187:1,
201:18, 202:8,
212:10, 214:16,
217:8, 217:10,
217:20
goes
23:9, 76:18,
183:19, 183:20,
184:9, 184:14,
186:6, 186:16,
217:19
going
8:21, 13:20,
15:18, 16:16,
28:19, 29:1,
29:15, 30:20,
30:22, 33:2,
33:4, 33:6,
43:19, 47:7,
52:8, 52:11,
60:15, 66:1,
66:2, 71:22,
73:22, 77:1,
77:2, 78:14,
80:15, 80:16,
80:17, 80:18,
92:7, 108:4,
108:9, 110:20,
113:3, 113:11,
116:13, 121:1,
140:15, 143:12,
143:13, 148:10,
150:7, 156:21,

165:4, 165:14,
166:7, 166:10,
166:13, 168:10,
172:15, 173:13,
179:7, 179:9,
182:16, 183:4,
185:13, 185:19,
186:4, 186:14,
191:15, 197:14,
197:19, 199:19,
200:10, 207:10,
210:10, 210:16,
210:22, 211:1,
211:3, 212:1,
215:15, 215:17,
216:21, 217:7,
220:20, 222:1,
222:12
golf4me@aol
129:21, 135:13
gone
112:2
good
7:15, 54:18,
54:19, 75:1,
79:12, 79:13,
79:14, 83:12,
83:16, 84:5,
108:9, 114:13,
148:19, 172:3,
172:5, 183:17
gotten
155:3, 184:12
government
49:12
great
108:16, 205:15
greenbelt
4:6
greg
51:9, 53:20,
61:9, 78:5,
85:22, 86:2,
93:5, 108:1,
124:15, 186:18,
204:11, 209:1
gregory
3:4, 7:21,

11:4, 16:9
grounds
76:13
guess
30:21, 36:2,
50:13, 50:22,
104:19, 116:14,
128:16, 162:20,
167:4, 167:14
guessing
128:7, 128:14
guys
166:9

## H

half
212:16, 212:18,
212:20
hand
8:12, 223:15
handled
29:17
handwriting
89:9, 123:2,
123:10
hang
16:21, 61:5
happen
71:15
happened
35:19, 141:1,
141:5, 144:13
happens
72:9
happy
57:9, 58:4
hard
120:1
hear
15:5, 39:15,
42:18, 57:22,
111:1, 111:9,
129:16, 144:10,
149:9, 149:21,
171:12, 171:13,
173:9, 198:16
heather
3:15, 8:2,

15:19, 16:11,
53:12, 165:18,
167:22, 168:17
**held**
13:1, 68:22,
69:8, 69:19,
70:5, 71:6
**help**
19:18, 36:13,
57:4, 57:9,
57:12, 58:4,
58:19, 58:21,
59:2, 59:5,
59:6, 59:8,
59:10, 59:11,
59:19, 59:20,
60:2, 60:6,
60:9, 64:22,
65:4, 65:5,
65:7, 66:18,
89:3, 94:14,
100:9, 100:12,
100:17, 100:20,
102:17, 109:20,
109:22, 110:9,
116:10, 146:3,
146:6, 202:16,
202:17, 203:2,
203:4, 203:5,
209:2, 209:7,
215:15, 215:17,
215:21, 217:4
**helped**
39:22, 59:17,
60:7, 89:8,
89:9, 103:1
**helpful**
174:12, 216:22
**helping**
57:16, 58:5,
58:15, 58:18,
77:12, 209:9,
220:17
**here**
7:2, 8:2, 8:4,
9:2, 9:17,
10:14, 10:15,
11:5, 15:7,

21:18, 27:5,
30:18, 33:1,
59:22, 73:18,
74:11, 76:11,
78:15, 88:9,
89:13, 112:3,
113:2, 119:20,
128:3, 154:18,
160:14, 184:10,
188:13, 190:17,
194:20, 194:21,
196:7, 202:8,
209:11, 212:10,
214:3, 218:11
**here's**
77:1
**hereby**
223:6
**hereunto**
223:14
**hey**
85:21, 108:1
**hi**
89:22, 202:16
**highly**
25:6
**himself**
190:2, 214:17
**hire**
23:21
**hired**
37:6, 37:7,
37:10, 37:21,
38:4, 190:18,
190:19
**history**
45:18
**hold**
9:8, 167:20,
168:17
**home**
11:6
**honestly**
108:3
**hopefully**
202:7, 214:4
**hour**
108:5, 108:9,

165:5, 165:9,
165:11
**hours**
33:4, 40:4,
40:9, 201:10,
201:13
**house**
11:7
**hypothetical**
70:8, 71:10,
83:15

---

**I**

**id**
203:20
**idea**
83:12, 83:16,
84:5, 108:9,
153:19, 164:6,
164:7, 164:14,
164:18, 210:16,
210:22, 211:2,
219:13, 220:6
**identification**
9:14, 15:22,
28:7, 43:11,
47:11, 53:15,
60:21, 65:13,
80:5, 85:18,
89:18, 91:11,
98:13, 105:1,
107:18, 114:3,
117:3, 121:6,
124:20, 154:20,
166:20, 176:20,
202:3, 212:5
**identified**
8:20, 25:2
**identify**
7:13, 156:22,
199:11, 201:1,
207:7
**identifying**
101:8
**ii**
4:14, 7:11
**illinois**
3:8

**implicated**
73:22, 75:6
**implicating**
78:1
**improper**
26:21
**inbox**
95:1, 95:2,
95:20, 129:20,
130:11, 133:11,
138:22, 139:14,
139:18, 140:3,
140:7, 140:10,
140:21, 141:12,
141:13, 142:1,
142:8, 142:13,
142:21, 143:8,
143:22, 144:5,
144:14
**inc**
1:7, 7:17,
14:2, 22:18,
98:18, 197:1,
197:10, 200:17
**include**
51:10, 96:9,
199:7, 201:3
**including**
145:17
**incorporated**
7:5, 196:19
**indicated**
21:19
**indicates**
163:17
**indication**
32:9
**inevitable**
14:14
**infer**
57:15, 58:3,
58:9, 58:13
**info**
203:11, 203:21,
208:22
**information**
89:4, 204:6,
205:2, 206:21,

207:15, 209:3,
209:11, 211:18,
218:20, 219:5,
222:11
**informed**
47:1
**inhibit**
15:2
**initiative**
186:10, 217:11
**injected**
147:10
**input**
90:18, 90:19,
90:22
**inquiring**
25:1, 147:22
**inquiry**
185:15
**insist**
25:18
**instance**
171:2
**instead**
22:16, 22:21,
146:3
**instruct**
26:17, 26:18,
148:11
**instructing**
26:9, 148:20,
149:1, 149:5,
149:7, 149:10
**intend**
18:5, 19:6,
19:10
**intended**
18:7, 18:17
**intent**
59:2, 59:5
**intention**
111:7
**intentions**
11:18
**interest**
22:18, 68:10,
68:12, 68:13,
68:15, 68:19,

72:14, 72:17,
74:10, 75:22,
77:21, 78:7,
78:15, 99:16,
223:13
**interested**
27:4, 201:11
**interests**
22:18
**interfere**
221:20
**interfering**
29:12, 29:13,
56:12, 74:6,
75:5
**interject**
17:20
**interrogatories**
5:13, 27:21,
28:11, 33:10,
43:8, 43:20,
45:2, 45:4,
46:4, 109:3,
109:7, 109:11,
109:15, 114:11,
114:22, 115:3,
115:18, 116:8,
215:5
**interrogatory**
28:16, 28:20,
29:5, 30:5,
30:10, 31:11,
34:19, 46:13,
46:15
**interrogs**
5:14
**interrupt**
14:15, 39:13
**intervene**
173:3
**introduced**
76:1
**introduction**
167:4
**investigations**
216:11, 219:11
**investment**
217:11

**involve**
148:1
**involved**
192:12
**involving**
73:8, 73:10,
216:11, 220:14
**irrelevant**
74:18, 137:16,
146:17, 146:20,
190:4, 219:4
**issue**
22:2, 25:16,
26:6, 27:2,
77:4, 178:8,
181:12, 184:15
**issued**
22:12, 24:13,
25:3
**issues**
27:7, 73:13,
77:5, 105:19,
147:21, 200:4,
210:17, 216:10,
220:21
**issuing**
160:16
**itself**
18:12, 18:21,
19:14, 130:5,
130:12, 130:15,
142:19, 144:5,
144:11, 178:2,
180:12, 215:12
**ivy**
4:5

**J**

**jail**
45:16, 47:2
**james**
162:17, 167:13,
167:18, 178:6,
178:9
**january**
47:22, 53:19,
57:8, 65:18,
65:20, 89:22,

91:14, 91:15,
108:21, 212:3
**job**
1:19, 39:9,
40:2, 41:6
**john**
23:11, 23:20,
24:9, 34:21,
35:14, 35:18,
35:20, 39:6,
44:1, 45:15,
46:17, 47:1,
72:9, 72:12,
78:2, 89:10,
98:2, 131:5,
132:3, 132:7,
132:18, 133:6,
145:15, 145:20,
145:22, 146:3,
146:6, 147:16,
147:20, 149:14,
155:9, 155:18,
172:1, 172:9,
172:11, 172:14,
172:16, 173:1,
174:20, 180:3,
204:21, 204:22
**john's**
145:18
**joint**
85:22, 86:1
**jordan's**
57:11
**jr**
162:18
**judge**
24:13, 25:3,
148:12
**july**
44:19, 45:10,
46:22, 116:21,
117:1, 119:21,
120:5
**june**
104:21, 107:16,
108:21, 201:22,
202:11, 223:18
**junk**
96:9

jwhite@compassma-
rketinginc
127:16, 127:18,
129:20, 135:12

## K

kagan
3:16
keep
52:7, 52:10,
116:15, 214:18,
217:2
kept
208:18
kind
125:12, 143:12,
185:7, 185:14,
186:13, 187:3,
196:10, 209:17,
216:12
knew
122:1, 123:11
knowing
210:21
knowingly
73:12
knowledge
20:12, 156:22,
186:3
known
37:17
knows
218:12

## L

labeled
47:8, 60:16,
89:16, 91:9,
98:9, 104:19,
113:11
lack
37:3, 180:16
lacks
190:16
laid
185:21
lane
4:5, 4:14, 7:11

largely
8:4
last
20:3, 28:16,
28:17, 31:10,
42:3, 167:3,
176:14, 197:11,
198:8, 199:2,
199:20, 201:9,
217:8
later
21:8, 22:1,
28:13, 54:18,
130:21
latitude
119:20
law
49:1, 49:7,
49:10, 49:15,
49:19
lawsuit
42:22, 44:21,
45:5, 48:17,
50:1, 50:18,
50:20, 51:13,
51:19, 52:4,
55:22, 56:10,
57:1, 57:13,
63:20, 64:2,
65:1, 70:16,
74:3, 75:11,
84:19, 85:3,
86:11, 86:18,
87:10, 88:18,
89:4, 94:1,
94:5, 94:8,
94:12, 95:18,
96:7, 99:11,
99:17, 99:20,
100:5, 100:13,
102:19, 103:1,
103:4, 103:7,
103:13, 104:3,
104:9, 106:21,
107:9, 117:18,
118:1, 118:9,
118:17, 119:1,
119:6, 119:13,

120:19, 120:22,
123:14, 123:18,
124:4, 148:17,
180:13, 189:17,
190:12, 191:6,
193:3, 193:5,
193:6, 193:9,
203:14, 205:9,
207:4, 207:14,
207:18, 207:19,
207:22, 208:4,
208:8, 208:14,
209:20, 210:2,
210:11, 210:17,
211:1, 211:19,
213:14, 213:17,
214:2, 214:8,
214:12, 215:16,
215:18, 217:1,
217:3, 217:17,
218:21, 219:2,
219:6, 219:17,
219:20, 221:6
lawsuits
83:12, 84:1,
84:2, 192:20,
194:2, 194:9
lawyer
101:22, 139:8,
145:18, 194:14,
194:21
lawyers
101:21
leads
73:1
least
28:21
leave
157:19, 196:12
left
157:18, 159:12,
173:21
legal
24:4, 27:13,
139:6, 188:21,
190:15, 210:17
legitimate
120:6, 199:12

less
50:12, 79:19,
165:9
let's
12:4, 54:8,
57:7, 61:14,
76:5, 89:15,
162:15, 165:2,
181:20, 220:1
letter
213:9, 214:14,
214:21
liability
157:3, 181:22
liable
69:1, 69:9,
69:20, 70:5,
71:7
lie
173:11
life
37:5, 97:4,
207:2
likewise
137:21
limit
76:13, 200:19
limitation
21:14, 37:2,
37:3
limited
25:2, 143:15
line
28:17, 31:10,
54:22, 69:11,
74:13, 76:2,
76:15, 92:3,
98:16, 105:16,
168:21, 186:13,
188:4, 204:11,
205:14, 218:16
lines
17:3, 20:8,
76:14
list
210:8, 216:9
listen
11:5, 111:4

listening
11:1
litigant
77:12, 77:13,
84:20
litigants
83:12, 192:19,
194:3
litigate
77:18
litigation
55:13, 57:16,
58:5, 58:16,
59:3, 59:12,
60:2, 60:10,
66:19, 68:15,
71:19, 73:9,
73:15, 75:12,
78:16, 82:3,
82:17, 83:4,
84:6, 103:19,
104:9, 104:12,
104:16, 104:17,
116:2, 179:10,
191:20, 192:13,
192:14, 195:18,
217:2, 220:16,
220:18
little
21:7, 67:12,
135:21, 180:22
llc
3:16, 4:4,
217:14
local
60:7, 89:8,
101:7, 124:8,
203:6
locate
138:6, 140:9
located
7:17
locked
176:15
long
13:1, 13:6,
53:6, 102:14,
125:6, 208:21

longer
141:13, 142:1,
144:14
look
47:18, 48:10,
54:1, 54:7,
61:7, 61:15,
66:3, 81:21,
86:7, 92:4,
92:8, 100:2,
117:8, 125:17,
125:20, 125:22,
126:1, 137:21,
155:4, 197:21,
198:3
looked
17:8, 112:9,
126:3
looking
16:13, 35:7,
46:8, 48:6,
81:2, 86:5,
125:3, 125:5,
125:21, 156:19,
157:10, 165:22,
166:3, 212:19
looks
46:16, 48:13,
55:4, 66:15
loop
208:19
lot
40:10, 111:14,
125:21, 221:19
loyal
72:7
lr
51:10
lying
218:11

M

made
10:16, 17:21,
41:10, 45:21,
46:16, 122:7,
122:10, 136:6,
148:17, 158:6,

158:13, 169:1,
170:4, 175:19,
178:20, 179:17,
180:4, 180:7,
186:20, 201:15,
220:13
mail
96:9, 136:13
make
8:5, 10:21,
13:21, 17:17,
26:16, 30:20,
33:4, 36:1,
50:5, 69:22,
70:12, 94:10,
128:12, 134:17,
135:2, 172:3,
172:5, 172:20,
174:2, 174:12,
175:20, 177:10,
178:13, 179:12,
180:20, 181:15,
182:2, 185:11,
195:13, 220:11,
220:12, 221:1,
221:2, 222:11
makes
57:14, 102:2,
102:4, 135:14,
188:12
making
26:11, 26:16,
26:20, 46:2,
99:12, 121:21,
170:8, 170:10,
173:11, 186:17,
214:6
management
78:3
many
25:9, 40:4,
50:8, 53:5,
110:2, 123:13,
123:17, 174:16,
175:11, 176:7,
193:1, 194:9
marinello
3:16

marked
15:20, 15:21,
28:6, 43:10,
47:10, 53:14,
60:20, 65:12,
80:4, 85:17,
89:17, 91:10,
98:12, 104:22,
107:17, 114:2,
117:2, 121:5,
124:19, 154:19,
166:19, 176:19,
202:2, 212:4
marketing's
30:2, 31:13,
151:19
marks
222:2
mary's
12:20, 49:11
maryland
1:2, 2:10,
3:18, 4:6, 7:6,
62:4, 62:10,
79:14, 223:22
material
110:7, 221:16
materially
22:19
math
42:10
matter
7:3, 14:2,
26:2, 143:17,
201:4, 201:11,
201:13, 214:7,
214:8
matters
13:20, 24:14,
25:19, 26:22,
27:5, 56:9,
57:1, 63:13,
73:7, 74:21,
148:3, 184:12,
185:13, 195:8,
207:10, 213:15
maybe
93:19, 184:19,

187:15, 212:17
**mean**
17:10, 22:20,
44:9, 45:5,
51:15, 51:21,
57:12, 62:18,
71:5, 83:9,
97:18, 102:10,
104:15, 114:13,
121:16, 128:5,
149:18, 149:22,
174:10, 193:13,
193:19, 197:4,
197:8, 211:2
**meaning**
79:8, 92:1,
182:8, 182:13,
204:22
**means**
42:12, 96:14,
119:18, 197:9,
203:12, 211:2
**meant**
23:4
**meet**
34:22, 35:14,
35:20, 37:16
**meeting**
36:7, 36:22,
42:15, 43:22,
44:6, 44:19,
45:10, 45:15,
45:20
**memo**
177:18, 178:4,
178:6
**memorandum**
185:12
**mention**
87:14
**mentioned**
122:1, 124:13,
178:16
**met**
12:11, 35:18,
39:6, 39:18,
101:21, 158:13
**metadata**
136:8, 136:12,

136:20, 137:4,
137:21
**mic**
10:5
**michael**
65:18, 68:9,
68:10, 68:13,
79:16, 79:17,
121:10, 130:13,
131:1, 131:16,
133:18, 134:4,
134:8, 134:12,
135:9, 138:9,
141:3, 151:11,
151:11, 151:20,
152:15, 153:9,
153:12, 155:10,
155:19, 155:22,
186:11, 190:19,
191:19, 192:3,
208:17
**microphone**
150:5, 198:13,
198:16, 220:3
**middle**
51:3
**might**
115:10, 120:6
**mike**
131:4, 142:5,
156:1
**mike's**
205:20
**miller**
156:8, 156:12,
158:12, 158:16,
159:3, 160:22,
161:7, 169:4,
178:7, 178:10,
178:21, 179:2,
179:13, 182:9,
185:4, 186:2,
186:5
**mind**
91:19
**mine**
169:10
**minuscript**
222:16

**minute**
66:7, 165:6
**minutes**
54:18, 108:5,
108:10, 130:21,
131:6, 138:8,
165:7, 166:11,
178:17
**mischaracterize**
155:13
**mischaracterizing**
181:17
**miscommunication**
167:3
**missed**
204:18
**missing**
81:11
**misstates**
23:18, 56:2,
60:4, 62:6,
73:3, 75:16,
93:8, 102:20,
106:3, 107:2,
107:10, 122:4,
122:5, 138:12,
139:20, 140:4,
141:16, 161:21,
162:8, 164:11,
171:5, 171:19,
210:19, 211:20
**misstating**
46:13, 139:5
**mistaken**
166:8
**misunderstanding**
44:11, 167:2
**mix**
93:14
**moment**
21:11, 27:19,
88:10, 154:18,
160:10, 175:8
**momentarily**
168:17
**monday**
1:15, 55:1,
55:6

**money**
87:16, 87:22,
88:5, 88:11,
88:18, 150:19,
151:13, 152:5,
152:16, 153:1,
153:14, 159:11,
172:9, 173:6,
181:11, 183:12,
203:20
**monies**
157:17
**monitor**
7:8
**monitoring**
51:18, 52:4
**months**
20:5, 126:5
**more**
24:21, 37:15,
39:20, 50:12,
73:5, 87:6,
101:22, 122:2,
146:5, 164:9,
165:10, 171:13,
175:17, 182:7,
200:7, 208:12
**morning**
7:15, 184:11
**most**
50:22, 53:18,
60:17, 65:17,
72:7, 80:2,
91:15, 92:2,
98:10, 113:13,
113:14, 113:21,
116:22, 121:3,
124:14, 136:17,
160:4, 167:8,
201:22
**motion**
5:12, 15:13,
15:17, 16:19,
17:9, 17:14,
17:18, 17:22,
18:1, 18:7,
18:17, 19:3,
19:19, 19:20,

19:22, 20:4,
21:3, 25:7,
26:3, 26:5,
77:7, 77:8,
125:11, 148:22,
149:3, 201:3
**motions**
26:6
**motivation**
82:12, 87:2,
91:2
**move**
32:17, 71:22,
76:12, 77:2,
78:13, 143:13,
184:10
**moving**
200:18
**much**
33:2, 36:12,
52:15, 52:19,
79:19, 119:20,
221:13, 221:22
**multiple**
91:19, 134:1
**must**
75:1, 75:2
**mwhite@compassma-
rketinginc**
156:2
**myself**
11:6, 11:11,
171:15

**N**

**name**
12:14, 12:15,
42:18, 161:20,
173:18, 173:20
**named**
73:1
**names**
214:5
**native**
115:9, 129:11,
129:13, 130:2,
130:10, 142:18
**nature**
148:15, 204:13,

205:3
**necessary**
73:19
**need**
9:19, 14:3,
14:5, 14:16,
22:8, 24:21,
25:12, 29:9,
66:7, 77:3,
90:3, 92:7,
100:2, 109:20,
110:9, 156:21,
158:9, 160:14,
168:8, 179:9,
184:9, 202:16,
221:1, 222:8,
222:12
**needed**
87:22, 88:5,
109:22, 221:16
**needs**
16:15, 32:2,
87:16, 88:11
**negotiated**
158:15
**negotiations**
118:9, 118:17,
119:1
**neither**
20:13, 147:4,
223:11
**nephew**
205:20
**never**
91:19, 159:3,
172:10, 172:17,
172:18
**new**
65:10, 79:22,
89:15, 91:8,
98:8, 104:18,
116:13, 121:1,
129:13, 165:2,
201:18, 217:11,
217:12
**next**
5:22, 53:8,
53:10, 54:16,

54:22, 60:15,
67:11, 85:6,
87:14, 93:13,
105:16, 107:14,
116:17, 123:7,
165:16, 168:4,
173:13, 175:9,
176:17, 204:11,
204:12, 205:14
**nobody**
10:14
**none**
160:6
**nonparty**
25:1, 185:17,
220:11
**normal**
81:22
**north**
3:7
**notarial**
223:15
**notary**
2:9, 223:2,
223:21
**note**
26:19, 32:16,
32:17, 56:13,
105:17, 115:7
**noted**
30:1, 31:13,
51:8, 51:9
**nothing**
41:10, 69:12,
73:9, 75:3,
77:21, 78:8,
174:21, 185:8,
185:9, 207:22,
208:14, 213:13,
214:9, 218:8,
218:21, 219:1,
219:9
**notice**
99:4
**november**
1:15, 7:8
**number**
7:6, 15:17,

28:16, 34:20,
39:1, 46:4,
46:6, 50:10,
50:14, 53:9,
59:16, 85:9,
85:14, 85:15,
98:17, 104:19,
107:14, 113:8,
123:16, 154:2,
154:4, 166:17,
168:5, 168:7,
175:11
**numbering**
167:16
**numbers**
36:16, 116:15,
173:14
**numerous**
37:8

**O**

**oath**
15:3, 34:20
**object**
30:9, 30:11,
30:15, 33:7,
46:12, 46:14,
200:1, 203:16
**objected**
15:12
**objection**
13:11, 18:11,
18:20, 19:13,
21:2, 23:1,
23:18, 24:4,
24:11, 26:17,
26:19, 27:11,
30:20, 32:15,
32:17, 32:20,
32:21, 33:18,
37:2, 38:12,
40:19, 40:20,
41:9, 42:21,
44:12, 44:20,
50:13, 51:14,
51:20, 52:1,
52:6, 52:12,
52:21, 55:15,

56:2, 56:13,
56:15, 57:18,
58:7, 58:8,
58:17, 59:4,
59:14, 60:4,
60:11, 60:13,
62:5, 62:6,
62:17, 63:14,
63:15, 63:21,
64:9, 64:16,
65:2, 67:2,
67:19, 68:5,
68:16, 68:18,
69:3, 69:11,
69:21, 70:7,
70:17, 71:9,
71:20, 72:18,
73:3, 74:2,
75:16, 78:21,
81:15, 82:5,
82:11, 82:19,
83:6, 83:14,
84:3, 85:1,
85:2, 86:22,
87:1, 88:1,
88:6, 88:13,
88:20, 89:6,
90:6, 90:13,
91:1, 91:5,
92:15, 93:8,
95:8, 96:1,
96:2, 96:8,
96:13, 96:20,
97:15, 100:7,
100:15, 101:1,
101:9, 102:20,
103:8, 103:14,
103:20, 104:4,
104:13, 104:14,
106:3, 106:15,
107:1, 107:2,
107:10, 109:17,
110:3, 111:20,
112:6, 112:16,
112:21, 115:4,
115:19, 116:3,
118:2, 118:4,
118:10, 118:12,

118:18, 118:19,
119:2, 119:8,
119:17, 120:14,
120:20, 122:3,
123:19, 124:5,
128:9, 129:4,
130:16, 132:9,
132:17, 133:13,
135:14, 137:1,
137:5, 137:16,
138:3, 138:11,
138:18, 139:4,
139:19, 140:4,
141:4, 141:14,
141:16, 142:2,
142:9, 142:14,
142:20, 144:6,
144:15, 145:2,
145:5, 146:8,
147:18, 149:16,
150:12, 150:21,
151:3, 151:14,
152:1, 152:7,
152:8, 152:18,
153:5, 153:16,
153:18, 157:5,
158:17, 158:20,
159:8, 160:2,
161:1, 161:8,
161:21, 162:8,
163:10, 164:10,
169:8, 170:1,
170:15, 171:4,
171:5, 171:19,
171:21, 174:5,
174:18, 175:14,
176:13, 177:19,
178:11, 179:4,
179:5, 179:15,
179:21, 180:11,
180:17, 182:10,
183:1, 185:1,
185:5, 187:10,
188:12, 188:21,
189:5, 189:7,
189:19, 189:20,
190:13, 190:14,
191:8, 192:1,

192:2, 192:16,
193:18, 194:5,
194:11, 194:17,
197:13, 199:5,
202:18, 202:19,
203:13, 204:1,
204:2, 204:8,
204:16, 205:5,
205:10, 205:11,
206:5, 206:12,
206:17, 207:1,
207:17, 209:5,
210:3, 210:12,
210:13, 210:18,
210:19, 211:6,
211:20, 213:12,
215:1, 215:20,
217:16, 218:5

**objections**
25:6, 26:9,
26:12, 26:16,
26:21, 32:12,
56:14, 87:11,
120:9, 181:7,
185:1, 221:20
**obligation**
190:2
**obligations**
30:2, 31:14
**obstruction**
213:21
**obviously**
25:19, 111:6,
191:1
**occasion**
39:21, 221:9
**october**
153:22, 154:8,
155:10, 162:17,
167:8, 167:12
**offer**
36:6, 36:9,
64:22, 66:18,
86:10, 86:16,
90:19, 94:7,
122:11, 203:2,
206:20, 207:14,
209:2

**offered**
99:22, 101:5,
101:12, 101:15
**offering**
66:22, 100:4,
103:6, 103:12,
103:18
**office**
7:17, 7:20,
9:8, 10:9,
10:10, 10:13,
10:22, 12:19,
13:4, 13:9,
40:14, 40:18,
41:8, 41:15,
41:17, 41:20,
42:2, 42:5,
42:8, 42:11,
176:15
**officer**
223:5
**official**
10:17, 163:21,
164:21, 167:10,
167:16
**often**
132:12
**okay**
9:20, 11:9,
12:3, 18:2,
21:9, 26:20,
28:5, 28:13,
29:1, 35:6,
36:3, 39:5,
44:18, 46:11,
48:6, 49:13,
50:4, 66:9,
81:5, 84:11,
85:6, 85:16,
92:7, 98:20,
104:18, 111:6,
113:19, 126:11,
140:11, 153:21,
154:13, 160:11,
165:13, 166:2,
166:5, 167:1,
176:5, 195:6,
195:12, 212:22,

213:7, 213:10,
213:19, 216:9,
221:8
**oldest**
193:2
**once**
16:12, 37:15,
47:17, 208:12
**one**
9:16, 10:22,
11:12, 13:2,
14:15, 14:22,
16:13, 16:21,
20:8, 33:21,
34:5, 34:8,
35:17, 39:18,
39:21, 40:3,
43:3, 43:6,
46:7, 46:9,
47:14, 48:7,
51:3, 53:10,
53:20, 54:6,
61:5, 61:7,
61:15, 65:17,
75:6, 75:8,
75:12, 76:1,
76:18, 78:11,
81:19, 87:6,
91:18, 98:4,
101:22, 111:22,
112:1, 113:4,
116:17, 122:2,
126:21, 131:1,
131:3, 131:4,
131:5, 131:6,
131:10, 131:11,
143:4, 148:6,
152:2, 154:5,
154:9, 164:9,
165:16, 165:21,
166:1, 167:7,
167:9, 167:14,
172:3, 173:2,
182:7, 193:5,
201:22, 202:1,
208:9
**ones**
27:21, 94:2,

112:4, 193:2
**only**
43:6, 45:3,
91:18, 101:15,
128:7, 131:3,
131:5, 150:22,
158:13, 158:22,
159:5, 159:10,
168:9, 170:8,
170:9, 170:21,
173:2, 193:3,
193:5, 220:21,
221:17, 222:8,
222:12
**open**
147:12, 209:17
**opens**
121:14
**operated**
11:18, 11:19
**operating**
169:22
**opinion**
24:13, 25:3,
192:2, 194:18,
194:21, 217:5
**opinions**
83:15
**opportunities**
35:1, 35:16
**opportunity**
35:9, 67:1,
117:11, 221:9
**opposed**
46:16
**opposing**
219:19
**opposite**
188:8
**opposition**
17:9
**order**
18:3, 24:13,
25:3, 77:3,
117:17, 117:22,
119:16, 120:12,
149:4, 156:20,
162:17, 167:13,

167:18, 177:3,
196:19, 199:10,
200:21, 201:6,
216:10, 220:13,
222:6, 222:7
**original**
28:2, 28:3,
48:4, 53:19,
54:8, 60:18,
66:11, 113:13,
113:20, 114:8,
115:8, 116:21,
124:16, 126:16,
129:2, 129:19,
131:7, 132:4,
136:20, 137:12,
138:7, 138:16,
141:1, 150:7,
202:10
**originally**
141:22
**ostensibly**
73:18
**other**
10:16, 11:6,
14:17, 14:22,
22:14, 48:20,
48:22, 49:6,
55:22, 56:9,
57:1, 73:8,
74:17, 77:5,
89:4, 98:4,
98:5, 101:7,
105:18, 110:13,
124:3, 124:10,
130:6, 140:6,
148:16, 152:4,
152:14, 152:17,
169:19, 171:8,
173:7, 176:11,
184:20, 192:13,
194:2, 196:3,
201:14, 203:9,
208:22, 215:3,
216:11, 216:14,
216:15, 219:9,
219:11
**others**
8:19

**otherwise**
11:2, 11:15,
14:10, 26:19,
75:20, 223:13
**out**
33:3, 37:15,
38:1, 42:16,
61:15, 77:19,
92:8, 94:20,
106:12, 108:1,
120:1, 148:4,
166:7, 172:13,
176:15, 185:22,
187:1, 196:18,
212:15, 212:18
**outcome**
223:13
**outside**
69:14, 74:14,
78:4, 146:17,
184:2, 184:7,
193:12, 193:15,
193:20, 193:21
**outstanding**
180:2
**over**
13:20, 23:16,
29:16, 39:2,
126:4, 207:6,
221:14
**overlooked**
125:10
**owed**
157:17, 185:3,
190:3
**own**
10:10, 52:15,
52:16, 52:20,
52:22, 53:3,
72:12, 77:20,
78:7, 99:13
**owner**
38:13, 52:13,
73:2, 77:10,
83:3, 83:11,
83:16, 83:22,
84:5, 189:3,
189:8, 190:2,

190:8, 190:21,
191:5, 191:19,
192:14, 194:4,
219:18
**owners**
23:13
**ownership**
74:10, 78:3,
78:11
**owns**
23:12

**P**

**pacer**
51:8, 51:9,
210:7
**page**
5:2, 5:11,
5:22, 20:6,
22:11, 46:10,
166:6, 167:7,
212:14, 212:16,
212:18, 212:21
**pages**
1:20, 91:19,
110:7, 125:6,
167:13, 199:13,
212:19
**paid**
167:12, 167:18,
169:19, 170:21,
172:10, 177:3,
184:18, 186:14,
204:13
**paragraph**
168:22, 204:12,
217:8
**pardon**
198:2
**part**
8:3, 72:13,
73:2, 93:13,
100:2, 125:12,
129:13, 130:12,
131:4, 131:5,
142:21, 144:11,
145:3, 150:17,
166:2, 174:3,

206:7
**part-time**
42:14
**participate**
20:13
**participation**
75:10
**particular**
36:16, 42:17,
79:3, 80:8,
86:13
**parties**
7:11, 105:18,
193:10, 216:12,
223:12
**party**
30:14, 147:3,
147:7, 186:19,
186:21, 187:5,
189:16, 189:18,
190:10, 191:20,
194:15, 195:17,
219:19, 220:15,
220:18
**party's**
30:13
**past**
42:1
**patient**
200:20
**patrick**
178:7, 178:10
**patterson**
4:3, 10:13,
11:10, 102:2,
102:4, 102:5,
102:12
**pause**
33:20, 35:10,
48:12, 49:3,
51:5, 66:8,
80:20, 81:4,
92:10, 117:9,
117:14, 155:5,
202:14, 213:5
**pay**
157:3, 159:11,
159:19, 169:1,

171:11, 171:17,
171:22, 172:4,
172:9, 174:16,
180:4, 181:22
**payable**
182:17
**payee**
162:20
**paying**
170:5, 171:7,
185:16
**payment**
156:8, 161:6,
161:16, 163:4,
169:17, 170:13,
172:7, 172:8,
179:1
**payments**
160:22, 170:3,
170:9, 170:10,
170:14, 172:5,
174:13, 175:18,
178:6, 178:9,
179:19, 183:14,
186:5
**pd**
4:13
**pending**
7:5, 120:3,
175:7
**people**
11:6, 14:15,
44:6, 68:20,
69:5, 84:1,
110:14, 170:5,
172:4
**percent**
23:12, 23:13,
52:16, 52:22,
53:3, 190:21
**perfect**
42:7, 180:1
**perform**
40:16, 41:6
**perhaps**
16:11
**peril**
69:15

**period**
126:4
**permissible**
146:18
**permit**
187:2
**permitted**
143:15, 185:6
**persist**
26:22
**person**
34:8, 72:7,
79:13, 158:22,
159:5, 159:10,
160:1, 160:4,
162:20
**personal**
74:20, 126:13,
149:15, 149:18,
150:1
**personally**
147:17, 148:2
**pertaining**
199:9, 201:2
**phone**
11:1, 11:15,
37:13, 37:14
**photocopy**
6:10, 6:11
**pic**
204:14
**picture**
205:4
**pictures**
172:17
**piece**
221:4
**pieces**
135:22, 183:12
**pivot**
124:12
**place**
31:17, 31:22,
120:5, 216:12,
216:13
**plaintiff**
1:5, 3:3, 8:1,
201:15

plaintiff's
25:11
plan
33:1, 43:13,
55:8, 105:18,
105:20, 106:2,
107:5, 153:10,
153:13, 186:10
planet
7:11, 8:8
planning
173:5, 173:8,
173:10, 173:11
plans
186:8
play
103:19
played
102:19
pleading
215:2
pleadings
214:13
plow
193:7
plus
157:3, 181:22,
182:5, 182:6,
182:13, 182:14,
182:15
point
11:18, 27:1,
38:19, 40:6,
45:14, 45:17,
63:2, 134:1,
141:12, 142:1,
142:8, 160:12,
185:11, 200:19
portion
18:9, 18:10,
18:18, 19:7,
19:8, 19:11,
21:21
position
12:18, 13:1,
24:15, 53:6,
73:16, 73:17,
81:2, 110:13,

111:17, 143:14,
188:8, 190:22
positions
220:7
positive
128:17
possession
200:5, 200:13
possible
16:8, 119:21
possibly
125:10
potential
55:22
power
23:15, 29:16
practice
26:7, 172:16
precursor
27:6
preparation
102:8
prepare
101:19
preparing
20:1, 216:14
presence
193:16, 193:21
present
4:11, 43:21,
44:5, 44:15,
193:14
presented
35:2, 35:16,
187:12, 187:18
presumably
27:5, 95:6,
214:8
pretend
76:5, 76:6
pretending
172:16
pretty
71:2, 114:13
prevail
71:18, 75:12
previous
122:21, 153:4,

167:6, 176:13,
181:7, 210:20
previously
149:17, 152:6,
153:12
primary
43:5
printed
222:15
printout
156:5
prior
13:4, 19:22,
20:1, 20:12,
49:21, 50:2,
50:18, 56:2,
56:11, 57:2,
102:21, 126:6,
139:20, 140:5,
153:10, 159:15,
159:16, 164:11,
180:17, 205:3,
205:9, 218:19
probably
16:8, 20:5,
39:1, 39:11,
39:16, 43:6,
47:17, 58:18,
108:8, 111:14
problem
16:10, 186:12
procedural
13:20
procedure
31:1, 31:5
proceed
8:15
proceedings
33:20, 35:10,
48:12, 49:3,
51:5, 66:8,
80:20, 81:4,
92:10, 117:9,
117:14, 148:1,
148:4, 148:16,
155:5, 202:14,
213:5, 223:5,
223:8

process
13:22, 87:2
produce
86:1, 90:12,
129:11, 129:17,
130:1, 130:5,
130:9, 142:17
produced
25:9, 28:14,
47:15, 90:5,
110:6, 129:1,
129:5, 129:15,
183:11, 197:22,
198:4, 199:13,
199:15, 219:17,
221:18
product
42:18
products
43:3
prohibit
26:15
promising
172:19
proper
30:22, 31:5,
32:19, 32:21
properly
22:12, 22:15,
22:21
prosecuting
51:13
protective
18:3, 77:3,
149:4, 199:10,
201:6, 216:10
provide
86:10, 86:16,
204:6, 204:13,
209:3, 218:20
provided
77:8
providing
104:8, 104:11,
219:6
public
2:9, 211:9,
223:2, 223:21

pure
206:6
purport
138:9, 141:2,
169:12, 169:14,
169:15, 169:18,
187:7
purported
183:13
purporting
187:11, 221:5
purports
90:9, 124:16,
127:2, 161:6,
161:15, 162:16,
169:15
purpose
24:19, 69:12,
148:13, 148:18
pursuant
2:8, 15:7,
26:13
pursuit
120:6, 199:12
put
16:12, 22:4,
24:18, 25:7,
26:3, 26:4,
75:1, 93:5,
103:18, 109:1,
150:18, 151:12,
151:21, 209:1
pybas
4:13

Q

qualified
194:18
qualifying
32:2
quash
5:12, 15:13,
18:2, 18:8,
18:17, 19:7,
19:10
quashed
174:22
questioning
76:2, 188:5

questions
9:17, 14:3,
14:11, 15:2,
22:4, 24:18,
30:7, 30:19,
33:8, 35:8,
66:3, 69:12,
69:13, 73:6,
74:1, 74:5,
74:13, 74:16,
74:18, 74:20,
74:22, 75:9,
75:10, 76:15,
108:14, 110:21,
115:13, 134:2,
135:15, 140:12,
146:17, 146:19,
148:13, 148:14,
148:18, 179:7,
188:13, 195:11,
195:16, 198:22,
199:8, 199:9,
201:9, 215:3
quick
86:4
quiet
198:13, 220:3

R

raise
8:11
raised
24:14
raising
73:13
rather
69:22
ratification
20:14
reach
70:3
reached
71:8, 157:12,
157:13, 157:15
reaction
119:15, 119:18,
120:11, 120:15
read
19:18, 19:20,

28:21, 29:4,
29:6, 30:4,
30:6, 30:9,
30:18, 33:19,
35:4, 35:5,
35:9, 46:5,
51:3, 51:6,
66:10, 80:16,
90:3, 92:11,
99:8, 99:21,
100:2, 117:15,
122:19, 122:21,
147:5, 178:4,
204:17, 213:7,
214:4
reading
35:6, 131:20,
133:2, 142:4,
213:6
real
144:21, 145:12,
150:10, 162:7
realize
176:4
really
70:14, 102:22,
153:2, 184:12
realtor
187:16
reason
51:18, 198:19,
206:2, 218:7
reasonable
70:1
reasons
35:17, 106:17,
148:18
recall
79:18, 86:9,
90:20, 95:18,
97:11, 97:22,
99:12, 121:20,
122:14, 157:13,
159:18, 160:16,
163:2, 170:8,
181:6, 181:9,
181:11, 181:13,
193:20

recalls
46:2
receive
127:6, 127:14,
132:21
received
16:22, 21:5,
47:19, 91:17,
91:19, 125:14,
127:4, 127:5,
127:15, 127:17,
128:1, 128:6,
128:7, 129:3,
211:15
receiving
99:16, 127:19,
127:21, 128:19,
128:22, 133:12,
139:17
recent
51:1, 53:18,
60:17, 65:17,
80:2, 91:15,
92:2, 98:10,
113:14, 113:22,
116:22, 121:4,
124:14, 167:8,
201:22
recently
20:2, 121:14,
122:1
recess
113:6, 166:15
recipient
128:2, 128:15
recognize
47:14, 65:16,
67:11, 177:8,
177:12
recollection
42:7, 60:1,
102:18, 127:21,
128:18, 128:21,
139:16, 139:21,
157:11, 172:8,
180:1
recommendations
103:12, 122:16

record
12:14, 26:12,
75:21, 111:7,
113:4, 113:8,
166:14, 166:17,
219:10, 222:2,
222:4, 222:17,
223:7
recorded
11:16, 14:5
recording
10:17, 10:21,
11:3, 11:5
recordings
10:16, 11:11
reduced
223:9
refer
49:18
reference
17:21, 32:20,
51:4, 57:19,
57:20, 161:16,
168:22
referred
16:14, 48:20,
48:22, 49:6,
49:9, 79:14
referring
48:15, 55:11,
55:12, 56:4,
56:5, 57:10,
57:15, 58:4,
58:15, 101:7,
118:11, 125:10,
143:4, 156:11,
156:13, 169:6,
182:1, 193:6,
204:21
refers
20:10
reflect
20:22, 127:20,
128:1, 199:11
reflected
21:3
reflects
158:1

refresh
102:18, 103:1,
157:11
refusal
199:8
refused
199:11, 201:1,
214:16, 217:10
regard
108:14, 187:15
regarding
63:16, 67:20,
86:5, 93:18,
95:18, 122:12,
164:11, 214:7
registered
62:4, 62:10
regular
210:1
relate
74:20, 97:9,
97:13, 190:11,
209:15, 215:2
related
25:8, 52:5,
56:9, 57:1,
63:13, 75:2,
89:4, 96:6,
99:17, 100:21,
132:8, 146:20,
147:22, 148:4,
152:5, 154:6,
179:8, 183:5,
211:18, 213:17,
223:11
relates
154:5, 179:10,
221:6
relating
184:12, 187:14
relationship
74:16, 120:2,
120:5
relevance
40:20, 42:21,
44:20, 57:19,
68:18, 73:15,
74:2, 85:2,

96:1, 107:1,
147:18, 149:16,
152:10, 153:16,
160:2, 161:8,
170:1, 174:18,
177:19, 178:11,
179:5, 179:21,
182:10, 183:1,
184:19, 187:10,
189:7, 189:19,
189:20, 191:8,
192:1, 192:16,
194:5, 197:13,
199:5, 203:13,
204:8, 204:16,
205:5, 206:12,
206:17, 207:1,
207:17, 211:7,
213:12, 215:1,
215:20, 217:16,
218:1, 218:5,
218:14
relevant
25:6, 45:5,
76:19, 76:20,
77:14, 147:2,
180:12, 185:11,
199:8, 200:4,
201:2, 201:16,
207:8, 214:1,
214:12, 215:4,
218:10
rely
18:5
remembering
39:17
remind
33:12, 34:14,
74:21, 207:6
reminded
28:18, 29:22,
31:12, 33:22,
34:5, 34:8, 34:9
reminder
157:2
remitter
162:22, 167:11,
167:17, 173:21

remote
7:2, 7:10
remotely
7:12
remove
134:20
removed
97:2, 97:5,
97:8
repeat
58:11, 171:15,
220:15
repeatedly
183:3, 185:10,
185:18, 201:1
rephrase
48:21, 55:19,
97:7, 104:10,
170:17
reply
208:13
reported
1:21
reporter
2:9, 8:7, 8:9,
8:11, 8:15,
12:7, 122:20,
135:18, 168:6,
222:5, 223:1,
223:4
reporting
10:17, 116:14
reports
180:3
represent
7:14, 7:16,
7:22, 14:1,
23:21, 24:3,
75:20, 145:19,
145:22, 147:16,
173:16
representation
9:5, 63:2,
119:22
representations
174:2, 175:20,
177:11, 178:13,
180:20, 181:16,

182:3, 182:18
**representative**
7:18, 9:3,
9:18, 25:16,
187:18
**represented**
49:16, 193:13
**representing**
7:11, 8:4, 8:8,
17:13, 23:14,
30:12, 215:16,
215:19
**represents**
10:22, 23:16
**request**
79:5, 116:7,
190:18, 196:17,
199:10, 201:4,
201:5, 203:10,
208:12
**requested**
105:17, 122:22,
200:2, 204:7,
205:3
**requests**
105:11, 105:13,
109:4, 109:8,
109:11, 109:15,
209:8
**required**
26:13
**requirements**
185:7
**reread**
49:2
**resend**
166:8
**reserve**
221:15
**resignation**
159:15, 159:17
**respect**
57:12, 82:18,
108:1
**respective**
14:17
**respond**
33:9, 45:4,

64:4, 79:5,
79:8, 80:19,
81:3, 106:14,
116:7
**response**
47:15
**responses**
5:14, 104:2,
116:2, 215:3
**responsive**
126:3
**restate**
111:12, 153:4
**retail**
22:18, 72:19,
73:1, 73:2,
74:10, 77:21,
78:7, 217:13,
217:15, 218:4,
218:12
**retain**
23:7, 24:2,
24:9, 24:10,
25:13, 27:10
**retained**
22:15, 22:21,
212:5
**retains**
23:17
**revealed**
218:7
**review**
17:6, 19:22,
66:18, 67:1,
67:7, 67:17,
79:5, 81:5,
94:7, 99:19,
102:7, 103:18,
109:7, 114:19,
114:21, 116:1,
116:8, 117:11,
125:7
**reviewed**
20:3, 79:10,
102:12, 102:17
**reviewing**
79:19, 104:2,
104:8, 213:4

**revise**
134:21
**ridiculous**
108:6
**right**
8:12, 12:4,
16:14, 16:17,
27:16, 30:4,
66:11, 73:21,
76:11, 78:10,
85:13, 85:14,
89:13, 99:7,
113:10, 116:19,
131:9, 147:4,
148:10, 162:22,
166:12, 168:10,
189:10, 197:14,
198:6, 200:18,
219:1, 220:1,
220:8, 221:15
**right-hand**
155:21
**road**
76:1
**role**
25:1, 38:11,
78:3, 102:18,
102:22, 103:7,
103:13, 103:19,
104:2, 104:8,
104:11, 104:16
**ron**
4:12
**ronald**
7:18
**room**
10:14, 10:15,
11:12
**rooms**
8:19
**rule**
26:13, 74:12,
147:6, 149:8,
195:8, 201:4
**rules**
22:6, 26:15,
32:21, 143:11,
147:5

**run**
33:3
**running**
31:6

**S**

**s**
197:1, 197:10
**said**
14:13, 22:20,
34:4, 41:19,
45:15, 45:19,
47:1, 77:22,
78:2, 121:22,
174:8, 174:11,
175:12, 183:6,
191:14, 223:8
**same**
10:9, 35:7,
40:7, 54:17,
58:7, 68:5,
87:11, 91:5,
96:8, 108:4,
134:13, 135:7,
135:10, 136:3,
136:15, 138:20,
140:13, 143:10,
151:14, 152:18,
166:3, 166:4,
175:14, 176:13,
180:16, 181:7,
185:1, 190:13,
191:16, 204:1,
205:10, 219:5
**save**
111:14
**saw**
176:14
**say**
19:9, 34:7,
44:8, 48:2,
50:12, 52:18,
57:9, 67:14,
69:18, 82:20,
83:20, 111:15,
113:19, 128:13,
132:10, 145:15,
145:22, 147:2,

149:12, 149:18,
149:22, 155:12,
162:4, 162:5,
163:16, 170:4,
171:13, 174:10,
174:12, 177:18,
180:9, 181:15,
182:7, 186:14,
190:7, 216:20,
217:11
**saying**
23:15, 72:12,
78:6, 81:10,
127:9, 149:9,
161:19, 173:21,
175:18, 187:4,
214:18
**says**
20:9, 20:12,
22:11, 28:17,
29:22, 31:11,
34:9, 48:20,
49:14, 51:7,
54:18, 54:22,
55:5, 62:9,
80:10, 80:17,
81:21, 87:14,
89:22, 90:11,
92:4, 93:4,
93:14, 98:16,
99:7, 105:9,
105:10, 105:16,
109:3, 114:12,
114:13, 114:18,
114:20, 145:16,
155:15, 155:22,
156:1, 156:7,
158:9, 160:14,
160:17, 162:21,
163:21, 164:21,
164:22, 178:4,
178:6, 180:10,
180:15, 181:21,
203:11, 213:17,
214:3, 214:14,
220:4
**scam**
217:11

**schedule**
196:14, 196:15
**scheme**
150:18, 151:11,
151:20, 152:9,
152:14, 153:10,
183:8
**schemes**
152:5
**scope**
69:14, 74:14,
146:18, 195:11
**screen**
11:2, 16:12,
17:1, 54:3,
54:4, 109:2,
154:16, 208:10
**screw**
173:2
**scroll**
15:19, 80:8,
180:22
**scrolling**
34:19
**seal**
223:15
**search**
125:17
**searchable**
222:15
**searched**
125:14
**sec**
213:9
**second**
16:21, 61:5,
92:1, 125:12,
168:21, 202:13,
211:14
**secondly**
25:8
**securities**
47:2
**see**
16:4, 17:4,
20:16, 20:17,
33:1, 48:1,
61:13, 61:14,

61:18, 62:9,
65:21, 66:6,
68:22, 69:8,
69:19, 70:4,
70:15, 71:6,
71:18, 75:11,
77:19, 80:22,
82:1, 90:1,
91:18, 94:4,
98:18, 98:22,
99:3, 105:4,
105:5, 105:10,
105:11, 105:12,
107:21, 108:20,
109:1, 109:5,
109:6, 114:6,
114:7, 117:6,
119:5, 119:9,
121:9, 121:12,
125:2, 125:4,
128:2, 133:10,
154:15, 155:2,
155:6, 155:11,
155:22, 156:2,
156:3, 156:9,
156:10, 157:4,
157:6, 160:17,
162:18, 162:19,
162:22, 163:1,
164:1, 165:18,
172:12, 175:8,
177:4, 177:5,
184:20, 202:6,
202:10, 202:12,
202:15, 208:11,
212:7
**seeing**
119:15, 120:12,
174:1
**seem**
188:7
**seems**
174:19
**seen**
28:10
**sell**
34:22, 35:15
**send**
16:5, 16:7,

16:14, 43:14,
48:9, 55:1,
55:3, 55:5,
55:8, 86:21,
87:9, 97:20,
99:10, 110:2,
116:15, 127:2,
155:18, 169:9,
172:16, 205:2,
213:8, 214:4,
214:20
**sender**
127:8, 127:12
**sending**
43:16, 49:21,
50:9, 50:18,
78:19, 163:7,
172:17, 172:19,
210:6, 212:12,
213:2
**sense**
36:1, 50:5,
57:14
**sent**
43:15, 48:13,
55:4, 64:19,
65:20, 79:2,
80:9, 85:22,
86:2, 91:6,
95:20, 97:17,
97:22, 98:1,
99:4, 106:1,
106:12, 109:14,
115:8, 115:20,
124:9, 126:8,
126:11, 130:13,
131:4, 134:18,
135:1, 139:15,
156:15, 156:18,
160:18, 161:19,
162:4, 167:22,
172:17, 172:18,
172:19, 175:12,
176:12, 203:8,
204:14, 205:15,
208:12, 210:6,
215:8, 221:5
**sentence**
23:10, 87:14,

204:17, 204:20
**separate**
147:8, 148:16,
168:3
**september**
25:4, 113:13,
113:15, 113:21,
113:22, 121:4,
124:15, 126:7,
134:15, 135:7,
136:5, 138:1
**series**
174:12, 174:17,
175:13
**served**
18:8, 27:22,
72:22
**service**
116:14
**serving**
22:13, 82:2
**set**
27:20, 105:18,
183:16, 223:14
**settle**
84:6, 157:17,
209:1
**settlement**
70:12, 70:15,
71:7, 117:18,
117:22, 118:9,
118:16, 119:5,
119:12, 120:4,
120:12, 120:13,
120:19, 120:22,
209:3, 211:11,
211:15, 211:18
**several**
102:16, 112:2
**severance**
30:1, 31:12,
33:13, 34:14,
36:18, 152:4,
152:16, 152:21,
152:22, 153:2,
153:10, 153:13,
154:5, 156:8,
156:11, 159:4,

159:7, 161:7,
161:16, 163:5,
169:17, 183:9,
183:13, 186:1,
186:8, 186:9,
187:15
**share**
93:1, 214:14,
217:8
**shareholder**
22:16, 22:22,
23:6, 189:9,
189:11, 189:14,
190:3
**shares**
22:17, 53:5
**sharing**
193:7
**sheet**
168:8
**short**
108:17, 113:2
**shorthand**
223:1
**shortly**
53:8
**should**
23:13, 24:22,
46:7, 71:14,
72:8, 79:11,
79:15, 81:22,
85:13, 85:15,
167:6, 168:2,
168:5, 168:12,
173:1, 184:13
**show**
15:16, 43:13,
47:7, 91:8,
98:8, 104:18,
116:13, 121:1,
165:3, 181:1,
199:15, 202:7,
212:1, 212:10
**showing**
184:18, 218:11
**shown**
8:6, 18:1,
183:10

**shows**
186:6
**sign**
177:15
**signature**
173:22, 174:8,
174:9, 174:10,
177:6, 177:8,
177:12, 177:14,
181:1, 181:2,
181:4
**signature-bi6ds**
223:19
**signatures**
122:13
**signed**
44:1, 44:6
**similar**
158:12
**simple**
31:8, 33:13,
70:14, 71:2
**since**
134:22, 135:3,
184:10, 192:13,
192:14, 207:3,
207:13, 207:18
**single**
22:16, 22:22,
23:6, 131:13,
138:13, 138:21,
140:22, 142:22,
143:2, 144:1
**sir**
9:21, 10:1,
10:3, 15:4,
15:6, 17:19,
18:16, 18:21,
23:4, 24:21,
26:11, 31:21,
32:7, 35:4,
35:11, 37:17,
38:19, 40:6,
41:5, 41:11,
45:8, 45:11,
45:13, 49:4,
51:4, 51:6,
54:7, 56:4,

58:2, 62:12,
63:2, 74:13,
74:22, 79:1,
81:6, 83:21,
85:9, 90:3,
96:3, 107:22,
109:2, 112:9,
122:14, 125:3,
125:7, 126:15,
129:22, 132:2,
133:20, 139:21,
145:21, 147:6,
162:19, 163:1,
163:20, 164:16,
169:5, 169:18,
174:6, 177:5,
177:10, 180:21,
181:15, 182:2,
182:18, 182:21,
189:12, 197:16,
198:2, 208:5,
209:21, 210:14,
211:1, 211:22,
212:15, 213:4,
216:20, 221:12
**sit**
30:18, 89:13,
196:11
**sitting**
15:12, 59:22,
88:9, 95:20,
96:6, 96:19,
119:19
**situation**
70:8, 74:21,
172:11
**six**
46:10, 166:6,
212:14, 212:19
**sixth**
140:13, 143:10
**slow**
29:9
**small**
221:17
**smaller**
135:21
**smart**
22:18, 72:19,

73:1, 73:2,
74:10, 77:21,
78:7, 217:13,
217:15, 218:4,
218:12
**smear**
218:18, 220:12
**solicit**
112:14, 112:19
**solicited**
112:11, 112:12
**some**
27:1, 28:14,
31:17, 41:14,
41:15, 42:16,
43:20, 45:14,
45:16, 47:2,
54:2, 65:4,
68:10, 74:1,
78:3, 86:5,
97:17, 99:22,
103:1, 112:11,
118:22, 141:12,
142:1, 142:8,
157:11, 160:12,
167:2, 172:9,
174:19, 183:13,
183:16, 184:19,
200:12, 202:16,
205:4, 214:5,
215:9
**somebody**
33:9, 220:10
**somehow**
186:22
**someone**
123:4, 161:19
**something**
26:2, 26:4,
33:8, 64:10,
66:15, 78:22,
90:7, 116:10,
143:13, 183:4,
184:8, 184:18,
187:1, 217:7
**sometime**
126:6
**son**
205:20

**soon**
54:1, 61:5,
202:8, 212:10,
217:12
**sorry**
10:6, 15:5,
19:9, 39:15,
45:12, 45:21,
46:6, 49:5,
61:10, 62:21,
67:14, 102:3,
121:3, 129:9,
129:16, 139:11,
154:7, 156:1,
170:9, 171:11,
176:3, 193:1,
196:16, 198:1,
203:17, 215:17
**sort**
174:19, 183:16,
184:19
**sorts**
218:20
**sound**
48:19
**sounds**
44:9, 52:18,
131:8, 183:15
**source**
136:13
**speak**
25:15, 43:17,
111:2, 111:5,
111:9, 187:8,
188:2, 188:11,
188:20, 193:9,
193:11, 194:15
**speaking**
25:6, 26:8,
26:16, 32:11,
32:12, 32:15,
36:15, 36:17,
50:19, 61:20,
111:4, 120:9,
123:5, 123:6,
145:5, 189:8,
207:19, 221:19
**speaks**
18:12, 18:21,

19:14, 178:1,
180:12, 187:21,
215:11
**special**
9:10, 9:12
**specific**
58:22, 59:9,
64:19, 94:2,
101:11, 112:1,
120:15, 120:21,
126:1, 126:2,
128:18, 128:21,
139:16, 146:5,
203:9
**specifically**
25:8, 28:16,
50:20, 102:9,
102:10, 133:11,
143:5, 172:7,
209:8, 214:3
**speculate**
63:16, 64:18,
67:20, 68:6,
87:3, 91:2,
150:13
**speculating**
122:3
**speculation**
67:22, 70:19,
71:10, 83:15,
95:9, 110:4,
115:5, 118:3,
137:17, 145:3,
190:15, 202:20,
206:6
**spent**
24:22, 125:21,
201:13, 221:19
**spoke**
50:8, 87:15,
121:14, 121:22,
123:1, 123:10,
123:18, 159:1,
159:3, 159:6,
159:10
**spread**
116:21
**st**
12:20, 49:11

**standalone**
138:17, 140:9,
143:21
**start**
21:17, 39:22,
42:13, 54:8,
73:1, 111:4,
113:11, 165:6
**started**
12:5, 14:22,
37:19, 42:12,
42:13, 72:19,
123:7
**starts**
85:21, 154:11,
202:16
**state**
2:10, 7:14,
12:13, 223:22
**state's**
12:19, 12:22,
13:3, 13:9,
40:13, 40:18,
41:8, 41:15,
41:17, 41:20,
42:2, 42:4,
42:8, 42:11
**stated**
149:17
**statement**
10:18, 20:18,
20:21, 21:1,
29:21, 30:3,
31:2, 31:15,
31:18, 33:12,
34:9, 35:3,
35:13, 45:22,
46:2, 46:15,
113:18, 151:18,
220:5
**statements**
14:17, 220:7
**states**
1:1, 7:5
**status**
27:16
**stenographically**
223:9

**step**
10:20, 172:12
**stephen**
3:14, 7:15,
8:3, 28:19,
31:6, 32:14,
77:20, 91:17,
108:3, 111:12,
115:7, 116:18,
156:20, 183:15,
184:6, 195:20,
214:11
**stern's**
8:3
**steven**
105:9, 105:10
**still**
68:5, 94:22,
95:7, 95:13,
176:4, 179:8,
213:4
**stop**
25:5, 26:8,
27:3, 29:7,
29:12, 32:11,
32:12, 56:12,
74:6, 75:4,
120:8, 145:6,
198:11
**stored**
95:3
**story**
152:22
**street**
3:7, 3:17
**string**
47:21, 48:5,
50:22, 51:1,
53:18, 54:9,
54:16, 57:7,
60:17, 60:19,
61:3, 66:12,
91:14, 92:1,
92:9, 98:10,
113:12, 113:20,
113:22, 114:8,
141:6, 167:9,
202:1

**stuff**
96:10, 211:11
**sub**
195:9
**subject**
17:22, 25:17,
92:3, 98:16,
149:4, 201:11
**subjects**
124:3
**subpoena**
15:8, 15:14,
18:8, 18:19,
19:11, 19:12,
22:11, 47:16,
125:19, 126:4,
174:22
**subpoenas**
18:2
**subsection**
20:7, 22:10
**substance**
36:6
**success**
200:22
**sue**
4:13
**suggest**
24:21
**suggesting**
73:11
**suggestions**
94:10, 122:11
**suggests**
78:2
**suing**
189:16, 190:10,
191:20, 194:15
**suit**
204:14, 205:4
**suite**
3:6, 4:5
**summary**
114:14
**sums**
170:11, 170:22
**sunday**
86:5

**supervision**
223:10
**supplemental**
43:8, 46:9
**supply**
203:11
**support**
8:5, 185:14,
190:16
**supposed**
24:12, 205:9,
212:18, 219:18
**supposedly**
31:22, 75:22
**sure**
8:5, 10:21,
13:21, 17:16,
17:17, 18:4,
26:12, 33:5,
42:9, 44:4,
52:19, 57:19,
94:3, 96:14,
96:15, 118:11,
119:8, 128:12,
164:16, 172:5,
173:11, 183:15,
193:18, 195:13,
209:13, 209:18,
209:19, 222:11
**surprised**
133:10, 133:15
**suspend**
195:9
**suspicions**
219:8
**swear**
8:9
**switch**
168:8
**sworn**
8:14, 12:6
**sydney**
4:3
**T**
**tagnetics**
80:12, 81:9,
92:4, 93:5,

93:7, 93:14,
93:17, 93:22,
217:13
**take**
10:20, 22:7,
24:16, 25:20,
31:22, 47:18,
48:10, 66:2,
77:17, 91:22,
92:4, 92:8,
108:2, 108:10,
108:15, 108:17,
113:2, 117:8,
143:14, 150:2,
155:4, 165:5,
165:15, 166:10,
216:13, 221:21
**taken**
24:12, 113:6,
135:18, 166:15,
201:5, 216:15,
223:6, 223:8
**taking**
73:16, 73:18,
120:4, 148:11,
188:7
**talk**
21:7, 33:2,
187:7, 187:11
**talked**
21:22, 37:18,
39:1, 42:16,
43:4
**talking**
31:19, 36:12,
40:7, 42:6,
42:19, 48:3,
54:19, 56:14,
111:1, 121:15,
132:15, 133:4,
147:15, 153:19,
159:7, 176:4,
200:14, 200:16,
207:20, 219:14
**talks**
136:14
**tar**
219:3

taxes
160:20, 160:21,
173:6
tech
4:13, 168:10
technical
8:5, 137:2
tecum
18:3, 18:9,
18:18, 19:7,
19:10, 22:12
telephone
36:20, 106:9
telephones
11:17, 11:19
tell
31:16, 50:17,
82:10, 179:9,
197:15, 205:21
telling
67:5, 139:13,
148:21
ten
39:2, 39:21,
123:21, 165:5
tend
14:15
terminate
74:13, 200:19
terminated
214:16, 217:5,
217:10, 217:12,
218:13
termination
217:3, 217:7
terms
36:18, 158:2,
185:6, 214:5,
222:15
testified
8:14, 34:20,
141:6
testify
194:20, 194:21
testifying
32:4
testimony
23:19, 56:3,

60:5, 73:4,
102:21, 135:16,
135:17, 138:12,
139:5, 139:20,
140:5, 141:11,
141:17, 141:21,
142:3, 142:12,
142:15, 161:22,
162:9, 164:11,
171:6, 171:20,
178:19
text
208:13
th
25:4, 27:22,
89:1, 154:8
thank
8:15, 8:17,
10:19, 17:8,
27:7, 46:11,
47:19, 54:10,
76:4, 113:10,
115:12, 116:19,
145:5, 154:13,
198:6, 221:12,
221:22
themselves
7:14
theory
186:22, 190:17,
191:1
thereafter
223:9
therefore
25:12, 95:5
thing
17:12, 108:4,
136:15, 162:5
things
22:14, 55:1,
55:6, 55:11,
55:12, 59:6,
59:9, 59:11,
59:16, 59:20,
110:14, 120:6,
132:19, 203:3,
203:5, 203:9,
204:11, 204:12,

209:7, 210:7,
211:3, 214:1
think
20:20, 23:3,
23:4, 23:9,
23:10, 23:11,
23:12, 23:13,
24:20, 27:15,
27:21, 42:7,
42:17, 42:20,
43:3, 43:4,
44:3, 44:5,
44:9, 47:8,
51:16, 53:11,
56:14, 57:6,
72:14, 78:13,
79:7, 79:10,
80:11, 82:15,
82:21, 83:2,
83:11, 93:14,
99:7, 99:13,
100:8, 108:8,
110:12, 115:9,
118:12, 119:3,
121:21, 122:7,
122:10, 123:11,
128:16, 138:11,
146:10, 160:11,
162:7, 184:9,
184:13, 189:14,
191:18, 193:3,
194:14, 195:15,
195:19, 196:9,
197:3, 197:4,
197:7, 197:8,
197:9, 208:19,
208:22, 209:6,
210:5, 210:6,
215:15, 215:17,
216:21, 217:3,
217:6, 221:1
thinking
108:4
third
168:21
third-party
187:13
thought
41:19, 63:17,

79:12, 79:13,
87:2, 172:21,
173:1, 203:17,
217:4
thoughts
64:17, 67:21,
90:1, 90:18,
90:19, 90:22,
92:22, 93:1,
93:4, 101:5,
101:11
thousand
110:7, 199:13
thread
61:22, 80:1,
119:16, 121:2,
121:3, 124:14,
124:16, 125:4,
125:9, 125:18,
126:16, 130:6,
130:12, 131:7,
132:4, 138:7,
138:17, 141:2,
144:21, 145:12,
150:10, 202:10
threads
77:9
three
20:8, 22:11,
71:21, 166:17,
172:4, 181:8,
201:9, 201:10,
201:13
through
15:19, 19:19,
30:18, 47:9,
65:11, 79:22,
91:9, 98:9,
112:2, 116:20,
121:2, 124:13,
148:15, 152:16,
165:8, 165:13,
165:15, 173:6,
221:16
throughout
110:2, 210:2,
213:22
time
7:8, 12:10,

13:10, 14:16,
20:3, 20:22,
21:13, 24:21,
24:22, 27:1,
32:9, 33:8,
37:3, 38:7,
38:8, 38:19,
38:20, 39:5,
39:22, 40:2,
40:6, 40:8,
41:8, 41:11,
41:14, 41:15,
42:3, 45:16,
45:17, 47:2,
53:6, 56:1,
56:15, 87:7,
88:10, 111:14,
113:4, 113:9,
120:1, 125:21,
126:4, 132:1,
137:7, 138:19,
139:9, 140:13,
141:12, 142:1,
142:8, 143:10,
143:16, 164:9,
166:14, 166:17,
170:8, 170:10,
170:12, 170:21,
171:16, 182:7,
184:11, 194:4,
195:10, 196:9,
196:11, 196:18,
197:11, 198:8,
199:2, 199:20,
208:21, 211:8,
219:5, 221:19,
222:3
**times**
21:11, 39:2,
50:8, 50:11,
71:21, 123:13,
123:16, 123:17,
214:6
**title**
12:21, 38:17,
39:9, 40:2
**today**
7:10, 8:8,

9:17, 13:20,
14:3, 15:1,
15:7, 20:1,
21:15, 78:15,
88:9, 101:20,
102:8, 102:13,
112:5, 187:13,
187:19, 196:11,
221:16, 222:3
**today's**
7:7
**together**
23:9, 23:10,
23:11, 132:13,
150:19, 151:12,
151:21, 166:10
**told**
79:11, 172:22,
179:6, 183:3,
185:19
**tom**
47:22, 61:9
**took**
31:17
**top**
48:7, 57:7,
92:1, 155:21,
163:21, 168:8,
168:11
**topics**
25:2, 39:19
**total**
159:18, 174:16,
175:11
**totaling**
186:2
**totally**
115:15
**track**
52:7, 52:10,
116:15
**transcript**
5:10, 14:5,
16:1, 28:8,
43:12, 47:12,
53:16, 60:22,
65:14, 80:6,
85:19, 89:19,

91:12, 98:14,
105:2, 107:19,
114:4, 116:16,
117:4, 121:7,
124:21, 154:21,
166:21, 176:21,
202:4, 222:5,
222:14, 223:7
**transfer**
203:21
**treat**
68:20
**tribunals**
216:15, 219:11
**tried**
65:4, 203:4,
209:7
**trip**
39:16, 42:5,
43:6
**triple**
169:1
**trouble**
208:21
**true**
20:18, 21:1,
30:3, 31:4,
31:15, 33:11,
33:15, 34:2,
35:3, 35:13,
46:22, 47:5,
81:11, 150:13,
151:15, 151:17,
161:18, 223:7
**truthfully**
15:3
**try**
14:19, 33:3,
118:13, 140:16,
150:19, 151:12,
187:1, 203:5,
221:6
**trying**
44:8, 52:7,
52:10, 100:8,
100:12, 100:17,
119:20, 135:22,
148:3, 183:16,

208:20, 212:9,
212:15, 219:10,
221:20
**turn**
10:5, 20:6,
21:10, 21:11,
27:19, 28:15,
43:7, 65:10,
79:21, 150:4,
198:12, 198:15,
220:2
**turning**
22:10
**twice**
147:10, 182:4
**two**
17:3, 20:5,
20:7, 20:8,
102:2, 102:4,
102:5, 113:8,
120:6, 167:7,
167:13, 175:17,
175:18
**typewriting**
223:10

---

**U**

**ultimately**
61:11
**uncertain**
44:10
**unclear**
14:9
**under**
15:3, 26:13,
34:20, 74:22,
174:13, 183:13,
190:17, 191:1,
195:8, 201:3,
223:10
**underlying**
75:2
**understand**
13:22, 14:6,
14:10, 14:12,
14:13, 14:21,
17:2, 21:13,
44:8, 71:3,

81:12, 82:21,
93:20, 96:15,
100:9, 100:17,
100:20, 101:2,
128:12, 129:14,
137:14, 144:19,
144:22, 147:6,
150:16, 151:10,
152:19, 153:6,
217:4, 220:22,
221:7
**understanding**
99:9, 106:14,
115:22, 118:7,
118:15, 128:8,
136:12, 137:3,
145:4, 145:8,
145:10, 145:19,
150:8, 151:1,
170:20, 187:19,
188:6, 195:14,
206:3
**understands**
187:20
**understood**
14:20, 147:9
**undertaken**
152:4, 152:14,
152:15
**undertaking**
213:22
**uninterested**
11:8
**united**
1:1, 7:5
**unless**
186:14
**unrelated**
24:19, 209:12
**unsolicited**
110:19, 111:19,
112:5
**until**
30:9, 125:14,
149:9, 195:9
**unusual**
132:18
**unwieldy**
67:12

**unwisely**
143:16
**updates**
210:1, 210:5
**upper**
155:21, 173:21
**use**
26:21, 41:11,
55:2, 55:7,
55:9, 55:12,
55:13, 96:13,
115:11, 137:7,
152:8, 209:1
**using**
25:18, 143:16

---
V
---

**vague**
51:20, 56:14,
60:13, 62:17,
104:14, 118:10,
119:17, 210:13
**verbal**
14:6, 158:4,
158:7
**verbalize**
14:4
**verbally**
79:8
**version**
168:9, 222:8
**versus**
7:4, 193:7
**veto**
23:15
**via**
1:14, 2:2
**vicki**
1:21, 2:8, 8:8,
223:4
**video**
7:3, 7:8, 7:12,
7:19, 10:18,
11:1, 11:15,
14:5, 222:4,
222:8, 222:14
**videographer**
4:14, 7:2,

7:10, 8:7,
113:3, 113:7,
166:13, 166:16,
222:1
**videotaped**
1:12, 2:1
**vigorously**
49:16
**violations**
47:2
**virginia**
64:8
**virtually**
1:14, 2:2
**voice**
7:13, 198:16
**vs**
1:6

---
W
---

**wages**
170:11
**wait**
14:18, 14:19,
30:17, 30:18
**waiting**
105:5
**want**
10:20, 10:21,
21:10, 27:19,
28:15, 29:3,
29:4, 32:5,
35:7, 38:2,
43:7, 50:21,
61:2, 61:15,
65:10, 68:22,
69:4, 69:8,
69:19, 70:4,
70:15, 71:6,
71:12, 71:18,
72:4, 77:17,
79:21, 80:8,
91:8, 91:22,
98:8, 108:13,
110:21, 111:7,
115:7, 115:11,
115:14, 118:12,
124:12, 128:12,

136:1, 140:16,
168:15, 171:15,
184:16, 186:18,
195:13, 198:16,
207:5, 221:6
**wanted**
171:22, 172:5
**wants**
75:11
**waste**
211:8
**wasted**
207:9
**way**
22:6, 29:16,
76:9, 94:20,
97:7, 97:10,
97:14, 115:14,
134:22, 139:2,
139:10, 139:12,
146:10, 146:14,
146:16, 185:16,
187:1, 188:5
**we'll**
16:11, 16:16,
21:7, 21:11,
26:19, 47:17,
54:2, 77:18,
77:19, 81:2,
108:17, 111:13,
113:2, 117:8,
155:3, 165:15,
166:11, 168:17,
199:10, 222:7,
222:9
**we're**
40:7, 53:9,
56:4, 77:1,
80:15, 80:16,
92:7, 113:10,
117:13, 121:11,
140:11, 143:13,
166:10, 167:15,
179:8, 207:10,
212:9, 212:15,
212:18, 213:10,
222:12
**we've**
47:19, 108:4,

108:9, 112:2, 112:4, 112:8, 155:3, 165:4, 184:10
**wednesday**
26:5
**week**
40:4
**weeks**
102:16
**went**
35:17, 39:17, 75:22, 166:7
**weren't**
37:14, 176:3, 215:4
**west**
3:17
**whatever**
180:3
**whenever**
79:10
**whereof**
223:14
**whether**
22:2, 22:4, 29:2, 30:9, 30:19, 31:3, 32:2, 33:11, 34:2, 46:1, 60:1, 66:14, 75:11, 77:20, 78:6, 78:14, 96:6, 156:15, 158:4, 158:7, 160:20, 161:18, 162:12, 170:22, 184:7, 188:19, 189:8, 190:22, 191:13, 206:10
**white's**
5:12, 73:21, 149:15, 196:13, 196:14, 218:7
**whoever**
16:15
**whole**
17:12, 76:1,

186:22, 199:7
**whythe**
193:8
**wide**
209:17
**win**
70:15, 70:21, 71:5
**wise**
83:22, 84:19, 194:14
**wish**
41:11
**withheld**
160:21
**without**
72:6, 73:14, 106:13, 130:6, 200:22
**witness**
8:10, 12:6, 25:1, 29:9, 33:9, 63:16, 64:17, 67:10, 67:20, 80:17, 87:3, 91:2, 103:12, 123:1, 124:7, 145:3, 156:21, 187:13, 187:14, 194:19, 203:6, 223:14
**witness's**
75:17, 214:11, 215:21
**witnesses**
73:8, 101:8, 124:2
**word**
96:14, 128:16, 136:15, 152:9
**words**
164:1
**work**
12:19, 13:22, 33:4, 40:5, 41:14, 57:11, 69:5, 146:16, 157:18, 159:11,

172:12
**worked**
40:10, 41:13, 41:16, 72:6, 132:13
**working**
13:8, 40:17, 41:7, 41:16, 42:12, 43:5, 51:12
**works**
76:9, 146:15
**world**
45:18
**wouldn't**
68:14, 95:7
**write**
157:8
**writing**
79:9, 160:1
**writings**
119:6, 160:5
**written**
158:1, 158:7, 164:19, 172:2
**wrong**
208:21, 220:1, 220:9
**wrongful**
217:3
**wrote**
19:5, 19:6, 20:20, 23:3, 23:4, 54:14, 58:14, 99:8, 125:11
**wyoming**
72:20, 203:11, 209:14, 217:13

**Y**

**yeah**
48:19, 117:15, 201:17
**year**
13:2, 158:9, 160:15, 218:12, 218:16

**years**
13:7, 37:17, 39:2, 39:11, 39:16, 39:21, 41:14, 41:21, 42:1, 42:3, 42:11, 72:7, 132:12, 133:1, 138:22, 193:2, 193:4
**yesterday**
129:5
**yeung**
3:15, 8:2, 10:9, 16:5, 16:10, 16:16, 43:16, 114:9, 154:2, 154:7, 154:11, 154:13, 154:18, 165:19, 165:21, 166:2, 166:6, 168:7, 168:12, 201:20
**young**
10:7
**yourself**
9:21, 10:8, 189:3, 219:10

**Z**

**zito**
3:5
**zoom**
1:14, 2:2, 8:1

**$**

**$10,000**
162:18, 167:12, 167:22, 168:18
**$15,000**
182:4, 182:20, 184:22, 185:3
**$20,000**
182:13
**$25,000**
167:19
**$30,000**
182:5, 182:9

**$50,000**
182:5, 182:14,
183:9, 186:2
**$65,000**
177:4, 180:8,
181:14, 182:17,
186:5

---
**0**
---

**00**
21:18, 91:15,
184:11
**00001**
6:8, 124:13
**000041**
6:2, 98:9
**00008**
6:8
**000093**
5:15, 47:8
**000285**
6:13, 212:2
**000292**
5:16, 53:10
**000312**
6:7, 121:2
**000543**
6:5, 113:12,
113:20
**000831**
6:6, 116:20
**000875**
6:3, 104:20
**000876**
6:4, 107:15
**000877**
6:12, 201:19
**000894**
5:17, 60:16
**000897**
60:16
**000900**
5:18, 65:11
**000908**
6:1, 91:9
**000913**
5:21, 89:16
**000921**
5:20, 85:7

**000922**
5:19, 79:22
**00309**
1:7, 7:7
**04**
80:3, 117:1
**05**
51:2
**08**
131:2, 131:10,
131:16, 134:5,
134:9, 134:13,
134:21, 135:10,
138:10, 141:3,
143:5, 212:3

---
**1**
---

**1**
80:3, 117:1,
124:17, 127:3,
127:4, 129:12,
131:11, 135:13,
136:3, 137:13,
139:3, 141:22,
142:8, 143:6,
144:4
**1/6/21**
5:18
**1/7/21**
5:21
**10**
5:21, 6:9,
61:4, 61:8,
80:10, 81:20,
89:17, 113:5,
113:9, 154:1,
154:8, 155:11,
167:8
**103.3**
51:10
**104**
6:3
**107**
6:4
**1099**
158:9, 160:14,
160:16
**11**
6:1, 91:10,

166:14, 166:18,
184:11, 212:3
**114**
6:5
**116**
4:5
**117**
6:6
**12**
5:3, 5:16,
5:19, 5:20, 6:2,
21:15, 21:17,
21:20, 53:19,
53:20, 54:13,
57:8, 60:18,
61:12, 62:1,
63:10, 80:10,
85:12, 88:16,
98:11, 98:12,
101:15, 113:16,
114:1, 196:8,
221:12, 222:3,
222:17
**121**
6:7
**124**
6:8
**13**
6:3, 6:7,
104:22, 121:4
**14**
6:4, 6:13,
98:22, 107:17,
162:17, 167:12,
212:3
**15**
5:12, 5:15,
6:4, 6:5, 6:9,
47:22, 72:7,
107:16, 108:21,
114:2, 132:12,
133:1, 138:22,
153:22, 154:8,
155:10, 157:2,
167:8, 181:21,
182:8, 182:14,
182:15, 193:2,
193:3

**154**
6:9
**16**
6:3, 6:6,
15:18, 104:21,
116:17, 117:2
**166**
6:10
**17**
6:7, 44:19,
45:10, 46:22,
113:5, 121:5
**176**
6:11
**18**
5:19, 6:8,
80:1, 124:19
**19**
6:9, 27:22,
53:20, 54:13,
60:18, 61:12,
62:1, 63:10,
98:11, 101:15,
154:19, 167:15,
167:21, 168:9,
168:16, 181:21
**1:-cv--elh**
1:7, 7:7

---
**2**
---

**2**
53:19, 57:8,
131:2, 131:10,
131:16, 134:5,
134:9, 134:13,
134:21, 135:10,
138:10, 141:3,
143:5
**2/1/15**
6:11
**2/5/21**
5:17
**2/9/15**
6:10
**20**
5:19, 5:20,
6:1, 6:10, 13:7,
39:11, 39:16,

41:21, 42:1,
42:3, 42:11,
91:14, 113:13,
113:21, 132:12,
155:10, 157:3,
166:19, 167:8,
167:15, 167:16,
168:6, 168:13,
168:17, 173:13,
181:22, 182:5,
182:6, 182:14,
182:15, 223:18
**2001**
42:12, 135:7
**2002**
42:14
**2007**
89:10, 98:2,
120:1, 124:17,
126:17, 127:3,
129:12, 131:2,
131:17, 131:18,
132:5, 132:8,
132:15, 132:22,
133:8, 133:19,
133:21, 134:5,
134:9, 134:13,
134:21, 135:9,
135:13, 136:3,
137:13, 138:10,
139:3, 141:3,
141:22, 143:4,
143:6, 144:4,
145:13, 150:11,
203:8
**2014**
157:21
**2015**
44:19, 45:10,
46:22, 47:6,
154:1, 155:10,
157:21, 162:17,
165:17, 167:5,
167:8, 167:12,
167:18, 168:4,
173:15, 176:18,
177:3, 177:16,
181:9

**2019**
176:16
**202**
6:12
**2020**
54:13, 80:2,
80:3, 80:10,
81:20, 85:11,
88:16, 132:8
**2021**
1:15, 7:8,
15:18, 47:22,
51:2, 51:7,
53:19, 57:8,
60:18, 60:19,
61:3, 61:8,
62:1, 62:22,
63:10, 64:5,
65:18, 65:20,
89:22, 91:14,
91:15, 98:11,
98:22, 101:14,
104:21, 107:16,
108:21, 113:14,
113:15, 113:21,
114:1, 116:21,
117:1, 119:21,
121:4, 124:15,
126:7, 133:21,
134:15, 136:5,
138:1, 201:22,
202:11, 212:3,
223:16
**2024**
223:18
**20770**
4:6
**21**
1:7, 5:15,
5:16, 6:1, 6:2,
6:3, 6:4, 6:5,
6:7, 6:8, 6:11,
6:13, 7:7, 80:9,
81:20, 91:14,
113:21, 176:19,
182:16
**212**
6:13

**21401**
3:18
**216**
3:19
**22**
6:12, 80:3,
91:15, 124:17,
126:17, 127:3,
129:12, 131:2,
132:5, 132:22,
133:18, 134:5,
134:8, 134:13,
134:21, 135:9,
135:13, 136:3,
137:13, 138:9,
139:3, 141:3,
141:22, 143:4,
143:6, 144:4,
202:2
**223**
1:20
**23**
6:13, 80:2,
212:4
**238**
3:17
**24**
124:17, 127:3,
127:4, 129:12,
131:11, 135:13,
136:3, 137:13,
139:3, 141:22,
142:8, 143:6,
144:4, 201:22,
223:18
**25**
6:5, 41:14,
41:22, 52:16,
52:22, 53:3,
113:15, 114:1
**26**
65:18, 65:20,
98:22
**27**
5:20, 6:2, 6:8,
25:4, 51:1,
51:7, 85:11,
88:16, 89:1,

98:11, 101:14,
124:15, 126:7,
134:15, 135:7,
136:5, 138:1
**28**
5:13, 104:21
**29**
1:15, 7:8,
166:14
**293**
5:16, 53:13
**2d**
20:7
**2g**
22:11

---

**3**

**3**
60:19, 104:21,
202:1, 202:12
**30**
21:15, 21:17,
21:20, 26:14,
37:17, 74:12,
74:22, 149:8,
184:10, 195:9,
196:8, 201:4,
202:1, 202:12,
221:12, 222:3
**3000**
4:7
**301**
4:7
**31**
1:16, 7:9,
15:17
**312**
3:9
**318**
121:2
**319**
6:7, 121:3
**32**
113:9, 222:17
**33**
121:4
**34**
60:19

**350**
3:7
**36**
129:21, 135:13
**37**
166:18
**39**
65:21
**3rd**
223:15

---
**4**
---

**4**
80:2, 91:15,
124:16, 134:16,
135:7, 136:5,
138:1, 201:22
**400**
3:6
**41**
107:16, 108:22
**410**
3:19
**414939**
1:19
**42**
6:2, 98:9
**43**
5:14
**44**
48:1, 116:22,
130:21, 131:6,
138:8
**441**
4:7
**45**
54:18, 108:5,
108:10
**46**
81:20
**47**
5:15, 91:14,
113:14, 113:21
**48**
89:22, 134:16
**489**
3:9
**49**
113:16, 114:1

---
**5**
---

**5**
51:2, 65:21,
98:22, 107:16,
108:22, 121:4
**50**
23:12, 23:13,
53:20, 54:13,
182:15, 190:20
**51**
61:4, 61:8,
85:12, 88:16,
154:1, 154:8,
155:11, 167:8
**53**
5:16, 53:19,
57:8
**58**
124:16, 135:7,
136:5, 138:1
**5th**
61:12

---
**6**
---

**6/7/21**
6:12
**60**
5:17
**60654**
3:8
**6411**
4:5
**65**
5:18

---
**7**
---

**7/1/21**
6:6
**77**
201:20
**7900**
3:19

---
**8**
---

**8**
1:16, 7:9,
21:18, 48:1,

85:14, 116:22,
184:10
**80**
5:19
**8174**
3:9
**835**
6:6, 116:20
**85**
5:20
**89**
5:21
**897**
5:17

---
**9**
---

**9**
89:22, 91:14,
113:14, 113:21
**907**
5:18, 65:11
**91**
6:1
**910**
6:1, 91:9
**925**
5:19, 79:22
**94**
5:15, 47:9
**98**
6:2