# EXHIBIT 14

LAW OFFICES

# KAGAN STERN MARINELLO & BEARD, LLC

238 WEST STREET
ANNAPOLIS MARYLAND 21401
Telephone (410) 216-7900
Facsimile (410) 705-0836

STEPHEN B. STERN

EMAIL: STERN@KAGANSTERN.COM
WWW.KAGANSTERN.COM

October 28, 2021

**VIA HAND DELIVERY**

Daniel J. White
21900 Fairway Drive
Leonardtown, Maryland 20650

> Re:  *David J. Boshea v. Compass Marketing, Inc.,* **Case 1:21-CV-00309-ELH**
> **United States District Court for the District of Maryland**
> **Subpoena** _____

Dear Mr. White:

This firm represents the Defendant in the above-referenced case and you have been identified as having documents and information relevant to the lawsuit. To obtain that information, enclosed please find a subpoena from the United States District Court for the District of Maryland, which includes a schedule of documents to be produced.

If you have any questions, please contact me or my colleague, Heather Yeung, Esq., to discuss.

Very truly yours,

KAGAN STERN MARINELLO & BEARD, LLC

*Stephen B. Stern*

Stephen B. Stern

cc:    Counsel of record

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Maryland

| David J. Boshea | )
| --- | --- |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:21-CV-00309-ELH |
| Compass Marketing, Inc. | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                          Daniel J. White

*(Name of person to whom this subpoena is directed)*

☞ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:   see attached Schedule A

| Place: Kagan Stern Marinello & Beard, LLC<br>238 West Street<br>Annapolis, MD 21401 | Date and Time:<br><br>Tuesday, November 16, 2021 at 10am |
| --- | --- |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
| --- | --- |
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    10/28/2021

|  | CLERK OF COURT | OR | *Stephen B. Stern* |
| --- | --- | --- | --- |
|  | *Signature of Clerk or Deputy Clerk* |  | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Compass Marketing, Inc.                                              , who issues or requests this subpoena, are:
Stephen B. Stern, Esq. 238 West Street, Annapolis, MD 21401; stern@kaganstern.com; 410-216-7900

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:21-CV-00309-ELH

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ n/a _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____     _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | | |
|---|---|---|
| **DAVID J. BOSHEA** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Case No. 1:21-CV-00309-ELH** |
| **v.** | * | |
| | * | |
| **COMPASS MARKETING, INC.** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**SCHEDULE A
(ATTACHED TO SUPPLEMENTAL SUBPOENA TO DANIEL J. WHITE)**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure (the "Federal Rules"), Defendant Compass Marketing, Inc. ("Compass Marketing"), requests that Daniel J. White, produce documents responsive to the following requests:

**DEFINITIONS**

1.      "You" or "Your" means Daniel J. White and all persons or entities acting on his behalf or pursuant to his direction or request.

2.      "Action" means the above-captioned matter.

3.      The term "any" means "each, any, and all."

4.      The phrase "refer, reflect, or relate to" or any similar combination of these words is intended to have the broadest possible meaning, and includes any logical or factual connection with the matters discussed.

5.      "Compass Marketing" shall mean Compass Marketing, Inc., the Defendant in the above-captioned litigation, and all of its affiliates, directors, employees, agents, successors, and assigns.

1

6.      The term "David Boshea" shall refer to David J. Boshea, the Plaintiff in the above-captioned litigation, and all of his affiliates, employees, and agents.

7.      "Communication" and any variant thereof means the transmittal of information by any means, including, but not limited to, speech, letter, facsimile, memorandum, writing, e-mail, or other electronic means, from one person to another.

8.      "Document" or "Documents" is synonymous in meaning and equal in scope to the usage of the term "documents" in Federal Rule of Civil Procedure 34 and shall include electronically stored information ("ESI") including all metadata and native formats. It includes  by way of illustration and not limitation, the following, whether written, printed, reproduced by any process, including recordings, or produced by hand, and whether or not claimed to be privileged or otherwise excludable from discovery:  tapes; notes; analyses; computer printouts; information maintained on computer disks, flash drives, or hard drives; correspondence; communications of any nature; electronic mail ("email"); text messages; websites and Internet history; telegrams; letters; memoranda; notebooks of any character; summaries or records of personal conversations; diaries; routing slips or memoranda; reports; publications; photographs; minutes or records or tapes of meetings; transcripts of oral testimony or statements; reports and/or summaries of interviews; reports and/or summaries of investigations; agreements and contracts, including all modifications or revisions thereof; reports and/or summaries of negotiations; court papers; brochures; drafts, revisions of drafts; tape recordings; records and dictation belts.  Any document with any marginalia, including marks on any sheet or side thereof, such as initials, stamped indicia, comments, or notations of any character not part of the original text, or any reproduction thereof, is not to be considered a separate document for purposes of this subpoena.

9.      "Electronically Stored Information" or "ESI" means any Document or Documents stored or transmitted in electronic form.

10.     "Hard-Copy Document" means any Document existing in paper form at the time of collection.

11.     "Native Format" means and refers to the format of ESI in which it was generated and/or used by the Producing Party in the usual course of its business and in its regularly conducted activities.  For example, the Native Format of an Excel workbook is a .xls or .xslx file.

12.     "Metadata" means all of the unaltered information associated with each Document or Communication.

## **INSTRUCTIONS**

1.      In producing Documents, Communications, and other materials, you are requested to furnish all responsive materials in your possession, custody, or control, including both documents possessed directly by you and documents possessed by your agents, employees, representatives, investigators, and attorneys or their agents, employees, representatives, or investigators.

2.      For the purposes of these requests, the terms used shall be given their most expansive and inclusive interpretation.

3.      To bring within the scope of these requests all information that might otherwise be construed to be outside of their scope, (a) the present tense shall include the past tense and vice versa, (b) the singular includes the plural and vice versa, (c) the masculine includes the feminine and vice versa, and (d) the terms "and" and "or" are both conjunctive and disjunctive.

4.      Documents, Communications, and ESI shall be produced via electronic data-sharing website, on a computer diskette, DVD, or CD-ROM.

5.      All Documents and Communications shall be produced in original native format with all accompanying, original metadata that is available in Microsoft Word, Microsoft Outlook, or other computing program and any software necessary to utilize those documents as they are used in the ordinary course of business shall also be made available if that software is not readily commercially available.

6.      Defendant reserves the right to request that additional documents be produced in native format. Documents attached to each other should not be separated.

7.      Defendant reserves the right to request that a third-party forensic vendor of Defendant's choosing search for, review, and extract the requested Documents or Communications in their native formats and all accompanying metadata pursuant to a mutually agreed upon protocol.

8.      All Documents, Communications, and ESI shall be produced in the manner that they are kept in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof. For each Document or Communication requested, produce the entire Document, along with all appendices, exhibits, or other attachments. If there exist any duplicates or copies of Documents or Communications that contain any notes, comments, or other markings not found on the original Documents, each such marked duplicates or copies also must be produced. These requests for production of Documents and Communications seek production of every version of the documents requested, including, but not limited to, copies of the documents with marginalia, additional attachments, additional printed or typed notes, indications or carbon copies, blind carbon copies or distribution lists, and drafts and revisions of the documents.  Each and every document requested should be produced in its entirely, without abbreviation or expurgation and including all attachments or other matters affixed thereto.

4

9.     If any of the requested Documents or Communications cannot be produced in full, produce them to the extent possible, specifying the reasons for your inability to produce the remainder and stating whatever information, knowledge, or belief you have concerning the unproduced portion.

10.     If any request is objected to as being unduly burdensome, produce all Documents and Communications available without unreasonable burden and, for those you claim to be unduly burdensome, identify the number and nature of documents needed to be searched, the location of the documents, and the number of person hours and other costs required to conduct the search.

11.     If any responsive Documents or Communications requested no longer exist or have otherwise been destroyed or discarded, identify each such document by stating:

   a.     The nature of the document or communication;

   b.     The author(s) and their address(es);

   c.     The date(s) of the document or communication ;

   d.     Any indicated (i.e., cc) or blind copies;

   e.     The document or communication's subject matter, number of pages, and attachments or appendices;

   f.     All persons to whom the document or communication was distributed;

   g.     The date of destruction or the date it was discarded; and

   h.     The persons authorizing or carrying out the destruction or discard.

12.     If you object to fully producing a Document or Communication because of a privilege, you must provide the following information, unless divulging the information would disclose the privileged information:

   a.     the nature of the privilege asserted (including work product);

5

     b.    the date of the document or communication;

     c.    if a document, its type (e.g., letter, memorandum, facsimile, email), author, addressee(s), custodian, location, all recipients, and such other information sufficient to identify the document for a subpoena duces tecum or a document request, including, if not apparent, the relationship between the author and the addressee; and

     d.    the general subject matter of the document or communication.

13.     If You encounter any ambiguity in construing a request, or the Definitions or Instructions relevant to the request, set forth the matter deemed "ambiguous" and set forth the construction chosen or used in responding.

14.     These requests for production of Documents and Communications shall be deemed continuing in nature.  If you at any time subsequent to the production of documents in response hereto, and prior to the rendering of judgment in this action, obtain additional documents responsive to these requests, you shall promptly provide such documents for inspection and copying in accordance with the Federal Rules.

**<u>Documents to be Produced</u>**

1.     All Documents and Communications arising from and relating to the contract entitled "Compass Marketing, Inc Agreement Relating to Employment and Post-Employment Competition" allegedly by and between David John Boshea, and Compass Marketing, including, but not limited to, all versions of that document, whether executed or in draft form, and any emails discussing or transmitting the same.  A copy of the referenced contract is attached hereto as **Exhibit A.**

2.     All Documents and Communications arising from and relating to the email allegedly sent on May 22, 2007 from jwhite@compassmarketinginc.com to Golf4me36@aol.com and bcc'd to you at danieljwhite@msn.com.  This includes all Documents and Communications that you have access to through any account, including, but not limited to, jwhite@compassmarketinginc.com and danieljwhite@msn.com.  A copy of the referenced May 22, 2007 email chain is attached hereto as **Exhibit B.**

*[handwritten: gat bought /sold / classify ... as key player to have ... contract.]*

# COMPASS MARKETING, INC

## AGREEMENT RELATING TO EMPLOYMENT AND

## POST-EMPLOYMENT COMPETITION

This Agreement is between the David John Boshea, residing at 4839 Clearwater LN. Naperville, IL. 60564 ("Employee") and COMPASS MARKETING, INC ("COMPASS"), having a place of business at 612 Third Street, Annapolis

### RECITALS

WHEREAS, COMPASS is a leading provider of consumer products and more specifically, the marketing, distribution and sales services to retailers and non-traditional or alternative distributors in the following categories: food, health-beauty care, over the counter medicine, consumer products, and pet care.

WHEREAS, COMPASS has a proprietary interest in its business and financial plans and systems, methods of operation and other secret and confidential information, knowledge and data ("Proprietary Information") which includes, but is not limited to, all confidential, proprietary or non-public information, ideas and concepts, client names and contact information, annual and strategic business plans; financial plans, reports and systems including, profit and loss statements, sales, accounting forms and procedures and other information regarding costs, pricing and the financial condition of COMPASS and its business segments and groups; management development reviews, including information regarding the capabilities and experience of COMPASS employees; intellectual property including research and development, reports, protocols, computer software and databases: information regarding COMPASS's relationships with its clients, customers, and suppliers and prospective clients, partners, customers and suppliers, policy and procedure manuals, information regarding materials and documents in any form or medium (including oral, written, tangible. intangible, or electronic) concerning any of the above, or any past, current or future business activities of COMPASS that is not publicly available; compensation, recruiting and training, and human resource policies and procedures; and data compilations, research, reports, structures, compounds, techniques, methods, processes, and know-how.

WHEREAS, all such Proprietary Information is developed at great expense to COMPASS and is considered by COMPASS to be confidential trade secrets;

WHEREAS, Employee, as a senior executive, will have access to COMPASS's Proprietary Information, directly in the course of Employee's employment, and indirectly through interaction with and presentations by other COMPASS senior executives;

WHEREAS, COMPASS will introduce Employee to COMPASS clients, customers, suppliers and others, and will encourage, and provide resources for, Employee to develop personal relationships with COMPASS's clients, customers, suppliers and others;

WHEREAS, COMPASS will provide specialized training and skills to Employee in connection with the performance of Employee's duties at COMPASS which training involves the disclosure by COMPASS to Employee of Proprietary Information;

WHEREAS, COMPASS will be vulnerable to unfair post-employment competition by Employee because Employee will have access to and knowledge of COMPASS's Proprietary Information, will have a personal relationship with COMPASS's clients, customers, suppliers and others, and will generate good will which Employee acknowledges belongs to COMPASS;

NOW, THEREFORE, in consideration of Employee's employment with COMPASS, the severance benefit and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Employee agrees to enter into this Agreement with COMPASS as a condition of employment pursuant to which COMPASS will limit Employee's rights, including, but not limited to, the right to compete against COMPASS, during and following termination of employment on the terms set forth in this Agreement. Intending to be legally bound, the parties agree as follows:

### ARTICLE 1. NON-DISCLOSURE AND NON-DISPARAGEMENT:

**EXHIBIT**

**A**

Initial *[handwritten initials]*

Employee shall not, during or after termination of employment, directly or indirectly, in any manner utilize or disclose to any person, firm, corporation, association or other entity, except where required by law, any Proprietary Information which is not generally known to the public, or has not otherwise been disclosed or recognized as standard practice in the industries in which COMPASS is engaged. Employee shall, during and after termination of employment, refrain from making any statements or comments of a defamatory or disparaging nature to any third party regarding COMPASS, or any of COMPASS's officers, directors, personnel, policies or products, other than to comply with law.

## ARTICLE 2. NON-COMPETITION:

A.      Subject to Article 2.B. below, Employee, during Employee's period of employment with COMPASS, and for a period of three years following the voluntary or involuntary termination of employment, shall not, without COMPASS's written permission, which shall be granted or denied in COMPASS's sole discretion, directly or indirectly, associate with (including, but not limited to, association as a sole proprietor, owner, employer, partner, principal, investor, joint venturer, shareholder, associate, employee, member, consultant, contractor or otherwise), or acquire or maintain ownership interest in, any Business which is competitive with that conducted by or developed for later implementation by COMPASS at any time during the term of Employee's employment, provided, however, if Employee's employment is involuntarily terminated by COMPASS for any reason other than Cause (as defined herein) then the term of the non-competition provision set forth herein will be modified to be one year following such termination of employment. For purposes of this Agreement, "Business" shall be defined as a person, corporation, firm, LLC, partnership, joint venture or other entity. Nothing in the foregoing shall prevent Employee from investing in a Business that is or becomes publicly traded, if Employee's ownership is as a passive investor of less than 1 % of the outstanding publicly traded stock of the Business.

B.      The provision set forth in Article 2.A above, shall apply to (i) all fifty states, and (ii) each foreign country, possession or territory in which COMPASS may be engaged in, or have plans to engage in, business (x) during Employee's period of employment, or (y) in the case of a termination of employment, as of the effective date of such termination or at any time during the twenty-four month period prior thereto.

C.      Employee acknowledges that these restrictions are reasonable and necessary to protect the business interests of COMPASS, and that enforcement of the provisions set forth in this Article 2 will not unnecessarily or unreasonably impair Employee's ability to obtain other employment following the termination (voluntary or involuntary) of Employee's employment with COMPASS. Further, Employee acknowledges that the provisions set forth in this Article 2 shall apply if Employee's employment is involuntarily terminated by COMPASS for Cause; as a result of the elimination of employee's position for performance-related issues; or for any other reason or no reason at all.

D.

## ARTICLE 3. NON-SOLICITATION:

A.  During the period of Employee's employment with COMPASS and for a period of three years following the termination of Employee's employment, regardless of the reason for termination, Employee shall not, directly or indirectly: (i) induce or encourage any employee of COMPASS to leave the employ of COMPASS, (ii) hire any individual who is or was an employee of COMPASS, or (iii) induce or encourage any customer, client, potential client, supplier or other business relation of COMPASS to cease or reduce doing business with COMPASS or in any way interfere with the relationship between any such customer, client, supplier or other business relation and COMPASS.

B.      A "customer of COMPASS" shall be defined to mean the entities or businesses to whom COMPASS sells the product lines of its clients.

C.      A "client of COMPASS" shall be defined to mean the supplier of product lines to COMPASS, which product lines are sold by COMPASS to its customers.

D.      A "potential client of COMPASS" shall be defined to mean the supplier of product lines to COMPASS that COMPASS is actively negotiating with to represent as a future COMPASS client, during the period of Employee's employment.

## ARTICLE 4. DISCOVERIES' AND WORKS:

Initial

Employee hereby irrevocably assigns, transfers, and conveys to COMPASS to the maximum extent permitted by applicable law Employee's right, title and interest now or hereinafter acquired, in and to all Discoveries and Works (as defined below) created, invented, designed, developed, improved or contributed to by Employee, either alone or jointly with others, while employed by COMPASS and within the scope of Employee's employment and/or with the use of COMPASS's resources. The terms "Discoveries and Works" include all works of authorship, inventions, intellectual property, materials, documents. or other work product (including, without limitation, Proprietary Information, patents and patent applications, patentable inventions, research, reports, software, code, databases, systems, applications, presentations, textual works, graphics and audiovisual materials). Employee shall have the burden of proving that any materials or works created, invented, designed, developed, contributed to or improved by Employee that are implicated by or relevant to employment by COMPASS are not implicated by this provision. Employee agrees to (i) keep accurate records and promptly notify, make full disclosure to, and execute and deliver any documents and to take any further actions requested by COMPASS to assist it in validating, effectuating, maintaining, protecting, enforcing, perfecting, recording, patenting or registering any of its rights hereunder, and (ii) renounce any and all claims, including, without limitation, claims of ownership and royalty, with respect to all Discoveries and Works and all other property owned or licensed by COMPASS. Any Discoveries and Works that, within six months after the termination of Employee's employment with COMPASS, are made, disclosed, reduced to a tangible or written form or description, or are reduced to practice by Employee and which pertain to the business carried on or products or services being sold or developed by COMPASS at the time of such termination shall, as between Employee and COMPASS, be presumed to have been made during such employment with COMPASS. Employee acknowledges that, to the fullest extent permitted by law, all Discoveries and Works shall be deemed "works made for hire" under the Copyright Act of 1976, as amended, 17 U.S.C. Section 101. Employee hereby grants COMPASS a perpetual, nonexclusive, royalty-free, worldwide, assignable, sublicensable license under all rights and intellectual property rights (including patent, industrial property, copyright, trademark, trade secret, unfair competition and related laws) in any Works and Discoveries, for all purposes in connection with COMPASS's current and future business, that Employee has created, invented, designed, developed, improved or contributed to prior to Employee's employment with COMPASS that are relevant to or implicated by such employment ("Prior Works"). Any Prior Works are disclosed by Employee in Schedule 1.

## ARTICLE 5. REMEDIES:

Employee acknowledges that in the event of any violation by Employee of the provisions set forth in Articles 1, 2, 3 or 4 above, COMPASS will sustain serious, irreparable and substantial harm to its business, the extent of which will be difficult to determine and impossible to fully remedy by an action at law for money damages. Accordingly, Employee agrees that, in the event of such violation or threatened violation by Employee, COMPASS shall be entitled to an injunction before trial before any court of competent jurisdiction as a matter of course upon the posting of not more than a nominal bond, in addition to all such other legal and equitable remedies as may be available to COMPASS. If COMPASS is required to enforce the provisions set forth in Articles 2 and 3 above by seeking an injunction, Employee agrees that the relevant time periods set forth in Articles 2 and 3 shall commence with the entry of the injunction. Employee further agrees that, in the event any of the provisions of this Agreement are determined by a court at competent jurisdiction to be invalid, illegal, or for any reason unenforceable as written, such court shall substitute a valid provision which most closely approximates the intent and purpose of the invalid provision and which would be enforceable to the maximum extent permitted by law.

## ARTICLE 6. SEVERANCE:



A.      If Employee's employment is terminated by COMPASS for any reason other than Cause, Employee shall receive severance payments totaling $180,000 (one hundred and eighty thousand U.S. dollars) which will be divided up into twenty-four payments and will commence with the Employee's effective date of termination and shall be made in accordance with COMPASS's normal payroll cycle. The period during which Employee receives severance payments shall be referred to as the "Severance Pay Period." Severance will increase one month for every month employed to a maximum severance of $540,000.

B       There are no other post-employment benefits. Employee, however, shall have certain rights to continue the Medical Plan under COBRA.

C       Termination for "Cause shall he defined as termination of employment due to: (i) conviction of or entry of a plea of guilty or nolo contendere to any criminal charge (or any similar crime for purposes of laws outside the United States), (ii) fraud or dishonesty, (iii) failure to perform assigned duties, (iv) working against the best interests of COMPASS, or (v) the violation of any of the covenants set forth in Articles 1, 2, 3 and 4 above.

Initial

D.      If Employee is terminated by COMPASS for reasons other than Cause, Employee will receive the severance payments during the Severance Pay Period even if Employee commences other employment during such period provided such employment does not violate the terms of Article 1, 2, 3 and 4 of this Agreement.

E.      In addition to the remedies set forth in Article 5, COMPASS reserves the right to terminate all severance payments if Employee violates any covenants set forth in Articles 1, 2, 3 or 4 of this Agreement.

F.      Employee's receipt of severance under this Agreement is contingent on Employee's execution of a release in a form reasonably acceptable to COMPASS, except that such release shall not include any claims by Employee to enforce Employee's rights under, or with respect to, this Agreement or any COMPASS benefit plan pursuant to its terms, and that the employee not revoking the release prior to the expiration of the applicable Age Discrimination in Employment Act revocation period.

## ARTICLE 7. TERM OF EMPLOYMENT:

Employee acknowledges that COMPASS has the right to terminate Employee's employment at any time for any reason whatsoever, provided, however, that any termination by COMPASS for reasons other than Cause shall result in the severance described in Article 6 above, to become due in accordance with the terms of this Agreement subject to the conditions set forth in this Agreement. Employee further acknowledges that the severance payments provided by COMPASS are in full satisfaction of any obligations COMPASS may have resulting from COMPASS's exercise of its right to terminate Employee's employment, except for those obligations which are intended to survive termination such as the payments to be made pursuant to retirement plans, deferred compensation plans and conversion of insurance.

## ARTICLE 8. MISCELLANEOUS:

A.      As used throughout this Agreement, COMPASS includes COMPASS MARKETING, Inc. and its subsidiaries and affiliates or any corporation, joint venture, or other entity in which COMPASS MARKETING, Inc. or its subsidiaries or affiliates has an equity interest in excess of ten percent (10%).

B.      This Agreement shall supersede and substitute for any previous employment, post-employment or severance agreement between Employee and COMPASS.

C.      If Employee's employment with COMPASS terminates solely by reason of a transfer of stock or assets of, or a merger or other disposition of, a subsidiary of COMPASS (whether direct or indirect), such termination shall not be deemed a termination of employment by COMPASS for purposes of this Agreement, provided that COMPASS requires the subsequent employer, by agreement, to expressly assume and agree to perform this Agreement in the same manner and to the same extent that COMPASS would be required to perform it if no such transaction had taken place.

D.      Employee shall not be required to mitigate damages or the amount of any payment provided for under this Agreement by seeking other employment or otherwise.

E.      In the event any one or more of the provisions of this Agreement shall be or become invalid, illegal or unenforceable in any respect, the validity legality and enforceability of the remaining provisions of this Agreement shall not be affected thereby.

F.      The terms of this Agreement shall be governed by the laws of the State of Maryland, without regard to conflicts of laws principles thereof. For purposes of any action or proceeding, Employee irrevocably submits to the non-exclusive jurisdiction of the courts of Maryland and the courts of the United States of America located in Maryland for the purpose of any judicial proceeding arising out of or relating to this Agreement, and acknowledges that the designated forum has a reasonable relation to the Agreement and to the parties' relationship with one another. Notwithstanding the provisions of this Article 8.F COMPASS may, in its discretion, bring an action or special proceeding in any court of competent jurisdiction for the purpose of seeking temporary or preliminary relief pending resolution of a dispute.

G.      Employee expressly consents to the application of Article 8.F to any judicial action or proceeding arising out of or relating to this Agreement. COMPASS shall have the right to serve legal process upon Employee in any manner permitted by law. In addition, Employee irrevocably appoints the General Counsel of COMPASS MARKETING, Inc. (or any successor) as Employee's agent for service of legal process in connection with any such action or proceeding and Employee agrees that service of legal process upon such agent, who shall promptly advise Employee of any such service of legal process at the address of

Initial

Employee then in the records of COMPASS, shall be deemed in every respect effective service of legal process upon Employee in any such action or proceeding.

H.        Employee hereby waives, to the fullest extent permitted by applicable law, any objection that Employee now or hereafter may have to personal jurisdiction or to the laying of venue of any action or proceeding brought in any court referenced in Article 8.F and hereby agrees not to plead or claim the same.

I.        Notwithstanding any other provision of this Agreement, COMPASS may, to the extent required by law, withhold applicable federal, state and local income and other taxes from any payments due to Employee hereunder.

J.        At any time during the validity of this Agreement, Employee agrees that COMPASS may notify third parties about Employee's rights and obligations under this Agreement.

K.        Employee affirms that Employee has read this Agreement and has asked questions needed to understand the terms, consequences and binding effect of this Agreement and fully understands them.

L.        Employee affirms that Employee has sought the advice of an attorney of his/her choice before signing this Agreement.

**IN WITNESS WHEREOF**, and intending to he legally bound, the parties hereto have caused this Agreement to be signed.

by COMPASS MARKETING, INC.                    by EMPLOYEE

Date:                                          Date:

/s/                                            /s/

John D. White, CEO                             David John Boshea

Initial

**Schedule 1**


**Prior Works***


---

\*         if no Prior Works are listed, Employee certifies that there are none.

Initial 

## Heather Yeung

| | |
|---|---|
| **From:** | Gregory Jordan <gjordan@jz-llc.com> |
| **Sent:** | Monday, September 27, 2021 5:28 PM |
| **To:** | Stephen Stern; Heather Yeung |
| **Cc:** | Thomas J. Gagliardo |
| **Subject:** | Fw: Your agreement is attached. Not signed off by our G.C. bu should ne tomorrow. |
| **Attachments:** | Employment Agreement - Boshea - Final.doc |

I have attached the email Dan White forwarded to me.

Gregory J. Jordan
Licensed in Illinois and Indiana

Jordan & Zito LLC
350 North Clark Street, Suite 400
Chicago Illinois 60654-4980
(312) 854-7181 (Office)
(312) 543-7354 (Cellular)
gjordan@jz-llc.com

**Notice from Jordan & Zito LLC **

To comply with United States Treasury regulations, we advise you that any discussion of Federal tax issues in this communication was not intended or written to be used, and cannot be used, by any person (a) for the purpose of avoiding penalties that may be imposed by the Internal Revenue Service, or (b) to promote, market or recommend to another party any matter addressed herein. This Internet message may contain information that is privileged, confidential, and exempt from disclosure. It is intended for use only by the person to whom it is addressed. If you have received this in error, please (1) do not forward or use this information in any way; and (2) contact me immediately. Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

Jordan & Zito LLC

---

**From:** Daniel White <danieljwhite@msn.com>
**Sent:** Monday, September 27, 2021 3:58 PM
**To:** Gregory Jordan <gjordan@jz-llc.com>
**Subject:** Fw: Your agreement is attached. Not signed off by our G.C. bu should ne tomorrow.

---

**From:** Daniel White <danieljwhite@msn.com>
**Sent:** Tuesday, May 22, 2007 2:08 AM
**To:** Mike <michaelrwhite@comcast.net>
**Subject:** FW: Your agreement is attached. Not signed off by our G.C. bu should ne tomorrow.

Daniel J. White
Email: danieljwhite@msn.com

**EXHIBIT**

**B**



Join us for the JDRF Ride to Cure Diabetes in Sonoma California on June 23, 2007 to raise money for the Juvenile Diabetes Research Foundation International (JDRF) and help us to put one of America's deadliest diseases under our wheels for good.

You can find details about the Ride at http://ride.jdrf.org and our team's fundraising page at
http://ride.jdrf.org/index.cfm?fuseaction=rideCentral.personalpage&riderID=6439 .

June 23, 2007
Santa Rosa, California
www.jdrf.org

The information contained in this electronic mail transmission (including any accompanying attachments) is intended solely for its authorized recipient(s), and may be confidential and/or legally privileged.

From: jwhite@compassmarketinginc.com
To: Golf4me36@aol.com
Subject: Your agreement is attached. Not signed off by our G.C. bu should ne tomorrow.
Date: Tue, 22 May 2007 01:24:33 -0400

Send me Arnie's full name and address as well as Jim's.

Thanks
John

John White
Chairman/CEO
Compass Marketing Inc.
http://www.compassmarketinginc.com

# COMPASS MARKETING, INC

## AGREEMENT RELATING TO EMPLOYMENT AND

## POST-EMPLOYMENT COMPETITION

This Agreement is between the David John Boshea, residing at 4839 Clearwater LN. Naperville, IL. 60564 ("Employee") and COMPASS MARKETING, INC ("COMPASS"), having a place of business at 612 Third Street, Annapolis

## RECITALS

WHEREAS, COMPASS is a leading provider of consumer products and more specifically, the marketing, distribution and sales services to retailers and non-traditional or alternative distributors in the following categories: food, health-beauty care, over the counter medicine, consumer products, and pet care.

WHEREAS, COMPASS has a proprietary interest in its business and financial plans and systems, methods of operation and other secret and confidential information, knowledge and data ("Proprietary Information") which includes, but is not limited to, all confidential, proprietary or non-public information, ideas and concepts, client names and contact information, annual and strategic business plans; financial plans, reports and systems including, profit and loss statements, sales, accounting forms and procedures and other information regarding costs, pricing and the financial condition of COMPASS and its business segments and groups; management development reviews, including information regarding the capabilities and experience of COMPASS employees; intellectual property including research and development, reports, protocols, computer software and databases: information regarding COMPASS's relationships with its clients, customers, and suppliers and prospective clients, partners, customers and suppliers, policy and procedure manuals, information regarding materials and documents in any form or medium (including oral, written, tangible. intangible, or electronic) concerning any of the above, or any past, current or future business activities of COMPASS that is not publicly available; compensation, recruiting and training, and human resource policies and procedures; and data compilations, research, reports, structures, compounds, techniques, methods, processes, and know-how.

WHEREAS, all such Proprietary Information is developed at great expense to COMPASS and is considered by COMPASS to be confidential trade secrets;

WHEREAS, Employee, as a senior executive, will have access to COMPASS's Proprietary Information, directly in the course of Employee's employment, and indirectly through interaction with and presentations by other COMPASS senior executives;

WHEREAS, COMPASS will introduce Employee to COMPASS clients, customers, suppliers and others, and will encourage, and provide resources for, Employee to develop personal relationships with COMPASS's clients, customers, suppliers and others;

WHEREAS, COMPASS will provide specialized training and skills to Employee in connection with the performance of Employee's duties at COMPASS which training involves the disclosure by COMPASS to Employee of Proprietary Information;

WHEREAS, COMPASS will be vulnerable to unfair post-employment competition by Employee because Employee will have access to and knowledge of COMPASS's Proprietary Information, will have a personal relationship with COMPASS's clients, customers, suppliers and others, and will generate good will which Employee acknowledges belongs to COMPASS;

NOW, THEREFORE, in consideration of Employee's employment with COMPASS, the severance benefit and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Employee agrees to enter into this Agreement with COMPASS as a condition of employment pursuant to which COMPASS will limit Employee's rights, including, but not limited to, the right to compete against COMPASS, during and following termination of employment on the terms set forth in this Agreement. Intending to be legally bound, the parties agree as follows:

## ARTICLE 1. NON-DISCLOSURE AND NON-DISPARAGEMENT:

Employee shall not, during or after termination of employment, directly or indirectly, in any manner utilize or disclose to any person, firm, corporation, association or other entity, except where required by law, any Proprietary Information which is not generally known to the public, or has not otherwise been disclosed or recognized as standard practice in the industries in which COMPASS is engaged. Employee shall, during and after termination of employment, refrain from making any statements or comments of a defamatory or disparaging nature to any third party regarding COMPASS, or any of COMPASS's officers, directors, personnel, policies or products, other than to comply with law.

## ARTICLE 2. NON-COMPETITION:

A.       Subject to Article 2.B. below, Employee, during Employee's period of employment with COMPASS, and for a period of three years following the voluntary or involuntary termination of employment, shall not, without COMPASS's written permission, which shall be granted or denied in COMPASS's sole discretion, directly or indirectly, associate with (including, but not limited to, association as a sole proprietor, owner, employer, partner, principal, investor, joint venturer, shareholder, associate, employee, member, consultant, contractor or otherwise), or acquire or maintain ownership interest in, any Business which is competitive with that conducted by or developed for later implementation by COMPASS at any time during the term of Employee's employment, provided, however, if Employee's employment is involuntarily terminated by COMPASS for any reason other than Cause (as defined herein) then the term of the non-competition provision set forth herein will be modified to be one year following such termination of employment. For purposes of this Agreement, "Business" shall be defined as a person, corporation, firm, LLC, partnership, joint venture or other entity. Nothing in the foregoing shall prevent Employee from investing in a Business that is or becomes publicly traded, if Employee's ownership is as a passive investor of less than 1 % of the outstanding publicly traded stock of the Business.

B.       The provision set forth in Article 2.A above, shall apply to (i) all fifty states, and (ii) each foreign country, possession or territory in which COMPASS may be engaged in, or have plans to engage in, business (x) during Employee's period of employment, or (y) in the case of a termination of employment, as of the effective date of such termination or at any time during the twenty-four month period prior thereto.

C.       Employee acknowledges that these restrictions are reasonable and necessary to protect the business interests of COMPASS, and that enforcement of the provisions set forth in this Article 2 will not unnecessarily or unreasonably impair Employee's ability to obtain other employment following the termination (voluntary or involuntary) of Employee's employment with COMPASS. Further, Employee acknowledges that the provisions set forth in this Article 2 shall apply if Employee's employment is involuntarily terminated by COMPASS for Cause; as a result of the elimination of employee's position for performance-related issues; or for any other reason or no reason at all.

D.

## ARTICLE 3. NON-SOLICITATION:

A.  During the period of Employee's employment with COMPASS and for a period of three years following the termination of Employee's employment, regardless of the reason for termination, Employee shall not, directly or indirectly: (i) induce or encourage any employee of COMPASS to leave the employ of COMPASS, (ii) hire any individual who is or was an employee of COMPASS, or (iii) induce or encourage any customer, client, potential client, supplier or other business relation of COMPASS to cease or reduce doing business with COMPASS or in any way interfere with the relationship between any such customer, client, supplier or other business relation and COMPASS.

B.       A "customer of COMPASS" shall be defined to mean the entities or businesses to whom COMPASS sells the product lines of its clients.

C.       A "client of COMPASS" shall be defined to mean the supplier of product lines to COMPASS, which product lines are sold by COMPASS to its customers.

D.       A "potential client of COMPASS" shall be defined to mean the supplier of product lines to COMPASS that COMPASS is actively negotiating with to represent as a future COMPASS client, during the period of Employee's employment.

## ARTICLE 4. DISCOVERIES' AND WORKS:

Initial _____

Employee hereby irrevocably assigns, transfers, and conveys to COMPASS to the maximum extent permitted by applicable law Employee's right, title and interest now or hereinafter acquired, in and to all Discoveries and Works (as defined below) created, invented, designed, developed, improved or contributed to by Employee, either alone or jointly with others, while employed by COMPASS and within the scope of Employee's employment and/or with the use of COMPASS's resources. The terms "Discoveries and Works" include all works of authorship, inventions, intellectual property, materials, documents. or other work product (including, without limitation, Proprietary Information, patents and patent applications, patentable inventions, research, reports, software, code, databases, systems, applications, presentations, textual works, graphics and audiovisual materials). Employee shall have the burden of proving that any materials or works created, invented, designed, developed, contributed to or improved by Employee that are implicated by or relevant to employment by COMPASS are not implicated by this provision. Employee agrees to (i) keep accurate records and promptly notify, make full disclosure to, and execute and deliver any documents and to take any further actions requested by COMPASS to assist it in validating, effectuating, maintaining, protecting, enforcing, perfecting, recording, patenting or registering any of its rights hereunder, and (ii) renounce any and all claims, including, without limitation, claims of ownership and royalty, with respect to all Discoveries and Works and all other property owned or licensed by COMPASS. Any Discoveries and Works that, within six months after the termination of Employee's employment with COMPASS, are made, disclosed, reduced to a tangible or written form or description, or are reduced to practice by Employee and which pertain to the business carried on or products or services being sold or developed by COMPASS at the time of such termination shall, as between Employee and COMPASS, be presumed to have been made during such employment with COMPASS. Employee acknowledges that, to the fullest extent permitted by law, all Discoveries and Works shall be deemed "works made for hire" under the Copyright Act of 1976, as amended, 17 U.S.C. Section 101. Employee hereby grants COMPASS a perpetual, nonexclusive, royalty-free, worldwide, assignable, sublicensable license under all rights and intellectual property rights (including patent, industrial property, copyright, trademark, trade secret, unfair competition and related laws) in any Works and Discoveries, for all purposes in connection with COMPASS's current and future business, that Employee has created, invented, designed, developed, improved or contributed to prior to Employee's employment with COMPASS that are relevant to or implicated by such employment ("Prior Works"). Any Prior Works are disclosed by Employee in Schedule 1.

## ARTICLE 5. REMEDIES:

Employee acknowledges that in the event of any violation by Employee of the provisions set forth in Articles 1, 2, 3 or 4 above, COMPASS will sustain serious, irreparable and substantial harm to its business, the extent of which will be difficult to determine and impossible to fully remedy by an action at law for money damages. Accordingly, Employee agrees that, in the event of such violation or threatened violation by Employee, COMPASS shall be entitled to an injunction before trial before any court of competent jurisdiction as a matter of course upon the posting of not more than a nominal bond, in addition to all such other legal and equitable remedies as may be available to COMPASS. If COMPASS is required to enforce the provisions set forth in Articles 2 and 3 above by seeking an injunction, Employee agrees that the relevant time periods set forth in Articles 2 and 3 shall commence with the entry of the injunction. Employee further agrees that, in the event any of the provisions of this Agreement are determined by a court at competent jurisdiction to be invalid, illegal, or for any reason unenforceable as written, such court shall substitute a valid provision which most closely approximates the intent and purpose of the invalid provision and which would be enforceable to the maximum extent permitted by law.

## ARTICLE 6. SEVERANCE:

A.      If Employee's employment is terminated by COMPASS for any reason other than Cause, Employee shall receive severance payments totaling $180,000 (one hundred and eighty  thousand U.S. dollars) which will be divided up into twenty-four payments and will commence with the Employee's effective date of termination and shall be made in accordance with COMPASS's normal payroll cycle. The period during which Employee receives severance payments shall be referred to as the "Severance Pay Period." Severance will increase one month for every month employed to a maximum severance of $540,000.

B       There are no other post-employment benefits. Employee, however, shall have certain rights to continue the Medical Plan under COBRA.

C       Termination for "Cause shall he defined as termination of employment due to: (i) conviction of or entry of a plea of guilty or nolo contendere to any criminal charge (or any similar crime for purposes of laws outside the United States), (ii) fraud or dishonesty, (iii) failure to perform assigned duties, (iv) working against the best interests of COMPASS, or (v) the violation of any of the covenants set forth in Articles 1, 2, 3 and 4 above.

D.      If Employee is terminated by COMPASS for reasons other than Cause, Employee will receive the severance payments during the Severance Pay Period even if Employee commences other employment during such period provided such employment does not violate the terms of Article 1, 2, 3 and 4 of this Agreement.

E.      In addition to the remedies set forth in Article 5, COMPASS reserves the right to terminate all severance payments if Employee violates any covenants set forth in Articles 1, 2, 3 or 4 of this Agreement.

F.      Employee's receipt of severance under this Agreement is contingent on Employee's execution of a release in a form reasonably acceptable to COMPASS, except that such release shall not include any claims by Employee to enforce Employee's rights under, or with respect to, this Agreement or any COMPASS benefit plan pursuant to its terms, and that the employee not revoking the release prior to the expiration of the applicable Age Discrimination in Employment Act revocation period.

## ARTICLE 7. TERM OF EMPLOYMENT:

Employee acknowledges that COMPASS has the right to terminate Employee's employment at any time for any reason whatsoever, provided, however, that any termination by COMPASS for reasons other than Cause shall result in the severance described in Article 6 above, to become due in accordance with the terms of this Agreement subject to the conditions set forth in this Agreement. Employee further acknowledges that the severance payments provided by COMPASS are in full satisfaction of any obligations COMPASS may have resulting from COMPASS's exercise of its right to terminate Employee's employment, except for those obligations which are intended to survive termination such as the payments to be made pursuant to retirement plans, deferred compensation plans and conversion of insurance.

## ARTICLE 8. MISCELLANEOUS:

A.      As used throughout this Agreement, COMPASS includes COMPASS MARKETING, Inc. and its subsidiaries and affiliates or any corporation, joint venture, or other entity in which COMPASS MARKETING, Inc. or its subsidiaries or affiliates has an equity interest in excess of ten percent (10%).

B.      This Agreement shall supersede and substitute for any previous employment, post-employment or severance agreement between Employee and COMPASS.

C.      If Employee's employment with COMPASS terminates solely by reason of a transfer of stock or assets of, or a merger or other disposition of, a subsidiary of COMPASS (whether direct or indirect), such termination shall not be deemed a termination of employment by COMPASS for purposes of this Agreement, provided that COMPASS requires the subsequent employer, by agreement, to expressly assume and agree to perform this Agreement in the same manner and to the same extent that COMPASS would be required to perform it if no such transaction had taken place.

D.      Employee shall not be required to mitigate damages or the amount of any payment provided for under this Agreement by seeking other employment or otherwise.

E.      In the event any one or more of the provisions of this Agreement shall be or become invalid, illegal or unenforceable in any respect, the validity legality and enforceability of the remaining provisions of this Agreement shall not be affected thereby.

F.      The terms of this Agreement shall be governed by the laws of the State of Maryland, without regard to conflicts of laws principles thereof. For purposes of any action or proceeding, Employee irrevocably submits to the non-exclusive jurisdiction of the courts of Maryland and the courts of the United States of America located in Maryland for the purpose of any judicial proceeding arising out of or relating to this Agreement, and acknowledges that the designated forum has a reasonable relation to the Agreement and to the parties' relationship with one another. Notwithstanding the provisions of this Article 8.F COMPASS may, in its discretion, bring an action or special proceeding in any court of competent jurisdiction for the purpose of seeking temporary or preliminary relief pending resolution of a dispute.

G.      Employee expressly consents to the application of Article 8.F to any judicial action or proceeding arising out of or relating to this Agreement. COMPASS shall have the right to serve legal process upon Employee in any manner permitted by law. In addition, Employee irrevocably appoints the General Counsel of COMPASS MARKETING, Inc. (or any successor) as Employee's agent for service of legal process in connection with any such action or proceeding and Employee agrees that service of legal process upon such agent, who shall promptly advise Employee of any such service of legal process at the address of

Employee then in the records of COMPASS, shall be deemed in every respect effective service of legal process upon Employee in any such action or proceeding.

H.      Employee hereby waives, to the fullest extent permitted by applicable law, any objection that Employee now or hereafter may have to personal jurisdiction or to the laying of venue of any action or proceeding brought in any court referenced in Article 8.F and hereby agrees not to plead or claim the same.

I.      Notwithstanding any other provision of this Agreement, COMPASS may, to the extent required by law, withhold applicable federal, state and local income and other taxes from any payments due to Employee hereunder.

J.       At any time during the validity of this Agreement, Employee agrees that COMPASS may notify third parties about Employee's rights and obligations under this Agreement.

K.      Employee affirms that Employee has read this Agreement and has asked questions needed to understand the terms, consequences and binding effect of this Agreement and fully understands them.

L.      Employee affirms that Employee has sought the advice of an attorney of his/her choice before signing this Agreement.

**IN WITNESS WHEREOF**, and intending to he legally bound, the parties hereto have caused this Agreement to be signed.

by COMPASS MARKETING, INC.                    by EMPLOYEE

Date:                                                         Date:

/s/                                                           /s/

John D. White, CEO                                       David John Boshea

**Schedule 1**

**Prior Works***

---

\*       if no Prior Works are listed, Employee certifies that there are none.

**Initial** _____