IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| DAVID J. BOSHEA | * | |
| Plaintiff, | * | |
| | | Case No. 1:21-CV-00309-ELH |
| v. | * | |
| COMPASS MARKETING, INC. | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT COMPASS MARKETING'S MOTION TO COMPEL DEPOSITION TESTIMONY OF NON-PARTIES DANIEL WHITE AND MICHAEL WHITE AND EXTEND NUMBER OF DEPOSITION HOURS FOR FACT WITNESSES**

Defendant Compass Marketing, Inc. ("Compass Marketing"), by and through its undersigned counsel and pursuant to Rule 30(d) of the Federal Rules of Civil Procedure, hereby files this Motion to Compel Deposition Testimony of Non-Parties Daniel White and Michael White and to Extend Number of Deposition Hours for Fact Witnesses.

Compass Marketing conducted Daniel White's deposition on November 29, 2021 and Michael White's deposition on December 1, 2021, but much of the relevant information to be addressed during each of the respective depositions was not addressed through a combination of evasive answers (by Daniel White and Michael White), instructions by counsel not to answer (Michael White), extensive interference by counsel (e.g., lengthy speaking objections) (Daniel White), and time limits on the given day that did not even allow Compass Marketing to address all relevant topics (Daniel White). For these reasons, which are discussed in greater detail below, this Court should compel Daniel White and Michael White to sit for the remainder of their depositions and answer Compass Marketing's questions. In addition, in light of the unproductive

time spent in Daniel White's and Michael White's depositions, this Court should allow additional time for Compass Marketing to conduct depositions so as not to be prejudiced by the hours limit on each party to conduct depositions of fact witnesses.

## **FACTUAL BACKGROUND**

David Boshea ("Mr. Boshea") initiated this lawsuit against Compass Marketing on February 5, 2021. [Dkt. No. 1]. Mr. Boshea is suing Compass Marketing to "recover unpaid sums owing to him under an agreement titled 'Compass Marketing, Inc. Agreement Relating to Employment and Post-Employment Compensation.'" [Dkt. No. 48 at ¶ 1]. Compass Marketing denies entering into the alleged agreement with David Boshea. [Dkt. No. 53 at 7].

In his Answers to Interrogatories, Mr. Boshea identified Michael White as a person with knowledge "concerning David Boshea and Compass Marketing's agreement." [Dkt. No. 42-2 at 5]. Among other things, Mr. Boshea stated that "Michael White recalled that David Boshea and Compass entered into the severance agreement," and "Michael White anticipated that John White would continue to cause Compass Marketing to avoid paying the amounts owing to David Boshea." *Id.*[1]

Compass Marketing served Michael White with a subpoena duces tecum and to provide deposition testimony in the above-captioned case. As the Court is well-aware, Michael White has not been cooperative in responding to the subpoena.[2] In fact, it was not until after Compass Marketing filed a Motion for Civil Contempt Sanctions against Michael White [Dkt. No. 63], the outcome of which is currently pending in this Court, that it received a single document from him

---

[1] These same allegations, and others, apply to Daniel White as well. *See, e.g.*, Dkt. 42-2 at 5-6.

[2] *See, e.g.*, Dkt. Nos. 63 and 71.

in response to the subpoena duces tecum. Similarly, Compass Marketing went through great lengths to schedule Michael White's deposition, which finally occurred on December 1, 2021.

However, it was clear from the outset of the deposition, Michael White did not plan on providing answers to Compass Marketing's questions. Throughout the deposition, he consistently gave incomplete and evasive answers in an attempt to obstruct Compass Marketing from obtaining relevant information to which it is entitled. Moreover, Michael White's counsel instructed him not to answer questions concerning subjects that are clearly relevant to this lawsuit. These instructions were improper and done to delay the deposition and prevent Compass Marketing from obtaining evidence related to this lawsuit.

Daniel White engaged in similar evasive and obstructionist tactics. Daniel White's efforts to evade responding to deposition questions have already been documented to the Court and, in the interest of brevity and to limit redundancy, will not be repeated here. [Dkt. No. 64].

## ARGUMENT

I. **MICHAEL WHITE PROVIDED EVASIVE RESPONSES TO MANY RELEVANT QUESTIONS DURING HIS DEPOSITION AND HIS COUNSEL IMPROPERLY INSTRUCTED HIM NOT TO ANSWER RELEVANT QUESTIONS**

Michael White's deposition was conducted remotely on December 1, 2021. During that deposition, Michael White consistently avoided answering questions. More often than not, his answers were non-responsive to the questions asked and/or he claimed ignorance over basic information. By way of example, Michael White failed to acknowledge and/or identify documents *he* produced in discovery. *See, e.g.*, Exhibit 1 (Deposition Transcript of Michael White) at 33:20-41:15. Also by way of example, he even refused to acknowledge his own signature on multiple occasions, including on a $65,000 check he wrote to Daniel White.[3] *See, e.g.*, Exhibit 1 at 106:13-

---

[3] See further discussion below regarding a separate potential severance scheme involving Daniel White and Michael White.

107:14, 140:12-141:6, 177:12-178:3, 179:7-8. Additionally, Michael White's counsel improperly instructed him not to answer several lines of questions that are relevant to this lawsuit.[4] Nevertheless, Compass Marketing is entitled to obtain responses to the questions that were asked and, as a result, Michael White should be compelled to continue his deposition and answer questions asked of him completely.

### A. Michael White Gave Evasive Non-Responsive Answers to Many Questions

While Michael White often failed to address the questions asked of him. For example, in his Motion to Quash, Michael White claimed to be an owner of Compass Marketing. *See* Dkt. 33 at 2. Based on this statement (and in light of his extensive efforts to aid Mr. Boshea in the litigation he has filed against the company Michael White claims to own), Compass Marketing posed the following line of questions to him:

| | |
|---|---|
| COMPASS MARKETING: | Were you employed by Compass Marketing on May 23, 2019? |
| JUSTIN REDD: | Objection; form. |
| MICHAEL WHITE: | Yes. |
| COMPASS MARKETING: | What were you -- what was -- in what capacity were you employed by Compass Marketing on May 23, 2019? |
| MICHAEL WHITE: | Owner. |
| COMPASS MARKETING: | So as an owner you're automatically considered an employee of the company? |
| JUSTIN REDD: | Objection; form. |
| MICHAEL WHITE: | Please ask your question again. |

---

[4] It appears that these tactics were planned and coordinated in advance of the deposition.

| | |
|---|---|
| COMPASS MARKETING: | As an owner you consider yourself an employee of the company as well? |
| MICHAEL WHITE: | I consider myself to be an owner of the company. |
| COMPASS MARKETING: | So were you employed by Compass Marketing on May 23, 2019? |
| MICHAEL WHITE: | Yes. |
| COMPASS MARKETING: | Yes?  In what capacity were you employed by the company? |
| MICHAEL WHITE: | As an owner. |
| COMPASS MARKETING: | And what job duties were you performing for the company on May 23, 2019? |
| MICHAEL WHITE: | I am an owner of Compass Marketing.  Those were -- that is what I was doing. |
| COMPASS MARKETING: | What did you do on behalf of Compass Marketing as an owner in May of 2019? |
| JUSTIN REDD: | Objection to form. |
| MICHAEL WHITE: | I owned it. |
| COMPASS MARKETING: | Did you do anything else on behalf of it other than own it? |
| JUSTIN REDD: | Objection to form.  You can answer. |
| MICHAEL WHITE: | I owned it, Mr. Stern. |
| | . . . |
| COMPASS MARKETING: | Were you helping in any capacity with sales? |
| MICHAEL WHITE: | I owned Compass Marketing. |
| COMPASS MARKETING: | Were you helping in any capacity with sales? |

| | |
|---|---|
| MICHAEL WHITE: | I owned Compass Marketing, Mr. Stern. |
| COMPASS MARKETING: | That's not my question. |
| MICHAEL WHITE: | That's my answer. |

*See* Exhibit 1 at 90:4-92:6.  This is just one example of Michael White clearly evading questions being asked of him in attempt to frustrate Compass Marketing's efforts to have its relevant questions answered.  Michael White employed this tactic throughout his deposition, making it nearly impossible for Compass Marketing to question him on any matter.

Moreover, when Michael White was not attempting to evade a question, he was feigning ignorance of information responsive to Compass Marketing's questions.  In this regard, documents produced during discovery show Mr. Boshea communicating extensively with non-parties Michael White and Daniel White, both prior to the initiation of this lawsuit and throughout the course of this litigation.  *See, e.g.*, Exhibit 2.[5]

Counsel for Compass Marketing sought to question Michael White about these communications, but Michael White feigned ignorance.  For example, Compass Marketing asked Michael White whether he "provided [Mr. Boshea] with any assistance in connection with [the] lawsuit . . .?"  *See* Exhibit 1 at 29:3-4.  Michael White replied "[n]one that I'm aware of."  *Id.* at 29:9.  This response clearly contradicts the extensive evidence of communication involving Michael White and Mr. Boshea (and/or his counsel) relating to this lawsuit.  *See, e.g.,* Exhibit 2.  When Compass Marketing presented Michael White with documents *that he produced*, he refused even to recognize them as those produced by him or his counsel in discovery.  *See e.g.*, Exhibit 1

---

[5] In the interest of brevity, Exhibit 2 includes a mere sampling of emails between Michael White, Daniel White, and Mr. Boshea showing a consistent effort to assist Mr. Boshea in making his claims against Compass Marketing.  Based on these emails and other information obtained in discovery, it appears that this lawsuit may have even been the brainchild of Daniel White and/or Michael White in an effort to wage their continued assault of meritless claims against the company.

at 47:21-52:4.  When asked whether he recognized a document, he typically replied, "I don't know[,]" making it nearly impossible to effectively question him on anything he produced.  *See, e.g.*, Exhibit 1 at 34:8.  In fact, most of Michael White's answers contained the statement "I don't know," "I don't remember," "not that I know of" or some variation of those statements.[6]  It proved to be a fruitless effort by Compass Marketing to depose Michael White, as most answers he gave failed to answer the question asked.

Michael White's evasive, non-responsive deposition testimony demonstrates why he should be compelled to sit for another deposition.

### B.     Michael White Was Instructed Not to Answer Relevant Questions

#### 1.     Standard for Conducting Depositions

Pursuant to Rule 30(c) of the Federal Rules of Civil Procedure, "[t]he examination and cross-examination of a deponent proceed as they would at trial[;]" however, unlike at trial, "an objection at the time of the examination . . . must be noted on the record, but the examination still proceeds."  *See* FED. R. CIV. P. 30(c)(1) and (2).  "An objection must be stated concisely in a nonargumentative and nonsuggestive manner.  A person may instruct a deponent not to answer *only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)*."  FED. R. CIV. P. 30(c)(2) (emphasis added).  "During the

---

[6] The following is a representative sample of Michael White answering, "I don't know," (or something similar) in response to Compass Marketing's questions.  *See, e.g.*, Exhibit 1 at 12:18, 13:10, 18:1, 18:8, 19:11, 19:14, 19:17, 24:15, 24:17, 27:6, 28:19, 34:8, 34:18, 35:5, 35:20, 36:8, 36:10, 37:6, 37:16, 38:10, 38:12, 38:16, 39:2, 39:5, 39:6, 40:1, 41:10, 41:15, 43:11, 43:20, 45:6, 46:8, 47:6, 47:9, 47:16-17, 48:4, 48:11, 48:22, 49:12, 49:16-17, 50:9, 51:10, 51:17, 52:4, 57:3, 58:9, 58:17, 59:13, 59:18, 60:13, 63:11, 63:14, 64:14, 64:19, 66:21, 67:7, 67:12, 68:19, 69:6, 69:12; 70:10, 70:19, 76:11, 81:9, 82:15, 82:20, 83:6, 83:11, 83:14, 83:21, 84:15, 85:3, 85:6, 85:9, 85:12, 85:16, 86:4, 86:14, 89:15, 89:18-19, 92:17-18, 93:13, 94:16, 95:1, 95:9, 95:12, 121:10, 123:12, 134:20, 135:6, 140:18-19, 141:3, 150:17, 162:22, 164:21-22, 165:4, 165:9-12, 173:6, 173:10, 177:13, 179:8, 179:12, 186:1, 186:17, 187:2, 188:11, 191:18, 191:22, 193:9, 196:11, 197:18, 198:10, 198:14, 198:18, 198:22, 199:3, 199:12, 199:20, 199:22, 200:21-22, 201:9, 201:20, 202:12, 204:10, 209:10, 209:21, 210:3, 210:6, 211:20, 212:3, 213:20, 214:14, 215:22-216:4, 219:16-17, 219:20, 220:18-19, 221:14, 221:22, 228:15, 228:19, 287:7, 287:10, 289:14, 289:17, 290:10, 290:13, 290:16, 290:20, 291:2, 300:21-301:1.

taking of a deposition, it is presumptively improper for an attorney to make objections which are not consistent with FED. R. CIV. P. 30(c)(2). *See, e.g.*, Local Discovery Guidelines, Guideline 6(b) (D. Md. 2021). "It is [also] presumptively improper to instruct a witness not to answer a question during the taking of a deposition unless under the circumstances permitted by Fed. R. Civ. P. 30(c)(2)." Local Discovery Guidelines, Guideline 6(d) (D. Md. 2021).

Utilizing these principles, this Court has found that "the following points may be stated with regard to the issue of whether an attorney properly may instruct a deponent not to answer a question during a deposition: (1) pursuant to Fed. R. Civ. P. 26(b)(1), a deponent may be questioned about any matter which is relevant to the litigation, which is not privileged, and the fact that the information sought may not ultimately be admissible does not mean that it is not discoverable; [and] (2) pursuant to Fed. R. Civ. P. 30(d)(1) and Guideline 5(d), any time that a lawyer instructs a deponent not to answer a question except as authorized by Rules 30(d)(1) or 30(d)(3) the instruction is presumptively improper." *Boyd v. Univ. of Md. Med. Sys.*, 173 F.R.D. 143, 147 (D. Md. 1997).

### 2.  **Standard for Relevance During Depositions**

Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding *any* nonprivileged matter that is relevant to any party's claim or defense." *See* FED. R. CIV. P. 26(b)(1) (emphasis added). To be within the scope of discovery, the information does not even need to be admissible evidence. *Id.* Among the matters that are ripe for discovery in any case are matters bearing on credibility and bias. *See, e.g.*, *Behler v. Hanlon*, 199 F.R.D. 553, 556-57 (D. Md. 2001) (citing *United States v. Abel*, 469 U.S. 45, 49-52 (1984)) ("Although not directly covered by a specific rule of evidence, a witness may be impeached by showing that he or she is biased, has an interest in the outcome of the litigation, is prejudiced in some relevant

way, or has a motive to testify in a particular way."); *see also id.* at 555 n.3 ("Similarly, *information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable*.") (emphasis added).

### 3. Michael White's Should be Compelled to Answer Relevant Questions

In what was clearly an orchestrated process that was put into motion by Michael White, an Orphan's Court Judge in St. Mary's County, Maryland, Michael White's counsel instructed Michael White not to answer several lines of questions relevant to this action that explore Michael White's credibility and potential bias as a witness in this case.

Matters concerning credibility and bias necessarily are discoverable. *See, e.g.*, *Behler*, 199 F.R.D. at 555-56, 557 (finding that information regarding the credibility of the witness "will fall within the scope of discovery" because, among other things, "a witness always may be impeached by evidence that she or he is biased, prejudiced, has a financial interest in the outcome of the case, or a motive to testify in a particular manner"); *Pete v. Big Picture Loans, LLC*, Civil Action No. 3:17-cv-461, 2020 U.S. Dist. LEXIS 124060, at *14-*15 (E.D. Va. July 14, 2020) (noting that deposition discovery rules "are to be accorded a broad and liberal treatment" and finding that "the scope of discovery is broad and easily encompasses questions regarding [witness'] potential bias and credibility"); Commentary to Rule Changes, Court Rules, 192 F.R.D. 340, 389 (stating "information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable").

First, as stated above Michael White claims to be an owner of Compass Marketing. With respect to his ownership interest, Michael White's credibility can and should be challenged, as it appears he has lied under oath about such matters (and it can provide insight as to why he would be providing substantial assistance to an adverse party against the company he claims to own, i.e.,

bias). To this end, Michael White has declared under penalty of perjury that he owns 25% of Compass Marketing. *See* Dkt. No. 33 at 2. But, in a separate document (a PPP loan application), Michael White made certain certifications to the federal government that indicate his assertions under oath about his ownership interests are not true.[7] *See* Dkt. No. 71 at 3-4; *compare* Dkt. No. 71-3 *with* Dkt. No. 71-4. When questioned about these conflicting documents during his deposition, Michael White was instructed not to answer. *See* Exhibit 1 at 109:5-116:8.

Matters concerning Michael White's ownership interest go directly to the issue of Michael White's credibility and his bias in this litigation where he is helping a litigant against the company he claims to own. *See, e.g.*, *Behler*, *supra*; *Big Picture Loans, supra*; Commentary to Rule Changes, *supra*. Moreover, Michael White (as well as Daniel White and Mr. Boshea) opened the door by putting his ownership interest at issue in this litigation. *See, e.g.*, Dkt. Nos. 33, 31, and 72. As such, Michael White should be compelled to answer questions related to his ownership of Compass Marketing.

Second, Michael White was instructed not to answer questions relating to alleged severance schemes involving other former Compass Marketing employees in which Michael White appeared to participate. As outlined in Compass Marketing's Counterclaim and Third-Party Complaint, Compass Marketing contends that this lawsuit is premised on a forged agreement that was never signed or entered into by Compass Marketing (in essence, it is a fraudulent scheme in an attempt to extract money from Compass Marketing). *See generally* Dkt. No. 38.[8] Considering the extensive assistance Michael White (and Daniel White) have been providing Mr. Boshea in this

---

[7] The PPP loan application includes a question about ownership of companies other than the company seeking the loan, to which Michael White responded that he owned Woodville Pines, LLC, and no other company(ies).

[8] To this end, two expert witnesses have opined that the signature purporting to be John White's signature on the contract at issue is a forgery, and Mr. Boshea's expert witness in this case reached no conclusion on the issue.

case, any alleged severance schemes involving Michael White and/or Daniel White (whether in this particular instance or others) certainly would be relevant and appropriate for discovery. *See* FED. R. CIV. PRO. 26(b).

In particular, Compass Marketing asked Michael White[9] numerous questions about what appeared to be a potential severance scheme involving former employees, James DiPaula and Patrick Miller. *See, e.g.*, Exhibit 1 at 142:9-146:1. Compass Marketing contends there never was a severance agreement with Mr. DiPaula[10] or Mr. Miller and, thus, any efforts to funnel company funds (in a check signed by Michael White) through Daniel White's checking account to Mr. DiPaula (in the form of two cashier's checks) and Mr. Miller were not legitimate. *See* Dkt. 74 at 8-11. As a result, Compass Marketing asked Michael White questions as to whether there was such an agreement, the terms of that alleged agreement, how it came into existence (if there was such an agreement), and the multiple payments that appeared to be related to that alleged agreement. *See* Exhibit 1 at 142:9-146:1. Compass Marketing was not the only party interested in this information, as counsel for Mr. Boshea even expressed a desire to join in any motion Compass Marketing planned to file to obtain information on the subject of the alleged DiPaula/Miller severance agreement(s)/scheme(s). *Id.* at 144:15-145:22. Even if there was a legitimate agreement with Mr. DiPaula (and Mr. Miller), Compass Marketing sought to inquire how it came to pass that Michael White and Daniel White sent a company check for $65,000 directly to Daniel White (signed by Michael White), not Mr. DiPaula or Mr. Miller, that exceeded the amount of the claimed severance. *See, e.g.*, Exhibit 1 at 176:22-178:10. Despite the obvious

---

[9] Compass Marketing asked Daniel White questions about this alleged scheme as well, but was thwarted in its efforts to obtain responses to most questions and other responses were evasive. *See e.g.*, Dkt. No. 74.

[10] Even Mr. DiPaula did not characterize these payments as "severance." *See* Dkt. No. 50 at 7 (claiming payments he allegedly received were unpaid wages, expenses, and accrued vacation).

relevance of this information, Compass Marketing inquired as to whether Michael White had been involved in any severance arrangements to extract funds from Compass Marketing when those funds were not properly payable, and Michael White was instructed not to answer.  *See* Exhibit 1 142:9-143:22 (asking Michael White if he has "ever planned with Daniel White to create a false severance arrangement to extract money from the company").  Compass Marketing attempted to introduce documents related to this alleged "severance agreement," but most, if not all, questions (whether it was document related or information not tied to a particular document) were met with an instruction not to answer.  *See, e.g.,* Exhibit 1 at 142:9-146:3, 176:22-178:10.

This line of questioning seeks to establish or at the very least inquire whether the forged Boshea "severance agreement" follows or parallels the prior incident involving what appears to be a severance scheme (put in motion by, or at the very least materially involving, Daniel White and Michael White) to extract funds improperly from Compass Marketing and, thus, it is relevant to this litigation.  As such, Compass Marketing should be able to question Michael White about his involvement in prior severance agreements that Compass Marketing allegedly entered into.[11]

Another line of questioning that Michael White was instructed not to answer involved the login information to his official Compass Marketing email account.  Michael White was terminated from employment by Compass Marketing in November 2018, and he was subsequently voted off the Board of Directors in February 2019.  Yet, during his deposition, Michael White admitted that he had access to his Compass Marketing email address in May 2019.  *See* Exhibit 1 at 93:5-8.  He further admitted that he was the Administrator of the compassmarketinginc.com email account.  *See* Exhibit 1 at 290:3-7.  In addition, he admitted that when he was the

---

[11] And Mr. Boshea should be permitted the opportunity to question Michael White on these matters too, as he, through his counsel, has expressed an interest in it as well.

Administrator (claiming not to know when that access ended) he could access all emails in the domain, but he claimed he did not know whether he logged in as the Administrator in 2021,[12] which was at a time while this litigation was pending and when he was no longer employed by the company or serving on its Board of Directors. *See* Exhibit 1 at 286:20-296:4. Michael White's access to company files – long after his employment ended and after he was no longer serving on the Board of Directors – leaves Compass Marketing vulnerable to manipulation of documents (including potentially creating new documents and/or altering existing documents) that can potentially lead to an adverse result in this litigation if the manipulated documents were somehow given credence. Yet, when counsel for Compass Marketing requested his Compass Marketing login information (which is company property and to determine when he accessed the files), Michael White's attorney instructed him not to answer the question. *See* Exhibit 1 at 95:10-101:19.[13]

These are merely some examples of Michael White's extensive efforts to avoid answering questions under oath that are relevant to this litigation. Indeed, there were other lines of relevant questions where Michael White was instructed not to answer under oath. *See, e.g.*, Exhibit 1 at 121:1-133:3, 134:1-138:6, 138:7-140:3, 172:19-174:21.

For these reasons, Michael White should be compelled to sit for another deposition, and answer the questions posed of him truthfully, without evading the questions, and without instruction from counsel not to answer.

---

[12] For example, documents produced by Michael White in this litigation show that he has been accessing privileged communications between Compass Marketing and its counsel (when he was neither a recipient or a sender of those communications), and brazenly filing those privileged communications as exhibits in this Court. *See, e.g.*, Dkt. No. 33-1.

[13] Not only is this information relevant to the litigation to determine how and when he was accessing the company's network, it also is relevant for Compass Marketing to regain control over property that rightfully belongs to the company and to prevent further access by intruders, particularly intruders who seek to do harm to the company.

## II. DANIEL WHITE SHOULD BE COMPELLED TO SIT FOR ANOTHER DEPOSITION BASED ON HIS EVASIVE CONDUCT AND FAILURE TO RESPOND TO RELEVANT QUESTONS

As noted previously, Daniel White engaged in substantially similar conduct to avoid answering questions under oath that are relevant to this litigation. *See* Dkt. No. 74.[14] Rather than repeat those same factual matters here, Compass Marketing relies on and incorporates by reference its previously filed Reply brief in connection with the Motion for Contempt. [Dkt. No. 74]. As with Michael White, Daniel White should be compelled to sit for the remainder of his deposition, and answer the questions posed of him truthfully, without evading the questions, and without instruction from counsel not to answer.

## III. THE NUMBER OF DEPOSITION HOURS FOR FACT WITNESSES ALLOCATED TO COMPASS MARKETING SHOULD BE EXTENDED

In light of Daniel White's and Michael White's obstruction, concealment, and evasive tactics that substantially and unnecessarily prolonged their depositions (which Compass Marketing was unable to complete), as well as limited the utility of their depositions, Compass Marketing should be granted additional deposition hours to complete its depositions of fact witnesses, as to limit Compass Marketing to the 15 hours originally allocated to it would prejudice Compass Marketing in its efforts to conduct discovery in this case.[15] As a result, the hours spent deposing Daniel White and Michael White so far should not be counted toward the 15 hours allocated to Compass Marketing or, in the alternative, Compass Marketing should be given a total of 25 hours to depose fact witnesses.

---

[14] Rather than give an express instruction not to answer questions, counsel for Daniel White invoked lengthy speaking instructions that had the effect of causing Daniel White not to answer. *Id.* In addition, the deposition on November 29 was cut short by Daniel White's counsel's schedule and needed to be continued from a time standpoint alone. *See* Dkt. No. 74-2 at 221:8-22. This was the agreed upon expectation heading into the deposition. *See* Exhibit 3 (Letter dated November 10, 2021 from Judge Gauvey); Dkt. 74-2 at 21:13-22:8.

[15] The Scheduling Order allocated 15 hours for depositions of fact witnesses to Compass Marketing (and Mr. Boshea). [Dkt. No. 20].

**CONCLUSION**

For these reasons, Daniel White and Michael White should be compelled to sit for another deposition and answer the questions posed of them truthfully, without evading the questions, and without instruction from counsel not to answer and without speaking objections. Additionally, Compass Marketing should be given additional time to conduct depositions either by not counting the hours spent deposing Daniel White and Michael White to date or, in the alternative, giving Compass Marketing a total of 25 hours to depose fact witnesses.[16]

Dated:  January 14, 2022

Respectfully submitted,

/s/Stephen B. Stern
Stephen B. Stern, Bar No.: 25335
Heather K. Yeung, Bar No.: 20050
KAGAN STERN MARINELLO & BEARD, LLC
238 West Street
Annapolis, Maryland 21401
(Phone): (410) 216-7900
(Fax):  (410) 705-0836
Email:  stern@kaganstern.com
Email:  yeung@kaganstern.com

*Counsel for Defendant
Compass Marketing, Inc.*

---

[16] Pursuant to Local Rules 104.7 and 105.9, the undersigned counsel certifies that it conferred with opposing counsel on January 13 and 14, 2022, and opposing counsel (counsel for Mr. Boshea) consented to Compass Marketing's request to continue the depositions of Daniel White and Michael White, but noted an objection to the scope of the issues that can be addressed in the continued depositions of Daniel White and Michael White.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of January, 2022, the foregoing Motion to Compel Deposition Testimony of Non-Parties Daniel White and Michael White and Extend Number of Deposition Hours for Fact Witnesses was served via the CM/ECF system on the following counsel of record:

| | |
|---|---|
| Thomas J. Gagliardo<br>Gilbert Employment Law, PC<br>1100 Wayne Avenue, Suite 900<br>Silver Spring, Maryland 20910<br>Email: tgagliardo@gelawyer.com | Gregory J. Jordan<br>Mark Zito<br>Jordan & Zito, LLC<br>350 N. LaSalle Drive, Suite 1100<br>Chicago, Illinois 60654<br>Email: gjordan@jz-llc.com |

*Attorneys for Plaintiff*
*David Boshea*

and via email to:

Justin A. Redd
Kramon & Graham, P.A.
1 South Street, Suite 2600
Baltimore, Maryland 21202
Email: jredd@kg-law.com

*Counsel for Non-Party*
*Michael White*

Bruce L. Marcus, Esquire
MarcusBonsib, LLC
6411 Ivy Lane, Suite 116
Greenbelt, Maryland 20770
Email: bmarcus@marcusbonsib.com

*Counsel for Non-Party*
*Daniel White*

                                        */s/ Stephen B. Stern*_____
                                        Stephen B. Stern