# EXHIBIT 1



# Transcript of Michael R. White

**Date:** December 1, 2021
**Case:** Boshea -v- Compass Marketing, Inc.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF MARYLAND

3                  (Northern Division)

4     - - - - - - - - - - - - - -x

5     DAVID J. BOSHEA,              :

6              Plaintiff,      :

7        v.                    :    Case No.

8     COMPASS MARKETING,       :    1:21-CV-00309-ELH

9     INC.,                    :

10             Defendant.      :

11    - - - - - - - - - - - - - -x

12

13        Videotape Deposition of MICHAEL R. WHITE

14                Conducted Virtually

15              Wednesday, December 1, 2021

16                    10:04 a.m.

17

18

19

20    Job No.: 415984

21    Pages: 1 - 328

22    Reported By: Cynthia A. Whyte



1    Videotape Deposition of MICHAEL R. WHITE, conducted

2  virtually:

3

4

5

6

7

8

9

10

11

12    Pursuant to notice, before Cynthia A. Whyte, Notary

13  Public in and for the State of Maryland.

14

15

16

17

18

19

20

21

22

```
1              A P P E A R A N C E S

2

3    ON BEHALF OF PLAINTIFF:

4        GREGRORY J. JORDAN, ESQUIRE

5        JORDAN & ZITO, LLC

6        350 North Clark Street

7        Suite 400

8        Chicago, Illinois  60654

9        (312) 489-8174

10

11   ON BEHALF OF DEFENDANT:

12       STEPHEN B. STERN, ESQUIRE

13       HEATHER K. YEUNG, ESQUIRE

14       KAGAN STERN MARINELLO & BEARD, LLC

15       238 West Street

16       Annapolis, Maryland  21401

17       (410) 216-7900

18

19

20

21

22
```

1          A P P E A R A N C E S   C O N T I N U E D

2

3    ON BEHALF OF NONPARTY/DEPONENT MICHAEL R. WHITE:

4        JUSTIN A. REDD, ESQUIRE

5        KRAMON & GRAHAM, PA

6        One South Street

7        Suite 2600

8        Baltimore, Maryland  21202

9        (410) 752-6030

10

11   ALSO PRESENT:

12           DAVID BOSHEA

13           RONALD BATEMAN, Compass Marketing, Inc.

14           CHARLIE BOWMAN, Videographer

15           JACOB FADEN, AV Technician

16

17

18

19

20

21

22

1                    C O N T E N T S

2   EXAMINATION OF MICHAEL R. WHITE              PAGE

3    By Mr. Stern                                 10

4    By Mr. Jordan                               235

5    By Mr. Stern                                284

6    By Mr. Jordan                               307

7

8

9                    E X H I B I T S

10           (Attached to the Transcript)

11  WHITE DEPOSITION EXHIBITS                    PAGE

12  Exhibit 1     Text messages, MRW000002

13                to MRW0000015                   34

14  Exhibit 2     Text messages, MRW0000019

15                to MRW0000029                   50

16  Exhibit 3     E-mail chain, MRW0000030

17                to MRW0000031                   56

18  Exhibit 4     E-mail, 8/29/21, from

19                Michael White to Mr.

20                Jordan, MRW0000060              66

21  Exhibit 5     E-mail chain, MRW0000061

22                to MRW0000066                   69

```
1            E X H I B I T S   C O N T I N U E D

2                (Attached to the Transcript)

3    WHITE DEPOSITION EXHIBITS                    PAGE

4    Exhibit 6      E-mail, 9/19/21, from

5                   Michael White to Mr.

6                   Jordan, MRW0000069            74

7    Exhibit 7      E-mail chain, DJW000021

8                   to DJW000022                  78

9    Exhibit 8      E-mail, 9/17/21, from

10                  Michael White to Mr.

11                  Jordan with attachments

12                  DJW000030 to DJW000039        82

13   Exhibit 9      E-mail chain, DJW000719

14                  to DJW000720                  88

15   Exhibit 10     Document 33, Motion to Quash  105

16   Exhibit 11     Exhibit 3, Affidavit of

17                  Michael R. White              108

18   Exhibit 12     Paycheck Protection Program

19                  Borrower Application Form     115

20   Exhibit 13     Exhibit 4, Compass shares

21                  certificates                  120

22
```

```
1              E X H I B I T S   C O N T I N U E D

2                  (Attached to the Transcript)

3   WHITE DEPOSITION EXHIBITS                    PAGE

4   Exhibit 14    Exhibit 5, E-mails, 1/24/20

5                 from Michael White             133

6   Exhibit 15    Exhibit 9, E-mail chain,

7                 7/17/19, with attachment       138

8   Exhibit 16    Document 49, reply brief

9                 to motion to quash             140

10  Exhibit 17    Exhibit 3, E-mail chain,

11                10/15/15, with attachments     141

12  Exhibit 18    E-mail chain, DJW000495        162

13  Exhibit 19    E-mail, 8/21/17, from Daniel

14                White to Michael White         172

15  Exhibit 20    Copy of Check 09376            177

16  Exhibit 21    County First Bank document,

17                checking account               178

18  Exhibit 22    County First Bank document,

19                certificate of deposit         191

20  Exhibit 23    List of transactions           195

21  Exhibit 24    Copies of checks               196

22
```

```
1              E X H I B I T S   C O N T I N U E D

2                 (Attached to the Transcript)

3    WHITE DEPOSITION EXHIBITS                    PAGE

4    Exhibit 25    2008 Annual Report,

5                  State Corporation Commission   213

6    Exhibit 26    2009 Annual Report,

7                  State Corporation Commission   217

8    Exhibit 27    Annual Report to State

9                  Corporation Commission filed

10                 5/6/20                         220

11   Exhibit 28    Annual Report to State

12                 Corporation Commission filed

13                 2/14/21                        223

14   Exhibit 29    E-mail, 11/2/20, from Google

15                 Payments to Michael White      226

16   Exhibit 30    E-mail, 1/1/21, from Google

17                 Payments to Michael White      230

18   Exhibit 31    E-mail, 9/28/21, from

19                 Michael White to Mr. Jordan    240

20   Exhibit 31A   Agreement Relating to

21                 Employment and Post-Employment

22                 Competition                    240
```

```
1              E X H I B I T S   C O N T I N U E D

2                 (Attached to the Transcript)

3  WHITE DEPOSITION EXHIBITS                    PAGE

4  Exhibit 32    E-mail, 8/29/21, from

5                Michael White to Mr.

6                Jordan (previously marked

7                as Exhibit 3)                  250

8  Exhibit 32A   Compass Marketing Mail

9                Re:  Columbia Country Club     250

10 Exhibit 32B   7/29/21, Compass Marketing

11               Mail Re:  Fwd                  257

12 Exhibit 33    Agreement Relating to

13               Employment and Post-Employment

14               Competition (Previously marked

15               as Exhibit 31A)               266

16

17

18

19

20

21

22
```

1               P R O C E E D I N G S

2          VIDEO TECHNICIAN:  We are on the record          10:04:27

3    on December 1, 2021, at 11 -- at 10:04 a.m.            10:04:28

4    eastern time for the remote video deposition of        10:04:34

5    Michael White in the matter of Boshea V Compass        10:04:37

6    Marketing, Inc., in the United States District         10:04:44

7    Court for the District of Maryland, Northern           10:04:45

8    Division.                                              10:04:45

9          My name is Charlie Bowman.  I'm a               10:04:48

10   videographer on behalf of Planet Depos.  All           10:04:53

11   present will be noted on the stenographic record.      10:04:56

12   The court reporter is Cindy Whyte, who will now        10:04:59

13   swear in the witness.                                  10:05:01

14              MICHAEL R. WHITE                            10:05:01

15   Having been duly sworn, testified as follows:          10:05:01

16   BY MR. STERN:                                          10:05:02

17      Q    All right.  Can you please state your          10:05:02

18   name for the record.                                   10:05:21

19      A    Michael White.                                 10:05:21

20      Q    All right.  Thank you, Mr. White.              10:05:23

21          MR. STERN:  And before we get started,          10:05:26

22   I'd like each of the parties that are on this call     10:05:27

1   or video to represent who is in the room with them           10:05:31

2   or connected, if anyone is connected by phone or             10:05:34

3   video, beyond who is identified.                             10:05:38

4           I am Stephen Stern representing the                  10:05:41

5   defendant in this case, Compass Marketing, Inc.              10:05:44

6   In my office but not on video is a company                   10:05:47

7   representative named Ronald Bateman.  And we have            10:05:49

8   no other audio or video link connections to anyone           10:05:52

9   else on the line.                                            10:05:58

10          MS. YEUNG:  I'm Heather Yeung.  I'm a                10:05:59

11  part of Stephen Stern's office.  I am here mostly            10:06:02

12  for technical help and I'm going to keep my screen           10:06:06

13  off.                                                         10:06:12

14          MR. JORDAN:  This is Gregory Jordan.  I             10:06:12

15  represent David Boshea, who is the plaintiff in              10:06:17

16  this matter.  I am in a room by myself, I do not             10:06:20

17  have any video or audio recordings going and don't           10:06:23

18  have any intention to turn any on during these               10:06:32

19  proceedings.                                                 10:06:35

20          David?                                               10:06:37

21          MR. BOSHEA:  Yeah, I'm David Boshea.                 10:06:37

22  Good morning.  The same as what Greg just said,              10:06:42

| | | |
|---|---|---|
| 1 | I'm here by myself, no videos, no intention to | 10:06:44 |
| 2 | video, nothing. | 10:06:48 |
| 3 | MR. STERN:  Any phone connection? | 10:06:49 |
| 4 | MR. BOSHEA:  No -- no phone connection, | 10:06:51 |
| 5 | Stephen, no. | 10:06:54 |
| 6 | MR. STERN:  Thank you. | 10:06:54 |
| 7 | MR. BOSHEA:  You're welcome. | 10:06:56 |
| 8 | MR. REDD:  This is Justin Redd | 10:06:56 |
| 9 | representing Mr. White.  We're the only ones in | 10:07:00 |
| 10 | the room and this -- the Zoom is our only phone | 10:07:01 |
| 11 | connection. | 10:07:03 |
| 12 | MR. STERN:  All right.  Thank you. | 10:07:04 |
| 13 | BY MR. STERN: | 10:07:04 |
| 14 | Q    All right.  Mr. White, have you ever been | 10:07:04 |
| 15 | deposed before? | 10:07:09 |
| 16 | A    I have. | 10:07:09 |
| 17 | Q    How many times have you been deposed? | 10:07:12 |
| 18 | A    I don't know. | 10:07:15 |
| 19 | Q    In what context were you deposed? | 10:07:16 |
| 20 | A    Several different contexts. | 10:07:20 |
| 21 | Q    At one point in your career were you a | 10:07:24 |
| 22 | State police officer? | 10:07:31 |

| | | | |
|---|---|---|---|
| 1 | A | I was. | 10:07:31 |
| 2 | Q | And were you deposed in your capacity as | 10:07:33 |
| 3 | a State police officer? | | 10:07:37 |
| 4 | A | I was. | 10:07:38 |
| 5 | Q | Were those all criminal proceedings? | 10:07:41 |
| 6 | A | No. | 10:07:43 |
| 7 | Q | They were civil proceedings? | 10:07:46 |
| 8 | A | Yes. | 10:07:49 |
| 9 | Q | How many civil proceedings? | 10:07:49 |
| 10 | A | I don't know. | 10:07:53 |
| 11 | Q | How many years did you serve as a State | 10:07:54 |
| 12 | police officer? | | 10:07:57 |
| 13 | A | Approximately 29 years. | 10:07:57 |
| 14 | Q | Are you currently serving as a State | 10:08:05 |
| 15 | police officer? | | 10:08:08 |
| 16 | A | I am not. | 10:08:08 |
| 17 | Q | When did you stop serving as a State | 10:08:11 |
| 18 | police officer? | | 10:08:18 |
| 19 | A | Approximately October of 2006. | 10:08:18 |
| 20 | Q | And, well, I guess we got a little bit | 10:08:21 |
| 21 | into some of the question and answer here.  Let me | | 10:08:27 |
| 22 | back up for a moment before we continue. | | 10:08:30 |

| | | |
|---|---|---|
| 1 | Since you are familiar with the | 10:08:31 |
| 2 | deposition process, I still think it would be | 10:08:33 |
| 3 | appropriate for me to just go over a little | 10:08:37 |
| 4 | overview of what today will be like. As you can | 10:08:40 |
| 5 | tell, I'm going to be asking you a bunch of | 10:08:42 |
| 6 | questions and you need to give verbal answers. Do | 10:08:45 |
| 7 | you understand that? | 10:08:48 |
| 8 | A    I do. | 10:08:48 |
| 9 | Q    And while in any conversation people do | 10:08:50 |
| 10 | have a tendency to interrupt one another, we need | 10:08:54 |
| 11 | to each do our best to not -- to avoid that. So I | 10:08:57 |
| 12 | will do my best to wait for you to finish | 10:09:00 |
| 13 | answering your -- the answer -- answering the | 10:09:02 |
| 14 | question and please do the best you can to let me | 10:09:05 |
| 15 | finish asking my question. Understood? | 10:09:09 |
| 16 | A    Yes, sir. | 10:09:10 |
| 17 | Q    If you need to take a break, please let | 10:09:12 |
| 18 | me know and I will try to honor that request in a | 10:09:16 |
| 19 | timely manner. Understood? | 10:09:20 |
| 20 | A    Thank you. Thank you. | 10:09:22 |
| 21 | Q    Also, if there is a question that is not | 10:09:24 |
| 22 | clear, please ask me to clarify it; otherwise, I | 10:09:28 |

1    will assume you understand the question.            10:09:31

2    Understood?                                         10:09:33

3        A    No.                                        10:09:33

4        Q    I'm sorry?                                 10:09:36

5        A    No, I don't.                               10:09:37

6        Q    So if you don't understand a question,     10:09:39

7    I'm asking you to please ask me to clarify it;      10:09:43

8    otherwise, I'll assume that you understand the      10:09:46

9    question.  Do you understand that?                  10:09:49

10       A    No.                                        10:09:53

11       Q    What is not clear about my statement?      10:09:57

12       A    I don't understand it.                     10:10:01

13       Q    Okay.  If I make -- if I ask a question    10:10:05

14   that you don't understand, please ask me to         10:10:10

15   clarify the question.  Do you understand that?      10:10:13

16       A    I understand your question.                10:10:19

17       Q    I will assume you understand the           10:10:22

18   questions I've asked unless if you ask me to        10:10:30

19   clarify.  Do you understand that?                   10:10:32

20       A    I understand your statement, yes.          10:10:38

21       Q    Thank you.                                 10:10:42

22            Lastly, is there anything that you         10:10:44

1    consumed today that would inhibit you from                  10:10:48

2    testifying truthfully under oath?                           10:10:51

3        A    Not that I'm aware of.                             10:10:53

4        Q    Okay.  You said you stopped being a State         10:10:55

5    police officer in 2006?                                     10:11:07

6        A    No, sir.  I said approximately October of         10:11:09

7    2006 I was no longer a State trooper.                       10:11:15

8        Q    Okay.  Have you had any other occupations         10:11:17

9    since then?                                                 10:11:23

10       A    Yes.                                               10:11:23

11       Q    What else have you -- what have you done          10:11:23

12   for a living since 2006?                                    10:11:36

13       A    I have worked or owned part of Compass            10:11:37

14   Marketing and I have worked for the citizens of            10:11:51

15   the State of Maryland.                                      10:11:54

16       Q    In what capacity do you work for the             10:11:54

17   citizens of the State of Maryland?                          10:11:58

18       A    I'm a judge in the Orphans Court.                 10:11:59

19       Q    Orphans Court of which county?                    10:12:02

20       A    The State court, but I operate in St.            10:12:06

21   Mary's County.                                              10:12:12

22       Q    When did you become a judge in Orphans           10:12:12

| | |
|---|---|
| 1 | Court in St. Mary's County? | 10:12:14 |
| 2 | A    I was appointed in December of 2014. | 10:12:17 |
| 3 | Q    Is that a full-time job? | 10:12:21 |
| 4 | A    I would need you to define what full time | 10:12:25 |
| 5 | means before I'm able to answer that question. | 10:12:31 |
| 6 | Q    30 or more hours a week. | 10:12:33 |
| 7 | A    No. | 10:12:37 |
| 8 | Q    Approximately how many hours a week do | 10:12:37 |
| 9 | you serve as an Orphans Court judge? | 10:12:42 |
| 10 | A    Approximately 16 hours a week. | 10:12:44 |
| 11 | Q    Has that been for the duration of your | 10:12:52 |
| 12 | time as an Orphans Court judge? | 10:12:55 |
| 13 | A    That's an approximation and an average. | 10:12:58 |
| 14 | It changes week to week. | 10:13:02 |
| 15 | Q    I understand that it's not a precise | 10:13:03 |
| 16 | number.  I'm just saying is that approximately | 10:13:06 |
| 17 | what the amount of time commitment has been | 10:13:08 |
| 18 | since -- for your duration as an Orphans Court | 10:13:12 |
| 19 | judge? | 10:13:16 |
| 20 | A    Approximately. | 10:13:16 |
| 21 | Q    You said you've owned Compass Marketing. | 10:13:16 |
| 22 | When did you become an owner of Compass Marketing? | 10:13:22 |

```
1       A    I don't know.                              10:13:23

2       Q    Was it prior to becoming an Orphans Court  10:13:23

3   judge?                                              10:13:33

4       A    Yes, it was.                               10:13:33

5       Q    Is there anything that would help you      10:13:35

6   refresh your recollection as to when you became an  10:13:46

7   owner of Compass Marketing?                         10:13:48

8       A    I don't know.                              10:13:49

9       Q    Have you owned any other companies that    10:13:50

10  are not publicly held -- publicly traded -- I'm     10:13:55

11  sorry; let me rephrase the question.                10:13:58

12          Have you owned any other nonpublicly        10:14:00

13  traded companies other than Compass Marketing in    10:14:03

14  the last ten years?                                 10:14:05

15      A    Yes.                                       10:14:06

16      Q    What other companies?                      10:14:06

17      A    Woodville Pines, LLC.                      10:14:10

18      Q    Any other companies besides that one?      10:14:18

19      A    Not that I can recall.                     10:14:20

20      Q    And when you first became an owner of      10:14:24

21  Compass Marketing, have you continuously owned      10:14:34

22  that company since then?                            10:14:35
```

1       A      I have continuously held stock in that        10:14:37

2   company.                                                  10:14:45

3       Q      From when you first became a shareholder?      10:14:45

4       A      Correct.                                       10:14:50

5       Q      Have you at any point sold or transferred      10:14:51

6   any of your shares in Compass Marketing since you         10:14:58

7   first obtained shares in Compass Marketing?               10:15:01

8       A      Not that I'm aware of.                         10:15:03

9       Q      Would someone have the ability to              10:15:08

10  transfer or sell those shares for you?                    10:15:16

11      A      I don't know.                                  10:15:18

12      Q      Have you authorized anyone to sell or          10:15:19

13  transfer shares of Compass Marketing for you?             10:15:24

14      A      I don't know.                                  10:15:27

15      Q      You don't know whether you've authorized       10:15:28

16  anyone to do that?                                        10:15:32

17      A      I do not.                                      10:15:32

18      Q      Does anyone handle your financial              10:15:33

19  transactions other than you?                              10:15:45

20      A      Yes.                                           10:15:45

21      Q      Who handles financial transactions for         10:15:45

22  you other than yourself?                                  10:15:54

1      MR. REDD:  Objection.  Stephen, I don't    10:15:55

2  know if you want the witness to leave the room for  10:16:00

3  this.  I'll make it quick.  But we're getting --    10:16:03

4  you know, background is one thing, but we're        10:16:05

5  getting already far afield of the topics that I     10:16:07

6  think are at issue in this case, so if we're going  10:16:11

7  to move on from this it should be all right, but    10:16:14

8  can we get to what we're here for, please.          10:16:18

9      MR. STERN:  We will be circling back to    10:16:18

10  this, but I'm just following up on answers that    10:16:21

11  Mr. White has given.                               10:16:25

12      Q    So who else handles your financial     10:16:27

13  transactions besides you?                          10:16:32

14      A    I have a banker and I have a financial  10:16:33

15  adviser.  As far as I can remember, that's it.     10:16:41

16      Q    Have you authorized them to make any    10:16:52

17  transactions on behalf of Compass Marketing or     10:16:58

18  your shares in Compass Marketing?                  10:17:01

19      A    Not that I'm aware of.                   10:17:01

20      Q    Now, you understand you've been         10:17:05

21  identified as a witness with information relevant  10:17:12

22  to the facts of this case that's being brought by  10:17:15

1    Mr. David Boshea against Compass Marketing;                10:17:18

2    correct?                                                   10:17:22

3        A    I do not understand that, no.                     10:17:22

4        Q    You don't understand that, okay.                  10:17:25

5             Have you been in communication with David         10:17:28

6    Boshea about this lawsuit that he's brought                10:17:31

7    against Compass Marketing?                                 10:17:33

8        A    Yes, I have.                                      10:17:35

9        Q    When did you first talk to David Boshea           10:17:36

10   about the lawsuit that he's filed against Compass          10:17:41

11   Marketing?                                                 10:17:45

12       A    I don't remember.                                 10:17:45

13       Q    Do you remember whether it was before or          10:17:46

14   after the lawsuit was filed?                               10:17:49

15       A    I don't remember.                                 10:17:50

16       Q    Do you remember having any conversations,         10:17:54

17   telephone conversations, with Mr. Boshea about             10:18:00

18   this lawsuit prior to January 1, 2021?                     10:18:01

19       A    I don't remember.                                 10:18:05

20       Q    Do you remember having any text messages          10:18:08

21   with Mr. Boshea about this lawsuit prior to                10:18:13

22   January 1, 2021?                                           10:18:16

| | | |
|---|---|---|
| 1 | A    I don't remember. | 10:18:19 |
| 2 | Q    What about any e-mail communications? | 10:18:19 |
| 3 | MR. REDD:  Objection; form. | 10:18:21 |
| 4 | Q    Have you had any e-mail communications | 10:18:26 |
| 5 | with Mr. Boshea about this lawsuit prior to | 10:18:28 |
| 6 | 2020 -- January 1, 2021? | 10:18:31 |
| 7 | A    Not that I remember. | 10:18:32 |
| 8 | Q    Have you had any telephone communications | 10:18:36 |
| 9 | with Mr. Boshea's attorney prior -- about this | 10:18:38 |
| 10 | lawsuit prior to January 1, 2021? | 10:18:43 |
| 11 | A    I don't remember. | 10:18:45 |
| 12 | Q    Have you had any text messages with Mr. | 10:18:48 |
| 13 | Boshea's attorney about this lawsuit prior to | 10:18:52 |
| 14 | January 1, 2021? | 10:18:54 |
| 15 | A    I don't remember. | 10:18:56 |
| 16 | Q    What about any e-mail messages with Mr. | 10:18:59 |
| 17 | Boshea's attorney prior to January 1, 2021? | 10:19:04 |
| 18 | A    I don't remember. | 10:19:08 |
| 19 | Q    Let's go forward.  Have you had any | 10:19:09 |
| 20 | communications with Mr. Boshea's attorney since | 10:19:14 |
| 21 | January 1, 2021, about this lawsuit? | 10:19:16 |
| 22 | A    Yes. | 10:19:18 |

1      Q     And why were you communicating with Mr.    10:19:18

2  Boshea's attorney about this lawsuit?              10:19:25

3      A     Mr. Boshea's attorney called me and asked  10:19:26

4  me about it.                                       10:19:34

5      Q     The first time you spoke with Mr.         10:19:35

6  Boshea's attorney was at -- was it at his          10:19:42

7  initiative?                                        10:19:45

8      A     Yes.                                      10:19:45

9      Q     Prior to that did Mr. Boshea talk to you  10:19:46

10  and ask you to help him with his lawsuit against  10:19:51

11  Compass Marketing?                                10:19:54

12      A     Not that I remember, no.                 10:19:54

13      Q     Why did you talk with Mr. Boshea's       10:19:58

14  attorney about this lawsuit?                      10:20:01

15          MR. REDD:  Objection; form.               10:20:02

16          You can answer.                           10:20:11

17      A     Can you ask that question again, please? 10:20:12

18      Q     Why did you talk about this lawsuit with 10:20:15

19  Mr. Boshea's attorney?                            10:20:18

20      A     Because Mr. Boshea's attorney called me. 10:20:18

21      Q     As an owner of Compass Marketing, do you 10:20:24

22  think it's wise to be talking to litigants who are 10:20:28

| | | |
|---|---|---|
| 1 | suing your company where they're -- | 10:20:32 |
| 2 | MR. JORDAN:  Objection; calls for an | 10:20:32 |
| 3 | opinion that I don't think is relevant to the | 10:20:36 |
| 4 | lawsuit. | 10:20:38 |
| 5 | MR. REDD:  I join in an objection to | 10:20:38 |
| 6 | form. | 10:20:44 |
| 7 | Q    Mr. White? | 10:20:44 |
| 8 | A    Please repeat your question. | 10:20:45 |
| 9 | Q    As an owner of Compass Marketing, do you | 10:20:50 |
| 10 | think it is wise to be talking to the attorney of | 10:20:53 |
| 11 | a litigant who is suing your company? | 10:20:56 |
| 12 | MR. JORDAN:  Same objection. | 10:20:58 |
| 13 | MR. REDD:  Same objection. | 10:21:00 |
| 14 | You can answer. | 10:21:04 |
| 15 | A    I don't know. | 10:21:04 |
| 16 | Q    What do you mean you don't know? | 10:21:05 |
| 17 | A    I don't know. | 10:21:08 |
| 18 | Q    You have no opinion as to whether or not | 10:21:10 |
| 19 | it's a good idea to be talking to someone who's -- | 10:21:13 |
| 20 | or their attorney who's suing your company? | 10:21:16 |
| 21 | MR. JORDAN:  Objection; asked and | 10:21:18 |
| 22 | answered. | 10:21:21 |

| | | |
|---|---|---|
| 1 | MR. REDD:  Objection; calls for an | 10:21:21 |
| 2 | opinion.  Object to the form. | 10:21:22 |
| 3 | Go ahead. | 10:21:26 |
| 4 | A    Can you please reask your question? | 10:21:27 |
| 5 | MR. STERN:  Can the court reporter | 10:21:29 |
| 6 | read -- read back my question, please. | 10:21:31 |
| 7 | (The pending question was read.) | 10:21:42 |
| 8 | A    I do not have an opinion in that area, | 10:21:42 |
| 9 | no. | 10:21:48 |
| 10 | Q    Do you want to see Mr. Boshea win this | 10:21:48 |
| 11 | lawsuit? | 10:21:56 |
| 12 | MR. JORDAN:  Objection; relevance. | 10:21:56 |
| 13 | A    I want to see Mr. Boshea treated fairly | 10:21:59 |
| 14 | as an employee of Compass Marketing. | 10:22:07 |
| 15 | Q    Can you please answer my question? | 10:22:08 |
| 16 | MR. REDD:  Objection.  The question was | 10:22:12 |
| 17 | answered. | 10:22:16 |
| 18 | Q    Please answer my question. | 10:22:17 |
| 19 | MR. REDD:  Form.  Same objection. | 10:22:18 |
| 20 | You can answer. | 10:22:23 |
| 21 | A    Please repeat your question, Mr. Stern. | 10:22:23 |
| 22 | Q    Do you want to see Mr. Boshea win this | 10:22:25 |

| | | |
|---|---|---|
| 1 | litigation? | 10:22:29 |
| 2 | MR. JORDAN:  Objection; asked and | 10:22:29 |
| 3 | answered. | 10:22:31 |
| 4 | A    I think that's an opinion question and I | 10:22:32 |
| 5 | don't have an opinion in that area. | 10:22:37 |
| 6 | Q    It's not an opinion question.  I'm | 10:22:39 |
| 7 | asking:  Are you -- do you want to see Mr. Boshea | 10:22:42 |
| 8 | hold your company liable to him? | 10:22:45 |
| 9 | MR. JORDAN:  Objection; asked and | 10:22:47 |
| 10 | answered. | 10:22:49 |
| 11 | MR. REDD:  Objection; asked and answered. | 10:22:49 |
| 12 | A    I think I answered that, Mr. Stern. | 10:22:51 |
| 13 | Q    No, you didn't.  Please answer the | 10:22:53 |
| 14 | question.  It's yes or no. | 10:22:56 |
| 15 | A    Yes, I have answered the question. | 10:22:57 |
| 16 | Q    Do you want Mr. Boshea to hold your | 10:22:59 |
| 17 | company liable for this -- the matters that he's | 10:23:04 |
| 18 | alleging in this lawsuit? | 10:23:07 |
| 19 | MR. REDD:  Objection.  This question has | 10:23:08 |
| 20 | been repeatedly asked. | 10:23:12 |
| 21 | You can answer the question. | 10:23:15 |
| 22 | (Indecipherable). | 10:23:15 |

| | | |
|---|---|---|
| 1 | MR. JORDAN: I join in that objection. | 10:23:15 |
| 2 | A I want to see Mr. Boshea treated fairly | 10:23:17 |
| 3 | as an employee of Compass Marketing. | 10:23:24 |
| 4 | Q Well, he is not an employee of Compass | 10:23:24 |
| 5 | Marketing, is he? | 10:23:28 |
| 6 | A I don't know. | 10:23:28 |
| 7 | Q So I'm going back to my question: Do you | 10:23:30 |
| 8 | want to see Mr. Boshea prevail in this litigation | 10:23:34 |
| 9 | against Compass Marketing? | 10:23:37 |
| 10 | MR. REDD: Objection. You stated that | 10:23:37 |
| 11 | you're going back to the question, which is the | 10:23:43 |
| 12 | same question that's been asked a number of times | 10:23:44 |
| 13 | now and answered a number of times. At some point | 10:23:46 |
| 14 | we're going to get into continuing to do so is -- | 10:23:51 |
| 15 | MR. STERN: Justin, you know full well | 10:23:51 |
| 16 | this goes to motive. | 10:23:51 |
| 17 | MR. REDD: -- improper and I'm -- | 10:23:51 |
| 18 | THE COURT REPORTER: I'm sorry; if you're | 10:24:06 |
| 19 | both talking at the same time, I can't hear you | 10:24:07 |
| 20 | both. | 10:24:09 |
| 21 | MR. STERN: Justin, you know full well | 10:24:09 |
| 22 | this goes to motive and credibility, all matters | 10:24:11 |

1    that are appropriate to be asking in this          10:24:15

2    deposition.                                          10:24:16

3        Q    So, Mr. White, I will ask again:  Do you   10:24:16

4    want to see Mr. Boshea prevail in this litigation    10:24:18

5    against Compass Marketing?                            10:24:22

6            MR. REDD:  Objection; asked and answered.    10:24:24

7    He answered.  He said he wanted to see Mr. Boshea    10:24:27

8    treated fairly as an employee and he didn't have     10:24:29

9    an opinion about who won the lawsuit.  He said       10:24:31

10   that several times.                                   10:24:33

11           MR. JORDAN:  I join in that objection.        10:24:34

12       Q    Mr. White?                                   10:24:36

13       A    I wish to see Mr. Boshea treated fairly     10:24:38

14   as an employee of Compass Marketing.                  10:24:43

15       Q    He's not an employee of Compass Marketing   10:24:44

16   right now, is he?                                     10:24:50

17           MR. JORDAN:  Objection; asked and            10:24:51

18   answered.                                             10:24:52

19       A    I don't know.                                10:24:52

20       Q    Are you helping Mr. Boshea with this        10:24:56

21   litigation against Compass Marketing?                 10:25:04

22           MR. JORDAN:  Objection; vague.                10:25:04

1          MR. REDD:  Object to form.                    10:25:07

2     A    I would ask you to please define helping.     10:25:08

3     Q    Have you provided him with any assistance     10:25:12

4  in connection with this lawsuit against Compass       10:25:16

5  Marketing?                                            10:25:18

6          MR. REDD:  Objection to the form and the      10:25:18

7  characterization of "assistance."                     10:25:23

8          Go ahead.                                     10:25:27

9     A    None that I'm aware of.                        10:25:27

10    Q    Okay.  Let's go to some of the documents       10:25:29

11 you produced in this case.  So you're here            10:25:31

12 pursuant to a subpoena; correct?                      10:25:36

13    A    That's my understanding.                       10:25:36

14    Q    And that subpoena asked you to sit for a       10:25:38

15 deposition?                                            10:25:40

16    A    That's my understanding.                       10:25:40

17    Q    And that subpoena also asked you to            10:25:44

18 produce documents; correct?                           10:25:47

19    A    That's my understanding.                       10:25:48

20    Q    And one of the documents, well, that you       10:25:51

21 were sub -- you were given two subpoenas, one that    10:25:54

22 specifically related only to certain documents;       10:25:57

1    correct?                                          10:25:59

2       A     I believe so.                            10:25:59

3       Q     Do you plan to produce the e-mail thread 10:26:02

4    in native format that includes an e-mail dated May 10:26:09

5    22, 2007, or that purports to be an e-mail that is 10:26:14

6    dated May 22, 2007?                               10:26:19

7            MR. REDD:  Objection.  Again, if you want 10:26:20

8    the witness to step out --                        10:26:23

9            THE COURT REPORTER:  I'm sorry, Mr. Redd; 10:26:23

10   I can't hear you.                                 10:26:31

11           MR. REDD:  Stephen, if you want the       10:26:33

12   witness to step out for this, you can -- I'll ask  10:26:38

13   him to, or if you're fine with me just telling you 10:26:39

14   on the record.  What's your preference?           10:26:42

15           MR. STERN:  Go ahead and state your --    10:26:47

16   whatever it is you want about that document.  We   10:26:51

17   have not received the native format yet.  We've    10:26:52

18   asked for it.                                     10:26:55

19           MR. REDD:  It was produced with the pdf.  10:26:55

20   There is a placeholder for the native in the pdf.  10:26:58

21   The native was produced at the same time and it    10:27:02

22   was downloaded by your office.  So you have it     10:27:05

| | | |
|---|---|---|
| 1 | from us from -- on behalf of Michael White in his | 10:27:07 |
| 2 | document production -- | 10:27:12 |
| 3 | MR. STERN:  We have the pdf; we don't | 10:27:12 |
| 4 | have the native format. | 10:27:15 |
| 5 | MR. REDD:  -- November the 19th.  Hold | 10:27:15 |
| 6 | on. | 10:27:15 |
| 7 | MR. STERN:  We have the pdf -- | 10:27:16 |
| 8 | MR. REDD:  Let me finish.  Can I finish? | 10:27:16 |
| 9 | MR. STERN:  -- not the native format. | 10:27:16 |
| 10 | MR. REDD:  Let me finish.  Let me finish. | 10:27:19 |
| 11 | Your office does have the native format | 10:27:24 |
| 12 | e-mail from Michael White in response to the | 10:27:28 |
| 13 | subpoena on Michael White.  Your office has the | 10:27:29 |
| 14 | same native format e-mail as produced by Daniel | 10:27:30 |
| 15 | White by his counsel, Daniel White as the sender | 10:27:34 |
| 16 | and Michael White as the recipient.  We are | 10:27:38 |
| 17 | talking about May 22, 2007, and the e-mails were | 10:27:41 |
| 18 | downloaded -- | 10:27:42 |
| 19 | MR. STERN:  Well, then I'd ask you to | 10:27:42 |
| 20 | resend the document in native format -- | 10:27:47 |
| 21 | MR. REDD:  Hold on.  Hold on.  Let me | 10:27:47 |
| 22 | finish.  Let me finish. | 10:27:47 |

| | | |
|---|---|---|
| 1 | MR. STERN:  -- because we do not have it. | 10:27:50 |
| 2 | MR. BOSHEA:  If I can -- | 10:27:50 |
| 3 | MR. REDD:  The native format e-mail was | 10:27:50 |
| 4 | downloaded by -- | 10:27:50 |
| 5 | MR. JORDAN:  One at a time.  One at a | 10:27:50 |
| 6 | time. | 10:27:52 |
| 7 | MR. REDD:  -- your office.  They've been | 10:27:52 |
| 8 | downloaded by your office on November -- | 10:27:52 |
| 9 | THE COURT REPORTER:  Mr. Redd, can you | 10:27:52 |
| 10 | start over.  I didn't hear the beginning of what | 10:27:58 |
| 11 | you said. | 10:27:59 |
| 12 | MR. BOSHEA:  Yeah, Mr. Stern has got to | 10:27:59 |
| 13 | stop interrupting. | 10:28:03 |
| 14 | MR. JORDAN:  You know what, David?  Would | 10:28:04 |
| 15 | you turn off your damn mic. | 10:28:05 |
| 16 | MR. REDD:  The native format e-mail that | 10:28:08 |
| 17 | was requested in the second subpoena from Compass | 10:28:13 |
| 18 | Marketing to Michael White was produced on | 10:28:18 |
| 19 | November 18, 2021, by my office to Mr. Stern's | 10:28:19 |
| 20 | office and Mr. Stern's office downloaded the | 10:28:24 |
| 21 | native format e-mail that he's asking about. | 10:28:27 |
| 22 | MR. STERN:  What we have is a placeholder | 10:28:31 |

1   that's been downloaded.  We've asked that it be        10:28:34

2   sent in -- on a flash drive.  We have not received     10:28:36

3   that.                                                  10:28:39

4           MR. REDD:  Well, it was already               10:28:39

5   downloaded by your office.  No one asked me to         10:28:45

6   send it in any other format and you already have       10:28:47

7   it.                                                    10:28:50

8           MR. STERN:  All right.  Then we will          10:28:50

9   address that separately.                               10:28:53

10  BY MR. STERN:                                          10:28:53

11      Q    I'd like to show you some text messages       10:28:54

12  that you've produced in this lawsuit, Mr. White.       10:28:58

13          MR. STERN:  We're going to start with, I       10:29:03

14  guess -- Heather, I don't know, are you going to       10:29:05

15  pull them -- are they all in one or are you going      10:29:08

16  to pull them up one at a time?                         10:29:10

17          Heather?  How is it easier to do that?         10:29:23

18          MS. YEUNG:  Can you give me the Bates          10:29:23

19  number?                                                10:29:25

20          MR. STERN:  I'm going to start with Bates      10:29:25

21  No. MRW000003 and then we're going to go for           10:29:29

22  several pages, like through 15.                        10:29:32

1     Q    Okay.  Mr. White, do you see what's going          10:29:47

2  to be marked as Exhibit 1?                                 10:29:58

3          (White Deposition Exhibit 1 marked for             10:29:58

4  identification and is attached to the transcript.)         10:30:00

5     A    I do.                                              10:30:00

6     Q    Is this one page of several that you've            10:30:06

7  produced of text messages in this lawsuit?                 10:30:10

8     A    I don't know.                                      10:30:12

9     Q    Take a look at it.  Does this remind you           10:30:14

10 of a text message that you produced when you sent          10:30:21

11 them -- is it a text message that you produced?            10:30:25

12         MR. REDD:  Objection.  Sorry; did you ask          10:30:27

13 if it reminds?                                             10:30:29

14    Q    Take a look at the exhibit.  Is this a             10:30:31

15 text message that you produced in this litigation?         10:30:34

16         MR. REDD:  If you need to look at more of           10:30:37

17 it to tell...                                              10:30:40

18    A    I don't -- I don't know.                           10:30:40

19         MS. YEUNG:  Just so all counsel know, as           10:30:43

20 I'm putting these on the screen, I'm also                  10:30:46

21 e-mailing them to counsel so that you may pull it          10:30:49

22 up on your own computer if you'd like.                     10:30:51

| | |
|---|---|
| 1 | MR. REDD:  Thank you. | 10:30:53 |
| 2 | Q     Did you send this text message or did you | 10:30:53 |
| 3 | receive this text message on December 26 at 3:38 | 10:31:03 |
| 4 | p.m.? | 10:31:08 |
| 5 | A     I don't know. | 10:31:08 |
| 6 | Q     Do you know why your attorney produced | 10:31:10 |
| 7 | this in this litigation? | 10:31:16 |
| 8 | A     I -- I don't know why my attorney did | 10:31:17 |
| 9 | something, no. | 10:31:23 |
| 10 | Q     Did you hand this doc -- this text | 10:31:23 |
| 11 | message to your attorney to produce in this | 10:31:27 |
| 12 | litigation? | 10:31:29 |
| 13 | A     I did not. | 10:31:29 |
| 14 | MR. REDD:  Objection.  He said he doesn't | 10:31:31 |
| 15 | know what this is. | 10:31:33 |
| 16 | Q     Did you deliver this to your attorney to | 10:31:35 |
| 17 | produce in this litigation? | 10:31:39 |
| 18 | MR. REDD:  Same objection. | 10:31:40 |
| 19 | Answer. | 10:31:44 |
| 20 | A     I don't know if I produced a text message | 10:31:44 |
| 21 | you have on the screen to my attorney. | 10:31:49 |
| 22 | Q     Scrolling down a little bit further on to | 10:31:51 |

1   Page '4, it says:  "What is your email hoping you          10:31:55

2   have the email or even better signed or initialed         10:31:59

3   offer.  Same with the non compete and non                 10:32:02

4   disclosure which shows money I'm owed.  Thx,              10:32:06

5   Mike."                                                     10:32:08

6           Did you receive that or send that text            10:32:09

7   message?                                                   10:32:12

8       A    I do not know.                                    10:32:12

9       Q    Do you know how we got ahold of it?              10:32:14

10      A    I do not know.                                    10:32:16

11          MR. STERN:  Scroll down to the next one           10:32:23

12  dated December 28, 11:06 p.m.                              10:32:24

13          Thank you.                                         10:32:29

14      Q    I'm reading in the middle of the text            10:32:29

15  message:  "I think it is Golf25.  I think he sent         10:32:32

16  it to my old house to me.  You learn a lot about          10:32:34

17  people when things get tough you know what I mean.        10:32:38

18  I will land on my feet.  Thank you!!!!!"  I think         10:32:41

19  I got it.  "I think it is Golf25.  I think he sent        10:32:44

20  it to my old house computer.  I have the offer            10:32:49

21  letter with my separation program clearly spelled         10:32:53

22  out and I have the non disclosure/non compete             10:32:55

1    contract but my lawyer wants the e-mail that sent          10:32:59

2    them to me.  Attorney says it all black and white          10:33:01

3    Dan spoke with him too.  I hate this stuff so much          10:33:06

4    ugggg."                                                    10:33:06

5            Did you receive that text message?                 10:33:11

6        A    I don't know.                                     10:33:12

7        Q    Do you know how -- did you deliver this           10:33:12

8    text message to your attorney to produce in this          10:33:18

9    litigation?                                                10:33:21

10           MR. REDD:  Objection.  He said he didn't           10:33:21

11   know.                                                      10:33:25

12           You can answer.                                    10:33:34

13       A    Can you ask your question again, please?          10:33:35

14       Q    Did you deliver this text message to your         10:33:37

15   attorney to produce in this litigation?                    10:33:39

16       A    I don't know.                                     10:33:42

17       Q    Scrolling down to Page '6, Friday, August        10:33:42

18   13, at 7:23 p.m.:  "Thx bro.  Hey send those               10:33:51

19   emails when you can!  Say hi to tommy."                    10:33:56

20           Did you produce this text message in this          10:33:59

21   litigation?                                                10:34:02

22           MR. REDD:  This is Justin Redd.  Can you           10:34:02

1    scroll back up?  You might have skipped one side          10:34:06

2    of the message that might help the witness orient        10:34:09

3    himself to this document.                                 10:34:14

4        Q    There's a text message that's showing up        10:34:15

5    in blue and it's in color:  "Hey buddy.  Looks           10:34:20

6    like lots of snow coming your way.  Prolly cover         10:34:21

7    up the golf course!!!!  Be safe, buddy," and             10:34:25

8    that's dated January 29, 11:36 a.m.                       10:34:27

9            Did you send that text message --                 10:34:31

10       A    I don't know.                                     10:34:32

11       Q    -- or receive that text message?                 10:34:33

12       A    I don't know.                                     10:34:34

13       Q    Message below on August 13, 7:23 p.m.           10:34:36

14   Did you send or receive that text message:  "Hey        10:34:43

15   send those emails when you can"?                          10:34:47

16       A    I don't know.                                     10:34:47

17       Q    Scrolling down to Page '7, Friday,             10:34:53

18   September 24, at 11:37 p.m.:  "U good, bro?  Did         10:35:01

19   Greg talk with you today.  We closing I think he         10:35:09

20   is excited nervous!  I think he is excited               10:35:11

21   nervous!  I know u get it."                               10:35:15

22           Is that a text message that you received         10:35:17

1   or sent to Mr. Boshea?                                 10:35:18

2        A    I do not know.                               10:35:19

3        Q    Do you know if you produced it in this       10:35:24

4   litigation?                                            10:35:28

5        A    I don't know if I produced what you have     10:35:28

6   on the screen.  No, I do not know.                     10:35:32

7        Q    Scrolling to the next one.                   10:35:33

8        MR. REDD:  Stephen, this is Justin.  If           10:35:39

9   you make a representation that this is what was        10:35:43

10  produced, Mr. White may be able to identify it.        10:35:47

11       MR. STERN:  They're the ones with the             10:35:52

12  initials MRW on them.  You're his attorney.            10:35:53

13       MR. REDD:  Okay.  Well, Mr. White                 10:35:56

14  obviously didn't put in a Bates number on his          10:35:59

15  documents; my office did.  So I'm trying to make       10:36:04

16  this go smoothly for everybody.                        10:36:06

17       Q    Next on September 25 at 4:42 a.m. this is    10:36:07

18  a text message:  "All good on my end buddy.  You       10:36:14

19  doing OK?  I talked to Greg Wednesday.  What's he      10:36:17

20  doing to punch them in the eye.  LOL?"                 10:36:20

21       Is that a text message that you sent or           10:36:23

22  received to Mr. Boshea?                                10:36:25

1     A     I don't know.                                    10:36:26

2     Q     Did you -- do you recall speaking with           10:36:26

3   Greg Jordan in or about September 2021?                  10:36:32

4     A     I can't remember that, no.                       10:36:35

5     Q     Do you remember speaking with Greg Jordan        10:36:42

6   in or about September 2020 -- 2020?                      10:36:45

7     A     No.                                              10:36:46

8     Q     Do you remember Mr. Boshea asking you to         10:36:51

9   speak with Mr. Jordan in or about September of           10:36:56

10   2021 or 2020?                                            10:37:00

11     A     I do not remember that.                          10:37:01

12     Q     Do you remember encouraging Mr. Boshea to       10:37:03

13   punch them in the eye, "them" being whom?                10:37:10

14           MR. REDD:  Objection; form, compound.           10:37:13

15     A     Can you please ask your question again?          10:37:17

16     Q     Do you remember encouraging Mr. Boshea to       10:37:22

17   punch them in the eye?                                   10:37:25

18           MR. REDD:  Objection to form.                   10:37:27

19     A     I do not remember encouraging Mr. Boshea        10:37:29

20   to punch anyone in the eye.                              10:37:37

21     Q     And you don't know whether or not this is       10:37:37

22   a text message you sent or received?                     10:37:41

1       A    I do not know that the photograph you                    10:37:47

2  have up on the screen is something I sent or                       10:37:49

3  received.                                                          10:37:52

4       Q    Scrolling down, in response to that, the                 10:37:54

5  very next text message on September 25 at 12:22                    10:37:57

6  p.m.: "Thx Mike!  Get the email from Dan re our                    10:38:02

7  reply.  Ok?  Thx buddy ur a great friend."                        10:38:05

8            Is that a text message you sent or                       10:38:09

9  received from Mr. Boshea?                                          10:38:12

10      A    I do not know.                                           10:38:12

11      Q    Next:  "I know the answer but do you have                10:38:15

12  my contract in file?"                                             10:38:19

13           Did you send or receive that text                        10:38:23

14  message?                                                          10:38:25

15      A    I do not know.                                           10:38:25

16      Q    Has Mr. Boshea asked you to gather any                   10:38:27

17  documents to help him in this litigation?                         10:38:31

18           MR. REDD:  Objection; form.                              10:38:33

19      A    Yes, he has.                                             10:38:39

20      Q    What documents has Mr. Boshea asked you                  10:38:40

21  to get for him in connection with this litigation?                10:38:43

22      A    I believe he asked for his severance                     10:38:45

1    agreement document and I believe he asked for          10:38:59

2    signature verifications of John White.                 10:39:09

3         Q    Did you represent to him that you can get    10:39:12

4    signatures of John White and did you rep -- yes or     10:39:18

5    no?                                                    10:39:22

6              MR. REDD:  Objection to form.                10:39:22

7         A    Can you ask the question again, please?      10:39:25

8         Q    Did you represent to Mr. Boshea that you     10:39:27

9    could get samples of John White's signature for        10:39:29

10   him?                                                   10:39:34

11        A    I don't --                                   10:39:34

12             MR. REDD:  Objection to form.                10:39:34

13        A    I don't believe so, no.                      10:39:36

14        Q    Did you represent to Mr. Boshea that you     10:39:37

15   can get his separation agreement?                      10:39:39

16        A    I don't --                                   10:39:42

17             MR. JORDAN:  Objection to the form of the    10:39:42

18   question.                                              10:39:47

19             THE COURT REPORTER:  I'm sorry, Mr.          10:39:47

20   White; if you answered, I didn't hear it.              10:39:53

21        A    Can you ask your question again, please,     10:39:54

22   Mr. Stern?                                             10:40:01

1      Q    Did you represent to Mr. Boshea that you          10:40:01

2   can get him a copy of any contract he entered into       10:40:04

3   with Compass Marketing?                                  10:40:07

4           MR. JORDAN:  Same objection.                     10:40:07

5      A    I do not remember doing that, no.                10:40:10

6      Q    Did you attempt to get a copy of any             10:40:13

7   contract he entered into with Compass Marketing?         10:40:16

8      A    I don't believe so.                              10:40:17

9      Q    Do you know why he was asking you to get         10:40:27

10  a copy of his contract?                                  10:40:31

11     A    I don't know why he was asking --                10:40:31

12          MR. JORDAN:  Objection to the                    10:40:38

13  characterization -- mischaracterization of the           10:40:40

14  e-mail -- of the text.                                   10:40:43

15     Q    Mr. White?                                       10:40:43

16     A    Please -- please ask your question again.        10:40:47

17          MR. STERN:  Can you repeat the question,         10:40:51

18  court reporter.                                          10:40:51

19          (The pending question was read.)                 10:40:53

20     A    I do not know why he was asking that.            10:40:53

21     Q    Did you have a discussion with Mr. Boshea        10:41:05

22  as to any -- anything related to getting a copy of       10:41:09

1    his contract?                                          10:41:13

2         MR. REDD:  Objection to form.                     10:41:14

3    A    Yes.                                              10:41:19

4    Q    What did you discuss with Mr. Boshea?             10:41:19

5         MR. REDD:  Objection; form.                       10:41:22

6    A    I -- I would ask you to pinpoint the time         10:41:29

7    when you are referring to.  I've talked to Mr.         10:41:36

8    Boshea for 30 years.                                   10:41:40

9    Q    Any time since December of 2020.                  10:41:40

10        MR. JORDAN:  Objection; form.                     10:41:44

11   A    I have discussed with Mr. Boshea his              10:41:47

12   request for my knowledge about his separation          10:42:04

13   agreement.                                             10:42:11

14   Q    And what did you tell him about your              10:42:11

15   knowledge of his separation agreement?                 10:42:14

16   A    I believe I told him that I had no                10:42:15

17   knowledge of it.                                       10:42:21

18   Q    Did you tell him that you had no                  10:42:22

19   knowledge of it before or after he made the            10:42:28

20   request for a copy of the contract?                    10:42:31

21   A    I don't remember.                                 10:42:32

22   Q    Next page, September 25, 9:18 p.m., the           10:42:34

1    text reads:  "Just read email.  I always thought          10:42:47

2    this will settle the day before Bernie has to             10:42:51

3    raise his right hand.  Maybe Marty too."                   10:42:53

4            Did you send that text message to Mr.              10:42:56

5    Boshea?                                                    10:42:58

6        A    I don't know.                                     10:42:58

7        Q    Looking at it now, does it refresh your           10:42:58

8    recollection?  Do you remember sending that                10:43:01

9    message to Mr. Boshea?                                     10:43:04

10       A    Looking at what you have on the screen, I         10:43:04

11   do not know if I sent or received that.                    10:43:08

12       Q    Do you know who the reference to Bernie           10:43:10

13   is in this text message?                                   10:43:15

14       A    I do not know if I sent or received that          10:43:17

15   text message.                                              10:43:21

16       Q    That's not my question.  My question is,          10:43:21

17   do you know who the reference to Bernie is in this         10:43:24

18   text message?                                              10:43:27

19       A    I would be guessing.                              10:43:27

20       Q    Do you know who the reference to Marty            10:43:30

21   is?                                                        10:43:36

22       A    Again, I would be guessing.                       10:43:36

| | | |
|---|---|---|
| 1 | Q    So based -- if you're guessing, that | 10:43:39 |
| 2 | means you did not send this text message; is that | 10:43:42 |
| 3 | correct? | 10:43:46 |
| 4 | MR. REDD:  Objection to form. | 10:43:46 |
| 5 | A    That is not correct. | 10:43:47 |
| 6 | Q    So you did send this text message? | 10:43:49 |
| 7 | MR. REDD:  Objection; form. | 10:43:53 |
| 8 | A    I do not know. | 10:43:55 |
| 9 | Q    Do you remember referring to anyone by | 10:43:56 |
| 10 | the name Bernie who is not named Bernie? | 10:44:09 |
| 11 | A    I do. | 10:44:11 |
| 12 | Q    Who have you referred to as Bernie who is | 10:44:14 |
| 13 | not named Bernie? | 10:44:18 |
| 14 | A    John White. | 10:44:21 |
| 15 | Q    Why do you refer to him as Bernie? | 10:44:23 |
| 16 | A    That's a name that I recognize to be | 10:44:26 |
| 17 | associated with John White. | 10:44:40 |
| 18 | Q    Why is that name associated with John | 10:44:40 |
| 19 | White? | 10:44:46 |
| 20 | A    I believe it is referring to another | 10:44:46 |
| 21 | Bernie named Bernie Madoff.  And John White and | 10:45:00 |
| 22 | Bernie Madoff have some similar issues and I | 10:45:07 |

1    believe that that is why I would associate the      10:45:14

2    name Bernie with John White.                        10:45:17

3         Q    Were you the one that came up with the    10:45:20

4    idea to call -- to refer to Mr. White, your         10:45:23

5    brother, John White, as Bernie?                     10:45:25

6         A    I don't know.                              10:45:27

7         Q    Do you know who came up with the idea to   10:45:31

8    refer to John White as Bernie?                       10:45:34

9         A    I do not know.                             10:45:36

10        Q    Do you know who the reference to Marty is  10:45:38

11   in that text message?                                10:45:41

12        A    Again, I would be guessing.                10:45:42

13        Q    Who would you guess the reference to       10:45:46

14   Marty is?                                            10:45:49

15             MR. REDD:  Objection.                      10:45:49

16        A    I'm not going to guess, Mr. Stern.  I      10:45:51

17   don't know.                                          10:45:54

18        Q    Have you referred to anyone as Marty who   10:45:54

19   was not named Marty?                                 10:45:58

20        A    Not that I know of.                        10:45:59

21        Q    Turning to the next page, MRW0000010, at   10:46:04

22   the very top there, September 29 at 9:21 a.m.:       10:46:15

1    "Hi Mike.  Did Lawrence tell you he remembered my      10:46:19

2    agreement?"  Is that a text message that you          10:46:21

3    received?                                              10:46:23

4        A    I don't know, Mr. Stern.                      10:46:23

5        Q    Do you know who the reference to Lawrence     10:46:25

6    is?                                                    10:46:30

7        A    I would be guessing and I don't know.         10:46:30

8        Q    Who would you guess that the reference to     10:46:34

9    Lawrence is?                                           10:46:38

10       A    I'm not going to make a guess, Mr. Stern.     10:46:38

11   I don't know.                                          10:46:42

12       Q    I'm asking you to guess.  Who is it that      10:46:42

13   the reference to Lawrence is that you believe --       10:46:45

14   let me rephrase it.                                    10:46:48

15           Who do you believe the reference to            10:46:49

16   Lawrence is?                                           10:46:50

17           MR. REDD:  Objection.  I believe one of        10:46:51

18   your ground rules was don't guess.  Form of the        10:46:54

19   question.                                              10:46:58

20           MR. STERN:  I'm asking who he thinks the       10:46:58

21   reference to Lawrence is.                              10:47:01

22       A    I don't know.                                 10:47:02

| | | |
|---|---|---|
| 1 | Q    Scrolling ahead to MRW0000013, at the | 10:47:03 |
| 2 | very top -- | 10:47:25 |
| 3 | MR. STERN:  Scroll up a little bit to the | 10:47:25 |
| 4 | top. | 10:47:25 |
| 5 | Q    -- what is this a text message of? | 10:47:26 |
| 6 | A    It looks like it's a text message with | 10:47:28 |
| 7 | some information about an address and a legal | 10:47:36 |
| 8 | description, a land value, physical address, a | 10:47:48 |
| 9 | city, an owner address, a parcel ID, a legal | 10:47:53 |
| 10 | description, a land value. | 10:48:01 |
| 11 | Q    Did you send that text message? | 10:48:04 |
| 12 | A    I don't know. | 10:48:08 |
| 13 | Q    So you don't know whether any of these | 10:48:08 |
| 14 | text messages are yours? | 10:48:22 |
| 15 | MR. REDD:  Objection; form. | 10:48:24 |
| 16 | A    I do not know that the items you have put | 10:48:25 |
| 17 | on this screen -- I don't know what they are. | 10:48:30 |
| 18 | Q    Scrolling ahead to MRW0000019. | 10:48:35 |
| 19 | MR. STERN:  Is this all part of the same | 10:48:58 |
| 20 | exhibit or do we have to identify it as a new | 10:48:59 |
| 21 | exhibit, Heather? | 10:49:02 |
| 22 | MS. YEUNG:  A separate pdf.  So this | 10:49:03 |

| | | |
|---|---|---|
| 1 | would be Exhibit 2. | 10:49:09 |
| 2 | MR. STERN:  All right.  So this will be | 10:49:09 |
| 3 | referred to as Exhibit 2. | 10:49:11 |
| 4 | Can you scroll up to the top, please. | 10:49:11 |
| 5 | (White Deposition Exhibit 2 marked for | 10:49:11 |
| 6 | identification and is attached to the transcript.) | 10:49:12 |
| 7 | Q    Is this a text message that you produced | 10:49:12 |
| 8 | in this litigation? | 10:49:20 |
| 9 | A    I don't know. | 10:49:21 |
| 10 | Q    Do you recall receiving this text message | 10:49:22 |
| 11 | from David Boshea on March 16 at 2020 -- let me | 10:49:26 |
| 12 | rephrase. | 10:49:32 |
| 13 | Do you recall receiving this text message | 10:49:32 |
| 14 | from David Boshea on March 16, 2020, at 2:55 p.m.? | 10:49:34 |
| 15 | A    I do not. | 10:49:39 |
| 16 | Q    Do you see at the very top there is a | 10:49:40 |
| 17 | reference to DB and DW.  Do you know who that is? | 10:49:42 |
| 18 | A    I do not. | 10:49:46 |
| 19 | MR. STERN:  Can you scroll down a little | 10:49:55 |
| 20 | bit. | 10:49:56 |
| 21 | Q    Seeing that there is a name Dan White on | 10:49:58 |
| 22 | there, "Who said what to who?" with a bunch of | 10:50:01 |

1  smiley faces, does that refresh your recollection          10:50:05

2  as to having received this text message at any             10:50:06

3  point in time?                                             10:50:09

4      A    It does not.                                      10:50:10

5          MR. STERN:  Scroll to the next page, on            10:50:11

6  Page '20.                                                  10:50:21

7      Q    Is this a text message that you produced          10:50:22

8  in this litigation as one coming from Mr. Boshea           10:50:24

9  dated October 23, 2020, at 5:44 p.m.?                      10:50:28

10     A    I don't know.                                     10:50:32

11     Q    Scrolling ahead to Page '25, on September         10:50:33

12 16 at 3:08 p.m. there is a text message from what          10:50:55

13 appears to be David Boshea:  "Hi.  Remember to             10:51:01

14 send those agreements to Greg.  Thx."                      10:51:05

15         Is that a text message that Mr. Boshea             10:51:07

16 sent to you?                                               10:51:08

17     A    I don't know.                                     10:51:08

18     Q    Scrolling ahead to Page '29, text message         10:51:11

19 dated July 21, 10:36 a.m., it says:  "This is Greg         10:51:34

20 Jordan and I represent Dave Boshea in a lawsuit            10:51:40

21 against Compass Marketing.  Will you attend the            10:51:43

22 deposition for which you were subpoenaed?  I need          10:51:45

1   to make travel reservations."                        10:51:48

2           Is that a text message you received from      10:51:50

3   Mr. Jordan?                                           10:51:51

4       A    I don't know.                                10:51:51

5       Q    Do you recall seeing that, talking to        10:51:51

6   Mr. Jordan about your deposition?                     10:51:59

7       A    I think you just asked me two questions.     10:52:01

8   Would you mind asking me one question at a time.      10:52:07

9       Q    Does looking at this text message remind     10:52:09

10  you of talking to Mr. Jordan at any point about       10:52:11

11  your deposition?                                       10:52:14

12      A    I remember talking to Mr. Jordan, but        10:52:15

13  I -- this item you have up on the screen does not     10:52:23

14  cause me to remember more or less.                    10:52:25

15      Q    What did you discuss with Mr. Jordan         10:52:27

16  about your deposition?                                 10:52:29

17           MR. JORDAN:  Objection; mischaracterizes     10:52:30

18  his testimony.                                         10:52:34

19      A    Please ask your question again.              10:52:34

20      Q    What did you discuss with Mr. Jordan?        10:52:41

21      A    Can you give me a time frame when you're     10:52:43

22  asking?                                                10:52:49

| | | |
|---|---|---|
| 1 | Q    Any conversation you've had with | 10:52:49 |
| 2 | Mr. Jordan, please describe it. | 10:52:53 |
| 3 | MR. REDD:  Objection to form. | 10:52:58 |
| 4 | A    I have had a discussion with Mr. Jordan | 10:52:59 |
| 5 | about Dave Boshea's severance package, I have had | 10:53:06 |
| 6 | a discussion with Mr. Jordan about sample | 10:53:10 |
| 7 | signatures of John White, I have had a discussion | 10:53:17 |
| 8 | with Mr. Jordan about a 2007 e-mail, and I have | 10:53:21 |
| 9 | had discussion with Mr. Jordan about my deposition | 10:53:32 |
| 10 | scheduled -- I don't remember the exact date of | 10:53:44 |
| 11 | the deposition. | 10:53:50 |
| 12 | Q    What did you discuss with Mr. Jordan | 10:53:50 |
| 13 | about Mr. Boshea's severance package? | 10:53:53 |
| 14 | A    I apologized to Mr. Jordan because I | 10:53:56 |
| 15 | originally believed I had no information about | 10:54:04 |
| 16 | David Boshea's severance package.  And I had | 10:54:13 |
| 17 | recently learned that I may have had some | 10:54:18 |
| 18 | information about it and told him, explained to | 10:54:21 |
| 19 | him, the reasons that I had originally told him I | 10:54:25 |
| 20 | had no knowledge of it. | 10:54:29 |
| 21 | Q    Why did you tell him that you originally | 10:54:30 |
| 22 | had no knowledge of it? | 10:54:33 |

1      A    Because I originally had no knowledge of          10:54:34

2    it.                                                       10:54:38

3      Q    Today do you have any knowledge of his            10:54:38

4    severance package?                                        10:54:43

5         MR. REDD:  Objection to the extent it               10:54:44

6    could call for any type of delving into                   10:54:44

7    attorney/client communications, obviously, but           10:54:54

8    beyond that we'll not get into that.                      10:54:55

9         You can answer.                                      10:54:55

10        THE COURT REPORTER:  Sorry; I didn't hear           10:54:55

11   the end, Mr. Redd.                                        10:54:59

12        MR. REDD:  That subject to not getting              10:55:00

13   into attorney/client communications, the witness         10:55:03

14   may answer.                                               10:55:05

15        MR. STERN:  I didn't ask him to talk                10:55:05

16   about any communications with you.  I asked him          10:55:07

17   what does he know about Mr. Boshea's severance           10:55:09

18   package.                                                  10:55:11

19        MR. REDD:  I know you didn't, and I                 10:55:11

20   didn't say your question was improper.  But to the       10:55:14

21   extent that it could be -- any knowledge could be        10:55:16

22   based on attorney/client communications                  10:55:20

| | | |
|---|---|---|
| 1 | (indiscernible) -- | 10:55:20 |
| 2 | (Talking over) | 10:55:21 |
| 3 | MR. STERN:  You know that's not a basis | 10:55:21 |
| 4 | for him not to answer.  That is he has to reveal | 10:55:24 |
| 5 | facts; he can't reveal communications. | 10:55:24 |
| 6 | (Talking over) | 10:55:24 |
| 7 | MR. REDD:  I'm not instructing him not to | 10:55:24 |
| 8 | answer.  I asked him to answer. | 10:55:24 |
| 9 | THE COURT REPORTER:  I can't hear you if | 10:55:24 |
| 10 | you are both talking at the same time. | 10:55:31 |
| 11 | MR. REDD:  I -- I did not instruct him | 10:55:32 |
| 12 | not to answer.  I expressly asked him to answer | 10:55:34 |
| 13 | the question subject to what I just said. | 10:55:37 |
| 14 | Go ahead. | 10:55:40 |
| 15 | A    Please repeat your question, Mr. Stern. | 10:55:40 |
| 16 | Q    What knowledge do you have, if any, about | 10:55:42 |
| 17 | Mr. Boshea's alleged severance package? | 10:55:46 |
| 18 | MR. REDD:  Same objection and | 10:55:49 |
| 19 | instruction. | 10:55:52 |
| 20 | A    I have knowledge that one may have | 10:55:52 |
| 21 | existed in 2007. | 10:55:58 |
| 22 | Q    But you're not certain that it existed in | 10:56:00 |

| | | |
|---|---|---|
| 1 | 2007? | 10:56:07 |
| 2 | MR. REDD:  Object to the form. | 10:56:07 |
| 3 | Go ahead. | 10:56:11 |
| 4 | A    I am not. | 10:56:11 |
| 5 | MR. STERN:  I want to go to a new exhibit | 10:56:12 |
| 6 | Bates-numbered MRW0000030 through 0 -- through | 10:56:26 |
| 7 | '31. | 10:56:32 |
| 8 | (White Deposition Exhibit 3 marked for | 10:56:32 |
| 9 | identification and is attached to the transcript.) | 10:56:36 |
| 10 | Q    Do you recognize this document? | 10:56:36 |
| 11 | A    No. | 10:56:49 |
| 12 | Q    Excuse me? | 10:56:49 |
| 13 | A    I do not recognize it, no. | 10:56:50 |
| 14 | Q    Is your e-mail address | 10:56:54 |
| 15 | michaelrwhite@comcast.net? | 10:56:56 |
| 16 | A    That is my personal e-mail address, yes. | 10:56:56 |
| 17 | Q    And at the very top there is -- it | 10:57:03 |
| 18 | says -- this e-mail, the most recent in this | 10:57:08 |
| 19 | string, says from michaelrwhite@comcast.net to | 10:57:11 |
| 20 | Gregory Jordan and it's dated September 28, 2021, | 10:57:16 |
| 21 | at 11:27 a.m.  Do you see that? | 10:57:22 |
| 22 | A    I see that it says that, yes. | 10:57:23 |

1    Q    Did you send an e-mail to Mr. Jordan                    10:57:24

2  dated on or about September 28, 2021?                          10:57:28

3    A    I don't know.                                           10:57:31

4    Q    Below that is an e-mail in this string                  10:57:35

5  from Daniel White to -- it says                                10:57:44

6  danieljwhite@msn.com.  Is that your brother                    10:57:52

7  Daniel's personal e-mail address?                              10:57:54

8    A    I believe that that is his personal                     10:57:56

9  e-mail address.                                                10:57:58

10    Q    And that e-mail is dated May 22, 2007, at              10:57:59

11  2:08 a.m.  Do you see that?                                   10:58:04

12    A    That's what it says on the document                    10:58:06

13  you're producing, yes.                                        10:58:09

14    Q    Do you recall receiving that e-mail from               10:58:10

15  Daniel White?                                                 10:58:13

16    A    No.                                                    10:58:15

17    Q    Do you deny forwarding an e-mail to Greg               10:58:15

18  Jordan on September 28, 2021?                                 10:58:22

19    A    I do not.                                              10:58:24

20    Q    You don't deny doing that?                             10:58:25

21    A    Please ask your question again.                        10:58:28

22    Q    I want to make sure.  Do you deny sending              10:58:34

1    an e-mail to Greg -- let me ask it differently.          10:58:38

2          Do you deny sending this e-mail to                 10:58:41

3    Mr. Jordan on September 28, 2021?                        10:58:43

4      A    The document you have produced and put up         10:58:45

5    on the screen, I do not know if I sent that or if        10:58:52

6    I received it.                                           10:58:56

7      Q    What would help you determine whether you         10:58:57

8    sent it or received it?                                  10:59:02

9      A    I don't know.                                     10:59:04

10     Q    So I'm going to ask you, do you deny              10:59:04

11   sending Mr. Jordan an e-mail of any kind about Mr.       10:59:10

12   Boshea's alleged employment agreement?                   10:59:17

13     A    I do not deny.                                    10:59:18

14     Q    So how would we be able to identify an           10:59:22

15   e-mail that you did send to him related to Mr.           10:59:27

16   Boshea's alleged employment agreement?                   10:59:31

17     A    I don't know actually.  I don't know.            10:59:32

18     Q    Earlier when you'd said conversations you        10:59:35

19   had with Mr. Jordan, one of those conversations          10:59:46

20   you said referred to an e-mail from May of 2007.         10:59:49

21   Do you remember discussing that?                         10:59:53

22     A    I -- I -- yes.  I remember answering a           10:59:54

1   question of yours and referring to an e-mail in          11:00:00

2   2007.                                                    11:00:03

3        Q    Scroll down a little bit further on this       11:00:03

4   e-mail thread.  Do you see this alleged e-mail           11:00:05

5   dated May 22, 2007?  It is from                          11:00:10

6   jwhite@compassmarketinginc.com to                        11:00:10

7   golf4me36@aol.com.  Do you see that?                     11:00:24

8        A    I see what you have produced on the            11:00:24

9   screen, yes.                                             11:00:26

10       Q    Is that the e-mail you were referring to       11:00:27

11  when you discussed an e-mail with Mr. Jordan from        11:00:29

12  May 20, 2007?                                            11:00:32

13       A    I don't know.                                  11:00:34

14       Q    Well, what would help refresh your             11:00:38

15  recollection about the e-mail that you were              11:00:42

16  discussing with Mr. Jordan?                              11:00:43

17            MR. REDD:  Objection to the form.              11:00:44

18       A    I don't know.                                  11:00:48

19            MR. JORDAN:  Stephen?                          11:00:49

20            MR. STERN:  Yes?                               11:00:49

21            MR. JORDAN:  Would it be helpful if -- if      11:00:55

22  I asked a couple questions to try to identify            11:00:56

1    the -- the document.                                        11:00:59

2            MR. STERN:  Nope.                                   11:00:59

3            MR. JORDAN:  Okay.                                  11:01:00

4            MR. STERN:  If he wants to disclaim                 11:01:02

5    knowledge, that's his business.                            11:01:07

6            MR. JORDAN:  Okay.                                  11:01:09

7        Q    Mr. White, did you provide your attorney          11:01:12

8    with a copy of an e-mail that you sent to                  11:01:19

9    Mr. Jordan on or about September 28, 2021?                 11:01:23

10       A    I believe that I did, yes.                        11:01:27

11       Q    Does this look like the e-mail that you           11:01:33

12   sent to your attorney dated September 28, 2021?            11:01:36

13       A    I don't know.                                     11:01:43

14       Q    Did you discuss with Daniel White the            11:01:47

15   e-mail on this thread that's dated May 22, 2007,           11:01:59

16   at 2:08 a.m.?                                              11:02:04

17           MR. REDD:  Objection to form and lack of           11:02:07

18   a time frame.                                              11:02:09

19       A    Please repeat your question, Mr. Stern.           11:02:10

20           MR. STERN:  Can you scroll up to the May           11:02:13

21   22, 2007, at 2:08 a.m. e-mail.                             11:02:16

22       Q    Did you discuss the e-mail that is from           11:02:19

| | |
|---|---|
| 1 | Daniel White to Michael White dated May 22, 2007, | 11:02:22 |
| 2 | at 2:08 a.m.? | 11:02:27 |
| 3 | MR. REDD:  Objection to form. | 11:02:28 |
| 4 | MR. JORDAN:  Objection; vague as to with | 11:02:29 |
| 5 | whom he discussed it, if anyone. | 11:02:31 |
| 6 | A    I discussed an e-mail with Daniel White | 11:02:36 |
| 7 | from 2007.  I don't know if I discussed what you | 11:02:41 |
| 8 | have up on the screen. | 11:02:45 |
| 9 | Q    What e-mail from 2007 did you discuss | 11:02:46 |
| 10 | with Daniel? | 11:02:49 |
| 11 | A    An e-mail that he had sent me in 2007. | 11:02:50 |
| 12 | Q    Was it an e-mail relating to Mr. Boshea | 11:02:58 |
| 13 | that you discussed with Daniel White? | 11:03:09 |
| 14 | MR. REDD:  Same objection as to the time | 11:03:09 |
| 15 | frame.  We're talking about the discussion versus | 11:03:14 |
| 16 | the e-mail. | 11:03:16 |
| 17 | A    Please repeat your question, Mr. Stern. | 11:03:17 |
| 18 | Q    The e-mail that you discussed with Daniel | 11:03:20 |
| 19 | White from 2007, did it concern David Boshea? | 11:03:25 |
| 20 | MR. REDD:  Same objection about the time | 11:03:26 |
| 21 | frames. | 11:03:31 |
| 22 | A    It concerned David Boshea's severance | 11:03:32 |

1    agreement.                                                   11:03:36

2        Q    What did you discuss with Daniel White              11:03:36

3    concerning David Boshea's severance agreement?               11:03:44

4        A    I discussed that he had sent me an e-mail           11:03:45

5    in 2007 and that he had recently found it and               11:03:49

6    asked if I had a copy of it.                                 11:03:56

7        Q    What did you tell him when you asked --             11:03:58

8    when he asked you if you had a copy of it?                   11:04:02

9            MR. REDD:  Same objection about the time            11:04:03

10   frame of the discussion.                                     11:04:08

11       A    I told him I would look for it.                     11:04:08

12       Q    Why were you discussing David Boshea's             11:04:11

13   severance agreement with Daniel?                             11:04:16

14           MR. REDD:  Objection; same objection.               11:04:17

15       A    Because Daniel called me and began a               11:04:25

16   discussion about it.                                         11:04:27

17       Q    What did he call you and discuss -- and            11:04:28

18   began a discussion about?  Please describe that             11:04:31

19   conversation.                                                11:04:33

20           MR. REDD:  Same objection.                          11:04:34

21       A    The discussion circled around the fact he          11:04:35

22   had found an e-mail from 2007, that he had sent me          11:04:44

```
1    that e-mail and wanted to know if I had it.        11:04:49

2        Q    Did he discuss anything else about that    11:04:54

3    e-mail or that severance agreement?                11:04:59

4        A    Not that I remember.                       11:05:00

5        Q    How many times did you discuss that        11:05:03

6    e-mail or severance agreement with Daniel?         11:05:06

7        A    When?                                      11:05:08

8            MR. REDD:  Objection to form.               11:05:08

9        Q    I said how many times.                     11:05:11

10           MR. REDD:  Go ahead.                        11:05:14

11       A    I don't know how many times.               11:05:15

12       Q    The discussion you're referring to now,    11:05:17

13   was that sometime in September of this year?       11:05:23

14       A    I do not know for sure.                    11:05:25

15       Q    Why did you send a copy of that -- did     11:05:32

16   you end up sending a copy of that e-mail and       11:05:42

17   severance agreement to -- to Mr. Jordan?           11:05:45

18       A    I did.                                     11:05:48

19       Q    Why did you do that?                       11:05:52

20       A    I believe because he asked me to.          11:05:54

21       Q    Is it your practice to send documents to   11:06:02

22   the attorneys of litigants who are suing your      11:06:07
```

| | | |
|---|---|---|
| 1 | company? | 11:06:10 |
| 2 | MR. REDD:  Objection; form, | 11:06:10 |
| 3 | argumentative. | 11:06:15 |
| 4 | A    Can you repeat the question? | 11:06:15 |
| 5 | MR. STERN:  Ms. Court Reporter, can you | 11:06:18 |
| 6 | repeat that for me, please. | 11:06:19 |
| 7 | (The pending question was read.) | 11:06:28 |
| 8 | A    I don't think I've ever done it before. | 11:06:28 |
| 9 | I don't believe. | 11:06:36 |
| 10 | Q    Do you think it's a good idea to send | 11:06:36 |
| 11 | copies of documents to the attorneys of litigants | 11:06:40 |
| 12 | who are suing your company? | 11:06:42 |
| 13 | MR. REDD:  Objection; argumentative. | 11:06:43 |
| 14 | A    I don't know. | 11:06:48 |
| 15 | Q    Do you think it helps or hurts your | 11:06:49 |
| 16 | business? | 11:06:55 |
| 17 | MR. REDD:  Objection. | 11:06:55 |
| 18 | MR. JORDAN:  Objection; vague. | 11:06:55 |
| 19 | A    Don't know. | 11:06:59 |
| 20 | Q    Is it your desire to help David Boshea in | 11:07:03 |
| 21 | his litigation against Compass Marketing? | 11:07:28 |
| 22 | MR. REDD:  Objection; asked and answered | 11:07:29 |

| | | |
|---|---|---|
| 1 | several times. | 11:07:35 |
| 2 | Go ahead. | 11:07:40 |
| 3 | A     I believe David Boshea should be treated | 11:07:41 |
| 4 | fairly as an employee of Compass Marketing. | 11:07:44 |
| 5 | Q     That's not my question.  Is it your | 11:07:45 |
| 6 | desire to help Mr. Boshea in his litigation | 11:07:47 |
| 7 | against Compass Marketing? | 11:07:50 |
| 8 | MR. REDD:  Objection; same objection. | 11:07:50 |
| 9 | A     My answer is I believe that David Boshea | 11:07:56 |
| 10 | should be treated fairly as an employee. | 11:07:59 |
| 11 | MR. STERN:  Okay.  Can we scroll -- new | 11:08:00 |
| 12 | exhibit.  It's MRW0000060. | 11:08:06 |
| 13 | THE COURT REPORTER:  Mr. Stern, this is | 11:08:06 |
| 14 | Cindy.  Are we going to mark those last e-mails as | 11:08:17 |
| 15 | Exhibit 3? | 11:08:19 |
| 16 | MR. STERN:  Yeah, that last e-mail thread | 11:08:19 |
| 17 | is going to be Exhibit 3.  I'm going to ask you to | 11:08:24 |
| 18 | keep -- | 11:08:24 |
| 19 | THE COURT REPORTER:  And this new one | 11:08:24 |
| 20 | will be Exhibit 4? | 11:08:26 |
| 21 | MR. STERN:  Yes.  I'm going to ask you to | 11:08:26 |
| 22 | keep track of the exhibit numbers so you can label | 11:08:46 |

| | | |
|---|---|---|
| 1 | them correctly when you circulate the transcript | 11:08:46 |
| 2 | and the exhibits later. | 11:08:46 |
| 3 | THE COURT REPORTER:  Okay. | 11:08:47 |
| 4 | MR. REDD:  I think we've got a hand | 11:08:47 |
| 5 | raised on Heather Yeung's screen. | 11:08:54 |
| 6 | MR. STERN:  Okay. | 11:08:56 |
| 7 | MR. JORDAN:  I think that's Heather. | 11:08:56 |
| 8 | (White Deposition Exhibit 4 marked for | 11:08:56 |
| 9 | identification and is attached to the transcript.) | 11:09:35 |
| 10 | Q    I'm showing you what's been marked as | 11:09:35 |
| 11 | Exhibit 4.  It is Bates-labeled MRW0000060.  It is | 11:09:40 |
| 12 | an e-mail from michaelrwhite@comcast.net to | 11:09:48 |
| 13 | gjordan@jz-llc.com dated August 29, 2021, at 6:52 | 11:09:54 |
| 14 | p.m.; Subject:  White Eagle; Attachments:  Boshea | 11:10:01 |
| 15 | White Eagle use e-mail.pdf and Boshea White Eagle | 11:10:05 |
| 16 | increase Email.pdf. | 11:10:12 |
| 17 | Do you see that, Mr. White? | 11:10:15 |
| 18 | A    I see what you have up on the screen, | 11:10:15 |
| 19 | yes, sir. | 11:10:18 |
| 20 | Q    Did you send this e-mail to Mr. Jordan? | 11:10:18 |
| 21 | A    I don't know. | 11:10:20 |
| 22 | Q    It says:  "Mr. Jorden, hope this is | 11:10:20 |

1    helpful, Mike."  Is that your e-mail address?  Did          11:10:24

2    you send that to him?                                       11:10:28

3         MR. REDD:  Objection; compound.                        11:10:29

4    A     Please ask your questions one at a time,              11:10:32

5    Mr. Stern.                                                  11:10:36

6    Q     Did you send that e-mail to Mr. Jordan?               11:10:36

7    A     I don't know.                                         11:10:38

8    Q     Why don't you know?  What would you need              11:10:39

9    to look at to know whether or not you sent this             11:10:43

10   e-mail to him?                                              11:10:45

11        MR. REDD:  Objection to form.                          11:10:46

12   A     I don't know.                                         11:10:48

13   Q     Do you recall saying to Mr. Jordan or                 11:10:49

14   writing to Mr. Jordan that you hope -- that you             11:10:55

15   hope this information is helpful?                           11:10:57

16   A     I remember speaking to Mr. Jordan about              11:10:58

17   information that I hoped was helpful to him.                11:11:04

18   Q     Why did you want to provide information               11:11:09

19   that was helpful to Mr. Jordan?                             11:11:11

20        MR. REDD:  Objection to form.                          11:11:14

21   A     Probably because he asked me to.                      11:11:16

22   Q     Do you always provide information to                  11:11:22

| | | |
|---|---|---|
| 1 | people that ask you to provide -- to share it with | 11:11:27 |
| 2 | them? | 11:11:31 |
| 3 | MR. JORDAN:  Objection; asked and | 11:11:31 |
| 4 | answered. | 11:11:33 |
| 5 | A    Do you have a time frame on that?  I'm 62 | 11:11:33 |
| 6 | years old. | 11:11:39 |
| 7 | Q    Just generally speaking, is it your | 11:11:39 |
| 8 | practice to provide information to anyone who asks | 11:11:41 |
| 9 | you to provide it? | 11:11:43 |
| 10 | MR. REDD:  Objection; form. | 11:11:44 |
| 11 | A    It is my practice to provide information | 11:11:46 |
| 12 | to people who ask for information and I believe it | 11:11:53 |
| 13 | to be appropriate. | 11:11:57 |
| 14 | Q    Do you think it's appropriate to be | 11:11:57 |
| 15 | providing information to Mr. Jordan in connection | 11:12:01 |
| 16 | with the lawsuit that David Boshea is filing | 11:12:03 |
| 17 | against -- has filed against Compass Marketing? | 11:12:06 |
| 18 | MR. REDD:  Objection to form. | 11:12:06 |
| 19 | A    Don't know. | 11:12:09 |
| 20 | Q    Well, was it your desire to help | 11:12:11 |
| 21 | Mr. Jordan in connection with the lawsuit that | 11:12:15 |
| 22 | David Boshea has filed against Compass Marketing? | 11:12:20 |

| | | |
|---|---|---|
| 1 | MR. REDD:  Objection; asked and answered. | 11:12:20 |
| 2 | It's the same question.  We're in double digits of | 11:12:25 |
| 3 | asking the question now.  Please move on and stop | 11:12:28 |
| 4 | continuing to ask the same question. | 11:12:32 |
| 5 | Q    Mr. White? | 11:12:33 |
| 6 | A    I don't know. | 11:12:41 |
| 7 | Q    Why do you want to provide helpful | 11:12:42 |
| 8 | information to Mr. Boshea or his attorney in | 11:12:46 |
| 9 | connection with this litigation? | 11:12:48 |
| 10 | MR. REDD:  Objection; mischaracterizes | 11:12:49 |
| 11 | prior testimony.  Objection to form. | 11:12:53 |
| 12 | A    Don't know. | 11:12:56 |
| 13 | MR. STERN:  We are going to go to a new | 11:12:59 |
| 14 | exhibit. | 11:13:07 |
| 15 | (White Deposition Exhibit 5 marked for | 11:13:07 |
| 16 | identification and is attached to the transcript.) | 11:13:07 |
| 17 | MR. STERN:  It is MRW0000061.  And hold | 11:13:07 |
| 18 | on a second.  I think there's -- it appears that | 11:13:22 |
| 19 | the documents that were attached are -- go through | 11:13:28 |
| 20 | Bates-labeled '66. | 11:13:35 |
| 21 | Q    Do you see this e-mail from Mr. Boshea to | 11:13:36 |
| 22 | michaelrwhite@compass -- @comcast.net dated | 11:14:10 |

| | | |
|---|---|---|
| 1 | December 20 (sic), 2020, at 11:41 p.m.?  It says: | 11:14:10 |
| 2 | "Mike, please see attached.  I also have hard copy | 11:14:15 |
| 3 | of the non compete/non disclosure.  Thx buddy." | 11:14:17 |
| 4 | Do you remember seeing this e-mail? | 11:14:21 |
| 5 | A    What is on the screen I think is dated | 11:14:22 |
| 6 | December 28; but I do not remember this particular | 11:14:25 |
| 7 | document. | 11:14:30 |
| 8 | Q    Do you know why Mr. Boshea sent this to | 11:14:30 |
| 9 | you? | 11:14:34 |
| 10 | A    I do not know. | 11:14:34 |
| 11 | Q    Do you remember what was attached to this | 11:14:36 |
| 12 | e-mail? | 11:14:38 |
| 13 | A    I -- I do not remember that I received | 11:14:38 |
| 14 | this e-mail.  And if there was something attached | 11:14:47 |
| 15 | to it, I don't remember there being anything | 11:14:50 |
| 16 | attached to it. | 11:14:53 |
| 17 | Q    Do you know why this document was | 11:14:53 |
| 18 | produced by your counsel in this litigation? | 11:15:02 |
| 19 | A    I don't know why my counsel produced | 11:15:04 |
| 20 | something, no. | 11:15:07 |
| 21 | Q    Do you recall providing this document to | 11:15:07 |
| 22 | your counsel to be produced in this litigation? | 11:15:10 |

1      A     The document you have on the screen, I do          11:15:13

2   not recall producing that.                                  11:15:16

3      Q     We're going to scroll through each of the          11:15:18

4   attachments and see if this refreshes your                  11:15:33

5   recollection.  The first one on '62, do you recall          11:15:34

6   seeing this as an attachment to an e-mail from Mr.          11:15:39

7   Boshea?                                                      11:15:42

8      A     I -- I don't remember this, no.                    11:15:42

9      Q     What about on '63, those handwritten               11:15:49

10  notes; have you seen this -- have you seen these            11:16:04

11  before?                                                      11:16:06

12     A     I may have seen something similar to this          11:16:06

13  before.                                                      11:16:15

14     Q     When did you see it?                               11:16:15

15     A     I don't remember.                                  11:16:16

16     Q     Did you have a discussion with Mr. Boshea          11:16:17

17  about some event that occurred in or about                  11:16:20

18  September 16, 2015, regarding salary reductions?            11:16:23

19     A     Try that question again, please, Mr.               11:16:28

20  Stern.                                                       11:16:36

21     Q     Do you recall having a discussion with             11:16:36

22  Mr. Boshea about an event that occurred on or               11:16:40

1   about September 16, 2015, regarding salary                11:16:41

2   reductions?                                               11:16:45

3        A    I do not.                                       11:16:45

4        Q    On Page '64 do you recall receiving this        11:16:47

5   e-mail from Mr. Boshea?                                   11:17:08

6        A    I -- I don't recall receiving what you          11:17:09

7   have up on the screen, no, sir.                          11:17:15

8        Q    Do you know why your -- it was produced         11:17:16

9   by your attorney in this case?                            11:17:19

10        A    I don't know why my attorney produced it.      11:17:20

11        Q    Do you recall providing this to your           11:17:27

12   attorney to produce in this litigation?                  11:17:29

13        A    I don't recall providing what you have up      11:17:31

14   on the screen to my attorney.                           11:17:36

15        Q    Let's go to Page '65 and '66.  Do you          11:17:38

16   recall providing this to your attorney to provide        11:17:46

17   in this litigation?                                      11:17:48

18        A    What you have produced on the screen, I        11:17:48

19   do not recall producing that to my attorney.            11:17:54

20        Q    When you qualify your answer by saying         11:17:57

21   what you produced on the screen, are you trying to       11:18:00

22   say the electronic image or are you talking about        11:18:02

1   a copy of the document or is there no distinction?          11:18:04

2       A    I believe I said it -- I believe I said          11:18:08

3   exactly what I meant.          11:18:10

4       Q    What did you mean?  Are you saying the          11:18:11

5   actual electronic image that we're looking at or a          11:18:14

6   copy of the document?          11:18:18

7       A    I'm referring to the image that's on the          11:18:19

8   screen in front of me.          11:18:28

9       Q    So each of the documents that we've gone          11:18:29

10  through so far today you said you had no          11:18:32

11  recollection of producing the document or the          11:18:35

12  image that is on the screen, that answer would          11:18:37

13  change if we say you recall producing printout          11:18:40

14  copies of these documents to your attorney; is          11:18:44

15  that correct?          11:18:46

16      A    You just asked two questions, Mr. Stern.          11:18:46

17  Would you mind asking them one at a time?          11:18:52

18      Q    Do you recall producing printout copies          11:18:54

19  of the documents we've gone through so far in this          11:19:00

20  litigation -- in this deposition today?          11:19:05

21          MR. REDD:  Objection to form.          11:19:06

22      Q    Let me reask it.  Do you recall providing          11:19:07

1   printout copies of the e-mails and text messages          11:19:10

2   we've gone through so far in this deposition today         11:19:13

3   and providing those to your attorney to produce in        11:19:15

4   this litigation?                                          11:19:18

5        A    I remember producing documents to my            11:19:18

6   attorney.  I do not remember that the items you           11:19:24

7   were putting up on the screen are those documents         11:19:28

8   or not.                                                   11:19:31

9            MR. STERN:  I would like to go to Page --        11:19:55

10  or Bates label MRW0000069.                                11:19:56

11           (White Deposition Exhibit 6 marked for           11:19:56

12  identification and is attached to the transcript.)        11:19:58

13           MR. REDD:  Is this Exhibit 6 now?                11:19:58

14           MR. STERN:  Whatever number we're up to.         11:19:58

15  I'll leave that to the court -- is it 6, Madam            11:19:58

16  Court Reporter?                                           11:20:23

17           THE COURT REPORTER:  It is.                      11:20:23

18           MR. STERN:  Thank you.                           11:20:28

19           MR. REDD:  This is a new thing.  Okay.           11:20:28

20  Thanks.                                                   11:20:30

21           MR. STERN:  Can you scroll down to the           11:20:34

22  bottom, please.  Please scroll down a little bit.         11:20:35

| | | |
|---|---|---|
| 1 | Can you scroll down a little bit? | 11:21:05 |
| 2 | MS. YEUNG:  Can you hear me?  That's the | 11:21:06 |
| 3 | entire document.  If you want more than -- | 11:21:10 |
| 4 | MR. STERN:  That's the -- okay. | 11:21:10 |
| 5 | MS. YEUNG:  Do you want more than just | 11:21:10 |
| 6 | Page '69? | 11:21:10 |
| 7 | MR. STERN:  Oh, that's right, it's | 11:21:14 |
| 8 | printed a little bit awkwardly. | 11:21:14 |
| 9 | Q    All right.  Do you recall sending an | 11:21:17 |
| 10 | e-mail to Mr. Jordan with a copy to Daniel White | 11:21:19 |
| 11 | on September 19, 2021? | 11:21:22 |
| 12 | A    I remember sending a document to | 11:21:25 |
| 13 | Mr. Stern -- or e-mail to Mr. Jordan.  I do not | 11:21:32 |
| 14 | remember the date. | 11:21:37 |
| 15 | Q    Do you remember what was attached to this | 11:21:37 |
| 16 | document or this e-mail? | 11:21:41 |
| 17 | A    Which e-mail? | 11:21:41 |
| 18 | Q    The e-mail on September 19, 2021.  There | 11:21:44 |
| 19 | is no subject line.  There is no text to the | 11:21:48 |
| 20 | e-mail.  It's just an e-mail -- it just says | 11:21:50 |
| 21 | e-mail from you to Greg Jordan, Cc: Daniel White. | 11:21:52 |
| 22 | Do you remember what was attached to that? | 11:21:58 |

1      A    I can -- I know what was attached to an          11:21:59

2   e-mail I sent to Mr. Jordan at some point.               11:22:09

3      Q    So you --                                        11:22:09

4      A    But I don't know the date, the date of           11:22:17

5   the -- of the e-mail.                                    11:22:19

6      Q    So you only recall sending one e-mail to         11:22:19

7   Mr. Jordan with an attachment; is that correct?          11:22:24

8      A    No, that's not correct.                          11:22:26

9      Q    So how many e-mails have you sent to             11:22:28

10  Mr. Jordan with attachments to them?                     11:22:31

11     A    I don't know.                                    11:22:33

12     Q    What were some -- can you identify as            11:22:34

13  many attachments as you can recall that you sent         11:22:38

14  to Mr. Jordan?                                           11:22:41

15         MR. REDD:  Objection to form.                     11:22:41

16     A    I sent Mr. Jordan an attachment which I          11:22:45

17  believed was Mr. Boshea's severance agreement, I         11:22:52

18  sent Mr. Jordan an attachment that contains             11:22:59

19  signature pages with John White's signature on          11:23:04

20  them, and I sent Mr. Jordan an e-mail with              11:23:09

21  complete -- complete documents with John White's        11:23:23

22  signature on them.                                       11:23:31

1      Q     The agreement that you said you thought      11:23:34

2   was Mr. Boshea's severance agreement, why did you     11:23:37

3   believe it was the severance agreement if you had     11:23:43

4   no knowledge that it existed in 2007?                 11:23:46

5           MR. REDD:  Objection to form.                11:23:48

6      A     Please ask your question again.              11:23:51

7           MR. STERN:  Can you please repeat the        11:23:56

8   question, Madam Court Reporter.                       11:24:09

9           (The pending question was read.)             11:24:09

10     A     Because I sent it in 2021.                   11:24:09

11     Q     The document that you sent in 2021, was      11:24:19

12  it an executed copy of the agreement?                 11:24:24

13     A     I don't believe so.                          11:24:27

14     Q     Have you at any point in time confirmed      11:24:33

15  that Mr. Boshea does have a severance agreement        11:24:39

16  with Compass Marketing?                               11:24:44

17     A     I have never confirmed that, no.             11:24:44

18     Q     So you don't know whether he has --          11:24:50

19  whether he has actually entered into a severance      11:24:53

20  agreement or not; is that fair to say?                11:24:56

21     A     I do --                                      11:24:58

22          MR. REDD:  Objection to form.                11:24:58

1         Go ahead.                                      11:25:03

2    A    I do not know if he has entered into a        11:25:03

3  severance agreement.                                 11:25:07

4    Q    Do you know whether he has entered into       11:25:08

5  any agreement that includes any provision of         11:25:12

6  severance to him?                                    11:25:15

7    A    I do not know.                                11:25:20

8         MR. STERN:  I would like to now turn to a     11:25:20

9  new exhibit Bates-labeled DJW000021.                 11:25:37

10        (White Deposition Exhibit 7 marked for        11:25:37

11  identification and is attached to the transcript.)   11:25:38

12        MR. STERN:  That extends to '20 -- '22.        11:25:38

13        Scroll down a little bit.                      11:26:13

14   Q    We'll just -- actually we'll start with       11:26:26

15  the -- the original e-mail in this thread is from    11:26:29

16  you to Greg Jordan on September 16, 2021, at 11:24   11:26:30

17  p.m.  Do you see that?                               11:26:37

18   A    I see that it says that, yes.                 11:26:38

19   Q    Do you recall sending this e-mail to         11:26:47

20  Mr. Jordan?                                          11:26:51

21   A    I do not.                                     11:26:51

22   Q    Do you deny sending this e-mail to           11:26:55

1    Mr. Jordan?                                          11:26:58

2        A    I do not.                                   11:26:58

3        Q    Scrolling up a little bit, do you see       11:26:59

4    Mr. Jordan responded, saying:  "Do you have any      11:27:06

5    severance agreements to which Compass is a party?"   11:27:09

6    It's dated September 17, 2021, at 12:32 p.m.  It's   11:27:12

7    a copy to -- with a Cc: Copy to Daniel White.  Do    11:27:18

8    you see that?                                        11:27:21

9        A    I see that it says that, yes.               11:27:21

10       Q    Did you end up sending any severance        11:27:23

11   agreements to Mr. Jordan?                            11:27:27

12       A    None that I'm aware of, no.                 11:27:28

13       Q    Do you know why he asked you to send any    11:27:35

14   severance agreements?                                11:27:38

15       A    I do not know why he asked me to            11:27:39

16   send if -- if in fact he did.                        11:27:42

17       Q    Did you have access to any Compass          11:27:44

18   Marketing severance agreement in September of        11:27:51

19   2021?                                                11:27:52

20       A    Not that I know of.                         11:27:52

21       Q    And the top e-mail from Daniel White to     11:28:03

22   Greg Jordan and you dated September 17, 2021, at     11:28:09

1   2:27 p.m., do you see that?                           11:28:14

2       A    I see that it says that, yes.  It's sent     11:28:17

3   to my e-mail address.                                 11:28:17

4       Q    And it purports to attach a standard         11:28:17

5   agreement?                                            11:28:21

6            THE COURT REPORTER:  I'm sorry; I didn't      11:28:21

7   hear the end of your answer, sir, or the question.     11:28:21

8       A    I see that --                                11:28:21

9            THE COURT REPORTER:  I heard you say "I        11:28:21

10  see that it says that, yes," but I thought you          11:28:21

11  said something after that.                              11:28:21

12           THE WITNESS:  I believe that I said I see      11:28:21

13  that it was sent to my e-mail address.                  11:28:44

14           THE COURT REPORTER:  Thank you.                11:28:45

15      Q    Do you deny receiving this e-mail?            11:28:45

16      A    I do not.                                     11:28:47

17      Q    This e-mail purports to attach a standard     11:28:48

18  agreement and side/secret agreement to sell            11:28:53

19  Mitchell 2,193 shares of Tagnetics stock.  Do you      11:28:57

20  know how Daniel White was able to access those         11:29:03

21  agreements in September of 2021?                       11:29:06

22      A    I do not.                                     11:29:07

1     Q    Is there a reason why you did not produce          11:29:09

2   a copy of this e-mail in your document production?         11:29:15

3     A    I -- I produced everything I had that I           11:29:19

4   thought was related to -- to this suit.                   11:29:26

5     Q    So have you had communications with Greg          11:29:31

6   Jordan that were not related to this lawsuit?             11:29:35

7     A    I have.                                            11:29:37

8     Q    When did those discussions occur?                 11:29:42

9     A    I don't know.                                      11:29:47

10    Q    Were they after the filing of the                 11:29:50

11  lawsuit?                                                  11:29:54

12    A    I believe so, yes.                                 11:29:54

13    Q    When did you first get to know who                11:29:58

14  Mr. Jordan is?                                            11:30:05

15    A    I -- I believe when he called me is the           11:30:05

16  first time I talked with him.                             11:30:13

17    Q    What are the discussions you've had with          11:30:16

18  Mr. Jordan that are not related to this lawsuit?          11:30:21

19    A    We discussed my position on the -- the           11:30:23

20  Orphans Court, discussed my granddaughter, I think        11:30:34

21  we discussed my years of being a State trooper.           11:30:47

22  That's all I can remember.                                11:30:55

| | | |
|---|---|---|
| 1 | MR. STERN:  I'd like to go to a new | 11:30:56 |
| 2 | Exhibit, DJW000030 through '39. | 11:31:04 |
| 3 | (White Deposition Exhibit 8 marked for | 11:31:04 |
| 4 | identification and is attached to the transcript.) | 11:31:07 |
| 5 | Q    It is an e-mail dated September 17, 2021, | 11:31:07 |
| 6 | from michaelrwhite@comcast.net to Gregory Jordan | 11:31:28 |
| 7 | with a Cc: Copy to Daniel White.  Do you see that? | 11:31:29 |
| 8 | A    I see that that's what it says, yes. | 11:31:33 |
| 9 | Q    And the e-mail reads:  "Mr. Jorden, | 11:31:35 |
| 10 | Attached are some samples of John White's | 11:31:38 |
| 11 | signature.  There are a couple more contained in | 11:31:40 |
| 12 | the exhibits of my filed response yesterday. | 11:31:44 |
| 13 | Mike." | 11:31:46 |
| 14 | Did you send that e-mail to Mr. Jordan? | 11:31:46 |
| 15 | A    I don't know. | 11:31:49 |
| 16 | Q    You earlier testified that you sent | 11:31:50 |
| 17 | Mr. Jordan some signature samples of John White. | 11:31:55 |
| 18 | Is this the e-mail in which you sent those | 11:31:58 |
| 19 | signature samples? | 11:32:00 |
| 20 | A    I don't know. | 11:32:01 |
| 21 | Q    Are you denying that you sent this e-mail | 11:32:01 |
| 22 | to Mr. Jordan? | 11:32:08 |

1        A    I am not.                                    11:32:08

2             MR. STERN:  All right.  Let's scroll to       11:32:13

3    the first page after, '31, which is part of this.     11:32:14

4        Q    Is this one of the signature samples that    11:32:17

5    you sent to Mr. Jordan from John White?               11:32:21

6        A    I don't know.                                11:32:24

7        Q    Are you denying sending this signature       11:32:24

8    sample to Mr. Jordan?                                 11:32:33

9        A    I am not.                                    11:32:34

10       Q    How did you access this document?            11:32:36

11       A    I don't know that I accessed it.             11:32:40

12       Q    How did you have a copy of it to send to     11:32:49

13   Mr. Jordan?                                           11:32:52

14       A    I -- I don't know.                           11:32:53

15       Q    Are you denying sending this attachment      11:32:53

16   to Mr. Jordan?                                        11:33:02

17       A    I am not.                                    11:33:03

18       Q    Do you have access to canceled or void --    11:33:04

19   I'm sorry; do you have -- it says "VOID" on this.      11:33:18

20   Do you have access to Tagnetics' checks from 2014?     11:33:21

21       A    I don't know.                                11:33:28

22       Q    I want to be clear.  You don't know          11:33:36

| | | |
|---|---|---|
| 1 | whether you can access Tagnetics' checks from | 11:33:42 |
| 2 | 2014? | 11:33:48 |
| 3 | A   That's not the question you asked me. | 11:33:48 |
| 4 | Q   All right.  Let me ask it then. | 11:33:49 |
| 5 | A   To answer your question, no, I cannot | 11:33:52 |
| 6 | access Tagnetics' checks from 2014. | 11:33:55 |
| 7 | Q   So then you deny sending this attachment | 11:34:00 |
| 8 | to Mr. Jordan; is that correct? | 11:34:05 |
| 9 | MR. REDD:  Objection to form; | 11:34:07 |
| 10 | mischaracterizes prior testimony. | 11:34:11 |
| 11 | A   No, I do not deny that. | 11:34:12 |
| 12 | Q   Then how would you go about providing a | 11:34:16 |
| 13 | copy of a Tagnetics' check from 2014 to | 11:34:19 |
| 14 | Mr. Jordan? | 11:34:24 |
| 15 | A   I don't know that I did. | 11:34:24 |
| 16 | Q   What were the samples of John White's | 11:34:29 |
| 17 | signature that you sent to Mr. Jordan? | 11:34:33 |
| 18 | A   I believe they were signature pages on | 11:34:37 |
| 19 | noncompete agreements with employees of Compass | 11:34:48 |
| 20 | Marketing. | 11:34:53 |
| 21 | Q   So these documents that Daniel White | 11:34:53 |
| 22 | produced, which you did not produce, were not | 11:35:05 |

1   actually attached to this e-mail?                    11:35:09

2          MR. REDD:  Objection to form.                 11:35:11

3      A    I don't know.                                 11:35:14

4      Q    Did you send Mr. Jordan any Tagnetics'        11:35:15

5   checks as sample signatures for John White?          11:35:30

6      A    I don't know.                                 11:35:31

7      Q    How would you find out what you sent to       11:35:31

8   Mr. Jordan as signature samples for John White?      11:35:37

9      A    I don't know.                                 11:35:41

10     Q    Would they still be in your e-mail            11:35:41

11  account?                                             11:35:51

12     A    I don't know that they were ever in my       11:35:51

13  e-mail account.                                      11:35:58

14     Q    So how did you transmit signature            11:35:58

15  samples --                                           11:36:02

16     A    I don't know.                                 11:36:02

17     Q    -- to Mr. Jordan of John White?              11:36:03

18     A    Try your question again, please.             11:36:05

19     Q    How did you send signature samples of        11:36:12

20  John White to Mr. Jordan?                            11:36:16

21     A    I e-mailed them to him.                       11:36:17

22     Q    So would they be in your e-mail account      11:36:20

| | | |
|---|---|---|
| 1 | to determine what you actually sent copies of to | 11:36:25 |
| 2 | Mr. Jordan to reflect John White's signature | 11:36:28 |
| 3 | samples? | 11:36:32 |
| 4 | A    I don't know. | 11:36:32 |
| 5 | Q    Do you -- did you delete all the e-mails | 11:36:33 |
| 6 | you sent to Mr. Jordan? | 11:36:38 |
| 7 | A    I did not. | 11:36:39 |
| 8 | Q    Did you delete any e-mails that you sent | 11:36:41 |
| 9 | to Mr. Jordan? | 11:36:44 |
| 10 | A    Not that I'm aware of. | 11:36:47 |
| 11 | Q    So you would be able to confirm what you | 11:36:50 |
| 12 | sent to Mr. Jordan by looking at your e-mail | 11:36:52 |
| 13 | account? | 11:36:56 |
| 14 | A    I don't know. | 11:36:56 |
| 15 | Q    Does anyone else operate or access your | 11:36:57 |
| 16 | e-mail account other than you? | 11:37:03 |
| 17 | A    Not that I'm aware of. | 11:37:04 |
| 18 | Q    Is it your contention -- | 11:37:08 |
| 19 | MR. STERN:  Scroll back up, please, to | 11:37:13 |
| 20 | the e-mail. | 11:37:15 |
| 21 | Q    -- that someone sent this e-mail other | 11:37:24 |
| 22 | than you? | 11:37:25 |

| | | |
|---|---|---|
| 1 | MR. REDD:  Objection to asking | 11:37:26 |
| 2 | contentions of a nonparty. | 11:37:33 |
| 3 | Go ahead. | 11:37:35 |
| 4 | A    That is not my contention. | 11:37:36 |
| 5 | Q    So who sent this e-mail from | 11:37:38 |
| 6 | michaelrwhite@comcast.net to Gregory Jordan with a | 11:37:47 |
| 7 | Cc: Copy to Daniel White on September 17, 2021, at | 11:37:48 |
| 8 | 12:24 a.m.? | 11:37:52 |
| 9 | A    I don't know that it was sent; and if it | 11:37:54 |
| 10 | was, I don't remember sending it. | 11:37:57 |
| 11 | Q    I'd like to skip to a new exhibit, | 11:38:00 |
| 12 | DJW00 -- | 11:38:34 |
| 13 | MR. REDD:  I'd like to take a break, | 11:38:34 |
| 14 | Steve.  Sorry to interrupt.  I'd like a break | 11:38:41 |
| 15 | soon. | 11:38:41 |
| 16 | MR. STERN:  Well, since we've got to | 11:38:41 |
| 17 | break in 20 minutes for Greg, can we wait until | 11:38:43 |
| 18 | then or? | 11:38:47 |
| 19 | MR. REDD:  Yes.  I didn't realize that | 11:38:47 |
| 20 | was coming up.  That's fine. | 11:38:49 |
| 21 | MR. STERN:  Is that all right, Justin? | 11:38:50 |
| 22 | MR. REDD:  Yes, thank you. | 11:38:52 |

1          MR. STERN:  All right.                          11:38:52

2          MR. REDD:  I didn't realize that was            11:38:54

3    scheduled.                                            11:38:56

4          MR. STERN:  DJW000719, it's three zeros,        11:38:56

5    through '720.                                         11:39:03

6          (White Deposition Exhibit 9 marked for          11:39:03

7    identification and is attached to the transcript.)    11:39:03

8          MS. YEUNG:  '719 through '720 you said?          11:39:03

9          MR. STERN:  Yes.  Heather, it's also            11:39:36

10   Document 71-9 in one of the filings in this Court.    11:40:12

11   71-9 and 71-10 are the next two that I'd like to      11:40:27

12   pull up.                                              11:40:32

13         MS. YEUNG:  I will be ready with that.          11:40:33

14         MR. STERN:  I could always go back to           11:40:40

15   those and go to another.                              11:40:43

16         MS. YEUNG:  '719 to '720.                       11:40:46

17    Q    All right.  Mr. White, do you see this          11:40:52

18   e-mail that was produced by Daniel White in this      11:40:57

19   litigation, DJW000719 through 000720?  Do you see     11:41:00

20   that?                                                 11:41:06

21    A    I see a partial e-mail, what looks like a       11:41:06

22   partial e-mail, up on the screen.                     11:41:13

| | | |
|---|---|---|
| 1 | MR. STERN:  Heather, why don't you scroll | 11:41:14 |
| 2 | through it. | 11:41:21 |
| 3 | Q    The original e-mail in this thread is | 11:41:21 |
| 4 | from you, Michael R. White, dated May 23, 2019 -- | 11:41:29 |
| 5 | no, it's not; I'm sorry.  It's not. | 11:41:38 |
| 6 | It is from Julia Flood -- I'm sorry -- | 11:41:38 |
| 7 | dated May 23, 2019, and it is sent to Todd | 11:41:44 |
| 8 | Mitchell, John White, Chris Feiss, Kevin Nemetz, | 11:41:48 |
| 9 | Jesse Williams, Jerry Cain, and David Boshea.  Do | 11:41:53 |
| 10 | you see that? | 11:41:58 |
| 11 | A    I see it's sent to a tmitchell, jwhite, a | 11:41:58 |
| 12 | cfeiss, knemetz, jwilliams, jcain, and dboshea. | 11:42:15 |
| 13 | Q    So you were not a recipient of this | 11:42:18 |
| 14 | e-mail; correct? | 11:42:22 |
| 15 | A    I don't know. | 11:42:23 |
| 16 | Q    Do you know how you obtained a copy of | 11:42:23 |
| 17 | this e-mail? | 11:42:27 |
| 18 | A    I don't know that I did receive a copy of | 11:42:27 |
| 19 | that e-mail. | 11:42:32 |
| 20 | Q    Well, the next thing on the thread above | 11:42:32 |
| 21 | it is from Michael White, it says | 11:42:38 |
| 22 | mwhite@compassmarketinginc.com, to | 11:42:43 |

1    michaelrwhite@comcast.net dated May 23, 2019, at        11:42:47

2    1:25 p.m.  Do you see that?        11:42:51

3        A    I see that's what it says, yes.        11:42:53

4        Q    Were you employed by Compass Marketing on        11:42:55

5    May 23, 2019?        11:43:03

6            MR. REDD:  Objection; form.        11:43:04

7        A    Yes.        11:43:05

8        Q    What were you -- what was -- in what        11:43:07

9    capacity were you employed by Compass Marketing on        11:43:10

10   May 23, 2019?        11:43:13

11       A    Owner.        11:43:14

12       Q    So as an owner you're automatically        11:43:17

13   considered an employee of the company?        11:43:22

14           MR. REDD:  Objection; form.        11:43:23

15       A    Please ask your question again.        11:43:27

16       Q    As an owner you consider yourself an        11:43:30

17   employee of the company as well?        11:43:33

18       A    I consider myself to be an owner of the        11:43:34

19   company.        11:43:43

20       Q    So were you employed by Compass Marketing        11:43:43

21   on May 23, 2019?        11:43:47

22       A    Yes.        11:43:48

| | | |
|---|---|---|
| 1 | Q    Yes?  In what capacity were you employed | 11:43:48 |
| 2 | by the company? | 11:43:52 |
| 3 | A    As an owner. | 11:43:52 |
| 4 | Q    And what job duties were you performing | 11:43:57 |
| 5 | for the company on May 23, 2019? | 11:43:59 |
| 6 | A    I am an owner of Compass Marketing. | 11:44:01 |
| 7 | Those were -- that is what I was doing. | 11:44:12 |
| 8 | Q    What did you do on behalf of Compass | 11:44:13 |
| 9 | Marketing as an owner in May of 2019? | 11:44:19 |
| 10 | MR. REDD:  Objection to form. | 11:44:21 |
| 11 | A    I owned it. | 11:44:26 |
| 12 | Q    Did you do anything else on behalf of it | 11:44:27 |
| 13 | other than own it? | 11:44:34 |
| 14 | MR. REDD:  Objection to form. | 11:44:35 |
| 15 | You can answer. | 11:44:41 |
| 16 | A    I owned it, Mr. Stern. | 11:44:41 |
| 17 | Q    And is -- were you helping in any | 11:44:43 |
| 18 | capacity with sales? | 11:44:50 |
| 19 | A    I didn't hear your question.  Try it | 11:44:51 |
| 20 | again. | 11:44:55 |
| 21 | Q    Were you helping in any capacity with | 11:44:55 |
| 22 | sales? | 11:44:58 |

1      A      I owned Compass Marketing.                    11:44:58

2      Q      Were you helping in any capacity with         11:45:03

3   sales?                                                  11:45:07

4      A      I owned Compass Marketing, Mr. Stern.         11:45:07

5      Q      That's not my question.                       11:45:11

6      A      That's my answer.                             11:45:13

7      Q      Were you helping with the management of       11:45:14

8   the company in May 2019?                                11:45:18

9      A      I owned Compass Marketing.                    11:45:19

10     Q      And my question is, were you helping with     11:45:22

11  the management of the company in May of 2019?           11:45:26

12     A      My answer is I owned Compass Marketing in     11:45:28

13  May of 2019.                                            11:45:34

14     Q      Is there a reason why you forwarded this      11:45:35

15  e-mail to Daniel White on or about May 23, 2019,        11:45:45

16  at 1:33 p.m.?                                           11:45:50

17     A      I don't know that I forwarded it to           11:45:52

18  Daniel White at (indiscernible).                        11:45:55

19            (Talking over.)                               11:45:55

20     Q      Is there a reason why you forwarded it        11:45:55

21  from compassmarketinginc.com to                         11:46:00

22  michaelrwhite@comcast.net on May 23 at 1:25 p.m.        11:46:04

1  in 2019?                                          11:46:11

2       A    I don't know that I did.               11:46:11

3       Q    Are you denying that you did?          11:46:14

4       A    I am not.                              11:46:16

5       Q    Did you have access to your            11:46:17

6  compassmarketinginc.com e-mail address in May    11:46:22

7  2019?                                             11:46:23

8       A    I did.                                 11:46:23

9       Q    On what basis were you accessing your  11:46:27

10  compassmarketinginc.com e-mail address in May of 11:46:35

11  2019?                                            11:46:38

12          MR. REDD:  Objection to form.           11:46:38

13       A    I don't know that I was.               11:46:40

14       Q    Do you know how this e-mail then got   11:46:41

15  forwarded from Compass Marketing, Inc., to       11:46:49

16  comcast.net from you?                            11:46:53

17       A    I don't remember.                      11:46:54

18       Q    When was the last time you accessed your 11:46:54

19  compassmarketinginc.com e-mail address?          11:46:59

20       A    Can you define access?                 11:47:00

21       Q    When was the last time you went in and  11:47:02

22  reviewed any e-mails from the                    11:47:08

1    mwhite@compassmarketinginc.com?                                11:47:11

2        A    I reviewed e-mails from Mike --                       11:47:11

3    mwhite@compassmarketinginc.com when I produced my              11:47:31

4    discovery to my attorney.                                      11:47:32

5        Q    And when you reviewed those, were those               11:47:33

6    sitting in electronically the                                  11:47:37

7    compassmarketinginc.com account?                               11:47:39

8        A    No.                                                   11:47:39

9        Q    So you were only reviewing printouts?                 11:47:44

10       A    No.                                                   11:47:48

11            MR. REDD:  Objection to form.                         11:47:49

12       Q    So when was the last time you actually                11:47:50

13   went into the account and looked at the e-mails in             11:47:53

14   digital form in the mwhite@compassmarketinginc.com             11:47:57

15   account?                                                       11:47:58

16       A    I don't know.                                         11:47:58

17       Q    Was it before -- was it -- have you                   11:48:03

18   accessed -- let me ask you this:  Have you logged              11:48:08

19   into the mwhite@compassmarketinginc.com account                11:48:11

20   since January 1 of 2021?                                       11:48:15

21       A    Yes.                                                  11:48:17

22       Q    How often?                                            11:48:17

| | | |
|---|---|---|
| 1 | A    I don't know. | 11:48:22 |
| 2 | Q    And when you access the | 11:48:24 |
| 3 | mwhite@compassmarketinginc.com account, did you | 11:48:29 |
| 4 | access the e-mail accounts of anyone else with a | 11:48:33 |
| 5 | compassmarketinginc.com URL or e-mail address? | 11:48:39 |
| 6 | A    No. | 11:48:40 |
| 7 | Q    Why did you log into the | 11:48:43 |
| 8 | compassmarketinginc.com e-mail account? | 11:48:53 |
| 9 | A    Don't know. | 11:48:53 |
| 10 | Q    What is the login and password for the | 11:48:56 |
| 11 | compassmarketinginc.com e-mail address? | 11:49:04 |
| 12 | A    I don't know. | 11:49:04 |
| 13 | MR. REDD:  Objection. | 11:49:04 |
| 14 | Q    You just said you accessed it and logged | 11:49:05 |
| 15 | in.  So please identify what the login information | 11:49:08 |
| 16 | is for the m -- so you can access the | 11:49:11 |
| 17 | mwhite@compassmarketinginc.com e-mail address? | 11:49:20 |
| 18 | MR. REDD:  Objection.  And if you want | 11:49:20 |
| 19 | Mr. White to step out while we discuss this, you | 11:49:25 |
| 20 | may want him to, so we can ask -- | 11:49:31 |
| 21 | MR. STERN:  Yes, you can step out for | 11:49:32 |
| 22 | this one. | 11:49:34 |

| | | |
|---|---|---|
| 1 | MR. REDD:  Okay. | 11:49:34 |
| 2 | Go ahead.  Step out of the room. | 11:49:36 |
| 3 | (Mr. White left the room.) | 11:49:38 |
| 4 | VIDEO TECHNICIAN:  Is this still on the | 11:49:41 |
| 5 | record? | 11:49:45 |
| 6 | MR. STERN:  Yes. | 11:49:46 |
| 7 | VIDEO TECHNICIAN:  Okay. | 11:49:46 |
| 8 | MR. REDD:  Yes.  So in this lawsuit David | 11:49:50 |
| 9 | Boshea versus Compass Marketing -- | 11:49:52 |
| 10 | MR. JORDAN:  Hey, who's talking right | 11:49:52 |
| 11 | now? | 11:49:56 |
| 12 | MR. REDD:  This is Justin Redd. | 11:49:56 |
| 13 | MR. JORDAN:  Oh, okay. | 11:49:58 |
| 14 | MR. REDD:  -- (continuing) what is the -- | 11:49:58 |
| 15 | what is the proffer as to how Mr. White's login | 11:50:02 |
| 16 | and password (indiscernible) -- | 11:50:10 |
| 17 | MR. JORDAN:  Are we supposed to be | 11:50:10 |
| 18 | hearing you, Justin? | 11:50:14 |
| 19 | THE COURT REPORTER:  I'm sorry; I didn't | 11:50:15 |
| 20 | hear the end there, Mr. Redd. | 11:50:19 |
| 21 | MR. STERN:  Justin, can you speak a | 11:50:21 |
| 22 | little bit louder?  It's very faint in hearing | 11:50:22 |

| | | |
|---|---|---|
| 1 | you. | 11:50:25 |
| 2 | MR. REDD:  What's the proffer for why | 11:50:25 |
| 3 | this -- the question you are asking is | 11:50:28 |
| 4 | discoverable in this case?  It seems to me that | 11:50:30 |
| 5 | this is calculated to try to get information that | 11:50:33 |
| 6 | Compass Marketing may want to use in other | 11:50:41 |
| 7 | proceedings, other investigations, other lawsuits. | 11:50:43 |
| 8 | It has nothing to do with David Boshea's case. | 11:50:46 |
| 9 | I sat back and let, you know, questioning | 11:50:50 |
| 10 | go and to give leeway here, but at some point it | 11:50:53 |
| 11 | has nothing to do with this lawsuit, with this | 11:50:58 |
| 12 | third-party witness.  I don't think this is a | 11:51:01 |
| 13 | proper question and I don't think the witness | 11:51:05 |
| 14 | should have to answer it. | 11:51:07 |
| 15 | MR. STERN:  This document was produced by | 11:51:08 |
| 16 | another third-party witness in this litigation.  I | 11:51:10 |
| 17 | want to know how Michael White accessed it and I | 11:51:12 |
| 18 | want to know why he is accessing Compass Marketing | 11:51:15 |
| 19 | e-mails after his employment with the company | 11:51:19 |
| 20 | terminated and after he was removed from the board | 11:51:21 |
| 21 | of directors.  It goes to motive, it goes to his | 11:51:24 |
| 22 | level of dishonesty, which -- and credibility is | 11:51:26 |

1    always relevant in any aspect of litigation.                    11:51:30

2    Because part of Compass Marketing's theory is this              11:51:33

3    is a concoction between him and Daniel White in                 11:51:35

4    collaboration with Mr. Boshea to create a false                 11:51:42

5    narrative about a severance agreement that never                11:51:43

6    existed.  And if he is accessing documents and                  11:51:47

7    accounts long after he's gone, that shows motive,               11:51:50

8    opportunity, and an incentive to do so.                         11:51:53

9           MR. REDD:  Okay.  Two things:  The --                    11:51:55

10   whether -- whether those types of inquiries are                 11:52:01

11   proper or not, putting that aside, someone's                    11:52:06

12   personal login and password I don't think is                    11:52:10

13   discoverable.  And all this --                                  11:52:16

14          MR. STERN:  Justin, to that point, I'm                   11:52:20

15   not asking for his personal login information --                11:52:21

16          MR. REDD:  Hold on, hold on, hold on.                    11:52:21

17   We've got to go one at a time here.                             11:52:21

18          MR. STERN:  -- I'm asking for company                    11:52:24

19   information, and I'm a company representative as                 11:52:25

20   its counsel.                                                    11:52:27

21          MR. REDD:  We've got to go one at a time.                11:52:27

22          The second thing is those things that you               11:52:30

| | | |
|---|---|---|
| 1 | mentioned, it plainly is trying to be used for | 11:52:34 |
| 2 | other litigations or other investigations.  It's | 11:52:39 |
| 3 | not in -- whether someone produced this document | 11:52:42 |
| 4 | in this case, someone else did, this doesn't have | 11:52:46 |
| 5 | any relation to Mr. Boshea's employment, | 11:52:51 |
| 6 | severance, compensation, what he's owed or not. | 11:52:58 |
| 7 | And those type of allegations, including the | 11:53:01 |
| 8 | disputed ownership of the company, is outside the | 11:53:06 |
| 9 | scope of any of the Court's orders, outside the | 11:53:09 |
| 10 | scope of the proper -- proper discovery, and this | 11:53:13 |
| 11 | question specifically about a login and password | 11:53:15 |
| 12 | is not a proper question.  So as to -- | 11:53:19 |
| 13 | MR. STERN:  Mr. Redd -- | 11:53:19 |
| 14 | MR. REDD:  -- from the topics and the | 11:53:25 |
| 15 | credibility or any of that information, the login | 11:53:26 |
| 16 | and password is not a proper question so he is not | 11:53:29 |
| 17 | answering. | 11:53:31 |
| 18 | MR. STERN:  Mr. -- Mr. Redd, I did not | 11:53:31 |
| 19 | ask for his personal login information to his -- | 11:53:33 |
| 20 | to his comcast.net account.  I would agree with | 11:53:39 |
| 21 | you that that's not something I can ask.  I'm | 11:53:42 |
| 22 | asking about his compassmarketinginc.com access. | 11:53:44 |

1    Two very different things.  So...                    11:53:52

2          MR. REDD:  They are.  Go ahead.                11:53:54

3          MR. STERN:  I'd like to get that               11:53:58

4    information.  If you're going to instruct him not    11:54:00

5    to answer, you can do that.  There will be plenty    11:54:02

6    of things that we are going to take up with the      11:54:05

7    Court with his evasiveness and other problems with   11:54:07

8    his answers today.  And some of the objections you   11:54:09

9    noted, we will be getting into some of that          11:54:11

10   because it goes to credibility and you know it.      11:54:12

11         So let's get him back on the record.           11:54:18

12   We've got a few more minutes before Greg's got to    11:54:21

13   take a break.  I want to be respectful of Greg's     11:54:28

14   hearing.                                             11:54:28

15         MR. REDD:  That's fine.  Well, yeah, he's      11:54:28

16   going to get an instruction not to answer.  I        11:54:30

17   understand your -- the distinction you're trying     11:54:34

18   to draw between the personal e-mail and the          11:54:37

19   Compass Marketing e-mail, but I think all of the     11:54:40

20   reasons I stated still apply to the Compass          11:54:41

21   Marketing e-mail for Mr. White.  And so for          11:54:46

22   purposes of allowing me to make a 30(b) motion       11:54:48

```
 1   when we get the transcript, he will be instructed     11:54:52

 2   not to answer.                                         11:54:55

 3           MR. STERN:  All right.  Well, then let's       11:54:56

 4   get that instruction on the record and then we'll      11:54:58

 5   take a break.                                          11:55:01

 6           (Mr. White entered the room.)                  11:55:06

 7   BY MR. STERN:                                          11:55:29

 8       Q    All right.  We're back on.  Well, we've       11:55:30

 9   been on the record the whole time.                     11:55:30

10           So, Mr. White, my question to you is what      11:55:32

11   is your compassmarketinginc.com password and          11:55:34

12   access information?                                    11:55:38

13           MR. REDD:  Objection.  On behalf of the        11:55:38

14   witness we intend to move under Rule 30(b) of the      11:55:45

15   Federal Rules of Civil Procedure.                      11:55:51

16           So I instruct you not to answer.               11:55:53

17           MR. STERN:  All right.  We obviously do        11:55:55

18   not accept that objection as being appropriate.        11:55:57

19   We will take that up with the Court.                   11:55:59

20           In recognition of Mr. Jordan's request        11:56:02

21   that we take a break at noon, I've got on my East      11:56:04

22   Coast time on my clock it's 11:56.  Why don't we       11:56:07
```

| | | |
|---|---|---|
| 1 | take a break. | 11:56:11 |
| 2 | I guess a quick question to everyone | 11:56:13 |
| 3 | involved:  Since it is kind of the lunch hour, do | 11:56:15 |
| 4 | we want to take a lunch break and resume more than | 11:56:17 |
| 5 | the 15 minutes or so that you needed for the | 11:56:21 |
| 6 | hearing, Greg? | 11:56:23 |
| 7 | MR. JORDAN:  I don't -- I don't need any | 11:56:24 |
| 8 | more than 15 minutes, but it's totally up to the | 11:56:27 |
| 9 | rest -- the witness and you. | 11:56:28 |
| 10 | MR. STERN:  Mr. White? | 11:56:29 |
| 11 | MR. REDD:  Why don't we come back at | 11:56:31 |
| 12 | 12:30, unless Greg's hearing is literally going to | 11:56:36 |
| 13 | be minutes in length. | 11:56:39 |
| 14 | MR. JORDAN:  It will be less than that. | 11:56:39 |
| 15 | 12:30 is fine. | 11:56:41 |
| 16 | MR. STERN:  12:30 is fine with me as | 11:56:43 |
| 17 | well.  Everyone is to resume then at 12:30.  Thank | 11:56:45 |
| 18 | you. | 11:56:46 |
| 19 | MR. JORDAN:  Okay.  I'm going to just | 11:56:46 |
| 20 | turn off my video and my microphone and otherwise | 11:56:50 |
| 21 | stay on the Zoom. | 11:56:54 |
| 22 | VIDEO TECHNICIAN:  Okay.  We are off the | 11:56:54 |

1    record at 11:57 a.m.                                    11:56:56

2            (A recess was taken.)                           11:56:56

3            VIDEO TECHNICIAN:  The time is 12:32 p.m.       12:32:04

4    We are on the record.                                   12:32:06

5            MR. STERN:  All right.  We're resumed.          12:32:09

6    And I'd like to go through each of the attorneys        12:32:10

7    and parties as we did at the outset of the              12:32:12

8    deposition, representing and confirming, I should       12:32:15

9    say, that there is no one else in the room or           12:32:19

10   connected electronically, whether it be through         12:32:23

11   phone or video, listening in or accessing this          12:32:27

12   deposition live.                                        12:32:31

13           So this is Stephen Stern, counsel for           12:32:31

14   Compass Marketing, Inc.  I'm in my office and I'm       12:32:36

15   accompanied by a company representative, Ronald         12:32:39

16   Bateman, and I have no -- he is not on the video,       12:32:40

17   but he's here in my office with me.  And I have no      12:32:42

18   phone or other video connection to this                 12:32:46

19   deposition.                                             12:32:48

20           MR. JORDAN:  All right.  Gregory                12:32:48

21   Jordan --                                               12:32:51

22           THE WITNESS:  Michael White and --             12:32:51

| | | |
|---|---|---|
| 1 | MR. JORDAN: -- for David Boshea. I make | 12:32:53 |
| 2 | the same representation. | 12:32:53 |
| 3 | THE WITNESS: Michael White and his | 12:32:59 |
| 4 | counsel, Justin Redd, are here, just the two of | 12:32:59 |
| 5 | us. No one else is listening in. Same | 12:33:01 |
| 6 | representation as you and Steve. | 12:33:04 |
| 7 | MR. STERN: And, Heather, why don't you | 12:33:05 |
| 8 | just quickly confirm. | 12:33:09 |
| 9 | MS. YEUNG: Heather Yeung is back. I'm | 12:33:09 |
| 10 | in my office alone, nothing recording. | 12:33:14 |
| 11 | MR. STERN: Thank you. | 12:33:14 |
| 12 | I'd like to go -- Madam Court Reporter, | 12:33:14 |
| 13 | what exhibit number are we up to? | 12:33:23 |
| 14 | THE COURT REPORTER: The next one will be | 12:33:24 |
| 15 | 10. | 12:33:26 |
| 16 | MR. STERN: All right. Let's go to | 12:33:26 |
| 17 | Exhibit 10. | 12:33:26 |
| 18 | Heather, it is Document '33 that's been | 12:33:26 |
| 19 | filed in this litigation. | 12:33:28 |
| 20 | BY MR. STERN: | 12:33:29 |
| 21 | Q   And while Heather is looking for that, | 12:33:29 |
| 22 | Mr. White, just a fun clarification. Is this the | 12:33:40 |

1    first time you and I have met?                          12:33:44

2        A    I believe so.                                  12:33:46

3        Q    I'm showing you what's been -- what's          12:33:47

4    going to be Exhibit 10.                                 12:33:52

5             (White Deposition Exhibit 10 marked for        12:33:52

6    identification and is attached to the transcript.)      12:33:52

7        Q    It is Document 33 that has been filed in       12:33:55

8    this litigation.                                        12:33:58

9             MR. STERN:  If you can scroll down,            12:33:59

10   Heather.                                                12:34:00

11       Q    It says:  "MICHAEL R WHITE'S OBJECTION TO      12:34:01

12   COMPASS MARKETING, INC.'S SUBPOENA DUCES TECUM,         12:34:07

13   MICHAEL R WHITE'S OBJECTION TO SUBPOENA TO TESTIFY      12:34:09

14   AT DEPOSITION, MICHAEL R WHITE'S MOTION TO QUASH        12:34:10

15   SUBPOENAS DUCES TECUM," AND "MICHAEL R WHITE'S          12:34:14

16   REQUESTS FOR A HEARING BEFORE THIS HONORABLE            12:34:18

17   COURT."                                                 12:34:20

18            Is this the document that you filed in         12:34:21

19   this -- is this a document that you filed in this       12:34:22

20   litigation?                                             12:34:22

21            MR. REDD:  Objection.  This is not --          12:34:22

22   this is -- this motion, just know it's been filed,      12:34:26

1   has been ruled on by the Court --                    12:34:28

2           THE COURT REPORTER:  I'm sorry, Mr. Redd;     12:34:28

3   I can't hear you.                                     12:34:34

4           MR. REDD:  This motion that everyone          12:34:36

5   knows has been filed on the docket and has been       12:34:38

6   ruled on by the Court does not pertain to the         12:34:41

7   scope of the deposition as to Mr. Boshea's claims.    12:34:44

8       Q    Mr. White, is this the document that you     12:34:49

9   filed?                                                12:34:54

10      A    It -- it appears to be.  I don't know         12:34:54

11  that it is actually the document or not, but it       12:34:58

12  appears to be.                                        12:35:00

13          MR. STERN:  Heather, can you scroll down      12:35:01

14  to the signature line?                                12:35:04

15      Q    Is that your signature?                      12:35:05

16          MR. STERN:  Heather, you've got to roll       12:35:13

17  up -- scroll up one.                                  12:35:17

18      A    It appears to be my signature, but I         12:35:19

19  don't know that it is.                                12:35:22

20      Q    Do you recall filing a motion in this        12:35:22

21  lawsuit?                                              12:35:27

22      A    I do.                                        12:35:27

1          Q    Did you authorize anyone to sign your          12:35:30

2    name other than yourself when filing that motion?         12:35:33

3    I'm sorry?                                                 12:35:40

4          A    No.                                             12:35:40

5          Q    Do you want to take a moment to read           12:35:40

6    through this document to confirm that this is the         12:35:47

7    material you filed?                                        12:35:50

8          A    No.                                             12:35:51

9          Q    Do you deny filing this document in this       12:35:52

10   litigation?                                                12:35:56

11         A    No.                                             12:35:56

12         Q    And attached to this motion were several       12:35:57

13   exhibits; correct?                                         12:36:03

14         A    I believe so.                                   12:36:04

15         Q    I'd like to turn to Exhibit 3, which is        12:36:07

16   marked Document No. 33-1.                                  12:36:24

17              MR. JORDAN:  Is this a new exhibit,            12:36:28

18   Stephen?                                                   12:36:42

19              MR. STERN:  Heather -- yeah, good              12:36:42

20   question.  Thank you, Greg.                                12:36:44

21              MR. JORDAN:  Because I only have -- I          12:36:44

22   don't have -- I don't have the exhibits with the          12:36:46

| | | |
|---|---|---|
| 1 | other one that you sent and I don't want to create | 12:36:47 |
| 2 | a bad record. | 12:36:51 |
| 3 | MR. STERN:  No.  I agree with you. | 12:36:52 |
| 4 | MS. YEUNG:  This will be Exhibit 11. | 12:36:52 |
| 5 | MR. STERN:  Okay.  So each of the | 12:36:55 |
| 6 | attachments to -- any attachment that we refer to | 12:36:57 |
| 7 | I guess will be a separate exhibit.  Is that | 12:36:58 |
| 8 | correct, Heather? | 12:37:01 |
| 9 | MS. YEUNG:  Yes. | 12:37:02 |
| 10 | MR. STERN:  All right.  So this will be | 12:37:03 |
| 11 | Exhibit 11 for the deposition and this is Exhibit | 12:37:05 |
| 12 | 3 to the motion that Michael White filed. | 12:37:08 |
| 13 | (White Deposition Exhibit 11 marked for | 12:37:08 |
| 14 | identification and is attached to the transcript.) | 12:37:09 |
| 15 | Q    Mr. White, do you see this document? | 12:37:09 |
| 16 | A    I -- I see part of it, yes. | 12:37:17 |
| 17 | Q    Is this the affidavit that you filed in | 12:37:19 |
| 18 | this litigation? | 12:37:26 |
| 19 | A    It appears to be. | 12:37:26 |
| 20 | Q    And when you filed -- and when you signed | 12:37:29 |
| 21 | this affidavit -- | 12:37:32 |
| 22 | MR. STERN:  Can you scroll down, Heather. | 12:37:34 |

| | | |
|---|---|---|
| 1 | Q    -- you signed under the penalty of | 12:37:35 |
| 2 | perjury? | 12:37:40 |
| 3 | A    I signed an affidavit under penalty of | 12:37:40 |
| 4 | perjury, yes. | 12:37:45 |
| 5 | Q    Okay.  Let's scroll up to Paragraph No. | 12:37:45 |
| 6 | 25.  I mean No. 5; I'm sorry.  No. 5.  You wrote: | 12:37:52 |
| 7 | "I am a 25% shareholder of my company, Compass | 12:37:53 |
| 8 | Marketing, Incorporated."  Is that a true | 12:37:58 |
| 9 | statement? | 12:37:59 |
| 10 | MR. REDD:  Objection.  We're getting into | 12:37:59 |
| 11 | areas -- do you want him to leave before I put | 12:38:05 |
| 12 | this on the record, my objection? | 12:38:10 |
| 13 | MR. STERN:  All right.  You can have | 12:38:12 |
| 14 | him -- yeah, that's fine.  We'll have Mr. White | 12:38:13 |
| 15 | leave for a moment. | 12:38:15 |
| 16 | MR. REDD:  It's up to you, Stephen. | 12:38:17 |
| 17 | MR. STERN:  Mr. White, can you please | 12:38:20 |
| 18 | leave for a moment? | 12:38:22 |
| 19 | MR. REDD:  Go ahead. | 12:38:23 |
| 20 | (Mr. White left the room.) | 12:38:26 |
| 21 | MR. REDD:  All right.  I was waiting to | 12:38:28 |
| 22 | see where you were going to go with getting into | 12:38:31 |

1    this motion and affidavit or any of the exhibits.         12:38:34

2    But this -- this appears to me to have nothing to         12:38:41

3    do with Mr. Boshea's claims, Mr. Boshea's                 12:38:46

4    compensation, whether he's owed, what he's saying         12:38:51

5    he's owed in this case or not.                            12:38:54

6            The Court ruled on what was the proper            12:38:59

7    scope of inquiry, what the proper scope of                12:39:03

8    documents was, and this isn't part of it.  This is        12:39:08

9    against the scope of the Court's order on this            12:39:12

10   motion as to what is and is not relevant and              12:39:15

11   discoverable -- discoverable in the case.                 12:39:21

12           MR. STERN:  All right.  Justin, first of          12:39:21

13   all, the Court did not rule on what the scope of          12:39:24

14   relevance is in this case.                                12:39:27

15           Secondly, it is your client that opened           12:39:30

16   the door by making this an issue in his affidavit         12:39:32

17   that he filed in this case.                               12:39:35

18           Thirdly, you know full well that                  12:39:37

19   impeachment is always relevant and anyone can be          12:39:44

20   cross-examined or their credibility can be                12:39:47

21   challenged and it's always relevant.  And it is           12:39:51

22   our contention that he's made several statements          12:39:53

1    under oath that are false, this is one of them,          12:39:57

2    and I'm going to examine him on it.                       12:39:59

3            MR. REDD:  Whether credibility is                 12:40:06

4    relevant or not --                                        12:40:08

5            MR. STERN:  You can instruct him not to           12:40:08

6    answer, that's going to be your business.  You            12:40:11

7    can -- if you instruct him not to answer, we'll           12:40:13

8    certainly take it up with the Court.  But the             12:40:14

9    bottom line is it goes to motive, it goes to              12:40:16

10   credibility, it goes to an issue that he opened           12:40:20

11   the door, and on.  This is all appropriate                12:40:22

12   questioning and you know it.  I'm not going to            12:40:25

13   back away from this issue.  If you want to                12:40:27

14   instruct him not to answer, that's your business.         12:40:30

15   We'll be taking it up with the Court.                     12:40:32

16           MR. REDD:  Okay.  Well, I'll tell you my          12:40:33

17   basis and then we'll go from there.  Your                 12:40:36

18   characterization of me knowing it or not I                12:40:39

19   disagree with.  I disagree that the mere fact that        12:40:42

20   credibility is always relevant allows unlimited           12:40:47

21   questioning in a deposition, especially after a           12:40:54

22   Court has ordered certain things.  And I know we          12:40:57

| | | |
|---|---|---|
| 1 | disagree on the scope, but one of my reasons is | 12:41:02 |
| 2 | attempting to enforce the Court's order. | 12:41:07 |
| 3 | MR. STERN: Can you tell me where the | 12:41:10 |
| 4 | Court's order -- | 12:41:14 |
| 5 | MR. REDD: Your characterization of -- | 12:41:14 |
| 6 | wait, wait. I'm not finished. Your | 12:41:15 |
| 7 | characterization of credibility as allowing | 12:41:17 |
| 8 | certain questioning would swallow any -- any type | 12:41:20 |
| 9 | of proper scope of a deposition with or without a | 12:41:23 |
| 10 | Court order or the scope of discovery. And we | 12:41:29 |
| 11 | think that these types of questions are being | 12:41:31 |
| 12 | asked for an improper purpose which is used in | 12:41:36 |
| 13 | other litigations and investigations, that there | 12:41:38 |
| 14 | are several of those ongoing. | 12:41:43 |
| 15 | And Compass itself, if we're getting into | 12:41:46 |
| 16 | the parties' filings on this motion for the | 12:41:49 |
| 17 | Court's order, said they're only seeking narrowly | 12:41:54 |
| 18 | tailored documents to the issues relevant to this | 12:41:58 |
| 19 | litigation; that these allegations by Michael | 12:42:02 |
| 20 | White have no relevance to the issues before this | 12:42:04 |
| 21 | Court, and on and on. And there lists a litany of | 12:42:07 |
| 22 | topics that were raised but that Compass said have | 12:42:11 |

1    nothing to do with this case.                       12:42:17

2             And I disagree that there is any opening   12:42:18

3    the door.  And if there was, the Court closed it    12:42:20

4    by agreeing with you, as Compass, in arguing what   12:42:24

5    is and is not relevant in the scope of discovery.   12:42:29

6    So we can only conclude that it's not for use in    12:42:33

7    this case, the questions are being asked to         12:42:35

8    intimidate, to harass, it's improper.               12:42:38

9             MR. STERN:  You can take that up with the  12:42:41

10   Court.  You have someone who is purporting to be a  12:42:43

11   25 percent shareholder in this lit -- of the        12:42:47

12   company that's being sued who's communicating       12:42:49

13   extensively with the plaintiff and its counsel.     12:42:53

14   And, also, it goes to his credibility as to         12:42:55

15   whether or not he's even telling the truth.  And    12:42:58

16   obviously it goes to the motive as to why would an  12:42:59

17   owner be collaborating so much with an owner --     12:43:03

18   with a litigant against the company he claims to    12:43:06

19   own.                                                12:43:08

20            MR. REDD:  And when you said "this         12:43:09

21   litigation," were you meaning the Virginia case or  12:43:11

22   Boshea versus Compass Marketing in this Court?      12:43:12

1        MR. STERN:  Boshea versus Compass                    12:43:12

2    Marketing.  Is there other litigation that I'm not       12:43:22

3    aware of?                                                12:43:24

4        MR. REDD:  I don't know what litigation              12:43:25

5    you are and are not aware of.                            12:43:28

6        MR. STERN:  Fair question -- fair                    12:43:30

7    comment.                                                 12:43:32

8        MR. JORDAN:  I believe you know that                 12:43:32

9    Compass and other individuals involved in the case       12:43:37

10   are involved in other litigations.                       12:43:40

11       MR. STERN:  I know there was a litigation            12:43:41

12   that was dismissed back in April.                        12:43:44

13       MR. JORDAN:  I think we are getting a                12:43:45

14   little off point now with the back-and-forth.           12:43:49

15       MR. REDD:  I think our positions are                 12:43:51

16   stated.  We're -- we're not going to come to an          12:43:55

17   agreement here it seems, you know, so...                 12:43:58

18       MR. STERN:  Well, it's going to be up to             12:43:59

19   you whether you instruct him not to answer.  We're       12:44:05

20   not accepting a nonanswer as acceptable.  We'll          12:44:07

21   certainly be raising it with the Court if you            12:44:11

22   instruct him not to answer the question.                 12:44:12

| | | |
|---|---|---|
| 1 | MR. REDD:  Understand.  I'll get -- I'll | 12:44:14 |
| 2 | get the witness. | 12:44:17 |
| 3 | (Mr. White entered the room.) | 12:44:18 |
| 4 | MR. STERN:  So, Madam Court Reporter, | 12:44:22 |
| 5 | there was a lot of discussion there.  Can you go | 12:44:51 |
| 6 | back to the last question I asked. | 12:44:53 |
| 7 | (The pending question was read.) | 12:45:29 |
| 8 | Q    Mr. White? | 12:45:29 |
| 9 | A    That is a true statement. | 12:45:29 |
| 10 | MR. STERN:  Can we pull up, Heather -- | 12:45:39 |
| 11 | pull that down for a moment and we will circle | 12:45:48 |
| 12 | back to that momentarily.  Heather, it's the loan | 12:45:50 |
| 13 | application. | 12:46:06 |
| 14 | I think this is Exhibit 12? | 12:46:33 |
| 15 | THE COURT REPORTER:  That's correct. | 12:46:34 |
| 16 | (White Exhibit 12 marked for | 12:46:34 |
| 17 | identification and is attached to the transcript.) | 12:46:36 |
| 18 | Q    So, Mr. White, I'm showing you what's | 12:46:36 |
| 19 | been marked as Exhibit 12.  This is a PPP loan | 12:46:38 |
| 20 | borrower application form for a company known as | 12:46:42 |
| 21 | Woodville Pines, LLC.  Do you see that? | 12:46:46 |
| 22 | A    I see what's on the screen, yes, sir. | 12:46:47 |

| | | |
|---|---|---|
| 1 | Q    Did you fill out a PPP loan application | 12:46:49 |
| 2 | for Woodville Pines, LLC? | 12:46:52 |
| 3 | MR. REDD:  I object for the reasons | 12:46:52 |
| 4 | that -- stated on the record when the witness was | 12:47:02 |
| 5 | out of the room. | 12:47:03 |
| 6 | To enforce the Court's order and the | 12:47:05 |
| 7 | other reasons I said, I instruct you not to | 12:47:08 |
| 8 | answer. | 12:47:10 |
| 9 | MR. STERN:  Justin, are you instructing | 12:47:10 |
| 10 | him not to answer that question? | 12:47:11 |
| 11 | MR. REDD:  Yes. | 12:47:13 |
| 12 | MR. STERN:  All right.  We'll certainly | 12:47:16 |
| 13 | take that up with the Court.  Are you instructing | 12:47:17 |
| 14 | him not to answer any questions about this | 12:47:19 |
| 15 | document? | 12:47:21 |
| 16 | MR. REDD:  Without knowing what you're | 12:47:22 |
| 17 | going to ask, I don't want to foreclose anything | 12:47:30 |
| 18 | that might be proper, but I -- I don't see any way | 12:47:32 |
| 19 | that this document, which Compass has called fully | 12:47:35 |
| 20 | unrelated to the claims in this case and has | 12:47:43 |
| 21 | nothing to do with this lawsuit, is within the | 12:47:45 |
| 22 | scope of the Court's order or otherwise proper | 12:47:48 |

1    under Rule 45 and Rule 26.                        12:47:51

2          MR. STERN:  Well, let's scroll down to      12:47:58

3    the bottom on Page 2.                             12:47:59

4      Q    Is that your signature, Mr. White?         12:48:02

5          MR. REDD:  Objection for the reasons        12:48:03

6    stated on the record while the witness was out of 12:48:09

7    the room.                                         12:48:12

8          I instruct you not to answer.               12:48:12

9      Q    Did you fill out a PPP loan application    12:48:14

10   for Woodville Pines in April of 2020?             12:48:18

11         MR. REDD:  Same instruction.                12:48:20

12     Q    Did you sign a PPP loan application on     12:48:24

13   behalf of Woodville Pines on April 25, 2020?      12:48:30

14         MR. REDD:  Same instruction.                12:48:33

15         What does this have to do with David        12:48:35

16   Boshea at all?                                    12:48:39

17         MR. STERN:  As I mentioned earlier, it      12:48:39

18   goes to credibility.                              12:48:42

19     Q    Did the PPP loan application that you      12:48:44

20   signed --                                         12:48:47

21         MR. REDD:  I don't think that's --          12:48:47

22         MR. STERN:  Sorry?                          12:48:47

| | | |
|---|---|---|
| 1 | THE COURT REPORTER:  I'm sorry; I didn't | 12:48:47 |
| 2 | hear you, Mr. Redd. | 12:48:50 |
| 3 | MR. REDD:  I apologize for interrupting. | 12:48:51 |
| 4 | I don't think that's a sufficient basis. | 12:48:54 |
| 5 | Q    Mr. White, did the PPP loan application | 12:48:56 |
| 6 | that you signed on behalf of Woodville Pines, LLC, | 12:49:00 |
| 7 | did you sign that under the penalty of perjury? | 12:49:05 |
| 8 | MR. REDD:  Objection. | 12:49:08 |
| 9 | Instruct you not to answer for the | 12:49:10 |
| 10 | reasons previously stated. | 12:49:13 |
| 11 | Q    When you filled out a PPP loan | 12:49:14 |
| 12 | application on behalf of Woodville Pines, before | 12:49:21 |
| 13 | you signed it, did you initial that you | 12:49:25 |
| 14 | "...further certify that the information provided | 12:49:27 |
| 15 | in this application and the information provided | 12:49:29 |
| 16 | in all supporting documents and forms is true and | 12:49:33 |
| 17 | accurate in all material respects"? | 12:49:36 |
| 18 | Did you further certify that "I | 12:49:40 |
| 19 | understand that knowingly making a false statement | 12:49:40 |
| 20 | to obtain a guaranteed loan from SBA is punishable | 12:49:43 |
| 21 | under the law, including under 18 USC Section 1001 | 12:49:48 |
| 22 | and Section" 137 -- 1 -- I'm sorry -- "Section | 12:49:54 |

| | | |
|---|---|---|
| 1 | 3571 by imprisonment of not more than five years | 12:49:54 |
| 2 | and/or a fine of up to $250,000; under 15 USC 645 | 12:49:57 |
| 3 | by imprisonment of not more than two years and/or | 12:50:03 |
| 4 | a fine of not more than $5,000; and, if submitted | 12:50:08 |
| 5 | to a federally insured institution, under 18 USC | 12:50:11 |
| 6 | 1014 by imprisonment of not more than thirty years | 12:50:16 |
| 7 | and/or a fine of not more than $1,000,000"? | 12:50:21 |
| 8 | MR. REDD:  Objection. | 12:50:23 |
| 9 | Same instruction. | 12:50:25 |
| 10 | And the words on -- | 12:50:25 |
| 11 | MR. STERN:  And -- | 12:50:25 |
| 12 | MR. REDD:  -- the form, the form speaks | 12:50:26 |
| 13 | for itself.  It's up to you what you want to do | 12:50:28 |
| 14 | with the time we have, Stephen, but it's not going | 12:50:32 |
| 15 | to be read into the record to purport to be Mr. | 12:50:37 |
| 16 | White's testimony on this, which is, for the | 12:50:41 |
| 17 | reasons I've said, not proper to ask in this | 12:50:44 |
| 18 | deposition. | 12:50:47 |
| 19 | MR. STERN:  Well, I'm ask -- I | 12:50:47 |
| 20 | understand.  I'm asking the questions. | 12:50:48 |
| 21 | Heather, you can scroll up to the prior | 12:50:56 |
| 22 | page. | 12:50:57 |

| | | |
|---|---|---|
| 1 | Q    Mr. White, in the PPP loan application | 12:50:57 |
| 2 | that you submitted on behalf of Woodville Pines, | 12:50:59 |
| 3 | LLC, did you check the box no in response to the | 12:51:02 |
| 4 | question:  "Is the Applicant or any owner of the | 12:51:05 |
| 5 | Applicant an owner of any other business, or have | 12:51:08 |
| 6 | common management with any other business?  If | 12:51:11 |
| 7 | yes, list all such businesses and describe the | 12:51:14 |
| 8 | relationship on a separate sheet identified as | 12:51:17 |
| 9 | addendum A"? | 12:51:20 |
| 10 | MR. REDD:  Objection. | 12:51:20 |
| 11 | Same instruction. | 12:51:23 |
| 12 | Q    All right.  We'll move on from that | 12:51:23 |
| 13 | document. | 12:51:30 |
| 14 | Going back to your motion filed in this | 12:51:33 |
| 15 | case, I would like to turn to Exhibit No. 4. | 12:51:35 |
| 16 | THE COURT REPORTER:  And this will be | 12:51:42 |
| 17 | Exhibit 13. | 12:51:55 |
| 18 | MR. STERN:  Thank you for the | 12:51:56 |
| 19 | clarification.  Exhibit 13, for purposes of this | 12:51:59 |
| 20 | deposition, and Exhibit 4 to Mr. White's motion. | 12:52:01 |
| 21 | (White Deposition Exhibit 13 marked for | 12:52:01 |
| 22 | identification and is attached to the transcript.) | 12:52:01 |

1      Q     Mr. White, did you attach to your motion          12:52:05

2   as Exhibit 4, Stock Certificate No. 5 for 150             12:52:08

3   shares, issuing those shares to you, Michael              12:52:14

4   Robert White, with the stock certificate issued on       12:52:18

5   June, looks like 11, 2001.                                12:52:22

6      A     I -- I attached a copy of the stock              12:52:28

7   certificate to my filing, yes.                            12:52:36

8      Q     And is that Daniel White's signature on          12:52:37

9   the bottom of that stock certificate?                     12:52:41

10     A     I don't know.                                     12:52:42

11     Q     Did you attend the shareholder meeting on        12:52:44

12  or about June 11, 2001, in which these shares were        12:52:50

13  issued to you?                                            12:52:55

14     A     I did not.                                        12:52:55

15     Q     Did you observe Daniel White sign this           12:52:57

16  stock certificate issuing 150 shares to you?              12:53:05

17     A     I did not.                                        12:53:08

18     Q     Did you also attach to Exhibit No. 4,            12:53:10

19  which is Exhibit 13 for this deposition, Stock            12:53:16

20  Certificate No. 4, which is the next page of this         12:53:19

21  exhibit --                                                12:53:27

22          MR. STERN:  Heather.                               12:53:27

1      Q     -- for 300 shares issued to John David      12:53:29

2   White on June 11, 2001?                             12:53:37

3           MR. REDD:  Objection.  Again, we are        12:53:39

4   getting far afield of what this has to do with Mr.   12:53:43

5   Boshea's case.  Mr. White's testified to his         12:53:46

6   ownership in Compass Marketing.                      12:53:52

7           You can answer, but I'm noting that this    12:53:55

8   is also outside the scope of what is at issue in     12:53:57

9   this case and appears to be seeking information      12:54:03

10  for use not in this proceeding, but in other        12:54:08

11  proceedings.                                         12:54:11

12     Q    Mr. White, did you attach Exhibit --        12:54:11

13  Stock Certificate No. 4 for 300 shares issued to     12:54:16

14  John David White on June 11, 2001?                   12:54:20

15     A    I attached a copy of a certificate issued    12:54:22

16  to John White to my filing.                          12:54:25

17     Q    Do you deny that this stock certificate      12:54:27

18  is a true and accurate copy of Stock Certificate     12:54:33

19  No. 4?                                               12:54:35

20     A    I do not.                                    12:54:35

21     Q    And then scrolling a little bit further      12:54:40

22  on this exhibit is Stock Certificate No. 6 issued    12:54:49

| | | |
|---|---|---|
| 1 | for 150 shares to Daniel Joseph White on June 11, | 12:54:55 |
| 2 | 2001.  Do you see that? | 12:55:01 |
| 3 | MR. REDD:  Objection. | 12:55:02 |
| 4 | You can answer. | 12:55:06 |
| 5 | A    I see what you have on the screen, yes. | 12:55:06 |
| 6 | Q    Did you attach that to your motion as | 12:55:08 |
| 7 | part of Exhibit No. 4 to your motion? | 12:55:12 |
| 8 | A    I attached a copy of a stock certificate | 12:55:14 |
| 9 | issued to Daniel Joseph White to my filing. | 12:55:18 |
| 10 | Q    Is this a true and accurate copy of the | 12:55:21 |
| 11 | Stock Certificate No. 5 -- 6? | 12:55:24 |
| 12 | A    I don't know. | 12:55:24 |
| 13 | Q    Do you deny that it is a true and | 12:55:29 |
| 14 | accurate copy of Stock Certificate No. 6? | 12:55:33 |
| 15 | A    I do not. | 12:55:34 |
| 16 | Q    Since I didn't ask this question before | 12:55:38 |
| 17 | with respect to Stock Certificate No. 5, do you | 12:55:42 |
| 18 | deny it is a true and accurate copy of Stock | 12:55:45 |
| 19 | Certificate No. 5 that you attached to your | 12:55:50 |
| 20 | motion? | 12:55:52 |
| 21 | A    I do not. | 12:55:52 |
| 22 | Q    Are these the only stock certificates | 12:55:53 |

1   issued for Compass Marketing, Inc.?                    12:55:59

2          MR. REDD:  Objection.  Not asking about        12:56:02

3   stock certificates, if any -- Do you want him to      12:56:08

4   leave for this part?  Sorry; I forgot to ask.         12:56:11

5   Stephen?                                              12:56:16

6          MR. STERN:  Are you going to do a              12:56:16

7   speaking objection?  Then he can leave, that's        12:56:21

8   fine.                                                 12:56:23

9          (Mr. White left the room.)                     12:56:41

10          MR. REDD:  It sounded to me like you're       12:56:42

11  going to be asking about stock certificates, if       12:56:44

12  any, that were other than what he's been -- what      12:56:46

13  has been attached to something that was filed in      12:56:48

14  this case.  If that is where you're going, then my    12:56:49

15  objection that I stated the last time Mr. White       12:56:52

16  left the room is going to apply, or I'm going to      12:56:57

17  make it.  You disagree that it applies, obviously.    12:57:03

18          MR. STERN:  All right.  Can you repeat        12:57:07

19  that last part?  Please say that again.               12:57:14

20          MR. REDD:  Is that where you're going         12:57:15

21  with this, you're going to ask about something        12:57:18

22  that may or may not exist that is other than what     12:57:21

1    was attached to the Court filing?                    12:57:25

2            MR. STERN:  Yes.  I'm going to be asking      12:57:26

3    about minutes of a special shareholder meeting,       12:57:29

4    minutes of a special meeting of the board of          12:57:34

5    directors, resolution of the board of directors.      12:57:36

6    If you're going to instruct him not to answer         12:57:41

7    questions about those documents, we can -- we can     12:57:44

8    streamline this and then we'll take it up with the    12:57:46

9    Court or I could go through it and keep asking him    12:57:49

10   questions one by one and you can tell him not to      12:57:51

11   answer.                                               12:57:54

12           MR. REDD:  And this is -- this is --          12:57:54

13   you're asking about documents or meetings that        12:57:57

14   happened in 2001; is that correct?                    12:58:00

15           MR. STERN:  Correct.  This goes to his        12:58:02

16   credibility.  It shows that he's lied under oath.     12:58:04

17           MR. REDD:  What -- what besides that is       12:58:07

18   the connection to Boshea or Boshea's claims or the    12:58:11

19   defense in the case?                                  12:58:18

20           MR. STERN:  As I've mentioned,                12:58:18

21   credibility is always relevant.  And part of his      12:58:20

22   misrepresentation about his ownership interest        12:58:23

| | | |
|---|---|---|
| 1 | goes to his motive to collaborate and cooperate | 12:58:25 |
| 2 | with a party suing the company that he claims to | 12:58:30 |
| 3 | own.  It shows motive and more. | 12:58:34 |
| 4 | MR. REDD:  Okay. | 12:58:34 |
| 5 | MR. STERN:  He has sent many documents to | 12:58:39 |
| 6 | Mr. Boshea in connection with this litigation. | 12:58:43 |
| 7 | While he's denied helping him -- he certainly says | 12:58:45 |
| 8 | that in some of the e-mails, he denied even any | 12:58:49 |
| 9 | knowledge of -- any knowledge of.  Why would he be | 12:58:51 |
| 10 | covering that up. | 12:58:52 |
| 11 | MR. REDD:  I disagree with any | 12:58:55 |
| 12 | characterization of anything as a coverup.  And I | 12:58:57 |
| 13 | still don't see how actions or meetings or | 12:59:01 |
| 14 | documents from 2001 show any kind of motive. | 12:59:04 |
| 15 | You're saying he's planning to pay Mr. Boshea | 12:59:10 |
| 16 | not -- something that he's not owed back in 2001? | 12:59:13 |
| 17 | (Talking over) | 12:59:18 |
| 18 | MR. STERN:  I hear you, Justin, and I -- | 12:59:18 |
| 19 | I'm sorry; I didn't -- I didn't realize you were | 12:59:22 |
| 20 | not done. | 12:59:24 |
| 21 | MR. REDD:  We're going -- we're treading | 12:59:24 |
| 22 | the same ground.  But my question was what is the | 12:59:29 |

1    connection to the claims in the case --                    12:59:32

2              MR. STERN:  I just --                            12:59:32

3              MR. REDD:  -- Boshea's claims?                   12:59:36

4              MR. STERN:  Credibility is always                12:59:36

5    relevant.  You have an owner who is assisting              12:59:39

6    with -- someone who claims to be an owner who is           12:59:42

7    assisting with litigation against the company he           12:59:46

8    owns.  It goes to motive, it goes to credibility.          12:59:49

9    I'm not going to repeat it.  You have your choice           12:59:52

10   as to whether you want to instruct him not to              12:59:54

11   answer.                                                    12:59:57

12             I appreciate that you've asked --                12:59:57

13             MR. REDD:  (Indiscernible - talking              12:59:57

14   over).                                                     12:59:57

15             MR. STERN:  -- him to step out of the            12:59:59

16   room, but let's -- let's move on with this and you         13:00:00

17   tell me how you're going to handle it.  One way or         13:00:03

18   the other we're bringing this to the Court's               13:00:06

19   attention, unless you let him answer these                 13:00:08

20   questions.                                                 13:00:11

21             MR. REDD:  Yep, I understand that.  And          13:00:12

22   I'm just trying to give you an opportunity to              13:00:13

| | | |
|---|---|---|
| 1 | present any connection besides the bare fact of | 13:00:16 |
| 2 | credibility and motive to the scope of this | 13:00:21 |
| 3 | Court's order, the scope of the claims in this | 13:00:27 |
| 4 | case. | 13:00:30 |
| 5 | MR. STERN: As I mentioned before, he | 13:00:30 |
| 6 | opened the door. The people that opened the door | 13:00:34 |
| 7 | about the ownership in this case are Michael | 13:00:36 |
| 8 | White, Daniel White, and David Boshea. It has not | 13:00:41 |
| 9 | been an issue that has been identified or | 13:00:43 |
| 10 | introduced by Compass Marketing at any point. All | 13:00:45 |
| 11 | three of those individuals have brought it to the | 13:00:49 |
| 12 | Court's attention in this case. That's opening | 13:00:52 |
| 13 | the door. As I mentioned -- | 13:00:54 |
| 14 | MR. JORDAN: I -- I strenuously disagree | 13:00:56 |
| 15 | that -- with that statement. | 13:00:59 |
| 16 | MR. STERN: Third, I said -- and then | 13:00:59 |
| 17 | also, as I mentioned, if he's -- he's lied under | 13:01:06 |
| 18 | oath, then I get the opportunity to cross-examine | 13:01:08 |
| 19 | him about that. | 13:01:12 |
| 20 | MR. REDD: Okay. | 13:01:12 |
| 21 | MR. STERN: You've already instructed him | 13:01:16 |
| 22 | not to answer. I've got documents that can | 13:01:17 |

1    further illustrate that the statement he's made is          13:01:20

2    untrue.  We don't need to -- we're going to argue           13:01:24

3    this before the Court so I don't see this -- any            13:01:26

4    more value in you and I debating this on -- on              13:01:29

5    this deposition.                                            13:01:32

6              MR. REDD:  Well, I just wanted to make            13:01:32

7    sure before -- before -- you know, I don't take an          13:01:37

8    instruction lightly like this.  I want to make             13:01:38

9    sure that there's nothing that I'm missing that's           13:01:41

10   different than the reasons that you stated.  And I          13:01:45

11   think we're at the point where our positions are            13:01:49

12   staked out and we disagree --                               13:01:54

13             MR. STERN:  I'm not saying in my brief            13:01:56

14   I'm not going to -- maybe, you know -- I won't              13:01:57

15   elaborate further, but you've got the gist of it.           13:01:59

16   I've got ample case law already lined up that               13:02:01

17   shows this is appropriate -- perfectly                      13:02:04

18   appropriate.  It's from the Court that we're in.            13:02:07

19   You'll all be having an opportunity to respond to           13:02:08

20   it when we file it with our brief and cite to it.           13:02:10

21             MR. REDD:  Okay.  If you've got it                13:02:13

22   already ready, send it over to me and -- and --             13:02:16

| | | |
|---|---|---|
| 1 | MR. STERN:  No, I haven't drafted it yet. | 13:02:18 |
| 2 | I've got the case law already researched. | 13:02:24 |
| 3 | MR. REDD:  Okay.  If you want to send the | 13:02:26 |
| 4 | cases and you think that it will change my mind, | 13:02:28 |
| 5 | I'm -- I'll read it.  But I -- I -- I disagree | 13:02:31 |
| 6 | with your position for the reasons we both stated | 13:02:32 |
| 7 | and we can move on.  But I'm -- I'm leaving the | 13:02:35 |
| 8 | opportunity if you want to resolve it without | 13:02:38 |
| 9 | opening the Court -- involving the Court.  If you | 13:02:42 |
| 10 | think that what you have is that clear and I'm | 13:02:46 |
| 11 | missing something, I will read it if you send it | 13:02:49 |
| 12 | to me. | 13:02:53 |
| 13 | All right.  I will go get the witness. | 13:02:55 |
| 14 | (Mr. White entered the room.) | 13:02:56 |
| 15 | MR. STERN:  Back on the -- we're back | 13:03:19 |
| 16 | with Mr. White in the room. | 13:03:20 |
| 17 | Justin, just for clarification, are you | 13:03:21 |
| 18 | instructing your client not to answer any | 13:03:24 |
| 19 | questions where corporate documents contradict the | 13:03:25 |
| 20 | assertion that he's made in his affidavit? | 13:03:31 |
| 21 | MR. REDD:  I disagree with the | 13:03:33 |
| 22 | characterization of that question.  I -- that was | 13:03:39 |

| | | |
|---|---|---|
| 1 | not the question that you asked. | 13:03:41 |
| 2 | (Talking over) | 13:03:42 |
| 3 | MR. STERN:  Understood.  I'm just trying | 13:03:42 |
| 4 | to streamline this. | 13:03:46 |
| 5 | MR. REDD:  Well, I'm not going to | 13:03:48 |
| 6 | streamline it at the expense of being clear about | 13:03:50 |
| 7 | what I am and not -- and not saying. | 13:03:53 |
| 8 | MR. STERN:  So do I have to introduce | 13:03:54 |
| 9 | each document? | 13:03:57 |
| 10 | MR. REDD:  No, I don't think so.  But I | 13:03:58 |
| 11 | don't -- I'm not going to just agree to your | 13:04:01 |
| 12 | characterization of contradiction with anything | 13:04:04 |
| 13 | just to streamline anything. | 13:04:08 |
| 14 | MR. STERN:  Fair enough.  I understand -- | 13:04:09 |
| 15 | MR. REDD:  (Indiscernible - talking | 13:04:09 |
| 16 | over.) | 13:04:09 |
| 17 | MR. STERN:  -- that you're not | 13:04:11 |
| 18 | acknowledging my characterization. | 13:04:13 |
| 19 | MR. REDD:  Yeah, I don't think you would | 13:04:14 |
| 20 | expect me to. | 13:04:17 |
| 21 | MR. STERN:  I -- I agree with that.  All | 13:04:17 |
| 22 | right. | 13:04:27 |

| | | |
|---|---|---|
| 1 | MR. REDD:  We're chuckling here. | 13:04:27 |
| 2 | MR. STERN:  All right.  So -- | 13:04:27 |
| 3 | MR. REDD:  So I'm with you on | 13:04:28 |
| 4 | streamlining it as long as you do it in -- in the | 13:04:31 |
| 5 | proper way. | 13:04:34 |
| 6 | MR. STERN:  All right.  So I just want to | 13:04:34 |
| 7 | be clear.  I have a series of corporate documents | 13:04:35 |
| 8 | that I contend contradict Mr. White's sworn | 13:04:38 |
| 9 | affidavit and shows his statement under oath is | 13:04:45 |
| 10 | not correct and it's not true.  And rather than | 13:04:48 |
| 11 | going through each of those documents, you're | 13:04:51 |
| 12 | instructing him not to answer questions related to | 13:04:54 |
| 13 | those documents? | 13:04:57 |
| 14 | MR. REDD:  Right; for the reasons that I | 13:04:59 |
| 15 | stated in the last colloquy that we had when the | 13:05:01 |
| 16 | witness was out of the room.  The documents from | 13:05:06 |
| 17 | 2001 and related meetings that you were getting | 13:05:10 |
| 18 | ready to ask about -- | 13:05:16 |
| 19 | MR. STERN:  Okay. | 13:05:16 |
| 20 | MR. REDD:  -- are outside the scope of | 13:05:17 |
| 21 | the Court's order, Rule 30(c), or the proper | 13:05:19 |
| 22 | questions for the reasons that I stated. | 13:05:26 |

1    Obviously also pursuant to Rule 30(d) and Rules          13:05:32

2    45, 26(g), I instruct him not to answer that            13:05:39

3    series of questions.                                    13:05:43

4              MR. STERN:  We'll address that with the       13:05:43

5    Court.                                                  13:05:48

6              Then going on to a new document, I'd like     13:05:50

7    to show -- Heather, can you pull up Exhibit 5 to        13:06:15

8    the motion.                                             13:06:16

9              THE COURT REPORTER:  And this will be         13:06:16

10   Exhibit 14.                                             13:06:16

11             (White Deposition Exhibit 14 marked for       13:06:16

12   identification and is attached to the transcript.)      13:06:26

13       Q    Mr. White, I'm showing you what is             13:06:26

14   Exhibit 5 to the motion that you filed.  It is --       13:06:35

15             MR. STERN:  Madam Court Reporter, what        13:06:35

16   exhibit number are we talking about?                    13:06:35

17             THE COURT REPORTER:  Exhibit 14.              13:06:35

18       Q    -- Exhibit 14 for purposes of this             13:06:44

19   deposition.                                             13:06:46

20             MR. STERN:  Heather, can you scroll down      13:06:46

21   a little more or show more of the document on the       13:06:52

22   screen.                                                 13:06:54

1       Q    Mr. White, is this a copy of the e-mail          13:06:54

2  that you submitted as Exhibit 5 to your motion?           13:07:00

3       A    It appears similar to the e-mail I -- I          13:07:03

4  filed.                                                      13:07:08

5       Q    Are you saying that the e-mail that you          13:07:08

6  filed is different than what's showing on the              13:07:11

7  screen?                                                     13:07:13

8       A    I am not.                                         13:07:13

9       Q    Is this a true and accurate copy of             13:07:15

10  Exhibit 5 to your motion?                                  13:07:20

11        MR. REDD:  Objection to the -- to the               13:07:22

12  extent that you're using that in a legal sense.            13:07:26

13  It sounds like a legal term to me.  To the extent          13:07:28

14  it's asking for a legal conclusion I object.               13:07:31

15        Subject to that, you can answer.                     13:07:34

16       A    Please ask your question again,                 13:07:38

17  Mr. Stern.                                                  13:07:40

18       Q    Is this an accurate copy of the document        13:07:40

19  that you submitted as Exhibit 5 to your motion?            13:07:42

20       A    I don't know.                                    13:07:45

21       Q    How would you know?                              13:07:46

22        MR. REDD:  Objection --                              13:07:51

1        THE COURT REPORTER:  Sorry, Mr. Redd; did          13:07:52

2   you object there?                                       13:07:57

3        MR. REDD:  Objection to form.                      13:07:58

4        THE COURT REPORTER:  Thank you.                    13:07:58

5        MR. REDD:  You can answer.                         13:08:05

6   A    I don't know.                                      13:08:05

7   Q    Are you disputing that this is an                  13:08:06

8   accurate copy of Exhibit 5 to your motion?             13:08:08

9   A    I am not.                                          13:08:10

10  Q    So it's two e-mails, one is from Stephen           13:08:12

11  Stern, me, to John White, dated January 24, 2020,      13:08:21

12  12:24 p.m.  And beneath it is an e-mail from me to      13:08:28

13  someone named Erin Pulice, with a Cc: Copy to          13:08:33

14  Jason Bender.  How did you get a copy of this          13:08:39

15  e-mail?                                                 13:08:42

16       MR. REDD:  Objection for the reasons I            13:08:42

17  previously stated and for the additional reason        13:08:46

18  that Compass took the position that none of the        13:08:49

19  allegations against the undersigned counsel are        13:08:54

20  related to the instant lawsuit in any way, and the     13:08:58

21  Court agreed with Compass in ruling on the motion      13:09:04

22  to quash --                                            13:09:06

| | | |
|---|---|---|
| 1 | MR. STERN:  Mr. White, can you step out | 13:09:07 |
| 2 | of the -- out of the room for a moment.  Mr. | 13:09:12 |
| 3 | White, can you -- | 13:09:13 |
| 4 | THE COURT REPORTER:  I'm sorry.  I'm | 13:09:13 |
| 5 | sorry, Mr. Redd; I can't hear you. | 13:09:14 |
| 6 | MR. STERN:  Mr. White, can you step out | 13:09:16 |
| 7 | of the room for a moment. | 13:09:19 |
| 8 | MR. REDD:  Okay. | 13:09:20 |
| 9 | (Mr. White left the room.) | 13:09:23 |
| 10 | MR. STERN:  Justin, I appreciate to this | 13:09:25 |
| 11 | point you have been consistent in making your | 13:09:33 |
| 12 | speaking objections with Mr. White out of the | 13:09:35 |
| 13 | room.  I would appreciate it if you could continue | 13:09:38 |
| 14 | to do that. | 13:09:40 |
| 15 | Justin? | 13:09:46 |
| 16 | MR. REDD:  Yes. | 13:09:47 |
| 17 | MR. STERN:  I -- if you are going to make | 13:09:48 |
| 18 | a speaking objection, I want -- I want Mr. White | 13:09:51 |
| 19 | removed from the room and I also want to respond | 13:09:54 |
| 20 | to that, to your objection about it not being | 13:09:56 |
| 21 | relevant.  This is highly relevant -- | 13:09:58 |
| 22 | MR. JORDAN:  I was just saying what I | 13:09:59 |

1    said before so I didn't ask him to leave.  But,          13:10:02

2    yes, I will.                                             13:10:04

3          MR. STERN:  He was no longer an employee           13:10:05

4    at the time.  This is a different e-mail address         13:10:09

5    from compassmarketinginc.com.  This shows -- this        13:10:11

6    is a perfectly appropriate question because it           13:10:15

7    shows acts of sabotage against the company, which        13:10:18

8    further shows the motive and the reasons why he's        13:10:21

9    assisting Mr. Boshea in what Compass Marketing           13:10:23

10   contends is a sham lawsuit with a sham agreement         13:10:28

11   that doesn't exist.  And the fact that he's              13:10:30

12   accessing documents that he has no right to access       13:10:33

13   shows part of that motive and the intent to do           13:10:36

14   harm to the company.  Are you instructing him not        13:10:40

15   to answer questions as it relates to this                13:10:48

16   document?                                                13:10:51

17         MR. REDD:  Yes.                                    13:10:51

18         MR. STERN:  Okay.                                  13:10:51

19         MR. REDD:  For the reasons I stated.               13:10:55

20         MR. STERN:  Can you get him back in then?          13:10:56

21         (Mr. White entered the room.)                     13:11:00

22   Q    So I will not belabor the point asking             13:11:00

1   you a series of questions that are not going to be          13:11:30

2   answered.  Mr. White, your counsel has advised me           13:11:33

3   that he is going to instruct you not to answer any          13:11:37

4   questions as it relates to this document.  We'll            13:11:39

5   move on from it then.  We'll take that up with the          13:11:41

6   Court.                                                      13:12:00

7          MR. STERN:  I'd like to turn to Exhibit             13:12:00

8   No. 9 to your motion.                                       13:12:03

9          (White Deposition Exhibit 15 marked for             13:12:03

10  identification and is attached to the transcript.)          13:12:05

11         THE COURT REPORTER:  And this will be               13:12:05

12  marked Exhibit 15.                                          13:12:17

13     Q    Mr. White, showing you what has been               13:12:19

14  marked as Exhibit 15 for the purposes of this               13:12:23

15  deposition, it is Exhibit 9 that you attached to            13:12:26

16  your motion.  Do you remember attaching this                13:12:28

17  document to your motion?                                    13:12:30

18     A    I remember attaching a similar document            13:12:31

19  to my motion; yes.                                          13:12:36

20     Q    Do you deny attaching this e-mail thread           13:12:37

21  to your motion?                                             13:12:41

22     A    I do not.                                           13:12:41

| | | |
|---|---|---|
| 1 | Q    Okay.  Go back to the top of the e-mail | 13:12:42 |
| 2 | thread, the very top -- | 13:12:47 |
| 3 | MR. STERN:  Can you scroll up a little | 13:12:51 |
| 4 | bit higher, just a little bit. | 13:12:51 |
| 5 | All right. | 13:12:54 |
| 6 | Q    -- it's an e-mail from me to John White | 13:12:55 |
| 7 | with a copy to Nena Willingham.  You're not a | 13:12:57 |
| 8 | recipient to this e-mail, are you? | 13:13:01 |
| 9 | MR. REDD:  Objection; same objection as | 13:13:02 |
| 10 | we discussed. | 13:13:06 |
| 11 | Same instruction. | 13:13:08 |
| 12 | Q    Do you see in the upper right-hand corner | 13:13:08 |
| 13 | it says "John | 13:13:14 |
| 14 | White | 13:13:14 |
| 15 | MR. REDD:  Same objection. | 13:13:14 |
| 16 | Same instruction. | 13:13:26 |
| 17 | MR. STERN:  Are you going to instruct him | 13:13:26 |
| 18 | to answer why -- not to answer why it says John | 13:13:28 |
| 19 | White at the very top in the upper right-hand | 13:13:32 |
| 20 | corner. | 13:13:34 |
| 21 | MR. REDD:  Unless there's something I'm | 13:13:34 |
| 22 | missing, I'm going to instruct the witness not to | 13:13:39 |

| | | |
|---|---|---|
| 1 | answer any questions further about this document. | 13:13:41 |
| 2 | MR. STERN:  Okay.  We'll take that up | 13:13:43 |
| 3 | with the Court. | 13:13:45 |
| 4 | I want to turn to -- Heather, can you | 13:14:26 |
| 5 | pull up Exhibit -- Document No. 49 that was filed. | 13:14:29 |
| 6 | (White Deposition Exhibit 16 marked for | 13:14:29 |
| 7 | identification and is attached to the transcript.) | 13:14:32 |
| 8 | THE COURT REPORTER:  This will be Exhibit | 13:14:32 |
| 9 | 16. | 13:15:05 |
| 10 | MR. STERN:  Thank you, Madam Court | 13:15:05 |
| 11 | Reporter. | 13:15:07 |
| 12 | Q    Mr. White, is this a copy of the reply | 13:15:07 |
| 13 | brief that you filed in connection with the motion | 13:15:11 |
| 14 | to quash the subpoena that was issued to you? | 13:15:13 |
| 15 | A    I only see the top part, but it looks | 13:15:15 |
| 16 | similar to a motion that I filed. | 13:15:21 |
| 17 | Q    Is that your signature? | 13:15:21 |
| 18 | A    I -- it appears it might be my signature, | 13:15:35 |
| 19 | but I don't know. | 13:15:40 |
| 20 | Q    Do you remember signing the reply brief | 13:15:40 |
| 21 | that you filed in this litigation? | 13:15:47 |
| 22 | A    I remember signing a reply; yes. | 13:15:49 |

| 1 | Q    Does that resemble the signature that you | 13:15:51 |
| 2 | put on the document when you filed it? | 13:15:57 |
| 3 | A    I don't know. | 13:15:59 |
| 4 | Q    Do you deny this is the reply brief you | 13:16:00 |
| 5 | filed in connect -- in this litigation? | 13:16:06 |
| 6 | A    I do not. | 13:16:08 |
| 7 | MR. STERN:  I would like to turn to | 13:16:09 |
| 8 | Exhibit 2 -- I'm sorry -- Exhibit 3 of that reply | 13:16:17 |
| 9 | brief. | 13:16:23 |
| 10 | Why don't you minimize it for a second, | 13:16:38 |
| 11 | Heather.  I want to ask some questions before | 13:16:40 |
| 12 | getting into that specific document. | 13:16:40 |
| 13 | THE COURT REPORTER:  And this will be | 13:16:40 |
| 14 | Exhibit 17. | 13:16:43 |
| 15 | MR. STERN:  All right.  When we pull it | 13:16:43 |
| 16 | up, it will be Exhibit 17.  Thank you. | 13:16:43 |
| 17 | (White Deposition Exhibit 17 marked for | 13:16:43 |
| 18 | identification and is attached to the transcript.) | 13:16:44 |
| 19 | Q    Mr. White -- | 13:16:44 |
| 20 | A    Yes, sir. | 13:16:44 |
| 21 | Q    -- have you and Dan White planned a | 13:16:49 |
| 22 | severance scheme before to extract money from the | 13:16:55 |

| | | |
|---|---|---|
| 1 | company that was not properly owed to anyone? | 13:16:58 |
| 2 | MR. JORDAN:  Objection.  That's a | 13:17:01 |
| 3 | confusing question that sounds a little bit like | 13:17:04 |
| 4 | have you stopped beating your wife. | 13:17:08 |
| 5 | Q    Michael? | 13:17:09 |
| 6 | MR. REDD:  And I also object. | 13:17:13 |
| 7 | A    Can you ask your question again, please, | 13:17:15 |
| 8 | Mr. Stern? | 13:17:20 |
| 9 | Q    Have you ever planned with Daniel White | 13:17:20 |
| 10 | to create a false severance arrangement to extract | 13:17:23 |
| 11 | money from the company when the severance was not | 13:17:29 |
| 12 | actually owed to a current or former employee of | 13:17:32 |
| 13 | the company? | 13:17:35 |
| 14 | MR. REDD:  Object to the form.  Object to | 13:17:35 |
| 15 | the argumentative nature. | 13:17:38 |
| 16 | You can answer. | 13:17:42 |
| 17 | A    No. | 13:17:43 |
| 18 | MR. STERN:  I'd like to pull up Exhibit 3 | 13:17:44 |
| 19 | to your reply. | 13:17:49 |
| 20 | Q    Is this an accurate copy of the Exhibit 3 | 13:17:52 |
| 21 | that you attached to your reply brief? | 13:18:05 |
| 22 | MR. STERN:  Heather, why don't we | 13:18:09 |

| | | |
|---|---|---|
| 1 | scroll -- I'm just looking at the e-mail with the | 13:18:12 |
| 2 | two attachments. | 13:18:14 |
| 3 | A    It appears similar to documents I have | 13:18:17 |
| 4 | seen before.  I don't remember if I attached it to | 13:18:25 |
| 5 | my filing or not, but I have no reason to doubt | 13:18:30 |
| 6 | that I did. | 13:18:33 |
| 7 | Q    Do you know why John White's name is at | 13:18:33 |
| 8 | the top of this document in the upper right-hand | 13:18:39 |
| 9 | corner? | 13:18:43 |
| 10 | MR. REDD:  Objection; same objection from | 13:18:43 |
| 11 | the last break. | 13:18:46 |
| 12 | Same instruction. | 13:18:48 |
| 13 | Do you want me to -- do you want me to | 13:18:51 |
| 14 | ask Mr. White to leave for a second, Steve? | 13:18:53 |
| 15 | MR. STERN:  No.  You're -- are you | 13:18:55 |
| 16 | instructing him not to answer? | 13:18:57 |
| 17 | MR. REDD:  Correct.  And unless there's | 13:18:59 |
| 18 | going to be a different basis for anything that's | 13:19:01 |
| 19 | attached to the reply that we didn't discuss with | 13:19:04 |
| 20 | regard to the motion itself and those attachments, | 13:19:09 |
| 21 | the reasons and the instructions are going to be | 13:19:14 |
| 22 | the same. | 13:19:17 |

1    MR. STERN:  Well, I'm going to ask him          13:19:17

2    questions as relates to the substance of this    13:19:19

3    document.                                         13:19:21

4        Q    Mr. White, do you see that there's an   13:19:21

5    e-mail in the string that you attached to your   13:19:24

6    reply brief dated October 15, 2015, to Daniel -- 13:19:27

7    from Daniel White.  I'm -- were you a recipient to 13:19:31

8    that e-mail?                                      13:19:35

9        MR. REDD:  Objection; same objection.        13:19:36

10       Same instruction.                             13:19:39

11       Q    That e-mail refers to a severance to    13:19:40

12   Mr. DiPaula and Mr. Miller.  Do you see that?     13:19:46

13       MR. REDD:  Same objection; Rule 30(c)(2).    13:19:50

14       Same instruction.                             13:19:57

15       Q    Did Compass Marketing have a severance  13:19:57

16   agreement with Chip DiPaula and Patrick Miller?   13:20:00

17       MR. REDD:  Same objection.                   13:20:05

18       Same instruction.                             13:20:07

19       Outside the scope of the Court's order,       13:20:10

20   among other reasons I've stated.                  13:20:13

21       Q    Why did you attach this e-mail and the  13:20:13

22   two checks that follow to your reply brief?       13:20:16

1          MR. REDD:  Same objection.                    13:20:20

2          Same instruction.                             13:20:22

3     Q    How did you access this e-mail and the        13:20:23

4  two checks that are attached?                          13:20:35

5          MR. REDD:  Same objection.                    13:20:36

6          Same instruction.                             13:20:39

7     Q    Where did you obtain a copy of this           13:20:40

8  e-mail and the two checks that are attached?           13:20:43

9          MR. REDD:  Same objection.                    13:20:45

10         Same instruction.                             13:20:52

11         MR. JORDAN:  Just -- just for the record,     13:20:52

12 Stephen, if -- if you wish to file a motion to         13:21:00

13 compel Mr. White to answer with regard to this         13:21:03

14 e-mail and this matter, I'll join your motion.         13:21:06

15         MR. STERN:  You're going to join or --        13:21:10

16         MR. JORDAN:  Join, yeah.  I would like        13:21:12

17 Mr. White to answer.                                   13:21:15

18         MR. STERN:  Thank you.                        13:21:16

19         I don't know when I'll be filing, but         13:21:18

20 obviously I will be circling back to that.             13:21:28

21         MR. JORDAN:  That portion.  I'm not           13:21:30

22 saying on any other portion, but that portion.         13:21:33

| | | |
|---|---|---|
| 1 | MR. STERN:  Understood. | 13:21:35 |
| 2 | Heather, why don't we pull that down for | 13:21:42 |
| 3 | a moment. | 13:21:44 |
| 4 | Q    And I'm going to ask Mr. White, are you | 13:21:44 |
| 5 | familiar with a P.O. Box 639 located in St. | 13:22:04 |
| 6 | Helena, South Carolina, ZIP code 29920? | 13:22:13 |
| 7 | MR. REDD:  Objection.  I'd like to -- I'd | 13:22:14 |
| 8 | like the witness to step out again. | 13:22:24 |
| 9 | (Mr. White left the room.) | 13:22:28 |
| 10 | MR. STERN:  Is he out of the room, | 13:22:28 |
| 11 | Justin? | 13:22:39 |
| 12 | MR. REDD:  He's out.  Is this the same -- | 13:22:39 |
| 13 | the same basis for asking questions about where | 13:22:42 |
| 14 | you're going next? | 13:22:46 |
| 15 | MR. STERN:  You realize there is a | 13:22:47 |
| 16 | counterclaim filed and a cross -- and a | 13:22:49 |
| 17 | third-party Complaint filed in this case; correct? | 13:22:50 |
| 18 | Justin? | 13:23:01 |
| 19 | MR. REDD:  What's the -- what's the | 13:23:03 |
| 20 | connection to this case? | 13:23:04 |
| 21 | MR. STERN:  Compass Marketing has filed | 13:23:05 |
| 22 | its own claim related to anonymous mailings that | 13:23:09 |

| | | |
|---|---|---|
| 1 | have been circulated to third parties that are | 13:23:13 |
| 2 | harmful to Compass Marketing's business. | 13:23:15 |
| 3 | MR. REDD:  I understand that that's in | 13:23:18 |
| 4 | the counterclaim, yeah. | 13:23:24 |
| 5 | MR. STERN:  And a series of these | 13:23:26 |
| 6 | anonymous mailings have all come from a certain | 13:23:28 |
| 7 | P.O. box.  I'm asking Michael White if he knows | 13:23:31 |
| 8 | anything about that P.O. box.  Are you going to | 13:23:34 |
| 9 | instruct him not to answer? | 13:23:36 |
| 10 | MR. REDD:  No.  I just didn't know what | 13:23:37 |
| 11 | the -- what the question basis was going to be. | 13:23:40 |
| 12 | That came out of the blue to me so that's why I | 13:23:43 |
| 13 | asked him to step out of the room.  No, I will not | 13:23:46 |
| 14 | be.  I will not be instructing him not to answer. | 13:23:48 |
| 15 | He will answer the questions. | 13:23:53 |
| 16 | (Mr. White entered the room.) | 13:23:53 |
| 17 | MR. STERN:  All right.  Madam Court | 13:23:53 |
| 18 | Reporter, can you read back my question, please. | 13:23:54 |
| 19 | (The pending question was read.) | 13:23:54 |
| 20 | A     I am aware of it from a filing you made | 13:23:54 |
| 21 | in the Virginia case, the Virginia civil case. | 13:24:46 |
| 22 | Q     Independent of that filing in the | 13:24:51 |

1    Virginia litigation, do you have any knowledge of          13:24:54

2    who owns or uses that P.O. box?                            13:24:57

3         A    Independent of your filing, no.                  13:24:59

4         Q    Have you ever mailed anything to any             13:25:02

5    person or company with a return address with that         13:25:08

6    P.O. box?                                                  13:25:13

7         A    Not that I'm aware of.                           13:25:13

8         Q    Not that you're aware of.                        13:25:16

9              Would you know whether you've                    13:25:19

10   instructed -- or whether you put something in the         13:25:21

11   mail with that certain return address?                    13:25:23

12        A    I am not aware of ever using that return         13:25:27

13   address.                                                   13:25:32

14        Q    Have you ever instructed anyone to put          13:25:32

15   something in the mail related to Compass Marketing        13:25:36

16   with that return address on the envelope?                  13:25:41

17        A    I have not.                                      13:25:43

18        Q    Do you know someone by the name of Chip         13:25:45

19   Ewing?                                                     13:25:45

20             MR. REDD:  Say the name again; sorry.            13:25:52

21             MR. STERN:  Chip Ewing, as in E-W -- like       13:25:53

22   as in Patrick Ewing, E-W-I-N-G.                            13:25:58

1       MR. REDD:  That doesn't give context for       13:26:04

2   me to understand the spelling.  Thanks.  Sorry; I   13:26:07

3   didn't mean to talk over you.                       13:26:09

4       A    I am aware of somebody who carries a       13:26:09

5   nickname of Chip Ewing.                             13:26:12

6       Q    What's Chip Ewing's name that's not --     13:26:13

7   well, what's his name if that's not -- if that's    13:26:17

8   his nickname?                                       13:26:17

9       A    I'm not sure.                              13:26:17

10      Q    Do you know a Chip Ewing going by any      13:26:20

11  other name?                                         13:26:27

12      A    I -- the Chip Ewing that I know has a      13:26:27

13  formal name.  I am not positive of what it is.      13:26:32

14      Q    Well, what's the formal name that you      13:26:35

15  know of?                                            13:26:39

16      A    Detective Ewing.                           13:26:39

17      Q    And did you work with Detective Ewing for  13:26:45

18  a period of time?                                   13:26:50

19      A    I did.                                     13:26:51

20      Q    From when to when did you work with        13:26:52

21  Detective Ewing?                                    13:26:56

22      A    I don't remember the exact dates.  I       13:26:56

```
 1   would have to guess.                                13:27:07

 2        Q    Approximately when?                       13:27:08

 3        A    Approximately 2000 -- I take that back.   13:27:09

 4   Approximately 1998 to approximately 2000 I          13:27:22

 5   would -- and that is a guess.                       13:27:28

 6        Q    Have you been in touch with Detective     13:27:31

 7   Ewing since 2000?                                   13:27:36

 8        A    I have.                                   13:27:37

 9        Q    When was the last time you communicated   13:27:39

10   with Detective Ewing?                               13:27:43

11        A    I would have to guess my answer on that   13:27:44

12   one.                                                13:28:00

13        Q    Have you communicated with Detective      13:28:00

14   Ewing in the year 2021?                             13:28:02

15        A    I have.                                   13:28:04

16        Q    How many times?                           13:28:05

17        A    I don't know.  I would have to guess.     13:28:07

18        Q    Would it be more than five?               13:28:12

19        A    Maybe.                                    13:28:14

20        Q    More than ten?                            13:28:20

21        A    Probably not.                             13:28:22

22        Q    When you communicated with Detective      13:28:26
```

| | | |
|---|---|---|
| 1 | Ewing in 2021, did you talk at all about Compass | 13:28:30 |
| 2 | Marketing? | 13:28:33 |
| 3 | A    Yes. | 13:28:33 |
| 4 | Q    What did you discuss with Detective Ewing | 13:28:33 |
| 5 | related to Compass Marketing? | 13:28:39 |
| 6 | A    I discussed that you had filed paperwork | 13:28:39 |
| 7 | and made accusations against him in a civil court | 13:28:46 |
| 8 | in Virginia. | 13:28:50 |
| 9 | Q    Did you have that discussion with him in | 13:28:51 |
| 10 | 2021 or 2020? | 13:28:54 |
| 11 | A    I believe it was 2021. | 13:28:56 |
| 12 | Q    Did you have any discussions with | 13:29:01 |
| 13 | Mr. Ewing during 2020 related to Compass | 13:29:04 |
| 14 | Marketing? | 13:29:07 |
| 15 | A    I don't remember doing that, no. | 13:29:07 |
| 16 | Q    Did you have any discussions with | 13:29:15 |
| 17 | Mr. Ewing in 2019 related to Compass Marketing? | 13:29:20 |
| 18 | A    I don't remember doing that. | 13:29:22 |
| 19 | Q    Did you have any discussions with | 13:29:26 |
| 20 | Mr. Ewing in 2019 related to a company known as | 13:29:30 |
| 21 | Tagnetics, Inc.? | 13:29:38 |
| 22 | MR. REDD:  Objection.  I'm just trying to | 13:29:38 |

1   see where you're going with this, Stephen.  But if          13:29:42

2   you want him to step out of the room again, we can          13:29:44

3   have a discussion.                                          13:29:47

4           MR. STERN:  All right.  Have him step out           13:29:48

5   of the room.                                                13:29:50

6           (Mr. White left the room.)                          13:29:51

7           MR. REDD:  This is coming around to                 13:29:56

8   Compass' counterclaim or Boshea?                            13:30:07

9           MR. STERN:  There's been a series of                13:30:07

10  anonymous mailings.  Compass Marketing is a                 13:30:12

11  partial owner of a company known as Tagnetics,              13:30:16

12  Inc., so I'm asking about that.                             13:30:19

13          MR. REDD:  Okay.  But Tagnetics, Inc.,              13:30:27

14  was one of the areas of inquiry that Compass said           13:30:29

15  had nothing to do with this case; right?                    13:30:35

16          MR. STERN:  I didn't say it had nothing             13:30:37

17  to do with this case.                                       13:30:40

18          MR. REDD:  I'm failing to see how this is           13:30:41

19  different from the previous areas that I've stated          13:30:56

20  the reasons why they're outside the scope of                13:31:00

21  proper questioning.                                         13:31:04

22          MR. STERN:  Are you instructing him not             13:31:05

1    to answer?                                                    13:31:07

2            MR. REDD:  There's a difference                       13:31:07

3    between -- there's a difference bet -- well, I'm              13:31:08

4    asking if there's a difference that I'm not                   13:31:10

5    picking up on between where this set of questions             13:31:15

6    falls in the scope or whether it's the same as                13:31:20

7    prior and if there's something that --                        13:31:25

8            MR. STERN:  So the anonymous mailings                 13:31:27

9    conflate Compass Marketing and Tagnetics.                     13:31:32

10           MR. REDD:  Yeah.  Yeah, and Tagnetics                 13:31:32

11   (indiscernible).                                              13:31:32

12           (Talking over)                                        13:31:38

13           MR. JORDAN:  What is that -- what's the               13:31:38

14   relevance of anonymous mailings?                              13:31:42

15           MR. REDD:  It's --                                    13:31:42

16           MR. JORDAN:  Hold on, Justin.  What's the             13:31:44

17   relevance of --                                               13:31:46

18           MR. REDD:  Go ahead.                                  13:31:46

19           MR. JORDAN:  -- anonymous mailings to                 13:31:47

20   Tagnetics to David Boshea and the lawsuit.                    13:31:51

21           MR. STERN:  You saw our counterclaim and             13:31:51

22   our third-party --                                            13:31:54

| | | |
|---|---|---|
| 1 | MR. JORDAN:  Well, I did -- I did see | 13:31:55 |
| 2 | your counterclaim.  It doesn't have anything to do | 13:31:56 |
| 3 | with Tagnetics.  There's two things:  There's a | 13:31:58 |
| 4 | realtor and an appraiser and there is White Eagle | 13:32:00 |
| 5 | Country Club dues.  And I don't know -- that | 13:32:03 |
| 6 | doesn't have anything to do with Tagnetics. | 13:32:06 |
| 7 | MR. STERN:  If Mr. White is part and | 13:32:07 |
| 8 | parcel of these anonymous mailings as it relates | 13:32:11 |
| 9 | to other companies that are a part -- any of the | 13:32:15 |
| 10 | anonymous mailings that is aimed to hurt Compass | 13:32:18 |
| 11 | Marketing, that is relevant, it shows to motive. | 13:32:24 |
| 12 | MR. JORDAN:  No, it -- | 13:32:24 |
| 13 | MR. STERN:  It shows motive. | 13:32:24 |
| 14 | MR. JORDAN:  It doesn't show motive. | 13:32:27 |
| 15 | MR. STERN:  It does. | 13:32:27 |
| 16 | MR. JORDAN:  For what? | 13:32:27 |
| 17 | MR. STERN:  We're not going to make | 13:32:27 |
| 18 | this -- you guys are killing a lot of the time | 13:32:27 |
| 19 | here. | 13:32:29 |
| 20 | MR. JORDAN:  I -- I've hardly said -- | 13:32:29 |
| 21 | MR. STERN:  I don't get more time -- | 13:32:29 |
| 22 | MR. JORDAN:  Hold on.  Hold on, Stephen. | 13:32:31 |

| | | |
|---|---|---|
| 1 | I hardly said anything today.  Please don't | 13:32:31 |
| 2 | include me in that.  I have -- I have been brief | 13:32:35 |
| 3 | in my objections, but the fact that you're -- | 13:32:37 |
| 4 | you're exploring some claim against Michael White | 13:32:41 |
| 5 | presumably, who is not a party to the litigation, | 13:32:45 |
| 6 | with not a connection of any of this to David | 13:32:48 |
| 7 | Boshea is not relevant and I -- that's my | 13:32:50 |
| 8 | objection. | 13:32:56 |
| 9 |         MR. STERN:  Justin, are you instructing | 13:32:59 |
| 10 | him not to answer? | 13:33:00 |
| 11 |         MR. REDD:  Subject to finishing this | 13:33:03 |
| 12 | discussion out, we'll see.  But, you know, the | 13:33:06 |
| 13 | reason that I've asked him to step out a couple | 13:33:10 |
| 14 | times when it's clear that something is or isn't | 13:33:14 |
| 15 | in the scope of the order, I'm trying to let | 13:33:18 |
| 16 | things go and do it quickly, but here it was | 13:33:21 |
| 17 | unclear to me.  I wanted to clarify it because if | 13:33:24 |
| 18 | this does have connections that Greg is saying are | 13:33:27 |
| 19 | lacking and I'm -- I agree with Greg on, then I | 13:33:31 |
| 20 | want the witness to answer and I don't want to | 13:33:37 |
| 21 | stand in the way of a proper line of inquiry. | 13:33:39 |
| 22 |         But in addition to what Greg -- | 13:33:41 |

| | | |
|---|---|---|
| 1 | MR. STERN:  Look, I appreciate you asking | 13:33:41 |
| 2 | him to leave. | 13:33:41 |
| 3 | MR. REDD:  -- in addition to what Greg | 13:33:43 |
| 4 | just said, Compass Marketing said in UCF 42 | 13:33:44 |
| 5 | anything -- many categories about Tagnetics have | 13:33:52 |
| 6 | nothing to do with the instant lawsuit.  It might | 13:33:54 |
| 7 | have something to do with other lawsuits or | 13:33:57 |
| 8 | investigations that are going on in your mind, but | 13:34:00 |
| 9 | that does not make it a proper line of questioning | 13:34:02 |
| 10 | in this deposition.  All right?  You stated -- | 13:34:06 |
| 11 | MR. STERN:  It goes to his motive if he's | 13:34:07 |
| 12 | participated in this. | 13:34:12 |
| 13 | MR. JORDAN:  Motive for what? | 13:34:12 |
| 14 | MR. STERN:  It goes to accountability. | 13:34:12 |
| 15 | MR. REDD:  Okay.  Anything but -- | 13:34:12 |
| 16 | MR. JORDAN:  No, no.  That's -- that's | 13:34:14 |
| 17 | too far afield. | 13:34:15 |
| 18 | MR. STERN:  It goes to the motive as far | 13:34:17 |
| 19 | as this.  With the anonymous mailings it goes to | 13:34:17 |
| 20 | credibility.  He's lying about the anonymous | 13:34:20 |
| 21 | mailings. | 13:34:24 |
| 22 | MR. REDD:  Okay.  So disagree that there | 13:34:24 |

| | | |
|---|---|---|
| 1 | has been lying of any kind.  And your suspicion | 13:34:31 |
| 2 | about the anonymous mailings and -- and the | 13:34:38 |
| 3 | counterclaims still does not connect anything | 13:34:41 |
| 4 | about Tagnetics to this case.  And, you know, if | 13:34:43 |
| 5 | there's a different basis that you haven't stated, | 13:34:51 |
| 6 | I want to listen to it, but I'm not hearing | 13:34:54 |
| 7 | anything different than the basis that I said | 13:34:57 |
| 8 | earlier and gave a proper instruction not to | 13:35:02 |
| 9 | answer.  So failing anything new from you, | 13:35:08 |
| 10 | Stephen, it's going to be the same objection and | 13:35:13 |
| 11 | the same instruction.  So I'll get him back. | 13:35:15 |
| 12 |         MR. STERN:  Fine. | 13:35:15 |
| 13 |         (Mr. White entered the room.) | 13:35:17 |
| 14 | BY MR. STERN: | 13:35:40 |
| 15 |     Q    Mr. White, your attorney has instructed | 13:35:21 |
| 16 | you not to answer any questions as it relates to | 13:35:43 |
| 17 | anonymous mailings related to a company known as | 13:35:46 |
| 18 | Tagnetics.  I'll go back to the questions.  We | 13:35:51 |
| 19 | don't accept that objection as being -- | 13:35:51 |
| 20 | instruction as being proper; nevertheless, for the | 13:35:52 |
| 21 | purposes of continuing this going forward I'll | 13:35:55 |
| 22 | circle back to questions. | 13:35:57 |

| | | |
|---|---|---|
| 1 | Other than the conversation you had in | 13:35:58 |
| 2 | 2021 -- | 13:36:03 |
| 3 | MR. REDD:  Hold on one second.  Hold on; | 13:36:03 |
| 4 | sorry.  I don't think your characterization of | 13:36:05 |
| 5 | what I was objecting to is completely accurate in | 13:36:06 |
| 6 | what you just said.  You said a lot in that | 13:36:10 |
| 7 | sentence.  I want to streamline it, too, but not | 13:36:12 |
| 8 | at the expense of being precise and correct. | 13:36:15 |
| 9 | MR. STERN:  All right.  What did I | 13:36:15 |
| 10 | misstate? | 13:36:15 |
| 11 | MR. REDD:  The questions -- the questions | 13:36:15 |
| 12 | that I -- as I -- do you want him to step out | 13:36:23 |
| 13 | again? | 13:36:24 |
| 14 | MR. STERN:  No.  That's fine. | 13:36:24 |
| 15 | MR. REDD:  Okay.  Your questions, as I | 13:36:25 |
| 16 | understood them, one, you didn't -- I believe you | 13:36:28 |
| 17 | asked at the beginning whether Mr. White was | 13:36:34 |
| 18 | involved in any anonymous mailings, and he said | 13:36:37 |
| 19 | no.  And then we're getting into things about | 13:36:40 |
| 20 | Tagnetics that -- that I did not -- one, did not | 13:36:49 |
| 21 | see the connection to anonymous mailings; but, | 13:36:49 |
| 22 | two, if you're just -- you're lumping in a lot of | 13:36:54 |

1   different questions into your summary of what I          13:36:54

2   was objecting to and instructing him not to             13:36:56

3   answer.  So I don't want to purport to correct it       13:36:58

4   for you or say what I think it was, but there was       13:37:04

5   a difference in my understanding.                       13:37:06

6           MR. STERN:  I will agree to disagree.           13:37:06

7   And let me get back to my questioning.                  13:37:09

8       Q    Other than the conversation in 2021 with       13:37:11

9   Mr. Ewing where you informed him about the filing       13:37:16

10  that was made in Virginia litigation, did you have      13:37:20

11  any other discussions with Mr. Ewing related to         13:37:23

12  Compass Marketing?                                      13:37:26

13      A    I don't believe so, no.                        13:37:26

14      Q    Where does Mr. Ewing live?                     13:37:33

15      A    I don't know.                                  13:37:35

16      Q    When was the last time you saw Mr. Ewing?      13:37:39

17      A    July 4, 2021.                                  13:37:45

18      Q    Where did you see him?                         13:37:55

19      A    At my residence.                               13:37:57

20      Q    Do you know what state Mr. Ewing lives         13:37:59

21  in?                                                     13:38:06

22      A    I know what state he tells me he lives         13:38:06

1     in.                                                    13:38:12

2          Q     What state does he tell you he lives in?    13:38:12

3          A     South Carolina.                             13:38:16

4          Q     Do you ever send any mail to Mr. Ewing?     13:38:18

5          A     No.                                         13:38:23

6          Q     Do you know whether he uses a street        13:38:25

7     address or a P.O. box for his mail?                    13:38:29

8          A     I do not.                                   13:38:31

9          Q     Do you know what city in South Carolina     13:38:33

10    Mr. Ewing says he lives in?                            13:38:38

11         A     I do not.                                   13:38:41

12         Q     Do you know if at any point in time         13:38:43

13    Mr. Ewing has communicated to you that he says he      13:38:48

14    resides in St. Helena, South Carolina?                 13:38:51

15         A     I do not remember that, no.                 13:38:55

16              MR. STERN:  All right.  Why don't we take    13:38:57

17    a short break, about ten minutes.                      13:39:10

18              MR. JORDAN:  Okay.                           13:39:10

19              MR. STERN:  All right.                       13:39:12

20              VIDEO TECHNICIAN:  The time is 1:39 p.m.     13:39:12

21    We're off the record.                                  13:39:15

22              (A recess was taken.)                        13:39:16

| | | |
|---|---|---|
| 1 | VIDEO TECHNICIAN:  We are on the record | 13:39:16 |
| 2 | at 1:51 p.m. | 13:51:15 |
| 3 | BY MR. STERN: | 13:51:18 |
| 4 | Q    I would like to show you a new document. | 13:51:18 |
| 5 | It's an e-mail from you to John White dated | 13:51:24 |
| 6 | November 24, 2018, is the most recent in that | 13:51:29 |
| 7 | string. | 13:51:34 |
| 8 | MS. YEUNG:  Stephen, can you hear me? | 13:51:34 |
| 9 | MR. STERN:  Now I can.  Hello? | 13:52:01 |
| 10 | MS. YEUNG:  I need another clue as to | 13:52:03 |
| 11 | what document you want me to pull up. | 13:52:08 |
| 12 | MR. STERN:  It's the e-mail -- I'll step | 13:52:08 |
| 13 | in really briefly. | 13:52:08 |
| 14 | MS. YEUNG:  Does it have a Bates number? | 13:52:10 |
| 15 | MR. STERN:  No, it does -- oh, yeah. | 13:52:11 |
| 16 | 495; I'm sorry.  DJW'495.  I didn't realize it was | 13:52:15 |
| 17 | a Bates number.  It's kind of blocked out a little | 13:52:17 |
| 18 | bit. | 13:52:21 |
| 19 | MS. YEUNG:  Give me just a minute to pull | 13:52:21 |
| 20 | it up.  Apologies. | 13:52:52 |
| 21 | MR. STERN:  Is it going to take you a few | 13:52:54 |
| 22 | minutes to get these ready? | 13:53:16 |

1        MS. YEUNG:  No.                                    13:53:19

2        MR. STERN:  Why don't we go off the               13:53:20

3   record until the -- this document is ready.            13:53:31

4        MS. YEUNG:  I've got it now.                       13:53:32

5        THE COURT REPORTER:  And this will be             13:53:34

6   Exhibit 18.                                             13:53:42

7        MR. STERN:  Thank you, Madam Court                13:53:42

8   Reporter.                                               13:53:42

9        (White Deposition Exhibit 18 marked for            13:53:42

10  identification and is attached to the transcript.)      13:53:42

11       Q    I'm showing you -- Mr. White, I'm showing     13:53:42

12  you what's been marked as Exhibit No. 18.  The          13:53:46

13  most recent e-mail in this thread is from you to        13:53:50

14  John White and Daniel White dated November 24,          13:53:53

15  2018, at 9:04 a.m. and it has a Cc: Copy to             13:53:57

16  Compass@compassmarketinginc.com.  Do you see that?      13:54:02

17       A    I see what's on your screen, yes.             13:54:07

18       Q    Did you send that e-mail?                     13:54:09

19       A    I sent an e-mail similar to it.               13:54:11

20       Q    What is different about this e-mail from      13:54:17

21  the one you sent?                                       13:54:22

22       A    I don't know.                                 13:54:23

1        Q    Why don't you take a moment to read                13:54:24

2    through it?                                                  13:54:27

3        MR. JORDAN:  Are you e-mailing these                     13:54:27

4    documents to Justin so he can look at them in that           13:54:32

5    fashion?  I know I'm getting them.                           13:54:37

6        MS. YEUNG:  I am.                                        13:54:38

7        MR. JORDAN:  To the extent that would                    13:54:40

8    help things, Justin, if you want to look at it on            13:54:42

9    your computer and show Mr. White.                            13:54:44

10       MR. REDD:  Thanks.  I've got them on the                 13:54:47

11   screen here and it -- and I'm receiving Heather's            13:54:49

12   e-mails, thank you.                                          13:54:53

13       MR. JORDAN:  Okay.                                       13:54:54

14       A    Do you want me to review below what it --           13:54:58

15   below "Regards Mike"?                                        13:55:09

16       Q    Yes.  There is another e-mail.  The first           13:55:09

17   e-mail in the string is dated November 23, 2018,             13:55:13

18   at 12:24 p.m. and it is from John White to you               13:55:17

19   with a copy, Cc: Copy, to John White.                        13:55:21

20       In the original e-mail in the string he's               13:55:27

21   advising you that your employment is being                   13:55:28

22   terminated; is that correct?                                 13:55:30

| | | |
|---|---|---|
| 1 | A    That's what the words say, yes. | 13:55:31 |
| 2 | Q    Have you performed any job duties for | 13:55:47 |
| 3 | Compass Marketing since November 23, 2018? | 13:55:53 |
| 4 | MR. REDD:  Objection; asked and answered. | 13:55:55 |
| 5 | You can answer. | 13:56:08 |
| 6 | A    Yes.  Yes, I have. | 13:56:08 |
| 7 | Q    What duties have you performed for | 13:56:09 |
| 8 | Compass Marketing since November 23, 2018? | 13:56:13 |
| 9 | A    I have been an owner of Compass Marketing | 13:56:14 |
| 10 | since that date.  On that particular date I -- or | 13:56:22 |
| 11 | after that particular date I performed several | 13:56:26 |
| 12 | payrolls, I submitted several reports, I've paid | 13:56:31 |
| 13 | several bills, I put together several desks, fixed | 13:56:36 |
| 14 | several chairs. | 13:56:49 |
| 15 | Q    When did you stop doing payroll? | 13:56:49 |
| 16 | A    When I was locked out of the payroll | 13:56:51 |
| 17 | system I believe was somewhere around May of 2019. | 13:56:56 |
| 18 | Q    Did you write any checks to yourself | 13:57:00 |
| 19 | after your -- you were notified that your | 13:57:07 |
| 20 | employment was being terminated? | 13:57:10 |
| 21 | A    I don't know if I wrote checks to myself, | 13:57:11 |
| 22 | but I didn't stop doing anything after November 23 | 13:57:21 |

| 1 | that I was normally doing. | 13:57:25 |
| 2 | Q    Did you write checks to Daniel White | 13:57:27 |
| 3 | after November 23, 2018? | 13:57:30 |
| 4 | A    I don't know. | 13:57:32 |
| 5 | Q    Did you have John White's consent to | 13:57:34 |
| 6 | perform any of these duties that you performed | 13:57:43 |
| 7 | after November 23, 2018? | 13:57:45 |
| 8 | MR. JORDAN:  Objection; foundation. | 13:57:47 |
| 9 | A    I don't know if I had John White's | 13:57:51 |
| 10 | consent and I don't know if I needed John White's | 13:57:59 |
| 11 | consent, so the answer to your question would be | 13:58:02 |
| 12 | no. | 13:58:05 |
| 13 | Q    Are you aware that there was a meeting in | 13:58:05 |
| 14 | February of 2019 where you were voted off the | 13:58:11 |
| 15 | board of directors of Compass Marketing? | 13:58:16 |
| 16 | MR. JORDAN:  Objection; compound. | 13:58:17 |
| 17 | Q    Mr. White? | 13:58:23 |
| 18 | MR. REDD:  He answered. | 13:58:32 |
| 19 | Q    I couldn't hear it. | 13:58:35 |
| 20 | MR. REDD:  He answered. | 13:58:35 |
| 21 | If you'd repeat it. | 13:58:37 |
| 22 | THE COURT REPORTER:  Oh, I didn't hear it | 13:58:37 |

1   either.                                                13:58:39

2        A    Can you repeat the question, please?        13:58:39

3        Q    Are you aware that there was a board         13:58:41

4   meeting -- I'm sorry -- a shareholders meeting in      13:58:43

5   February 2019 where you were voted off the board       13:58:44

6   of directors of Compass Marketing?                     13:58:49

7             MR. JORDAN:  Same objection.                 13:58:49

8        A    No.  No.                                      13:58:52

9        Q    You're not aware that that meeting took      13:58:52

10  place?                                                 13:58:58

11       A    I am not.                                     13:58:58

12       Q    In the e-mail at the very top of this        13:59:00

13  string, I'm going to direct you to the one, two,       13:59:17

14  three, four lines from the bottom all the way on       13:59:31

15  the right.  It starts:  "John, if you wish to          13:59:35

16  destroy this company, you will be doing it through     13:59:38

17  me, not around me or with me."                         13:59:41

18            Was that a threat?                            13:59:45

19            MR. REDD:  Objection; form.                   13:59:47

20       A    No.                                           13:59:49

21       Q    Your e-mail continues:  "You should put     13:59:53

22  on your big boy pants.  You will need them."           13:59:57

| | | |
|---|---|---|
| 1 | Was that intended to be a threat to John | 14:00:01 |
| 2 | White? | 14:00:03 |
| 3 | MR. REDD:  Objection; form. | 14:00:03 |
| 4 | A    No. | 14:00:05 |
| 5 | Q    What did you mean when you said in your | 14:00:07 |
| 6 | e-mail that "...you will be doing it through me, | 14:00:11 |
| 7 | not around me or with me" and that "You should put | 14:00:14 |
| 8 | on your big boy pants.  You will need them."  What | 14:00:17 |
| 9 | did you mean by those sentences? | 14:00:21 |
| 10 | A    I meant that he would have to destroy the | 14:00:24 |
| 11 | company without my help. | 14:00:28 |
| 12 | Q    Do you want to see the company destroyed? | 14:00:29 |
| 13 | A    No. | 14:00:33 |
| 14 | Q    Do you want to see the company dissolved? | 14:00:36 |
| 15 | A    On November 24, 2018? | 14:00:39 |
| 16 | Q    No, at present.  Do you want to see | 14:00:46 |
| 17 | Compass Marketing -- | 14:00:46 |
| 18 | A    Presently -- | 14:00:46 |
| 19 | Q    -- dissolved? | 14:00:49 |
| 20 | MR. REDD:  Objection.  Again, it's far | 14:00:49 |
| 21 | outside the scope of this case. | 14:00:57 |
| 22 | MR. STERN:  It goes to motive. | 14:00:58 |

| | | |
|---|---|---|
| 1 | MR. REDD:  Mainly he's being asked for an | 14:01:03 |
| 2 | improper purpose for use in separate litigation | 14:01:05 |
| 3 | and separate investigations. | 14:01:07 |
| 4 | MR. STERN:  This is a simple question as | 14:01:09 |
| 5 | to -- it goes to his motive. | 14:01:13 |
| 6 | MR. REDD:  When are you going to ask | 14:01:13 |
| 7 | about Mr. Boshea's -- whether Mr. Boshea's | 14:01:17 |
| 8 | entitled to severance or not that is at issue | 14:01:19 |
| 9 | here? | 14:01:22 |
| 10 | MR. STERN:  Are you instructing him not | 14:01:23 |
| 11 | to answer? | 14:01:24 |
| 12 | MR. REDD:  No.  But I -- I'm saying that | 14:01:25 |
| 13 | this line of questioning is not going towards | 14:01:29 |
| 14 | anything that is relevant to this case.  Relevance | 14:01:31 |
| 15 | is standard. | 14:01:35 |
| 16 | You can answer, but we're going to get to | 14:01:39 |
| 17 | a point where there might have to be another | 14:01:41 |
| 18 | instruction.  I hope we don't. | 14:01:45 |
| 19 | Go ahead. | 14:01:49 |
| 20 | A    Please repeat your question, Mr. Stern. | 14:01:49 |
| 21 | Q    As of today do you want to see Compass | 14:01:51 |
| 22 | Marketing dissolve? | 14:01:55 |

| | | |
|---|---|---|
| 1 | A     As of today I have filed a joint motion | 14:01:56 |
| 2 | to dissolve Compass Marketing. | 14:02:03 |
| 3 | Q     Why do you want to see Compass Marketing | 14:02:03 |
| 4 | dissolved? | 14:02:10 |
| 5 | A     Compass Marketing has become a criminal | 14:02:10 |
| 6 | enterprise and I am attached to Compass Marketing | 14:02:17 |
| 7 | and I want to detach myself from Compass | 14:02:22 |
| 8 | Marketing. | 14:02:24 |
| 9 | Q     Have you wanted Compass Marketing to be | 14:02:24 |
| 10 | dissolved since the termination of your | 14:02:33 |
| 11 | employment? | 14:02:35 |
| 12 | A     No. | 14:02:35 |
| 13 | Q     Have you wanted to extract money -- | 14:02:36 |
| 14 | A     I have never -- | 14:02:37 |
| 15 | Q     -- from Compass Marketing that you did | 14:02:38 |
| 16 | not earn either before or after your employment | 14:02:44 |
| 17 | with Compass Marketing ended? | 14:02:48 |
| 18 | MR. REDD:  Objection.  We're getting into | 14:02:48 |
| 19 | the territory of harassment, intimidation, | 14:02:52 |
| 20 | improper purpose.  These questions are not proper; | 14:02:56 |
| 21 | they have nothing to do with this case. | 14:03:01 |
| 22 | You can answer. | 14:03:04 |

```
1        A    Please repeat your question.                    14:03:04

2             MR. STERN:  Could you repeat the                14:03:07

3    question, Madam Court Reporter.                          14:03:08

4             (The pending question was read.)                14:03:09

5             MR. JORDAN:  Objection; asked and               14:03:09

6    answered.                                                14:03:27

7        A    I don't understand that question.  It           14:03:27

8    sounds like there's about three questions in             14:03:30

9    there.                                                   14:03:32

10       Q    Well, prior to your employment with             14:03:32

11   Compass Marketing ending, did you take any money         14:03:38

12   from the company that you did not earn?                  14:03:39

13       A    My employment with Compass Marketing has        14:03:40

14   not ended.                                               14:03:47

15            MR. JORDAN:  Objection to relevance             14:03:47

16   anyway.                                                  14:03:50

17       Q    Any time prior to today have you taken          14:03:50

18   any money from Compass Marketing that you did not        14:03:55

19   earn?                                                    14:03:57

20            MR. JORDAN:  Objection to relevance.            14:03:57

21            MR. REDD:  Objection to asking the same         14:03:59

22   question repeatedly.  Objection to form.                 14:04:04
```

1  Objection to this being far afield of the proper                    14:04:09

2  scope of this case related to David Boshea's                        14:04:13

3  lawsuit or any counterclaims against David Boshea                   14:04:18

4  or anyone else.                                                     14:04:21

5          You can answer.                                             14:04:22

6      A    No.                                                        14:04:22

7      Q    Have you helped any person other than                     14:04:23

8  yourself to receive money from Compass Marketing                    14:04:28

9  that they did not earn?                                             14:04:36

10         MR. JORDAN:  Objection to relevance.                        14:04:37

11 Objection to vagueness.                                             14:04:41

12         MR. REDD:  Same objection for me.                           14:04:42

13         THE COURT REPORTER:  I'm sorry; was that                    14:04:42

14 you, Mr. Redd?                                                      14:04:45

15         MR. REDD:  Same objection by Justin Redd.                   14:04:45

16         THE COURT REPORTER:  Thanks.                                14:04:49

17         MR. REDD:  You may answer.                                  14:04:53

18     A    No.                                                        14:04:54

19     Q    Okay.  I'd like to show you another                        14:04:57

20 e-mail.                                                             14:04:58

21         MR. STERN:  This one, Heather, is dated                     14:05:01

22 August 21, 2017, at 9:32 p.m.                                       14:05:03

1          Madam Court Reporter, what exhibit number          14:05:03

2     is this?                                                14:05:03

3          THE COURT REPORTER:  This is Exhibit 19.           14:05:03

4          (White Deposition Exhibit 19 marked for            14:05:03

5     identification and is attached to the transcript.)      14:05:10

6     Q    I'm showing you what's been marked as --           14:05:10

7     will be or is marked as Exhibit 19.  This is an         14:05:37

8     e-mail from Daniel White to you dated August 21,        14:05:39

9     2017, at 9:32 p.m.  In the upper right-hand corner      14:05:45

10    it has your e-mail address on it.  Do you see           14:05:49

11    that?                                                   14:05:53

12    A    I see what you have on the screen, yes.            14:05:53

13         THE WITNESS:  Can you also scroll down to          14:05:53

14    the bottom so --                                        14:06:00

15         MR. JORDAN:  Objection to relevance of             14:06:00

16    anything having to do with this.  No relevance at       14:06:02

17    all to this lawsuit.                                    14:06:05

18    Q    Mr. White, why is your name printed in             14:06:07

19    the upper right-hand corner?                            14:06:11

20         MR. REDD:  Objection to form.                      14:06:15

21         MR. JORDAN:  Objection to relevance.  He           14:06:16

22    was an employee at the time.  What's the point of       14:06:18

| | | |
|---|---|---|
| 1 | this? | 14:06:21 |
| 2 | Q    Mr. White? | 14:06:22 |
| 3 | MR. REDD:  I agree with Mr. Jordan's | 14:06:24 |
| 4 | objection. | 14:06:26 |
| 5 | You can answer for now. | 14:06:26 |
| 6 | A    I don't know. | 14:06:27 |
| 7 | Q    Did you print this e-mail?  Is that why | 14:06:29 |
| 8 | it shows your name at the top right corner? | 14:06:34 |
| 9 | MR. JORDAN:  Objection to relevance. | 14:06:37 |
| 10 | A    I don't know. | 14:06:38 |
| 11 | Q    In the e-mail the first -- the text of | 14:06:39 |
| 12 | the e-mail from Daniel White to you says:  "Just | 14:06:48 |
| 13 | while it is in front of me, and the TAG boys are | 14:06:49 |
| 14 | robbing us blind..."  It says "Emily Patricia | 14:06:51 |
| 15 | White" and it gives a bunch of information, | 14:06:55 |
| 16 | including bank information.  Who is Emily Patricia | 14:06:57 |
| 17 | White? | 14:07:00 |
| 18 | MR. JORDAN:  Objection; relevance. | 14:07:00 |
| 19 | MR. REDD:  Objection.  Yeah, objection. | 14:07:00 |
| 20 | This is -- unless I'm missing something, goes to a | 14:07:04 |
| 21 | similar line of questioning that I didn't hear any | 14:07:04 |
| 22 | different justification for as before, so my | 14:07:16 |

| | | |
|---|---|---|
| 1 | earlier objections stand as to this document, and | 14:07:17 |
| 2 | I instruct the witness not to answer on the basis | 14:07:20 |
| 3 | of Rule 30(c)(2). | 14:07:25 |
| 4 | Q    Have you at any point discussed with | 14:07:26 |
| 5 | Daniel White a BS loan? | 14:07:32 |
| 6 | MR. JORDAN:  Objection to relevance. | 14:07:39 |
| 7 | MR. REDD:  Same objection. | 14:07:43 |
| 8 | Same instruction. | 14:07:45 |
| 9 | Q    Do you know whether Daniel White has any | 14:07:45 |
| 10 | loans that are not real loans to or from Compass | 14:07:55 |
| 11 | Marketing? | 14:07:57 |
| 12 | MR. JORDAN:  Objection to vague, | 14:07:57 |
| 13 | unintelligible, and relevance. | 14:08:04 |
| 14 | MR. REDD:  Same objection. | 14:08:07 |
| 15 | Same instruction. | 14:08:10 |
| 16 | Q    Have you ever planned with Daniel White | 14:08:10 |
| 17 | to fabricate a loan arrangement between him and | 14:08:14 |
| 18 | the company? | 14:08:17 |
| 19 | MR. JORDAN:  Objection to relevance. | 14:08:17 |
| 20 | MR. REDD:  Same instruction.  You can | 14:08:18 |
| 21 | answer that question if you can. | 14:08:24 |
| 22 | A    Can you repeat the question? | 14:08:25 |

| | | |
|---|---|---|
| 1 | MR. STERN:  Can you please repeat it, | 14:08:30 |
| 2 | Madam Court Reporter. | 14:08:32 |
| 3 | (The pending question was read.) | 14:08:32 |
| 4 | A    No. | 14:08:32 |
| 5 | Q    Have you ever fabricated any loan | 14:08:32 |
| 6 | arrangement between you and Compass Marketing? | 14:08:53 |
| 7 | MR. JORDAN:  Objection; relevance. | 14:08:54 |
| 8 | MR. REDD:  Objection.  This question is | 14:08:57 |
| 9 | being asked in bad faith.  They're unreasonably | 14:08:59 |
| 10 | annoying and oppressive.  They're for an improper | 14:09:03 |
| 11 | purpose. | 14:09:05 |
| 12 | Go ahead and answer. | 14:09:05 |
| 13 | A    Can you please give me a definition of | 14:09:07 |
| 14 | fabricate? | 14:09:10 |
| 15 | Q    A loan that is not real or authentic. | 14:09:11 |
| 16 | MR. JORDAN:  Objection; confusing.  I | 14:09:17 |
| 17 | don't understand what that means. | 14:09:19 |
| 18 | MR. REDD:  The answer was no. | 14:09:27 |
| 19 | MR. STERN:  I didn't hear that from Mr. | 14:09:27 |
| 20 | White. | 14:09:32 |
| 21 | MR. REDD:  He said it. | 14:09:32 |
| 22 | Q    Can you repeat the answer then, Mr. | 14:09:35 |

1   White?                                                    14:09:37

2        A    No.                                             14:09:37

3        Q    Do you know what BS loan Daniel White is        14:09:39

4   referring to in this e-mail?                              14:09:48

5             MR. JORDAN:  Objection to relevance.            14:09:49

6             MR. REDD:  Objection.  Objection to the         14:09:51

7   characterization and objection to the assumptions         14:09:53

8   implicit in the question.                                 14:09:56

9             In addition to the reasons I stated on          14:09:59

10  the record earlier, I instruct you not to answer.         14:10:01

11            This is clearly beyond the scope of             14:10:07

12  permitted discovery.                                      14:10:10

13            MR. STERN:  Again, it goes to motive,           14:10:11

14  credibility.                                              14:10:14

15            MR. JORDAN:  I dispute that                     14:10:14

16  characterization.                                         14:10:17

17            MR. REDD:  Those reasons are not                14:10:17

18  sufficient for -- for any of these lines of               14:10:19

19  questioning.                                              14:10:22

20            MR. STERN:  Like I said, Justin, we'll be       14:10:22

21  taking that up with the Court.                            14:10:25

22        Q    I'd like to show you a check.  It's dated      14:10:25

1    December 1, 2015.                                    14:10:43

2              MR. STERN:  I guess this is Exhibit No.    14:10:45

3    20.                                                  14:10:54

4              THE COURT REPORTER:  That's correct.       14:10:54

5              (White Deposition Exhibit 20 marked for    14:10:54

6    identification and is attached to the transcript.)   14:10:56

7         Q    This is Check No. 09376 from Compass        14:10:56

8    Marketing, Inc., paid to the order of Daniel J.      14:11:03

9    White in the amount of $65,000.  The memo says       14:11:05

10   "Final Payments to James DiPaula and Patrick         14:11:10

11   Miller."                                             14:11:18

12             Is that your signature on the check?       14:11:18

13        A    Don't know.                                14:11:19

14        Q    Do you recall writing this check and       14:11:24

15   signing it to be payable to Daniel White?            14:11:27

16        A    No.                                        14:11:31

17        Q    Do you deny signing this check that was    14:11:31

18   made payable to Daniel White?                        14:11:38

19        A    No.                                        14:11:39

20        Q    Do you know what the purpose of this       14:11:39

21   check was for?                                       14:11:44

22        A    No.                                        14:11:45

1     Q    Do you know why the amount of $65,000 is                    14:11:47

2    on that check?                                                    14:11:51

3     A    No.                                                         14:11:52

4          MR. REDD:   I object to this entire line                   14:11:54

5    of questioning about this check.  It says it's to                14:12:00

6    James DiPaula.  His -- any of his compensation was               14:12:05

7    ruled to be not discoverable in the case.                        14:12:09

8          MR. STERN:  Like we said, we're going to                   14:12:12

9    be filing a motion about that and it sounds like                 14:12:16

10   Mr. Jordan is going to be joining in part of it.                 14:12:18

11         All right.  Next up I would like to --                     14:12:32

12   Heather, why don't we pull up the signature card                 14:12:34

13   on the bank.                                                     14:12:44

14    Q    So I'm showing what has been marked as                     14:12:45

15   Exhibit No. 21.                                                  14:13:06

16         (White Deposition Exhibit 21 marked for                    14:13:06

17   identification and is attached to the transcript.)              14:13:10

18    Q    Do you recognize this document?                            14:13:10

19    A    I do not.                                                   14:13:12

20    Q    Did you open a bank account in Compass                     14:13:14

21   Marketing's name with a bank known as County First              14:13:22

22   Bank on or about December 1, 2008?                              14:13:25

1        MR. REDD:  Objection to relevance to          14:13:27

2   anything to do with Boshea versus Compass           14:13:35

3   Marketing in this case.                             14:13:41

4        You can answer.                                14:13:42

5        A    I opened a bank account.  I don't        14:13:43

6   remember what date it was.                          14:13:45

7        Q    Is that your signature on this document? 14:13:47

8        A    I don't know.                             14:13:50

9        Q    When you opened the bank account with    14:13:52

10  County First Bank, did you list -- what address     14:13:59

11  did you list as Compass Marketing's address?        14:14:01

12       A    I don't know.                             14:14:05

13       Q    Does this document indicate Compass       14:14:06

14  Marketing's address as 39650 Hiawatha Circle in     14:14:09

15  Mechanicsville, Maryland?                           14:14:17

16       A    It does.                                  14:14:18

17       Q    Is that your home address?                14:14:19

18       A    It is.                                    14:14:20

19       Q    Why would Compass Marketing open a bank   14:14:22

20  account with your home address listed as the        14:14:25

21  business' address?                                  14:14:27

22       MR. REDD:  Same objections.                    14:14:27

1          You can answer.                                      14:14:33

2     A    All of our bank accounts were opened with           14:14:34

3  that address.                                                14:14:37

4     Q    Every single bank account was opened with           14:14:38

5  that address?                                                14:14:42

6     A    Correct.                                             14:14:42

7     Q    Why did the bank accounts go to your home           14:14:43

8  address rather than the company's address?                  14:14:47

9     A    Because that's the address on the form.             14:14:49

10    Q    Why was that address put on the form?               14:14:57

11    A    That's the address that --                          14:14:59

12         MR. JORDAN:  Objection to relevance.                14:14:59

13    A    That's the address we --                            14:15:05

14         MR. REDD:  Go ahead, yes.  I object to              14:15:08

15  relevance, but go ahead.                                   14:15:12

16    A    That's the address we put on all our bank           14:15:13

17  forms and all our payroll forms and all our 401K           14:15:16

18  forms.  And most of our government forms had that          14:15:21

19  address on them.                                           14:15:30

20    Q    All right.                                          14:15:31

21         MR. STERN:  Let's switch back to the last           14:15:32

22  exhibit for a moment.                                      14:15:33

```
 1       Q    Is that the Hiawatha address you're            14:15:34

 2  referring to that's on every form?                       14:15:56

 3            MR. REDD:  Objection to the form of the         14:15:58

 4  question --                                              14:16:01

 5            MR. STERN:  Fair enough.  Let me rephrase       14:16:01

 6  the question.                                            14:16:01

 7            MR. REDD:  Same time frame.                     14:16:03

 8            THE COURT REPORTER:  I'm sorry, Mr. Redd;       14:16:03

 9  can you -- can you repeat that?                          14:16:08

10            MR. REDD:  I object to the form because         14:16:09

11  the questions implicitly refer to the same time          14:16:11

12  frame, which is not -- not what's being fought           14:16:17

13  about.                                                   14:16:23

14       Q    Is the address listed on this check the        14:16:23

15  Hiawatha Circle address that you just identified?        14:16:29

16       A    The check that you're producing on the         14:16:29

17  screen, it is not.                                       14:16:32

18       Q    Is this from a Compass Marketing checking      14:16:32

19  account?                                                 14:16:36

20       A    The form you have on the screen appears        14:16:36

21  to be a check from Compass Marketing checking            14:16:41

22  account.                                                 14:16:45
```

1    Q    So did Compass Marketing open a checking          14:16:45

2  account with the Manufacturers & Traders Trust           14:16:49

3  Company where the address listed was in Annapolis        14:16:53

4  rather than Mechanicsville, Maryland?                    14:16:57

5    A    No.                                               14:16:57

6         MR. REDD:  I'll object to lack of any             14:16:57

7  connection to this case.                                 14:17:07

8         You can answer.                                   14:17:08

9    A    No.                                               14:17:08

10   Q    So this is not a real Compass Marketing           14:17:09

11 check?                                                   14:17:11

12        MR. JORDAN:  Objection.  You're                   14:17:11

13 mischaracterizing his testimony.                         14:17:16

14        MR. REDD:  Go ahead.                              14:17:17

15   A    Please repeat your question.                      14:17:17

16   Q    Is this not a real Compass Marketing              14:17:22

17 check?                                                   14:17:24

18        MR. REDD:  Objection to form.                     14:17:24

19   A    It appears to be a Compass Marketing              14:17:28

20 check.                                                   14:17:29

21   Q    Do you know why then the 222 Severn               14:17:29

22 Avenue, Suite 200, Annapolis, Maryland 21403             14:17:35

| | | |
|---|---|---|
| 1 | address is listed on this check for Compass | 14:17:41 |
| 2 | Marketing? | 14:17:43 |
| 3 | MR. REDD:  Objection to lack of | 14:17:43 |
| 4 | connection to this case. | 14:17:48 |
| 5 | You can answer. | 14:17:49 |
| 6 | A    Please repeat your question. | 14:17:50 |
| 7 | Q    Do you know why this check has identified | 14:17:51 |
| 8 | Compass Marketing's address as 222 Severn Avenue, | 14:17:58 |
| 9 | Suite 200, Annapolis, Maryland 21403? | 14:18:00 |
| 10 | MR. REDD:  Same objection. | 14:18:06 |
| 11 | Go ahead. | 14:18:06 |
| 12 | A    That's the address that was printed on | 14:18:07 |
| 13 | the check when it was printed. | 14:18:11 |
| 14 | Q    Is that a mistake by the bank? | 14:18:12 |
| 15 | MR. REDD:  Objection; form. | 14:18:15 |
| 16 | MR. JORDAN:  Objection; foundation, that | 14:18:15 |
| 17 | the bank printed the check. | 14:18:19 |
| 18 | Q    Do you deny writing this check? | 14:18:22 |
| 19 | A    No. | 14:18:24 |
| 20 | Q    Do you -- is that not a correct address | 14:18:24 |
| 21 | that's listed on the check? | 14:18:28 |
| 22 | MR. REDD:  Same objection. | 14:18:30 |

1        Go ahead.                                          14:18:34

2    A    The address that is printed on there --           14:18:34

3         MR. JORDAN:  Asked and answered also.             14:18:35

4    A    The address printed on that check is 222          14:18:37

5  Severn Avenue, Suite 200, Annapolis, Maryland            14:18:44

6  21403.                                                   14:18:49

7    Q    How do you reconcile that address being           14:18:49

8  listed on the check with what you just said, all         14:18:52

9  the forms you have with banks listed the Hiawatha        14:18:53

10  address?                                                14:18:56

11        MR. JORDAN:  Objection; that's not --             14:18:56

12  that's a mischaracterization of the testimony.  He      14:19:00

13  was talking about bank cards, not all bank forms.       14:19:01

14        MR. STERN:  His testimony said all bank           14:19:04

15  forms.  Thank you.                                      14:19:07

16        THE COURT REPORTER:  I'm sorry, Mr. Redd          14:19:08

17  or Mr. White; did you say something?                    14:19:14

18        MR. REDD:  The same objection as                  14:19:16

19  Mr. Jordan and to the form of the question.             14:19:19

20    Q    Go ahead, Mr. White.                             14:19:21

21    A    Please repeat your question, Mr. Stern.          14:19:24

22        MR. STERN:  Can you repeat -- can you             14:19:24

| | | |
|---|---|---|
| 1 | read back my question. | 14:19:45 |
| 2 | (The pending question was read.) | 14:19:45 |
| 3 | A    The check that you produced on the screen | 14:19:45 |
| 4 | is not the form for creating the bank account. | 14:19:48 |
| 5 | Q    How do -- do you know why the check would | 14:19:52 |
| 6 | list this address then? | 14:19:59 |
| 7 | A    Because that's what's printed on the | 14:20:00 |
| 8 | check. | 14:20:04 |
| 9 | Q    Why would that address be printed on the | 14:20:04 |
| 10 | check? | 14:20:08 |
| 11 | A    Because somebody printed it -- that | 14:20:08 |
| 12 | address on the check. | 14:20:14 |
| 13 | Q    Wouldn't someone from the bank have to | 14:20:15 |
| 14 | put that address into some account information | 14:20:19 |
| 15 | that was provided to it? | 14:20:22 |
| 16 | MR. REDD:  Objection to form. | 14:20:24 |
| 17 | A    I don't -- | 14:20:27 |
| 18 | MR. JORDAN:  Objection for speculation. | 14:20:27 |
| 19 | A    I don't believe so. | 14:20:29 |
| 20 | Q    Going back to the bank form that's -- 21, | 14:20:34 |
| 21 | was it? -- the only signatures that appear on this | 14:20:43 |
| 22 | document are yours and Daniel White's; correct? | 14:20:45 |

1    A    I don't know.                                    14:20:48

2    Q    Why did you not include John White's name       14:20:49

3    on this signature card?                               14:21:00

4         MR. REDD:  Objection; no connection to          14:21:01

5    this case.  We're going around in circles with        14:21:07

6    questions that have nothing to do with Boshea         14:21:13

7    versus Compass Marketing in the District of           14:21:18

8    Maryland, United States District Court for the        14:21:19

9    District of Maryland.  Where are we going with        14:21:22

10   this?                                                 14:21:28

11        Go ahead and answer.                             14:21:28

12   A    Please repeat your question, Mr. Stern.          14:21:29

13   Q    Why was John White's signature not              14:21:31

14   included on the signature card for this bank          14:21:34

15   account?                                              14:21:36

16        MR. REDD:  Same objection.                       14:21:36

17   A    I -- I don't know.                               14:21:38

18   Q    Did John White know about this bank             14:21:38

19   account?                                              14:21:45

20        MR. JORDAN:  Objection; calls for               14:21:45

21   speculation.                                          14:21:47

22        MR. REDD:  Objection; same objection.           14:21:47

1          Go ahead.                                    14:21:51

2      A    I don't know.                               14:21:51

3      Q    Did John White receive any distributions   14:21:52

4  or payments from this bank account?                 14:21:57

5          MR. REDD:  Objection --                      14:21:58

6          MR. JORDAN:  Objection; calls for            14:21:58

7  speculation.                                         14:22:00

8          MR. REDD:  Sorry, Mr. Jordan.                14:22:04

9          Steve, can I just have a continuing          14:22:07

10 objection to this line of questioning?  I'm not      14:22:08

11 instructing him not to answer at this time, but I    14:22:11

12 don't want to just keep jumping in unnecessarily.    14:22:13

13 So...                                                14:22:16

14         MR. STERN:  I appreciate it.  While I'll     14:22:16

15 acknowledge you have a continuing objection, I       14:22:18

16 don't acknowledge the merits of the objection, I     14:22:21

17 disagree with the merits.  But for the purposes of   14:22:24

18 trying to simplify this process, I'll acknowledge    14:22:26

19 that you've got one on the record.                   14:22:30

20         MR. JORDAN:  Stephen, can I have a           14:22:31

21 continuing objection to the relevance of this line   14:22:33

22 of questioning?                                      14:22:35

1        MR. STERN:  Likewise I'll acknowledge          14:22:35

2    that you've got one.  I don't agree with the      14:22:38

3    merits of it and dispute that.  But for purposes  14:22:40

4    of preserving the record, you've got your         14:22:43

5    continuing objection noted.                       14:22:45

6        Q    Mr. White?                               14:22:46

7        A    Please repeat your question, Mr. Stern.  14:22:54

8        MR. STERN:  Can you read it back, Madam       14:22:57

9    Court Reporter.                                   14:23:00

10        (The pending question was read.)             14:23:00

11       A    I don't know.                            14:23:00

12       Q    Who would know that information?         14:23:13

13       A    That would be a guess on my part.        14:23:19

14       Q    Were you and David White the only ones   14:23:27

15    who were authorized to write checks from this bank  14:23:32

16    account?                                         14:23:35

17       A    I don't think so, no.                    14:23:35

18       Q    Who else had authority to write checks   14:23:38

19    from that bank account?                          14:23:40

20       A    I believe John White had authority to    14:23:42

21    write checks from this account.  I believe he had  14:23:49

22    a different signature card.                      14:23:51

1      Q     Why would John White have a different          14:23:52

2   signature card for this bank account?                   14:24:01

3      A     I believe John White signed his card at a      14:24:03

4   different time than Daniel and I signed our card.       14:24:09

5      Q     What was the purpose of this bank              14:24:11

6   account?                                                14:24:16

7      A     To take care of checks for Compass             14:24:16

8   Marketing.                                              14:24:25

9      Q     Was this the operating account for             14:24:25

10  Compass Marketing?                                      14:24:29

11     A     It was one of the operating accounts.          14:24:29

12     Q     How many operating accounts did Compass        14:24:35

13  Marketing have at this time?                            14:24:40

14     A     I believe three.                               14:24:41

15     Q     Which banks were they with?                    14:24:50

16     A     I believe M&T Bank; this bank I think is       14:24:53

17  Colony or Colonial First; and I think a bank that       14:25:08

18  was originally called Orange Bank purchased by          14:25:17

19  Capital One.                                            14:25:23

20     Q     And were those the three operating             14:25:23

21  accounts that -- maintained by Compass Marketing        14:25:30

22  until November 2018?                                    14:25:36

|    |                                                              |          |
|----|--------------------------------------------------------------|----------|
| 1  | A    I -- I don't believe that any of the                    | 14:25:37 |
| 2  | three ceased existence in 2018.                              | 14:25:47 |
| 3  | Q    That wasn't my question.  Were those the               | 14:25:50 |
| 4  | three operating accounts for Compass Marketing all          | 14:25:55 |
| 5  | the way through to November 2018?                           | 14:26:00 |
| 6  | A    No.                                                     | 14:26:02 |
| 7  | Q    So Compass Marketing had more or less                  | 14:26:04 |
| 8  | operating accounts between December 1, 2008, and            | 14:26:08 |
| 9  | November 2018?                                               | 14:26:12 |
| 10 | A    I don't believe they had more, no.                     | 14:26:13 |
| 11 | MR. REDD:  To the extent my continuing                      | 14:26:17 |
| 12 | objection doesn't already cover it, object to the           | 14:26:23 |
| 13 | form.                                                        | 14:26:27 |
| 14 | Q    So did any of these three that you                     | 14:26:27 |
| 15 | mentioned terminate before November 2018?                   | 14:26:30 |
| 16 | A    Not to my knowledge, no.                               | 14:26:32 |
| 17 | Q    I would like to show you another                       | 14:26:39 |
| 18 | signature card.  This one is also with County               | 14:26:43 |
| 19 | First Bank to have opened the account on June 13,           | 14:27:03 |
| 20 | 2009, and it only lists your signature on the               | 14:27:10 |
| 21 | signature card.  Do you see that?                           | 14:27:13 |
| 22 | A    I see the form you have on the screen,                 | 14:27:16 |

```
1    yes.                                              14:27:18

2         Q    Is that your signature?                14:27:18

3         A    I don't know.  I have no reason to      14:27:19

4    believe it is not, but I don't know.             14:27:24

5              (White Deposition Exhibit 22 marked for 14:27:24

6    identification and is attached to the transcript.) 14:27:25

7         Q    Did you open this bank account with     14:27:25

8    County First Bank?                                14:27:32

9         A    I'm not sure that that is a bank account. 14:27:32

10        Q    What -- then what would this account be? 14:27:41

11        A    I believe it is --                      14:27:47

12             MR. REDD:  Can you scroll back up.       14:27:50

13   Sorry; we're -- we're looking at the bottom.      14:27:53

14        A    I believe it is a deposit account to hold 14:27:54

15   the security for the bond for our rental in       14:28:03

16   Annapolis, Maryland, our -- our rental lease.     14:28:10

17        Q    And how long was this account open for?  14:28:12

18        A    I don't know.                           14:28:14

19        Q    Did anyone have the authority to operate 14:28:16

20   this account or take action regarding this account 14:28:21

21   other than you?                                   14:28:24

22        A    I don't know.                           14:28:24
```

| | | |
|---|---|---|
| 1 | Q   Did you authorize anyone to take any | 14:28:27 |
| 2 | action in connection with this bank account other | 14:28:32 |
| 3 | than yourself? | 14:28:34 |
| 4 | A   Can you define authorize for me? | 14:28:35 |
| 5 | Q   Who did you give permission to take any | 14:28:40 |
| 6 | action with respect to this bank account other | 14:28:46 |
| 7 | than yourself? | 14:28:48 |
| 8 | MR. JORDAN:  I'm confused by that | 14:28:48 |
| 9 | question so I object. | 14:28:53 |
| 10 | A   I would ask you to explain the question a | 14:28:54 |
| 11 | little more, Mr. Stern.  I don't -- I don't | 14:28:59 |
| 12 | understand what you're asking. | 14:29:01 |
| 13 | Q   Who did you give permission to to take | 14:29:02 |
| 14 | action with respect to this bank account? | 14:29:06 |
| 15 | MR. JORDAN:  Objection to foundation. | 14:29:09 |
| 16 | A   I didn't give anyone formal approval or | 14:29:12 |
| 17 | disapproval for using this -- this deposit | 14:29:20 |
| 18 | account. | 14:29:22 |
| 19 | Q   It says here:  "Number of signatures | 14:29:22 |
| 20 | required for withdrawal 1," and it lists your | 14:29:30 |
| 21 | signature. | 14:29:33 |
| 22 | A   Is that a question? | 14:29:34 |

| | | |
|---|---|---|
| 1 | Q    Does that help refresh your recollection | 14:29:40 |
| 2 | as to whether or not anyone could -- can take | 14:29:44 |
| 3 | action with respect to this bank account other | 14:29:46 |
| 4 | than you? | 14:29:48 |
| 5 | A    No. | 14:29:48 |
| 6 | Q    Do you -- is there anyone that could take | 14:29:49 |
| 7 | action with respect to this bank account other | 14:30:00 |
| 8 | than you? | 14:30:02 |
| 9 | A    I don't know. | 14:30:02 |
| 10 | Q    Do you recall giving anyone permission to | 14:30:05 |
| 11 | take action with respect to this bank account | 14:30:12 |
| 12 | other than you? | 14:30:14 |
| 13 | A    I don't recall giving a formal | 14:30:14 |
| 14 | authorization for anything with this account. | 14:30:20 |
| 15 | Q    Do you recall giving anyone informal | 14:30:22 |
| 16 | permission to take action with respect to this | 14:30:25 |
| 17 | bank account? | 14:30:29 |
| 18 | A    I do not. | 14:30:30 |
| 19 | Q    Did any money from this bank account go | 14:30:31 |
| 20 | to anyone other than you? | 14:30:37 |
| 21 | A    I don't believe any of the money from | 14:30:38 |
| 22 | this account went to me, but I don't know if it | 14:30:46 |

1  went to anyone else.                                    14:30:50

2         MR. REDD:  And just so it's clear, my            14:30:51

3  continuing objection still applies to all these         14:30:59

4  questions that are being asked.                         14:31:00

5         THE COURT REPORTER:  I'm sorry, Mr. Redd;        14:31:00

6  I can't hear you.                                       14:31:05

7         MR. REDD:  My continuing objection               14:31:05

8  applies to all the questions that are being asked       14:31:08

9  about this document.                                    14:31:12

10         MR. JORDAN:  I -- I believe mine are as         14:31:13

11  well, Stephen; is -- is that correct?  I mean, we      14:31:16

12  have that agreement.                                   14:31:18

13         MR. STERN:  I'm acknowledging each of you       14:31:18

14  have a standing objection.                             14:31:23

15         MR. JORDAN:  Right.  I will say that if I       14:31:24

16  could -- if I could object to relevance twice,         14:31:27

17  particularly after we're looking at a certificate      14:31:32

18  deposit account, I would, but I already have a         14:31:35

19  continuing objection.                                  14:31:40

20     Q    I'm going to show you a new exhibit.          14:31:40

21  It's a list of transactions related to the last       14:31:46

22  account we were just looking at.                       14:31:49

1        MS. YEUNG:  Do you want the 2019 list?                14:31:51

2        MR. STERN:  Yes.  The one that ends with              14:32:06

3   February 12, 2019.                                         14:32:08

4        THE COURT REPORTER:  And this will be                 14:32:10

5   Exhibit 23.                                                14:32:23

6        MR. STERN:  Not that one.  It's a list of             14:32:25

7   transactions.  We'll go back to this one                   14:32:29

8   afterwards.                                                14:32:31

9        MS. YEUNG:  Sorry.                                    14:32:31

10       (White Deposition Exhibit 23 marked for               14:32:31

11  identification and is attached to the transcript.)         14:32:33

12   Q    In the upper left-hand corner do you see             14:32:33

13  the account number that we were just looking at?           14:32:46

14  The only signature -- the only signature on the            14:32:50

15  account was yours.                                         14:32:50

16       Going down to the very bottom, it shows               14:32:52

17  that the account was closed on February 12, 2019.          14:32:56

18       MR. JORDAN:  I don't see that, Stephen.               14:32:59

19       MR. STERN:  Now it should be visible to               14:33:02

20  everyone.                                                  14:33:12

21   Q    And it shows a withdrawal of $53,158.18.             14:33:12

22  Where did that money go?                                   14:33:17

1          MR. JORDAN:  And can I continue to have          14:33:17

2    my continuing objection as to this exhibit just to     14:33:29

3    make sure?                                             14:33:31

4          MR. STERN:  Again, I'll acknowledge that         14:33:31

5    you've got an objection or you made an objection;      14:33:33

6    not that there's merit to it.                          14:33:35

7          MR. REDD:  Same objection for me.  Same          14:33:38

8    as if I --                                             14:33:40

9          MR. STERN:  Likewise.                            14:33:40

10          MR. REDD:  Stephen, thank you.                  14:33:40

11     A    I don't know where those funds went.            14:33:44

12     Q    Why was the account closed on February          14:33:48

13   12, 2019?                                              14:33:59

14          MR. JORDAN:  Objection.  The document is        14:34:00

15   the best evidence of its terms and it states why       14:34:04

16   it was closed.                                         14:34:07

17     A    I don't know.                                   14:34:08

18     Q    All right.  I want to show you a series         14:34:14

19   of checks.                                             14:34:16

20          (White Deposition Exhibit 24 marked for         14:34:16

21   identification and is attached to the transcript.)     14:34:17

22          MR. STERN:  This will be Exhibit -- what        14:34:17

| | | |
|---|---|---|
| 1 | is it -- 24? 25? | 14:34:32 |
| 2 | MR. REDD: 24. | 14:34:32 |
| 3 | MR. JORDAN: It's 24. | 14:34:32 |
| 4 | THE COURT REPORTER: Exhibit 24. | 14:34:35 |
| 5 | Q In particular -- so this is a bunch of | 14:34:35 |
| 6 | checks that purport to be from a Compass Marketing | 14:34:39 |
| 7 | account with the address listed on the checking | 14:34:44 |
| 8 | account as 222 Severn Avenue, Building 14, Suite | 14:34:46 |
| 9 | 200, Annapolis, Maryland 21403. | 14:34:52 |
| 10 | In particular I'm going to direct your | 14:34:54 |
| 11 | attention to Check No. 1160. Same date as the | 14:35:00 |
| 12 | closing of that other account, February 12, 2019, | 14:35:04 |
| 13 | shows a check made payable to the order of Michael | 14:35:09 |
| 14 | R. White to the amount -- in the amount of | 14:35:12 |
| 15 | $200,000. This is from County First Bank in | 14:35:15 |
| 16 | Waldorf, Maryland. Is that your signature on that | 14:35:21 |
| 17 | check? | 14:35:23 |
| 18 | A I don't know. | 14:35:23 |
| 19 | MR. JORDAN: And can I have -- do we | 14:35:25 |
| 20 | still have a continuing objection to this line? | 14:35:29 |
| 21 | MR. STERN: Yes. Acknowledged that the | 14:35:32 |
| 22 | objection has been made; not the merit of it. | 14:35:35 |

| | | |
|---|---|---|
| 1 | MR. REDD:  This is Justin Redd.  I'm | 14:35:37 |
| 2 | assuming that it's continuing until we stop it, if | 14:35:43 |
| 3 | that's okay. | 14:35:49 |
| 4 | MR. STERN:  I will agree to that as well. | 14:35:49 |
| 5 | MR. JORDAN:  Do you agree to that with | 14:35:51 |
| 6 | me, Stephen? | 14:35:53 |
| 7 | MR. STERN:  Likewise. | 14:35:53 |
| 8 | MR. JORDAN:  Thank you. | 14:35:54 |
| 9 | Q    Mr. White, is that your signature? | 14:35:59 |
| 10 | A    I don't know. | 14:36:01 |
| 11 | Q    Did you write a check to yourself for the | 14:36:04 |
| 12 | amount of -- in the amount of $200,000 on February | 14:36:07 |
| 13 | 12, 2019? | 14:36:10 |
| 14 | A    I don't know. | 14:36:10 |
| 15 | Q    On the back of the check it shows an | 14:36:13 |
| 16 | endorsement dated February 14, 2019.  Is that your | 14:36:17 |
| 17 | signature endorsing the check? | 14:36:20 |
| 18 | A    Don't know. | 14:36:23 |
| 19 | Q    Did you -- why would you have -- why | 14:36:24 |
| 20 | would there be a check to you in the amount of | 14:36:31 |
| 21 | $200,000 dated February 12, 2019? | 14:36:33 |
| 22 | A    I don't know. | 14:36:35 |

1     Q    Did John White and/or Dan White approve     14:36:41

2  this check to be written to you?     14:36:48

3     A    I don't know.     14:36:49

4     Q    What about the check to the left of it,     14:36:51

5  Check No. 1165, made payable to American Express     14:37:04

6  in the amount of $6,258.23 -- 26 cents dated     14:37:10

7  February 13, 2019.  Do you see that?     14:37:15

8     A    I see it on the screen, yes.     14:37:20

9     Q    Was that check written after you were     14:37:22

10  locked out -- was that check written after you     14:37:22

11  claim you were locked out of Compass Marketing?     14:37:29

12     A    I don't know.     14:37:30

13     Q    Do you remember what date you claim you     14:37:30

14  were locked out of Compass Marketing?     14:37:36

15     A    There was not a specific date.  I was     14:37:37

16  locked out of different things on different days.     14:37:46

17     Q    What about the check above it, Check No.     14:37:48

18  1180 for $20,000 made payable to you, signed by     14:38:00

19  you; did you write that check?     14:38:06

20     A    Don't know.     14:38:08

21     Q    Is that your signature?     14:38:11

22     A    Don't know.     14:38:12

1    Q    That check, you don't remember writing or          14:38:14

2  cashing the check dated July 10, 2019, in the              14:38:34

3  amount of $20,000?                                         14:38:39

4    A    Repeat the question, please.                        14:38:40

5         MR. STERN:  Someone's got -- has got                14:38:45

6  something on where I keep hearing a loud                   14:38:47

7  reverberation.                                             14:38:50

8         THE COURT REPORTER:  I'm hearing it also.           14:38:50

9         MR. JORDAN:  I don't know what it is.  I            14:38:55

10  haven't turned anything on or off since we                14:38:58

11  started.                                                  14:39:01

12         VIDEO TECHNICIAN:  I think it could be             14:39:01

13  coming from the phone line that the witness is on.        14:39:10

14  I'm not positive.                                         14:39:13

15         MR. STERN:  Okay.  Hopefully that's                14:39:13

16  not -- hopefully it will stop because we haven't          14:39:15

17  had that issue up until now.                              14:39:15

18         Can you repeat my question, Madam Court            14:39:15

19  Reporter.                                                 14:39:15

20         (The pending question was read.)                   14:39:15

21    A    I don't know if that is a check that I             14:39:15

22  wrote or not.                                             14:39:35

1        Q     In the memo it says LTC.  Does that help        14:39:36

2   you remember what it might be related to?                  14:39:43

3        A     I know what LTC means.                          14:39:46

4        Q     What does LTC mean?                             14:39:56

5        A     Loan to company.                                14:39:58

6        Q     Are you -- so would this be a check that        14:40:01

7   you claim was a payment back from the company for          14:40:07

8   a loan you made to the company?                            14:40:09

9        A     I don't know.                                   14:40:10

10        Q     Do you recall writing the checks to            14:40:12

11   American Express in May of 2019?                           14:40:21

12        A     I recall writing checks to American            14:40:23

13   Express, but I don't remember the dates.                   14:40:27

14        Q     Why would you write checks to American         14:40:29

15   Express?                                                   14:40:33

16        A     To pay the bills.                              14:40:33

17        Q     Was this check, No. 1165, the American         14:40:38

18   Express bill for which credit card or credit              14:40:45

19   cards?                                                     14:40:52

20        A     I don't know.                                  14:40:52

21        Q     Did you have your own American Express         14:40:52

22   credit card?                                               14:40:56

| | | |
|---|---|---|
| 1 | MR. JORDAN:  Objection; time frame. | 14:40:56 |
| 2 | Q    In May 2019. | 14:40:59 |
| 3 | A    I had an American Express credit card in | 14:41:01 |
| 4 | May of 2019, yes. | 14:41:09 |
| 5 | Q    Was it for the company or you personally | 14:41:10 |
| 6 | or both? | 14:41:12 |
| 7 | A    I had an American Express card as the | 14:41:13 |
| 8 | owner of Compass Marketing in the name of Compass | 14:41:25 |
| 9 | Marketing. | 14:41:27 |
| 10 | Q    And so that credit card was supposed to | 14:41:27 |
| 11 | be used for business purposes? | 14:41:33 |
| 12 | A    I -- I don't know. | 14:41:35 |
| 13 | Q    Why would you have a credit card in | 14:41:35 |
| 14 | Compass Marketing's name for -- why would you have | 14:41:45 |
| 15 | a credit card in Compass Marketing's name? | 14:41:48 |
| 16 | A    Because I was an owner of Compass | 14:41:50 |
| 17 | Marketing and I paid a lot of bills with the | 14:41:59 |
| 18 | American Express card. | 14:42:02 |
| 19 | Q    Was that credit card used only for | 14:42:02 |
| 20 | Compass Marketing purposes? | 14:42:04 |
| 21 | A    Probably not, but I don't know for sure. | 14:42:04 |
| 22 | Q    Did -- | 14:42:13 |

1        MR. STERN:  Heather, you can take that          14:42:13

2    exhibit down.  Thank you.                           14:42:28

3    Q    Did your wife work for Compass Marketing       14:42:29

4    at any point in time?                               14:42:35

5        MR. REDD:  (Indiscernible).                     14:42:36

6        MR. JORDAN:  I don't need to restate my         14:42:36

7    continuing objection; right?                        14:42:41

8        MR. STERN:  It's fine.  I'll acknowledge        14:42:42

9    that the objection is made; not that it's merited.  14:42:44

10        And, Justin, I will go ahead and offer         14:42:50

11    that up to you, too.                                14:42:52

12        MR. REDD:  This is Justin.  I was asking        14:42:53

13    whether we were going to be in a similar line of    14:42:54

14    questioning or whether we were moving to something  14:42:57

15    else.                                               14:42:59

16        MR. STERN:  So I'm just asking...               14:43:00

17    Q    The question is, Mr. White, did your wife      14:43:02

18    work for Compass Marketing at any point in time?    14:43:04

19    A    Yes.                                           14:43:07

20    Q    When did she start working for Compass         14:43:09

21    Marketing?                                          14:43:15

22    A    About 1998.                                    14:43:15

1      Q     And when -- is she still working for          14:43:21

2  Compass Marketing?                                       14:43:26

3      A     She has never been terminated.                14:43:26

4      Q     Is she still working for Compass              14:43:31

5  Marketing?                                               14:43:33

6      A     She's never been terminated.                  14:43:33

7      Q     That's not my question.                       14:43:37

8      A     That's my answer.                             14:43:39

9      Q     Has she resigned from Compass Marketing?      14:43:41

10      A     I don't know.                                 14:43:45

11      Q     Was she issued a Compass Marketing e-mail    14:43:45

12  address?                                                 14:43:54

13      A     Yes.                                          14:43:54

14      Q     What duties did she perform for Compass      14:43:54

15  Marketing?                                               14:44:01

16          MR. JORDAN:  Stephen, can you indicate in       14:44:05

17  some small fashion what this has to do with David        14:44:07

18  Boshea and his lawsuit?  Because even if --              14:44:13

19          MR. STERN:  Those two --                        14:44:13

20          MR. JORDAN:  Even if you're trying to           14:44:14

21  show bias or -- or motivation or whatever, at some       14:44:15

22  point the Court will cut you off.  And so, you           14:44:19

| | | |
|---|---|---|
| 1 | know, tell me other than -- other than your | 14:44:24 |
| 2 | motivation ideal, what is the -- what does this | 14:44:26 |
| 3 | have to do with David Boshea for the price of tea | 14:44:31 |
| 4 | in China? | 14:44:34 |
| 5 | MR. STERN:  Mr. White, will you step out | 14:44:35 |
| 6 | of the room for a moment, please. | 14:44:38 |
| 7 | VIDEO TECHNICIAN:  As he does, if Heather | 14:44:47 |
| 8 | could mute her microphone.  It's possibly hers. | 14:44:50 |
| 9 | (Mr. White left the room.) | 14:44:53 |
| 10 | MR. REDD:  For the record, I agree with | 14:44:53 |
| 11 | Greg.  I'm trying to let you explore areas that, | 14:45:01 |
| 12 | you know, the Court clearly hasn't foreclosed, | 14:45:08 |
| 13 | but, yeah, there's no connection.  The continuing | 14:45:10 |
| 14 | objection still stands.  I -- you're not | 14:45:12 |
| 15 | acknowledging that you agree with it, of course, | 14:45:16 |
| 16 | but, yeah, we'll... | 14:45:19 |
| 17 | MR. STERN:  So Compass Marketing contends | 14:45:19 |
| 18 | there's been a pattern of practiced behavior by | 14:45:25 |
| 19 | Mr. Michael White and Dan White to find different | 14:45:29 |
| 20 | avenues to extract money from this company to | 14:45:34 |
| 21 | themselves and to other individuals that was not | 14:45:36 |
| 22 | properly earned or owed, including to their wives. | 14:45:40 |

|   |   |   |
|---|---|---|
| 1 | And it would be part and parcel of the same | 14:45:45 |
| 2 | pattern and practice and misconduct as they are | 14:45:48 |
| 3 | trying to do the same here to Mr. Boshea, where | 14:45:51 |
| 4 | they're trying to help him come up with a false | 14:45:54 |
| 5 | and fraudulent severance agreement that doesn't | 14:45:57 |
| 6 | exist to try to extract money from the company in | 14:46:01 |
| 7 | their effort to do harm to the company. | 14:46:04 |
| 8 | That's -- | 14:46:12 |
| 9 | MR. JORDAN:  That's irrelevant. | 14:46:12 |
| 10 | MR. STERN:  -- my relevance argument, and | 14:46:14 |
| 11 | if you want to take it up with the Court, you can. | 14:46:14 |
| 12 | That's the basis and reason for my questions.  Mr. | 14:46:17 |
| 13 | White's wife was never properly authorized to work | 14:46:18 |
| 14 | for the company.  It's my understanding she never | 14:46:21 |
| 15 | actually performed any duties for the company. | 14:46:24 |
| 16 | MR. JORDAN:  Even -- even if that were | 14:46:25 |
| 17 | true and even if Daniel White and Michael White | 14:46:29 |
| 18 | decided to put Michael White's wife on the | 14:46:32 |
| 19 | payroll, that has nothing to do with David Boshea | 14:46:35 |
| 20 | and his severance agreement. | 14:46:38 |
| 21 | MR. STERN:  Well, I'm going to move -- | 14:46:38 |
| 22 | MR. JORDAN:  It's not -- you can't -- you | 14:46:40 |

1    can't link that, that something that happened ten        14:46:42

2    years later has anything to do with what happened        14:46:44

3    in 2007.  And, I mean, I don't even buy it --            14:46:48

4         MR. STERN:  According to Mr. White --               14:46:48

5         MR. JORDAN:  -- because you already had             14:46:53

6    John Adams, who had a -- had a severance agreement       14:46:53

7    at the same time as David Boshea.  So --                 14:46:56

8         MR. STERN:  According to Mr. White, it's            14:46:56

9    --                                                       14:46:56

10        MR. JORDAN:  -- I don't understand the              14:47:00

11   relevance of this at all.  It is too far from the        14:47:01

12   events in question to have anything to do with           14:47:05

13   what happened with David Boshea, even assuming           14:47:08

14   your assumption is somehow in 2007 they created          14:47:12

15   this document with David Boshea, ten years later         14:47:15

16   they hired, wrongfully hired, Michael White's            14:47:18

17   wife.  Big deal.  I don't care and the Court             14:47:21

18   doesn't care.  You're not going to be able to make       14:47:24

19   that connection.                                         14:47:26

20        MR. STERN:  I disagree with you.                    14:47:26

21        Can we bring Mr. White back in?                     14:47:30

22        MR. REDD:  Yeah, for the record, I agree            14:47:32

| | | |
|---|---|---|
| 1 | with and join in what Mr. Jordan said.  Let the | 14:47:34 |
| 2 | questions go about background and who worked at | 14:47:39 |
| 3 | the company.  And that's -- it seems okay even if | 14:47:44 |
| 4 | it's not really relevant, but this is clearly to | 14:47:47 |
| 5 | try to gain some kind of information to support an | 14:47:54 |
| 6 | unwarranted suspicion for use in other proceedings | 14:47:59 |
| 7 | besides this when there's no connection to this | 14:48:02 |
| 8 | case whatsoever.  So I'll listen to the next | 14:48:05 |
| 9 | questions you have, but that's my position. | 14:48:09 |
| 10 | (Mr. White entered the room.) | 14:48:13 |
| 11 | BY MR. STERN: | 14:48:14 |
| 12 | Q    Mr. White, what job duties did your wife | 14:48:14 |
| 13 | perform for the company? | 14:48:39 |
| 14 | MR. JORDAN:  I have my continuing | 14:48:41 |
| 15 | objection so I'm not going to object.  I'm not | 14:48:42 |
| 16 | going to restart a new objection. | 14:48:48 |
| 17 | MR. STERN:  Thank you. | 14:48:50 |
| 18 | A    She performed administrative duties for | 14:48:51 |
| 19 | me and several other jobs. | 14:48:55 |
| 20 | Q    Did she perform those duties in the | 14:48:58 |
| 21 | company's office in Annapolis, Maryland? | 14:49:01 |
| 22 | A    No. | 14:49:03 |

| | | |
|---|---|---|
| 1 | Q    Did she report to anyone other than you? | 14:49:05 |
| 2 | A    No. | 14:49:09 |
| 3 | Q    Did Daniel White's wife work for the | 14:49:12 |
| 4 | company as well? | 14:49:24 |
| 5 | A    I didn't hear your -- your question. | 14:49:24 |
| 6 | Q    Did Daniel White's wife work for the | 14:49:27 |
| 7 | company as well? | 14:49:31 |
| 8 | A    Yes. | 14:49:31 |
| 9 | Q    From when until when? | 14:49:31 |
| 10 | A    Don't know. | 14:49:35 |
| 11 | Q    What duties did she perform for the | 14:49:39 |
| 12 | company? | 14:49:45 |
| 13 | A    An administrative duty assigned by Daniel | 14:49:45 |
| 14 | White. | 14:49:50 |
| 15 | Q    Did you inform John White about your wife | 14:49:50 |
| 16 | performing duties for the company? | 14:49:59 |
| 17 | A    No. | 14:50:00 |
| 18 | Q    Do you know whether John White was | 14:50:08 |
| 19 | advised that Daniel White's wife was performing | 14:50:19 |
| 20 | duties for the company? | 14:50:21 |
| 21 | A    I do not know. | 14:50:22 |
| 22 | Q    How much did your wife make on an | 14:50:24 |

1    annualized basis for the administrative duties she          14:50:31

2    was performing?                                             14:50:35

3        A    Don't know.                                        14:50:35

4        Q    Do you know whether it was more or less            14:50:38

5    than a hundred thousand dollars?                            14:50:42

6        A    Don't know.                                        14:50:43

7        Q    Who's the person that was responsible for          14:50:45

8    processing payroll for the company up until                 14:50:54

9    November 2018?                                              14:50:57

10       A    What's the starting date?                          14:50:58

11       Q    Let's go each year.  In 2018 who was the           14:51:06

12   person responsible for processing payroll?                  14:51:12

13       A    I was.                                             14:51:14

14       Q    In 2017 who was the person responsible             14:51:16

15   for processing payroll?                                     14:51:19

16       A    I was.                                             14:51:20

17       Q    In 2016 who was the person responsible             14:51:22

18   for processing payroll?                                     14:51:25

19       A    I was.                                             14:51:26

20       Q    In 2015 who was the person responsible             14:51:28

21   for processing payroll?                                     14:51:31

22       A    I was.                                             14:51:33

1      Q    In 2015 who was the person responsible          14:51:34

2  for processing payroll?                                  14:51:40

3      A    I was.                                           14:51:41

4      Q    In 2014 who was the person responsible          14:51:42

5  for processing payroll?                                  14:51:45

6      A    I was.                                           14:51:46

7      Q    2013?                                            14:51:48

8      A    I believe I was.                                 14:51:49

9      Q    What about 2012; who was the person             14:51:55

10 responsible for processing payroll?                      14:51:59

11     A    I believe I was.                                 14:52:01

12     Q    In 2011 who was the person responsible          14:52:02

13 for processing payroll?                                  14:52:07

14     A    I believe I was.                                 14:52:08

15     Q    2010?                                            14:52:09

16     A    I believe I was.                                 14:52:11

17     Q    What about from 2005 to 2009?                    14:52:17

18     A    I believe I was.                                 14:52:22

19     Q    What about prior to 2005?                        14:52:23

20     A    I don't know for sure.                           14:52:25

21     Q    Okay.  So did you continue to process           14:52:33

22 payroll in 2019?                                         14:52:51

1     A     Part of it.                                            14:52:52

2     Q     How much was Debra paid in 2019?                       14:52:54

3     A     Don't know.                                            14:53:00

4     Q     I want to show you some other documents.               14:53:02

5           MR. STERN:  Heather, this is going to be               14:53:15

6     the Virginia annual report filings.  We're going             14:53:18

7     to start back with 2000 and -- let's do the                  14:53:22

8     Virginia filing dated February 29, 2008.                     14:53:29

9           MR. JORDAN:  Can I have the continuing                 14:53:33

10    objection to the relevance of the registered agent           14:54:08

11    filings, Stephen?                                            14:54:12

12          MR. STERN:  These are not registered                   14:54:12

13    agent filings.                                               14:54:14

14          MR. JORDAN:  What are they?                            14:54:14

15          MR. STERN:  These are State Corporation                14:54:16

16    Commission filings.                                          14:54:17

17          MR. JORDAN:  Okay.  Can I have a                       14:54:18

18    continuing objection to the State Commission                 14:54:20

19    registration filings?                                        14:54:23

20          MR. STERN:  I'll acknowledge you've made               14:54:24

21    an objection.  I will not agree that it's merited.           14:54:27

22          MR. JORDAN:  And the objection is                      14:54:30

| | | |
|---|---|---|
| 1 | relevance, just to be clear on the record. | 14:54:32 |
| 2 | MR. STERN:  Understood. | 14:54:33 |
| 3 | What exhibit number are we up to, Madam | 14:54:33 |
| 4 | Court Reporter? | 14:54:37 |
| 5 | MR. REDD:  And a continuing objection for | 14:54:37 |
| 6 | the reasons I previously stated.  Sorry. | 14:54:41 |
| 7 | MR. STERN:  Thank you.  I will | 14:54:42 |
| 8 | acknowledge the same thing for Mr. Redd. | 14:54:44 |
| 9 | THE COURT REPORTER:  And this will be | 14:54:45 |
| 10 | Exhibit 25. | 14:54:53 |
| 11 | MS. YEUNG:  25, yes. | 14:54:53 |
| 12 | (White Deposition Exhibit 25 marked for | 14:54:53 |
| 13 | identification and is attached to the transcript.) | 14:54:53 |
| 14 | Q   Mr. White, I'm showing you what's been | 14:54:53 |
| 15 | marked as -- or will be marked as Exhibit 25. | 14:54:55 |
| 16 | It's a Virginia Commonwealth State Corporation | 14:54:57 |
| 17 | Commission filing dated -- well, it says due date | 14:54:59 |
| 18 | 2/29/2008.  It looks like it's signed on January | 14:55:02 |
| 19 | 15, 2008.  Is that your signature? | 14:55:07 |
| 20 | A   I don't know. | 14:55:10 |
| 21 | Q   Does that look like your signature? | 14:55:11 |
| 22 | A   It appears to be my signature. | 14:55:16 |

1      Q    Were you the person responsible for                  14:55:17

2   filling out these State Corporation Commission               14:55:20

3   filings in 2008?                                             14:55:23

4      A    I don't know if I was responsible for                14:55:24

5   doing it, but I did it.                                      14:55:31

6      Q    Okay.  So you did file this form with the            14:55:32

7   State of Virginia -- I'm sorry -- the Commonwealth           14:55:37

8   of Virginia in 2008; correct?                               14:55:39

9      A    I filed a form similar to this one in                14:55:42

10  2008.                                                        14:55:47

11     Q    What is different between this form that             14:55:47

12  you're looking at right now and the one that you             14:55:52

13  filed in 2008?                                               14:55:53

14     A    Don't know.                                          14:55:54

15     Q    Does this form list 222 Severn Avenue,               14:55:56

16  Building 14, Suite 200, Annapolis, Maryland 21403            14:56:04

17  as the company's address?                                    14:56:08

18     A    No.  I think it -- I think it lists it as            14:56:09

19  612 Third Street, Suite 200, I believe.                      14:56:20

20     Q    Isn't that crossed off and handwritten in           14:56:24

21  as 222 Severn Avenue?                                        14:56:27

22     A    It is crossed off --                                 14:56:27

1          MR. JORDAN:  Is Heather going to be          14:56:27

2    sharing this document with us by e-mail?          14:56:40

3          MR. STERN:  Yes.                            14:56:42

4          MS. YEUNG:  Yes.  I'm sorry; I need to      14:56:42

5    extract it from this particular pdf and can't do  14:56:47

6    it while we're viewing it.                        14:56:51

7       A    There is a section where that address is 14:56:51

8    crossed out and 222 Severn Avenue is written in,  14:56:55

9    yes.                                              14:56:58

10      Q    And next to that -- and that's listed     14:56:58

11   where the -- and where it's crossed off, that's   14:57:00

12   under John White's name and to the right of that  14:57:03

13   is a separate box where it lists your name, title 14:57:06

14   VP of operations, and it lists the same 222 Severn 14:57:11

15   Avenue, Building -- Suite 200, Annapolis, Maryland 14:57:14

16   address; correct?                                 14:57:18

17      A    That's what it says, yes.                 14:57:19

18      Q    Why does this document list this          14:57:20

19   Annapolis, Maryland, address as the company's     14:57:24

20   address, but the bank cards we looked at list your 14:57:27

21   home address as the company's address?            14:57:32

22      A    I -- I don't know why they're different   14:57:33

1   other than that the address we used for this form          14:57:38

2   and the Mechanicsville address is the form -- is           14:57:43

3   the address we use for bank records and 401K and           14:57:48

4   payroll.                                                   14:57:54

5       Q    John White was aware that you were using         14:57:54

6   your home address for bank rec -- bank accounts,           14:57:59

7   401K, and those other accounts that you                    14:58:05

8   identified?                                                14:58:07

9           MR. REDD:  Objection to form to the                14:58:07

10  extent --                                                  14:58:07

11          MR. JORDAN:  Objection; calls for                  14:58:07

12  speculation.                                               14:58:09

13          THE COURT REPORTER:  I'm sorry; I didn't           14:58:09

14  hear anybody other than Mr. Jordan.                        14:58:14

15          MR. REDD:  My objection is also to the             14:58:19

16  form of the question to the extent that the                14:58:20

17  continuing objection did not already cover that.           14:58:25

18          Go ahead.                                          14:58:28

19      A    I don't know what John White knew or              14:58:28

20  didn't know.                                               14:58:30

21      Q    Did you typically list the Annapolis,             14:58:30

22  Maryland, address on these Virginia State                  14:58:40

1    Corporation Commission filings?                    14:58:44

2            MR. REDD:  Objection to form again.        14:58:44

3        A    I -- I believe so, but I don't know for   14:58:48

4    sure.                                              14:58:57

5            MR. STERN:  Why don't we go with -- why    14:58:57

6    don't we show a different one dated -- due date    14:59:00

7    February 27, 2009, signed 12/29/08.                14:59:03

8            MR. JORDAN:  Stephen, when there's a good  14:59:07

9    time to break, it might be a good idea because     14:59:24

10   we're at the -- getting on top of an hour and      14:59:28

11   we've been going for a while.                      14:59:29

12           MR. STERN:  Fair enough.  Why don't we --  14:59:30

13   why don't we take a short break.  I'm -- why don't 14:59:32

14   we go off the record now and we'll -- we'll resume 14:59:34

15   in ten minutes.                                    14:59:36

16           MR. JORDAN:  Okay.                         14:59:37

17           VIDEO TECHNICIAN:  The time is 2:59 p.m.   14:59:38

18   We are off the record.                             14:59:41

19           (A recess was taken.)                      14:59:42

20           (White Deposition Exhibit 26 marked for    14:59:42

21   identification and is attached to the transcript.) 15:12:21

22           VIDEO TECHNICIAN:  We are on the record    15:12:21

|    |                                                          |          |
|----|----------------------------------------------------------|----------|
| 1  | at 3:12 p.m.                                             | 15:12:26 |
| 2  | MR. STERN:  Oh, I'm sorry; we're back on                 | 15:12:28 |
| 3  | now?                                                     | 15:12:30 |
| 4  | VIDEO TECHNICIAN:  Yes.                                  | 15:12:30 |
| 5  | MR. STERN:  All right.  I think when we                  | 15:12:31 |
| 6  | last left off, we were going to be referring to a        | 15:12:34 |
| 7  | new exhibit.  It was Exhibit 26, Madam Court             | 15:12:40 |
| 8  | Reporter, I think it is?                                 | 15:12:40 |
| 9  | THE COURT REPORTER:  Correct.                            | 15:12:40 |
| 10 | MR. STERN:  The State Corporation                        | 15:12:41 |
| 11 | Commission filing due 2/27/09, signed 12/29/08.          | 15:12:42 |
| 12 | MR. REDD:  I restate my continuing                       | 15:12:47 |
| 13 | objection.                                               | 15:12:55 |
| 14 | MR. JORDAN:  Is this Exhibit 26?                         |          |
| 15 | THE COURT REPORTER:  It is.                              |          |
| 16 | MR. REDD:  I restate the continuing                      |          |
| 17 | objection.                                               |          |
| 18 | BY MR. STERN:                                            |          |
| 19 | Q    Mr. White --                                        |          |
| 20 | MR. STERN:  I acknowledge that you have                  | 15:12:59 |
| 21 | made the objection; not the merit of it.                 | 15:13:01 |
| 22 | MR. JORDAN:  I -- we have -- already have                | 15:13:03 |

1    a continuing objection on this line, don't we,          15:13:06

2    Stephen?                                                15:13:08

3            MR. STERN:  Yes.  Just --                        15:13:08

4            MR. JORDAN:  And I don't expect that             15:13:09

5    you're accepting my objection, just -- it's just        15:13:11

6    noted on the record.                                    15:13:13

7            MR. STERN:  Understood.  Thank you.  I           15:13:13

8    just -- when I acknowledge, I just want to be           15:13:16

9    clear what I'm acknowledging, that's all.  Thank        15:13:19

10   you.                                                    15:13:22

11   BY MR. STERN:                                           15:13:23

12       Q    Mr. White, did you submit this --              15:13:23

13       A    Yes, sir.                                      15:13:23

14       Q    -- report to the State Corporation             15:13:27

15   Commission on behalf of Compass Marketing?              15:13:31

16       A    I don't know.  I have no reason to             15:13:32

17   believe I didn't, but I don't know.                     15:13:38

18       Q    Is that your signature at the bottom of        15:13:40

19   the document?                                           15:13:42

20       A    Don't know.                                    15:13:42

21       Q    Does it look like your signature?             15:13:44

22       A    It appears to be my signature.               15:13:46

1     Q    And this document is dated 12/29/08 and          15:13:48

2  it lists the Compass Marketing address as 222            15:13:54

3  Severn Avenue, Building 14, Suite 200, Annapolis,        15:13:59

4  Maryland 21403?                                          15:14:03

5     A    It does.                                         15:14:03

6     Q    But that's not the address that was              15:14:05

7  listed on those signature cards?                         15:14:10

8     A    Which signature cards?                           15:14:11

9     Q    The signature cards of the County First          15:14:13

10 Bank that we referred to earlier.                        15:14:17

11    A    I don't think that's the same address,           15:14:19

12 no.                                                      15:14:22

13    Q    All right.                                       15:14:22

14         MR. STERN:  Now let's go to the filing           15:14:25

15 dated May 6, 2020.                                       15:14:38

16    Q    Did you submit this report to the                15:14:41

17 Virginia State Corporation Commission?                   15:14:59

18    A    I -- I don't know.  I have no reason to          15:14:59

19 doubt it, but I don't know.                              15:15:07

20         (White Deposition Exhibit 27 marked for          15:15:07

21 identification and is attached to the transcript.)       15:15:07

22         MR. STERN:  Can you scroll to the bottom,        15:15:12

| | | |
|---|---|---|
| 1 | Heather. | 15:15:14 |
| 2 | Q    Does it reflect your name as the one at | 15:15:17 |
| 3 | the bottom having submitted it? | 15:15:19 |
| 4 | A    It reflects my name as the printed name, | 15:15:21 |
| 5 | the signature name, and the title. | 15:15:24 |
| 6 | Q    And dated May 6, 2020? | 15:15:25 |
| 7 | A    Yes, yes, May 6, 2020. | 15:15:30 |
| 8 | Q    And it lists the principal address of the | 15:15:39 |
| 9 | company at 222 Severn Avenue, Suite 200, | 15:15:44 |
| 10 | Annapolis, Maryland 21403? | 15:15:50 |
| 11 | A    It does. | 15:15:52 |
| 12 | Q    And did you submit this form to the State | 15:15:52 |
| 13 | Corporation Commission? | 15:15:59 |
| 14 | A    I don't know. | 15:15:59 |
| 15 | Q    Do you deny submitting this form to the | 15:16:01 |
| 16 | State Corporation Commission? | 15:16:05 |
| 17 | A    I do not. | 15:16:05 |
| 18 | Q    Why were you submitting a form on behalf | 15:16:08 |
| 19 | of the company in May 2020? | 15:16:14 |
| 20 | MR. REDD:  Objection in addition to the | 15:16:17 |
| 21 | continuing objection; form. | 15:16:25 |
| 22 | A    I don't know that I did. | 15:16:25 |

| | | |
|---|---|---|
| 1 | Q    You're not denying that you did either? | 15:16:33 |
| 2 | A    I am not. | 15:16:38 |
| 3 | Q    Do you know who else would have submitted | 15:16:39 |
| 4 | this form on behalf of the company other than you? | 15:16:44 |
| 5 | A    I do not. | 15:16:46 |
| 6 | Q    In the section it's a blue high -- it's | 15:16:48 |
| 7 | about two-thirds of the way down you see a section | 15:16:54 |
| 8 | that says "Title," "Director," "Name," "Address"? | 15:16:57 |
| 9 | A    I do. | 15:16:59 |
| 10 | Q    Is that section accurate? | 15:17:04 |
| 11 | A    I don't think it is a hundred percent | 15:17:08 |
| 12 | accurate, no. | 15:17:26 |
| 13 | Q    What's inaccurate about this document? | 15:17:26 |
| 14 | A    It appears to me not to list John David | 15:17:28 |
| 15 | White as an owner. | 15:17:40 |
| 16 | Q    But as of May 6, 2020, John David White | 15:17:41 |
| 17 | was an owner of Compass Marketing? | 15:17:45 |
| 18 | A    To the best of my knowledge. | 15:17:47 |
| 19 | Q    All right. | 15:17:51 |
| 20 | MR. STERN:  And then take that one down. | 15:17:57 |
| 21 | I think we're up to -- the next one will be 28? | 15:18:02 |
| 22 | THE COURT REPORTER:  That's correct. | 15:18:03 |

1      MS. YEUNG:  Do you have another one you         15:18:05

2  would like to put up?                               15:18:42

3      MR. STERN:  Yeah, the one that's -- oh,         15:18:43

4  I'm sorry; May -- February 14, 2021.                15:18:44

5      (White Deposition Exhibit 28 marked for         15:18:44

6  identification and is attached to the transcript.)  15:18:47

7      Q    This is in similar form.  And this one     15:18:47

8  appears to have been submitted by your brother      15:19:02

9  Daniel White.  Do you see his name at the bottom    15:19:05

10  there?                                             15:19:07

11      A    The printed name on the bottom is Daniel 15:19:07

12  Joseph White, the signature line is Daniel Joseph  15:19:16

13  White, and the title is owner.                     15:19:20

14      Q    And then it lists the company address as 15:19:21

15  your home address?                                 15:19:28

16      A    It does.                                  15:19:28

17      Q    In the section "Title," "Director,"       15:19:36

18  "Name," "Address," is that section accurate?       15:19:41

19      A    It only lists two names, but of what it   15:19:45

20  lists I think is accurate.                         15:20:03

21      Q    So as of February 14, 2021, you          15:20:04

22  acknowledge that you and Daniel were no longer     15:20:10

1    directors of the company?                                      15:20:13

2         A    I'm not acknowledging that, no.  I'm                 15:20:13

3    reading that form that you put up on the screen.               15:20:18

4         Q    Well, what was it -- what's inaccurate               15:20:20

5    about that section?                                            15:20:23

6         A    It contains two -- two -- two members of             15:20:24

7    the ownership group of Compass Marketing and I                 15:20:36

8    believe there are three.                                       15:20:40

9         Q    And who do you believe is the third owner            15:20:41

10   that's not listed there?                                       15:20:46

11        A    I believe it's John White.                           15:20:47

12        Q    Besides the omission of John White, is               15:20:49

13   there anything else that's inaccurate about this               15:20:54

14   document?                                                      15:20:56

15             MR. REDD:  Object to form.                           15:20:56

16        A    The entire document or?                              15:20:56

17             MR. REDD:  Yeah.                                     15:20:56

18        A    Are you asking about the entire document             15:21:02

19   or that section we've just been discussing?                    15:21:03

20        Q    Let's focus on that section for the                  15:21:05

21   moment.                                                        15:21:08

22        A    The section that has a bar across it,                15:21:08

1    "Title," "Director," "Name," "Address," as far as          15:21:13

2    I can tell, that is accurate.  As far as I can              15:21:17

3    tell.                                                       15:21:22

4         Q    Okay.  And in that section --                    15:21:22

5         A    Except -- except, like I said, I believe         15:21:26

6    there are three owners of Compass Marketing, John          15:21:29

7    White being the third, and his name is not listed          15:21:33

8    in that block.                                              15:21:36

9         Q    Okay.  As far as the company's mailing           15:21:36

10   address up there, is that an accurate listing of           15:21:44

11   the company's mailing address, Mechanicsville,             15:21:46

12   Maryland?                                                   15:21:51

13        A    I believe that's one of their mailing            15:21:51

14   addresses, yes.                                             15:21:54

15        Q    It says principal address; correct?             15:21:55

16        A    Did you say does it say principal               15:21:58

17   address?                                                    15:22:03

18        Q    Yeah, it lists the principal address as         15:22:03

19   Mechanicsville; is that correct?                            15:22:07

20        A    I can't read the part where it says             15:22:08

21   principal and -- and I don't think we have a                15:22:11

22   principal address.  But it does list the                    15:22:14

1  Mechanicsville, Maryland, address.                    15:22:20

2      Q    So how do you decide what to identify as     15:22:21

3  the principal address if there isn't one?             15:22:26

4      A    I don't.                                      15:22:29

5      Q    And so you maintain as of -- what's the      15:22:30

6  date of this? -- May -- or February 2021 one of       15:22:41

7  the principal addresses of the company was your       15:22:47

8  Mechanicsville address?                               15:22:53

9      A    One of the addresses of Compass Marketing    15:22:53

10 was the Mechanicsville address.                       15:22:56

11     Q    This says "Principal Office Address."        15:22:56

12     A    I -- I can't read what kind of address it    15:23:02

13 is; however, I am not saying that one address is a    15:23:06

14 principal above the other two.  But Mechanicsville    15:23:12

15 address is one of the addresses of Compass            15:23:17

16 Marketing.                                            15:23:19

17     Q    All right.  Then I want to go to a new --    15:23:19

18 I want to go to an e-mail dated November 2, 2020.     15:23:36

19          MS. YEUNG:  Just give me one moment.         15:23:40

20          (White Deposition Exhibit 29 marked for      15:23:40

21 identification and is attached to the transcript.)    15:24:01

22     Q    Do you see this e-mail from Google           15:24:01

1    Payments to mwhite@compassmarketinginc.com dated          15:24:29

2    November 2, 2020, at 11:31 a.m.?                           15:24:34

3        A    I see the item you have up on the screen,         15:24:37

4    yes.                                                       15:24:42

5        Q    And in there it says "Google Workspace"           15:24:42

6    --                                                         15:24:45

7            MR. REDD:  I'm going to insert the                 15:24:45

8    continuing objection again.  Sorry to interrupt.          15:24:47

9    Continuing objection still.                                15:24:50

10       Q    It says:  "Google Workspace.  Your                15:24:51

11   financial institution declined payment from your          15:24:55

12   MasterCard" ending in "5362 associated with the           15:24:58

13   Google Workspace account for                               15:24:58

14   compassmarketinginc.com on Nov 2, 2020."  Have you        15:25:04

15   --                                                         15:25:04

16       A    Ask the question again, please.                  15:25:04

17       Q    Have you been paying to maintain the             15:25:11

18   compassmarketinginc.com e-mail address?                   15:25:15

19       A    No.                                               15:25:16

20       Q    Have you been receiving the e-mail -- the        15:25:19

21   e-mails to this e-mail account to maintain the            15:25:23

22   compassmarketinginc.com account?                          15:25:25

| | | |
|---|---|---|
| 1 | A    No. | 15:25:25 |
| 2 | Q    Do you know who has been receiving | 15:25:30 |
| 3 | e-mails to maintain the compassmarketinginc.com | 15:25:34 |
| 4 | account? | 15:25:39 |
| 5 | A    No. | 15:25:39 |
| 6 | Q    Do you have a son named George? | 15:25:40 |
| 7 | A    I do. | 15:25:45 |
| 8 | Q    Do you know if George has been paying to | 15:25:46 |
| 9 | maintain the compassmarketinginc.com e-mail | 15:25:50 |
| 10 | account? | 15:25:54 |
| 11 | A    Not that I'm aware of. | 15:25:54 |
| 12 | Q    Do you know -- do you have a MasterCard | 15:25:55 |
| 13 | credit card with the last four digits ending in | 15:25:59 |
| 14 | 5362? | 15:26:04 |
| 15 | A    I don't know. | 15:26:04 |
| 16 | Q    Does George have a credit card, | 15:26:04 |
| 17 | MasterCard credit card, with the last four digits | 15:26:09 |
| 18 | ending in 5362? | 15:26:12 |
| 19 | A    I don't know. | 15:26:14 |
| 20 | Q    Have you asked George to maintain the | 15:26:14 |
| 21 | compassmarketinginc.com e-mail account? | 15:26:21 |
| 22 | A    No. | 15:26:21 |

| | |
|---|---|
| 1    Q    Have you asked him to pay any bills for | 15:26:23 |
| 2  the compassmarketinginc.com e-mail account? | 15:26:26 |
| 3    A    No. | 15:26:29 |
| 4    Q    Prior to today have you seen this e-mail | 15:26:30 |
| 5  that's now up on the screen that's Exhibit -- | 15:26:40 |
| 6       MR. STERN:  I forgot the number.  Is it | 15:26:43 |
| 7  29? | 15:26:46 |
| 8       THE COURT REPORTER:  29. | 15:26:46 |
| 9    A    I don't think I have seen this e-mail.  I | 15:26:47 |
| 10 don't think so. | 15:26:54 |
| 11   Q    Is George able to access e-mails to your | 15:26:54 |
| 12 mwhite@compassmarketinginc.com e-mail account? | 15:27:11 |
| 13      MR. REDD:  Object to form. | 15:27:11 |
| 14      You can answer. | 15:27:13 |
| 15   A    Not that I'm aware of. | 15:27:13 |
| 16      MR. JORDAN:  Objection; speculation. | 15:27:13 |
| 17      THE COURT REPORTER:  I'm sorry, Mr. | 15:27:13 |
| 18 White; did you answer? | 15:27:19 |
| 19      THE WITNESS:  I did.  Not that I'm aware | 15:27:21 |
| 20 of; sorry. | 15:27:22 |
| 21      THE COURT REPORTER:  Thank you. | 15:27:22 |
| 22   Q    All right. | 15:27:22 |

| | | |
|---|---|---|
| 1 | MR. STERN:  Let's go to another e-mail | 15:27:26 |
| 2 | dated January 1, 2021.  This is also an e-mail | 15:27:30 |
| 3 | from Google Payments to | 15:27:43 |
| 4 | mwhite@compassmarketinginc.com. | 15:27:43 |
| 5 | Q    Did you receive this e-mail? | 15:27:51 |
| 6 | A    I do not believe so, no. | 15:27:52 |
| 7 | Q    Prior to today have you seen this e-mail? | 15:27:55 |
| 8 | A    I don't think so, no. | 15:27:58 |
| 9 | MR. STERN:  Then let me just clarify. | 15:28:05 |
| 10 | This will be Exhibit I guess 30 for the | 15:28:06 |
| 11 | deposition. | 15:28:08 |
| 12 | THE COURT REPORTER:  Correct. | 15:28:08 |
| 13 | (White Deposition Exhibit 30 marked for | 15:28:08 |
| 14 | identification and is attached to the transcript.) | 15:28:10 |
| 15 | Q    Did you pay the invoice that's noted on | 15:28:10 |
| 16 | this e-mail? | 15:28:16 |
| 17 | A    I don't think so, no. | 15:28:16 |
| 18 | Q    Do you know who paid the invoice noted on | 15:28:23 |
| 19 | this e-mail? | 15:28:29 |
| 20 | A    I do not. | 15:28:29 |
| 21 | MR. STERN:  Just give me one -- I'm going | 15:28:32 |
| 22 | to -- hold on one second. | 15:28:37 |

| | | |
|---|---|---|
| 1 | All right.  At this time I have no | 15:28:45 |
| 2 | further questions today.  But in light of the | 15:28:46 |
| 3 | number of subjects that were not able to be | 15:28:51 |
| 4 | addressed, this deposition remains open.  In light | 15:28:56 |
| 5 | of the number of e-mails that we've received | 15:29:00 |
| 6 | without all the documents being attached and other | 15:29:04 |
| 7 | e-mails that were not produced, this deposition | 15:29:07 |
| 8 | remains open to be addressed further by the Court, | 15:29:10 |
| 9 | as we believe we have not received all the e-mails | 15:29:13 |
| 10 | or other documents that are subject to the | 15:29:17 |
| 11 | subpoenas that were served on Mr. White. | 15:29:19 |
| 12 | With that, I remember -- I know | 15:29:22 |
| 13 | Mr. Jordan said that he had some questions.  I'll | 15:29:24 |
| 14 | turn it over to him at this time. | 15:29:27 |
| 15 | MR. JORDAN:  Okay.  Thank you, Stephen. | 15:29:29 |
| 16 | MR. REDD:  One second before I -- | 15:29:33 |
| 17 | MR. JORDAN:  Give me just one second. | 15:29:33 |
| 18 | MR. REDD:  Do you want to take a quick | 15:29:33 |
| 19 | break to get yourself ready? | 15:29:33 |
| 20 | MR. JORDAN:  Do you guys need to take a | 15:29:37 |
| 21 | break before we switch?  Justin? | 15:29:38 |
| 22 | MR. REDD:  I don't need a break per se, | 15:29:39 |

1    but I just want to see if we can make any progress          15:29:43

2    on any of several issues that either are out there          15:29:46

3    from before that were mentioned today or that --            15:29:51

4    that we're going to still have a disagreement               15:29:56

5    about.  So if this is a good time to do it or               15:29:57

6    after Greg goes, either way, since we're all                15:30:01

7    sitting here talking to each other and it's been            15:30:04

8    difficult to have a conversation where we could             15:30:07

9    resolve some of this stuff possibly beforehand, I           15:30:11

10   would like to -- for the lawyers at least to stay           15:30:16

11   on.  We don't have to stay on the record, but               15:30:19

12   since we're all here, I want to do that at some             15:30:21

13   point.                                                      15:30:24

14            MR. STERN:  I think it would be good if            15:30:24

15   the lawyers have a conversation afterwards.                 15:30:26

16            MR. REDD:  Okay.                                   15:30:27

17            MR. STERN:  And I -- I welcome that and I          15:30:32

18   appreciate you making the request, Justin.                  15:30:34

19            MR. REDD:  Thanks.                                 15:30:36

20            MR. JORDAN:  Okay.  Give me a second.              15:30:43

21   Let me save this last e-mail so I don't forget.            15:30:52

22   BY MR. JORDAN:                                              15:30:55

1       Q    Okay.  All right.  Mr. White, or Michael,        15:30:55

2   what I want to do is -- give me just a second.            15:31:05

3   I'm going to pull up a file here.                         15:31:11

4           MR. JORDAN:  Can the court reporter give          15:31:12

5   me access to put something up on the screen?  I           15:31:16

6   don't know whether I have that access at this             15:31:19

7   moment.                                                   15:31:20

8           THE COURT REPORTER:  The tech can help            15:31:20

9   you with that, Mr. Jordan.                                15:31:25

10          MR. JORDAN:  Terrific.                            15:31:25

11          MS. YEUNG:  I am pretty sure you do.  It          15:31:25

12  should be at the bottom in the middle.  It's the          15:31:32

13  green button that said "Share Screen."  You can           15:31:34

14  see all of our faces.                                     15:31:44

15          MR. JORDAN:  Okay.  Give me -- it looks           15:31:44

16  like I'm going to have to -- the problem is that          15:31:44

17  if I bring up the last e-mail, I have to --               15:31:45

18          MS. YEUNG:  Then you'll choose which              15:31:49

19  screen you want to share.                                 15:31:50

20          AV TECHNICIAN:  Mr. --                            15:31:50

21          MS. YEUNG:  (Indiscernible).                      15:31:50

22          AV TECHNICIAN:  Mr. Jordan, I made you --         15:31:50

| | | |
|---|---|---|
| 1 | MR. JORDAN: I have to close a couple | 15:31:50 |
| 2 | files in order to be able to bring up -- | 15:31:53 |
| 3 | AV TECHNICIAN: Mr. Jordan, I made you | 15:32:01 |
| 4 | cohost just so you know. | 15:32:03 |
| 5 | MR. JORDAN: All right. Thank you very | 15:32:04 |
| 6 | much. But I still need to close a couple files | 15:32:05 |
| 7 | because I have -- there have been 30 exhibits and | 15:32:06 |
| 8 | there are a bunch of things on my computer and I | 15:32:07 |
| 9 | don't do a good job of -- of choosing the tab | 15:32:11 |
| 10 | switch if there are too many files open. So give | 15:32:18 |
| 11 | me just -- okay. There we go. | 15:32:20 |
| 12 | MR. BOSHEA: Hey, Greg? | 15:32:20 |
| 13 | MR. JORDAN: Hey what? | 15:32:20 |
| 14 | MR. BOSHEA: Hey, who is all on right | 15:32:55 |
| 15 | now? | 15:32:56 |
| 16 | MR. JORDAN: Everybody is on, David. You | 15:32:56 |
| 17 | can turn your microphone off. That's fine. | 15:33:04 |
| 18 | MR. BOSHEA: Okay. All right. Thank | 15:33:04 |
| 19 | you. | 15:33:07 |
| 20 | MR. JORDAN: Okay. What I've tried to do | 15:33:08 |
| 21 | here is -- give me a second. It looks like I have | 15:33:08 |
| 22 | the background here and I want to see if I can | 15:33:11 |

1   eliminate that.  I didn't plan on this so give me        15:33:15

2   just a second.                                           15:33:30

3          All right.  Let's see if we can do this          15:34:04

4   now.                                                     15:34:06

5   BY MR. JORDAN:                                           15:34:06

6      Q    Okay.  Do you see the e-mail that is up         15:34:10

7   on the screen here that says -- it says Michael          15:34:12

8   White to Gregory Jordan.  Is that up on the screen       15:34:17

9   there, Mr. White?                                        15:34:20

10     A    It is.                                           15:34:20

11     Q    Okay.  Now, I will represent to you that        15:34:21

12  this is an e-mail that I received from you on June       15:34:23

13  28, 2021, at 11:27 a.m.  And this is -- this is an       15:34:28

14  e-mail that is forwarded, and then below that on         15:34:34

15  the -- the -- the e-mail is an e-mail, it says,          15:34:44

16  let's see, from Daniel White to Mike White -- to         15:34:51

17  Mike, and then it has an e-mail address.  And then       15:34:56

18  underneath that is jwhite, Golf4me36@aol.com:            15:34:59

19  Your agreement is attached.  Not signed off by our      15:35:07

20  G.C., but should ne -- "ne" is a typo -- tomorrow.      15:35:13

21         Do you -- now that you see the original          15:35:17

22  e-mail here, do you recognize this e-mail?               15:35:18

1      A    It -- it looks similar to an e-mail that      15:35:20

2    I sent you, but I don't know that's the actual      15:35:23

3    one.                                                 15:35:27

4      Q    Okay.                                          15:35:27

5      A    I have no reason to --                         15:35:27

6      Q    I will -- I will represent to you that I       15:35:27

7    have not --                                           15:35:27

8           THE COURT REPORTER:  I'm sorry.  I'm           15:35:27

9    sorry, Mr. White; I didn't hear the end of what       15:35:35

10   you said.                                             15:35:36

11          MR. JORDAN:  Sorry about that.                 15:35:37

12     A    I have no reason to believe that it's         15:35:37

13   not.                                                  15:35:40

14     Q    Okay.  I will represent to you that I         15:35:40

15   have not altered this e-mail in any fashion.  But    15:35:43

16   with -- with that understanding, is -- can you       15:35:45

17   confirm that this is the e-mail that you sent to     15:35:48

18   me on June 28, 2021, at 11:27 a.m.?                  15:35:50

19          MR. REDD:  Object to form.  I think you       15:35:55

20   got the date wrong, Greg.                            15:35:59

21          MR. JORDAN:  I'm sorry; on September 28,      15:36:00

22   2021, at 11:27 a.m.                                  15:36:05

1        Q    Can you confirm --                          15:36:08

2        A    I can confirm that -- I can confirm that    15:36:12

3   I sent an e-mail very similar to that to you, and     15:36:14

4   I have no reason to believe that that is not the      15:36:17

5   e-mail.                                               15:36:20

6        Q    Okay.  Now, the first thing I want to       15:36:20

7   know is I think we've established previously but I     15:36:25

8   just want to make sure, you maintain an e-mail        15:36:27

9   address of michaelrwhite@comcast.net; is that         15:36:31

10  correct?                                              15:36:35

11       A    I do.                                       15:36:35

12       Q    Okay.  And you've indicated you know who    15:36:36

13  Daniel White is.  It's your brother.  Are -- are      15:36:42

14  you -- have you received e-mails from Daniel White    15:36:47

15  from danieljwhite@msn.com?                            15:36:48

16       A    Yes, I have.                                15:36:49

17       Q    Okay.  And as far as you know, Daniel       15:36:52

18  White maintained danieljwhite@msn.com in the month    15:37:02

19  of May of 2007; is that correct?                      15:37:06

20       A    As far as I know.  I can't confirm that,    15:37:09

21  but I have no reason to doubt it.                      15:37:15

22       Q    Okay.  All right.  And then there is a --   15:37:16

1    there is -- below that there is an e-mail                15:37:23

2    addressed jwhite@compassmarketinginc.com.  Do you        15:37:27

3    recognize that address?                                  15:37:31

4        A    I do.                                           15:37:31

5        Q    And whose address is that?                      15:37:33

6        A    I believe that is the address for John          15:37:35

7    White.                                                   15:37:41

8        Q    Okay.  And John White being the -- one of       15:37:41

9    the owners of Compass Marketing?                         15:37:44

10       A    Correct.                                        15:37:44

11       Q    And do you recall that John White               15:37:44

12   maintained that e-mail address in May of 2007?           15:37:52

13       A    I believe he did.                               15:37:54

14       Q    Okay.  And then there's an e-mail address       15:38:00

15   Golf4me36@aol.com.  Do you recognize that e-mail         15:38:09

16   address?                                                 15:38:11

17       A    I -- I believe that I do.  I have seen it       15:38:11

18   in the past.  I believe I recognize it.                  15:38:14

19       Q    And is that David Boshea's e-mail address       15:38:19

20   or someone else's?                                       15:38:23

21       A    I believe that it is David Boshea's             15:38:24

22   e-mail address.                                          15:38:27

1        Q    Okay.  And then the -- there is an          15:38:27

2   e-mail, it has some language in it, and it bears a    15:38:34

3   date of Tuesday, 22 May 2007, 1:24:33 on it.  And     15:38:37

4   so that was an e-mail that purports to be sent on      15:38:46

5   May 22, 2007, at 1:24 in the morning; is that          15:38:50

6   correct?                                               15:38:57

7        A    That's what it says, yes.                    15:38:57

8        Q    Okay.  And then the e-mail was eventually    15:38:59

9   sent to you and there was -- it appears there's an     15:39:04

10  attachment on the e-mail that I received.  Was --      15:39:08

11  was the attachment on the e-mail that Daniel White     15:39:11

12  sent to you on May 22, 2007, at 2:08 a.m.?             15:39:15

13       A    I believe there was.  There wasn't an        15:39:23

14  attachment attached to it when I found it in 2021.     15:39:31

15       Q    Okay.  And did -- do you know how to         15:39:36

16  manipulate e-mails so that you can change              15:39:42

17  attachments?                                           15:39:45

18       A    I do not.                                    15:39:45

19       Q    Okay.  Let's see if this works here.         15:39:48

20  Okay.  Now, I'm going to open up this e-mail           15:39:53

21  attachment here.  And do you see it says:              15:39:56

22  "COMPASS MARKETING, INC, AGREEMENT RELATING TO         15:40:01

| | | |
|---|---|---|
| 1 | EMPLOYMENT AND POST-EMPLOYMENT COMPETITION"?  Do | 15:40:02 |
| 2 | you see that? | 15:40:08 |
| 3 | MR. REDD:  Greg, I believe you're going | 15:40:08 |
| 4 | to have to slide it over to the same monitor. | 15:40:11 |
| 5 | MR. JORDAN:  Okay.  I wasn't sure whether | 15:40:13 |
| 6 | it opened or not. | 15:40:16 |
| 7 | MR. REDD:  Share the different windows. | 15:40:16 |
| 8 | It's not showing up. | 15:40:19 |
| 9 | MR. JORDAN:  That's fine.  Okay. | 15:40:20 |
| 10 | Q    Okay.  Here is a document.  I opened up | 15:40:24 |
| 11 | the attachment to that e-mail, I will represent | 15:40:28 |
| 12 | that to you. | 15:40:31 |
| 13 | MR. JORDAN:  So this would be -- the | 15:40:32 |
| 14 | first one would be Exhibit 31 and this would be | 15:40:32 |
| 15 | Exhibit 31A.  And I will mark these and send these | 15:40:35 |
| 16 | to the court reporter. | 15:40:35 |
| 17 | (White Deposition Exhibits 31 and 31A | 15:40:35 |
| 18 | marked for identification and are attached to the | 15:40:35 |
| 19 | transcript.) | 15:40:37 |
| 20 | Q    And this is -- this is a document | 15:40:37 |
| 21 | "COMPASS MARKETING, INC, AGREEMENT RELATING TO | 15:40:46 |
| 22 | EMPLOYMENT AND POST-EMPLOYMENT COMPETITION."  Do | 15:40:47 |

1    you see that?                                          15:40:50

2        A    I do.                                         15:40:50

3        Q    Okay.  And if you look at the bottom         15:40:51

4    here, it indicates it's a six-page document.  Do      15:40:55

5    you see that?                                          15:40:58

6        A    I can't see the bottom.                       15:40:58

7        Q    On the very bottom left-hand corner of       15:41:01

8    the screen, at least on my screen.                     15:41:05

9             Let me try that.  Let me try it a            15:41:20

10   different way.  I guess I should have practiced.       15:41:21

11            Okay.  Do you see the document again?        15:41:31

12       A    I do.                                         15:41:42

13       Q    Okay.  Do you -- I'm not sure if you can     15:41:44

14   see on your screen or not that it is -- it says        15:41:46

15   "Page 1 of 6" on the bottom left-hand corner.  Can     15:41:50

16   you see that?                                          15:41:53

17       A    I can see that, yes.                          15:41:53

18       Q    And on the first paragraph of the            15:41:54

19   document, can you just read that into the record       15:41:58

20   if you can?                                            15:42:03

21       A    "This Agreement is between...David John      15:42:03

22   Boshea, residing at 4839 Clearwater LN.                15:42:06

1    Naperville, IL. 60564 ('Employee') and COMPASS    15:42:16

2    MARKETING, INC. ('COMPASS'), having a place of    15:42:26

3    business at 612 Third Street, Annapolis."    15:42:27

4         Q    Okay.  It -- in 2000 -- or was there a    15:42:31

5    time when Compass Marketing had a place of    15:42:36

6    business at 612 Third Street, Annapolis?    15:42:39

7         A    Yes.    15:42:41

8         Q    When was that?    15:42:41

9         A    I believe the ending date was in 2007.    15:42:45

10   I'm not real sure of the beginning date.    15:42:54

11        Q    That's fine.  And then just going down    15:42:56

12   through the document, there is a -- there is a    15:43:02

13   paragraph in this document -- let me see if I can    15:43:10

14   find it here -- all right, "ARTICLE 6. SEVERANCE."    15:43:14

15   Do you see that on the screen?    15:43:17

16        A    I do.    15:43:18

17        Q    Okay.    15:43:20

18             MR. STERN:  I just want to quickly object    15:43:21

19   to this whole line of questioning.  He said    15:43:24

20   earlier he has no idea whether or not Mr. Boshea    15:43:25

21   had met an employment agreement with severance as    15:43:29

22   of 2000 -- from 2007.  The document speaks for    15:43:31

1    itself.  It will be just a standing objection.          15:43:35

2         MR. JORDAN:  Okay.  Thank you.                      15:43:38

3    Q    So -- so this -- this document has an              15:43:40

4    "ARTICLE 6, SEVERANCE"; is that right?                  15:43:43

5    A    Yes, it does.                                      15:43:44

6    Q    Okay.  And it -- it relates to -- it               15:43:47

7    explains the terms in there of the severance that      15:43:52

8    would have been provided to Mr. Boshea under this      15:43:54

9    albeit unsigned agreement; is that correct?            15:43:58

10   A    It appears to be that way, yes.                    15:44:01

11   Q    Okay.  And then at the bottom of the               15:44:03

12   document we note that it is -- has signature areas      15:44:09

13   but it's not signed; is that correct?                   15:44:11

14        MR. REDD:  Object to the form.                      15:44:13

15        Go ahead.                                           15:44:20

16   A    I believe so, yes.  It appears that way,           15:44:20

17   yes.                                                     15:44:23

18   Q    Okay.  All right.  Now, I don't know               15:44:23

19   whether this is going to work or not so let's see.      15:44:31

20   Tell me what you see on the screen now.                 15:44:33

21   A    I see "Info," "Employment Agreement -              15:44:34

22   Boshea - Final," and then it looks like some            15:44:37

1    options:  "Read only," "Comparable Mode," "Protect                15:44:41

2    Document."                                                         15:44:42

3        Q    Okay.  All right.  I want to do this                      15:44:42

4    again to make sure you understand what I'm doing.                  15:44:48

5    See where that cursor is on File here?                             15:44:52

6        A    Yeah.                                                     15:44:52

7        Q    And then I go to "Info" -- there -- go                    15:44:55

8    fourth item down, "Info," and I click that.  So                    15:44:56

9    this is the information and it says -- what does                   15:44:59

10   it say in blue up on top here?                                     15:45:02

11       A    "Employment Agreement - Boshea - Final."                  15:45:04

12       Q    Okay.  And then going over here to the                    15:45:05

13   properties of the document, okay, do you see                       15:45:12

14   it's -- it has the size of the file; the pages,                    15:45:18

15   there are six pages; words; total editing time;                    15:45:21

16   title.  What does it say for title?                                15:45:27

17       A    "Adams Employment Agreement."                             15:45:28

18       Q    Okay.  And then it has related dates.  Do                 15:45:33

19   you see where it says "Last Modified"?                             15:45:37

20       A    I do.                                                     15:45:38

21       Q    Okay.  And when was this document last                    15:45:40

22   modified?                                                          15:45:43

| | | |
|---|---|---|
| 1 | A    The date next to "Last Modified" is | 15:45:43 |
| 2 | 5/22/2007, 1-22 a.m. | 15:45:50 |
| 3 | Q    And when was it created? | 15:45:54 |
| 4 | A    The date next to "Created" is May 22, | 15:45:57 |
| 5 | 2007.  The time is 1:20 a.m. | 15:46:03 |
| 6 | Q    Okay.  And it says "Last Printed"? | 15:46:07 |
| 7 | A    The date next to "Last Printed" is | 15:46:08 |
| 8 | 1/9/2007 and the time is 6:14 p.m. | 15:46:14 |
| 9 | Q    Okay.  And then it says "Author."  And it | 15:46:18 |
| 10 | says last modified by whom? | 15:46:20 |
| 11 | A    It says "Last Modified."  There's a -- | 15:46:22 |
| 12 | there's a purple circle with a J in it and then | 15:46:28 |
| 13 | the name of John next to it. | 15:46:30 |
| 14 | Q    Okay.  Was there -- was there a John who | 15:46:32 |
| 15 | was employed by Compass who would have been | 15:46:34 |
| 16 | involved in at least editing documents in May of | 15:46:38 |
| 17 | 2007? | 15:46:45 |
| 18 | A    I don't know if he did, but there was a | 15:46:45 |
| 19 | John -- | 15:46:51 |
| 20 | Q    No, no.  Was there -- I didn't ask -- I | 15:46:51 |
| 21 | just said generally.  Was there a John employed by | 15:46:54 |
| 22 | Compass Marketing who would have been involved in | 15:46:59 |

1    editing documents?                                    15:47:01

2        A    Yes.                                         15:47:02

3        Q    And who would that John be?                  15:47:02

4        A    One of the owners, John White.               15:47:07

5        Q    Okay.  Can you think of anyone else who      15:47:11

6    would be editing documents for Compass Marketing      15:47:14

7    in 2007 who went by the name of John?                 15:47:18

8        A    I -- I can't think of any -- any other       15:47:20

9    employee with the first name John in 2007 --          15:47:30

10       Q    Okay.                                        15:47:32

11       A    -- right off the top of my head, no.         15:47:33

12            THE COURT REPORTER:  I'm sorry; did you      15:47:33

13   say right off the top of your head.                   15:47:39

14            THE WITNESS:  That's correct.                15:47:41

15            MR. JORDAN:  Sorry for interrupting.         15:47:41

16       Q    And -- and do you know how to change         15:47:44

17   the -- the -- the modification dates in a Word        15:47:48

18   document?                                             15:47:51

19       A    No.                                          15:47:51

20       Q    Do you know if it's even possible?           15:47:53

21       A    I don't know.                                15:47:56

22       Q    Do you know how to change the created        15:47:59

| | | |
|---|---|---|
| 1 | date on a Word document? | 15:48:03 |
| 2 | A    No. | 15:48:04 |
| 3 | Q    Do you know if it's even possible? | 15:48:05 |
| 4 | A    I don't know. | 15:48:08 |
| 5 | Q    And do you know that -- how to change the | 15:48:10 |
| 6 | last printed date on a Word document? | 15:48:15 |
| 7 | A    I do not know how to do that. | 15:48:17 |
| 8 | Q    Okay.  And do you know if it's even | 15:48:21 |
| 9 | possible? | 15:48:23 |
| 10 | A    That I don't know either. | 15:48:23 |
| 11 | Q    Okay.  I closed it and there is the | 15:48:25 |
| 12 | document.  And I will bring this down a little bit | 15:48:30 |
| 13 | here.  Do you see where it says the title of the | 15:48:34 |
| 14 | agreement, of the document, is "Employment | 15:48:36 |
| 15 | Agreement - Boshea - Final"? | 15:48:37 |
| 16 | A    I do see that, yes. | 15:48:37 |
| 17 | Q    And do you -- do you recall that that's | 15:48:43 |
| 18 | the same name as on the info page here? | 15:48:45 |
| 19 | A    Yes, I see that, yes. | 15:48:49 |
| 20 | Q    Okay.  Terrific.  And so that was the | 15:48:54 |
| 21 | document that -- was that the document that you | 15:49:03 |
| 22 | forwarded to me in -- in the e-mail, Exhibit 31? | 15:49:04 |

| | | |
|---|---|---|
| 1 | A    I -- I don't know for sure.  I -- I | 15:49:07 |
| 2 | forwarded you a very similar document.  I | 15:49:17 |
| 3 | forwarded a document that was attached to the -- | 15:49:20 |
| 4 | to the e-mail, but I don't know if it was that | 15:49:23 |
| 5 | document. | 15:49:24 |
| 6 | Q    Okay.  Do you have any reason to believe | 15:49:24 |
| 7 | it wasn't that document? | 15:49:26 |
| 8 | A    No, I do not. | 15:49:27 |
| 9 | Q    Okay, terrific. | 15:49:29 |
| 10 | Okay.  Now, here is another document you | 15:49:53 |
| 11 | were unsure about before, and I'll represent to | 15:49:53 |
| 12 | you that I have not altered or changed this | 15:49:56 |
| 13 | e-mail.  Do you recall sending me an e-mail on | 15:50:00 |
| 14 | August 29, 2021, at 6:52 p.m.? | 15:50:04 |
| 15 | A    I recall sending you an e-mail.  I do not | 15:50:08 |
| 16 | recall the date and the time. | 15:50:16 |
| 17 | Q    Okay.  Sometime in late August of 2021 do | 15:50:17 |
| 18 | you recall sending me an e-mail? | 15:50:23 |
| 19 | A    I -- I remember sending you a couple of | 15:50:24 |
| 20 | e-mails generally in that time frame, but I don't | 15:50:34 |
| 21 | remember a specific date or time. | 15:50:36 |
| 22 | Q    Okay.  That's fine.  What I'm going to do | 15:50:36 |

| | | |
|---|---|---|
| 1 | is I'm going to have to go out and come back in, | 15:50:36 |
| 2 | but I'm -- see where I'm clicking on this to open | 15:50:48 |
| 3 | up the Boshea White Eagle use e-mail there.  And | 15:50:55 |
| 4 | then I'm going to go to that because I don't think | 15:50:56 |
| 5 | it works to just open up an e-mail.  It would be | 15:50:58 |
| 6 | nice if it did, but that's not how life works. | 15:51:01 |
| 7 | Okay.  So there is -- there is a document | 15:51:05 |
| 8 | here.  It's a -- it is -- it's a two-page document | 15:51:05 |
| 9 | you will see here.  And it starts -- on the top it | 15:51:13 |
| 10 | says "John White | 15:51:17 |
| 11 | Columbia Country Club."  Do you see that? | 15:51:29 |
| 12 | A    I do see that, yes. | 15:51:30 |
| 13 | Q    Okay.  And then can you read the | 15:51:31 |
| 14 | document?  And let me know when you are finished | 15:51:33 |
| 15 | reading it and then -- and tell me that I need to | 15:51:35 |
| 16 | move down because it is two pages and you only | 15:51:38 |
| 17 | read one. | 15:51:41 |
| 18 | THE COURT REPORTER:  Mr. Jordan, are we | 15:51:41 |
| 19 | marking this? | 15:51:49 |
| 20 | MR. JORDAN:  This is -- yes.  This is | 15:51:49 |
| 21 | Exhibit 32 and this is 32A.  The first one was 32 | 15:51:50 |
| 22 | and the second one was 32A. | 15:51:58 |

```
1          THE COURT REPORTER:  Okay.                    15:51:58

2          MR. JORDAN:  I believe, yeah.  Yeah.          15:52:00

3          (White Deposition Exhibit 32, previously      15:52:00

4   marked Exhibit 3, and Exhibit 32A marked for         15:52:00

5   identification and attached to the transcript.)      15:52:00

6      A    Okay.  Mr. Jordan, I have read down to       15:52:00

7   "May 16, 2012," if you can bring it up a little      15:52:11

8   bit.                                                 15:52:16

9      Q    Okay.  Can you continue reading?             15:52:16

10     A    Yes, yes.  I'm reading it now.               15:52:22

11     Q    That's fine.  We're in no hurry.             15:52:25

12     A    All right.  I have read down to "Ed          15:52:29

13  Quinn."                                              15:52:45

14     Q    Okay.                                        15:52:45

15     A    I have read to "We are looking to have       15:52:46

16  everybody fly in (8 people)."                        15:53:19

17     Q    Okay.                                        15:53:19

18     A    All right.  I have read down to "Thanks,     15:53:31

19  John."                                               15:53:32

20     Q    Okay.  And that's the entire e-mail;         15:53:32

21  right?                                               15:53:34

22     A    As far as I know.                            15:53:34
```

|    |                                                              |          |
|----|--------------------------------------------------------------|----------|
| 1  | Q   Okay.  All right.  Now, in the -- in the                 | 15:53:36 |
| 2  | e-mail, in the midst of it, on May 16, 2012, at              | 15:53:44 |
| 3  | 11:06 a.m. John White, John --                               | 15:53:49 |
| 4  | jwhite@compassmarketinginc.com, wrote:  "Guys,               | 15:53:55 |
| 5  | this is getting a little nuts.                               | 15:53:56 |
| 6  |          "I need to check with Ralph and alert              | 15:53:59 |
| 7  | that Caves is booked with a tournament.  I also              | 15:54:00 |
| 8  | need to see if we can do golf the 2nd day 12th               | 15:54:05 |
| 9  | instead.                                                     | 15:54:10 |
| 10 |          "Another back up plan" is "considering             | 15:54:11 |
| 11 | will be to fly to Chicago and have a meeting at              | 15:54:13 |
| 12 | White Eagle or at our attorney Mitch's place, and            | 15:54:15 |
| 13 | include store visits for the advisory board                  | 15:54:17 |
| 14 | members.                                                     | 15:54:21 |
| 15 |          "I will advise after speaking to Ralph."           | 15:54:22 |
| 16 |          Do you see that?  And it's signed "John."          | 15:54:24 |
| 17 | A   I do, yes.                                               | 15:54:26 |
| 18 | Q   Okay.  Now, when it says "meeting at                     | 15:54:26 |
| 19 | White Eagle," do you have any knowledge as to what           | 15:54:28 |
| 20 | White Eagle was that he was referring to?                    | 15:54:32 |
| 21 | A   I know there is a White Eagle Golf                       | 15:54:33 |
| 22 | Course.  I can't say that that's what he was                 | 15:54:42 |

| | | |
|---|---|---|
| 1 | referring to, but I do know the existence of a | 15:54:45 |
| 2 | White Eagle Golf Course. | 15:54:49 |
| 3 | Q    And how is it that you know the existence | 15:54:49 |
| 4 | of White Eagle Golf Course? | 15:54:51 |
| 5 | A    Well, I -- I have paid the bill for White | 15:54:54 |
| 6 | Eagle Golf Course, I have signed the contract for | 15:55:01 |
| 7 | the -- for the membership at White Eagle Golf | 15:55:06 |
| 8 | Course, and I have paid several expense account | 15:55:10 |
| 9 | invoices for the White Eagle Golf Course. | 15:55:18 |
| 10 | Q    Okay.  And do you know in whose name or | 15:55:22 |
| 11 | what's name the White Eagle Golf Course member -- | 15:55:27 |
| 12 | Golf Club membership was maintained? | 15:55:32 |
| 13 | A    To the best of my knowledge it was | 15:55:34 |
| 14 | maintained in two names, to the best of my | 15:55:39 |
| 15 | knowledge.  One was David Boshea and one was | 15:55:46 |
| 16 | Compass Marketing, Inc. | 15:55:49 |
| 17 | Q    Okay.  And when you paid I think you said | 15:55:49 |
| 18 | dues and other expenses relating to White Eagle, | 15:55:58 |
| 19 | did you pay that out of your personal pocket or | 15:56:01 |
| 20 | out of Compass Marketing? | 15:56:04 |
| 21 | A    Out of Compass Marketing. | 15:56:04 |
| 22 | Q    Okay.  And did you pay any of the dues -- | 15:56:07 |

1    did Compass Marketing either pay or reimburse any        15:56:14

2    of David Boshea's dues or expenses related to his        15:56:18

3    membership at White Eagle Golf Club?                     15:56:23

4         A    Yes, they did.                                 15:56:25

5         Q    Okay.  Do you know whether those dues and      15:56:26

6    other expenses were authorized to be paid to David       15:56:31

7    Boshea by Compass Marketing?                             15:56:35

8         A    I really don't know what the process           15:56:35

9    would be to authorize or not authorize payments          15:56:45

10   for those, but I do know that -- that we paid            15:56:49

11   them.                                                    15:56:51

12        Q    Okay.  Was that a part of his -- his           15:56:51

13   original compensation package with Compass               15:56:56

14   Marketing, do you recall?                                15:56:59

15        A    I -- I -- that I don't know.                   15:56:59

16        Q    Okay.  So when you paid these dues for --      15:57:01

17   for David Boshea, who was aware if -- who do you         15:57:08

18   recall being aware that Compass Marketing was            15:57:12

19   paying the dues and other expenses for David            15:57:15

20   Boshea?                                                  15:57:18

21             MR. REDD:  Objection to form.                  15:57:18

22             You can answer.                                15:57:24

1    A    To the best of my knowledge John White          15:57:24

2  knew, Daniel White knew, I knew, Mr. Marty             15:57:29

3  Monserez knew, Mr. Kevin Nemetz knew.  There's one     15:57:33

4  more employee that unfortunately his name is           15:57:44

5  slipping my mind at this particular minute, but he     15:57:48

6  also submitted bills and invoices to Compass           15:57:52

7  Marketing to be paid from expenses at White Eagle.     15:57:58

8    Q    Okay.  And what's your basis for saying         15:58:02

9  that John White knew that -- that these dues and       15:58:04

10  expenses were being paid?                             15:58:12

11    A    I -- I had discussions with John White         15:58:13

12  about it and I received e-mails from John White       15:58:15

13  about it.                                             15:58:18

14    Q    Okay.  And how long did that go on that        15:58:18

15  these dues and expenses were paid on behalf of        15:58:25

16  David Boshea?                                         15:58:29

17    A    As far as I knew, they went up to May of       15:58:29

18  2019.  I don't know if they went past that or not.    15:58:38

19    Q    And when would they have started?             15:58:44

20    A    I'm not sure.  I'm sorry; I'm not sure.        15:58:46

21    Q    Is there any reason to believe they           15:58:54

22  didn't start when -- at the time that Mr. Boshea      15:58:57

1    joined Compass Marketing?                          15:58:59

2         A    I have no reason to --                   15:58:59

3              MR. REDD:  Object to form.               15:59:05

4              Go ahead.                                15:59:07

5         A    I have no reason to -- to believe that,  15:59:07

6    no.                                                15:59:09

7         Q    Okay.  And what was your title at -- when 15:59:11

8    you were -- you know, in 2007 through May of 2019,  15:59:15

9    or I'd say '18, what was your title at Compass      15:59:24

10   Marketing?                                          15:59:27

11        A    I was an owner of Compass Marketing and I 15:59:27

12   had an informal title of operation -- or vice       15:59:35

13   president of operations.                            15:59:38

14        Q    Okay.  And in your role as vice president 15:59:39

15   of operations, what did you do?                     15:59:43

16        A    I handled what would be classified, I     15:59:46

17   guess, as the administrative side of keeping the    15:59:56

18   company running.                                    15:59:59

19        Q    Okay.  And what, if any, involvement did  16:00:01

20   you have with the human resources function during   16:00:05

21   that period?                                        16:00:12

22        A    I guess for -- for what -- for what there 16:00:12

1   was of our company with some help, I was the human          16:00:14

2   resources --                                                16:00:19

3        Q    Okay.                                             16:00:19

4        A    -- section.                                       16:00:21

5        Q    Now, with regard to the payments that            16:00:21

6   were made on David Boshea's behalf for dues and            16:00:28

7   expenses at White Eagle Country Club, do you know          16:00:35

8   whether Compass Marketing deducted -- reported             16:00:39

9   those as income to -- on Mr. Boshea -- well, let           16:00:43

10  me back up.                                                 16:00:48

11          Mr. Boshea, was he a W-2 employee at               16:00:48

12  Compass Marketing?                                          16:00:52

13       A    Yes, he was.                                      16:00:52

14       Q    Okay.  Do you know whether Compass               16:00:55

15  Marketing reported the amounts that were paid for          16:00:59

16  David Boshea's dues as income as a part of his             16:01:02

17  compensation, his W-2 compensation?                        16:01:07

18       A    Yes, they were.                                   16:01:09

19       Q    Okay.  And was that for the entire period       16:01:11

20  that you were -- that we discussed previously,             16:01:18

21  2007 to May of 2018 at least?                               16:01:22

22       A    It was definitely through May of '18.           16:01:25

1    Probably around -- I started in 2007 probably, but          16:01:31

2    it was definitely through May of 2018.                      16:01:35

3        Q    Okay.  Okay.  And do you know whether              16:01:39

4    John White was aware that this was part of David            16:01:44

5    Boshea's W-2 compensation?                                  16:01:51

6        A    That I don't know.                                 16:01:52

7        Q    Okay.  Okay.  Now, what I want to do is            16:01:54

8    open up as Exhibit 32B the other attachment to the          16:02:15

9    e-mail that I represented you sent to me.  Okay?            16:02:25

10            (White Deposition Exhibit 32B marked for           16:02:25

11   identification and is attached to the transcript.)          16:02:25

12       Q    And what I want you to do is -- this is a          16:02:28

13   document that shows on the top -- it has a date,            16:02:30

14   7/29/21, John White                                         16:02:34

15   It's a forward.  And the top e-mail is John White           16:02:40

16   with that address to Mike White with                        16:02:45

17   mwhite@compassmarketinginc and bearing a date of            16:02:49

18   Friday, May 25, 2012, at 7:43 a.m.?                         16:02:52

19            And what I want you to do is read this             16:02:59

20   document and let me know -- it's a two-page                 16:03:01

21   document, and let me know when you're finished              16:03:04

22   reading it.                                                 16:03:06

1      A    I have read down to "Sent from my                16:03:07

2   iPhone."                                                 16:03:25

3      Q    Okay.                                            16:03:25

4      A    Okay.  I read down to "Sent from my              16:03:26

5   iPhone" again.                                           16:03:42

6      Q    Okay.  And then just going to the bottom         16:03:44

7   there is nothing further other than just some --         16:03:47

8   some Google mail information.                            16:03:49

9           All right.  The second page, which is an         16:03:50

10  e-mail that says Dave Boshea and then                    16:03:52

11  dboshea@compassmarketinginc.com, do you recognize        16:03:56

12  that e-mail address?                                     16:04:00

13     A    I do.                                            16:04:00

14     Q    Whose e-mail address is that?                    16:04:03

15     A    I believe it is David Boshea's e-mail            16:04:06

16  address.                                                 16:04:12

17     Q    Okay.  And so David Boshea sent an e-mail        16:04:12

18  to you and to John White on May 24, 2012, at 12:51       16:04:15

19  a.m.; is that correct?                                   16:04:24

20     A    I believe he did, yeah.                          16:04:25

21     Q    Did you guys ever sleep?  It seems like a        16:04:27

22  lot of late-night e-mails here.  You don't have to       16:04:30

1    answer that.                                              16:04:34

2        A    We spent a lot of late nights working on        16:04:34

3    it, yes.                                                  16:04:38

4        Q    It says:  "Mike, Hey, bro.  White eagle         16:04:38

5    raised monthly fee to $750.  Thx, Dave.  Sent from       16:04:42

6    my iPhone."                                               16:04:46

7             Do you recall receiving that e-mail?            16:04:49

8        A    I do recall receiving an e-mail very            16:04:51

9    similar to that; yes.                                     16:04:54

10       Q    Okay.  Do you have any reason to believe        16:04:55

11   you didn't receive this exact e-mail?                    16:04:57

12       A    No, I don't.                                     16:04:59

13       Q    Okay.  Do you have any understanding or         16:04:59

14   knowledge -- I'm sorry; let me just back up.             16:05:02

15            Do you know whether David Boshea -- why         16:05:08

16   David Boshea would be letting you know and John          16:05:11

17   White know that White Eagle raised the monthly fee       16:05:14

18   to $750.                                                  16:05:17

19       A    I believe I know why.                           16:05:20

20       Q    What is the reason?                             16:05:27

21       A    The fee was $700 a month.  I was dividing       16:05:28

22   that between his two paychecks and paying him $350       16:05:40

1    a month through payroll.  And I believe he was        16:05:45

2    letting me know that the fee had gone up, I assume     16:05:51

3    to have me increase that $350 fee --                   16:05:56

4         Q    Okay.                                        16:05:56

5         A    -- through payroll.                          16:06:03

6         Q    And did Compass increase the payroll        16:06:03

7    payment to Mr. Boshea to reflect the increase of       16:06:10

8    monthly fees to $750?                                  16:06:15

9         A    Not to my knowledge.                         16:06:16

10        Q    Okay.  And the e-mail above that, it         16:06:19

11   looks like the same e-mail is repeated again, and      16:06:27

12   then there is -- there's a -- do you recall            16:06:30

13   getting an e-mail from John White to you on May        16:06:33

14   25, 2012, at 7:43 a.m. where he said:  "I saw it       16:06:39

15   as he copied me too.  Just ignore"?                    16:06:44

16        A    I remember getting one very similar to       16:06:46

17   that; yes.                                             16:06:54

18        Q    Okay.  So -- so John White decided not to    16:06:54

19   increase the payment to David White to reflect         16:07:00

20   the -- is it correct to say that John White            16:07:05

21   decided not to increase the payment to David           16:07:10

22   Boshea to reflect the increase in White Eagle          16:07:15

| | | |
|---|---|---|
| 1 | dues? | 16:07:17 |
| 2 | A    I don't know what John White wanted to | 16:07:17 |
| 3 | do.  I only know he sent me an e-mail very similar | 16:07:24 |
| 4 | to that one. | 16:07:28 |
| 5 | Q    Okay.  And did you -- did you ever hear | 16:07:28 |
| 6 | from John White at any time in which he questions | 16:07:32 |
| 7 | Compass Marketing's payment of the $700 for the | 16:07:41 |
| 8 | monthly dues at White Eagle? | 16:07:45 |
| 9 | A    None that I can recall, no. | 16:07:46 |
| 10 | Q    Okay.  But you indicated that he was -- | 16:07:50 |
| 11 | and just confirm.  You indicated previously he was | 16:07:56 |
| 12 | aware that Compass Marketing was paying $700 a | 16:07:58 |
| 13 | month for -- as part of David Boshea's | 16:08:01 |
| 14 | compensation for the White Eagle dues; is that | 16:08:08 |
| 15 | correct? | 16:08:10 |
| 16 | A    I believe he was aware, yes. | 16:08:10 |
| 17 | Q    Okay.  Now, you indicated previously | 16:08:12 |
| 18 | that -- I think you said I -- you never | 16:08:29 |
| 19 | transferred any of your shares in Compass | 16:08:33 |
| 20 | Marketing.  And -- and then we saw a document | 16:08:38 |
| 21 | where it appeared to me that -- and maybe I'm | 16:08:42 |
| 22 | wrong -- that Daniel White somehow received shares | 16:08:48 |

| | | |
|---|---|---|
| 1 | in Compass Marketing.  Are you sure that you never | 16:08:52 |
| 2 | transferred any of your shares in Compass | 16:08:57 |
| 3 | Marketing to anyone? | 16:09:01 |
| 4 | MR. STERN:  Greg, Greg, I'm curious.  How | 16:09:01 |
| 5 | is it you're objecting to my questions about share | 16:09:03 |
| 6 | ownership, but you're asking questions about share | 16:09:06 |
| 7 | ownership?  That seems entirely inconsistent and | 16:09:08 |
| 8 | shows that it's relevant to this case.  So thank | 16:09:11 |
| 9 | you very much. | 16:09:14 |
| 10 | MR. JORDAN:  Okay. | 16:09:14 |
| 11 | MR. REDD:  This is Justin.  I -- | 16:09:16 |
| 12 | Q    Do you recall whether you ever | 16:09:16 |
| 13 | transferred any shares -- I just want to make sure | 16:09:16 |
| 14 | we have a good record. | 16:09:18 |
| 15 | THE COURT REPORTER:  I'm sorry.  I'm | 16:09:18 |
| 16 | sorry.  I think Mr. Redd's talking, but I can't | 16:09:25 |
| 17 | hear him. | 16:09:27 |
| 18 | MR. JORDAN:  Go ahead, Justin. | 16:09:27 |
| 19 | MR. REDD:  I was going to, one, object to | 16:09:29 |
| 20 | Greg's questioning about this; two, put on the | 16:09:32 |
| 21 | record that I disagree that the fact that Greg | 16:09:34 |
| 22 | asked that question proves that any other | 16:09:38 |

| | | |
|---|---|---|
| 1 | questions before were not objectionable for | 16:09:41 |
| 2 | reasons previously stated.  So with that I forget | 16:09:46 |
| 3 | what the question was exactly, but go ahead. | 16:09:53 |
| 4 | A   Could you repeat the question, please, | 16:09:55 |
| 5 | Mr. Jordan? | 16:09:59 |
| 6 | Q   I said were you correct when you said | 16:09:59 |
| 7 | previously that you never transferred any of your | 16:10:06 |
| 8 | shares? | 16:10:09 |
| 9 | MR. REDD:  Asked and answered; objection. | 16:10:09 |
| 10 | A   I have never transferred any of my | 16:10:13 |
| 11 | shares. | 16:10:19 |
| 12 | Q   You never transferred any of your shares | 16:10:19 |
| 13 | to Dan -- to Daniel White or -- is that correct? | 16:10:22 |
| 14 | MR. REDD:  Objection; asked and answered. | 16:10:24 |
| 15 | A   That is correct.  That's correct. | 16:10:28 |
| 16 | Q   Oh, okay. | 16:10:29 |
| 17 | MR. JORDAN:  Now I understand.  I had | 16:10:31 |
| 18 | it -- I had it confused.  In fact, I agree with | 16:10:34 |
| 19 | Stephen, I withdraw the questions. | 16:10:36 |
| 20 | Q   So I want to make sure that I understand | 16:10:37 |
| 21 | things.  You and I -- do you -- do you recall | 16:10:44 |
| 22 | having a conversation with me in -- on or about | 16:10:50 |

1    July 31, 2020?                                16:10:54

2        A    I remember having a conversation with    16:10:56

3    you.  I don't remember the date; sorry.       16:11:00

4        Q    Okay.  Do you remember having a       16:11:01

5    conversation sometime in late 20 -- July of   16:11:05

6    2021 -- I'm sorry; 2021, not 2020.  Excuse me.  16:11:09

7    Let's start again.                            16:11:13

8            Do you recall having a conversation with    16:11:13

9    me in late July 2021?                         16:11:15

10       A    I remember having a couple of         16:11:17

11   conversations with you.  I remember them probably    16:11:23

12   being in the third quarter of 2021, but that  16:11:28

13   probably is as close as I can get to the -- to the    16:11:31

14   time.                                         16:11:34

15       Q    Okay.  Do you recall telling me that    16:11:34

16   there were at least four people, including David    16:11:42

17   Boshea, who had severance agreements?         16:11:45

18       A    I do remember telling you that, yeah.    16:11:48

19       Q    Okay.  And -- and the -- do you recall    16:11:51

20   who the other people were that you recalled?  16:11:55

21       A    I do.                                16:11:59

22       Q    Who were they?                       16:12:00

1     A     Mr. John Adams, David Boshea, Mr. Marty          16:12:01

2  Monserez, and Mr. Al Ewing.                               16:12:13

3     Q     All right.  Did you also mention John            16:12:18

4  Mancini?                                                  16:12:22

5     A     I may have.  I don't --                          16:12:22

6     Q     Okay.                                            16:12:22

7     A     I don't remember specifically, but I may         16:12:29

8  have.                                                     16:12:30

9     Q     Do you recall that at some point John            16:12:30

10  Mancini wanted to make sure that his severance           16:12:36

11  agreement was in his personnel file?                     16:12:39

12     A     I remember an employee wanting to make          16:12:41

13  sure it was in his personnel file, but I do not          16:12:46

14  remember it being John Mancini.                          16:12:49

15     Q     Okay.  Who do you remember it being?            16:12:50

16     A     Mr. John Adams.                                 16:12:52

17     Q     Okay.  And then at that point did you           16:12:55

18  place Mr. Adams, Mr. Ewing, Mr. Mancini, and David       16:13:02

19  Boshea's severance agreements in their personnel         16:13:12

20  files?                                                   16:13:14

21     A     Not all at once, but over a period of           16:13:14

22  time I did; yes.                                         16:13:18

| | | |
|---|---|---|
| 1 | Q    Okay.  And approximately when was this | 16:13:18 |
| 2 | that you placed the agreement in David Boshea's | 16:13:22 |
| 3 | personnel file? | 16:13:27 |
| 4 | A    Somewhere during 2015. | 16:13:27 |
| 5 | Q    Okay.  Give me just a second.  All right. | 16:13:33 |
| 6 | Now, I have up on the board a document, a six-page | 16:14:25 |
| 7 | document. | 16:14:29 |
| 8 | MR. JORDAN:  This is Exhibit 33. | 16:14:29 |
| 9 | (White Deposition Exhibit 33, previously | 16:14:29 |
| 10 | marked as Exhibit 31A, is attached to the | 16:14:29 |
| 11 | transcript.) | 16:14:30 |
| 12 | Q    And it is a Compass Marketing agreement | 16:14:30 |
| 13 | relating to employment and post-employment | 16:14:37 |
| 14 | competition.  Do you see that? | 16:14:40 |
| 15 | A    I do, yes. | 16:14:41 |
| 16 | Q    Okay.  And what I want you to do is just | 16:14:44 |
| 17 | kind of review the document -- or would you rather | 16:14:46 |
| 18 | me e-mail this to Mr. Redd and you review it on | 16:14:50 |
| 19 | his computer and let me know when you're ready? | 16:14:53 |
| 20 | Would that be easier? | 16:14:57 |
| 21 | MR. REDD:  It's easier if we just scroll | 16:14:57 |
| 22 | through it on the screen, Greg. | 16:15:00 |

1      MR. JORDAN:  Okay.  That's fine.                16:15:02

2  Whichever way you want to do it.  Okay.             16:15:05

3      Q    So just do me a favor, read the document   16:15:06

4  and let me know when I need to move my cursor.      16:15:11

5      A    Absolutely.                                16:15:14

6           Okay.  I've read down to "...concerning    16:15:49

7  any of the above, or any past, current or future    16:15:51

8  business..."                                        16:15:54

9      Q    Okay.                                      16:15:54

10     A    Okay.  I read down to "...Employee          16:15:56

11 acknowledges belongs to COMPASS."                   16:16:43

12          MR. REDD:  This is the same -- sorry to     16:16:44

13 jump in.  This is Justin.  This is the same         16:17:05

14 version that was attached to the Complaint and      16:17:08

15 that was attached to the second subpoena from       16:17:10

16 Compass.  He can just flip through the hard copy,   16:17:15

17 if that will make it easier.  It's up to you.       16:17:17

18          MR. JORDAN:  It is the same document that   16:17:19

19 was attached to the Complaint.  And I just --       16:17:21

20     Q    Michael, you can -- you can -- I will       16:17:26

21 tell you it's the same document.  If you want to    16:17:30

22 read the whole document or if you want to just say  16:17:32

1    that you've looked at the Complaint and that you          16:17:36

2    -- and that you would know what this document            16:17:40

3    would be, but I'm representing it's the same             16:17:41

4    document, we can dispense with that.  But I don't        16:17:45

5    want to shortcut your ability to read the document       16:17:48

6    to confirm.  You tell me.                                16:17:50

7         MR. REDD:  Take the time you need.                  16:17:58

8    A    Mr. Jordan, I don't think either reading            16:18:01

9    it or not reading it I can identify it.                  16:18:02

10    Q    Okay.  So you're telling me you're not             16:18:05

11    sure whether this is the document that you placed       16:18:07

12    in David Boshea's file or not?                          16:18:10

13    A    I cannot tell you that, no.                        16:18:13

14    Q    Okay.  That's fine.                                16:18:14

15         And then on the -- on Page 506 there are           16:18:19

16    a couple signatures, and I have a question for you      16:18:20

17    with regard to -- to John White's signature.  Do        16:18:26

18    you know whether -- do you have any knowledge as        16:18:29

19    to any efforts by John White to disguise his           16:18:32

20    signature?                                              16:18:37

21         MR. STERN:  Objection to form.                     16:18:37

22    A    Can you identify for me or define for me           16:18:49

1    disguise?                                          16:18:54

2        Q    Well, for instance, you know, where he   16:18:54

3    might sign with the wrong hand, sign in an awkward 16:18:55

4    position, to try to make his signature be somewhat 16:19:00

5    inconsistent.                                      16:19:04

6            MR. STERN:  Objection to form.             16:19:04

7        A    I have seen him sign his name with his    16:19:07

8    left hand before.                                  16:19:11

9        Q    Okay.  I'm sorry.  I apologize; I'm       16:19:11

10   left-handed so I think that people who sign with   16:19:16

11   the right hand are odd.                            16:19:18

12           Is he right-handed or left-handed?         16:19:20

13       A    To the best of my knowledge he's          16:19:21

14   right-handed.                                      16:19:24

15       Q    Okay.  And you've known him pretty much   16:19:24

16   all of your life or all your life?                 16:19:28

17       A    I've known him all his life.              16:19:30

18       Q    Okay.  That's fine.  I didn't know which  16:19:34

19   one was younger.                                   16:19:36

20           And is there anything else he would do     16:19:39

21   other than signing with his left hand to kind of   16:19:40

22   make his signature different that you know of?      16:19:43

| | | |
|---|---|---|
| 1 | MR. STERN:  Objection to form; | 16:19:44 |
| 2 | foundation. | 16:19:48 |
| 3 | (Ms. Yeung left the room.) | 16:19:51 |
| 4 | MR. JORDAN:  I think he can only speak to | 16:19:51 |
| 5 | his own knowledge, Stephen. | 16:19:54 |
| 6 | A    I don't have any knowledge of other acts | 16:19:55 |
| 7 | he performed with his signature. | 16:20:01 |
| 8 | Q    Okay. | 16:20:01 |
| 9 | A    It would be unusual. | 16:20:06 |
| 10 | Q    What would be unusual? | 16:20:06 |
| 11 | A    It would not be unusual. | 16:20:09 |
| 12 | Q    Okay.  He never wrote standing on one leg | 16:20:14 |
| 13 | or anything? | 16:20:18 |
| 14 | MR. STERN:  Object to the form. | 16:20:18 |
| 15 | A    I never -- I never saw him -- I never saw | 16:20:20 |
| 16 | him do that.  I only saw him write his signature | 16:20:20 |
| 17 | with his left hand. | 16:20:25 |
| 18 | Q    Okay.  How many times did you see him do | 16:20:26 |
| 19 | that? | 16:20:29 |
| 20 | A    Four or five would be an estimate. | 16:20:29 |
| 21 | Q    We took the deposition of John Adams in | 16:20:39 |
| 22 | the case and John Adams produced a contract | 16:20:48 |

1     that -- that he signed, but that it wasn't                16:20:55

2     countersigned by John White or anybody else from          16:20:58

3     Compass Marketing.  So do you know whether Compass         16:21:00

4     Marketing recognized John Adams as having a                16:21:08

5     severance agreement -- or an employment agreement,         16:21:11

6     rather, with Compass Marketing?                            16:21:14

7             MR. STERN:  Objection to form.                     16:21:14

8         A    I don't know.  I'm not sure.                      16:21:18

9         Q    He was the fellow I thought that you put          16:21:22

10    his employment agreement in his file; is that             16:21:25

11    right?                                                     16:21:27

12        A    That is correct.  But I don't -- I don't          16:21:27

13    know who Compass Marketing is when you ask the             16:21:32

14    question and I don't know what it would mean to            16:21:36

15    say they recognized it.                                    16:21:39

16        Q    Okay.  Did you consider that John Adams           16:21:41

17    had a valid employment agreement with Compass              16:21:44

18    Marketing while you were employed by -- or, you            16:21:49

19    know, in the role of -- unofficial role of                16:21:52

20    director of operations?                                    16:21:55

21            MR. STERN:  Objection to form,                     16:21:55

22    foundation, legal conclusion, a whole bunch of            16:21:57

| | | |
|---|---|---|
| 1 | others.  He has no authority to speak on behalf of | 16:22:02 |
| 2 | the company. | 16:22:05 |
| 3 | A    I knew of John's agreement in 2015.  I | 16:22:05 |
| 4 | learned of it.  I don't know whether it was | 16:22:14 |
| 5 | legitimate or valid or binding.  I -- I don't | 16:22:19 |
| 6 | know. | 16:22:22 |
| 7 | Q    Okay.  Did you -- did you discuss John | 16:22:22 |
| 8 | Adams' agreement with anybody at Compass before | 16:22:26 |
| 9 | you placed it in his file? | 16:22:29 |
| 10 | A    Not before; after. | 16:22:30 |
| 11 | Q    With whom did you speak regarding John | 16:22:34 |
| 12 | Adams' agreement after you placed it in his file? | 16:22:38 |
| 13 | A    Daniel White. | 16:22:42 |
| 14 | Q    Okay.  And what did -- when did this | 16:22:44 |
| 15 | conversation occur approximately? | 16:22:48 |
| 16 | A    I would estimate in the next couple of | 16:22:49 |
| 17 | days, but I don't know for sure. | 16:22:59 |
| 18 | Q    Okay.  What did you say to Daniel White | 16:23:01 |
| 19 | and what did he say to you? | 16:23:06 |
| 20 | MR. STERN:  Objection to form. | 16:23:07 |
| 21 | Q    And I'm referring to the conversation | 16:23:13 |
| 22 | that you identified as having with Daniel White | 16:23:16 |

1    shortly after you placed the John Adams document       16:23:22

2    in the file.  What did you say to Daniel White and      16:23:25

3    what did he say to you with regard to John Adams'       16:23:29

4    agreement?                                              16:23:34

5            MR. STERN:  Objection to form.                  16:23:34

6            MR. JORDAN:  I have no idea what you're          16:23:37

7    talking about.                                          16:23:42

8        A    I believe I told him about the -- the          16:23:42

9    agreement and asked him if he knew anything about       16:23:44

10   it.                                                     16:23:47

11       Q    And what did he say to you?                    16:23:47

12       A    He said he didn't know about the               16:23:50

13   agreement.                                              16:23:55

14       Q    Okay.  Did you have any -- and did you         16:23:55

15   speak with anyone else with regard to John Adams'       16:24:01

16   agreement at any time?                                  16:24:04

17       A    I don't think so, no.                          16:24:05

18       Q    Okay.                                          16:24:08

19           MR. REDD:  Can we take a two-minute             16:24:08

20   break?                                                  16:24:36

21           MR. JORDAN:  Sure, sure.  It would be           16:24:36

22   fabulous.                                               16:24:38

| | | |
|---|---|---|
| 1 | VIDEO TECHNICIAN:  We are off the record | 16:24:38 |
| 2 | at 4:24 p.m. | 16:24:39 |
| 3 | (A recess was taken.) | 16:24:42 |
| 4 | VIDEO TECHNICIAN:  We are on the record | 16:24:43 |
| 5 | at 4:28 p.m. | 16:28:44 |
| 6 | MR. JORDAN:  How long have we been, | 16:28:46 |
| 7 | Charlie?  I don't want to burn up all the time. | 16:28:51 |
| 8 | VIDEO TECHNICIAN:  Five hours and 20 | 16:28:54 |
| 9 | minutes. | 16:28:58 |
| 10 | MR. JORDAN:  Okay.  Terrific. | 16:28:58 |
| 11 | MR. STERN:  I just want to -- that's | 16:28:58 |
| 12 | total time, not just the time I was asking | 16:29:00 |
| 13 | questions. | 16:29:03 |
| 14 | VIDEO TECHNICIAN:  That is total. | 16:29:03 |
| 15 | MR. JORDAN:  Okay.  Right, yeah.  Okay. | 16:29:05 |
| 16 | BY MR. JORDAN: | 16:29:10 |
| 17 | Q    So, Michael, there was some fellow that | 16:29:10 |
| 18 | Mr. Stern talked to you about named Ewing.  Do you | 16:29:17 |
| 19 | recall that? | 16:29:21 |
| 20 | A    I do. | 16:29:22 |
| 21 | Q    Just edify me, who was -- who was the | 16:29:24 |
| 22 | fellow that he referred to?  What was his first | 16:29:29 |

1     name or moniker?                                16:29:34

2          A     He was a -- a --                     16:29:35

3          Q     No.  What was just his name, just his   16:29:39

4     name.                                           16:29:42

5          A     Detective Ewing.                      16:29:42

6          Q     All right.  Detective Ewing.  All right.   16:29:43

7          Do you have any reason to believe that      16:29:47

8     David Boshea had ever met with Detective Ewing?   16:29:53

9          A     I have no reason to believe that.     16:29:58

10         Q     Okay.  Do you have any reason to believe   16:30:03

11    that David Boshea ever spoke with Detective Ewing?   16:30:07

12         A     I have no reason to believe that.     16:30:10

13         Q     Okay.  Do you have any reason to believe   16:30:16

14    that David Boshea ever corresponded by e-mail,   16:30:20

15    letter, or FedEx or other form with David Boshea?   16:30:24

16         A     I have no reason to believe that, no.   16:30:29

17         Q     Do you have any reason to believe that   16:30:37

18    Detective Ewing ever corresponded to David Boshea,   16:30:40

19    whether by e-mail, letter, package, or anything   16:30:47

20    else?                                           16:30:51

21         A     I have no reason to believe that he   16:30:51

22    corresponded with David Boshea, no.             16:30:56

| | | |
|---|---|---|
| 1 | Q    Okay.  Do you have any idea who are any | 16:31:02 |
| 2 | realtors that Compass Marketing would have ever | 16:31:09 |
| 3 | spoken with for any purpose? | 16:31:14 |
| 4 | A    I do not. | 16:31:16 |
| 5 | Q    Okay.  Do you have any reason to believe | 16:31:19 |
| 6 | that David Boshea has any knowledge of any | 16:31:23 |
| 7 | realtors that Compass Marketing has ever | 16:31:26 |
| 8 | communicated with? | 16:31:30 |
| 9 | A    I have no reason to believe that. | 16:31:30 |
| 10 | Q    Okay.  Do you know any -- do you know any | 16:31:34 |
| 11 | architects with whom Compass Marketing has ever | 16:31:38 |
| 12 | communicated? | 16:31:43 |
| 13 | A    I knew of an architect back in 2007 when | 16:31:43 |
| 14 | we built out our office.  I don't remember his | 16:31:52 |
| 15 | name and I don't think I've had any contact with | 16:31:56 |
| 16 | him since 2007. | 16:32:00 |
| 17 | Q    Okay.  Do you know whether David Boshea | 16:32:01 |
| 18 | ever communicated with that architect? | 16:32:08 |
| 19 | A    I have no reason to believe he did, no. | 16:32:08 |
| 20 | Q    Do you have any knowledge of David Boshea | 16:32:13 |
| 21 | communicating with any architect who might have | 16:32:19 |
| 22 | had any communications with Compass Marketing? | 16:32:21 |

1        A    I do not, no.                                    16:32:23

2        Q    Do you know of any conversations that            16:32:30

3   David Boshea would have had with any architect             16:32:35

4   that communicated with Compass Marketing?                  16:32:37

5        A    No, I don't.                                     16:32:40

6        Q    Do you know whether David Boshea ever            16:32:45

7   delivered any communications, whether e-mails,             16:32:51

8   letters, packages, or anything else to any                 16:32:55

9   architect retained by Compass Marketing -- or, I'm         16:32:58

10  sorry, who had any business dealings of any kind           16:33:02

11  with Compass Marketing?                                    16:33:06

12       A    I have no reason to believe that.                16:33:06

13       Q    Do you know whether any architect ever           16:33:12

14  sent any communications written, whether e-mails,          16:33:15

15  letters, packages, or anything else, to David              16:33:19

16  Boshea?                                                    16:33:23

17       A    I have no reason to believe that.                16:33:23

18       Q    Okay.  Do you -- do you have any idea how        16:33:27

19  many realtors there are in Annapolis, Maryland?            16:33:34

20       A    I do not.                                        16:33:40

21       Q    Is there anyone known as some sort of            16:33:41

22  special realtor that -- that people have to hire           16:33:44

1    because they're so good at their job that they can          16:33:49

2    obtain space for someone that -- that other                 16:33:52

3    realtors cannot obtain?                                      16:33:56

4          MR. REDD:  Objection.  Greg, I mean, I                 16:33:57

5    get what you're -- where you're going, but can we            16:34:02

6    move on, please?                                             16:34:05

7          MR. JORDAN:  I had a hard time hearing                 16:34:06

8    that, Justin; sorry.                                         16:34:11

9          MR. REDD:  I guess I get where you're                  16:34:12

10   going, but I'm objecting because you're -- it's              16:34:15

11   going on pretty long.  Can we just move on from              16:34:18

12   the realtor topic?                                           16:34:20

13         MR. JORDAN:  Okay.  Okay.  That's fine.                16:34:21

14   So I won't ask the same question with regard to              16:34:24

15   that special architect either.                               16:34:27

16     Q    Do you know of any amounts that -- of                 16:34:29

17   compensation -- I'm sorry; strike that.                      16:34:47

18         Do you know of any monies that were paid               16:34:53

19   to David Boshea that were not authorized to be               16:34:55

20   paid by John White?                                          16:35:03

21         MR. STERN:  Objection; form, foundation.              16:35:05

22     Q    I'm sorry.  At any time from 2007 to                  16:35:11

1    today do you know of any monies that were -- hold          16:35:15

2    on just a second.  Give me just a second.  I can           16:35:22

3    pull up the counterclaim, make sure I have the             16:35:27

4    right wording.                                             16:35:29

5            Do you know of any facts that would                16:36:54

6    support the allegation that unbeknownst to Compass         16:36:56

7    Marketing's CEO and majority owner, Boshea                 16:37:02

8    regularly received additional, quote, off-payroll          16:37:04

9    payments, end quote, and biweekly increments of            16:37:08

10   $350 totaling approximately $51,800 which Boshea           16:37:12

11   was not entitled to receive?                               16:37:18

12           Do you know any facts --                           16:37:20

13       A    No.                                               16:37:24

14       Q    -- that would support that allegation?            16:37:24

15       A    No.                                               16:37:26

16       Q    Do you know whether David Boshea received         16:37:27

17   biweekly increments of $350 from Compass                   16:37:35

18   Marketing?                                                 16:37:37

19       A    I do know.                                        16:37:37

20       Q    And why did David Boshea receive biweekly         16:37:44

21   increments of $350?                                        16:37:52

22       A    Compass Marketing had decided to pay his          16:37:53

1    membership monthly dues and to comply with all IRS      16:38:05

2    regulations, they had to be sent through payroll.       16:38:11

3    So we took his $700-a-month membership dues,            16:38:14

4    divided it in two pieces, and ran $350 through          16:38:21

5    payroll.                                                16:38:25

6         Q    Okay.  And the allegation that starts:        16:38:25

7    Unbeknownst to Compass Marketing's CEO and              16:38:32

8    majority owner.  Do you have any idea who Compass       16:38:34

9    could be referring to as the Compass CEO?              16:38:41

10             MR. REDD:  Objection to form.                 16:38:42

11             You can answer.                               16:38:49

12        A    I believe I know who they're referring        16:38:50

13   to.                                                     16:38:54

14        Q    Right.  I'm not asking you to agree or        16:38:54

15   disagree.  I'm asking if you know who they're           16:38:58

16   referring to there.                                     16:39:02

17        A    I believe I know who they're referring        16:39:03

18   to.  I don't know.                                      16:39:05

19        Q    Okay.  Who do you believe they're             16:39:06

20   referring to?                                           16:39:09

21        A    John White.                                   16:39:09

22        Q    Okay.  And just to make sure, I'm sure        16:39:12

| | | |
|---|---|---|
| 1 | that you can -- your counsel and Mr. Stern can | 16:39:16 |
| 2 | object to asked and answered, but you have | 16:39:19 |
| 3 | knowledge that -- can you confirm that you have | 16:39:22 |
| 4 | knowledge that John White knew Compass was making | 16:39:27 |
| 5 | biweekly increments of $350 to David Boshea to | 16:39:32 |
| 6 | reimburse him for his White Eagle dues?  Can you | 16:39:39 |
| 7 | confirm that? | 16:39:45 |
| 8 | MR. STERN:  Objection; form, foundation. | 16:39:45 |
| 9 | MR. REDD:  Did you sustain your own | 16:39:48 |
| 10 | objection, Greg? | 16:39:53 |
| 11 | MR. JORDAN:  I'm sorry? | 16:39:54 |
| 12 | MR. REDD:  Objection; asked and answered. | 16:39:56 |
| 13 | But go ahead. | 16:39:58 |
| 14 | A    I can confirm he knew that Compass | 16:39:59 |
| 15 | Marketing was paying David Boshea's membership | 16:40:03 |
| 16 | fee. | 16:40:06 |
| 17 | Q    Okay. | 16:40:06 |
| 18 | A    I cannot confirm he knew how. | 16:40:07 |
| 19 | Q    Okay. | 16:40:08 |
| 20 | MR. JORDAN:  Okay.  I will pass the | 16:40:09 |
| 21 | witness. | 16:40:40 |
| 22 | MR. STERN:  I have a few brief | 16:40:41 |

1    follow-ups.  Greg, you, when you introduced                16:40:43

2    your exhibits, they were not circulated, so I'll            16:40:43

3    ask you to do me a courtesy and --                          16:40:44

4           MR. JORDAN:  I absolutely will, but I                16:40:44

5    don't have anybody hanging out here in the condo            16:40:50

6    at Marco Island to assist me.  So...                        16:40:53

7           MR. STERN:  No, I understand.  You can              16:40:54

8    pull up the one where -- I think it was the -- I            16:40:55

9    think it's 32, the e-mail that Michael sent to you          16:40:57

10   in August, there were two PDFs attached.                    16:41:00

11          MR. JORDAN:  Okay.  Are you referring to            16:41:03

12   the White Eagle e-mail?                                     16:41:13

13          MR. STERN:  Yes, yes.  Thank you.                   16:41:14

14          MR. JORDAN:  Okay.  I just want to make             16:41:16

15   sure.  I have to go back because I inadvertently            16:41:18

16   just closed it, but give me just a second.  What I          16:41:22

17   did was save that into a file so that I could               16:41:27

18   bring it up.                                                16:41:31

19          MR. REDD:  I object.  Was this previously           16:41:32

20   an exhibit that Compass marked and asked Mr. White          16:41:38

21   about earlier in the deposition?                            16:41:42

22          MR. STERN:  No.  It was something that              16:41:43

| | | |
|---|---|---|
| 1 | Mr. Jordan asked about. | 16:41:50 |
| 2 | MR. REDD:  Okay.  I thought you had asked | 16:41:50 |
| 3 | about this particular e-mail before. | 16:41:53 |
| 4 | MR. STERN:  If I did, I don't remember. | 16:41:54 |
| 5 | MR. JORDAN:  I think you did, but... | 16:41:57 |
| 6 | MR. STERN:  Well, I want to make sure | 16:42:03 |
| 7 | that we're -- if I did, I still want to be clear | 16:42:09 |
| 8 | we're talking about the one that he was answering | 16:42:12 |
| 9 | questions for. | 16:42:14 |
| 10 | MR. JORDAN:  Okay.  I'm going to bring it | 16:42:15 |
| 11 | up.  I just sent it to Justin and to you and | 16:42:35 |
| 12 | afterwards I will send it up -- I will send it to | 16:42:38 |
| 13 | the court reporter as well. | 16:42:40 |
| 14 | MR. STERN:  Thank you. | 16:42:42 |
| 15 | MR. JORDAN:  Do you see it on the screen | 16:42:43 |
| 16 | there? | 16:42:45 |
| 17 | MR. STERN:  Yes.  Can you -- the left | 16:42:45 |
| 18 | pdf, please, I think that's the one that I wanted | 16:42:48 |
| 19 | to talk about. | 16:42:50 |
| 20 | MR. JORDAN:  This one here, White Eagle | 16:42:51 |
| 21 | use e-mail? | 16:42:54 |
| 22 | MR. STERN:  Yes. | 16:42:55 |

1         MR. JORDAN:  So this is 32A.                          16:42:56

2         MR. REDD:  I'm pretty sure that Compass               16:42:58

3   already asked Mr. White questions about this               16:43:04

4   e-mail and so I object to further questions about          16:43:08

5   it.                                                        16:43:12

6         But go ahead.                                        16:43:12

7         MR. STERN:  Can you open it up, please?              16:43:13

8         MR. JORDAN:  Sure.                                   16:43:20

9         MR. STERN:  It's not showing on the                  16:43:21

10  screen.                                                    16:43:30

11        MR. JORDAN:  I keep forgetting just                  16:43:30

12  because I can see it on the screen, that you can't         16:43:32

13  see it on the screen.                                      16:43:34

14        Can you see it now?                                  16:43:35

15        MR. STERN:  Thank you, yes.                          16:43:35

16        MR. JORDAN:  Sorry about that.                       16:43:36

17  BY MR. STERN:                                              16:43:37

18    Q    So, Mr. White, when you were testifying            16:43:37

19  in response to Mr. Jordan's questions, you had             16:43:41

20  sent this as an attachment to the e-mail that he           16:43:46

21  referenced and was the exhibit, are you a                  16:43:50

22  recipient of any of the e-mails in this string             16:43:53

| | | |
|---|---|---|
| 1 | that's 32A? | 16:43:56 |
| 2 | A    I -- I don't know. | 16:43:57 |
| 3 | Q    Were you a recipient to the most recent | 16:43:57 |
| 4 | e-mail in the string from John White to David | 16:44:08 |
| 5 | Boshea dated May, looks like 15th or 16th, 2012, | 16:44:11 |
| 6 | at 4:56 p.m.? | 16:44:16 |
| 7 | A    The part that I see up on the screen does | 16:44:17 |
| 8 | not have my name in it. | 16:44:20 |
| 9 | Q    So how did you come to access this e-mail | 16:44:21 |
| 10 | thread to forward to Mr. Jordan? | 16:44:25 |
| 11 | A    I've had a number of e-mails about White | 16:44:27 |
| 12 | Eagle, and I believe I -- I think I printed them | 16:44:37 |
| 13 | out for Mr. Jordan. | 16:44:42 |
| 14 | Q    How did you print out this e-mail for | 16:44:43 |
| 15 | Mr. Jordan? | 16:44:47 |
| 16 | A    I hit the Print button. | 16:44:47 |
| 17 | Q    Did you print it on July 29, 2021? | 16:44:56 |
| 18 | A    I don't know. | 16:45:00 |
| 19 | Q    Do you see the upper left-hand corner | 16:45:01 |
| 20 | there is a date 7/29/2021? | 16:45:05 |
| 21 | A    I do. | 16:45:09 |
| 22 | Q    Does that help refresh your recollection | 16:45:11 |

1    as to when you printed it?                          16:45:15

2        A    No.                                        16:45:18

3        Q    How did you -- how did you -- how were     16:45:19

4    you able to print the e-mail if you were not a      16:45:22

5    recipient of this e-mail?                           16:45:25

6             MR. JORDAN:  Objection; assumes a fact     16:45:25

7    not in evidence.                                    16:45:29

8        A    I -- I don't know that I wasn't a          16:45:29

9    recipient of the e-mail.  I know I had it and I     16:45:34

10   printed it.                                         16:45:37

11       Q    In the upper right corner it shows John    16:45:38

12   White's e-mail address, John -- it says "John       16:45:43

13   White" and "jwhite@compassmarketinginc.com."        16:45:43

14            Do you see that?                           16:45:49

15       A    I do.                                      16:45:49

16       Q    When you printed this e-mail, were you     16:45:50

17   presenting it under John White's access -- under    16:45:54

18   John White's account?                               16:45:58

19       A    No.                                        16:45:58

20       Q    Are you able to access John White's        16:46:00

21   e-mails as a system administrator for the           16:46:04

22   compassmarketinginc.com e-mails?                    16:46:07

1      A    No.                                              16:46:07

2      Q    So how do you know that these e-mails            16:46:11

3  transpired between John and David Boshea if you           16:46:19

4  were not the recipient of them?                           16:46:21

5           MR. JORDAN:  Objection; that misstates           16:46:23

6  his testimony.                                            16:46:24

7      A    I don't know.                                    16:46:25

8      Q    Were you a Bcc recipient of this e-mail          16:46:27

9  at the top of the thread?                                 16:46:31

10     A    I don't know.                                    16:46:32

11     Q    So how did you go about accessing it to          16:46:34

12  print it out and send it to Mr. Jordan?                  16:46:41

13     A    I had it in a file and I hit Print.              16:46:43

14     Q    Which file did you have it in?                   16:46:51

15     A    In a file I kept that dealt with White           16:46:53

16  Eagle.                                                   16:47:00

17     Q    Was this file in your personal e-mail            16:47:00

18  account?                                                 16:47:08

19     A    No.                                              16:47:08

20     Q    Is it a file that's in the                       16:47:09

21  compassmarketinginc.com e-mail account?                  16:47:13

22     A    The one I printed is not; no.                    16:47:16

1     Q    So which account did you have it in that          16:47:20

2   you were able -- I'm sorry.  Which file did you          16:47:26

3   have it in that you were able to print this e-mail       16:47:27

4   to send to Mr. Jordan?                                   16:47:30

5     A    In my file dealing with White Eagle.              16:47:31

6     Q    Where did -- do you keep the files                16:47:35

7   dealing with White Eagle.                                16:47:41

8     A    It's currently held in a -- in an Outlook         16:47:41

9   file -- not Outlook; OneDrive file.                      16:47:51

10    Q    OneDrive.  Is that a OneDrive file that's         16:47:53

11  managed or under the name of                             16:48:02

12  compassmarketinginc.com?                                 16:48:03

13    A    No.                                               16:48:03

14    Q    Who is -- who are the administrators for          16:48:03

15  this file that you are able to store and access          16:48:10

16  this e-mail?                                             16:48:14

17    A    I am.                                             16:48:14

18    Q    Are you the sole administrator of the             16:48:20

19  account?                                                 16:48:22

20    A    Sole owner of the account.  I don't know          16:48:22

21  if I'd be classified as administrator, but sole          16:48:28

22  owner of the account.                                    16:48:32

| | | |
|---|---|---|
| 1 | Q    And what's the name of the account? | 16:48:33 |
| 2 | A    Michael White 1, I believe. | 16:48:34 |
| 3 | Q    And is it a compassmarketinginc.com URL? | 16:48:42 |
| 4 | A    No. | 16:48:45 |
| 5 | Q    And I'm going to ask you again because | 16:48:50 |
| 6 | you did not answer the question.  How were you | 16:48:56 |
| 7 | able to get this e-mail into that account? | 16:48:59 |
| 8 | MR. REDD:  Objection; asked and answered. | 16:49:01 |
| 9 | MR. JORDAN:  I join that objection. | 16:49:06 |
| 10 | A    I had it in my account in a file dealing | 16:49:07 |
| 11 | with White Eagle.  I printed it and I sent it to | 16:49:14 |
| 12 | Mr. Jordan. | 16:49:17 |
| 13 | Q    How did you get it into your account? | 16:49:17 |
| 14 | A    I don't know. | 16:49:20 |
| 15 | Q    When did you first get it into your | 16:49:23 |
| 16 | account? | 16:49:26 |
| 17 | A    Don't know. | 16:49:26 |
| 18 | Q    Are you able to access e-mails for | 16:49:30 |
| 19 | jwhite@compassmarketinginc.com? | 16:49:42 |
| 20 | A    No. | 16:49:42 |
| 21 | Q    Have you ever accessed e-mails for | 16:49:42 |
| 22 | jwhite@compassmarketinginc.com? | 16:49:51 |

1        MR. JORDAN:  Objection to the use of the        16:49:51

2   word "access."  I don't even know what that means.    16:49:57

3        A    Do you mind explaining what -- what you     16:50:00

4   mean by access.  I have -- I did have access to       16:50:05

5   all the Compass Marketing e-mails as the              16:50:09

6   administrator of Compass Marketing.  I do not have    16:50:13

7   that now.                                             16:50:16

8        Q    When did your access as the administrator  16:50:16

9   for the compassmarketinginc.com e-mails end?          16:50:20

10       A    Don't know.                                 16:50:24

11       Q    Did you have access to                      16:50:25

12   compassmarketinginc.com e-mails as of July 2021?     16:50:30

13       A    I don't know.                               16:50:32

14       Q    Did you have access to                      16:50:34

15   compassmarketing.com e-mails in August of 2021?      16:50:41

16       A    I don't know.                               16:50:44

17       Q    Did you have access to                      16:50:44

18   compassmarketinginc.com e-mails in September of      16:50:50

19   2021?                                                16:50:50

20       A    Don't know.                                 16:50:50

21       Q    Did you have access to                      16:50:54

22   compassmarketinginc.com e-mails in October of        16:50:59

1    2021?                                              16:51:00

2        A    Don't know.                               16:51:00

3        Q    What is the account password and access   16:51:05

4    information that you used to access                16:51:10

5    compassmarketinginc.com e-mails?                   16:51:11

6            MR. REDD:  Objection --                    16:51:11

7            MR. JORDAN:  Objection to the relevance     16:51:16

8    of all of this.                                    16:51:17

9            MR. REDD:  -- to form, relevance, and for  16:51:18

10   the reasons --                                     16:51:21

11           MR. JORDAN:  We're so far afield at this    16:51:23

12   point.                                             16:51:25

13           MR. REDD:  -- for the reasons stated        16:51:25

14   earlier when there was a question about login      16:51:27

15   information for some account.  I don't know if     16:51:31

16   it's the same one you're referring to or not, but  16:51:37

17   it's improper.                                     16:51:38

18           MR. STERN:  Justin and Mr. -- Mr. Redd      16:51:38

19   and Mr. Jordan, Mr. Jordan asked extensive         16:51:41

20   questions about this e-mail.  There is nowhere on  16:51:44

21   here that it indicates that Mr. White was the      16:51:46

22   recipient of it.  He just says I -- it was in my   16:51:48

1   folder and he doesn't know how it got there.  I'm        16:51:51

2   trying to find out how it got there.                     16:51:53

3          MR. REDD:  Well, we're not giving his             16:51:56

4   login and password to any account of Michael             16:52:00

5   White's.                                                 16:52:04

6          MR. STERN:  He didn't say it was Michael          16:52:06

7   White's.                                                 16:52:08

8          MR. REDD:  I think the question that              16:52:08

9   you've asked (indiscernible).                            16:52:08

10          (Talking over)                                   16:52:08

11          MR. STERN:  He said it was for Compass           16:52:09

12   Marketing, Inc., all e-mails.                           16:52:12

13          MR. JORDAN:  I think you're misstating           16:52:12

14   what he said.                                           16:52:16

15          MR. STERN:  I am not misstating what he          16:52:16

16   said.  The record will speak for itself.                16:52:19

17          MR. JORDAN:  What he said was he had it          16:52:21

18   at one time.  He didn't say that he has it.             16:52:25

19          MR. STERN:  So I'm trying to find out            16:52:28

20   when he had it himself -- when he had it and             16:52:30

21   what -- what was the access information that he          16:52:31

22   used when he had it.                                     16:52:33

| | | |
|---|---|---|
| 1 | MR. JORDAN:  You've already asked all | 16:52:35 |
| 2 | those questions. | 16:52:36 |
| 3 | Q    So when you were accessing | 16:52:37 |
| 4 | compassmarketinginc.com e-mails, what information | 16:52:42 |
| 5 | were you using to do that? | 16:52:43 |
| 6 | MR. REDD:  Objection to the extent that | 16:52:44 |
| 7 | it's asking for login and password.  That is | 16:52:50 |
| 8 | improper.  If it's something else, you need to | 16:52:56 |
| 9 | rephrase. | 16:52:59 |
| 10 | MR. STERN:  Are you instructing him not | 16:53:04 |
| 11 | to answer? | 16:53:06 |
| 12 | MR. REDD:  I'm instructing him not to | 16:53:06 |
| 13 | answer login and password information, all the | 16:53:09 |
| 14 | questions up until that point, unless it was form, | 16:53:15 |
| 15 | which I don't remember, I did object. | 16:53:19 |
| 16 | Q    During the time that you were able to | 16:53:21 |
| 17 | serve as the administrator for the | 16:53:22 |
| 18 | compassmarketinginc.com e-mails, could you pull up | 16:53:27 |
| 19 | anyone's e-mail that had a compassmarketinginc.com | 16:53:28 |
| 20 | URL and send an e-mail on their behalf. | 16:53:34 |
| 21 | A    You asked me two questions.  Can you ask | 16:53:39 |
| 22 | them one at a time? | 16:53:41 |

| | | |
|---|---|---|
| 1 | Q    When you had -- when you said -- whenever | 16:53:42 |
| 2 | it was that you had access as the system | 16:53:44 |
| 3 | administrator to compassmarketinginc.com e-mails, | 16:53:47 |
| 4 | were you able to pull up anyone's account that | 16:53:52 |
| 5 | ended in compassmarketinginc.com and send an | 16:53:54 |
| 6 | e-mail on their behalf? | 16:53:58 |
| 7 | MR. JORDAN:  Objection; calls for | 16:53:59 |
| 8 | speculation. | 16:54:01 |
| 9 | MR. REDD:  Objection.  And, in addition, | 16:54:01 |
| 10 | objection to the lack of a clear time frame, | 16:54:06 |
| 11 | what's being asked, objection. | 16:54:10 |
| 12 | MR. STERN:  I asked for a clear time | 16:54:11 |
| 13 | frame. | 16:54:13 |
| 14 | MR. REDD:  It assumes that the extent -- | 16:54:13 |
| 15 | objection to the extent it assumes that what is | 16:54:17 |
| 16 | being asked occurred. | 16:54:20 |
| 17 | With that, you can answer. | 16:54:24 |
| 18 | A    Again, Mr. Stern, you asked me two | 16:54:25 |
| 19 | questions.  Can you ask them one at a time? | 16:54:29 |
| 20 | MR. STERN:  Please read back my question, | 16:54:31 |
| 21 | Madam Court Reporter. | 16:54:59 |
| 22 | (The pending question was read.) | 16:54:59 |

1          MR. JORDAN:  Objection; compound.                    16:54:59

2          MR. REDD:  Objection for me.                         16:55:02

3          Go ahead.                                            16:55:03

4     A    No.                                                  16:55:03

5     Q    Were you able to pull up during the time             16:55:04

6  that you were the system administrator for                  16:55:10

7  compassmarketinginc.com e-mails and view e-mails            16:55:18

8  that you were not a recipient of?                           16:55:18

9     A    No.                                                  16:55:20

10    Q    Then please explain what you were able to            16:55:21

11 see in compassmarketinginc.com e-mails when you             16:55:27

12 were the system administrator.                              16:55:32

13         MR. REDD:  Objection.  We're -- we're                16:55:33

14 again getting far afield of Boshea versus Compass            16:55:40

15 Marketing case that we're here for this deposition           16:55:46

16 for.                                                         16:55:48

17         You can answer.                                      16:55:49

18    A    During the time I was administrator to               16:55:49

19 compassmarketinginc.com's account, domain, I could          16:55:56

20 pull up and review all e-mails in the                       16:55:58

21 compassmarketinginc domain.                                 16:56:03

22    Q    Were you able to print all e-mails with              16:56:06

1    the compassmarketinginc.com domain while you were          16:56:11

2    the system administrator?                                  16:56:15

3         A    I believe I would have been, but I don't         16:56:16

4    know for sure.                                             16:56:25

5         Q    Were you able to send e-mails with -- for        16:56:25

6    anyone who had a compassmarketinginc.com URL               16:56:32

7    during the time that you were the system                   16:56:38

8    administrator?                                             16:56:40

9         MR. REDD:  Object to the form.  I don't               16:56:40

10   believe we set forth the time frame of what that           16:56:42

11   is when you're asking, Stephen.                            16:56:46

12        MR. STERN:  I think I said it's the time              16:56:48

13   he was assistant administrator.                            16:56:51

14        MR. REDD:  The time as an assistant                   16:56:51

15   administrator, I'm unclear as to what time frame           16:56:56

16   we're talking about, the years.                            16:56:57

17        MR. STERN:  I said while he was a system              16:56:58

18   administrator, period.                                     16:57:01

19        MR. REDD:  Same form objection then.                  16:57:02

20        Go ahead.                                             16:57:09

21        A    Can you repeat your question, Mr. Stern?        16:57:10

22        Q    Were you able to send e-mails under              16:57:12

| | | |
|---|---|---|
| 1 | anyone's name that had a compassmarketinginc.com | 16:57:18 |
| 2 | e-mail address during the time that you were the | 16:57:24 |
| 3 | system administrator for compassmarketinginc.com? | 16:57:25 |
| 4 | A    No. | 16:57:30 |
| 5 | Q    What were you able to do besides access | 16:57:30 |
| 6 | the e-mails and print them during the time that | 16:57:35 |
| 7 | you were the system administrator for | 16:57:39 |
| 8 | compassmarketinginc.com? | 16:57:40 |
| 9 | MR. REDD:  Object to form. | 16:57:40 |
| 10 | Go ahead. | 16:57:46 |
| 11 | A    I was also able to review them. | 16:57:46 |
| 12 | Q    So you could review anyone's inbox, sent | 16:57:48 |
| 13 | box, and deleted box; is that correct? | 16:57:55 |
| 14 | A    I don't think I would have been able to | 16:57:57 |
| 15 | review their deleted box, but I could review | 16:58:04 |
| 16 | incoming and outgoing. | 16:58:09 |
| 17 | Q    Could you review incoming and outgoing in | 16:58:09 |
| 18 | real time? | 16:58:15 |
| 19 | A    I don't believe so, no. | 16:58:15 |
| 20 | Q    When you reviewed the incoming e-mails -- | 16:58:19 |
| 21 | I'm sorry -- the outgoing e-mails, were you able | 16:58:26 |
| 22 | to -- let me rephrase the question. | 16:58:29 |

| | |
|---|---|
| 1 | During the time that you were the system | 16:58:33 |
| 2 | administrator for the compassmarketinginc.com | 16:58:35 |
| 3 | domain, could you create an e-mail for anyone that | 16:58:39 |
| 4 | had a compassmarketinginc.com URL? | 16:58:44 |
| 5 | A    No. | 16:58:44 |
| 6 | Q    So you were able only to review their | 16:58:48 |
| 7 | inbox folders and sent box folders? | 16:59:04 |
| 8 | A    I stated that I don't think I was able to | 16:59:07 |
| 9 | review deleted folders, but I could review any of | 16:59:13 |
| 10 | the other boxes, I believe. | 16:59:19 |
| 11 | Q    During the time that you were the | 16:59:21 |
| 12 | compassmarketinginc.com system administrator, did | 16:59:33 |
| 13 | you review John White's compassmarketinginc.com | 16:59:35 |
| 14 | e-mails without his knowledge? | 16:59:42 |
| 15 | MR. JORDAN:  Objection; and compound. | 16:59:43 |
| 16 | MR. REDD:  Objection to form. | 16:59:43 |
| 17 | A    I -- I don't believe I ever reviewed John | 16:59:49 |
| 18 | White's e-mails without his knowledge, no. | 16:59:57 |
| 19 | Q    Did you ever review any | 16:59:59 |
| 20 | compassmarketinginc.com e-mails of any Compass | 17:00:08 |
| 21 | Marketing employee without their knowledge? | 17:00:12 |
| 22 | A    I don't know if I ever did it without | 17:00:13 |

| | | |
|---|---|---|
| 1 | their knowledge. | 17:00:18 |
| 2 | Q    Did you ever access John White's | 17:00:18 |
| 3 | compassmarketinginc.com e-mails and specifically | 17:00:29 |
| 4 | tell him about it? | 17:00:30 |
| 5 | A    I accessed his e-mails at his request a | 17:00:32 |
| 6 | few times. | 17:00:37 |
| 7 | Q    Are the only times that you accessed John | 17:00:38 |
| 8 | White's e-mails the times that he specifically | 17:00:41 |
| 9 | asked you to access them? | 17:00:43 |
| 10 | A    Do you have a time frame? | 17:00:44 |
| 11 | MR. REDD:  Object to the extent -- | 17:00:44 |
| 12 | (Talking over) | 17:00:52 |
| 13 | Q    Are the only times you've ever accessed | 17:00:52 |
| 14 | John White's e-mails those times that he | 17:00:56 |
| 15 | specifically authorized you to do that? | 17:00:57 |
| 16 | MR. REDD:  Objection to the extent that | 17:00:58 |
| 17 | it's not precisely what the previous answer was. | 17:01:03 |
| 18 | But go ahead. | 17:01:05 |
| 19 | A    I -- I don't need authorization to review | 17:01:06 |
| 20 | e-mails.  I have never received John White's | 17:01:10 |
| 21 | authorization to review e-mails. | 17:01:13 |
| 22 | Q    Why don't you need authorization from | 17:01:14 |

| | | |
|---|---|---|
| 1 | John White to review his e-mails? | 17:01:20 |
| 2 | MR. JORDAN:  Objection; time frame. | 17:01:21 |
| 3 | MR. REDD:  Objection to form. | 17:01:24 |
| 4 | A    Because I did not -- | 17:01:28 |
| 5 | Q    Let me rephrase.  Why did you not need | 17:01:28 |
| 6 | John White's authorization to review his e-mails? | 17:01:33 |
| 7 | A    Because I do not need his authorization | 17:01:36 |
| 8 | to review e-mails. | 17:01:40 |
| 9 | Q    Why not? | 17:01:41 |
| 10 | MR. REDD:  Objection to form. | 17:01:41 |
| 11 | A    Because it is not a requirement. | 17:01:45 |
| 12 | Q    Why is it not a requirement? | 17:01:52 |
| 13 | A    Because it's not a requirement. | 17:01:54 |
| 14 | Q    Why is it not a requirement? | 17:01:58 |
| 15 | MR. REDD:  Objection; asked and answered. | 17:02:00 |
| 16 | A    Because it is not a requirement. | 17:02:04 |
| 17 | Q    And I'm asking why it's not a | 17:02:07 |
| 18 | requirement. | 17:02:09 |
| 19 | A    My answer is still the same, because it | 17:02:09 |
| 20 | is not a requirement. | 17:02:17 |
| 21 | Q    Do you -- when was the last time you | 17:02:18 |
| 22 | accessed John White's e-mails? | 17:02:23 |

| | | |
|---|---|---|
| 1 | A    I don't know. | 17:02:25 |
| 2 | Q    Have you accessed John White's e-mails | 17:02:30 |
| 3 | since January 1, 2021? | 17:02:35 |
| 4 | MR. REDD:  Objection to form again. | 17:02:38 |
| 5 | MR. JORDAN:  Objection to the word | 17:02:38 |
| 6 | "access."  We have an e-mail here that's in front | 17:02:44 |
| 7 | of us we have access to. | 17:02:49 |
| 8 | MR. STERN:  Let me ask the question | 17:02:50 |
| 9 | differently. | 17:02:51 |
| 10 | Q    Did you log on as the system | 17:02:52 |
| 11 | administrator for Compass Marketing, Inc., and | 17:02:54 |
| 12 | access John White's e-mail since January 1, 2021? | 17:02:57 |
| 13 | MR. JORDAN:  Objection; asked and | 17:03:00 |
| 14 | answered. | 17:03:02 |
| 15 | MR. REDD:  And objection again since the | 17:03:02 |
| 16 | beginning events that happened after the beginning | 17:03:06 |
| 17 | of this lawsuit have been stated by the Court to | 17:03:08 |
| 18 | be not at issue with regard to the subpoena and | 17:03:15 |
| 19 | with regard to this deposition of the third party, | 17:03:17 |
| 20 | not connected to the Boshea claims -- do you want | 17:03:24 |
| 21 | Mr. White to step out? | 17:03:29 |
| 22 | Q    Mr. White? | 17:03:31 |

| | |
|---|---|
| 1 | MR. STERN: Are you instructing him not | 17:03:33 |
| 2 | to answer? | 17:03:34 |
| 3 | A    I'm sorry; I didn't hear your question, | 17:03:34 |
| 4 | sir. | 17:03:39 |
| 5 | MR. STERN: Justin, are you instructing | 17:03:40 |
| 6 | him not to answer? | 17:03:42 |
| 7 | MR. REDD: Well, that might depend on -- | 17:03:43 |
| 8 | MR. STERN: My question stands. | 17:03:46 |
| 9 | MR. REDD: Okay. Because I'm going to | 17:03:48 |
| 10 | ask -- | 17:03:50 |
| 11 | MR. STERN: He spoke extensively about an | 17:03:50 |
| 12 | e-mail here. | 17:03:53 |
| 13 | MR. JORDAN: Yeah, Stephen, it's not | 17:03:53 |
| 14 | going to work if Justin starts talking and you | 17:03:55 |
| 15 | start cutting him off. | 17:03:57 |
| 16 | MR. REDD: My first question was would | 17:03:59 |
| 17 | you like Mr. White to leave the room or just me | 17:04:02 |
| 18 | tell you what I'm going to tell you? | 17:04:06 |
| 19 | MR. STERN: Just go ahead and tell me. | 17:04:07 |
| 20 | MR. REDD: Okay. I was going to ask you | 17:04:09 |
| 21 | again if there's any connection between what | 17:04:11 |
| 22 | you're asking and the claims about Mr. Boshea's | 17:04:14 |

| | | |
|---|---|---|
| 1 | compensation or what he's owed or not that is at | 17:04:20 |
| 2 | issue in the case and that is the proper scope of | 17:04:23 |
| 3 | this -- | 17:04:28 |
| 4 | MR. STERN: And we've have already been | 17:04:29 |
| 5 | through this. We're repeating ourselves now. | 17:04:30 |
| 6 | Your client spoke extensively about this document | 17:04:33 |
| 7 | that's up on the screen, but yet he's unable to | 17:04:37 |
| 8 | identify how he got it. | 17:04:39 |
| 9 | MR. JORDAN: That is completely false, | 17:04:40 |
| 10 | Stephen. | 17:04:40 |
| 11 | MR. STERN: He said he printed it. | 17:04:40 |
| 12 | MR. JORDAN: You can't misstate the | 17:04:42 |
| 13 | testimony. | 17:04:43 |
| 14 | MR. STERN: Now I'm asking him how he did | 17:04:43 |
| 15 | access it. | 17:04:43 |
| 16 | MR. JORDAN: He had it in his OneDrive | 17:04:45 |
| 17 | account, we all know that. | 17:04:47 |
| 18 | MR. STERN: Yeah. How did it get there? | 17:04:48 |
| 19 | And my question is has he reviewed John White's -- | 17:04:50 |
| 20 | has he logged in as the system administrator since | 17:04:52 |
| 21 | January 1, 2021, to review John White's e-mails. | 17:04:56 |
| 22 | MR. JORDAN: And he's already answered | 17:04:58 |

1   that question.                                      17:05:00

2            MR. STERN:  No, he hasn't.                 17:05:01

3            MR. JORDAN:  Yes, he has.  You asked him   17:05:01

4   that question like ten minutes ago and he answered  17:05:04

5   it.  You may not have liked the answer, but he did  17:05:06

6   answer it.  You only have seven hours.  We're kind  17:05:09

7   of butting up on that.                              17:05:14

8        Q    Go ahead, Mr. White.                      17:05:15

9            MR. REDD:  I believe Mr. Jordan is         17:05:17

10  correct that the question has already been          17:05:18

11  answered.  My question is, was there any            17:05:21

12  connection besides what you've already stated,      17:05:26

13  Mr. Stern, why --                                   17:05:28

14           MR. STERN:  No, that's my question.        17:05:28

15           MR. REDD:  -- this is discoverable in      17:05:28

16  this case.                                          17:05:30

17           THE COURT REPORTER:  I'm sorry, Mr. Redd,  17:05:30

18  I'm sorry, Mr. Redd; I can't hear you.              17:05:35

19           MR. REDD:  I wanted to know whether        17:05:35

20  there's any basis besides what Mr. Stern said for   17:05:39

21  why this line of questioning is proper.  He said    17:05:43

22  that we would be just repeating ourselves, which    17:05:47

1    means --                                                17:05:50

2            MR. STERN:  I've given you my                    17:05:50

3    explanation.  That's it.  Nothing's different.          17:05:52

4    That's it.  I want to understand what he's been         17:05:54

5    doing and how he's been able to get this.               17:05:56

6            MR. REDD:  That was what I wanted to know        17:05:59

7    about this line of questioning, whether there was       17:06:01

8    anything additional or different, and you're            17:06:03

9    saying no.  I believe the question has been asked       17:06:05

10   and answered.                                           17:06:07

11           But go ahead.                                   17:06:08

12       A    Can you ask your question again, please,       17:06:08

13   Mr. Stern?                                              17:06:14

14       Q    Have you logged on as the system              17:06:14

15   administrator for compassmarketinginc.com since         17:06:19

16   January 1, 2021, and accessed John White's              17:06:19

17   e-mails?                                                17:06:23

18           MR. JORDAN:  Objection; asked and               17:06:23

19   answered and relevance.                                 17:06:25

20           MR. REDD:  Same objection.                      17:06:25

21       A    No.                                            17:06:29

22       Q    Have you logged on as the administrator        17:06:29

1    of compassmarketinginc.com between January 1,        17:06:38

2    2020, and December 31, 2020, and accessed John       17:06:39

3    White's e-mails?                                     17:06:44

4            MR. JORDAN:  Objection; relevance.           17:06:44

5            MR. REDD:  Same objection for me and to      17:06:44

6    form.                                                17:06:49

7        A    No.                                         17:06:49

8            MR. STERN:  One second.                      17:06:50

9        Q    Was George -- George White also            17:07:02

10   administrator of the compassmarketinginc.com URL?    17:07:25

11           MR. REDD:  Objection to form.                17:07:31

12           Go ahead.                                    17:07:31

13       A    Yes.                                        17:07:33

14           MR. JORDAN:  Objection to relevance.         17:07:33

15       Q    I couldn't hear you, Mr. White.             17:07:36

16       A    Yes, he was.                                17:07:39

17       Q    Is he still an administrator for the        17:07:41

18   compassmarketinginc.com URL?                         17:07:46

19       A    Not as far as I know.                       17:07:46

20       Q    When did his -- when was he no longer --    17:07:51

21   as of when was he no longer -- let me reask it.      17:07:56

22           As of when did he no longer have access      17:08:00

1    as the assistant administrator for the                    17:08:02

2    compassmarketinginc.com URL?                               17:08:06

3        A    To the best of my knowledge May of 2019.          17:08:06

4             MR. STERN:  All right.  No further                17:08:11

5    questions at this time.                                    17:08:19

6             All the statements I made earlier in the          17:08:19

7    deposition about the reason why this deposition            17:08:22

8    remains open still stand.                                  17:08:24

9    BY MR. JORDAN:                                             17:08:24

10       Q    Okay.  Just real quick question, or a             17:08:25

11   couple questions, Mr. White.  Have you ever                17:08:32

12   received a blank copy of an e-mail?                        17:08:35

13       A    Yes.                                              17:08:38

14       Q    Okay.  If you receive a blank copy of an          17:08:40

15   e-mail, when you receive it, do you see that --            17:08:43

16   your name on the recipient page on the e-mail, if          17:08:47

17   you know?                                                  17:08:52

18       A    Can you ask that again, please?                   17:08:52

19       Q    If you are blind-copied, would you see            17:08:58

20   your own name as a recipient of the e-mail?                17:09:01

21       A    I don't think so, but I don't know.              17:09:03

22       Q    Okay.  Have you ever received a blank             17:09:09

| | | |
|---|---|---|
| 1 | copy of a Compass Marketing e-mail? | 17:09:14 |
| 2 | A    Yes. | 17:09:15 |
| 3 | Q    Okay.  Do you have any reason to believe | 17:09:21 |
| 4 | you didn't receive a blank copy of the e-mail that | 17:09:24 |
| 5 | Mr. Stern just put up on the screen? | 17:09:29 |
| 6 | MR. REDD:  Objection to the form and the | 17:09:31 |
| 7 | assumption in the question. | 17:09:40 |
| 8 | Go ahead. | 17:09:42 |
| 9 | A    I don't have any reason to believe I -- I | 17:09:42 |
| 10 | didn't receive it one way or the other. | 17:09:45 |
| 11 | Q    Okay.  That's fine. | 17:09:46 |
| 12 | MR. JORDAN:  I don't have any further | 17:09:49 |
| 13 | questions. | 17:09:51 |
| 14 | MR. REDD:  Okay. | 17:09:51 |
| 15 | VIDEO TECHNICIAN:  Are we all set? | 17:09:51 |
| 16 | MR. REDD:  No.  I'm not going to ask Mr. | 17:09:59 |
| 17 | White any questions.  I would like to put a couple | 17:10:00 |
| 18 | of things on the record.  It might be appropriate | 17:10:02 |
| 19 | for him to step out of the room, but I -- and I | 17:10:05 |
| 20 | don't want the deposition to go off the record | 17:10:09 |
| 21 | yet. | 17:10:13 |
| 22 | If you want to step and I'll let you know | 17:10:13 |

| | | |
|---|---|---|
| 1 | when you can come back in. | 17:10:13 |
| 2 | (Mr. White left the room.) | 17:10:16 |
| 3 | VIDEO TECHNICIAN:  Just to clarify, you | 17:10:17 |
| 4 | want this on the video portion as well? | 17:10:26 |
| 5 | MR. REDD:  No, no video, but on the | 17:10:28 |
| 6 | transcript, please. | 17:10:34 |
| 7 | VIDEO TECHNICIAN:  Okay.  So should I | 17:10:34 |
| 8 | close out the video now? | 17:10:36 |
| 9 | MR. REDD:  No, not yet, because I want to | 17:10:37 |
| 10 | give the opportunity for additional testimony on | 17:10:42 |
| 11 | some areas that may -- may be at issue that if we | 17:10:44 |
| 12 | can resolve right now, then we should, and there's | 17:10:51 |
| 13 | no reason to come back for certain things.  There | 17:10:56 |
| 14 | may be other categories that we're not going to | 17:10:59 |
| 15 | get an agreement on and they're -- we're not going | 17:11:03 |
| 16 | to go forward until further proceedings, but there | 17:11:05 |
| 17 | are a few things -- | 17:11:14 |
| 18 | VIDEO TECHNICIAN:  Okay.  Just so you | 17:11:14 |
| 19 | know, you're in my screen now so I'm recording | 17:11:17 |
| 20 | you. | 17:11:20 |
| 21 | MR. REDD:  Okay.  I thought we were going | 17:11:20 |
| 22 | off the video record for now, but we can -- we're | 17:11:22 |

| | | |
|---|---|---|
| 1 | going to turn it back on when the witness comes | 17:11:24 |
| 2 | back. | 17:11:24 |
| 3 | VIDEO TECHNICIAN: All right. So we are | 17:11:24 |
| 4 | going off -- I got it. Understood. | 17:11:25 |
| 5 | MR. REDD: All right. | 17:11:25 |
| 6 | VIDEO TECHNICIAN: We are off the video | 17:11:29 |
| 7 | record at 5:11 p.m. | 17:11:30 |
| 8 | MR. REDD: So there's going to be an | 17:11:33 |
| 9 | opportunity for additional testimony if we can | 17:11:35 |
| 10 | come to some agreements. And I will say, just so | 17:11:41 |
| 11 | I don't forget, I object to keeping the deposition | 17:11:48 |
| 12 | open and the witness will read and sign just so I | 17:11:51 |
| 13 | don't forget that when we're actually at the end. | 17:11:54 |
| 14 | The May 22, 2007, e-mail that was Page | 17:11:59 |
| 15 | No. 1 in our document production, Mr. Stern and I | 17:12:07 |
| 16 | had a discussion briefly about that and whether | 17:12:09 |
| 17 | that was produced or not. Have you confirmed with | 17:12:14 |
| 18 | your office that you have that in native format? | 17:12:17 |
| 19 | MR. STERN: I have been informed that we | 17:12:19 |
| 20 | do have it so my -- I was mistaken on that. | 17:12:22 |
| 21 | MR. REDD: Okay. I appreciate that. And | 17:12:24 |
| 22 | there was -- I sent you an e-mail about a | 17:12:29 |

1    representation in a filing related to whether that          17:12:32

2    document was produced or not.  So I do want to               17:12:35

3    address that.  We can take that up later.  But for           17:12:39

4    today's purposes you have the native e-mail that             17:12:42

5    Mr. White received on May 22, 2007, as produced on           17:12:48

6    November 18, 2021, by my office; correct?                    17:12:55

7            MR. STERN:  Just to be clear, there                  17:12:58

8    should be two native e-mails, the one that he sent           17:13:00

9    to Mr. Jordan and the one that he received from              17:13:03

10   Daniel White.                                                17:13:06

11           MR. REDD:  Okay.  So the one that was --             17:13:06

12   that was sent to Mr. Jordan, that's the one that             17:13:10

13   Mr. Jordan used as an exhibit out of -- I guess              17:13:13

14   out of Mr. Jordan's inbox.  But that is the native           17:13:19

15   e-mail that would also have been in Mr. White's              17:13:22

16   sent mail.  So it's already been produced by a               17:13:27

17   party.                                                       17:13:30

18           MR. JORDAN:  I've already produced it.               17:13:30

19           MR. REDD:  Right.  So --                             17:13:32

20           MR. JORDAN:  Stephen, you have that from             17:13:35

21   me.  In fact, you have it again today.                       17:13:37

22           MR. REDD:  We marked it as a deposition              17:13:37

1    exhibit.                                            17:13:41

2              MR. STERN:  You just forwarded it to me.  17:13:41

3              MR. REDD:  That was a deposition exhibit. 17:13:42

4              MR. JORDAN:  No.  I sent it when I got it 17:13:42

5    in September.                                       17:13:44

6              MR. STERN:  I know.  That was just a      17:13:44

7    forwarding e-mail.  You just forwarded it to me.    17:13:46

8              MR. JORDAN:  No.                          17:13:48

9              MR. REDD:  No, no, no.                    17:13:48

10             MR. JORDAN:  I uploaded it -- I uploaded   17:13:50

11   it into the documents that you guys asked for       17:13:50

12   and --                                              17:13:54

13             MR. STERN:  I've not seen that.           17:13:56

14             MR. JORDAN:  -- I sent it again today.    17:13:56

15             MR. STERN:  Then I'll have to look at     17:13:58

16   that because I -- the only copy that I got from     17:13:59

17   you is the one you forwarded.  And if I'm           17:14:00

18   mistaken, then I'll clarify that and get back to    17:14:02

19   you.  The only one that I've seen is the one that   17:14:04

20   you forwarded.                                      17:14:08

21             MR. REDD:  These sound like honest        17:14:08

22   mistakes or misunderstandings about which -- which  17:14:11

| | | |
|---|---|---|
| 1 | native e-mail we are talking about. But because | 17:14:14 |
| 2 | I'm hearing that there is a dispute about what | 17:14:17 |
| 3 | e-mail and attachment was or was not produced, I | 17:14:20 |
| 4 | just want to be clear. Both of those native | 17:14:24 |
| 5 | e-mails have been produced in this case. One was | 17:14:27 |
| 6 | already previously produced by party. There is no | 17:14:29 |
| 7 | reason for a third party to produce it again. The | 17:14:32 |
| 8 | original e-mail that Mr. White was Bcc'd on -- | 17:14:35 |
| 9 | MR. STERN: Well, there's not -- | 17:14:35 |
| 10 | MR. REDD: -- other parties have now. | 17:14:38 |
| 11 | MR. STERN: Whoa, whoa, whoa, whoa, whoa. | 17:14:38 |
| 12 | There's -- no one's ever testified that he was | 17:14:44 |
| 13 | Bcc'd on that. | 17:14:47 |
| 14 | MR. REDD: My fault. My fault. That was | 17:14:48 |
| 15 | forwarded to him on the 2007 e-mail. Okay? So if | 17:14:49 |
| 16 | there are any questions about that document or the | 17:14:55 |
| 17 | attachment to it or the metadata of it that was | 17:14:58 |
| 18 | produced, it's available to be asked about right | 17:15:03 |
| 19 | now. He can come back if there are further | 17:15:06 |
| 20 | questions. I went through everything on the | 17:15:08 |
| 21 | forwarded version of it in 2021. We're not going | 17:15:10 |
| 22 | to come back on the record even if we're back for | 17:15:14 |

| | | |
|---|---|---|
| 1 | other reasons about things that could have been | 17:15:17 |
| 2 | asked about today, including that e-mail that | 17:15:20 |
| 3 | was -- that we acknowledge was produced and | 17:15:23 |
| 4 | received by all the parties and any others. | 17:15:24 |
| 5 | MR. STERN:  I just want to make sure I | 17:15:28 |
| 6 | understand what you're saying, Justin, that you | 17:15:30 |
| 7 | produced in native format the May 22, 2007, e-mail | 17:15:32 |
| 8 | that Michael White received; correct? | 17:15:36 |
| 9 | MR. REDD:  Correct. | 17:15:39 |
| 10 | MR. STERN:  You did not produce in native | 17:15:39 |
| 11 | format the e-mail that he forwarded in September | 17:15:43 |
| 12 | of 2021; correct? | 17:15:47 |
| 13 | MR. REDD:  Michael White did not produce | 17:15:47 |
| 14 | that, but that same e-mail was produced in native | 17:15:52 |
| 15 | format on behalf of Mr. Boshea by Mr. Jordan. | 17:15:55 |
| 16 | MR. STERN:  And I'm -- and, Greg, I'm | 17:15:59 |
| 17 | going to have to -- the only one that I know of | 17:16:02 |
| 18 | that we've got is the one you forwarded to me. | 17:16:05 |
| 19 | When I say "forwarded," like literally pressing | 17:16:07 |
| 20 | forward, putting my name -- | 17:16:10 |
| 21 | MR. JORDAN:  And trust me, I have no | 17:16:11 |
| 22 | reason to put my license at risk to screw around | 17:16:14 |

1   with an e-mail forwarded to you.  I forwarded it          17:16:17

2   to you on January -- on September 28 and I think          17:16:20

3   it said something like Michael White sent this            17:16:22

4   e-mail to me.                                             17:16:25

5        MR. STERN:  You did.  You did do that.               17:16:25

6   I'm acknowledging that.                                   17:16:27

7        MR. JORDAN:  Right.                                  17:16:27

8        MR. STERN:  But I'm saying that to me is             17:16:31

9   not production.  All right.  I think you and I --         17:16:33

10       MR. JORDAN:  I thought Daniel -- I could             17:16:33

11  be wrong.  I thought Daniel sent his native --            17:16:37

12       MR. STERN:  Greg, I was not -- I was not             17:16:38

13  accusing you of misrepresenting anything.                 17:16:42

14       MR. JORDAN:  Okay.                                   17:16:42

15       MR. STERN:  I wanted to put it on the                17:16:43

16  record.                                                   17:16:43

17       MR. JORDAN:  Somebody, I thought it was              17:16:43

18  Daniel, produced his -- his e-mail --                     17:16:46

19       MR. STERN:  He did not produce the --                17:16:46

20       MR. JORDAN:  -- in native.                           17:16:52

21       MR. STERN:  He produced only the -- he               17:16:53

22  did not produce the original e-mail in that thread        17:16:55

| | | |
|---|---|---|
| 1 | in native format.  He produced the one that he | 17:16:58 |
| 2 | forwarded to Michael in native format.  If you | 17:17:02 |
| 3 | remember when he testified, he said he doesn't | 17:17:08 |
| 4 | know the whereabouts of the original e-mail in | 17:17:10 |
| 5 | that thread. | 17:17:13 |
| 6 | MR. REDD:  As it relates to Michael | 17:17:14 |
| 7 | White, we have the first native format e-mail that | 17:17:21 |
| 8 | Michael White received on the basis -- | 17:17:26 |
| 9 | MR. STERN:  As I said, I've been | 17:17:26 |
| 10 | corrected.  You sent that.  I've -- I've been -- I | 17:17:30 |
| 11 | was advised during one of the breaks that we got | 17:17:33 |
| 12 | that.  So... | 17:17:35 |
| 13 | MR. REDD:  Okay.  So I'm not hoping that | 17:17:35 |
| 14 | you ask more questions about it, but this is the | 17:17:41 |
| 15 | opportunity to do so if -- if there ever is going | 17:17:43 |
| 16 | to be one. | 17:17:47 |
| 17 | MR. STERN:  I will not at this time. | 17:17:47 |
| 18 | MR. REDD:  Okay.  And it's not going to | 17:17:49 |
| 19 | be at any other time either in a deposition. | 17:17:55 |
| 20 | MR. JORDAN:  Understood. | 17:17:58 |
| 21 | MR. REDD:  And if there are other -- | 17:18:00 |
| 22 | other areas that could have been asked about today | 17:18:05 |

1   or can be asked about if Mr. White comes back in,            17:18:07

2   that we haven't gotten to them, we're not -- even            17:18:13

3   if we go back for other reasons, which I disagree            17:18:16

4   that we should, but now is the time to exhaust              17:18:21

5   those proper area inquiries.  We're not going to            17:18:26

6   start back at the beginning even if we come back            17:18:29

7   for some limited purpose again, which I don't              17:18:32

8   think is warranted.                                        17:18:34

9        MR. STERN:  I'm not really sure what your             17:18:37

10  statement was there other than I realize you're            17:18:40

11  objecting to coming back.  I'm hearing the                 17:18:43

12  objection.  I'm not -- I'm not -- I'm not                  17:18:46

13  conceding that that is correct or appropriate.             17:18:48

14       MR. JORDAN:  What he's saying is if you               17:18:49

15  have something that you're not certifying in the           17:18:52

16  motion to the Court, ask it today.  If you don't           17:18:57

17  ask it today --                                            17:18:59

18       MR. STERN:  I didn't certify it in the                17:18:59

19  transcript.                                                17:18:59

20       MR. JORDAN:  -- you're not going to ask               17:19:00

21  it tomorrow.                                               17:19:01

22       MR. STERN:  I mean, whoa, whoa, whoa.                 17:19:01

| | | |
|---|---|---|
| 1 | There was a lot of stuff that he didn't answer. | 17:19:05 |
| 2 | I'm not going question by question, subject by | 17:19:07 |
| 3 | subject.  There was a ton of material that he was | 17:19:09 |
| 4 | evasive on.  There was a lot of material that you | 17:19:13 |
| 5 | instructed him not to answer on.  And all of that | 17:19:15 |
| 6 | is stuff that I'm going to have to review when I | 17:19:17 |
| 7 | see the transcript to raise it with the Court. | 17:19:20 |
| 8 | MR. REDD:  Yeah.  And the only reason | 17:19:22 |
| 9 | there were so many instructions was there were so | 17:19:24 |
| 10 | many topics that were very far afield of the case. | 17:19:27 |
| 11 | And we -- our positions are noted.  But I'm | 17:19:32 |
| 12 | just -- the sheer number of them, there was a | 17:19:35 |
| 13 | reason for it. | 17:19:38 |
| 14 | And any other -- you mentioned earlier | 17:19:43 |
| 15 | the -- the -- there were e-mails and attachments | 17:19:45 |
| 16 | that you hadn't received.  Is that the -- we | 17:19:48 |
| 17 | talked about the one that you're referring to and | 17:19:54 |
| 18 | that's it? | 17:19:56 |
| 19 | MR. STERN:  No.  There's several of them | 17:19:56 |
| 20 | because there are several that we received from | 17:19:59 |
| 21 | Daniel White that Michael White didn't produce. | 17:20:02 |
| 22 | There were several that Michael White produced | 17:20:04 |

```
1    where there were not attachments.  So I have not        17:20:07

2    gone through them one by one, but that's why I was      17:20:12

3    trying to get confirmation during the deposition,       17:20:14

4    what was attached to this.  He says I don't know.       17:20:17

5    Well, then we're going to get clarification.  If        17:20:20

6    he can't authenticate it, then we're going to have      17:20:21

7    to go back and get that straightened out with the       17:20:24

8    Court.  I asked that several times.  You heard him      17:20:26

9    answer it that way.                                     17:20:29

10           MR. REDD:  Well, the documents were             17:20:30

11   produced about two weeks ago.  There's no              17:20:33

12   follow-up about missing attachments.  There's no       17:20:35

13   follow-up about that.  The time to meet and confer     17:20:38

14   on -- on that was before this deposition.  We --       17:20:42

15   Mr. Jordan and I tried to call you a bunch of          17:20:47

16   times about issues in this case.  That wasn't          17:20:50

17   raised.  And I object to that being a basis to         17:20:54

18   come back or to produce more documents.                17:20:59

19           And if it's already been produced by a         17:21:04

20   party, there is no basis to burden a third party       17:21:07

21   to re-go back and go through and duplicate those       17:21:12

22   efforts.  The burdens on a nonparty and the            17:21:18
```

| | | |
|---|---|---|
| 1 | availability of the evidence in another format | 17:21:23 |
| 2 | that's already been produced as relevant to the | 17:21:26 |
| 3 | burden, I think he has met his document production | 17:21:29 |
| 4 | obligations. | 17:21:35 |
| 5 | MR. STERN:  We'll have to agree to | 17:21:35 |
| 6 | disagree on that. | 17:21:46 |
| 7 | MR. REDD:  All right.  So with that, any | 17:21:46 |
| 8 | more questions for Mr. White? | 17:21:48 |
| 9 | MR. STERN:  Not at this time -- | 17:21:48 |
| 10 | MR. JORDAN:  We do not. | 17:21:50 |
| 11 | MR. STERN:  -- subject to my statements | 17:21:53 |
| 12 | before. | 17:21:55 |
| 13 | MR. REDD:  I guess one last thing before | 17:21:55 |
| 14 | we go off the record.  I guess it makes sense to | 17:22:03 |
| 15 | just do it before we close up.  There is a -- | 17:22:07 |
| 16 | there's a motion -- a mention of a potential | 17:22:10 |
| 17 | motion to compel.  Can you remind me exactly what | 17:22:12 |
| 18 | you two -- both were talking about joining in a | 17:22:18 |
| 19 | motion to compel about? | 17:22:21 |
| 20 | MR. JORDAN:  It had to do with Chip | 17:22:22 |
| 21 | DiPaula's severance agreements and payments of | 17:22:24 |
| 22 | Chip DiPaula's severance agreements. | 17:22:29 |

| | | |
|---|---|---|
| 1 | MR. REDD:  Okay.  And that's the -- all | 17:22:32 |
| 2 | right. | 17:22:36 |
| 3 | MR. JORDAN:  Severance payments. | 17:22:36 |
| 4 | MR. REDD:  I'm recalling that Judge | 17:22:38 |
| 5 | Copperthite's order stated that those were not | 17:22:42 |
| 6 | relevant and discoverable. | 17:22:44 |
| 7 | MR. JORDAN:  And I'll review -- I'll | 17:22:46 |
| 8 | review Judge Copperthite's order before I make a | 17:22:52 |
| 9 | final decision.  How about that?  I think you may | 17:22:54 |
| 10 | be right on that. | 17:22:58 |
| 11 | MR. REDD:  Page 52. | 17:22:58 |
| 12 | MR. JORDAN:  Yeah, I think you -- I think | 17:23:00 |
| 13 | you may be correct on that. | 17:23:01 |
| 14 | MR. REDD:  Employment agreements between | 17:23:03 |
| 15 | you and Compass Marketing returned to DiPaula, | 17:23:05 |
| 16 | severance agreement between you and Compass | 17:23:08 |
| 17 | Marketing about DiPaula, all documents that refer, | 17:23:12 |
| 18 | reflect, or relate to any severance payments or | 17:23:16 |
| 19 | other post-employment payments you received from | 17:23:19 |
| 20 | or on behalf of Compass Marketing, all -- the | 17:23:20 |
| 21 | motion to quash was granted as to all of those | 17:23:23 |
| 22 | issues.  Mr. DiPaula's motion was granted in full. | 17:23:27 |

| | | |
|---|---|---|
| 1 | I don't know why -- | 17:23:30 |
| 2 | MR. JORDAN:  Again, again -- | 17:23:34 |
| 3 | MR. REDD:  Because his name is mentioned | 17:23:35 |
| 4 | in an e-mail wouldn't make it, you know, relevant | 17:23:37 |
| 5 | through Mr. White. | 17:23:40 |
| 6 | MR. JORDAN:  Again, Justin, I think | 17:23:41 |
| 7 | you're correct. | 17:23:45 |
| 8 | MR. STERN:  I'll be happy to illustrate | 17:23:46 |
| 9 | it in the brief to the Court. | 17:23:51 |
| 10 | MR. REDD:  Yeah, that reminds me.  You | 17:23:52 |
| 11 | said you have a pile of cases that show that I'm | 17:23:55 |
| 12 | wrong.  I've offered to look over those and, you | 17:23:57 |
| 13 | know, I guess you're not going to be giving | 17:24:01 |
| 14 | anything away.  Just send me the citations, I'll | 17:24:04 |
| 15 | read them if you want me to. | 17:24:07 |
| 16 | MR. STERN:  199 F.R.D 553. | 17:24:08 |
| 17 | MR. REDD:  Hold on.  What's the name of | 17:24:20 |
| 18 | the case? | 17:24:25 |
| 19 | MR. STERN:  Behler, B-E-H-L-E-R, V. | 17:24:25 |
| 20 | Hamlin. | 17:24:30 |
| 21 | MR. JORDAN:  Is it 553? | 17:24:31 |
| 22 | MR. STERN:  5 -- yeah, 199 F.R.D 553. | 17:24:33 |

| | |
|---|---|
| 1  That's District of Maryland. | 17:24:38 |
| 2          MR. JORDAN:  Anything else? | 17:24:39 |
| 3          MR. STERN:  2020 U.S. District Court -- | 17:24:47 |
| 4          MR. REDD:  Can you have someone in your | 17:24:47 |
| 5  office e-mail the cites?  I'm having trouble -- | 17:24:49 |
| 6          MR. JORDAN:  Yeah, that probably -- that | 17:24:53 |
| 7  probably makes more sense. | 17:24:55 |
| 8          MR. STERN:  That's fine. | 17:24:56 |
| 9          MR. JORDAN:  Yeah. | 17:24:56 |
| 10         MR. REDD:  I appreciate it.  You're a | 17:24:56 |
| 11  fast talker, Steve.  It's hard to write. | 17:24:58 |
| 12         MR. STERN:  I'm originally from New York. | 17:25:01 |
| 13  I have that and I'm proud of that.  I haven't lost | 17:25:04 |
| 14  that part of my heritage. | 17:25:07 |
| 15         MR. REDD:  All right.  I've tried to | 17:25:08 |
| 16  address everything we could address today.  Is | 17:25:13 |
| 17  there anything else? | 17:25:16 |
| 18         MR. STERN:  I think that is all.  Well, | 17:25:16 |
| 19  we -- you want to try to do a quick call?  The | 17:25:20 |
| 20  other thing that I know we have to circle back on | 17:25:22 |
| 21  I guess while the three of us are on the line | 17:25:26 |
| 22  right now, we don't have to be -- | 17:25:28 |

| | | |
|---|---|---|
| 1 | MR. REDD:  Well, we can be off the record | 17:25:28 |
| 2 | for Michael White's -- | 17:25:28 |
| 3 | MR. STERN:  We can be off the record. | 17:25:28 |
| 4 | MR. REDD:  -- deposition; right? | 17:25:28 |
| 5 | MR. STERN:  Yeah, why don't we be off the | 17:25:28 |
| 6 | record for this. | 17:25:28 |
| 7 | THE COURT REPORTER:  Okay. | 17:25:28 |
| 8 | MR. JORDAN:  Before we go off -- wait. | 17:25:28 |
| 9 | Before we go off the record, how much time have we | 17:25:33 |
| 10 | expended on the deposition? | 17:25:36 |
| 11 | MR. STERN:  All this time is not | 17:25:38 |
| 12 | attributed to me. | 17:25:41 |
| 13 | MR. JORDAN:  All this time is -- this is | 17:25:41 |
| 14 | Michael White's deposition.  All of this time is | 17:25:43 |
| 15 | attributed to you and me. | 17:25:46 |
| 16 | MR. STERN:  No, it's not.  You can't be | 17:25:47 |
| 17 | asking questions -- | 17:25:49 |
| 18 | MR. JORDAN:  Absolutely I can.  You get | 17:25:50 |
| 19 | seven hours to -- | 17:25:52 |
| 20 | MR. STERN:  Not for me. | 17:25:52 |
| 21 | MR. JORDAN:  The witness does not have to | 17:25:53 |
| 22 | sit for more than seven hours.  Okay?  And if | 17:25:59 |

| | | |
|---|---|---|
| 1 | you -- if you call the witness, then it's your | 17:26:01 |
| 2 | seven hours. | 17:26:03 |
| 3 | MR. STERN:  Well, when you consider all | 17:26:03 |
| 4 | the objections -- | 17:26:05 |
| 5 | MR. JORDAN:  Anyway, Charlie, how much | 17:26:06 |
| 6 | time have we expended -- | 17:26:08 |
| 7 | VIDEO TECHNICIAN:  I have 6.03 on the | 17:26:10 |
| 8 | video portion that was going to 5:11. | 17:26:12 |
| 9 | MR. JORDAN:  So you've got about five | 17:26:17 |
| 10 | hours left, Stephen. | 17:26:18 |
| 11 | MR. STERN:  We'll address that with the | 17:26:20 |
| 12 | Court as well. | 17:26:24 |
| 13 | MR. REDD:  I'm sure the videographer will | 17:26:25 |
| 14 | be happy to give you each a breakdown of how long | 17:26:29 |
| 15 | both were questioning.  I'm not getting into that. | 17:26:31 |
| 16 | Okay.  Anything else? | 17:26:33 |
| 17 | MR. STERN:  We're off the record. | 17:26:33 |
| 18 | (A discussion was held off the record). | 17:26:42 |
| 19 | VIDEO TECHNICIAN:  The time is 5:27 p.m. | 17:26:44 |
| 20 | We're on the record. | 17:27:09 |
| 21 | The time is 5:27 p.m.  This concludes | 17:27:13 |
| 22 | today's deposition.  We are off the record. | 17:27:18 |

1          MR. STERN:  As far as the specific order,          17:27:20

2     we are going to want video, we are going to want          17:29:41

3     the transcript in electronic searchable format          17:29:44

4     where we can get a printout, mini and full, with          17:29:48

5     the exhibits attached.  I will get back to you on          17:29:50

6     timing probably tomorrow.          17:29:54

7          MR. JORDAN:  We will take a copy of the          17:29:56

8     transcript only in electric form only.          17:30:01

9          AV TECHNICIAN:  And Mr. Redd?          17:30:04

10          MR. REDD:  I will get the same order that          17:30:04

11     Mr. Stern is getting, please.          17:30:16

12          AV TECHNICIAN:  All right.          17:30:19

13          (Off the record at 5:31 p.m.)          17:30:20

14

15

16

17

18

19

20

21

22

```
1              ACKNOWLEDGEMENT OF DEPONENT

2    I, MICHAEL R. WHITE, do hereby acknowledge that I

3    have read and examined the foregoing testimony and

4    the same is a true, correct and complete

5    transcription of the testimony given by me and any

6    corrections appear on the attached Errata Sheet

7    signed by me.

8

9

10   _____        _____

11   (DATE)                      (SIGNATURE)

12

13

14

15

16

17

18

19

20

21

22
```

1    CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

2        I, Cynthia A. Whyte, the officer before whom

3    the foregoing deposition was taken, do hereby

4    certify that the foregoing transcript is a true

5    and correct record of the testimony given; that

6    said testimony was taken by me stenographically

7    and thereafter reduced to typewriting under my

8    supervision; that reading and signing was

9    requested; and that I am neither counsel for,

10   related to, nor employed by any of the parties to

11   this case and have no interest, financial or

12   otherwise, in its outcome.

13            IN WITNESS WHEREOF, I have hereunto set

14   my hand and affixed my notarial seal this 9th day

15   of December, 2021.

16   My commission expires:

17   October 30, 2022

18

19   _____

20   CYNTHIA A. WHYTE

21   NOTARY PUBLIC IN AND FOR THE

22   STATE OF MARYLAND

## A

**a-month**
280:3
**ability**
19:9, 268:5
**able**
17:5, 39:10,
58:14, 80:20,
86:11, 207:18,
229:11, 231:3,
234:2, 286:4,
286:20, 288:2,
288:3, 288:15,
289:7, 289:18,
293:16, 294:4,
295:5, 295:10,
295:22, 296:5,
296:22, 297:5,
297:11, 297:14,
297:21, 298:6,
298:8, 305:5
**above**
89:20, 199:17,
226:14, 260:10,
267:7
**absolutely**
267:5, 282:4,
324:18
**accept**
101:18, 157:19
**acceptable**
114:20
**accepting**
114:20, 219:5
**access**
79:17, 80:20,
83:10, 83:18,
83:20, 84:1,
84:6, 86:15,
93:5, 93:20,
95:2, 95:4,
95:16, 99:22,
101:12, 137:12,
145:3, 229:11,
233:5, 233:6,
285:9, 286:17,
286:20, 288:15,

289:18, 290:2,
290:4, 290:8,
290:11, 290:14,
290:17, 290:21,
291:3, 291:4,
292:21, 294:2,
297:5, 299:2,
299:9, 301:6,
301:7, 301:12,
303:15, 306:22
**accessed**
83:11, 93:18,
94:18, 95:14,
97:17, 289:21,
299:5, 299:7,
299:13, 300:22,
301:2, 305:16,
306:2
**accessing**
93:9, 97:18,
98:6, 103:11,
137:12, 287:11,
293:3
**accompanied**
103:15
**according**
207:4, 207:8
**account**
7:17, 85:11,
85:13, 85:22,
86:13, 86:16,
94:7, 94:13,
94:15, 94:19,
95:3, 95:8,
99:20, 178:20,
179:5, 179:9,
179:20, 180:4,
181:19, 181:22,
182:2, 185:4,
185:14, 186:15,
186:19, 187:4,
188:16, 188:19,
188:21, 189:2,
189:6, 189:9,
190:19, 191:7,
191:9, 191:10,
191:14, 191:17,
191:20, 192:2,

192:6, 192:14,
192:18, 193:3,
193:7, 193:11,
193:14, 193:17,
193:19, 193:22,
194:18, 194:22,
195:13, 195:15,
195:17, 196:12,
197:7, 197:8,
197:12, 227:13,
227:21, 227:22,
228:4, 228:10,
228:21, 229:2,
229:12, 252:8,
286:18, 287:18,
287:21, 288:1,
288:19, 288:20,
288:22, 289:1,
289:7, 289:10,
289:13, 289:16,
291:3, 291:15,
292:4, 294:4,
295:19, 303:17
**accountability**
156:14
**accounts**
95:4, 98:7,
180:2, 180:7,
189:11, 189:12,
189:21, 190:4,
190:8, 216:6,
216:7
**accurate**
118:17, 122:18,
123:10, 123:14,
123:18, 134:9,
134:18, 135:8,
142:20, 158:5,
222:10, 222:12,
223:18, 223:20,
225:2, 225:10
**accusations**
151:7
**accusing**
315:13
**acknowledge**
187:15, 187:16,
187:18, 188:1,

196:4, 203:8,
212:20, 213:8,
218:20, 219:8,
223:22, 314:3,
327:2
**acknowledged**
197:21
**acknowledgement**
327:1
**acknowledges**
267:11
**acknowledging**
131:18, 194:13,
205:15, 219:9,
224:2, 315:6
**across**
224:22
**action**
191:20, 192:2,
192:6, 192:14,
193:3, 193:7,
193:11, 193:16
**actions**
126:13
**acts**
137:7, 270:6
**actual**
73:5, 236:2
**actually**
58:17, 77:19,
78:14, 85:1,
86:1, 94:12,
106:11, 142:12,
206:15, 310:13
**adams**
207:6, 244:17,
265:1, 265:16,
265:18, 270:21,
270:22, 271:4,
271:16, 272:8,
272:12, 273:1,
273:3, 273:15
**addendum**
120:9
**addition**
155:22, 156:3,
176:9, 221:20,
294:9

**additional**
135:17, 279:8,
305:8, 309:10,
310:9
**addressed**
231:4, 231:8,
238:2
**addresses**
225:14, 226:7,
226:9, 226:15
**administrative**
208:18, 209:13,
210:1, 255:17
**administrator**
286:21, 288:18,
288:21, 290:6,
290:8, 293:17,
294:3, 295:6,
295:12, 295:18,
296:2, 296:8,
296:13, 296:15,
296:18, 297:3,
297:7, 298:2,
298:12, 301:11,
303:20, 305:15,
305:22, 306:10,
306:17, 307:1
**administrators**
288:14
**advise**
251:15
**advised**
138:2, 209:19,
316:11
**adviser**
20:15
**advising**
163:21
**advisory**
251:13
**affidavit**
6:16, 108:17,
108:21, 109:3,
110:1, 110:16,
130:20, 132:9
**affixed**
328:14
**afield**
20:5, 122:4,

156:17, 171:1,
291:11, 295:14,
318:10
**after**
21:14, 44:19,
80:11, 81:10,
83:3, 97:19,
97:20, 98:7,
111:21, 164:11,
164:19, 164:22,
165:3, 165:7,
169:16, 194:17,
199:9, 199:10,
232:6, 251:15,
272:10, 272:12,
273:1, 301:16
**afterwards**
195:8, 232:15,
283:12
**again**
23:17, 28:3,
30:7, 37:13,
40:15, 42:7,
42:21, 43:16,
45:22, 47:12,
52:19, 57:21,
71:19, 77:6,
85:18, 90:15,
91:20, 122:3,
124:19, 134:16,
142:7, 146:8,
148:20, 152:2,
158:13, 167:20,
176:13, 196:4,
217:2, 227:8,
227:16, 241:11,
244:4, 258:5,
260:11, 264:7,
289:5, 294:18,
295:14, 301:4,
301:15, 302:21,
305:12, 307:18,
311:21, 312:14,
313:7, 317:7,
322:2, 322:6
**against**
21:1, 21:7,
21:10, 23:10,

27:9, 28:5,
28:21, 29:4,
51:21, 64:21,
65:7, 68:17,
68:22, 110:9,
113:18, 127:7,
135:19, 137:7,
151:7, 155:4,
171:3
**agent**
212:10, 212:13
**ago**
304:4, 319:11
**agree**
99:20, 108:3,
131:11, 131:21,
155:19, 159:6,
173:3, 188:2,
198:4, 198:5,
205:10, 205:15,
207:22, 212:21,
263:18, 280:14,
320:5
**agreed**
135:21
**agreeing**
113:4
**agreement**
8:20, 9:12,
42:1, 42:15,
44:13, 44:15,
48:2, 58:12,
58:16, 62:1,
62:3, 62:13,
63:3, 63:6,
63:17, 76:17,
77:1, 77:2,
77:3, 77:12,
77:15, 77:20,
78:3, 78:5,
79:18, 80:5,
80:18, 98:5,
114:17, 137:10,
144:16, 194:12,
206:5, 206:20,
207:6, 235:19,
239:22, 240:21,
241:21, 242:21,

243:9, 243:21,
244:11, 244:17,
247:14, 247:15,
265:11, 266:2,
266:12, 271:5,
271:10, 271:17,
272:3, 272:8,
272:12, 273:4,
273:9, 273:13,
273:16, 309:15,
321:16
**agreements**
51:14, 79:5,
79:11, 79:14,
80:21, 84:19,
264:17, 265:19,
310:10, 320:21,
320:22, 321:14
**ahead**
25:3, 29:8,
30:15, 49:1,
49:18, 51:11,
51:18, 55:14,
56:3, 63:10,
65:2, 78:1,
87:3, 96:2,
100:2, 109:19,
153:18, 168:19,
175:12, 180:14,
180:15, 182:14,
183:11, 184:1,
184:20, 186:11,
187:1, 203:10,
216:18, 243:15,
255:4, 262:18,
263:3, 281:13,
284:6, 295:3,
296:20, 297:10,
299:18, 302:19,
304:8, 305:11,
306:12, 308:8
**ahold**
36:9
**aimed**
154:10
**al**
265:2
**albeit**
243:9

alert
251:6
allegation
279:6, 279:14,
280:6
allegations
99:7, 112:19,
135:19
alleged
55:17, 58:12,
58:16, 59:4
alleging
26:18
allowing
100:22, 112:7
allows
111:20
alone
104:10
already
20:5, 33:4,
33:6, 128:21,
129:16, 129:22,
130:2, 190:12,
194:18, 207:5,
216:17, 218:22,
284:3, 293:1,
303:4, 303:22,
304:10, 304:12,
311:16, 311:18,
313:6, 319:19,
320:2
also
4:11, 14:21,
29:17, 34:20,
70:2, 88:9,
113:14, 121:18,
122:8, 128:17,
133:1, 136:19,
142:6, 172:13,
184:3, 190:18,
200:8, 216:15,
230:2, 251:7,
254:6, 265:3,
297:11, 306:9,
311:15
altered
236:15, 248:12

always
45:1, 67:22,
88:14, 98:1,
110:19, 110:21,
111:20, 125:21,
127:4
american
199:5, 201:11,
201:12, 201:14,
201:17, 201:21,
202:3, 202:7,
202:18
among
144:20
amount
17:17, 177:9,
178:1, 197:14,
198:12, 198:20,
199:6, 200:3
amounts
256:15, 278:16
ample
129:16
annapolis
3:16, 182:3,
182:22, 183:9,
184:5, 191:16,
197:9, 208:21,
214:16, 215:15,
215:19, 216:21,
220:3, 221:10,
242:3, 242:6,
277:19
annoying
175:10
annual
8:4, 8:6, 8:8,
8:11, 212:6
annualized
210:1
anonymous
146:22, 147:6,
152:10, 153:8,
153:14, 153:19,
154:8, 154:10,
156:19, 156:20,
157:2, 157:17,
158:18, 158:21

another
14:10, 46:20,
88:15, 97:16,
161:10, 163:16,
168:17, 171:19,
190:17, 223:1,
230:1, 248:10,
251:10, 320:1
answered
24:22, 25:17,
26:3, 26:10,
26:11, 26:12,
26:15, 27:13,
28:6, 28:7,
28:18, 42:20,
64:22, 68:4,
69:1, 138:2,
164:4, 165:18,
165:20, 170:6,
184:3, 263:9,
263:14, 281:2,
281:12, 289:8,
300:15, 301:14,
303:22, 304:4,
304:11, 305:10,
305:19
answering
14:13, 58:22,
99:17, 283:8
answers
14:6, 20:10,
100:8
anybody
216:14, 271:2,
272:8, 282:5
anyone
11:2, 11:8,
19:12, 19:16,
19:18, 40:20,
46:9, 47:18,
61:5, 68:8,
86:15, 95:4,
107:1, 110:19,
142:1, 148:14,
171:4, 191:19,
192:1, 192:16,
193:2, 193:6,
193:10, 193:15,

193:20, 194:1,
209:1, 246:5,
262:3, 273:15,
277:21, 296:6,
298:3
anyone's
293:19, 294:4,
297:1, 297:12
anything
15:22, 18:5,
43:22, 63:2,
70:15, 91:12,
116:17, 126:12,
131:12, 131:13,
143:18, 147:8,
148:4, 154:2,
154:6, 155:1,
156:5, 156:15,
157:3, 157:7,
157:9, 164:22,
168:14, 172:16,
179:2, 193:14,
200:10, 207:2,
207:12, 224:13,
269:20, 270:13,
273:9, 275:19,
277:8, 277:15,
305:8, 315:13,
322:14, 323:2,
323:17, 325:16
anyway
170:16, 325:5
apologies
161:20
apologize
118:3, 269:9
apologized
53:14
appear
185:21, 327:6
appeared
261:21
appears
51:13, 69:18,
106:10, 106:12,
106:18, 108:19,
110:2, 122:9,
134:3, 140:18,

143:3, 181:20,
182:19, 213:22,
219:22, 222:14,
223:8, 239:9,
243:10, 243:16
**applicant**
120:4, 120:5
**application**
6:19, 115:13,
115:20, 116:1,
117:9, 117:12,
117:19, 118:5,
118:12, 118:15,
120:1
**applies**
124:17, 194:3,
194:8
**apply**
100:20, 124:16
**appointed**
17:2
**appraiser**
154:4
**appreciate**
127:12, 136:10,
136:13, 156:1,
187:14, 232:18,
310:21, 323:10
**appropriate**
14:3, 28:1,
68:13, 68:14,
101:18, 111:11,
129:17, 129:18,
137:6, 308:18,
317:13
**approval**
192:16
**approve**
199:1
**approximately**
13:13, 13:19,
16:6, 17:8,
17:10, 17:16,
17:20, 150:2,
150:3, 150:4,
266:1, 272:15,
279:10
**approximation**
17:13

**april**
114:12, 117:10,
117:13
**architect**
276:13, 276:18,
276:21, 277:3,
277:9, 277:13,
278:15
**architects**
276:11
**area**
25:8, 26:5,
317:5
**areas**
109:11, 152:14,
152:19, 205:11,
243:12, 309:11,
316:22
**argue**
129:2
**arguing**
113:4
**argument**
206:10
**argumentative**
64:3, 64:13,
142:15
**around**
62:21, 152:7,
164:17, 166:17,
167:7, 186:5,
257:1, 314:22
**arrangement**
142:10, 174:17,
175:6
**article**
242:14, 243:4
**aside**
98:11
**asked**
15:18, 23:3,
24:21, 26:2,
26:9, 26:11,
26:20, 27:12,
28:6, 28:17,
29:14, 29:17,
30:18, 33:1,
33:5, 41:16,

41:20, 41:22,
42:1, 52:7,
54:16, 55:8,
55:12, 59:22,
62:6, 62:7,
62:8, 63:20,
64:22, 67:21,
68:3, 69:1,
73:16, 79:13,
79:15, 84:3,
112:12, 113:7,
115:6, 127:12,
131:1, 147:13,
155:13, 158:17,
164:4, 168:1,
170:5, 175:9,
184:3, 194:4,
194:8, 228:20,
229:1, 262:22,
263:9, 263:14,
273:9, 281:2,
281:12, 282:20,
283:1, 283:2,
284:3, 289:8,
291:19, 292:9,
293:1, 293:21,
294:11, 294:12,
294:16, 294:18,
299:9, 300:15,
301:13, 304:3,
305:9, 305:18,
312:11, 313:18,
314:2, 316:22,
317:1, 319:8
**asking**
14:5, 14:15,
15:7, 26:7,
28:1, 32:21,
40:8, 43:9,
43:11, 43:20,
48:12, 48:20,
52:8, 52:22,
69:3, 73:17,
87:1, 97:3,
98:15, 98:18,
99:22, 119:20,
124:2, 124:11,
125:2, 125:9,

125:13, 134:14,
137:22, 146:13,
147:7, 152:12,
153:4, 156:1,
170:21, 192:12,
203:12, 203:16,
224:18, 262:6,
274:12, 280:14,
280:15, 293:7,
296:11, 300:17,
302:22, 303:14,
324:17
**asks**
68:8
**aspect**
98:1
**assertion**
130:20
**assigned**
209:13
**assist**
282:6
**assistance**
29:3, 29:7
**assistant**
296:13, 296:14,
307:1
**assisting**
127:5, 127:7,
137:9
**associate**
47:1
**associated**
46:17, 46:18,
227:12
**assume**
15:1, 15:8,
15:17, 260:2
**assumes**
286:6, 294:14,
294:15
**assuming**
198:2, 207:13
**assumption**
207:14, 308:7
**assumptions**
176:7
**attach**
80:4, 80:17,

121:1, 121:18,
122:12, 123:6,
144:21
**attached**
5:10, 6:2, 7:2,
8:2, 9:2, 34:4,
50:6, 56:9,
66:9, 69:16,
69:19, 70:2,
70:11, 70:14,
70:16, 74:12,
75:15, 75:22,
76:1, 78:11,
82:4, 82:10,
85:1, 88:7,
105:6, 107:12,
108:14, 115:17,
120:22, 121:6,
122:15, 123:8,
123:19, 124:13,
125:1, 133:12,
138:10, 138:15,
140:7, 141:18,
142:21, 143:4,
143:19, 144:5,
145:4, 145:8,
162:10, 169:6,
172:5, 177:6,
178:17, 191:6,
195:11, 196:21,
213:13, 217:21,
220:21, 223:6,
226:21, 230:14,
231:6, 235:19,
239:14, 240:18,
248:3, 250:5,
257:11, 266:10,
267:14, 267:15,
267:19, 282:10,
319:4, 326:5,
327:6
**attaching**
138:16, 138:18,
138:20
**attachment**
7:7, 71:6,
76:7, 76:16,
76:18, 83:15,

84:7, 108:6,
239:10, 239:11,
239:14, 239:21,
240:11, 257:8,
284:20, 313:3,
313:17
**attachments**
6:11, 7:11,
66:14, 71:4,
76:10, 76:13,
108:6, 143:2,
143:20, 239:17,
318:15, 319:1,
319:12
**attempt**
43:6
**attempting**
112:2
**attend**
51:21, 121:11
**attention**
127:19, 128:12,
197:11
**attorney**
22:9, 22:13,
22:17, 22:20,
23:2, 23:3,
23:6, 23:14,
23:19, 23:20,
24:10, 24:20,
35:6, 35:8,
35:11, 35:16,
35:21, 37:2,
37:8, 37:15,
39:12, 54:7,
54:13, 54:22,
60:7, 60:12,
69:8, 72:9,
72:10, 72:12,
72:14, 72:16,
72:19, 73:14,
74:3, 74:6,
94:4, 157:15,
251:12
**attorneys**
63:22, 64:11,
103:6
**attributed**
324:12, 324:15

**audio**
11:8, 11:17
**august**
37:17, 38:13,
66:13, 171:22,
172:8, 248:14,
248:17, 282:10,
290:15
**authentic**
175:15
**authenticate**
319:6
**author**
245:9
**authority**
188:18, 188:20,
191:19, 272:1
**authorization**
193:14, 299:19,
299:21, 299:22,
300:6, 300:7
**authorize**
107:1, 192:1,
192:4, 253:9
**authorized**
19:12, 19:15,
20:16, 188:15,
206:13, 253:6,
278:19, 299:15
**automatically**
90:12
**av**
4:15, 233:20,
233:22, 234:3,
326:9, 326:12
**availability**
320:1
**available**
313:18
**avenue**
182:22, 183:8,
184:5, 197:8,
214:15, 214:21,
215:8, 215:15,
220:3, 221:9
**avenues**
205:20
**average**
17:13

**avoid**
14:11
**aware**
16:3, 19:8,
20:19, 29:9,
79:12, 86:10,
86:17, 114:3,
114:5, 147:20,
148:7, 148:8,
148:12, 149:4,
165:13, 166:3,
166:9, 216:5,
228:11, 229:15,
229:19, 253:17,
253:18, 257:4,
261:12, 261:16
**away**
111:13, 322:14
**awkward**
269:3
**awkwardly**
75:8

---

**B**

**b**
100:22, 101:14
**b-e-h-l-e-r**
322:19
**back**
13:22, 20:9,
25:6, 27:7,
27:11, 38:1,
86:19, 88:14,
97:9, 100:11,
101:8, 102:11,
104:9, 111:13,
114:12, 115:6,
115:12, 120:14,
126:16, 130:15,
137:20, 139:1,
145:20, 147:18,
150:3, 157:11,
157:18, 157:22,
159:7, 180:21,
185:1, 185:20,
188:8, 191:12,
195:7, 198:15,
201:7, 207:21,

212:7, 218:2,
249:1, 251:10,
256:10, 259:14,
276:13, 282:15,
294:20, 309:1,
309:13, 310:1,
310:2, 312:18,
313:19, 313:22,
317:1, 317:3,
317:6, 317:11,
319:7, 319:18,
319:21, 323:20,
326:5

**back-and-forth**
114:14

**background**
20:4, 208:2,
234:22

**bad**
108:2, 175:9

**baltimore**
4:8

**bank**
7:16, 7:18,
173:16, 178:13,
178:20, 178:21,
178:22, 179:5,
179:9, 179:10,
179:19, 180:2,
180:4, 180:7,
180:16, 183:14,
183:17, 184:13,
184:14, 185:4,
185:13, 185:20,
186:14, 186:18,
187:4, 188:15,
188:19, 189:2,
189:5, 189:16,
189:17, 189:18,
190:19, 191:7,
191:8, 191:9,
192:2, 192:6,
192:14, 193:3,
193:7, 193:11,
193:17, 193:19,
197:15, 215:20,
216:3, 216:6,
220:10

**banker**
20:14

**banks**
184:9, 189:15

**bar**
224:22

**bare**
128:1

**based**
46:1, 54:22

**basis**
55:3, 93:9,
111:17, 118:4,
143:18, 146:13,
147:11, 157:5,
157:7, 174:2,
206:12, 210:1,
254:8, 304:20,
316:8, 319:17,
319:20

**bateman**
4:13, 11:7,
103:16

**bates**
33:18, 33:20,
39:14, 74:10,
161:14, 161:17

**bates-labeled**
66:11, 69:20,
78:9

**bates-numbered**
56:6

**bcc**
287:8

**bcc'd**
313:8, 313:13

**beard**
3:14

**bearing**
257:17

**bears**
239:2

**beating**
142:4

**became**
18:6, 18:20,
19:3

**because**
23:20, 32:1,

53:14, 54:1,
62:15, 63:20,
67:21, 77:10,
98:2, 100:10,
107:21, 137:6,
155:17, 180:9,
181:10, 185:7,
185:11, 200:16,
202:16, 204:18,
207:5, 217:9,
234:7, 249:4,
249:16, 278:1,
278:10, 282:15,
284:12, 289:5,
300:4, 300:7,
300:11, 300:13,
300:16, 300:19,
302:9, 309:9,
312:16, 313:1,
318:20, 322:3

**become**
16:22, 17:22,
169:5

**becoming**
18:2

**been**
10:15, 12:14,
12:17, 17:11,
17:17, 20:20,
21:5, 26:20,
27:12, 32:7,
33:1, 66:10,
101:9, 104:18,
105:3, 105:7,
105:22, 106:1,
106:5, 115:19,
124:12, 124:13,
128:9, 136:11,
138:13, 147:1,
150:6, 152:9,
155:2, 157:1,
162:12, 164:9,
172:6, 178:14,
197:22, 204:3,
204:6, 205:18,
213:14, 217:11,
223:8, 224:19,
227:17, 227:20,

228:2, 228:8,
232:7, 234:7,
243:8, 245:15,
245:22, 274:6,
296:3, 297:14,
301:17, 303:4,
304:10, 305:4,
305:5, 305:9,
310:19, 311:15,
311:16, 313:5,
314:1, 316:9,
316:10, 316:22,
319:19, 320:2

**before**
2:12, 10:21,
12:15, 13:22,
17:5, 21:13,
44:19, 45:2,
64:8, 71:11,
71:13, 94:17,
100:12, 105:16,
109:11, 112:20,
118:12, 123:16,
128:5, 129:3,
129:7, 137:1,
141:11, 141:22,
143:4, 169:16,
173:22, 190:15,
231:16, 231:21,
232:3, 248:11,
263:1, 269:8,
272:8, 272:10,
283:3, 319:14,
320:12, 320:13,
320:15, 321:8,
324:8, 324:9,
328:2

**beforehand**
232:9

**began**
62:15, 62:18

**beginning**
32:10, 158:17,
242:10, 301:16,
317:6

**behalf**
3:3, 3:11, 4:3,
10:10, 20:17,

31:1, 91:8,
91:12, 101:13,
117:13, 118:6,
118:12, 120:2,
219:15, 221:18,
222:4, 254:15,
256:6, 272:1,
293:20, 294:6,
314:15, 321:20
**behavior**
205:18
**behler**
322:19
**being**
16:4, 20:22,
40:13, 70:15,
81:21, 101:18,
112:11, 113:7,
113:12, 131:6,
136:20, 157:19,
157:20, 158:8,
163:21, 164:20,
168:1, 171:1,
175:9, 181:12,
184:7, 194:4,
194:8, 225:7,
231:6, 238:8,
253:18, 254:10,
264:12, 265:14,
265:15, 294:11,
294:16, 319:17
**belabor**
137:22
**believed**
53:15, 76:17
**belongs**
267:11
**below**
38:13, 57:4,
163:14, 163:15,
235:14, 238:1
**bender**
135:14
**beneath**
135:12
**bernie**
45:2, 45:12,
45:17, 46:10,

46:12, 46:13,
46:15, 46:21,
46:22, 47:2,
47:5, 47:8
**besides**
18:18, 20:13,
125:17, 128:1,
208:7, 224:12,
297:5, 304:12,
304:20
**best**
14:11, 14:12,
14:14, 196:15,
222:18, 252:13,
252:14, 254:1,
269:13, 307:3
**bet**
153:3
**better**
36:2
**between**
98:3, 100:18,
153:3, 153:5,
174:17, 175:6,
190:8, 214:11,
241:21, 259:22,
287:3, 302:21,
306:1, 321:14,
321:16
**beyond**
11:3, 54:8,
176:11
**bias**
204:21
**big**
166:22, 167:8,
207:17
**bill**
201:18, 252:5
**bills**
164:13, 201:16,
202:17, 229:1,
254:6
**binding**
272:5
**bit**
13:20, 35:22,
49:3, 50:20,

59:3, 74:22,
75:1, 75:8,
78:13, 79:3,
96:22, 122:21,
139:4, 142:3,
161:18, 247:12,
250:8
**biweekly**
279:9, 279:17,
279:20, 281:5
**black**
37:2
**blank**
307:12, 307:14,
307:22, 308:4
**blind**
173:14
**blind-copied**
307:19
**block**
225:8
**blocked**
161:17
**blue**
38:5, 147:12,
222:6, 244:10
**board**
97:20, 125:4,
125:5, 165:15,
166:3, 166:5,
251:13, 266:6
**bond**
191:15
**booked**
251:7
**borrower**
6:19, 115:20
**boshea's**
22:9, 22:13,
22:17, 22:20,
23:2, 23:3,
23:6, 23:13,
23:19, 23:20,
53:5, 53:13,
53:16, 54:17,
55:17, 58:12,
58:16, 61:22,
62:3, 62:12,

76:17, 77:2,
97:8, 99:5,
106:7, 110:3,
122:5, 125:18,
127:3, 168:7,
171:2, 238:19,
238:21, 253:2,
256:6, 256:16,
257:5, 258:15,
261:13, 265:19,
266:2, 268:12,
281:15, 302:22
**both**
27:19, 27:20,
55:10, 130:6,
202:6, 313:4,
320:18, 325:15
**bottom**
74:22, 111:9,
117:3, 121:9,
166:14, 172:14,
191:13, 195:16,
219:18, 220:22,
221:3, 223:9,
223:11, 233:12,
241:3, 241:6,
241:7, 241:15,
243:11, 258:6
**bowman**
4:14, 10:9
**box**
120:3, 146:5,
147:7, 147:8,
148:2, 148:6,
160:7, 215:13,
297:13, 297:15,
298:7
**boxes**
298:10
**boy**
166:22, 167:8
**boys**
173:13
**break**
14:17, 87:13,
87:14, 87:17,
100:13, 101:5,
101:21, 102:1,

102:4, 143:11,
160:17, 217:9,
217:13, 231:19,
231:21, 231:22,
273:20
**breakdown**
325:14
**breaks**
316:11
**brief**
7:8, 129:13,
129:20, 140:13,
140:20, 141:4,
141:9, 142:21,
144:6, 144:22,
155:2, 281:22,
322:9
**briefly**
161:13, 310:16
**bring**
207:21, 233:17,
234:2, 247:12,
250:7, 282:18,
283:10
**bringing**
127:18
**bro**
37:18, 38:18,
259:4
**brother**
47:5, 57:6,
223:8, 237:13
**brought**
20:22, 21:6,
128:11
**bs**
174:5, 176:3
**buddy**
38:5, 38:7,
39:18, 41:7,
70:3
**building**
197:8, 214:16,
215:15, 220:3
**built**
276:14
**bunch**
14:5, 50:22,

173:15, 197:5,
234:8, 271:22,
319:15
**burden**
319:20, 320:3
**burdens**
319:22
**burn**
274:7
**business**
60:5, 64:16,
111:6, 111:14,
120:5, 120:6,
147:2, 179:21,
202:11, 242:3,
242:6, 267:8,
277:10
**businesses**
120:7
**butting**
304:7
**button**
233:13, 285:16
**buy**
207:3

---
### C
---
**c**
132:21
**c) (2**
144:13, 174:3
**cain**
89:9
**calculated**
97:5
**call**
10:22, 47:4,
54:6, 62:17,
319:15, 323:19,
325:1
**called**
23:3, 23:20,
62:15, 81:15,
116:19, 189:18
**calls**
24:2, 25:1,
186:20, 187:6,
216:11, 294:7

**came**
47:3, 47:7,
147:12
**can't**
27:19, 30:10,
40:4, 55:5,
55:9, 106:3,
136:5, 194:6,
206:22, 207:1,
215:5, 225:20,
226:12, 237:20,
241:6, 246:8,
251:22, 262:16,
284:12, 303:12,
304:18, 319:6,
324:16
**canceled**
83:18
**cannot**
84:5, 268:13,
278:3, 281:18
**capacity**
13:2, 16:16,
90:9, 91:1,
91:18, 91:21,
92:2
**capital**
189:19
**card**
178:12, 186:3,
186:14, 188:22,
189:2, 189:3,
189:4, 190:18,
190:21, 201:18,
201:22, 202:3,
202:7, 202:10,
202:13, 202:15,
202:18, 202:19,
228:13, 228:16,
228:17
**cards**
184:13, 201:19,
215:20, 220:7,
220:8, 220:9
**care**
189:7, 207:17,
207:18
**career**
12:21

**carolina**
146:6, 160:3,
160:9, 160:14
**carries**
149:4
**case**
1:7, 11:5,
20:6, 20:22,
29:11, 72:9,
97:4, 97:8,
99:4, 110:5,
110:11, 110:14,
110:17, 113:1,
113:7, 113:21,
114:9, 116:20,
120:15, 122:5,
122:9, 124:14,
125:19, 127:1,
128:4, 128:7,
128:12, 129:16,
130:2, 146:17,
146:20, 147:21,
152:15, 152:17,
157:4, 167:21,
168:14, 169:21,
171:2, 178:7,
179:3, 182:7,
183:4, 186:5,
208:8, 262:8,
270:22, 295:15,
303:2, 304:16,
313:5, 318:10,
319:16, 322:18,
328:11
**cases**
130:4, 322:11
**cashing**
200:2
**categories**
156:5, 309:14
**cause**
52:14
**caves**
251:7
**cc**
75:21, 79:7,
82:7, 87:7,
135:13, 162:15,

163:19
**ceased**
190:2
**cents**
199:6
**ceo**
279:7, 280:7,
280:9
**certain**
29:22, 55:22,
111:22, 112:8,
147:6, 148:11,
309:13
**certainly**
111:8, 114:21,
116:12, 126:7
**certificate**
7:19, 121:2,
121:4, 121:7,
121:9, 121:16,
121:20, 122:13,
122:15, 122:17,
122:18, 122:22,
123:8, 123:11,
123:14, 123:17,
123:19, 194:17,
328:1
**certificates**
6:21, 123:22,
124:3, 124:11
**certify**
118:14, 118:18,
317:18, 328:4
**certifying**
317:15
**cfeiss**
89:12
**chain**
5:16, 5:21,
6:7, 6:13, 7:6,
7:10, 7:12
**chairs**
164:14
**challenged**
110:21
**change**
73:13, 130:4,
239:16, 246:16,

246:22, 247:5
**changed**
248:12
**changes**
17:14
**characterization**
29:7, 43:13,
111:18, 112:5,
112:7, 126:12,
130:22, 131:12,
131:18, 158:4,
176:7, 176:16
**charlie**
4:14, 10:9,
274:7, 325:5
**check**
7:15, 84:13,
120:3, 176:22,
177:7, 177:12,
177:14, 177:17,
177:21, 178:2,
178:5, 181:14,
181:16, 181:21,
182:11, 182:17,
182:20, 183:1,
183:7, 183:13,
183:17, 183:18,
183:21, 184:4,
184:8, 185:3,
185:5, 185:8,
185:10, 185:12,
197:11, 197:13,
197:17, 198:11,
198:15, 198:17,
198:20, 199:2,
199:4, 199:5,
199:9, 199:10,
199:17, 199:19,
200:1, 200:2,
200:21, 201:6,
201:17, 251:6
**checking**
7:17, 181:18,
181:21, 182:1,
197:7
**checks**
7:21, 83:20,
84:1, 84:6,

85:5, 144:22,
145:4, 145:8,
164:18, 164:21,
165:2, 188:15,
188:18, 188:21,
189:7, 196:19,
197:6, 201:10,
201:12, 201:14
**chicago**
3:8, 251:11
**china**
205:4
**chip**
144:16, 148:18,
148:21, 149:5,
149:6, 149:10,
149:12, 320:20,
320:22
**choice**
127:9
**choose**
233:18
**choosing**
234:9
**chris**
89:8
**chuckling**
132:1
**cindy**
10:12, 65:14
**circle**
115:11, 157:22,
179:14, 181:15,
245:12, 323:20
**circled**
62:21
**circles**
186:5
**circling**
20:9, 145:20
**circulate**
66:1
**circulated**
147:1, 282:2
**citations**
322:14
**cite**
129:20

**cites**
323:5
**citizens**
16:14, 16:17
**city**
49:9, 160:9
**civil**
13:7, 13:9,
101:15, 147:21,
151:7
**claim**
146:22, 155:4,
199:11, 199:13,
201:7
**claims**
106:7, 110:3,
113:18, 116:20,
125:18, 126:2,
127:1, 127:3,
127:6, 128:3,
301:20, 302:22
**clarification**
104:22, 120:19,
130:17, 319:5
**clarify**
14:22, 15:7,
15:15, 15:19,
155:17, 230:9,
309:3, 312:18
**clark**
3:6
**classified**
255:16, 288:21
**clear**
14:22, 15:11,
83:22, 130:10,
131:6, 132:7,
155:14, 194:2,
213:1, 219:9,
283:7, 294:10,
294:12, 311:7,
313:4
**clearly**
36:21, 176:11,
205:12, 208:4
**clearwater**
241:22
**click**
244:8

clicking
249:2
client
54:7, 54:13,
54:22, 110:15,
130:18, 303:6
clock
101:22
close
234:1, 234:6,
264:13, 309:8,
320:15
closed
113:3, 195:17,
196:12, 196:16,
247:11, 282:16
closing
38:19, 197:12
club
9:9, 154:5,
249:11, 252:12,
253:3, 256:7
clue
161:10
coast
101:22
code
146:6
cohost
234:4
collaborate
126:1
collaborating
113:17
collaboration
98:4
colloquy
132:15
colonial
189:17
colony
189:17
color
38:5
columbia
9:9, 249:11
com
57:6, 59:6,

59:7, 66:13,
89:22, 92:21,
93:6, 93:10,
93:19, 94:1,
94:3, 94:7,
94:14, 94:19,
95:3, 95:5,
95:8, 95:11,
95:17, 99:22,
101:11, 137:5,
139:14, 162:16,
227:1, 227:14,
227:18, 227:22,
228:3, 228:9,
228:21, 229:2,
229:12, 230:4,
235:18, 237:15,
237:18, 238:2,
238:15, 249:10,
251:4, 257:14,
258:11, 286:13,
286:22, 287:21,
288:12, 289:3,
289:19, 289:22,
290:9, 290:12,
290:15, 290:18,
290:22, 291:5,
293:4, 293:18,
293:19, 294:3,
294:5, 295:7,
295:11, 296:1,
296:6, 297:1,
297:3, 297:8,
298:2, 298:4,
298:12, 298:13,
298:20, 299:3,
305:15, 306:1,
306:10, 306:18,
307:2
com's
295:19
comcast
93:16, 99:20
come
102:11, 114:16,
147:6, 206:4,
249:1, 285:9,
309:1, 309:13,

310:10, 313:19,
313:22, 317:6,
319:18
comes
310:1, 317:1
coming
38:6, 51:8,
87:20, 152:7,
200:13, 317:11
comment
114:7
commission
8:5, 8:7, 8:9,
8:12, 212:16,
212:18, 213:17,
214:2, 217:1,
218:11, 219:15,
220:17, 221:13,
221:16, 328:16
commitment
17:17
common
120:6
commonwealth
213:16, 214:7
communicated
150:9, 150:13,
150:22, 160:13,
276:8, 276:12,
276:18, 277:4
communicating
23:1, 113:12,
276:21
communication
21:5
communications
22:2, 22:4,
22:8, 22:20,
54:7, 54:13,
54:16, 54:22,
55:5, 81:5,
276:22, 277:7,
277:14
companies
18:9, 18:13,
18:16, 18:18,
154:9
company
11:6, 18:22,

19:2, 24:1,
24:11, 24:20,
26:8, 26:17,
64:1, 64:12,
90:13, 90:17,
90:19, 91:2,
91:5, 92:8,
92:11, 97:19,
98:18, 98:19,
99:8, 103:15,
109:7, 113:12,
113:18, 115:20,
126:2, 127:7,
137:7, 137:14,
142:1, 142:11,
142:13, 148:5,
151:20, 152:11,
157:17, 166:16,
167:11, 167:12,
167:14, 170:12,
174:18, 182:3,
201:5, 201:7,
201:8, 202:5,
205:20, 206:6,
206:7, 206:14,
206:15, 208:3,
208:13, 209:4,
209:7, 209:12,
209:16, 209:20,
210:8, 221:9,
221:19, 222:4,
223:14, 224:1,
226:7, 255:18,
256:1, 272:2
company's
180:8, 208:21,
214:17, 215:19,
215:21, 225:9,
225:11
comparable
244:1
compass@compassm-
arketinginc
162:16
compassmarketing
290:15
compassmarketing-
inc
92:21, 93:6,

93:10, 93:19,
94:7, 95:5,
95:8, 95:11,
99:22, 101:11,
137:5, 227:14,
227:18, 227:22,
228:3, 228:9,
228:21, 229:2,
286:22, 287:21,
288:12, 289:3,
290:9, 290:12,
290:18, 290:22,
291:5, 293:4,
293:18, 293:19,
294:3, 294:5,
295:7, 295:11,
295:19, 295:21,
296:1, 296:6,
297:1, 297:3,
297:8, 298:2,
298:4, 298:12,
298:13, 298:20,
299:3, 305:15,
306:1, 306:10,
306:18, 307:2
**compel**
145:13, 320:17,
320:19
**compensation**
99:6, 110:4,
178:6, 253:13,
256:17, 257:5,
261:14, 278:17,
303:1
**compete**
36:3, 36:22,
70:3
**competition**
8:22, 9:14,
240:1, 240:22,
266:14
**complaint**
146:17, 267:14,
267:19, 268:1
**complete**
76:21, 327:4
**completely**
158:5, 303:9

**comply**
280:1
**compound**
40:14, 67:3,
165:16, 295:1,
298:15
**computer**
34:22, 36:20,
163:9, 234:8,
266:19
**conceding**
317:13
**concern**
61:19
**concerned**
61:22
**concerning**
62:3, 267:6
**conclude**
113:6
**concludes**
325:21
**conclusion**
134:14, 271:22
**concoction**
98:3
**condo**
282:5
**conducted**
1:14, 2:1
**confer**
319:13
**confirm**
86:11, 104:8,
107:6, 236:17,
237:1, 237:2,
237:20, 261:11,
268:6, 281:3,
281:7, 281:14,
281:18
**confirmation**
319:3
**confirmed**
77:14, 77:17,
310:17
**confirming**
103:8
**conflate**
153:9

**confused**
192:8, 263:18
**confusing**
142:3, 175:16
**connect**
141:5, 157:3
**connected**
11:2, 103:10,
301:20
**connection**
12:3, 12:4,
12:11, 29:4,
41:21, 68:15,
68:21, 69:9,
103:18, 125:18,
126:6, 127:1,
128:1, 140:13,
146:20, 155:6,
158:21, 182:7,
183:4, 186:4,
192:2, 205:13,
207:19, 208:7,
302:21, 304:12
**connections**
11:8, 155:18
**consent**
165:5, 165:10,
165:11
**consider**
90:16, 90:18,
271:16, 325:3
**considered**
90:13
**considering**
251:10
**consistent**
136:11
**consumed**
16:1
**contact**
276:15
**contained**
82:11
**contains**
76:18, 224:6
**contend**
132:8
**contends**
137:10, 205:17

**contention**
86:18, 87:4,
110:22
**contentions**
87:2
**context**
12:19, 149:1
**contexts**
12:20
**continue**
13:22, 136:13,
196:1, 211:21,
250:9
**continues**
166:21
**continuing**
27:14, 69:4,
96:14, 157:21,
187:9, 187:15,
187:21, 188:5,
190:11, 194:3,
194:7, 194:19,
196:2, 197:20,
198:2, 203:7,
205:13, 208:14,
212:9, 212:18,
213:5, 216:17,
218:12, 218:16,
219:1, 221:21,
227:8, 227:9
**continuously**
18:21, 19:1
**contract**
37:1, 41:12,
43:2, 43:7,
43:10, 44:1,
44:20, 252:6,
270:22
**contradict**
130:19, 132:8
**contradiction**
131:12
**conversation**
14:9, 53:1,
62:19, 158:1,
159:8, 232:8,
232:15, 263:22,
264:2, 264:5,

**conversations**
21:16, 21:17,
58:18, 58:19,
264:11, 277:2
**cooperate**
126:1
**copied**
260:15
**copies**
7:21, 64:11,
73:14, 73:18,
74:1, 86:1
**copperthite's**
321:5, 321:8
**copy**
7:15, 43:2,
43:6, 43:10,
43:22, 44:20,
60:8, 62:6,
62:8, 63:15,
63:16, 70:2,
73:1, 73:6,
75:10, 77:12,
79:7, 81:2,
82:7, 83:12,
84:13, 87:7,
89:16, 89:18,
121:6, 122:15,
122:18, 123:8,
123:10, 123:14,
123:18, 134:1,
134:9, 134:18,
135:8, 135:13,
135:14, 139:7,
140:12, 142:20,
145:7, 162:15,
163:19, 267:16,
307:12, 307:14,
308:1, 308:4,
312:16, 326:7
**corner**
139:12, 139:20,
143:9, 172:9,
172:19, 173:8,
195:12, 241:7,
241:15, 285:19,

264:8, 272:15,
272:21

286:11
**corporate**
130:19, 132:7
**corporation**
8:5, 8:7, 8:9,
8:12, 212:15,
213:16, 214:2,
217:1, 218:10,
219:14, 220:17,
221:13, 221:16
**correct**
19:4, 21:2,
29:12, 29:18,
30:1, 46:3,
46:5, 73:15,
76:7, 76:8,
84:8, 89:14,
107:13, 108:8,
115:15, 125:14,
125:15, 132:10,
143:17, 146:17,
158:8, 159:3,
163:22, 177:4,
180:6, 183:20,
185:22, 194:11,
214:8, 215:16,
218:9, 222:22,
225:15, 225:19,
230:12, 237:10,
237:19, 238:10,
239:6, 243:9,
243:13, 246:14,
258:19, 260:20,
261:15, 263:6,
263:13, 263:15,
271:12, 297:13,
304:10, 311:6,
314:8, 314:9,
314:12, 317:13,
321:13, 322:7,
327:4, 328:5
**corrected**
316:10
**corrections**
327:6
**correctly**
66:1
**corresponded**
275:14, 275:18,

275:22
**could**
42:9, 54:6,
54:21, 88:14,
125:9, 136:13,
170:2, 193:2,
193:6, 194:16,
200:12, 205:8,
232:8, 263:4,
280:9, 282:17,
293:18, 295:19,
297:12, 297:15,
297:17, 298:3,
298:9, 314:1,
315:10, 316:22,
323:16
**couldn't**
165:19, 306:15
**counsel**
31:15, 34:19,
34:21, 70:18,
70:19, 70:22,
98:20, 103:13,
104:4, 113:13,
135:19, 138:2,
281:1, 328:9
**counterclaim**
146:16, 147:4,
152:8, 153:21,
154:2, 279:3
**counterclaims**
157:3, 171:3
**countersigned**
271:2
**country**
9:9, 154:5,
249:11, 256:7
**county**
7:16, 7:18,
16:19, 16:21,
17:1, 178:21,
179:10, 190:18,
191:8, 197:15,
220:9
**couple**
59:22, 82:11,
155:13, 234:1,
234:6, 248:19,

264:10, 268:16,
272:16, 307:11,
308:17
**course**
38:7, 205:15,
251:22, 252:2,
252:4, 252:6,
252:8, 252:9,
252:11
**court's**
99:9, 110:9,
112:2, 112:4,
112:17, 116:6,
116:22, 127:18,
128:3, 128:12,
132:21, 144:19
**courtesy**
282:3
**cover**
38:6, 190:12,
216:17
**covering**
126:10
**coverup**
126:12
**create**
98:4, 108:1,
142:10, 298:3
**created**
207:14, 245:3,
245:4, 246:22
**creating**
185:4
**credibility**
27:22, 97:22,
99:15, 100:10,
110:20, 111:3,
111:10, 111:20,
112:7, 113:14,
117:18, 125:16,
125:21, 127:4,
127:8, 128:2,
156:20, 176:14
**credit**
201:18, 201:22,
202:3, 202:10,
202:13, 202:15,
202:19, 228:13,

228:16, 228:17
**criminal**
13:5, 169:5
**cross**
146:16
**cross-examine**
128:18
**cross-examined**
110:20
**crossed**
214:20, 214:22,
215:8, 215:11
**curious**
262:4
**current**
142:12, 267:7
**currently**
13:14, 288:8
**cursor**
244:5, 267:4
**cut**
204:22
**cutting**
302:15
**cynthia**
1:22, 2:12,
328:2, 328:20

**D**

**d**
133:1
**damn**
32:15
**dan**
37:3, 41:6,
50:21, 141:21,
199:1, 205:19,
263:13
**daniel**
7:13, 31:14,
31:15, 57:5,
57:15, 60:14,
61:1, 61:6,
61:10, 61:13,
61:18, 62:2,
62:13, 62:15,
63:6, 75:10,
75:21, 79:7,

79:21, 80:20,
82:7, 84:21,
87:7, 88:18,
92:15, 92:18,
98:3, 121:8,
121:15, 123:1,
123:9, 128:8,
142:9, 144:6,
144:7, 162:14,
165:2, 172:8,
173:12, 174:5,
174:9, 174:16,
176:3, 177:8,
177:15, 177:18,
185:22, 189:4,
206:17, 209:3,
209:6, 209:13,
209:19, 223:9,
223:11, 223:12,
223:22, 235:16,
237:13, 237:14,
237:17, 239:11,
254:2, 261:22,
263:13, 272:13,
272:18, 272:22,
273:2, 311:10,
315:10, 315:11,
315:18, 318:21
**daniel's**
57:7
**danieljwhite@msn**
57:6, 237:15,
237:18
**date**
53:10, 75:14,
76:4, 164:10,
164:11, 179:6,
197:11, 199:13,
199:15, 210:10,
213:17, 217:6,
226:6, 236:20,
239:3, 242:9,
242:10, 245:1,
245:4, 245:7,
247:1, 247:6,
248:16, 248:21,
257:13, 257:17,
264:3, 285:20,

327:11
**dated**
30:4, 30:6,
36:12, 38:8,
51:9, 51:19,
56:20, 57:2,
57:10, 59:5,
60:12, 60:15,
61:1, 66:13,
69:22, 70:5,
79:6, 79:22,
82:5, 89:4,
89:7, 90:1,
135:11, 144:6,
161:5, 162:14,
163:17, 171:21,
172:8, 176:22,
198:16, 198:21,
199:6, 200:2,
212:8, 213:17,
217:6, 220:1,
220:15, 221:6,
226:18, 227:1,
230:2, 285:5
**dates**
149:22, 201:13,
244:18, 246:17
**dave**
51:20, 53:5,
258:10, 259:5
**david**
1:5, 4:12,
11:15, 11:20,
11:21, 21:1,
21:5, 21:9,
32:14, 50:11,
50:14, 51:13,
53:16, 61:19,
61:22, 62:3,
62:12, 64:20,
65:3, 65:9,
68:16, 68:22,
89:9, 96:8,
97:8, 104:1,
117:15, 122:1,
122:14, 128:8,
153:20, 155:6,
171:2, 171:3,

188:14, 204:17,
205:3, 206:19,
207:7, 207:13,
207:15, 222:14,
222:16, 234:16,
238:19, 238:21,
241:21, 252:15,
253:2, 253:6,
253:17, 253:19,
254:16, 256:6,
256:16, 257:4,
258:15, 258:17,
259:15, 259:16,
260:19, 260:21,
261:13, 264:16,
265:1, 265:18,
266:2, 268:12,
275:8, 275:11,
275:14, 275:15,
275:18, 275:22,
276:6, 276:17,
276:20, 277:3,
277:6, 277:15,
278:19, 279:16,
279:20, 281:5,
281:15, 285:4,
287:3
**day**
45:2, 251:8,
328:14
**days**
199:16, 272:17
**db**
50:17
**dboshea**
89:12
**dboshea@compassm-
arketinginc**
258:11
**deal**
207:17
**dealing**
288:5, 288:7,
289:10
**dealings**
277:10
**dealt**
287:15

**debating**
129:4
**debra**
212:2
**december**
1:15, 10:3,
17:2, 35:3,
36:12, 44:9,
70:1, 70:6,
177:1, 178:22,
190:8, 306:2,
328:15
**decide**
226:2
**decided**
206:18, 260:18,
260:21, 279:22
**decision**
321:9
**declined**
227:11
**deducted**
256:8
**defendant**
1:10, 3:11,
11:5
**defense**
125:19
**define**
17:4, 29:2,
93:20, 192:4,
268:22
**definitely**
256:22, 257:2
**definition**
175:13
**delete**
86:5, 86:8
**deleted**
297:13, 297:15,
298:9
**deliver**
35:16, 37:7,
37:14
**delivered**
277:7
**delving**
54:6

**denied**
126:7, 126:8
**deny**
57:17, 57:20,
57:22, 58:2,
58:10, 58:13,
78:22, 80:15,
84:7, 84:11,
107:9, 122:17,
123:13, 123:18,
138:20, 141:4,
177:17, 183:14,
221:15
**denying**
82:21, 83:7,
83:15, 93:3,
222:1
**depend**
302:7
**deponent**
4:3, 327:1
**depos**
10:10
**deposed**
12:15, 12:17,
12:19, 13:2
**deposit**
7:19, 191:14,
192:17, 194:18
**deposition**
1:13, 2:1,
5:11, 6:3, 7:3,
8:3, 9:3, 10:4,
14:2, 28:2,
29:15, 34:3,
50:5, 51:22,
52:6, 52:11,
52:16, 53:9,
53:11, 56:8,
66:8, 69:15,
73:20, 74:2,
74:11, 78:10,
82:3, 88:6,
103:8, 103:12,
103:19, 105:5,
105:14, 106:7,
108:11, 108:13,
111:21, 112:9,

119:18, 120:20,
120:21, 121:19,
129:5, 133:11,
133:19, 138:9,
138:15, 140:6,
141:17, 156:10,
162:9, 172:4,
177:5, 178:16,
191:5, 195:10,
196:20, 213:12,
217:20, 220:20,
223:5, 226:20,
230:11, 230:13,
231:4, 231:7,
240:17, 250:3,
257:10, 266:9,
270:21, 282:21,
295:15, 301:19,
307:7, 308:20,
310:11, 311:22,
312:3, 316:19,
319:3, 319:14,
324:4, 324:10,
324:14, 325:22,
328:3
**describe**
53:2, 62:18,
120:7
**description**
49:8, 49:10
**desire**
64:20, 65:6,
68:20
**desks**
164:13
**destroy**
166:16, 167:10
**destroyed**
167:12
**detach**
169:7
**detective**
149:16, 149:17,
149:21, 150:6,
150:10, 150:13,
150:22, 151:4,
275:5, 275:6,
275:8, 275:11,

275:18
**determine**
58:7, 86:1
**difference**
153:2, 153:3,
153:4, 159:5
**different**
12:20, 100:1,
129:10, 134:6,
137:4, 143:18,
152:19, 157:5,
157:7, 159:1,
162:20, 173:22,
188:22, 189:1,
189:4, 199:16,
205:19, 214:11,
215:22, 217:6,
240:7, 241:10,
269:22, 305:3,
305:8
**differently**
58:1, 301:9
**difficult**
232:8
**digital**
94:14
**digits**
69:2, 228:13,
228:17
**dipaula**
144:12, 144:16,
177:10, 178:6,
321:15, 321:17
**dipaula's**
320:21, 320:22,
321:22
**direct**
166:13, 197:10
**director**
222:8, 223:17,
225:1, 271:20
**directors**
97:21, 125:5,
165:15, 166:6,
224:1
**disagree**
111:19, 112:1,
113:2, 124:17,

126:11, 128:14,
129:12, 130:5,
130:21, 156:22,
159:6, 187:17,
207:20, 262:21,
280:15, 317:3,
320:6
**disagreement**
232:4
**disapproval**
192:17
**disclaim**
60:4
**disclosure**
36:4, 36:22,
70:3
**discoverable**
97:4, 98:13,
110:11, 178:7,
304:15, 321:6
**discovery**
94:4, 99:10,
112:10, 113:5,
176:12
**discuss**
44:4, 52:15,
52:20, 53:12,
60:14, 60:22,
61:9, 62:2,
62:17, 63:2,
63:5, 95:19,
143:19, 151:4,
272:7
**discussed**
44:11, 59:11,
61:5, 61:6,
61:7, 61:13,
61:18, 62:4,
81:19, 81:20,
81:21, 139:10,
151:6, 174:4,
256:20
**discussing**
58:21, 59:16,
62:12, 224:19
**discussion**
43:21, 53:4,
53:6, 53:7,

53:9, 61:15,
62:10, 62:16,
62:18, 62:21,
63:12, 71:16,
71:21, 115:5,
151:9, 152:3,
155:12, 310:16,
325:18
**discussions**
81:8, 81:17,
151:12, 151:16,
151:19, 159:11,
254:11
**disguise**
268:19, 269:1
**dishonesty**
97:22
**dismissed**
114:12
**dispense**
268:4
**dispute**
176:15, 188:3,
313:2
**disputed**
99:8
**disputing**
135:7
**dissolve**
168:22, 169:2
**dissolved**
167:14, 167:19,
169:4, 169:10
**distinction**
73:1, 100:17
**distributions**
187:3
**district**
1:1, 1:2, 10:6,
10:7, 186:7,
186:8, 186:9,
323:1, 323:3
**divided**
280:4
**dividing**
259:21
**division**
1:3, 10:8

**djw**
6:7, 6:8, 6:12,
6:13, 6:14,
7:12, 78:9,
82:2, 87:12,
88:4, 88:19,
161:16
**doc**
35:10
**docket**
106:5
**documents**
29:10, 29:18,
29:20, 29:22,
39:15, 41:17,
41:20, 63:21,
64:11, 69:19,
73:9, 73:14,
73:19, 74:5,
74:7, 76:21,
84:21, 98:6,
110:8, 112:18,
118:16, 125:7,
125:13, 126:5,
126:14, 128:22,
130:19, 132:7,
132:11, 132:13,
132:16, 137:12,
143:3, 163:4,
212:4, 231:6,
231:10, 245:16,
246:1, 246:6,
312:11, 319:10,
319:18, 321:17
**doing**
39:19, 39:20,
43:5, 57:20,
91:7, 151:15,
151:18, 164:15,
164:22, 165:1,
166:16, 167:6,
214:5, 244:4,
305:5
**dollars**
210:5
**domain**
295:19, 295:21,
296:1, 298:3

**done**
16:11, 64:8,
126:20
**door**
110:16, 111:11,
113:3, 128:6,
128:13
**double**
69:2
**doubt**
143:5, 220:19,
237:21
**down**
35:22, 36:11,
37:17, 38:17,
41:4, 50:19,
59:3, 74:21,
74:22, 75:1,
78:13, 105:9,
106:13, 108:22,
115:11, 117:2,
133:20, 146:2,
172:13, 195:16,
203:2, 222:7,
222:20, 242:11,
244:8, 247:12,
249:16, 250:6,
250:12, 250:18,
258:1, 258:4,
267:6, 267:10
**downloaded**
30:22, 31:18,
32:4, 32:8,
32:20, 33:1,
33:5
**drafted**
130:1
**draw**
100:18
**drive**
33:2
**duces**
105:12, 105:15
**due**
213:17, 217:6,
218:11
**dues**
154:5, 252:18,

252:22, 253:2,
253:5, 253:16,
253:19, 254:9,
254:15, 256:6,
256:16, 261:1,
261:8, 261:14,
280:1, 280:3,
281:6
**duly**
10:15
**duplicate**
319:21
**duration**
17:11, 17:18
**during**
11:18, 151:13,
255:20, 266:4,
293:16, 295:5,
295:18, 296:7,
297:2, 297:6,
298:1, 298:11,
316:11, 319:3
**duties**
91:4, 164:2,
164:7, 165:6,
204:14, 206:15,
208:12, 208:18,
208:20, 209:11,
209:16, 209:20,
210:1
**duty**
209:13
**dw**
50:17

**E**

**e-mailed**
85:21
**e-mailing**
34:21, 163:3
**e-mails**
7:4, 31:17,
65:14, 74:1,
76:9, 86:5,
86:8, 93:22,
94:2, 94:13,
97:19, 126:8,
135:10, 163:12,

227:21, 228:3,
229:11, 231:5,
231:7, 231:9,
237:14, 239:16,
248:20, 254:12,
258:22, 277:7,
277:14, 284:22,
285:11, 286:21,
286:22, 287:2,
289:18, 289:21,
290:5, 290:9,
290:12, 290:15,
290:18, 290:22,
291:5, 292:12,
293:4, 293:18,
294:3, 295:7,
295:11, 295:20,
295:22, 296:5,
296:22, 297:6,
297:20, 297:21,
298:14, 298:18,
298:20, 299:3,
299:5, 299:8,
299:14, 299:20,
299:21, 300:1,
300:6, 300:8,
300:22, 301:2,
303:21, 305:17,
306:3, 311:8,
313:5, 318:15
**e-w**
148:21
**e-w-i-n-g**
148:22
**each**
10:22, 14:11,
71:3, 73:9,
103:6, 108:5,
131:9, 132:11,
194:13, 210:11,
232:7, 325:14
**eagle**
66:14, 66:15,
154:4, 249:3,
251:12, 251:19,
251:20, 251:21,
252:2, 252:4,
252:6, 252:7,

252:9, 252:11,
252:18, 253:3,
254:7, 256:7,
259:4, 259:17,
260:22, 261:8,
261:14, 281:6,
282:12, 283:20,
285:12, 287:16,
288:5, 288:7,
289:11
**earlier**
58:18, 82:16,
117:17, 157:8,
174:1, 176:10,
220:10, 242:20,
282:21, 291:14,
307:6, 318:14
**earn**
169:16, 170:12,
170:19, 171:9
**earned**
205:22
**easier**
33:17, 266:20,
266:21, 267:17
**east**
101:21
**eastern**
10:4
**ed**
250:12
**edify**
274:21
**editing**
244:15, 245:16,
246:1, 246:6
**effort**
206:7
**efforts**
268:19, 319:22
**either**
166:1, 169:16,
222:1, 232:2,
232:6, 247:10,
253:1, 268:8,
278:15, 316:19
**elaborate**
129:15

**electric**
326:8
**electronic**
72:22, 73:5,
326:3
**electronically**
94:6, 103:10
**eliminate**
235:1
**else**
11:9, 16:11,
20:12, 63:2,
86:15, 91:12,
95:4, 99:4,
103:9, 104:5,
171:4, 188:18,
194:1, 203:15,
222:3, 224:13,
246:5, 269:20,
271:2, 273:15,
275:20, 277:8,
277:15, 293:8,
323:2, 323:17,
325:16
**else's**
238:20
**email**
36:1, 36:2,
41:6, 45:1,
66:16
**emails**
37:19, 38:15
**emily**
173:14, 173:16
**employed**
90:4, 90:9,
90:20, 91:1,
245:15, 245:21,
271:18, 328:10
**employee**
25:14, 27:3,
27:4, 28:8,
28:14, 28:15,
65:4, 65:10,
90:13, 90:17,
137:3, 142:12,
172:22, 246:9,
254:4, 256:11,

265:12, 267:10,
298:21
**employees**
84:19
**employment**
8:21, 9:13,
58:12, 58:16,
97:19, 99:5,
163:21, 164:20,
169:11, 169:16,
170:10, 170:13,
240:1, 240:22,
242:21, 243:21,
244:11, 244:17,
247:14, 266:13,
271:5, 271:10,
271:17, 321:14
**encouraging**
40:12, 40:16,
40:19
**end**
39:18, 54:11,
63:16, 79:10,
80:7, 96:20,
236:9, 279:9,
290:9, 310:13
**ended**
169:17, 170:14,
294:5
**ending**
170:11, 227:12,
228:13, 228:18,
242:9
**endorsement**
198:16
**endorsing**
198:17
**ends**
195:2
**enforce**
112:2, 116:6
**enough**
131:14, 181:5,
217:12
**entered**
43:2, 43:7,
77:19, 78:2,
78:4, 101:6,

115:3, 130:14,
137:21, 147:16,
157:13, 208:10
**enterprise**
169:6
**entire**
75:3, 178:4,
224:16, 224:18,
250:20, 256:19
**entirely**
262:7
**entitled**
168:8, 279:11
**envelope**
148:16
**erin**
135:13
**errata**
327:6
**especially**
111:21
**esquire**
3:4, 3:12,
3:13, 4:4
**established**
237:7
**estimate**
270:20, 272:16
**evasive**
318:4
**evasiveness**
100:7
**even**
36:2, 113:15,
126:8, 204:18,
204:20, 206:16,
206:17, 207:3,
207:13, 208:3,
246:20, 247:3,
247:8, 290:2,
313:22, 317:2,
317:6
**event**
71:17, 71:22
**events**
207:12, 301:16
**eventually**
239:8

**ever**
12:14, 64:8,
85:12, 142:9,
148:4, 148:12,
148:14, 160:4,
174:16, 175:5,
258:21, 261:5,
262:12, 275:8,
275:11, 275:14,
275:18, 276:2,
276:7, 276:11,
276:18, 277:6,
277:13, 289:21,
298:17, 298:19,
298:22, 299:2,
299:13, 307:11,
307:22, 313:12,
316:15
**every**
180:4, 181:2
**everybody**
39:16, 234:16,
250:16
**everyone**
102:2, 102:17,
106:4, 195:20
**everything**
81:3, 313:20,
323:16
**evidence**
196:15, 286:7,
320:1
**ewing**
148:19, 148:21,
148:22, 149:5,
149:10, 149:12,
149:16, 149:17,
149:21, 150:7,
150:10, 150:14,
151:1, 151:4,
151:13, 151:17,
151:20, 159:9,
159:11, 159:14,
159:16, 159:20,
160:4, 160:10,
160:13, 265:2,
265:18, 274:18,
275:5, 275:6,

275:8, 275:11,
275:18
**ewing's**
149:6
**exact**
53:10, 149:22,
259:11
**exactly**
73:3, 263:3,
320:17
**examination**
5:2
**examine**
111:2
**examined**
327:3
**except**
225:5
**excited**
38:20
**excuse**
56:12, 264:6
**executed**
77:12
**exhaust**
317:4
**exhibits**
5:11, 6:3, 7:3,
8:3, 9:3, 66:2,
82:12, 107:13,
107:22, 110:1,
234:7, 240:17,
282:2, 326:5
**exist**
124:22, 137:11,
206:6
**existed**
55:21, 55:22,
77:4, 98:6
**existence**
190:2, 252:1,
252:3
**expect**
131:20, 219:4
**expended**
324:10, 325:6
**expense**
131:6, 158:8,

252:8

**expenses**
252:18, 253:2,
253:6, 253:19,
254:7, 254:10,
254:15, 256:7

**expires**
328:16

**explain**
192:10, 295:10

**explained**
53:18

**explaining**
290:3

**explains**
243:7

**explanation**
305:3

**explore**
205:11

**exploring**
155:4

**express**
199:5, 201:11,
201:13, 201:15,
201:18, 201:21,
202:3, 202:7,
202:18

**expressly**
55:12

**extends**
78:12

**extensive**
291:19

**extensively**
113:13, 302:11,
303:6

**extent**
54:5, 54:21,
134:12, 134:13,
163:7, 190:11,
216:10, 216:16,
293:6, 294:14,
294:15, 299:11,
299:16

**extract**
141:22, 142:10,
169:13, 205:20,

206:6, 215:5

**eye**
39:20, 40:13,
40:17, 40:20

**F**

**fabricate**
174:17, 175:14

**fabricated**
175:5

**fabulous**
273:22

**faces**
51:1, 233:14

**fact**
62:21, 79:16,
111:19, 128:1,
137:11, 155:3,
262:21, 263:18,
286:6, 311:21

**facts**
20:22, 55:5,
279:5, 279:12

**faden**
4:15

**failing**
152:18, 157:9

**faint**
96:22

**fair**
77:20, 114:6,
131:14, 181:5,
217:12

**fairly**
25:13, 27:2,
28:8, 28:13,
65:4, 65:10

**faith**
175:9

**falls**
153:6

**false**
98:4, 111:1,
118:19, 142:10,
206:4, 303:9

**familiar**
14:1, 146:5

**far**
20:5, 20:15,

73:10, 73:19,
74:2, 122:4,
156:17, 156:18,
167:20, 171:1,
207:11, 225:1,
225:2, 225:9,
237:17, 237:20,
250:22, 254:17,
291:11, 295:14,
306:19, 318:10,
326:1

**fashion**
163:5, 204:17,
236:15

**fast**
323:11

**fault**
313:14

**favor**
267:3

**february**
165:14, 166:5,
195:3, 195:17,
196:12, 197:12,
198:12, 198:16,
198:21, 199:7,
212:8, 217:7,
223:4, 223:21,
226:6

**federal**
101:15

**federally**
119:5

**fedex**
275:15

**fee**
259:5, 259:17,
259:21, 260:2,
260:3, 281:16

**fees**
260:8

**feet**
36:18

**feiss**
89:8

**fellow**
271:9, 274:17,
274:22

**few**
100:12, 161:21,
281:22, 299:6,
309:17

**file**
41:12, 129:20,
145:12, 214:6,
233:3, 244:5,
244:14, 265:11,
265:13, 266:3,
268:12, 271:10,
272:9, 272:12,
273:2, 282:17,
287:13, 287:14,
287:15, 287:17,
287:20, 288:2,
288:5, 288:9,
288:10, 288:15,
289:10

**filed**
8:9, 8:12,
21:10, 21:14,
68:17, 68:22,
82:12, 104:19,
105:7, 105:18,
105:19, 105:22,
106:5, 106:9,
107:7, 108:12,
108:17, 108:20,
110:17, 120:14,
124:13, 133:14,
134:4, 134:6,
140:5, 140:13,
140:16, 140:21,
141:2, 141:5,
146:16, 146:17,
146:21, 151:6,
169:1, 214:9,
214:13

**files**
234:2, 234:6,
234:10, 265:20,
288:6

**filing**
68:16, 81:10,
106:20, 107:2,
107:9, 121:7,
122:16, 123:9,

**125:1**, 143:5,
145:19, 147:20,
147:22, 148:3,
159:9, 178:9,
212:8, 213:17,
218:11, 220:14,
311:1

**filings**
88:10, 112:16,
212:6, 212:11,
212:13, 212:16,
212:19, 214:3,
217:1

**fill**
116:1, 117:9

**filled**
118:11

**filling**
214:2

**final**
177:10, 243:22,
244:11, 247:15,
321:9

**financial**
19:18, 19:21,
20:12, 20:14,
227:11, 328:11

**find**
85:7, 205:19,
242:14, 292:2,
292:19

**fine**
30:13, 87:20,
100:15, 102:15,
102:16, 109:14,
119:2, 119:4,
119:7, 124:8,
157:12, 158:14,
203:8, 234:17,
240:9, 242:11,
248:22, 250:11,
267:1, 268:14,
269:18, 278:13,
308:11, 323:8

**finish**
14:12, 14:15,
31:8, 31:10,
31:22

**finished**
112:6, 249:14,
257:21

**finishing**
155:11

**first**
7:16, 7:18,
18:20, 19:3,
19:7, 21:9,
23:5, 71:5,
81:13, 81:16,
83:3, 105:1,
110:12, 163:16,
173:11, 178:21,
179:10, 189:17,
190:19, 191:8,
197:15, 220:9,
237:6, 240:14,
241:18, 246:9,
249:21, 274:22,
289:15, 302:16,
316:7

**five**
119:1, 150:18,
270:20, 274:8,
325:9

**fixed**
164:13

**flash**
33:2

**flip**
267:16

**flood**
89:6

**fly**
250:16, 251:11

**focus**
224:20

**folder**
292:1

**folders**
298:7, 298:9

**follow**
144:22

**follow-up**
319:12, 319:13

**follow-ups**
282:1

**following**
20:10

**follows**
10:15

**foreclose**
116:17

**foreclosed**
205:12

**foregoing**
327:3, 328:3,
328:4

**forget**
232:21, 263:2,
310:11, 310:13

**forgetting**
284:11

**forgot**
124:4, 229:6

**formal**
149:13, 149:14,
192:16, 193:13

**format**
30:4, 30:17,
31:4, 31:9,
31:11, 31:14,
31:20, 32:3,
32:16, 32:21,
33:6, 310:18,
314:7, 314:11,
314:15, 316:1,
316:2, 316:7,
320:1, 326:3

**former**
142:12

**forms**
118:16, 180:17,
180:18, 184:9,
184:13, 184:15

**forth**
296:10

**forward**
22:19, 157:21,
257:15, 285:10,
309:16, 314:20

**forwarded**
92:14, 92:17,
92:20, 93:15,
235:14, 247:22,

**248:2**, 248:3,
312:2, 312:7,
312:17, 312:20,
313:15, 313:21,
314:11, 314:18,
314:19, 315:1,
316:2

**forwarding**
57:17, 312:7

**fought**
181:12

**found**
62:5, 62:22,
239:14

**foundation**
165:8, 183:16,
192:15, 270:2,
271:22, 278:21,
281:8

**four**
166:14, 228:13,
228:17, 264:16,
270:20

**fourth**
244:8

**frame**
52:21, 60:18,
61:15, 62:10,
68:5, 181:7,
181:12, 202:1,
248:20, 294:10,
294:13, 296:10,
296:15, 299:10,
300:2

**frames**
61:21

**fraudulent**
206:5

**friday**
37:17, 38:17,
257:18

**friend**
41:7

**front**
73:8, 173:13,
301:6

**full**
17:4, 27:15,

27:21, 110:18,
321:22, 326:4
**full-time**
17:3
**fully**
116:19
**fun**
104:22
**function**
255:20
**funds**
196:11
**further**
35:22, 59:3,
118:14, 118:18,
122:21, 129:1,
129:15, 137:8,
140:1, 231:2,
231:8, 258:7,
284:4, 307:4,
308:12, 309:16,
313:19
**future**
267:7
**fwd**
9:11

--- G ---

**g**
133:2
**gain**
208:5
**gather**
41:16
**gave**
157:8
**generally**
68:7, 245:21,
248:20
**george**
228:6, 228:8,
228:16, 228:20,
229:11, 306:9
**getting**
20:3, 20:5,
43:22, 54:12,
100:9, 109:10,
109:22, 112:15,

114:13, 122:4,
132:17, 141:12,
158:19, 163:5,
169:18, 217:10,
251:5, 260:13,
260:16, 295:14,
325:15, 326:11
**gist**
129:15
**give**
14:6, 33:18,
52:21, 97:10,
127:22, 149:1,
161:19, 175:13,
192:5, 192:13,
192:16, 226:19,
230:21, 231:17,
232:20, 233:2,
233:4, 233:15,
234:10, 234:21,
235:1, 266:5,
279:2, 282:16,
309:10, 325:14
**given**
20:11, 29:21,
305:2, 327:5,
328:5
**gives**
173:15
**giving**
193:10, 193:13,
193:15, 292:3,
322:13
**gjordan@jz-llc**
66:13
**go**
14:3, 22:19,
25:3, 29:8,
29:10, 30:15,
33:21, 39:16,
55:14, 56:3,
56:5, 63:10,
65:2, 69:13,
69:19, 72:15,
74:9, 78:1,
82:1, 84:12,
87:3, 88:14,
88:15, 96:2,

97:10, 98:17,
98:21, 100:2,
103:6, 104:12,
104:16, 109:19,
109:22, 111:17,
115:5, 125:9,
130:13, 139:1,
153:18, 155:16,
157:18, 162:2,
168:19, 175:12,
180:7, 180:14,
180:15, 182:14,
183:11, 184:1,
184:20, 186:11,
187:1, 193:19,
195:7, 195:22,
203:10, 208:2,
210:11, 216:18,
217:5, 217:14,
220:14, 226:17,
226:18, 230:1,
234:11, 243:15,
244:7, 249:1,
249:4, 254:14,
255:4, 262:18,
263:3, 281:13,
282:15, 284:6,
287:11, 295:3,
296:20, 297:10,
299:18, 302:19,
304:8, 305:11,
306:12, 308:8,
308:20, 309:16,
317:3, 319:7,
319:21, 320:14,
324:8, 324:9
**goes**
27:16, 27:22,
97:21, 100:10,
111:9, 111:10,
113:14, 113:16,
117:18, 125:15,
126:1, 127:8,
156:11, 156:14,
156:18, 156:19,
167:22, 168:5,
173:20, 176:13,
232:6

**golf**
36:15, 36:19,
38:7, 251:8,
251:21, 252:2,
252:4, 252:6,
252:7, 252:9,
252:11, 252:12,
253:3
**golf4me@aol**
59:7, 235:18,
238:15
**gone**
73:9, 73:19,
74:2, 98:7,
260:2, 319:2
**good**
11:22, 24:19,
38:18, 39:18,
64:10, 107:19,
217:8, 217:9,
232:5, 232:14,
234:9, 262:14,
278:1
**google**
8:14, 8:16,
226:22, 227:5,
227:10, 227:13,
230:3, 258:8
**gotten**
317:2
**government**
180:18
**graham**
4:5
**granddaughter**
81:20
**granted**
321:21, 321:22
**great**
41:7
**green**
233:13
**greg**
11:22, 38:19,
39:19, 40:3,
40:5, 51:14,
51:19, 57:17,
58:1, 75:21,

78:16, 79:22,
81:5, 87:17,
102:6, 107:20,
155:18, 155:19,
155:22, 156:3,
205:11, 232:6,
234:12, 236:20,
240:3, 262:4,
262:21, 266:22,
278:4, 281:10,
282:1, 314:16,
315:12
**greg's**
100:12, 100:13,
102:12, 262:20
**gregory**
11:14, 56:20,
82:6, 87:6,
103:20, 235:8
**gregrory**
3:4
**ground**
48:18, 126:22
**group**
224:7
**guaranteed**
118:20
**guess**
13:20, 33:14,
47:13, 47:16,
48:8, 48:10,
48:12, 48:18,
102:2, 108:7,
150:1, 150:5,
150:11, 150:17,
177:2, 188:13,
230:10, 241:10,
255:17, 255:22,
278:9, 311:13,
320:13, 320:14,
322:13, 323:21
**guessing**
45:19, 45:22,
46:1, 47:12,
48:7
**guys**
154:18, 231:20,
251:4, 258:21,

312:11

**H**

**hamlin**
322:20
**hand**
35:10, 45:3,
66:4, 269:3,
269:8, 269:11,
269:21, 270:17,
328:14
**handle**
19:18, 127:17
**handled**
255:16
**handles**
19:21, 20:12
**handwritten**
71:9, 214:20
**hanging**
282:5
**happened**
125:14, 207:1,
207:2, 207:13,
301:16
**happy**
322:8, 325:14
**harass**
113:8
**harassment**
169:19
**hard**
70:2, 267:16,
278:7, 323:11
**hardly**
154:20, 155:1
**harm**
137:14, 206:7
**harmful**
147:2
**hate**
37:3
**head**
246:11, 246:13
**hear**
27:19, 30:10,
32:10, 42:20,
54:10, 55:9,

75:2, 80:7,
91:19, 96:20,
106:3, 118:2,
126:18, 136:5,
161:8, 165:19,
165:22, 173:21,
175:19, 194:6,
209:5, 216:14,
236:9, 261:5,
262:17, 302:3,
304:18, 306:15
**heard**
80:9, 319:8
**hearing**
96:18, 96:22,
100:14, 102:6,
102:12, 105:16,
157:6, 200:6,
200:8, 278:7,
313:2, 317:11
**heather**
3:13, 11:10,
33:14, 33:17,
49:21, 66:5,
66:7, 88:9,
89:1, 104:7,
104:9, 104:18,
104:21, 105:10,
106:13, 106:16,
107:19, 108:8,
108:22, 115:10,
115:12, 119:21,
121:22, 133:7,
133:20, 140:4,
141:11, 142:22,
146:2, 171:21,
178:12, 203:1,
205:7, 212:5,
215:1, 221:1
**heather's**
163:11
**held**
18:10, 19:1,
288:8, 325:18
**helena**
146:6, 160:14
**hello**
161:9

**help**
11:12, 18:5,
23:10, 38:2,
41:17, 58:7,
59:14, 64:20,
65:6, 68:20,
163:8, 167:11,
193:1, 201:1,
206:4, 233:8,
256:1, 285:22
**helped**
171:7
**helpful**
59:21, 67:1,
67:15, 67:17,
67:19, 69:7
**helping**
28:20, 29:2,
91:17, 91:21,
92:2, 92:7,
92:10, 126:7
**helps**
64:15
**here**
11:11, 12:1,
13:21, 20:8,
29:11, 97:10,
98:17, 103:17,
104:4, 114:17,
132:1, 154:19,
155:16, 163:11,
168:9, 192:19,
206:3, 232:7,
232:12, 233:3,
234:21, 234:22,
235:7, 235:22,
239:19, 239:21,
240:10, 241:4,
242:14, 244:5,
244:10, 244:12,
247:13, 247:18,
248:10, 249:8,
249:9, 258:22,
282:5, 283:20,
291:21, 295:15,
301:6, 302:12
**hereby**
327:2, 328:3

hereunto
328:13
heritage
323:14
hey
37:18, 38:5,
38:14, 96:10,
234:12, 234:13,
234:14, 259:4
hi
37:19, 48:1,
51:13
hiawatha
179:14, 181:1,
181:15, 184:9
high
222:6
higher
139:4
highly
136:21
himself
38:3, 292:20
hire
277:22
hired
207:16
hit
285:16, 287:13
hold
26:8, 26:16,
31:5, 31:21,
69:17, 98:16,
153:16, 154:22,
158:3, 191:14,
230:22, 279:1,
322:17
home
179:17, 179:20,
180:7, 215:21,
216:6, 223:15
honest
312:21
honor
14:18
honorable
105:16
hope
66:22, 67:14,

67:15, 168:18
hoped
67:17
hopefully
200:15, 200:16
hoping
36:1, 316:13
hour
102:3, 217:10
hours
17:6, 17:8,
17:10, 274:8,
304:6, 324:19,
324:22, 325:2,
325:10
house
36:16, 36:20
however
226:13
human
255:20, 256:1
hundred
210:5, 222:11
hurry
250:11
hurt
154:10
hurts
64:15

**I**

id
49:9
idea
24:19, 47:4,
47:7, 64:10,
217:9, 242:20,
273:6, 276:1,
277:18, 280:8
ideal
205:2
identification
34:4, 50:6,
56:9, 66:9,
69:16, 74:12,
78:11, 82:4,
88:7, 105:6,
108:14, 115:17,

120:22, 133:12,
138:10, 140:7,
141:18, 162:10,
172:5, 177:6,
178:17, 191:6,
195:11, 196:21,
213:13, 217:21,
220:21, 223:6,
226:21, 230:14,
240:18, 250:5,
257:11
identified
11:3, 20:21,
120:8, 128:9,
181:15, 183:7,
216:8, 272:22
identify
39:10, 49:20,
58:14, 59:22,
76:12, 95:15,
226:2, 268:9,
268:22, 303:8
ignore
260:15
il
242:1
illinois
3:8
illustrate
129:1, 322:8
image
72:22, 73:5,
73:7, 73:12
impeachment
110:19
implicit
176:8
implicitly
181:11
imprisonment
119:1, 119:3,
119:6
improper
27:17, 54:20,
112:12, 113:8,
168:2, 169:20,
175:10, 291:17,
293:8

inaccurate
222:13, 224:4,
224:13
inadvertently
282:15
inbox
297:12, 298:7,
311:14
inc
1:9, 4:13,
10:6, 11:5,
93:15, 103:14,
105:12, 124:1,
151:21, 152:12,
152:13, 177:8,
239:22, 240:21,
242:2, 252:16,
292:12, 301:11
incentive
98:8
include
155:2, 186:2,
251:13
included
186:14
includes
30:4, 78:5
including
99:7, 118:21,
173:16, 205:22,
264:16, 314:2
income
256:9, 256:16
incoming
297:16, 297:17,
297:20
inconsistent
262:7, 269:5
incorporated
109:8
increase
66:16, 260:3,
260:6, 260:7,
260:19, 260:21,
260:22
increments
279:9, 279:17,
279:21, 281:5

**indecipherable**
26:22
**independent**
147:22, 148:3
**indicate**
179:13, 204:16
**indicated**
237:12, 261:10,
261:11, 261:17
**indicates**
241:4, 291:21
**individuals**
114:9, 128:11,
205:21
**info**
243:21, 244:7,
244:8, 247:18
**inform**
209:15
**informal**
193:15, 255:12
**information**
20:21, 49:7,
53:15, 53:18,
67:15, 67:17,
67:18, 67:22,
68:8, 68:11,
68:12, 68:15,
69:8, 95:15,
97:5, 98:15,
98:19, 99:15,
99:19, 100:4,
101:12, 118:14,
118:15, 122:9,
173:15, 173:16,
185:14, 188:12,
208:5, 244:9,
258:8, 291:4,
291:15, 292:21,
293:4, 293:13
**informed**
159:9, 310:19
**inhibit**
16:1
**initial**
118:13
**initialed**
36:2

**initials**
39:12
**initiative**
23:7
**inquiries**
98:10, 317:5
**inquiry**
110:7, 152:14,
155:21
**insert**
227:7
**instance**
269:2
**instant**
135:20, 156:6
**instead**
251:9
**institution**
119:5, 227:11
**instruct**
55:11, 100:4,
101:16, 111:5,
111:7, 111:14,
114:19, 114:22,
116:7, 117:8,
118:9, 125:6,
127:10, 133:2,
138:3, 139:17,
139:22, 147:9,
174:2, 176:10
**instructed**
101:1, 128:21,
148:10, 148:14,
157:15, 318:5
**instructing**
55:7, 116:9,
116:13, 130:18,
132:12, 137:14,
143:16, 147:14,
152:22, 155:9,
159:2, 168:10,
187:11, 293:10,
293:12, 302:1,
302:5
**instruction**
55:19, 100:16,
101:4, 117:11,
117:14, 119:9,

120:11, 129:8,
139:11, 139:16,
143:12, 144:10,
144:14, 144:18,
145:2, 145:6,
145:10, 157:8,
157:11, 157:20,
168:18, 174:8,
174:15, 174:20
**instructions**
143:21, 318:9
**insured**
119:5
**intend**
101:14
**intended**
167:1
**intent**
137:13
**intention**
11:18, 12:1
**interest**
125:22, 328:11
**interrupt**
14:10, 87:14,
227:8
**interrupting**
32:13, 118:3,
246:15
**intimidate**
113:8
**intimidation**
169:19
**introduce**
131:8
**introduced**
128:10, 282:1
**investigations**
97:7, 99:2,
112:13, 156:8,
168:3
**invoice**
230:15, 230:18
**invoices**
252:9, 254:6
**involved**
102:3, 114:9,
114:10, 158:18,

245:16, 245:22
**involvement**
255:19
**involving**
130:9
**iphone**
258:2, 258:5,
259:6
**irrelevant**
206:9
**irs**
280:1
**island**
282:6
**issue**
20:6, 110:16,
111:10, 111:13,
122:8, 128:9,
168:8, 200:17,
301:18, 303:2,
309:11
**issued**
121:4, 121:13,
122:1, 122:13,
122:15, 122:22,
123:9, 124:1,
140:14, 204:11
**issues**
46:22, 112:18,
112:20, 232:2,
319:16, 321:22
**issuing**
121:3, 121:16
**item**
52:13, 227:3,
244:8
**items**
49:16, 74:6
**itself**
112:15, 119:13,
143:20, 243:1,
292:16

| J |
| --- |

**jacob**
4:15
**james**
177:10, 178:6

january
21:18, 21:22,
22:6, 22:10,
22:14, 22:17,
22:21, 38:8,
94:20, 135:11,
213:18, 230:2,
301:3, 301:12,
303:21, 305:16,
306:1, 315:2
jason
135:14
jcain
89:12
jerry
89:9
jesse
89:9
job
1:20, 17:3,
91:4, 164:2,
208:12, 234:9,
278:1
jobs
208:19
john's
272:3
join
24:5, 27:1,
28:11, 145:14,
145:15, 145:16,
208:1, 289:9
joined
255:1
joining
178:10, 320:18
joint
169:1
jordan's
101:20, 173:3,
284:19, 311:14
jorden
66:22, 82:9
joseph
123:1, 123:9,
223:12
judge
16:18, 16:22,

17:9, 17:12,
17:19, 18:3,
321:4, 321:8
julia
89:6
july
51:19, 159:17,
200:2, 264:1,
264:5, 264:9,
285:17, 290:12
jump
267:13
jumping
187:12
june
121:5, 121:12,
122:2, 122:14,
123:1, 190:19,
235:12, 236:18
justification
173:22
justin
4:4, 12:8,
27:15, 27:21,
37:22, 39:8,
87:21, 96:12,
96:18, 96:21,
98:14, 104:4,
110:12, 116:9,
126:18, 130:17,
136:10, 136:15,
146:11, 146:18,
153:16, 155:9,
163:4, 163:8,
171:15, 176:20,
198:1, 203:10,
203:12, 231:21,
232:18, 262:11,
262:18, 267:13,
278:8, 283:11,
291:18, 302:5,
302:14, 314:6,
322:6
jwhite
89:11, 235:18
jwhite@compassma-
rketing
249:10, 257:14

jwhite@compassma-
rketinginc
59:6, 238:2,
251:4, 286:13,
289:19, 289:22
jwilliams
89:12

## K

kagan
3:14
keep
11:12, 65:18,
65:22, 125:9,
187:12, 200:6,
284:11, 288:6
keeping
255:17, 310:11
kept
287:15
kevin
89:8, 254:3
killing
154:18
kind
58:11, 102:3,
126:14, 157:1,
161:17, 208:5,
226:12, 266:17,
269:21, 277:10,
304:6
knemetz
89:12
knew
216:19, 254:2,
254:3, 254:9,
254:17, 272:3,
273:9, 276:13,
281:4, 281:14,
281:18
knowing
111:18, 116:16
knowingly
118:19
knowledge
44:12, 44:15,
44:17, 44:19,
53:20, 53:22,

54:1, 54:3,
54:21, 55:16,
55:20, 60:5,
77:4, 126:9,
148:1, 190:16,
222:18, 251:19,
252:13, 252:15,
254:1, 259:14,
260:9, 268:18,
269:13, 270:5,
270:6, 276:6,
276:20, 281:3,
281:4, 298:14,
298:18, 298:21,
299:1, 307:3
known
115:20, 151:20,
152:11, 157:17,
178:21, 269:15,
269:17, 277:21
knows
106:5, 147:7
kramon
4:5

## L

label
65:22, 74:10
lack
60:17, 182:6,
183:3, 294:10
lacking
155:19
land
36:18, 49:8,
49:10
language
239:2
last
18:14, 65:14,
65:16, 93:18,
93:21, 94:12,
115:6, 124:15,
124:19, 132:15,
143:11, 150:9,
159:16, 180:21,
194:21, 218:6,
228:13, 228:17,

232:21, 233:17,
244:19, 244:21,
245:1, 245:6,
245:7, 245:10,
245:11, 247:6,
300:21, 320:13

**lastly**
15:22

**late**
248:17, 259:2,
264:5, 264:9

**late-night**
258:22

**later**
66:2, 207:2,
207:15, 311:3

**law**
118:21, 129:16,
130:2

**lawrence**
48:1, 48:5,
48:9, 48:13,
48:16, 48:21

**lawsuit**
21:6, 21:10,
21:14, 21:18,
21:21, 22:5,
22:10, 22:13,
22:21, 23:2,
23:10, 23:14,
23:18, 24:4,
25:11, 26:18,
28:9, 29:4,
33:12, 34:7,
51:20, 68:16,
68:21, 81:6,
81:11, 81:18,
96:8, 97:11,
106:21, 116:21,
135:20, 137:10,
153:20, 156:6,
171:3, 172:17,
204:18, 301:17

**lawsuits**
97:7, 156:7

**lawyer**
37:1

**lawyers**
232:10, 232:15

**learn**
36:16

**learned**
53:17, 272:4

**lease**
191:16

**least**
232:10, 241:8,
245:16, 256:21,
264:16

**leave**
20:2, 74:15,
109:11, 109:15,
109:18, 124:4,
124:7, 137:1,
143:14, 156:2,
302:17

**leaving**
130:7

**leeway**
97:10

**left**
96:3, 109:20,
124:9, 124:16,
136:9, 146:9,
152:6, 199:4,
205:9, 218:6,
269:8, 269:21,
270:3, 270:17,
283:17, 309:2,
325:10

**left-hand**
195:12, 241:7,
241:15, 285:19

**left-handed**
269:10, 269:12

**leg**
270:12

**legal**
49:7, 49:9,
134:12, 134:13,
134:14, 271:22

**legitimate**
272:5

**length**
102:13

**less**
52:14, 102:14,

190:7, 210:4

**let's**
22:19, 29:10,
72:15, 83:2,
100:11, 101:3,
104:16, 109:5,
117:2, 127:16,
180:21, 210:11,
212:7, 220:14,
224:20, 230:1,
235:3, 235:16,
239:19, 243:19,
264:7

**letter**
36:21, 275:15,
275:19

**letters**
277:8, 277:15

**letting**
259:16, 260:2

**level**
97:22

**liable**
26:8, 26:17

**license**
314:22

**lied**
125:16, 128:17

**life**
249:6, 269:16,
269:17

**light**
231:2, 231:4

**lightly**
129:8

**liked**
304:5

**likewise**
188:1, 196:9,
198:7

**limited**
317:7

**line**
11:9, 75:19,
106:14, 111:9,
155:21, 156:9,
168:13, 173:21,
178:4, 187:10,

187:21, 197:20,
200:13, 203:13,
219:1, 223:12,
242:19, 304:21,
305:7, 323:21

**lined**
129:16

**lines**
166:14, 176:18

**link**
11:8, 207:1

**list**
7:20, 120:7,
179:10, 179:11,
185:6, 194:21,
195:1, 195:6,
214:15, 215:18,
215:20, 216:21,
222:14, 225:22

**listed**
179:20, 181:14,
182:3, 183:1,
183:21, 184:8,
184:9, 197:7,
215:10, 220:7,
224:10, 225:7

**listen**
157:6, 208:8

**listening**
103:11, 104:5

**listing**
225:10

**lists**
112:21, 190:20,
192:20, 214:18,
215:13, 215:14,
220:2, 221:8,
223:14, 223:19,
223:20, 225:18

**lit**
113:11

**litany**
112:21

**literally**
102:12, 314:19

**litigant**
24:11, 113:18

**litigants**
23:22, 63:22,

64:11

**litigation**
26:1, 27:8,
28:4, 28:21,
34:15, 35:7,
35:12, 35:17,
37:9, 37:15,
37:21, 39:4,
41:17, 41:21,
50:8, 51:8,
64:21, 65:6,
69:9, 70:18,
70:22, 72:12,
72:17, 73:20,
74:4, 88:19,
97:16, 98:1,
104:19, 105:8,
105:20, 107:10,
108:18, 112:19,
113:21, 114:2,
114:4, 114:11,
126:6, 127:7,
140:21, 141:5,
148:1, 155:5,
159:10, 168:2

**litigations**
99:2, 112:13,
114:10

**little**
13:20, 14:3,
35:22, 49:3,
50:19, 59:3,
74:22, 75:1,
75:8, 78:13,
79:3, 96:22,
114:14, 122:21,
133:21, 139:3,
139:4, 142:3,
161:17, 192:11,
247:12, 250:7,
251:5

**live**
103:12, 159:14

**lives**
159:20, 159:22,
160:2, 160:10

**living**
16:12

**llc**
3:5, 3:14,
18:17, 115:21,
116:2, 118:6,
120:3

**ln**
241:22

**loan**
115:12, 115:19,
116:1, 117:9,
117:12, 117:19,
118:5, 118:11,
118:20, 120:1,
174:5, 174:17,
175:5, 175:15,
176:3, 201:5,
201:8

**loans**
174:10

**located**
146:5

**locked**
164:16, 199:10,
199:11, 199:14,
199:16

**log**
95:7, 301:10

**logged**
94:18, 95:14,
303:20, 305:14,
305:22

**login**
95:10, 95:15,
96:15, 98:12,
98:15, 99:11,
99:15, 99:19,
291:14, 292:4,
293:7, 293:13

**lol**
39:20

**long**
98:7, 132:4,
191:17, 254:14,
274:6, 278:11,
325:14

**longer**
16:7, 137:3,
223:22, 306:20,

306:21, 306:22

**look**
34:9, 34:14,
34:16, 60:11,
62:11, 67:9,
156:1, 163:4,
163:8, 213:21,
219:21, 241:3,
312:15, 322:12

**looked**
94:13, 215:20,
268:1

**looking**
45:7, 45:10,
52:9, 73:5,
86:12, 104:21,
143:1, 191:13,
194:17, 194:22,
195:13, 214:12,
250:15

**looks**
38:5, 49:6,
88:21, 121:5,
140:15, 213:18,
233:15, 234:21,
236:1, 243:22,
260:11, 285:5

**lost**
323:13

**lot**
36:16, 115:5,
154:18, 158:6,
158:22, 202:17,
258:22, 259:2,
318:1, 318:4

**lots**
38:6

**loud**
200:6

**louder**
96:22

**ltc**
201:1, 201:3,
201:4

**lumping**
158:22

**lunch**
102:3, 102:4

**lying**
156:20, 157:1

**M**

**m&t**
189:16

**madam**
74:15, 77:8,
104:12, 115:4,
133:15, 140:10,
147:17, 162:7,
170:3, 172:1,
175:2, 188:8,
200:18, 213:3,
218:7, 294:21

**made**
44:19, 110:22,
129:1, 130:20,
147:20, 151:7,
159:10, 177:18,
196:5, 197:13,
197:22, 199:5,
199:18, 201:8,
203:9, 212:20,
218:21, 233:22,
234:3, 256:6,
307:6

**madoff**
46:21, 46:22

**mail**
9:8, 9:11,
148:11, 148:15,
160:4, 160:7,
258:8, 311:16

**mailed**
148:4

**mailing**
225:9, 225:11,
225:13

**mailings**
146:22, 147:6,
152:10, 153:8,
153:14, 153:19,
154:8, 154:10,
156:19, 156:21,
157:2, 157:17,
158:18, 158:21

**mainly**
168:1

maintain
226:5, 227:17,
227:21, 228:3,
228:9, 228:20,
237:8
maintained
189:21, 237:18,
238:12, 252:12,
252:14
majority
279:7, 280:8
make
15:13, 20:3,
20:16, 39:9,
39:15, 48:10,
52:1, 57:22,
100:22, 104:1,
124:17, 129:6,
129:8, 136:17,
154:17, 156:9,
196:3, 207:18,
209:22, 232:1,
237:8, 244:4,
262:13, 263:20,
265:10, 265:12,
267:17, 269:4,
269:22, 279:3,
280:22, 282:14,
283:6, 314:5,
321:8, 322:4
makes
320:14, 323:7
making
110:16, 118:19,
136:11, 232:18,
281:4
managed
288:11
management
92:7, 92:11,
120:6
mancini
265:4, 265:10,
265:14, 265:18
manipulate
239:16
manner
14:19

manufacturers
182:2
many
12:17, 13:9,
13:11, 17:8,
63:5, 63:9,
63:11, 76:9,
76:13, 126:5,
150:16, 156:5,
189:12, 234:10,
270:18, 277:19,
318:9, 318:10
march
50:11, 50:14
marco
282:6
marinello
3:14
mark
65:14, 240:15
marked
9:6, 9:14,
34:2, 34:3,
50:5, 56:8,
66:8, 66:10,
69:15, 74:11,
78:10, 82:3,
88:6, 105:5,
107:16, 108:13,
115:16, 115:19,
120:21, 133:11,
138:9, 138:12,
138:14, 140:6,
141:17, 162:9,
162:12, 172:4,
172:6, 172:7,
177:5, 178:14,
178:16, 191:5,
195:10, 196:20,
213:12, 213:15,
217:20, 220:20,
223:5, 226:20,
230:13, 240:18,
250:4, 257:10,
266:10, 282:20,
311:22
marketing's
98:2, 147:2,

178:21, 179:11,
179:14, 183:8,
202:14, 202:15,
261:7, 279:7,
280:7
marking
249:19
marty
45:3, 45:20,
47:10, 47:14,
47:18, 47:19,
254:2, 265:1
mary's
16:21, 17:1
maryland
1:2, 2:13,
3:16, 4:8, 10:7,
16:15, 16:17,
179:15, 182:4,
182:22, 183:9,
184:5, 186:8,
186:9, 191:16,
197:9, 197:16,
208:21, 214:16,
215:15, 215:19,
216:22, 220:4,
221:10, 225:12,
226:1, 277:19,
323:1, 328:22
mastercard
227:12, 228:12,
228:17
material
107:7, 118:17,
318:3, 318:4
matter
10:5, 11:16,
145:14
matters
26:17, 27:22
maybe
45:3, 129:14,
150:19, 261:21
mean
24:16, 36:17,
73:4, 109:6,
149:3, 167:5,
167:9, 194:11,

201:4, 207:3,
271:14, 278:4,
290:4, 317:22
meaning
113:21
means
17:5, 46:2,
175:17, 201:3,
290:2, 305:1
meant
73:3, 167:10
mechanicsville
179:15, 182:4,
216:2, 225:11,
225:19, 226:1,
226:8, 226:10,
226:14
meet
319:13
meeting
121:11, 125:3,
125:4, 165:13,
166:4, 166:9,
251:11, 251:18
meetings
125:13, 126:13,
132:17
member
252:11
members
224:6, 251:14
membership
252:7, 252:12,
253:3, 280:1,
280:3, 281:15
memo
177:9, 201:1
mention
265:3, 320:16
mentioned
99:1, 117:17,
125:20, 128:5,
128:13, 128:17,
190:15, 232:3,
318:14, 322:3
mere
111:19
merit
196:6, 197:22,

218:21
**merited**
203:9, 212:21
**merits**
187:16, 187:17,
188:3
**message**
34:10, 34:11,
34:15, 35:2,
35:3, 35:11,
35:20, 36:7,
36:15, 37:5,
37:8, 37:14,
37:20, 38:2,
38:4, 38:9,
38:11, 38:13,
38:14, 38:22,
39:18, 39:21,
40:22, 41:5,
41:8, 41:14,
45:4, 45:9,
45:13, 45:15,
45:18, 46:2,
46:6, 47:11,
48:2, 49:5,
49:6, 49:11,
50:7, 50:10,
50:13, 51:2,
51:7, 51:12,
51:15, 51:18,
52:2, 52:9
**messages**
5:12, 5:14,
21:20, 22:12,
22:16, 33:11,
34:7, 49:14,
74:1
**met**
105:1, 242:21,
275:8, 320:3
**metadata**
313:17
**mic**
32:15
**michael**
1:13, 2:1, 4:3,
5:2, 5:19, 6:5,
6:10, 6:17, 7:5,

7:14, 8:15,
8:17, 8:19, 9:5,
10:5, 10:14,
10:19, 31:1,
31:12, 31:13,
31:16, 32:18,
61:1, 89:4,
89:21, 97:17,
103:22, 104:3,
105:11, 105:13,
105:14, 105:15,
108:12, 112:19,
121:3, 128:7,
142:5, 147:7,
155:4, 197:13,
205:19, 206:17,
206:18, 207:16,
233:1, 235:7,
267:20, 274:17,
282:9, 289:2,
292:4, 292:6,
314:8, 314:13,
315:3, 316:2,
316:6, 316:8,
318:21, 318:22,
324:2, 324:14,
327:2
**michaelrwhite@co-
mcast**
56:15, 56:19,
66:12, 82:6,
87:6, 90:1,
92:22, 237:9
**michaelrwhite@co-
mpass**
69:22
**microphone**
102:20, 205:8,
234:17
**middle**
36:14, 233:12
**midst**
251:2
**might**
38:1, 38:2,
116:18, 140:18,
156:6, 168:17,
201:2, 217:9,

269:3, 276:21,
302:7, 308:18
**mike**
36:5, 41:6,
48:1, 67:1,
70:2, 82:13,
94:2, 163:15,
235:16, 235:17,
257:16, 259:4
**miller**
144:12, 144:16,
177:11
**mind**
52:8, 73:17,
130:4, 156:8,
254:5, 290:3
**mine**
194:10
**mini**
326:4
**minimize**
141:10
**minute**
161:19, 254:5
**minutes**
87:17, 100:12,
102:5, 102:8,
102:13, 125:3,
125:4, 160:17,
161:22, 217:15,
274:9, 304:4
**mischaracterizat-
ion**
43:13, 184:12
**mischaracterizes**
52:17, 69:10,
84:10
**mischaracterizing**
182:13
**misconduct**
206:2
**misrepresentation**
125:22
**misrepresenting**
315:13
**missing**
129:9, 130:11,
139:22, 173:20,

319:12
**misstate**
158:10, 303:12
**misstates**
287:5
**misstating**
292:13, 292:15
**mistake**
183:14
**mistaken**
310:20, 312:18
**mistakes**
312:22
**misunderstandings**
312:22
**mitch's**
251:12
**mitchell**
80:19, 89:8
**mode**
244:1
**modification**
246:17
**modified**
244:19, 244:22,
245:1, 245:10,
245:11
**moment**
13:22, 107:5,
109:15, 109:18,
115:11, 136:2,
136:7, 146:3,
163:1, 180:22,
205:6, 224:21,
226:19, 233:7
**momentarily**
115:12
**money**
36:4, 141:22,
142:11, 169:13,
170:11, 170:18,
171:8, 193:19,
193:21, 195:22,
205:20, 206:6
**monies**
278:18, 279:1
**moniker**
275:1

monitor
240:4
monserez
254:3, 265:2
month
237:18, 259:21,
260:1, 261:13
monthly
259:5, 259:17,
260:8, 261:8,
280:1
more
17:6, 34:16,
52:14, 75:3,
75:5, 82:11,
100:12, 102:4,
102:8, 119:1,
119:3, 119:4,
119:6, 119:7,
126:3, 129:4,
133:21, 150:18,
150:20, 154:21,
190:7, 190:10,
192:11, 210:4,
254:4, 316:14,
319:18, 320:8,
323:7, 324:22
morning
11:22, 239:5
most
56:18, 161:6,
162:13, 180:18,
285:3
mostly
11:11
motion
6:15, 7:9,
100:22, 105:14,
105:22, 106:4,
106:20, 107:2,
107:12, 108:12,
110:1, 110:10,
112:16, 120:14,
120:20, 121:1,
123:6, 123:7,
123:20, 133:8,
133:14, 134:2,
134:10, 134:19,

135:8, 135:21,
138:8, 138:16,
138:17, 138:19,
138:21, 140:13,
140:16, 143:20,
145:12, 145:14,
169:1, 178:9,
317:16, 320:16,
320:17, 320:19,
321:21, 321:22
motivation
204:21, 205:2
motive
27:16, 27:22,
97:21, 98:7,
111:9, 113:16,
126:1, 126:3,
126:14, 127:8,
128:2, 137:8,
137:13, 154:11,
154:13, 154:14,
156:11, 156:13,
156:18, 167:22,
168:5, 176:13
move
20:7, 69:3,
101:14, 120:12,
127:16, 130:7,
138:5, 206:21,
249:16, 267:4,
278:6, 278:11
moving
203:14
mrw
5:12, 5:13,
5:14, 5:15,
5:16, 5:17,
5:20, 5:21,
5:22, 6:6,
33:21, 39:12,
47:21, 49:1,
49:18, 56:6,
65:12, 66:11,
69:17, 74:10
much
37:3, 113:17,
209:22, 212:2,
234:6, 262:9,

269:15, 324:9,
325:5
mute
205:8
mwhite@compassma-
rketinginc
89:22, 94:1,
94:3, 94:14,
94:19, 95:3,
95:17, 227:1,
229:12, 230:4,
257:17
myself
11:16, 12:1,
90:18, 164:21,
169:7

## N

name
10:9, 10:18,
46:10, 46:16,
46:18, 47:2,
50:21, 107:2,
143:7, 148:18,
148:20, 149:6,
149:7, 149:11,
149:13, 149:14,
172:18, 173:8,
178:21, 186:2,
202:8, 202:14,
202:15, 215:12,
215:13, 221:2,
221:4, 221:5,
222:8, 223:9,
223:11, 223:18,
225:1, 225:7,
245:13, 246:7,
246:9, 247:18,
252:10, 252:11,
254:4, 269:7,
275:1, 275:3,
275:4, 276:15,
285:8, 288:11,
289:1, 297:1,
307:16, 307:20,
314:20, 322:3,
322:17
named
11:7, 46:10,

46:13, 46:21,
47:19, 135:13,
228:6, 274:18
names
223:19, 252:14
naperville
242:1
narrative
98:5
narrowly
112:17
native
30:4, 30:17,
30:20, 30:21,
31:4, 31:9,
31:11, 31:14,
31:20, 32:3,
32:16, 32:21,
310:18, 311:4,
311:8, 311:14,
313:1, 313:4,
314:7, 314:10,
314:14, 315:11,
315:20, 316:1,
316:2, 316:7
nature
142:15
ne
235:20
need
14:6, 14:10,
14:17, 17:4,
34:16, 51:22,
67:8, 102:7,
129:2, 161:10,
166:22, 167:8,
203:6, 215:4,
231:20, 231:22,
234:6, 249:15,
251:6, 251:8,
267:4, 268:7,
293:8, 299:19,
299:22, 300:5,
300:7
needed
102:5, 165:10
neither
328:9

**nemetz**
89:8, 254:3
**nena**
139:7
**nervous**
38:20, 38:21
**net**
56:15, 56:19,
66:12, 69:22,
82:6, 87:6,
90:1, 92:22,
93:16, 99:20,
237:9
**never**
77:17, 98:5,
169:14, 204:3,
204:6, 206:13,
206:14, 261:18,
262:1, 263:7,
263:10, 263:12,
270:12, 270:15,
299:20
**nevertheless**
157:20
**new**
49:20, 56:5,
65:11, 65:19,
69:13, 74:19,
78:9, 82:1,
87:11, 107:17,
133:6, 157:9,
161:4, 194:20,
208:16, 218:7,
226:17, 323:12
**next**
36:11, 39:7,
39:17, 41:5,
41:11, 44:22,
47:21, 51:5,
88:11, 89:20,
104:14, 121:20,
146:14, 178:11,
208:8, 215:10,
222:21, 245:1,
245:4, 245:7,
245:13, 272:16
**nice**
249:6

**nickname**
149:5, 149:8
**nights**
259:2
**non**
36:3, 36:22,
70:3
**nonanswer**
114:20
**noncompete**
84:19
**none**
29:9, 79:12,
135:18, 261:9
**nonparty**
4:3, 87:2,
319:22
**nonpublicly**
18:12
**noon**
101:21
**nope**
60:2
**normally**
165:1
**north**
3:6
**northern**
1:3, 10:7
**notarial**
328:14
**notary**
2:12, 328:1,
328:21
**note**
243:12
**noted**
10:11, 100:9,
188:5, 219:6,
230:15, 230:18,
318:11
**notes**
71:10
**nothing**
12:2, 97:8,
97:11, 104:10,
110:2, 113:1,
116:21, 129:9,

152:15, 152:16,
156:6, 169:21,
186:6, 206:19,
258:7
**nothing's**
305:3
**notice**
2:12
**notified**
164:19
**noting**
122:7
**nov**
227:14
**november**
31:5, 32:8,
32:19, 161:6,
162:14, 163:17,
164:3, 164:8,
164:22, 165:3,
165:7, 167:15,
189:22, 190:5,
190:9, 190:15,
210:9, 226:18,
227:2, 311:6
**nowhere**
291:20
**number**
17:16, 27:12,
27:13, 33:19,
39:14, 74:14,
104:13, 133:16,
161:14, 161:17,
172:1, 192:19,
195:13, 213:3,
229:6, 231:3,
231:5, 285:11,
318:12
**numbers**
65:22
**nuts**
251:5

---
**O**
---

**oath**
16:2, 111:1,
125:16, 128:18,
132:9

**object**
25:2, 29:1,
56:2, 116:3,
134:14, 135:2,
142:6, 142:14,
178:4, 180:14,
181:10, 182:6,
190:12, 192:9,
194:16, 208:15,
224:15, 229:13,
236:19, 242:18,
243:14, 255:3,
262:19, 270:14,
281:2, 282:19,
284:4, 293:15,
296:9, 297:9,
299:11, 310:11,
319:17
**objecting**
158:5, 159:2,
262:5, 278:10,
317:11
**objection**
20:1, 22:3,
23:15, 24:2,
24:5, 24:12,
24:13, 24:21,
25:1, 25:12,
25:16, 25:19,
26:2, 26:9,
26:11, 26:19,
27:1, 27:10,
28:6, 28:11,
28:17, 28:22,
29:6, 30:7,
34:12, 35:14,
35:18, 37:10,
40:14, 40:18,
41:18, 42:6,
42:12, 42:17,
43:4, 43:12,
44:2, 44:5,
44:10, 46:4,
46:7, 47:15,
48:17, 49:15,
52:17, 53:3,
54:5, 55:18,
59:17, 60:17,

61:3, 61:4,
61:14, 61:20,
62:9, 62:14,
62:20, 63:8,
64:2, 64:13,
64:17, 64:18,
64:22, 65:8,
67:3, 67:11,
67:20, 68:3,
68:10, 68:18,
69:1, 69:10,
69:11, 73:21,
76:15, 77:5,
77:22, 84:9,
85:2, 87:1,
90:6, 90:14,
91:10, 91:14,
93:12, 94:11,
95:13, 95:18,
101:13, 101:18,
105:11, 105:13,
105:21, 109:10,
109:12, 117:5,
118:8, 119:8,
120:10, 122:3,
123:3, 124:2,
124:7, 124:15,
134:11, 134:22,
135:3, 135:16,
136:18, 136:20,
139:9, 139:15,
142:2, 143:10,
144:9, 144:13,
144:17, 145:1,
145:5, 145:9,
146:7, 151:22,
155:8, 157:10,
157:19, 164:4,
165:8, 165:16,
166:7, 166:19,
167:3, 167:20,
169:18, 170:5,
170:15, 170:20,
170:21, 170:22,
171:1, 171:10,
171:11, 171:12,
171:15, 172:15,
172:20, 172:21,

173:4, 173:9,
173:18, 173:19,
174:6, 174:7,
174:12, 174:14,
174:19, 175:7,
175:8, 175:16,
176:5, 176:6,
176:7, 179:1,
180:12, 181:3,
182:12, 182:18,
183:3, 183:10,
183:15, 183:16,
183:22, 184:11,
184:18, 185:16,
185:18, 186:4,
186:16, 186:20,
186:22, 187:5,
187:6, 187:10,
187:15, 187:16,
187:21, 188:5,
190:12, 192:15,
194:3, 194:7,
194:14, 194:19,
196:2, 196:5,
196:7, 196:14,
197:20, 197:22,
202:1, 203:7,
203:9, 205:14,
208:15, 208:16,
212:10, 212:18,
212:21, 212:22,
213:5, 216:9,
216:11, 216:15,
216:17, 217:2,
218:13, 218:17,
218:21, 219:1,
219:5, 221:20,
221:21, 227:8,
227:9, 229:16,
243:1, 253:21,
263:9, 263:14,
268:21, 269:6,
270:1, 271:7,
271:21, 272:20,
273:5, 278:4,
278:21, 280:10,
281:8, 281:10,
281:12, 286:6,

287:5, 289:8,
289:9, 290:1,
291:6, 291:7,
293:6, 294:7,
294:9, 294:10,
294:11, 294:15,
295:1, 295:2,
295:13, 296:19,
298:15, 298:16,
299:16, 300:2,
300:3, 300:10,
300:15, 301:4,
301:5, 301:13,
301:15, 305:18,
305:20, 306:4,
306:5, 306:11,
306:14, 308:6,
317:12
**objectionable**
263:1
**objections**
100:8, 136:12,
155:3, 174:1,
179:22, 325:4
**obligations**
320:4
**observe**
121:15
**obtain**
118:20, 145:7,
278:2, 278:3
**obtained**
19:7, 89:16
**obviously**
39:14, 54:7,
101:17, 113:16,
124:17, 133:1,
145:20
**occupations**
16:8
**occur**
81:8, 272:15
**occurred**
71:17, 71:22,
294:16
**october**
13:19, 16:6,
51:9, 144:6,

290:22, 328:17
**odd**
269:11
**off-payroll**
279:8
**offer**
36:3, 36:20,
203:10
**offered**
322:12
**office**
11:6, 11:11,
30:22, 31:11,
31:13, 32:7,
32:8, 32:19,
32:20, 33:5,
39:15, 103:14,
103:17, 104:10,
208:21, 226:11,
276:14, 310:18,
311:6, 323:5
**officer**
12:22, 13:3,
13:12, 13:15,
13:18, 16:5,
328:2
**often**
94:22
**oh**
75:7, 96:13,
161:15, 165:22,
218:2, 223:3,
263:16
**ok**
39:19, 41:7
**old**
36:16, 36:20,
68:6
**omission**
224:12
**once**
265:21
**one's**
313:12
**onedrive**
288:9, 288:10,
303:16
**ones**
12:9, 39:11,

188:14
**ongoing**
112:14
**only**
12:9, 12:10,
29:22, 76:6,
94:9, 107:21,
112:17, 113:6,
123:22, 140:15,
185:21, 188:14,
190:20, 195:14,
202:19, 223:19,
244:1, 249:16,
261:3, 270:4,
270:16, 298:6,
299:7, 299:13,
304:6, 312:16,
312:19, 314:17,
315:21, 318:8,
326:8
**open**
178:20, 179:19,
182:1, 191:7,
191:17, 231:4,
231:8, 234:10,
239:20, 249:2,
249:5, 257:8,
284:7, 307:8,
310:12
**opened**
110:15, 111:10,
128:6, 179:5,
179:9, 180:2,
180:4, 190:19,
240:6, 240:10
**opening**
113:2, 128:12,
130:9
**operate**
16:20, 86:15,
191:19
**operating**
189:9, 189:11,
189:12, 189:20,
190:4, 190:8
**operation**
255:12
**operations**
215:14, 255:13,

255:15, 271:20
**opinion**
24:3, 24:18,
25:2, 25:8,
26:4, 26:5,
26:6, 28:9
**opportunity**
98:8, 127:22,
128:18, 129:19,
130:8, 309:10,
310:9, 316:15
**oppressive**
175:10
**options**
244:1
**orange**
189:18
**order**
110:9, 112:2,
112:4, 112:10,
112:17, 116:6,
116:22, 128:3,
132:21, 144:19,
155:15, 177:8,
197:13, 234:2,
321:5, 321:8,
326:1, 326:10
**ordered**
111:22
**orders**
99:9
**orient**
38:2
**original**
78:15, 89:3,
163:20, 235:21,
253:13, 313:8,
315:22, 316:4
**originally**
53:15, 53:19,
53:21, 54:1,
189:18, 323:12
**orphans**
16:18, 16:19,
16:22, 17:9,
17:12, 17:18,
18:2, 81:20
**other**
11:8, 16:8,

18:9, 18:12,
18:13, 18:16,
18:18, 19:19,
19:22, 33:6,
86:16, 86:21,
91:13, 97:6,
97:7, 99:2,
100:7, 103:18,
107:2, 108:1,
112:13, 114:2,
114:9, 114:10,
116:7, 120:5,
120:6, 122:10,
124:12, 124:22,
127:18, 144:20,
145:22, 149:11,
154:9, 156:7,
158:1, 159:8,
159:11, 171:7,
191:21, 192:2,
192:6, 193:3,
193:7, 193:12,
193:20, 197:12,
205:1, 205:21,
208:6, 208:19,
209:1, 212:4,
216:1, 216:7,
216:14, 222:4,
226:14, 231:6,
231:10, 232:7,
246:8, 252:18,
253:6, 253:19,
257:8, 258:7,
262:22, 264:20,
269:21, 270:6,
275:15, 278:2,
298:10, 308:10,
309:14, 313:10,
314:1, 316:19,
316:21, 316:22,
317:3, 317:10,
318:14, 321:19,
323:20
**others**
272:1, 314:4
**otherwise**
14:22, 15:8,
102:20, 116:22,

328:12
**ourselves**
303:5, 304:22
**out**
30:8, 30:12,
36:22, 85:7,
95:19, 95:21,
96:2, 116:1,
116:5, 117:6,
117:9, 118:11,
127:15, 129:12,
132:16, 136:1,
136:2, 136:6,
136:12, 146:8,
146:10, 146:12,
147:12, 147:13,
152:2, 152:4,
155:12, 155:13,
158:12, 161:17,
164:16, 199:10,
199:11, 199:14,
199:16, 205:5,
214:2, 215:8,
232:2, 249:1,
252:19, 252:20,
252:21, 276:14,
282:5, 285:13,
285:14, 287:12,
292:2, 292:19,
301:21, 308:19,
309:8, 311:13,
311:14, 319:7
**outcome**
328:12
**outgoing**
297:16, 297:17,
297:21
**outlook**
288:8, 288:9
**outset**
103:7
**outside**
99:8, 99:9,
122:8, 132:20,
144:19, 152:20,
167:21
**over**
14:3, 32:10,

55:2, 55:6,
92:19, 126:17,
127:14, 129:22,
131:2, 131:16,
149:3, 153:12,
231:14, 240:4,
244:12, 265:21,
292:10, 299:12,
322:12
**overview**
14:4
**owed**
36:4, 99:6,
110:4, 110:5,
126:16, 142:1,
142:12, 205:22,
303:1
**own**
34:22, 91:13,
113:19, 126:3,
146:22, 201:21,
270:5, 281:9,
307:20
**owned**
16:13, 17:21,
18:9, 18:12,
18:21, 91:11,
91:16, 92:1,
92:4, 92:9,
92:12
**owner**
17:22, 18:7,
18:20, 23:21,
24:9, 49:9,
90:11, 90:12,
90:16, 90:18,
91:3, 91:6,
91:9, 113:17,
120:4, 120:5,
127:5, 127:6,
152:11, 164:9,
202:8, 202:16,
222:15, 222:17,
223:13, 224:9,
255:11, 279:7,
280:8, 288:20,
288:22
**owners**
225:6, 238:9,

246:4
**ownership**
99:8, 122:6,
125:22, 128:7,
224:7, 262:6,
262:7
**owns**
127:8, 148:2

**P**

**pa**
4:5
**package**
53:5, 53:13,
53:16, 54:4,
54:18, 55:17,
253:13, 275:19
**packages**
277:8, 277:15
**page**
5:2, 5:11, 6:3,
7:3, 8:3, 9:3,
34:6, 36:1,
37:17, 38:17,
44:22, 47:21,
51:5, 51:6,
51:11, 51:18,
72:4, 72:15,
74:9, 75:6,
83:3, 117:3,
119:22, 121:20,
241:15, 247:18,
258:9, 268:15,
307:16, 310:14,
321:11
**pages**
1:21, 33:22,
76:19, 84:18,
244:14, 244:15,
249:16
**paid**
164:12, 177:8,
202:17, 212:2,
230:18, 252:5,
252:8, 252:17,
253:6, 253:10,
253:16, 254:7,
254:10, 254:15,

256:15, 278:18,
278:20
**pants**
166:22, 167:8
**paperwork**
151:6
**paragraph**
109:5, 241:18,
242:13
**parcel**
49:5, 154:8,
206:1
**part**
11:11, 16:13,
49:19, 83:3,
98:2, 108:16,
110:8, 123:7,
124:4, 124:19,
125:21, 137:13,
140:15, 154:7,
154:9, 178:10,
188:13, 206:1,
212:1, 225:20,
253:12, 256:16,
257:4, 261:13,
285:7, 323:14
**partial**
88:21, 88:22,
152:11
**participated**
156:12
**particular**
70:6, 164:10,
164:11, 197:5,
197:10, 215:5,
254:5, 283:3
**particularly**
194:17
**parties**
10:22, 103:7,
112:16, 147:1,
313:10, 314:4,
328:10
**party**
79:5, 126:2,
155:5, 301:19,
311:17, 313:6,
313:7, 319:20

**pass**
281:20
**password**
95:10, 96:16,
98:12, 99:11,
99:16, 101:11,
291:3, 292:4,
293:7, 293:13
**past**
238:18, 254:18,
267:7
**patricia**
173:14, 173:16
**patrick**
144:16, 148:22,
177:10
**pattern**
205:18, 206:2
**pay**
126:15, 201:16,
229:1, 230:15,
252:19, 252:22,
253:1, 279:22
**payable**
177:15, 177:18,
197:13, 199:5,
199:18
**paycheck**
6:18
**paychecks**
259:22
**paying**
227:17, 228:8,
253:19, 259:22,
261:12, 281:15
**payment**
201:7, 227:11,
260:7, 260:19,
260:21, 261:7
**payments**
8:15, 8:17,
177:10, 187:4,
227:1, 230:3,
253:9, 256:3,
279:9, 320:21,
321:3, 321:18,
321:19
**payroll**
164:15, 164:16,

180:17, 206:19,
210:8, 210:12,
210:15, 210:18,
210:21, 211:2,
211:5, 211:10,
211:13, 211:22,
216:4, 260:1,
260:5, 260:6,
280:2, 280:5

**payrolls**
164:12

**pdf**
30:19, 30:20,
31:3, 31:7,
49:22, 66:15,
66:16, 215:5,
283:18

**pdfs**
282:10

**penalty**
109:1, 109:3,
118:7

**pending**
25:7, 43:19,
64:7, 77:9,
115:7, 147:19,
170:4, 175:3,
185:2, 188:10,
200:20, 294:22

**people**
14:9, 36:17,
68:1, 68:12,
128:6, 250:16,
264:16, 264:20,
269:10, 277:22

**percent**
113:11, 222:11

**perfectly**
129:17, 137:6

**perform**
165:6, 204:14,
208:13, 208:20,
209:11

**performed**
164:2, 164:7,
164:11, 165:6,
206:15, 208:18,
270:7

**performing**
91:4, 209:16,
209:19, 210:2

**period**
149:18, 255:21,
256:19, 265:21,
296:18

**perjury**
109:2, 109:4,
118:7

**permission**
192:5, 192:13,
193:10, 193:16

**permitted**
176:12

**person**
148:5, 171:7,
210:7, 210:12,
210:14, 210:17,
210:20, 211:1,
211:4, 211:9,
211:12, 214:1

**personal**
56:16, 57:7,
57:8, 98:12,
98:15, 99:19,
100:18, 252:19,
287:17

**personally**
202:5

**personnel**
265:11, 265:13,
265:19, 266:3

**pertain**
106:6

**phone**
11:2, 12:3,
12:4, 12:10,
103:11, 103:18,
200:13

**photograph**
41:1

**physical**
49:8

**picking**
153:5

**pieces**
280:4

**pile**
322:11

**pines**
18:17, 115:21,
116:2, 117:10,
117:13, 118:6,
118:12, 120:2

**pinpoint**
44:6

**place**
166:10, 242:2,
242:5, 251:12,
265:18

**placed**
266:2, 268:11,
272:9, 272:12,
273:1

**placeholder**
30:20, 32:22

**plainly**
99:1

**plaintiff**
1:6, 3:3,
11:15, 113:13

**plan**
30:3, 235:1,
251:10

**planet**
10:10

**planned**
141:21, 142:9,
174:16

**planning**
126:15

**please**
10:17, 14:14,
14:17, 14:22,
15:7, 15:14,
20:8, 23:17,
24:8, 25:4,
25:6, 25:15,
25:18, 25:21,
26:13, 29:2,
37:13, 40:15,
42:7, 42:21,
43:16, 50:4,
52:19, 53:2,
55:15, 57:21,

60:19, 61:17,
62:18, 64:6,
67:4, 69:3,
70:2, 71:19,
74:22, 77:6,
77:7, 85:18,
86:19, 90:15,
95:15, 109:17,
124:19, 134:16,
142:7, 147:18,
155:1, 166:2,
168:20, 170:1,
175:1, 175:13,
182:15, 183:6,
184:21, 186:12,
188:7, 200:4,
205:6, 227:16,
263:4, 278:6,
283:18, 284:7,
294:20, 295:10,
305:12, 307:18,
309:6, 326:11

**plenty**
100:5

**pocket**
252:19

**point**
12:21, 19:5,
27:13, 51:3,
52:10, 76:2,
77:14, 97:10,
98:14, 114:14,
128:10, 129:11,
136:11, 137:22,
160:12, 168:17,
172:22, 174:4,
203:4, 203:18,
204:22, 232:13,
265:9, 265:17,
291:12, 293:14

**police**
12:22, 13:3,
13:12, 13:15,
13:18, 16:5

**portion**
145:21, 145:22,
309:4, 325:8

**position**
81:19, 130:6,

135:18, 208:9,
269:4
**positions**
114:15, 129:11,
318:11
**positive**
149:13, 200:14
**possible**
246:20, 247:3,
247:9
**possibly**
205:8, 232:9
**post-employment**
8:21, 9:13,
240:1, 240:22,
266:13, 321:19
**potential**
320:16
**PPP**
115:19, 116:1,
117:9, 117:12,
117:19, 118:5,
118:11, 120:1
**practice**
63:21, 68:8,
68:11, 206:2
**practiced**
205:18, 241:10
**precise**
17:15, 158:8
**precisely**
299:17
**preference**
30:14
**present**
4:11, 10:11,
128:1, 167:16
**presenting**
286:17
**presently**
167:18
**preserving**
188:4
**president**
255:13, 255:14
**pressing**
314:19
**presumably**
155:5

**pretty**
233:11, 269:15,
278:11, 284:2
**prevail**
27:8, 28:4
**previous**
152:19, 299:17
**previously**
9:6, 9:14,
118:10, 135:17,
213:6, 237:7,
250:3, 256:20,
261:11, 261:17,
263:2, 263:7,
266:9, 282:19,
313:6
**price**
205:3
**principal**
221:8, 225:15,
225:16, 225:18,
225:21, 225:22,
226:3, 226:7,
226:11, 226:14
**print**
173:7, 285:14,
285:16, 285:17,
286:4, 287:12,
287:13, 288:3,
295:22, 297:6
**printed**
75:8, 172:18,
183:12, 183:13,
183:17, 184:2,
184:4, 185:7,
185:9, 185:11,
221:4, 223:11,
245:6, 245:7,
247:6, 285:12,
286:1, 286:10,
286:16, 287:22,
289:11, 303:11
**printout**
73:13, 73:18,
74:1, 326:4
**printouts**
94:9
**prior**
18:2, 21:18,

21:21, 22:5,
22:9, 22:10,
22:13, 22:17,
23:9, 69:11,
84:10, 119:21,
153:7, 170:10,
170:17, 211:19,
229:4, 230:7
**probably**
67:21, 150:21,
202:21, 257:1,
264:11, 264:13,
323:6, 323:7,
326:6
**problem**
233:16
**problems**
100:7
**procedure**
101:15
**proceeding**
122:10
**proceedings**
11:19, 13:5,
13:7, 13:9,
97:7, 122:11,
208:6, 309:16
**process**
14:2, 187:18,
211:21, 253:8
**processing**
210:8, 210:12,
210:15, 210:18,
210:21, 211:2,
211:5, 211:10,
211:13
**produce**
29:18, 30:3,
35:11, 35:17,
37:8, 37:15,
37:20, 72:12,
74:3, 81:1,
84:22, 313:7,
314:10, 314:13,
315:19, 315:22,
318:21, 319:18
**produced**
29:11, 30:19,

30:21, 31:14,
32:18, 33:12,
34:7, 34:10,
34:11, 34:15,
35:6, 35:20,
39:3, 39:5,
39:10, 50:7,
51:7, 58:4,
59:8, 70:18,
70:19, 70:22,
72:8, 72:10,
72:18, 72:21,
81:3, 84:22,
88:18, 94:3,
97:15, 99:3,
185:3, 231:7,
270:22, 310:17,
311:2, 311:5,
311:16, 311:18,
313:3, 313:5,
313:6, 313:18,
314:3, 314:7,
314:14, 315:18,
315:21, 316:1,
318:22, 319:11,
319:19, 320:2
**producing**
57:13, 71:2,
72:19, 73:11,
73:13, 73:18,
74:5, 181:16
**production**
31:2, 81:2,
310:15, 315:9,
320:3
**proffer**
96:15, 97:2
**program**
6:18, 36:21
**progress**
232:1
**prolly**
38:6
**proper**
97:13, 98:11,
99:10, 99:12,
99:16, 110:6,
110:7, 112:9,

116:18, 116:22,
119:17, 132:5,
132:21, 152:21,
155:21, 156:9,
157:8, 157:20,
169:20, 171:1,
303:2, 304:21,
317:5

**properly**
142:1, 205:22,
206:12

**properties**
244:13

**protect**
244:1

**protection**
6:18

**proud**
323:13

**proves**
262:22

**provide**
60:7, 67:18,
67:22, 68:1,
68:8, 68:9,
68:11, 69:7,
72:16

**provided**
29:3, 118:14,
118:15, 185:15,
243:8

**providing**
68:15, 70:21,
72:11, 72:13,
72:16, 73:22,
74:3, 84:12

**provision**
78:5

**public**
2:13, 328:1,
328:21

**publicly**
18:10

**pulice**
135:13

**pull**
33:15, 33:16,
34:21, 88:12,

115:10, 115:11,
133:7, 140:5,
141:15, 142:18,
146:2, 161:11,
161:19, 178:12,
233:3, 279:3,
282:8, 293:18,
294:4, 295:5,
295:20

**punch**
39:20, 40:13,
40:17, 40:20

**punishable**
118:20

**purchased**
189:18

**purple**
245:12

**purport**
119:15, 159:3,
197:6

**purporting**
113:10

**purports**
30:5, 80:4,
80:17, 239:4

**purpose**
112:12, 168:2,
169:20, 175:11,
177:20, 189:5,
276:3, 317:7

**purposes**
100:22, 120:19,
133:18, 138:14,
157:21, 187:17,
188:3, 202:11,
202:20, 311:4

**pursuant**
2:12, 29:12,
133:1

**put**
39:14, 49:16,
58:4, 109:11,
141:2, 148:10,
148:14, 164:13,
166:21, 167:7,
180:10, 180:16,
185:14, 206:18,

223:2, 224:3,
233:5, 262:20,
271:9, 308:5,
308:17, 314:22,
315:15

**putting**
34:20, 74:7,
98:11, 314:20

---

**Q**

**qualify**
72:20

**quarter**
264:12

**quash**
6:15, 7:9,
105:14, 135:22,
140:14, 321:21

**questioning**
97:9, 111:12,
111:21, 112:8,
152:21, 156:9,
159:7, 168:13,
173:21, 176:19,
178:5, 187:10,
187:22, 203:14,
242:19, 262:20,
304:21, 305:7,
325:15

**questions**
14:6, 15:18,
52:7, 59:22,
67:4, 73:16,
112:11, 113:7,
116:14, 119:20,
125:7, 125:10,
127:20, 130:19,
132:12, 132:22,
133:3, 137:15,
138:1, 138:4,
140:1, 141:11,
144:2, 146:13,
147:15, 153:5,
157:16, 157:18,
157:22, 158:11,
158:15, 159:1,
169:20, 170:8,
181:11, 186:6,

194:4, 194:8,
206:12, 208:2,
208:9, 231:2,
231:13, 261:6,
262:5, 262:6,
263:1, 263:19,
274:13, 283:9,
284:3, 284:4,
284:19, 291:20,
293:2, 293:14,
293:21, 294:19,
307:5, 307:11,
308:13, 308:17,
313:16, 313:20,
316:14, 320:8,
324:17

**quick**
20:3, 102:2,
231:18, 307:10,
323:19

**quickly**
104:8, 155:16,
242:18

**quinn**
250:13

**quote**
279:8, 279:9

---

**R**

**raise**
45:3, 318:7

**raised**
66:5, 112:22,
259:5, 259:17,
319:17

**raising**
114:21

**ralph**
251:6, 251:15

**ran**
280:4

**rather**
132:10, 180:8,
182:4, 266:17,
271:6

**re-go**
319:21

**read**
25:6, 25:7,

43:19, 45:1,
64:7, 77:9,
107:5, 115:7,
119:15, 130:5,
130:11, 147:18,
147:19, 163:1,
170:4, 175:3,
185:1, 185:2,
188:8, 188:10,
200:20, 225:20,
226:12, 241:19,
244:1, 249:13,
249:17, 250:6,
250:12, 250:15,
250:18, 257:19,
258:1, 258:4,
267:3, 267:6,
267:10, 267:22,
268:5, 294:20,
294:22, 310:12,
322:15, 327:3

**reading**
36:14, 224:3,
249:15, 250:9,
250:10, 257:22,
268:8, 268:9,
328:8

**reads**
45:1, 82:9

**ready**
88:13, 129:22,
132:18, 161:22,
162:3, 231:19,
266:19

**real**
174:10, 175:15,
182:10, 182:16,
242:10, 297:18,
307:10

**realize**
87:19, 88:2,
126:19, 146:15,
161:16, 317:10

**really**
161:13, 208:4,
253:8, 317:9

**realtor**
154:4, 277:22,

278:12

**realtors**
276:2, 276:7,
277:19, 278:3

**reask**
25:4, 73:22,
306:21

**reason**
81:1, 92:14,
92:20, 135:17,
143:5, 155:13,
191:3, 206:12,
219:16, 220:18,
236:5, 236:12,
237:4, 237:21,
248:6, 254:21,
255:2, 255:5,
259:10, 259:20,
275:7, 275:9,
275:10, 275:12,
275:13, 275:16,
275:17, 275:21,
276:5, 276:9,
276:19, 277:12,
277:17, 307:7,
308:3, 308:9,
309:13, 313:7,
314:22, 318:8,
318:13

**reasons**
53:19, 100:20,
112:1, 116:3,
116:7, 117:5,
118:10, 119:17,
129:10, 130:6,
132:14, 132:22,
135:16, 137:8,
137:19, 143:21,
144:20, 152:20,
176:9, 176:17,
213:6, 263:2,
291:10, 291:13,
314:1, 317:3

**rec**
216:6

**recall**
18:19, 40:2,
50:10, 50:13,

52:5, 57:14,
67:13, 70:21,
71:2, 71:5,
71:21, 72:4,
72:6, 72:11,
72:13, 72:16,
72:19, 73:13,
73:18, 73:22,
75:9, 76:6,
76:13, 78:19,
106:20, 177:14,
193:10, 193:13,
193:15, 201:10,
201:12, 238:11,
247:17, 248:13,
248:15, 248:16,
248:18, 253:14,
253:18, 259:7,
259:8, 260:12,
261:9, 262:12,
263:21, 264:8,
264:15, 264:19,
265:9, 274:19

**recalled**
264:20

**recalling**
321:4

**receive**
35:3, 36:6,
37:5, 38:11,
38:14, 41:13,
89:18, 177:8,
187:3, 230:5,
259:11, 279:11,
279:20, 307:14,
307:15, 308:4,
308:10

**received**
30:17, 33:2,
38:22, 39:22,
40:22, 41:3,
41:9, 45:11,
45:14, 48:3,
51:2, 52:2,
58:6, 58:8,
70:13, 231:5,
231:9, 235:12,
237:14, 239:10,

254:12, 261:22,
279:8, 279:16,
299:20, 307:12,
307:22, 311:5,
311:9, 314:4,
314:8, 316:8,
318:16, 318:20,
321:19

**receiving**
50:10, 50:13,
57:14, 72:4,
72:6, 80:15,
163:11, 227:20,
228:2, 259:7,
259:8

**recent**
56:18, 161:6,
162:13, 285:3

**recently**
53:17, 62:5

**recess**
103:2, 160:22,
217:19, 274:3

**recipient**
31:16, 89:13,
139:8, 144:7,
284:22, 285:3,
286:5, 286:9,
287:4, 287:8,
291:22, 295:8,
307:16, 307:20

**recognition**
101:20

**recognize**
46:16, 56:10,
56:13, 178:18,
235:22, 238:3,
238:15, 238:18,
258:11

**recognized**
271:4, 271:15

**recollection**
18:6, 45:8,
51:1, 59:15,
71:5, 73:11,
193:1, 285:22

**reconcile**
184:7

**record**
10:2, 10:11,
10:18, 30:14,
96:5, 100:11,
101:4, 101:9,
103:1, 103:4,
108:2, 109:12,
116:4, 117:6,
119:15, 145:11,
160:21, 161:1,
162:3, 176:10,
187:19, 188:4,
205:10, 207:22,
213:1, 217:14,
217:18, 217:22,
219:6, 232:11,
241:19, 262:14,
262:21, 274:1,
274:4, 292:16,
308:18, 308:20,
309:22, 310:7,
313:22, 315:16,
320:14, 324:1,
324:3, 324:6,
324:9, 325:17,
325:18, 325:20,
325:22, 326:13,
328:5
**recording**
104:10, 309:19
**recordings**
11:17
**records**
216:3
**redd's**
262:16
**reduced**
328:7
**reductions**
71:18, 72:2
**refer**
46:15, 47:4,
47:8, 108:6,
181:11, 321:17
**reference**
45:12, 45:17,
45:20, 47:10,
47:13, 48:5,

48:8, 48:13,
48:15, 48:21,
50:17
**referenced**
284:21
**referred**
46:12, 47:18,
50:3, 58:20,
220:10, 274:22
**referring**
44:7, 46:9,
46:20, 59:1,
59:10, 63:12,
73:7, 176:4,
181:2, 218:6,
251:20, 252:1,
272:21, 280:9,
280:12, 280:16,
280:17, 280:20,
282:11, 291:16,
318:17
**refers**
144:11
**reflect**
86:2, 221:2,
260:7, 260:19,
260:22, 321:18
**reflects**
221:4
**refresh**
18:6, 45:7,
51:1, 59:14,
193:1, 285:22
**refreshes**
71:4
**regard**
143:20, 145:13,
256:5, 268:17,
273:3, 273:15,
278:14, 301:18,
301:19
**regarding**
71:18, 72:1,
191:20, 272:11
**regards**
163:15
**registered**
212:10, 212:12

**registration**
212:19
**regularly**
279:8
**regulations**
280:2
**reimburse**
253:1, 281:6
**relate**
321:18
**related**
29:22, 43:22,
58:15, 81:4,
81:6, 81:18,
132:12, 132:17,
135:20, 146:22,
148:15, 151:5,
151:13, 151:17,
151:20, 157:17,
159:11, 171:2,
194:21, 201:2,
244:18, 253:2,
311:1, 328:10
**relates**
137:15, 138:4,
144:2, 154:8,
157:16, 243:6,
316:6
**relating**
8:20, 9:12,
61:12, 239:22,
240:21, 252:18,
266:13
**relation**
99:5
**relationship**
120:8
**relevance**
25:12, 110:14,
112:20, 153:14,
153:17, 168:14,
170:15, 170:20,
171:10, 172:15,
172:16, 172:21,
173:9, 173:18,
174:6, 174:13,
174:19, 175:7,
176:5, 179:1,

180:12, 180:15,
187:21, 194:16,
206:10, 207:11,
212:10, 213:1,
291:7, 291:9,
305:19, 306:4,
306:14
**relevant**
20:21, 24:3,
98:1, 110:10,
110:19, 110:21,
111:4, 111:20,
112:18, 113:5,
125:21, 127:5,
136:21, 154:11,
155:7, 168:14,
208:4, 262:8,
320:2, 321:6,
322:4
**remains**
231:4, 231:8,
307:8
**remember**
20:15, 21:12,
21:13, 21:15,
21:16, 21:19,
21:20, 22:1,
22:7, 22:11,
22:15, 22:18,
23:12, 40:4,
40:5, 40:8,
40:11, 40:12,
40:16, 40:19,
43:5, 44:21,
45:8, 46:9,
51:13, 52:12,
52:14, 53:10,
58:21, 58:22,
63:4, 67:16,
70:4, 70:6,
70:11, 70:13,
70:15, 71:8,
71:15, 74:5,
74:6, 75:12,
75:14, 75:15,
75:22, 81:22,
87:10, 93:17,
138:16, 138:18,

140:20, 140:22,
143:4, 149:22,
151:15, 151:18,
160:15, 179:6,
199:13, 200:1,
201:2, 201:13,
231:12, 248:19,
248:21, 260:16,
264:2, 264:3,
264:4, 264:10,
264:11, 264:18,
265:7, 265:12,
265:14, 265:15,
276:14, 283:4,
293:15, 316:3
**remembered**
48:1
**remind**
34:9, 52:9,
320:17
**reminds**
34:13, 322:10
**remote**
10:4
**removed**
97:20, 136:19
**rental**
191:15, 191:16
**rep**
42:4
**repeat**
24:8, 25:21,
43:17, 55:15,
60:19, 61:17,
64:4, 64:6,
77:7, 124:18,
127:9, 165:21,
166:2, 168:20,
170:1, 170:2,
174:22, 175:1,
175:22, 181:9,
182:15, 183:6,
184:21, 184:22,
186:12, 188:7,
200:4, 200:18,
263:4, 296:21
**repeated**
260:11

**repeatedly**
26:20, 170:22
**repeating**
303:5, 304:22
**rephrase**
18:11, 48:14,
50:12, 181:5,
293:9, 297:22,
300:5
**reply**
7:8, 41:7,
140:12, 140:20,
140:22, 141:4,
141:8, 142:19,
142:21, 143:19,
144:6, 144:22
**report**
8:4, 8:6, 8:8,
8:11, 209:1,
212:6, 219:14,
220:16
**reported**
1:22, 256:8,
256:15
**reporter**
10:12, 25:5,
27:18, 30:9,
32:9, 42:19,
43:18, 54:10,
55:9, 64:5,
65:13, 65:19,
66:3, 74:16,
74:17, 77:8,
80:6, 80:9,
80:14, 96:19,
104:12, 104:14,
106:2, 115:4,
115:15, 118:1,
120:16, 133:9,
133:15, 133:17,
135:1, 135:4,
136:4, 138:11,
140:8, 140:11,
141:13, 147:18,
162:5, 162:8,
165:22, 170:3,
171:13, 171:16,
172:1, 172:3,

175:2, 177:4,
181:8, 184:16,
188:9, 194:5,
195:4, 197:4,
200:8, 200:19,
213:4, 213:9,
216:13, 218:8,
218:9, 218:15,
222:22, 229:8,
229:17, 229:21,
230:12, 233:4,
233:8, 236:8,
240:16, 246:12,
249:18, 250:1,
262:15, 283:13,
294:21, 304:17,
324:7, 328:1
**reports**
164:12
**represent**
11:1, 11:15,
42:3, 42:8,
42:14, 43:1,
51:20, 235:11,
236:6, 236:14,
240:11, 248:11
**representation**
39:9, 104:2,
104:6, 311:1
**representative**
11:7, 98:19,
103:15
**represented**
257:9
**representing**
11:4, 12:9,
103:8, 268:3
**request**
14:18, 44:12,
44:20, 101:20,
232:18, 299:5
**requested**
32:17, 328:9
**requests**
105:16
**required**
192:20
**requirement**
300:11, 300:12,

300:13, 300:14,
300:16, 300:18,
300:20
**researched**
130:2
**resemble**
141:1
**resend**
31:20
**reservations**
52:1
**residence**
159:19
**resides**
160:14
**residing**
241:22
**resigned**
204:9
**resolution**
125:5
**resolve**
130:8, 232:9,
309:12
**resources**
255:20, 256:2
**respect**
123:17, 192:6,
192:14, 193:3,
193:7, 193:11,
193:16
**respectful**
100:13
**respects**
118:17
**respond**
129:19, 136:19
**responded**
79:4
**response**
31:12, 41:4,
82:12, 120:3,
284:19
**responsible**
210:7, 210:12,
210:14, 210:17,
210:20, 211:1,
211:4, 211:10,

| | | | |
|---|---|---|---|
| 211:12, 214:1, 214:4 | **risk** 314:22 | **S** | **same** 11:22, 24:12, |
| **rest** 102:9 | **robbing** 173:14 | **s** 105:12 | 24:13, 25:19, 27:12, 27:19, |
| **restart** 208:16 | **robert** 121:4 | **sabotage** 137:7 | 30:21, 31:14, 35:18, 36:3, |
| **restate** 203:6, 218:12, 218:16 | **role** 255:14, 271:19 | **safe** 38:7 | 43:4, 49:19, 55:10, 55:18, 61:14, 61:20, |
| **resume** 102:4, 102:17, 217:14 | **roll** 106:16 | **said** 11:22, 16:4, 16:6, 17:21, | 62:9, 62:14, 62:20, 65:8, 69:2, 69:4, |
| **resumed** 103:5 | **ronald** 4:13, 11:7, 103:15 | 28:7, 28:9, 32:11, 35:14, | 104:2, 104:5, 117:11, 117:14, |
| **retained** 277:9 | **room** 11:1, 11:16, | 37:10, 50:22, 55:13, 58:18, | 119:9, 120:11, 126:22, 139:9, |
| **return** 148:5, 148:11, 148:12, 148:16 | 12:10, 20:2, 96:2, 96:3, | 58:20, 63:9, 73:2, 73:10, | 139:11, 139:15, 139:16, 143:10, |
| **returned** 321:15 | 101:6, 103:9, 109:20, 115:3, | 77:1, 80:11, 80:12, 88:8, | 143:12, 143:22, 144:9, 144:10, |
| **reveal** 55:4, 55:5 | 116:5, 117:7, 124:9, 124:16, | 95:14, 112:17, 112:22, 113:20, | 144:13, 144:14, 144:17, 144:18, |
| **reverberation** 200:7 | 127:16, 130:14, 130:16, 132:16, | 116:7, 119:17, 128:16, 137:1, | 145:1, 145:2, 145:5, 145:6, |
| **review** 163:14, 266:17, | 136:2, 136:7, 136:9, 136:13, | 152:14, 154:20, 155:1, 156:4, | 145:9, 145:10, 146:12, 146:13, |
| 266:18, 295:20, 297:11, 297:12, | 136:19, 137:21, 146:9, 146:10, | 157:7, 158:6, 158:18, 167:5, | 153:6, 157:10, 157:11, 166:7, |
| 297:15, 297:17, 298:6, 298:9, | 147:13, 147:16, 152:2, 152:5, | 175:21, 176:20, 178:8, 184:8, | 170:21, 171:12, 171:15, 174:7, |
| 298:13, 298:19, 299:19, 299:21, | 152:6, 157:13, 205:6, 205:9, | 184:14, 208:1, 225:5, 231:13, | 174:8, 174:14, 174:15, 174:20, |
| 300:1, 300:6, 300:8, 303:21, | 208:10, 270:3, 302:17, 308:19, | 233:13, 236:10, 242:19, 245:21, | 179:22, 181:7, 181:11, 183:10, |
| 318:6, 321:7, 321:8 | 309:2 | 252:17, 260:14, 261:18, 263:6, | 183:22, 184:18, 186:16, 186:22, |
| **reviewed** 93:22, 94:2, | **rule** 101:14, 110:13, | 273:12, 292:11, 292:14, 292:16, | 196:7, 197:11, 206:1, 206:3, |
| 94:5, 297:20, 298:17, 303:19 | 117:1, 132:21, 133:1, 144:13, | 292:17, 294:1, 296:12, 296:17, | 207:7, 213:8, 215:14, 220:11, |
| **reviewing** 94:9 | 174:3 | 303:11, 304:20, 304:21, 315:3, | 240:4, 247:18, 260:11, 267:12, |
| **right-hand** 139:12, 139:19, | **ruled** 106:1, 106:6, | 316:3, 316:9, 322:11, 328:6 | 267:13, 267:18, 267:21, 268:3, |
| 143:8, 172:9, 172:19 | 110:6, 178:7 | **salary** 71:18, 72:1 | 278:14, 291:16, 296:19, 300:19, |
| **right-handed** 269:12, 269:14 | **rules** 48:18, 101:15, 133:1 | **sales** 91:18, 91:22, 92:3 | 305:20, 306:5, 314:14, 326:10, |
| | **ruling** 135:21 | | |
| | **running** 255:18 | | |

**327:4**

**sample**
53:6, 83:8,
85:5

**samples**
42:9, 82:10,
82:17, 82:19,
83:4, 84:16,
85:8, 85:15,
85:19, 86:3

**sat**
97:9

**save**
232:21, 282:17

**saw**
153:21, 159:16,
260:14, 261:20,
270:15, 270:16

**say**
37:19, 54:20,
72:22, 73:13,
77:20, 80:9,
103:9, 124:19,
148:20, 152:16,
159:4, 164:1,
184:17, 194:15,
225:16, 244:10,
244:16, 246:13,
251:22, 255:9,
260:20, 267:22,
271:15, 272:18,
272:19, 273:2,
273:3, 273:11,
292:6, 292:18,
310:10, 314:19

**saying**
17:16, 67:13,
72:20, 73:4,
79:4, 110:4,
126:15, 129:13,
131:7, 134:5,
136:22, 145:22,
155:18, 168:12,
226:13, 254:8,
305:9, 314:6,
315:8, 317:14

**says**
36:1, 37:2,

**51:19, 56:18,**
56:19, 56:22,
57:5, 57:12,
66:22, 70:1,
75:20, 78:18,
79:9, 80:2,
80:10, 82:8,
83:19, 89:21,
90:3, 105:11,
126:7, 139:13,
139:18, 160:10,
160:13, 173:12,
173:14, 177:9,
178:5, 192:19,
201:1, 213:17,
215:17, 222:8,
225:15, 225:20,
226:11, 227:5,
227:10, 235:7,
235:15, 239:7,
239:21, 241:14,
244:9, 244:19,
245:6, 245:9,
245:10, 245:11,
247:13, 249:10,
251:18, 258:10,
259:4, 286:12,
291:22, 319:4

**sba**
118:20

**scheduled**
53:10, 88:3

**scheme**
141:22

**scope**
99:9, 99:10,
106:7, 110:7,
110:9, 110:13,
112:1, 112:9,
112:10, 113:5,
116:22, 122:8,
128:2, 128:3,
132:20, 144:19,
152:20, 153:6,
155:15, 167:21,
171:2, 176:11,
303:2

**screen**
11:12, 34:20,

**35:21, 39:6,**
41:2, 45:10,
49:17, 52:13,
58:5, 59:9,
61:8, 66:5,
66:18, 70:5,
71:1, 72:7,
72:14, 72:18,
72:21, 73:8,
73:12, 74:7,
88:22, 115:22,
123:5, 133:22,
134:7, 162:17,
163:11, 172:12,
181:17, 181:20,
185:3, 190:22,
199:8, 224:3,
227:3, 229:5,
233:5, 233:13,
233:19, 235:7,
235:8, 241:8,
241:14, 242:15,
243:20, 266:22,
283:15, 284:10,
284:12, 284:13,
285:7, 303:7,
308:5, 309:19

**screw**
314:22

**scroll**
36:11, 38:1,
49:3, 50:4,
50:19, 51:5,
59:3, 60:20,
65:11, 71:3,
74:21, 74:22,
75:1, 78:13,
83:2, 86:19,
89:1, 105:9,
106:13, 106:17,
108:22, 109:5,
117:2, 119:21,
133:20, 139:3,
143:1, 172:13,
191:12, 220:22,
266:21

**scrolling**
35:22, 37:17,

**38:17, 39:7,**
41:4, 49:1,
49:18, 51:11,
51:18, 79:3,
122:21

**se**
231:22

**seal**
328:14

**searchable**
326:3

**second**
32:17, 69:18,
98:22, 141:10,
143:14, 158:3,
230:22, 231:16,
231:17, 232:20,
233:2, 234:21,
235:2, 249:22,
258:9, 266:5,
267:15, 279:2,
282:16, 306:8

**secondly**
110:15

**secret**
80:18

**section**
118:21, 118:22,
215:7, 222:6,
222:7, 222:10,
223:17, 223:18,
224:5, 224:19,
224:20, 224:22,
225:4, 256:4

**security**
191:15

**seeing**
50:21, 52:5,
70:4, 71:6

**seeking**
112:17, 122:9

**seems**
97:4, 114:17,
208:3, 258:21,
262:7

**seen**
71:10, 71:12,
143:4, 229:4,

229:9, 230:7,
238:17, 269:7,
312:13, 312:19
**sell**
19:10, 19:12,
80:18
**send**
33:6, 35:2,
36:6, 37:18,
38:9, 38:14,
38:15, 41:13,
45:4, 46:2,
46:6, 49:11,
51:14, 57:1,
58:15, 63:15,
63:21, 64:10,
66:20, 67:2,
67:6, 79:13,
79:16, 82:14,
83:12, 85:4,
85:19, 129:22,
130:3, 130:11,
160:4, 162:18,
240:15, 283:12,
287:12, 288:4,
293:20, 294:5,
296:5, 296:22,
322:14
**sender**
31:15
**sending**
45:8, 57:22,
58:2, 58:11,
63:16, 75:9,
75:12, 76:6,
78:19, 78:22,
79:10, 83:7,
83:15, 84:7,
87:10, 248:13,
248:15, 248:18,
248:19
**sense**
134:12, 320:14,
323:7
**sent**
33:2, 34:10,
36:15, 36:19,
37:1, 39:1,

39:21, 40:22,
41:2, 41:8,
45:11, 45:14,
51:16, 58:5,
58:8, 60:8,
60:12, 61:11,
62:4, 62:22,
67:9, 70:8,
76:2, 76:9,
76:13, 76:16,
76:18, 76:20,
77:10, 77:11,
80:2, 80:13,
82:16, 82:18,
82:21, 83:5,
84:17, 85:7,
86:1, 86:6,
86:8, 86:12,
86:21, 87:5,
87:9, 89:7,
89:11, 108:1,
126:5, 162:19,
162:21, 236:2,
236:17, 237:3,
239:4, 239:9,
239:12, 257:9,
258:1, 258:4,
258:17, 259:5,
261:3, 277:14,
280:2, 282:9,
283:11, 284:20,
289:11, 297:12,
298:7, 310:22,
311:8, 311:12,
311:16, 312:4,
312:14, 315:3,
315:11, 316:10
**sentence**
158:7
**sentences**
167:9
**separate**
49:22, 108:7,
120:8, 168:2,
168:3, 215:13
**separately**
33:9
**separation**
36:21, 42:15,

44:12, 44:15
**september**
38:18, 39:17,
40:3, 40:6,
40:9, 41:5,
44:22, 47:22,
51:11, 56:20,
57:2, 57:18,
58:3, 60:9,
60:12, 63:13,
71:18, 72:1,
75:11, 75:18,
78:16, 79:6,
79:18, 79:22,
80:21, 82:5,
87:7, 236:21,
290:18, 312:5,
314:11, 315:2
**series**
132:7, 133:3,
138:1, 147:5,
152:9, 196:18
**serve**
13:11, 17:9,
293:17
**served**
231:11
**serving**
13:14, 13:17
**set**
153:5, 296:10,
308:15, 328:13
**settle**
45:2
**seven**
304:6, 324:19,
324:22, 325:2
**several**
12:20, 28:10,
33:22, 34:6,
65:1, 107:12,
110:22, 112:14,
164:11, 164:12,
164:13, 164:14,
208:19, 232:2,
252:8, 318:19,
318:20, 318:22,
319:8

**severance**
41:22, 53:5,
53:13, 53:16,
54:4, 54:17,
55:17, 61:22,
62:3, 62:13,
63:3, 63:6,
63:17, 76:17,
77:2, 77:3,
77:15, 77:19,
78:3, 78:6,
79:5, 79:10,
79:14, 79:18,
98:5, 99:6,
141:22, 142:10,
142:11, 144:11,
144:15, 168:8,
206:5, 206:20,
207:6, 242:14,
242:21, 243:7,
264:17, 265:10,
265:19, 271:5,
320:21, 320:22,
321:3, 321:16,
321:18
**severance"**
243:4
**severn**
182:21, 183:8,
184:5, 197:8,
214:15, 214:21,
215:8, 215:14,
220:3, 221:9
**sham**
137:10
**share**
68:1, 233:13,
233:19, 240:7,
262:5, 262:6
**shareholder**
19:3, 109:7,
113:11, 121:11,
125:3
**shareholders**
166:4
**shares**
6:20, 19:6,
19:7, 19:10,

19:13, 20:18,
80:19, 121:3,
121:12, 121:16,
122:1, 122:13,
123:1, 261:19,
261:22, 262:2,
262:13, 263:8,
263:11, 263:12

**sharing**
215:2

**sheer**
318:12

**sheet**
120:8, 327:6

**short**
160:17, 217:13

**shortcut**
268:5

**shorthand**
328:1

**shortly**
273:1

**should**
20:7, 65:3,
65:10, 97:14,
103:8, 166:21,
167:7, 195:19,
233:12, 235:20,
241:10, 309:7,
309:12, 311:8,
317:4

**show**
33:11, 126:14,
133:7, 133:21,
154:14, 161:4,
163:9, 171:19,
176:22, 190:17,
194:20, 196:18,
204:21, 212:4,
217:6, 322:11

**showing**
38:4, 66:10,
105:3, 115:18,
133:13, 134:6,
138:13, 162:11,
172:6, 178:14,
213:14, 240:8,
284:9

**shows**
36:4, 98:7,
125:16, 126:3,
129:17, 132:9,
137:5, 137:7,
137:8, 137:13,
154:11, 154:13,
173:8, 195:16,
195:21, 197:13,
198:15, 257:13,
262:8, 286:11

**sic**
70:1

**side**
38:1, 80:18,
255:17

**sign**
107:1, 117:12,
118:7, 121:15,
269:3, 269:7,
269:10, 310:12

**signature**
42:2, 42:9,
76:19, 76:22,
82:11, 82:17,
82:19, 83:4,
83:7, 84:17,
84:18, 85:8,
85:14, 85:19,
86:2, 106:14,
106:15, 106:18,
117:4, 121:8,
140:17, 140:18,
141:1, 177:12,
178:12, 179:7,
186:3, 186:13,
186:14, 188:22,
189:2, 190:18,
190:20, 190:21,
191:2, 192:21,
195:14, 197:16,
198:9, 198:17,
199:21, 213:19,
213:21, 213:22,
219:18, 219:21,
219:22, 220:7,
220:8, 220:9,
221:5, 223:12,

243:12, 268:17,
268:20, 269:4,
269:22, 270:7,
270:16, 327:11

**signature-5tm1q**
328:18

**signatures**
42:4, 53:7,
85:5, 185:21,
192:19, 268:16

**signed**
36:2, 108:20,
109:1, 109:3,
117:20, 118:6,
118:13, 189:3,
189:4, 199:18,
213:18, 217:7,
218:11, 235:19,
243:13, 251:16,
252:6, 271:1,
327:7

**signing**
140:20, 140:22,
177:15, 177:17,
269:21, 328:8

**similar**
46:22, 71:12,
134:3, 138:18,
140:16, 143:3,
162:19, 173:21,
203:13, 214:9,
223:7, 236:1,
237:3, 248:2,
259:9, 260:16,
261:3

**simple**
168:4

**simplify**
187:18

**since**
14:1, 16:9,
16:12, 17:18,
18:22, 19:6,
22:20, 44:9,
87:16, 94:20,
102:3, 123:16,
150:7, 164:3,
164:8, 164:10,

169:10, 200:10,
232:6, 232:12,
276:16, 301:3,
301:12, 301:15,
303:20, 305:15

**single**
180:4

**sir**
14:16, 16:6,
66:19, 72:7,
80:7, 115:22,
141:20, 219:13,
302:4

**sit**
29:14, 324:22

**sitting**
94:6, 232:7

**six**
244:15

**six-page**
241:4, 266:6

**size**
244:14

**skip**
87:11

**skipped**
38:1

**sleep**
258:21

**slide**
240:4

**slipping**
254:5

**small**
204:17

**smiley**
51:1

**smoothly**
39:16

**snow**
38:6

**sold**
19:5

**sole**
288:18, 288:20,
288:21

**some**
13:21, 27:13,

29:10, 33:11,
46:22, 49:7,
53:17, 71:17,
76:2, 76:12,
82:10, 82:17,
97:10, 100:8,
100:9, 126:8,
141:11, 155:4,
185:14, 204:17,
204:21, 208:5,
212:4, 231:13,
232:9, 232:12,
239:2, 243:22,
256:1, 258:7,
258:8, 265:9,
274:17, 277:21,
291:15, 309:11,
310:10, 317:7
**somebody**
149:4, 185:11,
315:17
**somehow**
207:14, 261:22
**someone**
19:9, 24:19,
86:21, 99:3,
99:4, 113:10,
127:6, 135:13,
148:18, 185:13,
238:20, 278:2,
323:4
**someone's**
98:11, 200:5
**something**
35:9, 41:2,
70:14, 70:20,
71:12, 80:11,
99:21, 124:13,
124:21, 126:16,
130:11, 139:21,
148:10, 148:15,
153:7, 155:14,
156:7, 173:20,
184:17, 200:6,
203:14, 207:1,
233:5, 282:22,
293:8, 315:3,
317:15

**sometime**
63:13, 248:17,
264:5
**somewhat**
269:4
**somewhere**
164:17, 266:4
**son**
228:6
**soon**
87:15
**sorry**
15:4, 18:11,
27:18, 30:9,
34:12, 42:19,
54:10, 80:6,
83:19, 87:14,
89:5, 89:6,
96:19, 106:2,
107:3, 109:6,
117:22, 118:1,
118:22, 124:4,
126:19, 135:1,
136:4, 136:5,
141:8, 148:20,
149:2, 158:4,
161:16, 166:4,
171:13, 181:8,
184:16, 187:8,
191:13, 194:5,
195:9, 213:6,
214:7, 215:4,
216:13, 218:2,
223:4, 227:8,
229:17, 229:20,
236:8, 236:9,
236:11, 236:21,
246:12, 246:15,
254:20, 259:14,
262:15, 262:16,
264:3, 264:6,
267:12, 269:9,
277:10, 278:8,
278:17, 278:22,
281:11, 284:16,
288:2, 297:21,
302:3, 304:17,
304:18

**sort**
277:21
**sound**
312:21
**sounded**
124:10
**sounds**
134:13, 142:3,
170:8, 178:9
**south**
4:6, 146:6,
160:3, 160:9,
160:14
**space**
278:2
**speak**
40:9, 96:21,
270:4, 272:1,
272:11, 273:15,
292:16
**speaking**
40:2, 40:5,
67:16, 68:7,
124:7, 136:12,
136:18, 251:15
**speaks**
119:12, 242:22
**special**
125:3, 125:4,
277:22, 278:15
**specific**
141:12, 199:15,
248:21, 326:1
**specifically**
29:22, 99:11,
265:7, 299:3,
299:8, 299:15
**speculation**
185:18, 186:21,
187:7, 216:12,
229:16, 294:8
**spelled**
36:21
**spelling**
149:2
**spent**
259:2
**spoke**
23:5, 37:3,

**sort**
275:11, 302:11,
303:6
**spoken**
276:3
**st**
16:20, 17:1,
146:5, 160:14
**staked**
129:12
**stand**
155:21, 174:1,
307:8
**standard**
80:4, 80:17,
168:15
**standing**
194:14, 243:1,
270:12
**stands**
205:14, 302:8
**start**
32:10, 33:13,
33:20, 78:14,
203:20, 212:7,
254:22, 264:7,
302:15, 317:6
**started**
10:21, 200:11,
254:19, 257:1
**starting**
210:10
**starts**
166:15, 249:9,
280:6, 302:14
**state**
2:13, 8:5, 8:7,
8:8, 8:11,
10:17, 12:22,
13:3, 13:11,
13:14, 13:17,
16:4, 16:7,
16:15, 16:17,
16:20, 30:15,
81:21, 159:20,
159:22, 160:2,
212:15, 212:18,
213:16, 214:2,
214:7, 216:22,

218:10, 219:14,
220:17, 221:12,
221:16, 328:22
**stated**
27:10, 100:20,
114:16, 116:4,
117:6, 118:10,
124:15, 129:10,
130:6, 132:15,
132:22, 135:17,
137:19, 144:20,
152:19, 156:10,
157:5, 176:9,
213:6, 263:2,
291:13, 298:8,
301:17, 304:12,
321:5
**statement**
15:11, 15:20,
109:9, 115:9,
118:19, 128:15,
129:1, 132:9,
317:10
**statements**
110:22, 307:6,
320:11
**states**
1:1, 10:6,
186:8, 196:15
**stay**
102:21, 232:10,
232:11
**stenographic**
10:11
**stenographically**
328:6
**step**
30:8, 30:12,
95:19, 95:21,
96:2, 127:15,
136:1, 136:6,
146:8, 147:13,
152:2, 152:4,
155:13, 158:12,
161:12, 205:5,
301:21, 308:19,
308:22
**stephen**
3:12, 11:4,

11:11, 12:5,
20:1, 30:11,
39:8, 59:19,
103:13, 107:18,
109:16, 119:14,
124:5, 135:10,
145:12, 152:1,
154:22, 157:10,
161:8, 187:20,
194:11, 195:18,
196:10, 198:6,
204:16, 212:11,
217:8, 219:2,
231:15, 263:19,
270:5, 296:11,
302:13, 303:10,
311:20, 325:10
**stern's**
11:11, 32:19,
32:20
**steve**
87:14, 104:6,
143:14, 187:9,
323:11
**still**
14:2, 85:10,
96:4, 100:20,
126:13, 157:3,
194:3, 197:20,
204:1, 204:4,
205:14, 227:9,
232:4, 234:6,
283:7, 300:19,
306:17, 307:8
**stock**
19:1, 80:19,
121:2, 121:4,
121:6, 121:9,
121:16, 121:19,
122:13, 122:17,
122:18, 122:22,
123:8, 123:11,
123:14, 123:17,
123:18, 123:22,
124:3, 124:11
**stop**
13:17, 32:13,
69:3, 164:15,

164:22, 198:2,
200:16
**stopped**
16:4, 142:4
**store**
251:13, 288:15
**straightened**
319:7
**streamline**
125:8, 131:4,
131:6, 131:13,
158:7
**streamlining**
132:4
**street**
3:6, 3:15, 4:6,
160:6, 214:19,
242:3, 242:6
**strenuously**
128:14
**strike**
278:17
**string**
56:19, 57:4,
144:5, 161:7,
163:17, 163:20,
166:13, 284:22,
285:4
**stuff**
37:3, 232:9,
318:1, 318:6
**sub**
29:21
**subject**
54:12, 55:13,
66:14, 75:19,
134:15, 155:11,
231:10, 318:2,
318:3, 320:11
**subjects**
231:3
**submit**
219:12, 220:16,
221:12
**submitted**
119:4, 120:2,
134:2, 134:19,
164:12, 221:3,

222:3, 223:8,
254:6
**submitting**
221:15, 221:18
**subpoena**
29:12, 29:14,
29:17, 31:13,
32:17, 105:12,
105:13, 140:14,
267:15, 301:18
**subpoenaed**
51:22
**subpoenas**
29:21, 105:15,
231:11
**substance**
144:2
**sued**
113:12
**sufficient**
118:4, 176:18
**suing**
24:1, 24:11,
24:20, 63:22,
64:12, 126:2
**suit**
81:4
**suite**
3:7, 4:7,
182:22, 183:9,
184:5, 197:8,
214:16, 214:19,
215:15, 220:3,
221:9
**summary**
159:1
**supervision**
328:8
**support**
208:5, 279:6,
279:14
**supporting**
118:16
**supposed**
96:17, 202:10
**sure**
57:22, 63:14,
129:7, 129:9,

149:9, 191:9,
196:3, 202:21,
211:20, 217:4,
233:11, 237:8,
240:5, 241:13,
242:10, 244:4,
248:1, 254:20,
262:1, 262:13,
263:20, 265:10,
265:13, 268:11,
271:8, 272:17,
273:21, 279:3,
280:22, 282:15,
283:6, 284:2,
284:8, 296:4,
314:5, 317:9,
325:13
**suspicion**
157:1, 208:6
**sustain**
281:9
**swallow**
112:8
**swear**
10:13
**switch**
180:21, 231:21,
234:10
**sworn**
10:15, 132:8
**system**
164:17, 286:21,
294:2, 295:6,
295:12, 296:2,
296:7, 296:17,
297:3, 297:7,
298:1, 298:12,
301:10, 303:20,
305:14

**T**

**tab**
234:9
**tag**
173:13
**tagnetics**
80:19, 83:20,
84:1, 84:6,

84:13, 85:4,
151:21, 152:11,
152:13, 153:9,
153:10, 153:20,
154:3, 154:6,
156:5, 157:4,
157:18, 158:20
**tailored**
112:18
**take**
14:17, 34:9,
34:14, 87:13,
100:6, 100:13,
101:5, 101:19,
101:21, 102:1,
102:4, 107:5,
111:8, 113:9,
116:13, 125:8,
129:7, 138:5,
140:2, 150:3,
160:16, 161:21,
163:1, 170:11,
189:7, 191:20,
192:1, 192:5,
192:13, 193:2,
193:6, 193:11,
193:16, 203:1,
206:11, 217:13,
222:20, 231:18,
231:20, 268:7,
273:19, 311:3,
326:7
**taken**
103:2, 160:22,
170:17, 217:19,
274:3, 328:3,
328:6
**taking**
111:15, 176:21
**talk**
21:9, 23:9,
23:13, 23:18,
38:19, 54:15,
149:3, 151:1,
283:19
**talked**
39:19, 44:7,
81:16, 274:18,

318:17
**talker**
323:11
**talking**
23:22, 24:10,
24:19, 27:19,
31:17, 52:5,
52:10, 52:12,
55:2, 55:6,
55:10, 61:15,
72:22, 92:19,
96:10, 126:17,
127:13, 131:2,
131:15, 133:16,
153:12, 184:13,
232:7, 262:16,
273:7, 283:8,
292:10, 296:16,
299:12, 302:14,
313:1, 320:18
**tea**
205:3
**tech**
233:8
**technical**
11:12
**technician**
4:15, 10:2,
96:4, 96:7,
102:22, 103:3,
160:20, 161:1,
200:12, 205:7,
217:17, 217:22,
218:4, 233:20,
233:22, 234:3,
274:1, 274:4,
274:8, 274:14,
308:15, 309:3,
309:7, 309:18,
310:3, 310:6,
325:7, 325:19,
326:9, 326:12
**tecum**
105:12, 105:15
**telephone**
21:17, 22:8
**tell**
14:5, 34:17,

44:14, 44:18,
48:1, 53:21,
62:7, 111:16,
112:3, 125:10,
127:17, 160:2,
205:1, 225:2,
225:3, 243:20,
249:15, 267:21,
268:6, 268:13,
299:4, 302:18,
302:19
**telling**
30:13, 113:15,
264:15, 264:18,
268:10
**tells**
159:22
**ten**
18:14, 150:20,
160:17, 207:1,
207:15, 217:15,
304:4
**tendency**
14:10
**term**
134:13
**terminate**
190:15
**terminated**
97:20, 163:22,
164:20, 204:3,
204:6
**termination**
169:10
**terms**
196:15, 243:7
**terrific**
233:10, 247:20,
248:9, 274:10
**territory**
169:19
**testified**
10:15, 82:16,
122:5, 313:12,
316:3
**testify**
105:13
**testifying**
16:2, 284:18

**testimony**
52:18, 69:11,
84:10, 119:16,
182:13, 184:12,
184:14, 287:6,
303:13, 309:10,
310:9, 327:3,
327:5, 328:5,
328:6
**text**
5:12, 5:14,
21:20, 22:12,
33:11, 34:7,
34:10, 34:11,
34:15, 35:2,
35:3, 35:10,
35:20, 36:6,
36:14, 37:5,
37:8, 37:14,
37:20, 38:4,
38:9, 38:11,
38:14, 38:22,
39:18, 39:21,
40:22, 41:5,
41:8, 41:13,
43:14, 45:1,
45:4, 45:13,
45:15, 45:18,
46:2, 46:6,
47:11, 48:2,
49:5, 49:6,
49:11, 49:14,
50:7, 50:10,
50:13, 51:2,
51:7, 51:12,
51:15, 51:18,
52:2, 52:9,
74:1, 75:19,
173:11
**th**
31:5, 251:8,
285:5
**thank**
10:20, 12:6,
12:12, 14:20,
15:21, 35:1,
36:13, 36:18,
74:18, 80:14,

87:22, 102:17,
104:11, 107:20,
120:18, 135:4,
140:10, 141:16,
145:18, 162:7,
163:12, 184:15,
196:10, 198:8,
203:2, 208:17,
213:7, 219:7,
219:9, 229:21,
231:15, 234:5,
234:18, 243:2,
262:8, 282:13,
283:14, 284:15
**thanks**
74:20, 149:2,
163:10, 171:16,
232:19, 250:18
**themselves**
205:21
**theory**
98:2
**thereafter**
328:7
**thing**
20:4, 74:19,
89:20, 98:22,
213:8, 237:6,
320:13, 323:20
**things**
36:17, 98:9,
98:22, 100:1,
100:6, 111:22,
154:3, 155:16,
158:19, 163:8,
199:16, 234:8,
263:21, 308:18,
309:13, 309:17,
314:1
**think**
14:2, 20:6,
23:22, 24:3,
24:10, 26:4,
26:12, 36:15,
36:18, 36:19,
38:19, 38:20,
52:7, 64:8,
64:10, 64:15,

66:4, 66:7,
68:14, 69:18,
70:5, 81:20,
97:12, 97:13,
98:12, 100:19,
112:11, 114:13,
114:15, 115:14,
117:21, 118:4,
129:11, 130:4,
130:10, 131:10,
131:19, 158:4,
159:4, 188:17,
189:16, 189:17,
200:12, 214:18,
218:5, 218:8,
220:11, 222:11,
222:21, 223:20,
225:21, 229:9,
229:10, 230:8,
230:17, 232:14,
236:19, 237:7,
246:5, 246:8,
249:4, 252:17,
261:18, 262:16,
268:8, 269:10,
270:4, 273:17,
276:15, 282:8,
282:9, 283:5,
283:18, 285:12,
292:8, 292:13,
296:12, 297:14,
298:8, 307:21,
315:2, 315:9,
317:8, 320:3,
321:9, 321:12,
322:6, 323:18
**thinks**
48:20
**third**
128:16, 147:1,
214:19, 224:9,
225:7, 242:3,
242:6, 264:12,
301:19, 313:7,
319:20
**third-party**
97:12, 97:16,
146:17, 153:22

**thirdly**
110:18
**thirty**
119:6
**thought**
45:1, 77:1,
80:10, 81:4,
271:9, 283:2,
309:21, 315:10,
315:11, 315:17
**thousand**
210:5
**thread**
30:3, 59:4,
60:15, 65:16,
78:15, 89:3,
89:20, 138:20,
139:2, 162:13,
285:10, 287:9,
315:22, 316:5
**threat**
166:18, 167:1
**three**
88:4, 128:11,
166:14, 170:8,
189:14, 189:20,
190:2, 190:4,
190:14, 224:8,
225:6, 323:21
**through**
33:22, 56:6,
69:19, 71:3,
73:10, 73:19,
74:2, 82:2,
88:5, 88:8,
88:19, 89:2,
103:6, 103:10,
107:6, 125:9,
132:11, 163:2,
166:16, 167:6,
190:5, 242:12,
255:8, 256:22,
257:2, 260:1,
260:5, 266:22,
267:16, 280:2,
280:4, 303:5,
313:20, 319:2,
319:21, 322:5

| | | | |
|---|---|---|---|
| **thx**<br>36:4, 37:18,<br>41:6, 41:7,<br>51:14, 70:3,<br>259:5<br>**timely**<br>14:19<br>**times**<br>12:17, 27:12,<br>27:13, 28:10,<br>63:5, 63:9,<br>63:11, 65:1,<br>150:16, 155:14,<br>270:18, 299:6,<br>299:7, 299:8,<br>299:13, 299:14,<br>319:8, 319:16<br>**timing**<br>326:6<br>**title**<br>215:13, 221:5,<br>222:8, 223:13,<br>223:17, 225:1,<br>244:16, 247:13,<br>255:7, 255:9,<br>255:12<br>**tmitchell**<br>89:11<br>**today**<br>14:4, 16:1,<br>38:19, 54:3,<br>73:10, 73:20,<br>74:2, 100:8,<br>155:1, 168:21,<br>169:1, 170:17,<br>229:4, 230:7,<br>231:2, 232:3,<br>279:1, 311:21,<br>312:14, 314:2,<br>316:22, 317:16,<br>317:17, 323:16<br>**today's**<br>311:4, 325:22<br>**todd**<br>89:7<br>**together**<br>164:13<br>**told**<br>44:16, 53:18, | 53:19, 62:11,<br>273:8<br>**tommy**<br>37:19<br>**tomorrow**<br>235:20, 317:21,<br>326:6<br>**ton**<br>318:3<br>**took**<br>135:18, 166:9,<br>270:21, 280:3<br>**top**<br>47:22, 49:2,<br>49:4, 50:4,<br>50:16, 56:17,<br>79:21, 139:1,<br>139:2, 139:19,<br>140:15, 143:8,<br>166:12, 173:8,<br>217:10, 244:10,<br>246:11, 246:13,<br>249:9, 257:13,<br>257:15, 287:9<br>**topic**<br>278:12<br>**topics**<br>20:5, 99:14,<br>112:22, 318:10<br>**total**<br>244:15, 274:12,<br>274:14<br>**totaling**<br>279:10<br>**totally**<br>102:8<br>**touch**<br>150:6<br>**tough**<br>36:17<br>**tournament**<br>251:7<br>**towards**<br>168:13<br>**track**<br>65:22<br>**traded**<br>18:10, 18:13 | **traders**<br>182:2<br>**transactions**<br>7:20, 19:19,<br>19:21, 20:13,<br>20:17, 194:21,<br>195:7<br>**transcript**<br>5:10, 6:2, 7:2,<br>8:2, 9:2, 34:4,<br>50:6, 56:9,<br>66:1, 66:9,<br>69:16, 74:12,<br>78:11, 82:4,<br>88:7, 101:1,<br>105:6, 108:14,<br>115:17, 120:22,<br>133:12, 138:10,<br>140:7, 141:18,<br>162:10, 172:5,<br>177:6, 178:17,<br>191:6, 195:11,<br>196:21, 213:13,<br>217:21, 220:21,<br>223:6, 226:21,<br>230:14, 240:19,<br>250:5, 257:11,<br>266:11, 309:6,<br>317:19, 318:7,<br>326:3, 326:8,<br>328:4<br>**transcription**<br>327:5<br>**transfer**<br>19:10, 19:13<br>**transferred**<br>19:5, 261:19,<br>262:2, 262:13,<br>263:7, 263:10,<br>263:12<br>**transmit**<br>85:14<br>**transpired**<br>287:3<br>**travel**<br>52:1<br>**treading**<br>126:21 | **treated**<br>25:13, 27:2,<br>28:8, 28:13,<br>65:3, 65:10<br>**tried**<br>234:20, 319:15,<br>323:15<br>**trooper**<br>16:7, 81:21<br>**trouble**<br>323:5<br>**true**<br>109:8, 115:9,<br>118:16, 122:18,<br>123:10, 123:13,<br>123:18, 132:10,<br>134:9, 206:17,<br>327:4, 328:4<br>**trust**<br>182:2, 314:21<br>**truth**<br>113:15<br>**truthfully**<br>16:2<br>**try**<br>14:18, 59:22,<br>71:19, 85:18,<br>91:19, 97:5,<br>206:6, 208:5,<br>241:9, 269:4,<br>323:19<br>**trying**<br>39:15, 72:21,<br>99:1, 100:17,<br>127:22, 131:3,<br>151:22, 155:15,<br>187:18, 204:20,<br>205:11, 206:3,<br>206:4, 292:2,<br>292:19, 319:3<br>**tuesday**<br>239:3<br>**turn**<br>11:18, 32:15,<br>78:8, 102:20,<br>107:15, 120:15,<br>138:7, 140:4,<br>141:7, 231:14, |

234:17, 310:1
**turned**
200:10
**turning**
47:21
**twice**
194:16
**two**
29:21, 52:7,
73:16, 88:11,
98:9, 100:1,
104:4, 119:3,
135:10, 143:2,
144:22, 145:4,
145:8, 154:3,
158:22, 166:13,
204:19, 223:19,
224:6, 226:14,
249:16, 252:14,
259:22, 262:20,
280:4, 282:10,
293:21, 294:18,
311:8, 319:11,
320:18
**two-minute**
273:19
**two-page**
249:8, 257:20
**two-thirds**
222:7
**type**
54:6, 99:7,
112:8
**types**
98:10, 112:11
**typewriting**
328:7
**typically**
216:21
**typo**
235:20

---
U
---

**u**
38:18
**ucf**
156:4
**ugggg**
37:4

**unable**
303:7
**unbeknownst**
279:6, 280:7
**unclear**
155:17, 296:15
**under**
16:2, 101:14,
109:1, 109:3,
111:1, 117:1,
118:7, 118:21,
119:2, 119:5,
125:16, 128:17,
132:9, 215:12,
243:8, 286:17,
288:11, 296:22,
328:7
**underneath**
235:18
**undersigned**
135:19
**understand**
14:7, 15:1,
15:6, 15:8,
15:9, 15:12,
15:14, 15:15,
15:16, 15:17,
15:19, 15:20,
17:15, 20:20,
21:3, 21:4,
100:17, 115:1,
118:19, 119:20,
127:21, 131:14,
147:3, 149:2,
170:7, 175:17,
192:12, 207:10,
244:4, 263:17,
263:20, 282:7,
305:4, 314:6
**understanding**
29:13, 29:16,
29:19, 159:5,
206:14, 236:16,
259:13
**understood**
14:15, 14:19,
15:2, 131:3,
146:1, 158:16,

213:2, 219:7,
310:4, 316:20
**unfortunately**
254:4
**unintelligible**
174:13
**united**
1:1, 10:6,
186:8
**unless**
15:18, 102:12,
127:19, 139:21,
143:17, 173:20,
293:14
**unlimited**
111:20
**unnecessarily**
187:12
**unofficial**
271:19
**unreasonably**
175:9
**unrelated**
116:20
**unsigned**
243:9
**unsure**
248:11
**until**
87:17, 162:3,
189:22, 198:2,
200:17, 209:9,
210:8, 293:14,
309:16
**untrue**
129:2
**unusual**
270:9, 270:10,
270:11
**unwarranted**
208:6
**uploaded**
312:10
**upper**
139:12, 139:19,
143:8, 172:9,
172:19, 195:12,
285:19, 286:11

**ur**
41:7
**url**
95:5, 289:3,
293:20, 296:6,
298:4, 306:10,
306:18, 307:2
**usc**
118:21, 119:2,
119:5
**use**
66:15, 97:6,
113:6, 122:10,
168:2, 208:6,
216:3, 249:3,
283:21, 290:1
**uses**
148:2, 160:6
**using**
134:12, 148:12,
192:17, 216:5,
293:5

---
V
---

**vague**
28:22, 61:4,
64:18, 174:12
**vagueness**
171:11
**valid**
271:17, 272:5
**value**
49:8, 49:10,
129:4
**verbal**
14:6
**verifications**
42:2
**version**
267:14, 313:21
**versus**
61:15, 96:9,
113:22, 114:1,
179:2, 186:7,
295:14
**vice**
255:12, 255:14
**video**
10:2, 10:4,

11:1, 11:3,
11:6, 11:8,
11:17, 12:2,
96:4, 96:7,
102:20, 102:22,
103:3, 103:11,
103:16, 103:18,
160:20, 161:1,
200:12, 205:7,
217:17, 217:22,
218:4, 274:1,
274:4, 274:8,
274:14, 308:15,
309:3, 309:4,
309:5, 309:7,
309:8, 309:18,
309:22, 310:3,
310:6, 325:7,
325:8, 325:19,
326:2

**videographer**
4:14, 10:10,
325:13

**videos**
12:1

**videotape**
1:13, 2:1

**view**
295:7

**viewing**
215:6

**virginia**
113:21, 147:21,
148:1, 151:8,
159:10, 212:6,
212:8, 213:16,
214:7, 214:8,
216:22, 220:17

**virtually**
1:14, 2:2

**visible**
195:19

**visits**
251:13

**void**
83:18, 83:19

**voted**
165:14, 166:5

**vp**
215:14

**W**

**w-2**
256:11, 256:17,
257:5

**wait**
14:12, 87:17,
112:6, 324:8

**waiting**
109:21

**waldorf**
197:16

**wanted**
28:7, 63:1,
129:6, 155:17,
169:9, 169:13,
261:2, 265:10,
283:18, 304:19,
305:6, 315:15

**wanting**
265:12

**wants**
37:1, 60:4

**warranted**
317:8

**way**
38:6, 116:18,
127:17, 132:5,
135:20, 155:21,
166:14, 190:5,
222:7, 232:6,
241:10, 243:10,
243:16, 267:2,
308:10, 319:9

**we'll**
54:8, 78:14,
101:4, 109:14,
111:7, 111:15,
111:17, 114:20,
116:12, 120:12,
125:8, 133:4,
138:4, 138:5,
140:2, 155:12,
176:20, 195:7,
205:16, 217:14,
320:5, 325:11

**we're**
12:9, 20:3,
20:4, 20:6,
20:8, 27:14,
33:13, 33:21,
61:15, 69:2,
71:3, 73:5,
74:14, 101:8,
103:5, 109:10,
112:15, 114:16,
114:19, 126:21,
127:18, 129:2,
129:11, 129:18,
130:15, 132:1,
154:17, 158:19,
160:21, 168:16,
169:18, 178:8,
186:5, 191:13,
194:17, 212:6,
215:6, 217:10,
218:2, 222:21,
232:4, 232:6,
232:12, 250:11,
283:7, 283:8,
291:11, 292:3,
295:13, 295:15,
296:16, 303:5,
304:6, 309:14,
309:15, 309:22,
310:13, 313:21,
313:22, 317:2,
317:5, 319:5,
319:6, 325:17,
325:20

**we've**
30:17, 33:1,
66:4, 73:9,
73:19, 74:2,
87:16, 98:17,
98:21, 100:12,
101:8, 217:11,
224:19, 231:5,
237:7, 303:4,
314:18

**wednesday**
1:15, 39:19

**week**
17:6, 17:8,

17:10, 17:14

**weeks**
319:11

**welcome**
12:7, 232:17

**went**
93:21, 94:13,
193:22, 194:1,
196:11, 246:7,
254:17, 254:18,
313:20

**west**
3:15

**whatever**
30:16, 74:14,
204:21

**whatsoever**
208:8

**whenever**
294:1

**whereabouts**
316:4

**whereof**
328:13

**whether**
19:15, 21:13,
24:18, 40:21,
49:13, 58:7,
67:9, 77:18,
77:19, 78:4,
84:1, 98:10,
99:3, 103:10,
110:4, 111:3,
113:15, 114:19,
127:10, 148:9,
148:10, 153:6,
158:17, 160:6,
168:7, 174:9,
193:2, 203:13,
203:14, 209:18,
210:4, 233:6,
240:5, 242:20,
243:19, 253:5,
256:8, 256:14,
257:3, 259:15,
262:12, 268:11,
268:18, 271:3,
272:4, 275:19,

276:17, 277:6,
277:7, 277:13,
277:14, 279:16,
304:19, 305:7,
310:16, 311:1
**whichever**
267:2
**white's**
42:9, 76:19,
76:21, 82:10,
84:16, 86:2,
96:15, 105:11,
105:13, 105:14,
105:15, 119:16,
120:20, 121:8,
122:5, 132:8,
143:7, 165:5,
165:9, 165:10,
185:22, 186:2,
186:13, 206:13,
206:18, 207:16,
209:3, 209:6,
209:19, 215:12,
268:17, 286:12,
286:17, 286:18,
286:20, 292:5,
292:7, 298:13,
298:18, 299:2,
299:8, 299:14,
299:20, 300:6,
300:22, 301:2,
301:12, 303:19,
303:21, 305:16,
306:3, 311:15,
324:2, 324:14
**white**
**passmarketinginc**
139:14
**whoa**
313:11, 317:22
**whole**
101:9, 242:19,
267:22, 271:22
**whyte**
1:22, 2:12,
10:12, 328:2,
328:20
**wife**
142:4, 203:3,

203:17, 206:13,
206:18, 207:17,
208:12, 209:3,
209:6, 209:15,
209:19, 209:22
**williams**
89:9
**willingham**
139:7
**win**
25:10, 25:22
**windows**
240:7
**wise**
23:22, 24:10
**wish**
28:13, 145:12,
166:15
**withdraw**
263:19
**withdrawal**
192:20, 195:21
**within**
116:21
**without**
112:9, 116:16,
130:8, 167:11,
231:6, 298:14,
298:18, 298:21,
298:22
**witness**
10:13, 20:2,
20:21, 30:8,
30:12, 38:2,
54:13, 80:12,
97:12, 97:13,
97:16, 101:14,
102:9, 103:22,
104:3, 115:2,
116:4, 117:6,
130:13, 132:16,
139:22, 146:8,
155:20, 172:13,
174:2, 200:13,
229:19, 246:14,
281:21, 310:1,
310:12, 324:21,
325:1, 328:13

**wives**
205:22
**won**
28:9
**woodville**
18:17, 115:21,
116:2, 117:10,
117:13, 118:6,
118:12, 120:2
**word**
246:17, 247:1,
247:6, 290:2,
301:5
**wording**
279:4
**words**
119:10, 164:1,
244:15
**work**
16:16, 149:17,
149:20, 203:3,
203:18, 206:13,
209:3, 209:6,
243:19, 302:14
**worked**
16:13, 16:14,
208:2
**working**
203:20, 204:1,
204:4, 259:2
**works**
239:19, 249:5,
249:6
**workspace**
227:5, 227:10,
227:13
**wouldn't**
185:13, 322:4
**write**
164:18, 165:2,
188:15, 188:18,
188:21, 198:11,
199:19, 201:14,
270:16, 323:11
**writing**
67:14, 177:14,
183:18, 200:1,
201:10, 201:12

**written**
199:2, 199:9,
199:10, 215:8,
277:14
**wrong**
236:20, 261:22,
269:3, 315:11,
322:12
**wrongfully**
207:16
**wrote**
109:6, 164:21,
200:22, 251:4,
270:12

---

**X**

---

**x**
1:4, 1:11

---

**Y**

---

**yeah**
11:21, 32:12,
65:16, 100:15,
107:19, 109:14,
131:19, 145:16,
147:4, 153:10,
161:15, 173:19,
205:13, 205:16,
207:22, 223:3,
224:17, 225:18,
244:6, 250:2,
258:20, 264:18,
274:15, 302:13,
303:18, 318:8,
321:12, 322:10,
322:22, 323:6,
323:9, 324:5
**year**
63:13, 150:14,
210:11
**years**
13:11, 13:13,
18:14, 44:8,
68:6, 81:21,
119:1, 119:3,
119:6, 207:2,
207:15, 296:16
**yep**
127:21

| | | | |
|---|---|---|---|
| **yesterday** | 198:21 | **0000030** | 92:22, 107:16, |
| 82:12 | **$250,000** | 5:16, 56:6 | 160:20, 161:2, |
| **yeung** | 119:2 | **0000031** | 239:5, 245:2, |
| 3:13, 11:10, | **$350** | 5:17 | 245:5 |
| 33:18, 34:19, | 259:22, 260:3, | **0000060** | **1/1/21** |
| 49:22, 75:2, | 279:10, 279:17, | 5:20, 65:12, | 8:16 |
| 75:5, 88:8, | 279:21, 280:4, | 66:11 | **1/2/20** |
| 88:13, 88:16, | 281:5 | **0000061** | 8:14 |
| 104:9, 108:4, | **$5,000** | 5:21, 69:17 | **1/9/2007** |
| 108:9, 161:8, | 119:4 | **0000066** | 245:8 |
| 161:10, 161:14, | **$51,800** | 5:22 | **10** |
| 161:19, 162:1, | 279:10 | **0000069** | 1:16, 5:3, |
| 162:4, 163:6, | **$53,158.18** | 6:6, 74:10 | 6:15, 7:11, |
| 195:1, 195:9, | 195:21 | **000021** | 10:3, 51:19, |
| 213:11, 215:4, | **$6,258.23** | 6:7, 78:9 | 88:11, 104:15, |
| 223:1, 226:19, | 199:6 | **000022** | 104:17, 105:4, |
| 233:11, 233:18, | **$65,000** | 6:8 | 105:5, 200:2 |
| 233:21, 270:3 | 177:9, 178:1 | **000030** | **1001** |
| **yeung's** | **$700** | 6:12, 82:2 | 118:21 |
| 66:5 | 259:21, 261:7, | **000039** | **1014** |
| **york** | 261:12, 280:3 | 6:12 | 119:6 |
| 323:12 | **$750** | **000495** | **105** |
| **younger** | 259:5, 259:18, | 7:12 | 6:15 |
| 269:19 | 260:8 | **000719** | **108** |
| **yourself** | | 6:13, 88:4, | 6:17 |
| 19:22, 90:16, | **'** | 88:19 | **11** |
| 107:2, 164:18, | **'compass'** | **000720** | 6:16, 10:3, |
| 171:8, 192:3, | 242:2 | 6:14, 88:19 | 36:12, 38:8, |
| 192:7, 198:11, | **'employee'** | **00309** | 38:18, 56:21, |
| 231:19 | 242:1 | 1:8 | 70:1, 78:16, |
| | | **04** | 101:22, 103:1, |
| **z** | **0** | 1:16, 10:3, | 108:4, 108:11, |
| **zeros** | **00** | 162:15 | 108:13, 121:5, |
| 88:4 | 87:12 | **06** | 121:12, 122:2, |
| **zip** | **0000010** | 36:12, 251:3 | 122:14, 123:1, |
| 146:6 | 47:21 | **07** | 227:2, 235:13, |
| **zito** | **0000013** | 59:12 | 236:18, 236:22, |
| 3:5 | 49:1 | **08** | 251:3, 310:7, |
| **zoom** | **0000015** | 51:12, 57:11, | 325:8 |
| 12:10, 102:21 | 5:13 | 60:16, 60:21, | **115** |
| | **0000019** | 61:2, 217:7, | 6:19 |
| **$** | 5:14, 49:18 | 218:11, 220:1, | **1160** |
| **$1,000,000** | **000002** | 239:12 | 197:11 |
| 119:7 | 5:12 | **09** | **1165** |
| **$20,000** | **0000029** | 218:11 | 199:5, 201:17 |
| 199:18, 200:3 | 5:15 | **09376** | **1180** |
| **$200,000** | **000003** | 7:15, 177:7 | 199:18 |
| 197:15, 198:12, | 33:21 | | **12** |
| | | **1** | 6:18, 41:5, |
| | | **1** | |
| | | 90:2, 92:16, | |

79:6, 87:8,
102:12, 102:15,
102:16, 102:17,
103:3, 115:14,
115:16, 115:19,
135:12, 163:18,
195:3, 195:17,
196:13, 197:12,
198:13, 198:21,
217:7, 218:1,
218:11, 220:1,
251:8, 258:18
**120**
6:21
**13**
6:20, 37:18,
38:13, 120:17,
120:19, 120:21,
121:19, 190:19,
199:7
**133**
7:5
**137**
118:22
**138**
7:7
**14**
7:4, 8:13,
133:10, 133:11,
133:17, 133:18,
197:8, 198:16,
214:16, 220:3,
223:4, 223:21,
245:8
**140**
7:9
**141**
7:11
**15**
7:6, 7:11,
33:22, 102:5,
102:8, 119:2,
138:9, 138:12,
138:14, 144:6,
213:19, 285:5
**150**
121:2, 121:16,
123:1

**16**
7:8, 17:10,
50:11, 50:14,
51:12, 71:18,
72:1, 78:16,
140:6, 140:9,
250:7, 251:2,
285:5
**162**
7:12
**17**
6:9, 7:7, 7:10,
7:13, 79:6,
79:22, 82:5,
87:7, 141:14,
141:16, 141:17
**172**
7:14
**177**
7:15
**178**
7:17
**18**
7:12, 32:19,
44:22, 118:21,
119:5, 162:6,
162:9, 162:12,
255:9, 256:22,
311:6
**19**
6:4, 7:7, 7:13,
31:5, 75:11,
75:18, 172:3,
172:4, 172:7
**191**
7:19
**195**
7:20
**196**
7:21
**199**
322:16, 322:22
**1998**
150:4, 203:22
**1:**
239:3
**1:-cv--elh**
1:8

**2**

**2**
50:14, 57:11,
60:16, 60:21,
61:2, 80:1,
217:17, 239:12
**2,193**
80:19
**20**
7:4, 7:15,
51:6, 59:12,
70:1, 78:12,
87:17, 144:6,
177:3, 177:5,
245:5, 264:5,
274:8
**200**
182:22, 183:9,
184:5, 197:9,
214:16, 214:19,
215:15, 220:3,
221:9
**2000**
150:3, 150:4,
150:7, 212:7,
242:4, 242:22
**2001**
121:5, 121:12,
122:2, 122:14,
123:2, 125:14,
126:14, 126:16,
132:17
**2005**
211:17, 211:19
**2006**
13:19, 16:5,
16:7, 16:12
**2007**
30:5, 30:6,
31:17, 53:8,
55:21, 56:1,
57:10, 58:20,
59:2, 59:5,
59:12, 60:15,
60:21, 61:1,
61:7, 61:9,
61:11, 61:19,

62:5, 62:22,
77:4, 207:3,
207:14, 237:19,
238:12, 239:3,
239:5, 239:12,
242:9, 242:22,
245:2, 245:5,
245:17, 246:7,
246:9, 255:8,
256:21, 257:1,
276:13, 276:16,
278:22, 310:14,
311:5, 313:15,
314:7
**2008**
8:4, 178:22,
190:8, 212:8,
213:18, 213:19,
214:3, 214:8,
214:10, 214:13
**2009**
8:6, 190:20,
211:17, 217:7
**2010**
211:15
**2011**
211:12
**2012**
211:9, 250:7,
251:2, 257:18,
258:18, 260:14,
285:5
**2013**
211:7
**2014**
17:2, 83:20,
84:2, 84:6,
84:13, 211:4
**2015**
71:18, 72:1,
144:6, 177:1,
210:20, 211:1,
266:4, 272:3
**2016**
210:17
**2017**
171:22, 172:9,
210:14

**2018**
161:6, 162:15,
163:17, 164:3,
164:8, 165:3,
165:7, 167:15,
189:22, 190:2,
190:5, 190:9,
190:15, 210:9,
210:11, 256:21,
257:2
**2019**
89:4, 89:7,
90:1, 90:5,
90:10, 90:21,
91:5, 91:9,
92:8, 92:11,
92:13, 92:15,
93:1, 93:7,
93:11, 151:17,
151:20, 164:17,
165:14, 166:5,
195:1, 195:3,
195:17, 196:13,
197:12, 198:13,
198:16, 198:21,
199:7, 200:2,
201:11, 202:2,
202:4, 211:22,
212:2, 254:18,
255:8, 307:3
**2020**
22:6, 40:6,
40:10, 44:9,
50:11, 50:14,
51:9, 70:1,
117:10, 117:13,
135:11, 151:10,
151:13, 220:15,
221:6, 221:7,
221:19, 222:16,
226:18, 227:2,
227:14, 264:1,
264:6, 306:2,
323:3
**2021**
1:15, 10:3,
21:18, 21:22,
22:6, 22:10,

22:14, 22:17,
22:21, 32:19,
40:3, 40:10,
56:20, 57:2,
57:18, 58:3,
60:9, 60:12,
66:13, 75:11,
75:18, 77:10,
77:11, 78:16,
79:6, 79:19,
79:22, 80:21,
82:5, 87:7,
94:20, 150:14,
151:1, 151:10,
151:11, 158:2,
159:8, 159:17,
223:4, 223:21,
226:6, 230:2,
235:13, 236:18,
236:22, 239:14,
248:14, 248:17,
264:6, 264:9,
264:12, 285:17,
285:20, 290:12,
290:15, 290:19,
291:1, 301:3,
301:12, 303:21,
305:16, 311:6,
313:21, 314:12,
328:15
**2022**
328:17
**203**
214:16
**21**
1:8, 5:18, 6:4,
6:9, 7:13, 7:16,
8:13, 8:18, 9:4,
9:10, 47:22,
51:19, 171:22,
172:8, 178:15,
178:16, 185:20,
257:14
**21202**
4:8
**213**
8:5
**21401**
3:16

**21403**
182:22, 183:9,
184:6, 197:9,
214:16, 220:4,
221:10
**216**
3:17
**217**
8:7
**22**
7:18, 30:5,
30:6, 31:17,
41:5, 57:10,
59:5, 60:15,
60:21, 61:1,
78:12, 191:5,
239:3, 239:5,
239:12, 245:2,
245:4, 310:14,
311:5, 314:7
**220**
8:10
**222**
182:21, 183:8,
184:4, 197:8,
214:15, 214:21,
215:8, 215:14,
220:2, 221:9
**223**
8:13
**226**
8:15
**23**
7:20, 37:18,
38:13, 51:9,
89:4, 89:7,
90:1, 90:5,
90:10, 90:21,
91:5, 92:15,
92:22, 163:17,
164:3, 164:8,
164:22, 165:3,
165:7, 195:5,
195:10
**230**
8:17
**235**
5:4

**238**
3:15
**24**
7:4, 7:21,
38:18, 78:16,
87:8, 135:11,
135:12, 161:6,
162:14, 163:18,
167:15, 196:20,
197:1, 197:2,
197:3, 197:4,
239:3, 239:5,
258:18, 274:2
**240**
8:19, 8:22
**25**
8:4, 36:15,
36:19, 39:17,
41:5, 44:22,
51:11, 90:2,
92:22, 109:6,
109:7, 113:11,
117:13, 197:1,
213:10, 213:11,
213:12, 213:15,
257:18, 260:14
**250**
9:7, 9:9
**257**
9:11
**26**
8:6, 35:3,
117:1, 133:2,
199:6, 217:20,
218:7, 218:14
**2600**
4:7
**266**
9:15
**27**
8:8, 56:21,
80:1, 217:7,
218:11, 220:20,
235:13, 236:18,
236:22, 325:19,
325:21
**28**
8:11, 8:18,

**36:12, 56:20,**
**57:2, 57:18,**
**58:3, 60:9,**
**60:12, 70:6,**
**222:21, 223:5,**
**235:13, 236:18,**
**236:21, 274:5,**
**315:2**
**284**
5:5
**29**
5:18, 8:14,
9:4, 9:10,
13:13, 38:8,
47:22, 51:18,
66:13, 212:8,
213:18, 217:7,
218:11, 220:1,
226:20, 229:7,
229:8, 248:14,
257:14, 285:17,
285:20
**29920**
146:6
**2nd**
251:8

___3___

**3**
9:7, 35:3,
51:12, 218:1
**30**
8:16, 17:6,
44:8, 100:22,
101:14, 102:12,
102:15, 102:16,
102:17, 132:21,
133:1, 144:13,
174:3, 230:10,
230:13, 234:7,
328:17
**300**
122:1, 122:13
**307**
5:6
**31**
8:18, 8:20,
9:15, 56:7,

**83:3, 227:2,**
**240:14, 240:15,**
**240:17, 247:22,**
**264:1, 266:10,**
**306:2, 326:13**
**312**
3:9
**32**
9:4, 9:8, 9:10,
79:6, 103:3,
171:22, 172:9,
249:21, 249:22,
250:3, 250:4,
257:8, 257:10,
282:9, 284:1,
285:1
**328**
1:21
**33**
6:15, 9:12,
92:16, 104:18,
105:7, 107:16,
239:3, 266:8,
266:9
**34**
5:13
**350**
3:6
**3571**
119:1
**36**
38:8, 51:19,
59:7, 235:18,
238:15
**37**
38:18
**38**
35:3
**39**
82:2, 160:20
**39650**
179:14

___4___

**4**
36:1, 39:17,
274:2, 274:5,
285:6

**400**
3:7
**401**
180:17, 216:3,
216:7
**41**
70:1
**410**
3:17, 4:9
**415984**
1:20
**42**
39:17, 156:4
**43**
257:18, 260:14
**44**
51:9
**45**
117:1, 133:2
**4839**
241:22
**489**
3:9
**49**
7:8, 140:5
**495**
161:16

___5___

**5**
51:9, 109:6,
310:7, 325:8,
325:19, 325:21,
326:13
**5/6/20**
8:10
**50**
5:15
**506**
268:15
**51**
161:2, 258:18
**52**
66:13, 248:14,
321:11
**5362**
227:12, 228:14,
228:18

**55**
50:14
**553**
322:16, 322:21,
322:22
**56**
5:17, 101:22,
285:6
**57**
103:1
**59**
217:17

___6___

**6**
37:17, 66:13,
241:15, 245:8,
248:14
**6.03**
325:7
**6030**
4:9
**60564**
242:1
**60654**
3:8
**612**
214:19, 242:3,
242:6
**62**
68:5, 71:5
**63**
71:9
**639**
146:5
**64**
72:4
**645**
119:2
**65**
72:15
**66**
5:20, 69:20,
72:15
**69**
5:22, 75:6

___7___

**7**
37:18, 38:13,

```
38:17, 257:18,
260:14
71
88:10, 88:11
719
88:8, 88:16
720
88:5, 88:8,
88:16
74
6:6
752
4:9
78
6:8
7900
3:17
```

_____ 8 _____

```
8
250:16
8174
3:9
82
6:12
88
6:14
```

_____ 9 _____

```
9
44:22, 47:22,
88:10, 88:11,
162:15, 171:22,
172:9
9th
328:14
```

_____ @ _____

```
@comcast
69:22
```