**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

DAVID JOHN BOSHEA,

     Plaintiff,

     v.

COMPASS MARKETING, INC.

     Defendant.

Case No. 1:21-cv-00309-ELH

### NON-PARTY MICHAEL R. WHITE'S
### OPPOSITION TO MOTION TO COMPEL, OPPOSITION TO MOTION TO EXTEND
### DISCOVERY DEADLINE, AND MOTION FOR PROTECTIVE ORDER

Non-party Michael R. White ("Michael"),[1] through his counsel, opposes the Motion To Compel (ECF 81) filed by Defendant/Counterclaimant Compass Marketing, Inc. ("Compass") and opposes Compass's Motion To Extend Discovery Deadline (ECF 80).

### I.    INTRODUCTION

Compass Marketing's request for a wholesale re-deposition of a third-party witness, who has limited information regarding the claims and defenses in this case, should be denied in its entirety. Michael has already been deposed at length, as to topics reaching far into underlying disputes pending in other forums regarding personal and business disputes between members of the White family, their counsel, and their business. This includes a pending lawsuit in Virginia regarding ownership and dissolution of Compass Marketing. None of this, by Compass Marketing's own argument to this Court regarding the proper scope of discovery it was seeking,

---

[1] Because several members of the White family are involved as witnesses in this case, Michael White is referred to by his first name.

has anything to do with Mr. Boshea's claim to a severance payment, the central issue in the case. Compass Marketing already obtained hours of testimony regarding purported motive and bias issues unrelated to Boshea. For the bulk of the deposition, objections were noted on the record and testimony proceeded subject to them. In certain instances, instructions not to answer were necessary under Rules 30(c)(2) and 30(d)(3). Compass Marketing's generalized argument that motive and bias are discoverable does not make the scope of proper questioning limitless, and certainly does not trump this Court's Order. The deposition of this third-party witness has already burdened him significantly, and with no communication regarding these disputes from Compass Marketing since December 1, 2021, and the discovery deadline having elapsed, Michael should be released from any obligation to provide further discovery.

## II.     FACTUAL BACKGROUND

Compass Marketing first served Michael with a document and deposition subpoena on August 10, 2021. In response, Michael filed a pro se Motion to Quash (ECF 33). The Motion to Quash and attached exhibits, as well as the Reply, identified various disputes regarding ownership and control of Compass Marketing, as well as underlying accusations of wrongdoing by the principals and their counsel. ECF 33 & 49.

Compass's Opposition (ECF 42) argued that the subpoena was proper because it was only seeking documents "narrowly tailored to issues relevant to this litigation" (ECF 42 at 6), *i.e.* Boshea's employment, compensation owed, and termination. Compass Marketing argued that Michael's allegations regarding its counsel have "no relevance to this issues before the Court" *Id.* at 8. As to Boshea, Compass Marketing contended that he is "wholly unrelated" to the other companies brought up by Michael in the Motion to Quash. *Id.* at 12.

Compass Marketing listed 16 topics raised in the Motion to Quash that Compass Marketing argued "have nothing to do with this lawsuit.":

> (i) laundering of Compass Marketing's funds, (ii) undisclosed financial interest in Tagnetics, (iii) misrepresentation about the relationship between Compass Marketing and Tagnetics, (iv) diversion of funds from the 401(k) plans of Compass Marketing employees, (v) negotiation with potential investors in Tagnetics, (vi) operation of a Ponzi scheme, (vii) investment in Smart Retail, (viii) theft of assets and intellectual property, (ix) personal threats, (x) personal use of Compass Marketing funds, (xi) fabrication of stockholder meetings, (xii) harassment of Daniel White, (xiii) fraud on the court, (xiv) violation of federal statutes and the Maryland Rules, (xv) incorrect corporate disclosure filing, and (xvi) improper participation in Tagnetics' bankruptcy proceedings.

*Id.* at 12-13 (citations omitted). Compass Marketing also argued that "none of the allegations against undersigned counsel are related to the instant lawsuit in any way" (*id.* at 13), and that the Motion to Quash contained "wild accusations have nothing to do with this lawsuit," and Compass Marketing did not want to burden the Court with "extraneous materials." *Id.* at 13 n.14. Compass Marketing insisted that it was only seeking information "relevant and narrowly tailored to the necessary issues." *Id.* at 13-14.

This Court's Memorandum and Order (ECF 52, the "Order") denied Michael's pro se Motion to Quash, largely agreeing with Compass Marketing that documents and testimony regarding Boshea's employment, compensation owed, disputed severance agreement, and termination are discoverable from Michael. ECF 52 at 8-9. This Court rejected Michael's arguments, and apparently agreed with Compass Marketing that the topics raised in, and documents attached to, the Motion to Quash and Reply were not related to this lawsuit. *See* ECF 52 at 3, 9; *see also* ECF 52 at 7 n.1.

This Court did grant Michael's Motion to Quash to a limited extent. Order, ECF 52 at 9 As to Compass Marketing's request for information related to the resident agent of Compass Marketing, this Court found that Compass Marketing was seeking, from non-parties, "information

not for its defense, but to investigate events that occurred after the commencement of this action." *Id.* This Court held, "While Defendant may be interested in this information, it is not information related to the allegedly forged Employment Agreement at issue in this action." *Id.*

In the same Order, this Court also granted the motion to quash filed by James DiPaula, another third party, from whom Compass Marketing sought discovery as to his separate severance agreement and certain financial information. ECF 52 at 11. This Court concluded that another employee's severance agreement and finances were not necessary for Compass Marketing's defense, and it failed to show why it could not obtain the information without burdening Mr. DiPaula. *Id.*

Following the resolution of the Motion to Quash, Compass Marketing noted another deposition, attempting to contact Michael by email. Michael had Compass Marketing's counsel's email blocked as a result of the ongoing disputes in various forums, so did not learn of the newly-selected date until after the parties had set it without his input. *See* ECF 67 at 3-4 & attached Affidavit. When Michael learned that the deposition had been scheduled for a date when he was unavailable, he notified the parties and the Court by filing a letter. ECF 62. Without further attempt to contact Michael, Compass Marketing moved for contempt sanctions. ECF 63.

Compass Marketing also served a separate subpoena on Michael, seeking a specific May 22, 2007 email and attached executed severance agreement, in native format.

Michael obtained counsel, and immediately began coordinating deposition scheduling,[2] and opposed the Contempt Motion. ECF 67. Shortly thereafter, Michael produced documents

---

[2] Scheduling a deposition date involved Michael offering multiple dates and required Judge Gauvey's considerable assistance. Even after clearing a date, disputes remained. Compass Marketing insisted that the deposition be conducted in-person at the Anne Arundel County Circuit Court. Compass Marketing never provided a reason for noting the deposition there. Ex. 3. The undersigned finally called the clerk's office of the Anne Arundel County Circuit Court, to inquire

responsive to the subpoenas, including the native format email and attachment sought in the second subpoena. *See* Ex. 1 (Nov. 18, 2021 email transmittal of files, listing below the cover message files including a native format email with subject line "FW Your agreement is attached. Not signed off by our G.C. bu should ne tomorrow."). Compass Marketing did not seek additional documents, before or after the deposition.

Michael appeared for a remote deposition on December 1, 2021. The deposition lasted a full day, with at least six hours of time on the record. *See* Deposition Transcript, ECF 81-1 ("MW Dep.") at 324.

Compass Marketing spent a large portion of the deposition asking about the very information and documents that it previously argued had "nothing to do with this lawsuit" in successfully opposing Michael's pro se Motion to Quash, and that this Court agreed in ruling in Compass Marketing's favor. Conversely, almost no questioning took place within the proper scope of discovery as noted in this Court's Order.

In particular, Compass Marketing asked questions about many of the very topics and documents attached to Michael's pro se Motion to Quash and Reply that Compass Marketing had previously argued were completely irrelevant, and other questions very far afield of this case: Tagnetics (151-59; 173-76); Woodville Pines LLC, another separate entity in no way involved in the dispute between Mr. Boshea and Compass Marketing (116-20); minutes of a special shareholder meeting in 2001 (125-33); allegations against counsel (135-38); John White email to

---

whether a deposition was allowed to be held there under the current COVID-19 protocols. The clerk's office informed the undersigned that a special request had been made by Mr. Stern based on security concerns, which the Anne Arundel County Circuit Court granted to allow the deposition to be held in the courthouse. The purported security concerns have never been articulated by Compass Marketing.

Nena Willingham 2019, an exhibit to the denied Motion to Quash (138-40); the Motion to Quash Reply (143); James DiPaula's severance and check (144-46; 177-78).[3]

Each of these lines of questioning were in violation of the Court's Order, which made clear that the scope of discovery is properly related to Michael's "conversations with Plaintiff regarding his employment, termination, and a factually disputed severance agreement," ECF 52 at 8, or otherwise so far outside the scope of permissible discovery as to be harassing and sought for an improper purpose. Michael's counsel objected and instructed the witness not to answer regarding these documents and topics.

Compass Marketing stated that Michael "opened the door" to these extraneous areas of inquiry that were "in issue" by virtue of Michael filing the pro se Motion to Quash, even though Compass Marketing specifically and successfully argued that those areas "have nothing to do with this case." *E.g.*, MW Dep. at 110; ECF 81 at 10. The only other basis given by Compass Marketing to justify the relevance and propriety of these questions was motive and credibility. *See* MW Dep. at 110-11; 129-30 (Michael's counsel asking if there were any additional or different bases, and none were offered); 157 (same); 305 (Compass Marketing: "I've given you my explanation. That's it. Nothing's different.").

Michael's counsel's instructions not to answer were interposed to attempt to enforce the Court's Order pursuant to Rule 30(c)(2). As to other harassing and irrelevant questions, but that were not the subject of an existing order, the objection was noted, and Michael was instructed to answer. Compass Marketing's rationale for its questions as to each of these topics and documents

---

[3] Mr. Boshea's counsel expressed on the record at the time that he would join a motion to compel information regarding these other severance agreements, but later when it was pointed out that this Court had granted Mr. DiPaula's motion to quash, Mr. Boshea's counsel appeared to reconsider the position that information concerning Mr. DiPaula should be discoverable from Michael. Boshea has apparently not joined in the instant Motion to Compel.

was motive, bias, and credibility. On that basis, Compass Marketing asked many other questions having no connection to the case (*e.g.*, 112-14, 117, 125, 157, 176). No other rationale was stated on the record, or in the Motion to Compel.

It is plain that the questioning was focused almost solely on obtaining information for use in the Virginia litigation, as well as multiple other proceedings that are currently pending before a variety of tribunals. In particular, Compass Marketing was allowed to ask, subject to objections on the record, regarding bank account information, copies of canceled checks, and business addresses for Compass Marketing used for various different purposes, all unrelated to Boshea in any way (MW Dep. 179-87; 212-26). Similarly, questions regarding Michael's family members, unrelated to the claims or defenses in the case, were objected to, but allowed to be answered. *See id.* at 203-12, 229, 306. Most egregiously, Compass Marketing asked for Michael's username and password information to databases whose ownership is in dispute. This resulted in additional instructions not to answer. MW Dep. at 95-101, 290-93.

The reason there were many objections and instructions not to answer because so many of the questions were improper. *See* MW Dep. at 318. This case obviously has many personal disputes underlying it, including between counsel, parties, and witnesses in various tribunals. Even so, the temper of the colloquies of counsel remained respectful and professional.

The Motion to Compel focuses in part on speaking objections in the deposition of Daniel White. To be clear, Michael's counsel's objections were not "speaking" objections. Michael's counsel made objections limited, to the extent possible, to the form of objections set forth in the Local Rules Discovery Guideline 6.a. *E.g.*, MW Dep. 22 ("Objection; form."); 25 ("Objection; calls for an opinion. Object to form. Go ahead."); 40 ("Objection; form, compound."); 60 ("Objection to form and lack of time frame."); 64 ("Objection; form; argumentative."); 64-65

("Objection; asked and answered several times."); 67 ("Objection; compound."); 280 ("Objection to form. You can answer."); *see also* Compass Marketing's Motion at 4-6 (reproducing MW Dep. at 90-92).

Michael's counsel asked Compass Marketing's counsel on several occasions whether it was preferred that the witness leave the room for a discussion amongst counsel, and that was done on a number of occasions when warranted. *E.g.*, MW Dep. at 30-31 (Michael's counsel asking Compass Marketing's preference for witness to leave room before explaining that contested document had been produced); 95 (objecting, and asking witness to step out of the room before discussion between counsel); 109 (same); 124, 146, 151-57. Michael's counsel also requested, and was granted, continuing objections to allow the deposition to proceed more smoothly. *Id.* at 212-17, 218-26.

Many areas of inquiry proceeded with little or no objection, for example, questions about the communications with Boshea or his counsel, produced by Michael. MW Dep. at 21-30. Compass Marketing then asked about Michael having forwarded the May 22, 2007 email and attachment to Boshea's counsel at his request, and recent discussions with Daniel White about the email, but not about the substance or timing of the original 2007 email itself. *Id.* at 56-63.

At the end of a lengthy deposition, Compass Marketing had not even asked about the native-format email that is at the center of this case. Michael had produced the May 22, 2007 email in native format on November 18, 2021 in response to Compass Marketing's second subpoena specifically seeking it. *See* Ex. 1 (email transmittal of files); *see also* MW Dep. at 30-33. Compass's counsel confirmed on the record that the native format email was in his possession at the time of the deposition, and Michael's counsel warned before the deposition closed that it was now the time for Compass Marketing to ask about it. MW Dep. at 310-11; 316-17. Despite having

the native format email and attachment (a draft of the severance agreement in dispute) from John White, direct from Michael's email account, Compass Marketing chose not to ask a single question about that version of the document "at this time."  MW Dep. at 310-11.

Michael received no follow-up from Compass Marketing about the substance of any of the issues stated on the record in the deposition.  On January 14, 2022, six weeks after the deposition and on the date of the discovery deadline, Compass Marketing moved to compel.  Compass Marketing did not confer, or attempt to confer, with counsel for Michael, nor was any motion first served on Michael before filing, in violation of Local Rules 104.7 and 104.8.

## III.    ARGUMENT

This Court should not consider Compass Marketing's Motion to Compel because of the outright failure to follow this Court's procedures before bringing it.  The Motion should be denied on the merits as well, because Compass Marketing has not met its burden to show that it was prevented from discovering legitimate information, or what an additional deposition could reveal that would justify the continued burden on this third-party witness.

### A.  Compass Marketing's Motion to Compel is procedurally improper and untimely, and should be denied on those bases alone.

Compass Marketing's Motion to Compel should be denied out of hand for non-compliance with the requirements under the Local Rules to hold a conference of counsel and to make sincere attempts to resolve the dispute before filing a discovery motion.  Local Rules 104.7 and 104.8 provide:

> **7. Conference of Counsel Required**
> Counsel shall confer with one another concerning a discovery dispute and make sincere attempts to resolve the differences between them. The Court will not consider any discovery motion unless the moving party has filed a certificate reciting (a) the date, time, and place of the discovery conference, and the names of all persons participating therein, or (b) counsel's attempts to hold such a conference without success; and (c) an itemization of the issues requiring resolution by the Court.

**8. Procedure Regarding Motions to Compel**
The following procedure shall be followed in litigating motions to compel answers to interrogatories and requests for production or entry upon land as to which a response has been served. This procedure shall not govern motions to compel (a) answers to interrogatories or to requests for production or entry upon land where no responses at all have been served; (b) answers to deposition questions; or (c) responses to discovery requests directed to a non-party. Such latter motions shall be filed with the Court and treated as any non-discovery motion, except that, as to disputes concerning discovery directed to a non-party, unless otherwise directed by the Court, the Court will not consider the motion until a conference has been held under L.R. 104.8.b and a certificate has been filed under L.R. 104.8.c.

(emphasis added). These Local Rules embody the requirements of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 37(a)(1) (a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure of discovery"); *see also Boukadoum v. Hubanks*, 239 F.R.D. 427, 431 (D. Md. 2006) (good faith efforts required before moving to compel a non-party). The failure to follow these requirements is, itself, grounds to deny a motion to compel. *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 585 (D. Md. 2010) ("Because Defense counsel has not complied with Rule 37(a)(1) or Local Rule 104.7, the Court will not consider Defendant's motion to compel.").

Michael's deposition concluded on the evening of December 1, 2021. Since then, no attempt by Compass Marketing's counsel was made following the discussions on the record in the deposition, during which Michael's counsel offered to have such a conference of counsel. Michael's counsel did ask, repeatedly, for any support for Compass Marketing's positions or different arguments as to the propriety of the questioning, MW Dep. at 322-23 (requesting citations of cases alluded to by Compass Marketing, and Compass Marketing agreeing to email them), but did not receive a response. Ex. 2 (J. Redd email to S. Stern, Dec. 2, 2021).

None of the briefing required under Local Rule 104.8.a was served, either. Well more than the 30 day time limit for doing so has elapsed after the deposition, and no extension was requested

or agreed to.  *Id.*  No certificate pursuant to Local Rule 104.7 or 104.8 concerning sincere attempts to resolve this dispute was or could be filed, because no such attempts were made.[4]  Compass Marketing also could have, but did not, employ this Court's letter and call-in process for resolving discovery disputes.  ECF 20-1.

Instead, Compass Marketing filed the Motion to Compel on January 14, 2022, the last day of discovery, without making any attempt to resolve the dispute before involving the Court.  Local Rules 104.7 and 104.8 exist to prevent this kind of last minute filing that unnecessarily extends discovery, burdening the Court, and non-parties.  Because Compass Marketing has failed without any excuse to heed the Local Rules, the Court should not consider the Motion to Compel.

### B.  Instructions not to answer were proper attempts to enforce this Court's Order or to prevent harassment.

Even if the Court is inclined to reach the merits of the dispute, Compass Marketing's Motion to Compel is substantively defective as well.  Michael's counsel's objections and instructions not to answer were in conformance with the Local Rules and the Federal Rules of Civil Procedure, and were only necessary to protect Michael from improper and harassing questioning outside the scope of discovery and this Court's Order.

---

[4] The footnote on page 15 of Compass Marketing's Motion to Compel that apparently purports to be a certificate under the Local Rules, is insufficient.  The discussions noted involved only Compass Marketing's and Boshea's counsel.  The parties' purported agreement to continue the deposition of Michael (albeit disagreeing as to the proper scope), is of no effect.  None of those discussions fulfilled the prerequisites under Local Rules 104.7 and 104.8 before this Motion was even allowed to be filed.  Additionally, consent under Local Rule 105.9 was not sought from Michael, and as set forth below in Section III.C Michael opposes any extension of the discovery deadline for the purpose of deposing him further.  Michael takes no position on extending discovery for party and expert discovery that the parties have requested in ECF 80, 82 & 88.

1.  **Instructions not to answer were justified to enforce limitations ordered by the Court.**

Rule 30(c)(2) provides, in pertinent part, "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Rule 30(d)(3) provides:

> At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in **bad faith** or in a manner that **unreasonably annoys, embarrasses, or oppresses** the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

(emphasis added).

Local Rules Discovery Guideline 6.d mirrors these Rules:

> Guideline 6.d. It is presumptively improper to instruct a witness not to answer a question during the taking of a deposition unless under the circumstances permitted by Fed. R. Civ. P. 30(c)(2). However, it is also presumptively improper to ask questions clearly beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1), particularly of a personal nature, and continuing to do so after objection shall be evidence that the deposition is being conducted in bad faith or in such a manner as unreasonably to annoy, embarrass, or oppress the deponent or party, which is prohibited by Fed. R. Civ. P. 30(d)(3).

Compass Marketing has not met its burden as the party moving to compel, to show that the contested instructions were not attempting to enforce the Court's Order. *See McNulty v. Casero*, No. SAG-16-2426, 2020 WL 2556667, at *4–5 (D. Md. May 20, 2020) (rejecting movant's insistence that there was no basis for instructions not to answer, and finding that while certain instructions were argumentative, most instructions were attempts to enforce the Court's discovery limitation order).

All the contested instructions were proper[5] under Rule 30(c)(2), to enforce a court's order, or to make a motion under Rule 30(d)(3). And the grounds for objecting and instructing not to answer were stated with the required specificity. *Bost v. Wexford Health Sources, Inc.*, No. CV ELH-15-3278, 2017 WL 3084953, at *5 (D. Md. June 19, 2017) (applying the specificity requirement of Fed. R. Civ. P. 34(b)(2)(B) to deposition objections and instructions).

In particular, the following lines of questioning were in direct contravention of Compass Marketing's own arguments for why its subpoenas were proper, and this Court's Order crediting Compass Marketing's positions in denying Michael's Motion to Quash: Tagnetics (151-59; 173-76); Woodville Pines LLC (116-20)[6]; minutes of a special shareholder meeting in 2001 (125-33); allegations against counsel 135-38; a 2019 email from John White email to Nena Willingham, that was attached to the Motion to Quash (138-40); the Reply in Support of the Motion to Quash (143); James DiPaula's severance and check (144-46; 177-78).

Compass Marketing cannot properly argue on the one hand that these areas of inquiry "have nothing to do with the case" to defeat the Motion to Quash in part on that basis, then turn around and focus a large portion of the deposition on those very topics in violation of the Court's Order.[7]

---

[5] To the extent it is not apparent from the transcript, although there were disagreements between counsel on the law, the tone and words of the disagreements remained professional and respectful throughout. *E.g.*, MW Dep. at 231-32.

[6] Another separate entity, raised in Compass Marketing's Opposition to the Motion to Quash (ECF 42 at 11) and its Reply in Support of Contempt Sanctions (ECF 71 at 4), that in no way involved in the dispute between Mr. Boshea and Compass Marketing.

[7] Compass Marketing improperly refers to Michael's status as an Orphan's Court Judge, when in this matter he is a witness in a purely personal capacity. There is no basis for Compass Marketing's assertion that the instructions not to answer were "an orchestrated process out into motion by Michael White" rather than simply a necessary response to numerous and repeated improper deposition questions.

13

Compass Marketing also cannot, without individual justification, argue that each instruction was improper. Compass Marketing's listing of other instructions not to answer (Mot. at 13) is insufficient to carry its burden to compel. Conversely, Michael has listed specific instructions and the justifications for them under Rule 30. Each instruction was supported by a principled basis. *McNulty v. Casero*, No. SAG-16-2426, 2020 WL 2556667, at *4 (D. Md. May 20, 2020) ("It is apparent from the transcripts and the filings that the parties were attempting to interpret, to their respective advantages, the limitation ordered by Judge Motz that discovery 'shall relate to the claims for relief only.'"). In *McNulty*, this Court held that "[r]easonable minds can debate whether some questions sought information about liability, claims for relief, or both, but it is clear that plaintiffs' former counsel – even if incorrect at times – was attempting to enforce a limitation imposed by the Court." *Id.*, at *5 (denying request for various types of sanctions).

That is what occurred in Michael's lengthy deposition. Many areas of inquiry, tenuously connected to the case at best, were allowed to proceed subject to objection under Rule 30(c)(2). *E.g.*, MW Dep. at 66-69 (in response to repeated questions about purportedly helping Boshea, Michael answered subject to concise objections). But Michael's counsel was forced to draw a principled line at topics and documents Compass Marketing argued were not connected to this case, and embodied in this Court's Order setting forth the scope of this matter as it relates to Michael.

### 2. Suspicions of potential motive and bias do not justify questions so far outside the scope of proper discovery.

Compass's erroneous conception of the scope of proper questioning based on motive, bias, or credibility would swallow any Court order and Rules 26 and 45. Compass Marketing does not attempt to argue that its questions were properly within this Court's Order, or seriously grapple with the propriety of instructing a witness not to answer under Rule 30(c)(2).

The case relied on by Compass to justify its harassing questioning has no application here. *Behler v. Hanlon*, 199 F.R.D. 553, 556-57 (D. Md. 2001), concerned the propriety of discovery sought from an expert witness as to the percentage of income the expert earned from litigation-related work. That case stands for the proposition that a specific type of information is discoverable to show potential bias of a specific type of witness (a retained expert). *Id.* Even then, the scope of discoverable information was limited to the percentage, not the amount of income. *Id.* The general statement in *Hanlon* (and cases cited therein) regarding impeachment of a witness cannot properly be extended to the lengths Compass Marketing is trying to use it to justify questions that by its own arguments have nothing to do with the instant case.[8]

In a case noted by Judge Grimm to be instructive and consistent with his decision in *Hanlon* (albeit not binding), the Court of Appeals of Maryland warned, "[W]e do not intend by our decision today to authorize the harassment of expert witnesses through a wholesale rummaging of their personal and financial records under the guise of seeking impeachment evidence. The allowance of the permitted inquiry, both at the discovery and trial stages, should be tightly controlled by the trial court and limited to its purpose, and not permitted to expand into an unnecessary exposure of matters and data that are personal to the witness and have no real relevance to the credibility of his or her testimony." *Wrobleski v. de Lara*, 353 Md. 509, 526, 727 A.2d 930, 938 (1999). Importantly for its application to this case, *Hanlon* did not involve instructions for the purpose of enforcing a

---

[8] *Pete v. Big Picture Loans, LLC*, No. 3:17-CV-461, 2020 WL 3979662, at *3 (E.D. Va. July 14, 2020), a case Compass Marketing cites for general propositions about the scope of discovery, also does not address the issue in Michael's deposition regarding instructions not to answer based on the Court's Order and for harassing and improper questions under Rules 30(c)(2) and 30(d)(3). The legal issue in *Pete* was the informant privilege, and further distinguishable because it involved "hostilities" on the record that are not present in the instant case.

limitation ordered by the court. Of course, *Hanlon* also did not involve the type of personal animosity that is rearing its head in this case and driving the type of discovery that is being pursued.

On that front, a better comparison is *CSX Transp., Inc. v. Gilkison*, No. CIV.A. 5:05-CV-202, 2009 WL 2985594, at *3 (N.D.W. Va. Sept. 15, 2009), in which a witness was properly instructed not to answer deposition questions asked for the collateral purpose to impugn the deponent's professional reputation. Compass Marketing has made this case personal as to Michael, but that does not make all information it would like to know relevant and discoverable from a third-party witness in this case. Questions that were permitted to be answered (*e.g.*, MW Dep. at 121-22) have already gone far past any proper scope that would be allowed under the principles underlying the decision in *Hanlon*. Questions the witness was instructed not to answer merely attempted to enforce what this Court has already recognized as to that scope. No further questioning should be allowed.

### 3. The Motion to Compel should be denied, and a protective order entered, regarding login information.

By seeking login information from Michael (Mot. at 12-13), Compass Marketing is plainly using discovery in this case to seek information for use in other litigation. This is an improper purpose. *E.g.*, *In re Kunstler*, 914 F.2d 505, 519 (4th Cir. 1990); *Aldmyr Sys., Inc. v. Friedman*, No. PJM-15-0864, 2016 WL 1126488, *10-14 (D. Md. Mar. 21, 2016). Even so, for much of the deposition, Michael's objections were "noted on the record, but the examination still proceed[ed]; the testimony [wa]s taken subject to any objection." Rule 30(c)(2). *See, e.g.*, MW Dep. at 121-22 (regarding stock certificates); 142 (regarding alleged conspiracy); 146-53 (anonymous mailings asserted in Compass Marketing's counterclaim, expressly questioning regarding the Virginia

litigation)[9]; 167-71 (noting that improper questions were repeatedly being asked, but allowing the witness to answer); 179-87 (continuing objection as to bank accounts, addresses, and checks unrelated to Boshea); 203-12 (regarding Michael's wife); 212-17, 218-26 (continuing objection regarding Virginia corporate filings and addresses); 227-29, 230 (continuing objections regarding Google payments); 229, 306 (George White's access or lack thereof to Compass Marketing email).[10]

At a point, however, Compass Marketing's questions went too far, by repeatedly requesting Michael's login information for disputed email and computer network accounts. MW Dep. at 95-101, 290-93; *see also* Mot. at 13. Compass Marketing's Motion to Compel, at Footnote 13, makes clear that the purpose of questioning about the email system and login information is for use in the lawsuit over control of the company.

Compass Marketing's counsel repeatedly asked these questions after objections were interposed and the witness was instructed not to answer pursuant to Rule 30(d). Compass Marketing's motion to discover this information in this case should be denied, and to the extent necessary a protective order is warranted. Given the complete lack of communication regarding the disputes in the deposition in the days and weeks following, it was not necessary or warranted for Michael, especially as a third party, to burden the Court with what appeared to have become a non-issue. Now that Compass Marketing has belatedly raised this issue, and is again explicitly seeking login information that does not belong to it, for use in other litigation, Michael requests a protective order be entered denying Compass Marketing's improper efforts in this regard.

---

[9] The transcript at 149, lines 1-2 should read, "That *does* give context for me to understand the spelling. Thanks."

[10] Boshea's counsel also made numerous well-founded objections, which Compass Marketing does not appear to take issue with. E.g., 179-92, 202, 204.

In sum, Compass Marketing chose to conduct a lengthy deposition on topics having little relevance at best, and mostly having nothing to do with this case. Where questions were even arguably related to the subject matter of this case, or not directly contrary to this Court's Order, the deposition questioning proceeded subject to objection. Although because of the nature of the questions, many instructions not to answer were unfortunately necessary, each one was proper under Rule 30(c)(2) and 30(d)(3).

### C. No further deposition of Michael is warranted and discovery should not be extended for that purpose.

Even if any of the instructions not to answer are found technically improper, the relief that Compass Marketing seeks — a wholesale re-deposition — is unwarranted.

"A court is not required to grant a motion to compel merely because an attorney gave an improper instruction not to answer. As stated previously, a court need not compel the discovery of information that falls outside the scope of proper discovery under Federal Rule of Civil Procedure 26(b)(1)." *Bost v. Wexford Health Sources, Inc.*, No. CV ELH-15-3278, 2017 WL 3084953, at *5 (D. Md. June 19, 2017) (granting additional deposition time of individual party defendants for questions as to relevant, non-privileged information)[11]; *see also E.E.O.C. v. Freeman*, 288 F.R.D. 92, 101–02 (D. Md. 2012) (finding certain instructions not to answer improper, but denying motion to compel further deposition as unnecessary).

As noted in this Court's Order on the Motion to Quash, this entire dispute must be viewed through the lens of the third party. ECF 52 at 5 (citing *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019). The Rules themselves provide that the party issuing a subpoena must take

---

[11] Notably, *Bost* did not involve instructions not to answer to enforce a limitation ordered by the Court, as most of the contested instructions here did. Again, with limited exceptions, where a line of questioning was irrelevant, but not in direct contravention of this Court's, objections were noted and the questioning proceeded.

steps to lessen the burden on a non-party, Rule 45(d)(1), which in turn gives specific application to Rule 26(g)'s provisions that discovery is "not interposed for any **improper purpose**, such as to **harass, cause unnecessary delay, or needlessly increase the cost of litigation**" and "neither **unreasonable nor unduly burdensome** or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." *See* The Sedona Conference, *Commentary on Rule 45 Subpoenas to Non-Parties, Second Edition*, 22 Sedona Conf. J. 1 (2021) at 44-45.

Having been drawn into this dispute between the parties, the relevance standard applicable to Michael is heightened and the burden must be lessened to justify this kind of discovery — a more demanding proportionality analysis applies. *See* ECF 52 (citing *Jordan*, 921 F.3d at 189). The discovery sought from, and to a large extent already obtained from, Michael is far beyond the claims and defenses in this case. Compass Marketing may be dissatisfied with some of Michael's answers, but that is not a basis alone for a wholesale re-deposition. Likewise, Compass Marketing's perception that the witness was "evasive" does not justify another deposition. Although suspicion and mistrust were apparent in the questions and answers, Michael answered questions that he was not instructed to refrain from answering for the reasons set forth above. Compass Marketing provides no authority for its argument that the mere fact that the witness answered "I don't know." warrants asking all the same questions again, which is what Compass Marketing appears to be seeking. *See also* MW Dep. at 60 (Compass Marketing's counsel stating, "If he wants to disclaim knowledge, that's his business."). Compass Marketing's long list of citations (Mot. at 7 & n.6) does not provide any reason to ask those questions again.

Compass Marketing has failed to demonstrate that any of the unanswered questions were proper, or that any further questioning is warranted. At most, even if any of the contested

instructions not to answer were arguably improper (they were not), the proper remedy would be a re-deposition limited to those questions within the proper scope that were asked, but were not answered. *Paice, LLC v. Hyundai Motor Co.*, No. CIV. WDQ-12-499, 2015 WL 302757, at *4 (D. Md. Jan. 22, 2015) (holding that all but one of the questions that the witness was instructed not to answer were outside the scope of court's order and ordering re-deposition of only one question within that scope).

Plaintiff also made clear that she was not interested in any of the specific information — within the scope of the Court's Order and pertaining to the claims and defenses in this case — that could be responsive to any further questioning. In this regard, a decision of another District Court in the Fourth Circuit is instructive. The District of South Carolina recently granted a motion to quash further deposition following instructions to answer questions that were technically improper, but did not prevent the questioner from obtaining any particular testimony. *Harriman v. Associated Indus. Ins. Co., Inc.*, No. 2:18-CV-2750-DCN, 2020 WL 6550636, at *3 (D.S.C. Nov. 6, 2020). Specifically, the court held:

> [the moving party] fails to point to any specific, relevant information she seeks from [the deponent] or any specific questions that went unanswered during the deposition. Instead [the moving party] states that [objecting] counsel's unfounded objections and instruction not to answer precluded a line of questioning into [the deponent's] role in reviewing [the movant's] claim. In the absence of a more concrete reason to reconvene the deposition, the court grants the motion to quash.

> *Id.*[12]

---

[12] For the sake of completeness, Michael notes that the Court in *Harriman* left open the possibility that the party seeking further information could, after other discovery was completed, identify specific discoverable information that could be uncovered by an additional deposition free of *improper* instructions not to answer. *Id.* Here, the instructions were proper to uphold this Court's Orders. Compass Marketing failed to ask any questions regarding the May 22, 2007 email and attachment, the central document in this case. Moreover, Compass Marketing has improperly waited until discovery is closed to raise the issue following the deposition, and does not specify

Up to this point, Compass Marketing has used the subpoena almost exclusively for purposes outside the scope it argued to this Court was relevant. The Motion To Compel makes clear that this tactic will only continue if more deposition time is granted. It was incumbent on Compass to show what it seeks to gain and why it is not an undue burden. Because Compass Marketing has used the subpoena improperly since the Motion to Quash was denied, this Court should deny the instant Motion to Compel under the principles of Rule 45. *In re Emp. Background Investigations, Inc.*, No. ELH-17-1850, 2017 WL 3722836, at *5 (D. Md. Aug. 29, 2017) (quashing subpoena that was aptly characterized as a fishing expedition); *In re Subpoena of Daniel Drasin*, No. 13-ELH-00304, 2014 WL 585814, at *4–5 (D. Md. Feb. 12, 2014) (quashing subpoena upon "weighing a subpoena's benefits and burdens" and "consider[ing] whether the information is necessary and whether it is available from any other source." (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1 (3d ed.2008))); *In re Verizon Wireless*, No. CV TDC-19-1744, 2019 WL 4415538, at *6 (D. Md. Sept. 16, 2019) (denying motion to quash but granting motion for protective order, where scales of relevance and proportionality did not tip in favor of requiring compliance because issuing party asked too much for too little).

Finally, Michael objects to the extension of the discovery deadline and objects to the expansion of deposition hours for any further deposition of Michael. No further deposition of Michael should be allowed. In the alternative, if any further deposition is ordered, it should be limited to specified topics within the proper scope of discovery in this case, and limited to the time remaining in Compass Marketing's seven hours to depose this third-party witness. *See Paice*, 2015

---

what information properly within the scope of the case it still seeks. Nothing here justifies any further deposition of Michael.

WL 302757, at *4 (limiting continued deposition to one question and follow-up, for not more than 30 minutes).

## IV.   CONCLUSION

For the foregoing reasons, Non-Party Michael R. White requests that this Court enter an Order denying Compass's Motion To Compel in its entirety, and denying Compass Marketing's Motion To Extend Discovery Deadline as it relates to Michael R. White.

Respectfully submitted,

Dated:  January 28, 2022

_____/s/_____
Justin A. Redd (Bar No. 18614)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
(410) 752-6030
(410) 539-1269 (fax)
jredd@kg-law.com

*Attorneys for Non-Party Michael R. White*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of January, 2022, the foregoing was filed and served via CM/ECF on all counsel of record, and a paper copy will be submitted to the Clerk in accordance with Local Rule 105.1.a.

                                    _____/s/_____
                                    Justin A. Redd