IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| **DAVID J. BOSHEA** | * | |
| Plaintiff, | * | |
| v. | * | Case No. 1:21-CV-00309-ELH |
| **COMPASS MARKETING, INC.** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT/COUNTER-PLAINTIFF COMPASS MARKETING, INC.'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Defendant/Counter-Plaintiff Compass Marketing, Inc. ("Compass Marketing"), by and through its undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 105, hereby submits the following Memorandum in Support of its Motion for Partial Summary Judgment.

**INTRODUCTION**

David Boshea filed the Complaint ("Compl."), the Amended Complaint ("Am. Compl."), and Second Amended Complaint ("Second Am. Compl.") in this action claiming he is owed $540,000.00 in severance under a provision in an employment contract he claims was offered to him and signed by Compass Marketing. Compass Marketing has contended from the outset that the agreement was not entered into and the agreement relied on by Boshea is not valid and enforceable because, among other things, the signature on the agreement for John White, CEO of Compass Marketing, was forged. This conclusion has been confirmed by two expert witnesses

and the opinion of the expert witness retained by Boshea was "inconclusive."[1]  Despite the weakness of the merits of Boshea's claim, Compass Marketing understands that the issues in this case present disputes of material fact and, therefore, the merits of the existence of liability (or lack thereof) are not ripe for decision at summary judgment.

Although the issue of the potential underlying liability (i.e., whether Boshea is entitled to severance) is not ripe for summary judgment, one issue is ripe for summary judgment and that concerns the application (or lack thereof) of the Maryland Wage Payment and Collection Law ("MWCPL").  In this regard, if Boshea were to establish the underlying liability, and if Boshea were to establish that there was no bona fide dispute as to Compass Marketing's refusal to pay the severance he claims he is owed, Boshea may seek treble damages and attorneys' fees and costs under the MWCPL.  The MWCPL should not apply in this case, however, because application of the MWCPL would violate a well-established legal doctrine that precludes the extraterritorial reach of statutes in the absence of an express intent by the legislature.

Indeed, during his nearly thirteen years of employment with Compass Marketing, Boshea has lived in Illinois, as have other Compass Marketing employees, and not worked from Compass Marketing's headquarters in Annapolis, Maryland.  Although Boshea has visited Maryland for business sporadically during his tenure with Compass Marketing, he visited the State of Maryland only once during his last three years of employment with the company.  Such an attenuated connection to the State of Maryland is insufficient to establish Boshea has having been employed "in the State" of Maryland, which necessarily precludes application of the MWCPL.

---

[1] Moreover, the fact that Boshea needed to be "reminded" of the existence of this so-called severance agreement, his inability to find a fully executed copy of the alleged agreement until shortly before the Complaint was filed in this case, and his explanation as to the circumstances in which the agreement was allegedly "signed," along with his collaboration with Daniel White and Michael White – two owners of Compass Marketing who have been trying to destroy the company for years - make his claim highly dubious at best.

**FACTUAL BACKGROUND**

Compass Marketing is a leading sales and marketing agency that helps its clients grow sales and market share. Compass Marketing is incorporated in the Commonwealth of Virginia and its principal place of business is located in Annapolis, Maryland. *See* Exhibit 1 (Declaration of Luis A. Fernandez, dated February 15, 2022) at ¶ 2.

Boshea began working for Compass Marketing in May 2007. *See* Exhibit 2 (David Boshea's Amended Responses to Defendant Compass Marketing, Inc.'s First Set of Interrogatories to Plaintiff David J. Boshea) at 4. Boshea worked for Compass Marketing from May 2007 until he was terminated on March 3, 2020. *Id.*

Boshea worked for Compass Marketing in various roles. His original title was Compass Marketing Group Vice President, and he eventually received the title of Executive Vice President beginning in approximately 2013 or 2014. *See* Exhibit 2 at 4.

At all times relevant to this lawsuit, Boshea lived and worked in the State of Illinois. *See* Exhibit 1 at ¶ 6. It was not unusual for Compass Marketing employees to live and work outside of the State of Maryland. In fact, during the time of Boshea's employment, various employees lived and worked in other states, including Illinois. *See* Exhibit 1 at ¶ 7.

As part of his employment with Compass Marketing, Compass Marketing reimbursed Boshea for equipment to set up a home office in Illinois. *See* Exhibit 2 at 8. Compass Marketing also agreed to pay for Boshea's membership to the White Eagle Golf Club in Naperville, Illinois, close to Boshea's home. *See* Exhibit 2 at 8. Dating back to at least 2013, Boshea only had Federal and Illinois taxes withheld from his wages during his employment with Compass Marketing. *See*

Exhibit 1 at ¶ 8.[2]  Boshea was even enrolled in Compass Marketing's health benefits plan for out-of-state employees (out-of-state being those outside the State of Maryland).  *See* Exhibit 1 at ¶ 10.

During the last thirty-six months of his employment with Compass Marketing (i.e., the last three years), Boshea came to Maryland only one time for two days for a meeting at Compass Marketing's office in Annapolis, Maryland.  *See* Exhibit 1 at ¶ 11; Exhibit 3 at ¶ 4 (Declaration of John D. White, dated February 15, 2022).  Prior to that trip, Boshea came to Maryland only sporadically during his employment to attend meetings at Compass Marketing's office in Annapolis.  *See* Exhibit 3 at ¶ 3.

## ARGUMENT

### I. MOTION FOR SUMMARY JUDGMENT STANDARD

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The Court should "view the evidence in the light most favorable to . . . the non-movant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002).  The Court, however, also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d, 514, 526 (2003) (*quoting Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993)) (additional citation omitted).

The Supreme Court has clarified that not every factual dispute will defeat a motion for summary judgment.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

---

[2] Compass Marketing does not possess payroll records dating back further than 2013.

4

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). Summary judgment is appropriate where a party fails to make a showing sufficient to establish the elements essential to the party's claim and on which the party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## II.   THE COURT SHOULD GRANT SUMMARY JUDGMENT AND DISMISS BOSHEA'S CLAIM UNDER THE MWCPL

In support of his claim under the MWPCL, Boshea alleges he "was an employee of the Defendant as that term is defined and interpreted under the [MWPCL]." *See* Second Am. Compl. [Dkt. No. 48] at ¶ 27. As an "employee," Boshea claims he is entitled to severance in the amount of $540,000.00, plus "an award of an amount not exceeding three times the wages owing to him along with reasonable counsel fees and other costs" under the MWPCL. *Id.* at ¶ 32.

The MWPCL defines the term "employer" to include "any person who employs an individual in the State or a successor of the person." *See* MD. CODE ANN., LAB. & EMPL. § 3-501(b). Notably absent from the statute is a definition for the term "employee."

As a company headquartered in Maryland, Compass Marketing obviously may be an "employer" under the MWPCL for certain employees, but it is not an "employer" within the meaning of the MWPCL for all of its employees because not all Compass Marketing employees

5

are employed "in the State" of Maryland. Boshea was one of those Compass Marketing employees not employed "in the State" of Maryland, and, thus, he should not be able to claim protection under the MWPCL. Indeed, Boshea is and has been a resident of the State of Illinois for the entire duration of his employment with Compass Marketing and he performed nearly all of his work from the State of Illinois,[3] not Maryland. In fact, Boshea visited the State of Maryland only once during the last three years of his employment with Maryland.

As an initial matter, Maryland adheres to the presumption that "unless an intent to the contrary is expressly stated, acts of the [Maryland] legislature will be presumed not to have any extraterritorial effect." *Chairman of Bd. of Tr. of Emps. Ret. Sys. v. Waldron*, 285 Md. 175, 401 A.2d 172, 177 (1979); *see also Elyazidi v. SunTrust Bank*, 780 F.3d 227, 237 (4th Cir. 2015); *Sandberg v. McDonald*, 248 U.S. 185, 195 (1918) ("Legislation is presumptively territorial and confined to limits over which the law-making power has jurisdiction."). The MWPCL "does not contain specific language indicating an intent to apply to work performed outside of the state." *Boyd v. Sfs Communs.*, No. 15-3068 PJM, 2021 U.S. Dist. LEXIS 72966, at *30 (D. Md. Apr. 15, 2021). Notably, "[t]he Court of Appeals of Maryland has not had the occasion to decide directly how the presumption against extraterritoriality applies in the context of Maryland wage laws." *See Poudel v. Mid Atl. Prof'ls, Inc.*, Civil Action No. TDC-21-1124, 2022 U.S. Dist. LEXIS 20458, at *6 (D. Md. Feb. 4, 2022). In the absence of any clear direction from the Maryland Court of Appeals, this Court has opined on the issue on a few select occasions.

In *Poudel v. Mid Atl. Prof'ls, Inc.*, Civil Action No. TDC-21-1124, 2022 U.S. Dist. LEXIS 20458 (D. Md. Feb. 4, 2022), the most recent of this Court's decisions on the issue, this Court had to decide whether employees of a Maryland-based employer, which issued paychecks from the

---

[3] Illinois has its own wage payment law to protect individuals employed in that State. In fact, Boshea has filed a claim under that statute as well. *See* Second Am. Compl. [Dkt. No. 48] at ¶¶ 33-39.

6

State of Maryland, could claim protection under the MWPCL, even though the employees never worked in the State. *Id.* at *8-9. Recognizing "the presumption against extraterritoriality," this Court determined that the employees could not invoke the MWPCL because they had never stepped foot in the State of Maryland. *Id.* at *13. In reaching this conclusion, the Court examined the language of the MWCPL and noted that it does not address extraterritoriality. *Id.* at *10. The Court contrasted the absence of an express provision in the MWCPL with Maryland's workers' compensation statute, which "specifies that 'an individual is a covered employee while working for the employer if the individual [is]: (1) in this State; (2) outside of this State on a casual, incidental, or occasional basis if the employer regularly employs the individual within this State; or (3) wholly outside the United States under a contract of employment made in this State for the work to be done wholly outside of the United States." *Id.* at *10-11. (quoting MD. CODE ANN., LAB. & EMPL. § 9-203). The Court contrasted the two statutes and noted "the failure to express such clear intent as to the . . . MWPCL weighs against the conclusion that the presumption against extraterritoriality has been overcome." *Id.* at *11.

In *Boyd v. Sfs Communs.*, No. 15-3068 PJM, 2021 U.S. Dist. LEXIS 72966 (D. Md. Apr. 15, 2021), the plaintiffs were a class of cable television, internet, and telephone technicians working in Maryland, Virginia, and Washington D.C., and they sued their employer for failing to pay them overtime in violation of the Fair Labor Standards Act ("FLSA"), Maryland Wage and Hour Law, and MWPCL. *Id.* at *3-4. This Court concluded that class members could not recover damages under the MWPCL for those weeks in which the class members performed no work in Maryland. *Id.* at *30. In reaching this conclusion, the Court found that the FLSA provided "a useful basis" "to determine the extent to which an employer's liability can extend to work performed outside Maryland." *Id.* at *31. "Under FLSA regulations, employees may recover for

any workweek during which they perform at least some work in an FLSA-covered jurisdiction." *Id.* (citing 29 C.F.R. § 776.7 n.20; 29 C.F.R. § 776.4(a)).

The Court turned to the FLSA for guidance in *Boyd* because it concluded that both the FLSA and MWCPL used the workweek as the standard for calculating damages and, therefore, "the same standard for extraterritorial work should also apply under Maryland law as under the FLSA—namely, that an employee can recover under Maryland law for any week during which he performed some work in Maryland." *Id.* at *31-32. (citing MD. CODE ANN., LAB. & EMPL. § 3-420(a)). The Court's reliance on the FLSA was not entirely correct, however, because not every claim under the MWPCL is premised on weekly wages.[4] Indeed, there have been an abundance of cases under the MWPCL that are based on annual bonuses, sales commissions, and other forms of wages that have no connection to a weekly wage. *See, e.g., Magee v. Dansources Tech. Servs.*, 137 Md. App. 527, 574, 769 A.2d 231, 258 (2001) (discussing applicability of commissions under the MWPCL); *Medex v. McCabe*, 372 Md. 28, 811 A.2d 297 (2002) (stating "[the MWPCL] expressly includes 'bonus' as an example of compensation"). Thus, being able to apply the MWCPL on a weekly basis does not necessarily work in each case.

In *Roley v. Nat'l Prof'l Exch., Inc.*, 474 F. Supp. 3d 708, 712 (D. Md. 2020), this Court was tasked with deciding whether the MWPCL applied to an employee who traveled to Maryland only seven times during his five years of employment with a Maryland-based employer. *Id.* at 718. The Court found that the MWPCL applied in that case because the "[employer] operated out of an office in Maryland, including for purposes of payroll activity." *Id.* at 720.

Just as the Court was not entirely correct in *Boyd* when relying on the weekly wage to find the MWPCL applied, the Court was not entirely correct in *Roley* by giving such significance to

---

[4] The wages at issue in *Boyd* were weekly wages for hourly workers.

8

the location from where payments are administered. In fact, this Court seemed to back away from the place of payroll administration analysis in *Roley* when it decided *Poudel*. In this regard, it would be incongruous to conclude, for example, that every employee of a large employer that operates in every state of the country is protected by the MWPCL (or the wage payment and collection law in state in which the company is headquartered) merely because the payroll is administered from Maryland (or the state in which the company is headquartered). The Court recognized the problems with such a conclusion in *Poudel*, and refused to have the MWCPL interpreted so broadly "absent some 'expressly stated' intent to cover such extraterritorial work." *Poudel*, 2022 U.S. Dist. LEXIS 20458, at *10-11. Beyond the issues noted in *Poudel*, a potential unintended consequence of the Court's reliance on the place of payroll administration as the location of the employee's employment is that, in those instances where payroll is administered by a third party (as is often the case in the modern workplace),[5] those third parties may become subject to joint and several liability for any wage payment violations under a joint or single employer theory of liability, which should not be the case because such entities do not "employ" those individuals.[6]

Even if the place from which payroll is administered bears consideration when determining whether the MWCPL applies, the number of visits the plaintiff in *Roley* had to Maryland seems too attenuated to establish that the employee was employed "in the State" of Maryland for protection under the MWCPL in the absence of an express intent to cover such extraterritorial work. Even if the number of visits over such a lengthy period in *Roley* are sufficient to establish

---

[5] *See, e.g.*, Why Aren't You Outsourcing Your Payroll Yet?, ARCORO, https://arcoro.com/resources/outsourcing-your-payroll/ (last visited Feb. 15, 2022) (noting that approximately 39% of employers in the US outsource payroll administration to a third party).

[6] *See, e.g.*, *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 133-135 (4th Cir. 2017) (explaining joint employer liability); *Torres-Negron v. Merck & Co.*, 488 F.3d 32, 42-43 (1st Cir. 2007) (explaining single employer liability).

...

...

sufficient connections with the State of Maryland, the circumstances in *Roley* are factually different than the case at hand in at least one material respect. Boshea was employed by Compass Marketing for thirteen years – eight years longer than the employee in *Roley*. *See* Second Am. Compl. at ¶ 12. More importantly, during the last thirty-six months of his employment (i.e., three years), Boshea visited Maryland for Compass Marketing related business a total of one time for two days. *See* Exhibit 1 at ¶ 11; Exhibit 3 at ¶ 4. And, moreover, before that last trip to Maryland, Boshea's visits to Maryland were sporadic at best, as he worked almost exclusively in Illinois throughout his thirteen years of employment with Compass Marketing. *See* Exhibit 3 at ¶ 3. Thus, the circumstances in the present case demonstrate a far more tenuous connection to the State of Maryland than in *Roley*, as a one-time visit to Maryland during the last three years of one's employment, particularly during an employment spanning thirteen years where visits to Maryland were sporadic at best, cannot be what the Maryland Legislature envisioned when enacting the MWPCL law or what any court envisioned when establishing exceptions to the presumption against extra-territorial reach of employment statutes.

     For the foregoing reasons, the Court should find that the MWCPL does not apply in this case, as any application of the MWCPL to Boshea would constitute an impermissible extraterritorial reach.

     In the alternative, if the Court were to find that Boshea may invoke the protections of the MWCPL in this case, which it should not, at the very least, the Court cannot extend the reach of the MWCPL beyond what it has already determined in *Boyd*. In *Boyd*, the Court applied the MWCPL to out-of-state employees only during those weeks in which the employees worked in the State of Maryland (and, in that case, unlike the current case, the visits to Maryland were more frequent and regular, and weekly wages were at issue). If that logic were applied in this case, the

Court would need to allocate some small portion of Boshea's thirteen years of employment with Compass Marketing to those few weeks in which he performed work in the State of Maryland to identify which wages were "earned" in Maryland (if Boshea actually establishes that he is entitled to the severance he claims in this case) and potentially subject to the treble damages under Maryland law. Otherwise, Boshea would receive a windfall in the event he prevailed in this case and established the potential for treble damages under the MWCPL because all of the severance would be deemed to have been earned in Maryland and subject to the protections of the MWCPL – a conclusion that stands in stark contrast with *Boyd*.

### III. IN THE ALTERNATIVE, THE QUESTION OF WHTHER THE PRESUMPTION AGAINST EXTRATERRITORIAL REACH (OR WHICH EMPLOYEES ARE SUBJECT TO THE PROTECTIONS OF THE MWCPL) SHOULD BE CERTIFIED TO THE MARYLAND COURT OF APPEALS

Pursuant to Maryland law, "a court of the United States" may certify a question to the Court of Appeals of Maryland "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of [Maryland]." *See Antonio v. SSA Sec., Inc.*, 749 F.3d 227, 234 (4th Cir. 2014) (quoting MD. CODE ANN., CTS. & JUD. PROC. § 12-603). As the Court in *Poudel* stated earlier this month, "[t]he Court of Appeals of Maryland has not had the occasion to decide directly how the presumption against extraterritoriality applies in the context of Maryland wage laws." *Poudel*, 2022 U.S. Dist. LEXIS 20458, at *6. Whether Boshea can invoke the protection of the MWPCL is determinative in this case as to how much Boshea may be able to recover from Compass Marketing if he is successful in his claim. In this regard, if Boshea establishes liability for the severance he claims (which Compass Marketing expects he will not), he will seek treble damages and attorneys' fees under the MWPCL. *See* Second Am. Compl. at ¶ 32; *see also* MD. CODE ANN., LAB. & EMPL. § 3-507 (allowing the potential for an award "not exceeding 3 times

11

the wage, and reasonable counsel fees and other costs").[7] The amount of potential recovery under the MWCPL is substantially greater than the amount available under the Illinois Wage Payment and Collection Act ("IWPCA"), which Boshea is also seeking relief under in this action. *See* Second Am. Compl. at ¶ 39. Under the IWPCA, Boshea can recover "the amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain[ed] unpaid," plus "costs and all reasonable attorney's fees." *See* 820 ILL. COMP. STAT. ANN. 115/14. Thus, guidance from the Maryland Court of Appeals would seem proper and appropriate in this case.

## **CONCLUSION**

For these reasons, the Court should grant Compass Marketing's Motion for Partial Summary Judgment and find that there are no material facts in dispute giving rise to Boshea's claim for violation of the MWPCL and dismiss Count II of the Second Amended Complaint with prejudice, or, in the alternative limit the amount of damages Boshea may recover under the MWPCL by allocating any portion of the severance that he may establishes he is owed to a sum that represents the wages he may have earned in Maryland (which is only a small portion of the time he worked during his thirteen year tenure with the company) so as to avoid any potential windfall under the MWCPL resulting from extraterritorial reach of the statute. Alternatively, the Court should certify the issue to the Maryland Court of Appeals.

---

[7] The availability of such an award is not automatic under the MWCPL, as the plaintiff (Boshea in this case) must establish that there was no bona fide dispute regarding the wages owed. *Id.*

Dated: February 15, 2022				Respectfully submitted,

                                                            */s/Stephen B. Stern*
Stephen B. Stern, Bar No.: 25335
Heather K. Yeung, Bar No.: 20050
KAGAN STERN MARINELLO & BEARD, LLC
238 West Street
Annapolis, Maryland 21401
(Phone): (410) 216-7900
(Fax):  (410) 705-0836
Email:  stern@kaganstern.com
Email:  yeung@kaganstern.com

*Counsel for Defendant*
*Compass Marketing, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 15th day of February, 2022, the foregoing Memorandum in Support of Motion for Partial Summary Judgment was served via the CM/ECF system on the following counsel of record:

| | |
|---|---|
| Thomas J. Gagliardo | Gregory J. Jordan |
| Gilbert Employment Law, PC | Mark Zito |
| 1100 Wayne Avenue, Suite 900 | Jordan & Zito, LLC |
| Silver Spring, Maryland 20910 | 350 N. LaSalle Drive, Suite 1100 |
| Email: tgagliardo@gelawyer.com | Chicago, Illinois 60654 |
| | Email: gjordan@jz-llc.com |

*Attorneys for Plaintiff*
*David Boshea*

 

*/s/ Stephen B. Stern*
Stephen B. Stern