# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| **DAVID J. BOSHEA,** | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Case No. 1:21-CV-00309-ELH |
| | * |
| **COMPASS MARKETING, INC.,** | * |
| | * |
| Defendant. | * |
| | * |

**********************************************************************

**DAVID BOSHEA'S AMENDED RESPONSES TO**
**DEFENDANT COMPASS MARKETING, INC'S FIRST SET**
**OF INTERROGATORIES TO PLAINTIFF DAVID J. BOSHEA**

David Boshea, the plaintiff, ("Boshea") for his amended responses to Defendant Compass Marketing, Inc's First Set of Interrogatories to Plaintiff David J. Boshea served by Compass Marketing, Inc. (the "Defendant"), states:

**GENERAL OBJECTIONS**

A.  In responding to the proponent's interrogatories, David Boshea does not concede that any of the information provided is relevant or material to this litigation's subject matter or any party's claims or defenses. David Boshea reserves the right to object to the admissibility at trial of any of the information or documents produced in response to these interrogatories.

B.  David Boshea objects to any request contained in the proponent's interrogatories to the extent that the request purports to impose any obligations upon David Boshea beyond the obligations imposed by the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or any applicable local rules or other court order.

C.  David Boshea objects to the proponent's interrogatories and every definition, instruction, and request therein, to the extent the information or documents sought: (a) contain privileged attorney-client communications; (b) constitute work product; (c) were prepared in anticipation of, or in connection with, litigation or trial; (d) disclose the mental impressions, conclusion, opinions, or legal theories of any attorney for, or other representative of, David Boshea; or (e) are otherwise privileged or exempt from discovery (collectively, "Privileged Documents"). David Boshea does not intend to produce any Privileged Documents or provide information concerning privileged or protected communications. Any disclosure of privileged or protected information or documents in response to any of the interrogatories is inadvertent and shall not be deemed a waiver of any applicable privileges or protections, and David Boshea requests that any such information or documents be returned promptly.

D. Each response is subject to all objections to competency, relevancy, materiality, propriety, admissibility, and to all other objections and grounds that would require the exclusion of any information identified herein if the information was asked of, or disclosed by, a witness present and testifying in court, all of which objections and grounds are expressly reserved and may be interposed at a later date.

E. David Boshea objects to the proponent's interrogatories on the ground and the extent to which they seek information that is not related to any party's claims or defenses in this action.

F. David Boshea objects to the proponent's interrogatories on the ground and the extent to which they seek information that is not in the possession, custody, or control of David Boshea.

G. David Boshea objects to the proponent's interrogatories on the ground and the extent to which they state a legal conclusion or assume or appear to assume that any fact or event is true. By responding to any such interrogatory, David Boshea does not concede the accuracy of any such conclusion or assumption.

H. David Boshea objects to the proponent's interrogatories on the ground and the extent that they are overly broad, unduly burdensome, and oppressive.

I. David Boshea objects to the proponent's interrogatories on the ground and the extent to which they are vague, ambiguous, and lacking in particularization.

J. David Boshea objects to the proponent's interrogatories on the ground and to the extent that they are not limited to the period relevant to this litigation and, therefore, seeking information that is neither relevant to any issue in this action nor reasonably calculated to lead to the discovery of admissible evidence.

K. David Boshea objects to the proponent's interrogatories to the extent that they purport to seek information regarding persons or individuals that are not parties to this action. Such interrogatories are overly broad and call for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence.

L. David Boshea provides these responses to the proponent's interrogatories based on its knowledge on the date of the responses and after a reasonable inquiry. Discovery is ongoing, and David Boshea' investigation continues. David Boshea reserves the right to supplement, amend, and correct these responses, if necessary, based on information later obtained through investigation, discovery, or otherwise.

M. David Boshea objects to the proponent's interrogatories to the extent the burden or cost of the requested discovery outweighs its likely benefit or to the extent that the discovery is not reasonably accessible due to undue burden or expense, including, but not limited, to Internet "cookies," temporary Internet pages, and other machine-generated data on computer hard drives. Further, David Boshea objects to the proponent's interrogatories to the extent they seek electronically stored information ("ESI") that is not reasonably accessible, including but

not limited to ESI that is on disaster recovery backup media and slack or fragmented data on hard drives that can be recovered only by using specialized forensic tools.

N. David Boshea incorporates each of these General Objections as if fully set forth in each answer and response below.

### ANSWERS AND OBJECTIONS TO INTERROGATORIES

**Interrogatory No. 1:** Describe in detail the events surrounding the allegations in Paragraph 11 of the Complaint. Your response should include, but not be limited to, who was present, where the signing took place, and any other details to support your claim.

>   **Answer:**    Subject to the General Objections, David Boshea was employed by Energizer, when John White approached David Boshea in or about March 2007 to solicit him to work for Compass Marketing.  John White traveled to Naperville, Illinois at least twice in March 2007 to recruit David Boshea.  The meetings covered a total of five to six days.  John White delivered an email on April 1, 2007 (CM 0133), which David Boshea delivered to Compass Marketing's counsel by email on August 9, 2021 at 4:07 pm.  In that email, John White stated:
>
> > Dave,
> >
> > I know you very very well, and have been waiting a long time to be able to work beside you again. i' miss all the years of both fun and getting big things done. From working with Larry/Marty, to Mccready, to Sam ...
> >
> > I can't wait to do this, think we will have a ton of fun and make lots of money! I agree they should work under you, but you should be certain they are on board with that. I'd be most worried about Jim or Arnie but you will have to measure that.
> >
> > Also, you and I need to make sure we discuss an exit plan for you, even seperate from me selling Compass. We need to respect that we are friends and that working together could possibly hurt our relationship (has not happened before but I was always working for you!!!!). I just want to define expectations up front so we limit the chances of getting on two different tracks, but I want us both to agree how we can spit if we need to so we can be certain to save our freindshlp.
> >
> > Lets you and I plan on spending some time together. Dan may be coming out with me on Sunday (just for the night) if you want to meet or discuss anything with him. I can handle it and we now have a full time general counsel so they can write it all up to protect you and to clarify everything. I'll be real careful to both protect our friendship, and your family. Again, you may want to start part time until you feel secure on the revenue side:
> >
> > Lets diuscuss this weekend. Can't wait to get started!
> >
> > John
> >
> > p.s. I want to see pictures of the vacation!

3

John White and David Boshea met in Naperville, Illinois on the following Sunday, April 8, 2007 at which time, John White discuss the terms of the exit plan discussed in the April 1, 2007 email that mirror the terms of the severance agreement.

John White, as Compass Marketing's CEO, offered David Boshea the compensation package outlined in the document produced CM 0131-32. David Boshea had several conversations with John and Dan White during April 2007 and May 2007 during which David Boshea and Compass Marketing agreed to the terms of David Boshea' employment, including the terms contained in the severance agreement attached to the complaint. In addition, David Boshea shared his signed severance agreement with John Mancini to entice Mr. Mancini to join Compass Marketing.

Answering further, David Boshea states that sometime in May 2007, David Boshea traveled to Compass Marketing's offices in Annapolis, Maryland. After arriving at the office, David Boshea was placed in a conference room. John White walked into the conference room where David Boshea was sitting and handed David Boshea a signed version of the severance agreement bearing John White's signature. John White had David Boshea sign the document, which he did. David Boshea handed the document to John White. In addition, David Boshea completed normal payroll paperwork provided by Michael White and participated in routine on boarding matters.

**Interrogatory No. 2:** Describe in detail all facts that support for the allegations in Paragraph 19 of the Complaint.

**Answer:** In Paragraph 19 of the Complaint, David Boshea stated that he performed all obligations required of him under the Agreement and is not otherwise in default. Subject to the General Objections, David Boshea worked for Compass Marketing in various roles in accordance with the obligations required of him and he was not terminated for cause. David Boshea joined as Compass Marketing Group Vice President and eventually received the title of Compass Marketing's Executive Vice President beginning in approximately 2013 or 2014. David Boshea's role never changed. In that role, David developed a sales strategy and executed the strategy through sales tactics that he had developed during his career. David Boshea's role involved his calling on national accounts developing potential client opportunities, bringing clients to Compass Marketing, working with clients. David Boshea role included overseeing other sales executives and managing Compass Marketing's executive sales team.

In support of David Boshea's allegation that he performed all obligations, David Boshea states that Compass Marketing provided a March 2, 2020 letter signed by John White CM 001 and an unsigned letter dated March 3, 2020 bearing John White's signature block provided by email on August 9, 2021 at 4:07 pm. Both letters state, "Regrettably, your position was one of the positions selected to be eliminated due to a necessary reduction in force." The letter also noted, "We appreciate your service to the company, and it is with regret that we must terminate your employment." Further, the letter provides, "As your termination is based on a generalized Reduction in Force you may qualify for unemployment benefits." David Boshea applied for unemployment benefits and

Compass Marketing did not contest David Boshea's application. At no time did Compass Marketing inform David Boshea of any issues concerning his performance.

On March 3, 2020 Erin Songer called David Boshea and left a message asking that he call her. David Boshea returned Erin Songer's call, and she added Jerry Cain to the conversation. Both Erin Songer and Jerry Cain told David Boshea that they both felt terrible about eliminating David Boshea's position and thanked David Boshea for his service. David Boshea advised Erin Songer and Jerry Cain during the March 3, 2020 call that David Boshea had his severance package included in the severance agreement. David Boshea subsequently called Erin Songer the same day during that conversation Erin Songer said that she felt bad about Compass Marketing eliminating David Boshea's position and assisted David Boshea in transferring his telephone number to David Boshea's control. At no time, including in the letters and conversations on March 3, 2020 did anyone from Compass Marketing raise any issues or concerns regarding David Boshea's performance or behavior.

**Interrogatory No. 3:** Describe in detail all facts surrounding your reduction in compensation in or about September 2015.

**Answer:** David Boshea restates the General Objections and further objections to this interrogatory as overbroad. Subject to the objections, Compass Marketing reduced David Boshea's compensation due to John White's mismanagement of Compass Marketing, which caused the company to experience financial problems. As a result of John White's failure to manage the company properly, Compass Marketing reduced the compensation of most executive personnel. John White told David Boshea that he would provide a bonus to David Boshea the following January equal to the amount of the reduction and returning his compensation to $200,000 annually. At no time did John White or anyone else at Compass Marketing mention or refer to any change in David Boshea's severance agreement, which had no relationship to the reduction in compensation. John White's mismanagement included spending monies lavishly, including over $500,000 on a cruise ship to entertain clients and company personnel at the 2014 Super Bowl. When the ship arrived in a foreign port, John White informed various people, including employees who subsequently left Compass Marketing, that they had to find their way home, damaging relationships

The mismanagement included calling Heather Jarrett, a Proctor and Gamble executive: a "bitch," which led to Compass Marketing losing an enormous amount of Proctor and Gamble's business.

Due to John White's mismanagement, Compass Marketing lost its business with Unilever.

Further mismanagement involved the loss of Splenda, one of Compass Marketing's most significant sources of revenue through 2014. Johnson and Johnson sold Splenda, and the new owner ultimately terminated the contract with Compass. Had John White served as CEO properly, Compass Marketing would not have lost revenue and eventually the account.

5

John White caused Compass Marketing to transfer enormous sums of money to Tagnetics, Inc.  On or about July 17. 2015, John White informed Compass Marketing's Board of Directors that the company could soon face litigation from Tagnetics, Inc.'s shareholders.  On or about July 17. 2015, Stephen Stern informed Michael White and Daniel White, as members of Compass Marketing's Board of Directors, that John White may have to soon "do some jail time" for securities violations John White had committed.  On or about July 17, 2015, and as a result of John White's situation. Compass Marketing's shareholders and Board of Directors passed a resolution electing Daniel J. White to serve as Compass Marketing's Chief Executive Officer.

John White overpaid various personnel who did not provide services having a value in relation to their compensation.  David Boshea refers Compass Marketing to Marty Monzerez's voicemail message previously produced.  John White lied to customers and clients as outlined in Marty Monzerez's voicemail.  John White was often intoxicated and openly displayed drunken behavior. John White frivolously spent monies on personal bodyguards for 15 years.  John White failed to pay employee's expense reports on time or not at all. Compass Marketing lost its entire e-commerce department to a company headed by James DiPaula. John White caused various people, who did little work, to receive executive compensation or off the books payments. John White lied about paying bonuses to the team.  John White sexually harassed at least three female employees, Tracy Teague, Dana Bernard, and Laura Getty, including causing Compass Marketing to pay $300,000 to settle a claim made by Tracy Teague, to whom John White sent obscene pictures of his anatomy by text.  David incorporates his contemporaneous notes, which are found at CM 0134.

**Interrogatory No. 4:** Describe in detail the substance of each communication you had with anyone acting on behalf of Compass Marketing that refers, reflects, or relates to your compensation. Your response should include, but not be limited to, the identity of each person who participated in those communications, the method of communication (e.g., in-person, text message, email, phone call), and the date of each communication.

**Answer:**     Subject to the General Objections, David Boshea restates the General Objections and further objects to this interrogatory as overbroad. Due to the breadth of this interrogatory, David Boshea cannot answer this interrogatory outside of the context of more specific questions posed at a deposition.

Answering further, David Boshea restates his response to Interrogatory No. 1 and 2.  On September 18, 2009, David Boshea played golf with John White, Ralph Panebianco and Joe Conescenti, whose telephone number is (443) 850-2213, at White Eagle Golf Club in Naperville, Illinois.  Messrs. White and Conescenti planned to attend the Notre Dame v. Michigan State football game the next day.  On September 18, 2009, David Boshea and John White spoke during which conversation David Boshea expressed his reluctance regarding John White's management of Compass Marketing.  As a part of that conversation, John White reminded David Boshea of the protections provided by the severance agreement and that the company needed David Boshea to remain with the company.

In or about 2012, David Boshea and John White had a conversation at White Eagle Country Club at which David Boshea told John White that Mr. Boshea was uncomfortable with the direction the company was taking and John White's attempt to prod David Boshea to convince Ralph Panebianco to invest $500,000 in Tagnetics. During the meeting, David Boshea told Mr. White that he was considering leaving and that Mr. Boshea would exercise his rights under the severance agreement. Mr. White recognized the existence of the contract and referenced the agreement in his effort to dissuade David Boshea from resigning.

In addition, John White, regularly over the fourteen years of David Boshea's employment, both in person and on the telephone, reminded David Boshea that David Boshea had the severance agreement to protect himself in the event anything, including an event involving John White's death or incapacity, happened that led to David Boshea losing his job.

In the fall of 2019, David Boshea and John White dined at the Ruth Chris Steak House in Annapolis, Maryland, at which time David Boshea expressed concern about Compass Marketing's direction. At that meeting, John White told David Boshea that "you have your deal, relax." The deal to which John White referred was the severance agreement.

On September 16, 2015, John White, by telephone, told David Boshea that Compass Marketing would temporarily reduce David Boshea's compensation. David Boshea included the substance of the conversation in David Boshea's contemporaneous notes.

Each of the communications produced by Compass Marketing as documents CM 0119 to 0130 and CM 0135 – 136 are responsive to this interrogatory.

Except for the September 18, 2009 and September 16, 2015 conversations, David Boshea does not recall the exact dates of any particular conversation recited above.

**Interrogatory No. 5:** Describe in detail the substance of each communication you had with anyone acting on behalf of Compass Marketing that refers, reflects, or relates to any time your employment with Compass Marketing was terminated or any time in which the actual or potential termination of your employment with Compass Marketing was discussed. Your response should include, but not be limited to, the identity of each person who participated in those communications, the method of communication (e.g., in-person, text message, email, phone call), and the date of each communication.

**Answer:** Subject to the General Objections, David Boshea Erin Songer and Jerry Cain communicated through emails on March 2, 2020 and March 3, 2020 advising David Boshea of the reduction in force that led to David Boshea's departure. David Boshea spoke with Erin Songer and Jerry Cain concerning his departure and the severance agreement. On March 2, 2020 or March 3, 2020, Erin Songer and Jerry Cain called David Boshea. During that conversation, Jerry Cain told David Boshea that Compass Marketing considered David Boshea a great and valuable employee, but the company was terminating his position. David Boshea advised Erin Songer and Jerry Cain of the severance agreement and its terms. On or about March 3, 2020, David Boshea and Erin

7

Songer had a subsequent conversation concerning transferring David Boshea's telephone while allowing David Boshea to keep the cellular number. David Boshea called John White on March 2, 2020, and various other dates into August 2020, leaving a voicemail message each time; however, John White did not return any calls. Compass Marketing has John White's telephone bills, which will disclose the dates and times of the calls.

On March 2, 2020, through approximately March 9, 2020, David Boshea participated in several telephone conversations with both Daniel White and Michael White, whom David Boshea knew to be Compass Marketing shareholders and directors. Mr. Boshea advised Messrs. White of his termination through separate conversations and noted his inability to reach John White. Daniel White reminded that David Boshea has the severance agreement and noted Compass Marketing's obligations. Michael White also recalled the severance agreement and repeated the same facts in separate conversations.

**Interrogatory No. 6:** Describe in detail the substance of each communication you had with anyone acting on behalf of Compass Marketing that refers, reflects, or relates to the alleged severance you claim you are owed. Your response should include, but not be limited to, the identity of each person who participated in those communications, the method of communication (e.g., in-person, text message, email, phone call), and the date of each communication.

**Answer:** Subject to the General Objections, David Boshea restates his responses to Interrogatories 1, 4, and 5. Further, David Boshea received the outline of the agreement produced by Compass Marketing as document produced CM 0131-32. In that document, Compass Marketing offered:

1. Position: Senior Account Manager,
2. Salary: $180,000 per year,
3. Bonus: Undefined and to be determined,
4. Insurance: Health Insurance,
5. Car Allowance: $500,
6. Retirement: Participation in Compass' 401(k) plan,
7. Expenses: Home office expense reimbursement,
8. Technology: Laptop, copy machine,
9. Travel: Reimbursement of business travel,
10. Vacation: two weeks in 2007 and three weeks in 2008,
11. Involuntary Exit Package: Compass offered three times David's salary (one year immediately vested with an additional two years accrued over the next three years), and

Golf Club Membership: Reimbursement of 100% of David Boshea's business-related fees for a total of $32,000 over three years ($12,000 upfront and $10,000 each December). Expense documentation required for reimbursement.

In March through May 2007, John White solicited David Boshea through telephone calls and in face-to-face meetings by noting David Boshea is the best salesman John White had met and wanted to do whatever it takes to convince David Boshea to join Compass Marketing, including outlining the under the terms of the severance agreement. In April 2007, Daniel White and John White flew to Chicago to meet David Boshea to sell him on Compass Marketing and the opportunities Compass Marketing presented. David Boshea and John White had at least two additional meetings in April 2007 in Naperville, Illinois, and multiple telephone conversations from March 2007 to May 2007 regarding David Boshea's prospective employment including the severance agreement. In April and May 2007, David Boshea and Daniel White had multiple telephone conversations regarding David Boshea's prospective employment including the severance agreement. During the same period, David Boshea had conversations with Michael White concerning David Boshea's prospective employment and the company's need to hire Mr. Boshea to turn the company around.

**Interrogatory No. 7:** Identify all statements against interest Compass Marketing has allegedly made concerning the allegations in the Complaint.

**Answer:** Subject to the General Objections, Subject to the General Objections, David Boshea restates his responses to Interrogatories 1, 4, 5, and 6. Further, David Boshea and John White had a disagreement at White Eagle Gold Club sometime in 2012 at which time David Boshea threatened to leave and John White asked David Boshea to settle down and they would work things out. John White and David Boshea met a number of times at Ruth Chris Steakhouse in Annapolis and John White repeatedly reminded David Boshea that if anything happened to John White or David Boshea, David Boshea and his family had the protection of the severance agreement attached to the complaint.

**Interrogatory No. 8:** Identify each person who possesses information relevant to the allegations in the Complaint and describe the substance of the information you believe he or she possesses.

**Answer:** Subject to the General Objections, David Boshea restates his responses to Interrogatories 1, 4, 5, 6, and 7. The following persons have knowledge concerning David Boshea and Compass Marketing's agreement under the Agreement attached to the complaint, David Boshea, John White, Daniel White, Michael White, John Mancini, Owen McGreevey, and Ralph Panebianco. David Boshea, John White, Erin Songer, and Jerry Cain have knowledge concerning David Boshea's termination without cause. Julie Boshea has knowledge of the severance agreement and its terms, David Boshea's trip to Maryland to sign the agreement, and his showing the signed agreement to her on his return from Maryland. Owen McGreevey has knowledge of the severance agreement and its terms as a result of David Boshea sharing the agreement with Own McGreevey. Ralph Panebianco, who was Compass Marketing's President, reviewed the severance agreement after its execution and communicated with Michael White concerning the agreement. David Boshea shared his severance agreement with John Mancini to encourage John Mancini to join Compass Marketing. Answering further, David Boshea directs Compass Marketing to David Boshea's Rule 26 disclosures.

**Interrogatory No. 9:** Describe in detail the substance of each communication you had with Michael White that refers, reflects, or relates since November 1, 2018. Your response should include, but not be limited to, the identity of each person who participated in those communications, the method of communication (e.g., in-person, text message, email, phone call), and the date of each communication.

>   **Answer:** Subject to the General Objections, David Boshea cannot respond to this interrogatory because it is unintelligible. To the extent the interrogatory seeks information discussed between Michael White and David Boshea concerning Compass Marketing, at various times in 2020 and 2021, although David Boshea does not recall the exact dates, Michael White recalled that David Boshea and Compass entered into the severance agreement attached to the complaint and that Michael White anticipated that John White would continue to cause Compass Marketing to avoid paying the amounts owing to David Boshea notwithstanding John White's knowledge of David Boshea' exemplary performance on Compass Marketing's behalf and Compass Marketing's obligations under the severance agreement. During these conversations, Michael White stated that Michael White knows David's employment file contained the Separation Agreement because a different employee had substantially the same agreement and asked that Michael White confirm the file included his contract. Michael White then obtained all of the separation agreements to which Compass Marketing was a party and made sure each employee's file contained a copy, including David Boshea's file.

**Interrogatory No. 10:** Describe in detail the substance of each communication you had with Michael White that refers, reflects, or relates since November 1, 2018. Your response should include, but not be limited to, the identity of each person who participated in those communications, the method of communication (e.g., in-person, text message, email, phone call), and the date of each communication.

>   **Answer:** Subject to the General Objections, David Boshea cannot respond to this interrogatory because it is unintelligible. David Boshea otherwise incorporates his response to Interrogatory No. 9. To the extent the interrogatory seeks information discussed between Daniel White and David Boshea concerning Compass Marketing, Daniel White told David Boshea in December 2020 and at various times during conversations in 2021, although David Boshea does not know the dates that David Boshea and Compass entered into the severance agreement attached to the complaint. In August 2021, Daniel White informed David Boshea that he derived his knowledge of the severance agreement from conversations with Michael White. In these conversations, Daniel White stated John White would continue to cause Compass Marketing to avoid paying the amounts owing to David Boshea notwithstanding John White's knowledge of David Boshea' exemplary performance on Compass Marketing's behalf and Compass Marketing's obligations under the severance agreement.

Dated: September 20, 2021

**DAVID J. BOSHEA**

/s/ Gregory J. Jordan

Gregory J. Jordan (Admitted Pro Hac Vice)
Jordan & Zito LLC
350 N. LaSalle Street, Suite 1100
Chicago IL 60654
(312) 854-7181
gjordan@jz-llc.com

Thomas J. Gagliardo (Bar No. 08499)
Of Counsel
Gilbert Employment Law, P.C.
1100 Wayne Ave, Suite 900
Silver Spring, Maryland 20910
tgagliardo@gelawyer.com

COUNSEL FOR DAVID J. BOSHEA

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| DAVID J. BOSHEA, | * |
| Plaintiff, | * |
| v. | * Case No. 1:21-CV-00309-ELH |
| COMPASS MARKETING, INC., | * |
| Defendant. | * |

**********************************************************************

    In accordance with 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that David Boshea's Amended Responses to Defendant Compass Marketing, Inc's First Set of Interrogatories to Plaintiff David J. Boshea contain my responses to those interrogatories and that my statements are true and correct.

_/s/ David J. Boshea_
David J. Boshea

## CERTIFICATE OF SERVICE

    The undersigned, as counsel of record for David Boshea, served Defendant's Amended Responses to Defendant Compass Marketing, Inc's First Set of Interrogatories to Plaintiff David J. Boshea on the following persons:

>Stephen B. Stern
>Heather K. Yeung
>Kagan Stern Marinello & Beard, LLC
>238 West Street
>Annapolis, Maryland 21401
>Email: stern@kaganstern.com
>Email: yeung@kaganstern.com
>*Attorneys for Plaintiff*
>*Compass Marketing, Inc.*

on September 20, 2021 via Electronic Mail.

                                      /s/ Gregory J. Jordan_____
                                      Gregory J. Jordan