IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **DAVID J. BOSHEA** | |
| Plaintiff, | |
| v. | Case No. 1:21-CV-00309-ELH |
| **COMPASS MARKETING, INC.** | |
| Defendant. | |

## DAVID J. BOSHEA'S RESPONSE IN OPPOSITION TO COMPASS MARKETING, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

David J. Boshea, for his response in opposition to Compass Marketing, Inc.'s Motion for Partial Summary Judgment, states:

### INTRODUCTION

Compass Marketing, Inc., a Virginia corporation headquartered in Maryland (Affidavit of David J. Boshea in Support of His Response in Opposition to Compass Marketing, Inc.'s Motion for Partial Summary Judgment at ¶ 3, attached as Exhibit A), asserts that Boshea cannot avail himself of the protections of the Maryland Wage Payment and Collection Law, *Md. Code Ann., Lab. & Empl. § 3-501 et seq.* (the "MWPCL"). Compass employs the vast majority of its workforce in Maryland. Compass admits it falls under the definition of an employer under the MWPCL, at least as to its employees in Maryland. Defendant/Counter-Plaintiff Compass Marketing, Inc.'s Memorandum in Support of its Motion for Partial Summary Judgment at p. 5. Compass' employment of personnel in Maryland makes it an employer under the MWPCL (*Md. Code Ann., Lab. & Empl. § 501(b)*), including in this lawsuit.

In May 2007, Boshea's employment journey with Compass started in Maryland, where he and John White, Compass' President, signed a document titled, "Compass Marketing, Inc Agreement Relating to Employment and Post-Employment Competition" (the "Employment Agreement") and worked that day. Boshea Affidavit at ¶¶ 12-13 and Exhibit 1 to Boshea Affidavit. By working in Maryland, Compass triggered its liability under the MWPCL. Compass submits that Boshea worked primarily in Illinois; however, John White admits Boshea worked over forty days in Maryland and periodically traveled to Maryland for work. The Declaration of John White at ¶¶ 3-4, Exhibit 2 to the Compass Memorandum. Moreover, Compass provided Boshea with an office at its headquarters in Maryland for several years. Boshea Affidavit at ¶ Upon review of the facts and Maryland law, including Maryland's strong policy favoring the application of the MWPCL, this Court should deny Compass' motion.

### THE COURT'S POUDEL DECISION DOES NOT ALTER THE OUTCOME IN THIS LAWSUIT

Compass' citation to *Poudel v. Mid Atl. Pros., Inc.*, No. CV TDC-21-1124, 2022 WL 345515 (D. Md. Feb. 4, 2022) misses the mark. Unlike the facts in this case, the *Poudel* court considered whether an employee who never worked a day in Maryland could take advantage of the MWPCL's protections. *Poudel* discussed extraterritoriality only in that context. Boshea, on the other hand, worked in Maryland regularly over the course of his employment with Compass. Boshea Affidavit at ¶¶ 6, 7, and 9. Unlike the *Poudel* plaintiff, Boshea worked in Maryland so regularly that Compass provided Boshea with his own office at its Annapolis headquarters from 2007 to 2013. Boshea Affidavit at ¶ 7.

Compass criticizes the decision in *Roley v. Nat'l Prof'l Exch., Inc.*, 474 F. Supp. 3d 708 (D. Md. 2020) by arguing that the court placed too much emphasis on the location from which the employer administered payroll. Compass viewed *Poudel* as backing away from the place of payroll

administration analysis in *Roley*. For support, Compass points to the *Poudel* court's hypothetical noting that the Court cannot consider a large employer that operates in every state of the country to support the assertion that the decision in Poudel turned on where the employer processed payroll, would be protected by the MWPCL because the employer administers its payroll in Maryland. However, Compass' position misses the mark. *Poudel* did not rise or fall on where the employer processed payroll; the case turned on whether the employee performed any services in Maryland.

No basis exists to believe the Hon. Theodore D. Chuang disagreed in *Poudel* with his ruling in *Roley* a year and a half before. *Poudel* entertained the hypothetical only within the context of the following question: [W]hether, in light of the presumption against extraterritoriality, the Maryland wage laws may apply even in the absence of any work occurring in Maryland, because MAPI is a Maryland company which may issue its paychecks from there." *Poudel*, at *4. The *Poudel* court found that it was not prepared to reach the conclusion that the MWPCL would protect employees of a Maryland-based employer, even one who issued payroll from Maryland, if those employees never worked in Maryland. The *Poudel* fact situation differs completely from the facts here. In this lawsuit, Boshea performed services in Maryland, including traveling between forty and fifty times to Maryland in connection with his employment with Compass. Boshea Affidavit at ¶ 11. The John White Declaration at ¶¶ 3-4 confirms the facts contained in the Boshea's Affidavit.

In *Roley*, the court found the MWPCL applied in a situation in which the employee paid Hawaii state taxes between 2011 and 2016 and "traveled to Maryland seven times, each time to attend a multi-day conference related to his work, …" Id., at 714. The *Roley* decision did not turn on the site of the payroll operations; instead, the court found the employer liable because (1) it

operated out of an office in Maryland, which gave rise to the state having an interest in ensuring the company paid its employees, and (2) as a result of the plaintiff's seven trips to Maryland.

> Here, NPX operated out of an office in Maryland, including for purposes of its payroll activity. Maryland plainly has an interest in ensuring that an employer operating in Maryland, such as NPX, does not withhold wages from its employees. *See Cunningham*, 107 A.3d at 1202. To the extent that the MWPCL arguably should be limited so as not to include employees with no connection of any kind to Maryland, that is not the case here. Not only was Roley's payment administered from the NPX office in Maryland, but he also worked in Maryland during seven multi-day business trips to Maryland during his five years as an NPX employee.
>
> *Roley*, 474 F. Supp. 3d at 720.

In *Roley*, as in this case, the employer operated out of an office in Maryland, and the employee visited the office on business trips. It is unreasonable to view Roley as holding that the site from which an employer paid payroll was determinative.

Moreover, the issue of payroll administration is nothing more than a distraction. While Luis A. Fernandez serves as Compass' Senior Vice President and Corporate Controller of Compass Marketing, Inc., and has responsibility for all financial and accounting practices and policies of the Company, including payroll (Declaration of Luis A. Fernandez, Exhibit 1 to the Compass Memorandum), Compass relies on Mr. Fernandez' declaration solely to support its claim that "Compass Marketing is a leading sales and marketing agency that helps its clients grow sales and market share. Compass Marketing is incorporated in the Commonwealth of Virginia and its principal place of business is located in Annapolis, Maryland." Compass Memorandum at p. 3. Neither Mr. Fernandez nor Compass claims the company administers the payment of payroll outside Maryland.

## **BECAUSE BOSHEA'S EFFORTS IN MARYLAND WERE FAR MORE EXPANSIVE THAN THOSE IN ROLEY, THE MWPCL CLEARLY APPLIES.**

Compass attempts to use *Poudel* to distinguish this court's holding in *Roley* from the facts here, claiming that Boshea worked for Compass for eight years longer at Compass than the Roley did at his employer, and Boshea only visited Maryland one time for two days during the last thirty-six months of his employment. *See* Compass Memorandum at 10. From these facts, Compass determines that "the circumstances in the present case demonstrate a far more tenuous connection to the State of Maryland than in *Roley*…." Compass Memorandum at 10. The plaintiff in Roley attending seven business meetings from 2011 to 2016 pales in relation to Boshea's forty-one business trips to Maryland that John White confirms in his declaration. The Court may calculate the forty-one trips through Mr. White's confirmation that David Boshea took on average no more than four trips to Maryland during his first ten years of service (40 visits) and another in the last three years he was with Compass. John White Declaration at ¶¶ 3-4. Boshea's contacts with Maryland are far more extensive than the plaintiff in Roley, whom the court held could enforce a claim under the MWPCL. Compass even provided Boshea with an office in Annapolis from 2008 to 2013. Boshea Affidavit at ¶ 7. Accepting the fact Compass recites, Boshea's connections to Maryland under the *Roley* court's analysis should afford Boshea with protection under the MWPCL.

Compass next cites *Boyd v. SFS Commc'ns, LLC*, No. CV 15-3068 PJM, 2021 WL 1430723 (D. Md. Apr. 15, 2021), but misreads its import. Compass does not dispute that Boshea worked in Maryland. Instead, Compass argues that Boshea did not work enough in Maryland to invoke the application of the MWPCL. *Boyd's* holding, however, does not incorporate that analysis. In *Boyd*, the court held that those workers who provided services in Maryland could take advantage of the MWPCL. *Boyd* did not include a qualitative analysis of the value of Maryland employees' hours

worked in the state to the employer. The *Boyd* court merely found, like in *Poudel*, that those individuals who provided no labor in Maryland could not use the MWPCL to enforce their claims or count hours worked outside of Maryland under the MWPCL.

Compass appears to rely on its assertion that Boshea traveled to Maryland only one time in his last three years of employment. John White Declaration at ¶ 4. The argument ignores the fact that Boshea's right to receive his severance payments and avail himself of the MWPCL vested in 2010 when Boshea completed three years of employment. Boshea Affidavit at ¶ 16. Boshea did not forfeit his right to enforce his vested right when Compass terminated Boshea in 2020. Moreover, although Maryland's workers compensation statute limits recovery to personnel providing regular services in the state, *Md. Code Ann., Lab. & Empl. § 9-203*, the MWPCL does not contain and the courts analyzing it have never read a similar restriction into the law. On the contrary, had the Maryland legislature had intended to add similar language to the MWPCL, it could have done so. The fact that the legislature has not strongly indicates an intent to allow for a broad application.

### THE MWCPL DEFINES COMPASS AND BOSHEA'S EMPLOYMENT RELATIONSHIP

"The MWPCL is a statutory cause of action, the purpose of which is 'to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages.'" *Cunningham v. Feinberg*, 441 Md. 310, 323, 107 A.3d 1194 (2015) (*quoting Battaglia v. Clinical Perfusionists, Inc.*, 338 Md. 352, 364, 658 A. 2d 680, 686 (Md. 1995)). The statute defines an employer as "any person who employs an individual in the State." *Md. Code Ann., Lab. & Empl. § 3-501(b)*. Compass meets this definition because, during Boshea's employment, Compass operated from an office in Annapolis, Maryland, at which it employed most of its employees, including, from time to time, Boshea. Boshea Affidavit at ¶ 3, 5-7, and 9.

The MWPCL provides that "each employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Code Ann., Lab. & Empl. § 3- 505(a).

Boshea seeks to recover "wages" under the MWPCL; however, unlike *Boyd*, his wages take the form of severance payments that Compass promised to pay. Wages are not limited to hourly compensation. "'Wage' means all compensation that is due to an employee for employment [including] (i) a bonus; (ii) a commission; (iii) a fringe benefit; (iv) overtime wages; or (v) any other remuneration promised for service." *Id.* § 3-501. The MWPCL incorporates severance payments as "wages due." In *Gresham v. Lumberman's Mut. Cas. Co.*, 426 F. Supp. 2d 321 (D. Md. 2005), the court addressed the question directly: "First, does his severance pay constitutes "wages" within the meaning of the WPA? … The answer to the first question—whether the severance pay to which plaintiff was entitled constitutes "wages" within the meaning of the WPA—is yes." *Id.*, at 323–24.

> The *Roley* court addressed the qualitative issue Compass raises and rejected it, stating,
>
> Against the plain language of the statute, Defendants point to several cases in which out-of-state employees conducting a limited amount of work in Maryland were deemed to be covered by the MWPCL and argue that Roley cannot invoke the MWPCL because he worked in Maryland less than those employees. In all of these cases, however, the employer was located outside of Maryland.
>
> *Roley*, 474 F. Supp. 3d at 719.

In *Roley*, the court held that the MWPCL applies to "employers" even when an employee performs work outside Maryland. *Id.*, at 719. In *Roley*, the defendants argued "that an entity is an 'employer' for purposes of an MWPCL claim only if the 'individual' working in Maryland is the employee bringing the claim." *Id.* The court rejected that argument, stating, "Although Defendants argue that an entity is an "employer" for purposes of an MWPCL claim only if the "individual"

7

working in Maryland is the employee bringing the claim, the definition contains no such requirement." *Id.*, at 719. The *Roley* court explained the MWPCL's broad reach as follows:

> To the extent that this is a broad reading of the statute, it is consistent with the intent of the statute: "Maryland is willing generally to allow itself to be used as a forum by workers seeking recovery of their wage claims." *Cunningham*, 107 A.3d at 1218. In fact, as Maryland courts have recognized, the MWPCL was passed not just to benefit Maryland employees, but also to ensure that Maryland employers pay their employees what they are owed. *Id.* at 1202 (stating that the "purpose" of the MWPCL, in part, is to provide "an incentive for employers to pay ... back wages") (quoting *Battaglia v. Clinical Perfusionists, Inc.*, 338 Md. 352, 658 A.2d 680, 686 (1995)).
>
> *Id.*

The Employment Agreement, which Boshea and John White, Compass' President, signed at Compass' Annapolis office (Boshea Affidavit at ¶ 13), contains the severance terms in Article 6. Article 6 states in pertinent part:

> ARTICLE 6. SEVERANCE:
>
> A. If Employee's employment is terminated by COMPASS for any reason other than Cause, Employee shall receive severance payments totaling $180,000 (one hundred and eighty thousand U.S. dollars) which will be divided up into twenty-four payments and will commence with the Employee's effective date of termination and shall be made in accordance with COMPASS's normal payroll cycle. The period during which Employee receives severance payments shall be referred to as the "Severance Pay Period." Severance will increase one month for every month employed to a maximum severance of $540,000.
>
> Employment Agreement at p. 3 (Exhibit 1 to Boshea Affidavit).

The Employment Agreement did not require that Boshea work for any defined period before his right to severance pay accrued. Thus, had Compass terminated Boshea one hour after the parties signed the agreement, Boshea already had the right to receive severance pay since he worked in Maryland on that day in May 2007. Boshea Affidavit at ¶ 13. By Compass' admission, Boshea worked approximately forty-one times in Maryland from 2017 to 2020, so Boshea fully vested in the entire severance amount he seeks. John White Declaration at ¶¶ 3-4. As the court stated in *Hausfeld v. Love Funding Corp.*, 131 F. Supp. 3d 443, 455 (D. Md. 2015), "The threshold

8

for establishing employment in Maryland under the MWPCL is relatively low. The employee does not have to be regularly employed in Maryland. *Id.*, at 455. Accordingly, Boshea did not have to perform any further work in Maryland for the MWPCL to entitle him to severance payments under the Agreement.

The facts support the application of the MWPCL in this case. In *Roley, supra,* the court found that employees could avail themselves of the MWPCL's protection, even though they worked primarily in another state. The court determined that "Maryland plainly has an interest in ensuring that an employer operating in Maryland such as NPX, does not withhold wages from its employees." *Id.*, at 720. The court further noted:

> To the extent that the MWPCL arguably should be limited so as not to include employees with no connection of any kind to Maryland that is not the case here. Not only was Roley's payment administered from the NPX office in Maryland, but he also worked in Maryland during seven multi-day business trips to Maryland during his five years as an NPX employee.
>
> *Id.* at 720.

The *Roley* court concluded its analysis on the issue by stating:

> Where the MWPCL has been found to apply to a project manager for a Virginia corporation who worked at the company Virginia headquarters but had to attend meetings twice a month in a client's office in Maryland, *Himes Assocs., Ltd. v. Anderson*, 178 Md.App. 504, 943 A.2d 30, 35-36 (Md. Ct. Spec. App. 2008), Roley's work for a Maryland-based company that paid him from a Maryland office, which included several work trips to Maryland, provides more than a sufficient basis to permit the application of the MWPCL. *See Hausfeld*, 131 F. Supp. 3d at 455 ("The threshold for establishing employment in Maryland under the MWPCL is relatively low.").
>
> *Id*.

The facts in *Roley* are nearly identical to those in this case. Compass, a Maryland-based employer, paid Boshea for his work from its Maryland office, and Boshea occasionally traveled to Maryland for work. Like those present in *Roley*, these facts provide "more than a sufficient basis to permit the application of the MWPCL." *Id.*

9

Unlike in *Poudel,* where the plaintiffs had no connection to Maryland, Boshea, by Compass' admission, regularly worked in Maryland. Motion at p. 2 and John White Declaration at ¶¶ 3-4. *Poudel* turned on the fact that the employees performed no work in Maryland. "The Court therefore concludes that where Maryland has not stated an express intent to have the Maryland wage laws apply to the work of an employee who worked entirely outside the state, even one employed by a Maryland-based company, the MWHL and MWPCL do not apply to such work." *Poudel*, No. CV TDC-21-1124, 2022 WL 345515, at *5. The *Poudel* court's opinion does, however, acknowledge that multiple courts have held that the MWPCL applies when an employee provides minimal services in Maryland, citing *Himes Assocs., Ltd. v. Anderson*, 178 Md. App. 504, 943 A.2d 30 (Md. Ct. Spec. App. 2008) and *Cunningham v. Feinberg*, 107 A.3d 1194, 1197–98 (Md. 2015).

The *Himes* court held that the MWPCL applied to an employee who worked for a Virginia company with which it had an employment agreement calling for three months' severance in the event of termination without cause. The plaintiff worked primarily in Virginia, and his employment required him to attend twice-monthly meetings at a customer's Baltimore office. The *Himes* court determined that occasional work in Maryland was sufficient to allow the employee to enforce his right to receive severance.

Here, Boshea spent most of his time in Illinois on Compass business and attended meetings that Compass required him to attend in Maryland. Boshea Affidavit at ¶ 5-7 and 9. In *Himes* and *Roley*, the court considered the definition of "employ," which includes: (i) allowing an individual to work; and (ii) instructing an individual to be present at a work site." MWPCL § 3-101(c). In Boshea's case, (1) Compass allowed Boshea to work and (2) instructed Boshea to come to Maryland to work at its offices from time to time, which he did. Both *Himes* and *Roley* considered

facts no more expansive than in this case and ruled the MWPCL applied. *See* John White Declaration at ¶¶ 3-4.

In *Cunningham v. Feinberg*, 441 Md. 310, 347, 107 A. 3d 1194 (Md. 2015), the Maryland Court of Appeals held that "unpaid wage claims arising from employment entered into in states other than Maryland are not excluded, for that reason alone, from being litigated under the [MWPCL]." *Id.*, at 1197. "We encourage a future Maryland Court to hold (in light of the considered dicta expressed here) that the MWPCL represents strong Maryland public policy." *Cunningham v. Feinberg*, 441 Md. at 344, 107 A.3d at 1215. The court rejected the argument that the MWPCL did not apply where a contract was signed in Virginia by a Virginia corporation and its employee, a lawyer. The plaintiff in Cunningham worked under a contract executed in Virginia but sometimes attended hearings in Maryland courts. The court ruled in favor of Cunningham, even though he spent the majority of his time working in Virginia. Similarly, the *Roley* court recognized Maryland's strong public policy of ensuring that employers in Maryland pay their wages owing to their employees, as articulated in *Cunningham*. *See Roley,* 474 F. Supp. 3d at 719. Importantly, in *Blanch v. Chubb & Sons, Inc.*, 124 F. Supp. 3d 622 (D. Md. 2015), the court held that the "considered dicta" of the Maryland Court of Appeals was binding on the district court. *Id.*, at 630.

Compass incorrectly argues that the law does not apply, given the substantial authority examining the MWPCL. Compass, in essence, attempts to change the choice of law provision in the Agreement. While not dispositive, the parties agreed to look to Maryland law in interpreting their employment relationship (Employment Agreement at ¶ 8F), reinforcing the determination that the Court should apply the MWPCL in this instance. As *Cunningham* notes, the Maryland legislature objected to employers doing business in Maryland and "forcing employees to waive

their MWPCL rights, either explicitly or by 'applying the laws of other states to their employment relationship that provide fewer protections than the MWPCL.'" Id., at 1217. (quoting *Wage Payment and Collection: Void Agreements: Hearing on H.B. 298 Before the H.D. Economic Matters Committee,* 428th Sess. 1 (2011) (statement of Del. Joseline A. Peña–Melnyk)." *Cunningham*, 441 Md. at 347, 107 A.3d at 1217. Since a company cannot require that its employee agree to change the governing law, it makes little sense for the Court to write that provision out of the Employment Agreement.

## CONCLUSION

Compass, a company headquartered in Maryland, employs the vast majority of its workforce in Maryland. In May 2007, Boshea's employment journey with Compass started in Maryland, where he signed the Employment Agreement and worked that day. The signing triggered the application of the MWPCL. Although Boshea provided the bulk of his efforts from Illinois, he periodically traveled to Maryland for work. Moreover, for several years, Compass provided him with an office at its headquarters in Maryland. Based on these facts, well-established Maryland law, and Maryland's strong policy in favor of applying the MWPCL, this Court should deny the motion and allow Boshea to avail himself of the protections of Maryland law.

WHEREFORE, David J. Boshea respectfully requests that this Court deny the Motion for Partial Summary Judgment filed by Compass Marketing, Inc., and for such other relief this Court deems just.

Dated: March 1, 2022  Respectfully submitted,

    /s/Gregory J. Jordan
Gregory J. Jordan (Admitted Pro Hac Vice)
Jordan & Zito LLC
350 N. LaSalle Street, Suite 1100
Chicago IL 60654
(312) 854-7181

gjordan@jz-llc.com

Thomas J. Gagliardo (Bar No. 08499)
Of Counsel
Gilbert Employment Law, P.C.
1100 Wayne Ave, Suite 900
Silver Spring, Maryland 20910
tgagliardo@gelawyer.com

Counsel for David J. Boshea

**CERTIFICATE OF SERVICE**

Gregory Jordan certifies that he served David J. Boshea's Response in Opposition to Compass Marketing, Inc.'s Motion for Partial Summary Judgment on counsel for Compass Marketing, Inc., by service through the Court's CM/ECF system and by email to stern@kaganstern.com, rudiger@kaganstern.com, and yeung@kaganstern.com on March 1, 2022.

    /s/   Gregory J. Jordan
    Gregory J. Jordan