**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| DAVID J. BOSHEA | * | |
| Plaintiff, | * | |
| | | Case No. 1:21-CV-00309-ELH |
| v. | * | |
| COMPASS MARKETING, INC. | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANT/COUNTER-PLAINTIFF COMPASS MARKETING, INC.'S REPLY IN**
**SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant/Counter-Plaintiff Compass Marketing, Inc. ("Compass Marketing" or the "Company"), by and through its undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 105, hereby submits this Reply in Support of its Motion for Partial Summary Judgment in response to the Opposition to Compass Marketing's Partial Motion for Partial Summary Judgment ("Opposition" or "Opp.") filed by Plaintiff David Boshea ("Boshea").

**INTRODUCTION**

In his Opposition, Boshea does nothing to dispel the notion that his claim under the Maryland Wage Payment and Collection Law ("MWPCL") is an example of improper extraterritorial reach. While Boshea exaggerated to some extent the amount of time he performed work in the State of Maryland, even applying Boshea's estimates, he worked *at most* in Maryland a mere 1.56% of his nearly thirteen years of employment with Compass Marketing and a mere 1.2% during the final three years of his employment with Compass Marketing. Such tenuous and minimal contact with the State of Maryland illustrates how applying the MWPCL in this case

would constitute an improper extraterritorial reach, particularly when the MWPCL does not include any express intent by the Maryland General Assembly regarding its extraterritorial reach (which is required under Maryland law for there to be extraterritorial application of a Maryland statute).   For these reasons, which are discussed in greater detail below and in Compass Marketing's Motion for Partial Summary Judgment [Dkt. Nos. 93 and 93-1], Compass Marketing's Motion for Partial Summary Judgment should be granted and Boshea's claim under the MWPCL should be dismissed, with prejudice.   Or, in the alternative, at the very least, this issue should be certified to the Maryland Court of Appeals for resolution, as this Court has acknowledged as recently as last month that this issue has not been addressed by the Maryland Court of Appeals.

## ARGUMENT

I.   **MARYLAND'S PRESUMPTION AGAINST EXTRATERRITORIALITY PREVENTS BOSHEA FROM RECOVERING UNDER THE MWPCL**

A.   **Boshea's Connections to Maryland are Too Attenuated to Apply the MWPCL**

Boshea begins his Opposition by arguing that this Court's decision in *Poudel v. Mid Atl. Prof'ls, Inc.*, Civil Action No. TDC-21-1124, 2022 U.S. Dist. LEXIS 20458 (D. Md. Feb. 4, 2022), does not alter the outcome of this lawsuit because the Court in *Poudel* only considered "whether an employee who never worked a day in Maryland could take advantage of the MWPCL's protections. *Poudel* discussed extraterritoriality only in that context." *See* Opp. [Dkt. No. 95] at 2. Boshea further contends that his case is different from *Poudel* because he worked in Maryland "regularly," which allows him to claim the same protections afforded to Maryland employees under the MWPCL. *Id.* at 2, 10.   Boshea's self-serving characterization of his "regular" employment in Maryland is belied, however, by his own Affidavit.

David Boshea began working for Compass Marketing in May 2007.   Although the precise start date for Boshea's employment is unclear, for purposes of calculating his days of employment,

Compass Marketing will utilize May 16, 2007 as Boshea's first date of employment with the Company.[1]  Compass Marketing terminated Boshea's employment on March 3, 2020.  *See* Dkt. No. 93-4 at 4.  According to Boshea's sworn Affidavit, he "worked in Maryland no less than 40 and *no more than 50 days*."[2]  *See* Dkt. No. 95-1 at ¶ 11 (emphasis added).[3]  This means that, according to Boshea, excluding weekends and public holidays, he worked for Compass Marketing three thousand one hundred eighty-seven days (3,187) days and, of those 3,187 days, Boshea worked in the State of Maryland, *at most*, fifty days (50) days, which amounts to a mere 1.56% of his total employment with the Company.

---

[1] In the Second Amended Complaint ("SAC"), Boshea claims Compass Marketing extended an offer of employment "[o]n or about May 16, 2007."  *See* SAC [Dkt. No. 48] at ¶ 10.  Boshea later described his start date as "sometime in May 2007."  *See* Dkt. No. 93-4 (David Boshea's Amended Responses to Defendant Compass Marketing, Inc.'s First Set of Interrogatories to Plaintiff David J. Boshea) at 4.  In the Affidavit of David J. Boshea in Support of his Response in Opposition to Compass Marketing, Inc.'s Motion for Partial Summary Judgment ("Boshea Affidavit"), Boshea asserted that he began working for Compass Marketing in May 2007.  *See* Dkt. No. 95-1 (Boshea Affidavit) at ¶ 13.

[2] It appears likely that Boshea actually worked fewer than 50 days during his thirteen years of employment, however. Notably, Boshea did not attest that he worked at least 50 days in Maryland during his tenure with Compass Marketing.

[3] Boshea contradicts himself elsewhere in his Affidavit by suggesting that he worked more than 50 days in Maryland during his employment with Compass Marketing, but his conflicting sworn statements cannot benefit him in his attempt to survive summary judgment.  *See, e.g.*, *Mendez v. Nationwide Prop. & Cas. Ins. Co.*, 910 F. Supp. 2d 784, 788-89 (D. Md. 2012) (stating "[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement.").  In this regard, Boshea also stated in his Affidavit that he traveled to Annapolis seven times "for periods ranging from two to three days" in 2007.  *See* Dkt. No. 95-1 at ¶ 6.  Utilizing the three-day figure in each alleged instance (as Compass Marketing must do to view the record in Boshea's favor as the non-moving party at summary judgment), Boshea would have worked in Maryland 21 days in 2007 alone.  Similarly, for the years 2008 to 2017, Boshea claims to have traveled to Maryland for Compass Marketing meetings "quarterly for two to three-day periods."  *Id.* at ¶ 7.  Obviously, this does not mean Boshea was in Maryland three days for each visit.  Nevertheless, viewing the "facts" in a light most favorable to Boshea at summary judgment, Boshea would have worked in Maryland one hundred twenty (120) days assuming he was in Maryland three days for each quarterly visit (assuming the quarterly visits did in fact occur each year).  And, for the final three years of his employment, Boshea stated he "recall[s] traveling to Annapolis at least once per year after January 1, 2017 for approximately two to three days each trip."  *Id.* at ¶ 9.  This comes to nine (9) days spent in Maryland, viewing the record most favorably to Boshea at summary judgment.  In total, at most, Boshea worked in Maryland one hundred fifty (150) days, or 4.70%, in his almost thirteen (13) years of employment with the Company.  Whether Boshea worked in Maryland fifty (50) or one hundred fifty (150) days is immaterial, as Boshea cannot create a dispute of material fact by contradicting himself in his Affidavit.  Notwithstanding the credibility issues raised by Boshea's contradictory sworn statements, the only figure that warrants consideration at summary judgment is the 50-day figure because that is the figure that Boshea stated unequivocally was the maximum he worked in Maryland.

The percentage of Boshea's employment in Maryland is even lower when looking at the final three years of his employment.  In this regard, Boshea contends he spent *at most* nine days in Maryland during his final three years of employment with Compass Marketing.  *See* Dkt. No. 95-1 at ¶ 9.[4]  This amounts to 1.2% of the total workdays during the final three years of his employment with Compass Marketing.  The reason the final three years of employment is a more appropriate time frame to examine is the applicable statute of limitations under the MWPCL is three years.  *See* MD. CODE ANN., CTS. & JUD. PROC. § 5-101; *Boyd v. Sfs Communs.*, No. 15-3068 PJM, 2021 U.S. Dist. LEXIS 72966, at *29 (D. Md. Apr. 15, 2021).[5]  Moreover, there is no specific requirement on the length of time to maintain travel reimbursement receipts/records (to confirm when an employee was in a particular state, for example).  To require a purported employer to disprove any purported presence of an employee in the State outside of three years imposes an undue burden on the alleged employer that is beyond any statutory requirement.

Although "[t]he threshold for establishing employment in Maryland under the MWPCL is relatively low," *Hausfeld v. Love Funding Corp.*, 131 F. Supp. 3d 443, 455 (D. Md. 2015), the Maryland General Assembly could not have possibly intended to have the MWPCL protect employees from other states with such minimal connection to the State of Maryland.  Indeed, a mere 1.5% of one's total employment (over thirteen years no less), or a mere 1.2% for the final

---

[4] Boshea's Affidavit yet again suggests that he actually spent less time in Maryland than the maximum of nine days. In this regard, he contends he was in Maryland on three occasions for approximately two to three days each visit. *Id.* This does not mean he was in Maryland three days each visit. In addition, the time period he uses is January 1, 2017, as opposed to March 3, 2017 (*see id.*), suggesting any visit he may have made to Maryland in 2017 likely occurred prior to March 3, 2017.

[5] *See also Hecht v. Resolution Trust Corp.*, 333 Md. 324, 332-34, 635 A.2d 394, 399 (1994) (stating one of the purposes of statutes of limitations "is to ensure fairness to defendants by encouraging promptness in bringing claims, thus avoiding problems that may stem from delay, such as loss of evidence, fading of memory, and disappearance of witnesses.").

three years of one's employment, screams out improper extraterritorial reach if the MWPCL can be interpreted to protect out-of-state workers.

When interpreting the MWPCL, the Court must "confine [itself] to the text of the statute and refrain from adding or deleting words." *See Harford Cty. v. Saks Fifth Ave. Distrib. Co.*, 399 Md. 73, 86, 923 A.2d 1, 9 (2007). The text of a statute must be read in such a way that no aspect of it is rendered superfluous or nugatory. *See Chow v. State*, 393 Md. 431, 443, 903 A.2d 388, 395(2006); *Collins v. State*, 383 Md. 684, 691, 861 A.2d 727, 732 (2004). In addition, the Court cannot "read into the statute words that give it an interpretation that limits or extends its application beyond the words the Legislature used." *See Harford Cty.*, 399 Md. At 86, 923 A.2d at 9.

As this Court recently noted, "neither the MWHL nor MWPCL contains specific language indicating an intent to apply to work performed outside the state." *See Boyd*, 2021 U.S. Dist. LEXIS, at \*30; *see also generally* MD. CODE ANN., LAB. & EMPL. §§ 3-501 *et seq.* The absence of any provision in the MWPCL extending its reach beyond Maryland's borders is significant because, "unless an intent to the contrary is *expressly* stated, acts of the [Maryland] legislature will be presumed not to have any extraterritorial effect." *See Chairman of Bd. of Trs. v. Waldron*, 285 Md. 175, 183-84, 401 A.2d 172, 177 (1979); *see also Elyazidi v. SunTrust Bank*, 780 F.3d 227, 237 (4th Cir. 2015) (stating that, "[i]n Maryland, regulatory statutes are "generally construed as not having extra-territorial effect unless a contrary legislative intent is expressly stated"); *State ex rel. Gildar v. Kriss*, 191 Md. 568, 62 A.2d 568, 569 (Md. 1948) ("Ordinarily a statute is not applicable extraterritorially, but only to acts done within the jurisdiction.").

Indeed, if the Maryland General Assembly had intended the MWPCL to apply to any person who spent any time at all working in Maryland, it would have explicitly stated this intent in the statute. *See Wash. Gas Light Co. v. Md. P.S.C.*, 460 Md. 667, 682, 191 A.3d 460, 469 (2018)

5

(stating the court "assumes that the legislature's intent is expressed in the statutory language and thus [its] statutory interpretation focuses primarily on the language of the statute to determine the purposes and intent of the General Assembly"). This silence further supports a narrower interpretation of the MWPCL, especially when considering that the Maryland General Assembly has included express language regarding the extraterritorial reach in other employment statutes. *See, e.g.*, *Poudel*, 2022 U.S. Dist. LEXIS 20458, at \*10-\*11 (noting that "[w]here Maryland has expressed a clear intent to have certain Maryland labor statutes apply to work occurring entirely outside the United States pursuant to a Maryland contract, the failure to express such clear intent as to the MWHL or MWPCL weighs against the conclusion that the presumption against extraterritoriality has been overcome"). For example, Maryland's Workers Compensation Act (the "WCA") includes an express provision that sets forth its extraterritorial reach. The WCA expressly states that it covers an individual "outside this State on a casual, incidental, or occasional basis if the employer regularly employs the individual within this State" as well as an individual "wholly outside the United States under a contract of employment made in this State for the work to be done wholly outside of the United States." *See* MD. CODE ANN., LAB. & EMPL. § 9-203. No such similar provision is included in the MWPCL.

As this Court noted just last month in *Poudel*, the "Court of Appeals of Maryland has not had occasion to decide directly how the presumption against extraterritoriality applies in the context of the Maryland wage laws." *See Poudel*, 2022 U.S. Dist. LEXIS 20458, at \*6. The Maryland Department of Labor, Licensing and Regulation's Maryland Guide to Wage Payment and Employment Standards (the "Guide"), however, has stated that "claims for unpaid wages must be brought *in the state in which the work was performed*."[6] *See* Maryland Guide to Wage Payment

---

[6] Although Compass Marketing recognizes the Guide is not binding authority, this Court has cited to the Guide when evaluating the applicability of the MWPCL. *See Poudel*, 2022 U.S. Dist. LEXIS 20458, at \*11-12.

and Employment Standards, Division of Labor and Industry, Maryland Department of Labor, https://www.dllr.state.md.us/labor/wagepay/ (last visited March 11, 2022) (emphasis added). Based on this guidance from the Maryland Department of Labor, Licensing, and Regulation, the Court needs to examine what work Boshea performed *in* the State of Maryland.

Boshea's connection to Maryland – a mere 1.5% (at most) of his total employment over thirteen years and a mere 1.2% (at most) during his final three years of employment[7] – is far too attenuated to conclude that Boshea has been "employed in" the State of Maryland or that Maryland is the State "in which [his] work was performed." In other words, *more than 98% of his employment (nearly 99%) was performed outside the State of Maryland for nearly thirteen years and an even greater percentage of his employment was performed out of State during the final three years of his employment*.

To apply the MWPCL to Boshea under these circumstances screams out extraterritorial reach that is contrary to Maryland's general presumption against extraterritorial application of its statutes, including its wage statutes. If the MWPCL can be applied in this case – where more than 98% (nearly 99%) of the work was performed outside the State of Maryland for nearly thirteen years (and an even higher percentage during the final three years of employment) – it begs the question, what is the cutoff to establish extraterritorial reach? Is it that once an employee steps foot in the State of Maryland a single time related to his/her employment that employee receives the protections of the MWPCL for the entirety of his/her employment? If once is too attenuated, as it should be, then some de minimis connection to Maryland is insufficient to claim protection under the MWPCL. And, if some de minimis connection to Maryland is insufficient to establish

---

[7] Boshea even acknowledges that he "spent most of his time in Illinois on Compass [Marketing] business." *See* Opp. at 10.

protection under the MWPCL, where is the cutoff?[8]  While the Court may not need to decide in

this case where the exact cutoff needs to be, the Court can and certainly should be able to conclude

that when more than 98% (nearly 99%) of the work by an employee for nearly thirteen years (and

an even higher percentage during the final three years of employment) is performed outside the

State of Maryland (and where the employee lives in another state, is insured in another state, and

pays taxes to another state), that employee was not "employed in" the State of Maryland for

purposes of the MWPCL.

Boshea tries to overcome these substantial obstacles by asserting he had an office located

at Compass Marketing's headquarters and the purported employment agreement that is the subject

of this litigation included a Maryland choice of law provision.  *See* Opp. at 2 and 11.  Neither of

these issues support Boshea's cause.

First, Boshea contends that Compass Marketing "provided [him] with his own office at its

headquarters."  *See* Dkt. No. 95-1 at ¶ 7.  Boshea, however, does not contend that he ever used or

worked in the office.  Moreover, providing an out-of-state employee with an office does not mean

it was "his" office; it merely indicates that he had a place to work if/when he was in town.  In any

event, even Boshea had a designated office,[9] Boshea acknowledges he no longer had an office

after 2013.  *See id.*  In other words, Boshea did not "have an office" in Maryland for the final seven

years of his employment with Compass Marketing, which demonstrates an even more tenuous

(i.e., less of a) connection with the State of Maryland during the final three years (and up to seven

---

[8] Allowing such de minimis connection to a jurisdiction to gain protection under its wage payment (or other employment) laws opens the possibility that any employee who travels in connection with his/her employment would then be protected by the employment laws of every state the employee visits for employment.  This cannot possibly be an appropriate outcome.

[9] Compass Marketing disputes this allegation.

years) of his employment with Compass Marketing.  Thus, this factor either ways against finding

the MWPCL applies or it is a nonfactor all together.

Second, Boshea contends the Maryland choice of law provision in the purported

employment agreement helps demonstrate the MWPCL applies.  As an initial matter, as previously

stated, Compass Marketing contends that the agreement was not entered into and is not valid or

enforceable because, among other things, the signature on the agreement for John White, CEO of

Compass Marketing, was forged.  Nevertheless, even if the validity of the employment agreement

was not in dispute,[10] this Court rejected the very argument being proffered by Boshea just last

month.  In *Poudel*, in addressing the same argument being made by Boshea, this Court stated that

"the Maryland Court of Appeals [has] declined to link the issue of choice of law to the question of

whether a particular state's wage laws apply."  *See Poudel*, 2022 U.S. Dist. LEXIS 20458 at \*15

(citing *Cunningham v. Feinberg*, 441 Md. 310, 107 A.3d 1194 (2015)).  In *Poudel*, the Court

determined that a choice of law clause in the employment contract that stated Maryland law

governed the contract did not establish that Maryland wage laws applied to the plaintiffs' work.

*Id.* at \*15-16.  Relying on *Cunningham*, this Court found that, because the choice of law provision

"d[id] not explicitly state that the parties agree[d] to the applicability of the Maryland wage laws

as a term of the contract, the Court decline[d] to interpret it as having done so."  *Id.*  Thus, even if

the agreement is found to be enforceable, which it is not, the choice of law provision does not help

Boshea's cause in advocating for the application of the MWPCL.

For these reasons, Boshea's very limited contact with the State of Maryland, coupled with

Maryland's presumption against extraterritoriality, precludes Boshea from being able to seek

---

[10] It really is not in dispute.  Of the three expert witnesses in this case, two have offered an opinion that the signature is a forgery and one (retained by Boshea) has asserted it is inconclusive.

protection under the MWPCL.  As such, summary judgment should be granted to Compass

Marketing with respect to Boshea's MWPCL claim and that claim should be dismissed, with

prejudice.[11]

## II.      THIS COURT'S DECISION IN *BOYD* ILLUSTRATES THE UNTENABLE FRAMEWORK OF APPLYING THE MWPCL IN THIS CASE

In *Boyd*, 2021 U.S. Dist. LEXIS 72966, at *30, this Court held that the plaintiffs could not

recover under the MWPCL for those weeks in which the class member performed no work in the

State of Maryland.  As noted in Compass Marketing's opening brief, that case involved hourly

workers where they were paid on an hourly basis and earned certain wages each week.  To apply

that same logic in this case, that would mean, in the event that Boshea prevailed on the underlying

issue (which he should not) – that the employment agreement is a valid and enforceable agreement

and Boshea is entitled to payment of $540,000 in severance – the Court would need to allocate

what portion of the $540,000 was earned in the State of Maryland.  Based on the figures above,

only $8,424 (when applying the 1.56% figure)[12] of the $540,000 would be deemed earned in the

State of Maryland and only that portion would arguably be subject to the treble damages provision

under the MWPCL.  This could not possibly be the paradigm the Maryland General Assembly

envisioned when it enacted the MWPCL.  Indeed, engaging in such an allocation exercise in

MWPCL cases further illustrates how, at least in this case, applying the MWPCL would be an

improper exercise of extraterritorial reach.

### CONCLUSION

For these reasons, as well as those set forth in Compass Marketing's Motion for Partial

Summary Judgment [Dkt. Nos. 93 and 93-1], the Court should grant Compass Marketing's Motion

---

[11] As noted in Compass Marketing's opening summary judgment brief, this case warrants certification to the Maryland Court of Appeals if the Court is uncertain as to whether dismissal of the MWPCL claim is proper.
[12] The number decreases $6,480 when looking at the final three years of Boshea's employment.

for Partial Summary Judgment, find that there are no disputes of material fact giving rise to Boshea's claim for violation of the MWPCL, and dismiss Count II of the Second Amended Complaint, with prejudice.  Alternatively, the Court should certify the issue to the Maryland Court of Appeals.  *See* Dkt. No. 93-1 at 11-12 for discussion of certification.


Dated: March 15, 2022                            Respectfully submitted,

                                                 _____/s/Stephen B. Stern_____
                                                 Stephen B. Stern, Bar No.: 25335
                                                 Heather K. Yeung, Bar No.: 20050
                                                 KAGAN STERN MARINELLO & BEARD, LLC
                                                 238 West Street
                                                 Annapolis, Maryland 21401
                                                 (Phone): (410) 216-7900
                                                 (Fax):  (410) 705-0836
                                                 Email:  stern@kaganstern.com
                                                 Email:  yeung@kaganstern.com

                                                 and

                                                 Brian A. Tollefson, Bar No. 16289
                                                 TOLLEFSON IP
                                                 326 First Street, #202
                                                 Annapolis, Maryland 21403
                                                 (Phone):  (443) 699-2450
                                                 Email:  brian@tollefsonip.com

                                                 *Counsel for Defendant/Counter-Plaintiff*
                                                 *Compass Marketing, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of March, 2022, the foregoing Reply Support of Compass Marketing's Motion for Partial Summary Judgment was served via the CM/ECF system on the following counsel of record:

Thomas J. Gagliardo
Gilbert Employment Law, PC
1100 Wayne Avenue, Suite 900
Silver Spring, Maryland 20910
Email:  tgagliardo@gelawyer.com

Gregory J. Jordan
Mark Zito
Jordan & Zito, LLC
350 N. LaSalle Drive, Suite 1100
Chicago, Illinois 60654
Email:  gjordan@jz-llc.com

*Attorneys for Plaintiff*
*David Boshea*

*/s/ Stephen B. Stern*
Stephen B. Stern