Exhibit D

| From: | Erin Songer |
|---|---|
| To: | Dave Boshea |
| Cc: | Jerry Cain; John White |
| Subject: | David Boshea - Term Letter & Severance Agreement - 3/3/20 |
| Date: | Tuesday, March 3, 2020 2:16:35 PM |
| Attachments: | Compass RIF Termination Letter - David Boshea.pdf |
| | RIF SEVERANCE AGREEMENT - David Boshea.pdf |
| | Outlook-a5kiqi3s.png |

Per our conversation please see attached. Call me with any questions.

***Please note my email has address has changed***

Erin Songer ⟨ Chief Administrative Officer
m. *610.223.2940*
e. *esonger@compassmarketinginc.net*


222 Severn Ave., Suite 200 | Annapolis, MD 21403

*Using* **ART** + **SCIENCE** *to amplify brands.*

 using **ART** + **SCIENCE** *to amplify brands*™

March 3, 2020

David Boshea
4839 Clearwater Lane
Naperville, IL 60564

Dear Dave,

Regrettably, your position was one of the positions selected to be eliminated due to a necessary reduction in force. This letter confirms our discussion today that your employment with Compass Marketing Inc will terminate on March 3, 2020.

We appreciate your service to the company, and it is with regret that we must terminate your employment. We want to assist as much as possible during this transition, as we do appreciate your tenure with Compass Marketing.

Below is a breakdown of information that is important for you.

- You will be paid through your last date of employment.

- You will be paid your unused, accrued vacation pay, if any, together with your last paycheck.

- Your benefits will remain in effect until March 31, 2020. Cobra information will be mailed to you for your review to make the appropriate decision.

- We are offering you a Severance Agreement, which is attached for your review and consideration. You have a period of 45 days to consider it.

- As your termination is based on a generalized Reduction in Force you may qualify for unemployment benefits.

Please review the information above and the attached Severance Agreement and do not hesitate to reach out to Erin Songer with any questions. We thank you so much and wish you great success on your future endeavors.

Sincerely,


John White
CEO
Compass Marketing, Inc.


enclosure

## SEVERANCE AGREEMENT

Compass Marketing Inc. and David Boshea have reached the following Severance Agreement ("Agreement"). In this Agreement, "Employee" refers to David Boshea and "Company" refers to Compass Marketing Inc., together with any parent or subsidiaries, related and affiliated entities, companies, and the employees, officers, trustees, directors, agents, shareholders, successors, assigns, servants, third party administrators and insurers and any of them.

1. Employee's employment with Company is terminated effective March 3, 2020. In consideration for the execution by Employee of this Agreement and for the covenants and promises described below, the Company will pay Employee 80 hours of Severance Pay. Such salary continuation shall be contingent upon the execution and non-revocation of this Agreement, and shall be effective and Employee paid for such continuation within 30 days following the seven (7) day revocation period referred to in paragraph 9 of the Agreement, provided that this Agreement is not revoked. Employee agrees that this payment is more than the Company is required to pay under its policies and procedures.

2. Employee states that he has not previously filed or joined in any complaints or charges or lawsuits against Company with any governmental agency or court of law. Employee agrees to and does release the Company from all claims or demands Employee may have based on Employee's employment with the Company or the termination of that employment. This includes a release of any rights or claims Employee may have under the Age Discrimination in Employment Act and the Older Workers Benefit Protection Act, which prohibit age discrimination in employment; 42 U.S.C. § 1981, 1983 and 1985; Title VII of the Civil Rights Act of 1964 as amended, which prohibits discrimination in employment based on race, color, national origin, religion or sex; the Equal Pay Act, which prohibits paying men and women unequal pay for equal work; the Americans with Disabilities Act, which prohibits discrimination against qualified individuals with a disability; the Fair Labor Standards Act, including the Wage and Hour Laws relating to payment of wages; the Family and Medical Leave Act, which provides certain leave of absence benefits to employees; Employment Retirement Income Security Act, which protects certain employee benefits; 85 O.S. §§ 5, 6 and 7 (1991 and 1992 Supp.), preventing discharge in retaliation for exercising rights under Oklahoma's Workers' Compensation Act; or any other federal, state or local laws or regulations prohibiting employment discrimination, including qui tam actions. This also includes a release by Employee of any claims for breach of contract, impairment of economic opportunities, intentional infliction of emotional distress, invasion of privacy, wrongful discharge, discharge in violation of public policy, or that the Company has dealt with Employee unfairly or in bad faith or any other common law contract or tort claim. This release covers both claims that Employee knows about and those he may not know about. Employee also represents that he has not given or sold any portion of any claim discussed in this Agreement to anyone else.

3. Employee promises never to file a lawsuit asserting any claims that are released in paragraph 2.

4. If Employee breaks his promise in paragraph 3 of this Agreement and files a lawsuit based on legal claims that Employee has released, Employee will pay for all costs incurred by the Company, any related companies or the directors or employees of any of them, including reasonable attorneys' fees, in defending against Employee's claim.

5. Company makes this Agreement to avoid the cost of defending against any possible legal action. By making this Agreement, Company does not admit that it has done anything wrong.

6. This Agreement does not waive any rights or claims that Employee may have which arise after the date the Employee signs this Agreement.

1

7. Employee acknowledges that he received an electronic copy of this Agreement and was offered a period of at least forty-five (45) days to consider it.

8. Employee is advised to consult with an attorney of his choice before signing this Agreement. Employee agrees, that Company shall not be required to pay any of his attorneys' fees in this or any related matter or lawsuit, now or later, and that the settlement monies received in paragraph 1 are in full and complete settlement of all matters between Employee and Company, including but not limited to, attorney's fees and costs.

9. Employee may revoke this Agreement within seven (7) days of his signing it. Revocation can be made by delivering a written notice of revocation to Erin Songer, at 222 Severen Ave, Suite 200, Annapolis MD 21403. For such revocation to be effective, notice must be received no later than 5:00 p.m. on the seventh (7th) calendar day after Employee signs this Agreement. If Employee revokes this Agreement it shall not be effective or enforceable and Employee will not receive the benefits described in paragraph 1.

10. Employee acknowledges that as a result of his employment with Company, certain trade secrets and other confidential information of the Company have been disclosed to him. Employee agrees that as partial consideration for this Agreement, that Employee shall not disclose or utilize for his personal benefit, or for the direct or indirect benefit of any other person or entity, or for any other reason, any information, ideas, concepts, improvements, discoveries or other information, whether patentable or not, which have been disclosed to Employee during the time Employee was employed with the Company. In addition, all documents, notes, files, data, records, correspondence, manuals, specifications, computer programs, e-mail, voice mail, electronic data bases, maps and other writings or materials of any type which have been provided to Employee as a result of Employee's employment with or through the Company, are and shall be the sole and exclusive property of the Company. Employee shall promptly deliver all such property, including copies, and the personal property listed on Exhibit "A" attached hereto, to the Company within five (5) business days of the date of this Agreement.

11. For a period of two (2) years after the date of this Agreement, Employee shall not solicit, induce or attempt to induce any current customer or employee of the Company or its affiliates to cease doing business in whole or in part with or through the Company or its affiliates or otherwise disrupt any previously established relationship existing between such customer or employee and the Company or its affiliates.

12. This is the whole Agreement between Employee and Company. No promises oral or written statement upon which Employee has been told to rely have been made to him other than those in this Agreement. If any portion of this Agreement is found to be unenforceable, then both Employee and the Company desire that all other portions that can be separated from it or appropriately limited in scope shall remain fully valid and enforceable. Each party also agrees that, without receiving further consideration, it will sign and deliver such documents and do anything else that is necessary in the future to make the provisions of this Agreement effective.

13. As an express condition of this Agreement, Employee agrees not to take any action that is adverse to Company, or any of its parents, subsidiaries or affiliates, either individually or in concert with others.

14. Employee agrees to keep the terms, amount and facts of this Agreement completely confidential, and that he will not disclose any information concerning this agreement to anyone other than immediate family and lawyer(s), who will be informed of and bound by this confidentiality clause.

15. This Agreement shall be governed and interpreted in accordance with the laws of the State of Maryland. In the event litigation is instituted between the parties in connection with any controversy or dispute arising from, under or related to this Agreement, the judgment herein should include a reasonable sum to be paid to the prevailing party on account of attorneys' fees incurred in such litigation.

16. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall together constitute one and the same instrument.

17. Company and Employee desire that any dispute concerning this Agreement be handled out of court. Accordingly, they agree that any such dispute shall, as the parties' sole and exclusive remedy, be submitted to arbitration in Maryland, before an experienced employment arbitrator licensed to practice law in Maryland and selected in accordance with the standard rules of the American Arbitration Association (AAA). (Employee understands that he may obtain a copy of such rules by calling the AAA, located in Washington, D.C., directly if Company or Employee's lawyer do not have copies available.) The laws of the State of Maryland shall govern interpretation of this Agreement. Should Employee or Company start any legal action or administrative proceeding against the other with respect to any claim waived by this Agreement, or pursue any method of resolution of a dispute other than mutual agreement of the parties or arbitration, then all damages, costs, expenses and attorneys' fees incurred by the other party as a result shall be the responsibility of the one bringing the suit or starting the procedure.

EMPLOYEE ACKNOWLEDGES THAT HE HAS READ THIS AGREEMENT, UNDERSTANDS IT AND IS VOLUNTARILY ENTERING INTO IT.

PLEASE READ THIS AGREEMENT CAREFULLY. IT CONTAINS A RELEASE BY EMPLOYEE OF ALL KNOWN AND UNKNOWN CLAIMS.

Date _____       Employee Signature       _____

Date _____       Witness                  _____

Date _____       Company Representative    _____

                        Title:                    _____

EMPLOYEE ACKNOWLEDGES RECEIPT OF THE BENEFITS STATED IN PARAGRAPH NUMBER 1 AND ACKNOWLEDGES THAT THIS AGREEMENT IS IN FULL FORCE AND EFFECT.

Date _____       Employee Signature _____

3