# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# (Northern Division)

| | |
|---|---|
| DAVID J. BOSHEA, | * |
| Plaintiff, | * |
| v. | * Case No. 1:21-CV-00309-ELH |
| COMPASS MARKETING, INC., | * |
| Defendant. | * |

## MOTION IN LIMINE TO BAR COMPASS MARKETING, INC. FROM PRESENTING CURT BAGGETT AS AN EXPERT WITNESS AT TRIAL

David Boshea respectfully moves *in limine* for an order barring Compass Marketing, Inc. ("Compass") from presenting Curt Baggett as an expert witness at trial and in support states:

### INTRODUCTION

Several courts have disqualified Curt Baggett as an expert. He has himself testified that he lacks training in document and handwriting analysis and that he is not certified by (i) the American Board of Forensic Document Examiners (ABFDE), (ii) the Board of Forensic Document Examiners, (iii) the National Association of Document Examiners, (iv) the American Society of Questioned Document Examiners, or (v) the Association of Forensic Document Examiners. Notwithstanding those courts' conclusions, Curt Baggett did not disclose those cases on the list of cases in which he testified either in court or at deposition. Because Curt Baggett lacks the qualifications for providing expert testimony, along with deficiencies in his report, the Court should not allow him to testify at trial.

### PURPOSE OF A MOTION IN LIMINE

The Court should grant this motion *in limine* to exclude Curt Baggett as an expert witness at the trial set to begin March 7, 2023, because (1) Curt Baggett lacks the qualifications and the

integrity to serve as an expert witness; (2) Compass' initial disclosure and supplemental disclosures failed to comply with Rule 26(a)(2) of the Federal Rules of Civil Procedure; (3) Curt Baggett has not provided any basis for his conclusion that David Boshea forged John White's signature, and (4) Curt Baggett's long report is unreliable under the standards for handwriting examination.

Granting this motion will avoid the introduction of irrelevant testimony that has no bearing on Compass' reason for failing to pay the severance amounts David Boshea seeks, streamline the proceedings, and eliminate unnecessary interruptions. *See Norris v. PNC Bank, N.A.*, No. CV ELH-20-3315, 2022 WL 5054099, at *2 (D. Md. Oct. 4, 2022).

## STANDARD

Rule 104 of the Federal Rules of Evidence requires that the Court decide any preliminary question about a witness' qualifications. *See* Fed.R.Evid. 104; *see also Young v. Swiney*, 23 F. Supp. 3d 596, 609 (D. Md. 2014). As the party seeking to present Mr. Baggett as an expert, Compass "bears the burden of establishing admissibility by a preponderance of the evidence." *Young*, 23 F. Supp. 3d at 610. As the *Young* court noted, a *Daubert* hearing is unnecessary to resolve this motion under Local Rule 105.6. *See Young*, 23 F. Supp. 3d at 601.

Rule 702 of the Federal Rules of Evidence provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education" may testify in the form of an opinion "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702. The trial court has an obligation to act as a gatekeeper to ensure the reliability and relevancy of expert testimony: for an expert's testimony to be admitted, the proffered expert must be qualified to render a reliable opinion based on sufficient facts or data,

and the application of accepted methodologies. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *see also Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592-93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Compass bears the burden to show by a preponderance of the evidence that Mr. Baggett's testimony is admissible. *See Hall v. United Ins. Co. of America,* 367 F.3d 1255, 1261 (11th Cir.2004) (citing *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1306 (11th Cir.1999)).

## CURT BAGGETT LACKS THE EXPERTISE OR INTEGRITY TO ACT AS AN EXPERT IN THIS LAWSUIT

Curt Baggett is neither an expert in document examination nor handwriting analysis. Moreover, Curt Baggett's integrity is called into question since he failed to list cases on his resume in which multiple courts rejected his testimony. The omissions include, in particular, the decision *In the Matter of Marriage of Spalding*, No. 05-19-00484-CV, 2021 WL 4057567 (Tex. App. Sept. 3, 2021), which that court entered only ten (10) days before he first provided his resume to David Boshea in Compass' initial disclosure. (The "Initial Disclosure" attached as Exhibit A. Remarkably, Compass provided an addendum to Mr. Baggett's resume on October 18, 2021 (Exhibit B), listing his testimony in 2021 cases up to September 14, 2021, yet still avoided mentioning his exclusion in *Spalding*. *See* Exhibit B, 17-38.

In *Spalding*, the court excluded Mr. Baggett as a witness because he lacked the necessary qualifications to provide expert testimony. *See Spalding*, *supra*. Specifically, the *Spalding* court affirmed the trial court's order excluding Mr. Baggett's testimony after reviewing his credentials:

> During trial, Baggett testified that his degrees include a B.A. in speech education and a M.Ed. in counseling and guidance from McNeese State University in Lake Charles. Baggett testified he took postgraduate courses in psychology at the University of Houston. Apart from his apprenticeship with Dr. Walker, Baggett explained that his education and training in document examination involved an introductory class on document examination, which he took while in the U.S. Army Military Police Officer's School. Baggett testified

3

he did not perform document examination during his time in service with the U.S. Army.

Baggett testified he was not certified by (i) the American Board of Forensic Document Examiners (ABFDE), (ii) the Board of Forensic Document Examiners, (iii) the National Association of Document Examiners, (iv) the American Society of Questioned Document Examiners, or (v) the Association of Forensic Document Examiners. Baggett testified his son operated the Handwriting University at which he served as a teacher and a dean. The record contains testimony from Baggett that the Handwriting University has no accreditations. Neither institution that certified Baggett's expertise remains in business.

The record contains an opinion from our Court in which we addressed an issue with ancillary relation to Baggett's expertise:

*Brown contends that the trial court erred in overruling his objection to the prosecutor's argument during the guilt or innocence phase of the trial in which he called defense witness Curtis Baggett a "charlatan." Baggett testified that he was a psychologist, hypnotherapist, psychotherapist, and graphologist, and that he had been designated by the court as an expert witness in this case.* The court noted that Baggett had not been properly qualified as an expert, and Baggett retracted his testimony that the court had designated him as an expert in this case. *Baggett testified that he is not licensed as a psychologist or a psychotherapist and has not practiced therapy full-time for fifteen years, although he still conducts occasional weight loss and stress management seminars. Baggett works primarily in real estate and financial planning. A "charlatan" is defined as "a pretender to medical knowledge: a quack." Webster's Third New International Dictionary 378 (1993). We conclude that the prosecutor's argument that Baggett was a charlatan was proper as a reasonable deduction from the evidence. See Broussard v. State*, 910 S.W.2d 952, 959 (Tex. Crim. App. 1995), *cert. denied*, 519 U.S. 826, 117 S.Ct. 87, 136 L.Ed.2d 44 (1996).

*Brown v. State*, No. 05-97-00289-CR, 1999 WL 61858, at *8 (Tex. App.—Dallas Feb. 9, 1999, no pet.) (emphasis added). The record further contains an order from *United States of America v. Revels* from the United States District Court, Eastern District of Tennessee, Chattanooga Division, in which the federal district court discussed Baggett's qualifications and credibility in the areas of document examination and handwriting analysis in 2012. The federal district court excluded Baggett's testimony, concluding "Mr. Baggett lacks the necessary qualifications to testify at Defendant's sentencing hearing as an expert in the fields of document examination and handwriting analysis."

*Spalding*, No. 05-19-00484-CV, 2021 WL 4057567, at *4–5 (italics in original).

Similarly, although Mr. Baggett's resume spans the period from February 11, 2013 to September 14, 2021, he omitted mention of the court's August 7, 2013 decision to exclude his

4

testimony in *Routh v. Bank of America*, N.A. No. SA-12-CV-244-XR, 2013 WL 4040753 (W.D. Tex. August 7, 2013) or *Balimunkwe v. Bank of America*, No. 1:14-CV-327, 2015 WL 5167632, at *8 (S.D. Ohio Sept. 3, 2015)). *See* Exhibit B at 17-38. The *Balimunkwe* court found Mr. Baggett was "not qualified by skill, experience, training or education as a handwriting expert to offer an opinion concerning the authenticity of plaintiff s signature on the 2004 loan documents at issue in this case." *Balimunkwe*, at *8. Although both of Mr. Baggett's reports list cases in which he testified at a deposition or at trial since 2013, he did not mention his exclusion in either *Spalding* or *Balimunkwe*. The *Balimunkwe* court criticized Mr. Baggett's selective disclosure of cases in which he testified:

> In addition to concerns as to whether Mr. Baggett has accurately represented his credentials, the Court notes that plaintiff has not directed this Court to any other federal court decision that has found Mr. Baggett to be qualified as an expert after performing a *Daubert* analysis and/or considering his qualifications under Rule 702. On the other hand, defendants have cited several federal cases in which the court analyzed Mr. Baggett's qualifications and held that Mr. Baggett was not qualified to testify as a handwriting expert or that his testimony should be excluded as unreliable. *See Dracz v. Am. Gen. Life Ins. Co.*, 426 F. Supp.2d 1373 (M.D. Ga. 2006), *aff'd*, 201 F.App'x 681 (11th Cir. 2006); *Revels*, No. 1T0-CR-110-1; *Routh v. Bank of Am, N.A.*, No. 5:12-cv-244-XR (W.D. Tex. Apr. 7, 2013) (Doc. 41). *See also Wheeler v. Olympia Sports Center, Inc.*, No. 03-265-P-H, 2004 WL 2287759 (D. Me. Oct. 12, 2004). The Court's in-depth findings in *Revels* are particularly instructive.
> 
> *Balimunkwee*, No. 1:14-CV-327, 2015 WL 5167632, at *9.

The *Revels* finding to which the *Balimunkwe* refers involved a May 9, 2012 Memorandum Opinion entered by the court in *United States v. Revels*, 1:10-CR-110-1, 2012 U.S. Dist. LEXIS 65069 (E.D. Tenn. May. 9, 2012), attached as Exhibit C. In *Revels*, the court excluded Mr. Baggett's testimony "on the grounds that he is not qualified to testify as an opinion witness in the areas of document examination and handwriting analysis." *Revels*, at 1. In support of its decision to exclude Curt Baggett's testimony, the *Revels* court noted he had been described as a charlatan:

5

Here, as the factfinder at sentencing, this Court has grave concerns about Mr. Baggett's credibility. At a minimum, these concerns would have greatly affected whether the Court would have given any weight to Mr. Baggett's testimony had he been allowed to testify. They also lend further credence to the Court's conclusion that opinion testimony offered by Mr. Baggett would not have carried a "sufficient indicia of reliability to support its probable accuracy." See § 6A1.3. First, in an unpublished decision, the Court of Appeals of Texas expressed that a prosecutor's use of the term "charlatan" at trial in reference to Mr. Baggett "was proper as a reasonable deduction from the evidence" and noted that a "charlatan" is defined as "a pretender to medical knowledge: a quack."

*Revels*, 1:10-CR-110-1, at 13.

The *Revels* court concluded:

Even under a 'minimum indicia-of-reliability standard,' this Court concludes that the issues raised with respect to Mr. Baggett's qualifications call into doubt the reliability of any testimony that he would offer. Accordingly, Mr. Baggett will not be allowed to testify at Defendant's sentencing as an expert.

*Revels*, 1:10-CR-110-1, at 7.

The *Revels* court also noted Curt Baggett's lack of training and certification:

Similarly in *Blake v. West Virginia National Auto Insurance Co.,* No. 06-C-71 (Upshur Cnty. Cir. Ct. W.V. Sept. 5, 2007), a state court in West Virginia made detailed findings and ultimately determined Mr. Baggett was not qualified to offer testimony as a forensic document examiner. The court observed as a matter of law that Mr. Baggett lacked any formal training, that his apprenticeship with Ray Walker had not been shown to provide any meaningful instruction, that Mr. Baggett had never been "certified" as a forensic document examiner, and that he lacked any meaningful education and training in the field.

*Revels*, 1:10-CR-110-1, at 12.

In the September 17, 2019 Transcript of Excerpt of Proceeding in *US v. Williams*, Case Number 1:17-cr-117 in the District Court for the Southern District of Ohio, attached as Exhibit D, Curt Baggett misrepresented the *Revels* court's reason for excluding his testimony and criticized the court. "He (the judge in *Revels*) said I was not an expert because I did not have a degree in document examination. If you remember, I testified earlier it doesn't exist. So, obviously, that Court was wrong. *See* September 17, 2019 Transcript of Excerpt of Proceeding in *US v. Williams*

6

(the "Williams Transcript"), at 50. In *Williams*, Baggett also acknowledged that he had been convicted of felonies for assault with a deadly weapon, along with felony convictions for Theft and Aggravated Assault dating back to 1989 and 1998. *See* Williams Transcript, at 50. In his resume, Baggett claims that the Court Appointed him as an Expert in *Williams*, which is true only to the extent that the Court granted the defendant's motion to appoint an expert. *See* Williams Transcript and CM/ECF 54 and 190. The docket in *Williams* does not include an order appointing Curt Baggett. While he testified, the transcript does not show the Court approved him as an expert.

Notably, the state court dockets are unavailable in all cases in which Mr. Baggett claims to have given expert testimony. As such, there is no way for David Boshea to determine whether Mr. Baggett actually testified as an expert in those cases.

The referenced decisions and the court's opinion exclude Curt Baggett in *Primerica Life Ins. Co. v. Atkinson*, No. ll-CV-05299-RBL, 2012 WL 6057888, at *4 (W.D. Wash. Dec. 6, 2012), a 2012 case decided before the time frame in Mr. Baggett's resumes, and Mr. Baggett's failure to disclose his exclusion as an expert witness in multiple cases decided after 2013, should reasonably lead the Court to exclude him from testifying as an expert in this case.

**COMPASS MARKETING FAILED TO PROVIDE ITS RULE 26(A)(2) EXPERT DISCLOSURES BY THE COURT'S DEADLINE.**

The jury will consider at trial, *inter alia*, David Boshea's allegations in his Second Amended Complaint (CM/ECF 48). In the complaint, David Boshea seeks damages for Breach of Contract (Count I), Violation of the Maryland Wage Payment and Collection Act (Count II), and, in the alternative to Count II, Violation of the Illinois Wage Payment and Collection Act (Count III). The counts concern David Boshea's claims for unpaid severance payments and damages arising from his employment with Compass from May 2007 to March 2020. In support of his

7

claims, David Boshea attached as Exhibit A to the complaint, his signed contract with Compass signed by John White, Compass' CEO (the "Agreement").

In Compass' answer (CM/ECF 14) to the original complaint, Compass claimed "… the document attached to the SAC as Exhibit A is not authentic or otherwise was not entered into, the allegations are denied." *Id.* Since the issue of the authenticity of the signature on the Agreement might require expert testimony, the Court on June 29, 2021 entered a scheduling order setting forth a September 13, 2021 deadline for Compass' expert disclosures pursuant to Fed.R.Civ.P. 26(a)(2)." Scheduling Order (CM/ECF 20, at 1).

### COMPASS' INITIAL DISCLOSURE DID NOT PROVIDE INFORMATION REQUIRED UNDER RULE 26 PROVIDING A BASIS FOR ALLOWING CURT BAGGETT TO TESTIFY AS AN EXPERT

On September 13, 2021, Compass' counsel emailed David Boshea's counsel providing Compass' limited Initial Disclosure under FRCP 26(a)(2) (Exhibit A), which indicated that Compass had retained Curt Baggett as its expert witness. The Initial Disclosure contains three parts: Compass' counsel's email, Defendant Compass Marketing, Inc.'s Expert Disclosure dated September 13, 2021, and Curt Baggett's resume. *See* Exhibit A. In response to David Boshea's questioning, Compass confirmed that it disclosed Curt Baggett under FRCP 26(a)(2)(C). *See* Stephen Stern's second Sept. 13, 2021 email attached as Exhibit E.

The extent of the disclosure required by Rule 26(a)(2) depends on whether the witness is an expert witness "retained or specially employed to provide expert testimony," or whether the witness represents a "hybrid fact/expert witness pursuant to Fed.R.Civ.P. 26(a)(2)(A)." Local Rule 104.10. FRCP Rule 26(a)(2)(B) governs specially retained experts, while FRCP Rule 26(a)(2)(C) governs hybrid witnesses, which include witnesses who provided services unrelated to testifying in a case. *See* FRCP Rule 26(a)(2)(B) and FRCP Rule 26(a)(2)(C). "Rule 26(a)(2)(B) requires that any retained expert or any employee who regularly gives expert testimony provide a written report

identifying all opinions to be expressed and the basis therefor. " *Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC*, 227 F.R.D. 421, 423 (M.D.N.C. 2005); *see also* Local Rule 104.10.

Mr. Baggett had no independent relationship with Compass. As such, he is a specially retained expert under FRCP Rule 26(a)(2)(B) and Local Rule 104.10. Thus, Compass had an obligation to submit a full report as FRCP Rule 26(a)(2)(B) requires, which Compass failed to provide. *See* Exhibit A.

In the September 13, 2021 Initial Disclosure, Compass merely stated its expectation as to how Mr. Baggett would opine in a section titled "Summary of Facts and Opinions the Expert is Expected to Testify About." Exhibit A at ¶¶ 1-2. The Initial Disclosure reads: "Compass Marketing expects that Mr. Baggett will share an opinion, based on his analysis, that concludes John White did not sign the Alleged Agreement and that the signature purporting to be John White's signature is indeed a forgery." Exhibit A at 3, ¶ 2.

Compass, rather than Mr. Baggett, stated that Mr. Baggett believed John White's signature was a forgery. *See* Exhibit A, at 3, ¶ 2. Mr. Baggett did not express an opinion as to the signature. Compass submitted Mr. Baggett's resume and nothing more. *See* Exhibit A. Although the "Summary of Facts and Opinions the Expert is Expected to Testify About" would lead the Court to believe Compass or Mr. Baggett summarized the facts that might lead to his opinion, the Initial Disclosure did not, despite the requirement of FRCP 26(a)(2), include any facts or describe the methodology Mr. Baggett used or might use to reach a conclusion. *See* Exhibit A. Thus, Compass and Curt Baggett did not comply with FRCP 26(a)(2) in the Initial Disclosure.

### CURT BAGGETT'S SUPPLEMENTAL REPORT IS EQUALLY DEFICIENT

On September 27, 2021, Compass provided a supplement via email (the "Supplemental Disclosure" attached as Exhibit F). The Supplemental Disclosure includes: (1) Stephen Stern's

9

email; (2) Curt Baggett's Resume (CM 0275-0299); (3) Curt Baggett's September 9, 2021 email to Ron Bateman explaining Mr. Baggett's charges (CM 0299-300); (4) a September 10, 2021 Receipt for $700.00 Payment to Curt Baggett (CM 0301); (5) Ron Bateman September 10, 2021 Email to Curt Baggett attaching the Agreement, exemplars of John White's signature; exemplars of Michael White's signature; and exemplars of David Boshea's signature (CM 0302-0335); (6) A copy of Defendant Compass Marketing, Inc.'s Expert Disclosure previously provided on September 13, 2021 (CM 0336-0338); (7) Curt Baggett's Questioned Document Examiner Letter dated September 21, 2021(CM 0339-0351); and (8) a privilege log. *See* Exhibit F.

Curt Baggett's assistant's September 9, 2021 email (Exhibit F, at CM0299-300) appears to indicate Compass did not contact him until four days before the deadline. The email also states that Mr. Baggett charged $700 for a single exam and a written notarized expert opinion. If Compass had desired an actual expert report, which Mr. Baggett describes as a "Long Detailed Report," he would have provided his work product, enlargements and how the conclusion was reached. (Exhibit F, at CM0299). Instead, Compass bought a "Notarized Expert Opinion Letter," which shows nothing but a conclusion. *See* Exhibit F, at CM0339-440. In the Supplemental Disclosure, Mr. Baggett did not state the basis and reasons for his opinions, the facts or data considered in forming them (Exhibit F, at CM0339-40), or, as discussed above, a complete list of all other cases in which, during the previous four years, he testified as an expert. *See* Exhibit F, at CM0275-98.

Moreover, the Court set a September 13, 2021 deadline for Compass to make its complete Initial Disclosure. Because Compass' Initial Disclosure did not comply with Fed.R.Civ.P. 26(a)(2), Compass' September 27, 2021 Supplemental Disclosure, which was provided to cure the defects in the Initial Disclosure, was untimely, having been delivered two (2) weeks after the deadline in the Court's Scheduling Order. Regarding the timeliness of initial disclosures, Rule 26

states: "A party must make these disclosures at the times and in the sequence that the court orders." Fed.R.Civ.P. 26(a)(2)(D).

Under either standard provided under FRCP Rule 26(a)(2), the Court and David Boshea cannot determine how Curt Baggett arrived at his opinion. Due to Compass' failure to comply with Fed.R.Civ.P. 26(a)(2)(B) or (C), the Court should exclude Mr. Baggett's report and testimony.

### CURT BAGGETT'S FINAL SUBMISSION DOES NOT PROVIDE FACTS SUPPORTING HIS CLAIM THAT DAVID BOSHEA FORGED JOHN WHITE'S SIGNATURE

On October 18, 2021, delivered two reports within the same submission. *See* Exhibit B). In the first report, Mr. Baggett opines that David Boshea forged John White's signature on the Agreement (the "Boshea Short Report" attached as Exhibit B, at 2-3). In a second report, Mr. Baggett generally attempts to explain his conclusion that John White did not sign the Agreement (the "Long Report" attached as Exhibit B, at 39-99). Based on the nature of the report, it appears Compass chose a $300 Notarized Expert Opinion Letter (*See* Exhibits B, at 99 and F at CM0299), which it knew or should have known does not satisfy FRCP Rule 26(a)(2)'s standards.

On October 18, 2021, Mr. Baggett provided two opinions that appear unconnected. Compass' counsel notes in an email, "While the report(s) speaks for itself, it is noteworthy that Mr. Baggett not only concludes that the signature purporting to be John White's signature is a forgery, but he also concludes that it was forged by Mr. Boshea." Exhibit B, at 1. Mr. Baggett's conclusion that David Boshea signed John White's name is extraordinary, since he does not identify any facts supporting this finding despite Fed.R.Civ.P. 26(a)(2)(C)'s requirements. *See* Exhibit B, 2-3. Instead, Mr. Baggett appears to have provided a "made as instructed" opinion lacking any analysis as to why he reached his conclusion. Just as in the Initial Disclosure, in the Boshea Short Report, under either standard provided under Fed.R.Civ.P. 26(a)(2), the Court and David Boshea cannot determine how Mr. Baggett arrived at his opinion that David Boshea forged

11

John White's signature. Thus, the Court should exclude any testimony from Mr. Baggett regarding David Boshea's purported forgery of John White's signature.

### CURT BAGGETT'S LONG REPORT IS UNRELIABLE

In the Long Report (Exhibit B, at 39-99), Mr. Baggett's conclusions fail to meet the standards the Supreme Court required to establish reliability in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

In the Long Report, Mr. Baggett quotes various parties from a single 1999 publication as support for his conclusions, *Handwriting Identification, Facts and Fundamentals* by Roy A. Huber and A.M. Headrick, CRC Press LLC, 1999 (the "Treatise"), Chapters 16-18 are attached as Exhibit G. In particular, Mr. Baggett draw quotes from Chapter 16 made by Ordway Hilton, Wilson R. Harrison, and James V.P. Conway. Long Report at 61-62 to support for his conclusions. Interestingly, immediately after the text Mr. Baggett quotes in the Treatise, the authors criticize that text for making overly broad statements.

> The common thread that these writings seem to exhibit is the importance attributed to a limited number of differences, perhaps only one. In the view of these authors, all and any fundamental differences (i.e., disparity) appears to carry the same weight, the magnitude of which sufficient to offset the weight of a number of similarities, regardless of their respective importance. Therefore, all differences must be deemed equally important and equally significant. If this line of thinking is correct there seems little need to pursue the question. What is a significant difference? Some differences, however, if not more significant are at least less disputable as being indicative of production by different writers.
> 
> *Handwriting Identification, Facts and Fundamentals,* Huber and Headrick, Exhibit G at 50-51.

Further, in Chapter 17 of the Treatise, the authors note the importance of considering twenty circumstances and conditions that might contribute to differences in exemplars (*See* Exhibit G, at 51-55, yet a review of Mr. Baggett's Long Report shows he analyzed none of them. *(*Exhibit G, at 59-62). For example, the first factor the authors discuss in Chapter 17 concerns the Adequacy

12

of Standards. They state: "Not only must the standards be adequate in quantity, but they must be as contemporaneous as possible with the questioned writing." Exhibit G, at 51. A review of the exemplars Mr. Baggett submitted as part of the Long Report shows he compared a 2007 signature (Exhibit B, at 48) with one document signed in 2007 (Exhibit B, at 56) and several signatures made much later, including an exemplar signed in 2011 (Exhibit B, p. 55), 2016 (Exhibit B, p. 54), 2017 (Exhibit B, at 52 and 53), 2019 (Exhibit B, at 51). One page contains two undated John White signatures that appear to be markedly different (Exhibit B, at 57), although presumably signed at the same time.

Curt Baggett categorically eliminated John White as the person who signed the Agreement that provides severance payments to David Boshea. The Treatise describes the elimination of subjects as being general and speculative, yet Mr. Baggett stated without condition that: "Someone did indeed forge the signature of John D. White on the "Q1" "document." Exhibit B, at 3.

> The elimination of a writer may be based on what is quantitatively less evidence, or on an absence of evidence of identification in the documents at hand. It embraces speculation as to what other documents by the same writer might reveal, if they were available. Eliminations are broad and all-inclusive statements, that a given writer could not, under any circumstances, have executed a given writing. Identifications are particular and demonstrable. Eliminations are general and speculative.
>
> Exhibit G, at 55.

The Treatise's authors went on to state: "An important key in the elimination of a writer rests in the contemporaneousness of the standards. Because writing is dynamic and subject to change over periods of time, it is crucial to have within the standards some samples of writing that are contemporaneous with the questioned document." Exhibit G, at 55. As noted above, the exemplars are not contemporaneous; but their difference in age did not deter Curt Baggett from stating his sweeping conclusion.

Although the Treatise lists several limiting factors (Exhibit G, at 51-55), Mr. Baggett did not refer to any one specific factor used in making his conclusions in the Long Report. *See* Exhibit B. Instead, Mr. Baggett simply notes generally that there are limiting factors in his examination. *See* Exhibit B, at 60. Further, the Long Report explains that because no originals were provided to him, Mr. Baggett was unable to conduct a forensic lighting or ink and paper examination of the questioned documentation. *See* Exhibit B, at 60. It also notes that he was also unable to use an ESDA machine in the examination. *See* Exhibit B, at 60.

The SWGDOC (Standard for Scope of Work of Forensic Document Examiners) Standard for Documents Produced with Toner Technology (photocopiers, printers, facsimile devices, and multi-function devices using toner technology) (the "SWGDOC Standard") sets forth the standard for examining documents where, as is the case here, no originals were produced. The SWGDOC Standard is attached as Exhibit H. Where factors such as the amount of time that passed between the questioned signature and the exemplars, the quality of the copies, the comparability of the copies, and the quantity of documents, are present, as they are here, the certainty of Mr. Baggett's conclusions becomes questionable. See Exhibit H.

In short, the Long Report does not follow the SWGDOC Standard.

> Even under a "minimum indicia-of-reliability standard," this Court concludes that the issues raised with respect to Mr. Baggett's qualifications call into doubt the reliability of any testimony that he would offer. Accordingly, Mr. Baggett will not be allowed to testify at Defendant's sentencing as an expert.
> 
> *Revels*, *supra* at 7.

"In assessing the admissibility of expert testimony, a district court assumes a "gatekeeping role" to ensure that the 'testimony both rests on a reliable foundation and is relevant to the task at hand.' " *In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices...*, 892 F. 3d 624, 631 (4th Cir. 2018) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 580, 113 S. Ct.

14

2786 (1993)). "The district court's inquiry is a "flexible one," whose focus 'must be solely on principles and methodology, not on the conclusions that they generate.' " *Id.*, at 631 (quoting *Daubert*, at 594-595). Contrastingly, despite the limitations in the quality, comparability, and quantity of the evidence, the Long Report conclusively found that the signature on the Agreement was a forgery not authored by John White. *See* Exhibit B, at 62. When there are significant limiting factors, such as is the case here, the SWGDOC Standard states: "8.6 No Conclusion—When there are significant limiting factors, a report that no conclusion can be reached is appropriate. This opinion requires explanation of the limiting factors." Exhibit H, at 5. The Long Report not only does not explain the significant limiting factors, but concludes without detailed explanation that the signature is not John White's and is a forgery. *See* Exhibit B, at 62. In short, the Long Report follows neither the standards on which Mr. Baggett relies from the Treatise or the SWGDOC Standard.

## CONCLUSION

Because Curt Baggett lacks the qualifications required to testify as an expert, and each of his reports are unreliable under the standards set forth in *Daubert, supra,* the Court should bar Compass Marketing from presenting Curt Baggett as an expert witness at trial.

WHEREFORE, the plaintiff, David J. Boshea, respectfully requests that this Court enter an order barring Compass Marketing, Inc. from presenting Curt Baggett as an expert witness at trial, and for such other just relief.

**RESPECTFULLY SUBMITTED,**

/s/ Gregory J. Jordan
Gregory J. Jordan (Admitted Pro Hac Vice)
Jordan & Zito LLC
350 N. LaSalle Drive, Suite 1100
Chicago IL 60654
(312) 854-7181
gjordan@jz-llc.com

Thomas J. Gagliardo (Bar No. 08499)
Of Counsel
Gilbert Employment Law, P.C.
1100 Wayne Ave, Suite 900
Silver Spring, Maryland 20910
tgagliardo@gelawyer.com

COUNSEL FOR DAVID J. BOSHEA

# CERTIFICATE OF SERVICE

I certify that on November 18, 2022, David J. Boshea served his Motion *In Limine* To Bar Compass Marketing, Inc. From Presenting Curt Baggett as an Expert Witness at Trial by CM/ECF on:

>Stephen B. Stern
>Heather K. Yeung
>Kagan Stern Marinello & Beard, LLC
>238 West Street
>Annapolis, Maryland 21401
>Email: stern@kaganstern.com
>Email: yeung@kaganstern.com

>*Attorneys for Compass Marketing, Inc.*

>/*s/* Gregory J. Jordan
>Gregory J. Jordan