IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID J. BOSHEA,
   *Plaintiff*,

v.                                   Civil Action No.  ELH-21-309

COMPASS MARKETING, INC.,
   *Defendant*.

## MEMORANDUM OPINION

Plaintiff David J. Boshea has filed suit against defendant Compass Marketing, Inc. ("Compass"), alleging that Compass owes him severance pay of $540,000, pursuant to a purported employment agreement. *See* ECF 1 (the "Complaint"); ECF 27 (the "First Amended Complaint"); ECF 48 (the "Second Amended Complaint").[1]  In particular, plaintiff has lodged claims for breach of contract (Count I); violation of the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code (2016 Repl. Vol., 2021 Supp.), §§ 3-501 *et seq*. of the Labor and Employment Article ("L.E.") (Count II); and, in the alternative to Count II, violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. Ann. 115/1 *et seq*. (Count III).  *Id*. at ¶¶ 17-39.

Defendant answered the suit.  *See* ECF 14 (Answer to Complaint); ECF 37 (Answer to First Amended Complaint); ECF 53 (Answer to Second Amended Complaint).  In addition, defendant filed a Counterclaim against plaintiff, as well as a Third Party Complaint against unidentified John Doe(s).  ECF 38.  Specifically, defendant has lodged a claim against plaintiff and John Doe(s) for tortious interference with contractual relations and/or prospective economic advantage (Count I); a claim against plaintiff and John Doe(s) for civil conspiracy (Count II); and

---

[1] Jurisdiction is premised on diversity, pursuant to 28 U.S.C. § 1332.  ECF 48, ¶ 5.

a claim against plaintiff for unjust enrichment (Count III). *Id*. ¶¶ 22-43. Plaintiff answered the Counterclaim. ECF 45.

Trial is scheduled for July 31, 2023. ECF 145. In anticipation of trial, the parties submitted six motions in limine ("MILs"). ECF 119; ECF 120; ECF 121; ECF 122; ECF 124; ECF 125. Plaintiff submitted ECF 119 to ECF 122, and defendant submitted ECF 124 and ECF 125. The MILs have been fully briefed.

The Court held a hearing on the motions on March 10, 2023. ECF 158. Vigorous argument was presented as to multiple issues. In particular, plaintiff moved to bar defendant from presenting two expert witnesses: Curt Baggett (ECF 120) and Jeffrey A. Payne (ECF 121). However, for the reasons stated on the record, the Court permitted defendant to substitute Payne as its expert, in lieu of Baggett. Additionally, the Court permitted discovery to be reopened for the limited purpose of allowing plaintiff to depose Payne. Accordingly, by Order of March 10, 2023, the Court denied ECF 120 and ECF 121, as moot. ECF 159. *Id*.

MILs ECF 119; ECF 122; ECF 124; ECF 125 remain pending. For the reasons that follow, I shall grant ECF 119 and ECF 125. However, I shall deny ECF 124. And, I shall grant ECF 122 in part, and deny it in part.

## I. Factual and Procedural Background[2]

### A.

---

[2] In my discussion of the facts, I focus on those most relevant to the resolution of the MILs. I also incorporate here the factual summary set forth in my Memorandum Opinion of July 22, 2022. ECF 110.

Throughout the Memorandum Opinion, the Court cites to the electronic pagination. But, the electronic pagination does not always correspond to the page number imprinted on the particular submission.

Plaintiff filed suit on February 5, 2021. ECF 1. The suit centers on plaintiff's claim of entitlement to a severance payment of $540,000 in connection with his employment by Compass from May 2007 to March 2020. ECF 48. In support of his claim, plaintiff attached to his Complaint a purported agreement titled "Compass Marketing, Inc. Agreement Relating to the Employment and Post-Employment Compensation." ECF 1-3 (the "Agreement"). According to plaintiff, the Agreement was executed around May 2007. ECF 48, ¶¶ 10, 11; ECF 124 at 2. That assertion is vigorously contested.

The Agreement states that it is between plaintiff, "residing" in Naperville, Illinois, and defendant, "having a place of business" in Annapolis, Maryland. ECF 1-3 at 1. It is not dated. It is purportedly signed by plaintiff and John White, as CEO for Compass. *Id*. at 5.

Of relevance here, the Agreement provides, in a section titled "Article 6. Severance," as follows, *id*. at 3:

> A.   If Employee's employment is terminated by COMPASS for any reason other than Cause, Employee shall receive severance payments totaling $180,000 (one hundred and eighty thousand U.S. dollars) which will be divided up into twenty-four payments and will commence with the Employee's effective date of termination and shall be made in accordance with COMPASS's normal payroll cycle. The period during which Employee receives severance payments shall be referred to as the "Severance Pay Period." Severance will increase one month for every month employed to a maximum severance of $540,000.

Defendant disputes that White ever signed the Agreement. See ECF 14 at 7 (stating that "the document attached . . . as Exhibit A is not authentic or otherwise was not entered into by Plaintiff and Compass Marketing); *see also* ECF 53 at 8.

Compass filed a timely partial summary judgment motion on February 15, 2022. ECF 93. Specifically, defendant sought summary judgment solely as to plaintiff's MWPCL claim (Count II), on the ground that application of the MWPCL would be improper because plaintiff, a resident

3

of Illinois, only performed limited work in Maryland. Plaintiff did not move for summary judgment, nor did he move for an extension of the motion deadline.

By Memorandum Opinion (ECF 110) and Order (ECF 111) of July 22, 2022, the Court denied defendant's summary judgment motion. I ruled that, based on the facts and relevant case law, the MWPCL applied to plaintiff's circumstances.

**B.**

Defendant terminated plaintiff's employment by letter dated March 3, 2020. ECF 119-1. In the letter, CEO John White stated, in part, *id*. at 2:

> Regrettably, your position was one of the positions selected to be eliminated due to a necessary reduction in force. This letter confirms our discussion today that your employment with Compass Marketing Inc [sic] will terminate on March 3, 2020.
>
> We appreciate your service to the company, and it is with regret that we must terminate your employment. We want to assist as much as possible during this transition, as we do appreciate your tenure with Compass Marketing.

Plaintiff served Interrogatories on defendant, which included a request that defendant identify the reasons for his termination. *See* ECF 119-2 ("Defendant's Answers to Plaintiff's First Set of Interrogatories"). In particular, "Interrogatory No. 4" provided: "State all reasons for the Defendant's termination of Boshea's employment." ECF 119-2 at 8. Defendant responded, *id*.:

> Compass Marketing objects to Interrogatory No. 4 on the grounds that it is vague and ambiguous and it seeks information that is not relevant to the claims in this lawsuit. Subject to and without waiving these objections, Compass responds as follows:
>
> Boshea's employment was terminated for the reasons set forth in the March 3, 2020 letter (which is included with Compass document production), confirming his termination of employment.

Plaintiff also questioned White on the matter at White's Deposition. ECF 119-3 ("John White Deposition Transcript"). The transcript reads, in relevant part, *id*. at 45 (Tr. 173):

4

      Q. Okay. So is there any reason other than reduction in force for David Boshea's termination?

      A. No

In plaintiff's responses to defendant's Interrogatories, plaintiff stated that upon his termination from employment, he spoke with Daniel White ("Daniel") and Michael White ("Michael"), minority shareholders of Compass and brothers of John White. *See* ECF 138 at 2.[3] "Daniel White reminded [sic] that David Boshea has the severance agreement and noted Compass Marketing's obligations." ECF 40-1 ("Plaintiff's Answers to Defendant's First Set of Interrogatories") at 5.

Compass issued a document and testimonial subpoena to both Daniel and Michael. Daniel produced an email that he provided to plaintiff's attorney, Gregory Jordan, on September 27, 2021. *See* ECF 124-3. I shall refer to ECF 124-3 as the "Forwarded Email" because plaintiff contends that ECF 124-3 is an email that Daniel had forwarded to Michael on May 22, 2007, at 2:08 a.m. *Id*. at 2. And, the email that was forwarded was one purportedly sent from White to plaintiff at 1:24 a.m. on May 22, 2007, with the subject line: "Your agreement is attached. Not signed off by our G.C. bu [sic] should ne [sic] tomorrow." *Id*. An unsigned draft of the Agreement that forms the basis of plaintiff's claims was allegedly attached to that email. *Id*. at 3-8 (the "Draft Agreement" or "Attachment").

---

[3] I shall refer to Daniel and Michael White by their first names, to avoid confusion with each other and with their brother, CEO John White. I shall refer to John White as White.

Daniel and Michael "are currently embroiled in their own lawsuits with Compass Marketing." ECF 124 at 3 (citing *Compass Marketing, Inc. v. Flywheel Digital, LLC, et al.*, JKB-22-379 (D. Md.) (also naming Daniel and Michael as defendants); *see also* "*Michael White, et al. v. John White, et al*., Case No. 013CL21004012-00 (Cir. Ct. Va., Arlington)." ECF 124 at 5 n.3 (noting that the case "seeks the judicial dissolution of Compass Marketing." *Id*. at 5.

5

At his deposition, Daniel was asked whether he "help[ed] [plaintiff] get any documents or other information related to [plaintiff's] lawsuit against Compass Marketing?"  ECF 74-4 ("Daniel White Deposition Transcript") at 89.  Daniel responded that he helped plaintiff "find an email from John [White] to [plaintiff] from 2007."  *Id*.  According to Daniel, he received the original email from John White to plaintiff, dated May 22, 2007 at 1:24 a.m., "[b]y blind copy," although he had "no specific recollection receiving [the] email."  *Id*. at 124-128.  Daniel also stated that it was customary for White to include him on emails by way of a blind copy.  *Id*. at Tr. 132.

Daniel was asked if he had "the original e-mail in [his] inbox from [White] to [plaintiff]."  *Id.* at 129.  The specific email addresses were also referenced.  *Id.*  Daniel responded "[t]hat e-mail does not appear in my inbox by itself.  It appears as part of the thread that I sent to Michael White."  *Id*. at 130.

Michael was also deposed.  ECF 138 at 4.  Curiously, Compass did not question Michael about the email or the attachment.  *Id.*

The metadata for the Draft Agreement indicates that John White created and edited the document on May 22, 2007.  ECF 138-3.  The metadata also shows the title "Adams Employment Agree."  *Id*.  Plaintiff asserts that at trial he "intends to call John Adams, a Compass employee, who received substantially the same [employment] agreement."  ECF 138 at 6.  According to plaintiff, Adams signed his agreement "on or about May 2nd, 2007."  ECF 119-3 at 36 (Tr. at 135).  However, the amount of Adams's proposed severance payment was less than that for plaintiff.  ECF 124-3 at 5.  Defendant maintains that the Adams Employment Agreement is not authentic.  ECF 119-3 at 36 (Tr. at 135)

Additional facts are included, *infra*.

6

## II. Legal Standard

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984). The purpose of a motion in limine is "'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *United States v. Slagle*, SAG-15-392, 2015 WL 5897740, at *1 (D. Md. Oct. 6, 2015) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400, 1401 (D. Md. 1987)).

Notably, "motions in limine are meant 'to streamline the case for trial and to provide guidance to counsel regarding evidentiary issues.'" *Osei v. Univ. of Maryland Univ. Coll.*, 202 F. Supp. 3d 471, 479 n.5 (D. Md. 2016) (quoting *Adams v. NVR Homes, Inc.*, 141 F. Supp. 2d 554, 558 (D. Md. 2001)). They help to streamline a case, because such motions enable "'a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial.'" *INSLAW, Inc. v. United States*, 35 Fed. Cl. 295, 303 (1996) (citation omitted); *see Changzhou Kaidi Elec. Co., Ltd. v. Okin Am., Inc.*, 102 F. Supp. 3d 740, 745 (D. Md. 2015) (motions in limine "are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" (internal quotation omitted)).

However, such rulings are generally preliminary or tentative, made in the discretion of the court, to assist counsel in preparation for trial. *Luce*, 713 F.2d at 1239-40; *see Adams* at 558 ("A ruling on a motion in limine is no more than a preliminary or advisory opinion that falls entirely within the discretion of the district court"). When the evidence is actually offered at trial, the trial court may change its ruling. *Luce*, 713 F.2d at 1239.

Of relevance here, a judge may defer an issue for trial, or make a definitive or final ruling on the merits. K. Broun, et al., *McCormick on Evidence*, § 52 at 353-54 (7th ed. 2013). If the Court makes a "definitive ruling" before trial, under F.R.E. 103(b), the non-prevailing party "need not renew an objection or offer of proof to preserve a claim of error for appeal." *See* 21 C. Wright and K. Graham, *Federal Practice and Procedure*, § 5037.16, at 800 (2d ed. 2005). Generally, courts should grant a motion in limine "only when the evidence is clearly inadmissible on all potential grounds." *Dorman v. Anne Arundel Med. Ctr.*, MJG-15-1102, 2018 WL 2431859, at *1 (D. Md. May 30, 2018) (quoting *Emami v. Bolden*, 241 F. Supp. 3d 673, 681 (E.D. Va. 2017)).

"'A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.'" *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)). Under F.R.E. Rule 402, "[r]elevant evidence is admissible" unless rendered inadmissible pursuant to some other legal provision, but "[i]rrelevant evidence is not admissible." Notably, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." F.R.E. Rule 401.

Of course, under F.R.E. Rule 403, even if the evidence is relevant, the court "may exclude [it] if its probative value is substantially outweighed by a danger of . . . unfair prejudice," or it would confuse the issues, mislead the jury, cause undue delay, waste time, or "needlessly" involve "presenting cumulative evidence." But, "'where evidence is probative, "the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly."'" *United States v. Miller*, 61 F.4th 426, 429 (4th Cir. 2023) (citations omitted).

### III. Discussion

### A. ECF 124

Defendant has moved to exclude all evidence relating to the Forwarded Email and the purported Attachment. ECF 124. In particular, defendant argues that no one "has ever been able to produce the 1:24:33 am email" allegedly sent by White to Boshea, nor the Draft Agreement allegedly attached. *Id*. at 4. Compass also complains that no one has ever produced "a Native Copy of the 2007 1:24:33 am email . . . ." ECF 124 at 5. And, defendant asserts that because "no person who purports to be a party to the alleged email is able to authenticate the alleged email . . . , it is not admissible." *Id*. at 6. Moreover, White has testified under oath that he never sent the email. ECF 124-4 at 11 (Tr. at 149).

Conversely, plaintiff argues that "Daniel and Michael White can authenticate the email and the attachment." ECF 138 at 3. Boshea claims that "Daniel and Michael still maintain the email through their online providers." *Id*. at 1. Additionally, plaintiff states that he will "present the email and attachment in native form . . . ." *Id*. at n.1.

Fed. R. Evid. 901 governs authentication of documentary or tangible evidence. Rule 901(a) provides that "the proponent of an item of evidence . . . must authenticate the item by producing evidence 'sufficient to support a finding that the item is what the proponent claims it is.'" *Direct Benefits, LLC v. TAC Financial Inc*., SAG-13-1185, 2021 WL 3516359, at *1 (D. Md. Aug. 9, 2021) (quoting Fed. R. Evid. 901(a)). But, "[t]he burden to authenticate under Rule 901 is not high." *Grimes v. Merritt*, JKB-11-2687, 2015 WL 5158722, at *5 (D. Md. Aug. 31, 2015). "To establish that evidence is authentic, a proponent need only present 'evidence sufficient to support a finding that the matter in question is what the proponent claims.'" *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) (citation omitted).

9

Rule 901(b) includes a non-exhaustive list of examples of ways to authenticate a document, including "Testimony of a Witness with Knowledge," to the effect "than an item is what it is claimed to be." Fed. R. Evid. 901(b)(1). A document may also be authenticated by its "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken together with all the circumstances." Fed. R. Evid. 901(b)(4).

Notably, "[t]his rule is one of the most frequently used to authenticate e-mail and other electronic records." *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 546 (D. Md. 2007); *see also United States v. Siddiqui*, 235 F.3d 1318, 1322–23 (11th Cir. 2000); *United States v. Safavian*, 435 F. Supp. 2d 36, 41–42 (D.D.C. 2006). As the *Lorraine* Court noted, 241 F.R.D. at 539, determining whether electronically stored information is authentic "is a two-step process."[4] The court explained, *id*. at 539-40 (quoting *United States v. Branch*, 970 F.2d 1368, 1370 (4th Cir. 1992)):

> First, "[b]efore admitting evidence for consideration by the jury, the district court must determine whether its proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." Then, "because authentication is essentially a question of conditional relevancy, the jury ultimately resolves whether evidence admitted for its consideration is that which the proponent claims."

Of import here, "[a] party seeking to admit an exhibit need only make a prima facie showing that it is what he or she claims it to be." *Lorraine*, 241 F.R.D. at 542. And, "[t]his is not a particularly high barrier to overcome." *Id*. As to electronically stored information, the *Lorraine* Court explained, *id*. (quoting *Safavian*, 435 F. Supp. 2d at 38 (citations omitted) (emphasis and alterations in original):

> "[t]he question for the court under Rule 901 is whether the proponent of the evidence has 'offered a foundation from which the jury could reasonably find that

---

[4] The case was decided by Judge Paul Grimm while he was a Magistrate Judge. He later became a District Judge in Maryland. Judge Grimm, who recently left the bench, is a nationally recognized scholar with respect to the Federal Rules of Evidence and the Federal Rules of Civil Procedure.

the evidence is what the proponent says it is . . . .' The Court need not find that the evidence is necessarily what the proponent claims, but only that there is sufficient evidence that the *jury* ultimately might do so."

Daniel, a witness with knowledge, stated that he helped plaintiff "find an email from John [White] to [plaintiff] from 2007." ECF 74-4 at 89. According to Daniel, he was blind copied on the original email. ECF 74-4 at 124-128. Furthermore, Daniel denies making any alterations in the email. *Id*. at 125.

Moreover, there is no evidence to suggest that the email is not authentic. The email is not inadmissible merely because Daniel has no specific recollection of receiving it. Indeed, given that the email was allegedly disseminated over a decade ago, it would be surprising if Daniel had remembered receiving it. In any event, at best, defendant raises a question about the weight the jury should place on the Forwarded Email and the Attachment.

As the court in *Lorraine* stated, 241 F.R.D. at 540: "[I]f an e-mail is offered into evidence, the determination of whether it is authentic would be for the jury to decide under Rule 104(b), and the facts that they consider in making this determination must be admissible into evidence." It is not the Court's obligation to determine whether the Forwarded Email is what plaintiff says it is, but rather whether there is sufficient evidence for a jury to decide that issue. From Daniel's testimony, a jury could reasonably accept the authenticity of the Forwarded Email and the Attachment.

Plaintiff has satisfied the prima facie showing required under Fed. R. Evid. 901. Accordingly, I shall deny ECF 124.

### B. ECF 122

Boshea seeks an order barring defendant from presenting evidence or argument at trial contesting the applicability of the MWPCL. ECF 122. Specifically, plaintiff states: "Given the

Court's clear determination of the MWPCL's applicability in its Opinion (CM/ECF 110), any evidence or argument presented by Compass concerning the MWPCL's applicability would be confusing and improper." *Id*. at 3. Conversely, defendant asserts that the "'law of the case' doctrine does not bar it from introducing evidence as to the applicability of the MWPCL." ECF 140 at 3. Therefore, defendant contends that it "should be permitted to argue that the MWPCL is not applicable to Boshea's claims." *Id*. at 5.

As noted, after full briefing, I denied defendant's motion for partial summary judgment, in which Compass sought to preclude the application of the MWPCL. *See* Memorandum Opinion (ECF 110) and Order (ECF 11) of July 22, 2022. The Court determined that "the MWPCL applies in plaintiff's case." ECF 110 at 22. I reached that decision in the light of the undisputed facts, and after "[c]onsidering relevant decisions of the Maryland state courts, as well as several recent rulings of this Court applying these decisions, including in contexts similar to this case." *Id.*

In particular, I observed: "'The threshold for establishing employment in Maryland under the MWPCL is relatively low,'" such that "'[t]he MWPCL . . . applies to a company that either allows an employee to work in Maryland or instructs the employee to be present at a work site in Maryland,'" and "'[a]ll that is required is that the individual work to some extent in Maryland.'" *Id*. at 26 (quoting *Hausfeld v. Love Funding Corp.*, 131 F. Supp. 3d 443, 455 (D. Md. 2015)). Additionally, I said: "Based on this guidance from the Maryland courts, judges of this Court have 'similarly applied the Maryland wage laws to cases in which an employee worked in both Maryland and another state, even when the majority of the work occurred out-of-state.'" ECF 110 at 32 (quoting *Poudel v. Mid Atlantic Professionals, Inc.*, TDC-21-1124, 2022 WL 345515, at \*3 (D. Md. Feb. 4, 2022)).

I concluded that "[t]he undisputed facts in this case fit comfortably within those circumstances in which the courts have permitted the application of the MWPCL." ECF 110 at 33. And, I recognized that "the Court is obligated to apply the statute." *Id*. at 38. Therefore, I said, *id*. at 40:

> In sum, considering the expansive construction afforded to the MWPCL by the Maryland Court of Appeals, the Maryland Court of Special Appeals, and judges of this Court; the text of the statute; and the facts of this case, I readily conclude that the MWPCL applies to plaintiff's circumstances. This outcome is amply anchored in the case law described above.

Under Fed. R. Civ. P. 54(b), "any order . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983); *Nadendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022); *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). My earlier summary judgment ruling (ECF 110; ECF 111) was an interlocutory order, because it adjudicated "fewer than all the claims or the rights and liabilities of fewer than all the parties." Fed. R. Civ. P. 54(b). And, a district court retains the power to reconsider and modify its interlocutory judgments. . . at any time prior to final judgment. . . ." *U.S. Tobacco Coop., Inc. v. Big South Wholesale of Va., LLC*, 899 F.3d 236, 256 (4th Cir. 2018); *see Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003).

However, the Fourth Circuit has said that a court should only revise an interlocutory order in limited circumstances, in order to promote efficiency, judicial economy, and finality. *See, e.g.*, *Am. Canoe Ass'n*, 326 F.3d at 515; *Sejman v. Warner-Lambert Co, Inc.*, 845 F.2d 66, 68-69 (1988); *see also Christianson v. Colt Indus. Oper. Corp.*, 486 U.S. 800, 816 (1988). For this reason, "allowing litigants a 'second bite at the apple' via a motion to reconsider is

13

disfavored." *Nadendla*, 24 F.4th at 305.  In any event, defendant did not move for reconsideration to contest the ruling.

As defendant notes, "'the law of the case doctrine does not apply to interlocutory rulings, such as a denial of summary judgment.'"  ECF 140 at 4 (quoting *Smith v. Maryland*, RDB-17-3051, 2020 WL 128670, at *3 (D. Md. Jan. 10, 2020)).  But, the Fourth Circuit has "'cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case.'" *U. S. Tobacco Coop.*, 899 F.3d at 256 (quoting *Carlson*, 856 F.3d at 325).  The law of the case doctrine "generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  *Musacchio v. United States*, 557 U.S. 237, 244-45 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)); accord *Arizona v. California*, 460 U.S. 605, 618 (1983); *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019); *Carlson*, 856 F.3d at 325; *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009). The doctrine's effect is to bar a party from resurrecting issues that were previously decided or "'decided by necessary implication.'"  *United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008) (quoting *Sejman*, 845 F.2d at 68).  In so doing, the law of the case doctrine advances the interests of efficiency, judicial economy, and finality.  *See Christianson*, 486 U.S. at 816 (1988) (observing that the doctrine safeguards the "efficiency of the judicial process by protecting against the agitation of settled issues"); *United States v. Philip Morris USA Inc.*, 801 F.3d 250, 257 (D.C. Cir. 2015) (noting that the law of the case "reflects the understanding that 'inconsistency is the antithesis of the rule of law'") (citation and alteration omitted).

In the context of an interlocutory ruling, the law of the case doctrine "is not an 'inexorable command' but rather a prudent judicial response to the public policy favoring an end to litigation." *Sejman*, 845 F.2d at 68 (citation omitted).  Accordingly, the Fourth Circuit has instructed that a

"court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: '(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice.'" *U.S. Tobacco Coop.*, 899 F.3d at 256 (quoting *Carlson*, 856 F.3d at 325). Furthermore, "a party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider." *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (E.D.N.C. 2003) (quoting *Fidelity State Bank, Garden City, Kan. v. Oles*, 130 B.R. 578, 581 (D. Kan. 1991)).

Compass has not identified any new evidence; a change in applicable law; additional facts; or clear error causing manifest injustice, so as to warrant reconsideration. As it stands, defendant's arguments were previously considered and rejected by the Court. Defendant provides no reason for the parties to spend the limited time at trial on the application of the MWPCL.

Accordingly, based on the Court's ruling and the absence of a material dispute between the parties concerning the underlying facts, I shall bar defendant from presenting any *argument* at trial contesting the applicability of the MWPCL to this case. However, this ruling does not preclude defendant from presenting factual evidence as to where plaintiff performed his work.[5] Accordingly, I shall grant ECF 122 in part and deny it in part.

### C. ECF 119 & ECF 125

Plaintiff has moved for an order barring defendant from presenting adverse testimony at trial concerning the quality of his work performance while he worked for defendant. ECF 119. In particular, plaintiff contends that "[a]ny negative testimony concerning [plaintiff]'s work performance is irrelevant to any issue in this case and highly prejudicial to [plaintiff]." *Id*. at 5.

---

[5] If the evidence at trial differs materially from the evidence presented at summary judgment, the Court may then determine to revisit its ruling.

15

According to plaintiff, this case "turns on whether [plaintiff] has valid contract rights that he can assert under the severance agreement he claims [defendant] provided to him." *Id.* And, he contends that "derogatory evidence concerning [plaintiff]'s performance would serve no useful purpose or otherwise assist the jury in deciding the issues in this case." *Id.* at 6.

In the same vein, defendant has moved to exclude "any allegations or purported evidence concerning claims of sexual harassment, company mismanagement, other entities owned in whole or in part by John White (the majority owner of Compass Marketing), or the availability of attorneys' fees in this litigation." ECF 125 at 1. Like plaintiff, defendant recognizes that the "entirety of this lawsuit hinges on the authenticity and enforceability of the alleged Agreement." *Id*. at. 2.

Both sides seem to agree on the dispositive issue in this case and seek to exclude any evidence relating to personal conduct that could confuse or prejudice the jury. Yet, both parties oppose the other's motions. *See* ECF 139 (Boshea); ECF 141 (Compass). What's good for the goose is good for the gander.

In regard to plaintiff's motion (ECF 119), defendant argues that "Boshea's request to bar all adverse testimony at trial concerning his work performance is vague, overbroad, and necessarily encapsulates testimony concerning the performance of Boshea's job duties, and such evidence is required for Compass Marketing's counterclaim and to establish which state's wage payment and collection law applies." ECF 141 at 1.

As noted, defendant brought a Counterclaim against plaintiff alleging, *inter alia*, a claim of unjust enrichment against plaintiff. *See* ECF 38, ¶¶ 40-43.[6] In particular, defendant asserts in

---

[6] Compass also sued unidentified John Doe(s). Given the length of time that the case has been pending, Compass appeared to concede at the hearing that it does not intend to proceed with its claim against the Does.

16

the Counterclaim that, "[u]nbeknownst to Compass Marketing's CEO and majority owner, [plaintiff] regularly received additional 'off payroll payments' in biweekly increments of $350 totaling $51,800, which Boshea was not entitled to receive." ECF 28, ¶ 42. Consequently, defendant argues that evidence "related to Boshea's work performance is relevant to Compass Marketing's Counterclaim and should not be excluded." ECF 141 at 3.

However, as plaintiff correctly notes, "[t]he elements required to prove unjust enrichment do not concern the quality of [plaintiff]'s performance of his duties." ECF 150 at 2. This Court has explained: "A claim of unjust enrichment has three elements: 1. A benefit conferred upon the defendant by the plaintiff; 2. An appreciation or knowledge by the defendant of the benefit; and 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *De Simone v. VSL Pharms., Inc.*, 395 F. Supp. 3d 617, 632 (D. Md. 2019), *aff'd sub nom. De Simone v. Alfasigma USA, Inc.*, 847 F. App'x 174 (4th Cir. 2021) (citing *Hill v. Cross Country Settlements*, LLC, 402 Md. 281, 936 A.2d 343, 351 (Md. 2007)). Accordingly, any adverse testimony regarding the quality of plaintiff's performance of his duties would have no relevance to defendant's unjust enrichment claim.

Defendant also contends that "[t]he location of where Boshea performed his job duties, how often he performed them, and other similar evidence is necessary to determine whether Boshea was employed 'in the State' of Maryland for purposes receiving (or not) the protections of the MWPCL." ECF 141 at 4. As noted above, I have already determined that the MWPCL applies to this case. *See also* ECF 110; ECF 111. Testimony regarding the quality of plaintiff's work performance has no bearing on whether the parties entered into the alleged Agreement at issue in

this case. To that extent, I shall grant ECF 119. However, as indicated, defendant may elicit Boshea's testimony as to the location or place of his performance.

In regard to defendant's motion (ECF 125), plaintiff states that he "does not intend to solicit testimony concerning [allegations of] John White's sexual harassment of a female employee or [to] advise the jury concerning the availability to obtain a fee award." ECF 139 at 2. However, plaintiff argues that "[e]vidence of John White's mismanagement of Compass has relevance because it tends to make it more likely that Compass terminated [plaintiff] because the company was struggling, and it would also explain [defendant's] refusal to pay [plaintiff] his severance despite the authenticity of the employment agreement." *Id*. at 4-5. And, according to plaintiff, "evidence of either Compass' or John White's business interest in Tagnetics is relevant because it tends to make it more likely that Compass' termination of [plaintiff] was retaliatory and that John White signed the employment agreement he now denies executing." ECF 139 at 6. Further, plaintiff claims that evidence of "John White's mismanagement of Compass will shed light on why Compass suddenly terminated [plaintiff]'s employment after nearly thirteen (13) years." *Id*. at 4.

To the extent that plaintiff implies that the decision to terminate his employment was retaliatory in nature, plaintiff's claims do not assert that his termination was unlawful or that he was discharged in retaliation for anything. Thus, defendant's reasons for terminating plaintiff's employment are irrelevant. Indeed, plaintiff's contention is at odds with his earlier position in his motion to bar defendant from presenting adverse testimony at trial concerning the quality of his work performance while he worked for defendant. ECF 119. In particular, in ECF 119, plaintiff argued: "[T]he Court should bar Compass from introducing any documents or soliciting testimony

that might indicate it ended David Boshea's job for a reason other than a reduction in force." *Id*. at 1.[7] In this way, plaintiff wants to have his cake and eat it too.

Additionally, White's management of Compass is not of consequence in determining whether the purported Agreement is valid, binding, and enforceable. As defendant notes: "Even if John White 'mismanaged' Compass Marketing (which he did not), any alleged subsequent 'mismanagement' would not diminish (or make more credible) the validity of Boshea's claim regarding the existence of the alleged employment agreement or its terms." ECF 155 at 5.

As defendant reiterates, "the issue before the Court is whether the alleged 2007 employment agreement is authentic and enforceable – not the motivation behind Compass Marketing's decision to terminate Boshea's employment." *Id*. at 4. Plaintiff agrees. ECF 119 at 1. Because defendant's reason for terminating plaintiff's employment is not a factual dispute in this litigation, I shall grant ECF 125.

In sum, testimony regarding Boshea's work performance, White's management of Compass, and whether or not White may have had other business interests is not of consequence in determining whether the purported Agreement at issue is genuine, binding, and enforceable. The introduction of this evidence would only serve to confuse the issues.

---

[7] "'Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation.'" *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 457 (4th Cir. 2017) (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28 (4th Cir. 1995)); *see Martineau v. Wier*, 934 F.3d 385, 393 (4th Cir. 2019); *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007). Judicial estoppel, which is an equitable doctrine, is "designed to 'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Martineau*, 934 F.3d at 393 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)); *see Folio v. City of Clarksburg*, 134 F.3d 1211, 1217 (4th Cir. 1998) (observing that judicial estoppel "exists to prevent litigants from playing 'fast and loose' with the courts").

Accordingly, because any allegations or purported evidence concerning negative work performance, claims of company mismanagement, and other business entities owned in whole or in part by White are neither relevant nor probative, they will be excluded from evidence at trial.

## IV. Conclusion

For the reasons stated above, I shall grant ECF 119 and ECF 125.  However, I shall deny ECF 124.  And, I shall grant ECF 122 in part, and deny it in part.  In particular, defendant is barred from presenting any argument at trial contesting the applicability of the MWPCL to this case.  However, defendant may elicit factual testimony as to plaintiff's place of performance.

An Order follows, consistent with this Memorandum Opinion.


Date: March 31, 2022                                           /s/
                                                        Ellen L. Hollander
                                                        United States District Judge