IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| DAVID A. BOSHEA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.  1:21-CV-00309-ELH |
| ) | |
| COMPASS MARKETING, INC., ) | |
| ) | |
| Defendant, ) | |
| ) | |
| And ) | |
| ) | |
| COMPASS MARKETING, INC., ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JOHN DOE(S), ) | |
| ) | |
| Third-Party Defendants. ) | |

The sworn statement of JOHN WHITE, taken for the purposes of discovery, commencing at 10:17 a.m. Central Standard Time on the 18th day of May 2022, before Jason Fallen, of Thompson Court Reporters, located at 1017 W. Washington Blvd., Unit 2F, Chicago, Illinois, 60607, appearing via Zoom videoconference meeting. The deposition concluded at 5:41 p.m. Central Standard Time.

**John White Transcript References to General Counsel or Lawrence Scott**

**P. 112 Line 2 to p. 114 Line 13**

**Concerning John White's April 1, 2007 Email.**

MR. JORDAN:· Sure.· Here, read the whole thing.

BY MR. JORDAN:

· · Q.· ·We need to respect that we are friends and

that working together could possibly hurt our relationship. (Has not happened before, but I was always working for you!!!!)· I just wanted to find expectations up front, so we limit the chances of getting on to different tracks.· But I want us both to agree how we can spit if we need to so we can be certain to save our -- misspelling of "friendship".

· · Let's you and I plan on spending some time together. Dan may be coming out with me on Sunday (just for the night.)· If you want to meet and discuss anything with him, I can handle it. **And we now have a fulltime general counsel** so we can write it all up to protect you and clarify everything.· I'll be real careful to both protect our friendship and your family.

· · Again, you may want to start parttime until you feel secure on the revenue side.· Let's discuss this weekend.· Can't wait to get started! John.· P.S. I want to see pictures of the vacation.· And then it says: John White, Chairman, CEO, Compass Marketing Inc. with a Compass Marketing URL.· And then under that there's an email.· Just make sure that, you know, we see everything here.

· · It says, it's from golf4me36@aol.com dot to jwhite@compassmarketinginc.com sent Sunday, April 1,

2007, 7:02 p.m., subject 4-1 Follow.· JW:· Hope all is great.· I left you a "V" message today.· I feel like I am caught up on things.· Let me know when you're in Chicago, and I will set things up. (ellipsis) We leave Friday for Easter in Michigan, I suppose that is, and back on Sunday night.· I agree on your two points.

· · One, you/you and me need to meet with Arnie, Arnie is in bold, and get him sized up and tied into the (indiscernible) profession.· Two, yes, we need to set me up separately from Jim/Ed.· They really didn't know where to start on their proposal and figured that they would report to me, and I would be worked into what sales they bring in (ellipsis).

· · It was starting just -- I'm sorry.· It was just a starting point in this process.· I was pushing them to keep moving forward and get something to you like you wanted.· I do think they should report to me, but that's up to you.· Let's try to talk tomorrow. I would like to get your thoughts and direction on everything.· You know me well (ellipsis).· I have been doing a lot of thinking and worrying.· I am positive and excited about everything.· Best, DB.· And then it's got a little thing on the bottom where it shows where it's printed, Sunday, April 1, 2007,· America On Line, golf4me36.

· · So going back up to the first portion of the email, and I guess my question for you is, do you recall -- other than we've already discussed what you said about not copying anybody on it. And that I'm not sure.· What was the other thing that you said?· You questioned the authenticity, Mr. White?

· · A.· ·Well, it has misspellings in it.

**p. 120  Lines 11 to p. 121 Lines 9**

BY MR. JORDAN:

· · Q.· ·I have highlighted the portion of the email that talks about the **fulltime general counsel**.· Was that Dan White or somebody else?

· · A.· ·What's the question?

· · Q.· ·**Did Compass have a general counsel in 2007?**

· · A.· ·I believe that we did, but I don't recall that particular date, but I believe we did, yes.

· · Q.· ·And was that Dan White or someone else?

· · A.· ·**Daniel White was an attorney for the company, but we had a general counsel named Lawrence Scott.**

· · Q.· ·**Okay.· Who is Lawrence Scott?**

· · **A.· ·He was the general counsel for Compass Marketing at the time.**

· · Q.· ·Okay.· And would he have drafted up

employment agreements?

·  A.·  ·He may have.

·  Q.·  ·Okay.

·  A.·  ·He should have.

·  Q.·  ·Okay.

·  A.·  ·He was definitely copied on any offers that were made.

**p. 125 Line 12 to p. 127 Line 16**

Q.·  ·The sentence about the undefined bonus based on corporate and personal performance, was that a term of David Boshea's employment when he joined Compass Marketing?

·  A.·  ·I don't recall in 2007, 15 years ago.

·  Q.·  ·Is there anything in this issue you were recalling?

·  A.·  ·Yes, the emails that I don't have access to, some conversations with individuals, and or any notes that David or myself would have had from that time period.

·  Q.·  ·But you don't have the emails or the notes, correct?

·  A.·  ·Correct.·  I answered that.

·  Q.·  ·And the people that you would speak with,

who would have been at Compass Marketing in May of 2007 that could help you remember the terms of his employment?

· · A.· ·David Boshea, himself would.

· · Q.· ·Who else, other than David Boshea, would have knowledge? Not somebody who could look at a piece of paper because you're telling me that the paper is unreliable.· Is there anybody else who was employed or otherwise knew about the terms of David Boshea's employment, other than you and David Boshea, that you can identify?

· · A.· ·Yes, it would be **Lawrence Scott**, the general counsel of the company.

· · ·Q.· ·Okay.· And **Lawrence Scott** would know that terms of David Boshea's employment?

· · A.· ·He likely drafted the terms, and I would have been copied on any emails regarding the offer itself.

· · Q.· ·Okay.· When is the last time you spoke with **Mr. Scott?**

· · A.· ·It's been a long time, five years, I think. Maybe longer.

Q.· ·Okay.· Was he the **general counsel** until five years ago at Compass?

· · A.· ·No.

· · Q.· ·Okay.

· · A.· ·Daniel White was.

· · Q.· ·Okay.· Daniel White was what?

· · A.· ·He was the **general counsel** at Compass.

· · Q.· ·When?

· · A.· ·Until he was terminated.

· · Q.· ·Okay.

· · A.· ·November, I believe it was November 2018.

· · Q.· ·Okay.· So what period of time -- just trying

to understand your answer, here, was -- when, if ever,

was **Lawrence Scott, the general counsel of Compass**?

· · A.· ·Well, he was the **general counsel** during this

period in 2007, and for a short duration afterwards.

---

**P. 128 Lines 1-10**

Q.· ·Okay.· And other than the emails and notes

that you don't have, is there anybody who was working

at Compass at the time who would know those terms?

· · A.· ·Ye.

· · Q.· ·And that would be **Lawrence Scott**?

· · A.· ·And David Boshea.

· · Q.· ·Okay.· And other than **Lawrence Scott** and

David Boshea, was there anyone else you can identify

who would know the terms?

A.· ·I can't.

7

· · Q.· ·Okay.· And it says:· You will be granted two weeks' vacation in 2007, and three weeks in 2008. Were those the agreed terms of David Boshea's compensation when he joined Compass?

· · A.· ·Again, I don't recall from 2007, 15 years ago.

**P. 129 Lines 5-9**

Q.· ·Okay.· And other than looking at the emails and notes that you don't have, and talking with **Lawrence Scott** or David Boshea, there's nothing there to refresh your recollection; is that correct?

· · A.· ·I can't think of anything else right now.

**P. 130 Line 16 to p. 131 Line 19**

**Concerning correspondence John White sent David Boshea**

Q.· ·Okay.· Okay.· It says:· Upon acceptance of this letter of intent, I will send you full employment agreement for your consideration.· Call me with any questions.· Best regards, and then it says, John White.· Now, do you remember sending this letter to David Boshea on or about May 16, 2007?

· · A.· ·I did not send this letter.

· · Q.· ·How do you know you did not send this letter?

A.· ·Because it's not authentic.

· · Q.· ·And why do you say that?

· · A.· ·It doesn't have my signature on it.

· · Q.· ·Okay.· If it doesn't have your -- what is the significance of the fact that it doesn't have his signature on it have to do with its authenticity?

· · A.· ·It's only one of the things.

· · Q.· ·I'm sorry.

· · A.· ·It's only one of the reasons I am certain it's not authentic.

· · Q.· ·What is the other reason you are certain it's not authentic?

· · A.· ·It does not copy the **general counsel**, who would have drafted the letter, **Lawrence Scott**.· And the date, as you can see, is not accurate, clear. It's not in final form.

· · Q.· ·Okay.

· · A.· ·And it includes terms that we would not have agreed to.

---

**P. 147 Lines 8-15**

How do you know you did not do that?

· · A.· ·So first off, it's not signed.· Second, the address is not copied to the **general counsel, Lawrence Scott**, who would have been copied on this.

9

· · Q.· ·Okay.

· · A.· ·And it's not a copied to Daniel White's work address, I'm assuming, if he produced this.

---

**P. 151 Line 20 to p. 152 Line 4**

Q.· ·Okay.· At the time Compass hired David Boshea, who was involved in the decision to hire him?

· · A.· ·I already answered.· I don't recall 15 years ago, in 2007.· I had the final deciding factor on hiring employees.

Q.· ·Okay.

· · A.· ·The email also was not copied to **Lawrence Scott, the general counsel**, who would have been copied on an offer like this.

---