**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | | |
|---|---|---|
| DAVID J. BOSHEA | * | |
| *Plaintiff,* | * | |
| | | Case No. 1:21-CV-00309-ELH |
| v. | * | |
| COMPASS MARKETING, INC. | * | |
| *Defendant.* | * | |

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

**DEFENDANT COMPASS MARKETING, INC.'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW, OR, IN THE ALTERNATIVE,
<u>MOTION FOR A NEW TRIAL</u>**

Defendant Compass Marketing, Inc. ("Compass Marketing" or the "Company"), by and through its undersigned counsel and pursuant to Rules 50(b) and 59(a) of the Federal Rules of Civil Procedure, hereby files this Renewed Motion for Judgment as a Matter of Law, or, in the Alternative, Motion for a New Trial.

**<u>INTRODUCTION</u>**

On February 5, 2021, Plaintiff David J. Boshea ("Boshea") filed a two-count Complaint against Compass Marketing alleging breach of contract (Count I) and violation of the Maryland Wage Payment and Collection Law ("MWPCL") (Count II). *See* ECF 1 (Complaint). Boshea's Complaint was filed "to recover unpaid sums owing to him under an agreement titled 'Compass Marketing, Inc. Agreement Relating to Employment and Post-Employment Compensation.'" *See* ECF 1 at ¶ 1. Attached as Exhibit A to the Complaint was the purported written contract entered into between Boshea and Compass Marketing titled "Compass Marketing, Inc. Agreement Relating to Employment and Post-Employment Compensation" ("Agreement") that formed the

entire basis of Boshea's claims against Compass Marketing. Nowhere in the Complaint was there any reference to any oral contract. In fact, prior to trial, Boshea amended his Complaint not once, but twice, and his factual claims remained the same without reference to any alleged oral contract while only referencing an alleged *written* contract entered into in 2007. *See* ECF 27 at ¶ 10 (Amended Complaint) and ECF 48 at ¶ 11 (Second Amended Complaint) (alleging, "[i]n May 2007, Boshea and Defendant signed the Agreement").

Compass Marketing has always denied that it entered into the alleged Agreement and that the alleged signature of John White, the Company's CEO at the time, was forged. *See* ECF 125-2 (Defendant Compass Marketing, Inc's Answers to Plaintiff David J. Boshea's First Set of Interrogatories) at 8; *see also* ECF 14 (Defendant Compass Marketing, Inc.'s Answer to Plaintiffs' Complaint for Breach of Contract) at p. 7 (Sixth Affirmative Defense); ECF 53 (Defendant Compass Marketing, Inc.'s Answer to Plaintiff's Second Amended Complaint) at p. 8 (Fifth Affirmative Defense).

The parties proceeded to a jury trial in this case on both of Boshea's claims (breach of contract and violation of the MWPCL) that occurred from February 20, 2024 to February 27, 2024. During the trial, Boshea testified that the parties entered into an alleged contract. John White, Compass Marketing's Chief Executive Officer, rebutted Boshea's testimony to demonstrate that any contract Boshea alleged to exist merely reflected contract negotiations that took place during the months before Compass Marketing hired Boshea and, therefore, there was no actual contract with definite terms. To this end, John White began testifying about the negotiations between Compass Marketing and Boshea. To further explain those negotiations, Compass Marketing attempted to introduce an exhibit into evidence that Boshea had previously included on his exhibit list, which was identified by Boshea as "Exhibit 3 David Boshea April 2007 Memo to John

White[,]" but Boshea withdrew this exhibit from his exhibit list the second day of trial after he completed his direct examination.  The Court questioned the relevance of this exhibit and did not allow Compass Marketing to introduce it into evidence, even though Compass Marketing had added it to its amended exhibit list before trial.[1]  Although John White was able to testify about certain aspects of the pre-hiring negotiations, without the admission of this exhibit, Compass Marketing was unable to fully demonstrate to the jury the significance of this document, including its details related to the alleged severance and the nature of the pre-hiring negotiations between Boshea and Compass Marketing.

After the close of evidence, but before the case was submitted to the jury, Compass Marketing moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure specifically based on the legal insufficiency of Boshea's new oral contract claim, noting that it was not a matter that was alleged in the Complaint (or Amended Complaints).  While Compass Marketing was in the middle of making the argument that Boshea had never alleged an oral contract existed between the parties, Boshea moved to amend his Complaint pursuant to Rule 15(b) of the Federal Rules of Civil Procedure to include the new claim, which the Court granted. The Court then denied Compass Marketing's Rule 50(a) motion because it allowed Boshea to amend his Complaint to include a claim for breach of an alleged oral contract.

During the February 20-27 jury trial, however, Boshea failed to meet his burden to prove by a preponderance of the evidence that an oral contract existed, the terms of the alleged oral contract, and that he entered into this alleged oral contract with Compass Marketing regarding his employment with the Company.  Nevertheless, the jury returned a verdict for Boshea on his breach

---

[1] Compass Marketing included this proposed exhibit on an amended exhibit list after it deposed Boshea on January 29, 2024 that was circulated to Boshea and the Courtroom Deputy before the trial, but it was not filed through the ECF system.  *See* Exhibit 1 (Email from S. Hayden dated February 16, 2024, with attached amended exhibit list).

of oral contract claim (even though the jury as a practical matter found that there was no written contract by returning a verdict in Compass Marketing's favor with respect to Boshea's alleged breach of written contract claim).  Because the jury's verdict on Boshea's breach of oral contract claim can only be sustained by a finding that an oral contract with clear and definitive terms existed between the parties – for which there is no legally sufficient evidentiary basis – the new claim for breach of an alleged oral contract should be resolved against Boshea and judgment should be entered as a matter of law against Boshea pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.  Alternatively, the Court should order a new trial in this case under Rule 59(a) on whether an oral contract between the parties existed, as Compass Marketing has been materially prejudiced by the last-minute addition of the alleged breach of oral contract claim.  Had Boshea asserted a breach of contract claim based on an alleged oral contract theory, Compass Marketing would have elicited different testimony from Boshea and John White and potentially called additional witnesses (and asked additional questions of Boshea at his deposition).

Also, Boshea testified at trial that he primarily worked for Compass Marketing from his home office in Naperville, Illinois.  The jury, nevertheless, found (albeit implicitly) that Boshea was employed within the State of Maryland and, therefore, the MWPCL applies to Boshea's claims.  In turn, the jury found that Compass Marketing violated the MWPCL.  Boshea, however, failed to prove by a preponderance of the evidence that he was "employed in" the State of Maryland such that the MWPCL applies in this case and that he is entitled to the benefit of the MWPCL.  Because application of the MWCPL would violate a well-established legal doctrine that precludes the extraterritorial reach of statutes in the absence of an express intent by the legislature, this claim also should be resolved against Boshea and judgment should be entered as a matter of

law against Boshea and in favor of Compass Marketing pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.

Lastly, Compass Marketing was prejudiced by various matters involving the testimony of Boshea's expert witness, Donna Eisenberg. As an initial matter, even though Boshea knowingly failed to produce a sur-rebuttal report prepared by Ms. Eisenberg, Ms. Eisenberg was permitted to testify at length about her findings in the sur-rebuttal report before Compass Marketing even realized such a report existed and that it formed the basis of a substantial portion of Ms. Eisenberg's testimony. Additionally, Ms. Eisenberg testified she did not have a sufficient number of samples of John White's signature and was not given the additional samples she claimed to have requested, implying that Compass Marketing somehow had something to hide. Further, in light of the low quality questioned signature (Q1) Ms. Eisenberg reviewed, the jury posed a question as to who gave Ms. Eisenberg the initial Q1 sample, as well as the other samples. Boshea did not acknowledge that he had given the lower quality Q1 to his own expert while allowing an inference that Compass Marketing was somehow responsible for providing Ms. Eisenberg with that sample as well as the known signatures. Compass Marketing was prejudiced by these events and the jury's verdict finding the existence of an oral contract was influenced by evidence that was false, which warrants the granting of a new trial.

## STANDARDS OF REVIEW

### I.  RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(b)

"Under the Federal Rules of Civil Procedure 50(a), a motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." *Dagher v. Wash. Metro. Area Transit Auth.*, No. CBD-14-3710, 2017 U.S. Dist. LEXIS 118513, at *3 (D. Md. July 28, 2017). "If the Court does not grant a motion made under Rule 50(a), 'the [c]ourt is considered to

have submitted the action to the jury subject to the [c]ourt's later deciding the legal questions raised by the motion,' and the moving party may file a renewed motion for judgment as a matter of law no later than 28 days after the entry of judgment." *Id.* (quoting FED. R. CIV. P. 50(b)). "A renewed motion for judgment as a matter of law under Rule 50(b) 'assesses whether the claim should succeed or fail because the evidence developed at trial was insufficient as a matter of law to sustain the claim.'" *Sandoval v. Danilyants*, No. PJM 17-cv-1599, 2022 U.S. Dist. LEXIS 84229, at *7 (D. Md. May 10, 2022) (quoting *Belk, Inc. v. Meyer Corp.*, U.S., 679 F.3d 146, 155 (4th Cir. 2012), *as amended* (May 9, 2012)).

"The standard by which judgment as a matter of law is deemed proper mirrors the standard required for a legitimate grant of summary judgment." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "This standard is met when the moving party shows that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(a). No genuine issue as to any material fact is found when 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the [opposing] party on that issue.'" *Id.* (citing FED. R. CIV. P. 50(a)(1). While the Court must view the facts presented at trial in the light most favorable to the nonmoving party, "'if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof,' judgment as a matter of law is properly granted." *Thompson v. City of Charlotte*, 827 F. App'x 277, 278 (4th Cir. 2020) (quoting *Wheatley v. Wicomico Cnty.*, 390 F.3d 328, 332 (4th Cir. 2004)). And, "'the court may not make credibility determinations or weigh the evidence.'" *Younger v. Green*, Civil Action No. RDB-16-3269, 2021 U.S. Dist. LEXIS 29483, at *10 (D. Md. Feb. 17, 2021) (quoting *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150-51 (2000)).

## II.     MOTION FOR NEW TRIAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(a)

Federal Rule of Civil Procedure 59(a)(1)(A) permits the Court, upon motion, to "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A).  "A new trial is warranted 'only if the verdict (1) is against the clear weight of the evidence, (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'"  *Alvarez v. Asresahegn Getachew*, Civil Action No. 1:17-cv-00141-PX, 2022 U.S. Dist. LEXIS 148117, at *5 (D. Md. Aug. 17, 2022) (quoting *Wallace v. Poulos*, 861 F. Supp. 2d 587, 599 (D. Md. 2012).

## ARGUMENT

## I.     BOSHEA DID NOT INCLUDE A CLAIM FOR BREACH OF ORAL CONTRACT IN HIS COMPLAINT AND HE SHOULD NOT HAVE BEEN PERMITTED TO AMEND HIS COMPLAINT AFTER THE CLOSE OF EVIDENCE

It is undisputed that Boshea's Complaint did not include a claim for breach of an oral contract, at least not until the Court allowed Boshea to amend his Complaint during Compass Marketing's oral motion for judgment as a matter of law.  The timing of this amendment, coupled with the nature of the amendment, substantially prejudiced Compass Marketing and it was an error for the Court to allow the amendment.

Pursuant to Federal Rule of Civil Procedure 15, the Court may give a party leave to amend its pleadings "when justice so requires."  *See* FED. R. CIV. P. 15(a)(2).  Leave to amend a complaint, however, "should be denied [] when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  *Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 446 (4th Cir. 2001); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (concluding leave to amend may be given only in the

absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.").

"'Perhaps the most important factor listed by the [Supreme] Court for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading.'" *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. SAG-16-cv-3431, 2018 U.S. Dist. LEXIS 188642, at *7-8 (D. Md. Nov. 5, 2018) (quoting Charles Alan Wright & Arthur R. Miller, 6 *Federal Practice and Procedure* (2004 & 2015 Supp.), § 1487 at 701).  As the United States Court of Appeals for the Fourth Circuit explained in *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 439 (4th Cir. 2011), "[w]hether an amendment is prejudicial will often be determined by the nature of the amendment and its timing . . . .  [T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant.'" (quoting *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc)) (alteration in *Laber*).  "Prejudice can be found 'where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party [and] . . . the amendment is offered shortly before or during trial.'"  *Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. SAG-16-cv-3431, 2018 U.S. Dist. LEXIS 188642, at *8 (D. Md. Nov. 5, 2018) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)) (alteration added).

"To determine whether prejudice will occur, a court must consider the positions of the parties and the effect of amendment on those parties."  *Pridgen v. Appen Butler Hill, Inc.*, No. JKB-18-61, 2019 U.S. Dist. LEXIS 35283, at *4 (D. Md. Mar. 4, 2019) (citing Mary Kay Kane & A. Benjamin Spencer, Charles Alan Wright & Arthur R. Miller, 6 *Federal Practice and Procedure*

§ 1487 (3d ed. 2018)). "'This entails an inquiry into the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted.'" *Id.* "Thus, whether an amendment is prejudicial depends on the timing and nature of the amendment." *Id.*

The timing of Boshea's amendment, which was made during Compass Marketing's second motion for judgment as a matter of law (i.e., *after the close of evidence at trial*), weighs heavily in favor of a finding that allowing such an amendment is prejudicial to Compass Marketing. *Cf. McCall-Scovens v. Blanchard*, Civ. No. ELH-15-3433, 2016 U.S. Dist. LEXIS 148750, 2016 WL 6277668, at *5 (D. Md. Oct. 27, 2016) (holding prejudice would not occur because dispositive motions were not due for three months, trial date was not set, and discovery was ongoing). Compass Marketing always understood the issue in this case was whether there was a written contract between the parties, as evidenced in part by the fact that Compass Marketing did not assert (and did not even know to assert) the statue of frauds as an affirmative defense until after the close of all evidence in this case. *See, e.g.*, *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 401 (4th Cir. 1999) (explaining that, when a party "sets out in [a list of] numbered paragraphs . . . its legal theories for recovery," its omission of a particular legal theory from those numbered paragraphs militates against a finding of trial by consent).[2]

Even the Court expressed surprise when it heard Boshea claim he was seeking relief under a purported oral contract theory. The fact that Boshea filed an untimely motion for summary judgment that addressed a purported breach of oral contract claim is of no consequence (even if it was timely) because it was not a claim in the Complaint (or Amended Complaints) and it is not

---

[2] Compass Marketing repeats, realleges, and incorporates by reference the arguments it made in its motion for judgment at trial regarding the applicability of the statute of frauds.

Compass Marketing's responsibility (and it would not even be proper) to respond to claims that are not properly before the Court and not included in the Complaint.  *See Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) ("At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with FED. R. CIV. P. 15(a).  A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment.") (citation omitted).  And, to the extent that Boshea asserts that Compass Marketing consented to the amendment by not objecting to Boshea's testimony regarding the parties oral discussions, the Fourth Circuit explained in *Feldman v. Pro Football, Inc.*, 419 F. App'x 381 (4th Cir. 2011), that "although 'a party's failure to object to evidence regarding an unpleaded issue may be evidence of implied consent to trial of an issue, it must appear that the party understood the evidence was introduced to prove the unpleaded issue.'" *Id.* at 390 (quoting *Campbell v. Bd. of Trs. of Leland Stanford Junior Univ.*, 817 F.2d 499, 506 (9th Cir. 1987)).  Compass Marketing had no such understanding regarding Boshea's testimony because Compass Marketing understood that Boshea was testifying to the parties' negotiations, not whether there was an oral contract.  Indeed, the original Complaint and each Amended Complaint only referred to an alleged written contract, without any suggestion that Boshea may rely on or plead in the alternative some alleged oral contract.

Further, the nature of the amendment weighs in favor of a finding of prejudice. "[P]rejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party . . . ." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).  Boshea's amendment added new factual allegations, a new count, and an entirely new legal theory.  Compass Marketing prepared for and elicited testimony at trial based on the claims set forth in Boshea's Second Amended Complaint –

which only alleged that Boshea claimed he and Compass Marketing entered into the alleged (written) Agreement, not whether there was an additional oral contract between the parties. Clearly, Boshea's eleventh hour amendment to his Second Amended Complaint prejudiced Compass Marketing's ability to prepare for and defend against Boshea's claims because Boshea's claim for breach of an alleged oral contract was made after the close of evidence.[3]  Had Compass Marketing been aware that what it believed to be negotiations related to Boshea's written contract claim would later form the basis for Boshea's oral contract claim, it would have taken additional discovery and asked Boshea about this alleged oral contract at his deposition (and at trial), and argue differently about the relevance of such negotiations at trial, which it did not get the opportunity to do.  *See, e.g., Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 440 (4th Cir. 2011) (affirming finding of prejudice where plaintiff moved to amend the complaint after discovery, which was at the "eleventh hour," and introduced six new claims that had never before been raised and required additional discovery).

The lack of knowledge that Compass Marketing had to formulate examination questions more specifically directed at an alleged oral contract becomes even more evident when considering there was no testimony whatsoever by Boshea about the accrual of the payment of $540,000 or the payout schedule.  Indeed, the only testimony from Boshea was about an alleged $540,000 payout, which is inconsistent with the terms of the alleged written contract, as the alleged written contract did not automatically call for the payment of $540,000; rather, the alleged payment of $540,000 accrued over a three-year period (which brings any alleged oral agreement outside the statute of

---

[3] Indeed, to require a defendant to contemplate hypothetical alternative theories and proactively defend against claims not included in the operative complaint would impose unrealistic and impractical burdens on defendants, such as Compass Marketing, that are contrary to the principles of justice and fairness and that are not required by the Federal Rules of Civil Procedure.

frauds – *see, e.g.*, *Fenton v. Clinic*, No. 2:21-cv-02790-SHL-tmp, 2023 U.S. Dist. LEXIS 147493 (W.D. Tenn. Aug. 22, 2023), and, thus, the statute of frauds should limit any potential award for breach of the alleged oral contract to only $180,000, which is the only amount that could have potentially been "earned" within one year).   This inconsistency between the alleged written contract and oral contract further illustrates how Compass Marketing was prejudiced with the late amendment, as Compass Marketing could have asked Boshea and John White questions about these alleged terms, but it did not have the opportunity to do so.

Because the Court should not have allowed Boshea to amend his Complaint at such a late juncture – after the close of all evidence at trial – the jury should not have been given the option to enter an award for breach of an oral contract.   In the absence of a claim for breach of an oral contract, the jury's only finding was that there was no breach of an alleged written contract by Compass Marketing and, therefore, judgment should be entered in Compass Marketing's favor without any liability for Compass Marketing, or, in the alternative, a new trial should be ordered.

## II.     BOSHEA FAILED TO MEET HIS BURDEN TO ESTABLISH THE EXISTENCE OF AN ORAL CONTRACT AT TRIAL

### A.     Maryland Law on Contract Formation

"'[A]n essential prerequisite to the creation or formation of a contract' is 'a manifestation of mutual assent.'"  *Advance Telecom Process v. DSFederal, Inc.*, 224 Md. App. 164, 177, 119 A.3d 175 (2015) (quoting *Cochran v. Norkunas*, 398 Md. 1, 14, 919 A.2d 700 (2007)); *see also Mitchell v. AARP Life Ins. Program, N.Y. Life Ins.*, 140 Md. App. 102, 116, 779 A.2d 1061 (2001) ("An essential element with respect to the formation of a contract is 'a manifestation of agreement or mutual assent by the parties to the terms thereof; in other words, to establish a contract the minds of the parties must be in agreement as to its terms.'" (quoting *Safeway Stores v. Altman*, 296 Md. 486, 489, 463 A.2d 829 (1983))).

12

"Manifestation of mutual assent includes two issues: (1) intent to be bound, and (2) definiteness of terms." *Advance Telecom*, 224 Md. App. at 177, 119 A.3d 175 (quoting *Cochran*, 398 Md. at 14, 919 A.2d 700).  "If the parties do not intend to be bound until a final agreement is executed, there is no contract." *Cochran*, 398 Md. at 14, 919 A.2d 700.  Similarly, if the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; the so-called "contract to make a contract" is not a contract at all.  *See* 1 Joseph M. Perillo, *Corbin on Contracts* § 2.8, at 133-34 (rev. ed. 1993).

"In Maryland, the hallmarks of a binding contract are 'an offer by one party and an unconditional acceptance of that precise offer by the other ….'" *Estrin v. Nat. Answers, Inc.*, 103 F. App'x 702, 704 (4th Cir. 2004) (quoting *Lemlich v. Board of Trs.*, 282 Md. 495, 385 A.2d 1185, 1189 (1978); *see also L & L Corp. v. Ammendale Normal Inst.*, 248 Md. 380, 236 A.2d 734, 736 (1968) ("Where there is a conditional acceptance or a counteroffer a contract is not made.").  It is axiomatic that the unconditional acceptance of a precise offer cannot occur if "[s]ignificant terms remain[] to be negotiated." *Estrin*, 103 F. App'x at 705.  In *Estrin*, the Fourth Circuit did not find a contract to be in existence because there was no "agreement as to the essential terms of the deal[.]"  *Id.*  Other Fourth Circuit and Maryland cases have expounded the same principle: significant terms must be settled before a court will deem a contract to exist.  *See ABT Associates, Inc. v. JHPIEGO Corp.*, 9 Fed. Appx. 172, 174 (4th Cir. 2001) ("To establish that a binding contract was made, a plaintiff must adduce evidence . . . of a meeting of the minds as to the essential terms of the contract."); *see also Dolan v. McQuaide*, 215 Md. App. 24, 34, 79 A.3d 394 (Md. App. 2013) (finding that the "insufficient sets of factual allegations" did not amount to an agreement or contract, since "the parties spoke only in general terms about what she would do in exchange for a share in the business . . .").  Further, "[i]t is self-evident that

> [a] party can hardly be bound to reach the intended goal of negotiations
> simply by the act of negotiating. Indeed, continual redrafting of a document
> indicates the importance of the terms being negotiated and the parties'
> intention not to be bound until final execution of the written agreement.
> Parties engage in negotiations not because they intend that the process itself
> will constitute the agreement, but because they desire and intend an eventual
> writing that will set forth the final terms satisfactory to both sides in every
> respect.

*Estrin*, 103 F. App'x at 704 (4th Cir. 2004).

## B.  <u>Boshea Failed to Establish the Existence and Breach of an Oral Contract</u>

To succeed on a breach of contract claim, a plaintiff must prove, by a preponderance of the evidence, "a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant." *RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 655, 994 A.2d 430 (2010).  Before even proving that a contract has been breached, however, the plaintiff must first establish the existence of a contract and the definite terms of any contract, which Boshea's testimony failed to do.  Boshea had the burden of proving by a preponderance of the evidence that an oral contract between him and Compass Marketing existed, and that he and Compass Marketing orally agreed upon the specific terms of that alleged oral contract.

Under Maryland law, a contract is an agreement consisting of five elements: "(1) there must be two or more parties; (2) the parties must have legal capacity to make the agreement; (3) the agreement must be mutual; (4) the agreement must be stated with reasonable certainty; and (5) there must be consideration for the agreement." *See* MPJI-Cv 9:2.  And, as relevant to this case, "[a]lthough it is often left unstated as an obvious element, an oral contract requires an oral communication." *Dolan v. McQuaide*, 215 Md. App. 24, 33, 79 A.3d 394, 400 (2013) (citing *Osborn v. Boatmen's Nat. Bank of St. Louis*, 811 S.W.2d 431, 434 (Mo. Ct. App. 1991)).  As to a contract being stated with reasonable certainty, the Appellate Court of Maryland has stated: "[i]f we are to bind the parties in contract, the express terms must be as definite as a reasonable

conversation between parties who fully intend to carry out a major undertaking[.]"  *Dolan v. McQuaide*, 215 Md. App. 24, 34, 79 A.3d 394, 400 (2013); *see also Meyers v. Josselyn*, 212 Md. 266, 271, 129 A.2d 158 (1957) ("There has never been any doubt that when an alleged agreement is so vague and indefinite that the court finds it impossible to determine substantially the full intention of the parties, it must be held unenforceable, because the court cannot make an agreement for the parties.").

"A claim for breach of contract cannot stand if its essential terms are vague or uncertain[.]" *Dolan v. McQuaide*, 215 Md. App. 24, 31, 79 A.3d 394, 399 (2013).  Further, as to the defining the terms the Appellate Court of Maryland has stated:

> Of course, no action will lie upon a contract, whether written or verbal, where such a contract is vague or uncertain in its essential terms.  The parties must express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean.  If the agreement be so vague and indefinite that it is not possible to collect from it the intention of the parties, it is void because neither the court nor jury could make a contract for the parties.  Such a contract cannot be enforced in equity nor sued upon in law.  For a contract to be legally enforceable, its language must not only be sufficiently definite to clearly inform the parties to it of what they may be called upon by its terms to do, but also must be sufficiently clear and definite in order that the courts, which may be required to enforce it, may be able to know the purpose and intention of the parties.

*Mogavero v. Silverstein*, 142 Md. App. 259, 272, 790 A.2d 43, 50 (2002) (quoting *Robinson v. Gardiner*, 196 Md. 213, 217, 76 A.2d 354, 356 (1950)).  At trial Boshea did not testify as to the definite terms of any oral contract that he entered into with Compass Marketing.  His testimony was based solely on the alleged written Agreement, of which the jury found there was no breach (and, thus, presumably, there was no contract to breach).  The absence of a written contract then places the onus on Boshea to testify *in detail about all the terms* (or at least all the material terms) of the alleged oral agreement – something he did not do.

15

Indeed, Boshea's testimony did not establish that there was an oral contract with precise terms; it only established that the parties were negotiating the terms of Boshea's employment prior to Compass Marketing hiring him.  Although Boshea testified about the alleged severance amount – not how the alleged severance was to be paid or accrued or whether there was even an agreement between the parties until there was a signed written agreement (something that would presumably be highly relevant in light of the fact that Boshea substantially relied on the alleged written agreement he offered into evidence) – he did not testify about other terms of the alleged oral employment agreement.   In fact, Boshea acknowledged there was no oral agreement with definitive terms when he testified that he went to Annapolis with an alleged draft of the written Agreement to continue negotiating with John White,[4] and he further acknowledged that each of the additional "asks" he allegedly proposed to John White were rejected.   In other words, there was no offer and acceptance reflective of any oral agreement and, at most, there were ongoing negotiations.  *See Estrin v. Nat. Answers, Inc.*, 103 F. App'x 702, 704 (4th Cir. 2004); *see also L & L Corp. v. Ammendale Normal Inst.*, 248 Md. 380, 236 A.2d 734, 736 (1968); *see also ABT Associates, Inc. v. JHPIEGO Corp.*, 9 Fed. Appx. 172, 174 (4th Cir. 2001).  This alone is fatal to Boshea's claim and calls for the jury's verdict to be vacated and judgment entered in Compass Marketing's favor on the breach of oral contract claim.

The alleged written Agreement upon which Boshea relied in bringing this lawsuit also undermines Boshea's claim for breach of oral contract.  In this regard, Boshea's claim that the written Agreement even existed begs the question, what was the purpose in having the written Agreement.  *See Cochran v. Norkunas*, 398 Md. 1, 18-19, 919 A.2d 700, 711 (2007) (stating,

---

[4] Boshea may have used the phrase "more asks" about what he planned to do and did do when he came to Annapolis to discuss the alleged agreement with John White.

parties may "enter into a binding informal or oral agreement to execute a written contract; and, if the parties contemplate that an agreement between them shall be reduced to writing before it shall become binding and complete, there is no contract until the writing is signed") (quoting *Eastover Stores, Inc. v. Minnix*, 219 Md. 658, 665, 150 A.2d 884, 888 (1959)); *see also Cochran*, 398 Md. at 18-19, 919 A.2d at 711 (explaining that when parties "contemplate[] that their agreement w[ill] be reduced to a final writing before it w[ill] become binding[, they are] at liberty to withdraw from negotiations prior to when the final writing is signed") (citing *Eastover Stores*, 219 Md. at 665, 150 A.2d at 888).  To this end, according to the written Agreement Boshea offered into evidence and claimed to have relied on, Boshea believed the written Agreement itself "shall supersede and substitute for any previous employment, post-employment or severance agreement between Employee and COMPASS."  *See* ECF 1-3 (also Boshea's Trial Exhibit 8) at Article 8(B).  In other words, according to Boshea, the parties intended to be bound by a written agreement, not any alleged previous oral agreement(s).  Thus, jury's verdict should be vacated for this reason as well and judgment should be entered in favor of Compass Marketing on the oral breach of contract claim, or, in the alternative, a new trial should be ordered on Boshea's breach of oral contract claim.[5]

Moreover, the jury's award to Boshea of $193,000.00 of compensatory damages for breach of an alleged oral contract has no evidentiary basis whatsoever.  Neither Boshea nor any other witness testified to the existence of an oral contract that would entitle Boshea to $193,000.00 in compensatory damages.  No terms of this alleged oral contract were testified to that would allow

---

[5] If judgment is not entered in Compass Marketing's favor, the appropriateness of a new trial becomes even more compelling when considering that Compass Marketing was not able to address at trial the intent/purpose of the alleged written agreement vis-à-vis the alleged oral agreement because the only issue in Boshea's Second Amended Complaint was the validity of the alleged written Agreement.

a reasonable jury to conclude that Boshea is entitled to damages totaling $193,000.00 for breach of an oral contract.  The $193,000 award also is inconsistent with the jury's finding that Boshea is somehow entitled to $540,000 in severance and that there was no bona fide dispute for Compass Marketing's alleged failure to pay Boshea earned wages,[6] which alone provides a basis to award judgment as a matter of law to Compass Marketing or at least order a new trial.

### C.   Additional Evidence Compass Marketing Was Precluded From Introducing Also Would Undercut Boshea's Belated Claim For Breach of Oral Contract

Also problematic is the fact that Compass Marketing was precluded from fully examining Boshea about the negotiations of the alleged agreement, as the Court ruled that Compass Marketing could only examine Boshea about negotiations related to the alleged severance provision, not other items that were part of the negotiations or other alleged contract terms.  This limitation and the prejudice to Compass Marketing is evidenced even further by the Court's ruling that Compass Marketing was not allowed to use the exhibit that Boshea withdrew from his exhibit list only after he testified (and which was on Compass Marketing's amended exhibit list that was shared with Boshea and the Court prior to trial).[7]  Indeed, the utility of Compass Marketing's examination of Boshea was limited in part because the jury was precluded from fully appreciating the evolving nature of the negotiations, including, but not limited to, Boshea's diminishing demands reflected in Boshea's "Exhibit 3 David Boshea April 2007 Memo to John White."  By excluding this memo, Compass Marketing was unable to fully illustrate to the jury or have Boshea explain his request for six months of salary as severance (as specifically reflected in the memo), which stands in

---

[6] It is illogical to conclude that Compass Marketing allegedly withheld wages without a bona fide dispute when the jury found the amount of wages allegedly withheld did not come from any evidence regarding any alleged severance offered at trial.

[7] The exhibit identified by Boshea was called "Exhibit 3 David Boshea April 2007 Memo to John White[.]"  *See* Exhibit 5.

contrast to the three years of salary (as severance) he ultimately testified about.  Moreover, the excluded memo reflected numerous other terms and conditions that were part of the discussions that Compass Marketing was unable to explore.  While it is true that "[a] trial judge has broad discretion to admit or exclude evidence that is outside the scope of the pretrial order," the court "also retains the right to admit evidence even though it was not included in the pretrial order." *Callahan v. Pac. Cycle, Inc.*, 756 F. App'x 216, 220 (4th Cir. 2018).

"Courts consider five factors when deciding whether to admit or exclude evidence supporting issues that a party did not identify in the pretrial order.  Those include (1) surprise to the party opposing the evidence; (2) feasibility of curing that surprise; (3) extent to which allowing the evidence would disrupt the trial; (4) importance of the issue; and (5) the explanation for the failure to identify the issue before trial." *Id.* (citing *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 369 (4th Cir. 1986), *abrogated on other grounds by Pinter v. Dahl*, 486 U.S. 622, 649 n.25, 650 (1988)).

Here, all five factors weighed in favor of permitting Compass Marketing to present the exhibit that Boshea originally included in his exhibit list and then withdrew after Boshea's testimony (and which was identified on Compass Marketing's amended exhibit list circulated prior to trial).  There was no surprise to Boshea because he clearly planned to introduce (or at least contemplated introducing) the document into evidence at trial.  As a result, there was no surprise to Boshea and there was no need to cure any surprise.  Additionally, allowing the exhibit to be presented by Compass Marketing would not have disrupted the trial for the exact same reason – it was Boshea's exhibit (as reflected on his exhibit list) and he planned to use it at trial.  The document itself is significant to Compass Marketing (which it came to appreciate when it deposed Boshea on January 29, 2024) because, as John White testified, that document reminded him of the

parties' negotiations prior to Compass Marketing making the decision to hire Boshea as an employee, and the document itself reflects negotiations about the alleged severance that never came to fruition.  Indeed, although the Court in one or more bench conferences commented on the uncertainty and insignificance of the document, Boshea testified at his deposition on January 29, 2024 that he handwrote notes on this document reflecting the parties' negotiations, including a note indicating a potential severance amounting only to one year or six months of salary.  *See* Exhibit 6 (Excerpt of D. Boshea Deposition Transcript) at 31:1-35:22.  Moreover, the edits on the face of the document reflect the ongoing discussions between the parties and that no agreement should or could have been considered final until a written agreement was executed by the parties, if the parties ever reached an agreement, which they did not.  Compass Marketing, however, was precluded from questioning Boshea at trial about this document and its significance because the Court would not allow the document to be introduced into evidence.

This becomes even more important when considering Boshea added an oral contract claim and John White specifically testified that the document went to the parties' negotiations and, ultimately, why they never entered into the Agreement.[8]  Further, Compass Marketing did not "identify" the issue before trial because it did not receive this exhibit until October 2023, long after discovery closed.[9]  Further, Compass Marketing did not realize the significance of the document

---

[8] The Court's ruling that Compass Marketing could not introduce the excluded exhibit, which shows the nature of the negotiations – including specific negotiations related to the alleged severance at the heart of this dispute, such as Boshea's modification of his request for severance to only six months of his salary – is inconsistent with its ruling that Boshea could amend his Complaint after the close of all evidence at trial.  To find that Compass Marketing was on notice of Boshea's alleged breach of oral contract claim and would not be prejudiced is inconsistent with the notion that Boshea was not on notice of his own exhibit and would not be prejudiced.

[9] As noted at trial during a bench conference, when this issue first arose, the discussion at the October pre-trial conference was not on the record.  But, during the bench conference, Compass Marketing noted that it was surprised by the exhibit because, although it was a memo from Boshea to John White related to the alleged severance negotiations, it was not produced by Boshea during discovery and Compass Marketing had not received it until the time of the pre-trial conference.  The Court nevertheless advised Compass Marketing that it had now received notice.

until Boshea's deposition on January 29, 2024 when he testified about the content of the memo. Compass Marketing did not amend the Joint Pretrial Order because Boshea included the exhibit in his exhibit list, but Compass Marketing did add this exhibit to its amended exhibit list and sent it to Boshea and the Courtroom Deputy prior to trial.  *See* Exhibit 1.  Under these circumstances, it was error to exclude this exhibit from evidence and Compass Marketing was prejudiced as a result.

Because the jury's verdict on Boshea's breach of oral contract claim can be sustained only by finding with reasonable certainty the terms of any alleged oral contact – for which there is no legally sufficient evidentiary basis – the issue of whether an oral contract existed should be resolved against Boshea.  As such, because Boseha did not meet his burden, judgment should be entered as a matter of law against Boshea and in favor of Compass Marketing pursuant to Federal Rule of Civil Procedure 50(b).  Alternatively, the Court should grant a new trial on the issue of whether there was a breach of an oral contract because the jury's verdict goes against the clear weight of the evidence and Compass Marketing was prejudiced in its ability to defend against the alleged breach of oral contract claim in this case.

## III.   BOSHEA FAILED TO MEET HIS BURDEN TO ESTABLISH THE APPLICABILITY OF THE MWPCL

Compass Marketing previously filed a Motion for Partial Summary Judgment (ECF 93) and Memorandum in Support (ECF 93-1), in which it argued that due to Boshea working primarily from his home in Illinois, his attenuated connection to the State of Maryland was insufficient to establish Boshea as having been employed "in the State" of Maryland, which necessarily precludes application of the MWCPL.[10]   Compass Marketing incorporates and references the Motion for Patrial Summary Judgment and Memorandum as if fully set forth herein.  This Motion for Partial

---

[10] Compass Marketing renewed this argument at trial during its motion for judgment as a matter of law.

Summary Judgment was denied and the Court determined that the MWPCL did apply to Boshea's claims.  Boshea's testimony at trial was that he was in Maryland approximately 100-150 days over the course of his 13 years of employment with Compass Marketing.[11]  For the reasons, previously stated, this is not enough for one to avail himself to the protections of the MWPCL.  *See* ECF 93-1.

Because the jury's verdict on Boshea's MWPCL claim can only be sustained by a finding in favor of the applicability of the MWPCL – for which there is no legally sufficient evidentiary basis – the issue of whether the MWPCL applies should be resolved against Boshea and judgment should be entered as a matter of law against Boshea and in favor of Compass Marketing pursuant to Federal Rule of Civil Procedure 50(b).

Additionally, the jury's finding that there was no bona fide dispute regarding Compass Marketing's alleged failure to pay Boshea wages in the form of severance is undermined by the jury's finding that there was no breach of a written contract.  It is incongruous to find no bona fide dispute when there is no clear contract with undisputed terms upon which Compass Marketing could rely and the amount of wages (in the form of severance) the jury found to have been withheld from Boshea does not comport with the evidence presented at trial.[12]  As such, at a minimum, judgement should be entered in Compass Marketing's favor on the issue of a bona fide dispute or, in the alternative, a new trial on the alleged oral contract and wage payment claim should be ordered.

---

[11] This is also inconsistent with Boshea's prior sworn affidavit testimony of not being in Maryland more than 50 days during his entire employment with Compass Marketing.

[12] Compass Marketing believes this incongruous outcome is partly, if not entirely, the result of the prejudice it suffered related to Boshea's expert reports and his expert's testimony.  *See* Section IV, *infra*.

**IV.     COMPASS MARKETING WAS PREJUDICED BY THE TESTIMONY OF DONNA EISENBERG AND THE JURY'S EXPERT RELATED QUESTIONS**

On September 13, 2021, Compass Marketing made its initial expert disclosure, via email, to Boshea.  At the time, Compass Marketing designated Curt Baggett, "an expert document examiner," "to provide an opinion as to whether the [Agreement] . . . was signed by John White[.]" On September 27, 2021, Compass Marketing produced Curt Baggett's initial analysis of John White's alleged signature, a document titled "Questioner Document Examiner Letter" ("Baggett Short Report"), which included the documents Mr. Baggett relied on in forming his opinion.

On October 18, 2021, Boshea produced the "Forensic Handwriting Report" prepared by Donna Eisenberg on or about October 11, 2021 ("Eisenberg Report").  On October 19, 2021, Compass Marketing produced the "Forensic Handwriting and Document Examiner Expert Report," which was prepared by Curt Baggett on or about October 18, 2021 ("Baggett Long Report").  On November 1, 2021, Compass Marketing produced to Boshea reports titled, "Rebuttal of the findings of Donna O. Eisenberg in the matter of Compass Marketing, Inc. v. David J. Boshea, Jr.," and "John D. White Signature Examination," which were prepared Jeffrey A. Payne on or about October 31, 2021.[13]  Ms. Eisenberg then prepared a sur-rebuttal report to Mr. Payne's report on or about November 23, 2021, but Boshea never produced this report to Compass Marketing.

It was not until Ms. Eisenberg was testifying at trial, however, that Compass Marketing realized Ms. Eisenberg had prepared a sur-rebuttal report.  To be clear, Boshea never informed Compass Marketing about the existence of the sur-rebuttal report.  Instead, Compass Marketing only came to realize while Ms. Eisenberg was testifying at trial that her testimony was premised on another report.  Had Compass Marketing not noticed Ms. Eisenberg was reading from, or at

---

[13] The Court ultimately ruled that Mr. Payne would serve as Compass Marketing's expert witness instead of Mr. Baggett.  *See* ECF 160 and 161.

least referring to, a document she had placed on or around her lap throughout her testimony,[14] Compass Marketing likely would not have discovered the existence of the sur-rebuttal report or the fact that Ms. Eisenberg had testified at trial about portions of her report that was never produced.

Ms. Eisenberg's testimony from the sur-rebuttal report was no accident, however.  As evidenced by an email exchange between counsel on the eve of and during trial, Boshea planned to use Ms. Eisenberg's sur-rebuttal report in testimony at trial even though Boshea knew Ms. Eisenberg's sur-rebuttal report was not shared with Compass Marketing.  On February 19, 2024 (one day before trial), Boshea's counsel emailed counsel for Compass Marketing the following: "I want to confirm that Donna Eisenberg will be allowed to provide rebuttal testimony.  Please let me know."  That same day, counsel for Compass Marketing replied, "I do not recall receiving a report from her in rebuttal to the report or testimony of Jeffrey Payne.  Was that provided?"  Two days later – after trial had already commenced – counsel for Boshea simply responded to the question with "No."[15]  Despite knowing that Ms. Eisenberg's sur-rebuttal report had not been produced to Compass Marketing, Boshea had Ms. Eisenberg testify at trial about the findings, conclusions, and analyses Ms. Eisenberg included in her sur-rebuttal report.  Ms. Eisenberg's testimony went on for some time before Compass Marketing realized that Ms. Eisenberg was potentially testifying from a supplemental report it did not receive.  Once it was confirmed that Ms. Eisenberg was reading from or being guided by the undisclosed sur-rebuttal report, Compass Marketing objected to its use.

---

[14] Ms. Eisenberg kept the sur-rebuttal report on or around her lap, which was largely not in counsel's view during her testimony.

[15] This email exchange was read into the record during trial by counsel for Compass Marketing during its renewed motion for a mistrial.  A copy is attached hereto as Exhibit 4.

Compass Marketing was prejudiced by Ms. Eisenberg's use of her sur-rebuttal report because she testified about additional analyses that she did not reference in her original report. Had Compass Marketing known about the sur-rebuttal report, it would have sought to depose her, it would have prepared for trial differently, and it would have had the opportunity to elicit different testimony from Ms. Eisenberg.

Moreover, at trial, Ms. Eisenberg testified that she did not have a sufficient number of samples of John White's signature, she asked for more known samples of John White's signature, and she was not given the additional samples she claimed to have requested.  Because Compass Marketing was the party that ultimately did provide the known samples, it was implied to the jury that Compass Marketing withheld additional samples in order to hinder Ms. Eisenberg's analysis. At a prolonged bench conference following Ms. Eisenberg's testimony that she asked for additional known samples, counsel for Boshea told the Court that he asked for more samples, but counsel for Compass Marketing unequivocally denied that counsel for Boshea ever asked for additional known samples.[16]  *See* Exhibit 2 (Excerpt of Testimony of Donna Eisenberg dated February 22, 2024) at 13:18-24:17.[17]  Eventually the jury was told the following: "counsel agree that the defense was asked to provide 20 samples and that's what was provided."  *See* Exhibit 2 at 24:15-17.  This did not cure the prejudice to Compass Marketing, however, because the jury had already heard that Ms. Eisenberg asked for more samples, and only Compass Marketing could provide more samples, so the jury was given the false impression that it was Compass Marketing's fault that Ms. Eisenberg

---

[16] Compass Marketing predicted to the Court the prejudice it would suffer as a result of this false portrayal about the request for samples, as reflected in the exchange during the bench conference.

[17] Compass Marketing has attached excerpts of the trial transcript from Ms. Eisenberg's testimony that the Court ordered Compass Marketing could have as a result of Ms. Eisenberg's testimony from the sur-rebuttal report.

could not perform a more thorough analysis, implying that Compass Marketing had something to hide.

Finally, Compass Marketing was prejudiced by the response to the question posed by the jury relating to the handwriting samples during their deliberations. The jury asked: "Who gave Mrs. Eisenberg the initial Q1 sample and all known samples?" *See* ECF 245-1. The answer provided to the jury was that Compass Marketing gave the samples, implying that Compass Marketing intentionally provided the poor quality questioned signature. This is incorrect, however, and Boshea's counsel knew it, as Boshea's counsel clearly stated earlier during the trial that Boshea gave Ms. Eisenberg the "Q, the questioned document." *See* Exhibit 2 at 22:2-4. Moreover, it became apparent after re-reviewing Ms. Eisenberg's report after trial that the cover page of the Q1 in Ms. Eisenberg's report was taken from the first page of the original copy of the Agreement that only Boshea had in his possession and control (and used to file the original Complaint). *See* Exhibit 3 (Excerpt of Eisenberg Report) at 3. This cover page clearly was not filed with the Court because there was no date stamp on the top of the Agreement. *See id.* The actual signature page, however, the Q1 (the question or forged document), was taken from Curt Baggett's report, and includes the Court's date-stamped markings on it. *See* Exhibit 3 at 4.[18] In other words, instead of providing Ms. Eisenberg with his original copy of the alleged Agreement (which would have been the best quality sample), Boshea provided her with a lower quality sample. Thus, Ms. Eisenberg testified at trial about a sample that was of lesser quality because of Boshea's own doing, not Compass Marketing's as the jury was led to believe.

---

[18] Pursuant to Local Rule 105.5, in order to "facilitate the Court's review of exhibits" Compass Marketing has highlighted and added red arrows to Exhibit 3 to illustrate the "mixing and matching" of cover pages and signature pages.

The jury clearly cared about why Ms. Eisenberg had poor quality documents, and Boshea let the jury hear that Compass Marketing gave all of the known signatures to the experts, but Boshea did not state that he had given the lower quality questioned document to his own expert, rather than the better quality one he had available to him.  This was prejudicial to Compass Marketing, leading the jury to make inferences against Compass Marketing – just as Compass Marketing had predicted when Boshea first falsely attributed the lack of samples to Compass Marketing – that were not warranted or supported by the actual facts.  As such, these false inferences prejudiced Compass Marketing and warrant a new trial being ordered.

## **CONCLUSION**

Based on Boshea's untimely amendment to his Second Amended Complaint, Boshea's failure to establish a legally sufficient evidentiary basis for a jury finding in his favor on the issue of whether an oral contract existed, the prejudice suffered by Compass Marketing in being precluded from introducing into evidence Boshea's Exhibit 3 (the "David Boshea April 2007 Memo to John White"), Boshea's failure to establish that the MWPCL applies, and the inaccurate information presented to the jury regarding Ms. Eisenberg's analyses, including the questioned signature, Compass Marketing respectfully requests that the Court enter judgment as a matter of law in its favor and against Boshea.  Alternatively, Compass Marketing requests that the Court order a new trial on the issue of whether an oral contract existed and such other relief as the Court may deem just and appropriate.

Dated:  April 5, 2024                                    Respectfully submitted,

                                                        */s/Stephen B. Stern*
                                                        Stephen B. Stern, Bar No.: 25335
                                                        Shannon M. Hayden, Bar No.: 30380
                                                        KAGAN STERN MARINELLO & BEARD, LLC
                                                        238 West Street
                                                        Annapolis, Maryland 21401
                                                        (Phone): (410) 216-7900
                                                        (Fax):  (410) 705-0836
                                                        Email:  stern@kaganstern.com
                                                        Email:  hayden@kaganstern.com

                                                        *Counsel for Defendant*
                                                        *Compass Marketing, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of April, 2024, the foregoing Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for New Trial, was served via the CM/ECF system on the following counsel of record:

Thomas J. Gagliardo
Gilbert Employment Law, PC
1100 Wayne Avenue, Suite 900
Silver Spring, Maryland 20910
Email:  tgagliardo@gelawyer.com

Gregory J. Jordan
Mark Zito
Jordan & Zito, LLC
350 N. LaSalle Drive, Suite 1100
Chicago, Illinois 60654
Email:  gjordan@jz-llc.com

*Attorneys for Plaintiff*
*David Boshea*


*/s/ Stephen B. Stern*
Stephen B. Stern