# EXHIBIT 1

LAW OFFICES
KAGAN STERN MARINELLO & BEARD, LLC
238 WEST STREET
ANNAPOLIS MARYLAND 21401
Telephone (410) 216-7900
Facsimile (410) 705-0836

STEPHEN B. STERN
(410) 793-1610

STERN@KAGANSTERN.COM
WWW.KAGANSTERN.COM

May 28, 2019

**VIA EMAIL**

John White, CEO
SRL, Inc.
222 Severn Avenue
Suite 200
Annapolis, Maryland 21403

      Re:    **Conflict of Interest Disclosure**

John:

      As you know, you recently advised me that you are planning to form a new corporation called SRL, Inc. ("SRL"). SRL will utilize radio frequency identification ("RFID") technology that will create new marketing opportunities for businesses, primarily by attaching to products (mostly in retail establishments) a label that contains a chip. You asked me and my firm to serve as outside counsel for SRL to help the company address a number of legal issues. You later offered me the opportunity to become a minority shareholder in SRL, with my initial ownership stake being at 1%. The opportunity to serve as outside counsel to SRL and also become a shareholder is very exciting to me and I very much appreciate the opportunity to serve in both capacities. The dual role I am expected to have for SRL, however, raises potential conflicts of interest under the Maryland Rules and, prior to proceeding any further, I believe it is necessary to disclose those potential conflicts to you in writing so that you fully understand them. If you feel comfortable proceeding with my dual role after disclosing these potential conflicts of interest, please indicate your consent by signing where indicated below in this letter.[1]

      Maryland Rule 19-301.8(a) states that an "attorney shall not enter into a business transaction with a client unless: (1) the transaction and terms on which the attorney acquires the

---

[1] We already discussed these issues by phone and you gave your verbal consent, but, pursuant to the Maryland Rules, it is necessary to address any actual or potential conflicts of interest in writing to avoid any misunderstandings and have your written consent in writing as well.

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
SRL, Inc.
May 28, 2019
Page 2 of 6

interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client; (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek independent legal advice on the transaction; and (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the attorney's role in the transaction, including whether the attorney is representing the client in the transaction." I address each of these requirements below.

## Conflicts of Interest

After I sent you an engagement letter for me and my firm to serve as outside counsel on general business matters for SRL,[2] you offered me the opportunity to become a shareholder in SRL, with the initial opportunity to own 1% of the company.[3] The amount of the initial investment has yet to be determined.[4]

Initially, you asked me and my firm to help you form the company and draft the initial shareholder agreements. With me becoming one of the early investors in SRL, that poses a potential (but waivable) conflict of interest, even though I am not going to be the attorney who actually performs the work of forming the corporation and drafting the initial documents, including the initial shareholder agreements.[5] The reason for the potential conflict is that either I or my colleagues could potentially take advantage of the position of trust we hold and draft one

---

[2] The engagement letter dated May 1, 2019 remains unsigned as of the date of this letter.

[3] You have made a similar offer to own 1% of SRL to some other individuals (approximately seven) who are employees of other companies you own and/or manage and/or advisors to you in some capacity.

[4] I asked you what amount you are seeking for 1% of the company, and you advised me that there is no particular number at this point because the initial distribution of stock to the individuals who will own 1% of the company is not intended to raise capital; it is intended to give a few individuals who have helped you get to this point with this business opportunity to become early stakeholders in this new venture that will be known as SRL.

[5] I would refer that work to my partner, Ryan Beard. I am expected to assist on business contracts, employment issues, litigation (if litigation ever became necessary), and other risk management issues going forward.

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
SRL, Inc.
May 28, 2019
Page 3 of 6

or more documents or otherwise give advice that is more favorable to me and potentially less favorable to you. I do not foresee a circumstance where I or my colleagues would engage in such conduct, but that risk does exist and must be disclosed to you.

You have since advised me that you may seek representation from Mitchell Goldsmith, of Taft Stettinius & Hollister, LLP, in connection with the formation of SRL and drafting the initial documents, including the initial shareholder agreements, because you have worked with him for many years and you value his experience in drafting these sorts of documents and other corporate matters. If you were to use Mitchell Goldsmith and his firm instead of mine, that would eliminate any potential conflict of interest for me and my firm, at least with the initial formation of SRL and the drafting of the initial shareholder agreements.[6]

Although referring these initial tasks to Mitchell Goldsmith and his firm instead of my firm would eliminate any potential conflict of interest for me and my firm with respect to those initial tasks, I do not believe that fully eliminates all potential conflicts of interest for me and my firm. In this regard, if SRL goes through additional rounds of capital raising/seeking new investors, there is the potential for my interest in the company to be diluted, which could have a negative impact on the value of my interest in the company. The potential adverse effect on my interest in SRL could potentially influence the advice I (or my colleagues) give you and the company. While I do not foresee a circumstance where my advice (or the advice of my colleagues) would be influenced by my interest in SRL, it is possible and I would be remiss in failing to disclose that risk to you.

Another area where a potential conflict of interest may arise concerns my billing practices. In this regard, because I am going to be a shareholder in SRL, you may ask for or expect potential discounts on my firm's invoices or, alternatively, I may be incentivized to offer discounts on invoices to advance my financial interest in SRL. While I and my colleagues may occasionally offer courtesy discounts to clients for certain tasks performed or write off or otherwise discount fees that are not reasonable under the circumstances, I am not permitted to offer any discounts to SRL beyond what I might otherwise offer in the ordinary course of business. Any discount beyond what might be offered in the ordinary course of business is prohibited because discounting invoices to SRL in that manner would potentially benefit me (indirectly) as a shareholder of SRL to the detriment of my law firm partners, which would

---

[6] Regardless of which firm helps you form SRL and drafts the initial documents (you also noted that you may use a combination of Mitchell's firm and my firm for these initial documents), including the initial shareholder agreements, the terms of the initial investment and shareholder agreement are expected to be in writing, which will further satisfy the requirements of Maryland Rule 19-301.8(a)(1).

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
SRL, Inc.
May 28, 2019
Page 4 of 6

violate duties I owe to my law firm partners. Thus, during the course of my firm's representation of SRL, I cannot discount my firm's invoices in any way based on my role as a shareholder of SRL.

As you know, as CEO of Compass Marketing, Inc. ("Compass"), and Tagnetics, Inc. ("Tagnetics"), you have retained me and my firm to represent Compass and Tagnetics in various capacities, including on advisory matters and litigation related matters. While I do not have any ownership interest in either Compass or Tagnetics, and I have not been offered the opportunity to become an investor in either company, my ownership interest in SRL could potentially have an adverse effect on my representation of Compass and Tagnetics. In this regard, I could potentially give tasks performed for Compass or Tagnetics a lower priority than tasks that need to be performed for Compass or Tagnetics. I do not foresee a circumstance where I or my colleagues would act in such a manner. Nevertheless, I believe I am obligated to make this disclosure to you. In addition, for the reasons discussed above, I am not permitted to offer any discounts in legal fees to Compass or Tagnetics outside of what might be offered in the ordinary course of business as an indirect benefit to you for allowing me the opportunity to become an investor in SRL.

Besides the potential conflicts of interest described above, other potential conflicts of interest may arise related to liquidity events concerning the shares I and other shareholders own in SRL. In addition, potential conflicts of interest may arise in connection with the legal work you and I anticipate I will perform on behalf of SRL. The precise contours of these potential conflicts are unclear at this time, as we do not know exactly what circumstances will arise and exactly what legal issues I will be working on at a given time in the future. Nevertheless, I wanted to note these possibilities to you in the interest of full disclosure. As we discussed, if there comes a time where I am able to identify an actual or potential conflict of interest in connection with a particular task/project I am asked or my firm is asked to perform on behalf of SRL (or even Compass or Tagnetics), I will disclose it to you as promptly as I can and address it with you (and identify whether it is waivable or not).

<u>Seek Other/Independent Counsel</u>

As you know, the potential conflicts of interest identified in this letter raise important issues for you to consider so that you can be sure you are comfortable that your interests (actually, the interests of SRL and your other companies) are adequately represented and not unfairly influenced by my anticipated financial interest in SRL. To this end, I must advise you that it may be in your interest to seek counsel other than me to discuss the issues I have raised in this letter and help you evaluate the potential conflicts of interest related to my anticipated ownership interest in SRL. While I can recommend attorneys to you, I know you know several attorneys with whom you can consult (including, but not limited to, Mitchell Goldsmith).

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
SRL, Inc.
May 28, 2019
Page 5 of 6

Nevertheless, if you would like me to refer you to one or more other attorneys, please let me know.

### Informed Consent

If you conclude after reviewing this letter and/or seeking counsel from another attorney with respect to the issues I have raised in this letter that I and my firm will fairly and zealously represent SRL (and Compass and Tagnetics), even when I am a shareholder of SRL, please sign where indicated below. By signing below, you represent the following: (1) you believe you have been adequately informed of the actual and potential conflicts of interest that exist with me being an investor in SRL and me and my firm serving as outside counsel to SRL (and Compass and Tagnetics); (2) you believe my firm and I will fairly and zealously represent SRL (and Compass and Tagnetics), even when I am a shareholder of SRL; (3) you consent to me and my firm serving as outside counsel to SRL (and Compass and Tagnetics); and (4) you consent to me being a shareholder in SRL.[7]

If you have any questions, believe any the issues raised in this letter are not clear, or would like to discuss any of these issues further, please let me know. Of course, if you do not consent to all four of the foregoing items, please let me know and either I will not become a shareholder of SRL or, if there is a concern that you believe can be remedied, we should discuss that potential remedy.

Very truly yours,

KAGAN STERN MARINELLO & BEARD, LLC

Stephen B. Stern

---

[7] To ensure complete transparency in every respect, this letter has been reviewed by the Managing Member of my law firm, Jonathan Kagan.

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
SRL, Inc.
May 28, 2019
Page 6 of 6

AGREED AND ACCEPTED:

By: _____     Dated: _____
    John White, individually and as
        CEO, SRL, Inc.
        CEO, Compass Marketing, Inc.
        CEO, Tagnetics, Inc.

LAW OFFICES
# KAGAN STERN MARINELLO & BEARD, LLC
238 WEST STREET
ANNAPOLIS MARYLAND 21401
Telephone (410) 216-7900
Facsimile (410) 705-0836

STEPHEN B. STERN
(410) 793-1610

STERN@KAGANSTERN.COM
WWW.KAGANSTERN.COM

June 11, 2019

**VIA EMAIL**

John White, CEO
Smart Retail, Inc.
222 Severn Avenue
Suite 200
Annapolis, Maryland 21403

      Re:   **Conflict of Interest Disclosure**

John:

      As you know, you recently advised me that you are planning to form a new corporation called Smart Retail, Inc. ("Smart Retail"). Smart Retail will utilize radio frequency identification ("RFID") technology that will create new marketing opportunities for businesses, primarily by attaching to products (mostly in retail establishments) a label that contains a chip. You asked me and my firm to serve as outside counsel for Smart Retail to help the company address a number of legal issues. You later offered me the opportunity to become a minority shareholder in Smart Retail, with my initial ownership stake being at 1%. The opportunity to serve as outside counsel to Smart Retail and also become a shareholder is very exciting to me and I very much appreciate the opportunity to serve in both capacities. The dual role I am expected to have for Smart Retail, however, raises potential conflicts of interest under the Maryland Rules and, prior to proceeding any further, I believe it is necessary to disclose those potential conflicts to you in writing so that you fully understand them. If you feel comfortable proceeding with my dual role after disclosing these potential conflicts of interest, please indicate your consent by signing where indicated below in this letter.[1]

---

[1] We already discussed these issues by phone and you gave your verbal consent, but, pursuant to the Maryland Rules, it is necessary to address any actual or potential conflicts of interest in writing to avoid any misunderstandings and have your written consent in writing as well.

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
Smart Retail, Inc.
June 11, 2019
Page 2 of 6

Maryland Rule 19-301.8(a) states that an "attorney shall not enter into a business transaction with a client unless: (1) the transaction and terms on which the attorney acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client; (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek independent legal advice on the transaction; and (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the attorney's role in the transaction, including whether the attorney is representing the client in the transaction." I address each of these requirements below.

## Conflicts of Interest

After I sent you an engagement letter for me and my firm to serve as outside counsel on general business matters for Smart Retail,[2] you offered me the opportunity to become a shareholder in Smart Retail, with the initial opportunity to own 1% of the company.[3] The amount of the initial investment has yet to be determined.[4]

Initially, you asked me and my firm to help you form the company and draft the initial shareholder agreements. With me becoming one of the early investors in Smart Retail, that poses a potential (but waivable) conflict of interest, even though I am not going to be the attorney who actually performs the work of forming the corporation and

---

[2] The original engagement letter dated May 1, 2019 was for SRL, Inc., but you later decided to change the name to Smart Retail, Inc., which led me to send this revised conflict disclosure letter and a new engagement letter for Smart Retail.

[3] You have made a similar offer to own 1% of Smart Retail to some other individuals (approximately seven) who are employees of other companies you own and/or manage and/or advisors to you in some capacity.

[4] I asked you what amount you are seeking for 1% of the company, and you advised me that there is no particular number at this point because the initial distribution of stock to the individuals who will own 1% of the company is not intended to raise capital; it is intended to give a few individuals who have helped you get to this point with this business opportunity to become early stakeholders in this new venture that will be known as Smart Retail.

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
Smart Retail, Inc.
June 11, 2019
Page 3 of 6

drafting the initial documents, including the initial shareholder agreements.[5] The reason for the potential conflict is that either I or my colleagues could potentially take advantage of the position of trust we hold and draft one or more documents or otherwise give advice that is more favorable to me and potentially less favorable to you. I do not foresee a circumstance where I or my colleagues would engage in such conduct, but that risk does exist and must be disclosed to you.

You have since advised me that you may seek representation from Mitchell Goldsmith, of Taft Stettinius & Hollister, LLP, in connection with the formation of Smart Retail and drafting the initial documents, including the initial shareholder agreements, because you have worked with him for many years and you value his experience in drafting these sorts of documents and other corporate matters. If you were to use Mitchell Goldsmith and his firm instead of mine, that would eliminate any potential conflict of interest for me and my firm, at least with the initial formation of Smart Retail and the drafting of the initial shareholder agreements.[6]

Although referring these initial tasks to Mitchell Goldsmith and his firm instead of my firm would eliminate any potential conflict of interest for me and my firm with respect to those initial tasks, I do not believe that fully eliminates all potential conflicts of interest for me and my firm. In this regard, if Smart Retail goes through additional rounds of capital raising/seeking new investors, there is the potential for my interest in the company to be diluted, which could have a negative impact on the value of my interest in the company. The potential adverse effect on my interest in Smart Retail could potentially influence the advice I (or my colleagues) give you and the company. While I do not foresee a circumstance where my advice (or the advice of my colleagues) would be influenced by my interest in Smart Retail, it is possible and I would be remiss in failing to disclose that risk to you.

---

[5] I would refer that work to my partner, Ryan Beard. I am expected to assist on business contracts, employment issues, litigation (if litigation ever became necessary), and other risk management issues going forward.

[6] Regardless of which firm helps you form Smart Retail and drafts the initial documents (you also noted that you may use a combination of Mitchell's firm and my firm for these initial documents), including the initial shareholder agreements, the terms of the initial investment and shareholder agreement are expected to be in writing, which will further satisfy the requirements of Maryland Rule 19-301.8(a)(1).

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
Smart Retail, Inc.
June 11, 2019
Page 4 of 6

    Another area where a potential conflict of interest may arise concerns my billing practices. In this regard, because I am going to be a shareholder in Smart Retail, you may ask for or expect potential discounts on my firm's invoices or, alternatively, I may be incentivized to offer discounts on invoices to advance my financial interest in Smart Retail. While I and my colleagues may occasionally offer courtesy discounts to clients for certain tasks performed or write off or otherwise discount fees that are not reasonable under the circumstances, I am not permitted to offer any discounts to Smart Retail beyond what I might otherwise offer in the ordinary course of business. Any discount beyond what might be offered in the ordinary course of business is prohibited because discounting invoices to Smart Retail in that manner would potentially benefit me (indirectly) as a shareholder of Smart Retail to the detriment of my law firm partners, which would violate duties I owe to my law firm partners. Thus, during the course of my firm's representation of Smart Retail, I cannot discount my firm's invoices in any way based on my role as a shareholder of Smart Retail.

    As you know, as CEO of Compass Marketing, Inc. ("Compass"), and Tagnetics, Inc. ("Tagnetics"), you have retained me and my firm to represent Compass and Tagnetics in various capacities, including on advisory matters and litigation related matters. While I do not have any ownership interest in either Compass or Tagnetics, and I have not been offered the opportunity to become an investor in either company, my ownership interest in Smart Retail could potentially have an adverse effect on my representation of Compass and Tagnetics. In this regard, I could potentially give tasks performed for Compass or Tagnetics a lower priority than tasks that need to be performed for Compass or Tagnetics. I do not foresee a circumstance where I or my colleagues would act in such a manner. Nevertheless, I believe I am obligated to make this disclosure to you. In addition, for the reasons discussed above, I am not permitted to offer any discounts in legal fees to Compass or Tagnetics outside of what might be offered in the ordinary course of business as an indirect benefit to you for allowing me the opportunity to become an investor in Smart Retail.

    Besides the potential conflicts of interest described above, other potential conflicts of interest may arise related to liquidity events concerning the shares I and other shareholders own in Smart Retail. In addition, potential conflicts of interest may arise in connection with the legal work you and I anticipate I will perform on behalf of Smart Retail. The precise contours of these potential conflicts are unclear at this time, as we do

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
Smart Retail, Inc.
June 11, 2019
Page 5 of 6

not know exactly what circumstances will arise and exactly what legal issues I will be working on at a given time in the future. Nevertheless, I wanted to note these possibilities to you in the interest of full disclosure. As we discussed, if there comes a time where I am able to identify an actual or potential conflict of interest in connection with a particular task/project I am asked or my firm is asked to perform on behalf of Smart Retail (or even Compass or Tagnetics), I will disclose it to you as promptly as I can and address it with you (and identify whether it is waivable or not).

Seek Other/Independent Counsel

As you know, the potential conflicts of interest identified in this letter raise important issues for you to consider so that you can be sure you are comfortable that your interests (actually, the interests of Smart Retail and your other companies) are adequately represented and not unfairly influenced by my anticipated financial interest in Smart Retail. To this end, I must advise you that it may be in your interest to seek counsel other than me to discuss the issues I have raised in this letter and help you evaluate the potential conflicts of interest related to my anticipated ownership interest in Smart Retail. While I can recommend attorneys to you, I know you know several attorneys with whom you can consult (including, but not limited to, Mitchell Goldsmith). Nevertheless, if you would like me to refer you to one or more other attorneys, please let me know.

Informed Consent

If you conclude after reviewing this letter and/or seeking counsel from another attorney with respect to the issues I have raised in this letter that I and my firm will fairly and zealously represent Smart Retail (and Compass and Tagnetics), even when I am a shareholder of Smart Retail, please sign where indicated below. By signing below, you represent the following: (1) you believe you have been adequately informed of the actual and potential conflicts of interest that exist with me being an investor in Smart Retail and me and my firm serving as outside counsel to Smart Retail (and Compass and Tagnetics); (2) you believe my firm and I will fairly and zealously represent Smart Retail (and Compass and Tagnetics), even when I am a shareholder of Smart Retail; (3) you consent to me and my firm serving as outside counsel to Smart Retail (and Compass and Tagnetics); and (4) you consent to me being a shareholder in Smart Retail.[7]

---

[7] To ensure complete transparency in every respect, this letter has been reviewed by the Managing Member of my law firm, Jonathan Kagan.

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
Smart Retail, Inc.
June 11, 2019
Page 6 of 6

    If you have any questions, believe any the issues raised in this letter are not clear, or would like to discuss any of these issues further, please let me know.  Of course, if you do not consent to all four of the foregoing items, please let me know and either I will not become a shareholder of Smart Retail or, if there is a concern that you believe can be remedied, we should discuss that potential remedy.

                        Very truly yours,

                        KAGAN STERN MARINELLO & BEARD, LLC

                        Stephen B. Stern

AGREED AND ACCEPTED:

By: _____     Dated: _____
    John White, individually and as
        CEO, Smart Retail, Inc.
        CEO, Compass Marketing, Inc.
        CEO, Tagnetics, Inc.

# STATE OF WYOMING
## Office of the Secretary of State

I, EDWARD A. BUCHANAN, Secretary of State of the State of Wyoming, do hereby certify that the filing requirements for the issuance of this certificate have been fulfilled.

## CERTIFICATE OF INCORPORATION

### Smart Retail, Inc.

I have affixed hereto the Great Seal of the State of Wyoming and duly executed this official certificate at Cheyenne, Wyoming on this 2nd day of August, 2019 at 2:39 PM.

Remainder intentionally left blank.



Filed Date: 08/02/2019

*Edward A. Buchanan*
Secretary of State

Filed Online By:
Ryan Beard
on 08/02/2019

8/15/2019

Business Entity Detail - Wyoming Secretary of State

Business Center

Online Services   Search

# DETAIL

RETURN TO YOUR SEARCH      FILE YOUR ANNUAL REPORT

Print

This detail reflects the current data for the filing in the system.

**Name**
Smart Retail, Inc.

**Filing ID**
2019-000868971

**Type**
Profit Corporation - Domestic

**Status**
Active

**Sub Status**
Current

**Initial Filing**
08/02/2019

Fictitious Name

**Standing - Tax**
Good

**Standing - RA**
Good

**Standing - Other**
Good

**Term of Duration**
Perpetual

**Formed In**
Wyoming

**Principal Office**
222 Severn Avenue
Building 14
Suite 200
Annapolis, MD 21403
USA

**Mailing Address**
222 Severn Avenue
Building 14
Suite 200
Annapolis, MD 21403
USA

## Additional Details

**Registered Agent:**
C T Corporation System
1908 Thomes Ave
Cheyenne, WY 82001 USA

**Latest AR/Year**

**AR Exempt**

**License Tax Paid**

**Common Shares**
1,000

**Common Par Value**

**Preferred Shares**

https://wyobiz.wy.gov/business/FilingDetails.aspx?eFNum=22509701701705920115022924006819421910007820305?

8/15/2019

Business Entity Detail - Wyoming Secretary of State

0

Preferred Par Value

### History

**Initial Filing** - See Filing ID

Date: 08/02/2019

**Public Notes**

No Public Notes Found...

**Parties**

John White (Incorporator)

Address: 222 Severn Avenue, Building 14, Suite 200, Annapolis, Maryland 21403

Organization:

https://wyobiz.wy.gov/business/FilingDetails.aspx?eFNum=22509701701705920115022924008819421910007820205a



**Wyoming Secretary of State**
2020 Carey Avenue
Suite 700
Cheyenne, WY 82002-0020
Ph. 307-777-7311

<u>For Office Use Only</u>
WY Secretary of State
FILED: Aug 2 2019 2:39PM
Original ID: 2019-000868971

## Profit Corporation
## Articles of Incorporation

**I. The name of the corporation is:**
Smart Retail, Inc.

**II. The name and physical address of the registered agent of the corporation is:**
C T Corporation System
1908 Thomes Ave
Cheyenne, WY 82001

**III. The mailing address of the corporation is:**
222 Severn Avenue
Building 14
Suite 200
Annapolis, MD 21403

**IV. The principal office address of the corporation is:**
222 Severn Avenue
Building 14
Suite 200
Annapolis, MD 21403

**V. The number, par value, and class of shares the corporation will have the authority to issue are:**

Number of Common Shares: 1,000         Common Par Value: $0.0000
Number of Preferred Shares: 0          Preferred Par Value: $0.0000

**VI. The name and address of each incorporator is as follows:**
John White
222 Severn Avenue, Building 14, Suite 200, Annapolis, Maryland 21403

Signature: *Ryan Beard*                                Date: 08/02/2019
Print Name: Ryan Beard
Title: Attorney
Email: beard@kaganstern.com
Daytime Phone #: (410) 216-7900

Page 1 of 4



**Secretary of State**

Wyoming Secretary of State
2020 Carey Avenue
Suite 700
Cheyenne, WY 82002-0020
Ph. 307-777-7311

☑ I am the person whose signature appears on the filing; that I am authorized to file these documents on behalf of the business entity to which they pertain; and that the information I am submitting is true and correct to the best of my knowledge.

☑ I am filing in accordance with the provisions of the Wyoming Business Corporation Act, (W.S. 17-16-101 through 17-16-1804) and Registered Offices and Agents Act (W.S. 17-28-101 through 17-28-111).

☑ I understand that the information submitted electronically by me will be used to generate Articles of Incorporation that will be filed with the Wyoming Secretary of State.

☑ I intend and agree that the electronic submission of the information set forth herein constitutes my signature for this filing.

☑ I have conducted the appropriate name searches to ensure compliance with W.S. 17-16-401.

☑ I affirm, under penalty of perjury, that I have received actual, express permission from each of the following incorporators to add them to this business filing: John White

**Notice Regarding False Filings:** Filing a false document could result in criminal penalty and prosecution pursuant to W.S. 6-5-308.

> **W.S. 6-5-308. Penalty for filing false document.**
>
> (a) A person commits a felony punishable by imprisonment for not more than two (2) years, a fine of not more than two thousand dollars ($2,000.00), or both, if he files with the secretary of state and willfully or knowingly:
>
> (i) Falsifies, conceals or covers up by any trick, scheme or device a material fact;
>
> (ii) Makes any materially false, fictitious or fraudulent statement or representation; or
>
> (iii) Makes or uses any false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry.

☑ I acknowledge having read W.S. 6-5-308.

**Filer is:** ☑ An Individual   ☐ An Organization

**Filer Information:**

By submitting this form I agree and accept this electronic filing as legal submission of my Articles of Incorporation.

Signature: *Ryan Beard*       Date: 08/02/2019
Print Name: Ryan Beard
Title: Attorney
Email: beard@kaganstern.com
Daytime Phone #: (410) 216-7900



**Secretary of State**

**Wyoming Secretary of State**
2020 Carey Avenue
Suite 700
Cheyenne, WY 82002-0020
Ph. 307-777-7311

## Consent to Appointment by Registered Agent

C T Corporation System, whose registered office is located at 1908 Thomes Ave, Cheyenne, WY 82001, voluntarily consented to serve as the registered agent for Smart Retail, Inc. and has certified they are in compliance with the requirements of W.S. 17-28-101 through W.S. 17-28-111.

I have obtained a signed and dated statement by the registered agent in which they voluntarily consent to appointment for this entity.

Signature: *Ryan Beard*                        Date: 08/02/2019
Print Name: Ryan Beard
Title: Attorney
Email: beard@kaganstern.com
Daytime Phone #: (410) 216-7900