# Exhibit 3

Receipt : 2100001170G

**COURT ADDRESS:**
1425 NORTH COURTHOUSE ROAD
ARLINGTON, VA 22201
PHONE # :703-228-7010

PAYOR'S COPY



**OFFICIAL RECEIPT**
**ARLINGTON CIRCUIT COURT**
CIVIL

CASE # : 013CL21004012000

FILING TYPE : PET          PAYMENT : FULL PAYMENT

DATE : 10/04/2021          TIME : 12:05:28
RECEIPT # : 2100011706     TRANSACTION # : 211004000026
CASHIER : KiL              REGISTER # : C215

CASE COMMENTS : WHITE, MICHAEL R v. COMPASS MARKETING, INC.

SUIT AMOUNT : $0.00
ACCOUNT OF : WHITE, MICHAEL R
PAID BY : WHITE, MICHAEL R
CASH : $100.00

DESCRIPTION 1 : PET:PETITION
2 : PLAINTIFF: WHITE, MICHAEL R
3 : NO HEARING SCHEDULED

| ACCOUNT CODE | DESCRIPTION | PAID |
|---|---|---|
| 049 | WRIT TAX (CIVIL) | $5.00 |
| 106 | TECHNOLOGY TRST FND | $5.00 |
| 123 | LEGAL AID SERVICES | $9.00 |
| 147 | INDIGENT ASSISTANCE (INA) | $1.00 |
| 170 | COURT TECHNOLOGY FUND | $10.00 |

| ACCOUNT CODE | DESCRIPTION | PAID |
|---|---|---|
| 219 | LAW LIBRARY | $4.00 |
| 229 | COURTHOUSE MAINTENANCE FEE (CHMF) | $2.00 |
| 304 | CIVIL FILING FEE (LAW & EQUITY) | $50.00 |

TENDERED : $          100.00
AMOUNT PAID : $        86.00
CHANGE AMOUNT : $      14.00

CLERK OF COURT : PAUL FERGUSON

RECEIPT COPY 1 OF 2

# COVER SHEET FOR FILING CIVIL ACTIONS

COMMONWEALTH OF VIRGINIA

(CLERK'S OFFICE USE ONLY)

Case No. ...................

.......................... Arlington County .......................... Circuit Court

Michael R. White ........................ v./In re: ........................ Compass Marketing, Inc.

Daniel J. White

**PLAINTIFF(S)**

John D. White

**DEFENDANT(S)**

I, the undersigned [X] plaintiff [ ] defendant [ ] attorney for [ ] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

## GENERAL CIVIL

**Subsequent Actions**
- [ ] Claim Impleading Third Party Defendant
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Counterclaim
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Cross Claim
- [ ] Interpleader
- [ ] Reinstatement (other than divorce or driving privileges)
- [ ] Removal of Case to Federal Court

**Business & Contract**
- [ ] Attachment
- [ ] Confessed Judgment
- [ ] Contract Action
- [ ] Contract Specific Performance
- [ ] Detinue
- [ ] Garnishment

**Property**
- [ ] Annexation
- [ ] Condemnation
- [ ] Ejectment
- [ ] Encumber/Sell Real Estate
- [ ] Enforce Vendor's Lien
- [ ] Escheatment
- [ ] Establish Boundaries
- [ ] Landlord/Tenant
  - [ ] Unlawful Detainer
- [ ] Mechanics Lien
- [ ] Partition
- [ ] Quiet Title
- [ ] Termination of Mineral Rights

**Tort**
- [ ] Asbestos Litigation
- [ ] Compromise Settlement
- [ ] Intentional Tort
- [ ] Medical Malpractice
- [ ] Motor Vehicle Tort
- [ ] Product Liability
- [ ] Wrongful Death
- [ ] Other General Tort Liability

## ADMINISTRATIVE LAW

- [ ] Appeal/Judicial Review of Decision of (select one)
  - [ ] ABC Board
  - [ ] Board of Zoning
  - [ ] Compensation Board
  - [ ] DMV License Suspension
  - [ ] Employee Grievance Decision
  - [ ] Employment Commission
  - [ ] Local Government
  - [ ] Marine Resources Commission
  - [ ] School Board
  - [ ] Voter Registration
  - [ ] Other Administrative Appeal

## DOMESTIC/FAMILY

- [ ] Adoption
  - [ ] Adoption – Foreign
- [ ] Adult Protection
- [ ] Annulment
  - [ ] Annulment – Counterclaim/Responsive Pleading
- [ ] Child Abuse and Neglect – Unfounded Complaint
- [ ] Civil Contempt
- [ ] Divorce (select one)
  - [ ] Complaint – Contested*
  - [ ] Complaint – Uncontested*
  - [ ] Counterclaim/Responsive Pleading
  - [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
- [ ] Separate Maintenance
  - [ ] Separate Maintenance Counterclaim

## WRITS

- [ ] Certiorari
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Prohibition
- [ ] Quo Warranto

## PROBATE/WILLS AND TRUSTS

- [ ] Accounting
- [ ] Aid and Guidance
- [ ] Appointment (select one)
  - [ ] Guardian/Conservator
  - [ ] Standby Guardian/Conservator
  - [ ] Custodian/Successor Custodian (UTMA)
- [ ] Trust (select one)
  - [ ] Impress/Declare/Create
  - [ ] Reformation
- [ ] Will (select one)
  - [ ] Construe
  - [ ] Contested

## MISCELLANEOUS

- [ ] Amend Death Certificate
- [ ] Appointment (select one)
  - [ ] Church Trustee
  - [ ] Conservator of Peace
  - [ ] Marriage Celebrant
- [ ] Approval of Transfer of Structured Settlement
- [ ] Bond Forfeiture Appeal
- [ ] Declaratory Judgment
- [ ] Declare Death
- [ ] Driving Privileges (select one)
  - [ ] Reinstatement pursuant to § 46.2-427
  - [ ] Restoration – Habitual Offender or 3rd Offense
- [ ] Expungement
- [ ] Firearms Rights – Restoration
- [ ] Forfeiture of Property or Money
- [ ] Freedom of Information
- [ ] Injunction
- [ ] Interdiction
- [ ] Interrogatory
- [ ] Judgment Lien-Bill to Enforce
- [ ] Law Enforcement/Public Official Petition
- [ ] Name Change
- [ ] Referendum Elections
- [ ] Sever Order
- [ ] Taxes (select one)
  - [ ] Correct Erroneous State/Local
  - [ ] Delinquent
- [ ] Vehicle Confiscation
- [ ] Voting Rights – Restoration
- [X] Other (please specify)

  Judicial Dissolution of Business

[X] Damages in the amount of $ ........................ are claimed.

10/3/2021

**DATE**

[x] PLAINTIFF  [ ] DEFENDANT  [ ] ATTORNEY FOR  [ ] PLAINTIFF / [ ] DEFENDANT

Michael R. White

**PRINT NAME**

39650 Hiawatha Circle, Mechanicsville, MD 20659

**ADDRESS/TELEPHONE NUMBER OF SIGNATOR**

301-481-5986

michaelrwhite@comcast.net

**EMAIL ADDRESS OF SIGNATOR (OPTIONAL)**

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

FORM CC-1416 (MASTER) PAGE ONE 07/16

## Civil Action Type Codes
### (Clerk's Office Use Only)

| | |
|---|---|
| Accounting | ACCT |
| Adoption | ADOP |
| Adoption – Foreign | FORA |
| Adult Protection | PROT |
| Aid and Guidance | AID |
| Amend Death Certificate | ADC |
| Annexation | ANEX |
| Annulment | ANUL |
| Annulment – Counterclaim/Responsive Pleading | ACRP |
| Appeal/Judicial Review | |
|    ABC Board | ABC |
|    Board of Zoning | ZONE |
|    Compensation Board | ACOM |
|    DMV License Suspension | JR |
|    Employment Commission | EMP |
|    Employment Grievance Decision | GRV |
|    Local Government | GOVT |
|    Marine Resources | MAR |
|    School Board | JR |
|    Voter Registration | AVOT |
|    Other Administrative Appeal | AAPL |
| Appointment | |
|    Conservator of Peace | COP |
|    Church Trustee | AOCT |
|    Custodian/Successor Custodian (UTMA) | UTMA |
|    Guardian/Conservator | APPT |
|    Marriage Celebrant | ROMC |
|    Standby Guardian/Conservator | STND |
| Approval of Transfer of Structured Settlement | SS |
| Asbestos Litigation | AL |
| Attachment | ATT |
| Bond Forfeiture Appeal | BFA |
| Child Abuse and Neglect – Unfounded Complaint | CAN |
| Civil Contempt | CCON |
| Claim Impleading Third Party Defendant – | |
|    Monetary Damages/No Monetary Damages | CTP |
| Complaint – (Miscellaneous) | COM |
| Compromise Settlement | COMP |
| Condemnation | COND |
| Confessed Judgment | CJ |
| Contract Action | CNTR |
| Contract Specific Performance | PERF |
| Counterclaim – Monetary Damages/No Monetary | |
|    Damages | CC |
| Cross Claim | CROS |
| Declaratory Judgment | DECL |
| Declare Death | DDTH |
| Detinue | DET |
| Divorce | |
|    Complaint – Contested/Uncontested | DIV |
|    Counterclaim/Responsive Pleading | DCRP |
|    Reinstatement – Custody/Visitation/Support/ | |
|       Equitable Distribution | CVS |
| Driving Privileges | |
|    Reinstatement pursuant to § 46.2-427 | DRIV |
|    Restoration – 3rd Offense | REST |
| Ejectment | EJET |

| | |
|---|---|
| Encumber/Sell Real Estate | RE |
| Enforce Vendor's Lien | VEND |
| Escheatment | ESC |
| Establish Boundaries | ESTB |
| Expungement | XPUN |
| Forfeiture of Property or Money | FORF |
| Freedom of Information | FOI |
| Garnishment | GARN |
| Injunction | INJ |
| Intentional Tort | ITOR |
| Interdiction | INTD |
| Interpleader | INTP |
| Interrogatory | INTR |
| Judgment Lien – Bill to Enforce | LIEN |
| Landlord/Tenant | LT |
| Law Enforcement/Public Official Petition | LEP |
| Mechanics Lien | MECH |
| Medical Malpractice | MED |
| Motor Vehicle Tort | MV |
| Name Change | NC |
| Other General Tort Liability | GTOR |
| Partition | PART |
| Permit, Unconstitutional Grant/Denial by Locality | LUC |
| Petition – (Miscellaneous) | PET |
| Product Liability | PROD |
| Quiet Title | QT |
| Referendum Elections | ELEC |
| Reinstatement (Other than divorce or driving | |
|    privileges) | REIN |
| Removal of Case to Federal Court | REM |
| Restore Firearms Rights – Felony | RFRF |
| Restore Firearms Rights – Review | RFRR |
| Separate Maintenance | SEP |
| Separate Maintenance – Counterclaim/Responsive | |
|    Pleading | SCRP |
| Sever Order | SEVR |
| Sex Change | COS |
| Taxes | |
|    Correct Erroneous State/Local | CTAX |
|    Delinquent | DTAX |
| Termination of Mineral Rights | MIN |
| Trust – Impress/Declare/Create | TRST |
| Trust – Reformation | REFT |
| Uniform Foreign Country Money Judgments | RFCJ |
| Unlawful Detainer | UD |
| Vehicle Confiscation | VEH |
| Violation – Election Law | VEL |
| Voting Rights – Restoration | VOTE |
| Will Construction | CNST |
| Will Contested | WILL |
| Writs | |
|    Certiorari | WC |
|    Habeas Corpus | WHC |
|    Mandamus | WM |
|    Prohibition | WP |
|    Quo Warranto | WQW |
| Wrongful Death | WD |

**VIRGINIA:**

## CIRCUIT COURT OF VIRGINIA
## ARLINGTON COUNTY

|  |  |  |
|---|---|---|
| | * | |
| | * | |
| MICHAEL R. WHITE | * | |
| 39650 Hiawatha Circle | * | |
| Mechanicsville, MD 20659 | * | |
| Individually and derivatively on behalf of | * | |
| Compass Marketing, Inc., | * | |
| | * | |
| and | * | |
| | * | |
| DANIEL J. WHITE | * | |
| Post Office Box 1760 | * | |
| Leonardtown, Maryland 20650 | * | |
| Individually and derivatively on behalf of | * | |
| Compass Marketing, Inc., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Case No. _____ |
| | * | |
| JOHN D. WHITE | * | |
| 222 Severn Avenue | * | |
| Annapolis, Maryland 21403 | * | |
| Building 14, Suite 200 | * | |
| Individually and as a director and officer of | * | |
| Compass Marketing, Inc., | * | |
| Serve: John White | * | |
| | * | |
| and | * | |
| | * | |
| COMPASS MARKETING, INC., | * | |
| a Virginia Corporation | * | |
| 222 Severn Avenue | * | |
| Building 14, Suite 200 | * | |
| Annapolis, MD 21403 | * | |
| | * | |
| Serve:  Business Filings, Incorporated | * | |
| Registered Agent | * | |
| 4701 Cox Road, Suite 385 | * | |
| Glen Allen, Virginia 23060 | * | |
| | * | |
| Defendants. | * | |

**VIRGINIA:**

**CIRCUIT COURT OF VIRGINIA**
**ARLINGTON COUNTY**

|  |  |  |
|---|---|---|
| | \* | |
| | \* | |
| MICHAEL R. WHITE | \* | |
| 39650 Hiawatha Circle | \* | |
| Mechanicsville, MD 20659 | \* | |
| Individually and derivatively on behalf of | \* | |
| Compass Marketing, Inc., | \* | |
| | \* | |
| and | \* | |
| | \* | |
| DANIEL J. WHITE | \* | |
| Post Office Box 1760 | \* | |
| Leonardtown, Maryland 20650 | \* | |
| Individually and derivatively on behalf of | \* | |
| Compass Marketing, Inc., | \* | |
| | \* | |
| Plaintiffs, | \* | |
| | \* | |
| v. | \* | Case No. _____ |
| | \* | |
| JOHN D. WHITE | \* | |
| 222 Severn Avenue | \* | |
| Annapolis, Maryland 21403 | \* | |
| Building 14, Suite 200 | \* | |
| Individually and as a director and officer of | \* | |
| Compass Marketing, Inc., | \* | |
| Serve: John White | \* | |
| | \* | |
| and | \* | |
| | \* | |
| COMPASS MARKETING, INC., | \* | |
| a Virginia Corporation | \* | |
| 222 Severn Avenue | \* | |
| Building 14, Suite 200 | \* | |
| Annapolis, MD 21403 | \* | |
| | \* | |
| Serve: Business Filings, Incorporated | \* | |
| Registered Agent | \* | |
| 4701 Cox Road, Suite 385 | \* | |
| Glen Allen, Virginia 23060 | \* | |
| | \* | |
| Defendants. | \* | |

## COMPLAINT

Michael White, *Pro Se*, individually and derivatively on behalf of Compass Marketing, Inc., and Daniel White, *Pro Se*, individually and derivatively on behalf of Compass Marketing, Inc., state as follows for their Complaint against Defendants John White, and Compass Marketing, Inc.

## I.   INTRODUCTION

1.    Compass Marketing, Inc. ("Compass") was a once-thriving family business owned by brothers Michael White, Daniel White, and John White, who are the only directors and shareholders of Compass.

2.    Unfortunately, the management of Compass is now wholly and hopelessly deadlocked because of John White's illegal, fraudulent, and oppressive conduct.

3.    Upon information and belief, John White continues to use Compass as a vehicle to engage in fraudulent and deceptive practices in the sale of securities in other unaffiliated businesses, namely Tagnetics, Inc., Smart Retail, Inc., and Eastport Partners, LLC.

4.    Michael White and Daniel White have attempted to discuss with John White any resolution that might allow Michael White and Daniel White to withdraw from ownership of Compass or otherwise mitigate their liability for John White's unlawful and fraudulent activities. John White refuses to discuss any resolution, leaving this petition for dissolution as the only option.

5.    The affairs of Compass can no longer be conducted to the advantage of all the shareholders.  It is imperative to appoint a receiver or custodian pendente lite to preserve the corporate assets wherever they may be and carry on the business until a full hearing can be held.

1

6.     It is necessary to dissolve Compass before John White's continuing illegal, fraudulent, disloyal, and oppressive conduct produces further harm and damage to Compass, Michael White, Daniel White, and others.

7.     On behalf of themselves individually and, derivatively, on behalf of Compass, Michael White and Daniel White seek temporary and permanent injunctions, the appointment of a custodian pendente lite pursuant to § Va. Code 13.1-747, the appointment of a receiver or custodian pursuant to § Va. Code 13.1-748, a full accounting, a declaratory judgment, judicial dissolution of Compass pursuant to Va. Code Ann. § 13.1-747, and damages exceeding $ 25,000.

II. PARTIES

8.     Plaintiff Michael White ("Michael White") is a director and shareholder of Compass. He owns 25% of Compass. Michael White is a citizen of Maryland.

9.     Plaintiff Daniel White ("Daniel White") is a director and shareholder of Compass. He owns 25% of Compass. Daniel White is a citizen of Maryland.

10.     Defendant John White ("John White") is a director and shareholder of Compass. He owns 50% of Compass. John White is a citizen of Maryland.

11.     Defendant Compass Marketing, Inc. is a corporation duly organized under the laws of the Commonwealth of Virginia, with its initial principal place of business located 6851 North Washington Blvd. Arlington, Virginia.   Compass maintains a registered agent in the Commonwealth of Virginia.

12.     Michael White and Daniel White fairly and adequately represent the Corporation in enforcing its rights. At present, Michael White and Daniel White continue to serve as directors of Compass to the best of their ability under the circumstances.

2

13.     Compass' last known business address was 222 Severn Avenue, Building 14, Suite 200, Annapolis, MD 21403.

14.     Upon information and belief, because of fraudulent conveyances and preferential transfers by, and enormous salaries and other payments to, John White and his other partners in Tagnetics, Inc., Smart Retail, Inc., and Eastport Partners, LLC, along with substantial amounts paid and payable to attorneys for these entities, Compass is presently insolvent and unable to meet its debts or discharge its liabilities.

III.  <u>JURISDICTION AND VENUE</u>

15.     This Court has personal jurisdiction over Compass, as a corporation organized under the laws of Virginia, pursuant to Va. Code Ann. §§ 13.1-603 and 13.1-747.

16.     Venue is proper in this Court under Va. Code Ann. §§ 8.01-262 and 13.1-747.

17.     This Court has personal jurisdiction over John White, an officer, and director of a Virginia corporation with significant ties to the state as outlined below, pursuant to Va. Code Ann. §§ 8.01-328.1.

18.     Further, John White has personally engaged in a persistent course of conduct in Virginia that gives rise to this action and contributes to the basis of the claims against him and the claim for judicial dissolution of Compass and the appointment of a custodian or receiver.

19.     John White conducted business in Virginia and fostered relationships with other Virginia entities, and these actions were an essential part of both carrying on Compass business and in taking the improper and illegal actions and breach of his fiduciary duties.

20.     Among other things, John White attended meetings with Compass' client, Mars, Inc., at its McLean, Virginia headquarters, during the relevant time periods.  Compass' business with Mars exceeded $5 million.

3

21.     Upon information and belief, John White also coordinated and attended several meetings in Virginia to develop his scheme to fraudulently sell stock in a company known as Tagnetics, Inc. ("Tagnetics"), where John White acted under the name of Compass and used Compass' reputation and resources to endorse and provide credibility for the otherwise illegitimate Tagnetics' scheme.  John White owns Tagnetics with other investors not affiliated with Compass, including Mitch Goldsmith.  Through December 2016, Tagnetics had an office in Virginia, located in Salem, Virginia, but now claims their principal office to be the same as Compass.

22.     Upon information and belief, on October 2, 2017, John White attended a meeting of Tagnetics investors at the Ritz-Carlton Tysons Corner in McLean, Virginia, in furtherance of his fraudulent Tagnetics and Smart Retail schemes.

23.     Upon information and belief, on September 26, 2018, John White attended the 2018 Smart Label Summit held in Arlington, Virginia, to further his fraudulent scheme to abandon the Tagnetics securities scam and begin a new one in Smart Retail, Inc. ("Smart Retail"), where John White acted under the name of Compass and used Compass' reputation and resources to endorse and provide credibility for the otherwise illegitimate Smart Retail scheme.  John White owns Smart Retail with other investors not affiliated with Compass, including attorney Stephen Stern.  Smart Retail is a Wyoming business that claims to have the same principal office address as Compass.

IV. <u>FACTS</u>

24.     Daniel White caused Compass to be incorporated in the Commonwealth of Virginia on or about February 4, 1998.  Compass was created as a Stock Corporation with authority to issue 1,500 shares of common stock and with one initial director, Daniel White.  Compass is a manufacturers' representative that partners with various brands of consumer goods to obtain a brand presence in retail and specialty marketplaces.

25.     Initially, Michael White, Daniel White, and John White were able to work together to build a successful corporation.  Over fifteen (15) years, Compass grew to become a well-known sales and marketing company, achieving revenues of approximately $18,000,000 in 2014.

A.  Tagnetics Boondoggle

26.     Compass was a growing and successful Virginia corporation until 2012, when John White began devoting most of his time and attention and enormous amounts of Compass financial and personnel resources to Tagnetics, Inc., an unrelated business venture.

27.     Tagnetics, Inc. ("Tagnetics"), *aka Powershelf, Smart Retail Label, Smart Retail,* etc., is a Delaware technology company that was formed in 2003 to manufacture and install electronic shelf labels (ESLs) in retail businesses, but by 2011 they were essentially insolvent. They only had a small base of business with some retailers, but on the other hand, they still had a magnificent idea – converting millions of paper price tags in retail stores around the country to electronic shelf labels.

28.     In 2011, John White caused the board of directors of Tagnetics to appoint him the "Chairman and co-CEO" of Tagnetics, and he then awarded himself a significant ownership interest in Tagnetics, along with a lucrative employment contract with Tagnetics.  In 2012, John White began drawing an outrageous salary and other compensation from Tagnetics, mostly at Compass' expense.

29.     Tagnetics is currently insolvent and has no revenues, no employees, no bank accounts, and no principal place of business.  Tagnetics has not had a meeting of shareholders in ten (10) years.  Tagnetics was, at all relevant times, a failing company with little or no profits.

30.     When John White first became involved with Tagnetics, and when the shareholders first involved Compass funds, the agreed idea was to make incremental improvements in the design

of the Tagnetics ESL and marginal increases in the number of retailers installing them.

31.     John White used Compass funds to support Tagnetics and to cover the operating costs of Tagnetics' failing business, including its exorbitant salaries and sales and entertainment expenses related to acquiring new Tagnetics investors and generally funding his fraudulent scheme.   In addition to paying payroll and business expenses, John White used Compass money to fund lavish investor and marketing events for Tagnetics. In the most exceptional example, John White spent approximately $500,000.00 of Compass funds for such prospects to attend a Super Bowl, charter a cruise ship to the Bahamas, and return via flight.  Upon information and belief, John White also traveled to Cuba on a private jet at Compass' expense to induce partnerships with, and investments in, Tagnetics.

32.     In 2014, disagreements arose between Michael White and Daniel White on the one hand, and John White on the other, due to John White's exorbitant expenditures of Compass funds on Tagnetics, and on Compass employees tasked with performing sales and marketing and "investment" services for Tagnetics.  Some Compass employees had no job functions related to Compass, but only ones pertaining to Tagnetics, and specifically the sale of investments in Tagnetics.  Additionally, several of these Compass employees at the same time had lucrative employment contracts with both Compass and Tagnetics.

B.  Tagnetics Boondoggle Becomes Investment Scam

33.     In or around 2015, however, in an effort to raise investor funds, John White and the Tagnetics "bankers" and lawyers and other assorted hucksters that he surrounded himself with began employing a warped version of a strategy once ascribed to John White's hero, Steve Jobs: fake it until you make it.  They started using the moniker Powershelf, with John White advertising himself as the "Chairman and co-CEO" of Powershelf, which was not a real company but merely

6

another alias for Tagnetics.

34.     In or around 2015, John White began selling worthless, or significantly overvalued, Tagnetics stock to unwitting investors.  Upon information and belief, John White has sold millions of dollars of worthless Tagnetics stock and thousands of stock options.  Plaintiffs are unable to discern the full extent of such sales as a direct result of John White's deceptive actions and subsequent lock-out of Plaintiffs from Compass.

35.     John White and his associates began drumming up interest from major retailers by pretending that their non-existent electronic labels would not only convey an item's price but would "revolutionize" retail, including a claim by Larry McWilliams, co-CEO of Tagnetics/Powershelf, that Powershelf was the "Holy Grail of retail".

36.     Tagnetics/PowerShelf/Smart Retail Label, according to the hucksters, could advertise a sale, enable "dynamic" pricing, contact consumers' mobile devices by Bluetooth or Near-Field Communication (NFC), tell the temperature inside the refrigerators, report when a shelf was empty, and track inventory with magic "augmented reality" sunglasses.

37.     By 2015, Tagnetics had established a dozen trademarks, or aliases, but was primarily using "Powershelf" and "Smart Retail Label".  They were constantly finding creative ways to pretend to be associated with brand names, like Samsung, Dell, Microsoft, SAP, Hitachi Consulting, and GE Digital, among others.  Sometimes it would be as simple as claiming that Powershelf was "powered by Microsoft Azure".

38.     John White leveraged Compass' reputation and legitimate business, fraudulently asserting that Compass was the parent company of Tagnetics, Powershelf, and Smart Retail, to mislead potential investors and business partners as to the status of Tagnetics, Powershelf, and Smart Retail.  John White has also placed people on the Compass payroll to influence them not to

disclose information about the scheme involving Tagnetics.  For example, John White hired an individual named Luis Fernandez, a former Tagnetics bookkeeper, and placed Luis Fernandez on the Compass payroll when Luis Fernandez was subpoenaed by the plaintiffs in the Tagnetics bankruptcy case.  Luis Fernadez now claims to be the "Chief Financial Officer" of both Compass and Tagnetics, regularly "lending money" from Compass to Tagnetics, even though he knows Tagnetics is insolvent.  Upon information and belief, in September 2019, Luis Fernadez traveled to Saudi Arabia as part of the Smart Retail sales team.

39.     By 2016, the Powershelf/Smart Retail Label had developed a slick-looking private investor "Confidential Information Presentation" that included unauthorized logos of major CPC companies and the largest retailers in the world and appeared to value the Company in excess of one billion dollars.

40.     In the end, Tagnetics/Powershelf was a scam.  After millions of dollars in investments spent mostly on outrageous salaries, marketing expenses, and "prototypes" (props, really), there was no production facility, and there were no electronic tags, no retailers, and no committed customers.  (See Exhibit One, the "final report" of the Tagnetics Chief Technology Officer).  Tagentics/Powershelf/Smart Retail was, and is, ominously reminiscent of Theranos, right down to the $500,000 per year spent for armed security guards to "protect" CEO John White.

41.     Marty Monserez, former Procter & Gamble executive, a long-time friend of John White, and the President of Sales for Compass and Powershelf and Tagnetics - and on the payroll of both Tagnetics and Compass - accidentally left on the main company voicemail account a recording of a conversation he was having with Jack Buller, also of Compass and Tagnetics, where Monserez says the secret part out loud and admits that he has been paid $500,000 per year to pretend like Tagentics/Powershelf/Smart Retail works when he knows that it does not:

a. "I am hardly [working], and he's [John White] paying me $400,000 and ... another $100,000 on account ... He's [John White] so full of shit.  He [John White] was sitting in Walgreen's yesterday with the Beacon people, the digital people and John's saying something that just isn't freakin' true.  He said, and you know Walgreens tested it, the SRLs and we're going to market. He's fuckin' nuts!" (See Exhibit Two).

b. "It would be real easy if it weren't for Scotty and Nick's money [Marty's children]. But it's still kind of easy." (See Exhibit Two).

C. "Newco" / Smart Retail Investment Swindle

42.     "Newco" was the next step in the shell game of dumping previous Tagnetics/Powershelf investors or creditors or who had invested millions of dollars over the years. Indeed, Tagnetics has not had a single shareholder meeting in nearly ten (10) years, despite spending millions of dollars in attorneys' fees.

43.     In 2015, John White and a select few of his Tagnetics partners began discussing the creation of a "Newco".  "Newco" would take significant parts of the Tagnetics investment parlor trick, including a phony "one-penny RFID" electronic sales label ("ESL"), which Tagnetics had, at great expense, trademarked and marketed as "Smart Retail Label. "Newco" would abandon old Tagnetics investors and creditors and emerge as a new investment vehicle where some inside Tagnetics investors, and a group of new helpful partners, would be granted equity positions in "Newco" / Smart Retail without any payment.

44.     In 2018, the Smart Retail Label hucksters came up with a new twist on the electronic magic tag – a "one penny Gen 2 RFID breakthrough".  These magic labels would include an RFID chip that would only cost a penny but could nevertheless not only "virtually eliminate

out-of-stocks on store shelves" but also "build a global network to track assets in real-time".  The Tagnetics/Powershelf/Smart Retail network, claimed John White, included Qualcomm, Microsoft, SAP, and GE.  On top of everything else, these parlor-trick one penny RFID chips would even help reduce climate change.

45.     In 2018, John White used his magic one penny Gen 2 RFID Smart Retail Label network to bamboozle what would turn out to be a precious "investor" – Stephen Stern.

46.     John White offered Stephen Stern the opportunity to become a minority shareholder in "Newco" / Smart Retail Label, Inc. (later renamed Smart Retail, Inc.), to be formed by John White to use RFID technology in retail establishments by using a label that includes an RFID chip.

47.     In reality, John White in 2015 had caused Tagnetics to Trademark the names SRL, and Smart Retail Label, and IoT Smart Retail, with Compass funds.  John White and his Tagnetics partners have been using the magic "Smart Retail" RFID label for a long time.

48.     The initial stake for Stephen Stern would be 1% of the "Newco", and as for the cost of this 1%, "there was no number" – a classic John White sales ploy.

49.     More important to John White, he would have another skilled and aggressive attorney whom he could count on to threaten and intimidate anyone who might try to expose his securities scams – paid with Compass funds and worthless Smart Retail stock.

50.     Compass funds were used to pay for travel for  John White and other Smart Retail co-investors to California, Paris, Saudi Arabia, and other locations for purposes related to Smart Retail, not Compass.

51.     Compass funds were used to pay the legal fees associated with the creation of Smart Retail, paid to Mr. Stern's firm Kagan Stern.

D.  Beginning of the End of Compass Marketing

52.  In 2015, further disagreements arose between Michael White and Daniel White on the one hand, and John White on the other, due to John White's deceitful practices in selling "investments" in Tagnetics, Powershelf, and Smart Retail while falsely presenting Compass and Tagnetics, Powershelf, and Smart Retail as "affiliates" of Compass.  In 2015, John White advised his brothers Michael White and Daniel White that he had to "go away for a while" and that he "might have to do some time" related to his practices selling investments in Tagnetics.

53.  For a very short time, Daniel White mistakenly believed that John White actually wanted to change his course and agreed to serve as CEO of Compass for the purpose of determining the true liabilities of Compass, financial and otherwise, and making a plan to address them directly.

54.  The Compass board of directors ceased functioning due to the disagreements.  In 2016, Daniel White presented an offer to John White to transfer his interest in Compass to John White or an investor more closely aligned to John White's goals and supportive of further Tagnetics/Powershelf/Smart Retail investments but could not cause John White to complete any transfer.

55.  In or about October 2018, Daniel White discovered that John White was falsely claiming that Tagnetics was a subsidiary of Compass and had been leveraging Compass resources, reputation, and goodwill to induce investments and partnerships with Tagnetics.

56.  Upon information and belief, in or about October 2018, Stephen Stern agreed with John White to secretly start a business named Smart Retail Label, Inc., later changed to Smart Retail, Inc. ("Smart Retail"), using assets of Compass and Tagnetics.  On August 2, 2019, John

11

White, Stephen Stern, and others did surreptitiously form Smart Retail in Wyoming, using assets of Compass and Tagnetics.

E. Unauthorized Sexual Harassment and Discrimination Settlement Payments

57.     In or about February 2019, John White secretly used more than $100,000 in Compass funds to pay a settlement to a former Compass employee for claims of sexual harassment and discrimination brought against him by an individual he allegedly hired as Compass employee. In fact, however, John White actively deceived the other directors and defrauded Compass by hiring this employee to work for a fictitious company called Compass Premium Services, placing her on the Compass payroll (and paid an exorbitant and unreasonable amount of more than $500,000 total), and providing her with a vehicle, but he did not require this employee to come to work or perform duties for Compass.

58.     These sexual harassment and discrimination settlement payments were made without the knowledge and over the objection of Michael White and Daniel White, who were aware of the complaint but demanded an investigation of the circumstances of the complaint prior to any resolution.

F. Tagnetics Bankruptcy

59.     On March 19, 2019, a group of disgruntled Tagnetics investors, employees, and creditors filed an Involuntary Bankruptcy Petition against Tagnetics in the United States Bankruptcy Court for the Southern District of Ohio.

60.     Despite having no bankruptcy experience and having a current financial interest in Smart Retail, Stephen Stern entered his appearance on behalf of Tagnetics. Upon information and belief, John White and Stephen Stern immediately attempted to negotiate a settlement with the

Tagnetics employees for their meritless claims while knowing the only source of funds for such a settlement would be Compass.

61.     In July 2019, faced with the immediate deadline to send financial reports of the Tagnetics business to the petitioning creditors, most critically the shareholder ledgers, John White and Stephen Stern decided instead to use Compass funds to pay some of these meritless claims in full – along with attorney's fees – and to pay them with Compass funds.  Upon information and belief, due to the importance of keeping the financial condition of Tagnetics secret, John White and Stephen Stern agreed to wash the Compass funds through the IOLTA account of Kagan Stern on the same afternoon that they were wired from the Compass bank account.

62.     Extraordinarily, in October 2019, Stern appeared in the United States Bankruptcy Court for the Southern District of Ohio as both lead counsel for Tagnetics and as the sole fact witness for Tagnetics.  Stern did not even bring to court John White or any other representative of Tagnetics or Compass.  At that time, Stephen Stern already had a "1% ownership interest" in the new Smart Retail company.

63.     An excerpt of the transcripts of Stephen Stern's testimony are attached as Exhibit Three.  It is included here because it is important to see how far Stephen Stern and John White will go to protect their own personal interests, even to the detriment of their fellow stakeholders.

  a.  "The Court: *Okay.  Mr. Stern, do you have any witnesses you wish to call?*  Mr. Stern: *Yes, Your Honor, I'll be the testifying witness* ..." (See Exhibit Three at p. 17)

  b.  "The Court: *Do you practice in the area of bankruptcy at all?*  Mr. Stern: *I do not.* The Court: *So this is your first foray into that?*  Mr. Stern: *It is.*"

64.     Upon information and belief, Stephen Stern took on his first bankruptcy case ever,

and then he testified himself as the only Tagnetics witness at the hearing because he had to balance/hide the fact that Tagnetics was literally insolvent and that the Tagnetics board at his urging had voted in July 2019 to contingently declare voluntary bankruptcy, while at the same time indicate to the investor audience that Tagnetics/Powershelf/Smart Retail was a viable company on the cusp of the next great new partnership to propel the billion-dollar sale of Smart Retail labels.

65.     Upon information and belief, more important than anything else, because he and John White had used so much Compass money to fund the Tagnetics scam (and his legal bills) and to settle with the Tagnetics creditors with Compass funds *through his firm's escrow account*, Stephen Stern used his testimony to establish that Compass and Tagnetics were "affiliated". Even a cursory reading of the transcript shows how important that was to Stephen Stern. In fact, when the Bankruptcy Court declined to consider the companies together and specifically include Compass in the settlement, Stephen Stern appealed his own settlement to the United States District Court, *3:19-cv-00363 Tagnetics, Inc. v. Kenneth Kayser, et al.*, and the 6th Circuit Court of Appeals for the Sixth Circuit, *20-3556 In re: Tagnetics, Inc. v. Kenneth Kayser, et al.*, to argue that Compass should be specifically included in the settlement, but both Courts declined.

66.     On information and belief, Compass paid all of Stephen Stern's legal bills for Tagnetics, including these two frivolous appeals.

G.   Jo̲h̲n̲ ̲W̲h̲i̲t̲e̲ ̲L̲o̲c̲k̲s̲ ̲O̲u̲t̲ ̲M̲i̲c̲h̲a̲e̲l̲ ̲W̲h̲i̲t̲e̲ ̲a̲n̲d̲ ̲D̲a̲n̲i̲e̲l̲ ̲W̲h̲i̲t̲e̲

67.     In October 2018, Michael White reported to the United States Security and Exchange Commission that, for reasons set forth herein, he believed Tagnetics' management was involved in securities fraud and had raised millions of dollars of investors' funds through unlawful means. Further, Michael White reported that he believed that Tagnetics managers, notably John

14

White, were falsely advertising that Tagnetics was a subsidiary of Compass and using Compass' resources and reputation to endorse and provide credibility for the illegitimate Tagnetics' investment scheme.

68.     In April 2019, Daniel White also reported to the United States Security and Exchange Commission that he believed Tagnetics management was involved in securities fraud and falsely advertising that Tagnetics was a subsidiary of Compass to provide credibility for the illegitimate Tagnetics' investment scheme.

69.     On May 1, 2019, John White directed employees to stop making required distributions to Michael White and Daniel White and stopped paying them.  Further, John White directed that the locks on the Compass office be changed and falsely notified employees that Michael White and Daniel White had been "terminated."  John White also hired armed personal security guards to physically exclude Michael White and Daniel White from the Compass office.

70.     Since May 1, 2019, Michael White and Daniel White have been locked out of Compass' operations and affairs without control or any ability to intervene in the unlawful, destructive, and improper actions described herein.

71.     John White has caused M&T Bank, the company's bank for over 20 years, to stop providing access to the other directors of the Company by making false or materially misleading representations to the bank.

72.     John White has opened new and separate bank accounts for Compass without the knowledge or approval of the other directors to further his fraudulent schemes.

73.     John White raised his own salary to more than $ 600,000 annually.

74.     John White has refused to provide any information to Michael White or Daniel White regarding the business or financial affairs of Compass and provided no reports or information regarding the reporting or payment of federal, state or payroll taxes.

75.     Upon information and belief, John White has caused Compass to file inaccurate tax reports with numerous regulatory agencies.

76.     Upon information and belief, John White has continued the fraudulent Tagnetics investment scheme, including paying disgruntled Tagnetics investors, employees, and creditors with Compass funds laundered through the client trust accounts of his business partner, Stephen Stern.

77.     In April 2020, John White caused Compass to borrow $ 1,320,000 from the U.S. Small Business Administration Paycheck Protection Plan Loan Program, without notice to or the consent of the board of directors or the shareholders.  In February 2021, John White caused Compass to borrow an additional $ 1,280,000 from the U.S. Small Business Administration Paycheck Protection Plan Loan Program, without notice to or the consent of the board of directors or the shareholders.  Upon information and belief, based on a review of the documents publicly available, those applications were not properly authorized, and those funds were not spent as allowed under the program.

78.     Upon information and belief, Compass funds later paid by John White to disgruntled Tagnetics investors, employees, and creditors who had filed a bankruptcy petition against Tagnetics were funded by a Paycheck Protection Plan loan backed by the United States Small Business Administration.

79.     John White, with his business partner Stephen Stern, also used Compass' resources and reputation to endorse and provide credibility for Smart Retail, Inc., a second illegitimate

16

investment scheme, a business prearranged with his business partner Stephen Stern prior to the May 1, 2019 lock-out and then furtively incorporated in Wyoming on August 2, 2019.

80. Upon information and belief, in June 2019, John White hired a friend on Compass' payroll whose job description included working for "IOT Smart Retail," another sham entity created by John White. The employee performs no work for Compass. Instead, she travels with John White on the Company's expense account as a companion for business unrelated to Compass.

81. Upon information and belief, in September 2019, Compass employees John White, Kevin Nemetz, Chris Feiss, Christine Rex, and Lou Fernandez - with Compass funds - traveled to Saudi Arabia as Smart Retail in September 2019 to sell the magic Smart Retail one-penny RFID tags to a customer there, with the support and assistance of Stephen Stern and Mitch Goldsmith.

82. In October 2019, John White hired the president of Tagnetics, Jerry Cain, to also be the president of Compass at a salary of $400,000 plus benefits. Jerry Cain is an illustration of the relationship between Tagnetics, Powershelf, Compass, Smart Retail. Jerry Cain was an investor in Tagnetics and the president of that Company. His October 2019 employment contract with Compass called for an exorbitant salary and the transfer of Compass-owned Tagnetics stock as part of his compensation. Upon information and belief, Jerry Cain is also one of the investors alongside Stephen Stern in Smart Retail.

83. John White has used Compass funds to make many payments (totaling, upon information and belief, more than $2 million) for the benefit of Tagnetics, including payments to its disgruntled investors, creditors, employees, business development costs, and attorneys' fees— none of which have any connection to the business needs or affairs of Compass.

84. Stephen Stern assisted John White's breaches of fiduciary duties and misappropriation of Compass Funds, including assisting in the transfer of Compass funds through

the attorney trust account for his firm's, Kagan Stern Marinello & Beard, LLC's ("Kagan Stern"), to make payments in Tagnetics' bankruptcy case.

85.     Since 2019, John White and Stephen Stern have caused Compass to pay hundreds of thousands of dollars in settlements and legal fees on behalf of Tagnetics with funds from Compass.   Similarly, John White and Stephen Stern have caused Compass to pay hundreds of thousands of dollars in employee expenses and travel costs and legal fees on behalf of Smart Retail with Compass funds.

86.     John White illegitimately controls Compass, and consistently engages in self-dealing transactions and runs the Company as if he is a sole proprietor.

H. Additional Misappropriation and Corporate Waste

87.     In or around May 2019,  John White also spent unnecessary, unreasonable, and exorbitant amounts of Compass money for his personal security. Upon information and belief, the personal security guards are receiving unreasonable and exorbitant compensation totaling more than $500,000.00 annually. Similarly, John White directed Compass to install security cameras in and around the Company's facilities at a cost of approximately $50,000.00.  Compass never had, and currently does not need, extensive physical security for its premises or personal security for John White.

88.     In May 2019, John White also increased the salaries of certain Compass employees to unreasonable and exorbitant amounts, including Todd Mitchell, whose compensation was increased to $600,000 per year and an additional bonus of $50,000.00.

89.     John White also caused Compass to issue a note payable to PTM Capital, LLC (an entity owned or controlled by Mitchell) for $291,361.15.  Upon information and belief, the note payable issued PTM Capital was not supported by valid consideration.

18

90.     Upon information and belief, John White has offered ownership interest in Compass to employees, without authorization and consent by or consultation with, or any notice to, the other directors or shareholders.

91.     Beginning in May 2019, John White began diverting money that had been withheld from employee paychecks for deposit into Compass' 401(k) Plan at Principal Financial, to fund their own newly increased salaries.

92.     Michael White and Daniel White have been the designated trustees of the Compass 401(k) Plan since its inception.  John White is not a trustee and has no authority over contributions to the Plan or the Plan assets.  Nonetheless, John White has blocked Plaintiffs Daniel White's and Michael White's access to the Plan and all Plan information.

93.     In addition to his exorbitant spending on non-Compass expenses, John White has failed to use Compass funds toward necessary and appropriate ends, such as paying rent on its warehouse.  The Company's landlord has twice obtained judgments against Compass for failure to pay rent.

94.     Upon information and belief, John White has entered into unauthorized excessive employment and severance agreements binding Compass to pay extensive salaries and severance to employees he is now terminating.

95.     John White's conduct, as described herein, is illegal, oppressive, and fraudulent.

96.      John White, as described below, continues to use Compass funds for his personal use and benefit, and (by virtue of his domination of the Company and the deadlock among the shareholders) is likely to continue doing so unless a custodian and/or receiver is appointed to preserve all assets during the pendency of this proceeding, and subsequently to wind down its operations and liquidate assets, pursuant to Virginia Code Ann. § 13.1-749.1.

97.     Upon information and belief, since John White locked out Michael White and Daniel White from Compass' operations and management, the Company has lost approximately seventy-five percent (75%) of its contracts, representing a disastrous decline that is likely to continue or even accelerate.

98.     Michael White and Daniel White collectively also own fifty percent (50%) of the outstanding Compass stock, which leaves them unable to remove  John White as a director, to dissolve the Corporation through a vote, or to otherwise break the present deadlock that has developed, to manage the affairs of the Corporation. The deadlock materially and adversely affects the ability of the board to perform its duties to direct the management of the Corporation's business and affairs.

99.     John White has made false police reports and reports to numerous law enforcement agencies Michael White and Daniel White, and their other family members, accusing them of embezzling Compass funds in an effort to discredit Plaintiffs and further alienate them from Compass so he can continue his fraudulent schemes.    John White has also made the same defamatory statements to numerous other third parties.

I.   John White's False Claim of Majority Control of Compass

100.    John White falsely claims to own 66% of Compass.

101.    John White has also falsely claimed to be the only owner or majority owner of Compass.

102.    John White has used his false claims of majority ownership to induce Compass and its agents to take unauthorized actions.

103.   John White has fraudulently reported to banking and other service providers that he is the sole owner of Compass, thereby having Michael White and Daniel White removed as administrators.

104.   Because the Compass shareholders are in fundamental disagreement, the Court's supervision of the dissolution and winding down the process through the appointment of a receiver and/or custodian is necessary to effect these processes in a proper and expeditious manner.

105.   Compass should be judicially dissolved, as all of the independent grounds for such relief provided in Va. Code Ann. § 13.1-747 are present: the directors are deadlocked in the management of corporate affairs; the shareholders are unable to break the deadlock; irreparable injury to the Corporation is threatened or being suffered; corporate assets have been and continue to be misapplied and wasted by John White; and because John White and his agents have acted, are acting, or will act in a manner that is illegal, oppressive, and fraudulent.

IV. Statute of Limitations

106.   Despite Plaintiff's due diligence, they were not able to uncover the truth of John White's actions and fraudulent misrepresentations until no sooner than October 2018.

107.   John White's acts of deception prevented Plaintiffs from learning the truth.  John White went to great lengths to conceal his illegal and fraudulent activities.

108.   It was not until October 2018 - when John White changed Tagnetics home office address to Compass' address – that Michael White and Daniel White discovered that John White was claiming that Compass and Tagnetics were one-in-the-same.

109.   As the project manager and primary contact person with Tagnetics, John White concealed his activities from the Plaintiffs.

110.     On or about October 2018, Michael White and Daniel White first became aware of others claiming to be owners of Compass shares.

111.     After their discoveries, when Michael White and Daniel White attempted to inquire further to ascertain the extent  John White's illegal actions, he responded by fraudulently taking control of and wrongfully locking them out of the Compass.  John White then immediately began defaming  Michael White and Daniel White and even filed false police reports against them and their family members.

112.     John White's illegal and fraudulent activities are continuous and ongoing despite Michael White's and Daniel White's discovery and objections and attempts to resolve the deadlock.

V.  Derivative and Demand Excused Allegations

113.     Michael White and Daniel White bring certain claims in this action derivatively, in the right and for the benefit of Compass, because of breaches of fiduciary duties and other wrongful conduct of Defendants.

114.     Plaintiffs have made numerous requests to John White to cease his conduct.  Any formal demand would be futile because John White has taken control of Compass and has intentionally locked Michael White and Daniel White out of the Company to further his fraudulent schemes.

115.     As a result of the control exerted by John White over Compass, Plaintiffs have standing to bring this claim against John White derivatively on behalf of Compass.

COUNT I

DISSOLUTION

116.    Plaintiff incorporates by reference the allegations of the preceding paragraphs as if set forth fully herein.

117.    John White, by virtue of his position as an officer and director and as holder of fifty percent (50%) of the voting stock, and by virtue of locking out the other two (2) shareholders and directors, exercises complete control and domination over the corporate affairs of Compass to the exclusion of the Michael White and Daniel White.

118.    John White's wrongful acts are illegal, oppressive, and fraudulent.

119.    Compass' directors are deadlocked in the management of the corporate affairs of the Company, and the shareholders are unable to break the deadlock, and:

> a.    irreparable injury to the Corporation is threatened or being suffered, and

> b.    because of the deadlock, the business and affairs of the Corporation can no longer be conducted to the advantage of the shareholders generally.

120.    The shareholders are deadlocked in voting power and have failed, for a period that includes at least two consecutive annual meeting dates, to validly elect successors to directors whose terms have expired.

Wherefore, this Court should enter an Order dissolving Compass pursuant to Virginia Code §13.1-747(A)(1), appointing a receiver to wind up the affairs of the Company, and after dissolution award Michael White and Daniel White a pro-rata share (approximately 50%) of the fair value of the Company.

## COUNT II

### SET ASIDE AND RECOVERY OF FRAUDULENT CONVEYANCES

### (Against All Defendants)

121.  Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

122.  Compass has, at the direction of John White, transferred assets of Compass to John White, Tagnetics, Smart Retail, and others in the form of cash or direct payment of expenses, debts, or employees' salaries, bonuses, or severances.

123.  Compass is a creditor of John White. John White has secreted and continues to secret, Compass assets to other projects he owns or has an interest in.

124.  Accordingly, Plaintiffs request that this Court enter an order (1) setting aside the fraudulent conveyances and (2) requiring that such assets be placed in trust for Compass.

## COUNT III

### TEMPORARY AND PERMANENT INJUNCTION

### (Against All Defendants)

125.  Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

126.  Unless an injunction is granted, John White and, through his direction and control, Compass will continue to engage in fraudulent conduct, including the use of Compass' assets to further John White's fraudulent schemes in Tagnetics and Smart Retail and conveyances in the form of further exorbitant salaries to himself and other illegitimate "employees" of Compass.

127.    These actions will continue to reduce the legitimate assets of Compass and further intertwine Compass with John White's fraudulent schemes.

128.    Accordingly, Plaintiff petitions this Court to enter a temporary and permanent injunction: (1) enjoining Defendants from proceeding with providing funding to or making payments on behalf of Tagnetics, Smart Retail, or any other entity that is not Compass; (2) enjoining John White from continued personal use of Compass assets; (3) enjoining Defendants from further misappropriation of Compass employee 401k payroll deductions; and (4) enjoining Defendants from locking out Plaintiffs from Compass.

## COUNT IV

### APPOINTMENT OF CUSTODIAN OR RECEIVER

#### (Against Compass)

129.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

130.    Defendants have engaged in, and continue to engage in, actions which are ultra vires, fraudulent, and otherwise illegal.

131.    Unless a custodian or receiver is appointed, Defendants will continue to engage in the ultra vires, fraudulent, and otherwise illegal acts complained of herein, to pose an imminent danger to the assets of Compass.

132.    Unless a custodian or receiver is appointed, Compass will continue to engage in fraudulent conveyances in the form of further exorbitant payments to John White and other illegitimate employees to the detriment of the Plaintiffs and Compass itself.

133.   Accordingly, Plaintiffs petition this Court to appoint a receiver for Compass to take charge of the Company's assets and operate the business of the Corporation, as necessary and proper to preserve them, and to take such actions as are necessary to remedy and/or prevent the fraudulent conveyances complained of herein, pending further determination and action of this Court.

COUNT V

ACCOUNTING

(Against Compass)

134.   Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

135.   Based on Defendants' conduct, Plaintiff is equitably entitled to a full accounting of all compensation John White has received from any entity as a result of his unlawful conduct, as well as an accounting of all fees paid by Compass to carry out Defendants' misconduct.

136.   Based on Defendants' conduct, Plaintiff is equitably entitled to a full accounting of all monies paid to, or on behalf of, Defendants because of their unlawful conduct.

COUNT VI

DECLARATORY JUDGMENT

(Against All Defendants)

137.   Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

138.   John White falsely claims to be the 66% percent owner of outstanding Compass common stock and that Michael White and Daniel White together own the remaining 33%.

139.   John White falsely claims to be the majority owner of the outstanding Compass common stock.

140.   In truth, Plaintiffs Michael White and Daniel White collectively own 50% of the outstanding common stock of Compass, 25% each, and John White owns the remaining 50%.

141.   Accordingly, there is a dispute as to the ownership percentages of each of the Compass shareholders, and Plaintiffs are entitled to a declaratory judgment on the issue.

142.   In addition, John White is claiming that Michael White and Daniel White are not directors of Compass.

143.   Plaintiffs contend that the only legitimate directors of Compass are Daniel White, Michael White, and John White.

144.   Accordingly, there is a dispute as to the directors of Compass, and the Plaintiffs are entitled to a declaratory judgment on the issue.

145.   John White claims that Compass is the parent or affiliate of Tagnetics or that Tagnetics is a subsidiary of Compass.

146.   Plaintiffs contend that Compass is not a parent or affiliate of Tagnetics and that Compass has no subsidiaries.

147.   Accordingly, there is a dispute as to the relationship of Compass and Tagnetics and Plaintiffs are entitled to a declaratory judgment on the issue.

148.   Plaintiffs request this Court issue a declaratory judgment that: (a) Daniel White, Michael White, and John White are the owners of 150 shares (or 25%), 150 shares (or 25%) and

300 shares (or 50%), respectively; (b) Daniel White, Michael White, and John White are the sole directors of Compass; and (c) Tagnetics is not an affiliate or subsidiary of Compass.

## COUNT VII

### PETITION FOR DISSOLUTION OF CORPORATION

### (Against Compass)

149.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

150.    Michael White and Daniel White are stockholders of Compass.

151.    The directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock, and irreparable injury to the Corporation is threatened or being suffered, or the business affairs of the Corporation can no longer be conducted to the advantage of the shareholders generally, because of the deadlock.

152.    John White, Director and 50% stockholder, has engaged in illegal, oppressive, and fraudulent acts, as alleged hereinabove.

153.    Compass assets are being misapplied or wasted.

154.    John White wasted and mismanaged the Corporation's assets by manipulating them for the personal benefit rather than for the benefit of the entire Company, including the other shareholders.

155.    John White has engaged in self-dealing transactions that were not open, fair, and honest, and the Corporation was not represented by competent and authorized agents.

156.    John White has engaged in oppressive conduct, and misapplied, mismanaged, and wasted Compass assets in numerous ways, as set forth in this Complaint.

157.   John White's conduct was egregious, domineering, blatantly unfair, and prejudicial to Plaintiffs.

158.   John White's actions have caused the value of Compass to plummet and subjected it to potential criminal prosecution, fines, and penalties.

159.   The pattern and totality of John White's acts have operated to oppress the other shareholders.

160.   Plaintiffs hereby petition this Court that Compass be dissolved and for the appointment of a temporary receiver to take charge of Compass' assets and operate the business of the Corporation, as necessary and proper to preserve them, pending a final determination as to dissolution.


## COUNT VIII

## BREACH OF FIDUCIARY DUTY

### (Against John White)

161.   Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

162.   John White, as an Officer and Director of Compass, stands in a fiduciary relationship with his Corporation, Compass.

163.   John White, as an Officer and Director of Compass, is obligated not to engage in self-dealing to the detriment of Compass and its creditors and stockholders.

164.   John White, as an Officer and Director of Compass, is obligated to perform his duties utmost good faith and loyalty.

165.    John White, as an Officer and Director of Compass, is obligated to perform his duties in a manner reasonably believed to be in the best interest of the Corporation.

166.    John White, as an Officer and Director of Compass, is obligated to perform his duties with the care that an ordinarily prudent person in a like position would use under similar circumstances.

167.    John White breached his duties by using the legitimate assets of Compass to for his own use and to further perpetuate his ongoing fraudulent schemes, including in a company called Tagnetics, Inc, and more recently Smart Retail, Inc.

168.    John White breached his duties by causing Compass to make numerous payments to himself and others for his personal benefit and/or in furtherance in his fraudulent schemes in Tagnetics and Smart Retail.

169.    In committing the breaches set out above, John White has failed to consider the interests of Compass and Compass' creditors, and instead was motivated by his own self-interest.

170.    In committing the breaches set out above, John White failed to exercise any business judgment whatsoever.

171.    In committing the breaches set out above, John White acted carelessly, recklessly, and/or was grossly negligent in the performance of his duties.

172.    As a direct and proximate result of the foregoing, Plaintiffs have suffered substantial damages and Compass' assets were impaired.

173.    The damages from the foregoing breaches of duty are in an amount not yet fully ascertained, and to be proven at trial, but are estimated to be more than $100,000.00.

174.    As a result of John White's egregious and intentional disregard of his fiduciary duties, Plaintiffs seek to recover punitive damages in the amount maximum amount permitted by law.

## COUNT IX

### FRAUD

(Against John White)

175.    Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

176.    John White intentionally made fraudulent misrepresentations to, and omitted material facts from, derivative Plaintiff Compass and its agents to induce Compass to act on his behalf and to the detriment of Compass.

177.    Compass and its agents acted in reasonable reliance on John White's fraudulent statements and had no reason to believe he had omitted material facts and Compass suffered damages as a result.

178.    The damages from the foregoing frauds are in an amount not yet fully ascertained, and to be proven at trial, but are estimated to be more than $100,000.00.

179.    As a result of John White's egregious and intentional frauds committed on Compass, Plaintiffs seek to recover punitive damages in the maximum amount permitted by law.

<u>COUNT X</u>

UNJUST ENRICHMENT

(Against John White)

180.   Plaintiffs incorporate by reference the foregoing paragraphs as though fully set forth herein.

181.   By their wrongful acts and/or their breaches of their duties under the Virginia law, John White was unjustly enriched at the expense and to the detriment of Plaintiffs.   John White was unjustly enriched and obtained a benefit by stealing Compass funds in furtherance of his fraudulent schemes.   John White appreciated and knew of this benefit, and it would be inequitable for John White to accept and retain this benefit without payment of fair value or return of the funds to Compass.

182.   As a result of the misconduct of John White, Plaintiffs seek restitution from John White and seek disgorgement of all benefits obtained by John White because of its wrongful conduct.

183.   The damages are in an amount not yet fully ascertained and to be proven at trial but are estimated to be more than $100,000.00.

184.   As a result of John White's egregious and intentional acts committed on Compass, Plaintiffs seek to recover punitive damages in the maximum amount permitted by law.

## COUNT XI

## DEFAMATION

### (Against John White)

185.    Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

186.    John White made numerous false and defamatory statements regarding Michael White and Daniel White.

187.    John White intentionally made such statements to harm Michael White and Daniel White in an effort to discredit them and prevent them from taking legitimate action against John White to prevent the continuation of John White's fraudulent schemes.

188.    Michael White and Daniel White were harmed because of John White's false and defamatory statements.

189.    Plaintiffs seek non-economic damages exceeding $100,000.00.

190.    As a result of John White's egregious and intentional defamatory statements regarding Michael White and Daniel White, Plaintiffs seek to recover punitive damages in the maximum amount permitted by law.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment, jointly and severally, against Defendants as follows:

(1)     the appointment of a custodian pendente lite pursuant to § Va. Code 13.1-747

(2)     the appointment of a receiver or custodian pursuant to § Va. Code 13.1-748

(3)     For preliminary and permanent injunctions:

    a.    Enjoining defendants from proceeding with providing funding to, or making payments on behalf of, Tagnetics or Smart Retail;

    b.    enjoining John White from continued personal use of Compass assets;

    c.    enjoining Defendants from further misappropriation of employee 401k payroll deductions; and

    d.    enjoining Defendants from locking out Plaintiffs from Compass.

(4)    An order appointing a custodian or receiver to Compass;

(5)    For a full and complete accounting;

(6)    For a declaration that John White hold all improper payments complained of hereinabove in constructive trust for Compass;

(7)    For a declaratory judgment determining the rightful ownership amounts of Compass Common Stock of John White, Daniel White, and Michael White of 50% or 300 shares, 25% or 150 shares, and 25% or 150 shares, respectively;

(8)    For a declaratory judgement determining the rightful directors of Compass to be Daniel White, Michael White, and John White.

(9)    For a declaratory judgement determining that Compass and Tagnetics are not affiliated and that Tagnetics is not a subsidiary of Compass.

(10)    An order requiring the disgorgement of any compensation received by Defendants resulting from their unlawful acts.

(11)    An order awarding rescissory damages.

(12)    For damages to Compass.

(13)    For damages to Michael White and Daniel White.

(14)    An order awarding punitive damages.

(15)   For the dissolution of Compass.

(16)   An award of Plaintiff's costs, disbursements, prejudgment interest and attorney and expert witness fees incurred herein; and

(17)   Award such other just and equitable relief as the Court finds appropriate.

Respectfully submitted,

MICHAEL R. WHITE
39650 Hiawatha Circle
Mechanicsville, MD 20659
(301) 481-5986

DANIEL J. WHITE
Post Office Box 1760
Leonardtown, MD 20650
(240) 298-8156

Exhibit 1

To my fellow directors of Tagnetics          12/16/2018

I'm writing to the Board of Directors of Tagnetics because of the current dire situation of Tagnetics, because the Board has taken no action to rectify the situation, and to give my final report to the Board prior to my resignation as Chief Technical Officer.

Revenues have declined every year over the last five years and the prospects for next year are limited to what Tagnetics will be paid to uninstall the last 18 stores at Whole Foods. After that, there is no revenue on the horizon. We've lost all of our employees, the principal capital of any company. We have no patent coverage on the new products that have been developed. Our key patents have either expired or lapsed because we haven't made the payments. We have also lost the licenses from Northern Illinois University and NCR. The products which have been developed are basically not demonstrable because of the loss of the employees, the documentation that supports them, and the loss of sole source vendors due to the failure to pay our bills. Our prospects are grim. Our key customer was Whole Foods. That business has been lost. Tagnetics has no CFO, only an accountant who works directly for John and does not answer to the Board. We don't have a corporate attorney due to the nonpayment of Mitch Goldsmith. Our offices in both Roanoke and Ohio have been closed. As I stated previously, we have no employees while we have a large liability for unpaid salary. We have no money in the bank. We've been consistently overdrawn. We have no private placement memorandum which is up to date and no credible story to create one to allow us to raise money. We have no directors and officers insurance.

We have had several key opportunities over the last five years which have been mismanaged. In 2013 Whole Foods notified us that they would no longer be installing any new stores until we had an updated product. In response to that, Ron Early and I developed a product specifically to maintain the Whole Foods business which was the segmented tag which the Board had been shown. That product was ready to go to pilot at Whole Foods at the end of 2013. The production was never funded; the explanation from John White was that we don't



TAG00016

care about Whole Foods because we're not a shelf tag company. Consequently, the revenues from Whole Foods have been exclusively replacement parts and maintenance contracts over the last several years and, starting in 2016, uninstalling the stores due to the lack of our ever producing a new product for them. We have consequently lost Whole Foods as a customer and, given their acquisition by Amazon, we have lost a phenomenal opportunity to have Amazon as one of our customers. Over several years the loss of revenue due to the mismanagement of the Whole Foods customer relationship cost the company 30 million dollars in revenue and an unknown amount of revenue after the acquisition by Amazon.

The second large opportunity that was lost was Walgreens. Walgreens had worked with Tagnetics for several years to develop a tag that was exactly what they wanted   By the fourth quarter of 2014 we had a prototype system of the Walgreens product ready to go in to pilot production. As Tagnetics was unable to raise the money to fund this project, I brought to the Board a proposal from Jabel Manufacturing that would not only fund the completion of the engineering aspects of the product, but would also fund the pilot at Walgreens and set up a production facility for Tagnetics, with a total investment of five million dollars for which they required no stock. The only requirement was that they be our manufacturer for a modest bit of time with the proviso that they always provide the lowest cost product and the guaranteed price that would make us profitable. I presented that to the Board in August of 2014 and nothing happened and the Board didn't even ask what was happening with it. We've consequently never produced a product for Walgreens and have lost a billion dollar opportunity. The only requirement that Jabel had in order to make this five million dollar investment was to sit in on one meeting that Tagnetics routinely had with Walgreens without even planning to say anything in that meeting. They just wanted to see that Walgreens was excited about getting the product. That never happened. All we had to do was execute and we would have a billion dollar valuation today. Management has now changed at Walgreens. Resurrecting the opportunity would be difficult if not impossible due to our lack of performance.

Our third major opportunity was our partnership with Panasonic NA. While several directors expressed some dissatisfaction with the agreement, they were a life line when Tagnetics needed one. This partnership was sabotaged by a lack of cooperation and honesty by Tagnetics and an unrealistic view of our valuation. In a conversation I had with the chief counsel of Panasonic NA after they terminated the agreement, I was told that Panasonic was willing to invest $25,000,000 for minority position but was unwilling to deal with John White or Chris Feiss. I conveyed this message to a few board members but got no support to take any action.

As to the recent announcement by John White of a joint venture with SES, it's a great story. Quite similar to the many great stories we've heard from JW over five years that have distracted the BOD from doing its job. None have generated any significant revenue but delayed solving the real issues. One problem with this story, it implies we are sharing proprietary information about our potential customers and technology with the main competitor in the ESL market. ESLs are the only proprietary product that Tagnetics has capable of generating enough revenue to make us successful. While this deal may benefit JW, it will only harm Tagnetics.

Tagnetics has operated over the last five years without a plan, without a budget, without goals, without direction, without ethics, without new revenue, and a lack of oversight by a BOD that has ignored its duty under Delaware law.

I resign as a director of Tagnetics effective immediately. I will resign as CTO on 1/1/2019 in line with the terms of my employment contract due to Tagnetics' violation of the terms of the contract. If the board decides to take corrective action, please contact me prior to 12/31/2018 at my home number 540-384-6199 or by email. Because Tagnetics is insolvent, corrective action must include coming to some agreement with the creditors including the employees who are owed salary. If I do not hear from the BOD, I will join the other creditors in a coordinated legal action.

Dr. Kenneth W. Kayser

Exhibit 2

Transcription Prepared:
July 9, 2020

Page 1

VIRGINIA:

CIRCUIT COURT FOR ARLINGTON COUNTY

DANIEL J. WHITE, etc., et al,   *

            Plaintiffs,   *

vs.   *   Case No.

                    *   CL19003628-00

COMPASS MARKETING, INC., etc.,   *

et al.,   *

            Defendants.   *

* * * * * * * * * * * * * * * * * * * * * * * * *

Transcription of Audio Recording

Transcription by:

    Alfred A. Betz, Court Reporter

Al Betz & Associates, Inc.
877-402-DEPO(3376)

Page 2

1          OPERATOR:  Michael White left a message.

2          JACK BULLER:  What did Ray say?

3          MARTY MONZEREZ:  Jack, we're all from

4    different companies.  They all know that we had

5    other work.

6               Well, yeah you're, well, maybe you're

7    right on it.

8               Maybe.  Well, we'll see.

9               Jack says it was clear to the world that

10   "we'll see" means there's not a chance you're

11   going on that call.

12          JACK BULLER:  I can't -- lie...

13   (unintelligible).

14          MARTY MONZEREZ:  If I stop, I almost

15   said this to Jack, but I -- (unintelligible) I

16   stopped and said wait a minute.  I've got zero to

17   three conference calls a day and a little bit of

18   organizational paperwork to do and following up on

19   leads.  But I'm hardly, not traveling at all and

20   he's paying me 400,000 and I'm theoretically

21   getting a hundred thousand on account.

Transcription Prepared:
July 9, 2020

Page 3

1            How does that sound to you, Marty?

2    Pretty good?

3            JACK BULLER:  As frustration sets in, if

4    you're trying to get something going and you can't

5    because of the lack of trust and the lack of

6    communication (unintelligible).

7            MARTY MONZEREZ:  Dishonesty.  He's so

8    full of shit.  He said "and the other thing Marty"

9    was sitting in Walgreen's yesterday with the

10   Beacon people, the Digital people and John's

11   saying something that just isn't freakin' true.

12   He said, and you know Walgreen's tested it, the

13   SRLs and we're going to market.  He's fuckin'

14   nuts!

15           So Jack's saying you know, Marty, I'm in

16   the room hearing that.  She's hearing that.  She

17   could call any number of people to find out what?

18   Who?  What's he talking about?

19           I said yeah, I know.

20           In fact, Jack, that's a part of me why

21   I'm not sure he wants Bracy and Monzerez on

Page 4

1    several of these calls because I think he wants

2    more flexibility to say it the way John wants it

3    than the way it may be.

4              He says you know, with me sitting in the

5    room I become an enabler to that.  They look at me

6    as having represented that viewpoint.

7              I said "tell me about it.".

8              It would be real easy if it weren't for

9    Scotty and Nick's money.  But it's still kind of

10   easy.  And here's a good example.  Numb nuts just

11   text me.

12             JACK BULLER:  What's the name?

13             OPERATOR:  Recorded over 12 days ago at

14   1:58 p.m.

15             (End of audio recording.)

16

17

18

19

20

21

Page 5

1              C-E-R-T-I-F-I-C-A-T-E

2          I hereby certify that the foregoing is

3    a true and accurate transcription of the audio

4    recording referenced above.

5

6    _____

7    Alfred A. Betz, Notary Public and Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

Transcription Prepared:
July 9, 2020

Page 6

| A | | K | paperwork | text 4:11 |
|---|---|---|---|---|
| account 2:21 | days 4:13 | kind 4:9 | 2:18 | theoretically |
| accurate 5:3 | Defendants 1:9 | know 2:4 3:12 | part 3:20 | 2:20 |
| ago 4:13 | different 2:4 | 3:15,19 4:4 | paying 2:20 | thing 3:8 |
| al 1:3,8 | Digital 3:10 | | people 3:10,10 | think 4:1 |
| Alfred 1:21 5:7 | Dishonesty 3:7 | L | 3:17 | thousand 2:21 |
| ARLINGTON | | lack 3:5,5 | Plaintiffs 1:4 | three 2:17 |
| 1:2 | E | leads 2:19 | Pretty 3:2 | transcription |
| audio 1:15 4:15 | easy 4:8,10 | left 2:1 | Public 5:7 | 1:15,20 5:3 |
| 5:3 | enabler 4:5 | lie 2:12 | | traveling 2:19 |
| | et 1:3,8 | little 2:17 | Q | true 3:11 5:3 |
| B | example 4:10 | look 4:5 | | trust 3:5 |
| Beacon 3:10 | | | R | trying 3:4 |
| Betz 1:21 5:7 | F | M | Ray 2:2 | |
| bit 2:17 | fact 3:20 | market 3:13 | real 4:8 | U |
| Bracy 3:21 | find 3:17 | MARKETING | Recorded 4:13 | unintelligible |
| BULLER 2:2 | flexibility 4:2 | 1:7 | recording 1:15 | 2:13,15 3:6 |
| 2:12 3:3 4:12 | following 2:18 | Marty 2:3,14 | 4:15 5:4 | |
| | foregoing 5:2 | 3:1,7,8,15 | referenced 5:4 | V |
| C | freakin' 3:11 | means 2:10 | Reporter 1:21 | viewpoint 4:6 |
| C-E-R-T-I-F-... | frustration 3:3 | message 2:1 | 5:7 | VIRGINIA 1:1 |
| 5:1 | fuckin' 3:13 | Michael 2:1 | represented 4:6 | vs 1:5 |
| call 2:11 3:17 | full 3:8 | minute 2:16 | right 2:7 | |
| calls 2:17 4:1 | | money 4:9 | room 3:16 4:5 | W |
| Case 1:5 | G | Monzerez 2:3 | | wait 2:16 |
| certify 5:2 | getting 2:21 | 2:14 3:7,21 | S | Walgreen's 3:9 |
| chance 2:10 | going 2:11 3:4 | | saying 3:11,15 | 3:12 |
| CIRCUIT 1:2 | 3:13 | N | says 2:9 4:4 | wants 3:21 4:1 |
| CL19003628-... | good 3:2 4:10 | name 4:12 | Scotty 4:9 | 4:2 |
| 1:6 | | Nick's 4:9 | see 2:8,10 | way 4:2,3 |
| clear 2:9 | H | Notary 5:7 | sets 3:3 | we'll 2:8,10 |
| communication | hearing 3:16,16 | Numb 4:10 | shit 3:8 | we're 2:3 3:13 |
| 3:6 | hundred 2:21 | number 3:17 | sitting 3:9 4:4 | weren't 4:8 |
| companies 2:4 | | nuts 3:14 4:10 | sound 3:1 | White 1:3 2:1 |
| COMPASS 1:7 | I | | SRLs 3:13 | work 2:5 |
| conference 2:17 | | O | stop 2:14 | world 2:9 |
| COUNTY 1:2 | J | OPERATOR | stopped 2:16 | |
| Court 1:2,21 | J 1:3 | 2:1 4:13 | sure 3:21 | X |
| 5:7 | Jack 2:2,3,9,12 | organizational | | |
| | 2:15 3:3,20 | 2:18 | T | Y |
| D | 4:12 | | talking 3:18 | yeah 2:6 3:19 |
| DANIEL 1:3 | Jack's 3:15 | P | tell 4:7 | yesterday 3:9 |
| day 2:17 | John 4:2 | p.m 4:14 | tested 3:12 | |
| | John's 3:10 | | | Z |

Al Betz & Associates, Inc.
877-402-DEPO(3376)

Transcription Prepared:
July 9, 2020

Page 7

| | | | | |
|---|---|---|---|---|
| **zero** 2:16 | | | | |
| **0** | | | | |
| **1** | | | | |
| **1:58** 4:14 **12** 4:13 | | | | |
| **2** | | | | |
| **3** | | | | |
| **4** 400,000 2:20 | | | | |

Exhibit 3

1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

|  |  |  |
|---|---|---|
| IN RE: | * | |
| | * | Case No. 19-30822 |
| | * | |
| TAGNETICS, INC. | * | |
| | * | October 18, 2019 |
| * * * * * * * * * * * * * * * | * | |

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE GUY R. HUMPHREY
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

STEPHEN B. STERN, ESQ.
ROBERT R. KRACHT, ESQ.
For Tagnetics, Inc.

KENNETH W. KAYSER
RONALD E. EARLEY
JONATHAN HAGER
Petitioning Creditors

Transcribed by:
- - - - - - - - - - - - - -
Legal Electronic Recording, inc.
5230 St. Clair Avenue
Cleveland, Ohio 44103
(216) 881-8000
www.lerinc.com

Proceeding recorded by electronic sound recording,
transcript produced by transcription service.
Job #20A7013

2

WITNESSES:

ON BEHALF OF TAGNETICS, INC.:

STERN, STEPHEN

        Direct examination...........Page 18
        Cross-examination............Page 60
        Redirect examination.........Page 86

ON BEHALF OF KENNETH KAYSER:

KAYSER, KENNETH

        Direct testimony.............Page 93
        Cross-examination............Page 105

EARLEY, RONALD

        Direct examination...........Page 129

ON BEHALF OF RONALD EARLEY:

EARLEY, RONALD

        Direct testimony.............Page 132
        Cross-examination............Page 138
        Redirect testimony...........Page 144

ON BEHALF OF JONATHAN HAGER:

HAGER, JONATHAN

        Direct testimony.............Page 148
        Cross-examination............Page 156

LEGAL ELECTRONIC RECORDING, INC.
216-881-8000   www.lerinc.com

17

1  Earley's opening statement as your opening statement?

2          DR. KAYSER:  Yes.

3          THE COURT:  Okay, thank you.  Same questions

4  for you, Mr. Hager.

5          MR. HAGER:  I'll adopt his statement.

6          THE COURT:  This all goes back to the fact

7  that you can't be each other's attorneys, and -- but I

8  don't want to cover the same ground if we don't have to

9  cover the same ground on this stuff.  Okay.  Mr. Stern,

10  do you have any witnesses you wish to call?

11          MR. STERN:  Yes, Your Honor.  I'll be the

12  testifying witness and Mr. Kracht will examine me.

13          THE COURT:  Okay.

14          MR. STERN:  I'm just going to take up with me

15  the binder of exhibits.

16          THE COURT:  That's fine.  I do have one

17  point.  As you referenced Exhibit I, which you said was

18  not attached to your motion.  It does not appear that

19  it's in my booklet either, so --

20          MR. STERN:  Really?  May I take a look at

21  that?

22          THE COURT:  Yeah, absolutely, please.  Ms.

23  Behnken.

24          MR. STERN:  Does your binder have Exhibit I?

25  Okay.