IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID J. BOSHEA,
    *Plaintiff,*

    v.

                    Civil No. ELH-21-00309

COMPASS MARKETING, INC.,
    *Defendant.*

**MEMORANDUM OPINION**

Plaintiff David Boshea was employed by defendant Compass Marketing, Inc. ("Compass") from 2007 until his termination, without cause, in March 2020.  Upon his termination, Boshea claimed that, pursuant to a written employment agreement with Compass, he was entitled to a severance payment, equal to three years of his salary.  Compass and its owner, John White, contested the validity of the written agreement, claiming that White's signature on it was forged. Compass also disputes that plaintiff had an enforceable oral agreement in which he was promised a severance payment.  And, Compass challenges plaintiff's entitlement to recovery under the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code (2016 Repl. Vol., 2021 Supp.), §§ 3-501 *et seq.* of the Labor and Employment Article ("L.E.").

The case proceeded to a six-day jury trial in February 2024.  *See* Docket.  The Second Amended Complaint ("SAC"), filed in September 2021, was the operative pleading. ECF 48.  On February 27, 2024, the jury returned a verdict in favor of Boshea with respect to claims for breach of an oral contract and violation of the MWPCL. ECF 246.  As to the oral contract claim, the jury awarded Boshea $193,000 in compensatory damages, as well as prejudgment interest.  With respect to the MWPCL claim, the jury awarded the sum of $540,000, which equates to three years of Boshea's salary.  However, the jury declined to award statutory enhanced damages.

The Court entered judgment in favor of plaintiff on March 8, 2024, in the amount of $540,000 in compensatory damages.  ECF 254.  In addition, prejudgment interest was awarded on the sum of $193,000, at the rate of 6% per annum, dating from March 3, 2020, and post-judgment interest was awarded on the sum of $540,000, at the rate of 5% per annum.  *Id.*  Pursuant to the MWPCL, the Court also set a deadline for the submission of a motion for attorney's fees.  *Id.*  And, the Court directed the Clerk to close the case.  *Id.*[1]

Thereafter, on April 5, 2024, Compass filed a "Renewed Motion for Judgment as a Matter of Law, or, in the Alternative, Motion for a New Trial."  ECF 255 (the "Motion").  In the Motion, Compass advances four grounds for relief: (1) The Court erred in allowing Boshea to amend his suit at the close of evidence, to add a claim based on an alleged oral contract; (2) Boshea failed to present evidence establishing an oral contract between Boshea and Compass; (3) Boshea did not establish the applicability of the MWPCL; and (4) Compass was prejudiced by the testimony of Boshea's handwriting expert, Donna Eisenberg, because she relied on a supplemental report that had not been disclosed to Compass prior to Eisenberg's trial testimony.  *See* ECF 255.

The Motion is supported by six exhibits.  These include an email from defendant's counsel to plaintiff's counsel and the courtroom deputy, dated February 16, 2024 (ECF 255-1); an excerpt of the trial testimony of plaintiff's handwriting expert, Donna Eisenberg, dated February 22, 2024 (ECF 255-2); an excerpt of Eisenberg's expert report (ECF 255-3); an email from plaintiff's counsel to defendant's counsel, dated February 21, 2024 (ECF 255-4); a document titled "David Boshea April 2007 Memo to John White" (ECF 255-5); and an excerpt of the deposition of David Boshea (ECF 255-6).

---

[1] The deadline for filing the fee petition has been extended to seven days after resolution of defendant's post-trial motions.  ECF 260.

Boshea opposes the Motion.  ECF 261 (the "Opposition").  Compass replied.  ECF 263 (the "Reply").  Defendant also seeks a hearing (ECF 256), which Boshea opposes.  ECF 262.

In my view, no hearing is necessary to resolve the Motion.  *See* Local Rule 105.6. Therefore, I shall deny ECF 256.  But, for the reasons that follow, I shall grant the Motion (ECF 255), in part.  Specifically, I shall deny Compass's motion for judgment as a matter of law. However, I shall grant Compass's motion for a new trial.  Additionally, I shall permit Boshea to move to amend his Second Amended Complaint to add a claim based on an oral contract.  Further, I shall permit the parties to reopen discovery, limited to the matter of allowing plaintiff to obtain additional handwriting exemplars from John White for use by plaintiff's expert.  Each side will also be permitted to depose or redepose the handwriting experts, limited to any revised or new opinions that arise from the additional handwriting exemplars.[2]

## I.      Factual Background[3]

In early 2021, Boshea filed suit against Compass, alleging that, pursuant to a written employment agreement, Compass owed him severance pay equal to three years of salary, in the sum of $540,000.  *See* ECF 1 (the "Complaint").  The suit was amended twice.  *See* ECF 27 (the "First Amended Complaint"); ECF 48 (SAC).

---

[2] If the experts are unable or unwilling to continue their engagement, the Court will consider a request to name a replacement expert.

[3] The Court does not have a copy of the trial transcripts, except for a portion of the proceedings held on February 22, 2024.  ECF 234; *see also* ECF 255-2 (excerpt of ECF 234). Therefore, in recounting the facts, including quotations, I have relied on my notes from the trial, the parties' pleadings, the recordings of the trial proceedings located in "For the Record," and the Docket.

In the SAC (ECF 48), Boshea lodged claims for breach of a written contract (Count I); violation of the Maryland Wage Payment and Collection Law (Count II);[4] and, in the alternative to Count II, violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. Ann. 115/1 *et seq.* (Count III).  Notably, despite the filing of three complaints by Boshea, he never included a claim based on an oral contract.

The issue of whether the MWPCL or the IWPCA applied here was largely resolved before trial, by way of a Memorandum Opinion and Order issued on July 22, 2022.  ECF 110, ECF 111. There, I determined that, based on the evidence of Boshea's travel to Maryland for work, the MWPCL, with its "expansive reach," ECF 110 at 32, applied to this case, rather than the IWPCA. *Id.* at 40.

On June 6, 2023, the parties filed a Joint Pretrial Order ("PTO", ECF 173), in anticipation of the jury trial then scheduled for July 31, 2023.  ECF 145.  The PTO included both parties' exhibit lists.  ECF 173 at 16–17, 18–21.  However, by Order of June 23, 2023 (ECF 178), trial was reset for October 30, 2023.  And, I held a pretrial conference with counsel on October 13, 2023. *See* Docket.  Thereafter, on October 18, 2023, counsel submitted an Amended Joint PTO.  ECF 195.  Unfortunately, just before trial was to begin, one of the lawyers tested positive for COVID-19.  ECF 207.  As a result, trial was reset for February 20, 2024.  ECF 209.

Trial commenced on February 20, 2024, limited to the claims set forth in the SAC.  ECF 230.  In his opening statement, Boshea's counsel seemed to suggest to the jury that, even if the jury found that the signature of John White was forged, the jury could conclude that the parties had an oral severance agreement.  Compass's counsel did not object.  *See* ECF 261 at 1, 3.

---

[4] The caption of Count II refers to the "Maryland Wage Payment and Collection *Act*."  ECF 48 at 5 (emphasis added).  However, the parties otherwise refer to the Maryland Wage Payment and Collection *Law*, or MWPCL.  *See* L.E. § 3-509.

At trial, Boshea testified that prior to joining Compass, he had known John White for 30 years.  White solicited Boshea to work for Compass.  In 2007, White travelled twice to Chicago to meet with Boshea, and the two were "kicking things" back and forth.  According to Boshea, a "security net" was very important to him, and severance was essential to protect his family.  Moreover, Boshea testified that he would not have left his job at Energizer without a promise of severance pay if he were terminated.

Boshea recalled that on May 16, 2007, he received an email from White that contained terms of a proposed employment contract, which included a severance provision.  The email was introduced into evidence as Plaintiff's Trial Exhibit 4 ("Offer Letter"); *see also* ECF 242.  According to Boshea, a severance provision was very important to him.

In particular, the Offer Letter provided for an annual salary of $180,000 as well as various employee benefits.  And, it included an offer of an "'involuntary exit package' of 3 times [Boshea's] salary (1 year will be immediately vested, with the additional 2 years accrued over the next three years)." *Id.*  Further, the Offer Letter states, *id.*:  "Upon acceptance of this letter of intent, I will send you a full employment agreement . . . ."

After Boshea received this email, he "contacted John White and accepted its terms."  ECF 261 at 9.  Thereafter, White came to Chicago, where Boshea resided, and Boshea; Julie Boshea, plaintiff's wife at the time;[5] Rebecca Obarski, the Bosheas' friend who is an attorney; Ms. Obarski's husband; and John White all attended a celebration dinner in Chicago.  *Id.*

Plaintiff's Trial Exhibit 8 is titled "Compass Marketing, Inc. Agreement Relating to Employment And Post-Employment Competition" (the "Agreement").  It is this document that is in dispute.  According to Boshea, White emailed the Agreement to him after Boshea orally

---

[5] Julie and David Boshea are now divorced.

accepted White's employment offer.  The document has some handwritten notations on it.  Of relevance, the Agreement appears to contain the signatures of John White and plaintiff.  *Id.* at 5. But, as noted, the authenticity of the signature of White is hotly contested.

Article 6 of the Agreement is titled "Severance."  *Id.* at 3.  Article 6(A) provides that, upon termination for any reason other than "Cause,"[6] Boshea "shall receive severance payments totaling $180,000 . . . Severance will increase one month for every month employed to a maximum severance of $540,000."  Thus, if plaintiff were terminated immediately after joining Compass, he would be entitled to a total of $180,000.  And, if he were employed by Compass for at least three years, he would be entitled to a maximum of $540,000.

Boshea testified that later in May 2007, he traveled to the Compass office in Annapolis, Maryland.  ECF 261 at 9.  According to Boshea, he had "questions and suggestions" about the Agreement.  *Id.*  However, White stated that he could not change the terms.  *Id.*  White "grabbed" the Agreement, signed it, asked Boshea to sign it, and made a copy of it for Boshea.

Boshea was employed by Compass from 2007 until his termination in March 2020, without cause.  Boshea testified that "he was in Maryland approximately 100-150 days over the course of his 13 years of employment with Compass Marketing."  ECF 255 at 22.  Upon plaintiff's termination, Boshea made repeated requests to White and Compass for his severance pay.  He estimated that he called White around 40 or 50 times.  But, White never responded, and Compass failed to pay him any severance.

---

[6] "Cause" is defined in Article 6(C) of the Agreement.  It is undisputed that Boshea was not terminated for cause.

Julie Boshea was married to plaintiff for over 30 years, including at the time that Boshea joined Compass.[7]  She testified at trial.  Ms. Boshea recalled that she went to a celebratory dinner with plaintiff and White following plaintiff's acceptance of the Offer Letter that White had emailed to Boshea.

Donna Eisenberg was received as an expert for plaintiff in the field of handwriting and document examination.  ECF 234 (Trial Transcript Excerpt, February 22, 2024), at 8.  The defense never deposed her before trial.

Eisenberg's expert report, dated October 11, 2021 (Plaintiff's Trial Exhibit 18), was introduced into evidence, without objection.  There, Eisenberg outlined her finding that "***no conclusion*** can be reached regarding authorship of the Exhibit Q1 signature," *i.e.*, the purported signature of John White on the Agreement.  *Id.* at 3 (emphasis in original); *see also* ECF 242.  She explained, *id.*: "Forensic handwriting examinations are dependent upon the evidence containing sufficiency in ***quality***, ***comparability***, and ***quantity***.  All three of these criteria are deficient . . . ." (Emphasis in original).

Similarly, at trial on February 22, 2024, Eisenberg testified as to the authenticity of the purported signature of John White contained on the Agreement.  As to Plaintiff's Trial Exhibit 8, the Agreement purportedly signed by White and plaintiff, Eisenberg explained that she did not have a sufficient number of suitable exemplars to determine whether White's signature was genuine.

During the direct examination of Eisenberg, defendant's counsel expressed concern that Eisenberg was reading from a report that had not been provided to the defense.  ECF 255 at 23.  At that time, Boshea's counsel revealed that he "forgot" to provide Compass with Eisenberg's

---

[7] David and Julie Boshea are now divorced.

"Surrebuttal Report" of November 2021, containing her response to the report of Jeffrey Payne, the defense handwriting expert.  *See* ECF 234 at 50, 63, 66; ECF 255-4 at 2.[8]  According to plaintiff's counsel, the failure was an "oversight."  ECF 234 at 66.  I characterized the failure to produce the report as "inexplicable," *id.* at 78, and I required Boshea to provide the Surrebuttal Report immediately to defendant.  *Id.* at 55, 67, 68.

Nevertheless, I was not persuaded that the Surrebuttal Report "really varies from [the expert's] original report."  *Id.* at 69.  Specifically, there was no change in the expert's conclusion. *Id.* at 80.  Moreover, Eisenberg had not testified in detail about the request.  *Id.* at 75, 76.  I cautioned, *id.* at 68: "[L]et's not conflate the fact that there was a violation of counsel's obligation to produce that document with whether it actually is significant."

Regardless, I sought to "ameliorate the error" in order to "preserve the ability of the case to go forward."  *Id.* at 80.  For example, although the defense never deposed the plaintiff's expert, I offered the option of a deposition of plaintiff's expert, which the defense declined.

Ultimately, after the Court took a recess to research the matter of discovery violations, and for the reasons stated on the record, I allowed Eisenberg to testify.  But, I limited Eisenberg's testimony to the content of her original report.  *Id.* at 74.  I also gave the defense ample time to confer with its expert about the information in the Surrebuttal Report, and to assist in the impending cross-examination of the plaintiff's expert.  *Id.* at 3.

At the close of plaintiff's case, defendant moved for judgment under Fed. R. Civ. P. 50. *Id.*  I denied the Motion.

---

[8] It is not clear why the report is referred to as a Surrebuttal Report.  But, I shall use the terminology that the parties have used.

In the defense case, Compass called its handwriting expert, Jeffrey Payne. *Id.* He opined that the purported signature of John White on the Agreement was fraudulent.

White testified that he did not recall a celebratory dinner in Chicago with Julie and David Boshea. According to Compass, White "rebutted Boshea's testimony to demonstrate that any contract Boshea alleged to exist merely reflected contract negotiations that took place during the months before Compass Marketing hired Boshea and, therefore, there was no actual contract with definite terms." ECF 255 at 2.

During cross-examination of White, Boshea's counsel sought to undermine his veracity. Plaintiff's counsel established that at White's deposition, White had no recollection about the parties' discussions or negotiations as to the employment of Boshea. ECF 261 at 10; *see also* ECF 242.

At trial, Compass sought to introduce an exhibit that had been included on Boshea's exhibit list, but was not introduced by Boshea. Compass refers to this document as "David Boshea April 2007 Memo to John White." *See*, *e.g.*, ECF 255 at 2-3, 18. The document, an undated memo from Boshea to White, reflects the following subject: "Re: Joining Compass Marketing." *See* ECF 255-5 ("2007 Memo").

The 2007 Memo consists of one page. Most of the words on the page are typed, but there are some handwritten words. The 2007 Memo contains typed lists under three separate headings: "Expectations", "Concerns", and "Compensation." *Id.* The typed words "Severance/buy out agreement: 3X Total annual compensation" appear under the heading "Compensation." But, the words "Severance/buy out agreement" are lined out by hand. *Id.* Next to the remaining typed words, "3X Total annual compensation", it says, in handwriting, "–Sale of Compass." *Id.* In other words, it reads: "3x Total annual compensation [typed] — Sale of Compass [written]." At the

bottom of the page, in handwriting, it states: "*6 month severance," and under those words, it says: "1 yr." *Id.*

As noted, the parties filed a proposed Joint Pretrial Order on June 6, 2023. ECF 173. It contained the parties' exhibit lists, including the exhibit of plaintiff titled "David Boshea April 2007 Memo to John White." *Id.* at 16–17, 18–21. On October 18, 2023, after the trial date of July 31, 2023, was rescheduled (ECF 145, ECF 178), the parties submitted an Amended Joint PTO. ECF 195. Plaintiff again listed the 2007 Memo as an exhibit on his list. *Id.* at 15. But, Compass did not include that document as a defense exhibit. Defendant explains that it did not do so because "Boshea included the exhibit in his exhibit list . . . ." ECF 255 at 21; *see id.* at 2–3.

On February 16, 2024, four days before trial, Compass emailed an exhibit list to plaintiff and to the courtroom deputy, which included the 2007 Memo. ECF 255-1. Compass's email contained one sentence, which stated, *id.* at 2: "Attached is Defendant Compass Marketing, Inc.'s exhibit list in both Word and PDF format." Compass did not alert plaintiff that its exhibit list had been revised to include an exhibit that defendant had previously omitted. *See id.*

As mentioned, although Boshea included the 2007 Memo on his exhibit list, he never introduced it at trial. So, Compass sought to do so. Ultimately, the Court did not permit Compass to introduce the exhibit. *Id.* However, at the time of that ruling, there was no claim of an oral agreement, for which the 2007 Memo is arguably pertinent. Rather, the case was proceeding only on a claim of a written agreement. In any event, the Court permitted White to testify as to the content of the 2007 Memo.

At the close of evidence, White again moved for judgment, pursuant to Rule 50. ECF 238; *see also* ECF 255 at 3. Boshea's counsel moved to amend the SAC to include a claim for breach of an oral contract. As the record reflects, the Court expressed its dismay. After all, the case had

been pending for about three years, and the claim clearly was one of which plaintiff had knowledge.  However, upon review of Fed. R. Civ. P. 15, I permitted the amendment.  And, I denied defendant's motion for judgment.  ECF 238.

The jury began its deliberations on February 27, 2024.  ECF 241.  During deliberations, the jury posed the following questions, ECF 245-1:

> Who gave Mrs. Eisenberg the initial Q1 sample and all known samples?
> Who gave Mr. Payne the initial Q1 sample and all known samples?

Outside the presence of the jury, I reviewed the questions with counsel and asked counsel how they wanted the Court to respond.  Defense counsel replied that I should tell the jury that "it came from Compass."  *See* ECF 261 at 14.  A discussion ensued.  I then advised counsel that I would read the questions for the record and then inform the jury that the samples came from Compass.  I also confirmed that this was acceptable.  After the jury entered the courtroom, I read the questions and informed the jury that Compass provided the samples.

Later that day, the jury returned its verdict.  The jury found that Compass entered into and breached an oral contract for a severance payment.  ECF 246 at 1.  The jury awarded Boshea $193,000 for breach of contract, and also found that Boshea is entitled to prejudgment interest on that amount, calculated at the rate of 6% per year from the date of his termination.  *Id.* at 2.  Further, the jury found that Compass violated the MWPCL by failing to pay the severance payment owed to Boshea.  *Id.*  And, the jury found that Compass's failure to pay the severance amount was not the result of a bona fide dispute.  *Id.*  Further, it determined that, under the MWPCL, Boshea was entitled to a severance payment of $540,000, which equated to three years of salary.  *Id.*  However, the jury declined to award plaintiff any statutory enhanced damages, *i.e.*, a sum up to three times the amount of unpaid wages.  *Id.* at 3.

On March 8, 2024, the Court entered judgment in favor of plaintiff for a total of $540,000 in compensatory damages; prejudgment interest at the rate of 6%, dating from March 3, 2020, as to the sum of $193,000; and post-judgment interest at the rate of 5% per annum on the sum of $540,000.  ECF 254.[9]  The Motion followed.  ECF 255.

## II.     Legal Standards

The Motion is styled as a "Renewed Motion For Judgment As A Matter Of Law, Or, In The Alternative, Motion For A New Trial."  ECF 255.  The Motion implicates Fed. R. Civ. P. 50.

Under Rule 50(a), a party may move for judgment as a matter of law before the case is submitted to the jury.  *See Robinson v. Equifax Information Servs., LLC*, 560 F.3d 235, 240 (4th Cir. 2009).  "A trial court may grant judgment as a matter of law when it 'finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for' the non-moving party." *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 292 (4th Cir. 2009) (quoting Fed. R. Civ. P. 50(a)(1)).

Judgment under Rule 50(a) is warranted "only 'if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof.'" *De Simone v. VSL Pharm., Inc.*, 395 F. Supp. 3d 617, 622 (D. Md. 2019) (quoting *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1249 (4th Cir. 1996)), *aff'd sub nom. De Simone v. Alfasigma USA, Inc.*, No. 19-1731, 2021 WL 613697 (4th Cir. Feb. 17, 2021); *see Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 391 (4th Cir. 2014).  To avoid the burden of holding a new trial in the event that a Rule 50(a) motion is granted, but subsequently reversed on appeal, a district court is "encouraged" to exercise its discretion by deferring its ruling on a Rule 50(a) motion, submitting

---

[9] The Court stated that, as to compensatory damages, Boshea "is not entitled to duplicate recovery."  ECF 254, ¶ 3.

the case to the jury, and then deciding the motion afterwards, should it be renewed. *See Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 405 (2006).

In determining whether the nonmoving party has carried its burden as a matter of law, the district court "may not substitute [its] judgment for that of the jury or make credibility determinations." *Price*, 93 F.3d at 1249. Instead, the court must "view the evidence in the light most favorable to the non-moving party and draw legitimate inferences in its favor." *Anheuser-Busch, Inc.* v. *L & L Wings, Inc.*, 962 F. 2d 316, 318 (4th Cir. 1992). Thus, if there is any evidence on which a reasonable jury could return a verdict in favor of the nonmoving party, the court must deny a Rule 50 motion. *Price*, 93 F.3d at 1249–50.

No later than 28 days after the entry of judgment, the movant may renew a motion for judgment as a matter of law. Under Fed. R. Civ. P. 50(b), "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Following entry of the jury's verdict, "the movant may file a renewed motion for judgment as a matter of law," governed by the standard set forth in Rule 50(a). *Id.*

The Supreme Court has instructed that, "in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record," and not limit its review to the evidence favoring the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id.* The Court underscored that credibility determinations, the weighing of evidence, and the drawing of reasonable inferences are for the jury. *Id.*

As indicated, the court views the evidence in the light most favorable to the prevailing party, without "assessing the credibility of any witnesses." *Ward v. AutoZoner, LLC*, 958 F.3d 254, 263 (4th Cir. 2020); *see Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 196 (4th Cir. 2017). Notably, if "reasonable minds could differ" as to the findings of the jury, then the court should deny the motion. *Id.* The task of the court, then, is to determine whether "the evidence presented, combined with all permissible inferences . . . provide[s] a legally sufficient basis for a reasonable to jury to find" in favor of the nonmoving party. *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 244 (4th Cir. 2020) (alteration added); *see Fontenot v. Taser Intern., Inc.*, 736 F.3d 318, 332 (4th Cir. 2013) (explaining that "'[i]f the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created and a motion for judgment as a matter of law should be denied'") (alteration in *Fontenot*) (internal citation omitted); *see also De Simone*, 395 F. Supp. 3d at 622 (stating that the district court "'may not substitute [its] judgment for that of the jury or make credibility determinations'") (quoting *Price*, 93 F.3d at 1249) (alteration in *De Simone*).

Under Rule 50(b), a party "may include an alternative or joint request for a new trial under Rule 59." Pursuant to Rule 59, a district court may set aside a verdict and grant a new trial under the following circumstances: "if (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 346 (4th Cir. 2014); *see Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998); *Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1237 (4th Cir. 1995).

"The standard for granting a Rule 59 motion, while permitting the court to assess credibility, is still a high bar." *Burkhart v. Dickel*, CCB-12-3320, 2017 WL 5635445, at *1 (D.

Md. Jan. 3, 2017).  In making its determination, "a trial judge may weigh the evidence and consider

the credibility of the witnesses," and may set aside the verdict, "even if supported by substantial

evidence." *Poynter by Poynter v. Ratcliff*, 874 F.2d 219, 223 (4th Cir. 1989).  Whether to grant or

deny a Rule 59 motion is a matter generally committed to the court's sound discretion.  *Chesapeake*

*Paper Prods. Co.*, 51 F.3d at 1237.

Notably, "a motion for a new trial should not be granted . . . where the moving party has

failed to timely object to the alleged impropriety giving rise to the motion."  *Dennis v. Gen. Elec.*

*Corp.*, 762 F.2d 365, 367 (4th Cir. 1985); *see De Simone*, 395 F. Supp. 3d at 636.  Moreover, a

Rule 59 motion may not be used "to raise arguments or present evidence that could have been

raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008);

*see Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).  And, Rule 59 is

not a vehicle to relitigate issues that were previously decided.  *Delong v. Taylor*, 790 F. Supp. 594,

618 (E.D. Va. 1991).

Fed. R. Civ. P. 61, entitled "Harmless Error," is also pertinent.  It states:

> Unless justice requires otherwise, no error in admitting or excluding
> evidence—or any other error by the court or a party—is ground for granting a new
> trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing
> a judgment or order.  At every stage of the proceeding, the court must disregard all
> errors and defects that do not affect any party's substantial rights.

### III.    Discussion

### A.  Amendment of Second Amended Complaint To Add Oral Contract Claim

### 1.

Suit was filed in February of 2021.  ECF 1.  Thereafter, it was amended twice.  *See* ECF

27, ECF 48.  As indicated, plaintiff never asserted a claim for breach of an oral contract in any of

his three complaints.  It was not until the end of the presentation of evidence at trial—about three

years after suit was filed—that plaintiff moved to amend his suit to include a claim based on an

oral contract.  ECF 255 at 7.  Despite my surprise (if not frustration) at such a belated request, I

granted the motion to amend, for the reasons stated on the record.

As Compass puts it, Compass "always understood the issue in this case [to be] whether

there was a written contract between the parties."  *Id.* at 9.  It contends, *id.* at 7: "The timing of

this amendment, coupled with the nature of the amendment, substantially prejudiced Compass

Marketing and it was an error for the Court to allow the amendment."  For the reasons discussed

below, I agree.

According to Compass, the amendment "weighs in favor of a finding of prejudice," because

it "added new factual allegations, a new count, and an entirely new legal theory."  *Id.* at 10.

Defendant maintains that it "prepared for and elicited testimony at trial based on the claims set

forth in" the SAC, which concerned only an alleged written agreement.  *Id.* at 10–11.  Defendant

adds, *id.* at 11: "Had Compass Marketing been aware that what it believed to be negotiations

related to Boshea's written contract claim would later form the basis for Boshea's oral contract

claim, it would have taken additional discovery and asked Boshea about this alleged oral contract

at his deposition (and at trial), and argue differently about the relevance of such negotiations at

trial, which it did not get the opportunity to do."  Thus, Compass claims that Boshea's "eleventh

hour amendment . . . prejudiced [defendant's] ability to prepare for and defend against Boshea's

claims . . . ."  *Id.* at 11.

Additionally, Compass asserts, *id.* at 12: "Because the Court should not have allowed

Boshea to amend his Complaint at such a late juncture – after the close of all evidence at trial –

the jury should not have been given the option to enter an award for breach of an oral contract."

*Id.*  And, because the jury found that Compass did not breach a written contract, Compass insists

that "judgment should be entered in [its] favor without any liability for Compass Marketing, or, in the alternative, a new trial should be ordered." *Id.*

Compass also complains, ECF 255 at 18 (emphasis and capitalization removed): "Additional evidence Compass Marketing was precluded from introducing also would undercut Boshea's belated claim for breach of oral contract." Specifically, Compass argues that it was "precluded from fully examining Boshea about the negotiations of the alleged [oral] agreement, as the Court ruled that Compass Marketing could only examine Boshea about negotiations related to the alleged severance position, not other items that were part of the negotiations or other alleged contract terms." *Id.*

In particular, Compass focuses on the Court's exclusion of the 2007 Memo (ECF 255-5). Compass posits that it "was unable to fully illustrate to the jury or have Boshea explain his request for six months of salary as severance (as specifically reflected in the memo), which stands in contrast to the three years of salary (as severance) he ultimately testified about." ECF 255 at 18–19. Further, Compass asserts, *id.* at 20: "Boshea testified at his deposition on January 29, 2024 that he handwrote notes on this document reflecting the parties' negotiations, including a note indicating a potential severance amounting only to one year or six months of salary." *See* ECF 255-6 at 4–8 (Excerpt of Boshea Deposition Transcript, dated 1/29/24).

In regard to the Court's ruling prohibiting Compass from introducing into evidence the 2007 Memo, Compass contends that the document was of no surprise to Boshea; would not have disrupted the trial; is significant to Compass because it would remind White of the content of negotiations with Boshea, which he previously could not recall; and was significant to Compass's claims, including refuting that there was an oral agreement between Compass and Boshea. ECF

255 at 19–20.  Thus, Compass argues that it "was error to exclude this exhibit from evidence and Compass Marketing was prejudiced as a result."  *Id.* at 21.

Boshea counters that "Compass knew long before trial that David Boshea intended to present an oral contract theory."  ECF 261 at 10 (emphasis and capitalization removed).  Indeed, Boshea characterizes as "preposterous" the assertion by Compass that it was unaware of plaintiff's intention to pursue such a claim.  *Id.*  To support the assertion, Boshea points to his filings in 2022, in which he "introduced his intention to proceed under an alternative contract theory that an oral contract existed . . . ."  *Id.* at 2.

In this regard, Boshea notes that on July 31, 2022, after the dispositive motions deadline had passed (*see* ECF 73), he filed a "Motion to Amend Scheduling Order and for Leave to File His Partial Motion for Summary Judgment."  *See* ECF 113 ("July 2022 Motion").[10]  The July 2022 Motion included the proposed motion for partial summary judgment.  *See* ECF 113-1.  There, Boshea sought, *inter alia*, summary judgment as to Counts I, II, and III of the SAC.[11]

Boshea also included a 25-page memorandum in support of the partial summary judgment motion.  ECF 113-2.  He argued, in part, that Boshea "can enforce his severance agreement through the application of the statute of frauds, even though Compass claims its Chairman, John White, did not sign it."  ECF 113-2 at 1; *see* Md. Code (2020 Repl. Vol., 2023 Supp.), § 5-901 of the Courts and Judicial Proceedings Article ("C.J.").

In particular, Boshea asserted the right to enforce the severance agreement "on two bases: First, he may enforce it under the statute of frauds.  Second, he has an entitlement to his severance

---

[10] ECF 113 included fifteen exhibits, and the total filing consisted of a total of 1,347 pages. *See* docket.

[11] Boshea also sought summary judgment as to Count III of Compass's Counterclaim (ECF 38).  Compass later withdrew its Counterclaim.  *See* ECF 195 at 8.

payments under the doctrine of promissory estoppel." ECF 113-2 at 9. He added, *id.* at 10: "Compass hired David Boshea as an employee at will." And, Boshea referenced the offer letter of May 16, 2007, *id.* at 11, as well as the parties' negotiations and conversations. *Id.* at 11–12. This hardly amounts to a clear assertion of intent to pursue an oral contract claim.

At that time, Compass opposed ECF 113. *See* ECF 114. The opposition focused largely on the untimeliness of the July 2022 Motion and the lack of diligence by plaintiff's counsel so as to justify the belated filing. *Id.*

By Memorandum (ECF 117) and Order (ECF 118) of August 29, 2022, the Court denied ECF 113.

Here, in Compass's Reply to the Motion, Compass insists that Boshea's July 2022 Motion (ECF 113) did not put Compass on notice that Boshea was pursuing an oral contract claim, because Compass did not "review" the partial motion for summary judgment. ECF 263 at 4. According to Compass, it "was under no obligation to review and oppose" the July 2022 Motion, "because Boshea merely asked the Court to allow that substantive motion to be presented to the Court and the motion (along with the memorandum) was filed after the Scheduling Order's dispositive motion deadline." *Id.* And, Compass argues that because the Court denied the July 2022 Motion in its Memorandum (ECF 116) and Order (ECF 117) of August 23, 2022, Boshea's motion for partial summary judgment was never before the Court. ECF 263 at 4.

Defense counsel's assertion that he did not review ECF 113 is certainly curious. For one thing, Compass filed an opposition. ECF 114. It would seem that counsel would have reviewed the Motion in order to respond to it. Moreover, Compass's lawyer has left no stone unturned in his defense of this case. Because there could be useful information in an opponent's filing, it seems quite unlikely that Compass's lawyer failed to read it.

Nevertheless, neither ECF 113, ECF 113-1, nor ECF 113-2 constitutes notice by Boshea of an intent to add a claim based on an oral contract. And, to the extent that the submission at ECF 113 reveals such an intent, it cuts against plaintiff, not defendant. If plaintiff wanted to add an oral contract claim, he should have sought leave to amend his suit, well before trial, not after the conclusion of evidence at the trial. That Boshea failed to add such a claim prior to trial supports Compass's belief that Boshea was not, in fact, pursuing such a claim. It would also explain defendant's decision to prepare for trial only on the claims based on a written agreement.

Boshea also posits that "the Court's preliminary jury instructions alerted Compass to the fact that David Boshea could prove his case under an oral contract theory." ECF 261 at 2. This contention is specious.

In the Court's preliminary instructions to the jury (ECF 202), I said, in part: "**A contract may be oral** or written or established by conduct. But, each party must agree to be bound by its terms." *See* ECF 261 at 2 (emphasis in ECF 261). Neither party objected.

As Compass indicates, the Court provided "nothing more than a general statement of law that is not tailored to the particulars of this case . . . ." ECF 263 at 5. In my view, the Court's boilerplate explanation of the fact that contracts can be oral or written hardly constitutes a basis on which to find that defendant was alerted to the existence of an oral contract claim.

Boshea also posits that, "[d]uring David Boshea's opening statement, his counsel informed the jury that the plaintiff would proceed under both a written signed contract theory and an unsigned oral contract theory," and Compass did not object. ECF 261 at 3. Compass maintains that it was not required to object to plaintiff's opening statement, vaguely referencing an alternative oral contract claim. Moreover, Compass explains that it did not even realize that plaintiff was

seeking "to prove the unpleaded issue.'"  ECF 255 at 10 (quoting *Campbell v. Bd. of Trs. of Leland Stanford Junior Univ.*, 817 F.2d 499, 506 (9th Cir. 1987)).

Plaintiff's counsel made a vague reference to an oral contract during his opening statement. That is hardly notice of a new claim, so as to preclude Compass from later challenging the belated amendment.  Trial in federal court is not a game of "gotcha."

As to Compass's point that the Court prevented it from introducing the 2007 Memo (ECF 255-5), Boshea counters, ECF 261 at 7: "The only party that prevented Compass from using the exhibit is Compass by failing to include it on its exhibit list."  In any event, Boshea contends that the jury heard White's testimony regarding the contents of the exhibit, and the "decision to deny Compass' effort to admit an exhibit it did not include on its exhibit list is, at best, harmless error under FRCP Rule 61."  *Id.* at 7.

I agree that Compass did not properly identify this exhibit before trial, in contravention of Fed. R. Civ. P. 26 and Local Rule 106.7.  It is no excuse that plaintiff listed the exhibit.  And, Compass concedes, as it must, that White was permitted to testify as to the content of the 2007 Memo.  *See* ECF 255 at 3; *see also* ECF 261 at 7, 8.

I cannot overlook that my ruling might well have been different if plaintiff had moved even when trial began to add an oral contract claim.  At the time of my ruling, however, Boshea was pursuing only a written contract claim, and the 2007 Memo had little relevance to that claim.  The exhibit is, however, pertinent to an oral contract claim.  And, had I known of the oral contract claim when I ruled, I likely would have concluded that any any prejudice to Boshea from use of an exhibit not listed by the defense gives way to the prejudice to the defendant if introduction of the exhibit is barred for a technical reason.  This is particularly so here, given that Compass obtained the exhibit from Boshea.  Moreover, as Compass argues, a "picture is worth a thousand

21

words and the jury was denied the opportunity to see Boshea's own written notes about the contract negotiations . . . ."  ECF 255 at 7.  *Id.*

**2.**

At the trial, in the brief time that the Court had to consider the motion to amend, I reviewed Fed. R. Civ. P. 15.  Rule 15 is titled "Amended and Supplemental Pleadings."  Rule 15(b)(1) states:

> (b) AMENDMENTS DURING AND AFTER TRIAL.
>
>> (1) *Based on an Objection at Trial*. If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

Fed. R. Civ. P. 15(b)(2), titled  "For Issues Tried by Consent," is also relevant.  It states, in part:  "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.  A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue."

Courts are permitted to grant amendments to the pleadings even during trial or at the close of evidence.  *See, e.g.*, *Pomer v. Schoolman*, 875 F.2d 1262, 1268 (7th Cir. 1989) ("The close of the evidence is awfully late in a lawsuit to move for an amendment to the complaint, unless the purpose is merely to conform the pleadings to the evidence; such an amendment is not untimely even if sought after judgment."); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) ("[M]ere passage of time need not result in refusal of leave to amend; on the contrary, it is only undue delay that forecloses amendment. Amendment can be appropriate as late as trial or even after trial.").

22

The critical focus concerns prejudice to the opposing party.  The Fourth Circuit explained in *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006):

> Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. A common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." [*Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).]  An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred. *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case.").

In my view, Boshea engaged in trial by ambush.  By plaintiff's own admission, he was aware since at least July 2022, with the filing of ECF 113, that he had a claim based on an oral contract.  Yet, Boshea failed to move to amend his complaint at any time in the period between July 2022, with the filing of ECF 113, and the trial in February 2024.  Compass was entitled to prepare for trial and to expect to try the case only on claims that were asserted in the SAC.

To be sure, the claims of an oral and written contract may be related.  The evidence adduced by plaintiff in support of the written Agreement included events that preceded the alleged execution of the written Agreement, on which plaintiff relies with respect to the establishment of a claim of an oral contract.  But, the elements of the two claims are distinct, and the defense understandably was focused on disputing the validity of the written Agreement.  During the trial, Compass had no reason to challenge alleged shortcomings in the proof of an oral contract.

In addition, the Court made an important evidentiary ruling based on its understanding that the case involved claims arising only from a written agreement.  As discussed, I barred Compass from introducing the 2007 Memo because Compass had not included it on its exhibit list.  But, as I have said, I may have well ruled otherwise if I knew of Boshea's oral contract claim.

23

Moreover, the amendment to add an oral contract claim spawned a serious legal issue that was briefed only on the fly, concerning the defense of the statute of frauds. *See* ECF 237. And, the parties never addressed the statute of frauds in connection with the MWPCL claim. Specifically, the parties did not consider whether the jury should have been limited to the award of only one year of severance under the MWPCL if it found an oral contract but not a written one.

In sum, I conclude that allowing Boshea to amend his suit after the presentation of evidence, to add an oral contract claim, resulted in a miscarriage of justice. However, because I believe that Boshea presented a viable claim for an oral contract, discussed *infra*, I shall deny Compass's request for entry of judgment under Rule 50. Instead, I shall grant Compass's motion for a new trial, pursuant to Rule 59.

## B.  The Oral Contract Claim

### 1.

Compass contends that "Boshea failed to meet his burden to establish the existence of an oral contract at trial." ECF 255 at 12 (emphasis and capitalization removed). Compass asserts, *id.* at 14: "To succeed on a breach of contract claim, a plaintiff must prove, by a preponderance of the evidence, 'a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" (Quoting *RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 655, 994 A.3d 430 (2010)). Compass adds that a plaintiff must "establish the existence of a contract and the definite terms of a contract." ECF 255 at 14. According to Compass, Boshea did not do so here. *Id.* Therefore, Compass argues that either judgment should be entered against Boshea, or the Court should grant a new trial, "because the jury's verdict goes against the clear weight of the evidence . . . ." *Id.* at 21.

In particular, Compass posits that Boshea "did not testify as to the definite terms of any oral contract that he entered into with Compass Marketing." *Id.* at 15.  Rather, in Compass's view, Boshea's "testimony was based solely on the alleged written Agreement . . . ." *Id.*  Compass adds, *id.* at 16: "Boshea's testimony did not establish that there was an oral contract with precise terms; it only established that the parties were negotiating the terms of Boshea's employment prior to Compass Marketing hiring him."  Further, defendant contends, *id.*: "Boshea acknowledged that there was no oral agreement with definitive terms when he testified that he went to Annapolis with an alleged draft of the written Agreement to continue negotiating with John White,[] and he further acknowledged that each of the additional 'asks' he allegedly proposed to John White were rejected."  Thus, Compass asserts that "there was no offer and acceptance reflective of any oral agreement and, at most, there were ongoing negotiations."  *Id.*

In addition, Compass argues that Boshea's assertion that there was a written agreement "undermines Boshea's claim for breach of oral contract," because there would then have been no "purpose in having a written Agreement."  *Id.* at 16.  And, Compass contends that a written contract supersedes an oral one, and, "according to Boshea, the parties intended to be bound by a written agreement, not any alleged previous oral agreement(s)."  *Id.* at 17.

Further, Compass maintains that Boshea's oral contract claim is barred by the statute of frauds.  Compass explains that, to avoid the bar of the statute of frauds, "the contract must be fully performed within one year, but it was impossible for Boshea to have performed the alleged contract in one year and earned [sic] the $540,000 awarded to him as unpaid wages because the only way to have earned such a payout would have been to work at least three years."  ECF 263 at 2.  Compass adds that "there was no scenario in which . . . Boshea could earn severance in the amount of $540,000 within one year of the commencement of his employment with Compass Marketing."

*Id.* at 12 (citing *Thompson v. Paul G. White Tile Co.*, 19-cv-513-SM, 2019 WL 4060375 (D.N.H. Aug. 28, 2019)).  Therefore, "any alleged oral agreement [is]  outside the statute of frauds . . . ." ECF 255 at 11–12.  Accordingly, Compass insists that the Court must "limit Boshea's recovery under the alleged oral contract to the maximum Boshea could have earned within one year of employment with Compass Marketing, which is $180,000, not $540,000."  ECF 263 at 13; *see id.* at 12.

Boshea counters that the evidence readily established the elements of an oral contract.  ECF 261 at 9.  He recounts that, upon receiving an email containing the Offer Letter from John White, he "contacted John White and accepted its terms."  *Id.*  The Offer Letter states: "Upon acceptance of this letter of intent, I will send you a full employment agreement . . . ."  *See* Plaintiff's Trial Exhibit 4.  And, Boshea maintains that he subsequently received the Agreement (Plaintiff's Trial Exhibit 8), which is more detailed than the Offer Letter.

Boshea observes that the oral agreement had two parties—Compass, through John White, and Boshea—both of whom had the legal capacity to make agreement.  *Id.* at 9, 10.  Moreover, he posits that the parties "orally agreed in both Illinois and at Compass' offices in Annapolis that each would be bound by the terms of the agreement John White delivered [via email] before the celebratory dinner."  *Id.* at 10; *see also* Plaintiff's Trial Exhibit 4.  Thus, Boshea contends, ECF 261 at 10: "Since the oral agreement was shown by the document John White delivered, the agreement was stated with reasonable certainty."  And, Boshea posits that consideration for the agreement was established by the thirteen years of Boshea's employment at Compass.  *Id.*

Boshea also complains that "Compass raises for the first time in the current motion" the issue as to the adequacy of proof of the elements of a claim based on an oral contract.  ECF 261 at 5–6.  He observes that Compass's Rule 50 motion was made solely as to the untimeliness of

Boshea's oral contract claim, and did not include "an argument concerning the elements of a breach of contract" or how Boshea failed to establish those elements. *Id.* at 8.

Additionally, Boshea contends that the statute of frauds does not preclude enforcement of the Agreement with regard to severance. *Id.* at 12. According to Boshea, he was an at-will employee, and the Agreement could be performed "within one year from the date of contracting." *Id.* Specifically, Boshea points out that, "[b]y the severance agreement's terms, Compass would owe David Boshea $180,000 if it terminated him without cause the day after it hired him." *Id.* He also argues that the three-year severance term was included in Boshea's offer letter, in which he was "offer[ed] an 'involuntary exit package' of 3 times [his] salary (1 year will be immediately vested, with the additional 2 years accrued over the next three years)." *Id.* at 13 (alterations added). And, in his view, the "offer letter did not require that Compass sign it to be enforceable." *Id.*

## 2.

Jurisdiction in this case is founded on diversity of citizenship. ECF 48, ¶ 5. Both parties assume that Maryland law applies to the issues of contract formation and breach of contract (see ECF 255 at 12–15) and as to the issue of the statute of frauds (*see* ECF 261 at 12; ECF 263 at 9–13). Therefore, it is helpful to review the principles of contract formation and contract interpretation under Maryland law.

In regard to state law claims litigated in federal court based on diversity jurisdiction, federal courts apply federal procedural law and the substantive law of the state in which the proceeding is brought. *See e.g. Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Leichling v. Honeywell Intern., Inc.*, 842 F.3d 848, 851 (4th Cir. 2016); *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 74 (4th Cir. 2016); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). *See, e.g.*, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Albemarle Corp. v.*

*AstraZeneca UK Ltd.*, 628 F.3d 643, 652-53 (4th Cir. 2010); *see also Prof'l Massage Training Cent., Inc. v. Accreditation Alliance of Career Schools and Colls.*, 781 F.3d 161, 180 (4th Cir. 2015); *Demetres v. E. W. Const. Inc.*, 776 F.3d 271, 273 (4th Cir. 2015). Maryland is, of course, the forum state.

With respect to contract claims, Maryland applies the law of the state in which the contract was formed ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another state. *See, e.g. Oliveira v. Sugarman*, 451 Md. 208, 233 n.17, 152 A.3d 728, 743 n.17 (2017); *Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 618, 925 A.2d 636, 648 (2007); *Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012), *aff'd*, 437 Md. 372, 86 A.3d 1245 (2014). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Konover Property Trust, Inc. v. WHE Assocs.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002) (citing *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672, 698 A.2d 1167, 1200 (1997), *cert. denied*, 348 Md. 205, 703 A.2d 147 (1997)).

In general, a contract is defined as "a promise or set of promises for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." Richard A. Lord, 1 *Williston on Contracts* § 1:1, at 2–3 (4th ed. 1990); *accord* Restatement (Second) Contracts § 1, at 5 (1981); *see also Maslow v. Vanguri*, 168 Md. App. 298, 321, 896 A.2d 408, 421–22 (Hollander, J.), *cert. denied*, 393 Md. 478, 903 A.2d 416 (2006).

A contract may be oral or written, as well as express or implied. "'An express contract has been defined as an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in

writing.'" *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 706, 114 A.3d 676, 688 (2015) (quoting *Cnty. Comm'rs of Caroline Cty. v. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94, 747 A.2d 600, 606 (2000)).

"'A contract is formed when an unrevoked offer made by one person is accepted by another.'" *Cty. Comm'rs for Carroll Cty. v. Forty W. Builders, Inc.*, 178 Md. App. 328, 377, 941 A.2d 1181, 1209 (2008) (Hollander, J.) (quoting *Prince George's County v. Silverman*, 58 Md. App. 41, 57, 472 A.2d 104, 112 (1984)). Thus, mutual assent is an integral component of every contract. *See, e.g.*, *Joseph Saveri Law Firm, Inc. v. Michael E. Criden, P.A.*, 759 Fed. App'x 170, 173 (4th Cir. 2019) (per curiam) (recognizing as a "bedrock principle of law" that an offeree must accept an offer to form a contract); *Cochran v. Norkunas*, 398 Md. 1, 14, 919 A.2d 700, 708 (2007); *Advance Telecom Process LLC v. DSFederal, Inc.*, 224 Md. App. 164, 177, 119 A.3d 175, 183 (2015).[12]

In determining whether there is an enforceable contract, courts often begin the analysis "by discussing the essential prerequisite of mutual assent to the formation of a contract . . . ." *Falls Garden Condo. Ass'n, Inc. v. Falls Homeowners Ass'n, Inc.*, 441 Md. 290, 302, 107 A.3d 1183, 1189 (2015); *see also Mitchell v. AARP*, 140 Md. App. 102, 116, 779 A.2d 1061, 1069 (2001) (Hollander, J.) ("An essential element with respect to the formation of a contract is 'a manifestation of agreement or mutual assent by the parties to the terms thereof; in other words, to establish a

---

[12] In Maryland, the interpretation of a contract is "ordinarily a question of law for the court." *Grimes v. Gouldmann*, 232 Md. App. 230, 235, 157 A.3d 331, 335 (2017); *see also Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 7, 98 A.3d 264, 268 (2014); *Myers v. Kayhoe*, 391 Md. 188, 198, 892 A.2d 520, 526 (2006); *Towson Univ. v. Conte*, 384 Md. 68, 78, 862 A.2d 941, 946 (2004); *Lema v. Bank of Am., N.A.*, 375 Md. 625, 641, 826 A.2d 504, 513 (2003); *Under Armour, Inc. v. Ziger/Snead, LLP*, 232 Md. App. 548, 552, 158 A.3d 1134, 1136 (2017). This includes the determination of whether a contract is ambiguous. *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 163, 829 A.2d 540, 544 (2003).

contract the minds of the parties must be in agreement as to its terms.'") (citations omitted). "Manifestation of mutual assent includes two issues: (1) intent to be bound, and (2) definiteness of terms." *Cochran*, 398 Md. at 14, 919 A.2d at 708.

Whether oral or written, a contract must express with certainty the nature and extent of the parties' obligations and the essential terms of the agreement. *Forty W. Builders, Inc.*, 178 Md. App. at 377–78, 941 A.2d at 1209–10; *see Canaras v. Lift Truck Serv.*, 272 Md. 337, 346, 322 A.2d 866, 871 (1974). If an agreement omits an important term, or is otherwise too vague or indefinite with respect to an essential term, it is not enforceable. *Mogavero v. Silverstein*, 142 Md. App. 259, 272, 790 A.2d 43, 51 (2002); *see L & L Corp. v. Ammendale*, 248 Md. 380, 385, 236 A.2d 734, 737 (1967); *Schloss v. Davis*, 213 Md. 119, 123, 131 A.2d 287, 290 (1956) (stating that a "contract may be so vague and uncertain as to price or amount as to be unenforceable").

Under Maryland law, the elements of a claim for breach of contract are "'contractual obligation, breach, and damages.'" *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015) (quoting *Kumar v. Dhanda*, 198 Md. App. 337, 17 A.3d 744, 749 (2011)). To "prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645, 651 (2001); *accord Belyakov v. Med. Sci. & Computing*, 86 F. Supp. 3d 430, 437 (D. Md. 2015); *see also RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658, 994 A.2d 430, 442 (2010).

In other words, "[i]t is the parties' agreement that ultimately determines whether there has been a breach." *Mathis v. Hargrove*, 166 Md. App. 286, 318-19, 888 A.2d 377, 396 (2005). In *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362, 36 A.3d 399, 416 (2012), the Maryland

Court of Appeals[13] said: "Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'"  (Citation omitted) (emphasis in *Polek*); *see also Robinson v. GEO Licensing Co., L.L.C.*, 173 F. Supp. 2d 419, 423 (D. Md. 2001).

Of relevance here, "parties may 'enter into a binding informal or oral agreement to execute a written contract; and, if the parties contemplate that an agreement between them shall be reduced to writing before it shall become binding and complete, there is no contract until the writing is signed.'" *Cochran*, 398 Md. at 18, 919 A.2d at 711 (quoting *Eastover Stores, Inc. v. Minnix*, 219 Md. 658, 665, 150 A.2d 884, 888 (1959)). In other words, "[i]f the parties do not intend to be bound until a final agreement is executed, there is no contract."  *Cochran*, 398 Md. at 14, 919 A.2d at 708.  Parties who contemplate that their agreement would be reduced to writing are at liberty to withdraw from negotiations before the final writing is signed. *Id.* at 19, 919 A.2d at 711; *Eastover Stores, Inc.*, 219 Md. at 665, 150 A.2d at 888.

Stated another way, "parties can make the completion of their contract depend upon the execution of a written instrument. The question whether the parties negotiating a contract intended to be bound by their oral agreement but contemplated a written instrument merely as evidence of their agreement, or whether they did not intend to bind themselves until a contract was prepared

---

[13] In the general election held in Maryland in November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland. And, the voters also approved changing the name of the Maryland Court of Special Appeals to the Appellate Court of Maryland. These changes went into effect on December 14, 2022. *See* Press Release, Maryland Courts, *Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland* (Dec. 14, 2022), https://perma.cc/TL89-QFKR.  However, I shall refer to the courts by the names that were in effect when the cited decisions were issued.

and signed by them, must be decided from the facts and circumstances in each particular case." *Peoples Drug Stores v. Fenton Realty Corp.*, 191 Md. 489, 493, 62 A.2d 273, 275 (1948).

The Maryland Court of Appeals has enumerated "several factors that may be helpful in determining whether the parties have manifested an intention to be bound." *Cochran*, 398 Md. at 15, 919 A.2d at 708. These include the language of the preliminary agreement; the existence of open terms; whether partial performance has occurred; the context of the negotiations; the custom of such transactions, such as whether a standard form contract is widely used in similar transactions; whether the agreement has few or many details; whether the amount involved is large or small; and whether it is a common or unusual contract. *Id.* at 15–16, 919 A.2d at 708–09.

**3.**

I address first the claim by Boshea that, in effect, Compass waived the right to challenge the sufficiency of the oral contract claim because Compass did not advance that argument when Boshea moved to amend.

As I see it, this argument borders on audacious. Defendant had no prior notice of the motion to add an oral contract claim. It is unreasonable to fault Compass for failing to address at trial every alleged legal flaw in the presentation of a claim that it had no reason to anticipate.

I turn to the adequacy of plaintiff's proof.

As mentioned, in the Offer Letter, White expressly indicated that he would send Boshea "a full employment agreement . . . ." Thus, it appears that the parties contemplated a written agreement. Indeed, by Boshea's account, the parties executed the Agreement. The parties have not addressed whether it is for the Court or the jury to determine whether completion of the contract required execution of a written instrument. This is another illustration of the problems emanating from the belated addition of a wholly new legal theory.

To be sure, Compass denies both an oral and a written agreement.  But, the Offer Letter is not contested.  Given that Boshea worked at Compass for thirteen years, and received many of the benefits outlined in the negotiations, except for severance, a jury could readily find that the parties reached an oral agreement and intended to be bound by an oral agreement, and that a written agreement was meant merely to serve as evidence of the oral agreement.

Plaintiff's belated assertion of an oral contract claim also injected into the case the issue of the statute of frauds.  With a jury in the box, and obvious constraints of time, that issue was not adequately briefed, and the Court had to make a hasty ruling.  Neither side addressed at trial, or now, the significance of a finding of an oral contract on the MWPCL claim.

The Maryland Statute of Frauds, C.J. § 5-901, is titled "Executory contracts."  It is relevant to Boshea's oral contract claim.  C.J. § 5-901 provides (emphasis added):

> Unless a contract or agreement upon which an action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or another person lawfully authorized by that party, an action may not be brought:
>
> > (1) To charge a defendant on any special promise to answer for the debt, default, or miscarriage of another person;
> >
> > (2) To charge any person on any agreement made on consideration of marriage; or
> >
> > **(3) On any agreement that is not to be performed within 1 year from the making of the agreement.**

In other words, the Maryland statute of frauds bars the enforcement of a contract that cannot be performed within one year, unless the agreement "or some memorandum or note of it, is in writing and signed by the party to be charged." *Salisbury Bldg. Supply Co. Inc. v. Krause Marine Towing Corp.*, 162 Md. App. 154, 160, 873 A.2d 452, 456 (2005) (citing C.J. § 5-901(3) and *General Federal Construction, Inc. v. James A. Federline, Inc.*, 283 Md. 691, 693, 393 A.2d 188 (1978)).

In an exhaustive review, the Maryland Court of Appeals addressed the meaning of C.J. § 5-901(3) in *General Federal Construction*, 283 Md. 691, 393 A.2d 188.  *Id.*  There, the court ruled: "[T]he 'one year clause' of the Maryland Statute of Frauds does not bar collection of damages for breach of an oral contract absent an express and specific provision in that contract that it was not to be performed within one year or a clear demonstration by its terms that it was not or could not be so performed."  *Id.* at 692, 393 A.2d at 189.  In other words, the statute of frauds does not apply to a contract that was likely, or nearly certain, to take more than one year to perform, if it *could*, with unlimited resources, be performed within one year.  *Id.* at 696, 393 A.2d at 191 (citing *Warner v. Texas & P. Ry.*, 164 U.S. 418 (1896)); *see also Griffith v. One Inv. Plaza Assocs.*, 62 Md. App. 1, 7, 488 A.2d 182, 185 (1985) ("'The statute does not apply if the contract can, by any possibility, be completed within a year, although the parties may have intended that its operation should extend over a much longer period, and in fact, it does so extend.'") (quoting *Home News, Inc. v. Goodman*, 182 Md. 585, 594, 35 A.2d 442, 446 (1944)).

Employment in Maryland may either be for a fixed term, pursuant to a contract of definite duration, or at will.  *Hrehorovich v. Harbor Hospital*, 93 Md. App. 773, 790, 614 A.2d 1021, 1030 (1992), *cert. denied,* 330 Md. 319, 624 A.2d 490 (1993).  An employment agreement is deemed at will if it does not expressly specify a particular time or event terminating the employment relationship.  *Id.*; *see also Molesworth v. Brandon*, 341 Md. 621, 69-30, 672 A.2d 608, 612 (1996); *Shapiro v. Massengill,* 105 Md. App. 743, 745, 661 A.2d 202, 208 (Hollander, J.), *cert. denied*, 341 Md. 28, 668 A.2d 36 (1995); *Staggs v. Blue Cross of Md., Inc.*, 61 Md. App. 381, 388, 486 A.2d 798, 801, *cert. denied*, 303 Md. 295, 493 A.2d 349 (1985).  The employment at-will doctrine provides that "'an employment contract of indefinite duration, that is, at will, can be legally terminated at the pleasure of either party at any time,'" without cause, and without giving rise to a

cause of action for breach of contract, so long as the termination was not for an illegal reason. *Parks v. Alpharma, Inc.*, 421 Md. 59, 73, 25 A.3d 200, 208 (2011) (quoting *Adler v. American Standard Corp.*, 291 Md. 31, 35, 432 A.2d 464, 467 (1981)); *see Samuels v. Tschechtelin*, 135 Md. App. 483, 526, 763 A.2d 209, 232 (2000) (Hollander, J.).

In Maryland, employment is presumptively at-will. *Towson Univ.v. Conte*, 384 Md. 68, 79, 862 A.2d 941, 947 (2004); *see Bontempo v. Lare*, 444 Md. 344, 363–64, 119 A.3d 791, 803 (2015). However, an at-will arrangement can be altered by contract. *See Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 13 98 A3d. 264, 272 (2014) ("Indeed the presumption of at-will employment can be defeated through the inclusion of a just-cause requirement, or by specifying a duration of employment . . . ."). The presumption of at-will employment "'can be overcome by express or implied terms which show that the parties clearly intended to create a binding relationship for a specific period of time or until certain conditions occur.'" *Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 450 (D. Md. 2012) (quoting Mazaroff, *Maryland Employment Law* § 3.2 at 166 (1990)); *see University of Baltimore v. Iz*, 123 Md. App. 135, 171, 716 A.2d 1107, 1125 (Hollander, J.), *cert. denied*, 351 Md. 663, 719 A.2d 1262 (1998).

Boshea's employment was "at will." In Maryland, at will employment may be terminated by either party, at any time, for any reason, so long as it is not for an illegal reason. *Adler*, 291 Md. at 35, 432 A.2d at 467; *see Molesworth*, 341 Md. at 628, 672 A.2d at 612.

It appears to the Court that Boshea, an at will employee, established the elements of an oral contract claim, and that at least a portion of the oral agreement could be performed within one year. The jury could conclude that Boshea, an at-will employee who was terminated without cause, was entitled to severance equal to one year's salary.

### C.  The MWPCL

### 1.

L.E. § 3-505(a) governs payment to an employee upon termination.  It provides, in part: "[E]ach employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated."

The MWPCL confers on an employee the right to bring a civil suit against an employer to recover unpaid wages. *See* L.E. § 3-507.2(a); *Mohiuddin v. Doctors Billing & Management Solutions, Inc.*, 196 Md. App. 439, 446, 9 A.3d 859, 863 (2010).  "The MWPCL is a statutory cause of action, the purpose of which is 'to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages.'" *Cunningham v. Feinberg*, 441 Md. 310, 322-23, 107 A.3d 1194, 1202 (2015) (quoting *Battaglia v. Clinical Perfusionists, Inc.*, 338 Md. 352, 364, 658 A.2d 680, 686 (1995)).

Among other things, the MWPCL "protects employees from wrongful withholding of wages upon termination." *Stevenson v. Branch Banking and Trust Corporation, t/a BB&T*, 159 Md. App. 620, 635, 861 A.2d 735, 743 (2004) (citing L.E. § 3-505).  The MWPCL does not focus on "the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Friolo v. Frankel*, 373 Md. 501, 513, 819 A.2d 354, 362 (2003).

In particular, under the MWPCL, if an employer fails to pay an employee all wages due on termination of employment, "after 2 weeks have elapsed from the date on which the employer is required to have paid the wages, the employee may bring an action against the employer to recover the unpaid wages." L.E. § 3-507.2(a); *see Baltimore Harbor Charters, Ltd. v. Ayd*, 365 Md. 366,

382–83, 780 A.2d. 303, 312–13 (2001).  "[A] claim under the MWPC[L] must be filed within three years and two weeks from the date on which the employer should have paid the wage." *Butler v. VisionAIR, Inc.*, 385 F. Supp. 2d 549, 554 (D. Md. 2005).

If "a court finds that an employer withheld the wage of an employee in violation of [the MWPCL] and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs."  L.E. § 3-507.2(b). "The assessment whether a bona fide dispute exists centers on whether the party resisting the claim 'has a good faith basis for doing so, whether there is a legitimate dispute over the validity of the claim or the amount that is owing.'"  *Roley v. Nat'l Professional Exchange, Inc.*, 474 F. Supp. 3d 708, 725 (D. Md. 2020) (quoting *Admiral Mortgage v. Cooper*, 357 Md. 533, 543, 745 A.2d 1026, 1031 (2000)), *aff'd*, 860 Fed. App'x 264 (4th Cir. 2021).  However, "an employee is not presumptively entitled to enhanced damages, even if the court finds that wages were withheld without a bona fide dispute."  *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 662, 97 A.3d 621, 630 (2014).

"'Wage' means all compensation that is due to an employee for employment."  L.E. § 3-501(c)(1).  This includes, per the statute, bonuses, commissions, fringe benefits, overtime wages, or "any other remuneration promised for service."  L.E. § 3-501(c)(2).  Of relevance here, the term "wage" includes commissions; bonuses when they are compensation for services and not a gratuity; and work-related incentive fees.  L.E. § 3-501(c)(2); *see Medex v. McCabe*, 372 Md. 28, 35–37, 811 A.2d 297, 302 (2002); *Whiting-Turner v. Fitzpatrick*, 366 Md. 295, 306, 783 A.2d 667, 673 (2001).

An "employer" within the purview of the MWPCL includes "any person who employs an individual in the State or a successor of the person."  L.E. § 3-501(b).  The term "employ" is

defined in L.E. § 3-101(c) as "engag[ing] an individual to work," including "allowing an individual to work" and "instructing an individual to be present at a work site." This definition applies to the MWPCL. *Amaya v. DGS Constr., LLC*, 479 Md. 515, 570, 278 A.3d 1216, 1249 (2022).

The MWPCL does not define "employee." But, in *Ayd*, 365 Md. at 384–85, 780 A.2d at 314, the Maryland Court of Appeals made clear that the MWPCL's provisions extend to executive and professional employees. The court stated: "[I]f the General Assembly had intended to exclude administrative, executive and professional employees from the provisions of §§ 3-505 and [3-507.2], or otherwise limit the application of these provisions to that class of employees, it would have expressly done so.[]" *Id.* at 385, 780 A.2d at 314. The court reasoned that the use of the word "employee" in the statute was meant to distinguish independent contractors from the traditional common law concept of master/servant. *Ayd*, 365 Md. at 387-88, 780 A.2d at 315–16.

**2.**

Compass claims that Boshea did not establish the applicability of the MWPCL. ECF 255 at 21. Defendant argues that because Boshea worked primarily from his home in Illinois, he was not employed in Maryland and thus the MWPCL does not apply. *Id.* In its view, Boshea's testimony that "he was in Maryland, approximately 100-150 days over the course of his 13 years of employment with Compass Marketing" is "not enough for one to avail himself to the protections of the MWPCL." *Id.* at 22.

Further, Compass avers, *id.*: "Because the jury's verdict on Boshea's MWPCL claim can only be sustained by a finding in favor of the applicability of the MWPCL – for which there is no legally sufficient evidentiary basis – the issue of whether the MWPCL applies should be resolved against Boshea and judgment should be entered as a matter of law against Boshea and in favor of Compass Marketing pursuant to Federal Rule of Civil Procedure 50(b)." And, it contends, *id.*:

"[A]t a minimum, judgment should be entered in Compass Marketing's favor on the issue of a bona fide dispute or, in the alternative, a new trial on the alleged oral contract and wage payment claim should be ordered."

Boshea counters that a bona fide dispute did not exist because the fact that Compass "failed to contest David Boshea's demand [for payment of his severance] completely undercuts Compass' claim that a bona fide dispute existed." ECF 261 at 4.

Additionally, Boshea maintains that he "presented evidence of his work activities in Maryland that form the basis for his claim under the MWPCL." *Id.* He observes that the Court previously addressed this question in its Memorandum Opinion of July 22, 2022 (ECF 110), where it found that Boshea was an employee for purposes of the MWPCL. *See* ECF 261 at 4. And, Boshea argues that because the jury did not decide the question of whether he is an employee governed by the MWPCL, Compass's motion is untimely under Rule 50(b). *Id.* at 4, 5.

In my Memorandum Opinion of July 22, 2022 (ECF 110), concerning Compass's motion for partial summary judgment as to the MWPCL claim (ECF 93), I found that the time Boshea worked in Maryland entitled him to the protections of the MWPCL. ECF 110 at 6. My ruling was based, in part, on the fact "that Compass is headquartered in Maryland, and plaintiff took a series of trips to Maryland for his work with Compass over the course of his tenure with the company." *Id.* at 40. At trial, Boshea established that he worked even more days than was argued in the pleadings concerning summary judgment: "100-150 days over the course of his 13 years of employment with Compass Marketing . . . ." ECF 255 at 22.

Further, Boshea presented evidence that a bona fide dispute did not exist. He elicited testimony that Compass failed to contest Boshea's demand for payment of his severance. ECF 261 at 4. This is enough for a reasonable jury to find that a bona fide dispute did not exist.

For the reasons stated in ECF 110, and based on the evidence, Compass's arguments fail with respect to applicability of the MWPCL.

The jury awarded $540,000 with respect to Boshea's MWPCL claim, representing severance for three years.  Yet, the jury found only an oral contract.  It would seem that plaintiff cannot recover more severance under the MWPCL than he can under an oral contract claim.  But, the parties never addressed this issue, nor was the jury instructed in this regard.

### D.  Testimony of Donna Eisenberg

Compass claims that it was prejudiced by the testimony of Donna Eisenberg, as Eisenberg's testimony incorporated a Surrebuttal Report that was not disclosed to Compass until trial.  ECF 255 at 23.  Specifically, Compass contends that it "was prejudiced by Eisenberg's use of her sur-rebuttal report because she testified about additional analyses that she did not reference in her original report."  *Id.* at 25.[14]

The events related to the so-called Surrebuttal Report are on the record and were discussed, considered, and addressed at length.  As noted, in Eisenberg's expert report dated October 11, 2021, she outlined her finding that "***no conclusion*** can be reached regarding authorship of the Exhibit Q1 signature," *i.e.*, the purported John White signature.  *See* Plaintiff's Trial Exhibit 18 at 3 (emphasis in original); *see also* ECF 242.  During Eisenberg's direct examination, defense counsel questioned whether Eisenberg had a supplemental report that was not produced.  Plaintiff's counsel replied, ECF 234 (Transcript Excerpt of February 22, 2024), at 50: "I think we had one and forgot to turn it over and so we're not using it."  This report, which was not provided to

---

[14] Compass complains that if it had known about the Surrebuttal Report, it would have deposed Eisenberg and prepared differently for the trial.  ECF 255 at 25.  The defendant's suggestion that disclosure of an additional expert report would have led defendant to depose the plaintiff's expert, when it otherwise had not done so, is dubious.  This is particularly so when the additional report reached the exact same conclusion that was set forth in the original expert report.

defendant prior to the trial, was prepared by Eisenberg on November 23, 2021. *Id.* at 60. It consisted of eight pages, six of which contained charts. *Id.* at 60, 61. Although the report responds to the report of the defense expert, it states, *id.* at 70: "'The Payne report does not alter my opinion of no conclusion' . . . ."

Despite the failure of Boshea's counsel to timely produce the Surrebuttal Report, Compass was not prejudiced. The Surrebuttal Report reached the same conclusion as the original report of Eisenberg. And, I gave the defense ample time to review the report and to prepare for Eisenberg's cross-examination and Payne's testimony. Moreover, Eisenberg was not permitted to testify to its contents.

Perhaps foremost, in the so-called "battle of the experts" between Eisenberg and Payne, defendant prevailed: the jury found that there was no written Agreement. Thus, it appears to have found that the purported White signature was not authentic. Given that Compass succeeded on the claim that there was no written Agreement, its complaints ring hollow.

In any event, given my decision to grant a new trial, I shall permit the parties to reopen expert discovery, limited to plaintiff's right to obtain additional handwriting exemplars from John White, and to permit the experts to provide updated reports based on those exemplars. Counsel may also conduct expert depositions, limited to revisions or supplements to the experts' reports.

## IV.    Conclusion

Boshea's belated amendment to his Complaint, adding an oral contract claim, warrants a new trial under Fed. R. Civ. P. 59. However, I shall permit Boshea to move to amend his Second Amended Complaint to include an oral contract claim.

Further, I shall permit plaintiff to obtain additional handwriting exemplars from John White. The parties' experts may then revise or supplement their reports based on the additional

exemplars.   Counsel may also conduct depositions of the experts, limited to revisions or supplements to the expert reports.

An Order follows, consistent with this Memorandum Opinion.

Date:  August  7, 2024                                            _____/s/_____

                                                                            Ellen Lipton Hollander
                                                                            United States District Judge