# Exhibit B

# COMPASS MARKETING, INC

# AGREEMENT RELATING TO EMPLOYMENT AND

# POST-EMPLOYMENT COMPETITION

This Agreement is between the David John Boshea, residing at 4839 Clearwater LN. Naperville, IL. 60564  ("Employee") and COMPASS MARKETING, INC ("COMPASS"), having a place of business at 612 Third Street, Annapolis

## RECITALS

WHEREAS, COMPASS is a leading provider of consumer products and more specifically, the marketing, distribution and sales services to retailers and non-traditional or alternative distributors in the following categories:  food, health-beauty care, over the counter medicine, consumer products,  and pet care.

WHEREAS, COMPASS has a proprietary interest in its business and financial plans and systems, methods of operation and other secret and confidential information, knowledge and data ("Proprietary Information") which includes, but is not limited to, all confidential, proprietary or non-public information, ideas and concepts, client names and contact information, annual and strategic business plans; financial plans, reports and systems including, profit and loss statements, sales, accounting forms and procedures and other information regarding costs, pricing and the financial condition of COMPASS and its business segments and groups; management development reviews, including information regarding the capabilities and experience of COMPASS employees; intellectual property including research and development, reports, protocols, computer software and databases: information regarding COMPASS's relationships with its clients, customers, and suppliers and prospective clients, partners, customers and suppliers, policy and procedure manuals, information regarding materials and documents in any form or medium (including oral, written, tangible. intangible, or electronic) concerning any of the above, or any past, current or future business activities of COMPASS that is not publicly available; compensation, recruiting and training, and human resource policies and procedures; and data compilations, research, reports, structures, compounds, techniques, methods, processes, and know-how.

WHEREAS, all such Proprietary Information is developed at great expense to COMPASS and is considered by COMPASS to be confidential trade secrets;

WHEREAS, Employee, as a senior executive, will have access to COMPASS's Proprietary Information, directly in the course of Employee's employment, and indirectly through interaction with and presentations by other COMPASS senior executives;

WHEREAS, COMPASS will introduce Employee to COMPASS clients, customers, suppliers and others, and will encourage, and provide resources for, Employee to develop personal relationships with COMPASS's clients, customers, suppliers and others;

WHEREAS, COMPASS will provide specialized training and skills to Employee in connection with the performance of Employee's duties at COMPASS which training involves the disclosure by COMPASS to Employee of Proprietary Information;

WHEREAS, COMPASS will be vulnerable to unfair post-employment competition by Employee because Employee will have access to and knowledge of COMPASS's Proprietary Information, will have a personal relationship with COMPASS's clients, customers, suppliers and others, and will generate good will which Employee acknowledges belongs to COMPASS;

NOW, THEREFORE, in consideration of Employee's employment with COMPASS,  the severance benefit and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Employee agrees to enter into this Agreement with COMPASS as a condition of employment pursuant to which COMPASS will limit Employee's rights, including, but not limited to, the right to compete against COMPASS, during and following termination of employment on the terms set forth in this Agreement. Intending to be legally bound, the parties agree as follows:

**ARTICLE 1. NON-DISCLOSURE AND NON-DISPARAGEMENT:**

Employee shall not, during or after termination of employment, directly or indirectly, in any manner utilize or disclose to any person, firm, corporation, association or other entity, except where required by law, any Proprietary Information which is not generally known to the public, or has not otherwise been disclosed or recognized as standard practice in the industries in which COMPASS is engaged. Employee shall, during and after termination of employment, refrain from making any statements or comments of a defamatory or disparaging nature to any third party regarding COMPASS, or any of COMPASS's officers, directors, personnel, policies or products, other than to comply with law.

**ARTICLE 2. NON-COMPETITION:**

A.      Subject to Article 2.B. below, Employee, during Employee's period of employment with COMPASS, and for a period of three years following the voluntary or involuntary termination of employment, shall not, without COMPASS's written permission, which shall be granted or denied in COMPASS's sole discretion, directly or indirectly, associate with (including, but not limited to, association as a sole proprietor, owner, employer, partner, principal, investor, joint venturer, shareholder, associate, employee, member, consultant, contractor or otherwise), or acquire or maintain ownership interest in, any Business which is competitive with that conducted by or developed for later implementation by COMPASS at any time during the term of Employee's employment, provided, however, if Employee's employment is involuntarily terminated by COMPASS for any reason other than Cause (as defined herein) then the term of the non-competition provision set forth herein will be modified to be one year following such termination of employment. For purposes of this Agreement, "Business" shall be defined as a person, corporation, firm, LLC, partnership, joint venture or other entity. Nothing in the foregoing shall prevent Employee from investing in a Business that is or becomes publicly traded, if Employee's ownership is as a passive investor of less than 1 % of the outstanding publicly traded stock of the Business.

B.      The provision set forth in Article 2.A above, shall apply to (i) all fifty states, and (ii) each foreign country, possession or territory in which COMPASS may be engaged in, or have plans to engage in, business (x) during Employee's period of employment, or (y) in the case of a termination of employment, as of the effective date of such termination or at any time during the twenty-four month period prior thereto.

C.      Employee acknowledges that these restrictions are reasonable and necessary to protect the business interests of COMPASS, and that enforcement of the provisions set forth in this Article 2 will not unnecessarily or unreasonably impair Employee's ability to obtain other employment following the termination (voluntary or involuntary) of Employee's employment with COMPASS. Further, Employee acknowledges that the provisions set forth in this Article 2 shall apply if Employee's employment is involuntarily terminated by COMPASS for Cause; as a result of the elimination of employee's position for performance-related issues; or for any other reason or no reason at all.

D.

**ARTICLE 3. NON-SOLICITATION:**

A.  During the period of Employee's employment with COMPASS and for a period of three years following the termination of Employee's employment, regardless of the reason for termination, Employee shall not, directly or indirectly: (i) induce or encourage any employee of COMPASS to leave the employ of COMPASS, (ii) hire any individual who is or was an employee of COMPASS, or (iii) induce or encourage any customer, client, potential client, supplier or other business relation of COMPASS to cease or reduce doing business with COMPASS or in any way interfere with the relationship between any such customer, client, supplier or other business relation and COMPASS.

B.      A "customer of COMPASS" shall be defined to mean the entities or businesses to whom COMPASS sells the product lines of its clients.

C.      A "client of COMPASS" shall be defined to mean the supplier of product lines to COMPASS, which product lines are sold by COMPASS to its customers.

D.      A "potential client of COMPASS" shall be defined to mean the supplier of product lines to COMPASS that COMPASS is actively negotiating with to represent as a future COMPASS client, during the period of Employee's employment.

**ARTICLE 4. DISCOVERIES' AND WORKS:**

Employee hereby irrevocably assigns, transfers, and conveys to COMPASS to the maximum extent permitted by applicable law Employee's right, title and interest now or hereinafter acquired, in and to all Discoveries and Works (as defined below) created, invented, designed, developed, improved or contributed to by Employee, either alone or jointly with others, while employed by COMPASS and within the scope of Employee's employment and/or with the use of COMPASS's resources. The terms "Discoveries and Works" include all works of authorship, inventions, intellectual property, materials, documents. or other work product (including, without limitation, Proprietary Information, patents and patent applications, patentable inventions, research, reports, software, code, databases, systems, applications, presentations, textual works, graphics and audiovisual materials). Employee shall have the burden of proving that any materials or works created, invented, designed, developed, contributed to or improved by Employee that are implicated by or relevant to employment by COMPASS are not implicated by this provision. Employee agrees to (i) keep accurate records and promptly notify, make full disclosure to, and execute and deliver any documents and to take any further actions requested by COMPASS to assist it in validating, effectuating, maintaining, protecting, enforcing, perfecting, recording, patenting or registering any of its rights hereunder, and (ii) renounce any and all claims, including, without limitation, claims of ownership and royalty, with respect to all Discoveries and Works and all other property owned or licensed by COMPASS. Any Discoveries and Works that, within six months after the termination of Employee's employment with COMPASS, are made, disclosed, reduced to a tangible or written form or description, or are reduced to practice by Employee and which pertain to the business carried on or products or services being sold or developed by COMPASS at the time of such termination shall, as between Employee and COMPASS, be presumed to have been made during such employment with COMPASS. Employee acknowledges that, to the fullest extent permitted by law, all Discoveries and Works shall be deemed "works made for hire" under the Copyright Act of 1976, as amended, 17 U.S.C. Section 101. Employee hereby grants COMPASS a perpetual, nonexclusive, royalty-free, worldwide, assignable, sublicensable license under all rights and intellectual property rights (including patent, industrial property, copyright, trademark, trade secret, unfair competition and related laws) in any Works and Discoveries, for all purposes in connection with COMPASS's current and future business, that Employee has created, invented, designed, developed, improved or contributed to prior to Employee's employment with COMPASS that are relevant to or implicated by such employment ("Prior Works"). Any Prior Works are disclosed by Employee in Schedule 1.

**ARTICLE 5. REMEDIES:**

Employee acknowledges that in the event of any violation by Employee of the provisions set forth in Articles 1, 2, 3 or 4 above, COMPASS will sustain serious, irreparable and substantial harm to its business, the extent of which will be difficult to determine and impossible to fully remedy by an action at law for money damages. Accordingly, Employee agrees that, in the event of such violation or threatened violation by Employee, COMPASS shall be entitled to an injunction before trial before any court of competent jurisdiction as a matter of course upon the posting of not more than a nominal bond, in addition to all such other legal and equitable remedies as may be available to COMPASS. If COMPASS is required to enforce the provisions set forth in Articles 2 and 3 above by seeking an injunction, Employee agrees that the relevant time periods set forth in Articles 2 and 3 shall commence with the entry of the injunction. Employee further agrees that, in the event any of the provisions of this Agreement are determined by a court at competent jurisdiction to be invalid, illegal, or for any reason unenforceable as written, such court shall substitute a valid provision which most closely approximates the intent and purpose of the invalid provision and which would be enforceable to the maximum extent permitted by law.

**ARTICLE 6. SEVERANCE:**

A.    If Employee's employment is terminated by COMPASS for any reason other than Cause, Employee shall receive severance payments totaling $180,000 (one hundred and eighty thousand U.S. dollars) which will be divided up into twenty-four payments and will commence with the Employee's effective date of termination and shall be made in accordance with COMPASS's normal payroll cycle. The period during which Employee receives severance payments shall be referred to as the "Severance Pay Period." Severance will increase one month for every month employed to a maximum severance of $540,000.

B     There are no other post-employment benefits. Employee, however, shall have certain rights to continue the Medical Plan under COBRA.

C     Termination for "Cause shall he defined as termination of employment due to: (i) conviction of or entry of a plea of guilty or nolo contendere to any criminal charge (or any similar crime for purposes of laws outside the United States), (ii) fraud or dishonesty, (iii) failure to perform assigned duties, (iv) working against the best interests of COMPASS, or (v) the violation of any of the covenants set forth in Articles 1, 2, 3 and 4 above.

D.      If Employee is terminated by COMPASS for reasons other than Cause, Employee will receive the severance payments during the Severance Pay Period even if Employee commences other employment during such period provided such employment does not violate the terms of Article 1, 2, 3 and 4 of this Agreement.

E.      In addition to the remedies set forth in Article 5, COMPASS reserves the right to terminate all severance payments if Employee violates any covenants set forth in Articles 1, 2, 3 or 4 of this Agreement.

F.      Employee's receipt of severance under this Agreement is contingent on Employee's execution of a release in a form reasonably acceptable to COMPASS, except that such release shall not include any claims by Employee to enforce Employee's rights under, or with respect to, this Agreement or any COMPASS benefit plan pursuant to its terms, and that the employee not revoking the release prior to the expiration of the applicable Age Discrimination in Employment Act revocation period.

### ARTICLE 7. TERM OF EMPLOYMENT:

Employee acknowledges that COMPASS has the right to terminate Employee's employment at any time for any reason whatsoever, provided, however, that any termination by COMPASS for reasons other than Cause shall result in the severance described in Article 6 above, to become due in accordance with the terms of this Agreement subject to the conditions set forth in this Agreement. Employee further acknowledges that the severance payments provided by COMPASS are in full satisfaction of any obligations COMPASS may have resulting from COMPASS's exercise of its right to terminate Employee's employment, except for those obligations which are intended to survive termination such as the payments to be made pursuant to retirement plans, deferred compensation plans and conversion of insurance.

### ARTICLE 8. MISCELLANEOUS:

A.      As used throughout this Agreement, COMPASS includes COMPASS MARKETING, Inc. and its subsidiaries and affiliates or any corporation, joint venture, or other entity in which COMPASS MARKETING, Inc. or its subsidiaries or affiliates has an equity interest in excess of ten percent (10%).

B.      This Agreement shall supersede and substitute for any previous employment, post-employment or severance agreement between Employee and COMPASS.

C.      If Employee's employment with COMPASS terminates solely by reason of a transfer of stock or assets of, or a merger or other disposition of, a subsidiary of COMPASS (whether direct or indirect), such termination shall not be deemed a termination of employment by COMPASS for purposes of this Agreement, provided that COMPASS requires the subsequent employer, by agreement, to expressly assume and agree to perform this Agreement in the same manner and to the same extent that COMPASS would be required to perform it if no such transaction had taken place.

D.      Employee shall not be required to mitigate damages or the amount of any payment provided for under this Agreement by seeking other employment or otherwise.

E.      In the event any one or more of the provisions of this Agreement shall be or become invalid, illegal or unenforceable in any respect, the validity legality and enforceability of the remaining provisions of this Agreement shall not be affected thereby.

F.      The terms of this Agreement shall be governed by the laws of the State of Maryland, without regard to conflicts of laws principles thereof. For purposes of any action or proceeding, Employee irrevocably submits to the non-exclusive jurisdiction of the courts of Maryland and the courts of the United States of America located in Maryland for the purpose of any judicial proceeding arising out of or relating to this Agreement, and acknowledges that the designated forum has a reasonable relation to the Agreement and to the parties' relationship with one another. Notwithstanding the provisions of this Article 8.F COMPASS may, in its discretion, bring an action or special proceeding in any court of competent jurisdiction for the purpose of seeking temporary or preliminary relief pending resolution of a dispute.

G.      Employee expressly consents to the application of Article 8.F to any judicial action or proceeding arising out of or relating to this Agreement. COMPASS shall have the right to serve legal process upon Employee in any manner permitted bylaw. In addition, Employee irrevocably appoints the General Counsel of COMPASS MARKETING, Inc. (or any successor) as Employee's agent for service of legal process in connection with any such action or proceeding and Employee agrees that service of legal process upon such agent, who shall promptly advise Employee of any such service of legal process at the address of

Employee then in the records of COMPASS, shall be deemed in every respect effective service of legal process upon Employee in any such action or proceeding.

H.    Employee hereby waives, to the fullest extent permitted by applicable law, any objection that Employee now or hereafter may have to personal jurisdiction or to the laying of venue of any action or proceeding brought in any court referenced in Article 8.F and hereby agrees not to plead or claim the same.

I.    Notwithstanding any other provision of this Agreement, COMPASS may, to the extent required by law, withhold applicable federal, state and local income and other taxes from any payments due to Employee hereunder.

J.    At any time during the validity of this Agreement, Employee agrees that COMPASS may notify third parties about Employee's rights and obligations under this Agreement.

K.    Employee affirms that Employee has read this Agreement and has asked questions needed to understand the terms, consequences and binding effect of this Agreement and fully understands them.

L.    Employee affirms that Employee has sought the advice of an attorney of his/her choice before signing this Agreement.

**IN WITNESS WHEREOF**, and intending to he legally bound, the parties hereto have caused this Agreement to be signed.

| by COMPASS MARKETING, INC. | by EMPLOYEE |
|---|---|
| Date: | Date: |
| /s/ | /s/ |
| John D. White, CEO | David John Boshea |

**Schedule 1**

**Prior Works***

---

\*          if no Prior Works are listed, Employee certifies that there are none.