# Exhibit C



using **ART + SCIENCE** to amplify brands™

March 3, 2020

David Boshea
4839 Clearwater Lane
Naperville, IL 60564

Dear Dave,

Regrettably, your position was one of the positions selected to be eliminated due to a necessary reduction in force. This letter confirms our discussion today that your employment with Compass Marketing Inc will terminate on March 3, 2020.

We appreciate your service to the company, and it is with regret that we must terminate your employment. We want to assist as much as possible during this transition, as we do appreciate your tenure with Compass Marketing.

Below is a breakdown of information that is important for you.

- You will be paid through your last date of employment.

- You will be paid your unused, accrued vacation pay, if any, together with your last paycheck.

- Your benefits will remain in effect until March 31, 2020. Cobra information will be mailed to you for your review to make the appropriate decision.

- We are offering you a Severance Agreement, which is attached for your review and consideration. You have a period of 45 days to consider it.

- As your termination is based on a generalized Reduction in Force you may qualify for unemployment benefits.

Please review the information above and the attached Severance Agreement and do not hesitate to reach out to Erin Songer with any questions. We thank you so much and wish you great success on your future endeavors.

Sincerely,


John White
CEO
Compass Marketing, Inc.


enclosure

# SEVERANCE AGREEMENT

Compass Marketing Inc. and David Boshea have reached the following Severance Agreement ("Agreement"). In this Agreement, "Employee" refers to David Boshea and "Company" refers to Compass Marketing Inc., together with any parent or subsidiaries, related and affiliated entities, companies, and the employees, officers, trustees, directors, agents, shareholders, successors, assigns, servants, third party administrators and insurers and any of them.

1. Employee's employment with Company is terminated effective March 3, 2020. In consideration for the execution by Employee of this Agreement and for the covenants and promises described below, the Company will pay Employee 80 hours of Severance Pay. Such salary continuation shall be contingent upon the execution and non-revocation of this Agreement, and shall be effective and Employee paid for such continuation within 30 days following the seven (7) day revocation period referred to in paragraph 9 of the Agreement, provided that this Agreement is not revoked. Employee agrees that this payment is more than the Company is required to pay under its policies and procedures.

2. Employee states that he has not previously filed or joined in any complaints or charges or lawsuits against Company with any governmental agency or court of law. Employee agrees to and does release the Company from all claims or demands Employee may have based on Employee's employment with the Company or the termination of that employment. This includes a release of any rights or claims Employee may have under the Age Discrimination in Employment Act and the Older Workers Benefit Protection Act, which prohibit age discrimination in employment; 42 U.S.C. § 1981, 1983 and 1985; Title VII of the Civil Rights Act of 1964 as amended, which prohibits discrimination in employment based on race, color, national origin, religion or sex; the Equal Pay Act, which prohibits paying men and women unequal pay for equal work; the Americans with Disabilities Act, which prohibits discrimination against qualified individuals with a disability; the Fair Labor Standards Act, including the Wage and Hour Laws relating to payment of wages; the Family and Medical Leave Act, which provides certain leave of absence benefits to employees; Employment Retirement Income Security Act, which protects certain employee benefits; 85 O.S. §§ 5, 6 and 7 (1991 and 1992 Supp.), preventing discharge in retaliation for exercising rights under Oklahoma's Workers' Compensation Act; or any other federal, state or local laws or regulations prohibiting employment discrimination, including qui tam actions. This also includes a release by Employee of any claims for breach of contract, impairment of economic opportunities, intentional infliction of emotional distress, invasion of privacy, wrongful discharge, discharge in violation of public policy, or that the Company has dealt with Employee unfairly or in bad faith or any other common law contract or tort claim. This release covers both claims that Employee knows about and those he may not know about. Employee also represents that he has not given or sold any portion of any claim discussed in this Agreement to anyone else.

3. Employee promises never to file a lawsuit asserting any claims that are released in paragraph 2.

4. If Employee breaks his promise in paragraph 3 of this Agreement and files a lawsuit based on legal claims that Employee has released, Employee will pay for all costs incurred by the Company, any related companies or the directors or employees of any of them, including reasonable attorneys' fees, in defending against Employee's claim.

5. Company makes this Agreement to avoid the cost of defending against any possible legal action. By making this Agreement, Company does not admit that it has done anything wrong.

6. This Agreement does not waive any rights or claims that Employee may have which arise after the date the Employee signs this Agreement.

1

7. Employee acknowledges that he received an electronic copy of this Agreement and was offered a period of at least forty-five (45) days to consider it.

8. Employee is advised to consult with an attorney of his choice before signing this Agreement. Employee agrees, that Company shall not be required to pay any of his attorneys' fees in this or any related matter or lawsuit, now or later, and that the settlement monies received in paragraph 1 are in full and complete settlement of all matters between Employee and Company, including but not limited to, attorney's fees and costs.

9. Employee may revoke this Agreement within seven (7) days of his signing it. Revocation can be made by delivering a written notice of revocation to Erin Songer, at 222 Severen Ave, Suite 200, Annapolis MD 21403. For such revocation to be effective, notice must be received no later than 5:00 p.m. on the seventh (7th) calendar day after Employee signs this Agreement. If Employee revokes this Agreement it shall not be effective or enforceable and Employee will not receive the benefits described in paragraph 1.

10. Employee acknowledges that as a result of his employment with Company, certain trade secrets and other confidential information of the Company have been disclosed to him. Employee agrees that as partial consideration for this Agreement, that Employee shall not disclose or utilize for his personal benefit, or for the direct or indirect benefit of any other person or entity, or for any other reason, any information, ideas, concepts, improvements, discoveries or other information, whether patentable or not, which have been disclosed to Employee during the time Employee was employed with the Company. In addition, all documents, notes, files, data, records, correspondence, manuals, specifications, computer programs, e-mail, voice mail, electronic data bases, maps and other writings or materials of any type which have been provided to Employee as a result of Employee's employment with or through the Company, are and shall be the sole and exclusive property of the Company. Employee shall promptly deliver all such property, including copies, and the personal property listed on Exhibit "A" attached hereto, to the Company within five (5) business days of the date of this Agreement.



11. For a period of two (2) years after the date of this Agreement, Employee shall not solicit, induce or attempt to induce any current customer or employee of the Company or its affiliates to cease doing business in whole or in part with or through the Company or its affiliates or otherwise disrupt any previously established relationship existing between such customer or employee and the Company or its affiliates.

12. This is the whole Agreement between Employee and Company. No promises oral or written statement upon which Employee has been told to rely have been made to him other than those in this Agreement. If any portion of this Agreement is found to be unenforceable, then both Employee and the Company desire that all other portions that can be separated from it or appropriately limited in scope shall remain fully valid and enforceable. Each party also agrees that, without receiving further consideration, it will sign and deliver such documents and do anything else that is necessary in the future to make the provisions of this Agreement effective.

13. As an express condition of this Agreement, Employee agrees not to take any action that is adverse to Company, or any of its parents, subsidiaries or affiliates, either individually or in concert with others.

14. Employee agrees to keep the terms, amount and facts of this Agreement completely confidential, and that he will not disclose any information concerning this agreement to anyone other than immediate family and lawyer(s), who will be informed of and bound by this confidentiality clause.

15. This Agreement shall be governed and interpreted in accordance with the laws of the State of Maryland. In the event litigation is instituted between the parties in connection with any controversy or dispute arising from, under or related to this Agreement, the judgment herein should include a reasonable sum to be paid to the prevailing party on account of attorneys' fees incurred in such litigation.

16. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall together constitute one and the same instrument.

17. Company and Employee desire that any dispute concerning this Agreement be handled out of court. Accordingly, they agree that any such dispute shall, as the parties' sole and exclusive remedy, be submitted to arbitration in Maryland, before an experienced employment arbitrator licensed to practice law in Maryland and selected in accordance with the standard rules of the American Arbitration Association (AAA). (Employee understands that he may obtain a copy of such rules by calling the AAA, located in Washington, D.C., directly if Company or Employee's lawyer do not have copies available.) The laws of the State of Maryland shall govern interpretation of this Agreement. Should Employee or Company start any legal action or administrative proceeding against the other with respect to any claim waived by this Agreement, or pursue any method of resolution of a dispute other than mutual agreement of the parties or arbitration, then all damages, costs, expenses and attorneys' fees incurred by the other party as a result shall be the responsibility of the one bringing the suit or starting the procedure.

EMPLOYEE ACKNOWLEDGES THAT HE HAS READ THIS AGREEMENT, UNDERSTANDS IT AND IS VOLUNTARILY ENTERING INTO IT.

PLEASE READ THIS AGREEMENT CAREFULLY. IT CONTAINS A RELEASE BY EMPLOYEE OF ALL KNOWN AND UNKNOWN CLAIMS.

Date _____      Employee Signature _____

Date _____      Witness _____

Date _____      Company Representative _____

                       Title: _____

EMPLOYEE ACKNOWLEDGES RECEIPT OF THE BENEFITS STATED IN PARAGRAPH NUMBER 1 AND ACKNOWLEDGES THAT THIS AGREEMENT IS IN FULL FORCE AND EFFECT.

Date _____      Employee Signature _____

## NON-SOLICITATION AGREEMENT

THIS NON-SOLICITATION AGREEMENT (the "Non-Solicitation Agreement") is entered into by and between Compass Marketing, Inc. (together with its subsidiaries and affiliates, "Compass"), a Virginia corporation, and the undersigned employee of Compass to protect the valuable competitive information and business relationships of Compass.

1. **Acknowledgements.** I acknowledge and agree that:

    a.  in the course and scope of my employment with Compass, I have developed or will develop unique relationships with Compass employees, customers and suppliers;

    b.  Compass has provided or will provide me with unique knowledge and training about its Confidential Information. Confidential Information, as used in this Non-Solicitation Agreement, includes, but is not limited to, any information possessed or owned by Compass which is not generally known to the public, especially if such information gives Compass Marketing a competitive advantage or its disclosure would harm Compass Marketing. It includes, but is not limited to, trade secrets, proprietary information and all other information documents or materials, owned, developed or possessed by Compass or any employee of Compass, whether tangible or intangible, relating in any way to Compass' research and development, customers, prospective customers, business plans, business relationships, products or processes, costs or profit information or data from which that information could be derived, human resources (including internal evaluations of the performance, capability and potential of any Compass employee), business methods, databases and computer programs; and,

    c.  I am entering into this Non-Solicitation Agreement in conjunction with my Compass and that this provides adequate and significant consideration for my willingness to enter into this Non-Solicitation Agreement.

2. **Non-Solicitation of Compass Employees.** During the term of my employment at Compass and for twenty-four (24) months following the termination of my employment for any reason (the "Employee Non-Solicitation Period"), I agree that I will not, either on my own behalf or on behalf of any other person or entity, directly or indirectly, hire, solicit, retain, or encourage to leave the employ of Compass (or assist any other person or entity in hiring, soliciting, retaining or encouraging) any person who is then or was within six (6) months of the date of such hiring, an employee of Compass.

3. **Non-Solicitation of Compass Customers.** During the term of my employment at Compass and for twenty-four (24) months following the termination of my employment for any reason (the "Customer Non-Solicitation Period"), in order to protect Compass' Confidential Information, I agree that I will not, either on my own behalf or on behalf of any other person or entity, directly or indirectly, solicit, sell or assist anyone in the sale of or provide service relating to any of Compass' services or services similar to those sold by Compass to any person, company, firm, or corporation who is or was a customer of Compass within one (1) year prior to the termination of my employment and with whom I, or those employees reporting to me, had Material Contact during the last year of my employment. For the purpose of this Non-Solicitation Agreement, Material Contact shall be defined as personal contact or the supervision of the efforts of those who have direct personal contact with a customer or potential customer. I agree not to solicit, sell or assist in the sale or provide service to any such customers on behalf of myself or any other person, firm, company, or corporation.

4. **Confidentiality.** I agree that at all times, both during and after my employment with Compass, I shall not directly or indirectly use or disclose any Confidential Information to any third person or entity outside Compass, except (i) as may be necessary in the good faith performance of my duties for Compass or (ii) as I may be required to disclose under any applicable laws, regulations or directives of a governmental entity having jurisdiction in the matter or under subpoena or other process of law, provided that I shall promptly notify the Company in writing of any such requests for disclosure.

5. **Common Law Duties.** I acknowledge and agree that I owe fiduciary and common law duties to Compass, in addition to the covenants set forth above, prohibiting the misuse or disclosure of trade secrets or confidential information and the unlawful interference with Compass' business and customer relationships.

1

**6. Duty to Show Non-Solicitation Agreement to Prospective Employers.** During my employment with Compass and for twenty-four (24) months thereafter, I shall, prior to accepting other employment, provide a copy of this Non-Solicitation Agreement to any recruiter who assists me in locating employment other than Compass and to any prospective employer with which I discuss potential employment.

**7. At-Will Employment.** I acknowledge and agree that my employment with Compass is at-will and that both the Company and I retain the right to terminate the employment relationship at any time and for any reason, with or without prior notice. Nothing in this Non-Solicitation Agreement shall be construed to be a guarantee or promise of future employment of any duration.

**8. Termination of Non-Solicitation Agreement.** This Non-Solicitation Agreement shall terminate only upon the mutual written agreement of the parties.

**9. Survival.** The obligations contained in Paragraphs 2, 3 and 4 shall survive the termination of this Non-Solicitation Agreement. In addition, the termination of this Non-Solicitation Agreement shall not affect any of the rights or obligations of either party arising prior to or at the time of termination of this Non-Solicitation Agreement, or which may arise by any event causing the termination of this Non-Solicitation Agreement.

**10. Waiver of Rights.** If on one or more instances either party fails to insist that the other party perform any of the terms of this Non-Solicitation Agreement, such failure shall not be construed as a waiver by such party of any past, present, or future right granted under this Non-Solicitation Agreement; and the obligations of both parties under this Non-Solicitation Agreement shall continue in full force and effect. Compass' waiver, for whatever reason, of the terms of a non-solicitation agreement between Compass and any other employee shall not operate as a waiver or release of my obligations under the Non-Solicitation Agreement and may not be used as evidence of Compass' intent to waive any of the terms of this Non-Solicitation Agreement.

**11. Modification.** This Non-Solicitation Agreement or any provision of it cannot be modified, abrogated or waived except in a written document signed by the President of Compass or, in the event of the absence of this executive or the vacancy of this position, such other officer of Compass as its Chief Executive Officer shall designate in writing.

**12. Remedies.** I acknowledge and agree that compliance with Paragraphs 2, 3 and 4 of this Non-Solicitation Agreement is necessary to protect the business and goodwill of Compass; and that a breach of Paragraphs 2, 3 or 4 will irreparably and continually damage Compass, for which money damages may not be adequate.

  a. I agree that, in the event that I breach or threaten to breach any of these covenants, Compass shall be entitled to (i) a preliminary or permanent injunction in order to prevent the continuation of such harm; (ii) money damages insofar as they can be determined; and (iii) any other damages permitted by applicable law. Nothing in this Non-Solicitation Agreement, however, shall be construed to prohibit Compass from also pursuing any other remedy, the parties having agreed that all remedies shall be cumulative.

  b. In addition to any money damages for the period of time during which I violate these covenants, Compass shall be entitled also to recover the amount of any fees, compensation, or other remuneration earned by me as a result of any such breach, as well as recovery of the consideration provided to me for entering into this Non-Solicitation Agreement.

**13. Tolling Period of Restriction.** I acknowledge and agree that in addition to the remedies Compass may seek and obtain pursuant to Paragraph 12, the Employee Non-Solicitation Period and/or Customer Non-Solicitation Period will be

extended by any and all periods in which I am found to have been in violation of the applicable covenant contained in Paragraphs 2 or 3 of this Non-Solicitation Agreement.

**14. Attorneys' Fees.** In the event of any dispute or controversy arising under this Non-Solicitation Agreement, the prevailing party in any litigation or arbitration shall be entitled to recover from the other party the costs and expenses, including attorney's fees, incurred by the prevailing party related solely to the dispute or controversy.

**15. No Defense.** A claim by me against Compass shall not constitute a defense to Compass' enforcement of the restrictive covenants of this Non-Solicitation Agreement.

**16. Severability.** I acknowledge and agree that the parties have attempted to limit my right to solicit only to the extent necessary to protect the legitimate interests of Compass. If any provision or clause of this Non-Solicitation Agreement, or portion thereof, shall be held by any court of competent jurisdiction to be illegal, void or unenforceable in such jurisdiction, the remainder of such provisions shall not thereby be affected and shall be given full effect, without regard to the invalid portion. It is the intention of the parties and I agree, that if any court construes any provision or clause of this Non-Solicitation Agreement, or any portion thereof, to be illegal, void or unenforceable because of the duration of such provision or the area or matter covered thereby, such court shall reduce the duration, area or matter of such provision and, in its reduced form, such provision shall then be enforceable and shall be enforced.

**17. Governing Law/Jurisdiction.** This Non-Solicitation Agreement shall be subject to and governed by the laws of the State of Maryland, without regard to its laws or regulations relating to conflict of laws. I hereby consent to the jurisdiction of, and agree that any claim arising out of or relating to this Non-Solicitation Agreement may be brought in any federal court or any state court of Maryland that has jurisdiction over such matters.

**18. Assignment.** This Non-Solicitation Agreement and any rights thereunder may be assigned by Compass and if so assigned shall operate to protect the Confidential Information and relationships of Compass as well as such information and relationships of the assignee.

**19. Applicability.** This Non-Solicitation Agreement shall be binding upon and shall inure to the benefit of the parties and their successors, assigns, executors, administrators and personal representatives.

**20. Notice.** Any notice to be given to me shall be sent by registered mail, certified mail or any other method by which receipt can be confirmed to me at my last known residence address. Any notice to be given to Compass shall be sent by registered mail, certified mail or any other method by which receipt can be confirmed to Compass at its offices at:

> If to Compass:
> Compass Marketing, Inc.
> 222 Severn Avenue, Building 14, Suite 200
> Attn: Chief Administrative Officer

> If to Employee: the address shown at the end of this Non-Solicitation Agreement.

Either party may change the address to which notices are to be sent by so notifying the other party in writing as set forth in this Non-Solicitation Agreement. If mailed as provided in this Non-Solicitation Agreement, notice shall have been deemed to be given as of the date of mailing.

**21. Headings.** The headings have been inserted for convenience only and are not to be considered when construing the provisions of this Non-Solicitation Agreement.

**22. Opportunity to Review.** I acknowledge and agree that Compass is advising me that I may consult with an independent attorney before signing this Non-Solicitation Agreement.

**23. Complete Understanding.** This Non-Solicitation Agreement constitutes the complete understanding between the parties regarding this subject. This Non-Solicitation Agreement cancels and supercedes any previous agreement on this subject signed by me and Compass prior to the date of this agreement. I acknowledge and agree that notwithstanding the foregoing, this Non-Solicitation Agreement does not cancel or supercede any representations or agreements made by me in any Employee Agreement Concerning Inventions, Intellectual Property, Confidential Information and Conflict of Interest with Compass, and/or Assignment of Inventions and of Letters Patent agreement(s) with Compass.

(Signature page follows.)

IN WITNESS WHEREOF, the parties have caused this Non-Solicitation Agreement to be executed and delivered, effective as of the date signed below by a duly authorized officer of Compass.

Dated: _____

_____
Employee

_____
Typed Name

_____
Address

Compass Marketing, Inc.

By: _____
    Name: Erin Songer
    Title:   Chief Administrative Officer

By: _____
    Name: Jerry Cain
    Title:   President

4