IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID J. BOSHEA,
  *Plaintiff,*

  v.           Civil No. ELH-21-309

COMPASS MARKETING, INC.,
  *Defendant.*

**MEMORANDUM OPINION**

Plaintiff David Boshea was employed by defendant Compass Marketing, Inc. ("Compass") from 2007 until his termination, without cause, in March 2020. In February 2021, Boshea sued Compass, claiming breach of contract (Count I) and violation of the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code (2016 Repl. Vol., 2021 Supp.), §§ 3-501 *et seq.* of the Labor and Employment Article ("L.E.") (Count II). ECF 1. In particular, Boshea alleged that, pursuant to a written employment agreement, he is entitled to a severance payment, equal to three years of his salary, in the sum of $540,000. ECF 1.[1]

Boshea included with his suit a signed copy of the alleged employment agreement. *See* ECF 1-3. Compass and its owner, John White, contest the validity of the written agreement, claiming that John White's signature is forged.[2]

_____

[1] Jurisdiction is founded on diversity of citizenship. ECF 1, ¶¶ 1, 3, 4.

[2] I often refer to John White by his full name (first and last names) to avoid confusion with his brothers, Daniel and Michael, who were part owners of Compass until 2018. The brothers' relationship is apparently a very contentious one. They have been involved in litigation in this Court and elsewhere. *See*, *e.g.*, *Compass Marketing, Inc. v. Flywheel Digital, LLC, et al.*, GLR-22-379 (D. Md.); *Compass Marketing, Inc. v. Flywheel Digital LLC*, No. 23-1324, 2024 WL 3292676 (4th Cir. July 3, 2024); *Michael White, et al. v. John White, et al.*, Case No. 013CL21004012-00 (Cir. Ct. Va., Arlington) (seeking the dissolution of Compass).

Plaintiff filed an Amended Complaint in August 2021.  ECF 27.  However, no additional claims were added.  Then, in September 2021, plaintiff filed a Second Amended Complaint.  ECF 48 ("SAC" or "Second Amended Complaint").  The SAC added Count III, alleging, as an alternative to Count II, a violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. Ann. 115/1 *et seq.*

The issue of whether the MWPCL or the IWPCA applied here was resolved by Memorandum Opinion and Order of July 22, 2022.  ECF 110, ECF 111.  There, I determined that the MWPCL, with its "expansive reach," ECF 110 at 32, applied to this case, rather than the IWPCA.  *Id.* at 40.

The case proceeded to a six-day jury trial in February 2024.  *See* Docket.  At the close of all the evidence, plaintiff sought to amend the suit to include a claim for beach of oral contract.  The defense vigorously objected.  Nevertheless, I granted the motion, pursuant to Fed. R. Civ. P. 15.

On February 27, 2024, the jury returned a verdict in favor of Boshea with respect to claims for breach of oral contract and violation of the MWPCL.  ECF 246.  As to the oral contract claim, the jury awarded Boshea $193,000 in compensatory damages, as well as prejudgment interest.  With respect to the MWPCL claim, the jury awarded the sum of $540,000, which equates to three years of Boshea's salary.  However, as the verdict sheet (ECD 246) reflects, the jury declined to award any statutory enhanced damages.  *Id.*

The Court entered judgment in favor of plaintiff on March 8, 2024, in the amount of $540,000 in compensatory damages.  ECF 254.[3]  In addition, I awarded prejudgment interest with respect to the sum of $193,000, at the rate of 6% per annum, dating from March 3, 2020.  Post-

---

[3] Plaintiff is not entitled to recover twice for one injury.

judgment interest was awarded on the sum of $540,000, at the rate of 5% per annum. *Id.* Pursuant to the MWPCL, the Court also set a deadline for plaintiff's submission of a motion for attorney's fees. *Id.*; *see also* ECF 260. And, the Court directed the Clerk to close the case. ECF 254.

Thereafter, Compass filed a "Renewed Motion for Judgment as a Matter of Law, or, in the Alternative, Motion for a New Trial." ECF 255. Boshea opposed the Motion. ECF 261. Compass replied. ECF 263.

By Memorandum Opinion (ECF 275) and Order (ECF 276) dated August 7, 2024, I granted ECF 255, in part. In particular, I denied Compass's motion for judgment, but I granted Compass's motion for a new trial. Additionally, I permitted Boshea to move to amend his Second Amended Complaint to add a claim based on breach of oral contract. I also permitted the parties to reopen discovery, limited to the matter of allowing plaintiff to obtain additional handwriting exemplars from John White for use by plaintiff's handwriting expert, and permitted depositions of the handwriting experts of both parties, limited to any revised or new opinions arising from White's production of additional handwriting exemplars.

Dissatisfied with the Court's ruling, on September 5, 2024, defendant filed "Defendant Compass Marketing, Inc.'s Motion for Reconsideration of Order Denying Renewed Motion for Judgment as a Matter of Law Or, In the Alternative, Motion For Reconsideration of Order Granting a New Trial on All Claims." ECF 279 (the "Motion"). Plaintiff opposes the Motion. ECF 285. Defendant has replied. ECF 286.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.[4]

---

[4] Because the Court has granted a new trial, and I shall deny the Motion, I shall also vacate the Judgment (ECF 254) and the Order (ECF 260) concerning the matter of attorney's fees.

# I.    Factual Background[5]

Boshea was an at will employee of Compass from May 2007 until his termination, without cause, in March 2020.  Thereafter, in February 2021, Boshea filed suit against Compass, alleging that Compass owed him severance pay equal to three years of salary, in the sum of $540,000, pursuant to a written employment agreement.  *See* ECF 1.  The suit was amended twice before the trial commenced.  *See* ECF 27 (the "First Amended Complaint"); ECF 48.

At the time of trial, the Second Amended Complaint (ECF 48) was the operative complaint.  As indicated, in the SAC, Boshea lodged *inter alia*, claims for breach of a written contract (Count I) and violation of the Maryland Wage Payment and Collection Law (Count II).[6]  Notably, the SAC did not allege breach of an oral contract.

On June 6, 2023, the parties filed a Joint Pretrial Order (ECF 173), in anticipation of the trial that was then scheduled for July 31, 2023.  ECF 145.  However, by Order of June 23, 2023 (ECF 178), trial was reset for October 30, 2023.  Unfortunately, just before the trial was to begin on October 30, 2023, one of the lawyers tested positive for COVID-19.  ECF 207.  As a result, trial was reset for February 20, 2024.  ECF 209.

---

[5] The Court does not have a copy of the trial transcripts.  However, the Court has been provided with the transcripts for a portion of the proceedings held on February 20, 2024, and a portion of the proceedings held on February 22, 2024.  *See* ECF 234 (excerpt from February 22, 2024); ECF 281 (voir dire on February 20, 2024); ECF 282 (excerpt from February 20, 2024).  Therefore, in recounting the facts, I have relied on my notes from the trial, the parties' submissions, and the recordings of the trial proceedings located in "For the Record."  Although I sometimes use quotes from the trial testimony, they are based on my trial notes and therefore the quotes may not be entirely correct.

[6] The caption of Count II refers to the "Maryland Wage Payment and Collection *Act*."  ECF 48 at 5 (emphasis added).  However, the parties otherwise refer to the Maryland Wage Payment and Collection *Law*, or MWPCL.  *See* L.E. § 3-509.

Trial commenced on February 20, 2024, with respect to the claims asserted in Counts I and II of the SAC. ECF 230. However, in his opening statement, Boshea's counsel seemed to suggest to the jury that, even if the jury found that the signature of John White on the employment agreement was forged, the jury could conclude that the parties had an oral employment contract, which included an agreement to pay severance to plaintiff in the event of his termination, without cause. Compass's counsel did not object to the statement. *See* ECF 261 at 1, 3.

At trial, Boshea recalled that as of 2007, he had known John White for thirty years. Further, Boshea testified that in March 2007, White visited him in Chicago, where Boshea lived, in an effort to persuade Boshea to work for Compass. Boshea made clear that a severance commitment was important to him, because he wanted "a security net" to "protect [his] family."

On May 16, 2007, Boshea received an email from White that contained terms of a proposed employment contract, including a severance provision. The email was introduced into evidence as Plaintiff's Trial Exhibit 4 ("Offer Letter"); *see also* ECF 242.

In particular, the Offer Letter provided for an annual salary of $180,000 for Boshea and included various employee benefits. It also provided for an "'involuntary exit package' of 3 times [Boshea's] salary (1 year will be immediately vested, with the additional 2 years accrued over the next three years)." *Id.* Further, the Offer Letter states, *id.*: "Upon acceptance of this letter of intent, I will send you a full employment agreement . . . ."

Boshea testified that after he received this email, he "contacted John White and accepted its terms." ECF 261 at 9. Thereafter, White again traveled to Chicago, where Boshea resided. Boshea recounted that he; Julie Boshea, plaintiff's wife at the time;[7] Rebecca Obarski, the

---

[7] Julie and David Boshea are now divorced.

Bosheas' friend, who is an attorney; Ms. Obarski's husband; and John White all attended a celebration dinner in Chicago. *Id.*

Plaintiff's Trial Exhibit 8 is titled "Compass Marketing, Inc. Agreement Relating to Employment And Post-Employment Competition" (the "Agreement"). Boshea testified that he received it from White by email. It has some handwritten notations on it.

Of relevance, the Agreement appears to contain the signatures of John White and plaintiff. *Id.* at 5. But, the dates of the signatures are blank. Boshea denied that he ever forged White's signature. In contrast, defendant disputes the authenticity of White's signature.

Article 6 of the Agreement is titled "Severance." *Id.* at 3. Article 6(A) provides that, upon termination for any reason other than "Cause," Boshea "shall receive severance payments totaling $180,000 . . . Severance will increase one month for every month employed to a maximum severance of $540,000." Thus, even if plaintiff were terminated immediately after joining Compass, he would be entitled the sum of $180,000. And, if he were employed by Compass for three years or more, he would be entitled to a maximum of $540,000.

"Cause" is defined in Article 6(C) of the Agreement. But, it is undisputed that Boshea was not terminated for cause.

Boshea testified that in May 2007, he traveled to Compass's office in Annapolis, Maryland. ECF 261 at 9. He was met by Michael White, the brother of John White. According to Boshea, he had "questions and suggestions" for John White about the Agreement. *Id.* However, John White stated that he could not change the terms. *Id.* John White pulled out the Agreement, signed it, and made a copy of it for Boshea. According to Boshea, White kept the "ink one" and gave a copy to Boshea. Boshea recounted that White "needed [him] to get started" with work.

As mentioned, Boshea remained with Compass from 2007 until his termination in March 2020.  According to Boshea, "he was in Maryland approximately 100-150 days over the course of his 13 years of employment with Compass Marketing."  ECF 255 at 22.

Upon plaintiff's termination, Boshea made repeated requests to White and Compass for his severance pay, but White ignored him and Compass failed to pay him any severance.  In particular, Boshea testified that he called White around forty times.

Julie Boshea, who was married to Boshea at the relevant time, also testified at trial.  She recalled that Boshea and White had been good friends, and the Boshea children referred to John White as "Uncle Whitey."  Ms. Boshea testified that White visited them in Chicago multiple times, including in March 2007, to meet with Boshea about possible employment.  She "heard what was going on" when they talked.  In particular, White said he would protect Boshea's family in case Compass was sold or in case anything happened with their friendship, and it would be by way of a severance payment.

Further, Ms. Boshea recalled that she went to a celebratory dinner with plaintiff, White, and others following plaintiff's acceptance of the job offer that had been emailed by White to plaintiff in May 2007.  Ms. Boshea was "excited" when Boshea decided to accept the employment offer.  In addition, Ms. Boshea testified that her husband also showed her the Agreement.  Specifically, she claimed that she saw a copy of it when Boshea returned from Maryland in June 2007, and it was signed.

Donna Eisenberg was received as an expert for plaintiff in the field of handwriting and document examination.  ECF 234 (Trial Transcript Excerpt, February 22, 2024), at 8.  Curiously, prior to trial, she was never deposed by defendant.

Eisenberg's expert report, dated October 11, 2021 (Plaintiff's Trial Exhibit 18), was introduced into evidence, without objection.  There, Eisenberg outlined her finding that "***no conclusion*** can be reached regarding authorship of the Exhibit Q1 signature," *i.e.*, the purported signature of John White on the Agreement.  *Id.* at 3 (emphasis in original); *see also* ECF 242.  She explained, *id.*: "Forensic handwriting examinations are dependent upon the evidence containing sufficiency in ***quality***, ***comparability***, and ***quantity***.  All three of these criteria are deficient . . . ." (Emphasis in original).

Similarly, Eisenberg testified at trial as to the issue of the authenticity of the purported signature of John White contained on the Agreement.  As to Plaintiff's Trial Exhibit 8, the Agreement purportedly signed by White and plaintiff, Eisenberg explained that she did not have a sufficient number of suitable exemplars from John White to determine whether his signature on the Agreement was genuine.

During the direct examination of Eisenberg, defendant's counsel expressed concern that Eisenberg was reading from a report that had not been provided to the defense.  ECF 255 at 23.  At that time, Boshea's counsel revealed that he "forgot" to provide Compass with Eisenberg's "Surrebuttal Report" of November 2021, containing her response to the report of the defense handwriting expert, Jeffrey Payne.  *See* ECF 234 at 50, 63, 66; ECF 255-4 at 2.[8]  According to plaintiff's counsel, the failure was an "oversight."  ECF 234 at 66.  I characterized the failure to produce the report as "inexplicable," *id.* at 78, and directed counsel to provide the Surrebuttal Report immediately to the defense.  *Id.* at 55, 67, 68.

---

[8] It is not clear why the report is referred to as a Surrebuttal Report.  But, I shall use the terminology that the parties have used.

Nevertheless, I was not persuaded that the Surrebuttal Report "really varies from [the expert's] original report." *Id.* at 69. In particular, there was no change in the expert's conclusion. *Id.* at 80. Moreover, Eisenberg had not testified in detail about the previously undisclosed report. *Id.* at 75, 76. I cautioned, *id.* at 68: "[L]et's not conflate the fact that there was a violation of counsel's obligation to produce that document with whether it actually is significant."

Regardless, I sought to "ameliorate the error" in order to "preserve the ability of the case to go forward." *Id.* at 80. For example, although the defense never deposed the plaintiff's expert, I offered the option of a deposition. Ultimately, after the Court took a recess to research the matter of discovery violations, and for the reasons stated on the record, I allowed Eisenberg to testify. But, I limited her testimony to the content of her original report. *Id.* at 74. I also gave the defense ample time to confer with its expert about the information in the Surrebuttal Report, and delayed cross-examination of Eisenberg, in order to enable the defense to prepare for any new information. *Id.* at 82–85.[9]

At the close of plaintiff's case, defendant moved for judgment under Fed. R. Civ. P. 50. *Id.* I denied the Motion.

In the defense case, Compass called its handwriting expert, Jeffrey Payne. *Id.* In sum, he opined that the purported signature of John White on the Agreement was fraudulent.

John White testified that he did not recall a celebratory dinner in Chicago with Julie and David Boshea. According to Compass, White "rebutted Boshea's testimony to demonstrate that any contract Boshea alleged to exist merely reflected contract negotiations that took place during

---

[9] The defense moved for a mistrial based on the failure of plaintiff to provide the Surrebuttal Report. I denied that motion.

the months before Compass Marketing hired Boshea and, therefore, there was no actual contract with definite terms." ECF 255 at 2.

During cross-examination, Boshea's counsel sought to undermine White's veracity. Plaintiff's counsel established, for example, that at White's deposition, White had no recollection about the parties' discussions or negotiations as to the employment of Boshea. ECF 261 at 10; *see also* ECF 242.

During trial, Compass sought to introduce an exhibit that had been included on Boshea's exhibit list, but was not introduced by Boshea. The parties label this document as "David Boshea April 2007 Memo to John White." The document is titled "Re: Joining Compass Marketing." *See* ECF 255-5 ("2007 Memo").

The 2007 Memo is a one-page, undated, typed memo from Boshea to White, with some handwritten notations. As noted, it is titled "Re: Joining Compass Marketing." *Id.* at 2. The 2007 Memo contains typed lists under three separate typed headings: "Expectations", "Concerns", and "Compensation." *Id.* The typed words "severance/buy out agreement" are listed under Compensation, but they are lined out by hand. *Id.* However, the typed line continues: "3X Total annual compensation." *Id.* Next to it, in handwriting, it says, "Sale of Compass." *Id.* At the bottom of the page, in handwriting, it states: "*6 month severance." *Id.* Below those words, it says: "1 yr." *Id.*

As noted, the parties filed a proposed Joint Pretrial Order ("PTO") on June 6, 2023. ECF 173. It contained the parties' exhibit lists, including the exhibit of plaintiff titled "David Boshea April 2007 Memo to John White." *Id.* at 16–17, 18–21. On October 18, 2023, after the trial date of July 31, 2023, had been rescheduled (ECF 145, ECF 178), the parties submitted an Amended PTO. ECF 195. Plaintiff again listed the 2007 Memo as an exhibit. *Id.* at 15. For its part, Compass

did not include that document as a defense exhibit. Compass offers the curious explanation that it did not do so because "Boshea included the exhibit in his exhibit list . . . ." ECF 255 at 21; *see id.* at 2–3.

Apparently, Compass had a change of mind regarding the 2007 Memo. On February 16, 2024, four days before trial, Compass emailed an exhibit list to plaintiff and to the courtroom deputy, which included the 2007 Memo. ECF 255-1. Compass's email contained one sentence, which stated, *id.* at 2: "Attached is Defendant Compass Marketing, Inc.'s exhibit list in both Word and PDF format." Although the revised exhibit list added the 2007 Memo as a defense exhibit, Compass never alerted plaintiff or the Court to the change. *See id.*

As mentioned, Boshea never introduced the 2007 Memo as an exhibit at trial. Consequently, Compass sought to do so. But, the Court ruled that Compass could not introduce an exhibit that had not been included on the Amended PTO. *Id.* However, and of import, at the time of that ruling there was no claim of an oral agreement, to which the 2007 Memo is pertinent. Rather, the case was proceeding only on a claim of a written agreement. In any event, the Court permitted White to testify as to the content of the 2007 Memo.

At the close of evidence, Compass again moved for judgment, pursuant to Fed. R. Civ. P. 50. ECF 238; *see also* ECF 255 at 3. At that time, Boshea's counsel moved to amend the SAC to include a claim for breach of oral contract. As the record reflects, the Court expressed its dismay. After all, the case had been pending for about three years, and the claim clearly was one of which plaintiff had knowledge. However, upon review of Fed. R. Civ. P. 15, and because the underlying facts for breach of an oral contract are very similar to the facts for breach of the written contract, I permitted the belated amendment. I also denied defendant's motion for judgment. ECF 238.

The jury began its deliberations on February 27, 2024.  ECF 241.  During deliberations, the jury posed the following questions, ECF 245-1:

> Who gave Mrs. Eisenberg the initial Q1 sample and all known samples?
> Who gave Mr. Payne the initial Q1 sample and all known samples?

Outside the presence of the jury, I reviewed the questions with counsel and asked counsel how they wanted the Court to respond.  Defense counsel replied that I should tell the jury that "it came from Compass."  *See* ECF 261 at 14.  A discussion ensued.  I then advised counsel that I would read the questions for the record and then inform the jury that the samples came from Compass.  I also confirmed that this was acceptable.  After the jury entered the courtroom, I read the questions and informed the jury that Compass provided the samples.

Later that day, the jury returned its verdict.  The jury found that Compass entered into and breached an oral contract for a severance payment.  ECF 246 at 1.  The jury awarded Boshea $193,000 for breach of oral contract, and also found that Boshea is entitled to prejudgment interest on that amount, calculated at the rate of 6% per year from the date of his termination.  *Id.* at 2. Further, the jury found that Compass violated the MWPCL by failing to pay the severance payment owed to Boshea.  *Id.*  And, the jury found that Compass's failure to pay the severance amount was not the result of a bona fide dispute.  *Id.*  Further, it determined that, under the MWPCL, Boshea was entitled to a severance payment of $540,000, which equated to three years of salary.  *Id.* However, and of import, the jury did not award plaintiff additional statutory damages, *i.e.*, a sum up to three times the amount of unpaid wages.  *Id.* at 3.

As mentioned, the Court entered judgment in favor of plaintiff on March 8, 2024, for a total of $540,000 in compensatory damages; prejudgment interest at the rate of 6%, dating from

March 3, 2020, as to the sum of $193,000; and post-judgment interest at the rate of 5% per annum on the sum of $540,000.  ECF 254.[10]

On April 5, 2024, Compass filed a "Renewed Motion for Judgment as a Matter of Law, or, In the Alternative, Motion for a New Trial."  ECF 255.  In the Motion, Compass advanced four grounds for relief: (1) The Court erred in allowing Boshea to amend his suit at the close of evidence, to add a claim based on an alleged oral contract; (2) Boshea failed to present evidence establishing an oral contract between Boshea and Compass; (3) Boshea did not establish the applicability of the MWPCL; and (4) Compass was prejudiced by the testimony of Boshea's handwriting expert, Donna Eisenberg, because she relied on a supplemental report that had not been disclosed to Compass prior to Eisenberg's trial testimony.  *See* ECF 255.  Boshea responded on April 19, 2024.  ECF 261.  Compass replied on May 3, 2024.  ECF 263.

By Memorandum Opinion (ECF 275) and Order of August 7, 2024 (ECF 276), the Court denied Compass's motion for judgment as a matter of law but granted Compass's motion for a new trial.  In sum, I noted that, in the midst of the trial, the Court had only a brief time to consider Boshea's motion to amend the suit to add a new claim.  ECF 275 at 22.  And, focusing on the issue of prejudice to the opposing party, I found that "Boshea engaged in trial by ambush."  *Id.* at 23. Despite factual similarities in regard to plaintiff's evidence concerning an oral and a written contract, I noted that there are some distinctions in the elements.  And, I was of the view that the defense was deprived of the opportunity to challenge any "shortcomings in the proof of an oral contract."  *Id.*

---

[10] The Court stated that, as to compensatory damages, Boshea "is not entitled to duplicate recovery."  ECF 254, ¶ 3.

Plaintiff filed the Third Amended Complaint on August 23, 2024 (ECF 278, "TAC"), along with exhibits. The TAC adds a claim for breach of oral contract.[11] Compass has answered. ECF 280.

On September 5, 2024, defendant filed "Defendant Compass Marketing, Inc.'s Motion for Reconsideration of Order Denying Renewed Motion for Judgment as a Matter of Law Or, In the Alternative, Motion For Reconsideration of Order Granting a New Trial on All Claims." ECF 279. Plaintiff opposes the Motion. ECF 285. Defendant has replied. ECF 286.

## II.    Legal Standards

After trial, Compass renewed its motion for judgment as a matter of law as to the claim of breach of an oral contract, pursuant to Fed. R. Civ. P. 50(b). ECF 255 at 4. Alternatively, Compass sought a new trial under Rule 59(a) as to "whether an oral contract between the parties existed," because Compass was "materially prejudiced by the last-minute addition of the alleged breach of oral contract claim." *Id.*

Under Fed. R. Civ. P. 50(b), a party "may include an alternative or joint request for a new trial under Rule 59." Pursuant to Rule 59, a district court may set aside a verdict and grant a new trial under the following circumstances: "if . . . (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 346 (4th Cir. 2014); *see Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998); *Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1237 (4th Cir. 1995).

---

[11] Confusingly, plaintiff labels the new claim for breach of oral contract as Count I. As a result, what had been Count I (breach of written contract) is now Count II. And, the TAC mistakenly contains two counts that are labeled as Count II.

Defendant characterizes the Motion as an interlocutory one, governed by Fed. R. Civ. P. 54(b). *See* ECF 279 at 4. Compass asserts: "While the Fourth Circuit has not clarified the precise standard applicable to interlocutory motions for reconsideration, it has stated that motions for reconsideration 'are not subject to the strict standards applicable to motions for reconsideration of a final judgment' under Rules 59(e) and 60(b)." *Id.* (quoting *Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018)) (internal citations omitted) (emphasis omitted in ECF 279).

Fed. R. Civ. P. 59 and Fed. R. Civ. P. 60 relate to final judgments. Defendant points to cases where courts have "look[ed] to the standards used to adjudicate Rule 59(e) and Rule 60(b) motions for guidance when considering Rule 54(b) motions for reconsideration." ECF 279 at 4. Indeed, in determining the standard applicable to motions for reconsideration, "'courts in this District frequently look to the standards used to adjudicate Rule 59(e) and 60(b) motions for guidance when considering Rule 54(b) motions for reconsideration.'" *Keen v. LoanCare, LLC*, RDB-22-0149, 2023 WL 9472295, at *1–2 (D. Md. Dec. 21, 2023) (quoting *Jahn v. Tiffin Holdings, Inc.*, SAG-18-1782, 2020 WL 4559927, at *1 (D. Md. May 13, 2020)).

But, the grant of a new trial does not constitute a final judgment. *See Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34 (1980) ("An order granting a new trial is interlocutory in nature and therefore not immediately appealable."); *In re Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 606 F.3d 855, 859 (6th Cir. 2010) (stating that an order for a new trial "does not qualify as a 'final decision[ ]' under 28 U.S.C. § 1291 and thus is not reviewable until a final judgment has been entered by the district court."). Instead, such a ruling is an interlocutory one, because it adjudicates "fewer than all the claims or the rights and liabilities of fewer than all the parties." Fed. R. Civ. P. 54(b).

An order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b); *see also Mateti v. Activus Fin., LLC*, DKC 2008-0540, 2009 WL 3633339, at *4 (D. Md. Oct. 27, 2009) ("Federal Rule of Civil Procedure 54(b) governs reconsideration or orders . . . that adjudicate[] fewer than all the claims or the rights and liabilities of fewer than all the parties.").  The Fourth Circuit has explained that Rule 54(b) is flexible to account for new facts and arguments as the litigation unfolds.  *See Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017); *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003).  However, the Fourth Circuit has admonished that "the discretion afforded by Rule 54(b) 'is not limitless,'" and the Court has "'cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case.'" *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 256 (4th Cir. 2018) (quoting *Carlson*, 856 F.3d at 325).[12]

A motion for reconsideration may be granted "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear

---

[12] The law of the case doctrine "generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Musacchio v. United States*, 577 U.S. 237, 244-45 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)); *accord Arizona v. California*, 460 U.S. 605, 618 (1983); *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019); *Carlson*, 856 F.3d at 325; *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009).  The doctrine's effect is to bar a party from resurrecting issues that were previously decided or "'decided by necessary implication.'"  *United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008) (quoting *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)).  In so doing, the law of the case doctrine advances the interests of efficiency, judicial economy, and finality.  *See Christianson v. Colt Indus. Oper. Corp.*, 486 U.S. 800, 816 (1988) (observing that the doctrine safeguards the "efficiency of the judicial process by protecting against the agitation of settled issues"); *United States v. Philip Morris USA Inc.*, 801 F.3d 250, 257 (D.C. Cir. 2015) (noting that the law of the case "reflects the understanding that 'inconsistency is the antithesis of the rule of law'") (citation and alteration omitted).

error of law or prevent manifest injustice." *Keen*, 2023 WL 9472295, at *1–2 (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993)).  A motion for reconsideration may also be granted "if one of the following is present: '(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief.'" *Jahn*, 2020 WL 4559927, at *2 (quoting *Carrero*, 310 F. Supp. 3d at 584).

Nevertheless, "[a]lthough there may be many valid reasons to reconsider an order, 'a motion to reconsider is not a license to reargue the merits or present new evidence' that was previously available to the movant." *Carrero*, 310 F. Supp. 3d at 583–84 (quoting *Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C.*, 142 F.Supp.2d 676, 677 n.1 (D. Md. 2001)) (internal citation omitted).  In the context of law of the case, the Fourth Circuit has cautioned that the movant must meet a "high burden" of demonstrating that the court's prior ruling "was clearly erroneous and would work a manifest injustice."  *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009).  And, the Court colorfully reiterated: "A prior decision does not qualify for this third exception by being 'just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *Id.* (citations omitted).  In other words, "[i]t must be 'dead wrong.'" *Id.* (citation omitted); *see Peckey v. Bank of Am.*, RDB-14-433, 2016 WL 6951940, at *1 (D. Md. Nov. 28, 2016); *Siple v. First Franklin Fin. Corp.*, RDB-14-2841, 2015 WL 6163791, at *2 (D. Md. Oct. 19, 2015).

Local Rule 105.10 is also pertinent.  With exceptions not applicable here, Local Rule 105.10 provides that "any motion to reconsider any order issued by the Court shall be filed with the Clerk not later than fourteen (14) days after entry of the order." *See, e.g.*, *Direct Benefits, LLC v. TAC Fin., Inc.*, RDB-13-1185, 2019 WL 3804513, at *4 (D. Md. Aug. 13, 2019); *Humane Soc.*

*of U.S. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, DKC-13-1822, 2017 WL 1426007, \*5 (D. Md. Apr. 21, 2017).

Fed. R. Civ. P. 61, titled "Harmless Error," is also pertinent.  It states:

> Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order.  At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

During a telephone conference with counsel on August 21, 2024 (*see* Docket), defense counsel informed the Court of his intent to move for reconsideration with respect to my rulings of August 7, 2024 (ECF 275, ECF 276).  Such a motion was due on that date.  Although the defendant's motion (ECF 279) was untimely filed on September 5, 2024, plaintiff has not complained on that basis.  Therefore, I will proceed to consider defendant's submission.

### III.    Discussion

### A.

In the Motion (ECF 279), defendant asks the Court to reconsider its Memorandum Opinion (ECF 275) and Order of August 7, 2024 (ECF 276), granting defendant's request for a new trial, and granting leave to Boshea to amend the suit to add an oral contract claim.  Compass contends that the Court should have "enter[ed] judgment as a matter of law in favor of Compass Marketing." ECF 279 at 5.

Compass seems to overlook that, in its prior motion (ECF 255), Compass specifically asked the Court, in the alternative, to grant a new trial.  It stated, *id.* at 4:  "Alternatively, the Court should order a new trial in this case under Rule 59(a) on whether an oral contract between the parties existed, as Compass Marketing has been materially prejudiced by the last-minute addition of the alleged breach of oral contract claim.  Had Boshea asserted a breach of contract claim based on an

alleged oral contract theory, Compass Marketing would have elicited different testimony from Boshea and John White and potentially called additional witnesses (and asked additional questions of Boshea at his deposition)."[13]

Thus, Compass asks the Court to reconsider its Order denying its motion for judgment as a matter of law and granting a new trial. ECF 279 at 1. It also asks the Court to "reverse its decision to allow Boshea to amend his Complaint after trial to include a claim for breach of an oral contract, which in turn would leave the jury's verdict on Boshea's breach of written contract claim intact and avert the need to conduct a new trial." *Id.* at 2–3. Alternatively, in the event of a new trial, defendant seeks to limit the trial to the oral contract claim, claiming that plaintiff should not have an opportunity to relitigate the jury's verdict as to the written contract claim. *Id.* at 3. Yet, defendant also wants a "do-over" with regard to the MWPCL claim, for which the jury found in plaintiff's favor, in the amount of $540,000. *See id.* at 15. That sum corresponds to the maximum amount of compensatory damages that plaintiff could have recovered for breach of a written agreement.

## B.

Compass points to three reasons why the Court erred in its prior ruling: "(1) the Court does not have authority to allow an amendment in the absence of Compass Marketing objecting to the evidence of an alleged oral contract at trial and Compass Marketing made no such objection; (2)

---

[13] Discovery disputes were addressed primarily by Magistrate Judge A. David Copperthite. *See* ECF 32, ECF 56, ECF 58, ECF 83. Judge Copperthite denied Compass's requests to extend or reopen discovery for the purpose of allowing Compass to depose Boshea. *See* ECF 109, ECF 184. But, for the reasons set forth in my Memorandum and Order of December 1, 2023 (ECF 212, ECF 213), I permitted Compass to conduct a belated deposition of Boshea.

As I see it, Compass received a proverbial windfall when the Court granted Compass the belated opportunity to depose Boshea. Notably, Compass has not proffered any questions that it would have asked Boshea if it had known of the oral contract claim.

any amendment cannot include a claim that includes different legal standards from the claim already pending before the Court and, as the Court found, claims for breach of an oral contract and breach of a written contract 'are distinct;' and (3) the Fourth Circuit has explained at length that amendments before trial generally are prejudicial to defendants and should not be permitted, and that prejudice is even greater when the new claim invokes new legal standards and/or is made mid-trial like the amendment in this case that was made after the close of all the evidence (and now after the trial)." ECF 279 at 2.

Defendant posits that "[t]he only method for a party to amend a pleading during and after trial is governed by" Fed. R. Civ. P. 15(b). ECF 279 at 5. According to Compass, the Court erred by allowing Boshea to amend his Complaint pursuant to Rule 15(b)(1) because amendment under the Rule is triggered only by a party's objection, and Compass "did not make any objection at trial regarding the introduction of any evidence that purportedly supported a breach of oral contract claim." *Id.* at 6. Moreover, Compass argues that an amendment is not permitted because the legal standards for a claim of breach of oral contract differ from a claim for breach of written contract. *Id.* at 7. Boshea does not address Compass's arguments as to Fed. R. Civ. P. 15(b)(1). *See* ECF 285.

Defendant also contends that Fed. R. Civ. P. 15(b)(2) does not permit Boshea to amend his suit. ECF 279 at 9. Rule 15(b)(2) governs amendments for issues tried by consent, and Compass argues that "Boshea did not try his breach of oral contract claim either with express or implied consent. In fact, as is well documented, Compass Marketing vehemently opposed the amendment when it was made (and it still vigorously opposing it)." *Id.* at 10. According to Compass, its failure to object to Boshea's introduction of evidence at trial concerning an oral contract does not equate to implied consent, because "the same evidence also was being offered to support Boshea's

breach of written contract claim, and thus, it was 'germane' to Boshea's breach of written contract claim." *Id*.[14]

Boshea counters that it was not prejudicial to defendant to allow him to amend his pleading at trial. ECF 285 at 8. Nevertheless, he concedes that "a new trial on all issues is appropriate." *Id*. And, he adds that "further expert discovery allows for a full airing of all matters." *Id*. at 10 (capitals altered).

Nevertheless, Boshea insists that Compass consented to proceeding on the oral contract claim "through its actions." ECF 285 at 2. He adds, *id*.: "In fact, David Boshea informed Compass of his oral contract claim several times, including more than once before the trial. Compass never objected." Indeed, Boshea adds: "Compass knew full well that David Boshea possessed an oral contract claim and would present it." *Id.* at 5.

In support of this argument, Boshea points to his response to Interrogatory No. 1 and to his deposition of January 29, 2024, both of which referenced the oral contract. *Id*. at 3.[15] Plaintiff also claims to have "directly raised the issue of the oral contract when he sought leave to file his motion for summary judgment, explaining the oral contract met the standards under the statute of frauds." *Id*. at 4.

In addition, Boshea points out that his counsel referenced the possibility of an oral contract during his opening statement. *Id*. (citing ECF 282 at 13).[16] Moreover, he points to his own

---

[14] This assertion undercuts defendant's claim of prejudice with respect to the addition of the oral contract claim. Although the oral contract claim constitutes a new legal theory, defendant clearly acknowledges that the same facts are in issue.

[15] To my recollection, at trial plaintiff never told the Court that defendant was aware of plaintiff's intention to proceed on a claim of breach of oral contract.

[16] Boshea cites a discussion between the Court and counsel.

testimony, as well as the testimony of his ex-wife, in which he claims they both referenced oral conversations of contract terms. ECF 285 at 4.

As I indicated earlier, any pretrial discussions between counsel, in which counsel for plaintiff may have alluded to a claim for breach of oral contract, do not carry the day. Such discussions are not a substitute for the proper method of pursuing such a claim. Indeed, mere discussions—without an actual amendment—undermine plaintiff's contention that defendant was on notice of the claim. The failure of plaintiff to seek to add the claim of an oral contract, despite his awareness of it, would reasonably have led Compass to believe that plaintiff was not pursuing an oral contract theory.

Compass does not argue that there was "'(1) a subsequent trial producing substantially different evidence; [or] (2) a change in applicable law . . .'" *U.S. Tobacco Coop.*, 899 F.3d at 256 (quoting *Carlson*, 856 F.3d at 325). Because the Order (ECF 276) is interlocutory, there must be "'clear error causing manifest injustice,'" *U.S. Tobacco Coop.*, 899 F.3d at 256 (quoting *Carlson*, 856 F.3d at 325), or there must have been "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief." *Jahn*, 2020 WL 4559927, at *2. But, distilled to its essence, Compass merely repeats the same arguments to the Court that the Court previously considered in connection with Compass's original post-trial motion.

To be sure, as defendant has acknowledged (ECF 279 at 10), many of the facts in support of a claim for an oral contract are identical to the facts concerning the claim of a written contract. However, while the elements of the claims are also similar, they are not identical. Moreover, the oral contract claim implicates the defense of statute of frauds. As I see it, plaintiff's belated addition of a new legal theory was prejudicial to Compass, which "was entitled to prepare for trial

22

and to expect to try the case only on claims that were asserted in the SAC." *Id.* This conclusion, however, does not justify the award of judgment, as a matter of law, in favor of Compass.

Of relevance here, under Maryland law "parties may 'enter into a binding informal or oral agreement to execute a written contract; and, if the parties contemplate that an agreement between them shall be reduced to writing before it shall become binding and complete, there is no contract until the writing is signed.'" *Cochran v. Norkunas*, 398 Md. 1, 18, 919 A.2d 700, 711 (2007) (quoting *Eastover Stores, Inc. v. Minnix*, 219 Md. 658, 665, 150 A.2d 884, 888 (1959)).[17]  In other words, "[i]f the parties do not intend to be bound until a final agreement is executed, there is no contract." *Cochran*, 398 Md. at 14, 919 A.2d at 708.  Parties who contemplate that their agreement will be reduced to writing are at liberty to withdraw from negotiations before the final writing is signed. *Id.* at 19, 919 A.2d at 711; *Eastover Stores, Inc.*, 219 Md. at 665, 150 A.2d at 888.

Stated another way, "parties can make the completion of their contract depend upon the execution of a written instrument.  The question whether the parties negotiating a contract intended to be bound by their oral agreement but contemplated a written instrument merely a[s] evidence of their agreement, or whether they did not intend to bind themselves until a contract was prepared and signed by them, must be decided from the facts and circumstances in each particular case." *Peoples Drug Stores v. Fenton Realty Corp.*, 191 Md. 489, 493, 62 A.2d 273, 275 (1948).

The Maryland Court of Appeals[18] has enumerated "several factors that may be helpful in determining whether the parties have manifested an intention to be bound." *Cochran*, 398 Md. at

_____

[17] As noted, jurisdiction is founded on diversity of citizenship.  ECF 48, ¶ 5.  Both parties have assumed that Maryland law applies to the issues of contract formation and breach of contract (see ECF 255 at 12–15) and as to the issue of the statute of frauds (*see* ECF 261 at 12; ECF 263 at 9–13).  I reviewed previously the principles of contract formation, oral and written, and contract interpretation under Maryland law.  *Id.* at 28–32.

[18] In the general election held in Maryland in November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the

15, 919 A.2d at 708. These include the language of the preliminary agreement; the existence of open terms; whether partial performance has occurred; the context of the negotiations; the custom of such transactions, such as whether a standard form contract is widely used in similar transactions; whether the agreement has few or many details; whether the amount involved is large or small; and whether it is a common or unusual contract. *Id.* at 15–16, 919 A.2d at 708–09.

Curiously, Compass denies both an oral and a written agreement. Yet, the Offer Letter is not contested. In the Offer Letter, as mentioned, White expressly indicated that he would send Boshea "a full employment agreement . . . ." This could suggest that the parties contemplated a written agreement. Indeed, by Boshea's account, the parties executed the Agreement.

According to Compass, Boshea worked for Compass for thirteen years, without a written agreement. Moreover, with the exception of severance, Boshea received the benefits that had been promised. Thus, a jury could readily conclude that the parties reached an oral agreement; Compass intended to be bound by the oral agreement; and the written agreement was meant merely to serve as evidence of the oral agreement.

In sum, it appears to the Court that Boshea, an at will employee, established the elements of an oral contract claim. The jury reached that conclusion. Moreover, the oral agreement could be performed within one year.

I conclude that the Court did not err in denying Compass's motion for judgment as a matter of law.

---

Supreme Court of Maryland. And, the voters also approved changing the name of the Maryland Court of Special Appeals to the Appellate Court of Maryland. These changes went into effect on December 14, 2022. *See* Press Release, Maryland Courts, *Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland* (Dec. 14, 2022), https://perma.cc/TL89-QFKR. However, I shall refer to the courts by the names that were in effect when the cited decisions were issued.

## C.

For reasons previously stated, I determined that I erred in permitting the belated addition at trial of an oral contract claim. In conjunction with awarding a new trial, however, the Court permitted Boshea to move to amend his suit to add an oral contract claim. *See* ECF 275.

Defendant insists that neither Rule 15(b)(1) nor Rule 15(b)(2) allows Boshea to amend his Complaint, either at the close of evidence at trial or now. ECF 279 at 6–11. But, Compass insists that, if there is a new trial, it should be limited to the oral contract claim, as the written contract claim was already decided by a jury, adverse to plaintiff. Yet, Compass takes the inconsistent position that it should be able to retry the MWPCL claim, in which the jury found in favor of plaintiff in a sum equal to the maximum recovery under the written contract claim. *Id.* at 11–16.

Rule 15(a)(2) provides that amendments should be granted "freely . . . when justice so requires." Whether to grant such motions is within the discretion of the trial court. *See Keller v. Prince George's County,* 923 F.2d 30, 33 (4th Cir.1991); *see also Edmondson v. Eagle Nat'l Bank*, No. CV 16-3938-SAG, 2019 WL 6684130, at *1 (D. Md. Dec. 6, 2019). But, "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Wilburn v. Pepsi-Cola Bottling Co. of St. Louis*, 492 F.2d 1288, 1290 (8th Cir. 1974).

Rule 15(b) concerns amendments during and after trial. It states:

(1) *Based on an Objection at Trial.* If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

(2) *For Issues Tried by Consent.* When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to

amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Compass contends that it "did not make any objection at trial regarding the introduction of any evidence that purportedly supported a breach of oral contract claim," so Rule 15(b)(1) cannot apply here. ECF 279 at 6. Further, Compass argues that under Rule 15(b)(1), an "amendment would be permissible only if the legal standards for the amended claim (i.e., Boshea's breach of oral contract claim) were the same as the standards for the claim already pending before the court (i.e., Boshea's breach of written contract claim)." ECF 279 at 7.

Compass cites *Dank v. Shinseki*, 374 F. App'x 396, 400 (4th Cir. 2010), to support its position. *Id. Dank* is distinguishable.

The Fourth Circuit stated in *Dank* that if the amendment sought by plaintiff would have changed the standard of proof required, that "would have changed the character of the case and would have clearly prejudiced the [defendant's] 'defense on the merits.'" *Dank*, 374 F. App'x at 401 (citing Fed. R. Civ. P. 15(b)(1)). Here, the amendment would not change the standard or the burden of proof. Indeed, no additional discovery is required with regard to the new claim, because the same underlying facts are relevant for both an oral contract claim and a written contract claim. However, if the oral contract claim had been timely raised, I would have permitted the introduction of additional evidence, such as the 2007 Memo. And, the defense may have sought to challenge the claim in its cross-examination of Boshea.

In addition, Compass argues that Rule 15(b)(2) does not allow the amendment because "Boshea did not try his breach of oral contract claim either with express or implied consent." ECF 279 at 10. Compass cites *Feldman v. Pro Football, Inc.*, 419 F. App'x 381 (4th Cir. 2011), in support of its claim that findings of implied consent to permit a late amendment under Rule 15 are rarely made. *See* ECF 286 at 8. But, *Feldman* is not instructive here. In *Feldman*, "the district

court declined to grant summary judgment" with respect to plaintiffs' claim "because it found that defendants did not consent to trial of that claim." *Feldman*, 419 F. App'x at 389.  In contrast, this case is not at the summary judgment stage.  The Court permitted plaintiff to amend his Complaint before a new trial.  Unlike the defendant in *Feldman*, Compass will have an opportunity to defend against plaintiff's claim.

Compass's citation to *Dan Ryan Builders, Inc. v. Crystal Ridge Development, Inc.*, 783 F.3d 976 (4th Cir. 2015), is also inapposite.  In that case, the Fourth Circuit relied on the plaintiff's "own statements about the theory of its case" and "its repeated omission of the now-asserted breach of the . . . contracts from any argument at trial or post-trial" to find that the defendant "did not consent to trial of claims for breach of [these] contracts." *Id*. at 984.  But, counsel for Boshea referenced an oral agreement before and during trial.

As stated by the Fourth Circuit, prejudice to the opposing party by an amendment to the pleadings "will often be determined by the nature of the amendment and its timing." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc).[19]  Prejudice to an opposing party can result when an amendment "raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party [and] the amendment is offered shortly before or during trial." *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir. 1986) (citations omitted); *see Brown v. Target, Inc.*, ELH-14-0950, 2016 WL 4443872, at *9 (D. Md. Aug. 18, 2016); *Weaver v. Real Est. Funding, L.L.C.*, JKS-09-101, 2010 WL 1137504, at *2 (D. Md. Mar. 19, 2010); *see also Johnson v. Sales Consultants, Inc.,* 61 F.R.D. 369, 371 (N.D. Ill. 1971); *Pine Mountain Oil & Gas, Inc. v. Equitable Production Co.,* 446 F.Supp.2d 643, 650 (W.D. Va. 2006).

---

[19] Compass's claim that Boshea's counsel also belatedly requested an amendment in *Dank* is misleading.  Boshea's lead trial counsel is from Chicago and had no role in *Dank*.

This occurs, in general, when the new legal theory "would require the gathering and analysis of facts not already considered by the opposing party."

But when, as here, the party opposing amendment "ha[d] notice of the events giving rise to the action at the outset," courts have held that amendments "under the same theory of the case" should be allowed, even if they would "add[] an additional theory of recovery to the facts already pled." *Cappetta v. GC Servs. Ltd. P'ship*, No. 3:08CV288, 2009 WL 482474, at *6 (E.D. Va. Feb. 24, 2009) (quoting *Laber*, 438 F.3d at 427); *see also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980); *Ramnarine v. Rainbow Child Dev. Ctr., Inc.*, RWT-17-2261, 2018 WL 1243546, at *2 (D. Md. Mar. 9, 2018). This is because, "a proposed amendment carries little prejudice 'if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred.'" *Bioiberica Nebraska, Inc. v. Nutramax Mfg., Inc.*, SAG-18-03133, 2019 WL 5102674, at *4 (D. Md. Oct. 10, 2019) (quoting *Laber*, 438 F.3d at 427) (internal citations omitted); *see Edmondson*, 2019 WL 6684130, at *2 ("Conversely, a proposed amendment carries little prejudice 'if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred.'") (citation omitted).

To be sure, the amendment here is post-discovery. But, as previously stated, no further discovery is needed because the facts for the oral and written contract claims are largely the same and have been known to the defense since the inception of the case. Only the legal theory has changed. Moreover, some courts have upheld amendments to pleadings even after trial and after judgment. *See, e.g.*, *Pomer v. Schoolman*, 875 F.2d 1262, 1268 (7th Cir. 1989) ("The close of the evidence is awfully late in a lawsuit to move for an amendment to the complaint, unless the purpose is merely to conform the pleadings to the evidence; such an amendment is not untimely even if sought after judgment."); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)

("[M]ere passage of time need not result in refusal of leave to amend; on the contrary, it is only undue delay that forecloses amendment.  Amendment can be appropriate as late as trial or even after trial.").

The Court granted a new trial because the untimely addition of an oral contract claim resulted in "a miscarriage of justice."  ECF 275 at 24.  But, it was the *timing* of Boshea's amendment to the SAC—after the close of evidence—that prejudiced Compass.  Defense counsel had no opportunity to question witnesses with respect to matters that might expose shortcomings in regard to the elements of the oral contract claim.  And, the Court did not permit the admission of an exhibit that is relevant to an oral contract claim.  There was also an insufficient opportunity for Compass (and the Court) to address the issue of the statute of frauds.  With a new trial, Compass will have the opportunity to "challenge alleged shortcomings in the proof of an oral contract." ECF 275 at 23.

As stated, a new trial constitutes the cure for the Court's error in allowing plaintiff's belated addition of a new contract claim.  However, I stand by my decision to permit plaintiff to amend the Second Amended Complaint.

**D.**

As noted, Compass argues that, even if the Court grants a new trial, it should not allow Boshea to relitigate the written contract claim.  *See* ECF 279 at 3.  Compass posits that the oral contract claim is distinct.  Yet, defendant advances the patently inconsistent contention that "any new trial the Court orders should be limited to Boshea's breach of oral contract claim (*and the corresponding wage payment claim that could potentially overlap with the oral contract claim*)." ECF 279 at 15 (emphasis added).  Compass complains about Boshea's opportunity to "have

another bite at the apple," by way of a new trial. *Id.* But, Compass is getting a huge bite as to the MWPCL apple.

Defendant identifies three reasons why retrial of the written contract claim would be improper: "(1) the Court can and should order a trial on less than all the issues presented as long as the issues for retrial are separate and distinct, as they are here, (2) the only request for a new trial was made by Compass Marketing and that request was limited to the issue of Boshea's breach of oral contract claim, and (3) granting a new trial on Boshea's breach of written contract claim would be highly prejudicial to Compass Marketing considering there was no error found with the jury's verdict on the written contract claim and a new trial on the written contract claim would effectively punish Compass Marketing while rewarding Boshea for waiting until after the close of all the evidence (and now after trial) to amend his Complaint." *Id.* at 3.

According to Compass, "the propriety of granting a new trial on fewer than all of the issues in a case hinges on whether the issues to be retried are sufficiently 'distinct and separable from the others that a trial of [those issues] alone may be had without injustice.'" ECF 286 at 10 (citing *Atlas Food Sys. & Servs. v. Crane Nat'l Vendors*, 99 F.3d 587, 599 (4th Cir. 1996) (internal citation omitted) (alteration in ECF 286). Compass then points to the Court's Order and contends that it stated that the written and oral contract claims are "distinct." ECF 286 at 10 (citing ECF 275 at 23).

Notably, "there is a general presumption against partial new trials." Laura Hunter Dietz, *et al.*, 35B C.J.S. Federal Civil Procedure, at § 1068 (May 2024). "A partial new trial may be granted . . . only if 'it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.'" *Rice v. Cmty. Health Ass'n*, 203 F.3d 283, 290 (4th Cir. 2000) (quoting *Gasoline Prods. Co. v. Champlin Refining Co.,* 283 U.S.

494, 500 (1931)); *see also Atlas Food Sys. & Servs., Inc.*, 99 F.3d at 599; *Swentek v. USAIR, Inc.*, 830 F.2d 552, 560 (4th Cir. 1987); *Young v. Int'l Paper Co.*, 322 F.2d 820, 822–23 (4th Cir. 1963) ("But a new trial on less than all of the issues is proper only where the issues to be retried are separate from the rest of the case."); *Elcock v. Kmart Corp.*, 233 F.3d 734, 758 (3d Cir.2000) ("The grant of a partial new trial is appropriate only in those cases where it is plain that the error which has crept into one element of the verdict did not in any way affect the determination of any other issue.") (internal quotation omitted); *Funari v. MD Dep't of Pub. Safety & Corr. Servs.*, SAG-20-3474, 2024 WL 2749694, at *4 (D. Md. May 29, 2024).  A grant of a partial new trial is most common with new trials for damages only.  *See Rice*, 203 F.3d at 290; *see also Great Coastal Express, Inc. v. International Bhd. of Teamsters,* 511 F.2d 839, 846–48 (4th Cir.1975), *cert. denied,* 425 U.S. 975 (1976).

The Fourth Circuit has stated that "[c]onsiderations of economy, fairness, and repose may provide justification for preserving a jury's . . . determination that has been fairly and fully made," thereby resulting in a new trial only on some issues.  *Atlas Food Sys. & Servs., Inc.*, 99 F.3d at 599.  "In other words, 'a complete new trial is necessary . . . where it would be manifestly prejudicial not to retry the entire case,' and a partial retrial is appropriate only 'where some error requires a new trial on some distinct and separable issues but leaves the verdict on completely separate issues uninfected.'"  *United States ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 865 F. Supp. 2d 1, 10 (D.D.C. 2011) (citing *Channel 20 v. World Wide Towers Servs.,* 607 F.Supp. 551, 558, 559 (S.D.Tex.1985)).

The Court previously recognized that "the claims of an oral and written contract *may be related*."  ECF 275 at 23 (emphasis added).  The Court went on to say, *id.*: "The evidence adduced by plaintiff in support of the written Agreement included events that preceded the alleged

execution of the written Agreement, on which plaintiff relies with respect to the establishment of a claim of an oral contract." Indeed, many of the facts that support the written contract claim also support the claim for an oral contract, and these facts were well known to both sides before trial. But, I observed: "[T]he *elements* of the two claims are distinct, and the defense understandably was focused on disputing the validity of the written Agreement. During the trial, Compass had no reason to challenge alleged shortcomings in the proof of an oral contract." *Id.* (emphasis added).

The jury awarded $540,000 with respect to Boshea's MWPCL claim, representing severance for three years. Yet, because the jury found only an oral contract, it begs the question whether plaintiff can recover unpaid wages for a period of three years under the MWPCL. The parties never addressed this issue, given the unexpected addition of an oral contract claim, nor was the jury instructed in this regard. *See* ECF 275 at 40. By way of a new trial, both sides will have the opportunity to address the statute of frauds in connection with both the oral contract claim and the MWPCL claim, and this will allow the Court to "consider whether the jury should [be] limited to the award of only one year of severance under the MWPCL if it [finds] an oral contract but not a written one." *Id.* at 24.

Nevertheless, the jury is entitled to hear the full version of events. To separate out the dispute concerning the written agreement runs the risk of distorting the parties' respective accounts and the jury's ability to understand what transpired. I decline to sanitize the trial.

It is also noteworthy that Compass repeatedly asked the Court to grant a new trial, and now complains because its request was granted. For example, Compass previously argued, ECF 255 at 4: "Alternatively, the Court should order a new trial in this case under Rule 59(a) on whether an oral contract between the parties existed, as Compass Marketing has been materially prejudiced by the last-minute addition of the alleged breach of oral contract claim. Had Boshea asserted a

breach of contract claim based on an alleged oral contract theory, Compass Marketing would have elicited different testimony from Boshea and John White and potentially called additional witnesses (and asked additional questions of Boshea at his deposition."; *see also id.* at 17 (". . . or, in the alternative, a new trial should be ordered on Boshea's breach of oral contract claim."); *id.* at 17 n.5 ("If judgment is not entered in Compass Marketing's favor, the appropriateness of a new trial becomes even more compelling when considering that Compass Marketing was not able to address at trial the intent/purpose of the alleged written agreement vis-à-vis the alleged oral agreement because the only issue in Boshea's Second Amended Complaint was the validity of the alleged written Agreement."); *id.* at 22 ("As such, at a minimum, judgement [sic] should be entered in Compass Marketing's favor on the issue of a bona fide dispute or, in the alternative, a new trial on the alleged oral contract and wage payment claim should be ordered."); *id.* at 27 ("Compass Marketing requests that the Court order a new trial on the issue of whether an oral contract existed and such other relief as the Court may deem just and appropriate."); ECF 263 at 8 ("The Court's error denying admission of that document warrants at least a new trial.").

Defendant got what it sought. I see no basis to revisit my ruling.

Compass also previously indicated its concerns as to expert testimony and reports. *See* ECF 255 at 23–27. These concerns will be resolved by the reopening of discovery to allow for the experts to provide updated reports based on additional handwriting exemplars provided by John White, and for expert depositions limited to revisions or supplements to the experts' reports.

## IV. Conclusion

For the foregoing reasons, defendant's Motion is denied.

An Order follows, consistent with this Memorandum Opinion.

Date:  November 8, 2024                                      _____/s/_____

                                                            Ellen Lipton Hollander
                                                            United States District Judge