IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID J. BOSHEA,
    *Plaintiff,*

v.

COMPASS MARKETING, INC.,
    *Defendant.*

Civil No. ELH-21-309

**MEMORANDUM OPINION**

This case concerns a dispute between plaintiff David Boshea[1] and his former employer, defendant Compass Marketing, Inc. ("Compass"), with respect to an alleged severance agreement. Boshea contends that Compass breached both a written and oral severance agreement by failing to pay him severance of $540,000 when he was terminated without cause after thirteen years of employment. In addition, on this basis, he asserts a claim under the Maryland Wage Payment and Collection Law ("MWPCL" or "Wage Act"), §§ 3-501 *et seq.* of the Labor and Employment Article ("L.E.") of the Maryland Code (2016 Repl. Vol., 2024 Supp.). Compass and its CEO, John White, dispute the validity of both the written and oral agreement. And, with regard to the written agreement, Compass contends that White's signature on the severance agreement was forged.

As the record reflects, the Court previously conducted a jury trial in this case in February 2024. ECF 230, ECF 231, ECF 233, ECF 235, ECF 238, ECF 241, ECF 246, ECF 299, ECF 300,

---

[1] Recently, while drafting this Memorandum Opinion, I learned of the unexpected and untimely death of Mr. Boshea on January 28, 2025, at the age of 62. *See* ECF 303; David John Boshea, Jr., Beidelman-Kunsch Funeral Homes & Crematory, https://www.beidelmankunschfh.com/obituaries/David-John-Boshea-Jr?obId=35186688 (last visited Feb. 14, 2025). To my surprise, counsel never notified me of plaintiff's death.

It is my understanding from ECF 303 that the case will be pursued by Mr. Boshea's estate. For now, however, I shall continue to refer to Mr. Boshea as the plaintiff.

ECF 301, ECF 302.  The jury found in favor of plaintiff with respect to a belatedly added claim of breach of oral contract.  ECF 246.  The jury also determined that defendant breached the Wage Act.  The jury did not find breach of a written agreement, however.

For the reasons set forth in my Memorandum Opinion and Order of August 8, 2024 (ECF 275, ECF 276), I granted defendant's motion, in the alternative, for a new trial.  *See* ECF 255.  And, by Memorandum Opinion and Order of November 8, 2024 (ECF 288, ECF 289), I denied Compass's motion for reconsideration.  *See* ECF 279.  Trial is presently scheduled for April 21, 2025.  ECF 296.[2]

In anticipation of the new trial, plaintiff submitted two motions in limine.  ECF 287 ("First Motion"); ECF 293 ("Second Motion").  In the First Motion (ECF 287), Boshea asserts that he is entitled to enforce a multi-year severance provision even if the jury finds only an oral contract.  *See id.* at 14.[3]  This issue implicates the Statute of Frauds, § 5-901 of the Courts and Judicial Proceedings Articles ("C.J.") of the Maryland Code (2020 Repl. Vol., 2024 Supp.).[4]  In the Second Motion, Boshea seeks to preclude any references by counsel, the parties, or witnesses to the first trial.  *See* ECF 293.  Defendant opposes both motions.  ECF 280; ECF 294.  Plaintiff replied as to the First Motion (ECF 291) and the Second Motion (ECF 297).

---

[2] Trial had been reset for February 24, 2025.  ECF 277.  But, at the request of defense counsel, it was rescheduled.  ECF 296.

[3] Throughout the Memorandum Opinion, the Court cites to the electronic pagination. However, the electronic pagination does not necessarily correspond to the page number imprinted on a particular submission.

[4] I have cited to the current statutory version.  The parties have not suggested that the substance of the Statute of Frauds at the relevant time, 2007, differs from the current version.  *See also Ives v. Advanced Broadband Solutions, Inc.*, DKS-2003-0848, 2004 WL 180043, at *9 (D. Md. Jan. 23, 2004) (quoting the Maryland Statute of Frauds, C.J. § 5–901 (2002 Repl. Vol.)) (showing no substantive change).

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the motions.

## I.    Factual and Procedural Background

Compass is a sales and marketing company that works with manufacturers of consumer products to assist with product marketing.  ECF 298 (Trial Transcript, 2/21/24), at 45–46; ECF 301 (Trial Transcript, 2/26/24), at 63.[5]  John White is the Chairman and Chief Executive Officer of Compass.  ECF 301 at 64.  Boshea was an employee of Compass from May or June of 2007 until his termination, without cause, in March 2020.  ECF 298 at 55 (Boshea); ECF 301 at 81, 82 (White).

In February 2021, Boshea filed suit against Compass, alleging that Compass owed him severance pay equal to three years of his salary, in the sum of $540,000, pursuant to a written employment agreement.  ECF 1.  The suit was amended twice before the trial commenced.  ECF 27 (the "First Amended Complaint"); ECF 48 (the "Second Amended Complaint" or "SAC").

In the Second Amended Complaint, Boshea lodged claims for breach of a written contract (Count I) and violation of the MWPCL (Count II).[6]  In the alternative to Count II, Count III asserted a claim under the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. Ann. 115/1 *et seq.*  Notably, the SAC did not allege breach of an oral contract.  By Memorandum Opinion and Order of July 22, 2022 (ECF 110, ECF 111), I determined that the Maryland Wage Act, rather than the Illinois statute, applies here.

---

[5] On January 29, 2025, while the Court was working on this Memorandum Opinion, the trial transcripts from the first trial were docketed.  *See* ECF 281, ECF 282, ECF 298, ECF 299, ECF 300, ECF 301, ECF 302.

[6] The caption of Count II refers to the "Maryland Wage Payment and Collection *Act*."  ECF 48 at 5 (emphasis added).  However, the parties otherwise refer to the Maryland Wage Payment and Collection *Law*, or MWPCL.  *See* L.E. § 3-509.

At the time of the first trial in February 2024, the SAC (ECF 48) was the operative complaint. The case proceeded to trial as to the claims asserted in Counts I and II. ECF 230.

Boshea testified that as of 2007, he had known John White for thirty years. ECF 298 at 16. According to Boshea, in March 2007, White visited him twice in Chicago, where Boshea lived, in an effort to persuade Boshea to work for Compass. *Id.* at 17. Boshea made clear that a severance commitment was important to him, because he wanted "a security net" to "protect [his] family." *Id.* at 20, 24.

At trial, Plaintiff's Exhibit 2 was an email from White to Boshea dated April 1, 2007. The authenticity of the email was not disputed by Compass. *See* ECF 301 at 67–72, 80. In the email, White stated, in part: "Dave, I know you very very well, and have been waiting a long time to be able to work beside you again . . . . I can't wait to do this . . . . Also, you and I need to make sure we discuss an exit plan for you, even separate from me selling Compass . . . . I'll be real careful to both protect our friendship, and your family."

Boshea testified that he received an email from White on May 16, 2007, which contained terms of a proposed employment contract, including a severance provision. ECF 298 at 29–34. The email was introduced into evidence at trial as Plaintiff's Trial Exhibit 4 ("Offer Letter"). *See* ECF 298 at 29; *see also* ECF 242 (Plaintiff's Exhibit List).

The Offer Letter provided for an annual salary for Boshea of $180,000 and included various employee benefits. *See* ECF 298 at 34. For example, the Offer Letter stated that "100 percent of [Boshea's] business related membership fees at White Eagle Golf Course [would] be reimbursed. . . ." The benefits also included a car allowance, a "401k," health insurance, and paid vacation. In addition, the Offer Letter provided for an "'involuntary exit package' of 3 times [Boshea's] salary (1 year will be immediately vested, with the additional 2 years accrued over the

next three years)."  *Id.*  Further, the Offer Letter stated, *id.*:  "Upon acceptance of this letter of intent, I will send you a full employment agreement . . . ."

Boshea testified that after he received this email, he contacted White and accepted the offer. ECF 298 at 34.[7]  Thereafter, White returned to Chicago, where Boshea resided.  *Id.* at 161–62. Boshea recounted that he and White then had a celebration dinner in Chicago, joined by Julie Boshea, plaintiff's wife at the time;[8] Rebecca Obarski, the Bosheas' friend, who is an attorney; and Ms. Obarski's husband.  *Id.* at 160–61.

Boshea subsequently received a written agreement from White, via email.  *Id.* at 36. Plaintiff's Trial Exhibit 8 is titled "Compass Marketing, Inc. Agreement Relating to Employment And Post-Employment Competition" (the "Agreement").  *See also* ECF 287-1; ECF 278-2. Exhibit 8 contains some handwritten notations.

The Agreement is six pages in length, and the text is typed and single spaced.  Boshea is identified in the text as "Employee" and referred to as "a senior executive."  ECF 287-1 at 1. Notably, the Agreement largely contains provisions for the benefit of Compass, with the exception of the severance provision, reviewed *infra*.  In other words, it does not include the employee benefits contained in the Offer Letter.  Nevertheless, the evidence indicated that, for the most part, Boshea received the benefits outlined in the Offer Letter.  ECF 298 at 34.

---

[7] As discussed *infra*, "parties may 'enter into a binding informal or oral agreement to execute a written contract; and, if the parties contemplate that an agreement between them shall be reduced to writing before it shall become binding and complete, there is no contract until the writing is signed.'"  *Cochran v. Norkunas*, 398 Md. 1, 18, 919 A.2d 700, 711 (2007) (quoting *Eastover Stores, Inc. v. Minnix*, 219 Md. 658, 665, 150 A.2d 884, 888 (1959)).  On the other hand, parties can intend to be bound by an oral agreement, even if a confirmatory written agreement is contemplated.  *See Peoples Drug Stores v. Fenton Realty Corp.*, 191 Md. 489, 493, 62 A.2d 273, 275 (1948).

[8] Julie and David Boshea had divorced by the time of trial.

5

The Agreement appears to contain the signatures of John White and plaintiff. ECF 287-1 at 5. Boshea testified that White signed it. ECF 298 at 42. He also denied that he forged White's signature. *Id.* at 240. In contrast, White disputes the authenticity of his signature. ECF 301 at 102. However, Compass never claimed at trial that the entire document was a fabrication.

The "Recitals" Section of the Agreement states, in part, ECF 287-1 at 1 (emphasis added): "NOW, THEREFORE, in consideration of Employee's employment with COMPASS, *the severance benefit* and for other good and valuable consideration . . . Employee agrees to enter into this Agreement . . . pursuant to which COMPASS will limit Employee's rights . . . ."

Article 6 of the Agreement is titled "Severance." *Id.* at 3. Article 6(A) states, *id.* at 4:

If Employee's employment is terminated by COMPASS for any reason other than Cause, Employee shall receive severance payments totaling $180,000 (one hundred and eighty thousand U.S. dollars) which will be divided up into twenty-four payments and will commence with the Employee's effective date of termination and shall be made in accordance with COMPASS's normal payroll cycle. The period during which Employee receives severance payments shall be referred to as the "Severance Pay Period." Severance will increase one month for every month employed to a maximum severance of $540,000.[9]

Article 7, titled "Term of Employment," is also relevant. *Id.* at 5. It states, in part: "Employee acknowledges that COMPASS has the right to terminate Employee's employment at any time for any reason whatsoever, provided, however, that any termination by COMPASS for reasons other than Cause shall result in the severance described in Article 6 above, to become due in accordance with the terms of this Agreement . . . ."

Boshea claimed that in May 2007, after receipt of the Agreement, he traveled to Compass's office in Annapolis, Maryland. ECF 298 at 40–41. He was met by Michael White, the brother of

---

[9] "Cause" is defined in Article 6(C) of the Agreement. But, it is undisputed that Boshea was not terminated for cause.

John White. *Id.* at 41.[10]  Boshea claimed that he had questions and suggestions for White about the Agreement.  However, White stated that he could not change the terms. *Id.* at 165, 169. According to Boshea, White pulled out the Agreement, signed it, and made a copy of it for Boshea. *Id.* at 42.  Boshea also claimed that White kept the "ink one" and gave a copy to Boshea. *Id.* Plaintiff recounted that White "needed [him] to get started" with work. *Id.*

As mentioned, Boshea joined Compass as an employee in May or June of 2007.  On March 3, 2020, after thirteen years of employment, Boshea was terminated, without cause, by letter dated March 3, 2020. *See* Plaintiff's Exhibit 13 (termination letter).  The termination letter stated that Boshea's position was "selected to be eliminated due to a necessary reduction in force." *Id.*  Both a "Severance Agreement" and a "Non-Solicitation Agreement" were appended to the termination letter.  In sum, in exchange for a mere "80 hours of Severance Pay," *see* Plaintiff's Exhibit 13, Severance Agreement, ¶ 1, Compass required a non-compete agreement for two years, *id.* ¶ 11; a waiver by Boshea of any suit, *id.* ¶ 3; and the execution by Boshea of a Non-Solicitation Agreement, among other terms.

Plaintiff recalled that upon termination of his employment with Compass, he made repeated requests to White and Compass for his severance payment under the Agreement. *Id.* at 62, 67–68, 72.  He estimated that he called White around forty times, *id.* at 59, but White ignored him. *Id.* at 61.  Indeed, Compass never paid any severance to Boshea. *Id.* at 71.

---

[10] To avoid confusion with John White, I shall refer to Michael White and Daniel White, the brothers of John White, by their first and last names.  The name "White" refers only to John White.  There is considerable acrimony between the White brothers. *See*, *e.g.*, *Compass Marketing, Inc. v. Flywheel Digital LLC, et al.*, GLR-22-379 (D. Md.); *Compass Marketing, Inc. v. Flywheel Digital LLC*, 2024 WL 3292676 (4th Cir. July 3, 2024) (per curiam); *Michael White, et al. v. John White, et al.*, Case No. 013CL21004012-00 (Cir. Ct. Va., Arlington) (seeking the dissolution of Compass).

According to Boshea, during the course of his employment, he traveled to Maryland for work approximately 50 times.  *Id.* at 80.  He estimated that in his thirteen years of employment with Compass, he spent somewhere between 97 to 150 days in Maryland.  *Id.* at 111.

Julie Boshea, who was married to Boshea at the relevant time, also testified at trial.  She recalled that Boshea and White had been good friends before Boshea joined Compass.  ECF 299 (Trial Transcript, 2/22/24), at 61.  Indeed, the Boshea children referred to White as "Uncle Whitey."  *Id.* at 64.  Ms. Boshea testified that White visited them in Chicago multiple times, including in March 2007, to meet with Boshea about possible employment.  *Id.* at 61.  She "heard everything that was going on" when White and her husband were talking.  *Id.* at 62.  In particular, White said he would protect Boshea's family in case Compass was sold or in case anything happened with their friendship, and it would be by way of a severance payment.  *Id.* at 63.

Further, Ms. Boshea recalled that she went to a celebratory dinner with plaintiff, White, and others following plaintiff's acceptance of the job offer that had been emailed by White to plaintiff in May 2007.  *Id.* at 97.  Ms. Boshea was "excited" when her husband decided to accept the employment offer.  *Id.*  In addition, Ms. Boshea testified that her husband also showed her the Agreement.  *Id.* at 71.  Specifically, she claimed that she saw a copy of it when Boshea returned from Maryland around June 2007, and it was signed.  *Id.* at 71–72.

At the close of plaintiff's case, defendant moved for judgment under Fed. R. Civ. P. 50.  ECF 300 (Trial Transcript, 2/23/24), at 80.  I denied the motion.  *Id.* at 91.

Compass claims that White "rebutted Boshea's testimony to demonstrate that any contract Boshea alleged to exist merely reflected contract negotiations that took place during the months before Compass Marketing hired Boshea and, therefore, there was no actual contract with definite

terms."  ECF 255 (defendant's renewed motion for judgment as a matter of law, or, alternatively, for a new trial), at 2.

White testified that he and Boshea met in 1990, when they were co-workers in Maryland. ECF 301 at 65.  Through the years, they remained "in contact."  *Id.* at 66.  White acknowledged that in 2007 he had discussions with Boshea about joining Compass.  *Id.*

According to White, during discussions with Boshea in March 2007, Boshea "asked for three times his annual salary as a severance."  *Id.* at 78; *see id.* at 79.  But, White claimed that he rejected the request.  *Id.* at 79.  Then, plaintiff asked for six months of severance.  *Id.*  Again, White claimed that he refused.  *Id.* at 79, 82.

White was asked if he emailed the Offer Letter of May 16, 2007, to Boshea.  *Id.* at 91.  He responded, *id.*:  "Absolutely not."  He also testified that he never sent a copy of the Agreement to Boshea.  *Id*. at 102.  And, he disputed that the Agreement contains his signature.  *Id*.  Nevertheless, White testified that he and his brother, Daniel White, met with Boshea in Chicago in April 2007. *Id.* at 80.  But, he did not mention a celebratory dinner with Julie and David Boshea.  *Id.* at 80–81.

During cross-examination, Boshea's counsel sought to undermine White's veracity. Plaintiff's counsel established, for example, that at White's deposition, about two years prior to trial, White had no recollection about the parties' negotiations as to Boshea's compensation.  Yet, he was able to recall the discussions at trial.  *Id.* at 110, 113–122; *see also* ECF 261 at 10; ECF 242.  White claimed that his memory was better at the time of trial in 2024 than it was when he was deposed almost two years earlier.  ECF 301 at 115.

During trial, Compass sought to introduce an exhibit that had been included on Boshea's exhibit list as Exhibit 3, but was never introduced by Boshea.  ECF 298 at 124–27.  It was identified as "David Boshea April 2007 Memo to John White," but is titled "Re: Joining Compass

Marketing." *See* ECF 255-5 ("2007 Memo").  It was marked for identification by Compass as Defendant's Exhibit 62.  ECF 298 at 124; ECF 301 at 77.

The 2007 Memo, is an undated, typed, one-page memo from Boshea to White, with some handwritten notations.  As noted, it is titled "Re: Joining Compass Marketing."  The 2007 Memo contains typed lists under three separate typed headings: "Expectations", "Concerns", and "Compensation."  The typed words "severance/buy out agreement" are listed under Compensation, but they are lined out by hand.  However, the typed line continues: "3X Total annual compensation."  Next to it, in handwriting, it says, "Sale of Compass."  At the bottom of the page, in handwriting, it states: "*6 month severance." *Id.*  Below those words, it says: "1 yr." *Id.*

I pause to note that the parties had filed a proposed Joint Pretrial Order ("PTO") on June 6, 2023.  ECF 173.  It contained the parties' exhibit lists, including the exhibit of plaintiff titled "David Boshea April 2007 Memo to John White." *Id.* at 16–17, 18–21.  On October 18, 2023, after the trial date of July 31, 2023, had been rescheduled (ECF 145, ECF 178), the parties submitted an Amended PTO.  ECF 195.  Plaintiff again listed the 2007 Memo as an exhibit. *Id.* at 15.  For its part, Compass did not include that document as a defense exhibit.  Compass offered the curious explanation that it did not do so because "Boshea included the exhibit in his exhibit list . . . ." ECF 255 at 21; *see id.* at 2–3.

Four days before trial, on February 16, 2024, Compass emailed an exhibit list to plaintiff and to the courtroom deputy, which included the 2007 Memo.  ECF 255-1.  Compass's email contained one sentence, which stated, *id.* at 2: "Attached is Defendant Compass Marketing, Inc.'s exhibit list in both Word and PDF format."  Notably, the revised exhibit list added the 2007 Memo as a defense exhibit.  It is troubling that Compass never alerted plaintiff or the Court to the substantive change to its exhibit list, *i.e.*, the addition of the 2007 Memo as a defense exhibit. *Id.*

As indicated, Boshea never introduced the 2007 Memo as an exhibit at trial. Consequently, Compass sought to do so. But, the Court ruled that Compass could not introduce an exhibit that it had not included in the Amended PTO. ECF 298 at 134. However, and of import, at the time of that ruling there was no claim by Boshea of an oral agreement, to which the 2007 Memo is arguably pertinent. Rather, the case was proceeding only on a claim of a written Agreement. In any event, the Court allowed White to testify as to the content of the 2007 Memo. ECF 301 at 78–82.

The centerpiece of the defense concerned the challenge to the authenticity of White's signature on the Agreement. The defense presented expert testimony to the effect that the signature was forged. In contrast, plaintiff's expert was unable to reach a conclusion as to whether or not White's signature was genuine.

At the close of evidence, Compass again moved for judgment, pursuant to Fed. R. Civ. P. 50. ECF 301 at 140; *see also* ECF 238; ECF 255 at 3. At that time, Boshea's counsel moved to amend the SAC to include a claim for breach of oral contract. ECF 301 at 147. As the record reflects, the Court expressed its dismay with regard to Boshea's motion, because the case had been pending for about three years, and the claim clearly was one of which plaintiff had knowledge. However, upon review of Fed. R. Civ. P. 15, and because the underlying evidence for the claim of breach of an oral contract is very similar to the evidence for the claim of breach of the written contract, I permitted the belated amendment. *Id.* at 172–73. I also denied defendant's motion for judgment. *Id.* at 213; *see also* ECF 238.

The jury returned its verdict on February 27, 2024. ECF 246. It found that Compass breached an oral contract for severance. *Id.* at 1.[11] The jury awarded Boshea $193,000 for breach

---

[11] The Offer Letter, on which the alleged oral agreement is founded, included employee benefits that are not included in the written Agreement. According to Boshea, the benefits were provided by Compass. ECF 298 at 33.

of oral contract, and also found that Boshea is entitled to prejudgment interest on that amount, calculated at the rate of 6% per year from the date of his termination. *Id.* at 2. Further, the jury found that Compass violated the MWPCL by failing to pay severance due and owing to Boshea. *Id.* And, the jury found that Compass's failure to pay the severance was not the result of a bona fide dispute. *Id.* The jury also determined that, under the MWPCL, Boshea is entitled to a severance payment of $540,000, which equated to the maximum severance under the alleged agreements. *Id.* However, the jury did not award plaintiff additional statutory damages, *i.e.*, a sum up to three times the amount of unpaid wages. *Id.* at 3.[12]

The Court entered judgment in favor of plaintiff on March 8, 2024, for a total of $540,000 in compensatory damages; prejudgment interest at the rate of 6%, dating from March 3, 2020, as to the sum of $193,000; and post-judgment interest at the rate of 5% per annum on the sum of $540,000. ECF 254. The Court stated that, as to compensatory damages, Boshea "is not entitled to duplicate recovery." *Id.* ¶ 3. Therefore, I did not enter judgment for plaintiff for $193,000 for breach of the oral contract.

On April 5, 2024, Compass filed a "Renewed Motion for Judgment as a Matter of Law, or, In the Alternative, Motion for a New Trial." ECF 255. By Memorandum Opinion (ECF 275) and Order of August 7, 2024 (ECF 276), the Court denied Compass's motion for judgment as a matter of law but granted Compass's motion for a new trial. In sum, I noted that, in the midst of the trial, the Court had only a brief time to consider Boshea's belated motion to amend the suit to add a new

---

The verdict form suggested to the jury that the jury could find either a written agreement, an oral agreement, or neither one, but not both. Plaintiff's counsel did not argue that the facts and the law could support both an oral and a written agreement, or that the alleged contracts are not mutually exclusive. I express no opinion here as to the issue.

[12] The matter of a prevailing plaintiff's recovery of attorneys' fees under the MWPCL is decided by the Court. *See* L.E. § 3-507.2.

claim based on an oral contract. ECF 275 at 22. Despite significant factual similarities in regard to plaintiff's evidence concerning both an oral and a written contract, I noted some distinctions in the elements. And, in my view, the defense was deprived of the opportunity to challenge any "shortcomings in the proof of an oral contract," because "Boshea engaged in trial by ambush." *Id.* at 23. Moreover, the alleged oral contract implicated the Statute of Frauds, but the Court did not have an adequate opportunity to consider it. *Id.* at 33. However, I granted plaintiff leave to amend the suit to add a claim based on an oral agreement. *Id.* at 41.

On September 5, 2024, defendant filed a motion for reconsideration. ECF 279. By Memorandum Opinion (ECF 288) and Order (ECF 289) of November 8, 2024, I denied that motion.

The Third Amended Complaint ("TAC") followed on August 23, 2024 (ECF 278), along with exhibits. The TAC adds a claim for breach of oral contract.[13] Compass has answered. ECF 280.

As noted, trial is scheduled for April 21, 2025. ECF 296. In anticipation of trial, plaintiff submitted the First Motion, seeking a ruling that, as to an oral employment agreement, the multi-year severance provision is not barred by the Maryland Statute of Frauds, C.J., § 5-901. ECF 287 at 1. Defendant opposes the First Motion. ECF 290. Plaintiff replied. ECF 292. In the Second Motion, plaintiff seeks an order barring references to the first trial by counsel or any witness. ECF 293. Defendant opposes the Second Motion. ECF 294. Plaintiff replied. ECF 297.

---

[13] Confusingly, plaintiff labels the new claim for breach of oral contract as Count I. As a result, what had been Count I (breach of written contract) is now Count II. And, the TAC mistakenly contains two counts that are labeled as Count II.

## II.    Motions in Limine

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984). The purpose of a motion in limine is "'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence.'" *United States v. Slagle*, SAG-15-392, 2015 WL 5897740, at *1 (D. Md. Oct. 6, 2015) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400, 1401 (D. Md. 1987)).   In other words, "motions in limine are meant 'to streamline the case for trial and to provide guidance to counsel [and the parties] regarding evidentiary issues.'"   *Osei v. Univ. of Maryland Univ. Coll.*, 202 F. Supp. 3d 471, 479 n.5 (D. Md. 2016) (quoting *Adams v. NVR Homes, Inc.*, 141 F. Supp. 2d 554, 558 (D. Md. 2001)), *vacated and remanded on other grounds*, 710 Fed. Appx. 593 (4th Cir. 2018).

Generally, pretrial motions in limine seek "'to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Changzhou Kaidi Elec. Co., Ltd. v. Okin Am., Inc.*, 102 F. Supp. 3d 740, 745 (D. Md. 2015) (quoting *Luce*, 469 U.S. at 40 n.2); *see also Championship Tournaments, LLC v. United States Youth Soccer Ass'n, Inc.*, SAG-18-02580, 2022 WL 1002137, at *2 (D. Md. Apr. 4, 2022); *Dorman v. Anne Arundel Med. Ctr.*, MJG-15-1102, 2018 WL 2431859, at *1 (D. Md. May 30, 2018), *aff'd sub nom. Dorman v. Annapolis OB-GYN Assocs., P.A.*, 781 F.App'x 136 (4th Cir. 2019).   Such motions enable "'a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial.'"   *INSLAW, Inc. v. United States*, 35 Fed. Cl. 295, 303 (1996) (citation omitted) . Further, such motions allow the court to avoid "lengthy argument at, or interruption of, the trial." *Banque Hypothecaire Du Canton De Geneve*, 652 F. Supp. at 1401; *see United States v. Williams*, 81 F.3d 1321, 1325 (4th Cir. 1996) (recognizing that motions in limine promote judicial efficiency

by preserving issues for appeal without the need to renew objections, "so long as the movant has clearly identified the ruling sought and the trial court has ruled upon it"); *Changzhou Kaidi Elec. Co.*, 102 F. Supp. 3d at 745 (stating that motions in limine "are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'") (internal quotation omitted).

Notably, "'[a] district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.'" *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)); *see Kauffman v. Park Place Hosp. Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012). But, a court should grant a motion in limine "'only when the evidence is clearly inadmissible on all potential grounds.'" *Dorman*, 2018 WL 2431859, at *1 (quoting *Emami v. Bolden*, 241 F. Supp. 3d 673, 681 (E.D. Va. 2017)). Moreover, evidentiary rulings prior to trial are generally preliminary or tentative, made in the discretion of the court, for the purpose of assisting in preparation for trial. *Luce*, 713 F.2d at 1239–40; *see Adams*, 141 F. Supp. 2d at 558 ("A ruling on a motion in limine is no more than a preliminary or advisory opinion that falls entirely within the discretion of the district court"). Therefore, when the evidence is actually offered at trial, the trial court may change its ruling. *Luce*, 713 F.2d at 1239.

### III.    Contract Principles and the Statute of Frauds

As noted, by Memorandum Opinion and Order of July 22, 2022 (ECF 110, ECF 111), I determined that Maryland law applies with respect to the contract claim. At the time, however, the parties were only disputing the written contract, which was allegedly signed in Maryland. This

ruling was made before Boshea added a claim for breach of oral contract.  And, the same analysis may not apply.[14]

According to Boshea, the alleged written Agreement was executed in Maryland. Assuming, *arguendo*, that there is an oral agreement, it is not entirely clear where it was made. Regardless, Boshea contends that the terms of the parties' oral agreement conform both to the Offer Letter and to the written Agreement, *i.e.*, the document titled "Compass Marketing, Inc. Agreement Relating to Employment and Post-Employment Competition."  *See* ECF 287 at 2 (citing ECF 287-1).  The terms of the Agreement provide that Maryland law shall govern.  *See* ECF 287-1 at 5.

In general, a contract is defined as "a promise or set of promises for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." Richard A. Lord, 1 Williston on Contracts § 1:1, at 2–3 (4th ed. 1990); *accord* Restatement (Second) Contracts § 1, at 5 (1981); *see also Maslow v. Vanguri*, 168 Md. App. 298, 321, 896 A.2d 408, 421–22 (Hollander, J.), *cert. denied*, 393 Md. 478, 903 A.2d 416 (2006).  A contract may be oral or written, as well as express or implied.  "'An express contract has been defined as an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing.'"  *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 706, 114 A.3d 676, 688 (2015) (quoting *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94, 747 A.2d 600, 606 (2000)).

---

[14] Neither party has addressed the issue of which state's law applies to the alleged oral contract.

"'A contract is formed when an unrevoked offer made by one person is accepted by another.'" *Cty. Comm'rs for Carroll Cty. v. Forty W. Builders, Inc.*, 178 Md. App. 328, 377, 941 A.2d 1181, 1209 (2008) (Hollander, J.) (quoting *Prince George's Cty. v. Silverman*, 58 Md. App. 41, 57, 472 A.2d 104, 112 (1984)). Thus, mutual assent is an integral component of every contract. *See, e.g.*, *Joseph Saveri L. Firm, Inc. v. Michael E. Criden, P.A.*, 759 Fed. App'x 170, 173 (4th Cir. 2019) (per curiam) (recognizing as a "bedrock principle of law" that an offeree must accept an offer to form a contract); *Cochran v. Norkunas*, 398 Md. 1, 14, 919 A.2d 700, 708 (2007); *Advance Telecom Process LLC v. DSFederal, Inc.*, 224 Md. App. 164, 177, 119 A.3d 175, 183 (2015).

Under Maryland law, the elements of a claim for breach of contract are "'contractual obligation, breach, and damages.'" *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015) (quoting *Kumar v. Dhanda*, 198 Md. App. 337, 17 A.3d 744, 749 (2011)). To "prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645, 651 (2001); *accord Belyakov v. Med. Sci. & Computing*, 86 F. Supp. 3d 430, 437 (D. Md. 2015); *see also RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658, 994 A.2d 430, 442 (2010).

In other words, "[i]t is the parties' agreement that ultimately determines whether there has been a breach." *Mathis v. Hargrove*, 166 Md. App. 286, 318-19, 888 A.2d 377, 396 (2005). In *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362, 36 A.3d 399, 416 (2012), the Maryland

Court of Appeals[15] said: "Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" (Citation omitted) (emphasis in *Polek*); *see also Robinson v. GEO Licensing Co., L.L.C.*, 173 F. Supp. 2d 419, 423 (D. Md. 2001).

In determining whether there is an enforceable contract, courts often begin the analysis "by discussing the essential prerequisite of mutual assent to the formation of a contract . . . ." *Falls Garden Condo. Ass'n, Inc. v. Falls Homeowners Ass'n, Inc.*, 441 Md. 290, 302, 107 A.3d 1183, 1189 (2015); *see also Mitchell v. AARP*, 140 Md. App. 102, 116, 779 A.2d 1061, 1069 (2001) (Hollander, J.) ("An essential element with respect to the formation of a contract is 'a manifestation of agreement or mutual assent by the parties to the terms thereof; in other words, to establish a contract the minds of the parties must be in agreement as to its terms.'") (citations omitted). "Manifestation of mutual assent includes two issues: (1) intent to be bound, and (2) definiteness of terms." *Cochran*, 398 Md. at 14, 919 A.2d at 708.

Whether oral or written, a contract must express with certainty the nature and extent of the parties' obligations and the essential terms of the agreement. *Forty W. Builders, Inc.*, 178 Md. App. at 377–78, 941 A.2d at 1209–10; *see Canaras v. Lift Truck Servs., Inc.*, 272 Md. 337, 346, 322 A.2d 866, 871 (1974). If an agreement omits an important term, or is otherwise too vague or

---

[15] In the general election held in Maryland in November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland. And, the voters also approved changing the name of Maryland's intermediate appellate court, the Maryland Court of Special Appeals, to the Appellate Court of Maryland. These changes went into effect on December 14, 2022. *See* Press Release, Maryland Courts, *Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland* (Dec. 14, 2022), https://perma.cc/TL89-QFKR. However, I shall refer to the courts by the names that were in effect when the cited decisions were issued.

indefinite with respect to an essential term, it is not enforceable. *Mogavero v. Silverstein*, 142 Md. App. 259, 272, 790 A.2d 43, 51 (2002); *see L & L Corp. v. Ammendale*, 248 Md. 380, 385, 236 A.2d 734, 737 (1967); *Schloss v. Davis*, 213 Md. 119, 123, 131 A.2d 287, 290 (1956) (stating that a "contract may be so vague and uncertain as to price or amount as to be unenforceable").

In Maryland, the interpretation of a contract is "ordinarily a question of law for the court." *Grimes v. Gouldmann*, 232 Md. App. 230, 235, 157 A.3d 331, 335 (2017); *see also Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 7, 98 A.3d 264, 268 (2014); *Myers v. Kayhoe*, 391 Md. 188, 198, 892 A.2d 520, 526 (2006); *Towson Univ. v. Conte*, 384 Md. 68, 78, 862 A.2d 941, 946 (2004); *Lema v. Bank of Am., N.A.*, 375 Md. 625, 641, 826 A.2d 504, 513 (2003); *Under Armour, Inc. v. Ziger/Snead, LLP*, 232 Md. App. 548, 552, 158 A.3d 1134, 1136 (2017). This includes the determination of whether a contract is ambiguous. *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 163, 829 A.2d 540, 544 (2003).

Of relevance, "parties may 'enter into a binding informal or oral agreement to execute a written contract; and, if the parties contemplate that an agreement between them shall be reduced to writing before it shall become binding and complete, there is no contract until the writing is signed.'" *Cochran*, 398 Md. at 18, 919 A.2d at 711 (quoting *Eastover Stores, Inc. v. Minnix*, 219 Md. 658, 665, 150 A.2d 884, 888 (1959)). In other words, "[i]f the parties do not intend to be bound until a final agreement is executed, there is no contract." *Cochran*, 398 Md. at 14, 919 A.2d at 708. Parties who contemplate that their agreement would be reduced to writing are at liberty to withdraw from negotiations before the final writing is signed. *Id.* at 19, 919 A.2d at 711; *Eastover Stores, Inc.*, 219 Md. at 665, 150 A.2d at 888.

On the other hand, parties can intend to be bound by an oral agreement, even when a confirmatory writing is contemplated. Stated another way, "parties can make the completion of

their contract depend upon the execution of a written instrument. The question whether the parties negotiating a contract intended to be bound by their oral agreement but contemplated a written instrument merely as evidence of their agreement, or whether they did not intend to bind themselves until a contract was prepared and signed by them, must be decided from the facts and circumstances in each particular case." *Peoples Drug Stores v. Fenton Realty Corp.*, 191 Md. 489, 493, 62 A.2d 273, 275 (1948).

The Maryland Court of Appeals has enumerated "several factors that may be helpful in determining whether the parties have manifested an intention to be bound." *Cochran*, 398 Md. at 15, 919 A.2d at 708. These include the language of the preliminary agreement; the existence of open terms; whether partial performance has occurred; the context of the negotiations; the custom of such transactions, such as whether a standard form contract is widely used in similar transactions; whether the agreement has few or many details; whether the amount involved is large or small; and whether it is a common or unusual contract. *Id.* at 15–16, 919 A.2d at 708–09.

With respect to contract claims, Maryland applies the law of the state in which the contract was formed ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another state. *See, e.g.*, *Oliveira v. Sugarman*, 451 Md. 208, 233 n.17, 152 A.3d 728, 743 n.17 (2017); *Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 618, 925 A.2d 636, 648 (2007); *Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012), *aff'd*, 437 Md. 372, 86 A.3d 1245 (2014). "Under this rule, the law of the state where the contract was made controls its validity and construction." *Ives*, 2004 WL 180043, at *6 (citing *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 390, 535 A.2d 466, 467 (1988)). "For choice-of-law purposes, a contract is made where the

last act necessary to make the contract binding occurs." *Konover Property Tr., Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002) (citing *Com. Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672, 698 A.2d 1167, 1200 (1997), *cert. denied*, 348 Md. 205, 703 A.2d 147 (1997)).

The Maryland Statute of Frauds, C.J. § 5-901, is titled "Executory contracts." It provides (emphasis added):

> Unless a contract or agreement upon which an action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or another person lawfully authorized by that party, an action may not be brought:
>
> (1) To charge a defendant on any special promise to answer for the debt, default, or miscarriage of another person;
>
> (2) To charge any person on any agreement made on consideration of marriage; or
>
> **(3) On any agreement that is not to be performed within 1 year from the making of the agreement.**

The Maryland Statute of Frauds bars the enforcement of a contract that cannot be performed within one year, unless the agreement "or some memorandum or note of it, is in writing and signed by the party to be charged." *Salisbury Bldg. Supply Co. Inc. v. Krause Marine Towing Corp.*, 162 Md. App. 154, 160, 873 A.2d 452, 456 (2005) (citing C.J. § 5-901(3) and *General Federal Construction, Inc. v. James A. Federline, Inc.*, 283 Md. 691, 693, 393 A.2d 188 (1978)).

The Maryland Court of Appeals addressed C.J. § 5-901(3) in *General Federal Construction*, *Inc.*, 283 Md. 691, 393 A.2d 188. *Id.* There, the court said, *id.* at 692, 393 A.2d at 189: "[T]he 'one year clause' of the Maryland Statute of Frauds does not bar collection of damages for breach of an oral contract absent an express and specific provision in that contract that it was not to be performed within one year or a clear demonstration by its terms that it was not or could not be so performed." In other words, the statute of frauds does not apply to a contract that *could*

be performed within one year. *Id.* at 696, 393 A.2d at 191 (citing *Warner v. Texas & P. Ry. Co.*, 164 U.S. 418 (1896)). Similarly, the Maryland Court of Special Appeals reiterated in *Griffith v. One Inv. Plaza Assocs.*, 62 Md. App. 1, 7, 488 A.2d 182, 185 (1985): "'The statute does not apply if the contract can, by any possibility, be completed within a year, although the parties may have intended that its operation should extend over a much longer period, and in fact, it does so extend.'" (quoting *Home News, Inc. v. Goodman*, 182 Md. 585, 594, 35 A.2d 442, 446 (1944)).

Assuming that the parties had either an oral or written employment agreement (or both),[16] it did not specify a fixed term of employment. The Agreement provided in Article 7 that Compass had the right to terminate Boshea "at any time for any reason whatsoever . . . ." ECF 287-1 at 5.

Employment in Maryland may either be for a fixed term, pursuant to a contract of definite duration, or, if no term is specified, then at will. *Hrehorovich v. Harbor Hosp. Ctr., Inc.*, 93 Md. App. 773, 790, 614 A.2d 1021, 1030 (1992), *cert. denied*, 330 Md. 319, 624 A.2d 490 (1993). An employment agreement is deemed at will if it does not expressly specify a particular time or event terminating the employment relationship. *Id.*; *see also Molesworth v. Brandon*, 341 Md. 621, 29–30, 672 A.2d 608, 612 (1996); *Shapiro v. Massengill*, 105 Md. App. 743, 745, 661 A.2d 202, 208 (Hollander, J.), *cert. denied*, 341 Md. 28, 668 A.2d 36 (1995); *Staggs v. Blue Cross of Md., Inc.*, 61 Md. App. 381, 388, 486 A.2d 798, 801, *cert. denied*, 303 Md. 295, 493 A.2d 349 (1985). The employment at will doctrine provides that "'an employment contract of indefinite duration, that is, at will, can be legally terminated at the pleasure of either party at any time,'" without cause, and without giving rise to a cause of action for breach of contract, so long as the termination was

---

[16] As noted, Boshea received employee benefits that were consistent with the Offer Letter but not included in the Agreement. As mentioned, the parties have not addressed whether they could have had both an oral agreement and a written agreement, covering distinct matters as well as overlapping matters.

not for an illegal reason. *Parks v. Alpharma, Inc.*, 421 Md. 59, 73, 25 A.3d 200, 208 (2011) (quoting *Adler v. Am. Standard Corp.*, 291 Md. 31, 35, 432 A.2d 464, 467 (1981)); *see Molesworth*, 341 Md. at 629, 672 A.2d at 612; *Samuels v. Tschechtelin*, 135 Md. App. 483, 526, 763 A.2d 209, 232 (2000) (Hollander, J.).

In Maryland, employment is presumptively at will. *Towson Univ.*, 384 Md. at 79, 862 A.2d at 947; *see also Libit v. Baltimore City Bd. of Sch. Comm'rs*, 226 Md. App. 578, 590, 130 A.3d 1117, 1124 (2016); *Bontempo v. Lare*, 444 Md. 344, 363–64, 119 A.3d 791, 803 (2015). However, an at will arrangement can be altered by contract. *See Spacesaver Sys., Inc.*, 440 Md. at 13, 98 A3d. at 272 ("Indeed the presumption of at-will employment can be defeated through the inclusion of a just-cause requirement, or by specifying a duration of employment . . . ."). In addition, the presumption of at will employment "'can be overcome by express or implied terms which show that the parties clearly intended to create a binding relationship for a specific period of time or until certain conditions occur.'" *Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 450 (D. Md. 2012) (quoting Mazaroff, *Maryland Employment Law* § 3.2 at 166 (1990)); *see University of Baltimore v. Iz*, 123 Md. App. 135, 171, 716 A.2d 1107, 1125 (Hollander, J.), *cert. denied*, 351 Md. 663, 719 A.2d 1262 (1998).

Here, as noted, whether oral or written, the alleged employment agreement had no fixed term. Therefore, Boshea was an at will employee.

## IV.     Discussion

### A. Severance[17]

Boshea asserts: "The question before the Court concerns whether David Boshea may seek to recover more than one year's severance if the jury finds that David Boshea and Compass [only] . . . entered into an oral employment agreement."   ECF 287 at 1.   Boshea contends that he "entered into an executory contract" with Compass "that continued unless Compass terminated [him] either for or without cause."   *Id.* at 6.   He argues that the Statute of Frauds does not apply here because "no doubt exists that the agreement could have been performed within the initial year. Specifically, the agreement allowed Compass to terminate David Boshea at any time for or without cause."   *Id.* at 3.   Therefore, he asks the Court to order "as a matter of law that the Statute of Frauds does not limit his recovery of the full $540,000 in severance."   *Id.* at 6.

For example, Boshea argues that if "Compass terminated David Boshea on the second day of his employment, Compass would have owed $180,000 to David Boshea."   *Id.* at 5.   And, "[i]f Compass had refused to pay the severance, the Statute of Frauds would not have prevented David Boshea from enforcing the contract."   *Id.*

In addition, Boshea maintains that because he "worked beyond the three years required to vest in the full severance amount contained in the employment agreement, he is entitled to full payment even if the parties' contract was oral."   *Id.* at 6.[18]   And, according to Boshea, because Compass terminated his employment, the contract was no longer executory, and the Statute of

---

[17] The analysis assumes, *arguendo*, that plaintiff is able to prove—and that the jury finds—an oral severance agreement, on terms consistent with the written Agreement.

[18] Of course, with or without a formal agreement, Boshea would be entitled to salary (wages) that he earned while working as an employee for Compass.   But, salary is not in issue.   In order for Boshea to receive severance, a jury must find an agreement for severance, whether oral or written.

24

Frauds is a bar for executory, or unperformed contracts, but not executed contracts. *Id.* (citing *Aldape v. State*, 98 Idaho 912, 913, 575 P.2d 891, 892 (1978)).

Compass counters that "Boshea cannot prevail as a matter of law under his oral contract theory under any circumstances because the contract terms upon which he relies necessarily require him to perform the contract over a period of more than one year to earn any severance." ECF 290 at 1. Therefore, Compass asks the Court to deny Boshea's First Motion and to dismiss the oral contract claim in its entirety. *Id.* In the view of Compass, dismissal of the oral contract claim "would in turn provide no basis to vacate the jury's verdict in Compass Marketing's favor on the written contract claim intact, leading the Court to reinstate that verdict and avert the need for a new trial altogether." *Id.* at 5.[19]

In particular, Compass contends that provisions of the Agreement "required Boshea to perform (or, actually, not perform) certain tasks over at least a three-year period in order to earn any severance payment," which would render an oral contract unenforceable under the Statute of Frauds. *Id.* at 5. According to Compass, Article 2.A (non-competition) and Article 3.A (non-solicitation) of the Agreement required Boshea, "during [his] period of employment with COMPASS, and for a period of three years following the voluntary termination of employment," to avoid engaging in certain conduct. *Id.*

---

[19] The Court previously determined that a new trial on all claims is appropriate, for the reasons stated in ECF 255 and ECF 288. Compass now argues, for the third time, that the Court should leave intact the jury's verdict in favor of Compass with respect to the written Agreement. *See* ECF 255, ECF 279, ECF 290. But, Compass previously took the position, in the alternative, that the Court should grant a new trial on all claims. That request was inclusive of the MWPCL claim, in which the jury found in favor of plaintiff in a sum equal to the maximum recovery of severance under the written Agreement, *i.e.*, $540,000. ECF 279 at 11–16.

As the saying goes, "What is good for the goose is good for the gander." If I were to agree with defendant as to the verdict concerning the Agreement, I would then agree to leave intact the verdict in favor of plaintiff as to the Wage Act claim.

Assuming, *arguendo*, the existence of an oral agreement, the terms of the oral agreement supposedly correspond to the written Agreement with respect to severance pay. Under Article 6 of the written Agreement, payment of severance is not contingent on the completion of the three-year post-employment period. To the contrary, the Agreement entitled Boshea to obtain severance as soon as he commenced employment, and even if he were to obtain other employment after leaving Compass, so long as that employment does not violate Article 2 and Article 3 of the Agreement. ECF 287-1 at 4.

Article 6(A) of the Agreement states, in part: "If Employee's employment is terminated by COMPASS for any reason other than cause, Employee shall receive severance payments . . . ." *Id*. It also states in Article 6(D): "COMPASS reserves the right to terminate all severance payments if [Boshea] violates the covenants in Articles 1, 2, 3 or 4 of this Agreement." This sentence makes clear that Boshea would begin receipt of severance payments before the completion of the three-year term required by Article 2 and Article 3.[20]

In *Ives v. Advanced Broadband Solutions, Inc.*, DKC-2003-0848, 2004 WL 180043 (D. Md. Jan. 23, 2004), the plaintiff sued for breach of an oral, at-will employment agreement. The plaintiff conceded that his employment could have been terminated at any time, but he was to

---

[20] Neither party raises the issue of part-performance. Part-performance of an oral contract may negate the Statute of Frauds. "Under Maryland law, evidence of part-performance of an oral contract, otherwise barred by the Statute of Frauds, will allow the plaintiff to seek a remedy on condition that: (1) the facts present a case for equitable relief; and, (2) the part-performance is specifically referable to the oral contract." *Dunn v. E. Petroleum*, JKB-09-2851, 2011 WL 310400, at *3 (D. Md. Jan. 26, 2011) (citing *Unitas v. Temple*, 314 Md. 689, 552 A.2d 1285, 1290–91 (Md. 1989)). However, "a court will only grant [equitable] relief when a legal remedy is unavailable or inadequate." *Dunn*, 2011 WL 310400, at *3 (citing *Cattail Assocs. v. Sass*, 170 Md. App. 474, 907 A.2d 828 (2006)). And, "there is a legal remedy available here. The award of an amount of money that a party expected to receive under a contract is well known as the measure of expectation damages, which is the standard measure of recovery for breach of contract." *Dunn*, 2011 WL 310400, at *3 (citing *Williston on Contracts* §§ 64:1–2 (4th ed.)).

receive his salary and executive bonus plan share for one year after his termination. *Id.* at *9. The court concluded that enforcement of the oral agreement was barred by the Statute of Frauds. *Id.* Judge Chasanow reasoned, *id.*: "By its own terms, the agreement created an obligation that could not be satisfied within one year."

A more recent decision from the District of New Hampshire is illuminating. In *Thompson v. Paul G. White Tile Co., Inc.*, No. 19-CV-513-SM, 2019 WL 4060375 (D.N.H. Aug. 28, 2019), the plaintiff, Thompson, was an at will employee earning a base salary plus a commission of ten percent of gross profits. *Id.* at *1. After Thompson was terminated, he sued his former employer for refusing to pay him the commissions that he had earned. *Id.* The employer contended that Thompson's claims were barred by the statute of frauds because the timing of when the company calculates its profits meant his commission could be paid only after the conclusion of the fiscal year. *Id.*

The court rejected this argument. It explained that "the statute of frauds does not apply to oral commission agreements with employees at will when those agreements contemplate payment of commissions earned during the period of employment. *That is true even if payment of the commission may be made beyond one year.*" *Id.* at *2 (emphasis added). The court reasoned: "In short, an oral contract is not within the scope of the statute of frauds simply because the 'ministerial' or 'mechanical' act of <u>calculating</u> a commission (or writing a check) may take place outside of one year; provided the amount of the commission is fixed and the employee is capable of <u>earning</u> that commission within a year, the contract is not unenforceable under the statute of frauds." *Id.* at *3 (emphasis in *Thompson*).

The case of *Zulke v. AC&DC Power Technologies, LLC*, 356 Ga. App. 299, 846 S.E.2d 624 (2020), is also instructive. There, the plaintiff alleged breach of an employment agreement

that was governed by the terms of his written counteroffer to his former employer, which was orally accepted by the employer. *Id.* at 299–300; 846 S.E.2d at 626. The court concluded that the terms of the at will employment agreement were not barred by the statute of frauds so long as the agreement could be performed within a year, even though "some contingencies in a contract, such as the second and third-year incentives in this agreement, might not come to pass if the contract is terminated within a year." *Id.* at 300–01; 846 S.E. 2d at 627.

The case of *Moshan v. PMB, LLC*, 141 A.D.3d 496, 497, 36 N.Y.S.3d 445, 447 (2016), also provides guidance. There, the court affirmed the denial of the defendant's motion to dismiss a claim for breach of an oral contract, explaining: "Contracts that are terminable at will are capable of performance within a year. . . . This includes commission agreements, but only to the extent they contemplate payment of commissions earned *during* the period of employment (*even if paid afterward*)." *Id.* (first emphasis in *Moshan*) (citation omitted). Thus, the agreement was not barred by the statute of frauds. *Id.* at 496, 36 N.Y.S.3d at 447.

It is undisputed that Boshea was an at will employee; Compass could have terminated Boshea's employment at any time, including within one year of the commencement of his employment. It follows that the alleged oral agreement between Boshea and Compass could have been performed within one year. Therefore, it is not barred by the Maryland Statute of Frauds.

If Boshea were terminated within the first year of employment, he would have been entitled to $180,000 in severance. Even if that sum was to be paid out over time, in twenty-four installments, to correspond with Compass's payroll cycle, this does not alter the fact that Boshea could have performed the agreement within one year. So, at least with respect to $180,000, Compass seems to recognize that the alleged oral agreement is not barred by the Statute of Frauds.

But, the alleged agreement covers more than a one-year period. It provided for a maximum severance payment of $540,000 if Boshea worked for Compass for at least three years. And, Boshea worked for Compass for thirteen years.

Compass maintains that, even if the alleged oral agreement is not barred in its entirety by the Maryland Statute of Frauds, the maximum severance payment to which Boshea is entitled is limited to what accrued during Boshea's first year of employment, *i.e.*, $180,000. ECF 290 at 5. Compass posits: "Boshea could not have performed under any circumstances in one year the contract terms that would entitle him to receive $540,000." *Id.* at 12.

According to Compass, "if Boshea was terminated (or resigned) from employment on his one-year anniversary or at any time prior (notwithstanding the post-employment restrictions), he would be entitled to receive only $180,000 and nothing more. Any claim to receive more than $180,000 necessarily required Boshea to perform the contract for more than one year." *Id.* at 10.

Relying on *Thompson*, 2019 WL 4060375, discussed earlier, Compass recognizes that "the statute of frauds does not bar recovery in cases of oral contracts between an employer and employee regarding commission or bonuses, as long as the commissions *were earned* during the first year of employment, even if the actual amount of the commission could not be calculated or paid out until after the one year performance period." ECF 290 at 14 (emphasis in ECF 290). But, Compass argues: "The difference between *Thompson* and the instant case is that the commission in *Thompson* could have been *earned* within one year. In this case, Boshea could not possibly *earn* any severance in excess of $180,000 in one year." *Id.* at 15 (emphasis in ECF 290).

Boshea counters that he earned "the initial $180,000 severance payment . . . when he showed up for work at Compass on the first day, at which time he fully performed his obligations to receive [the entire] severance under the agreement." ECF 292 at 4. He argues that because he

"worked beyond the three years required to vest in the full severance amount contained in the employment agreement," he "is entitled to full payment even if the parties' contract was oral." ECF 287 at 6.  Plaintiff states, *id.* at 10:  "The agreement did not require David Boshea to work for three years and receive three years' severance.  Instead, the contract provided that David Boshea would accrue three years of severance payments if he worked for three years."

Boshea cites to cases outside of Maryland, including from Georgia, New York, and Texas, for the proposition that he is entitled to severance of $540,000, equal to his salary for three years. *See id.* at 6–12; *see*, *e.g.*, *Vernon v. Assurance Forensic Acct., LLC*, 333 Ga. App. 377, 387, 774 S.E.2d 197, 208 (2015) (rejecting a statute of frauds defense to a breach of contract claim because "[a]lthough unlikely, it is possible . . . [that] the parties' contract was capable of being performed within one year of its making"); *Kalmus v. Oliver*, 390 S.W.3d 586, 593 (Tex. App. 2012) (concluding that the evidence in the case "show[ed] only an oral at-will employment agreement with an indefinite duration, and such agreements do not fall within the statute of frauds' one-year provision"); *see also Kieper v. Fusco Grp. Partners Inc.*, 152 A.D.3d 1030, 1031, 59 N.Y.S.3d 561, 563 (2017) (Third Department).

Even if Boshea's recovery were limited to the amount he would have earned during his first year of employment, Boshea maintains that Compass miscalculates the amount of severance. ECF 292 at 10.  He contends that, in addition to the $180,000 that vested on his first day of work, he "earned $15,000 in severance each month [after the first year] up to the $540,000 maximum," and so Boshea had "vested severance benefits of $360,000" at the end of one year of employment. *Id.* at 4.

The parties do not address divisibility of an oral contract.  They do not cite cases that indicate that the Court can carve out or disregard the portion of the severance clause that pertains

to work performed beyond one year.  But, Williston on Contracts, § 24:3 (4th ed.), is pertinent.  It states that "the fact that an at-will contract of employment actually lasts several years does not bring the contract within the statute, since either party could put an end to the contract within one year, and the contract would thereby be fully performed."

   *Zulke*, 356 Ga. App. 299, 846 S.E. 2d 624, again provides guidance.  There, the employer orally accepted the plaintiff's written counteroffer, which included differing severance provisions depending on whether plaintiff was terminated during his first year, second year, or third year of employment.  *Id.*, 846 S.E.2d at 626.  The court concluded that plaintiff's at will employment contract was "not prohibited by the Statute of Frauds 'because, at its inception, a contract of employment for an indefinite duration is an agreement *capable* of being performed within one year, and the *possibility* of performance of the contract within one year is sufficient to remove it from the statute.'"  *Id.* at 300, 846 S.E.2d at 627 (citations and alterations omitted).  Put simply, once a contract is removed from the statute of frauds, the contract is simply not subject to the statute of frauds.

   As the *Zulke* Court noted, the fact that the plaintiff was employed for more than one year was not relevant because "the number of years the parties operate under an employment contract of indefinite duration does not affect the applicability of the Statute of Frauds."  *Id*. (citation and alteration omitted).  Ultimately, the court concluded that even though some contingencies in the agreement, "such as the second and third-year incentives," would not have "come to pass if the contract was terminated within a year does not mean that the contract containing such contingencies is unenforceable."  *Id*. at 301, 846 S.E.2d at 627.  Of import, the court concluded that the incentives plaintiff earned in his second year of employment were enforceable.  *Id*. at 302, 846 S.E.2d at 628.

Similarly, assuming that a jury finds in plaintiff's favor as to an oral employment agreement, on the terms claimed by plaintiff, that agreement would not be barred by the Maryland Statute of Frauds, because it could be performed within one year. And, because that fact takes the agreement outside the Maryland Statute of Frauds, the terms that would apply beyond the first year of employment are also outside of the Maryland Statute of Frauds. In short, the Maryland Statute of Frauds does not bar Boshea's recovery of severance in his second and third years of employment, or beyond.

As to the Wage Act claim, the case of *Dunn v. E. Petroleum*, JKB-09-2851, 2011 WL 310400, at *5 (D. Md. Jan. 26, 2011), is informative. There, Judge Bredar pointed out that, even if plaintiff's recovery under an alleged oral contract were barred by the Maryland Statute of Frauds, this would not "automatically defeat his claim under the [MWPCL]." In *Dunn*, the plaintiff sought recovery of unpaid wages and an annual bonus, but the court determined that his breach of oral contract claim, involving a two-year oral employment contract, was barred by the Statute of Frauds. *Id.* at *2. Critically, however, the court also said: "An employee need not have had a written contract with his employer to recover under the [MWPCL] . . . Rather, the threshold inquiry under the Act is whether Plaintiff is an 'employee' covered by its terms." *Id.*[21]

The court in *Dunn* conducted an analysis of whether plaintiff was an "employee" using six factors outlined by the Maryland Court of Appeals in *Baltimore Harbor Charters, Ltd. v. Ayd,* 365 Md. 366, 780 A.2d 303, 318 (2001), and ultimately concluded that the plaintiff did not qualify as an employee. *See Dunn*, 2011 WL 310400, at *5. But, unlike in *Dunn*, there is no dispute here as

---

[21] If the jury finds in favor of plaintiff on the issue of the MWPCL, plaintiff is also entitled to seek an award of attorneys' fees.

to whether Boshea was an employee.  Indeed, the parties agree that Boshea was an at will employee.  *See* ECF 287 at 3; ECF 290 at 15.

Boshea also argues:  "Based on promissory estoppel, Compass must comply with its promise to pay David Boshea's severance."  ECF 287 at 13.  Boshea argues that "promissory estoppel is an alternative theory of proving a breach of contract."  ECF 292 at 12.  But, the Second Amended Complaint does not assert promissory estoppel.

In order to state a claim for promissory estoppel, a plaintiff must allege that: (i) a fraudulent promise was made with respect to a future event; (ii) the defendant anticipated that plaintiff would rely on the promise; (iii) plaintiff reasonably relied on the promise; and (iv) plaintiff suffered actual damages as a result of their reliance on the promises made to them.  *Vogel v. Indep. Fed. Sav. Bank,* 728 F.Supp. 1210, 1232 (D. Md. 1990).

The case of *Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F. Supp. 2d 321, 343 (D. Md. 2012), cited by Boshea, makes clear that "promissory estoppel is, in essence, 'an alternative means of obtaining contractual relief'" (quoting *Md. Transp. Auth. Police Lodge No. 34 of Fraternal Order of Police, Inc. v. Md. Transp. Auth.,* 195 Md.App. 124, 215, 5 A.3d 1174, 1227 (2010) (Hollander J.), *rev'd in part on other grounds,* 420 Md. 141, 21 A.3d 1098 (2011)); *see also St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, ELH-21-2337, 2022 WL 137866, at *12 (D. Md. Jan. 14, 2022).  The court in *Whiting-Turner Contracting Company* cites to *Pavel Enterprises, Inc. v. A.S. Johnson Co.,* 342 Md. 143, 169, 674 A.2d 521, 534 (1996), to establish that "[t]raditional bilateral contract theory" and "[d]etrimental reliance," or promissory estoppel, "are different ways to prove that a contractual relationship exists."  Promissory estoppel is "a device for contractual recovery, when an element of a traditional bilateral contract is lacking."  *Md. Transp. Auth. Police Lodge,* 195 Md. App. at 218, 5 A.3d at 1229.  Boshea's

argument is especially misleading because the plaintiff in *Whiting-Turner Contracting Company*, 912 F. Supp. 2d at 325–26, alleged five counts against Liberty Mutual, including one for breach of contract, and a separate count for promissory estoppel.

Citing *Whiting-Turner Contracting Co.*, 912 F. Supp. 2d 321, plaintiff also asserts that "Maryland does not recognize an independent cause of action labeled 'promissory estoppel.'" ECF 292 at 13. But, such a quote does not appear in the case cited. In *Suburban Hosp., Inc. v. Sampson*, 807 F. Supp. 31, 33 (D. Md. 1992), the court noted that "Maryland does not recognize an independent cause of action labelled 'promissory estoppel.'" This quotation is taken out of context, however. The court clarified that "the nature of a lawsuit in which promissory estoppel is invoked remains that of an action to enforce a contract." *Id.* at 33. The question is *Sampson* was "whether plaintiff's claim be characterized as one for breach of contract *or* promissory estoppel" because plaintiff argued a promissory estoppel claim would not be preempted by ERISA. *Id.* at 32 (emphasis added). The court explained that "Maryland recognizes that promissory estoppel may serve as a substitute for consideration in enforcing a promise that the law would not otherwise enforce, thus making a one-sided promise into an enforceable contract by dint of the necessary reliance having been placed on it by the promisee." *Id.*

If Boshea seeks to invoke promissory estoppel, he must assert a claim for it in the complaint. And, that ship has sailed. There is no such claim.

Moreover, of import here, "[t]he theory of promissory estoppel . . . cannot be used to overcome the Statute of Frauds defense when the detriment results solely from defendant's failure to perform under the oral agreement." *Labrecque v. Sunbird Boat Co.*, 873 F. Supp. 946, 951–52 (D. Md. 1994); *see Lance J. Marchiafava, Inc. v. Haft,* 777 F.2d 942, 945 (4th Cir.

1985); *see also Evans v. Fluor Distribution Companies, Inc.,* 799 F.2d 364, 367 (7th Cir. 1986) (stating that "promissory estoppel is not a viable exception to the Statute of Frauds"); *N.W. Cole v. Sage Sys., Inc.*, No. JRH-85-1028, 1986 WL 14674 (D. Md. Dec. 22, 1986).

### B.  Use of Evidence From First Trial

Boshea requests an order barring counsel, parties, and witnesses from "making any reference to the first trial, through argument, or on direct or cross-examination, excepting testimony presented for impeachment."  ECF 293 at 1.  Rather, he asks that, "[t]o the extent any party refers to testimony provided at the previous trial, counsel shall refer to the trial as the 'prior proceedings.'"  *Id.*

First, Boshea argues that "evidence of the first trial constitutes inadmissible hearsay without an exception, thus barred under Fed. R. Evid. 802."  *Id.*  Second, he argues that "the prejudicial effect of any reference to the first trial outweighs the probative value of any such reference and is therefore inadmissible under Fed. R. Evid. 403."  *Id.*[22]

Compass urges the Court to deny Boshea's motion because "the relief it seeks is extraordinarily overbroad and it would preclude reference to aspects of the first trial that are admissible (such as prior inconsistent statements)."  ECF 294 at 1.  It proposes, instead, that "[t]o the extent that any prejudice would result from noting there was a first trial in this case (which such references alone are not prejudicial), any potential prejudice could be cured by referring to the first trial as 'prior proceedings' or a 'prior proceeding.'"  *Id.*  Indeed, Compass proposes that "the admissibility of any reference should be considered individually on a case-by-case basis as the need may arise during the second trial."  *Id.* at 4.

---

[22] Counsel for Boshea submitted the Second Motion prior to Boshea's death.  Presumably, at the second trial, counsel will seek to admit Boshea's testimony from the first trial.

For a change, the parties do not disagree on much. Boshea notes that he "does not seek to prevent any witness from relating the same testimony or seeking to impeach a party should a witness provide conflicting testimony." ECF 293 at 7. Compass would take it one step further; it seeks to admit prior statements, but not just for impeachment. *See* ECF 294 at 7.[23] But, Compass also acknowledges that "the jury could become confused by reference to the first trial," and agrees to cure this issue by having both parties "refer to the first trial as 'prior proceedings' or a 'prior proceeding.'" *Id*. at 8.

Pursuant to Fed. R. Evid. 804(b)(1), former testimony that "was given as a witness at a trial" and is "offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination" is excepted from the rule against hearsay if the declarant is unavailable as a witness. Under Fed. R. Evid. 804(a)(4), a declarant is unavailable as a witness if he cannot be present or testify at trial because of death.

Pursuant to Fed. R. Evid. 801(d)(1), if a declarant "testifies and is subject to cross-examination about a prior statement," the statement is not hearsay if it "is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition." Pursuant to Fed. R. Evid. 801(d)(2), statements offered against an opposing party that were "made by the party in an individual or representative capacity" are also not hearsay.

I agree with Compass that "if a party can introduce a statement against interest or a prior inconsistent statement from the prior trial, it should be permitted to do so and it would be prejudicial to exclude that evidence." ECF 294 at 8. But, counsel, parties, and the witnesses must refer to the first trial only as a "prior proceeding," or a "prior court proceeding," but not as a trial.

---

[23] To illustrate, Compass sought to preserve the right "to call Boshea and question him about his prior testimony as a witness during its case-in-chief if it so desires." ECF 294 at 7. Sadly, this contention is now moot as to Mr. Boshea.

Compass also argues that "there is no basis upon which the Court should bar any reference to the findings of fact made by the jury in the first trial that Compass Marketing did not breach any alleged written agreement with Boshea, as there is no error whatsoever with that verdict, which is a finding of this Court," ECF 294 at 4. Boshea disagrees. ECF 293 at 7. Compass is wrong that "there was not a single defect that this Court found with the jury's verdict in favor of Compass Marketing with respect to Boshea's breach of written contract claim." ECF 294 at 9.

Contrary to Compass's contentions, I denied Compass's request to bar Boshea from relitigating the written contract claim, for good reason. *See* ECF 288 at 29. Indeed, I emphasized the importance of the jury hearing the full version of events, stating, *id.* at 32: "To separate out the dispute concerning the written agreement runs the risk of distorting the parties' respective accounts and the jury's ability to understand what transpired. I decline to sanitize the trial." Moreover, if Compass is correct that there was no defect with the jury's verdict in favor of Compass with respect to the written contract claim, the same can be said for the jury's verdict in favor of Boshea with respect to the MWPCL claim. And there, the jury awarded three years of severance.[24]

In any event, Fed. R. Evid. 403 is pertinent. It states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In my view, references to the prior jury's verdict in the very same case would, at the very least, be confusing for the jury, and could cloud their obligation of independent decision-making. The prejudicial effect of allowing Compass to

---

[24] In effect, the defense verdict as to the written Agreement was a hollow victory.

introduce the jury's verdict in the first trial would substantially outweigh its probative value. *See* Fed. R. Evid. 403.

**V.    Conclusion**

For the foregoing reasons, I shall grant plaintiff's First Motion and Second Motion.  An Order follows, consistent with this Memorandum Opinion.

Date:  February 20, 2025                                          _____/s/_____
                                                                                        Ellen Lipton Hollander
                                                                                        United States District Judge