IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID J. BOSHEA,
    *Plaintiff,*

  v.

COMPASS MARKETING, INC.,
    *Defendant.*

Civil No. ELH-21-309

**MEMORANDUM OPINION**

This case arises from a dispute between plaintiff David Boshea and his former employer, defendant Compass Marketing, Inc. ("Compass"), with respect to an alleged severance agreement. Boshea filed suit in 2021 as the plaintiff, contending that Compass breached a severance agreement. In January 2025, while awaiting a retrial, Boshea died unexpectedly, at the age of 62. It is anticipated that an Administrator of the Estate will be substituted as plaintiff. For now, however, I shall continue to refer to Boshea as the plaintiff.

In particular, Boshea claims that Compass breached both a written and an oral severance agreement, by failing to pay him severance of $540,000 when he was terminated without cause in March 2020, after thirteen years of employment. On this basis, Boshea also asserts a claim under the Maryland Wage Payment and Collection Law ("MWPCL" or "Wage Act"), §§ 3-501 *et seq.* of the Labor and Employment Article ("L.E.") of the Maryland Code (2016 Repl. Vol., 2024 Supp.). Compass and its CEO, John White, dispute the validity of both the written and oral agreement, as well as the Wage Act claim. And, with regard to the written agreement, Compass contends that White's signature on the severance agreement was forged.

As the record reflects, the Court previously conducted a jury trial in this case in February 2024. ECF 230, ECF 231, ECF 233, ECF 235, ECF 238, ECF 241, ECF 246, ECF 299, ECF 300,

ECF 301, ECF 302. The jury found in favor of plaintiff with respect to a belatedly added claim of breach of oral contract. ECF 246. The jury also determined that defendant breached the Wage Act. The jury did not find breach of a written agreement, however.

For the reasons set forth in my Memorandum Opinion and Order of August 8, 2024 (ECF 275, ECF 276), I granted defendant's motion, in the alternative, for a new trial. *See* ECF 255. And, by Memorandum Opinion and Order of November 8, 2024 (ECF 288, ECF 289), I denied Compass's motion for reconsideration. *See* ECF 279. Trial is presently scheduled for April 21, 2025. ECF 296.[1]

By Memorandum Opinion and Order of February 20, 2025, I granted two motions in limine filed by Boshea. ECF 304, ECF 305. The deadline for motions in limine has expired. ECF 277. However, on March 19, 2025, defendant moved for leave to file a motion in limine, due to the death of Boshea. ECF 323. The motion in limine is attached as an exhibit. ECF 323-1 (the "Motion"). In the Motion, Compass seeks to preclude at the second trial the use of Boshea's testimony from the first trial, to the extent that the testimony related to an alleged oral agreement. Appended to the Motion is an exhibit excerpting the trial transcript with highlighted testimony from Boshea that Compass seeks to exclude. *See* ECF 323-3.

Plaintiff's response is not yet due. But, I need not await plaintiff's opposition.[2]

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. I shall grant leave to file the Motion. But, for the reasons that follow, I shall deny the Motion.

---

[1] Trial had been reset for February 24, 2025. ECF 277. But, at the request of defense counsel, it was rescheduled to April 21, 2025. ECF 296.

[2] The Court has prioritized the ruling on the Motion because the pretrial conference is scheduled for April 4, 2025. *See* ECF 325.

## I.    Factual and Procedural Background[3]

Compass is a sales and marketing company that works with manufacturers of consumer products to assist with product marketing. ECF 298 (Trial Transcript, 2/21/24), at 45–46; ECF 301 (Trial Transcript, 2/26/24), at 63.[4] John White is the Chairman and Chief Executive Officer of Compass. ECF 301 at 64. Boshea was an employee of Compass from May or June of 2007 until his termination, without cause, in March 2020. ECF 298 at 55 (Boshea); ECF 301 at 81, 82 (White).

Boshea filed suit against Compass in February 2021, alleging that Compass owed him severance pay equal to three years of his salary, in the sum of $540,000, pursuant to a written employment agreement. ECF 1. The suit was amended twice before the trial commenced. ECF 27 (the "First Amended Complaint"); ECF 48 (the "Second Amended Complaint" or "SAC").

In the Second Amended Complaint, Boshea lodged claims for breach of a written contract (Count I) and violation of the MWPCL (Count II).[5] In the alternative to Count II, Count III asserted a claim under the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. Ann. 115/1 *et seq.* Notably, the SAC did not allege breach of an oral contract. By Memorandum

---

[3] The Court has written numerous opinions in this case. *See* ECF 110; ECF 117; ECF 160; ECF 205; ECF 275; ECF 288; ECF 304. One was issued as recently as February 20, 2025. *See* ECF 304. I incorporate here the factual and procedural summaries in the opinions, to the extent relevant. For convenience, I will generally restate the facts set forth in my Memorandum Opinion of February 20, 2025, as well as the legal principles that apply to a motion in limine. *See* ECF 304.

[4] Throughout the Memorandum Opinion, the Court cites to the electronic pagination. However, the electronic pagination does not necessarily correspond to the page number imprinted on a particular submission.

[5] The caption of Count II refers to the "Maryland Wage Payment and Collection *Act*." ECF 48 at 5 (emphasis added). However, the parties otherwise refer to the Maryland Wage Payment and Collection *Law*, or MWPCL. *See* L.E. § 3-509.

Opinion and Order of July 22, 2022 (ECF 110, ECF 111), I determined that the Maryland Wage Act, rather than the Illinois statute, applies here.

At the time of the first trial in February 2024, the SAC (ECF 48) was the operative complaint. The case proceeded to trial as to the claims asserted in Counts I and II. ECF 230.

Boshea testified that as of 2007, he had known John White for thirty years. ECF 298 at 16. According to Boshea, in March 2007, White visited him twice in Chicago, where Boshea lived, in an effort to persuade Boshea to work for Compass. *Id.* at 17. Boshea made clear that a severance commitment was important to him, because he wanted "a security net" to "protect [his] family." *Id.* at 20, 24.

Plaintiff's Trial Exhibit 2 is an email from White to Boshea dated April 1, 2007. The authenticity of the email was not disputed by Compass. *See* ECF 301 at 67–72, 80. In the email, White stated, in part: "Dave, I know you very very well, and have been waiting a long time to be able to work beside you again . . . . I can't wait to do this . . . . Also, you and I need to make sure we discuss an exit plan for you, even separate from me selling Compass . . . . I'll be real careful to both protect our friendship, and your family."

Boshea testified that he received an email from White on May 16, 2007, which contained terms of a proposed employment contract, including a severance provision. ECF 298 at 29–34. The email was introduced into evidence at trial as Plaintiff's Trial Exhibit 4 ("Offer Letter"). *See* ECF 298 at 29; *see also* ECF 242 (Plaintiff's Exhibit List).

The Offer Letter provided for an annual salary for Boshea of $180,000 and included various employee benefits. *See* ECF 298 at 34. For example, the Offer Letter stated that "100 percent of [Boshea's] business related membership fees at White Eagle Golf Course [would] be reimbursed. . . ." The benefits also included a car allowance, a "401k," health insurance, and paid

vacation.  In addition, the Offer Letter provided for an "'involuntary exit package' of 3 times [Boshea's] salary (1 year will be immediately vested, with the additional 2 years accrued over the next three years)."  *Id.*  Further, the Offer Letter stated, *id.*:  "Upon acceptance of this letter of intent, I will send you a full employment agreement . . . ."

Boshea testified that after he received this email, he contacted White and accepted the offer.  ECF 298 at 34.  Thereafter, White returned to Chicago, where Boshea resided.  *Id.* at 161–62.  Boshea recounted that he and White then had a celebration dinner in Chicago, joined by Julie Boshea, plaintiff's wife at the time;[6] Rebecca Obarski, the Bosheas' friend, who is an attorney; and Ms. Obarski's husband.  *Id.* at 160–61.

Boshea subsequently received a written agreement from White, via email.  *Id.* at 36.  Plaintiff's Trial Exhibit 8 is titled "Compass Marketing, Inc. Agreement Relating to Employment And Post-Employment Competition" (the "Agreement").  *See also* ECF 287-1; ECF 278-2.  Exhibit 8 contains some handwritten notations.

The Agreement is six pages in length, and the text is typed and single spaced.  Boshea is identified in the text as "Employee" and referred to as "a senior executive."  ECF 287-1 at 1.  Notably, the Agreement largely contains provisions for the benefit of Compass, with the exception of the severance provision, reviewed *infra*.  In other words, it does not include the employee benefits contained in the Offer Letter.  Nevertheless, the evidence indicated that, for the most part, Boshea received the benefits outlined in the Offer Letter.  ECF 298 at 34.

The Agreement appears to contain the signatures of John White and plaintiff.  ECF 287-1 at 5.  Boshea testified that White signed it.  ECF 298 at 42.  He also denied that he forged White's

---

[6] Julie and David Boshea had divorced by the time of trial.

signature.  *Id.* at 240.  In contrast, White disputes the authenticity of his signature.  ECF 301 at

102.  However, Compass never claimed at trial that the entire document was a fabrication.

A review of the Agreement suggests that its main purpose was to benefit Compass by

placing restrictions on Boshea's conduct if he were to separate from Compass.  Other than the

provisions concerning severance, the document includes nearly four pages of concessions that

Boshea was required to make to Compass.[7]

The "Recitals" Section of the Agreement states, in part, ECF 287-1 at 1 (emphasis added):

"NOW, THEREFORE, in consideration of Employee's employment with COMPASS, *the*

*severance benefit* and for other good and valuable consideration . . . Employee agrees to enter into

this Agreement . . . pursuant to which COMPASS will limit Employee's rights . . . ."

Article 6 of the Agreement is titled "Severance."  *Id.* at 3.  Article 6(A) states, *id.* at 4:

> If Employee's employment is terminated by COMPASS for any reason other than
> Cause, Employee shall receive severance payments totaling $180,000 (one hundred
> and eighty thousand U.S. dollars) which will be divided up into twenty-four
> payments and will commence with the Employee's effective date of termination and
> shall be made in accordance with COMPASS's normal payroll cycle. The period
> during which Employee receives severance payments shall be referred to as the
> "Severance Pay Period."  Severance will increase one month for every month
> employed to a maximum severance of $540,000.[8]

Article 7, titled "Term of Employment," is also relevant.  *Id.* at 5.  It states, in part:

"Employee acknowledges that COMPASS has the right to terminate Employee's employment at

any time for any reason whatsoever, provided, however, that any termination by COMPASS for

---

[7] The Agreement's one-sided appearance lends support to Boshea's contention that
Compass entered the Agreement with Boshea.

[8] "Cause" is defined in Article 6(C) of the Agreement.  But, it is undisputed that Boshea
was not terminated for cause.

reasons other than Cause shall result in the severance described in Article 6 above, to become due in accordance with the terms of this Agreement . . . ."

Boshea claimed that in May 2007, after receipt of the Agreement, he traveled to Compass's office in Annapolis, Maryland. ECF 298 at 40–41. He was met by Michael White, the brother of John White. *Id.* at 41.[9] Boshea claimed that he had questions and suggestions for White about the Agreement. However, White stated that he could not change the terms. *Id.* at 165, 169. According to Boshea, White pulled out the Agreement, signed it, and made a copy of it for Boshea. *Id.* at 42. Boshea also claimed that White kept the "ink one" and gave a copy to Boshea. *Id.* Plaintiff recounted that White "needed [him] to get started" with work. *Id.*

As mentioned, Boshea joined Compass as an employee in May or June of 2007. On March 3, 2020, after thirteen years of employment, Boshea was terminated, without cause, by letter dated March 3, 2020. *See* Plaintiff's Exhibit 13 (termination letter). The termination letter stated that Boshea's position was "selected to be eliminated due to a necessary reduction in force." *Id.* Both a "Severance Agreement" and a "Non-Solicitation Agreement" were appended to the termination letter. In sum, in exchange for a mere "80 hours of Severance Pay," *see* Plaintiff's Exhibit 13, Severance Agreement, ¶ 1, Compass required a non-compete agreement for two years, *id.* ¶ 11; a waiver by Boshea of any suit, *id.* ¶ 3; and the execution by Boshea of a Non-Solicitation Agreement, among other terms.

---

[9] Michael White and Daniel White are the brothers of John White. When I use the name "White," I am referring to John White.

There is considerable acrimony between the White brothers. *See*, *e.g.*, *Compass Marketing, Inc. v. Flywheel Digital LLC, et al.*, GLR-22-379 (D. Md.); *Compass Marketing, Inc. v. Flywheel Digital LLC*, 2024 WL 3292676 (4th Cir. July 3, 2024) (per curiam); *Michael White, et al. v. John White, et al.*, Case No. 013CL21004012-00 (Cir. Ct. Va., Arlington) (seeking the dissolution of Compass).

Plaintiff recalled that upon termination of his employment with Compass, he made repeated requests to White and Compass for his severance payment under the Agreement. *Id.* at 62, 67–68, 72. He estimated that he called White around forty times, *id.* at 59, but White ignored him. *Id.* at 61. Indeed, Compass never paid any severance to Boshea. *Id.* at 71.

According to Boshea, during the course of his employment, he traveled to Maryland for work approximately 50 times. *Id.* at 80. He estimated that in his thirteen years of employment with Compass, he spent somewhere between 97 to 150 days in Maryland. *Id.* at 111.

Julie Boshea, who was married to Boshea at the relevant time, also testified at trial. She recalled that Boshea and White had been good friends before Boshea joined Compass. ECF 299 (Trial Transcript, 2/22/24), at 61. Indeed, the Boshea children referred to White as "Uncle Whitey." *Id.* at 64. Ms. Boshea testified that White visited them in Chicago multiple times, including in March 2007, to meet with Boshea about possible employment. *Id.* at 61. She "heard everything that was going on" when White and her husband were talking. *Id.* at 62. In particular, White said he would protect Boshea's family in case Compass was sold or in case anything happened with their friendship, and it would be by way of a severance payment. *Id.* at 63.

Further, Ms. Boshea recalled that she went to a celebratory dinner with plaintiff, White, and others following plaintiff's acceptance of the job offer that had been emailed by White to plaintiff in May 2007. *Id.* at 97. Ms. Boshea was "excited" when her husband decided to accept the employment offer. *Id.* In addition, Ms. Boshea testified that her husband also showed her the Agreement. *Id.* at 71. Specifically, she claimed that she saw a copy of it when Boshea returned from Maryland around June 2007, and it was signed. *Id.* at 71–72.

At the close of plaintiff's case, defendant moved for judgment under Fed. R. Civ. P. 50. ECF 300 (Trial Transcript, 2/23/24), at 80. I denied the motion. *Id.* at 91.

Compass claims that White "rebutted Boshea's testimony to demonstrate that any contract Boshea alleged to exist merely reflected contract negotiations that took place during the months before Compass Marketing hired Boshea and, therefore, there was no actual contract with definite terms." ECF 255 (defendant's renewed motion for judgment as a matter of law, or, alternatively, for a new trial), at 2.

White testified that he and Boshea met in 1990, when they were co-workers in Maryland. ECF 301 at 65. Through the years, they remained "in contact." *Id.* at 66. White acknowledged that in 2007 he had discussions with Boshea about joining Compass. *Id.*

According to White, during discussions with Boshea in March 2007, Boshea "asked for three times his annual salary as a severance." *Id.* at 78; *see id.* at 79. But, White claimed that he rejected the request. *Id.* at 79. Then, plaintiff asked for six months of severance. *Id.* Again, White claimed that he refused. *Id.* at 79, 82.

White was asked if he emailed the Offer Letter of May 16, 2007, to Boshea. *Id.* at 91. He responded, *id.*: "Absolutely not." He also testified that he never sent a copy of the Agreement to Boshea. *Id.* at 102. And, he disputed that the Agreement contains his signature. *Id.* Yet, White testified that he and his brother, Daniel White, met with Boshea in Chicago in April 2007 to discuss Boshea joining Compass. *Id.* at 80.

On cross-examination, Boshea's counsel sought to undermine White's veracity. Plaintiff's counsel established, for example, that at White's deposition, about two years prior to trial, White had no recollection about the parties' negotiations as to Boshea's compensation. Yet, at trial, he was able to recall the discussions. *Id.* at 110, 113–122; *see also* ECF 261 at 10; ECF 242. Curiously, White claimed that his memory was better at the time of trial in 2024 than it was when he was deposed almost two years earlier. ECF 301 at 115.

During trial, Compass sought to introduce an exhibit that had been included on Boshea's exhibit list as Exhibit 3, but was never introduced by Boshea. ECF 298 at 124–27. It was identified as "David Boshea April 2007 Memo to John White," but is titled "Re: Joining Compass Marketing." *See* ECF 255-5 ("2007 Memo"). It was marked for identification by Compass as Defendant's Exhibit 62. ECF 298 at 124; ECF 301 at 77.

The 2007 Memo is an undated, typed, one-page memo from Boshea to White, with some handwritten notations. As noted, it is titled "Re: Joining Compass Marketing." The 2007 Memo contains typed lists under three separate typed headings: "Expectations", "Concerns", and "Compensation." The typed words "severance/buy out agreement" are listed under Compensation, but they are lined out by hand. However, the typed line continues: "3X Total annual compensation." Next to it, in handwriting, it says, "Sale of Compass." At the bottom of the page, in handwriting, it states: "*6 month severance." *Id.* Below those words, it says: "1 yr." *Id.*

I pause to note that the parties had filed a proposed Joint Pretrial Order ("PTO") on June 6, 2023. ECF 173. It contained the parties' exhibit lists, including the exhibit of plaintiff titled "David Boshea April 2007 Memo to John White." *Id.* at 16–17, 18–21. On October 18, 2023, after the trial date of July 31, 2023, had been rescheduled (ECF 145, ECF 178), the parties submitted an Amended PTO. ECF 195. Plaintiff again listed the 2007 Memo as an exhibit. *Id.* at 15. For its part, Compass did not include that document as a defense exhibit. Compass offered the curious explanation that it did not do so because "Boshea included the exhibit in his exhibit list . . . ." ECF 255 at 21; *see id.* at 2–3.

Four days before trial, on February 16, 2024, Compass emailed an exhibit list to plaintiff and to the courtroom deputy, which included the 2007 Memo. ECF 255-1. Compass's email contained one sentence, which stated, *id.* at 2: "Attached is Defendant Compass Marketing, Inc.'s

exhibit list in both Word and PDF format." Notably, the revised exhibit list added the 2007 Memo as a defense exhibit. It is troubling that Compass never alerted plaintiff or the Court to the substantive change to its exhibit list, *i.e.*, the addition of the 2007 Memo as a defense exhibit. *Id.*

As indicated, Boshea never introduced the 2007 Memo as an exhibit at trial. Consequently, Compass sought to do so. But, the Court ruled that Compass could not introduce an exhibit that it had not included in the Amended PTO. ECF 298 at 134. However, and of import, at the time of that ruling there was no claim by Boshea of an oral agreement, to which the 2007 Memo is arguably pertinent. Rather, the case was proceeding only on a claim of a written Agreement. In any event, the Court allowed White to testify as to the content of the 2007 Memo. ECF 301 at 78–82.

The centerpiece of the defense concerned the challenge to the authenticity of White's signature on the Agreement. The defense presented expert testimony to the effect that the signature was forged. In contrast, plaintiff's expert was unable to reach a conclusion as to whether or not White's signature was genuine.

At the close of evidence, Compass again moved for judgment, pursuant to Fed. R. Civ. P. 50. ECF 301 at 140; *see also* ECF 238; ECF 255 at 3. At that time, Boshea's counsel moved to amend the SAC to include a claim for breach of oral contract. ECF 301 at 147. As the record reflects, the Court expressed its dismay with regard to Boshea's motion, because the case had been pending for about three years, and the claim clearly was one of which plaintiff had knowledge. However, upon review of Fed. R. Civ. P. 15, and because the underlying evidence for the claim of breach of an oral contract is very similar to the evidence for the claim of breach of the written contract, I permitted the belated amendment. *Id.* at 172–73. I also denied defendant's motion for judgment. *Id.* at 213; *see also* ECF 238.

The jury returned its verdict on February 27, 2024. ECF 246. It found that Compass breached an oral contract for severance. *Id.* at 1.[10] The jury awarded Boshea $193,000 for breach of oral contract, and also found that Boshea is entitled to prejudgment interest on that amount, calculated at the rate of 6% per year from the date of his termination. *Id.* at 2. Further, the jury found that Compass violated the MWPCL by failing to pay severance due and owing to Boshea. *Id.* And, the jury found that Compass's failure to pay the severance was not the result of a bona fide dispute. *Id.* The jury also determined that, under the MWPCL, Boshea is entitled to a severance payment of $540,000, which equated to the maximum severance under the alleged agreements. *Id.* However, the jury did not award plaintiff additional statutory damages, *i.e.*, a sum up to three times the amount of unpaid wages. *Id.* at 3.[11]

The Court entered judgment in favor of plaintiff on March 8, 2024, for a total of $540,000 in compensatory damages; prejudgment interest at the rate of 6%, dating from March 3, 2020, as to the sum of $193,000; and post-judgment interest at the rate of 5% per annum on the sum of $540,000. ECF 254. The Court stated that, as to compensatory damages, Boshea "is not entitled to duplicate recovery." *Id.* ¶ 3. Therefore, I did not enter judgment for plaintiff for $193,000 for breach of the oral contract.

---

[10] The Offer Letter, on which the alleged oral agreement is founded, included employee benefits that are not included in the written Agreement. According to Boshea, the benefits were provided by Compass. ECF 298 at 33.

The verdict form suggested to the jury that the jury could find either a written agreement, an oral agreement, or neither one, but not both. Plaintiff's counsel did not argue that the facts and the law could support both an oral and a written agreement, or that the alleged contracts are not mutually exclusive.

[11] The matter of a prevailing plaintiff's recovery of attorneys' fees under the MWPCL is decided by the Court. *See* L.E. § 3-507.2.

On April 5, 2024, Compass filed a "Renewed Motion for Judgment as a Matter of Law, or, In the Alternative, Motion for a New Trial." ECF 255. By Memorandum Opinion (ECF 275) and Order of August 7, 2024 (ECF 276), the Court denied Compass's motion for judgment as a matter of law but granted Compass's motion for a new trial. In sum, I noted that, in the midst of the trial, the Court had only a brief time to consider Boshea's belated motion to amend the suit to add a new claim based on an oral contract. ECF 275 at 22. Despite significant factual similarities in regard to plaintiff's evidence concerning both an oral and a written contract, I noted some distinctions in the elements. And, in my view, the defense was deprived of the opportunity to challenge any "shortcomings in the proof of an oral contract," because "Boshea engaged in trial by ambush." *Id.* at 23. Moreover, the alleged oral contract implicated the Statute of Frauds, but the Court did not have an adequate opportunity to consider it. *Id.* at 33. However, I granted plaintiff leave to amend the suit to add a claim based on an oral agreement. *Id.* at 41.

On September 5, 2024, defendant filed a motion for reconsideration. ECF 279. By Memorandum Opinion (ECF 288) and Order (ECF 289) of November 8, 2024, I denied that motion. Of relevance, I pointed out that "many of the facts that support the written contract claim also support the claim for an oral contract, and these facts were well known to both sides before trial." ECF 288 at 32. And, I also said, *id.* at 28, that "the facts for the oral and written contract claims are largely the same and have been known to the defense since the inception of the case."

The Third Amended Complaint ("TAC") followed on August 23, 2024 (ECF 278), along with exhibits. The TAC adds a claim for breach of oral contract.[12] Compass has answered. ECF 280.

---

[12] Confusingly, plaintiff labels the new claim for breach of oral contract as Count I. As a result, what had been Count I (breach of written contract) is now Count II. And, the TAC mistakenly contains two counts that are labeled as Count II.

Trial is scheduled for April 21, 2025. ECF 296. In anticipation of the second trial, plaintiff submitted two motions in limine. ECF 287; ECF 293. By Memorandum Opinion (ECF 304) and Order (ECF 305) of February 20, 2025, I granted both motions.

Boshea died unexpectedly on January 28, 2025. The Motion followed on March 19, 2025. ECF 323-1. As indicated, Compass seeks to preclude at the upcoming retrial the use of "Boshea's prior trial testimony that may relate to the formation and existence of an alleged oral contract." *Id.* at 2.

## II.    Motions in Limine

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984). The purpose of a motion in limine is "'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence.'" *United States v. Slagle*, SAG-15-392, 2015 WL 5897740, at *1 (D. Md. Oct. 6, 2015) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400, 1401 (D. Md. 1987)). In other words, "motions in limine are meant 'to streamline the case for trial and to provide guidance to counsel [and the parties] regarding evidentiary issues.'" *Osei v. Univ. of Maryland Univ. Coll.*, 202 F. Supp. 3d 471, 479 n.5 (D. Md. 2016) (quoting *Adams v. NVR Homes, Inc.*, 141 F. Supp. 2d 554, 558 (D. Md. 2001)), *vacated and remanded on other grounds*, 710 Fed. Appx. 593 (4th Cir. 2018).

Generally, pretrial motions in limine seek "'to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Changzhou Kaidi Elec. Co., Ltd. v. Okin Am., Inc.*, 102 F. Supp. 3d 740, 745 (D. Md. 2015) (quoting *Luce*, 469 U.S. at 40 n.2); *see also Championship Tournaments, LLC v. United States Youth Soccer Ass'n, Inc.*, SAG-18-02580, 2022 WL 1002137, at *2 (D. Md. Apr. 4, 2022); *Dorman v. Anne Arundel Med. Ctr.*, MJG-15-1102, 2018 WL

2431859, at *1 (D. Md. May 30, 2018), *aff'd sub nom. Dorman v. Annapolis OB-GYN Assocs., P.A.*, 781 F.App'x 136 (4th Cir. 2019). Such motions enable "'a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial.'" *INSLAW, Inc. v. United States*, 35 Fed. Cl. 295, 303 (1996) (citation omitted) . Further, such motions allow the court to avoid "lengthy argument at, or interruption of, the trial." *Banque Hypothecaire Du Canton De Geneve*, 652 F. Supp. at 1401; *see United States v. Williams*, 81 F.3d 1321, 1325 (4th Cir. 1996) (recognizing that motions in limine promote judicial efficiency by preserving issues for appeal without the need to renew objections, "so long as the movant has clearly identified the ruling sought and the trial court has ruled upon it"); *Changzhou Kaidi Elec. Co.*, 102 F. Supp. 3d at 745 (stating that motions in limine "are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'") (internal quotation omitted).

Notably, "'[a] district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.'" *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)); *see Kauffman v. Park Place Hosp. Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012). But, a court should grant a motion in limine "'only when the evidence is clearly inadmissible on all potential grounds.'" *Dorman*, 2018 WL 2431859, at *1 (quoting *Emami v. Bolden*, 241 F. Supp. 3d 673, 681 (E.D. Va. 2017)). Moreover, evidentiary rulings prior to trial are generally preliminary or tentative, made in the discretion of the court, for the purpose of assisting in preparation for trial. *Luce*, 713 F.2d at 1239–40; *see Adams*, 141 F. Supp. 2d at 558 ("A ruling on a motion in limine is no more than a preliminary or advisory opinion that falls entirely within the discretion of the district court"). Therefore, when the evidence is actually offered at trial, the trial court may change its ruling. *Luce*, 713 F.2d at 1239.

### III.    Discussion

Compass argues that the Court should exclude "all of Boshea's prior testimony related to the formation and existence of an oral contract at the second trial" because it is inadmissible, pursuant to Fed. R. Evid. 804(b)(1).  ECF 323-1 at 2, 7.[13]  Compass identifies specific trial testimony of Boshea.  *See* ECF 323-3.  It maintains that it "did not have the motive to develop [Boshea's] testimony . . . related to his belated oral contract claim during the first trial in this case." *Id.* at 2.  And, because of Boshea's unexpected death before the second trial, Compass complains that it "will never have the opportunity to develop Boshea's testimony regarding an alleged oral contract."  *Id.*

Pursuant to Fed. R. Evid. 804(b)(1) former testimony that "was given as a witness at a trial, hearing, or lawful deposition" and that is "offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination," is excepted from the rule against hearsay "if the declarant is unavailable as a witness[.]"  Under Fed. R. Evid. 804(a)(4), a declarant is unavailable as a witness if he cannot be present or testify at trial because of death. Clearly, Mr. Boshea is unavailable and he provided former trial testimony.

In *United States v. Salerno,* 505 U.S. 317, 322 (1992), the Supreme Court held that a party introducing former testimony under Rule 804 must show similar motive.  But, "[b]ecause similar motive does not mean identical motive, the similar-motive inquiry . . . is inherently a factual inquiry, depending in part on the similarity of the underlying issues and on the context of the . . . questioning."  *See id.* at 326 (Blackmun, J., concurring) (cleaned up); *see also Battle ex rel. Battle v. Mem'l Hosp. at Gulfport,* 228 F.3d 544, 552 (5th Cir. 2000).

---

[13] The Motion does not appear to apply to Boshea's pretrial deposition testimony.

In addressing whether grand jury testimony can be admitted at trial, pursuant to Rule 804(b)(1), when the declarant is unavailable, the Fourth Circuit recently said:  "'Whether the degree of interest in prevailing on an issue is substantially similar at two proceedings will sometimes be affected by the nature of the proceedings.'"  *United States v. Huskey*, 90 F.4th 651, 669 (4th Cir.) (quoting *United States v. DiNapoli*, 8 F.3d 909, 912 (2d Cir. 1993)), *cert. denied sub nom. Lewis v. United States*, __ U.S. __, 144 S. Ct. 1381 (2024), and *cert. denied*, __ U.S. __, 144 S. Ct. 2544 (2024), and *cert. denied sub nom. Wray v. United States*, __ U.S. __, 144 S. Ct. 2546 (2024).  More specifically, the Fourth Circuit stated:  "'Where both proceedings are trials and the same matter is seriously disputed . . ., it will normally be the case that the side opposing the version of a witness at the first trial had a . . . similar . . . motive [as] at the second trial."  *Huskey*, 90 F.4th at 669 (quoting *DiNapoli*, 8 F.3d at 912).

In *DiNapoli*, 8 F.3d 909 (2d Cir. 1993), cited by the Fourth Circuit in *Huskey*, the Second Circuit clarified why a party's motive would normally be similar when both proceedings at issue are trials, *id.* at 912–13:

> The opponent, whether shouldering a burden of proof or only resisting the adversary's effort to sustain its burden of proof, usually cannot tell how much weight the witness's version will have with the fact-finder in the total mix of all the evidence. Lacking such knowledge, the opponent at the first trial normally has a motive to dispute the version so long as it can be said that disbelief of the witness's version is of some significance to the opponent's side of the case; the motive at the second trial is normally similar.

The case of *United States v. Mejia*, 376 F. Supp. 2d 460 (S.D.N.Y. 2005), is also informative.  In *Mejia*, a retrial was scheduled after Mejia's first conviction was vacated on appeal.  *Id.* at 461.  The court considered whether to permit the government to introduce testimony of a coconspirator, Medina, from the first trial, when Medina later became unavailable because he moved to the Dominican Republic, and the government was unsuccessful in its attempt to return

him to the United States for the retrial. The court acknowledged that "Mejia's counsel at the first trial might have conducted a more extensive cross-examination than he did," but found, nevertheless, that "defense counsel's cross-examination of Medina at the first trial was adequate for purposes of Rule 804(b)(1)." *Id.* at 467.

The court explained that, in the criminal context, a "'criminal defendant is entitled to 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Id.* (quoting *United States v. Salim,* 855 F.2d 944, 953–54 (2d Cir. 1988) (quotation omitted)). That opportunity is satisfied when the defense "is given a full and fair opportunity" to "probe and expose" the weaknesses of the testimony through cross-examination, "thereby calling to the attention of the factfinder the reasons for giving scant weight to the" testimony. *Mejia*, 376 F. Supp. 2d at 467 (quoting *Salim,* 855 F.2d at 954) (cleaned up).

The court looked to the transcript of Medina's cross-examination and re-cross-examination at the first trial and concluded that the transcript "show[ed] that defense counsel challenged Medina's credibility by questioning him about" committing marriage fraud, opportunities to coordinate his testimony with his codefendants before trial, the potential reduction in his sentence for cooperating with the government, and the possibility that the government would not require him to pay the full amount of his restitution in accordance with his plea agreement if he testified against Mejia. *Mejia*, 376 F. Supp. 2d at 467. The court also pointed to defense counsel's questioning of the "apparent inconsistencies between Medina's in-court testimony and his post-arrest statements." *Id.*

Because the cross-examination "reveal[ed] a serious effort to undermine and discredit" Medina's testimony, the court found that "Mejia had a sufficient opportunity to develop Medina's

testimony at the first trial by means of cross-and re-cross-examination." *Id.* at 467–68 (citation omitted). And, because "the matters in dispute at the first trial are essentially identical to those in dispute at the retrial" and the "importance of those matters to the outcome of both proceedings is also the same," the court determined that defense counsel had a similar motive. *Id.* at 468.

Compass argues that for the first trial it "only prepared for and only defended against Boshea's breach of written contract claim (rather than a breach of oral contract claim that was not pled)." ECF 323-1 at 5. Indeed, in the Memorandum Opinion granting a new trial (ECF 275), the Court wrote that "Compass was entitled to prepare for trial and to expect to try the case only on claims that were asserted in the SAC." *Id.* at 23. And, at that point, plaintiff had alleged only a written contract claim. Therefore, I stated: "During the trial, Compass had no reason to challenge alleged shortcomings in the proof of an oral contract." *Id.*

But, this statement by the Court is not akin to a conclusion that Compass lacked a similar motive to develop the testimony by cross-examination, under Rule 804(b)(1). As noted, the question of similar motive is a factual inquiry that depends on the context of the questioning. Well before Boshea's death, I recognized that "the claims of an oral and written contract may be related" and "[t]he evidence adduced by plaintiff in support of the written Agreement included events that preceded the alleged execution of the written Agreement, on which plaintiff relies with respect to the establishment of a claim of an oral contract." *Id.*

Moreover, the trial transcripts here make clear that defense counsel left no stone unturned in his zealous cross-examination of Boshea. Counsel sought extensively to discredit Boshea regarding his recollection of how much time he spent in Maryland during the duration of his employment with Compass. *See* ECF 298 at 105–12. Further, counsel inquired whether Boshea was worried about the company's revenue during his discussions with White regarding whether to

join Compass.  *Id.* at 121–24.  Counsel for Compass also asked Boshea:  "During your negotiation with John White, prior to coming on board to Compass Marketing, . . . [i]n the event that Compass Marketing was sold, as an exit package were you asking for three times your salary in that circumstance?"  *Id.* at 146.  Counsel also asked Boshea about the Offer Letter, the timing of the alleged offer, and about details of the celebration dinner that Boshea claimed to have attended with White after Boshea accepted Compass's employment offer.

Most significant, the transcript belies defendant's claim that Compass never pursued inquiry about an oral agreement.  The following exchange is noteworthy, *id.* at 160–64 (emphasis added):

Q. [Defense Counsel]:  Do you remember you claiming there was some celebratory dinner you had when you claimed to have received an offer from Compass Marketing?

A. [Boshea]: Yes.

Q. And was that celebratory dinner before or after you claim to have received this letter?

A. I don't remember.

Q. And who attended -- did people who attended this celebratory dinner, do you remember who attended that?

A. Yeah. John White, myself, Julie Boshea and Rebecca Obarski.

Q. And you were celebrating the fact that you were going to go accept employment at Compass Marketing?

A. Yes, John -- yes, John took us out to dinner.

Q. And you had an offer in hand at the time of this dinner?

A. I'm not sure.

Q. Well, you said you were celebrating.

A. I took his word for it.

Q. So it was –

A. And we talked on the phone about it.

**Q. So it was a verbal offer that you were celebrating, is that what you're telling me?**

**A. I'm telling you I don't remember if it was before or after this.**

**Q. Well, let's back up for a second. You said you received an offer. So was it a written offer or was it a verbal offer?**

**A. It could have been both.**

Q. You said you spoke a lot with John on the phone?

A. Right.

Q. This celebratory dinner you said occurred when he was out in Chicago, so he was there for the dinner?

A. Correct.

Q. Right?

A. Correct.

**Q. So did you receive this offer over the phone?**

**A. Yeah, we kept talking a lot over the offer.**

Q. So you were talking by phone at this dinner?

A. No.

Q. You were talking by phone while he was in Chicago visiting you?

A. No, it would have been before he probably wrote this.

Q. So are you saying now that this letter came after the celebratory dinner?

A. I'm saying I don't remember. That was a long time ago and, you know, I just remember having it. Rebecca had a copy of it so it sounds like I got it and then John came out or it sounds like that's what happened.

Q. It was a long time ago. You don't remember. And you don't remember the sequence of events?

A. No.

Counsel then questioned Boshea regarding the sequence of events after Boshea alleged that he received the written Agreement, including Boshea's account of his conversation with White in Maryland. *See id.* at 164–77. And, Compass's counsel also asked detailed questions about where and when Boshea located the alleged written Agreement in his house, seemingly in a move to discredit the authenticity of the Agreement and Boshea's veracity in locating and producing it. *See* ECF 299 at 9–12.

As in *Mejia*, 376 F. Supp. 2d at 468, "the matters in dispute at the first trial are essentially identical to those in dispute at the retrial" and the "importance of those matters to the outcome of both proceedings is also the same." As indicated, even before Boshea's death, I pointed out that "many of the facts that support the written contract claim also support the claim for an oral contract, and these facts were well known to both sides before trial." ECF 288 at 32. And, I also said, *id.* at 28, that "the facts for the oral and written contract claims are largely the same and have been known to the defense since the inception of the case."

It may be true that counsel for defendant would have conducted more extensive cross-examination had he known that Boshea would be unavailable at trial. But, it cannot be said that defendant did not have a "full and fair opportunity" to "expose" the weaknesses of Boshea's testimony through cross-examination, thereby calling to the jury's attention why it should give "scant weight" to Boshea's testimony. *See Mejia*, 376 F. Supp. 2d at 467.

Compass also argues that its motive regarding Boshea's testimony and cross-examination was different during the first trial because "the alleged communications that Boshea testified to . . . only added context to the written contract claim that was before the Court." ECF 323-1 at 7. Indeed, Compass made the decision not to object "to Boshea's testimony that may relate to an alleged oral contract" because it believed that "the alleged communications that Boshea testified

to were 'legally inoperative.'" *Id.* But, the difference in trial strategy does not preclude the Court from admitting Boshea's testimony from the first trial.

*United States v. Tannehill*, 49 F.3d 1049 (5th Cir. 1995), is instructive. Tannehill, a real estate appraiser, was indicted with six others in relation to a real estate fraud scheme. *Id.* at 1050. All seven defendants were tried in early 1989, but a mistrial was declared after the jury was unable to reach a verdict. *Id.* at 1051. The second trial was severed, and Tannehill was ultimately retried alone. *Id.*

On appeal, among other issues, Tannehill argued that the court erred during the second trial in admitting testimony from the first trial of a government witness who died before the second trial commenced. *Id.* at 1057. According to Tannehill, the testimony did not fall under Rule 804(b)(1) "because Tannehill did not have the same motive in his prior cross-examination." *Id.* More specifically, he argued that the trial strategy in second trial was different because he was being tried alone, whereas during the first trial with six codefendants, his trial strategy was to "disappear into the woodwork and hope for the best." *Id.* at 1057.

But, the Fifth Circuit concluded that "Tannehill's motive for cross-examination was not sufficiently different to preclude admission of the testimony under Rule 804(b)(1) merely because different counsel with different defense theories conducted the cross-examination at the [first] trial." *Id.* The court cited the advisory committee's note, which states: "If the party against whom [the testimony is] now offered is the one against whom the testimony was offered previously, no unfairness is apparent in requiring him to accept his own prior conduct of cross-examination or decision not to cross-examine." Fed. R. Evid. 804. Ultimately, although the trial strategy at the second trial "may have changed because he was being tried alone, his motive for cross-examination

was the same as in the [first] trial: to discredit the witness and separate himself from the other members of the conspiracy." *Tannehill*, 49 F.3d at 1057.

The motive for cross-examining Boshea during the first trial was to discredit Boshea's testimony. The same motive remains for the second trial.

As I see it, it is also significant that the Court's Memorandum Opinion (ECF 275) and Order (ECF 276) granting a new trial and reopening expert discovery was issued on August 7, 2024. *See* Docket. To the extent Compass had additional lines of questioning for Boshea, in light of the Court's ruling allowing plaintiff to add an oral contract claim, Compass had ample time to ask the Court to depose Boshea with regard to the oral contract claim. Until January 14, 2025, two weeks before Boshea's death, trial had been scheduled for February 24, 2025. *See* ECF 296. Yet, in all that time, Compass made no request to question Boshea about his oral contract claim, either through an additional deposition or interrogatory requests. Nor has Compass ever "proffered any questions that it would have asked Boshea if it had known of the oral contract claim." ECF 288 at 19 n.13.

It is also noteworthy that, once before, the Court permitted Compass to conduct a very belated deposition of Boshea. *See* ECF 212, ECF 213. As I previously noted, "Compass received a proverbial windfall when the Court granted Compass the belated opportunity to depose Boshea." ECF 288 at 19 n.13.

## IV.    Conclusion

Compass seeks to capitalize on Boshea's death by unfairly and improperly restricting the use of his prior trial testimony. As I see it, this Motion borders on frivolous.

For the foregoing reasons, I shall deny defendant's Motion. An Order follows, consistent with this Memorandum Opinion.

Date:  March 31, 2025

          /s/
Ellen Lipton Hollander
United States District Judge