# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
(Northern Division)

| | | |
|---|---|---|
| **ESTATE of DAVID J. BOSHEA** | * | |
| *Plaintiff*, | * | Case No. 1:21-CV-00309-ELH |
| v. | * | |
| **COMPASS MARKETING, INC.** | * | |
| *Defendant*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### DECLARATION OF CINDY M. JOHNSON

I, Cindy M. Johnson, under penalty of perjury, state as follows on this 22nd day of May, 2025:

1. I am an attorney, licensed in the State of Illinois.

2. I was retained by Compass Marketing, Inc., to represent its interests with respect to the probate matter of David John Boshea, which is pending in the Twelfth Judicial Circuit Court, Will County, Illinois (hereafter the "Probate Case").

3. I have reviewed in detail the April 3, 2025 email that attorney Gregory J. Jordan sent to Karen Warren, Judicial Assistant to Judge Hollander, the Judge who is presiding over *Boshea v. Compass Marketing, Inc.*, Case No. 1:21-CV-00309-ELH (hereafter the "District Court Case"), following Mr. Jordan's and my appearance in the Illinois probate court on April 3, 2025 regarding the presentation of Ashley Boshea's Emergency Petition for Letters of Administration (hereafter the "Emergency Petition").

4. I also am in receipt of the letter Judge Hollander sent on April 3, 2025 to Judge Garcia, who is presiding over the Illinois Probate Case (the "Judge Hollander Letter"). The Judge Hollander Letter has been docketed in the District Court Case.

5. The purposes of this Declaration are:

   a. to correct misleading and incorrect information Mr. Jordan included in his April 3, 2025 email as to what occurred in court in the Probate Case on April 3, 2025, and

   b. to clarify the basis of Compass Marketing, Inc.'s claim in the Probate Case against David Boshea – a claim that will stand against the probate estate once an Administrator is appointed – and to address the

unfortunate inaccuracies in the Judge Hollander Letter that was sent to Judge Garcia on or about April 3, 2025.

6. In a matter of less than 30 minutes after the conclusion of the hearing before Judge Garcia, Mr. Jordan sent an email to Judge Hollander's office that mischaracterized what had occurred before Judge Garcia on April 3, 2025. A copy of Mr. Jordan's email is attached as Exhibit 1.

7. What actually occurred before Judge Garcia in the Probate Case is the following:

   a. Mr. Jordan's co-counsel in the probate case made her presentation of the Emergency Petition. Judge Garcia did not say he would grant the motion, and he certainly did not indicate that he "would enter the order" as Mr. Jordan's email had stated.

   b. I had proper objections to Ashley Boshea being appointed. I identified my client as Compass Marketing, Inc,. a creditor of the estate as well as the defendant in the District Court Case that Mr. Jordan had noted in his Emergency Petition.

   c. Contrary to Mr. Jordan's characterization in his April 3, 2025 email to Judge Hollander's chambers, the objections I asserted were not merely "technical objections;" rather, they were serious substantive objections, bordering on fraud.

   d. The substantive objections I raised in the Probate Case on April 3, 2025 were:

      i. The petition for Letters of Administration signed by Ashley Boshea, certified at the "Attorney Certification" line by Mr. Jordan, states that the approximate value of the estate is $3,000.00, despite the fact the Petitioner knew that the amount claimed in the District Court Case used to secure the Emergency Petition hearing was $1.6 million.

      ii. The Emergency Petition filed by Mr. Jordan on behalf of Ashley Boshea again stated that "David John Boshea has approximately, $3,000.00 in assets and limited debts that are less than the amount owed." In that same Emergency Petition that identified the District Court Case, the Petitioner omitted mention of the $1.6 million claim that is being made in the District Court Case. That $1.6 million claim clearly is an asset of the probate estate, *and the specific reason* Petitioner requested the Emergency Motion itself.

      iii. Ashley Boshea signed under oath the Small Estate Affidavit (notarized by and filed by Mr. Jordan), in which she states that

<table>
<tr><td></td><td>the gross value of the decedent's entire personal estate, including the value of all property *does not exceed* $100,000.00.  In that same paragraph, which asks to list each asset and its fair market value, the Small Estate Affidavit has typed into a blank space, "$3,000.00 and unknown proceeds from litigation."</td></tr>
<tr><td>iv.</td><td>The Small Estate Affidavit requires petitioners to list all of the estate's creditors.  The only creditors listed on the Small Estate Affidavit signed by Ashley Boshea (and notarized by Mr. Jordan) are Belfor USA Group and Tapestry Naperville.</td></tr>
<tr><td>v.</td><td>Despite the fact that Mr. Jordan himself is a creditor based upon the fees he is to be paid out of any proceeds from the District Court Case, Mr. Jordan and Ashley Boshea did not list him as a creditor in the Small Estate Affidavit.</td></tr>
<tr><td>vi.</td><td>Despite the fact that Mr. Jordan and Ashley Boshea are aware that Julie Boshea (David Boshea's ex-wife) would be owed pursuant to a divorce decree 50% of any proceeds that may be awarded in the District Court Case, Mr. Jordan and Ashley Boshea also did not list Julie Boshea as a creditor in the Small Estate Affidavit.</td></tr>
<tr><td>vii.</td><td>On or about March 5, 2025, Mr. Jordan, purporting to represent the Estate of Mr. Boshea sent a letter making a settlement demand of Compass Marketing, Inc., for over $1 million.  At the time of that demand, Mr. Jordon knew there was no probate estate and no Administrator of the estate for Mr. Boshea, as the Probate Case was not even filed until March 21, 2025 (sixteen days after the demand was made).  In other words, at the time of the demand, Mr. Jordan knew there was no authorized representative appointed by any probate court to represent the estate; yet, he offered to settle an asset that likely would be considered the largest asset of Mr. Boshea's estate.</td></tr>
<tr><td>viii.</td><td>On March 17, 2025, in the District Court Case, Mr. Jordan filed a suggestion of death that states, "Ashley Boshea will serve as the appointed administrator of the estate of David John Boshea," and asks that "Ashley Boshea, administrator of the Estate of David John Boshea, Deceased" "be substituted in place of 'David John Boshea' as plaintiff in this action, so that Decent's claims survive, and the action on her behalf may proceed." Since the Probate Case was not even filed until March 21, 2025 (four days after the filing of the suggestion of death),  Mr. Jordan knew that there was no probate estate at the time he made the court filing asking to substitute parties, and Mr. Jordan also</td></tr>
</table>

        knew that Ashley Boshea could not have been appointed administrator by any probate court.

    ix.    On or about March 19, 2025, Ashley Boshea signed a power of attorney as the "Independent Administrator of the Estate of David Boshea" and appointed her mother, Julie Boshea, ex-wife of David Boshea, the decedent, "to determine the appropriate amount to offer, negotiating the terms of settlement, and accept settlement (of the District Court Case)." This power of attorney signed by Ashley Boshea states on its face that it was prepared by Mr. Jordan. Moreover, it presents certain concerns regarding the petition filed in the Probate Case two days later on March 21, 2025, in that Ashley Boshea, the person asking the probate court to appoint her as an independent administrator to protect and administer the estate's assets, had already assigned to a third-party (who remains an undisclosed creditor of the estate) the estate's decision-making authority in connection with certain settlement negotiations regarding what appears to be the estate's largest asset.

    x.    Based upon the above actions taken by Ashely Boshea and the attorney who initiated the Probate Case (Mr. Jordan), which include knowingly concealing the size of an asset of the estate by filing an affidavit under oath that characterizes the estate as a small estate and having knowingly omitted creditors of the estate with a substantial stake in the main asset of the estate (e.g., Mr. Jordan and Julie Boshea), Compass Marketing, Inc., has legitimate and serious concerns about Ashely Boshea being appointed independent administrator of the estate of David J. Boshea. Thus, Compass Marketing, Inc.'s objections do not constitute simple "technical objections" as portrayed by Mr. Jordan.

    xi.    Additionally, and more alarming, Mr. Jordan, on Ashley Jordan's behalf, prepared and signed documents filed in the District Court Case that falsely represented to the District Court that Ashley Boshea was already appointed as an independent administrator. As a result, Compass Marketing, Inc., asked the court in the Probate Case to further investigate these serious issues, and suggested that it might be better for the court in the Probate Case appoint a neutral person who is not related to David Boshea's family to administer his estate.

e.    Judge Garcia said that he was going to deny the Emergency Petition based upon the serious concerns raised. He stated that he was going to set the matter for evidentiary hearing, and he noted that he requires such hearings to be in person in his courtroom.

  f. Judge Garcia stated that he did not have any availability for such a hearing in April, but suggested a date in the first week of May. Mr. Jordan said he had to take his wife to physical therapy in the late morning and did not believe he could make it to the 1:30 p.m. hearing time the court was suggesting.

  g. Judge Garcia's next suggested date was a date in the second week of May, but I am a Chapter 7 bankruptcy trustee, and I have 341(a) hearings that I have to conduct on the day Judge Garcia suggested.

  h. Judge Garcia then suggested at least three additional dates, after the second week of May, and Mr. Jordan said he was unavailable for *each* of those dates.

  i. Finally, Judge Garcia suggested June 17, 2025 as his next available date, which was available for Mr. Jordan. Thus, Judge Garcia set the hearing for that date.

  j. Judge Garcia then gave Ashley Boshea leave to amend her Petition for Letters of Office, and gave Compass Marketing, Inc., leave to file any objections it wished in writing.

8. At the hearing neither Mr. Jordan nor his co-counsel raised any issue of Compass Marketing, Inc's standing as a creditor of the estate.

9. Mr. Jordan likely did not assert any objection based on standing because, before the Emergency Motion was presented to the court in the Probate Case, I and Mr. Jordan exchanged emails (copying his co-counsel in Illinois) regarding the basis of Compass Marketing, Inc.'s causes of action against David Boshea. A copy of that email exchange between Mr. Jordan and I (including a copy of the amended complaint filed by Compass Marketing, Inc., that was attached to one of my emails) is attached as Exhibit 2.

10. In addition, Mr. Jordan was made aware over a year ago that Compass Marketing, Inc., had claims against David Boshea under the Maryland Uniform Trade Secrets Act, by way of a letter to Mr. Jordan dated February 16, 2024 from an attorney who was representing Compass Marketing, Inc., Brian A. Tollefson. A copy of that letter from Mr. Tollefson is attached as Exhibit 3.

11. In the process of being retained quickly just the day before the date that Mr. Jordan had told Maryland Counsel that he would appear on the Emergency Petition (originally he told them March 28, 2025), I obtained a verbal description from my client and various of its Maryland attorneys as to the basis of Compass Marketing, Inc.'s claims against David Boshea that would give the client standing in the Probate Case. In short, the basis for Compass Marketing, Inc.'s standing was described in paragraphs 250 to 260 in the second amended complaint attached to my email dated April 1, 2025, and that amended complaint had been filed with the Circuit Court of Maryland for Anne Arundel County on or about February 13,

2025. It is my understanding that David Boshea (or his estate) had not been named a defendant at the time the amended complaint was filed on February 13, 2025, because Mr. Boshea had recently passed away and Compass Marketing could not name or serve any person/entity on David Boshea's behalf until an independent administrator for his estate had been appointed.

12. Although I was not involved in Judge Hollander's conversation on April 3, 2025, with Mr. Jordan, Mr. Stern, and Ms. Hayden, I am confident that Judge Hollander would not have sent her April 3, 2025 letter to Judge Garcia, casting aspersions on Compass Marketing, Inc., and expressing her belief that Compass Marketing, Inc., was motivated to take action in the Probate Case to obstruct justice in the District Court Case, if Mr. Jordan (an officer of the court) had accurately advised Judge Hollander in his email that Judge Garcia did not indicate he was going to rule in favor of Ashley Boshea and Compass Marketing, Inc.'s objections were not merely technical and if he had corrected Judge Hollander's misimpression during the call that Compass Marketing, Inc., had no claim against David Boshea (now his estate) by advising her that – although he may have disagreed with the claim – Mr. Jordan knew from multiple communications that Compass Marketing, Inc., has been insistent with Mr. Jordan that it has specific claims against David Boshea (now his estate).

13. In my opinion, the Judge Hollander Letter will unfairly prejudice Judge Garcia against Compass Marketing, Inc. The letter did not merely state that Judge Hollander was not knowledgeable about any claim Compass Marketing, Inc., had against David Boshea; rather, it cast doubt on whether Compass Marketing, Inc. had *any* such claim and whether it can be asserted in good faith. The letter further implied that I must not have conducted sufficient investigation of my client's claim and portrayed certain actions taken by Compass Marketing, Inc., in the District Court Case in an unfavorable light. Taken in its entirety, the letter cast substantial doubt about Compass Marketing, Inc.'s conduct in an Illinois proceeding, including its motivations and the propriety of its conduct, none of which had been presented to Judge Hollander, other than through Mr. Jordan's biased and inaccurate portrayals.

14. The fact that there are multiple valid causes of action available to Compass Marketing, Inc., to assert against the estate of David Boshea directly contradicts Judge Hollander's statement in her April 3, 2025, letter to Judge Garcia that she "is extremely concerned that the issue presented to [Judge Garcia] regarding a possible meritorious claim by Compass against the Boshea estate is bogus[…]"

15. Judge Garcia's appointment of a proper administrator for the estate of David Boshea is required not only by Illinois law, but also required for two separate cases to proceed in Maryland.

16. Lamentably, the interference Judge Hollander warned about in the Judge Hollander Letter to Judge Garcia appears to have taken place, but as a result of the Judge Hollander Letter, not any action taken by Compass Marketing, Inc., and it may cause the focus of the June 17, 2025 hearing in the Probate Case to change from the most important facts:

   a. Ashley Boshea's knowingly false and misleading statements in the papers she filed with the court in the Probate Case, and her fraudulent actions taken on behalf of the estate of David Boshea in the District

        Court Case portraying herself as the duly appointed estate representative of Mr. Boshea's estate when she knew that no probate case had even been opened/filed. This fraud upon the court should be the focus of the hearing, which should focus on whether Ashley Boshea can be a proper estate representative.

17. Mr. Jordan even used the Judge Hollander Letter to Judge Garcia to try to convince Compass Marketing Inc. to withdraw it's very serious and substantive objections to Ashley Boshea being a proper representative of the estate.

    a. He has directed emails to Stephen Stern (copying me on same) asking that Compass Marketing, Inc., withdraw its objections to the appointment of Ashley Boshea in light of the Judge Hollander Letter.

    b. And, as happenstance, Mr. Jordan was representing a bankruptcy debtor before me as Chapter 7 Trustee in my April 8, 2025, 341(a) meeting of creditors hearings. In the Zoom room, with his debtor clients present, he said he wanted to talk to me about the "other case." He advised me that Judge Hollander was very angry. He also advised me that he had emailed Mr. Stern to request that my client's "objection" be withdrawn, and that Mr. Stern was asking questions rather than articulating Compass Marketing, Inc.'s position in an Illinois proceeding where I am counsel of record, not Mr. Stern. Notably, he did not ask me if I was going to withdraw the objection in the Probate Case, even though I am the attorney of record. Then he commented he did not mean to interfere with my proper representation of my client as its attorney. As a hearing officer at the 341(a) meeting, his discussion of my actions as an attorney and those of my client had angered a federal judge, in front of his debtor clients, demeaned my standing as the presiding officer of the 341(a) meeting who was about to put his client under oath and question them about the bankruptcy case he had filed. It was a wholly in appropriate forum for him to try to have that discussion, and so my only response to him was "I understand."

18. In addition, although Mr. Jordan did not file Ashley Boshea's Reply in Support of her Amended Petition for Letters of Administration on May 19, 2025, the attorney he appeared with at the hearing on April 3, 2025 in the Probate Case filed the Reply and the *only* exhibit attached to the Reply in support of Ashley Boshea's request to be appointed the representative of the estate was the Judge Hollander Letter, contending incorrectly that Compass Marketing's objections to the appointment of Ashley Boshea "delayed the trial date set in the Maryland Federal Litigation" and that Compass Marketing's "purpose in making its Objection amounts to an attempt to delay or obstruct the Maryland or obstruct the Maryland Federal Litigation rather than facilitating the proper administration of the Estate."

19. If called as a witness, I could competently testify to the information contained in this affidavit.

I declare under the penalty of perjury that the foregoing is true and correct.

_____
Cindy M. Johnson