IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ASHLEY BOSHEA as Administrator of the Estate of DAVID JOHN BOSHEA,** <br><br> Plaintiff. <br><br> v. <br><br> **COMPASS MARKETING, INC.,** <br><br> Defendant. | Civil Action No. 1:21-CV-00309-ELH |

**DEFENDANT COMPASS MARKETING, INC.'S MOTION FOR RELIEF FROM A JUDGMENT, OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

Defendant Compass Marketing, Inc. ("Compass Marketing" or the "Company"), by and through its undersigned counsel and pursuant to Rules 60(b) and 59(a) of the Federal Rules of Civil Procedure, hereby files this Motion for Relief from a Judgment or, in the Alternative, for a New Trial.

**INTRODUCTION**

In a shocking turn of events, Plaintiff Ashley Boshea, as Administrator of the Estate of David John Boshea ("Boshea"), engaged in the same misconduct in the second trial that Plaintiff David J. Boshea engaged in during the first trial.[1]  By failing to disclose substantive portions of testimony by his expert witness, Donna Eisenberg ("Ms. Eisenberg"), Boshea *yet again* engaged in trial by ambush in clear violation of the Federal Rules of Civil Procedure.

---

[1] David J. Boshea, the original Plaintiff in this case, passed away on January 28, 2025.  Thereafter, Mr. Boshea's daughter, Ashley Boshea, as Administrator of the Estate of Mr. Boshea, was substituted as the named Plaintiff.  For ease of reference, this filing continues to refer to *Plaintiff* as "Boshea," and references herein to "Boshea" should be understood to include the Estate of David J. Boshea, by and through its Administrator.

Similar to what transpired at the first trial, where Boshea had Ms. Eisenberg testify about a sur-rebuttal report hidden on her lap during her testimony and which was not disclosed to Compass Marketing prior to her testimony at trial, Boshea again had Ms. Eisenberg testify about charts and analyses that were shown to the jury, even though they were not disclosed to Compass Marketing prior to trial.[2]  Her testimony also included other opinions that *were not disclosed* to Compass Marketing prior to trial.  Such withholding of this expert material and information clearly constitutes misconduct under Rule 60(b) of the Federal Rules of Civil Procedure, and it unfairly deprived Compass Marketing of the opportunity to present a complete defense to the claims being advanced by Boshea.  For these reasons, which are discussed in greater detail below, the Court should grant Compass Marketing relief under Rule 60(b) from the judgment that has been entered, or, in the alternative, the Court should order a new trial under Rule 59(a) of the Federal Rules of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

In light of the Court's familiarity with the factual and procedural history of this case, Compass Marketing submits the following brief recitation of the relevant background.

On February 5, 2021, Plaintiff David J. Boshea filed a two-count Complaint against Compass Marketing alleging breach of contract (Count I) and violation of the Maryland Wage Payment and Collection Law ("MWPCL") (Count II).  *See* ECF 1 (Complaint).  Boshea's Complaint was filed "to recover unpaid sums owing to him under an agreement titled 'Compass Marketing, Inc. Agreement Relating to Employment and Post-Employment Compensation.'" *See* ECF 1 at ¶ 1. Attached as Exhibit A to the Complaint was the purported written contract entered into between Boshea and Compass Marketing titled "Compass Marketing, Inc. Agreement

---

[2] Boshea's counsel falsely and boldly represented to the Court that the charts and analyses were properly disclosed, but Compass Marketing demonstrated this was false.

Relating to Employment and Post-Employment Compensation" (the "Agreement") that formed the entire basis of Boshea's claims against Compass Marketing.

Compass Marketing always denied that it entered into the alleged Agreement and that the alleged signature of John White, the Company's CEO at the time, was forged. *See* ECF 125-2 (Defendant Compass Marketing, Inc's Answers to Plaintiff David J. Boshea's First Set of Interrogatories) at 8; *see also* ECF 14 (Defendant Compass Marketing, Inc.'s Answer to Plaintiffs' Complaint for Breach of Contract) at p. 7 (Sixth Affirmative Defense); ECF 53 (Defendant Compass Marketing, Inc.'s Answer to Plaintiff's Second Amended Complaint) at p. 8 (Fifth Affirmative Defense).

The parties proceeded to a jury trial from February 20, 2024 to February 27, 2024 on the claims set forth in Boshea's operative Complaint. During the testimony of Boshea's expert, Donna Eisenberg ("Ms. Eisenberg"), Compass Marketing realized Ms. Eisenberg had prepared a sur-rebuttal report that Compass Marketing was not aware existed. Compass Marketing only came to realize while Ms. Eisenberg was testifying at trial that her testimony was premised on the previously undisclosed report. Had Compass Marketing not noticed Ms. Eisenberg was reading from, or at least referring to, a document she had placed on or around her lap throughout her testimony,[3] Compass Marketing likely would not have discovered the existence of the previously undisclosed sur-rebuttal report or the fact that Ms. Eisenberg had testified at trial about analyses in her sur-rebuttal report that was never produced.

Ms. Eisenberg's testimony from the sur-rebuttal report was no accident, however. As evidenced by an email exchange between counsel, Boshea planned to use Ms. Eisenberg's sur-

---

[3] Ms. Eisenberg kept the sur-rebuttal report on or around her lap, which was largely not in counsel's view during her testimony.

3

rebuttal report in testimony at trial even though Boshea knew Ms. Eisenberg's sur-rebuttal report was never shared with Compass Marketing. On February 19, 2024 (one day before trial), Boshea's counsel emailed counsel for Compass Marketing the following: "I want to confirm that Donna Eisenberg will be allowed to provide rebuttal testimony. Please let me know." That same day, counsel for Compass Marketing replied, "I do not recall receiving a report from her in rebuttal to the report or testimony of Jeffrey Payne. Was that provided?" Two days later – after trial had already commenced – counsel for Boshea simply responded to the question with "No." Despite knowing that Ms. Eisenberg's sur-rebuttal report had not been produced to Compass Marketing, Boshea had Ms. Eisenberg testify at trial about the findings, conclusions, and analyses Ms. Eisenberg included in her sur-rebuttal report. Ms. Eisenberg's testimony went on for some time before Compass Marketing realized that Ms. Eisenberg was potentially testifying from a supplemental report it did not receive. Once it was confirmed that Ms. Eisenberg was reading from or being guided by the undisclosed sur-rebuttal report, Compass Marketing objected to its use and moved for a mistrial, which this Court denied.

      At the end of the first trial, the jury returned a verdict in favor of Compass Marketing on the written contract claims. During Compass Marketing's motion for judgment after the close of all the evidence, however, Boshea moved to amend his Complaint further (it had already been amended twice ) and, for the first time, Boshea sought to add a breach of oral contract claim. The Court granted the motion to amend over Compass Marketing's objection. The jury returned a verdict for Boshea on the new oral contract claim – a claim Compass Marketing did not defend against.

      Compass Marketing filed a Renewed Motion for Judgement as a Matter of Law, or, in the Alternative, Motion for a New Trial. The Court denied Compass Marketing's Renewed Motion

for Judgement as a Matter of Law, but granted the Motion for a New Trial and allowed Boshea to amend his Complaint to add a claim for breach of oral contract. Before the second trial began, Boshea passed away and his daughter Ashley Boshea, as the Administrator of Mr. Boshea's Estate, became the Plaintiff.

The second trial began on August 4, 2025. During the second trial, Boshea decided not to have Ms. Eisenberg testify during his case-in-chief, and, instead, decided to put her on solely in rebuttal to testimony by Jeffrey Payne ("Mr. Payne"), Compass Marketing's expert. During Ms. Eisenberg's testimony, she began testifying about charts and analyses that she had prepared as a supplement to her report. It quickly became apparent to Compass Marketing that Boshea again did not produce charts and analyses that Ms. Eisenberg was relying on. In fact, almost immediately upon hearing the testimony about the undisclosed charts and analyses, counsel for Compass Marketing questioned what Ms. Eisenberg was referring to in her testimony. Shockingly, counsel for Boshea stated, "This was a report that I delivered to you on December 23rd last year." *See* Exhibit 1 (Trial Testimony of D. Eisenberg) at 10:25-11:10. The charts, however, were not included in Ms. Eisenberg's report, and, in fact, Boshea never produced them. Boshea's counsel clearly knew the charts and analyses had not been produced to Compass Marketing prior to trial (despite representing multiple times they had been produced)[4] because Boshea's counsel admitted that Ms. Eisenberg emailed the charts to Boshea's counsel the *morning of the trial*. *See* Exhibit 1 at 18:9 ("She sent these to me this morning."). Expert documents emailed to Boshea's counsel during the trial obviously could not have been disclosed to Compass Marketing prior to trial.

---

[4] Counsel for Boshea stated at least six times that the charts and analyses had been produced with the December 2024 report and/or that Compass Marketing had the charts and analyses, which was blatantly not true. *See* Exhibit 1 at 10:25-11:10, 14:3-11, 14:7-17, 14:20-23, 16:4-6, and 21:7-11. When asked whether the charts existed separate from the December 2024 report, counsel for Boshea stated "No[,]" even though that was not true. *See* Exhibit 1 at 18:5-7.

Before it was resolved that Boshea would no longer use the undisclosed charts and analysis, Ms. Eisenberg had already provided several minutes of highly prejudicial of testimony. The damage had been done, as Compass Marketing was ambushed yet again and deprived of a meaningful opportunity to defend against Ms. Eisenberg's testimony. The shock of having this development happen not once, but twice, is summed up best by the Court's comments upon realizing Boshea ambushed Compass Marketing yet again with Ms. Eisenberg's testimony, "Is this déjà vu all over again?," "Then why would it be that the one document that he's asking about is the one you don't have? I am revisiting my life, it seems[,]" and "How is this possible, Mr. Jordan? How is it possible that you would have the same mistake this time as last time?" *See* Exhibit 1 at 15:17, 16:9-11, and 20:9-13.

The circumstances surrounding Ms. Eisenberg's undisclosed charts and analyses underscore why relief from the judgment is warranted under Rules 60(b), or, why a new trial is warranted under 59(a) of the Federal Rules of Civil Procedure. By intentionally withholding materials that should have been produced, Boshea again deprived Compass Marketing of a fair opportunity to confront and respond to key rebuttal evidence. This misconduct unfairly prejudiced Compass Marketing, undermined the integrity of the proceedings, and materially impacted the jury's consideration of critical issues related to the breach of the written contract claim. Accordingly, a new trial is necessary to ensure that this case is decided on a full and fair record, not through surprise, nondisclosure and misconduct.

**ARGUMENT**

I. **BOSHEA'S MISCONDUCT WARRANTS RELIEF FROM THIS COURT PURSUANT TO RULE 60(b)(3) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

   A. **Standard for Motion for Relief from a Judgment Under Rule 60(b) of the Federal Rules of Civil Procedure**

Rule 60(b)(3) of the Federal Rules of Civil Procedure states that a court "may relieve a party" from a "final judgment, order, or proceeding" for "fraud . . . , misrepresentation, or misconduct by an opposing party." FED. R. CIV. P. 60(b)(3). In reviewing a request for such relief, a court does not "assess the merits of a judgment or order[,]" but, instead, "focuses on the unfair means by which a judgment or order is procured." *See Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1010 (4th Cir. 2014) (citing *Schultz v. Butcher*, 24 F.3d 626, 631 (4th Cir. 1994)). A motion under Rule 60(b)(3) "does not attack 'the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity' of the proceedings." *Morgan v. Tincher*, 90 F.4th 172, 177 (4th Cir. 2024) (citing *Gonzalez v. Crosby*, 545 U.S. 524, 532, 125 S. Ct. 2641, 2644 (2005)).

"To obtain relief under Rule 60(b)(3) for 'misconduct,' the moving party must: (1) 'have a meritorious [claim or] defense'; (2) demonstrate misconduct by clear and convincing evidence, and (3) show that 'the misconduct prevented the moving party from fully presenting its case.'" *Morgan v. Tincher*, 90 F.4th 172, 177 (4th Cir. 2024) (quoting *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994)). After proof of these elements, "'the court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine within its discretion, whether relief is appropriate in each case.'" *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994) (quoting *Square Constr. Co. v. Wash. Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981)).

In this case, the failure to properly disclose expert charts and analyses as well as other analyses that were part of the testimony Ms. Eisenberg presented to the jury warrants relief from the judgment under Rule 60(b) of the Federal Rules of Civil Procedure.

### B. Rule 26 of the Federal Rules of Civil Procedure Includes Mandatory Disclosure Requirements That Boshea Failed to Observe (Yet Again)

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, a party is required to disclose to the other party "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." *See* FED. R. CIV. P. 26(a)(2)(A). Federal Rules of Evidence 702, 703, and 705 govern testimony by an expert witness, bases of an expert's opinion testimony, and disclosing the facts or data underlying an expert's opinion respectively. *See* FED. R. EVID. 702, 703, and 705. And, in making the disclosure, the party must provide "a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." *See* FED. R. CIV. P. 26(a)(2)(B). The report must contain the following:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

*See* FED. R. CIV. P. 26(a)(2)(B)(i-vi). A party also is required to "supplement or correct its disclosure or response" "in a timely manner if the party learns that in some material respect the

8

disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" *See* FED. R. CIV. P. 26(e)(1)(A).

Further, prior to trial, "in addition to the to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other part[y] . . . the following information about the evidence that it may present at trial other than solely for impeachment: . . . (iii) an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises." *See* FED. R. CIV. P. 26(a)(3)(A)(iii).

As explained further below, Boshea's failure to supplement Ms. Eisenberg's report with the charts and analyses that she prepared clearly violates Rules 26(a)(2)(B) and Rule 26(e) of the Federal Rules of Civil Procedure and constitutes misconduct that warrants granting Compass Marketing relief from the judgment that has been entered. And, as explained below, Boshea's ambush in the second trial clearly prejudiced Compass Marketing in its defense against Boshea's breach of written contract claim. Accordingly, Compass Marketing is entitled to relief under Rule 60(b)(3) from the judgment entered by the Court.

### C. Boshea's Actions Constitute Misconduct Pursuant to Rule 60(b)(3)

In order to prevail on a Rule 60(b)(3) motion, "the moving party must prove misconduct by clear and convincing evidence." *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994). Boshea's failure to disclose the additional charts and analyses Ms. Eisenberg prepared and relied on in her testimony clearly satisfies the misconduct element to grant relief under Rule 60(b)(3) (and it is compounded further by counsel's misleading statements regarding the failure to disclose).

9

In *Schultz v. Butcher*, the United States Court of Appeals for the Fourth Circuit held that a party's failure to produce requested, clearly pertinent discovery material was misconduct under Rule 60(b)(3), irrespective whether that failure was inadvertent or intentional. *See Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994) (citing *Stridiron v. Stridiron*, 698 F.2d 204, 207, 19 V.I. 642 (3d Cir. 1983) (failure to produce discovery material can constitute Rule 60(b)(3) misconduct)); *Square Constr. Co. v. Wash. Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981) (same). In *Schultz*, the plaintiff was injured while riding in a small boat that crossed the wake of a large vessel. *Id.* at 628. The plaintiff filed a civil lawsuit seeking damages against both the operator of the small boat and the operator of the large vessel. *Id.* During discovery, the plaintiff failed to disclose knowledge of a Coast Guard report in which an official had concluded that (1) there was no evidence that the large vessel had been speeding, and (2) the operator of the small boat likely caused the injuries. *Id.* at 629. Based on other evidence presented, the district court found that the large vessel's speed caused the plaintiff's injury. *Id.*

The district court in *Schultz* denied a motion under Rule 60(b)(3) filed by the operator of the large vessel, holding that the undisclosed document "would not have changed the court's finding as to the liability of [the defendants]." *Id.* at 630. The Fourth Circuit reversed, however, holding that the district court abused its discretion in denying the Rule 60(b)(3) motion and that a new trial was required. *Id.* at 632. In doing so, the Fourth Circuit held that the failure to produce the report constituted misconduct. *Id.* at 631. And, of particular import, the Fourth Circuit explained that the standard under Rule 60(b)(3) is not whether the evidence that was not disclosed would have altered the outcome of the case; rather, a far less onerous standard applies: "[w]hen wrongful secretion of discovery material makes it inequitable for the withholder to retain the benefit of the verdict, the aggrieved party should not be required to assemble a further showing."

*See Schultz v. Butcher*, 24 F.3d 626, 631 (4th Cir. 1994) (quoting *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 924 n.10 (1st Cir. 1988)).

The Fourth Circuit's application of this far less onerous standard has not changed in thirty years, as it recently vacated a final judgment under Rule 60(b)(3) in *Morgan v. Tincher*, 90 F.4th 172 (4th Cir. 2024), when it found that the defendant committed misconduct by failing to supplement his answers to interrogatories. In *Morgan*, the plaintiff sued the defendant, a police officer, for use of excessive force in violation of the Fourth Amendment, and a myriad of other state law claims. *See Morgan v. Tincher*, 90 F.4th 172, 174 (4th Cir. 2024). During discovery the plaintiff asked the defendant to disclose all other lawsuits in which the defendant was a named party. *See id.* at 175. The defendant had identified one prior lawsuit. *Id.* Two months before trial, however, the defendant was named in a separate lawsuit with similar factual allegations of excessive force, but the defendant (who was represented by the same counsel in both the disclosed prior lawsuit and the more recently filed lawsuit) failed to supplement his answers to interrogatories to include the new lawsuit. *See id.* After the jury returned a verdict for the defendant, the plaintiff filed a motion for relief from judgment and "asked for a new trial under Federal Rule of Civil Procedure 60(b), arguing in relevant part that he was entitled to relief under Rule 60(b)(3)." *See id.* at 177. The district court denied the motion, and the Fourth Circuit reversed.

The Fourth Circuit concluded that the plaintiff "established misconduct by clear and convincing evidence based on [the defendant's] failure to disclose evidence of the [new] lawsuit[]" because "the [plaintiff's] interrogatories and request for documents made clear that he was seeking disclosure of any lawsuit in which [the defendant] was a named party." *See id.* at 179. The Fourth Circuit further held that, under Rule 26(e), the defendant had an obligation to supplement his

11

discovery responses when the new lawsuit was filed, and his failure to do so constituted misconduct. *See id.* at 180.

Turning to the instant case, Ms. Eisenberg was presented as an expert witness under Rule 702 of the Federal Rules of Evidence. It cannot be disputed that Boshea had a duty to provide Ms. Eisenberg's charts and analyses, as well as any other opinions she planned to include in her testimony, to Compass Marketing prior to trial. *See* FED. R. CIV. P. 26(a)(2)(B)(i-iii). The failure to make this mandatory disclosure alone reflects misconduct that warrants relief from the judgment. Boshea's failure to disclose the charts and analyses and opinions Ms. Eisenberg relied on at the second trial is particularly egregious, as it represents a pattern of misconduct that began during the first trial when it was discovered during Ms. Eisenberg's testimony that she had prepared an entire second report that was never provided to Compass Marketing (for approximately two years) prior to the first trial. It is incomprehensible that a nearly identical event would occur during the second trial, but that is exactly what happened, as Boshea yet again failed to disclose relevant information regarding the bases for Ms. Eisenberg's expert's opinions. As the Court exclaimed upon witnessing the same shocking behavior in the second trial, "Is this déjà vu all over again?" *See* Exhibit 1 at 15:17.

But, it is even worse than it appears at first glance. Unlike the first trial, Boshea presented Ms. Eisenberg only as a rebuttal expert witness, meaning she would testify only after Compass Marketing's expert, Mr. Payne. This change in tactic seems to have been part of a strategy to limit Compass Marketing's ability to counter Ms. Eisenberg's undisclosed charts and analyses and other opinions she shared. In this regard, if Compass Marketing discovered the deceptive tactic of not disclosing the charts and analyses, which it ultimately did, Compass Marketing still would not have the ability to present contrary testimony by Mr. Payne or, alternatively, get the benefit of Mr.

Payne's input on how to more effectively cross-examine Ms. Eisenberg about the new charts and analyses and her opinions that should have been disclosed approximately nine months earlier when Boshea produced Ms. Eisenberg's December 2024 report. The prejudice in this regard should be apparent and obvious.[5]

Even if Boshea inadvertently failed to supplement Ms. Eisenberg's report (it is hard to believe Boshea inadvertently failed to supplement Ms. Eisenberg's report for a second time, particularly in light of the circumstances described herein), it does not change the analysis or outcome. *See Schultz*, 24 F.3d at 630 (holding "that an adverse party's failure, *either inadvertent or intentional*, to produce such obviously pertinent requested discovery material in its possession is misconduct under the meaning of Rule 60(b)(3)") (emphasis added). As such, the misconduct element undeniably has been satisfied.

### D. Compass Marketing Presented a Meritorious Defense and It Was Prevented from Fully Presenting Its Case

The next two elements required under Rule 60(b)(3), namely, that the moving party must have a meritorious defense and that the misconduct prevented the moving party from fully presenting its case, are closely interrelated.

In analyzing these two elements, the question is not "whether the undisclosed material would have changed the outcome of the trial[,]" but, instead, "the proper inquiry under Rule 60(b)(3) is whether the judgment was 'unfairly procured' based on the withholding of discoverable

---

[5] The prejudice is compounded even further by the fact that Compass Marketing's counsel did not even hear Ms. Eisenberg's testimony regarding the new charts and analyses. As was abundantly clear to any observer in the courtroom, including the jury, both of Compass Marketing's counsel were trying desperately to locate the charts and analyses that Boshea's counsel repeatedly represented (falsely) it had disclosed to Compass Marketing. This frantic search is even captured on the record in that Compass Marketing's counsel made at least four requests (at least some from counsel's table) to identify where the charts and analyses were located in the December 2024 report. *See* Exhibit 1 at 10:25-11:10, 14:3-11, 15:5-7, 15:12. Thus, the failure to produce the expert materials – and then misrepresent that they were produced – had a secondary effect of not allowing Compass Marketing's counsel even to comprehend Ms. Eisenberg's testimony and try to develop an effective plan to try to cross-examine Ms. Eisenberg on these new charts and analyses.

13

material[.]" *Morgan v. Tincher*, 90 F.4th 172, 180 (4th Cir. 2024) (quoting *Schultz v. Butcher*, 24 F.3d 626, 631 (4th Cir. 1994)). In other words, "[w]hen wrongful secretion of discovery material makes it inequitable for the withholder to retain the benefit of the verdict, the aggrieved party should not be required to assemble a further showing." *Schultz v. Butcher*, 24 F.3d 626, 631 (4th Cir. 1994) (quoting *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 924 n.10 (1st Cir. 1988)).

Compass Marketing clearly meets both elements. First, as to whether Compass Marketing had a meritorious defense, the Court can simply look at the outcome of the first trial regarding the written contract claim. In the first trial, Compass Marketing demonstrated that its defense – that John White's signature on the agreement had been forged – was meritorious, as the jury returned a verdict in favor of Compass Marketing on the breach of written contract claim and found in favor of Boshea only on the belated breach of oral contract claim (the claim that Compass Marketing did not have the opportunity to defend against in light of the late amendment), even though the jury could have returned a verdict for Boshea on both the written and oral contract claims based on the construct of the verdict sheet. Clearly, Compass Marketing presented a meritorious defense.

Moreover, the defense goes to the very formation of the contract itself: if the signature on the written agreement was forged, no enforceable written contract ever existed. That strikes at the heart of Boshea's claims and indisputably qualifies as a meritorious defense. The fact that two different juries reached opposite conclusions further underscores that Compass Marketing's defense is both substantive and significant.

Second, Boshea's misconduct prevented Compass Marketing from fully presenting its case because it was unable to rebut the opinion testimony of Ms. Eisenberg that it was not aware existed until she was testifying at trial. As explained above, unlike the first trial, Boshea presented Ms. Eisenberg only as a rebuttal expert witness, meaning she would testify only after Compass

14

Marketing's expert, Mr. Payne. This change in tactic seems to have been part of a strategy to limit Compass Marketing's ability to counter Ms. Eisenberg's undisclosed charts and analyses, as Compass Marketing did not have the ability to present contrary testimony from Mr. Payne or, alternatively, get the benefit of input from Mr. Payne on how to more effectively cross-examine Ms. Eisenberg about the new charts and analyses she testified about during her direct examination.[6] Again, Compass Marketing is not required to show that the undisclosed evidence would have altered the result of the trial. *See Schultz v. Butcher*, 24 F.3d 626, 631 (4th Cir. 1994). Rather, Compass Marketing must only show that it is inequitable for Boshea, who withheld pertinent evidence that was required to be disclosed, to retain the benefit of the verdict. *See id.*

The significant prejudice to Compass Marketing's defense can be illustrated even further by examining some of the details from Mr. Eisenberg's testimony. For example, Ms. Eisenberg's testimony in the second trial began with a discussion of "peak formations" and she improperly utilized the undisclosed charts and analyses to illustrate this concept. *See* Exhibit 1 (Trial Testimony of D. Eisenberg) at 11:16-13:25. Even more problematic is the fact that Ms. Eisenberg's December 2024 report – the report disclosed to Compass Marketing – does not make a single reference to "peak formations." *See* Exhibit 2 (D. Eisenberg Report). Thus, Ms. Eisenberg's trial testimony about "peak formations" clearly violated Rule 26(a)(2) because Compass Marketing was entitled to receive "a *complete statement of all opinions the witness will express* and the basis and reasons for them." *See* FED. R. CIV. P. 26(a)(2)(B)(i) (emphasis added). Ms. Eisenberg's testimony regarding "peak formations" was then used as the basis for her to try to discredit Mr. Payne's testimony. *See* Exhibit 1 at 13:15-25. The prejudice from this ambush testimony was compounded even further by the fact that Mr. Payne had already finished testifying by the time

---

[6] *See* footnote 5, *supra*.

15

Ms. Eisenberg revealed her new theories and, because her new theory had not been disclosed in Ms. Eisenberg's report, Mr. Payne did not have the opportunity to address it in his testimony, thereby limiting Compass Marketing's defense.

While it is impossible to determine with any degree of precision how much Ms. Eisenberg's testimony impacted the jury's decision, anecdotally and off the record, both Boshea's counsel and this Court acknowledged that Ms. Eisenberg's testimony at the second trial appeared stronger than her testimony at the first trial. One can certainly infer that this is at least in part due to the fact that Boshea undertook efforts to insulate Ms. Eisenberg as much as possible from Mr. Payne's responses to her testimony. Indeed, it cannot be coincidence that Boshea – not once, but twice – sandbagged Compass Marketing with surprise testimony from Ms. Eisenberg. One can certainly infer that these repeated surprises were driven at least in part by a desire to derive some unfair advantage to limit the effectiveness of Mr. Payne (who is clearly regarded as one of the leading experts in the field of forensic document examination) by depriving Mr. Payne the opportunity to know all of Ms. Eisenberg's analyses and opinions. Simply put, Compass Marketing was prohibited from fully presenting its case due to the misconduct of Boshea and his counsel. Therefore, all three elements under Rule 60(b)(3) of the Federal Rules of Civil Procedure are satisfied.

E. **Relief from the Judgment is Warranted to Ensure the Fairness and Integrity of the Fact Finding Process**

After concluding the three elements have been satisfied, "'the court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine within its discretion, whether relief is appropriate in each case.'" *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994) (quoting *Square Constr. Co. v. Wash. Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981)). This balance tips in favor of Compass Marketing because,

16

as the Fourth Circuit acknowledged in *Schultz*, "the fairness and integrity of the fact finding process is of greater concern" than the "finality of judgments." *Schultz v. Butcher*, 24 F.3d 626, 631 (4th Cir. 1994). Indeed, a party's failure to produce a document that is clearly a critical part of that party's case, and which it was required to produce, impedes the fairness and integrity of the fact-finding process, thereby requiring redress in the form of a new trial. *See id.* at 631. Therefore, pursuant to Rule 60(b)(3) of the Federal Rules of Civil Procedure, this Court should vacate the judgment entered against Compass Marketing.

## II. A NEW TRIAL IS WARRANTED PURSUANT TO RULE 59(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE

### A. Standard for a Motion for New Trial Under Rule 59(a) of the Federal Rules of Civil Procedure

Upon motion, Federal Rule of Civil Procedure 59 permits a court to "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). The Fourth Circuit has interpreted Rule 59 to require district courts to "'set aside the verdict and grant a new trial' where '(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Doe v. Fairfax Cty. Sch. Bd.*, 1 F.4th 257, 268 (4th Cir. 2021) (quoting *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 346 (4th Cir. 2014)). "A new trial is warranted when the 'erroneous inclusion or exclusion of evidence in the underlying proceeding prejudices a party's right to a fair trial.'" *Tevra Brands LLC v. Bayer Healthcare LLC*, No. 19-cv-04312-BLF, 2025 U.S. Dist. LEXIS 10649, at *4 (N.D. Cal. Jan. 21, 2025) (quoting *Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1189 (9th Cir. 2005)).

As set forth above, Boshea's failure to disclose Ms. Eisenberg's supplemental charts and analyses, and the misleading statements made by counsel regarding their production, resulted in Compass Marketing being ambushed at trial and deprived of a meaningful opportunity to respond to Ms. Eisenberg's undisclosed charts, analyses, and theories, all of which she was able to testify about unchallenged at trial. The undisclosed materials formed the basis of critical testimony presented to the jury, and their improper introduction constituted both the admission of evidence that was never produced in discovery and testimony grounded in falsehoods regarding its disclosure. This misconduct not only prejudiced Compass Marketing's ability to fairly defend against Ms. Eisenberg's opinions, but it also resulted in a proceeding infected by surprise and false evidence, thereby producing a miscarriage of justice. Under these circumstances, the jury's verdict cannot stand, and a new trial is required.

## **CONCLUSION**

For the foregoing reasons, the Court should vacate the judgment entered against Compass Marketing pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, or, in the alternative, grant a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure.

Dated: September 10, 2025                      Respectfully submitted,

/s/Stephen B. Stern
Stephen B. Stern, Bar No.: 25335
Shannon M. Hayden, Bar No.: 30380
KAGAN STERN MARINELLO & BEARD, LLC
238 West Street
Annapolis, Maryland 21401
(Phone): (410) 216-7900
(Fax): (410) 705-0836
Email: stern@kaganstern.com
Email: hayden@kaganstern.com

*Counsel for Defendant
Compass Marketing, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of September, 2025, the foregoing Motion for a New Trial, or, in the Alternative, Motion for Relief from a Judgment was served via the CM/ECF system on the following counsel of record:

| | |
|---|---|
| Thomas J. Gagliardo | Gregory J. Jordan |
| Gilbert Employment Law, PC | Mark Zito |
| 1100 Wayne Avenue, Suite 900 | Jordan & Zito, LLC |
| Silver Spring, Maryland 20910 | 350 N. LaSalle Drive, Suite 1100 |
| Email: tgagliardo@gelawyer.com | Chicago, Illinois 60654 |
| | Email: gjordan@jz-llc.com |

*Attorneys for Plaintiff
David Boshea*

/s/ Stephen B. Stern
Stephen B. Stern

19