IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ASHLEY BOSHEA as Administrator
of the Estate of DAVID JOHN
BOSHEA,

    *Plaintiff,*

    v.                                 Civil No. ELH-21-309

COMPASS MARKETING, INC.,

    *Defendant.*

**MEMORANDUM OPINION**

In this breach of contract and wage payment collection case, David Boshea filed suit against his former employer, Compass Marketing, Inc. ("Compass"). Boshea claimed contractual entitlement to a severance payment of $540,000 because Compass terminated Boshea in March 2020, without cause, after thirteen years of employment. ECF 1; ECF 48. Compass and its owner and CEO, John White, claimed that White's signature on the contract was forged. ECF 298 at 240; ECF 301 at 63–64, 102–03; ECF 302 at 23, 25–26; ECF 315 at 2. Boshea later added a claim for breach of oral contract. ECF 278.

Trial was first held in February 2024. *See* ECF 230; ECF 231; ECF 233; ECF 235; ECF 238; ECF 241. The jury found in favor of Boshea as to the oral contract claim and under the Maryland Wage Payment and Collection Law. ECF 246. But, for reasons not relevant here, I granted Compass's request for a new trial. ECF 275; ECF 276; ECF 288; ECF 289. Boshea died in January 2025, shortly before the second trial was to begin. ECF 312. For convenience, however, I shall refer to Boshea as the plaintiff.

The second trial took place in August 2025, after Ashley Boshea was appointed as the administrator of her father's estate. ECF 322; ECF 349; ECF 351; ECF 352; ECF 353. On August 8, 2025, the jury found that Compass breached a written severance agreement (Count II) and violated the Maryland Wage Payment and Collection Law (Count III). ECF 361. The jury awarded a total of $1,020,800, representing compensatory and enhanced damages, along with pre-judgment interest. *Id.*; *see* ECF 365. Judgment was entered on August 15, 2025. ECF 365. The issue of attorney's fees is not yet resolved. *Id.*

On May 21, 2024, Michael White, the brother of John White, filed a pro se "Motion for Sanctions" ("Motion") against Compass and Compass's lawyers, Stephen B. Stern, Heather K. Yeung, and the firm of Kagan Stern Marinello & Beard, LLC (the "Firm"). ECF 269.[1] The Motion is filed pursuant to Fed. R. Civ. P. 11; 28 U.S.C. § 1927; and the court's inherent authority. *Id.* at 1. The Motion includes nine exhibits. ECF 269-1 to ECF 269-9.

Michael White is not a party to this case. To avoid confusion between John White and his brothers, Michael and Daniel White, I shall sometimes refer to the brothers by their first names. Alternatively, I will sometimes refer to John White as "White" and I will refer to Michael as "Movant."[2]

Local Rule 105.8(b) states: "Unless otherwise ordered by the Court, a party need not respond to any motion filed under Fed. R. Civ. P. 11 or 28 U.S.C. § 1927. The Court shall not grant any motion without requesting a response." Compass filed an opposition to the Motion on

---

[1] Michael White is an Orphan's Court Judge in St. Mary's County, Maryland. But, he is not a lawyer. *See* ECF 67 at 1; ECF 81-1 at 16.

[2] Michael disagrees that John is the CEO of Compass. ECF 49 at 5; ECF 269 at 2; ECF 273 at 2; ECF 373 at 1.

June 27, 2024 (ECF 272), although the Court never requested a response. The opposition is supported by one exhibit. ECF 272-1.[3] Michael replied (ECF 273) and submitted four exhibits. ECF 273-1 to ECF 273-4. Michael also seeks a hearing (ECF 367) and filed additional exhibits. ECF 367-1 to ECF 367-9. Compass opposes Michael's request for a hearing. ECF 368. Michael replied and appended eight exhibits. ECF 373; ECF 373-1 to ECF 373-8.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. Therefore, I shall deny ECF 367. And, for the reasons that follow, I shall deny the Motion.

## I.    Factual and Procedural Background[4]

Both Michael and Daniel previously worked at Compass, before apparently having a falling out with White. ECF 42 at 2; ECF 81-1 at 166–67; ECF 298 at 186–88; ECF 373 at 1 n.1.[5] The relationship of the brothers is quite contentious. *See*, *e.g.*, ECF 40 at 8 n.5; ECF 81-1 at 46–47; ECF 82 at 2; ECF 269 at 3–4; ECF 273 at 1–2; ECF 298 at 230; ECF 373 at 4; *see also*, *e.g.*, *Compass Marketing, Inc. v. Flywheel Digital, LLC, et al.*, GLR-22-379 (D. Md.) (suit by Compass naming Daniel and Michael, among others, as defendants) ("*Flywheel* Case"), *aff'd* as to dismissal

---

[3] ECF 272 ("Opposition To Non-Party Michael R. White's Motion For Sanctions") and ECF 368 ("Opposition To Non-Party Michael R. White's Motion To Set Matter For Hearing") were filed only by Compass. The lawyers named in the Motion did not file an opposition in their individual capacities. *See* Docket; *see also* ECF 368 at 2 n.3. Moreover, Compass asserts that Yeung "is no longer employed by" Kagan Stern Marinello & Beard, LLC, but "she has had the opportunity to review this Opposition and concurs with the positions taken [t]herein." ECF 368 at 2 n.2.

[4] The parties are familiar with the factual and procedural background. Moreover, the Court has written numerous opinions in the case. *See* ECF 110; ECF 117; ECF 160; ECF 205; ECF 275; ECF 288; ECF 304; ECF 328; ECF 340. To the extent relevant, I incorporate here the factual and procedural summaries in my earlier opinions.

[5] Both Daniel and Michael White may be part owners of Compass. *See, e.g.*, ECF 33 at 2; ECF 40 at 2, 12, 14; ECF 42 at 2, 8; ECF 81-1 at 16, 18–19; ECF 82 at 2; ECF 93-1 at 2 n.1; ECF 269 at 2; ECF 298 at 12, 41–42, 113–14, 186–87; ECF 301 at 94; ECF 373 at 1.

of federal claims, 2024 WL 3292676, at *1–2 (4th Cir. July 3, 2024) (per curiam).  These circumstances appear to have undergirded discovery difficulties and fueled acrimony in this case.  *See, e.g.*, ECF 33 at 2; ECF 40 at 1–2, 12–16; ECF 42 at 1–3, 7–13; ECF 52 at 3, 6–10; ECF 54 at 7–10; ECF 81 at 2–15; ECF 82 at 2–4; ECF 124 at 2, 5–7.

In Boshea's response to Compass's interrogatories, Boshea claimed that he "had conversations with Michael White concerning [his] prospective employment [at Compass] and the company's need to hire Mr. Boshea to turn the company around."  ECF 42-2 at 5.  Boshea also asserted that Michael "recalled that David Boshea and Compass entered into the severance agreement", and Michael "anticipated that John White would continue to cause Compass Marketing to avoid paying the amounts owing to David Boshea."  *Id.* at 6.

In Boshea's opposition to "Compass Marketing, Inc.'s Motion In Limine To Exclude Certain Email Evidence" (ECF 124), Boshea claimed that Michael had received an email from White with a draft of Boshea's employment agreement attached to it.  ECF 138 at 1–2.  This attachment allegedly contained the severance provision in issue.  *Id.* at 2.  This email was dated May 22, 2007, the time period during which Boshea and White were negotiating the terms of Boshea's employment.  *Id.* at 6; *see* ECF 138-1.

At the first trial, Boshea testified that, after he was terminated, he spoke with Daniel and Michael about what occurred.  ECF 298 at 186.[6]  And, he spoke to Daniel about the alleged severance agreement.  *Id.* at 191, 195–196.  But, neither Michael nor Daniel testified at either trial.

On August 26, 2021, Compass filed a Counterclaim and Third Party Complaint ("Third Party Complaint") against Boshea and "currently unidentified John Doe(s)[.]"  ECF 38 at 1.  In

---

[6] As noted, Boshea died before the second trial.  Therefore, counsel introduced Boshea's testimony at the second trial by reading the transcript of Boshea's testimony from the first trial.

the Third Party Complaint, Compass alleged that unknown third parties "aided, abetted, and conspired with Boshea . . . . to harm Compass[.]" *Id.* at 2. According to Compass, "Boshea by himself and/or in coordination with John Doe(s) circulated the Complaint in this lawsuit" to various third parties doing business with Compass. *Id.* at 4. Compass alleged that Boshea and the John Doe(s) sent the Complaint "to spread false information about Compass," and that the circulation of the Complaint led to damages and a loss of business opportunities for the company. *Id.* Additionally, Compass claimed that "Boshea improperly received approximately $51,800 from Compass Marketing in 'off payroll payment[sic]'" that "were above and beyond his agreed upon compensation." *Id.* at 5. Boshea answered. ECF 45.

Eventually, in October 2023, in an Amended Joint Pretrial Order, Compass "reluctantly" withdrew its Third Party Complaint. ECF 195 at 8. It cited an "inability to obtain certain evidence in discovery[.]" *Id.*

In the interim, on August 10, 2021, *i.e.*, about the time that the Third Party Complaint was filed, Compass served Michael with a document and a deposition subpoena. *See* ECF 33-1 at 9, 12; ECF 89 at 2. The deposition notice specified that Michael's deposition would occur on August 24, 2021. ECF 33-1 at 17. However, the day before Michael's deposition was scheduled to take place, Michael, pro se, filed "Michael R White's Objection To Compass Marketing, Inc.'s Subpoena Duces Tecum. Michael R White's Objection to Subpona [sic] To Testify At Deposttion [sic]. Michael R White's Motion to Quash Subpoenas Duces Tecum[.] Michael R White's Request For A Hearing Before This Honorable Court." ECF 33 ("Motion to Quash"). It is supported by two exhibits. ECF 33; ECF 33-1; ECF 33-2.

In the Motion to Quash, Michael "object[ed] to" Compass's "demand to testify" but did not otherwise address the deposition subpoena. ECF 33 at 1. Michael also characterized the

document subpoena as "overly broad, unreasonable and oppressive" and part of a "pattern of harassment against" him. *Id.* at 2. In addition, Michael accused Steven Stern, Compass's lawyer, of various acts of misconduct, including stealing "approximately $110,000.00" from Compass and diverting Compass's "401k retirement funds" for his own ends. *Id.* at 2–3. Moreover, Michael alleged that Stern threatened him with legal action to force Michael to "walk away" from his "ownership" of Compass. *Id.* at 4. Michael requested a hearing "to determine the legitimacy of Stephen Stern Esq and the law firm of Kagan Stern Marinello & Beard, LLC appearance into this case" and to evaluate "the legitimacy of Stephen Stern Esq as an officer of the court." *Id.* at 1.

Michael did not attend the August 2021 deposition. ECF 42 at 7. Nor did he inform counsel for Compass or Boshea that he did not plan to attend. *Id.*; ECF 42-1 at 2. As a result, counsel for Compass and Boshea, as well as a court reporter and a videographer, all appeared for the deposition that did not take place. ECF 42 at 7–8.

Compass opposed the Motion to Quash. ECF 42. Defendant accused Michael of "shamelessly attempt[ing] to defame" Compass's counsel and of pursuing a "campaign to destroy anyone associated with Compass Marketing." *Id.* at 2. Therefore, Compass asked the Court to deny the Motion to Quash and to compel Michael "to comply with the subpoena and pay the costs of the [August 2021] deposition he failed to attend." *Id.* at 7. Michael replied. ECF 49.

James C. DiPaula, another non-party, also moved to quash a subpoena issued by Compass. ECF 36. DiPaula was a former Compass employee who had been hired after Boshea, and had resigned before Boshea's termination. ECF 52 at 11. Compass sought to depose DiPaula and requested production of DiPaula's employment agreement with Compass, along with any documentation regarding his severance package. ECF 36-3 at 3–4, 9.

Compass also sought to depose Daniel White and to compel him to produce documents. ECF 31-1 at 2–8. Daniel, a non-party, moved to quash. ECF 31. He argued that the document subpoena was "overly broad, unreasonable and oppressive[.]" *Id.* at 2. Moreover, he asserted that Compass requested documents that were "not relevant to the instant case, but instead" were part of "a sort of proxy war in a dispute among the shareholders on[sic] Compass, one of whom is a business partner of attorney Stern." *Id.*

I referred the matters to Magistrate Judge A. David Copperthite. ECF 51. Judge Copperthite granted DiPaula's motion to quash the document subpoena. ECF 52 at 11. He concluded that Compass "does not need such information because any documents between [Compass] and DiPaula are already available to" Compass. *Id.*

As to Michael and Daniel, Judge Copperthite found that both brothers likely had relevant information, stating: "Conversations between nonparties . . . . and Plaintiff regarding his employment, termination, and a factually disputed severance agreement are important information necessary to Defendant to evaluate Plaintiff's claim." *Id.* at 8. Therefore, Judge Copperthite denied the respective motions to quash of Daniel and Michael, except as to three of Compass's document requests. *Id.* at 2. Judge Copperthite determined "that limiting the discovery is appropriate," and he barred inquiries regarding "information" not "related to the allegedly forged Employment Agreement at issue in this action." *Id.* at 9. In his view, some of the information Compass had requested was "not for its defense, but to investigate events that occurred after the commencement of this action." *Id.*

Thereafter, Compass noted another deposition for Michael and tried to contact him by email. *See* ECF 89 at 4. But, Michael had blocked the email address of Compass's counsel and did not learn of the deposition date until after it had been scheduled without his input. *Id.* Three

days before the second deposition was to occur, Michael notified the parties and Judge Copperthite, via letter, that he was unavailable on the selected date. ECF 62 at 1. In his letter, Michael also informed the Court that he would "be obtaining legal assistance to protect [his] rights as a non-party witness in this case." *Id.*

Compass moved for civil contempt sanctions against Michael "for his noncompliance with the subpoena" that Compass had served on him. ECF 63 ("Contempt Motion"), at 1. Compass asked the Court to "require" Michael "to produce *all* responsive documents" and "appear for his deposition within ten (10) days" of the court granting its motion for sanctions. *Id.* at 8 (emphasis in original). Additionally, Compass sought "daily monetary penalties" against Michael "until complete compliance is achieved." *Id.* And, Compass argued that "because Michael White is a judge and he should know better", the court "should consider imposing . . . . coercive incarceration." *Id.* Moreover, Compass requested reimbursement for "fees and expenses it has incurred in connection with pursuing Michael White's compliance with the subpoena." *Id.*

In addition, Compass served another subpoena on Michael. It requested an email from May 22, 2007, in its native format, to which the severance agreement was allegedly attached. ECF 89 at 4.

Michael subsequently retained counsel. ECF 68. Through counsel, Michael filed an opposition to the Contempt Motion. ECF 67. Counsel coordinated production of documents and the scheduling of the deposition. *Id.* at 8. Michael produced documents responsive to the subpoenas, including the May 2007 email. ECF 89 at 4–5.

Notably, Michael's counsel asked Compass to withdraw its Contempt Motion for sanctions, without prejudice, or at least stipulate to an extension of time to file the opposition to the motion until after Michael's compliance. ECF 67 at 9–10; *see also* ECF 67-4 at 2 (email from

Michael's counsel asking Compass to consider "withdraw[ing] without prejudice the motion for sanctions, or agree to an extension of time"). But, Compass refused. *See* ECF 67 at 10; ECF 67-4 at 2 (email from Stern to Michael's counsel, asserting that Compass would not "withdraw[] its motion for contempt . . . unless and until Michael White has (1) fully complied with the subpoena(s) which requires the production of all responsive documents and completing his deposition, and (2) paid the attorneys' fees and costs Compass Marketing has incurred in gaining his compliance").

Compass deposed Daniel on November 29, 2021. ECF 81 at 1. Michael was deposed on December 1, 2021. *Id.* During Michael's deposition, Michael's counsel claimed that Compass was improperly asking Michael about subjects "outside the scope of any of the Court's orders, outside the scope of . . . proper discovery," and he accused Compass of attempting to gather information "for other litigations or other investigations." ECF 81-1 at 99. Compass's counsel characterized Michael as an "evasive[]" witness. *Id.* at 100.

About one month after Michael's deposition, Compass sought to compel Michael and Daniel to return for another deposition. It filed "Defendant Compass Marketing's Motion To Compel Deposition Testimony Of Non-Parties Daniel White And Michael White And Extend Number Of Deposition Hours For Fact Witnesses" ("Motion to Compel"). ECF 81. Compass appended three exhibits to its filing, including Michael's deposition transcript. ECF 81-1; ECF 81-2; ECF 81-3. Compass argued that during the respective depositions of Daniel and Michael, Compass could not address relevant information because both deponents gave "evasive answers." ECF 81 at 1. Compass also claimed that "instructions by [Michael's] counsel not to answer" hindered his deposition. *Id.* Michael opposed the Motion to Compel, supplementing his filing with three exhibits. ECF 89; ECF 89-1 to ECF 89-3.

On February 3, 2022, Magistrate Judge Copperthite, to whom discovery disputes were referred (ECF 83), denied Compass's Motion to Compel and also denied Compass's Contempt Motion, as moot. ECF 92 at 1. As to the Motion to Compel, the court reasoned that Compass did not attempt to confer with counsel before filing its motion, in violation of Local Rule 104. *Id.* Judge Copperthite also expressed concern that "Michael is . . . a third party dragged into this litigation as a part of what appears . . . to be a fishing expedition by Compass." *Id.*

Two years later, in February 2024, the jury in the first trial rendered a verdict in favor of Boshea. ECF 246. About a month later, Compass filed "Defendant Compass Marketing, Inc.'s Renewed Motion For Judgment As A Matter Of Law, Or In The Alternative, Motion For A New Trial." ECF 255.

The next month, Michael's counsel withdrew from this case. ECF 266. Eight days later, Michael filed his Motion for Sanctions. ECF 269. He claims he incurred $44,237.97 in attorneys' fees to represent him in this action. *Id.* at 2; ECF 269-9 at 2, 4. Compass complains, *inter alia*, that Michael never served Compass with a copy of his Motion before filing it with the Court. ECF 272 at 8.

## II.    The Contentions

### A.  Michael's Allegations

Michael bases his request for sanctions primarily on three filings: (1) the Third Party Complaint (ECF 38); (2) the Contempt Motion (ECF 63); and (3) the Motion to Compel (ECF 81). ECF 269 at 3. Michael also seeks sanctions for "false claims" that Compass allegedly made to the Maryland Commission on Judicial Disabilities ("MCJD")[7] and for using his deposition as a

---

[7] Both Michael and Compass refer to this entity as the Maryland Judicial Disabilities Commission. ECF 269 at 4; ECF 272 at 16 n.14. Compass submitted, as an exhibit, what appears

"'fishing expedition[.]'"  *Id.* at 7; ECF 373 at 1–2.

With regard to the Third Party Complaint, Michael contends that Compass's behavior is sanctionable because Compass "attempted to drag [him] further into this *Boshea* litigation through a thinly veiled (and false) 'John Doe' Counterclaim and Third-Party Complaint."  ECF 269 at 3 (citing ECF 38).  Michael describes the claims in the Third Party Complaint as "nonsense . . . accusations."  *Id.*  He characterizes as a falsehood the portion of the Third Party Complaint that describes Boshea conspiring with a third party "to 'receive additional 'off pay roll payments' in bi-weekly increments of $350 . . . which Boshea was not entitled to receive.'"  *Id.*  According to Michael, "Compass later admitted that John [White] did authorize the payments" but nonetheless kept the "charade up" by failing to withdraw the Third Party Complaint until "the eve of [] trial[.]"  *Id.*  Further, Michael asserts that Compass filed the Motion to Compel and the Contempt Motion in "retribution for Movant's exposing illegal conduct by Compass and their counsel and preparation for a companion lawsuit against" Michael (referencing the *Flywheel* Case).  *Id.* at 3.

As to his deposition, Michael contends that its "purpose was not to develop information in *Boshea* (ECF 092) [sic] but rather to create the false report to the [MCJD] and also to fabricate a basis for" the *Flywheel* Case.  *Id.* at 4.  Michael recounts that, "immediately after" his deposition, White and Stern "delivered a copy of the transcript" of his deposition to the MCJD.  *Id.*[8]  He

---

to be a copy of a Reprimand issued by the "Maryland Commission on Judicial Disabilities."  ECF 272-1.

[8] Michael makes conflicting assertions as to Ms. Yeung's involvement in the alleged circulation of his deposition transcript.  *Compare* ECF 269 at 4 ("Immediately after conducting Movant's deposition, John and Mr. Stern delivered a copy of the transcript to the Maryland Judicial Disabilities Commission") *with* ECF 273 at 5 ("Before the ink was dry on Movant's deposition transcripts, John and Mr. Stern and Ms.Yueng [sic] had sent them to their favorite tabloid and the Maryland Judicial Disabilities Commission, exposing their true corrupt motive").  For purposes of

contends that the MCJD "found that the evidence did *not* support Mr. Stern's corrupt allegations of lack of candor during movant's *Boshea* deposition." ECF 273 at 4 (emphasis in original). Michael also alleges that White and Stern shared Michael's deposition transcript with "their favorite tabloid" to "destroy and discredit Movant for having exposed their Ponzi scheme." *Id.* at 5.

In addition, Michael alleges that the filings against him were "knowingly authorized and filed in bad faith" by the Firm "to influence" concurrent litigation involving Compass. ECF 367 at 2. Specifically, Michael references litigation in the Circuit Court for Anne Arundel County, *Compass Mktg., Inc. v. Daniel White, et al.,* 02-C-23-000601 ("Maryland Case"), which was dismissed on August 20, 2025, and the *Flywheel* Case. According to Michael, Stern and the Firm represented Compass in both the *Flywheel* Case and in the Maryland Case. ECF 373 at 6.

In its reply, Compass asserts that Stern "has not represented Compass" in the Maryland Case "for more than nine months." ECF 368 at 3. The Docket for the Maryland Case names Kagan Stern Marinello & Beard, LLC (Compass's counsel in this case) as Compass's representatives between March 2023 and October 2024. Maryland Case, Docket, https://perma.cc/EYR9-E2BD. Then, beginning in November 2024, the Smithey Law Group, LLC ("Smithey") entered an appearance as Compass's counsel. *See id.*

However, according to Michael, "Attorney Smithey and her firm were the scribes" of Compass's actions in the Maryland Case, and "Attorney Stern has always been the author." ECF 373 at 6. Michael notes that the state court dismissed the Maryland Case with prejudice; the Circuit Court granted sanctions against Compass; and Smithey has withdrawn as Compass's counsel in

---

this analysis, I will refer only to White and Stern, because Michael has consistently claimed that they wrongfully circulated his deposition transcript.

that case.  ECF 367 at 1–2; *see also* Maryland Case, Docket, https://perma.cc/EYR9-E2BD.

Michael maintains that the *Boshea* case and the *Flywheel* Case "share a common scheme and

purpose—retribution against Movant for exposing their unlawful activity."  ECF 373 at 7.

In his Motion and subsequent filings, Michael makes many allegations about the

relationship between himself, White, Compass, and Stern, which either predate this case or have

little, if anything, to do with it.  For example, Michael claims that Compass's campaign of

retribution against him began in 2018, when he allegedly "reported John [White] and his

associates, including several attorneys, to the U.S. Securities Exchange Commission for using

Compass as a shell to operate a Ponzi scheme[.]"  ECF 269 at 3.  According to Michael, White

and Stern used Compass "as cover" for other "fraudulent business activities[.]"  ECF 273 at 1.

Movant asks this Court to consider a variety of additional actions he alleges Compass has

undertaken that he asserts are proof of Compass's "'never-ending campaign to annoy and harass'"

him, including, ECF 373 at 4–5 (cleaned up):

> [Compass's] [r]equest to depose Movant's son, also denied as frivolous . . . .
> Inclusion of Movant's wife on Compass' witness list . . . . False allegations to
> numerous administrative bodies and law enforcement agencies, which all deemed
> them to be without merit . . . . Bogus federal 'RICO' lawsuit . . . . Bogus Maryland
> $24,000,000,000 'RICO' lawsuit . . . . Bogus actions in Chicago probate court and
> despicable false allegations against Ashley Boshea . . . . [and] bogus allegations
> against David Boshea in their garbage 'RICO' lawsuit filed in Maryland, in which
> all counts against all parties have been dismissed with prejudice, and which four
> attorneys were granted 'emergency' leave to withdraw so as not to continue to
> violate the Maryland Attorney Rules of Professional conduct and/or other laws.

As explained in more detail, *infra*, the Rule 11 "safe harbor" provision requires a movant

to "serve the Rule 11 motion on the opposing party at least twenty-one days before filing the

motion with the district court[.]"  *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d

385, 389 (4th Cir. 2004).  Further, "sanctions may be sought only if the challenged pleading is not

13

withdrawn or corrected [by the opposing party] within twenty-one days after service of the motion[.]" *Id.*

Michael argues that his Rule 11 motion is in compliance with the "safe harbor" provision because he "notified Compass, Mr. Stern, Ms. Yueng[sic], their law firm, and the Court of the corrupt motives behind these subpoenas and nonsense counterclaims as soon as they were filed." ECF 273 at 4. Michael also claims that he "repeatedly attempted to discourage Compass and their counsel from pursuing them and requested this Court to intervene at the outset of this litigation." *Id.* He points to his motion to quash (ECF 33), the motion to quash filed by DiPaula (ECF 36), Compass's opposition to Michael's motion to quash (ECF 42), and Daniel's reply in support of his motion to quash (ECF 44). ECF 273 at 4.

Further, Michael maintains that his Motion is timely because "John [White], Mr. Stern, and his law firm . . . have never ceased" exploiting "the *Boshea* case as part of their corrupt attempts to destroy/discredit Movant[.]" *Id.* Michael argues that Compass's choice not to withdraw the Third Party Complaint "until the last minute" is proof of Compass's malevolence. *Id.* Michael also contends that "while paying his own attorneys," he "has also paid the enormous legal bills of Mr. Stern, Ms. Yueng[sic], and their dozens co-counselors through funds that they pilfered with John [White] from the Compass accounts." *Id.* at 3.

Movant asks the Court to award "attorneys' fees, costs and damages incurred in connection with this action, and in bringing this Motion, and associated damages, and any further appropriate remedies." ECF 373 at 7. Michael also asks the Court to "consider sanctions due to the Court for John White and Mr. Stern spending all these months and years pretending they were legitimate representatives of Compass[.]" ECF 273 at 5.

### B. Compass's Response

Compass casts Michael's Motion as the latest installment in a "never-ending campaign to annoy and harass Compass Marketing and its counsel so that they waste time and resources responding to a [sic] frivolous filings, including the instant Motion." ECF 368 at 1. Compass asks the Court to "award Compass Marketing the attorneys' fees and costs it incurred having to respond to such utter nonsense[.]" *Id.* at 4.

As to alleged procedural flaws, Compass argues that Michael's request for sanctions under Rule 11 should be denied because he did not comply with the "safe harbor" provision of Rule 11. ECF 272 at 7. Additionally, Compass argues that Michael's Motion is untimely because it was filed after the jury from the first trial issued its verdict in 2024. *Id.* at 9–10. Compass also maintains that "Rule 11 does not apply to discovery motions" and therefore the Court cannot issue Rule 11 sanctions against Compass for filing a Motion to Compel. *Id.* at 11. Moreover, Compass asserts that Michael's Motion is "baseless" because none of the challenged conduct is sanctionable. *Id.* at 13.

As to the Third-Party Complaint, Compass observes that Michael "does not identify any misconduct associated with this filing or how/why it is sanctionable." *Id.* at 14. Compass points out that Michael did not "articulate how the Third-Party complaint allegedly implicated him improperly" and characterizes his accusation as a "stunning admission that tacitly implicate[s]" Michael "as one of the John Doe(s) defendants." *Id.* Moreover, Compass posits that its decision to withdraw its Third Party Complaint "exemplifies ethical conduct once a lawyer determines claims that have been filed cannot be proven." *Id.*

In defense of Compass's Contempt Motion, Compass relies on the premise that Michael "was involved in this litigation because Boshea identified him as a fact witness[.]" *Id.* at 15.

Compass argues: "[T]his Court specifically found that Michael White was relevant to this litigation—based on Boshea's allegations, including in Boshea's answers to interrogatories—and, thus, ordered Michael White to be deposed and produce documents responsive to the subpoena that was served on him." *Id.* Compass maintains that "this alone demonstrates unequivocally" that the Contempt Motion (ECF 63) "does not reflect sanctionable conduct." ECF 272 at 15.

With respect to Compass's unsuccessful Motion to Compel, Compass claims it sought this remedy "because, among other things, Daniel and Michael White were evasive in their depositions and did not answer numerous questions in an effort to 'run out the clock' at their depositions." *Id.* (citing ECF 81 at 7). Moreover, Compass emphasizes that its Motion to Compel was denied on procedural grounds, not on a finding of bad faith. ECF 272 at 16. In particular, Compass points out that Judge Copperthite denied the Motion to Compel because Compass failed "to confer with counsel before filing" the motion. *Id.*; ECF 92 at 1.

Regarding Michael's references to the *Flywheel* Case and the Maryland Case, Compass declines to "dignify any of these allegations with a substantive response, other than to clearly and unequivocally deny any wrongdoing[.]" ECF 272 at 18. As to Michael's claims regarding the MCJD, Compass responds in a footnote. *Id.* at 16 n.14. According to Compass, the MCJD "found" that Michael did not "answer numerous questions of him in an honest and forthright manner." *Id.*; *see also* ECF 272-1.

Compass raises the alarm bell that many of the exhibits Michael attached to his Motion "involve privileged communications between Compass Marketing and its counsel or other entities and their counsel or potential counsel." ECF 272 at 18. Compass asks the Court to require Michael to "answer under oath" how he was able "to obtain these privileged communications and why a judge would try to weaponize and use . . . . privileged communications that he knows he cannot

possess or use." *Id.* at 19.  Compass goes so far as to allege that Michael "could be found liable under the Electronic Communications Privacy Act ('ECPA'), 18 U.S.C. § 2510, *et seq*." for his possession of these documents.  *Id*.

### III.    Standing

As noted, Michael is not a party to the *Boshea* case.  Yet, he has moved for sanctions under Fed. R. Civ. P. 11; 28 U.S.C. § 1927; and the court's inherent authority.  ECF 269 at 1.  Usually, "non-parties to a case in litigation cannot bring motions for sanctions." *Hochen v. Bobst Grp., Inc.*, 198 F.R.D. 11, 14 (D. Mass. 2000), *aff'd sub nom. Nyer v. Winterthur Int'l*, 290 F.3d 456 (1st Cir. 2002); *see also* 2 James Wm. Moore *et al*., Moore's Federal Practice § 11.22 (LEXIS through Sept. 2025) ("Ordinarily, a non-party may not move for sanctions.")  However, the non-party status of a movant is not dispositive in determining whether a movant has standing to seek sanctions. Indeed, Compass does not contest Michael's standing.

Nonetheless, the Court must assure itself that Michael has standing.  The matter of standing is a "'threshold jurisdictional question.'"  *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017) (quoting *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001)); *see also Albert v. Lierman,* 152 F.4th 554, 559 (4th Cir. 2025) ("[S]tanding and ripeness are threshold jurisdictional issues to be decided before a court considers the merits of a case[.]"); *N. Virginia Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 488 (4th Cir. 2025) (describing standing as the "threshold question").  "[T]he standing inquiry asks whether a plaintiff ha[s] the requisite stake in the outcome of a case . . . ."  *Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir. 2018).

Neither 28 U.S.C. § 1927 nor Rule 11 expressly addresses who can bring a motion for sanctions.  Some courts have granted non-party motions for sanctions brought under 28 U.S.C. § 1927 without conducting a standing analysis.  *See, e.g.,  Gov't of Virgin Islands v. Bryan*, C-

17

1989-129, 1990 WL 10656627, at *1 (D.V.I. Feb. 20, 1990) (granting a request for sanctions under 28 U.S.C. § 1927 brought by a non-party who incurred attorneys' fees to oppose a motion for his deposition); *Hochen,* 198 F.R.D. at 14 (observing that both Rule 11 and § 1927 are meant to deter satellite sanctions litigation, but analyzing standing by only citing cases under Rule 11); *see also* 100 Causes of Action 2d 421 § 19 (2025) (describing how "nonparty witnesses contesting a subpoena or other order regarding their testimony" can request sanctions under § 1927) (citing *Bryan*, 1990 WL 10656627).

When sanctions are sought under Rule 11 and the court's inherent authority, courts have conducted the standing analysis under Rule 11.  *See, e.g., Drake v. U.S. Freedom Cap., LLC*, SDG-20-03935, 2021 WL 3566859, at *8, *10–11 (N.D. Ga. Aug. 12, 2021) (first analyzing whether a non-party, who was an unserved defendant, had standing to pursue sanctions under Rule 11, and then considering whether the court should use its inherent authority to impose sanctions); *see also Matter of Search Warrant*, SALM-MJ-00691, 2017 WL 4418858, at *2 (D. Conn. Oct. 5, 2017) (finding that "movant, who is not a party to this matter, has no standing to seek sanctions," citing a case denying standing under Rule 11, and then separately determining that "the movant has not established any basis pursuant to which the Court may properly invoke [its inherent] authority" to issue sanctions).

In *Hochen*, 198 F.R.D. at 15, the Massachusetts district court summarized the state of the law, as follows:  "While perhaps not exact, there is a line which can be drawn . . . . Those non-parties who are brought in or are attempted to be brought into litigation involuntarily by one process or another have standing.  Other nonparties do not."

In *Port Drum Co. v. Umphrey,* 852 F.2d 148, 150–51 & nn. 2–3 (5th Cir. 1988), the Fifth Circuit adopted the position that Rule 11 is designed to regulate proceedings among parties already

before the district court in a particular action.  However, the court noted, *id.* at 150 n.2, that a non-party witness may be permitted to make a Rule 11 motion under certain circumstances.  For example, the court suggested that it would be appropriate for a non-party to challenge ongoing proceedings if the non-party was subject to a civil contempt order.  *Id.*; *see also Bryan*, 1990 WL 10656627, at *1 (granting a request for sanctions under 28 U.S.C. § 1927 sought by a non-party who incurred attorneys' fees to oppose a motion for his deposition).

Courts have also found that non-parties who have been subpoenaed have standing to seek Rule 11 sanctions.  *See* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, Civil § 1337.1 (4th ed. Apr. 2021) ("As a general rule, only parties to an action and certain other participants (such as subpoenaed witnesses or nonparties resisting impleader) in the litigation have standing to move for sanctions under Rule 11.")  For example, in *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1170–71 (D.C. Cir. 1985), a non-party, the former CIA Director Richard Helms, appeared in response to a deposition subpoena but refused to consent to videotaping of the deposition.  On this basis, CBS sought to hold Helms in contempt, but Helms successfully defended against the motion.  *Id.* at 1171.  Subsequently, Helms sought sanctions against CBS under Rule 11, Fed. R. Civ. P. 37, and § 1927.  *Id.*  The district court denied the motion and Helms appealed.  *Id.* at 1171–72.

The D.C. Circuit determined that the district court erred in denying the Rule 11 motion. *Id.* at 1173.  In the view of the *Westmoreland* Court, *id.* at 1168, non-party status alone does not bar an individual from seeking Rule 11 sanctions.  To the contrary, a non-party has standing to bring a Rule 11 motion when the movant, a subpoenaed witness, was subject to an "ill-founded" petition to be held in contempt of court.  *Id.*  However, the D.C. Circuit affirmed "the district court's denial of an award of costs and attorneys' fees" under Fed. R. Civ. P. 30(g) because Helms

was a non-party. *Id.* at 1178. As the court explained, Rule 30(g) "provides for an award of attorneys' fees and expenses to the *party* attending a deposition[.]" *Id.* (emphasis in original). But, the court's analysis of Rule 11 did not include the same limitation.

In *New York News, Inc. v. Kheel*, 972 F.2d 482, 484 (2d Cir. 1992), the Second Circuit affirmed a district court's decision that Kheel, as a non-party, lacked standing to move for Rule 11 sanctions. This case arose out of a contentious strike between the newspaper, the *New York Daily News* ("*Daily News*"), and numerous trade unions, representing newspaper employees. *Id.* The *Daily News* and its parent company sued these unions. They claimed that the unions had "participated in a criminal conspiracy" either to force the newspaper to settle the strike "on unfavorable terms" or "to coerce" its publisher to sell the *Daily News* "to a group of private investors with members of the unions representing the News' striking workers receiving a financial interest in the sale." *Id.* Although Kheel was not a defendant in the case, he was named repeatedly in the complaint as an alleged participant in the buyout plan. *Id.*

The complaint asserted that "'Kheel–operating behind a façade of respectability–embarked upon a plan and scheme to personally benefit'" from the violent strike tactics "'to coerce the'" publisher of the *Daily News* "'into selling the'" newspaper "'to a group of unidentified private investors represented by him (and possibly including Kheel himself) and the unions.'" *Id.* (quoting the complaint). Pursuant to Fed. R. Civ. P. 12(f), Kheel sought to intervene "to strike from the complaint the allegations that referred to him." *Id.* at 485. Before the district court ruled on Kheel's motion to intervene, the parties settled. *Id.* Kheel then "requested that the district court treat his earlier motion [to intervene] as a motion for Rule 11 sanctions, or in the alternative, that the district court impose sanctions on its one initiative." *Id.*

Kheel argued that "as an aggrieved non-party and as the target of baseless allegations in the complaint" he had standing to bring a Rule 11 motion. *Id.* at 487. The Second Circuit disagreed. *Id.* The court distinguished *Westmoreland,* 770 F.2d at 1168, on the ground that "a non-party witness defending against a petition for civil contempt is in a position different from other non-parties", at least partly because "a non-party witness can appeal from an adjudication of contempt[.]" *Kheel*, 972 F.2d at 488.

In its analysis, the Second Circuit relied on the Advisory Committee's Notes to the 1983 amendment to Rule 11. *Id.* The Notes specify that a "*party* seeking sanctions should give notice to the court and the offending party." Fed. R. Civ. P. 11 Advisory Committee Notes (1983) (emphasis added). Additionally, the Committee Notes justify the court's authority to levy sanctions as a mechanism "to overcome the traditional reluctance of courts to intervene unless requested by one of the *parties.*" *Id.* (emphasis added). Therefore, the *Kheel* Court reasoned: "Although the language of Rule 11 does not address the issue of who may move for sanctions, the language used in the Advisory Committee Notes indicates that it is the parties who should move for sanctions." *Kheel*, 972 F.2d at 488.

After canvassing the case law, several scenarios emerge by which the general rule that non-parties do not have standing to bring a Rule 11 motion for sanctions does not apply. First, if a party seeks to add a non-party to the case or the non-party is an unserved defendant, then that non-party has standing to bring a Rule 11 motion. *See Hochen,* 198 F.R.D. at 15 (finding that the movant had standing to seek a Rule 11 motion where the plaintiffs had moved to add the movant to an amended complaint); *see also Greenberg v. Sala,* 822 F.2d 882, 885 (9th Cir. 1987) (ruling that movants had standing because they had been named as defendants in the complaint but had not been served); *Drake*, 2021 WL 3566859, at *8 (finding that a non-party who was a "named

but unserved Defendant, has standing to seek sanctions").  However, a non-party's name appearing repeatedly in a complaint is not enough to give that non-party standing.  *See Kheel*, 972 F.2d at 489 (concluding that simply being named in the complaint does not confer standing on a non-party).

Michael became embroiled in this litigation when Compass subpoenaed him for documents and to depose him.  *See* ECF 33-1 at 9–19.  Then, Compass asked this Court to hold Michael in civil contempt.  ECF 63.  Moreover, like the movant in *Westmoreland*, 770 F.2d at 1168, Compass involved Michael in this litigation by seeking to use this Court's contempt power to sanction him. Therefore, despite Michael's non-party status, he clearly has standing to bring a Rule 11 motion based on these allegations.

Movant also contends that Compass "attempted to drag" him into the litigation through a "thinly veiled (and false) 'John Doe' Counterclaim and Third-Party Complaint" (ECF 38).  ECF 269 at 3.  The Third Party Complaint contains barely any detail about the John Doe(s) who allegedly conspired with Boshea.  *See* ECF 38.  Nor is Michael mentioned in the Third Party Complaint. Therefore, Michael does not have standing to bring a Rule 11 motion on this basis.

## IV.    Legal Standards for Sanctions

### A.  Fed. R. Civ. P. 11

Under Fed. R. Civ. P. 11(b), an attorney who submits a filing with the court certifies that the submission:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual

contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

The primary purpose of Rule 11 "'is to deter future litigation abuse.'" *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998) (citation omitted); *see also Moody v. Arc of Howard Cty., Inc.*, 474 Fed.Appx. 947, 950 (4th Cir. 2012) ("The primary purpose of Rule 11 is to punish violators and deter parties and their counsel from pursuing unnecessary or unmeritorious litigation."); *In re Kunstler,* 914 F.2d 505, 516 (4th Cir. 1990) ("[A] complaint containing allegations unsupported by *any* information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to [Rule 11] sanctions.") (emphasis in original); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ("[T]he central purpose of Rule 11 is to deter baseless filings in district court[.]")  In the *Sargent* case, the Fourth Circuit described the purposes of Rule 11 as  "remediation of the harm caused by the Rule 11 violation, for example by compensating the victim for attorney's fees expended in responding to the frivolous claim; punishment of the person or entity responsible for the violation; and enhancement of judicial administration." *In re Sargent*, 136 F.3d at 352–53.

Rule 11(c)(1) empowers the court to "impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation," as long as the offending party has "notice and a reasonable opportunity to respond[.]"  The court may award "the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2).  However, the choice of sanction "must be limited to what suffices to deter repetition of the conduct[.]" Fed. R. Civ. P. 11(c)(4).  And, "a district court must judge the conduct of counsel under an objective standard of reasonableness[.]" *In re Kunstler,* 914 F.2d at 518.

Rule 11(c)(2) provides (emphasis added):

A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). *The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service* or within another time the court sets.

This rule is known as the "safe harbor" provision. *Colter v. Omni Ins. Co.*, 718 F. App'x 189, 192 (4th Cir. 2018) (per curiam). "The requirements of the rule are straightforward: The party seeking sanctions must serve the Rule 11 motion on the opposing party at least twenty-one days before filing the motion with the district court, and sanctions may be sought only if the challenged pleading is not withdrawn or corrected within twenty-one days after service of the motion." *Brickwood Contractors, Inc.*, 369 F.3d at 389 (citing Fed. R. Civ. P. 11(c)(1)(A), now codified at Fed. R. Civ. P. 11(c)(2)).

In effect, Rule 11's safe harbor provision "establishes conditions precedent to the imposition of sanctions . . . . If those conditions are not satisfied, the Rule 11 motion for sanctions may not be filed with the district court. If a non-compliant motion nonetheless is filed with the court, the district court lacks authority to impose the requested sanctions." *Brickwood Contractors, Inc.*, 369 F.3d at 389. The rule "provides a 'safe harbor' only if the party against whom sanctions are sought in fact has an opportunity to withdraw the challenged pleading." *Id.* at 398. But, "failure to comply with the safe-harbor provisions would have no effect on the court's authority to *sua sponte* impose sanctions under Rule 11(c)(1)(B) [now codified at Fed. R. Civ. P. 11(c)(1), (c)(3)], to award costs pursuant to 28 U.S.C.A. § 1927, or to impose sanctions within its inherent power[.]" *Id.* at 389 n.2.

The "safe harbor" period begins to run when service of the proposed Rule 11 motion has been made upon the party against whom sanctions are sought. Fed. R. Civ. P. 11 Advisory

Committee Notes (1993).  Notably, informal notice of a potential Rule 11 violation is "insufficient to trigger the beginning of the twenty-one day safe harbor period."  5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, Civil § 1337.2 (4th ed. Apr. 2021).  Thus, a letter informing the other party of an intent to file for Rule 11 sanctions is not sufficient to satisfy the "safe harbor" provision.  *See*, *e.g.*, *Triantos v. Guaetta & Benson, LLC*, 52 F.4th 440, 447 (1st Cir. 2022) (explaining that "informal notice" to another party about a forthcoming Rule 11 motion "is not a substitute for actual service of the motion"); *see also Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 767–69 (6th Cir. 2014) (noting that Rule 11 "specifically requires formal service of a motion . . . at least twenty-one days before filing it with the court" and finding that a party's letter expressing "intent to pursue sanctions" did not satisfy the "safe harbor" provision).

To impose sanctions "where there was not even an attempt to comply with the requirements of the safe-harbor provisions, would surely frustrate these important goals. . . ."  *Brickwood Contractors, Inc.*, 369 F.3d at 398.  Indeed, if a movant fails to comply with the "safe harbor" provision, "the district court lacks authority to impose the requested sanctions."  *Id.* at 389. The Fourth Circuit has made clear that, "[w]hen a Rule 11 movant fails to serve the other party twenty-one days prior to filing a motion for sanctions with the court, sanctions should be denied."  *Truelove v. Heath*, 86 F.3d 1152, 1996 WL 271427, at *2 (4th Cir. 1996) (per curiam) (unpublished table decision); *see Elliott v. Tilton,* 64 F.3d 213, 216 (5th Cir.1995); *see also Ridder v. City of Springfield*, 109 F.3d 288, 295 (6th Cir. 1997) (stating that if the court "disposes of the offending contention before the twenty-one day 'safe harbor' period expires, a motion for sanctions cannot be filed with or presented to the court");  *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1329 (2d Cir. 1995) (reversing a district court's issuance of Rule 11 sanctions "particularly" because the offending party had not been given the opportunity to withdraw his

filing, guaranteed by the twenty-one day "safe harbor" period); *Clehm v. BAE Sys., Inc.,* RSB-16-00012, 2018 WL 3978183, at *3 (W.D. Va. May 9, 2018) ("Rule 11 sanctions are not available when the moving party waits to serve the motion until after the final disposition of the claim between the parties."), *report and recommendation adopted,* 2018 WL 3978995 (W.D. Va. Aug. 20, 2018).

### B. 28 U.S.C. § 1927

Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." When awarding the movant expenses, costs, or attorneys' fees, the court must "connect the costs wrongfully incurred as a result of the sanctioned attorney's conduct to the amount awarded to the moving party." *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 520 (4th Cir. 2018).

Section 1927 applies only to attorneys, not parties. *See Baker v. Booz Allen Hamilton, Inc.*, RWT-06-889, 2008 WL 11425679, at *2 (D. Md. Oct. 31, 2008), *aff'd*, 358 F. App'x 476 (4th Cir. 2009). This provision is "unconcerned with the merits of the lawsuit" and is instead focused on the "'conduct of the litigation'" and with "'limiting the abuse of court processes.'" *E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012) (citations omitted); *see also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 762 (1980). The statute "does not distinguish between winners and losers or between plaintiffs and defendants, and is indifferent to the equities of a dispute and to the values advanced by the substantive law." *Roadway Exp., Inc.*, 447 U.S. at 753.

The statute "addresses a narrower field of conduct than that which may be addressed under the court's inherent authority because § 1927 permits sanctions only for bad-faith conduct that

wrongfully multiplies proceedings." *Six*, 891 F.3d at 520. To impose sanctions under § 1927, the court must find that the attorney acted to multiply the proceedings unreasonably and vexatiously, the attorney acted in bad faith, and that there is a "causal link between wrongful conduct and an unreasonable and vexatious multiplication of proceedings." *Id.*; *see also Brubaker v. Richmond*, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991); *Callender v. Callender*, TDC-17-3249, 2022 WL 2835682, at *4 (D. Md. July 20, 2022); *EghrariSabet v. ENT, Allergy & Asthma Ctr., PC*, GJH-19-2055, 2020 WL 6063463, at *2 (D. Md. Oct. 14, 2020).

The statutory provision is "intended to sanction conduct Rule 11 does not reach; *i.e.,* protracting or multiplying the litigation to run up the opposing party's costs, remedied by awarding *excess* attorneys' fees and costs." *Bakker v. Grutman,* 942 F.2d 236, 242 (4th Cir. 1991) (emphasis in original). However, sanctions under § 1927 "appl[y] . . . to misconduct by an attorney in the course of 'proceedings' in a 'case' before the court, not misconduct that occurs before the case appears on the federal court's docket." *Bender v. Freed*, 436 F.3d 747, 751 (7th Cir. 2006). So, an attorney who files a meritless claim may not be sanctioned under 28 U.S.C. § 1927 if he does not "*multiply* [the] proceedings." *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999) (emphasis in original).

Notably, a finding of "[b]ad faith on the part of the attorney is a precondition to imposing fees under § 1927." *Great Steaks, Inc.*, 667 F.3d at 522; *see Zuraf v. Clearview Eye Care, Inc.*, RJ-15-559, 2016 WL 4231704, at *3 (E.D. Va. Aug. 9, 2016) (describing "a 'finding of bad faith'" as "'a necessary precondition to imposition of fees on an attorney under § 1927'") (citation omitted); *see also Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 276 (4th Cir. 2022) ("Sanctions under 28 U.S.C. § 1927 . . . require severe misconduct reflecting clear bad faith[.]") The bad faith standard is met "'when the attorney's actions are so completely without merit as to

require the conclusion that they must have been taken for some improper purpose such as delay.'" *Caseres v. S&R Mgmt. Co.*, AW-12-1358, 2013 WL 5781582, at *2 (D. Md. Oct. 24, 2013) (quoting *Shank v. Eagle Techs., Inc.*, RWT-10-2231, 2013 WL 4442033, at *2 (D. Md. Aug. 15, 2013) (internal quotation marks omitted)).

"'Bad faith is 'not simply bad judgment or negligence but implies the conscious doing of a wrong because of a dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.'" *Akintola v. Backgroundchecks.com, LLC*, GLH-21-897, 2022 WL 2818948, at *6 (D. Md. July 19, 2022) (quoting *Shah v. Collecto, Inc.*, DKC-2004-4059, 2005 WL 2216242, at *14 (D. Md. Sept. 12, 2005) (cleaned up). Indeed, cases where the court has issued sanctions under § 1927 often involve "fraud, deceit, misrepresentation, harassment, and unethical conduct." *Harvey*, 48 F.4th at 281; *see, e.g., Davis v. Home Depot U.S.A., Inc.*, PJM-09-162, 2010 WL 1245775, at *3–4 (D. Md. Mar. 26, 2010) (imposing § 1927 sanctions when a lawyer relied on forged documents and perjured testimony in opposing summary judgment); *see also Shank*, 2013 WL 4442033, at *9–14 (awarding § 1927 sanctions for refusal of plaintiffs' counsel to settle or voluntarily dismiss plaintiffs' claims when, at the end of discovery and after entry of partial summary judgment against plaintiffs, counsel "knew or should have known [that] their remaining clients' claims lacked merit" and that those claims were of "nominal value[]"), *report and recommendation adopted*, 2013 WL 5487865 (D. Md. Sept. 30, 2013).

For example, in *Six,* 891 F.3d at 517–18, the Court upheld the award of sanctions against a party who had hidden "'a relevant and potentially dispositive document from the Court'" for almost two years, misleading the court, multiplying proceedings, and wasting court resources as a result. Similarly, the Fourth Circuit has upheld the imposition of sanctions on a party who filed

"a baseless summary judgment motion on a count he knew he could not substantiate" and who "at the same time" made "intentional misrepresentations for the purpose of obtaining a settlement[.]" *Sweetland v. Bank of Am. Corp.*, 241 F. App'x 92, 97 (4th Cir. 2007). The *Sweetland* Court explained that for a motion to be sanctionable under § 1927, it must be "so baseless in fact and law" that it has clearly been "filed in bad faith[.]" *Id.* at 98–99.

### C. Inherent Authority

A court has the inherent authority to impose sanctions, so as "to preserve the integrity of the judicial process", *In re Jemsek Clinic, P.A.*, 850 F.3d 150, 157 (4th Cir. 2017), and "to punish bad-faith conduct intended to delay or disrupt the course of litigation or to impede enforcement of a court order." *Life Techs. Corp. v. Govindaraj*, 931 F.3d 259, 267 (4th Cir. 2019); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); *Buffington v. Baltimore Cty.*, 913 F.2d 113, 132 n.15 (4th Cir. 1990). Indeed, the power to impose sanctions is central to the judiciary's role. "Without it the 'judicial Power' would be no 'Power' at all. It would be but a shell, lacking the substance courts need to protect their role within our constitutional structure." *Keyes L. Firm, LLC v. Napoli*, 120 F.4th 139, 143 (4th Cir. 2024).

When the court is "acting under its inherent authority [it] may impose sanctions for any 'conduct utterly inconsistent with the orderly administration of justice.'" *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 375 (4th Cir. 2013) (quoting *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 912 (9th Cir. 1986)). The court may levy sanctions based on its inherent authority when it finds that parties have acted in bad faith by engaging in fraud or "disrupting the litigation or hampering enforcement of a court order." *Walker v. Petsense, LLC*, 2024 WL 1155765, at *4 (4th Cir. Mar. 18, 2024) (quoting *Chambers*, 501 U.S. at 46); *see Roadway Exp., Inc.*, 447 U.S. at 767 (explaining that "a finding" of "bad faith" must "precede any sanction under

29

the court's inherent powers"); *Harvey*, 48 F.4th at 276 (recognizing that sanctions under court's inherent authority require bad faith); *see Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("The key to unlocking a court's inherent power is a finding of bad faith.").

The "degree of bad faith required to justify sanctions pursuant to the Court's inherent authority is whether the filings 'involve fraud, deceit, misrepresentation, harassment and unethical conduct.'" *United States v. Allergan, Inc.*, SAG-17-00668, 2024 WL 2882125, at *5 (D. Md. May 30, 2024) (quoting *Harvey*, 48 F.4th at 281). The power extends to punish "contumacious conduct so expressly designed to undercut, or even sabotage, [a court's] adjudicative authority." *Keyes*, 120 F.4th at 143.

"Under the inherent power, a court may issue orders, punish for contempt, vacate judgments obtained by fraud, conduct investigations as necessary to exercise the power, bar persons from the courtroom, assess attorney's fees, and dismiss actions." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). Because "orders dismissing actions are the most severe, such orders must be entered with the greatest caution." *Id.* Notably, a court "must consider the whole of the case in choosing the appropriate sanction." *Projects Mgmt. Co.*, 734 F.3d at 375.

Courts also possess the inherent power to assess attorney's fees, "even though the so-called 'American Rule' prohibits fee shifting in most cases." *Chambers*, 501 U.S. at 45. In particular, "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 45–46, (cleaned up) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59, (1975)); *see Akira Techs., Inc. v. Conceptant, Inc.*, 773 F. App'x 122, 125 (4th Cir. 2019) (per curiam) (same); *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 321 (4th Cir. 2003) (citing *Chambers*, 501 U.S. at 45–46). The assessment of attorney's fees may be warranted "if a court finds 'that fraud has been practiced upon it, or that the very temple

of justice has been defiled,'" or "when a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'" *Chambers*, 501 U.S. at 46 (citations omitted).

In *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017), the Supreme Court clarified that a sanction assessing attorney's fees for bad faith or like conduct "must be compensatory rather than punitive in nature." The Court explained: "In other words, the fee award may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Id.* (citation omitted). To order a fee award as punishment rather than compensation, "a court would need to provide procedural guarantees applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof." *Id.*; *see also Lu v. United States*, 921 F.3d 850, 860–62 (9th Cir. 2019) (discussing and applying *Goodyear*); *Mulugeta v. Ademachew*, LO-17-649, 2019 WL 7945712, at *2–3 (E.D. Va. Nov. 6, 2019) (same).

Even when such a standard of proof is satisfied, the moving party may recover "'only the portion of his fees that he would not have paid but for' the misconduct." *Goodyear*, 581 U.S. at 109 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)). And, the fee award "must be reasonably necessary and proportionate to defend against the misconduct." *Keyes Law Firm, LLC*, 120 F.4th at 145.

The Supreme Court has cautioned: "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44; *see also Shaffer Equip. Co.*, 11 F.3d at 461 ("Because the inherent power is not regulated by Congress or the people and is particularly subject to abuse, it must be exercised with the greatest restraint and caution, and then only to the extent necessary.")

The Seventh Circuit has elaborated.  In *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.*, 313 F.3d 385, 390–91 (7th Cir. 2002), Judge Posner, writing for the Court, stated (brackets added):

> The inherent authority of federal courts to punish misconduct before them is not a grant of authority to do good, rectify shortcomings of the common law . . . or undermine the American rule on the award of attorneys' fees to the prevailing party in the absence of statute . . . . [I]t is a residual authority, to be exercised sparingly, to punish misconduct (1) occurring in the litigation itself, not in the events giving rise to the litigation (for then the punishment would be a product of substantive law—designed, for example, to deter breaches of contract), and (2) not adequately dealt with by other rules, most pertinently here Rules 11 and 37 of the Federal Rules of Civil Procedure, which [the defendant] has not been accused of violating.

## V.    Discussion

### A. Procedural Issues

The Motion is not viable under Fed. R. Civ. P. 11(c)(2) because Michael failed to provide the requisite notice to Compass.  Moreover, his Motion was not timely filed.

### 1.    Rule 11 "Safe Harbor" Provision

As discussed, the Rule 11 "safe harbor" provision requires a movant to serve the opposing party with a copy of the Rule 11 motion at least twenty-one days before filing it with the district court.  *Brickwood Contractors, Inc.*, 369 F.3d at 389.  Further, the court cannot issue sanctions if the opposing party withdraws the challenged pleading within twenty-one days of receiving the motion.  *Id.*

Michael did not serve Compass with the Motion prior to filing the Motion with the Court. *See* ECF 273 at 4.  Nonetheless, he argues that he satisfied the "safe harbor" provision because he notified Compass and its counsel, as well as the Court, "of the corrupt motives behind these subpoenas and nonsense counterclaims as soon as they were filed. . . ." *Id.*  He adds, *id.*: "Movant identified these improper strategies and motives for the actions of Compass and their counsel,

repeatedly attempted to discourage Compass and its counsel from pursuing them, and requested the Court intervene at the outset of this litigation." *Id.*

To be sure, during the litigation, Michael vigorously challenged Compass's efforts to embroil him in the case. He opposed Compass's Contempt Motion. ECF 67. Michael also opposed Compass's Motion to Compel. ECF 89. In his opposition, he stated: "The discovery sought from, and to a large extent already obtained from, Michael is far beyond the claims and defenses in this case." *Id.* at 19. Understandably, Michael did not oppose the Third Party Complaint, because he was not named in it. *See* Docket.

But, accusatory statements or the filing of an opposition do not trigger the twenty-one day "safe harbor" provision. To satisfy the "safe harbor" provision, a movant must actually serve the offending party with a copy of the sanctions motion before filing it with the court. Other forms of protest do not suffice. The requirement of proper notice exists "[t]o stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule[.]" *See* Fed. R. Civ. P. 11. Advisory Committee Notes (1993).

Rule 11 contains clear procedural hurdles that restrict a movant's ability to seek sanctions. Michael did not serve Compass with his Motion before he filed it with the Court, as required. ECF 272 at 8. On the basis of the "safe harbor" provision, Michael is procedurally barred from moving for sanctions under Rule 11. Therefore, the Motion under Rule 11 must fail.

### 2. Timeliness

A motion for sanctions under Rule 11, § 1927, and a motion invoking the court's inherent authority, must be timely filed. To be sure, there are no strict limitations as to when a delay becomes so long that it renders a sanctions motion untimely. But, an unreasonable delay between the sanctionable conduct and the motion could preclude the award of sanctions. As the Supreme

Court has explained, "[a]lthough Rule 11 does not establish a deadline for the imposition of sanctions, the Advisory Committee did not contemplate that there would be a lengthy delay prior to their imposition[.]" *Cooter & Gell*, 496 U.S. at 398.

A Rule 11 motion should be "'served promptly after the inappropriate paper is filed, and if delayed too long, [it] may be viewed as untimely.'" *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 152 (4th Cir. 2002) (alteration in original) (quoting Fed. R. Civ. P. 11 Advisory Committee's Note to 1993 amendment). The Advisory Committee has warned that "a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)." Fed. R. Civ. P. 11 Advisory Committee Note (1993).

The Fourth Circuit has interpreted the Advisory Committee's language and "the 'safe harbor' provisions of Rule 11(c)(1)(A) [now codified at Rule 11(c)(2)] [to] preclude the serving and filing of any Rule 11 motion after conclusion of the case." *Hunter*, 281 F.3d at 152; *see Sterling v. Ourisman Chevrolet of Bowie Inc.*, PWG-12-3193, 2016 WL 11643614, at *1–2 (D. Md. Feb. 12, 2016) (denying Rule 11 sanctions motion as untimely when movants sought to reopen the case two months after the court granted summary judgment and closed the case).

Determining whether a Rule 11 sanctions motion is timely "must be resolved on a case by case analysis." *In re Kunstler*, 914 F.2d at 513. Therefore, the Fourth Circuit has advised that "[t]he party seeking sanctions may avoid such problems by notifying his opponent and the court of his intention to pursue sanctions at the earliest possible date." *Id.*

Of relevance, the timeliness analyses under 28 U.S.C. § 1927 and Rule 11 are different. *Intellect Wireless, Inc. v. Sharp Corp.*, 87 F. Supp. 3d 817, 839–40. (N.D. Ill. 2015); *see Smith v. CB Com. Real Est. Grp., Inc.,* 947 F. Supp. 1282, 1285 (S.D. Ind. 1996) (describing the differences in the analysis of timeliness for sanctions under Rule 11 and § 1927). "[T]he text of 28 U.S.C.

§ 1927 does not place any time limitation on the Court's ability [to] award attorneys' fees, expenses, or costs." *Blowers v. Lerner*, GBL-15-889, 2017 WL 4080990, at *3 (E.D. Va. Sept. 14, 2017), *aff'd sub nom. In re Francis*, 739 F. App'x 184 (4th Cir. 2018)). Moreover, § 1927 is "not subject to [Rule 11's] safe harbor requirement[.]" *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 176 (2d Cir. 2012).

At least two circuits have determined that a § 1927 motion that is served after the final resolution of a case is not untimely. *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1223 (10th Cir. 2006); *see Ridder*, 109 F.3d at 297 (explaining that a § 1927 motion is not "untimely if made after final judgment in a case"). The Tenth Circuit has explained that, "[u]nlike Rule 11, the application of § 1927 may become apparent only at or after the litigation's end, given that the § 1927 inquiry is whether the proceedings have been unreasonably and vexatiously multiplied." *Steinert*, 440 F.3d at 1223.

Even so, a movant does not have limitless time to file a § 1927 motion. *See* 100 Causes of Action 2d 421 § 22 (2021) ("[T]here is not an unlimited time" to file a motion for sanctions under § 1927. The filing of a § 1927 motion "should not be unnecessarily or unreasonably delayed." *Steinert*, 440 F.3d at 1223; *see Intellect Wireless, Inc.*, 87 F. Supp. 3d at 840 ("[A]n unjustified delay in filing a § 1927 motion would render it untimely"). Rather, a § 1927 motion "should be filed within a reasonable time." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 102 (3d Cir. 2008). But, there is no consensus as to what period of time would amount to an unreasonable delay.

In *Blowers,* 2017 WL 4080990, at *3–4, the district court found that a § 1927 motion filed "contemporaneous[ly] with [a] final judgment" was timely. The Third Circuit has said that filing a § 1927 motion was timely when it was filed within thirty days of the final judgment. *Lewis v.*

*Smith,* 480 F. App'x 696, 699 (3d Cir. 2012); *see also Smith,* 947 F. Supp. at 1284–85, 1287 (finding that a delay of 92 days did not render the motion untimely). But, many courts have found that a delay of "eight or more months" is "generally untimely." *In re Grigg,* 568 B.R. 498, 509 (Bankr. W.D. Pa. 2017); *see Overnite Transp. Co. v. Chicago Indus. Tire Co.,* 697 F.2d 789, 792 (7th Cir. 1983) (finding an eight month delay in filing a § 1927 motion rendered it untimely); *Home Gambling Network, Inc. v. Piche,* DAE-05-610, 2015 WL 1734928, at *19 (D. Nev. Apr. 16, 2015) (finding that a § 1927 motion filed fifteen months after the court granted summary judgment was untimely); *but see In re Ruben,* 825 F.2d 977, 981–82 (6th Cir. 1987) (applying the rationale from cases evaluating motions for attorneys' fees under 42 U.S.C. § 1988 to a timeliness analysis for a fees motion under § 1927, noting an eight month delay did not render § 1988 motions untimely).

There is scant authority on specific time limitations for motions for sanctions brought under the court's inherent authority. But, "it is generally well established that 'unreasonable delay may render . . . a [sanctions] motion untimely.'" *Clark v. United States*, MEA-CV-00544, 2011 WL 66181, at *4 (D. Haw. Jan. 7, 2011) (quoting *Long v. Howard Univ.*, 561 F. Supp. 2d 85, 91 (D.D.C. 2008) (applying this standard to determine whether a Fed. R. Civ. P. 37 motion for sanctions was timely).

Under Local Rule 109.2(a), "[u]nless otherwise provided by statute, L.R. 109.2.c, or otherwise ordered by the Court, any motion requesting the award of attorneys' fees must be filed within fourteen (14) days of the entry of judgment." And, "failure to timely file a fee request can justify the court of appeals in vacating a district court's award of attorney's fees." *Greenspring Racquet Club, Inc. v. Baltimore Cnty., Maryland*, 232 F.3d 887, 2000 WL 1624496, at *8 (4th Cir. 2000) (per curiam) (unpublished table decision). Indeed, per Local Rule 109.2(a),

"[n]oncompliance with these time limits shall be deemed to be a waiver of any claim for attorneys' fees." The Fourth Circuit has interpreted this rule to apply to all Rule 11 motions, even if there is no specific request for attorney's fees. *Ortega v. Geelhaar*, 914 F.2d 495, 498 (4th Cir. 1990) ("We read the plain language of the local rule to include all motions filed under Rule 11.")

The Fourth Circuit has explained that "'entry of judgment'" is an "unambiguous procedural term[] of art" defined in the Federal Rules of Civil Procedure. *CX Reinsurance Co. Ltd. v. Johnson*, 977 F.3d 306, 311 (4th Cir. 2020). Under Fed. R. Civ. P. 54(a), a judgment "includes a decree and any order from which an appeal lies." *See also Ge v. United States Citizenship & Immigr. Servs.*, 20 F.4th 147, 153–54 (4th Cir. 2021) ("A judgment is understood to be an order sufficiently final that an appeal will lie from it.") Additionally, Fed. R. Civ. P. 58(a) requires that "[e]very judgment . . . be set out in a separate document," except for the disposition of certain filings.

The Fourth Circuit has affirmed a district court's interpretation of "judgment" to refer to the "primary judgment" in a case, not the entry of a judgment after the resolution of post judgment motions. *See Jackson v. Beard*, 828 F.2d 1077, 1078 n.1, 1079–80 (4th Cir. 1987) (interpreting Local Rule 23A of the District of Maryland, a previous local rule that, like Local Rule 109.2, placed a time limit on filing a motion for attorney's fees); *see also Cross v. Bragg*, 329 F. App'x 443, 458 (4th Cir. 2009) ("Arguably, the district court possessed the authority under Local Rule 109.2.a to direct the plaintiffs to file their attorney's fee motion and memorandum prior to the entry of a final judgment.") As the Fourth Circuit explained in *Jackson*, 828 F.2d at 1079–80, starting the clock at the entrance of the "primary judgment" avoids "piecemeal appeals" and "facilitates efforts by the district court to rule on the motion at the same time, or at least within thirty days, of its ruling on any post-judgment motions."

Under Local Rule 604, "the Court may, in a particular case, suspend the provisions of any of these Rules upon application of a party or upon its own motion" if "good cause" is "shown[.]" However, without good cause, Local Rule 109.2 dictates the "time limits" for motions for attorney's fees. *See Ortega*, 914 F.2d at 498 (finding that because "no cause was shown" by the parties "nor was any found by the court", the court was bound to follow Local Rule 109.2).

Additionally, Local Rule 109.2(b) states (emphasis added):

> Any *motion* requesting the award of attorneys' fees *must be supported by a memorandum* setting forth the nature of the case, the claims as to which the party prevailed, the claims as to which the party did not prevail, a detailed description of the work performed broken down by hours or fractions thereof expended on each task, the attorney's customary fee for such like work, the customary fee for like work prevailing in the attorney's community, a listing of any expenditures for which reimbursement is sought, any additional factors which are required by the case law, and any additional factors that the attorney wishes to bring to the Court's attention.

The memorandum required under Local Rule 109.2(b) "must be filed within thirty-five (35) days from the date the [attorneys' fee] motion is filed, or (unless otherwise ordered by the Court), in the event an appeal is taken from the underlying judgment, within fourteen (14) days of the issuance of the mandate of the Court of Appeals."

The Fourth Circuit has recognized that time restrictions in the Local Rules must be followed. *Hunter*, 281 F.3d at 152 n.11 ("When Local Rules are in place to govern the timeliness of Rule 11 motions, we abide by them.")  And, the Supreme Court has emphasized the importance of Local Rules in facilitating the timely resolution of claims, stating: "[T]he district courts remain free to adopt local rules establishing timeliness standards for the filing of claims for attorney's fees. And of course the district courts generally can avoid piecemeal appeals by promptly hearing and deciding claims to attorney's fees." *White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 454 (1982).

The first trial in this case concluded on February 28, 2024, when the jury issued a verdict in favor of Boshea.  ECF 246.  Judgment was entered on March 8, 2024.  ECF 254.  Thereafter, Compass filed a post-trial motion.  ECF 255.  Then, I granted an extension of time to Boshea to move for attorneys' fees under the Maryland Wage Payment and Collection Law.  ECF 258.

Michael filed his Motion on May 21, 2024, while Compass's post-trial motion was pending.  ECF 269.  Subsequently, I vacated the judgment, for reasons not pertinent here.  ECF 289; *see* ECF 288.

Of import, more than two years passed between the filing of Michael's Motion on May 21, 2024, and the sanctionable conduct he cites in his Motion.  ECF 269; ECF 81 (Motion to Compel, filed by Compass on January 14, 2022); ECF 63 (Contempt Motion, filed by Compass on October 25, 2021); ECF 38 (Third Party Complaint, filed by Compass on August 26, 2021).  Michael filed his Motion three months *after* the conclusion of the first trial, and long after Compass had withdrawn its Third Party Complaint (ECF 195 at 8), and well after the Court had resolved the Motion to Compel and the Contempt Motion.  ECF 92.  By any metric, this delay is unreasonable.  In fact, courts have denied motions for sanctions as untimely when the delay was substantially less.  *See, e.g., Home Gambling Network, Inc.,* 2015 WL 1734928, at *19 (finding that a § 1927 motion filed fifteen months after the court granted summary judgment was untimely).

The appropriate time for Michael to have sought sanctions against Compass and its counsel was in 2021 or 2022, when Compass could have withdrawn its motions.  Michael acknowledges as much, stating: "[T]here is nothing left in the *Boshea* case for Compass or the attorneys to withdraw—their damage has been done."  ECF 273 at 4.

In sum, the conduct at issue in the Motion happened years ago, in a case that has been tried and re-tried.  The underlying allegations have grown stale.  Even assuming, *arguendo*, that the

Motion has merit, the extreme delay in filing the Motion forecloses relief.  Simply put, the Motion is untimely.

## B.  Merits

As discussed, the Court is without authority to grant Michael's request for sanctions under Rule 11, because Michael did not comply with the condition precedent, discussed earlier.  *See Brickwood Contractors, Inc.*, 369 F.3d at 389.  Moreover, Michael's Motion was not timely filed. But, even if Michael had timely filed his Motion, the conduct Michael assails does not warrant sanctions under either 28 U.S.C. § 1927 or the court's inherent authority.

### 1.  Out of Court Conduct

When issuing sanctions, the role of the court is not to "police *out-of-court conduct* nor will the Court arbiter every dispute or clash of personalities."  *Moore v. Chase, Inc.*, SKO-140-1178, 2016 WL 521320, at *5 (E.D. Cal. Feb. 10, 2016) (emphasis in original).  As the Supreme Court has explained: "The imposition of sanctions . . . transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power *to police itself*[.]"  *Chambers*, 501 U.S. at 46 (emphasis added).  When using its sanction power,  "the court must be sure of both the factual and legal basis on which it is acting."  *Trade Well Int'l v. United Cent. Bank*, 778 F.3d 620, 626 (7th Cir. 2015).

The unfortunate animosity between Michael and John White permeates the various filings for sanctions in this case.  Michael characterizes Compass's actions towards him as part of a campaign of "reprisal, retribution, and public embarrassment[.]"  ECF 269 at 4.  According to Michael, Compass and its counsel have targeted him because he reported "John [White] and his associates, including several attorneys, to the U.S. Securities and Exchange Commission for using Compass as a shell to operate a Ponzi scheme named Tagnetics[.]"  *Id.* at 3.

Michael repeatedly references matters outside the purview of this case. He draws the Court's attention to conduct concerning other matters and litigation in other cases that also involve Compass. For example, Michael urges the Court to "consider both the actions of John [White] and his counsel in *Boshea* and the *Flywheel* Case together because they are both filed in this Court and share a common scheme and purpose—retribution against Movant for exposing their unlawful activity." ECF 269 at 4 (italics in original); *see also, e.g.,* ECF 373 at 4–5 (asking the Court to "consider . . . . Bogus federal 'RICO' lawsuit . . . . Bogus Maryland $24,000,000,000 'RICO' lawsuit . . . . Bogus actions in Chicago probate court").

For its part, Compass makes serious claims against Michael that have little to no grounding in the proceedings before this Court. Compass claims that the *Flywheel* Case "is in large part about Michael White's (and Daniel White's) efforts to conspire among themselves and with others to destroy Compass Marketing, including by filing or assisting others with filing baseless lawsuits against the company." ECF 272 at 15 n.13. Similarly, Compass suggests this Court should adjudicate whether Michael may have violated the Electronic Communications Privacy Act, based on some of the documents he has attached as exhibits to his Motion. *Id.* at 19.

The Court declines to consider conduct concerning matters not before it. The court's power to sanction is a tool designed to allow the Court to regulate its own proceedings. It would be an abuse of power to impose sanctions based on conduct and behavior unrelated to this case, and outside the purview of this case.

### 2. The Alleged Circulation of Michael's Deposition

Michael's deposition took place on December 1, 2021. ECF 81 at 1. He complains that White and Stern *immediately* shared his deposition transcript with a tabloid and the MCJD. ECF 269 at 4; ECF 273 at 5. But, Michael provides no evidence to support this assertion. Compass

does not address whether it circulated the transcript. Even assuming the truth of Michael's allegations, *i.e.*, that Compass circulated Michael's deposition transcript soon after the deposition took place, there was no protective order in place to bar Compass from doing so. Nor does Michael refer the Court to any rule that Compass violated. Compass's alleged disclosure of Michael's deposition transcript in the *Boshea* case does not warrant sanctions.

"[A]s a matter of long-standing practice (at least), depositions are conducted in private." *Haidon v. Town of Bloomfield*, 552 F. Supp. 3d 265, 271 (D. Conn. 2021); *see Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 252 (4th Cir. 1988) (describing how "discovery . . . is ordinarily conducted in private"). The Supreme Court has said that "pretrial depositions and interrogatories are not public components of a civil trial." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984).

In 2000, the Federal Rules of Civil Procedure were amended, such that Fed. R. Civ. P. 5(d)(1)(A) prohibits the filing of "depositions" and other discovery material with the court before "they are used in the proceeding or the court orders filing[.]"[9] This amendment rendered obsolete a previous line of cases that had applied a presumption of public access to discovery materials. *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 233 n.11 (2d Cir. 2001) ("[T]o the extent that" the previous line of cases "relied upon Federal Rule of Civil Procedure 5(d) to find a statutory right of access to discovery materials, we observe that the recent amendment to this rule provides no presumption

---

[9] Previously, Fed. R. Civ. P. 5(d) "required discovery documents to be filed" with the court. *Anderson v. Reliance Standard Life Ins. Co.*, WDQ-11-1188, 2012 WL 835722, at *3 n.4 (D. Md. Mar. 9, 2012). Several courts interpreted the previous iteration of Rule 5(d) to create "'a presumption that discovery materials would be publicly available whenever possible.'" *AFT Michigan v. Project Veritas*, LVP-17-13292, 2023 WL 2890152, at *2 (E.D. Mich. Apr. 10, 2023) (quoting *Westchester Radiological Ass'n P.C. v. Blue Cross/Blue Shield of Greater New York, Inc.*, 138 F.R.D. 33, 36 (S.D.N.Y. 1991)).

of filing all discovery materials, let alone public access to them"); *AFT Michigan v. Project Veritas*, LVP-17-13292, 2023 WL 2890152, at *2 (E.D. Mich. Apr. 10, 2023).

The Local Rules Discovery Guidelines are also pertinent. Guideline 6(h) requires counsel, with few exceptions, to "notify other parties not later than seven (7) days before the taking of a deposition if counsel desires to have a non-party present during a deposition." Additionally, Guideline 6(i) forbids anyone, except for the person recording the deposition in accordance with Fed. R. Civ. P. 30(b), from recording deposition testimony without "the consent of the deponent and all parties in attendance, unless otherwise ordered by the Court."

Notably, a litigant can seek to "prevent disclosure of pretrial discovery by obtaining a protective order" under Fed. R. Civ. P. 26(c). *Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003); *see Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 585 (E.D. Va. 2009) ("Issues of confidentiality of discovery materials during the pre-trial stages of litigation are, of course, typically dealt with by means of protective orders jointly stipulated by parties and entered by courts pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.") "[F]or good cause" a court may "issue an order . . . requiring that a deposition be sealed and opened only on court order[.]" Fed. R. Civ. P. 26(c)(1)(F).[10] "Courts have consistently granted protective orders that prevent disclosure of many types of information." *Waterkeeper Alliance, Inc. v. Alan & Kristin Hudson Farm*, 278 F.R.D. 136, 140 (D. Md. 2011) (quotations omitted). Indeed, under Rule 26(c), courts have "broad authority to limit discovery and prescribe alternative discovery mechanisms." *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 124 (D. Md. 2009).

---

[10] Fed. R. Civ. P. 26(c)(1)(G) states, in relevant part: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]"

In federal court, deponents have sought protective orders, pursuant to Rule 26(c), to prohibit a deposition's dissemination to third parties. *See, e.g., Brockington v. Boykins,* CCB-08-1713, 2013 WL 2285525, at *1 (D. Md. May 22, 2013) (granting a protective order "prohibiting disclosure of [plaintiff's deposition] responses to non-parties"); *Haidon*, 552 F. Supp. 3d at 267 (describing how a deponent moved for a protective order because the opposing party would not "agree that the transcripts and recordings of . . . depositions" in the case "would not be disseminated to third parties"); *Schoolcraft v. City of New York*, RWS-10-6005, 2013 WL 4534913, at *3 (S.D.N.Y. Aug. 27, 2013) (defendants sought protective order to bar "'plaintiff and his counsel from . . . disseminating information and documents (e.g., defendant deposition transcripts) learned or obtained in the course of discovery to outside parties'") (quoting movant's motion for a protective order); *Stern v. Cosby*, 529 F. Supp. 2d 417, 419 (S.D.N.Y. 2007) (defendant sought protective order "prohibiting the public disclosure of the transcript and video of her deposition before they become a 'judicial record'").  The party moving for a protective order bears the burden of establishing good cause. *Webb v. Green Tree Servicing LLC*, 283 F.R.D. 276, 278 (D. Md. 2012).

Michael never sought a protective order to prevent the disclosure of his deposition transcript. *See* Docket.  Yet, in his opposition to Compass's Motion to Compel (ECF 81), filed on January 28, 2022, about two months after his deposition, Michael sought a protective order to prevent Compass from requesting "Michael's login information for disputed email and computer network accounts" after it had repeatedly asked questions about the topic during Michael's

deposition. ECF 89 at 16–17.[11] This suggests that Michael knew of the option to seek a protective order.

On January 14, 2022, a little over a month after Compass took Michael's deposition, Compass filed a copy of Michael's deposition transcript as an exhibit to its Motion to Compel. ECF 81-1. Notably, Michael's counsel repeatedly referenced the transcript in his opposition to the Motion to Compel. *See, e.g.,* ECF 89 at 5–10.

The filing of Michael's deposition on the public docket is significant. There is a body of case law, rooted in the common law and the First Amendment, that governs whether the court should grant public access to documents filed in court. *See Rushford*, 846 F.2d at 253 ("The mere existence of a First Amendment right of access or of a common law right of access to a particular kind of document does not entitled[sic] the press and the public to access in every case.") Judge Easterbrook opined in *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 545 (7th Cir. 2002):

> Secrecy is fine at the discovery stage, before the material enters the judicial record. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20 (1984). But those documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality.

When Compass filed a copy of Michael's deposition transcript with the Court, in support of its Motion to Compel, Michael never asked the Court to seal the document, so as to preclude public access. Therefore, the exhibit became a part of the public record.

Notably, Michael wrote a letter to this Court, advising that John White would be giving a deposition in the Maryland Case and suggesting that White's testimony in that case would "be of substantial value in evaluating the veracity of statements made . . . in the *Boshea* proceedings."

---

[11] Judge Copperthite denied Compass's Motion to Compel (ECF 81) without specifically addressing Michael's request for a protective order. ECF 92.

ECF 344 at 2.[12]  Along with his letter, Michael appended a copy of the deposition subpoena and document requests served on White in the Maryland Case.  ECF 344-1.  It appears that Michael is now asking the Court to sanction conduct that is similar to behavior in which he himself engaged during this case.

In any event, as to the alleged dissemination, it is not clear from the submissions what exactly happened, or when.  With respect to the tabloid, Compass does not address this allegation at all, and Michael does not name the publication to which he refers.  As to the MCJD proceedings, Compass claims that "Michael White was . . . found by the Maryland Judicial Disabilities Commission to have failed to answer numerous questions of him in an honest and forthright manner."  ECF 272 at 16 n.14.  Michael disagrees.  ECF 373 at 5.

Compass filed with its Opposition what the Court presumes is a copy of the MCJD's Reprimand of Michael, dated June 30, 2023.  ECF 272-1.  As noted, Michael's deposition in this case took place on December 1, 2021.  ECF 81 at 1.  The Reprimand states that the MCJD considered an "underlying fact[]" that "Judge [Michael] White lacked candor and credibility by not answering truthfully and honestly under oath during a deposition[.]"  ECF 272-1 at 3.  But, it is not evident that the MCJD was referring to Michael's deposition in this case.  Regardless, the Reprimand reflects that the MCJD did not punish Michael for his conduct during the deposition. Specifically, the MCJD explained that there was not "clear and convincing evidence" that Michael's "conduct in the deposition" was "sanctionable."  *Id*.  I do not intend to revisit that decision.

---

[12]  Michael is a party in the Maryland case.  *See* Maryland Case, Docket, https://perma.cc/EYR9-E2BD (listing Michael White as a defendant).

### 3.  Michael's Deposition

Michael alleges that Compass should be sanctioned for conducting his deposition as a "'fishing expedition[.]'"  ECF 269 at 7.  Judge Copperthite found that there was a reasonable basis to subpoena Michael regarding issues relevant to this case. ECF 52 at 8 (denying Michael's Motion to Quash, in part, and noting that some information that Michael has "will benefit Defendant in litigating important issues in the case and [has] information possibly not known to Defendant.") Therefore, I see no basis to sanction Compass for moving forward with Michael's deposition.

Some of Compass's questions at Michael's deposition pertained to communications between Michael and Boshea, squarely within the purview of discovery, as described by Judge Copperthite.  *See, e.g.,* ECF 81-1 at 72 (showing Michael an email he received from Boshea); *id.* at 76 (describing emails between Michael and Boshea's attorney with Boshea's severance agreement attached).  But, there were several instances in which Compass's questioning went well beyond the scope of what Judge Copperthite deemed relevant for non-party discovery.  *See, e.g., id.* at 115–17 (Stern asking Michael whether he filled out a PPP loan for Woodville Pines, LLC); *id.* at 121, 132 (Stern asking Michael about a shareholder meeting that took place in 2001 that does not appear to bear any relation to Boshea or his severance agreement); *id.* at 170–71 (Stern asking Michael if he "ha[d] . . . taken any money from Compass marketing that" he "did not earn"); *id.* at 203–07 (Stern inquiring about the length of time and terms of the employment of Michael's wife at Compass).

Understandably, during the deposition, Michael's counsel expressed concern that many of Compass's questions were not relevant and were actually designed "to gain some kind of information to support an unwarranted suspicion for use in other proceedings besides this[.]"  *Id.* at 208.  When Michael's counsel objected to various questions based on the scope, Compass

claimed its questions were relevant to cast doubt on Michael's "credibility" or "motive." *Id.* at 125, 127, 156, 167, 205–06.

In the context of a deposition, sanctionable conduct is behavior that "destroy[s] the deposition[.]" *Unique Concepts, Inc. v. Brown*, 115 F.R.D. 292, 294 (S.D.N.Y. 1987); *see, e.g., Carroll v. Jaques Admiralty L. Firm, P.C.*, 110 F.3d 290, 293 (5th Cir. 1997) (finding that "hurling 'vulgar and profane words' at the [] counsel and threatening . . . counsel with an act of physical violence [during the deposition] constituted bad faith"); *see also In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 932 (N.D. Cal. 2023) (finding that attorneys engaged in bad faith conduct during a deposition where "objections seemed intended to make it difficult or impossible for the plaintiffs to obtain probative testimony about information that was obviously central to the case").  Michael's counsel objected to the line of questioning repeatedly and, ultimately, Judge Copperthite resolved the disputes.  ECF 92.

Stern's assertions as to the relevance of his questions may lack merit.  But, they do not appear so wholly lacking in merit as to constitute fraud or abuse of the judicial system.

### 4.  Third Party Complaint

With regard to the Third Party Complaint, as explained above, Compass alleged that unknown third parties conspired with Boshea.  The complaint claimed that Boshea and unknown John Doe(s) circulated the Complaint Boshea had filed in this case "to third parties doing business with Compass[.]"  ECF 38 at 4.  Specifically, Compass alleged that a real estate brokerage firm and an architecture firm it had been working with both received a copy of the Complaint and subsequently severed their working relationships with Compass.  *Id.*  Compass claimed that Boshea and John Doe(s) circulated this Complaint to tarnish Compass's reputation "by insinuating (falsely) that [Compass] is a company that cannot be trusted and . . . does not honor its contractual

obligations." *Id.*  Compass also claimed, "[s]eparate and apart from the malicious distribution of the Complaint", that Boshea had "improperly" received a total of $51,800 from Compass that was "beyond his agreed upon compensation" in the form of "'off payroll payments[.]'" *Id.* at 5.

Pursuant to these allegations, Compass brought three claims: "Tortious Interference" with contractual relations and/or prospective economic advantage, lodged against Boshea and John Doe(s) (Count I); "Civil Conspiracy", lodged against Boshea and John Doe(s) (Count II); and "Unjust Enrichment", lodged against Boshea (Count III).  Count I and Count II arose from Compass's allegations regarding the allegedly malicious circulation of the *Boshea* Complaint in this matter.  *Id.* at 5–9.  The third count arose from the "'off payroll payments'" Boshea allegedly received in excess of his agreed upon compensation from Compass.  *Id.* at 9–10.

Michael is not named in the Third Party Complaint.  *See* ECF 38.  A footnote in one of Compass's filings, implying that Michael's behavior during the discovery process could indicate that he was hiding material information, simply is not enough to show that Compass filed this Third Party Complaint to target Michael.  *See* ECF 63 at 4 n.2.

The Third Party Complaint was ultimately withdrawn by Compass because the claims could not be proved; there was no evidence to support the allegations.  Indeed, it appears to have been completely baseless.  Even so, it had no bearing on Michael, who was not named in the Third Party Complaint.  I decline to award sanctions on the basis of the Third Party Complaint.

### 5.  Contempt Motion

Compass's Contempt Motion against Michael (ECF 63) was filed in response to Michael's conduct in delaying his deposition for a second time.   As with Compass's first attempt to depose Michael, the deposition was postponed on short notice.  ECF 63 at 1–4.  In the Contempt Motion, Compass sought, *inter alia*, incarceration of Michael.  Based on the facts attendant here, that

request was arguably inappropriate or unjustified. But, that does not mean that sanctions are warranted.

In August 2021, Compass served Michael with a subpoena duces tecum and a subpoena to provide deposition testimony. ECF 63 at 1; ECF 33-1 at 9–16. Michael belatedly filed a Motion to Quash both subpoenas (ECF 33) just one day before his deposition was scheduled to take place, and then did not attend the deposition. ECF 33 at 8; ECF 33-1 at 17; ECF 42 at 7–8. By Memorandum and Order of September 27, 2021 (ECF 52), Judge Copperthite denied Michael's Motion to Quash, in part, and granted it, in part. *Id.* at 10, 12. He "conclude[d] that limiting the discovery is appropriate . . . ." *Id.* at 9.

Judge Copperthite was of the view that certain categories of information requested by Compass did not pertain to its defense in Boshea's suit. *Id.* Rather, the information was sought to enable Compass "to investigate events that occurred after the commencement of this action." *Id.* (citing ECF 40 at 60). Judge Copperthite opined that "information about this litigation and Plaintiff's employment, termination, and severance, is squarely within the scope of discovery." *Id.* at 8. But, of import, Judge Copperthite confined his analysis to the "subpoena *duces tecum* served on the third party movants" and did not issue any specific orders as to Michael's deposition. *Id.* at 3 (emphasis in original).

Michael apparently failed to coordinate with Compass's counsel regarding the rescheduling of his deposition until three days before the rescheduled deposition was to take place. ECF 62 at 1. Michael claimed that he did not receive the emails regarding the coordination of his deposition until shortly before it was scheduled. This is because he had blocked the email address of Compass's counsel. ECF 89 at 4. When Compass filed its Contempt Motion, Michael had not produced any of the documents requested by Compass. ECF 63 at 6; ECF 89 at 4–5.

Contempt is civil rather than criminal "[w]hen the nature of the relief and the purpose for which the contempt sanction is imposed is remedial and intended to coerce the contemnor into compliance with court orders or to compensate the complainant for losses sustained . . . . If the relief provided is a fine, it is remedial when it is paid to the complainant." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 537 (D. Md. 2010) (citation omitted).

To establish civil contempt, a movant must show each of the following elements, by "clear and convincing evidence":

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.

*dmarcian, Inc. v. dmarcian Eur. BV,* 60 F.4th 119, 145 (4th Cir. 2023) (quoting *Fed. Trade Comm'n v. Pukke*, 53 F.4th 80, 101 (4th Cir. 2022)). "To be clear and convincing, evidence must 'place in the ultimate factfinder an abiding conviction that the truth of [the party's] factual contentions are 'highly probable.'" *United v. Ali,* 874 F.3d 825, 831 n.2 (4th Cir. 2017) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). Significantly, willfulness is not an element of civil contempt. *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995).

Once the moving party meets its burden, the burden shifts to the contemnor to demonstrate that it "'ma[de] in good faith all reasonable efforts to comply with'" the court's order. *Ali*, 874 F.3d at 832 (quoting *United States v. Darwin Const. Co.*, 873 F.2d 750, 754 (4th Cir. 1989)). "The only exception is '*present* inability to comply' i.e., an inability to comply that arises after the enforcement proceeding and exists at the time of the contempt proceeding." *Ali*, 874 F.3d at 829 (emphasis in original) (quoting *United States v. Rylander*, 460 U.S. 752, 756–57 (1983)).

Where the contemnor cannot comply, "neither the moving party nor the court has any reason to proceed with the civil contempt action." *Rylander*, 460 U.S. at 757. But, the nonmovant has the burden of production in raising an impossibility defense. *Id.* (citing *McPhaul v. United States*, 364 U.S. 372, 379 (1960)). Moreover, a court may not exercise its contempt power if there is "fair ground of doubt as to the wrongfulness of" the conduct in question. *Taggart v. Lorenzen*, 587 U.S. 554, 554 (2019) (citation and emphasis omitted); *see also Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017) (concluding that contempt finding is unwarranted if court's decree is "'too vague to be understood'") (quoting *Int'l Longshoremen's Ass'n v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)).

Notably, "a party must be able to discern from the language of a court's order the actions necessary to comply with the court's directive." *Life Techs. Corp.*, 931 F.3d at 268. In *Taggart*, 587 U.S. at 561, the Court said: "[P]rinciples of basic fairness require that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt." (Citations, quotation marks, and brackets omitted); *see Gascho*, 875 F.3d at 800 (contempt sanctions are "reserved for those who 'fully understand' the meaning of a court order and yet 'choose to ignore its mandate'") (quoting *Phila. Marine Trade Assoc.*, 389 U.S. at 76) (alterations omitted).

As mentioned, sanctions for civil contempt are remedial. *See Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 822 (4th Cir. 2004); *Buffington*, 913 F.2d at 133. The purpose of sanctions for civil contempt is "'to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy.'" *In re Gen. Motors*, 61 F.3d at 258 (quoting *Connolly v. J.T. Ventures*, 851 F.2d 930, 932 (7th Cir. 1998)). Indeed, civil contempt sanctions are "employed not to vindicate the court's authority but to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed." *Vuitton*

*et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979).  But, "in selecting contempt sanctions, a court is obliged to use the least possible power adequate to the end proposed." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (internal quotation omitted).  Moreover, a fine may not be punitive.

Choosing "[t]he appropriate remedy for civil contempt is within the court's broad discretion."  *In re Gen. Motors Corp.,* 61 F.3d at 259.  These sanctions can include coercive incarceration.  *Harris v. McCarthy*, JKB-18-3562, 2021 WL 4133859, at *2 (D. Md. Sept. 10, 2021).  Indeed, coercive incarceration is a "paradigmatic" tool of civil contempt.  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994).  In general, courts employ this severe remedy when the noncompliant individual has engaged in "flagrant violations" of a court's orders.  *See, e.g., Young Again Prods., Inc. v. Acord*, 459 F. App'x 294, 300, 306 (4th Cir. 2011) (affirming a district court's incarceration of a litigant for failing to pay sanctions and not appearing at a hearing regarding his noncompliance); *Trs. of Heating, Piping & Refrigeration Pension Fund v. Clean Air Mech., Inc.*, JKB-17-3690, 2022 WL 2789398, at *1 (D. Md. July 15, 2022) (setting a Show Cause Hearing "to determine whether further coercive incarceration of [an individual] is required to ensure long-overdue compliance with post-judgment discovery" after the court had already incarcerated the individual after "concluding that coercive incarceration was necessary to obtain . . . compliance with the post-judgment discovery and the related court Orders").

Michael had actual or constructive knowledge of the subpoenas; the subpoenas were valid; and Michael failed to produce the requested documents.  Apparently, he also failed to coordinate his second deposition in a timely manner.  Compass alleged that Michael's behavior caused it to incur attorney's fees and additional expenses for the first deposition, which Michael did not attend. ECF 63 at 7.  Compass also claimed it suffered intangible harm because Michael had not produced

documents responsive to Compass's document subpoena, which it was "entitled to receive to help defend itself against" Boshea's suit. *Id.*

Noncompliance with a subpoena has been recognized as a valid basis to hold an addressee in civil contempt. *See, e.g., In re Grand Jury Subpoena (T-112)*, 597 F.3d 189, 202–03 (4th Cir. 2010) (affirming a district court's levying of civil contempt sanctions against a party who failed to obey the court's verbal order to comply with a subpoena); *United States v. Fishman*, 726 F.2d 125, 128 (4th Cir. 1983) (concluding that the district court had "acted correctly" when it "resort[ed] to contempt sanctions to compel production"). But, the initial document subpoena was flawed. Critically, to my knowledge, Judge Copperthite did not specify a date by which Michael was to produce the documents that were properly requested. Moreover, there was no ruling at all as to the deposition. So, the Court did not expressly require Michael to appear at a time certain. In sum, there is no judicial decree with clear terms that Michael violated. *See* ECF 52. This should have been apparent to a well trained lawyer.

Compass's attempt to obtain the incarceration of Michael speaks to the animosity that prevails between the brothers White and Stern as Compass's lawyer. *See* ECF 63 at 8. In a case such as this one, incarceration is generally a last resort and is typically contemplated when there is a violation of a court order and issuance of a fine to compel compliance with a court order would be "futile." *See Enovative Techs., LLC v. Leor*, 110 F. Supp. 3d 633, 637 (D. Md. 2015). But, poor judgment is not bad faith.

There is no showing that Compass's actions were based on intentional misrepresentations or fraudulent conduct, which are the hallmarks of the kind of "severe misconduct" that sanctions are designed to address. *Harvey,* 48 F.4th at 276. I decline to impose sanctions based on the Contempt Motion.

### 6.    Motion to Compel

Compass's Motion to Compel does not rise to the level of the bad faith conduct required for the court to issue sanctions under § 1927 or its inherent power.

Compass's Motion to Compel was thorough and steeped in references to Michael's deposition. *See*, *e.g.,* ECF 81 at 7 n.6 (listing over one hundred instances in Michael's deposition transcript where he stated that he did not know the answer to a question).  A large portion of it relied on the number of objections Michael's counsel raised at Michael's deposition.  *Id.* at 1 (describing that part of the basis for its motion was "instructions by counsel not to answer (Michael White)").

In Michael's opposition to the Motion to Compel, he defended the number of objections his counsel raised, arguing that "the reason there were so many objections and instructions not to answer [was] because so many of the questions were improper."  ECF 89 at 7.  But, he did not argue that Compass's Motion was so unfounded that Compass should be sanctioned for filing it. *See generally* ECF 89.  This is precisely the type of dispute that requires a judge to weigh the merits of each argument and provide a resolution, as Judge Copperthite did later.  *See* ECF 92.

The allegations in Compass's Motion to Compel do not appear totally baseless or fraudulent.  Nor do they amount to the kind of egregious conduct that courts require before imposing sanctions.  Therefore, this Court will not impose sanctions on the basis of the Motion to Compel.

### VI.    Conclusion

Procedurally, Michael's Motion is fatally flawed to the extent that it is based on Fed. R. Civ. P. 11.  This is because he did not comply with Rule 11's "safe harbor" provision, and so he cannot successfully move for sanctions under that authority.  Moreover, under Rule 11; 28 U.S.C.

§ 1927; the court's inherent authority; and Local Rule 109.2, Michael's Motion is untimely. It was filed over two years after the challenged conduct took place.

Additionally, the conduct he alleges is not sanctionable under either 28 U.S.C. § 1927 or the court's inherent authority. To impose sanctions under either § 1927 or the court's inherent authority, there must be a showing of "severe misconduct reflecting clear bad faith[.]" *Harvey,* 48 F.4th at 276. Defense counsel may have approached the line, but he did not cross it.

The Court must "exercise care in deciding whether to impose sanctions so as not to sanction attorneys who zealously represent their clients within the bounds of the law and in conformity with the code of professional responsibility, no matter how frustrated their adversaries may find opposing counsel's manner of representation and how confident those adversaries are with their own position." *Otis v. Demarasse*, 399 F. Supp. 3d 759, 766 (E.D. Wis. 2019). Many of the allegations in Michael's most recent filing and throughout this litigation reflect the contentious and personal nature of the unfortunate conflict between three brothers and counsel for the corporate defendant. But, the Court is not a tool to avenge personal vendettas.

For the foregoing reasons, I shall deny Michael's Motion.

An Order follows, consistent with this Memorandum Opinion.

Date: October 30, 2025                                     /s/
                                                          Ellen Lipton Hollander
                                                          United States District Judge