UNITED STATES DISTRICT COURT
for the District of Maryland

NOV 17 2025

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DEPOSIT BOX

ASHLEY BOSHEA as Administrator of the Estate of DAVID JOHN BOSHEA,

Plaintiff

V.                                               Civil Action No. 1-21-CV-00309-ELH

COMPASS MARKETING, INC.,

Defendant

---

MICHAEL WHITE'S MOTION FOR RECONSDIERATION UNDER RULE 59(e)

(Request for Hearing)

---

Michael White, herein referred to as Movant, respectfully requests from the Honorable Court to reconsider its order contained in Docket No. 386, and the related Memorandum Opinion in Docket No. 385. In support of this motion, Movant states, alleges, and prays:

INTRODUCTION

Movant respectfully suggests that John White and Mr. Stern do not, and never have, either legally or genuinely represented Compass Marketing, Inc. They have only represented their own personal interest in Smart Retail, Inc., a business they started together in 2019. ECF 33-1 at 1. The Court's Memorandum Opinion in Docket No. 385 (herein referred to as the Memorandum Opinion) indicates in several places that John White and Mr. Stern have so successfully obfuscated the ownership of Compass that the Court incorrectly recounts "Daniel and Michael White *may be* part owners of Compass" ECF 385 at FN 3 and "Compass and *its owner* and CEO, John White" ECF 385 at 1. Every party in this case has consistently maintained

1

over five years that Compass is owned by John White, Daniel White and Movant. While at one time there may have been a dispute alleged as to the amount of Compass that Movant owns, there has never been a suggestion that Movant is not a Compass shareholder. Moreover, the August 21, 2025, judgment in favor of Movant by the Honorable Robert Thompson sitting in the Circuit Court for Anne Arundel County, Maryland [1] now resolves that Daniel White and Movant together own 50% of Compass Marketing.

The consequences of John White and Mr. Stern masquerading as representatives of Compass have been profound and caused injury far beyond even the significant legal fees incurred by Movant. The manner in which John White and Mr. Stern have conducted this litigation has also damaged Compass, causing our business to owe millions of dollars in punitive damages, interest, costs, and attorney fees (both plaintiff and defense) that would have been avoided by simply paying the severance we agreed to in 2007, or settling the case for some reasonable amount. John White and Mr. Stern have instead used the last five years to pay themselves here and their fellow lawyers in the "unrelated" lawfare enormous amounts. Now, because of their conduct, when the Court enters the order for Mr. Boshea's children that is long overdue, it will not be worth the paper it is written on.

The most critical damage, outweighing all others, of allowing John White and Mr. Stern to pretend to represent Compass in the manner they chose was irreparable harm to David Boshea and his family. Instead of giving Mr. Boshea the severance we agreed we would pay, they used this case as part of their lawfare against Movant and Flywheel. During the five years John White and Mr. Stern were allowed to drag this case out, and because of their unilateral and corrupt decisions, severe injury was caused to Mr. Boshea's family

---

[1] *Compass Marketing, Inc. v. Daniel White et al.*, No. C-02-CV-23-000601 (Md. Cir. Ct. Anne Arundel Cnty. 2023).

bonds and to his own health. In Movant's opinion, John White and Mr. Stern's behavior while pretending to represent our company directly contributed to Mr. Boshea's despair, leading to his sad and early demise.

## STANDARD FOR MOTION FOR RECONSIDERATION

A motion for reconsideration is the appropriate vehicle to correct manifest errors of law or fact, present newly discovered evidence, or when there is an intervening change in the law. Generally, a motion for reconsideration is an extraordinary remedy that should be used sparingly. According to professors Wright and Miller, there are four basic grounds upon which a Rule 59(e) motion may be granted, namely:

> "First, the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. Second, the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence. Third, the motion will be granted if necessary to prevent manifest injustice. Serious misconduct of counsel may justify relief under this theory. Fourth, a Rule 59(e) motion may be justified by an intervening change in controlling law". 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1 at 124-27 (2d ed. 1995) (footnotes omitted).

## DISCUSSION

<u>Mr. Stern is not a genuine or legal representative of Compass</u>. Rather, Mr. Stern has been consumed with his connection with John White and their "one-penny RFID" electronic shelf labels side business, known as Tagnetics, Inc. and Smart Retail, Inc. (herein referred to as Tagnetics and Smart Retail). [2] As the Court notes in its Memorandum Opinion, on August 23,

---

[2] On June 2, 2021, Mr. Stern filed Compass Marketing, Inc.'s (herein Compass) Disclosure of Corporate Affiliations wherein they falsely allege: *"Tagnetics, Inc., is an affiliate of Compass*

3

2021, "Michael requested a hearing to determine the legitimacy of [Mr. Stern's] appearance in this case," and Movant has done so consistently ever since, including within his motion for sanctions. No such hearing was ever granted. Moreover, there is no record in this case that indicates the Court ever considered Movant's request or otherwise initiated an inquiry into Mr. Stern's authority to appear on behalf of Compass or ordered Mr. Stern to demonstrate his authority to represent Compass by providing retainer agreements, corporate resolutions, or personal confirmation from a managing agent of Compass.

<u>John White is not the "CEO" and is not a managing agent of Compass</u>. As shown by Daniel White's April 28, 2025, letter to Judge Garcia ECF 338 and by the public records of the Virginia State Corporation Commission, John White resigned as the Chief Executive Officer of Compass not later than October 2021. ECF 338. In a later opinion, this Court notes from that letter:

> "Daniel White asserts that "John White is not, and has not been, the Chief Executive Officer of Compass Marketing, Inc. at least since his resignation in 2021." Id. (emphasis in ECF 338). To support this contention, Daniel White attached "filings made with the Virginia State Corporation Commission" and an update to Compass's website. Id. at 2; see id. at 3–5. The filing is a "Stock Corporation – Annual Report" for Compass, submitted to the Virginia State Corporation Commission on March 7, 2022. ECF 338 at 3. Notably, it lists John White as the "Owner" of Compass and P. Todd Mitchell as the "Chief Executive Officer." Id. Moreover, the exhibit includes a "Q+A" with the "new CEO," Todd Mitchell. Id. at 4." ECF 340 at 8.

---

*Marketing, Inc., under the laws of certain states. To this end, Compass Marketing owns at least 10% of the shares and options of Tagnetics, Inc."* ECF 017. That "disclosure" was simply designed as cover for John White and Mr. Stern looting the accounts of Compass to satisfy the disgruntled investors in Tagnetics.

4

Despite the Court having received information and public records at the Virginia State Corporation Commission *made by John White* that raise doubts about John White's status as a legal or genuine managing agent of Compass, there is no record in this case that indicates the Court ever initiated an inquiry into John White's authority to appear on behalf of Compass or ordered John White to demonstrate his authority to represent Compass by providing minutes of shareholder or board meetings, corporate resolutions, or personal confirmation from another managing agent of Compass.

<u>There is good cause to find that Movant's motion for sanctions was timely filed</u>. The Court's record contains sufficient information to find good cause for Movant's timing in filing a motion for sanctions. For seven years, John White and Mr. Stern have constantly attacked Movant's family members as a means of general retaliation and an attempt to gain illegitimate leverage in this Boshea case, and the related Flywheel case and Maryland Case. In Maryland Case, on January 8, 2025, John White and Mr. Stern maliciously added Movant's wife, Debra White, as a defendant in that malicious lawsuit, after having already involved both of his children in their lawfare. When the Honorable Robert Thompson had an opportunity to address that despicable move, he dismissed the allegations against Debra White with prejudice and ordered sanctions against the offending parties, including counsel, for such an outrageous and meritless attack.

In this Court, by contrast, John White and Mr. Stern were permitted to maliciously add Movant's wife (and son) to Compass's witness list - and keep her listed for over two years. See ECF 173 (Jun 6, 2023) and ECF 348 (Aug 8, 2025). Counsel and the Court reviewed the witness list multiple times, yet at no point did anyone question John White or Mr. Stern as to why Movant's wife was added. Debra White's name had never appeared in

years of Compass's pretrial activity. Debra White has never met David Boshea and has no knowledge of the terms of his employment with Compass. Movant's wife was not added for any legitimate reason; rather, it was a tacit threat by John White and Mr. Stern to further target Movant's family by requiring his wife to wait in the hallway of the Baltimore federal courthouse throughout a two-week trial. Movant's wife had already been subject to attacks from John White and Mr. Stern, so Movant deferred filing his request for sanctions until after the trial concluded. ECF 173; ECF 348.

The second reason for delaying the sanctions request, as reflected in the Court's memorandum, was Movant's inability to incur additional legal fees during trial while already simultaneously bearing significant expense defending the malicious RICO litigation orchestrated by John White and Mr. Stern in the Flywheel matter before the United States District Court for the District of Maryland, and the illegitimate copycat in Anne Arundel County. Moreover, Movant expected that he would need to proceed pro se in the sanctions motion, as the legal profession generally discourages attorneys from seeking sanctions against opposing counsel even where justified. Movant did not wish to place prior counsel in the uncomfortable and professionally awkward position of requesting sanctions against fellow members of the bar.

The third-party complaint did indeed have a bearing on Movant. The third-party complaint was not only baseless, but malicious. Movant was identified in the complaint as plainly as possible without direct reference to his name, with allegations that Mr. Boshea received bi-weekly payroll payments totaling $51,800 to which he was not entitled. John White and Mr. Stern specifically claimed that Movant alone controlled the payroll system that allegedly resulted in these overpayments to Mr. Boshea. It is nearly impossible to

interpret the complaint as targeting anyone other than Movant and Daniel White as the alleged wrongdoers. Throughout the Boshea litigation, as well as in the Flywheel and Maryland cases, John White and Mr. Stern repeatedly accused Movant of similar misconduct. Like Mr. Tollefson's ridiculous "emergency" withdrawal on the eve of the first *Boshea* trial, this was a calculated effort to serve a malicious end - deterring Mr. Boshea from calling movant and Daniel White as witnesses who could substantiate the legitimacy of the employment contract and the debt owed to Mr. Boshea. Despite these efforts, Movant is thankful Mr. Boshea ultimately prevailed over their scheme.

The Flywheel case and Maryland Case are inextricably linked with the Boshea case. John White and Mr. Stern used the Boshea litigation to formulate and pursue their "RICO" conspiracy theory in the Flywheel case—a narrative they maintained for seven years across federal trial, appellate proceedings, and in Maryland courts. In 2025, they inserted false allegations into the Maryland case, accusing Mr. Boshea and Movant of conspiring to steal trade secrets, and then forwarded the amended Maryland pleadings to the Illinois probate court. They also used the Maryland case to improperly obtain a continuance in this action. Given this pattern of coordinated litigation conduct, these matters are plainly intertwined and should be considered together for purposes of evaluating bad faith in the Boshea litigation.

In *Chambers*[3], the Court held that federal courts have inherent power to sanction parties for conduct that abuses the judicial process, and this authority extends to sanctionable acts that occur both prior to the commencement of litigation and during its course. The Court stated that its inherent power allows for sanctions "for a full range of

---

[3] Chambers v. Nasco, Inc., 501 U.S. 32 (1991)

7

litigation abuses," including conduct "extending beyond the courtroom," such as attempts to deprive the court of jurisdiction, fraudulent acts before suit is filed, and other bad faith actions.

The court in *Chambers* noted that the alleged sanctionable conduct was that Chambers had attempted to deprive the court of jurisdiction by acts of fraud, nearly all of which were performed outside the confines of the court. The court deemed Federal Rule of Civil Procedure 11 insufficient to support the sanction against Chambers and declined to impose sanctions under 28 U.S.C. § 1927 because the statute was not broad enough to reach "acts which degrade the judicial system." The court therefore relied on its inherent power in imposing sanctions. In affirming the District Court and the Court of Appeals, the Supreme Court held that "the court did not err in imposing sanctions for conduct before other tribunals, since, as long as Chambers received an appropriate hearing, he may be sanctioned for abuses of process beyond the courtroom."

## CONCLUSION

For the reasons set forth above, Movant respectfully asserts that John White and Mr. Stern have never legally or genuinely represented Compass Marketing, Inc., but have instead pursued their personal interests. See Exhibit 1. Their control of the litigation, in disregard of the true ownership structure and the interests of the company and its shareholders, has caused profound harm, subjecting Compass to enormous unnecessary liability and costs, while irreparably harming Mr. Boshea's family.

John White and Mr. Stern's pattern of conduct have included falsely asserting authority over Compass, obscuring ownership, and engaging in protracted litigation primarily to serve

their personal and unrelated business interests. Despite all parties consistently acknowledging Movant's status as a shareholder, and despite authoritative findings confirming joint ownership with Daniel White, John White and Mr. Stern continued their pretense of exclusive control. Their conduct not only resulted in financial injury to Compass but also in severe personal harm to Mr. Boshea and his family, culminating in his untimely death.

Had John White and Mr. Stern simply honored Compass's obligations or sought a reasonable resolution rather than pursuing this self-serving strategy, such extensive harm could have been avoided. Movant therefore respectfully requests that the Court reconsider its ruling, give due regard to the manifest injustice and factual clarifications presented in this motion, and grant the relief requested.

Respectfully submitted,

Michael White
39650 Hiawatha Circle
Mechanicsville, MD 20650
301-481-5986
michaelrwhite@comcast.net

Certificate of Service

I hereby certify that on this 17th day of November, a copy of this notice was sent via first class mail, postage paid to counsel of record.

Stephen B. Stern Esq
Kagan Stern Marinello & Beard LLC
238 West Street
Annapolis Maryland 21401

Heather K. Yeung Esq
Davis, Agnor, Rapaport & Skalny LLC
11000 Broken Land Parkway Suite 600
Columbia Md 21044

Gregory J. Jordan Esq
Jordan & Zito LLC
350 North LaSalle Street Suite 1100
Chicago IL 60654

Thomas J. Gagliardo Esq
Gilbert Employment Law PC
1100 Wayne Ave Suite 900
Silver Spring Maryland 20910

Jonathan P. Kagan
Managing Partner
Kagan Stern Marinello & Beard LLC
238 West Street
Annapolis Maryland 21401

Michael R. White
39650 Hiawatha Circle
Mechanicsville Md 20659
michaelrwhite@comcast.net