# Exhibit 1

# IN THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY, MARYLAND

COMPASS MARKETING, INC.,                    :

     Plaintiff,                              :

                               :

v.                                          :     Case No. C-02-CV-23-000601

                               :

DANIEL WHITE, et al.,                       :

                               :

     Former Defendants.                     :

## DANIEL WHITE'S REPLY TO "MOTION TO STRIKE SANCTIONS"
### (Request for Hearing)

     Daniel White ("Movant") respectfully submits this Reply to the Respondents' "Motion to Strike Sanctions Against Non-Party".

     *"John White ... is a non-party to the above captioned matter."* [1]

     Seven years later, the $24,000,000,000 BSRICO (Blackmail Scheme RICO) [2] is where it was always destined to end. <u>All</u> despicable bogus claims against <u>all</u> former defendants have been voluntarily dismissed with prejudice, with judgments entered for all former defendants.

---

[1] *Compass Marketing, Inc. v. Daniel White, et al.*, John's Reply in Opp. to Motion for Sanctions, Case No. C-02-CV-230000601, first sentence (Anne Arundel Cir. Ct. October 24, 2025).

[2] At the core of the retaliation and extortion effort is the filing of five versions of the meritless "RICO" action—collectively referred to as BSRICO—that John and Mr. Stern conceived in 2018 and have maintained without interruption to this day. Morgan Lewis and Jeff Moorad filed the original bogus "RICO" complaint on February 14, 2022. Later attorneys Rod Rosenstein, Robert L. Ehrlich, Jr., King & Spaulding, KSMB, and SLG joined John's legal team. *Compass Marketing, Inc. v. Flywheel Digital, LLC, et al.*, GLR-22-379 (D. Md.) (Russell, C.J.).

1

Mr. Stern asserts he only followed instructions from John White, and his actions are *"a nullity"* [3] because Ms. Smithey filed three amendments. Ms. Smithey states she only relied on representations from "Morgan Lewis" and John White, and although she was a mediator in a directly related case, she had to withdraw for some different emergency. John now contends he *"is a non-party to the above captioned matter."* All "Compass" attorneys have abandoned this case - and Compass Marketing.

This spurious lawsuit, like the federal edition before it [4], was never about "RICO" or trade secrets or embezzlement. It was always a disgraceful joinder of retaliation against Movant for reporting securities fraud by John and Mr. Stern to federal authorities, and blackmail against Mr. DiPaula and Mr. Miller. This Court's judgment for Flywheel has ended the blackmail, but John and Mr. Stern continue their retaliation against Movant, both in the federal *Boshea* [5] case and the Arlington County dissolution [6]. Movant's request for sanctions, at its core, is a simple appeal for this Court to hold accountable those individuals who used this Court to file and maintain this fraudulent lawfare against the former defendants, and against the dignity of this Court.

---

[3] It is uncertain how Mr. Stern characterizes his efforts ostensibly on behalf of Compass and Tagnetics in federal bankruptcy, trial, and appellate courts in Ohio, where he shoveled Compass money through his law firm to disgruntled Tagnetics investors, and Mr. Fernandez, and invoiced Compass for his work. Perhaps that too is a nullity, and John a non-party.

[4] *Compass Mrktg, Inc. v. Flywheel Digital, LLC, et al.*, GLR-22-379 (D. Md.) (Russell, C. J.).

[5] *Ashley Boshea, as Administrator of the Estate of David John Boshea v. Compass Marketing, Inc.*, Civil No. ELH-21-309 (D. Md.) (Hollander, J.).

[6] *Michael White v. Compass Mrkt., Inc.*, Case No. 013CL21004012-00 (Cir. Ct. Va., Arlington).

John and Mr. Stern, specifically for this illegitimate lawsuit, maliciously fabricated the two critical pillars of the BSRICO conspiracy – Movant's "secret" investment in Flywheel with "embezzled" funds, and Mr. DiPaula's and Mr. Miller's theft of a fictitious Compass "trade secret". Exhibits within this Reply that prove the falsity of both the "secret investment" and "trade secret" theft have been publicly recorded and available in the *Boshea* case for years, as indicated by their docket stamps. Some attorneys who signed this spurious lawsuit and its federal precursor knew the claims were categorically false. Others obviously did not care whether they were or not.

Respondents' motion does not address the evidence of multiple frauds perpetrated by him or support his attorneys who signed his filings over six years. Respondent does not acknowledge the false stories he told, and paid others to repeat, to law enforcement agencies, regulatory bodies, newspapers, tabloids, employers, Ohio bankruptcy court, Illinois probate court, federal and state trial courts, Courts of Appeal for the Fourth and Sixth Circuits, Judicial Disabilities Commission, juries, prosecutors, lawyers, families, litigation investors, and innumerable third parties, nor falsehoods to this Court.

For the last seven years, John was the self-proclaimed alter-ego of Compass Marketing, Tagnetics and Smart Retail, and deceptively held himself out as Chairman, Chief Executive Officer, and majority shareholder of all three. Mr. Stern was the attorney for all three, and a Smart Retail owner. John wrote the first BSRICO draft and hired lawyers to sign their good names on blackmail ransom notes disguised as lawsuits. This Court should impose sanctions because counsel repeatedly advanced and expanded allegations they knew were false, and used this Court to perpetuate meritless, retaliatory

3

litigation built on knowingly fabricated "evidence," despite clear proof those assertions

were untrue. This conduct is precisely the type of litigation abuse Md. Rule 1-341 was

designed to deter and punish and should not be permitted to stand unaddressed.

<u>BS RICO Day One</u>



---

**Chip**

**John White** <jwhite@compassmarketinginc.com>                    Fri, Nov 2, 2018 at 11:15 AM
To: Daniel White <dwhite@compassmarketinginc.com>, Mike White <mwhite@compassmarketinginc.com>, Ceil Eileen
<eburgess@compassmarketinginc.com>, Kathy Barilone <kbarilone@compassmarketinginc.com>

He sold Flywheel for $200 million yesterday.


--
John White
Chairman/CEO
Compass Marketing Inc.
www.compassmarketinginc.com

Figure 1 - John's Discovery of Flywheel's "$200 million" Sale (November 2, 2018)

On November 2, 2018, John learned that *"Chip ... sold Flywheel for $200 million*

*yesterday"* and sent the above email (*Figure 1*) to four of his brothers and sisters.

Desperate to pay back investors in his Tagnetics/Smart Retail Ponzi scheme, John

determined he was going to get what he thought was his share of that Flywheel money by

any means necessary, no matter who he had to trample.

John quickly hired three long-time associates and Mr. Stern to concoct a "fraud

investigation" and immediately announced they had "discovered a conspiracy" that

included theft of his $24 billion trade secret, previously undetected for five years, and

multiple embezzlement schemes unnoticed for twenty years. John's fake conspiracy grew

to include international public companies, respected financial institutions, family members, police departments, Annapolis City, David Boshea and his daughter, friends, employees, and made-up "hit men" kidnappers driving a McCormick Paint van.

<u>Inventing "The RICO Conspiracy"</u>

Knowing they would never go along with proclaiming Mr. DiPaula and Mr. Miller (Chip and Patrick) stole anything from Compass, John's first step was to include the other Compass owners, Movant and Michael White, as "conspirators" with Flywheel [7]. Within days of learning about Flywheel's sale, John sent incoherent "termination" emails to Movant and Michael, to which they immediately responded by email explaining to John that he had no such authority, and met in Annapolis to tell him in person. A few weeks later, John and Mr. Stern, his new Smart Retail [8] partner, then imagined a "board meeting" at Mr. Stern's law office attended only by those two, and fictitiously "removed" Movant and Michael from Compass' board.

---

[7] Daniel and Michael together own 50% of Compass Marketing and were two of three members of the board when the last legitimate shareholders meeting was held. The three owners' previous familial relationship is not legally relevant, but wherever attorneys have purported to be representatives of "Compass", they could only have meant John, now a non-party. No single owner or director ever had unilateral authority to cause Compass to file these bogus lawsuits.

[8] Smart Retail, Inc., Articles of Incorporation, Filing ID 2019-000868971, incorporated August 2, 2019, Wyo. Sec'y of State; registered agent C T Corporation System; principal and mailing address 222 Severn Avenue, Building 14, Suite 200, Annapolis, MD 21403. Incorporator: John White. Attorney and electronic filer: Ryan Beard, Kagan Stern, who submitted the filing electronically on August 2, 2019, and executed the registered agent consent and certified compliance under Wyoming law. The filing was made under penalty of perjury, with express affirmation of John White's consent as incorporator, and the acknowledgment of criminal penalties for false filings under W.S. 6-5-308. (Wyo. Sec'y of State Aug. 2, 2019).

On May 1, 2019, realizing Movant and Michael would not fall for "being terminated" by John or "removed" by a fake board meeting, John hired the "security team" of Ron Bateman and Chuck Rubac to lock Movant and Michael out of the Compass office. That same day, John hired Todd Mitchell as Compass' "president" [9] for $650,000 per year. John also hired his old Tagnetics bookkeeper Luis Fernadez [10], who, together with Mr. Bateman, Mr. Rubac, and Mr. Mitchell, were paid nearly five million dollars through Compass payroll and constituted the phony "investigations team".

John immediately instructed Mr. Mitchell, Mr. Fernadez, Mr. Bateman, and Mr. Rubac to work with Mr. Stern to produce an "investigation" that would corruptly "discover" Movant and Michael had embezzled from Compass as part of a conspiracy with Chip and Patrick. (*Figure 2*). Meanwhile, Mr. Stern created Smart Retail, Inc. in Wyoming, which he owned with John, and began transferring Compass assets there. Mr. Stern invoiced Compass in July 2019 for meeting with Mr. Rubac and Mr. Bateman, and research of Ascential and "RICO predicate offenses". (*Figure 2*).

At the core of this extortion scheme was the deliberate use of the judicial system as a weapon. John and Mr. Stern deliberately employed a strategy to coerce, intimidate, and financially exhaust Movant by asserting claims they knew were false. To pursue this baseless litigation, they willfully fabricated the two cornerstone allegations of the

---

[9] Mr. Mitchell would later quit during the U. S. Department of Labor investigation into diversion of employee 401(k) withholdings but "return" in October 2021 as Compass' sock puppet CEO.

[10] Mr. Fernandez contacted John as soon as he was subpoenaed by aggrieved investors in the Tagnetics' Ohio bankruptcy case. In response, John hired Mr. Fernandez as "CFO" for Compass, Tagnetics and Smart Retail and illicitly paid Tagnetics investors $486,706 with Compass funds.

supposed BSRICO conspiracy: the knowingly false claim that Movant secretly invested

in Flywheel with embezzled funds; and the cockamamie accusation that Mr. DiPaula and

Mr. Miller stole a non-existent Compass "trade secret."

Case 1:21-cv-00309-ELH   Document 269-6   Filed 05/21/24   Page 2 of 3

LAW OFFICES
**KAGAN STERN MARINELLO & BEARD, LLC**
238 WEST STREET
ANNAPOLIS, MARYLAND 21401
Telephone 410-216-7900
Facsimile 410-705-0836

Compass Marketing, Inc.                                                    August 5, 2019
c/o John White, CEO
222 Severn Avenue - Building 14 - Suite 200
Annapolis, Maryland 21403

|           |                          | Matter:  | 191668 |
| ATTN:     |                          | Invoice: | 703    |
| RE:       | Shareholder Dispute      |          |        |

| Date | Description | Hours | Amount | Lawyer |
|------|-------------|-------|--------|--------|
| Jul-08-19 | Meet with J. White regarding status and strategy. | 0.60 | 225.00 | SBS |
| Jul-09-19 | Telephone call with C. Rubac regarding status and strategy. | 0.30 | 112.50 | SBS |
| Jul-15-19 | Meet with C. Rubac and R. Bateman (1.4); preliminary review and analysis of Ascential financial report (.5). | 1.90 | 712.50 | SBS |
| Jul-16-19 | Research civil RICO claim elements (3.0) [Half Charge = $225.00]; research civil RICO standing requirements (1.0); draft memo regarding same (.3). | 2.80 | 420.00 | EMM |
| Jul-17-19 | Research civil RICO predicate offenses (1.3); research and identify issues regarding civil RICO claim elements (2.0); draft memo regarding same (.3) [No Charge = $45.00]. | 3.30 | 495.00 | EMM |
| Jul-18-19 | Meet with J. White regarding strategy. | 0.20 | 75.00 | SBS |
|  | Research factually analogous civil RICO case law. | 2.30 | 345.00 | EMM |
| Jul-19-19 | Analyze RICO/fraud issues. | 0.20 | 75.00 | SBS |
| Jul-26-19 | Research ivil RICO predicate offense elements (1.0); identify possible legal issues regarding predicate offenses (.2); draft memo regarding same (.1) [No Charge = $15.00]. | 1.20 | 180.00 | EMM |

Figure 2 - COMPASS Billing Statement from KSMB (July 2019)

7

By July 16, 2019, just seven months after learning "Chip sold Flywheel for $200 million," John and Mr. Stern, joined by fellow Tagnetics and Smart Retail investor Mitch Goldsmith, had merged the retaliation against Movant and the extortion against Chip and Patrick into the BSRICO: **"RE: possible contingency case vs. Dan & Chip"** (*Figure 3*). One of the many problems with Mr. Goldsmith's early BSRICO plan was that John and Mr. Stern were running out of time. As shown below through <u>Compass</u> emails included in the *Boshea* case, John, Mr. Stern, and Mr. Goldsmith each acknowledged the October 2019 statute of limitations deadline, even for BSRICO (*Figure 4*).

> *"We [John and Mr. Stern] have a follow up meeting with the FBI Monday. After understanding how they intend to prosecute and/or if restitution can be included we will decide on engagement. <u>We do understand the concern around potential statute of limitations for some of the civil claims</u>. We will make an informed business decision next week. Appreciate your patience while we consider our best options. John".* [September 20, 2019]. (*Figure 4*).

John and Mr. Stern were still hoping their dishonest reports to law enforcement, employers and the press would prompt false criminal charges or other punitive actions against Movant and Michael (*Figure 4*). Those efforts failed – the allegations were so absurd. Unlike John's lawyers, law enforcement investigators did not just accept the moronic "private investigation" supplied by John, Mr. Stern, Mr. Bateman and Mr. Fernandez without independently verifying the reports, and their thorough review exposed the scheme as unfounded.

*Compass* MARKETING                                    John White <jwhite@compassmarketinginc.com>

**RE: possible contingency case vs. Dan & Chip**
1 message

Goldsmith, Mitchell D. <mgoldsmith@taftlaw.com>                 Tue, Jul 16, 2019 at 6:00 PM
To: John White <jwhite@compassmarketinginc.com>

John has won some big lawsuits for Peoples Gas in Illinois (they have booted out other counsel recently to take over
more of their matters...not sure if I have any clippings on it)...

From: John White <jwhite@compassmarkelinginc.com>
Sent: Tuesday, July 16, 2019 9:07 AM
To: Goldsmith, Mitchell D. <mgoldsmith@taftlaw.com>
Subject: Re: possible contingency case vs. Dan & Chip

Didn't he case Kennedy had get any press? Anything I can read about ?

John White
Chairman/CEO
Compass Marketing Inc
www.compassmarketinginc.com

On Tue, Jul 16, 2019, 5:30 AM Goldsmith, Mitchell D. <mgoldsmith@taftlaw.com> wrote:

I spoke to one of our top litigators, John Kennedy who was intrigued by the concept and would be willing to
discuss it further. Let me know some available times and I can try to set up a call (also let me know if you want to
include Steven or anyone else on that call)...

Figure 3 – Goldsmith's Email "RE: contingency case vs. Dan & Chip" (July 16, 2019)

John White <jwhite@compassmarkelinginc.com>

**Re: Proposal for litigation assessment/engagement - subject to attorney client
privilege**
1 message

John White <jwhite@compassmarkelinginc.net>                          Fri, Sep 20, 2019 at 12:12 PM
To: "Kennedy, John" <jkennedy@taftlaw.com>, "Goldsmith, Mitchell D." <mgoldsmith@taftlaw.com>, John White
<jwhite@compassmarkelinginc.com>
Cc: "stem@kaganstern.com" <stem@kaganstern.com>, "Babbitt, Elizabeth E." <ebabbitt@taftlaw.com>

Thanks John

We have a follow up meeting with the FBI on Monday.
After understanding how they intend to prosecute and / or if restitution can be included we will decide on
engagement.

We do understand the concern around potential statute of limitations for some of the civil claims.

We will make an informed business decision next week. Appreciate your patience while we consider our
best options.

Thanks John
John

Figure 4 – John and Mr. Stern's Reply to Mr. Goldsmith (September 20, 2019)

## BSRICO PILLAR ONE – Falsify Daniel's "Secret Investment" in Flywheel
(Moving the Statute of Limitations Goal Post)

John and Mr. Stern knowingly misrepresented a legitimate cashier's check that Movant issued to Chip DiPaula on October 14, 2015, recasting it as a "secret" Flywheel investment. Movant emailed the check to John on October 15, 2015, expressly identifying it as a lawful (and agreed) business payment. Mr. Stern used this same check and email during Movant's deposition in the *Boshea* case on November 29, 2021. Yet, when John and Mr. Stern filed the initial BSRICO complaint ten weeks later on February 14, 2022, they deliberately detached the check from the explanatory email and alleged— falsely—that it was first "discovered" by Mr. Fernandez during a 2020 "audit".

On August 25, 2015, Chip sent an email to John and Michael: *"Unpaid wages"*, *"seeking your attention and action to pay outstanding wages owed to me. We have had numerous rounds of conversation during which you confirmed to me that Compass owes me a significant amount in outstanding wages ..."* (*Figure 5*).

Michael forwarded Chip's email to Movant on that same day, August 25, 2015. (*Figure 5*). At John's request, Movant emailed Chip the next evening, August 26, 2015, and offered to meet with him to resolve the matter. (*Figure 6*). Chip emailed Movant the next morning, August 27, 2015, and agreed to meet. (*Figure 6*). Movant forwarded Chip's August 27, 2015, email to John and Michael. (*Figure 6*). John responded to Movant: *"Looks promising. Can you flip me the note you sent him?"* (*Figure 6*).

Movant, John and Michael agreed to pay Chip and Patrick $50,000 to resolve all outstanding pay and other liabilities. On October 15, 2015, Movant sent John and Michael an email with a copy of his cashier's check #300696818-4 embedded in the email. (*Figure 7*). *"Copy of first payment on the DiPaula/Miller severance attached. As a reminder, I/we agreed to $15k each for any/all pay and liability plus 20k for CD for his expenses ... 60k less than they asked for and probably 75k less than the triple damages the AG would have made us pay."* (*Figure 7*). John responded to Movant three minutes later: *"Great work! ... I for one will be sleeping better tonight."* (*Figure 8*).

At Movant's November 29, 2021, deposition, Mr. Stern expressly confirmed that the $10,000 cashier's check to Mr. DiPaula was part of a single, uninterrupted email chain between Movant and John, in which John authorized and approved the severance payment. In Movant's *Boshea* deposition, **Mr. Stern introduced the email and check as one document**—KSMB Exhibit 19—exactly as Movant sent it to John and Michael White on October 15, 2015, and exactly as it existed in Compass's files. Yet when Morgan Lewis filed the first BSRICO complaint on February 14, 2022, [11] —and again in Mr. Stern's state complaint on March 27, 2023—they deliberately detached the check from its explanatory email and falsely alleged it was first "discovered" by Mr. Fernandez in 2020. John and Mr. Stern then knowingly misrepresented this severance as a "secret" Flywheel investment and illegitimate payment to Mr. DiPaula and Mr. Miller. [12]

---

[11] *Compass Mrktg, Inc. v. Flywheel Digital, LLC, et al.*, GLR-22-379 (D. Md.) (Russell, C.J.).

[12] Mr. Stern: *"the previous exhibit before that should have been just a two page document. One is an email dated October 15, 2015 at 10:51 a.m. is the most recent in the string. There was*

# ◢◣ Gmail

---

### Fwd: Unpaid wages
1 message

---

Mike White <mwhite@compassmarketinginc.com>                                    Tue, Aug 25, 2015 at 11:14 AM
To: Daniel J White <dwhite@compassmarketinginc.com>

———— Forwarded message ————
From: Chip DiPaula <cdipaula@gmail.com>
Date: Tuesday, August 25, 2015
Subject: Unpaid wages
To: John White <jwhite@compassmarketinginc.com>, Michael White <mwhite@compassmarketinginc.com>

Gentlemen,

I am seeking your attention and action to pay outstanding wages owed to me. We have had numerous rounds of conversation during which you confirmed that Compass owes me a significant amount in outstanding wages for accrued, unused paid leave. However, subsequent correspondence and your lack of follow through is worrisome and disappointing. These wages are owed and were due to be paid in October 2014. These outstanding wages should be paid immediately, or at the latest, by Compass' next payroll date of September 1, 2015.

In addition, I did fulfill your request to complete expense account reconciliation three months ago, and look forward to Compass' prompt payment of the reimbursements to which I am also entitled.

Please respond promptly with your plans for payment.

Thank you,

Chip

Figure 5 - Chip's Email to John and Michael (August 25, 2015)

---

*another one beneath that and attached to it was a copy of an Official Check from M & T Bank. Remitter Daniel J. White dated October 14, 2015 for $10,000 paid to the order of James C. DiPaula. Those two pages is one document and that's one exhibit. I guess that's 19 ... '[]*Daniel White Dep. P. 167:1, Nov. 29, 2021, *Boshea*, No. 1:21-cv-00309 (D. Md.). (*Figure 9*).

# M Gmail

---

**(no subject)**
4 messages

---

Daniel White <dwhite@compassmarketinginc.com>                      Wed, Aug 26, 2015 at 7:34 PM
To: cdipaula@gmail.com

Chip,

Good evening.

I am hesitant to wade in at this late stage but Mike forwarded me an email that you sent a couple of days ago. I am sorry this situation has gotten where it has and sorry that I did not know about it sooner.

If you would like me to try and help resolve it I am glad to meet you for breakfast or dinner next week. If you feel like you have talked it out enough already I completely understand.

Best Regards,

Daniel White

---

Chip DiPaula <cdipaula@gmail.com>                                 Thu, Aug 27, 2015 at 9:44 AM
To: Daniel White <dwhite@compassmarketinginc.com>

Dan,
Always great hearing from you, and I would certainly enjoy meeting next week.
Please let me know what's best for your schedule, and I'll do my best to make it work.

Thanks,
Chip

---

Daniel White <dwhite@compassmarketinginc.com>                     Thu, Aug 27, 2015 at 10:10 AM
To: John White <jwhite@compassmarketinginc.com>
Bcc: Michael Robert White <mwhite@compassmarketinginc.com>

Daniel White
———— Forwarded message ————
From: "Chip DiPaula" <cdipaula@gmail.com>
Date: Aug 27, 2015 9:44 AM
Subject: Re:
To: "Daniel White" <dwhite@compassmarketinginc.com>
Cc:

---

John White <jwhite@compassmarketinginc.com>                       Thu, Aug 27, 2015 at 10:17 AM
To: Daniel White <dwhite@compassmarketinginc.com>

Looks promising.
Can you flip me the note you sent him?

John White
Chairman/CEO

---

Figure 6 – John and Movant's Email Chain RE: Movant Meeting with Chip

13

 Gmail

**CCD SEVERANCE PMT 1 DW 2015OCT15 10/15/2015 10:34**
2 messages

Compass Marketing #18400 <printer@compassmarketinginc.com>          Thu, Oct 15, 2015 at 10:34 AM
To: Daniel White <dwhite@compassmarketinginc.com>

Scanned from MFP07757190
Date:10/15/2015 10:34
Pages:2
Resolution:300x300 DPI

CCD SEVERANCE PAYMENT 1 DW 2015OCT15-10152015103438.pdf
1195K

Daniel White <dwhite@compassmarketinginc.com>          Thu, Oct 15, 2015 at 10:51 AM
To: John White <jwhite@compassmarketinginc.com>, "White, Michael Robert" <mwhite@compassmarketinginc.com>
Bcc: Daniel White <dwhite@compassmarketinginc.com>

Copy of first payment on the DiPaula/Miller severance attached.

As a reminder, I/we agreed to 15k each for any/all pay and liability plus 20k to CD for his expenses (10 of which was his AYC initiation fee we agreed to pay a few years ago). 60k less than they asked for, and probably 75k less than the triple damages the AG would have made us pay.

Will need 1099s for them at the end of the year.

Daniel White
Compass Marketing, Inc.

mobile: 240-298-8156
facsimile: 240-214-0414
text: 2402988156@vtext.com
[Quoted text hidden]

CCD SEVERANCE PAYMENT 1 DW 2015OCT15-10152015103438.pdf
1195K



Figure 7 – Daniel's Email and Cashier's Check for First Payment (October 15, 2015)

14



## Re: CCD SEVERANCE PMT 1 DW 2015OCT15 10/15/2015 10:34
1 message

**John White** <jwhite@compassmarketinginc.com>                              Thu, Oct 15, 2015 at 10:54 AM
To: Daniel White <dwhite@compassmarketinginc.com>
Cc: "White, Michael Robert" <mwhite@compassmarketinginc.com>

Great work!

I also saw you got Janie and Mike O locked into the non compete!
Ecommerce is our rock now! Who would have ever thought....

I for one will be sleeping better this evening.

Thx Bro!
John

John White
Chairman/CEO
Compass Marketing Inc
www.compassmarketinginc.com

> On Oct 15, 2015, at 10:51 AM, Daniel White <dwhite@compassmarketinginc.com> wrote:
>
> Copy of first payment on the DiPaula/Miller severance attached.
>
> As a reminder, I/we agreed to 15k each for any/all pay and liability plus
> 20k to CD for his expenses (10 of which was his AYC initiation fee we
> agreed to pay a few years ago). 60k less than they asked for, and probably
> 75k less than the triple damages the AG would have made us pay.
>
> Will need 1099s for them at the end of the year.
>
>
> Daniel White
> Compass Marketing, Inc.
>
> mobile: 240-298-8156
> facsimile: 240-214-0414
> text: 2402988156@vtext.com
>
> ———— Forwarded message ———
> From: Compass Marketing #18400 <printer@compassmarketinginc.com>
> Date: Thu, Oct 15, 2015 at 10:34 AM
> Subject: CCD SEVERANCE PMT 1 DW 2015OCT15 10/15/2015 10:34
> To: Daniel White <dwhite@compassmarketinginc.com>
>
>
> Scanned from MFP07757190
> Date:10/15/2015 10:34
> Pages:2
> Resolution:300x300 DPI
> —————————————
> <CCD SEVERANCE PAYMENT 1 DW 2015OCT15-10152015103438.pdf>

Figure 8 - John "Great Work!" Email to Daniel (October 15, 2015)

Transcript of Daniel J. White
Conducted on November 29, 2021                   167

| | | |
|---|---|---|
| 1 | MR. STERN: Okay, and we were -- there was | 11:36:46 |
| 2 | apparently some misunderstanding or | 11:36:49 |
| 3 | miscommunication about the last exhibit. The last | 11:36:50 |
| 4 | exhibit -- or I guess there was an introduction of | 11:36:52 |
| 5 | an exhibit for a check dated December 9, 2015 but | 11:36:56 |
| 6 | the previous exhibit before that should have been | 11:37:00 |
| 7 | just a two page document. One is an e-mail dated | 11:37:02 |
| 8 | October 15, 2015 at 10:51 a.m. is the most recent | 11:37:07 |
| 9 | in the string. There was another one beneath that | 11:37:11 |
| 10 | and attached to it was a copy of an Official Check | 11:37:14 |
| 11 | from M & T Bank. Remitter Dan White -- Daniel J. | 11:37:17 |
| 12 | White dated October 14, 2015 for $10,000 paid to | 11:37:21 |
| 13 | the order of James C. DiPaula. Those two pages is | 11:37:24 |
| 14 | one document and that's one exhibit. I guess | 11:37:27 |
| 15 | that's 19 and then we're on to 20 if I'm doing the | 11:37:31 |
| 16 | numbering correctly. 20 being an Official Check, | 11:37:33 |
| 17 | M & T Bank. Remitter Daniel White dated | 11:37:37 |
| 18 | December 9, 2015 paid to the order of James Chip | 11:37:42 |
| 19 | DiPaula for $25,000. | 11:37:45 |
| 20 | MR. JORDAN: Hold on. What is that? I | 11:37:48 |
| 21 | have a corrected Exhibit 19 is the e-mail and the | 11:37:51 |
| 22 | $10,000 check. That's what Heather just sent to | 11:37:55 |

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

Figure 9 - Mr. Stern's Deposition of Movant (November 29, 2021)

To dodge the October 2019 statute of limitations, John and Mr. Stern deliberately separated Movant's October 15, 2015, email from its attached cashier's check and intentionally falsified the record to depict a lawful severance payment as a covert Flywheel investment funded by embezzled money. They later repeated this knowingly false narrative in multiple pleadings and appeals, claiming that Mr. Fernandez had "discovered" the check during a 2020 audit—a contention wholly fabricated to conceal their manipulation of evidence and extend their fraudulent claims. (*Figure 6*).

> *"A Compass auditor on the internal investigation team discovered multiple checks issued from Daniel White's personal account to Defendant Chip DiPaula. These checks were part of a severance scheme designed to deprive Compass of funds (and harm Compass in other respects, such as use Compass' funds to covertly invest in and build a competitor that became Flywheel) ... On October 14, 2015, more than 13 months after Defendant DiPaula resigned from Compass, Daniel had M&T Bank issue a cashier's check for $10,000 to DiPaula, using Daniel's personal funds."* Compass Marketing Complaint ¶ 202. (*Figure 10*).

The allegation that Movant stole Compass funds in 2015 to secretly invest in Flywheel—and that Mr. Fernandez later "discovered" the cashier's check during an audit—is a deliberate lie. This fabricated assertion was the first essential pillar of the BSRICO narrative devised by John and Mr. Stern. This Court should not permit such abuse of process to stand. Knowingly advancing malicious false claims in bad faith constitutes the core of sanctionable conduct under Md. Rule 1-341. See *Christian v. Maternal–Fetal Medicine Assocs.*, 459 Md. 1, 19–21 (2018) (Rule 1-341 sanctions appropriate where claims are knowingly false or asserted with reckless disregard for truth); *Inlet Associates v. Harrison Inn Inlet, Inc.*, 324 Md. 254 (1991) ("In bad faith,"

within meaning of statute providing for award of costs and/or attorney fees in proceeding maintained or defended in bad faith, means vexatiously, for purpose of harassment or unreasonable delay, or for other improper reasons); *In re Chaires*, 249 B.R. 101 (2000) (bad faith component of Maryland procedural rule providing for award of counsel fees against party or party's attorney, for pursuing litigation in bad faith or without substantial justification, requires inquiry into subjective state of mind of the actor, and inherently speaks to intent to inflict harm); *Seney v. Seney*, 97 Md.App. 544 (1993) ("Bad faith" in context of rule permitting court to require party who maintains or defends action in bad faith to pay opponent's attorney's fees means vexatiously, for purpose of harassment or unreasonable delay, or for other improper reasons); *Watson v. Watson,* 73 Md.App. 483 (1988) (sanctions were upheld where fraud was clearly established).

As observed by the Supreme Court in *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766-67 (1980): The bad-faith exception for the award of attorney's fees is not restricted to cases where the action is filed in bad faith. "'[B]ad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Hall v. Cole*, 412 U.S. 1, 15 (1973). The power of a court over members of its bar is at least as great as its authority over litigants. If a court may levy counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes. Attorneys' fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record. But in a proper case, such as here, sanctions are within a court's powers.

18

**E. Compass Discovers Michael and Daniel White are Connected to Miller, DiPaula, and Flywheel's Trade Secret Theft**

202.    A Compass auditor on the internal investigation team discovered multiple checks issued from Daniel White's personal account to Chip DiPaula. These checks were the start of a trail that led Compass to recently discovery that Michael and Daniel White are part of the conspiracy by DiPaula and Miller to found and operate Flywheel as a competitor of Compass's using Compass's stolen trade secrets and proprietary information and know how.

203.    On October 14, 2015, more than 13 months after DiPaula resigned from Compass, Daniel had M&T Bank issue a cashier's check for $10,000 to DiPaula, using Daniel's personal funds.

Figure 10 – Daniel's Cashier's Check Separated from His 10/15/2015 Email; Described As "Discovered" By "Compass Auditor" Fernandez in BSRICO (February 14, 2022).

<u>BSRICO PILLAR TWO - Patrick Miller's "Secret" 2015 Digital Grocery Presentation</u>
("Discovering" the Fake Trade Secret)

To complete the BSRICO narrative, John and Mr. Stern also had to devise something they could describe as a "stolen trade secret" **and** a reason they had not "discovered" Flywheel using it for five years. So, John, Mr. Stern and Mr. Fernandez pretended to find Patrick Miller's November 5, 2015, "Online & Digital Grocery Summit USA 2015" presentation on <u>January 20, 2020</u> – even though John sent the same announcement to Movant and Chris Feiss [13] on September 1, 2015. (*Figures 11 and 12*).

John forwarded [14] the Online & Digital Grocery Summit USA 2015 email invitation to Movant and Mr. Feiss on September 1, 2015, at 2:55 AM, included a link to the agenda, and wrote: *"note that Patrick Miller is a speaker."* (*Figure 11*). Later that morning, Mr. Feiss wrote back to John and Movant, offering to find a client to pay for attending the summit, and suggesting Compass only attend if a Compass employee could also give a presentation at the conference, <u>like Patrick Miller</u>. *"Would only do if we can split w a client [and] Alex can get a similar speaking role to PM."* (*Figure 12*). In both federal trial and appellate courts, and in this Court, John and Mr. Stern repeatedly and falsely insisted they had never seen Patrick Miller's 2015 Digital Grocery Summit USA presentation until Mr. Fernandez "discovered" on January 20, 2020. (*Figures 13- 21*).

---

[13] John employed Mr. Feiss as "Chief Strategy Officer" for Compass, Tagnetics, and Smart Retail. Mr. Feiss worked for Compass throughout this BSRICO, and knew this was false.

[14] John received the Online & Digital Grocery Summit 2015 email invitation on August 21, 2015, and asked for pricing information on August 28, 2015. (*Figure 11*).

 Gmail

---

**Fwd: Online & Digital Grocery Summit USA 2015**

John White <jwhite@compassmarketinginc.com>                                    Tue, Sep 1, 2015 at 2:55 AM
To: Daniel White <dwhite@compassmarketinginc.com>, Chris Feiss <cfeiss@compassmarketinginc.com>, Dayna Bernard
<dbernard@compassmarketinginc.com>

Note that Patrick Miller is a speaker...

http://www.digitalgrocerysummit.com/#/agenda/cjg9

———— Forwarded message ————
From: Alex McCord <amccord@compassmarketinginc.com>
Date: Fri, Aug 28, 2015 at 9:29 AM
Subject: Re: Online & Digital Grocery Summit USA 2015
To: John White <jwhite@compassmarketinginc.com>
Cc: Dayna Bernard <dbernard@compassmarketinginc.com>


Gold: $9,050
Silver: $7,550
Bronze: $6,050

Details for each outlined in the attached.  We may be able to link with a partner to share costs, but with current
environment may make sense to pass for now.


On Fri, Aug 28, 2015 at 7:15 AM, John White <jwhite@compassmarketinginc.com> wrote:
Alex,
Did they give booth costs associated with it?
John


John White
Chairman/CEO
Compass Marketing Inc
www.compassmarketinginc.com

On Aug 21, 2015, at 12:55 PM, Alex McCord <amccord@compassmarketinginc.com> wrote:

John and Shawn,

Wanted to put the following on your radar in case we have any interest.

Online & Digital Grocery Summit USA 2015

Compass has been invited to sponsor this event, which would include a booth and speaking
engagement.  There are a lot of the relevant players attending, and wanted to see if you guys think this
would be a good use of our time.

Digest and let me know any questions you might have.  I know its not opportune timing, but wanted to
surface none the less.

Thanks
Alex


Figure 11 – John's Email – "Patrick is a speaker" Digital Grocery Summit USA 2015

(September 1, 2015)

21

 Gmail

**Fwd: Online & Digital Grocery Summit USA 2015**

Chris Feiss <cfeiss@compassmarketinginc.com>                    Tue, Sep 1, 2015 at 7:50 AM
To: John White <jwhite@compassmarketinginc.com>
Cc: Daniel White <dwhite@compassmarketinginc.com>, Dayna Bernard <dbernard@compassmarketinginc.com>

Would only do if
We can split w a client
Alex can get similar speaking role to PM

Sent from my iPhone

On Sep 1, 2015, at 2:55 AM, John White <jwhite@compassmarketinginc.com> wrote:

> Note that Patrick Miller is a speaker...
>
> http://www.digitalgrocerysummit.com/#!agenda/cjg9
>
>
> ———— Forwarded message ————
> From: **Alex McCord** <amccord@compassmarketinginc.com>
> Date: Fri, Aug 28, 2015 at 9:29 AM
> Subject: Re: Online & Digital Grocery Summit USA 2015
> To: John White <jwhite@compassmarketinginc.com>
> Cc: Dayna Bernard <dbernard@compassmarketinginc.com>
>
>
> Gold: $9,050
> Silver: $7,550
> Bronze: $6,050
>
> Details for each outlined in the attached. We may be able to link with a partner to share costs, but with
> current environment may make sense to pass for now.
>
>
> On Fri, Aug 28, 2015 at 7:15 AM, John White <jwhite@compassmarketinginc.com> wrote:
>> Alex,
>> Did they give booth costs associated with it?
>> John
>>
>>
>> John White
>> Chairman/CEO
>> Compass Marketing Inc
>> www.compassmarketinginc.com
>>
>> On Aug 21, 2015, at 12:55 PM, Alex McCord <amccord@compassmarketinginc.com> wrote:
>>
>>> John and Shawn,
>>>
>>> Wanted to put the following on your radar in case we have any interest.
>>>
>>>  Online & Digital Grocery Summit USA 2015
>>>
>>> Compass has been invited to sponsor this event, which would include a booth and speaking
>>> engagement. There are a lot of the relevant players attending, and wanted to see if you

Figure 12 – Mr. Feiss' Response to John and Movant – *"only if we ... can get a speaking role similar to PM [Patrick Miller]"* (September 1, 2015)

22

186.    Fernandez engaged in further research and located a Flywheel-branded Power Point presentation and voiceover that Miller gave at the Online & Digital Grocery Summit USA on November 5, 2015 ("the Digital Grocery Presentation"). Miller's introduction included a review of his clients: P&G, J&J, Mars, McCormick, Ferrero, 5 Hour Energy, and Colgate. All of of these companies were Compass clients or former Compass clients.

Discovering how Amazon is a Brand, Social and Search Platform
Patrick Mïer, Co-Founder, Flywheel Digital



3. FlyWheel Digital pptx

Screenshot from Digital Grocers Summit USA Website. Available at:
https://www.digitalgrocerysummit.com/presentations.

187.    Fernandez gave the article and the Digital Grocery Presentation to John White, who (i) immediately recognized the clients Miller claimed were Flywheel clients as Compass's clients, and (ii) further recognized the contents of the Digital Grocery Presentation as content that could only have been generated with knowledge of Compass's trade secret information and proprietary business know how. The Digital Grocery Presentation revealed that Flywheel, DiPaula, and Miller were in possession of the more comprehensive repository of Compass trade secrets, the eCommerce Guide. The Digital Grocery Presentation included key pieces of information that could only be known from the original Compass eCommerce Guide.

Figure 13 – Patrick Miller's 2015 Digital Grocery Summit Presentation
Now "Discovered" by Mr. Fernandez and Given to John on January 20, 2020
*Compass v. White*, No. C-02-CV-23-000601 (Md. Cir. Ct. Mar. 27, 2023).

23

217.    For example, the Digital Grocery Presentation provided information concerning Compass' general strategy to prioritize customer search results on Amazon.    Even more significantly, the Digital Grocery Presentation represented an approach to selling clients' products through Amazon that precisely mirrors the Compass approach and could only be accomplished with possession of the eCommerce Guide.

218.    As previously outlined, Compass maintained only a single printed version of the eCommerce Guide as part of the protocol to maintain its confidentiality.    However, while at Compass, Miller had access to the electronic version.    Upon information and belief, Miller misappropriated the electronic version of the Compass eCommerce Guide, then he and DiPaula used it to develop the Flywheel business model.    Based on Flywheel's own description of its

business on the Flywheel website, that use of the misappropriated Compass information continues today:

Figure 14 –2015 Digital Grocery Presentation "Discovered" by Mr. Fernandez on January 20, 2020, "Proving" Chip and Patrick Stole the Ecommerce Guide *Compass v. White*, No. C-02-CV-23-000601 (Md. Cir. Ct. Mar. 27, 2023).

The contention that on January 20, 2020, Mr. Fernandez "discovered" Patrick Miller's previously concealed November 2015 Digital Grocery Summit USA presentation "establishing" theft of Compass "trade secrets" is knowingly false. This fabricated narrative was engineered by John and Mr. Stern as the second essential pillar of the BSRICO scheme. Engineering and then advancing false claims falls squarely within the scope of sanctionable litigation abuse under Md. Rule 1-341. The Court should not countenance this calculated misuse of judicial process.

<u>John and Mr. Stern Make False Statements to the USCA Fourth Circuit</u>

The Honorable George L. Russell, III, Chief Judge, United States District Court for Maryland, dismissed the BSRICO federal version on February 24, 2023,[15] denying plaintiffs both their requested hearing and an opportunity to rewrite their complaint [16]. John and Mr. Stern appealed Chief Judge Russell's decision to the United States Court of Appeals for the Fourth Circuit. [Exhibits 1 and 2]. It is remarkable how many times in their Fourth Circuit Opening and Reply Briefs that John and Mr. Stern repeatedly insist "Compass" had *never* seen Patrick Miller's Digital Grocery Summit USA 2015

---

[15] *Compass Marketing, Inc. v. Flywheel Digital, LLC, et al.*, Civil No. GLR-22-379, 2023 WL __ (D. Md. Feb. 24, 2023) (Russell, C.J.).

[16] On February 24, 2023, Mr. Stern was Mr. Bateman's attorney (AACO Cir. Ct.) while Ms. Smithey was the court-appointed mediator. Mr. Stern was at the same time "Compass" attorney (i.e. John's attorney) in: the *Boshea* case (USDC MD), the *Tagnetics* case (Ohio bankruptcy), and the *Compass* dissolution case (Arlington, VA).

presentation until Mr. Fernandez "discovered" it on January 20, 2020, even though they

knew these statements were false because they had plotted the lie. (*Figures 15 - 20*).

> "*On January 20, 2020* ... Compass's Controller located on the internet a
> Flywheel-branded Power Point presentation created by Patrick Miller that
> revealed, *for the first time*, that Flywheel had stolen and was continuing to misuse
> for unauthorized purposes Compass's trade secrets and proprietary business know
> how. JA19-20, ¶ 11." Compass' Opening Brief at 16, *Compass Marketing, Inc. v.
> Flywheel Digital, LLC*, No. 23-1324 (4th Cir. June 23, 2023). (*Figure 15*).

> "Compass alleged it discovered the Digital Grocery Presentation after January 20,
> 2020, which revealed the misappropriation of the trade secrets in 2015. JA19-20.
> Compass' Reply Brief at 11, *Compass Marketing, Inc. v. Flywheel Digital, LLC*,
> No. 23-1324 (4th Cir. September 11, 2023). (*Figure 16*).

John and Mr. Stern repeat *ad nauseum* the falsehood they had no knowledge of the

2015 Digital Grocery Summit USA presentation until January 20, 2020, and no inkling

there was any potential "RICO" claim until January 20, 2020, despite clear evidence that

was false, including: 1) KSMB invoicing Compass in July 2019 for "RICO" and

"Ascential" research; 2) John, Mr. Stern and Mr. Goldsmith July 2019 "RE: possible

contingency case vs. Dan & Chip" emails discussing a "RICO" case and acknowledging

the October 2019 statute of limitations deadline; and 3) John's September 1, 2015, "2015

Digital Grocery Summit *Patrick Miller is a speaker*" email to Movant and Mr. Feiss, and

Mr. Feiss' September 1, 2015, reply to John and Movant, which all disprove that claim [17].

---

[17] Mr. Stern filed the "Original Complaint" in Anne Arundel County Circuit Court on March 27,
2023 – before he knowingly made the false statements in the Opening and Reply briefs in the
United States Court of Appeals for the Fourth Circuit. Still, KSMB contends that this Court
"does not have jurisdiction" to weigh that conduct with their concurrent false statements in the
Anne Arundel Circuit Court.

Amazingly, in their Fourth Circuit Opening and Reply briefs, John and Mr. Stern repeatedly and harshly criticized what they characterize as Chief Judge Russell's "improper credibility determination" that it was implausible "Compass" had no idea about Patrick's Digital Grocery presentation until Mr. Fernandez "discovered" it during his "investigation" on January 20, 2020 - even though John and Mr. Stern absolutely knew that claim was not true - they had manufactured the falsehood! (*Figures 15 - 20*).

> "One of the most obvious examples is where the district court expressly determined Compass' allegation of discovering the trade secret claims in January 2020 was not credible. The district court was required to accept Compass's allegations as true and draw all inferences in its favor. [] <u>Beyond this improper credibility determination</u> ..." Compass' Opening Brief at 40, *Compass Marketing, Inc. v. Flywheel Digital, LLC*, No. 23-1324 (4th Cir. June 23, 2023). (*Figure 18*).

> "Pointing to Miller's article and presentation ... From the Complaint, one only knows they were not discovered by Compass until January 2020. To infer they were available earlier is to draw an improper inference against Compass." Compass' Reply Brief at 46, *Compass Marketing, Inc. v. Flywheel Digital, LLC*, No. 23-1324 (4th Cir. Sept. 11, 2023). (*Figure 19*).

> "Finding that Compass's allegation o discovering the misappropriation in January 2020 '*strains credulity*,' the district court made credibility determinations against Compass. JA288. The court further disbelieved and drew inferences against Compass by finding it was implausible ..." Compass' Opening Brief at 18, *Compass Marketing, Inc. v. Flywheel Digital, LLC*, No. 23-1324 (4th Cir. June 23, 2023). (*Figure 20*).

By no later than July 2019, John and Mr. Stern were already planning litigation against Movant and Mr. DiPaula. Their emails openly discussed a "contingency case vs. Dan & Chip," acknowledged the looming October 2019 statute of limitations, and Mr. Stern began billing Compass for "RICO" and "Ascential" research. These communications contradict their sworn narrative that Mr. Fernandez "discovered" the supposed wrongdoing on January 20, 2020. Even earlier, on September 1, 2015, John

himself circulated an email identifying Patrick Miller as a speaker at the Digital Grocery Summit. That single email destroys their timeline and confirms that the existence of the presentation was known to John and Mr. Stern years before their alleged "discovery."

Despite this incontrovertible evidence, John and Mr. Stern accused Chief Judge Russell of committing an "improper credibility determination" when he dismissed their claims as implausible and found their narrative "strained credulity." Undeterred even when a unanimous Fourth Circuit panel reached the same conclusion, John and Mr. Stern petitioned for en banc review by the full Fourth Circuit while knowing that their discovery timeline was false. Worse, they devised the falsehood, thereby asking an entire federal appellate court to devote scarce judicial resources to a claim *that they fabricated*. En banc review is reserved for issues of exceptional legal or constitutional significance - not to resurrect a manufactured conspiracy theory for strategic or financial gain.

For more than seven years, John and Mr. Stern advanced a narrative they knew to be false—first to law enforcement, then to federal courts, and now to this Court. They manipulated documents, withheld exculpatory context, and refiled rejected claims in new forums. Their conduct has wasted judicial time, imposed unnecessary litigation costs, and inflicted personal and financial harm on Movant and others. The expenditure of the Fourth Circuit's limited judicial resources, like this Court's, was of no concern to John and Mr. Stern in their pursuit of leverage and financial gain. Their disregard for the truth and for the finite resources of both courts demonstrate that without meaningful sanctions, their misconduct will continue.

28

- "*It was not until January 20, 2020 that Compass discovered this prima facie evidence of Flywheel's misappropriation activities.* Given the contents of the Digital Grocery Presentation, which was copied from Compass's files, there is every reason to believe that the eCommerce Guide was also copied or otherwise exported to Flywheel by DiPaula and/or Miller. *This information was not known to Compass and could not reasonably have been known because DiPaula and Miller had acted in secret and concealed the existence of the misappropriation.*"  JA60, ¶ 191.

JA18, ¶ 6 (emphasis added).

The Complaint is replete with allegations that explain Compass did not know

and could not have reasonably known of Appellees' actions in 2014 or 2016 and

ultimately did not learn of such actions until January 2020. For example:

- "*Unbeknownst to Compass* . . . Flywheel has competed with Compass . . . by misusing stolen trade secrets and proprietary information . . . . Defendants DiPaula, Miller, [Michael, and Daniel] have conspired to *conceal their misappropriation and cover up their actionable misconduct.* . . ." JA16, ¶ 1.

- "From its inception, *though unbeknownst to Compass*, Flywheel conspired to compete unfairly, both by using Compass's *secretly stolen* intellectual property, *while concealing the fraud* . . . ." JA18, ¶ 7.

- "*On January 20, 2020* . . . Compass's Controller located on the internet a Flywheel-branded Power Point presentation created by Patrick Miller that revealed, *for the first time*, that Flywheel had stolen and was continuing to misuse for unauthorized purposes Compass's trade secrets and proprietary business know how." JA19-20, ¶ 11.

16

Figure 15 – Compass Mktg., Inc., No. 23-1324 (4th Cir.) (Appellant's Br.).

Compass cannot be found to have made an informed, conscious choice based on the conversation between John and Daniel.

Nor can one conclude from the face of the Complaint that Compass would have discovered the trade secret misappropriation from any investigation in 2014 (especially where Compass alleged it did not uncover such theft until 2020 during its investigation of the White Defendants' other misconduct). *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 446 (2000) (limiting inquiry notice to "an investigation which . . . would have led to *knowledge of the alleged tort.*'") (emphasis added). Compass alleged it discovered the Digital Grocery Presentation after January 20, 2020, which revealed the misappropriation of trade secrets in November 2015. JA19-20. This had not even occurred in 2014, making it impossible to discover at that time. As the Complaint reflects, to this day and until discovery is conducted, Compass still does not know exactly when or how DiPaula and Miller initially misappropriated the trade secrets at issue. *See, e.g.*, JA59 ¶ 189; 42 ¶ 85.

Figure 16 - Compass Mktg., Inc., No. 23-1324 (4th Cir.) (Appellant's Br.).

30

Lastly, perhaps most telling, is the district court's finding that "Compass' argument that it could not discover the trade secret misappropriation until 2020 *strains credulity*" in part because "[t]he Profitero blog post [Compass] *allegedly*

23

*found* in 2020 was posted online in 2015." JA288 (emphasis added).[5]  These characterizations by the district court are the antithesis of accepting all factual allegations in the Complaint as true and drawing all reasonable inferences in favor of Compass.  *See DIRECTV, LLC*, 846 F.3d at 765; *see also Anderson*, 155 F.3d at 505. Instead, they reflect credibility determinations the court made against Compass as well as a factual determination about whether a search should have taken place and what it may or may not have found.

Beyond this improper credibility determination, questions of fact abound. Numerous questions must be answered for the statute of limitations to be evaluated

30

with respect to the Flywheel Defendants, none of which "clearly appear on the face of the complaint." *Goodman*, 494 F.3d at 464, including:

Figure 17 - Compass Mktg., Inc., No. 23-1324 (4th Cir.) (Appellant's Br.).

31

When the issue of inquiry notice requires credibility determinations and questions of fact, such determinations and questions "are to be decided by the jury." *O'Hara*, 305 Md. at 301. Here, there is a litany of issues that can be decided only by a trier of fact after discovery. One of the most obvious examples is where the district court expressly determined Compass's allegation of discovering the trade secret claims in January 2020 was not credible. The district court was required to accept Compass's allegations as true and draw all inferences in its favor. Even at the summary judgment stage the court would be precluded from making such a credibility determination. *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991) ("It is not our job [at summary judgment] to weigh the evidence . . . or to disregard stories that seem hard to believe.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Only the trier of fact can make such a credibility determination.

Beyond this improper credibility determination, questions of fact abound. Numerous questions must be answered for the statute of limitations to be evaluated

30

Figure 18 - Compass Mktg., Inc., No. 23-1324 (4th Cir.) (Appellant's Br.).

32

### 2. THE 2015 PRESENTATION DID NOT PUT COMPASS ON INQUIRY NOTICE OF TRADE SECRET THEFT

Pointing to Miller's article and presentation, the Flywheel Defendants claim that, based on DiPaula's and Miller's departures and "with the knowledge it was already losing clients," Compass was "bound [in 2015] to investigate its former employees-turned-competitors, including at the very least by reviewing publicly available information about Flywheel." ECF 39 at 21-22. It is unclear from the face of the Complaint, however, when or how the article or presentation first became available online. From the Complaint, one only knows they were not discovered by Compass until January 2020. To infer they were available earlier is to draw an improper inference against Compass.

Figure 19 – Compass Mktg., Inc., No. 23-1324 (4th Cir.) (Appellant's Br.).

Noting that the DTSA and RICO claims against the Flywheel Defendants were premised on the misappropriation of trade secrets, the district court found that Compass knew or should have known of such claims in late 2014 when two employees left Compass or, alternatively, when several eCommerce department employees left in late 2016, *see* JA286-288, despite Compass expressly alleging how it first discovered the misappropriation in January 2020 (just over two years before it filed the Complaint). *See, e.g.,* JA60, ¶ 191. Finding that Compass's allegation of discovering the misappropriation in January 2020 "strains credulity," the district court made credibility determinations against Compass. JA288. The court further disbelieved and drew inferences against Compass by finding it was "implausible" Compass did not notice or investigate the loss of certain clients "in real time." JA289. Without explaining how such a conclusion was clear from the face of the Complaint, the district court found that, "[i]f Compass exercised reasonable diligence, it would have found [a] publicly accessible article . . . much sooner" and "where [its] clients went and whether Flywheel could be using its proprietary information to 'poach' those clients." JA288-289. Moreover, the district court

Figure 20 - Compass Mktg., Inc., No. 23-1324 (4th Cir.) (Appellant's Br.).

John and Mr. Stern Bring BSRICO to Anne Arundel County Circuit Court
(*Compass Marketing, Inc. v. Daniel White, et al.*, C-02-CV-25-000601)

After Chief Judge Russell's dismissal of the federal BSRICO, John and Mr. Stern immediately filed an illegitimate copycat in this Court on March 27, 2023, [18] where they again dishonestly repeated the two critical pillars of their contrived BSRICO conspiracy – Movant's embezzlement and "secret" investment in Flywheel, and Mr. DiPaula's and Mr. Miller's theft of a fictional Compass "trade secret".

Despite Chief Judge Russell's finding that their claims "strain credulity," and while still advancing those false assertions before the Fourth Circuit, John and Mr. Stern refiled the same baseless BSRICO allegations in this Court. Undeterred by both the federal trial and appellate court's rejection, indifferent to the burden placed on former defendants and judicial resources, unconcerned about this Court's responsibilities, and believing themselves beyond consequence, they simply recast their prior misconduct as outside Maryland's reach and restarted the litigation here. (*Figure 20*).

> " Fernandez engaged in further research and located a Flywheel-branded Power Point presentation … that Miller purportedly gave at the Online & Digital Grocery Summit USA on or about November 15, 2015 ("the Digital Grocery Presentation"). … Although the presentation may have been given in 2015 to a limited, paid audience, on information and belief, the presentation was not public before 2020 when it was discovered." *Compass Marketing, Inc. v. Daniel White, et al.*, No. C-02-CV-23-0000601 (Anne Arundel Cnty. Cir. Ct. Mar. 27, 2023) (Compl. pp. 48–49). (*Figure 21*).

> "Fernandez gave the article and the Digital Grocery Presentation to John White, who immediately recognized the clients … and John further recognized the contents of the Digital Grocery Presentation as content that could only have been

---

[18] *Compass Marketing, Inc. v. Daniel J. White, et al.*, No. C-02-CV-23-000601 (Md. Cir. Ct. Anne Arundel County Mar. 27, 2023) (Complaint).

generated with the knowledge of Compass trade secret information and proprietary business know-how. The Digital Grocery Presentation revealed that Flywheel, DiPaula, and Miller were in possession of the more comprehensive repository of Compass trade secrets, the eCommerce Guide. The Digital Grocery Presentation included key pieces of information that could only be known from the original Compass eCommerce Guide." *Compass v. Daniel White, et al.*, (Compl. pp. 48–49). (*Figure 21*).

215.  Fernandez engaged in further research and located a Flywheel-branded PowerPoint presentation and voiceover that Miller purportedly gave at the Online & Digital Grocery Summit

---

[1] https://www.profitero.com/2015/08/the-future-of-amazon-fresh/

48

---

USA on or about November 5, 2015 ("the Digital Grocery Presentation"). Miller's introduction included a review of his clients: P&G, J&J, Mars, McCormick, Ferrero, 5 Hour Energy, and Colgate. All of of these companies were Compass clients or former Compass clients. Although the presentation may have been given in 2015 to a limited, paid audience, on information and belief, the presentation was not public before 2020 when it was discovered.

216.  Fernandez gave the article and the Digital Grocery Presentation to John White, who immediately recognized the clients Miller claimed were Flywheels as they were Compass clients, and John further recognized the contents of the Digital Grocery Presentation as content that could only have been generated with knowledge of Compass' trade secret information and proprietary business know-how. The Digital Grocery Presentation revealed that Flywheel, DiPaula, and Miller were in possession of the more comprehensive repository of Compass trade secrets, the eCommerce Guide. The Digital Grocery Presentation included key pieces of information that could only be known from the original Compass eCommerce Guide.

Figure 21 – "Original" BSRICO: Compass Mktg., Inc. v. White, No. C-02-CV-23-000601 (Md. Cir. Ct. Mar. 27, 2023) (complaint).

<u>John and SLG Bring Annapolis City and Police Department Into the "Conspiracy"</u>
(The Kidnapping Hoax)

On November 30, 2022, after the former defendants refused to pay his ransom and it became apparent Chief Judge Russell was not accepting the BSRICO allegations, John accelerated his conduct. Accompanied by his "bodyguard", former Sheriff Ron Bateman, John fabricated an assassination / kidnapping hoax, falsely implicating Movant and the other former defendants, and stating the attempted "hit" was connected to the BSRICO lawsuits—even improperly invoking Mr. Rosenstein's name in the process. (*Figure 22*).

> "*Given the timing of the very unusual litigation in VA filed a couple weeks ago (you didn't ask us but that is very unusual) and the additional litigation in Federal Court filed by the former Attorney General of the United States Rod Rosenstein, where a decision is soon expected ... I am in parallel the victim of a $400 million theft that is public ... obviously you understand we will continue to investigate.*" Email from John White to Annapolis Police Detective Megan Ross (Dec. 5, 2022). (*Figure 22*).

Even with former Sheriff Bateman's encouragment, the Annapolis Police refused to initiate a kidnapping investigation to bolster John's failing BSRICO narrative. Undeterred, John and Mr. Stern expanded their conspiracy theory to accuse the Annapolis Police Department, its Public Information Officer, and the City itself of participating in a $24 billion "trade secret theft" supposedly committed more than a decade earlier. When neither the phony kidnapping report nor a Maryland PIA complaint produced results, John escalated further—personally swearing out a criminal complaint before a Judicial Commissioner falsely accusing the Annapolis Police PIO, Miguel Dennis, of a criminal COMAR violation. [Exhibit 3].

From: **John White** <jwhitecompass16@gmail.com>
Date: Mon, Dec 5, 2022 at 14:45
Subject: Re: Update on our case
To: Megan Ross <mrross@annapolis.gov>
CC: Chuck Rubac <chuck.rubac@gmail.com>, Ron Bateman <rbateman655@gmail.com>

Officer Ross,

Thank you for this information.

While I understand you will not be able to invest more time into this matter given the lack of evidence of any crime you have been able to secure, obviously you understand we will continue to investigate.

Given the timing of the very unusual litigation in VA filed a couple weeks ago (you didn't ask us but that is very unusual) and the additional litigation in Federal Court filed by the former Attorney General of the United States Rod Rosenstein, where a decision is soon expected, we are taking serious this situation. While we hope it was just suspicious activity as you have conclude, I am in parallel the victim of a $400 million theft that is public, so hopefully you will understand if we continue to chase down the leads.

Figure 22 - $400 Million Theft "in Federal Court" … "Filed by the former Attorney General of the United States Rod Rosenstein"

<u>Sanctions Are Necessary and Appropriate</u>

For seven years, John White and Mr. Stern have used this Court, and others, as instruments of retaliation and coercion. They filed and maintained five iterations of the baseless "BSRICO" conspiracy, each callously expanding the list of victims and built upon fabrications they knew were false—namely, the fictitious "secret Flywheel investment" and the fabricated "trade secret theft." They repeated those falsehoods in federal court, in this Court, and before the Fourth Circuit, even after Chief Judge Russell found their claims "strain credulity" and dismissed them without leave to amend. The

Fourth Circuit also found their claims to be unbelievable. Rather than accept that ruling, John and Mr. Stern refiled the same allegations here and expanded their accusations to include additional innocent parties.

In more than twenty years as a trial lawyer, Movant has never been sanctioned, never been held in contempt, or been reported to Bar Counsel - prior to this case. Movant has never in his career sought sanctions or contempt against any opposing attorney or party. By contrast, John and Mr. Stern have repeatedly attempted to weaponize the judicial system. In the *Boshea* matter they went so far as to ask the federal court to find Movant in contempt, impose sanctions, and incarcerate Movant. (Figure 23). [Exhibit 4].

Case 1:21-cv-00309-ELH   Document 64   Filed 11/03/21   Page 12 of 14

(or such other time that Compass Marketing is willing to conduct the deposition).[16]  In addition, daily monetary penalties should be imposed on Daniel White until complete compliance is achieved.

This is a case that calls for severe remedial measures, not only because Daniel White has repeatedly refused to comply with a valid subpoena and this Court's Order enforcing that subpoena, but also because Daniel White is a prosecutor[17] and he should know better.  The effectiveness of our judicial system requires respect for its procedures and compliance with its orders.  To allow a prosecuting attorney to disregard those procedures and this Court's Order without severe remedies would send an alarming message to the citizens of the State of Maryland, implying that a prosecutor receives "special treatment" or is otherwise "above the law" and it could lead to further disregard for judicial procedures and this Court's orders.  As a result, this Court should consider imposing not only the remedies noted above, but also coercive incarceration.  *See, e.g., Enovative Techs., LLC v. Leor*, 110 F. Supp. 3d 633, 637 (D. Md. 2015) ("Incarceration . . . is proper upon a finding of civil contempt as long as the purpose is to coerce compliance . . . rather than to punish.").

*Figure 23 – Mr. Stern's Contempt Motion Against Movant (November 3, 2021)*

Movant has never weaponized sanctions; Mr. Stern has. Sanctions are not requested lightly. But here, the record demonstrates a sustained, intentional misuse of the judicial process: knowingly false pleadings alleging a fabricated investment and trade secret theft; manipulation and separation of evidence, including detaching the cashier's check from the explanatory email Movant sent on October 15, 2015; refiling dismissed claims in another forum despite adverse rulings and lack of jurisdiction; attempts to instigate criminal prosecution and fabricate a kidnapping hoax when civil courts rejected their theories; and efforts to have Movant jailed for contempt, even though he had never previously been sanctioned or held in contempt in any court. This conduct is not mere error, it is deliberate, vexatious, and undertaken in bad faith. It has consumed judicial resources, inflicted enormous financial and personal harm on Movant and other former defendants, and undermined the integrity and dignity of this Court.

Conclusion

John and Mr. Stern's latest filing is nothing more than an attempt to escape accountability for a seven–year campaign of fabricated litigation, manufactured "evidence," and weaponized court filings. John now claims to be a "non-party," and Mr. Stern claims to be a "nullity", as though they did not personally draft the first BSRICO complaint, hire counsel to sign it, fund it, direct the false statements made to this Court, federal courts, law enforcement, and the press, and continue prosecuting it after every allegation was proven false. This Court is not confronting a routine dispute—it is confronting deliberate abuse of judicial process. The record shows: (1) five versions of a

40

knowingly false $24 billion RICO conspiracy; (2) falsification and separation of documents to defeat a statute of limitations; (3) repeated misrepresentations to federal and state courts, appellate courts, law enforcement, and regulatory bodies; (4) a fabricated kidnapping narrative when courts rejected their claims; and (5) now, a baseless effort to strike sanctions rather than answer for their conduct. Even now, in their most recent filings, John and Mr. Stern once again ask for sanctions *against Movant*. That is the measure of their bad faith, and the measure of restraint Movant has shown until now.

This Court has both the authority and the obligation to respond. Maryland Rule 1-341 exists to address exactly this: litigation pursued in bad faith, especially when it is used as a tool of retaliation, extortion, and public defamation. Such conduct cannot be excused as advocacy, and it cannot be allowed to stand. For these reasons, Movant respectfully asks this Court to: 1) deny Respondent's Motion to Strike; 2) Grant Movant's Motion for Sanctions; 3) Make findings under Md. Rule 1-341 that the litigation was filed and maintained in bad faith and without substantial justification; and 4) Impose appropriate relief, including attorneys' fees, costs, and referral to the Attorney Grievance Commission. Anything less would signal that this Court may be used as a weapon without consequence. The rule of law demands otherwise.

Movant therefore respectfully requests that the Court:

1. Make a finding under Md. Rule 1-341 that John White and Mr. Stern acted in bad faith and further that any counsel who signed or advocated these pleadings acted without substantial justification;

41

2.  Order Respondents to pay Movant's reasonable attorneys' fees and costs incurred in this case;

3.  Consider referral to the Attorney Grievance Commission with respect to any attorney who knowingly advanced falsified allegations or evidence; and

4.  Grant such other relief as the Court deems just, including issuing appropriate protective orders.

Movant appreciates the Court's recognition of the extraordinary circumstances of this case and its decision to halt the endless cycle of trial extensions. Yet the situation is akin to Respondents having burned down Movant's house: while everyone escaped and the flames have been extinguished, Movant alone now faces the burden of rebuilding—solely as a result of Respondents' greed and egregious misconduct. This pattern of abuse cannot be left unaddressed. As the Supreme Court has made clear, courts have both inherent authority and the obligation to curb litigation conducted in bad faith to protect the integrity of judicial proceedings. This is that case.

Respectfully submitted,

Daniel J White
Post Office Box 1760
Leonardtown, MD 20650
240-298-8156
danieljwhite@msn.com

42

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this day November 7, 2025, a copy of the foregoing Reply to Motion to Strike Sanctions and Attachments and Proposed Order was mailed or electronically served upon all counsel of record and parties entitled to service.

Daniel White