

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ASHLEY BOSHEA, as Administrator of the Estate of
DAVID JOHN BOSHEA

Plaintiff

v.                                        Civil Action No. 1:21-cv-00309-ELH

COMPASS MARKETING, INC.

Defendant

### MICHAEL WHITE'S REPLY TO "COMPASS MARKETING, INC.'S" OPPOSITION TO MOTION FOR RECONSIDERATION

Movant, Michael White, respectfully submits this Reply to the Opposition (ECF 388) filed in the name of Compass Marketing, Inc. ("Compass"), and states as follows:

Clarification Regarding "Compass".

1.  For convenience only, Movant uses the term "Compass" to refer to John White and Stephen Stern, who have filed pleadings purporting to act on behalf of Compass Marketing, Inc. Movant maintains that neither individual possesses lawful corporate authority or shareholder authorization to represent Compass, a distinction that is material to the questions presented on reconsideration.

Admission Concerning John White's Resignation.

2.  Footnote 2 of Compass's Opposition acknowledges that "John White did step down as CEO of Compass Marketing temporarily," and asserts that this fact "was explained to the Court," although the record does not show that it was ever clearly presented. That acknowledgment confirms that John White resigned as Chief Executive Officer, and Movant and Daniel White have consistently maintained with this Court since 2021 that,

1

absent a shareholder vote or other lawful corporate action reinstating him, he lacked authority to act on behalf of the corporation.

3. Under Maryland and Virginia corporate law, an individual may resign unilaterally but cannot unilaterally resume an executive office or bind a corporation without proper corporate authorization.

4. In light of Compass's concession, Movant respectfully requests that, at a minimum, the Court direct Compass and John White to identify with specificity: (i) the exact date and circumstances of John White's resignation as CEO; (ii) the legal basis on which he asserts that he "remained Chairman" during the period of his resignation, including how that assertion can be reconciled with the Virginia State Corporation Commission filings submitted by John White that reflect only "Owner", not CEO or Chairman; and (iii) the date, manner, and corporate authority by which he contends he "resumed his role as CEO," together with any corporate records, minutes, resolutions, or other evidence supporting that contention. Absent such a showing, there is no competent evidentiary basis on which the Court can find that John White possessed lawful corporate authority to act for Compass during the periods relevant to this litigation.

Shareholder Ownership and Control Resolved in Anne Arundel County.

5. In Compass Marketing, Inc. v. Daniel White, et al., Case No. C-02-CV-23-000601 (Cir. Ct. Anne Arundel Cnty. Mar. 27, 2023), "Compass" (John White) filed a complaint ("SAC") that placed shareholder ownership percentages and corporate control at the center of its claims. The SAC alleged that Compass was a closely held corporation whose voting control and governance rested with John White, while Michael White and Daniel

2

White were alleged minority shareholders whose interests and authority were substantially subordinate to his.

6. The SAC asserted that Michael White and Daniel White each claimed to own twenty-five percent (25%) of Compass Marketing, Inc., but that Compass's internal records reflected that each owned only sixteen percent (16%) of the company, with John White alleged to own sixty-eight percent (68%). The pleading framed this asserted ownership allocation as the basis for alleging that John White possessed majority voting control and the sole ability to direct corporate affairs, including decisions about management, employment, and the initiation or defense of litigation in Compass's name.

7. The SAC further alleged that, despite their purported minority ownership positions, Michael White and Daniel White attempted to interfere with Compass's business operations and asserted that they had equal control or voting authority with John White. In multiple counts, Compass claimed that Michael White and Daniel White wrongfully held themselves out as possessing equal or controlling authority, purportedly acted contrary to John White's decisions as alleged majority shareholder, and sought to obstruct or usurp corporate governance by contesting his claimed 68% interest and his asserted role as "Chairman/CEO."

8. Beyond the ownership percentages, the SAC alleged, among other things, that the asserted 68%–16%–16% allocation was reflected in Compass's "corporate records," which were said to confirm both John White's majority interest and Michael White and Daniel White's minority status.

9.   On the allegation of those records, Compass claimed that John White alone had the right to determine corporate policy, employ or terminate officers and employees, and authorize the institution or maintenance of litigation on Compass's behalf.

10.  Michael White and Daniel White allegedly ignored or repudiated that structure by representing to third parties and courts that they had equal voting authority, including in disputes over who could lawfully act as Compass's corporate representative.

11.  These allegations were expressly tied to Compass's causes of action, which sought, among other relief, judicial confirmation of the alleged ownership percentages, declarations regarding which individuals possessed authority to act for Compass, and remedies based on the premise that Michael White and Daniel White were minority shareholders without equal or controlling rights. The SAC used these ownership assertions to support theories of breach, interference, and purported unauthorized acts by Michael White and Daniel White, repeatedly invoking John White's alleged 68% control as the foundation for Compass's claims of corporate authority.

12.  All of Compass's claims and allegations in that action, including those concerning ownership percentages and governance authority, have now been resolved in favor of Daniel White and Michael White. On August 25, 2025, the Circuit Court entered an order directing that final judgment be entered in favor of Defendant Daniel White on all counts asserted against him by Compass Marketing, Inc., and that the order be entered and recorded on the docket. Under Maryland preclusion law, such a judgment constitutes a final adjudication on the merits and is entitled to res judicata effect in subsequent proceedings.

13. On August 7, 2025, Compass and counsel for Michael White filed a Stipulation of Dismissal With Prejudice as to the claims Compass had asserted against them, expressly preserving the defendants' right to seek sanctions. The stipulation was executed by all parties pursuant to Maryland Rule 2-506 and, together with the final judgment for Daniel White, fully disposed of Compass's claims against Michael White on the merits.

14. By operation of Maryland preclusion principles and 28 U.S.C. § 1738 [1], these final state-court dispositions foreclose Compass from re-asserting in this Court the same ownership and authority theories that were advanced in the SAC—namely, the allegation that John White holds 68% of the shares, that Michael and Daniel White each hold only 16%, that they lack equal voting or governance authority, and that John White thereby possesses unilateral power to direct Compass's affairs and litigation. The ownership and control narrative set out in Exhibit A has already been litigated to conclusion in state court, with final judgments that must be given full faith and credit here, and Compass may not now rely on that rejected ownership story to justify purported authority in this federal proceeding.

---

[1] TITLE 28—JUDICIARY AND JUDICIAL PROCEDURE §1738. State and Territorial statutes and judicial proceedings; full faith and credit - The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto. The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form. Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken. (June 25, 1948, ch. 646, 62 Stat. 947.)

15. Full Faith and Credit to Maryland Judgments. Under 28 U.S.C. § 1738, federal courts must give the judicial proceedings of any state the same full faith and credit they would receive in the courts of that state. Federal courts, including the Supreme Court, have repeatedly held that § 1738 obligates federal courts to apply the preclusion law of the rendering state when determining the effect of a state-court judgment.

16. The District of Maryland has applied these principles in holding that Maryland state-court decisions must be given the same preclusive effect in federal court that they would receive in Maryland courts. The Anne Arundel County judgments must therefore be accorded in this Court the same res judicata effect they have under Maryland law, precluding relitigation of ownership and corporate-authority issues already resolved in favor of Michael White and Daniel White.

17. Read together with § 1738, these authorities require this Court to give the August 7 and August 25, 2025 Maryland orders the same claim-preclusive effect they would have in Maryland, barring Compass from reasserting ownership or authority theories already adjudicated or dismissed with prejudice.

Matters "None of Which Is in Dispute".

18. The Opposition's assertion in Footnote 2 of their Opposition that the ownership and authority issues are "none of which is in dispute" is incorrect. Those issues have been actively contested since 2018 and, under 28 U.S.C. § 1738 and Maryland preclusion law, were conclusively resolved in the Anne Arundel County proceedings, which are entitled to full faith and credit in this Court.

19. Incomplete Context for the Court's Prior Ruling. The Court's October 30, 2025, Memorandum Opinion was issued without the complete context recently admitted by

Compass that john White was not the CEO and that the title "Chairman" is not a statutory corporate office in either Maryland or Virginia and does not, standing alone, confer authority to act for a corporation. The current record demonstrates that (1) John White resigned as CEO; (2) no board or shareholder action reinstated him; (3) filings with the Virginia State Corporation Commission identify him only as "Owner"; and (4) the Anne Arundel County judgments resolved ownership and representation issues in favor of Movant and Daniel White.

20. Maryland Law on Corporate Authority. Under the Maryland General Corporation Law, corporate powers are exercised by or under the authority of the board of directors, and the statute allocates authority through required and permitted officers rather than through the title of "chairman." The Corporations and Associations Article authorizes the board to create executive and other committees and to delegate powers to them, confirming that authority flows from the board's collective action and delegation, not from an individual director's title.

21. Maryland practice materials on governance and derivative actions emphasize that decisions relating to litigation, corporate control, and major transactions must be taken by the board or its properly authorized agents, and that non-statutory titles such as "chairman" do not, by themselves, create unilateral authority to bind the corporation. Accordingly, the mere post hac self-designation of John White as "Chairman" did not reinstate his authority to act as an officer or to appear for the corporation absent valid corporate action.

22. Virginia Law on Corporate Authority. The Virginia Stock Corporation Act similarly provides that all corporate powers are to be exercised by or under the authority of the

board of directors, and that the business and affairs of the corporation are managed under the direction and subject to the oversight of the board. The statute requires a board of directors and establishes that board, not a single director or chairman, as the locus of corporate authority.

23. Virginia law permits the board to establish committees and delegate certain powers, again reinforcing that authority derives from board action and delegation, subject to statutory limits. Commentary on corporate authority and signing powers under Virginia law explains that authority to bind the corporation ordinarily lies with duly authorized officers or agents and that a title such as "chairman" does not by itself confer unilateral power to contract for or represent the corporation. Thus, under Virginia law as under Maryland law, a self-designated "chairman" cannot unilaterally assume executive authority or bind the corporation without proper board authorization.

24. Counsel Withdrawals and Representation Status. Although Mr. Stern has repeatedly asserted that he has not represented Compass for "more than one year," filings in the Anne Arundel action reflect continued involvement beyond that period, including time entries reflected in invoices produced in subsequent fee litigation brought by former co-counsel Joyce E. Smithey, Esq. seeking approximately $448,000 in fees [2]. Ms. Smithey later withdrew after the state court granted her emergency motion to withdraw for ethical reasons, and an "expert witness" retained by Compass during that engagement, separately seeks approximately $190,000 in unpaid fees [3].

---

[2] Smithey Law Group LLC v Compass Marketing, Inc., Case No. C-02-CV-25-003479 (Cir. Ct. Anne Arundel Cnty. Dec. 6, 2025).

[3] Vallit Advisors, LLC v Compass Marketing, Inc., Case No. C-02-CV-25-003290 (Cir. Ct. Anne Arundel Cnty. Nov. 14, 2025).

25. Compass presently has no active counsel of record in those matters, and John White has
    publicly and repeatedly characterized himself as a "non-party," leaving Compass without
    any corporate representation in those cases.

26. The Third-Party Complaint. Movant was named by Compass in a Third-Party Complaint
    filed while Mr. Stern represented Compass, which was later dismissed. That pleading
    lacked factual support and has no continuing legal relevance, and the timing of its filing
    coincided with efforts to align this case with other litigation involving Flywheel Digital
    LLC, in which individuals associated with Smart Retail, Inc., including its Chief
    Financial Officer, appeared in court proceedings as purported corporate representatives of
    Compass.

27. Footnote 5 – Smart Retail, Inc. Compass's footnote 5 contends that Michael White "has
    no basis" to assert that attorney Stephen Stern held any financial interest in Smart Retail,
    Inc. ECF 269-1, Mr. Stern's May 28, 2019 conflict-disclosure letter, reflects that he
    disclosed a prospective shareholder interest of approximately one percent in Smart Retail
    without any capital contribution, and the same exhibit includes Smart Retail's Wyoming
    incorporation documents listing Mr. Stern's law partner as incorporator at the firm's
    Annapolis address. Those documents provide a documented basis for referencing Mr.
    Stern's prospective ownership interest and his firm's role in the company's formation and
    are relevant to the credibility of representations made in Compass's Opposition.

28. Footnote 6 – Allegations Concerning Mrs. White. Footnote 6 references earlier pleadings
    that contained allegations relating to Movant's spouse. While Mr. Stern did not sign the
    amended complaint that added her as a party, the employment-related allegations
    concerning her first appeared in pleadings prepared and signed by Mr. Stern during his

period of representation and were later adopted by successor counsel. Those allegations were dismissed by the Circuit Court prior to counsel's "emergency" withdrawal for ethical reasons, and the docket reflects that the allegations originated during Mr. Stern's supervision and were never sustained by any adjudicated findings. In fact, sanctions have been ordered against Compass and counsel for complete failure of discovery and further sanction motions are pending for continuing to pursue her as a defendant in that litigation after a safe-harbor demand that she be removed.

29. Request for Reconsideration. The current record, viewed in light of 28 U.S.C. § 1738, applicable federal rules, and governing Maryland and Virginia corporate law, establishes that: (1) John White resigned as CEO and was never reinstated; (2) the Anne Arundel County judgments and dismissals with prejudice constitute final adjudications on the merits that preclude re-litigation of ownership and corporate-authority issues in this Court; (3) under Maryland and Virginia statutes, all corporate powers are exercised by or under the authority of the board of directors, and the non-statutory title "Chairman" does not create unilateral authority to act for the corporation; and (4) material assertions in footnotes 4–6 of the Opposition are inconsistent with the documentary record.

For these reasons, Movant respectfully requests that the Court reconsider its prior ruling to correct the factual record and to prevent manifest injustice.

Respectfully submitted,

Michael R. White

39650 Hiawatha Circle
Mechanicsville, MD 20659
Email: michaelrwhite@comcast.net
Tel: (301) 481-5986
Dated: December 15, 2025

Exhibit Index

1. Second Amended Complaint (Anne Arundel County); ownership and governance allegations

2. Final Judgment for Daniel White (Aug. 25, 2025)

3. Stipulation of Dismissal for Michael White (Aug. 7, 2025)

4. Mr. Stern's Retainer Agreement and Smart Retail incorporation records

Certificate of Service

I hereby certify that on December 15, 2025, the foregoing Reply was served via Frist Class Mail on all counsel of record.

Michael R. White