# Exhibit 4

Law Offices
**KAGAN STERN MARINELLO & BEARD, LLC**
238 West Street
Annapolis Maryland 21401
Telephone (410) 216-7900
Facsimile (410) 705-0836

STEPHEN B. STERN                                                        STERN@KAGANSTERN.COM
(410) 793-1610                                                          WWW.KAGANSTERN.COM

June 11, 2019

**VIA EMAIL**

John White, CEO
Smart Retail, Inc.
222 Severn Avenue
Suite 200
Annapolis, Maryland 21403

  Re: **Conflict of Interest Disclosure**

John:

  As you know, you recently advised me that you are planning to form a new corporation called Smart Retail, Inc. ("Smart Retail"). Smart Retail will utilize radio frequency identification ("RFID") technology that will create new marketing opportunities for businesses, primarily by attaching to products (mostly in retail establishments) a label that contains a chip. You asked me and my firm to serve as outside counsel for Smart Retail to help the company address a number of legal issues. You later offered me the opportunity to become a minority shareholder in Smart Retail, with my initial ownership stake being at 1%. The opportunity to serve as outside counsel to Smart Retail and also become a shareholder is very exciting to me and I very much appreciate the opportunity to serve in both capacities. The dual role I am expected to have for Smart Retail, however, raises potential conflicts of interest under the Maryland Rules and, prior to proceeding any further, I believe it is necessary to disclose those potential conflicts to you in writing so that you fully understand them. If you feel comfortable proceeding with my dual role after disclosing these potential conflicts of interest, please indicate your consent by signing where indicated below in this letter.[1]

---

[1] We already discussed these issues by phone and you gave your verbal consent, but, pursuant to the Maryland Rules, it is necessary to address any actual or potential conflicts of interest in writing to avoid any misunderstandings and have your written consent in writing as well.

KAGAN STERN MARINELLO & BEARD, LLC
Annapolis, Maryland

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
Smart Retail, Inc.
June 11, 2019
Page 2 of 6

Maryland Rule 19-301.8(a) states that an "attorney shall not enter into a business transaction with a client unless: (1) the transaction and terms on which the attorney acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client; (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek independent legal advice on the transaction; and (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the attorney's role in the transaction, including whether the attorney is representing the client in the transaction." I address each of these requirements below.

## Conflicts of Interest

After I sent you an engagement letter for me and my firm to serve as outside counsel on general business matters for Smart Retail,[2] you offered me the opportunity to become a shareholder in Smart Retail, with the initial opportunity to own 1% of the company.[3] The amount of the initial investment has yet to be determined.[4]

Initially, you asked me and my firm to help you form the company and draft the initial shareholder agreements. With me becoming one of the early investors in Smart Retail, that poses a potential (but waivable) conflict of interest, even though I am not going to be the attorney who actually performs the work of forming the corporation and

---

[2] The original engagement letter dated May 1, 2019 was for SRL, Inc., but you later decided to change the name to Smart Retail, Inc., which led me to send this revised conflict disclosure letter and a new engagement letter for Smart Retail.

[3] You have made a similar offer to own 1% of Smart Retail to some other individuals (approximately seven) who are employees of other companies you own and/or manage and/or advisors to you in some capacity.

[4] I asked you what amount you are seeking for 1% of the company, and you advised me that there is no particular number at this point because the initial distribution of stock to the individuals who will own 1% of the company is not intended to raise capital; it is intended to give a few individuals who have helped you get to this point with this business opportunity to become early stakeholders in this new venture that will be known as Smart Retail.

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
Smart Retail, Inc.
June 11, 2019
Page 3 of 6

drafting the initial documents, including the initial shareholder agreements.[5] The reason for the potential conflict is that either I or my colleagues could potentially take advantage of the position of trust we hold and draft one or more documents or otherwise give advice that is more favorable to me and potentially less favorable to you. I do not foresee a circumstance where I or my colleagues would engage in such conduct, but that risk does exist and must be disclosed to you.

You have since advised me that you may seek representation from Mitchell Goldsmith, of Taft Stettinius & Hollister, LLP, in connection with the formation of Smart Retail and drafting the initial documents, including the initial shareholder agreements, because you have worked with him for many years and you value his experience in drafting these sorts of documents and other corporate matters. If you were to use Mitchell Goldsmith and his firm instead of mine, that would eliminate any potential conflict of interest for me and my firm, at least with the initial formation of Smart Retail and the drafting of the initial shareholder agreements.[6]

Although referring these initial tasks to Mitchell Goldsmith and his firm instead of my firm would eliminate any potential conflict of interest for me and my firm with respect to those initial tasks, I do not believe that fully eliminates all potential conflicts of interest for me and my firm. In this regard, if Smart Retail goes through additional rounds of capital raising/seeking new investors, there is the potential for my interest in the company to be diluted, which could have a negative impact on the value of my interest in the company. The potential adverse effect on my interest in Smart Retail could potentially influence the advice I (or my colleagues) give you and the company. While I do not foresee a circumstance where my advice (or the advice of my colleagues) would be influenced by my interest in Smart Retail, it is possible and I would be remiss in failing to disclose that risk to you.

---

[5] I would refer that work to my partner, Ryan Beard. I am expected to assist on business contracts, employment issues, litigation (if litigation ever became necessary), and other risk management issues going forward.

[6] Regardless of which firm helps you form Smart Retail and drafts the initial documents (you also noted that you may use a combination of Mitchell's firm and my firm for these initial documents), including the initial shareholder agreements, the terms of the initial investment and shareholder agreement are expected to be in writing, which will further satisfy the requirements of Maryland Rule 19-301.8(a)(1).

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
Smart Retail, Inc.
June 11, 2019
Page 4 of 6

      Another area where a potential conflict of interest may arise concerns my billing practices. In this regard, because I am going to be a shareholder in Smart Retail, you may ask for or expect potential discounts on my firm's invoices or, alternatively, I may be incentivized to offer discounts on invoices to advance my financial interest in Smart Retail. While I and my colleagues may occasionally offer courtesy discounts to clients for certain tasks performed or write off or otherwise discount fees that are not reasonable under the circumstances, I am not permitted to offer any discounts to Smart Retail beyond what I might otherwise offer in the ordinary course of business. Any discount beyond what might be offered in the ordinary course of business is prohibited because discounting invoices to Smart Retail in that manner would potentially benefit me (indirectly) as a shareholder of Smart Retail to the detriment of my law firm partners, which would violate duties I owe to my law firm partners. Thus, during the course of my firm's representation of Smart Retail, I cannot discount my firm's invoices in any way based on my role as a shareholder of Smart Retail.

      As you know, as CEO of Compass Marketing, Inc. ("Compass"), and Tagnetics, Inc. ("Tagnetics"), you have retained me and my firm to represent Compass and Tagnetics in various capacities, including on advisory matters and litigation related matters. While I do not have any ownership interest in either Compass or Tagnetics, and I have not been offered the opportunity to become an investor in either company, my ownership interest in Smart Retail could potentially have an adverse effect on my representation of Compass and Tagnetics. In this regard, I could potentially give tasks performed for Compass or Tagnetics a lower priority than tasks that need to be performed for Compass or Tagnetics. I do not foresee a circumstance where I or my colleagues would act in such a manner. Nevertheless, I believe I am obligated to make this disclosure to you. In addition, for the reasons discussed above, I am not permitted to offer any discounts in legal fees to Compass or Tagnetics outside of what might be offered in the ordinary course of business as an indirect benefit to you for allowing me the opportunity to become an investor in Smart Retail.

      Besides the potential conflicts of interest described above, other potential conflicts of interest may arise related to liquidity events concerning the shares I and other shareholders own in Smart Retail. In addition, potential conflicts of interest may arise in connection with the legal work you and I anticipate I will perform on behalf of Smart Retail. The precise contours of these potential conflicts are unclear at this time, as we do

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
Smart Retail, Inc.
June 11, 2019
Page 5 of 6

not know exactly what circumstances will arise and exactly what legal issues I will be working on at a given time in the future. Nevertheless, I wanted to note these possibilities to you in the interest of full disclosure. As we discussed, if there comes a time where I am able to identify an actual or potential conflict of interest in connection with a particular task/project I am asked or my firm is asked to perform on behalf of Smart Retail (or even Compass or Tagnetics), I will disclose it to you as promptly as I can and address it with you (and identify whether it is waivable or not).

### Seek Other/Independent Counsel

As you know, the potential conflicts of interest identified in this letter raise important issues for you to consider so that you can be sure you are comfortable that your interests (actually, the interests of Smart Retail and your other companies) are adequately represented and not unfairly influenced by my anticipated financial interest in Smart Retail. To this end, I must advise you that it may be in your interest to seek counsel other than me to discuss the issues I have raised in this letter and help you evaluate the potential conflicts of interest related to my anticipated ownership interest in Smart Retail. While I can recommend attorneys to you, I know you know several attorneys with whom you can consult (including, but not limited to, Mitchell Goldsmith). Nevertheless, if you would like me to refer you to one or more other attorneys, please let me know.

### Informed Consent

If you conclude after reviewing this letter and/or seeking counsel from another attorney with respect to the issues I have raised in this letter that I and my firm will fairly and zealously represent Smart Retail (and Compass and Tagnetics), even when I am a shareholder of Smart Retail, please sign where indicated below. By signing below, you represent the following: (1) you believe you have been adequately informed of the actual and potential conflicts of interest that exist with me being an investor in Smart Retail and me and my firm serving as outside counsel to Smart Retail (and Compass and Tagnetics); (2) you believe my firm and I will fairly and zealously represent Smart Retail (and Compass and Tagnetics), even when I am a shareholder of Smart Retail; (3) you consent to me and my firm serving as outside counsel to Smart Retail (and Compass and Tagnetics); and (4) you consent to me being a shareholder in Smart Retail.[7]

---

[7] To ensure complete transparency in every respect, this letter has been reviewed by the Managing Member of my law firm, Jonathan Kagan.

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
Smart Retail, Inc.
June 11, 2019
Page 6 of 6

    If you have any questions, believe any the issues raised in this letter are not clear, or would like to discuss any of these issues further, please let me know. Of course, if you do not consent to all four of the foregoing items, please let me know and either I will not become a shareholder of Smart Retail or, if there is a concern that you believe can be remedied, we should discuss that potential remedy.

                        Very truly yours,

                        KAGAN STERN MARINELLO & BEARD, LLC

                        Stephen B. Stern

AGREED AND ACCEPTED:

By: _____     Dated: _____
    John White, individually and as
        CEO, Smart Retail, Inc.
        CEO, Compass Marketing, Inc.
        CEO, Tagnetics, Inc.

Law Offices
## KAGAN STERN MARINELLO & BEARD, LLC
238 West Street
Annapolis Maryland 21401
Telephone (410) 216-7900
Facsimile (410) 705-0836

STEPHEN B. STERN
(410) 793-1610
STERN@KAGANSTERN.COM

June 10, 2019

**VIA EMAIL**

John White, CEO
Smart Retail, Inc.
201 Chester Avenue
Annapolis, Maryland 21403

    Re:    **Engagement Letter**

Dear John:

    Thank you for choosing Kagan Stern Marinello & Beard, LLC (the "Firm" or "Kagan Stern") as your counsel. We appreciate the opportunity to be of assistance and, on a personal note, I look forward to working with you.

    We apologize for the formality of this Agreement, but we believe that it is important that our clients have a clear understanding of the Firm's policies regarding legal services and fees from the inception of our relationship. Moreover, many of the provisions of this Engagement Letter (the "Agreement") are required or recommended by the law or the rules of professional conduct. The purpose of this Agreement is to verify your approval as to the scope of our engagement, the financial terms of our engagement, and other aspects of this engagement, as follows:

    1.    <u>Scope of Engagement</u>. By means of this Agreement, you are engaging the Firm to perform only the following services: general business advice for your company, Smart Retail, Inc. ("Smart Retail"), as requested. Of course, subject to our mutual agreement, you also may engage us to perform additional services in the future. We will endeavor to keep you informed of the progress of your matter(s) and respond to your inquiries. On your part, you acknowledge the need to provide us with truthful and accurate information, and the need to cooperate and to keep us informed timely of any developments.

    2.    <u>Fees and Hourly Rates</u>. Our billing practice is to charge for our legal services, based primarily on the amount of time, including travel time, devoted to a matter at hourly rates for the particular professionals involved. These hourly rates are based upon these professionals' experience, expertise, and standing. I will be primarily responsible for your representation and

KAGAN STERN MARINELLO & BEARD, LLC
Annapolis, Maryland

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
Smart Retail, Inc.
June 10, 2019
Page 2

my current hourly rate is $375.00. Other attorneys may provide assistance from time to time and their rates will vary. For example, hourly rates for associates who may assist in the representation of you currently range from $240.00 to $300.00. Other partner rates are also $375.00 per hour. Our current hourly charge for paralegals ranges from $110.00 to $150.00. Billing is in .10-hour increments. These rates are modified by us from time to time, and any new rates will be implemented immediately after they are adopted and will apply to legal services rendered after the effective date of the new rates. New rates will be reflected on your statement for services. We use associate and paralegal support on matters where appropriate, and we will be happy to discuss the staffing of your matter with you.

We charge for all activities undertaken in providing legal services to you under this Agreement, including, but not limited to, the following: conferences with you and with other attorneys working on this matter, including preparation and participation; preparation and review of correspondence and other documents; legal research; court and other appearances, including preparation and participation; and telephone calls, including calls with you, and other attorneys or persons involved with this matter.

3. <u>Additional Services and Outside Expenditures</u>. We may provide additional services in-house in connection with our legal representation of you. These in-house additional services typically include document reproduction and imaging, litigation support services, electronic discovery services, computerized research, facsimile services, long distance telephone, postage, staff overtime, and miscellaneous expenses for mileage, meals, parking, lodging, and the like. Our practice is to bill these services to you directly at our usual and customary rates.

Our legal representation also may involve additional services provided by third party vendors outside the Firm. You will be required either to pay for these outside additional services directly, or to reimburse us if we make payment for these services on your behalf. We sometimes will make payment for, and then bill you for reimbursement of, smaller items such as filing fees, document reproduction and/or imaging by outside services, recording fees, messenger services, service of process, and court fees. When there are substantial expenditures involving outside vendors (such as litigation support services, electronic discovery services, depositions, expert witnesses, exhibit preparation, or air fare) or substantial out-of-pocket expenditures (such as extended travel expenses, large outside reproduction jobs, or jury fees), we will require either that you pay those sums to us before we expend them, that you provide an advance deposit for such expenditures, or that you directly contract with and pay the outside vendor.

4. <u>Monthly Statements and Payment Terms</u>. Our practice is to send a monthly statement of our charges for legal services and in-house additional services rendered and for

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
Smart Retail, Inc.
June 10, 2019
Page 3

reimbursement of payments made on our client's behalf for outside additional services. The detail in the monthly statement will inform you of the nature and progress of our work and of the charges and expenditures being incurred.

Each monthly statement is fully due and payable upon receipt, but in no event later than thirty days after its issuance date. We reserve the right to charge, at the rate of ten per cent per year, a monthly late payment charge on the unpaid balance of any statement not timely paid in full, computed from thirty days after the statement issuance date until payment.

We specifically reserve the right to withdraw from representation of you and to cease performing immediately all services if we do not receive full payment of any amounts owed to us within thirty days of any statement.

We do our best to ensure that our clients are satisfied not only with our legal representation and services, but also with the reasonableness of our charges. Therefore, if you should have any question about a monthly statement, our services, or our charges, then you should raise it promptly for discussion. If you object to only a portion of the charges on a statement, then you agree to pay the remainder, which will not constitute a waiver of your objection.

5.  Advance Deposit for Payments. The Firm typically requires an advance deposit for payment of our charges for services and expenditures before being engaged as counsel or commencing any work on a matter. However, we will not ask for an advance deposit from you at this time.

If the scope of work that we are performing increases substantially beyond our original understanding, we reserve the right to require advance deposit(s). This is particularly, but not exclusively, true where litigation is involved. The amount of any deposit will be determined at the time when it becomes apparent to us that the scope of our work has increased or will increase substantially.

While we will attempt to obtain a favorable resolution of your matter, it may proceed to trial or other hearing. Preparing for and actually conducting the trial or other hearing of a matter are usually the most time-consuming services in any litigation engagement. We may require, therefore, that you provide us with an additional separate deposit prior to our commencement of preparation for trial or hearing to cover in advance a portion of our charges for these services and related expenditures. The amount of the deposit will be determined once the trial or other hearing appears inevitable and as soon as possible prior to the date the matter is set for trial or

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
Smart Retail, Inc.
June 10, 2019
Page 4

other hearing, based upon an estimate of the magnitude of services and expenditures that may be involved.

If you fail to provide an additional deposit within thirty (30) days after it is requested by us, we have the right to resign immediately from further representation of you.

6.  Withdrawal From Representation. The attorney-client relationship is one of mutual trust and confidence. If you have any questions at all about the provisions of this Agreement, we invite your inquiries. We encourage our clients to inquire about any matter relating to our engagement agreements or monthly statements that may be in any way unclear or appear unsatisfactory. If you do not meet your obligation of timely payments or deposits under this Agreement, we reserve the right to withdraw from your representation on that basis alone, subject of course to any required judicial, administrative, or other approvals.

This Agreement also is subject to termination by either party upon reasonable notice for any reason. If there were to be such a termination, however, you would remain liable for all unpaid charges for services provided and expenditures advanced or incurred.

7.  Duties Upon Termination of Active Representation. Upon termination of our active involvement in a particular matter for which we had previously been engaged, we will have no further duty to inform you of future developments or changes in law which may be relevant to such matter in which our representation has terminated. Further, unless you and the Firm agree in writing to the contrary, we will have no obligation to monitor deadlines of any kind whatsoever that may arise from the matters for which we had been engaged. If your matter involves obtaining a judgment and such judgment is obtained, we will only be responsible for those post-judgment services (such as recording abstracts, filing judgment liens, and calendaring renewals of judgments) as are expressly agreed to by you and the Firm in writing and for which you will be obligated to pay.

8.  Document Storage Policies. Absent agreement to the contrary, the Firm's policy with regard to documents and other materials at the conclusion of a matter is to maintain them in storage for a minimum of seven years. All documents and other materials in our file may then be destroyed or discarded without notice to you. Accordingly, if there are any documents or other materials you wish to have retrieved from your file at the conclusion of a matter, it will be necessary for you to advise us promptly of that request to ensure that they are not destroyed.

9.  Consent to Electronic Communications. In order to maximize efficiency in this matter, we intend to use communications devices to the fullest extent possible (*e.g.*, email,

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
Smart Retail, Inc.
June 10, 2019
Page 5

document transfer by computer, cellular telephones, PDAs and facsimile transfers). The use of such devices under current technology may place your confidences and privileges at risk. However, we believe the effectiveness involved in use of these devices outweighs the risk of accidental disclosure. By retaining the Firm as counsel, you consent to the use of these devices.

   10. <u>Disclaimer of Guarantee</u>. Nothing in this Agreement should be construed as a promise or guarantee about the outcome of any matter that we are handling on your behalf. Our comments about the outcome of your matter are expressions of opinion only. If we should provide you with an estimate of the fees and costs that may be incurred in connection with our representation of you, it is important for you to understand and acknowledge that any dollar amount is merely an estimate based on numerous assumptions which may or may not prove to be correct and that any estimate is not a guarantee or agreement of what the maximum amount of fees and/or costs will be.

   11. <u>Entire Agreement</u>. This Agreement contains all terms of the agreement applicable to our representation(s) of Smart Retail, Inc.

   12. <u>Client</u>. The Firm's client for the purpose of our representation is only the entity identified in this Agreement (*i.e.*, Smart Retail, Inc.). Unless expressly agreed, we are not undertaking the representation of any related or affiliated person or entity, nor any of their shareholders, partners, officers, directors, agents, or employees.

* * * * *

If any terms of this Engagement Letter are incorrect or not satisfactory to you, please let us know immediately so that we can discuss the concerns you may have. Otherwise, please return an executed copy of this Agreement as soon as you are able to reflect your consent to these terms and your decision to retain Kagan Stern as your legal counsel.

KAGAN STERN MARINELLO & BEARD, LLC

John White, CEO
Smart Retail, Inc.
June 10, 2019
Page 6

    We look forward to working with you and thank you once again for the opportunity to be of service.

                Very truly yours,

                KAGAN STERN MARINELLO & BEARD, LLC

                Stephen B. Stern

READ and AGREED:

_____

John White, CEO
Smart Retail, Inc.