IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ASHLEY BOSHEA as Administrator
of the Estate of DAVID JOHN
BOSHEA,

   *Plaintiff,*

   v.

COMPASS MARKETING, INC.,

   *Defendant.*

Civil No. ELH-21-309

**MEMORANDUM OPINION**

This is a contract and wage payment collection case. Michael White, Movant, who is not a party, sought sanctions from defense counsel (ECF 269), which the Court denied. *See* ECF 385, ECF 386. Now pending is Movant's motion for reconsideration of the Court's denial of his sanctions motion. ECF 387 (the "Motion").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

**I. Background**

The case originated in 2021 with the filing of suit by David Boshea, plaintiff, against his former employer, Compass Marketing, Inc. ("Compass"), defendant. Boshea claimed that John White, the CEO of Compass (and a brother of Movant), recruited him to work for Compass and that Compass agreed to pay him severance under certain circumstances.[1] In March 2020, Compass

---

[1] During the litigation, John White was understood to be owner and CEO of Compass and, at one time, a friend of Boshea. He was identified as the CEO in Compass's filings and testified to that fact at trial, as did Boshea. *See, e.g.*, ECF 298 at 12; ECF 301 at 64; *see also* ECF 315 at 2

terminated Boshea, without cause, after thirteen years of employment. ECF 1; ECF 48; ECF 278. As a result, Boshea contended that Compass owed him $540,000 in severance, pursuant to a written severance agreement (the "Agreement") purportedly signed by John White for Compass, and/or an oral severance agreement.

Compass denied the existence of a severance agreement. Further, Compass maintained, *inter alia*, that John White's signature on the Agreement was a forgery. ECF 298 at 240; ECF 301 at 102–03; ECF 302 at 23, 25–26; ECF 315 at 2.

Trial was first held in February 2024. *See* ECF 230; ECF 231; ECF 233; ECF 235; ECF 238; ECF 241. The jury found in favor of Boshea as to the oral contract claim and under the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code (2016 Repl. Vol., 2021 Supp.), §§ 3-501 et seq. of the Labor and Employment Article. ECF 246. But, for reasons not relevant here, I granted Compass's request for a new trial and vacated the judgment. ECF 275; ECF 276; ECF 288; ECF 289.

Boshea died in January 2025, shortly before the second trial was to begin. ECF 312. For convenience, however, I shall continue to refer to Boshea as the plaintiff.

The second trial took place in August 2025, after Boshea's daughter, Ashley Boshea, was appointed as the administrator of her father's estate. ECF 322; ECF 349; ECF 351; ECF 352; ECF

---

(proposed Preliminary Jury Instructions by Compass); ECF 347 at 2 (proposed Amended Pretrial Order).

John White's ownership of Compass and his status as CEO were not the subject of the litigation. But, Movant disagrees that John White is the sole owner of Compass or the CEO. ECF 49 at 5; ECF 269 at 2; ECF 273 at 2; ECF 373 at 1; ECF 387 at 2. He states in his "Motion for Reconsideration Under Rule 59(e)" (ECF 387) "that Compass is owned by John White, Daniel White and Movant." *Id.* at 2.

353. On August 8, 2025, the jury found that Compass breached the written severance Agreement (Count II) and violated the MWPCL (Count III). ECF 361. The jury awarded a total of $1,020,800, representing compensatory and enhanced damages, along with pre-judgment interest. *Id.*; *see* ECF 365. Judgment was entered on August 15, 2025. ECF 365. The issue of attorney's fees is not yet resolved. *Id.; see also* ECF 401. On January 8, 2026, Compass noted an appeal. *See* ECF 398. On January 9, 2026, the Clerk of Court transmitted Compass's appeal to the Fourth Circuit. ECF 399.

Of relevance here, on May 21, 2024, *i.e.*, months after the first trial, Movant filed a pro se "Motion for Sanctions" lodged against Compass and Compass's lawyers, Stephen B. Stern, Heather K. Yeung, and the firm of Kagan Stern Marinello & Beard, LLC (the "Firm"). ECF 269 ("Sanctions Motion").[2] As noted, Michael White is not a party to this case. To avoid confusion between John White and his brothers, Michael White and Daniel White, I shall sometimes refer to John White as "White" and to Michael as "Movant." I also refer to Michael and Daniel by their first names, so as to distinguish them from each other as well as John White.

The Sanctions Motion was filed pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927, and also based on the Court's inherent authority. ECF 269 at 1. Compass opposed the Sanctions Motion (ECF 272), supported by an exhibit. ECF 272-1.[3] Michael replied (ECF 273) and

---

[2] Michael White is an Orphan's Court Judge in St. Mary's County, Maryland. But, he is not a lawyer. *See* ECF 67 at 1 n.1; ECF 81-1 at 16.

[3] Compass alone filed ECF 272 ("Opposition To Non-Party Michael R. White's Motion For Sanctions") and ECF 368 ("Opposition To Non-Party Michael R. White's Motion To Set Matter For Hearing"). The lawyers named in the Motion did not file an opposition in their individual capacities. *See* Docket; *see also* ECF 368 at 2 n.3. Moreover, Compass asserted that Yeung "is no longer employed by" Kagan Stern Marinello & Beard, LLC, but "she has had the opportunity to review this Opposition and concurs with the positions taken [t]herein." ECF 368 at 2 n.2.

3

submitted four exhibits. ECF 273-1 to ECF 273-4. Michael also sought a hearing (ECF 367) and filed additional exhibits. ECF 367-1 to ECF 367-9. Compass opposed Michael's request for a hearing. ECF 368. Michael replied and appended eight exhibits. ECF 373; ECF 373-1 to ECF 373-8.

Michael based his Sanctions Motion primarily on three defense filings, ECF 269 at 3: (1) the "Counterclaim And Third Party Complaint" filed by Compass on August 26, 2021, against unidentified John Does (ECF 38), which Michael believes pertained to him; (2) the civil contempt motion filed against Michael White by Compass on October 25, 2021 (ECF 63); and (3) Compass's motion to compel deposition testimony of non-parties Daniel and Michael White (ECF 81). Michael also sought sanctions for "false claims" that Compass allegedly made to the Maryland Commission on Judicial Disabilities ("MCJD")[4] and for using his deposition as a "'fishing expedition[.]'" ECF 269 at 7; ECF 373 at 1–2.

By Memorandum Opinion (ECF 385) and Order (ECF 386) of October 30, 2025, I denied the Sanctions Motion (ECF 269) and Michael's request for a hearing (ECF 367).[5] Dissatisfied with the Court's ruling, on November 17, 2025, Michael filed "Michael White's Motion for Reconsideration Under Rule 59(e)", to which he appended one exhibit. ECF 387; ECF 387-1

---

[4] Both Michael and Compass refer to this entity as the Maryland Judicial Disabilities Commission. ECF 269 at 4; ECF 272 at 16 n.14. Compass submitted, as an exhibit, what appears to be a copy of a Reprimand issued by the "Maryland Commission on Judicial Disabilities." ECF 272-1.

[5] I incorporate here the Factual and Procedural Background set forth in my Memorandum Opinion of October 30, 2025. *See* ECF 385.

4

(collectively, the "Motion").[6]  Compass opposes the Motion. ECF 388.  On December 15, 2025, Michael replied (ECF 393, "Reply") and submitted four exhibits. ECF 393-1 to ECF 393-4.

The four exhibits are filings from a case litigated in the Circuit Court for Anne Arundel County, which involved, *inter alia*, Compass as plaintiff and Daniel and Michael as defendants. It is titled *Compass Marketing, Inc. v. Daniel White, et al.,* 02-C-23-000601 ("Maryland Case"). ECF 393-1 to ECF 393-4.  Three of the four exhibits were publicly filed in the Maryland Case before the Sanctions Motion was fully briefed.  *See* ECF 393-1 to EC93-3.[7]  Michael also appends to his Motion a letter written by Stern to John White (ECF 393-4), which Michael previously submitted to this Court on two occasions.  *See* ECF 33-1 at 2–7; ECF 269-1 at 8–13.

Michael does not explain why he failed to submit these documents during the pendency of the Sanctions Motion.  In any event, had the Court received these submissions in connection with the Sanctions Motion, the Court's resolution of the Sanctions Motion would have remained the same.

The Motion became fully briefed on December 15, 2025, shortly before the Christmas and New Year holidays.  Less than a month later, on January 13, 2026, Michael filed a Petition for Writ of Mandamus in the Fourth Circuit, in which he "seeks a writ directing" this Court "to issue a ruling on" his Motion.  *In re Michael White*, Case No. 26-1051 ("Mandamus Petition"), ECF 3-

---

[6] The Docket text indicates that Daniel filed the Motion for Reconsideration.  *See* ECF 387. However, the filing contains only the signature of Michael.

[7] In particular, Movant attaches to his Motion "Daniel White's Reply to 'Motion to Strike Sanctions' (Request for Hearing)", filed by Daniel in the Maryland Case on November 7, 2025. ECF 387-1.  Michael also appends to his Reply the "Second Amended Complaint" in the Maryland Case (ECF 393-1), filed on February 13, 2025; the Order granting voluntary dismissal of the claims against Daniel White in the Maryland Case, with prejudice, granted on August 21, 2025 (ECF 393-2); and the "Stipulation of Dismissal with Prejudice for Defendants Michael White and George White" in the Maryland Case, filed on August 7, 2025 (ECF 393-3).

5

1 at 1. He asserts: "The District Court has divested itself of subject-matter jurisdiction by transmitting the case to" the Fourth Circuit while Michael's Motion remained "pending and unresolved." *Id.* at 2. According to Michael, without this Writ, he will be "deprived of the opportunity to know the District Court's reasoning" for denying his Sanctions Motion and "to present a coherent appellate challenge." *Id.* at 5.

Thereafter, on January 14, 2026, Michael filed a "Notice of Appeal". ECF 403 ("Notice of Appeal"). He asserts that this Court's failure to rule on the Motion "constitutes a constructive denial of Movant's [M]otion and deprives Movant of meaningful appellate review." *Id.* at 2. Further, referencing Compass's appeal, Michael claims that because this Court has "transmitt[ed] the case to the Court of Appeals for the Fourth Circuit", this Court cannot review the Motion for Reconsideration. *Id.*

## II. Jurisdiction

As mentioned, on January 8, 2026, Compass noted an appeal to the Fourth Circuit from the disposition of the underlying case. ECF 398 ("Compass Appeal").[8] But, Compass did not appeal this Court's Order denying Michael's Sanctions Motion.

---

[8] Specifically, Compass appealed "judgments entered on March 8, 2024 [ECF 254] (regarding the jury verdict rendered on February 27, 2024 [ECF 246]) and August 15, 2025 [ECF 365] (regarding the jury verdict rendered on August 7, 2025 [ECF 362]), as well as the Court's orders ruling on Compass Marketing's post-trial motions, such as the August 7, 2024 Order [ECF 276] and accompanying Memorandum Opinion [ECF 275] denying Compass Marketing's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial [ECF 255], the November 8, 2024 Order [ECF 289] and accompanying Memorandum Opinion [ECF 288] denying Compass Marketing's Motion for Reconsideration [ECF 279], and the December 12, 2025 Order [ECF 392] and accompanying Memorandum Opinion [ECF 391] denying Compass Marketing's Motion for Relief From a Judgment, or, in the Alternative, for a New Trial [ECF 370]." ECF 398 at 1.

At the time Compass noted its appeal, the Motion was pending. As noted, the Motion seeks reconsideration of the Court's ruling on Michael's Sanctions Motion. The Motion became fully briefed on December 15, 2025. *See* ECF 393 (Michael's reply to Compass's opposition to his Motion). Less than a month later, on January 13, 2026, Michael filed a Mandamus Petition in the Fourth Circuit to compel this Court to adjudicate his Motion.[9]

Michael's arguments in his Mandamus Petition and in his Notice of Appeal are internally inconsistent. In Michael's Notice of Appeal, he claims that this Court no longer has jurisdiction to resolve the Motion because of Compass's appeal. Yet, in his Mandamus Petition he asks the Fourth Circuit to compel this Court to rule on his Motion.

As a preliminary matter, I must determine whether Compass's appeal to the Fourth Circuit and/or Michael's appeal of the ruling on his Sanctions Motion deprives this Court of jurisdiction to resolve the Motion.

In *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982), the Supreme Court said: "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals . . . ." It is a "well-established principle that an appeal divests a trial court of jurisdiction over 'those aspects of the case involved in the appeal.'" *Fobian v. Storage Tech. Corp.,* 164 F.3d 887, 890 (4th Cir. 1999) (quoting *Griggs*, 459 U.S. at 58). In general, a notice of appeal "transfers jurisdiction of a case to the court of appeals and strips a district court of jurisdiction to rule on any matters involved in the appeal." *Doe v. Public Citizen*, 749 F.3d 246, 258 (4th Cir. 2014); *see also Fed. Trade Comm'n v. Lin*, 66 F.4th 164, 166 (4th Cir. 2023); *In re GNC Corp.*, 789 F.3d 505, 512 n.5 (4th Cir. 2015). "To be sure, Rule 3(c)(4) of the

---

[9] To be sure, Movant is entitled to seek reconsideration. But, perhaps Movant does not realize that this matter is not the only one that requires the Court's attention.

7

Appellate Rules provides that a 'notice of appeal encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order.'" *Allen v. Stein*, __ F.4th __, 2026 WL 179560, at *7 (4th Cir. Jan. 23, 2026) (quoting Fed. R. App. P. 3(c)(4)).

But, there are "limited exceptions to the general rule that permit district courts to take subsequent action on matters that . . . aid[] the appellate process[.]" *Doe*, 749 F.3d at 258. As the Fourth Circuit has explained, "these exceptions are confined to a narrow class of actions that promote judicial efficiency and facilitate the division of labor between trial and appellate courts." *Id.* (citing cases).

In *Fobian*, 164 F.3d at 890, the Fourth Circuit concluded that "a district court's consideration of a Rule 60(b) motion while an appeal from the underlying judgment is pending is 'in aid of the appeal.'" Similarly, district courts have said that they retain jurisdiction over motions for reconsideration, brought pursuant to Fed. R. Civ. P. 59(e), even when a party has sought an appeal of the underlying judgment. *See, e.g., Nolan v. Cabell*, ALWA-18-552, 2021 WL 12321599, at *1 (E.D. Va. July 16, 2021) (finding that the district court continued to have jurisdiction over plaintiff's motion for reconsideration, which the court construed as being filed pursuant to Rule 59(e), notwithstanding that the plaintiff had filed a notice of appeal); *Matousek v. North Carolina*, RAJ-18-448, 2018 WL 9597044, at *1 (E.D. Va. Oct. 23, 2018) (finding that the court "may properly consider Plaintiff's reconsideration motions" filed after the notice of appeal).

In addition, "[i]t is also well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). For example, the Supreme Court has stated that "district courts may award costs after an action is dismissed for want of jurisdiction." *Id.* And, of import, in *Barlow v. Colgate Palmolive Co.*, 772

F.3d 1001, 1009 (4th Cir. 2014) (en banc), the Fourth Circuit determined that a district court retains jurisdiction to decide a Rule 11 sanctions motions even after remanding a case to state court, because the matter of sanctions is a collateral issue. *See also Tunnell v. Ford Motor Co.*, U-03-074, 2006 WL 910012, at *8 (W.D. Va. Apr. 7, 2006) ("Because an attorney's fees award is collateral to the merits of the underlying action, the district court retains jurisdiction to entertain motions for sanctions under Rule 37, even after the final judgment has been appealed."), *report and recommendation adopted,* 2006 WL 1788233 (W.D.Va. June 26, 2006), *aff'd,* 245 F. App'x 283 (4th Cir. 2007) (per curiam).

What the Tenth Circuit said in *Lancaster v. Independent Sch. Dist. No. 5,* 149 F.3d 1228, 1237 (10th Cir.1998) (internal citations omitted) (cleaned up), provides guidance:

> Although filing notice of appeal generally divests the district court of jurisdiction over the issues on appeal, the district court retains jurisdiction over "collateral matters not involved in the appeal." Attorney's fees awards are collateral matters over which the district court retains jurisdiction. While the cases typically discuss attorney's fees awards in the context of statutory grants of attorney's fees to the prevailing party, we see no basis to distinguish those cases from one like the present case in which fee awards are granted as sanctions. In either context, the award is collateral to the merits of the underlying action. Accordingly, we conclude the district court had jurisdiction to grant the Rule 37 motion.

The Federal Rules of Appellate Procedure are also pertinent. They provide that when "a party files a notice of appeal after the court announces or enters a judgment–but before it disposes of any motion listed in Rule 4(a)(4)(A) [including Rule 59]–the notice becomes effective to appeal a judgment or order . . . when the order disposing of the last such remaining motion is entered." Fed. R. App. P. 4(a)(4)(B)(i).

In my review of the case law, however, I have found little basis for the theory of "constructive denial" on which Michael relies in his Mandamus Petition. In *Doe,* 749 F.3d at 246, the Fourth Circuit concluded that the district court lacked jurisdiction to decide appellants' motion

9

to intervene after appellants had filed a notice of appeal. *Id.* at 258 ("We see no reason why an intervention motion should be excepted from the general rule depriving the district court of authority to rule on matters once the case is before the court of appeals."). In particular, the appellants noted an appeal after "the district court failed to rule on the intervention motion before the period to appeal the underlying judgment expired[.]" *Id.* at 256. According to appellants, this caused them "to appeal the 'constructive denial' of their motion to intervene," along with other rulings of the district court. *Id.* The Fourth Circuit adopted appellants' phrase, "constructive denial", to describe appellants' procedural posture but did not establish a rule that pending motions are constructively denied once a notice of appeal has been filed. *Id.* In fact, in *Doe*, the Fourth Circuit "recognized" that there are "limited exceptions . . . that permit district courts to take subsequent action on matters that are collateral to the appeal . . . or to take action that aids the appellate process[.]" *Id.* at 258 (internal citations omitted).

As I see it, there is no merit to Michael's assertion that, by virtue of Compass's appeal, his pending Motion was constructively denied. Michael appears to acknowledge as much. He asserts that "treating an unruled motion as 'constructively denied'" when the case has been transmitted to the Court of Appeals is "doctrinally uncertain[.]" Mandamus Petition, ECF 3-1 at 4.

In my view, the Motion concerns a collateral matter. Therefore, the Court has jurisdiction to address the Motion, notwithstanding the appeals of both Michael and Compass.

### III. Discussion

#### A. Rule 59(e)

Michael moves for reconsideration of this Court's denial of his Sanctions Motion, pursuant to Fed. R. Civ. P. 59(e). ECF 387.

10

Fed. R. Civ. P. 59(e) allows a party to move the court to "alter or amend a judgment [within] 28 days after the entry of the judgment."  Here, the Court issued its Memorandum Opinion and Order on October 30, 2025 (ECF 385; ECF 386) and Michael filed his Motion on November 17, 2025 (ECF 387).  Therefore, his Motion is timely.

A court may grant a Rule 59(e) motion only if "the movant shows either (1) an intervening change in the controlling law, (2) new evidence that was not [previously] available . . . , or (3) that there has been a clear error of law or a manifest injustice." *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir. 2010) (citing *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006)).

Relief pursuant to Rule 59(e) is "an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citation omitted).  Moreover, "Rule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.*

"Generally," in resolving a Rule 59(e) motion, the court "will not examine evidence . . . that was inexcusably proffered to the district court only after the court had entered its final judgment." *Bogart v. Chapell*, 396 F.3d 548, 558 (4th Cir. 2005).  However, a court "may examine such evidence in order to determine whether 'the additional evidence, though filed untimely, indicate[s] that the decision under review, if upheld, would result in a miscarriage of justice.'" *Id.* at 558–59 (quoting *Kaiser Aluminum & Chem. Corp. v. Westinghouse Elec. Corp.*, 981 F.2d 136, 140 (4th Cir. 1992)).  Additionally, "[a] party seeking reconsideration based on new evidence must show: (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not

11

merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended." *Sewell v. Int'l Longshoremen's Ass'n, Loc. No. 333*, SKG-12-00044, 2013 WL 5882790, at *2 (D. Md. Oct. 29, 2013) (citing *Quillin v. C.B. Fleet Holding Co.*, 328 F. App'x 195, 203 (4th Cir. 2009)). Indeed, "[t]he standard for granting a Rule 59 motion based on newly discovered evidence is high." *Quillin*, 328 F. App'x at 203.

Michael claims that the Sanctions Motion was timely. ECF 387 at 5. And, he asks "the Court [to] reconsider its ruling" and "give due regard to the manifest injustice and factual clarifications presented in" his Motion. *Id.* at 9; *see also* ECF 393 at 10 ("Movant respectfully requests that the Court reconsider its prior ruling to correct the factual record and to prevent manifest injustice.").

Of import, Michael does not identify any ground that warrants an alteration of the Court's timeliness ruling. Nor does he identify any manifest injustice, aside from his fundamental disagreement with this Court's rulings. And, "mere disagreement [with a ruling] does not support a Rule 59(e) motion." *Hutchinson v. Staton,* 994 F.2d 1076, 1082 (4th Cir.1993). Moreover, Michael does not identify any intervening change in the law or a clear error of law committed by this Court.

### B. Timeliness of Sanctions Motion

As noted, Michael's Sanctions Motion was filed on May 21, 2024 (ECF 269), months after the first trial.

In the Memorandum Opinion, I concluded that Michael's Sanctions Motion was untimely. ECF 385 at 32, 40. I noted that Michael failed to comply with the Rule 11 "safe harbor" provision, which requires a movant to serve the opposing party with a copy of the Rule 11 motion at least

12

twenty-one days before filing it with the district court. *Id.* at 32 (citing *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004)).

I also found that the Sanctions Motion was untimely under 28 U.S.C. § 1927 and the court's inherent authority, because "more than two years passed between the filing of Michael's Motion on May 21, 2024, and the sanctionable conduct he cites in his Motion." *Id.* at 39 (citing ECF 269; ECF 81 (Motion to Compel, filed by Compass on January 14, 2022); ECF 63 (Contempt Motion, filed by Compass on October 25, 2021); ECF 38 (Third Party Complaint, filed by Compass on August 26, 2021)). Accordingly, I concluded that Michael's "extreme delay in filing the Motion forecloses relief." *Id.* at 40.

In the Motion, Michael claims that "[t]here is good cause to find that" his Sanctions Motion "was timely filed." ECF 387 at 5. He asserts that, "[f]or seven years, John White and Mr. Stern have constantly attacked" Michael's "family members as a means of general retaliation and an attempt to gain illegitimate leverage in the Boshea case, and the related Flywheel case and Maryland Case." *Id.*[10] But, Michael does not present any new evidence or law that persuades me that his Sanctions Motion should be deemed timely.

The assertions in the Motion (ECF 387 at 5) are akin to those in the Sanctions Motion. *See* ECF 269 at 4 (alleging that White and Stern "began a campaign of reprisal, retribution, and public embarrassment against Movant and his family that continues and includes their actions in this instant case"). The Court considered the timeliness of the Sanctions Motion based on the actions that Michael alleged Compass took against him in this case. Michael's repeated claims that White

---

[10] Compass filed the *Flywheel* Case in federal court in 2022. *Compass Marketing, Inc. v. Flywheel Digital LLC, et al.*, GLR-22-379 (D. Md.), *aff'd as to dismissal of federal claims*, 2024 WL 3292676, at *1–2 (4th Cir. July 3, 2024) (per curiam).

13

and Stern have been acting maliciously towards his family for years, as evidenced by conduct separate from this case, does not persuade me that Michael's delay was justified, or that the Court erred in its timeliness analysis.

Michael cites the conduct of Compass in adding his wife to the witness list for the first trial as a reason why he delayed his Sanctions Motion. ECF 387 at 5–6. Michael complains that this "requir[ed]" his wife "to wait in the hallway of the Baltimore federal courthouse throughout a two-week trial." *Id.* at 6. And, he characterizes the decision to add his wife to the witness list as a "tacit threat by John White and Mr. Stern to further target" Michael's family. *Id.* According to Michael, because his "wife had already been subject to attacks from John White and Mr. Stern," he chose to "defer[] filing his request for sanctions until after the trial concluded." *Id.*

This argument holds no water. If anything, the distress of Michael's wife would seem to be a reason for Michael to promptly file his Sanctions Motion or to file for a protective order. Moreover, this matter was never presented to the Court at the time.

In addition, Michael contends that his Sanctions Motion was delayed because he was unable "to incur additional legal fees during trial while already simultaneously bearing significant expense defending" himself in other litigation involving Compass. *Id.* He also asserts that he "expected that he would need to proceed pro se in the sanctions motion, as the legal profession generally discourages attorneys from seeking sanctions against opposing counsel even where justified." *Id.* Michael's discomfort in asking his lawyer to file a motion for sanctions is not a justification for such a lengthy delay in filing. And, given that he proceeded without counsel, the matter of concern about legal fees is not especially relevant.

### C. Merits

Even assuming that Michael's Sanctions Motion was timely filed, I am not persuaded by his arguments as to the merits of his Motion.  As noted, three of Michael's exhibits (ECF 393-1 to ECF 393-3) are documents that were filed in the Maryland Case, while the Sanctions Motion was pending.  ECF 373.  The exhibits do not establish that denial of the Sanctions Motion has resulted in a miscarriage of justice.

Michael references the Maryland Case and a case filed in this Court, titled *Compass Marketing, Inc. v. Flywheel Digital LLC, et al.*, GLR-22-379 (D. Md.) ("*Flywheel* Case"), *aff'd as to dismissal of federal claims*, 2024 WL 3292676, at *1–2 (4th Cir. July 3, 2024) (per curiam).  In the *Flywheel* Case, Compass alleged that former Compass employees established a competing company, Flywheel Digital LLC, allegedly founded "upon the trade secret information and proprietary business know how that rightfully belonged to Compass[.]"  *Flywheel* Case, ECF 1, ¶ 6.  Compass named both Michael and Daniel White as defendants and claimed that they were a part of an "extensive and brazen conspiracy" to use Flywheel Digital LLC to compete with Compass.  *Id.* ¶¶ 7, 8.  The Court dismissed Compass's federal claims and declined to exercise supplemental jurisdiction over the remaining State law claims.  *Flywheel* Case, ECF 65.

Michael argues that the *Flywheel* Case is proof that "John White and Mr. Stern used the *Boshea* litigation to formulate and pursue their 'RICO' conspiracy theory in the *Flywheel* case–a narrative they maintained for seven years across federal trial, appellate proceedings, and in Maryland courts."  ECF 387 at 7 (italics added).  Michael urges the Court to consider Compass's pattern of "coordinated litigation conduct" in these cases "for purposes of evaluating bad faith in the *Boshea* litigation."  ECF 387 at 7 (italics added).  This is a reframing of similar allegations Michael made in his Sanctions Motion.  *See* ECF 269 at 4–5; ECF 367 at 2; ECF 373 at 4–5.

15

In *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46 (1991), the Supreme Court explained that the court's "inherent power" to issue sanctions "extends to a full range of litigation abuses." *See* ECF 387 at 7–8. Notably, the inherent power can be used to sanction a party "for abuses of process occurring beyond the courtroom, such as disobeying the court's orders." *Id.* at 57. The *Chambers* Court concluded that the district court's issuance of sanctions "was . . . within the scope of the District Court's sanctioning power," because the court sanctioned conduct that directly contravened its orders "to maintain the status quo pending the outcome of the litigation[.]" *Id.*

But, this does not mean that a court has unfettered power to sanction conduct unrelated to the case before the court. Yet, in seeking sanctions, Michael relies, at least in part, on alleged out-of-court conduct of Compass and Stern that he claims motivated Compass's mistreatment of Michael in this case.

Motive is beside the point. It is the conduct that matters. And, the out-of-court conduct that Michael describes did not disrupt the proceedings in this case. Movant's claims regarding other litigation are collateral to this case.

As I explained in my Memorandum Opinion, ECF 385 at 40:

> When issuing sanctions, the role of the court is not to "police *out-of-court conduct* nor will the Court arbiter every dispute or clash of personalities." *Moore v. Chase, Inc.*, SKO-140-1178, 2016 WL 521320, at *5 (E.D. Cal. Feb. 10, 2016) (emphasis in original). As the Supreme Court has explained: "The imposition of sanctions . . . transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power *to police itself*[.]" *Chambers,* 501 U.S. at 46 (emphasis added). When using its sanction power, "the court must be sure of both the factual and legal basis on which it is acting." *Trade Well Int'l v. United Cent. Bank*, 778 F.3d 620, 626 (7th Cir. 2015).

I see no basis to disturb my previous position that I will not review Compass's litigation practices in other cases, such as the Maryland Case or *Flywheel*, in deciding whether to levy sanctions on Compass and/or Stern for their conduct in this case.

16

Michael's Motion also rests on his claim that Stern and White are not proper representatives of Compass. *See* ECF 387 at 3–5; ECF 393 at 6–8. Michael claims that "John White resigned as the Chief Executive Officer of Compass not later than October 2021." ECF 387 at 4 (citing ECF 338, a letter filed with this court by Daniel White). In addition, Movant maintains that neither Stern nor White "possesses lawful corporate authority or shareholder authorization to represent Compass[.]" ECF 393 at 1.

In his Motion, Michael asserts that "the consequences of John White and Mr. Stern masquerading as representatives of Compass have been profound and caused injury far beyond even the significant legal fees" Michael incurred. ECF 387 at 2. According to Michael, "[t]he manner in which John White and Mr. Stern have conducted this litigation has also damaged Compass, causing our business to owe millions of dollars in" litigation costs. *Id.* Furthermore, Michael claims that "[t]he most critical damage" caused by "allowing John White and Mr. Stern to pretend to represent Compass" was the "severe injury" that this caused to "Mr. Boshea's family bonds and to his own health." *Id.* at 2–3.[11] Simply put, much of the conduct alleged in the Sanctions Motion and the Motion does not concern Compass's treatment of Movant in this case.

In addition to Michael's claims regarding the disputed ownership of Compass, Michael asks the Court to

> direct Compass and John White to identify with specificity: (i) the exact date and circumstances of John White's resignation as CEO; (ii) the legal basis on which he asserts that he "remained Chairman" during the period of his resignation, including how that assertion can be reconciled with the Virginia State Corporation Commission filings submitted by John White that reflect only "Owner", not CEO or Chairman; and (iii) the date, manner, and corporate authority by which he

---

[11] Michael goes so far as to claim that "John White and Mr. Stern's behavior while pretending to represent our company directly contributed to Mr. Boshea's despair, leading to his sad and early demise." ECF 387 at 3. However, Michael does not have standing to seek sanctions on behalf of Mr. Boshea or his family.

17

contends he "resumed his role as CEO" together with any corporate records, minutes, resolutions, or other evidence supporting that contention.

*Id.* at 2.

In its Opposition, Compass claims that, "[t]o the extent White's arguments concerning undersigned counsel not having authority to represent Compass Marketing in this litigation is considered 'new evidence,' . . . it is simply a repeat of an argument that White . . . previously included in a footnote in the Motion for Sanctions . . . ." ECF 388 at 2 (citing ECF 269).

This case concerns Boshea's claim for severance pay that he contends was due and owing to him from Compass. *See* ECF 48, ¶¶ 1, 2; ECF 278, ¶¶ 18, 27. The matter of the ownership and management of Compass was not at issue.

Notably, during the course of two trials regarding Boshea's claims, Boshea never claimed that White was not a proper representative of Compass or that Stern had a conflict of interest. Indeed, Boshea's claim rested partly on the fact that, "[d]uring Boshea's employment with Compass, John White served as" Compass's CEO and he agreed to the severance in issue. ECF 102 at 2; *see* ECF 278, ¶¶ 6, 8–14; ECF 345 at 2–3. Moreover, Michael was well aware of the litigation, yet he never sought to intervene.

Further, as to Stern, Michael claims that "Mr. Stern has been consumed with his connection with John White and their 'one-penny RFID' electronic shelf labels side business, known as Tagnetics, Inc. and Smart Retail, Inc." ECF 387 at 3. The Court will not investigate the "personal interest", if any, that Stern has "in Smart Retail, Inc.", a company Michael claims that Stern founded with White in 2019. ECF 387 at 1. It bears no apparent relevance to this case or to the

18

Sanctions Motion.[12]

Michael also renews his claim that this Court should issue sanctions against Compass for filing the Third Party Complaint. He contends that he "was identified in the complaint as plainly as possible without direct reference to his name, with allegations that Mr. Boshea received bi-weekly payroll payments totaling $51,800 to which he was not entitled." ECF 387 at 6. According to Michael, "John White and Mr. Stern specifically claimed that Movant alone controlled the payroll system that allegedly resulted in these overpayments to Mr. Boshea." *Id.*

As stated in the Memorandum Opinion, Michael is not named in the Third Party Complaint. *See* ECF 38; ECF 385 at 49. The Third Party Complaint may have been frivolous. And, it was ultimately abandoned by Compass. But, I see no basis to disturb my prior conclusion that, as to Movant, Compass's filing of the Third Party Complaint does not provide a ground to impose sanctions on Compass or Stern.

---

[12] Michael has attached a letter bearing Stern's signature and addressed to White, dated June 11, 2019. ECF 393-4. In the letter, titled "Conflict of Interest Disclosure", Stern writes to White, detailing the potential conflict of interest that could arise should he accept White's offer "to become a minority shareholder in Smart Retail", given White's request that Stern and his firm "serve as outside counsel for Smart Retail to help the company address a number of legal issues." *Id.* at 2. Michael previously submitted this letter to the Court on August 23, 2021. *See* ECF 33-1 at 2–7. Michael submitted this letter to the Court again in support of his Sanctions Motion. ECF 269-1 at 8–13.

Michael has previously sought to use this Court as a forum to litigate his concerns regarding Stern's authority to represent Compass in this case and has asked this Court to conduct a hearing "to determine the legitimacy of Stephen Stern Esq [sic] as an officer of the court." ECF 33 at 1; ECF 49 at 3. These requests were part of Michael's pro se submission to this Court, seeking to quash document and deposition subpoenas that Compass had issued to him. ECF 33 ("Motion to Quash"); *see* ECF 33-1 at 9–19. Judge Copperthite, to whom I referred discovery disputes (ECF 51), resolved Michael's Motion to Quash, but did not address Michael's claims regarding Stern. *See* ECF 52.

19

## IV.  Conclusion

The allegations in the Sanctions Motion and this Motion tell a tale of family strife and acrimony and even possible corruption.  But, this Court is not a tool to avenge personal vendettas or to be used as a pawn in a family feud.  *Cf.* ECF 298 at 96 ("I've said from the beginning we're not having a sideshow on the White brothers' family feud.")  Michael's Motion does little more than reiterate and expand upon business disputes and familial gripes that are not properly before this Court.

For the foregoing reasons, I shall deny Michael's Motion.  An Order follows.


Date:  January 29, 2026                                          /s/
                                                        Ellen Lipton Hollander
                                                        United States District Judge