## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ASHLEY BOSHEA as representative of the | ) ) ) |
| ESTATE OF DAVID J. BOSHEA, | ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. ELH-21-00309 ) |
| COMPASS MARKETING, INC., | ) ) |
| Defendant. | ) |

### DECLARATION OF LEIZER Z. GOLDSMITH

### A.  MR. GOLDSMITH'S PROFESSIONAL BACKGROUND

1.      I have been practicing law since 1988, when I graduated from Boston College Law School and was first admitted to the Bar. I received my B.A. from the University of Michigan in 1985.

2.      I am a member of the District of Columbia, Maryland and Massachusetts bars. I am also admitted to practice before several United States Courts of Appeal and the United States Supreme Court.

3.      I am the principal in the Goldsmith Law Firm, LLC (previously Law Office of Leizer Z. Goldsmith), which I established in 1992, subsequent to my employment with the National Labor Relations Board, and with the labor and employment law firm of Connerton, Ray & Simon.

4.      While with the National Labor Relations Board's Appellate Litigation Branch in 1998-99, I defended the Board by successfully briefing and arguing twice before the United States Court of Appeals for the Fourth Circuit, and once before the United States Court of Appeals for the Fifth Circuit.

1

5.      My current firm's practice has always consisted primarily of plaintiff's employment discrimination litigation including extensive work in federal sector cases. I also handle other employment-related matters, such as federal civil service appeals and wage and hour cases.

6.      Since beginning the practice law in 1988, I have been actively and continuously engaged in the employment litigation field.

7.      Throughout my practice, since 1988, I have been actively and continuously engaged in the civil rights field, particularly in the area of employment discrimination, and have been invited to lecture on numerous occasions.

8.      Since 1992, I have served as lead counsel for hundreds of employment discrimination plaintiffs in cases before courts and administrative agencies, or which were settled without litigation.

9.      Nearly all those cases have been brought under statutes that contain fee-shifting provisions for prevailing plaintiffs, such as Title VII and the Maryland Wage Payment and Collection Law.

10.      My firm appears regularly in D.C. Superior Court, Montgomery County Circuit Court, Prince George's County Circuit Court, and the local federal courts. I have appeared in the United States District Court for the Eastern District of Virginia frequently, on a pro hac vice basis. I have briefed and argued before the United States Courts of Appeals for the District of Columbia, Fourth Circuit and Sixth Circuits, the D.C. Court of Appeals, the Maryland Court of Appeals and the Maryland Court of Special Appeals. I also appear regularly and try federal sector discrimination claims before Equal Employment Opportunity Commission ("EEOC"), and have significant experience with hearings before Merit Systems Protection Board ("MSPB") administrative judges in civil service appeals.

11.     I have OVER 90 citations in Lexis' library of labor and employment law, including in five different United States Courts of Appeals, and other citations elsewhere; these do not even reference my appearances in federal sector EEOC administrative cases, whose citations do not list attorneys by name.

12.     I have consistently obtained favorable outcomes for my clients in the cases described above. I am incorporating a more detailed list of these achievements as Attachment A.

13.     I have been lead counsel in at least 10 federal and state court employment law jury trials.

14.     I have also won numerous of these jury trials, after having received adverse decisions on the cases from administrative bodies such as EEOC administrative judges and the Merit Systems Protection Board. Examples of this include *Walker* and *Orr*, discussed *infra*.

15.     I am fortunate to have been recognized for my efforts in the employment litigation field. Some of this recognition is described in greater detail in Attachment A.

16.     My views regarding fee-shifting litigation and reasonable fees rates grow from decades of experience litigating fees issues.

17.     I have been awarded shifted fees on dozens of occasions, many of which are described in Attachment A.

18.     With even more years of successful experience reflected in his affidavit, I believe Mr. Gagliardo's professional background warrants his being awarded fees at the top of the Fitzpatrick Matrix scale.

### B.  QUALIFICATIONS OF THOMAS GAGLIARDO

19.     I've known Thomas Gagliardo for 36 years, ever since first meeting him as opposing counsel in an individual employment claim.

20. Over those years I have had the opportunity to serve with him on the Executive Board of the Metropolitan Washington Employment Lawyers Association and work with him as well on Maryland employment law issues.

21. I have been able not only to observe the development of Mr. Gagliardo's career in solo practice, as in-house counsel, and now with Gilbert Employment Law, but also to engage with him in extensive discussion about employment law and other legal issues.

22. I observe that Mr. Gagliardo has a depth and breadth of knowledge and experience in the fields of federal and Maryland employment law that can scarcely be matched by any practitioner; he has been on the front lines of employment litigation for decades.

23. My knowledge of Mr. Gagliardo informs my view of the work performed in the *Boshea* case and the merits of the instant fees motion.

24. Fee-shifting authorities teach that when counsel achieves outstanding success, it is appropriate for the Court—while of course exercising its own discretion—to weigh heavily the testimony of the successful attorneys as to what was required to achieve that success.

25. I am especially comfortable viewing this particular matter in that light because I have observed Mr. Gagliardo and had numerous conversations with him over the years about fee-shifting law and the importance of exercising billing judgment in seeking shifted fees.

## C. REASONABLENESS OF REQUESTED HOURS

26. I opine that the fee request set forth by Plaintiff's counsel in this case is reasonable and warranted.

27. The two key numbers in any fee petition reflect the quantity of hours and the rates charged.

4

28.     Here, the number of hours expended, including hours now no-charged by Plaintiff, appear to be reasonable.

29.     Admittedly, the perspective afforded by a post-litigation review is somewhat limited; however, there are numerous markers to consider to ascertain the reasonableness of the hours expended.

30.     The first and most important is that a practitioner as skilled and knowledgeable as Mr. Gagliardo declares that the hours were necessary.

31.     As part of the trial team, he had both obligation and motivation to contain the hours expended, and he declares that even as local counsel in the case, he sought and received leave to absent himself from proceedings on several occasions so as not to overstaff the case. This is a major clue.

32.     Critically, counsel had to try the case twice to win their victory.

33.     Fee-shifting authorities teach that the hours expended on both trials are generally compensable—successful counsel is not to be punished for having the determination and stamina to fight through litigation obstacles before finally winning the prize. To the contrary, the steps are to be viewed as necessary to the final result.

34.     I also note the more than 400 docket entries in this case, reflecting a complex civil litigation docket that stretched out over years, including numerous dispositive motions and motions for new trials after both verdicts.

35.     While it would not be time-efficient for me to read it all, I read several of the key documents in the case including the Complaints, some motions, judicial opinions on the new trial motions and other documents.

36.     Based on what I have been able to review, I emphatically concur with Mr. Gagliardo's affirmation that the time claimed—subject to the offered deductions-- is reasonable.

### D. REASONABLENESS OF THE RATES AND BILLING JUDGMENT

37.    Mr. Gagliardo and the Plaintiff's team have sought full *Fitzpatrick* rates in this case.

38.    As I already noted, Mr. Gagliardo's background supports a rate of $933.00 per hour under Appendix B to the Fitzpatrick Matrix—as I was recently awarded.

39.    However, this Court's Local Rules suggest that a reduction to the *Fitzpatrick* rates be applied to account for the difference between Washington, D.C. and Baltimore hourly rates.

40.    No such rate reduction is identified in the instant motion.

41.    However, counsel have nonetheless complied with Appendix B for all practical purposes.

42.    Thus, counsel first waived over 370 hours, then an additional 136 hours by applying an across-the-board hours reduction of 10%.

43.    This write-off of more than 500 hours is a greater concession than a 5%-- or even 20% rate reduction. Plaintiff's counsel have effectively reduced their fee request by far more than Appendix B requires.

44.    Plaintiff's counsel's fees request is reasonable overall because the billing judgment reflected in the across-the-board reduction more than offsets the cost added by not reducing the identified Fitzpatrick rates explicitly.

45.    Experience teaches that there will be some minor error somewhere in this presentation, or that despite the overall success of counsel's work the Defendant may find some minor criticism to justify a reduction or may simply try to argue that less time should have been expended than undersigned took.

46.    However, Plaintiff waived $241,831.74 and subsequent then made an additional 10% reduction worth $104,075.93.

47.     This reflects a high degree of billing judgment allowing for confidence that the overall request is reasonable.

48.     The approximately $345,000.00 voluntary reduction should limit the need for a major litigation over this issue.

I declare under penalty of perjury that the above declaration is based upon personal knowledge, and is true and correct to the best of my knowledge, information and belief.

LEIZER Z. GOLDSMITH

6 - 10 - 2026

Date

7

**<u>Attachment A to the Goldsmith Fees Declaration</u>**

<u>Mr. Goldsmith's Professional Successes</u>

1.  In 1999, Judge Henry Kennedy, in the U.S. District Court for the District of Columbia, granted Plaintiff's Motion for Partial Summary Judgment (on liability), in the disability discrimination case of *Johnson v. Dep't of Veterans Affairs*, Civil Action 96-01686. Judge Kennedy concluded that the United States Department of Veterans Affairs violated the Rehabilitation Act by terminating Plaintiff Michael Johnson's employment, while he was working on a light duty assignment making surgical packs, because he was no longer able to work in his regular, permanent assignment as a janitor. Both a MSPB administrative judge and the EEOC had previously upheld the Agency's action. Judge Kennedy's decision is reported at 1999 U.S. Dist. LEXIS 17947 (1999). Judge Kennedy's prior decision in the case, denying Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, is also reported, at 26 F. Supp. 2d 147 (D.C.D.C. 1998). The case was ultimately settled for $285,000.00.

2.  In *Caldwell, et al. v. Department of Public Works,* D.C. Office of Employee Appeals No. 1601-0139-93C97; No. 95-MPA-18 (D.C. Sup. Ct.), I obtained full relief by order of the Office of Employee Appeals, for two employees terminated from the D.C. Department of Public Works. I also received an award of attorneys' fees at Laffey rates.

3.  In *Merriex v. Beale*, Civil Action No. 96CA5313 (D.C. Super. Ct. 1999), I obtained, together with co-counsel, a verdict of $115,000.00 for the Plaintiff, Laura Merriex.

4.  In *Walker v. West*, No. 99-1222 (D.C.D.C.), I obtained a verdict of $150,000.00 in compensatory damages, an award of over $240,000.00 in attorneys' fees and costs, and a job promotion for the plaintiff, in an EEO retaliation case against the United States Department of Veterans Affairs.

5.  In *Friolo v. Frankel*, 819 A.2d 354 (Md. 2003) ("*Friolo I*"), I obtained a verdict for my client in a wage payment case, then successfully advocated before the Maryland Court of Appeals, and won a decision reversing the trial court, that for the first time compelled Maryland courts in all fee-shifting cases to apply the "lodestar" method in calculating attorneys' fees.

6.  In *Pope-Payton v. Realty Mgmt*, 815 A.2d 919, (Md. Ct. of Special Appeals 2003), I successfully obtained reversal of a trial court decision limiting the plaintiff's ability to select her venue in a discrimination case.

7.  In *Duncan v. Wash. Metro. Area Transit Auth.*, 214 F.R.D. 43 (D.D.C. 2003), my associate and I successfully defeated a motion to dismiss in a Rehabilitation Act case, when the Court concluded that the Rehabilitation Act contains a valid and unambiguous waiver of states' Eleventh Amendment immunity.

8.  In *Gutierrez, et al., v. Restaurant Equipment and Supply Depot, et al.*, 852 A.2d 951 (2004) (D.C. Court of Appeals), co-counsel and I obtained a jury verdict totaling $928,200.00 for three low-wage workers in a discrimination and retaliation case. I personally briefed and argued the case on appeal, sustaining the verdict.

9.  In *Rainey v. Maximum Security*, Civil Action No. 03-02720, Prince George's County Circuit Court (2005), I obtained a verdict and final judgment on behalf of the plaintiff in the amount of $202,556.00. I presented the jury with special interrogatories regarding sexual harassment, constructive discharge, wage

payment violations, and retaliation. There were 19 decisions for the jury to make on the verdict sheet and all 19 were answered in our favor. The jury awarded all the hard damages requested, treble damages on our wage and pay issues, and punitive damages.

10. In *Coleman v. Talbot County, Maryland*, 2007 U.S. App. LEXIS 16685 (4th Cir. 2007), I succeeded in reversing a summary judgment decision at the United States Court of Appeals for the Fourth Circuit, then settled the case for a significant sum.

11. In *Friolo v. Frankel*, 403 Md. 443 (2008)("*Friolo III*"), I succeeded in obtaining certiorari at the Maryland Court of Appeals, then in reversing the decision of the Court of Special Appeals on the issue of attorneys' fees awards for litigating entitlement to attorneys' fees under the Maryland Wage and Hour Laws.

12. In *Orr v. Mukasey*, I won a 1.35 Million Dollar verdict in 2008, in a national origin discrimination and retaliation case, in the United States District Court for the District of Puerto Rico. The judgment (remitted to the statutory maximum plus back pay) was paid, plus a large statutory fee award.

*13.* In *Gilbert v. Napolitano*, 670 F.3d 258 (D.C. Cir. 2012), the D.C. Circuit reversed summary judgment in a federal sector Title VII retaliatory failure to promote claims case, opening the door for a later favorable settlement.

14. In *Friolo v. Frankel*, 91 A.3d 1156 ("*Friolo V*"), Friolo won another clear victory and "established important precedents[.]" See *Friolo V* at 328-329. The Maryland Court of Appeals held that establishment of important precedents via clear appellate successes does not countenance any scenario by which it would be permissible for this Court to deny fees for time that was necessary to bring these major accomplishments to fruition. See *Friolo V* at 328. The Circuit Court was required multiply the hours reasonably expended to complete the necessary tasks for the generally compensable appellate work, times the reasonable hourly rates, and, with appropriate reduction for the bona fide dispute issue, award that as the shifted fee. See *Friolo V* at 328-329.

15. In *Foster v. UMES*, in a case in which the defendant refused to entertain any settlement negotiations until after the jury verdict, I appealed an unfavorable summary judgment on a Title VII retaliation claim, and obtained a reversal at the Fourth Circuit. On remand, I tried the case to a jury before United States Magistrate Judge Sullivan, in the Northern Division of the United States District Court for the District of Maryland, and prevailed in obtaining a $125,000.00 compensatory damages verdict. That was followed by an order for complete back pay. Eventually, the Court ordered $675,000.00 in attorneys' fees, which was a stipulated sum.

16. In *Reynolds v. Mukasey*, in 2023 I partially defeated the Defendant's Motion for Summary Judgment and obtained a $500,000.00 settlement of a disability discrimination/retaliation case against the Department of Homeland Security.

17. Since 1993, I have successfully settled many dozens of employment cases — mainly employment discrimination cases-- to the satisfaction of my clients, frequently after defeating summary judgment motions, which are otherwise granted often in these types of cases.

18. For instance, in *Gilmore v. Reno*, Civil Action No. 96-748 (D.C.D.C.), a race discrimination and retaliation case, I obtained a settlement of $99,000.00, after defeating Defendant's Motion for Summary

2

Judgment. Judge Emmet G. Sullivan's opinion denying the Motion for Summary Judgment is reported at *Gilmore v. Reno*, 33 F. Supp. 2d 20 (D.D.C. 1998).

19.    In 2007-2008 alone, I settled three major government employment discrimination cases, including two against agencies of the United States government. The settlements in those cases were for $140,000.00, $285,000.00 and $404,000.00  (*Perry v. Tschetter*, No. 05-01414 (D.D.C. 2008)).

20.    In 2013, I had a $500,000.00 settlement against the United States Peace Corps after partially defeating summary judgment, in *Lane v. Vasquez*, 961 F.Supp. 2d 55 (D.D.C. 2013).).

21.    In 2015, I settled *Philbrick v. Holder*, 583 Fed. Appx. 478 (6th Cir. 2014), after obtaining reversal of summary judgment in an inferential discrimination case—that time at the United States Court of Appeals for the Sixth Circuit.

22.    In *Saah v. Thumel*, Civil Action No. RDB-15-2425, 2017 U.S. Dist. LEXIS 17015 (D. Md. Feb. 7, 2017), summary judgment was denied in part by Judge Richard Bennett on pregnancy discrimination.

23.    Chief Judge Bredar held in *Roberts v. Am. Neighborhood Mort. Acceptance Co.*, No. JKB-17-0157, 2017 U.S. Dist. LEXIS 144473 (D. Md. Sep. 5, 2017), that Defendant's intentionally misleading conduct caused Plaintiff Roberts to miss the 90-day deadline for filing after a notice of right-to-sue and, therefore, denied that defendant's motion to dismiss.

24.    In *Caban v. Met Laboratories*, No. 17-1872, 2019 U.S. Dist. LEXIS 83280 (D. Md. May 16, 2019), I obtained denial of summary judgment in pregnancy discrimination case before  Chief Judge Bredar, focusing on evidence of disparate treatment afforded comparator non-pregnant employees.

25.    In *Goldstein v. Univ. of Md.*, Civil Action No. CCB-18-2376, 2019 U.S. Dist. LEXIS 161064 (D. Md. Sep. 17, 2019), Judge Blake largely denied a motion to dismiss in which defendant denied both that it was a joint employer and that its response to claims of sexual harassment was insufficient.

26.    I had additional confidential settlements every year between 2016 and 2025, including cases against private employers, state and local governments, and federal agencies.

27.    I have also enjoyed numerous successes in this administrative forum, including prevailing in evidentiary hearings.

28.    Using my appellate skills, I have won appellate reversals of summary judgments previously granted in an employer's favor. Frequently, cases have settled once they have been so remanded.

*29.*    Some examples of this are *Philbrick*, *Coleman, Gilbert*, and *Foster*.

## Public Recognition of Mr. Goldsmith's Efforts in the Employment Law Field

30.    Thus, on February 23, 2005, the Metropolitan Washington Employment Lawyers Association ("MWELA"), a membership organization of over 200 local plaintiffs' employment lawyers, recognized me as the 2005 Lawyer of the Year. In presenting me with the award, the MWELA President cited several of my then- recent litigation successes, and noted that several have been accomplished on behalf of indigent or low income clients who might not have been able to obtain representation without me or a similar firm. Ms. Correia generously referred to me as "the king of summary judgment," in recognition

3

of my many successes in preventing employers from having their employees' and former employees' suits dismissed without trial.

31. For many years running, I have been named a District of Columbia "Super Lawyer." The selections for *Super Lawyers* are made by Law & Politics, a division of Key Professional Media, Inc. of Minneapolis, Minn. Each year, Law & Politics undertakes a rigorous multi-phase selection process that includes a statewide survey of lawyers, independent evaluation of candidates by Law & Politics' attorney-led research staff, a peer review of candidates by practice area, and a good-standing and disciplinary check. Only five percent of the lawyers in the state are named as *Super Lawyers.*

32. The firm and I have achieved the "AV" rating, Martindale-Hubbell's highest. Such ratings are based on peer evaluations.

33. I have been repeatedly praised publicly by my clients, including with singularly positive reviews on *Avvo.com.*

34. I was recruited, and became the author of the *Maryland State Bar Association Employment Law Deskbook* (2014) chapter on attorneys' fees—the subject of this declaration.

35. In 2020, I was inducted into the College of Labor & Employment Law as a fellow. The College is a non-profit professional association honoring the leading lawyers nationwide in the practice of Labor and Employment Law.  Its Fellows, selected through a rigorous peer review process, are recognized as distinguished members of the labor and employment community who promote achievement, advancement and excellence in the practice by setting standards of professionalism and civility, by sharing their experience and knowledge and by acting as a resource for academia, the government, the judiciary and the community at large.

36. I have frequently been invited to lecture and present on employment law subjects, and in particular on shifted attorneys' fees.

37. The following are some of my efforts in this area:

38. In March 2024, as part of a panel, I presented to the Metropolitan Washington Employment Lawyers Association, on proving discrimination cases by inference (a key skill utilized to prevail in this case).

39. I was featured panelist for the Metropolitan Washington Employment Lawyers Association on January 18, 2019, on obtaining equitable relief for employment discrimination plaintiffs.

40. I was a featured speaker at the program On *Winning Methodologies For Proving Discrimination At Trial,* for the Metropolitan Washington Employment Lawyers Association, on February 2, 2016.

41. On November 13, 2015, I made a presentation to the Maryland Employment Lawyers Association at its annual conference. The subject was my recent success at the United States Court of Appeals for the Fourth Circuit, in this case, *Foster v. University of Maryland Eastern Shore*. The presentation was promoted as pertaining to *"One of The Year's Greatest Hits."*

42. In November 2014, I presented to the Maryland Employment Lawyers Association at its annual conference, also on attorneys' fees.

4

43.     In June 2014, I presented, also on attorneys' fees to the Metropolitan Washington Employment Lawyers Association.

44.     I was a panelist speaking on conducting expert witness depositions, for the Montgomery County Bar Association's program, "Taking and Defending the Expert Deposition," on March 4, 2011.

45.     In October 2007, I was a featured panelist at the Maryland Employment Lawyers Association conference, on the subject of *Friolo v. Frankel*, and shifted attorneys' fees.

46.     In June 2007, I was a featured panelist at the Maryland State Bar Convention in Ocean City, Maryland, on the subject of *Friolo v. Frankel*, and shifted attorneys' fees.

47.     I was a featured panelist at the inaugural conference of the Maryland Employment Lawyers Association, on the subject of winning attorneys' fees in Maryland, on September 30, 2005.

48.     On November 4, 2005, I participated in a panel discussion on the subject of evidence in employment law cases, at the "A View From the Bench" conference at Georgetown University.

49.     In February 2005, I was a featured speaker at the Metropolitan Washington Employment Lawyers Annual Conference, presenting on the subject of Trial Practice.

50.     I spoke in February 2004 at the annual conference of the Metropolitan Washington Employment Lawyers' Association, on the subject of developing the factual record in employment discrimination cases.

51.     In March 2003, I was a featured speaker at the Metropolitan Washington Employment Lawyers Annual Conference, presenting on the subject of law practice management.

52.     On January 17, 2002, I served as moderator at the Metropolitan Washington Employment Lawyers Association's program on: "*How to Beat Summary Judgment in the Post- Reeves Era.*"

53.     On December 6, 2000, I addressed United States Department of the Interior EEO officials regarding the employee's perspective on the EEO process, in Washington, D.C.

54.     On December 5, 2000, I presented on my $150,000.00 jury verdict in United States District Court for the District of Columbia in the case of *Walker v. West*, in a brown bag lunch hosted by the Metropolitan Washington Employment Lawyers Association.

55.     On May 9, 2000, my colleagues and I from the 1999 trial in the District of Columbia Superior Court in the case of *Merriex v. Beale*, presented a discussion of the trial tactics and strategies employed in that case, to the Employment Law Section of the Montgomery County, Maryland Bar Association.

56.     I participated in a panel discussion before approximately sixty federal sector employment discrimination attorneys, on "*Creating a Successful Practice Representing Federal Employees,*" at the National Employment Lawyers Association's program on "*Litigating & Winning Federal Employee Rights Cases,*" on March 18, 2000 at the Chicago Allegro Hotel in Chicago, Illinois.

5

Past Fee Awards Obtained by The Goldsmith Law Firm

57.     Thus, I was awarded fees by the District of Columbia Office of Employee Appeals, at the rate of $210.00 per hour for work performed in 1995, in the case of *Caldwell, et al. v. Department of Public Works*, D.C. Office of Employee Appeals No.1601-0139-93C9.

58.     I was awarded fees at the rate of $245.00 per hour for work performed in 1998 by the Defense Information Systems Agency, in the case of *Hakohane v. DISA,* EEOC Complaint No. 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x.

59.     In June 2000, I was awarded fees at the rate of $290.00 per hour by Judge Rafael Diaz, for work performed in 1996-1999, in *Merriex v. Beale,* Civil Action No. 96CA5313 (D.C. Super. Ct. 1999).

60.     In *Walker v. West*, No. 99-1222 (D.C.D.C.), I was awarded over $240,000.00 in 2001, for attorneys' fees earned and costs incurred between 1996 and 2000. U.S. District Judge Emmet Sullivan granted my request for an award based on the then-applicable Laffey rate, $305.00 per hour.

61.     In *Rainey v. Maximum Private Security*, Civil Action No. 03-02720, Prince George's County Circuit Court (2005), Prince George's County Circuit Judge Jackson awarded me $345.00 per hour ($143,162.43 total, for fees and costs) for services performed between 2001 and 2004.

62.     In 2011, I was awarded $360.00 per hour for my work in trying *Orr v. Holder*, 06- 1775 (D.P.R. 2011). The rate was arrived at by the Court, because it was halfway between the Washington, D.C. Laffey rate, and the Puerto Rico rate.

63.     In 2015 in *Gilbert v. DHS*, EEOC Nos. 570-2010-00973X & 570-2010-00053X, my firm was awarded $520.00 per hour for my work, by administrative judge Frances del Toro, in an employment retaliation case litigated before the EEOC, in which our client prevailed at the administrative hearing.

64.     In 2018, *Burke v. Mattis*, 315 F. Supp. 3d 907, 914 (E.D. Va. 2018)I was awarded $107,811 in fees at the rate of $450 for my trial efforts in the United States District Court for the Eastern District of Virginia.

65.     I was previously awarded $665 per hour by an EEOC Administrative Judge, which was affirmed by the Office of Federal Operations, to comport with the then-applicable USAO Laffey Matrix.

66.     In 2025, I was awarded fees at the Fitzpatrick Matrix rate of $933.00 per hour by EEOC Supervisory Administrative Judge Maricia D. Woodham, in an employment discrimination case in which I prevailed before the Commission.

67.     The rate was not challenged or opposed by the litigation opponent, the United States Department of State.